IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>                                        Plaintiffs,<br>          v.<br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>                                        Defendants. | |
| THIS DOCUMENT RELATES TO:<br><br>Mokaram Law Firm v. Kareem Kelly<br>Attorney Lien Dispute<br>(Doc. Nos. 7868, 7880) | |

**REPORT AND RECOMMEDATION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                              May    13   , 2019

**I.       INTRODUCTION & PROCEDURAL HISTORY**

Presently before the Court for Report and Recommendation in the National Football League Player's Concussion Injury Litigation is the assertion of an Attorney Lien by the Mokaram Law Firm ("Mokaram") against the Monetary Award granted to Settlement Class Member ("SCM") Kareem Kelly ("Kelly"). By its Petition to Establish Attorney's Lien (Doc. No. 7868) and Notice of Attorney's Lien (Doc. No. 7880), both filed on July 5, 2017, Mokaram asserts that Kelly retained the firm in April 2013 to pursue a claim for injuries and damages allegedly caused by the National Football League's conduct associated with football-related concussions, head, and brain injuries. Mokaram contends that Kelly agreed to pay a contingent fee of 40% of his recovery

1

but that he discharged Mokaram before receiving his award. Mokaram asks that the Court "establish" its lien, determine its amount, and direct that it be satisfied from the proceeds of Kelly's Monetary Award. (Doc. No. 7868, Pet. at pp. 1-2.) Kelly disputes the lien, asserting that he has been represented continuously since June 28, 2012 by Jason Luckasevic, Esquire of Goldberg, Persky & White P.C. ("Goldberg"), with whom he also entered into a contingency fee agreement ("CFA") providing for a 40% fee. (Dispute Rec. Doc. 7.)

On November 6, 2018, the Claims Administrator issued its Post-Appeal Notice of Monetary Award Claim Determination, setting out an award to Kelly of $153,105. (Dispute Rec. Doc. 1.) On November 15, 2018 and in light of the unresolved lien encumbering the award, we issued, through the Claims Administrator, a Schedule of Document Submissions pursuant to Rule 18 of our Lien Rules. (Dispute Rec. Doc. 6.) The Schedule imposed affirmative obligations upon each party ("each party *must* comply"), who "*must* serve the Claims Administrator with a Statement of Dispute," which was to include a number of particulars to assist the Court in the lien dispute resolution. (*Id.* at 1 (emphasis added).) The parties were to submit their Statements by December 17, 2018. The Schedule further provided that within 15 days after the service of Statements of Dispute upon the parties, each party may serve the Claim Administrator with a Response Memorandum. (*Id.* at 2.)

The Attorney Lienholder here, Mokaram, failed to submit a Statement of Dispute. The firm also failed to file a Response Memorandum to the SCM Statement of Dispute that Goldberg submitted to the Claims Administrator on December 13, 2018. In fact, Mokaram has taken no further action beyond filing its lien claim on July 5, 2017.[1]

---

[1] A copy of the three-page contingent fee contract of April 19, 2013 is appended to the Notice of Lien packet compiled by the Claims Administrator on March 29, 2018 and provided to the Court.

2

In stark contrast, Goldberg has been fully compliant with the Attorney Lien Dispute Resolution Process. When the Claims Administrator issued the Notice of Lien on March 29, 2018 and set a deadline of April 18, 2018 for any response, Goldberg "attempted to work this out" but was unsuccessful and advised the Claims Administrator of this by e-mail on April 10, 2018. *See* E-mail from Jason Luckasevic to Brown Greer (Dispute Rec. Doc. 3). Goldberg also complied with a request from the Claims Administrator and submitted on August 27, 2018 its Statement of Attorney Fees and Expenses. (Dispute Rec. Doc. 5.) As noted above, in response to the Schedule of Document Submissions issued on November 15, 2018 (Dispute Rec. Doc. 6), on December 13, 2018, Goldberg submitted a Statement of Dispute on behalf of Kelly pertaining to Mokaram's attorney lien. Pursuant to Lien Rule 17, the Record of Dispute was then transferred to the Court.

## II. DISCUSSION

Given the posture of this case and the content of the dispute record, we have little difficulty in recommending that Mokaram's lien be rejected and that the entire fee authorized in this case be awarded to current counsel, Goldberg. We outline both our waiver analysis and our merits assessment below.

### A. The Attorney Lienholder has waived its right to assert its lien.

The procedures outlined in the Schedule of Document Submissions described above are grounded in the Amended Rules Governing Attorney's Liens that were approved by the undersigned by Order entered on October 2, 2018 and adopted by Judge Brody on October 3, 2018. (ECF Doc. 10283.) Rule 14 requires the parties to engage in efforts to reach an agreement on the lien dispute. Rule 12 explains that the Claims Administrator will refer the dispute to me or to

---

It is not clear from the record when or how that agreement was provided to the Claims Administrator.

3

another United States Magistrate Judge, either for resolution or for preparation of a Report and Recommendation. Rule 17(a) provides that "each Attorney Lienholder and the current attorney, if the SCM is represented, *must* serve the Claims Administrator with a Statement of Dispute. (Lien Rule 17(a) (emphasis added).) Thereafter, the party in receipt of a Statement of Dispute *may* serve the Claims Administrator with a Response Memorandum to the opposing party's Statement of Dispute. (Lien Rule 18 (emphasis added).) The clear purpose of these Rules is to provide me, as the presiding Magistrate Judge, with support for the positions asserted by the parties.

Mokaram did not file a Statement of Dispute prior to the due date of December 17, 2018 and did not avail itself of the opportunity to respond to Goldberg's Statement on behalf of Kelly. It is abundantly clear to the Court that Mokaram had notification of its obligations under the Rules and that it utterly failed to comply with these minimal requirements. We consider the firm to have forfeited its right to proceed further in this dispute. For this reason alone we would recommend that the lien be denied.

**B.     Our review of the substance justifies the Goldberg position.**

We have set out in previous opinions our approach to the merits of these attorney lien claims based upon CFAs entered into by a SCM. This approach involves our assessment of the reasonableness of the requested fee under the CFA in light of the factors set out by the Third Circuit in *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97 (3d Cir. 1985) ("*McKenzie I*") and *McKenzie Constr., Inc. v. Maynard*, 823 F.2d 43 (3d Cir. 1987) ("*McKenzie II*"). *See* ECF Doc. 10368 at 11-26 (discussing *McKenzie*). We first scrutinize the reasonableness of the CFA at the time of the contract's signing and then determine if the circumstances compel a different evaluation of the CFA at the time of its enforcement. We next examine the results obtained, the quality of the representation provided by the attorney lienholder, and whether the efforts of the attorney

4

lienholder substantially contributed to the result.  *See McKenzie I*, 750 F.2d at 101; *McKenzie II*, 823 F.2d at 45 n.1.

The Mokaram CFA dates to April 19, 2013.  The collective individual cases filed against the NFL prior to this time already had been consolidated into this MDL in January 2012, at which point the risk related to the *volume* of work to be undertaken by a law firm representing a retired player changed dramatically.  Once an MDL was formed, "lawyers contracting to represent clients were well aware that the costs of doing so had been greatly reduced: pre-trial proceedings would now be consolidated and undertaken once and the likelihood that any case would be remanded for trial declined significantly."  (Doc. No. 9526 at 26).  The formation of an MDL also resulted in the creation of the Plaintiffs' Executive Committee ("PEC"), a Plaintiffs' Steering Committee ("PSC"), and other committees that took over the primary work in the case.  *See* Case Management Order Number 5 (Doc. No. 3710 at 3) (detailing types of work shifted from IRPAs to Plaintiffs' Committees, which would be compensated through a common benefit fund).[2]  Moreover, Mokaram was gathering other player-clients during this time, and first included Kelly in a complaint that it filed on behalf of 26 players on December 18, 2013.  Even at the time of contracting, then, it seems reasonable that Mokaram knew that it would have the benefit of economies of scale and would be able to use the knowledge gained through its representation of dozens of class members to provide a more efficiently produced work-product for the firm's individual clients.

---

[2]  We have laid out specifics of this benefit in our initial attorney lien dispute Report and Recommendation.  *See* Doc. No. 10368 at 13-18.

At the time Mokaram asserted its lien on July 5, 2017, the settlement had been approved, Kelly was registered in the Settlement Claims Portal, and an initial claim package had been submitted by Goldberg. It had long known that Kelly's claim would resolve by way of the settlement --- and that it would not be involved in that work.[3] To be sure, the record does not reflect any substantive work performed by either Mokaram or the Stern Law Group on behalf of Kelly at any time after those attorneys filed pleadings on his behalf in 2012 and 2013.

Kelly ultimately was approved for a monetary award of $153,105, which reflected the award set out in the settlement agreement for someone with his diagnosis, age, and limited number of qualifying seasons. We have no reason to believe that result was anything other than a success given Kelly's situation.

The *McKenzie* test next asks us to look at the quality of the representation provided by the attorney lienholder. A search of our Court's dockets reveals that Attorney Jeffrey Stern, who later filed the lien on behalf of Mokaram, included Kelly in a multi-player complaint he filed in the United States District Court for the Southern District of Texas on December 18, 2013. That suit was transferred to this Court on December 31, 2013 and given Civil Action No. 14-21. The complaint, which was signed by Attorney Stern of "The Stern Law Group" and "The Mokaram Law Firm" as "Of Counsel," alleged as to Kelly that:

> 48.   Plaintiff KAREEM KELLY is an individual residing in California. He played professional football for the Saints, Ravens and Bears.

---

[3] It is sufficiently clear to us that Mokaram would have known, long before it filed its lien, that it was not representing Kelly. Goldberg's records reflect contact as early as February 2014 with Stern Law Group, a firm associated with Mokaram. (Goldberg Statement at Ex. A.) *See also* Notice of Attorney's Lien (Doc. 7880), filed July 5, 2017, signed by Jeffrey Stern for Mokaram Law Firm, and listing Ali Mokaram of Mokaram Law firm as the filing party and Jeffrey Stern of Stern Law Group as "of counsel."

(*Id.*, Doc. 1.) In a short form complaint filed on the MDL docket on January 30, 2014, Attorney Stern further alleged that:

> 15. Plaintiff played in [check if applicable] √ the National Football League ("NFL") and/or in [check if applicable] _ the American Football League ("AFL") during **2003 through 2006** for the following teams: **New Orleans Saints, Baltimore Ravens and Chicago Bears.**

(Doc. No. 5722 (emphasis in original).) Any other work performed by the Mokaram firm for Kelly is not apparent to us, despite the assertion in the Petition to Establish Attorney's Lien that the firm "has actively and diligently investigated, prepared, and pursued Plaintiff's claims, and has taken all steps necessary to prosecute those claims, including, but not limited to, correspondence and communications with the client, preparation and review of client's factual and legal circumstances, retaining experts, drafting and providing client updates, analyzing Plaintiff's medical status and need for medical testing, etc." (ECF Doc. 7868, ¶ 5.)

By contrast, Goldberg has presented an attestation, supported with detailed entries, that it performed all of those tasks on Kelly's behalf. Its Statement of Dispute includes a chronology of tasks performed from its initial contact with Mr. Kelly on June 6, 2012 through November 2018, when the Monetary Award was finalized and it turned its attention to resolution of this Attorney Lien. The chronology contains over 60 specific entries identifying the kind of work we would expect counsel to be undertaking. The submission is well-supported and compliant with our process. It makes clear that Goldberg provided a quality representation throughout.[4]

Finally, the *McKenzie* test requires us to consider the extent to which the attorney lienholder's efforts substantially contributed to the favorable result. We have no trouble

---

[4] The docket also reflects that Goldberg filed another short-form complaint on behalf of Kelly on October 27, 2017 as to the Riddell defendants. *See* Doc. No. 8717.

concluding that Mokaram did not substantially contribute to the result achieved for Kelly here. There is no evidence in the record that it performed any tasks for Kelly other than to include him in a multi-player complaint in the Southern District of Texas on December 18, 2013 and to file a short-form complaint here in this district on January 30, 2014 on the MDL docket.  Over a year earlier, however, Goldberg had included Kelly in its multi-player complaint filed on July 26, 2012 in the Superior Court of California, Los Angeles County, and in a short-form complaint filed on the MDL docket on October 4, 2012.  (Doc. No. 3886.)  Goldberg obtained and reviewed medical records throughout and communicated with medical experts and third-parties about their reports and affidavits necessary in support of Kelly's claim.  Goldberg advanced Mr. Kelly several thousands of dollars for medical evaluations or supplemental reports that were generated in 2014 and 2015.  It registered Kelly in the claims portal and supplemented the registration information as necessary in the spring of 2017.  It gathered information regarding Kelly's career history with the NFL pertaining to his eligible seasons and filed his claim form on June 23, 2017, with a re-submission on July 20, 2017.  It also defended the NFL's appeal of Kelly's award.  *See* Goldberg Statement of Dispute at Exs. A, B.  Goldberg's evidence that its work substantially contributed to the favorable result for Kelly is unchallenged.  Moreover, it is corroborated by the client, who asserts in an affidavit that "100% of the work leading up to the award of $153,105.00 to me was performed exclusively by Jason Luckasevic and members of his law firm." *See id.* at Ex. D, Kelly Aff. (11/30/18), ¶ 8. *See also id.* at ¶ 12 (stating that Kelly "specifically disagree[s] with any claim or allegation that the Mokaram & Associates law firm helped me in any way to achieve my award"). The *McKenzie* analysis confirms that the attorney lien of Mokaram should be rejected, as Goldberg has earned the entirety of the fee available from this award.

**III.   CONCLUSION**

We recommend that the Court authorize the Settlement Claims Administrator to disburse the funds withheld for counsel fee to Goldberg in accordance with the provisions of the Settlement Agreement and all Court Orders regarding implementation, including the Court's June 27, 2018 Order Regarding Withholdings for Common Benefit Fund.  (Doc. No. 10104.)  This result is warranted in light of Mokaram's failure to abide by the Attorney Lien Dispute Resolution Process and by the merits of the dispute based upon the information available on the docket and the information supplied by Goldberg and Kelly.

We further recommend that the Settlement Claims Administrator be ordered to disburse the funds withheld for Goldberg's costs in the following manner: $7,036.17 to Goldberg, and the remaining $1,300.00 to Mr. Kelly.[5]

BY THE COURT:

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

---

[5] We do not recommend that the Court authorize reimbursement to Goldberg for the full $8,336.17 in costs asserted, as $1,300.00 of these costs were described "General Costs (pro rata share)."  *See* Goldberg Statement of Dispute at Ex. B.  We appreciate that the CFA provided "the litigation may involve multiple plaintiffs and all costs incurred by [Goldberg] during the litigation may be pro-rated among each plaintiff."  *See id.* at Ex. C, p. 1.  Given the economies of scale inherent in this litigation, and given that we are recommending that Goldberg receive the maximum percentage available fee on this case, we do not find it appropriate to approve further reimbursement for unspecified costs that have not been supported with any documentation.

9