IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Hon. Anita B. Brody |

## ORDER

On April 11, 2019, the Court adopted Revised Rules Governing Qualified MAF Physicians ("Revised Rules"). *See* ECF No. 10527. Movants object to five of these rules, arguing that they are substantial amendments to the NFL Concussion Injury Litigation Class Action Settlement Agreement ("Settlement Agreement") and should not have been adopted without the consent of Class Counsel or notice to the Settlement Class. The Court held a hearing regarding the objections on May 7, 2019. Because the Claims Administrator adequately explains the reasons for these Revised Rules and the Revised Rules do not amend the Settlement Agreement, the Motion to Reconsider will be denied.

The Court adopted the objected-to rules as part of a suite of revised rules designed to ensure the efficient processing of claims and to safeguard the integrity of the claims process. *See* ECF No. 10527. The Revised Rules were adopted under the Court's broad authority to issue administrative orders to foster implementation of the Settlement. In its order approving the Settlement, this Court "retained broad jurisdiction to administer the settlement and resolve issues relating to it." *In re National Football League Players' Concussion Injury Litigation*, --- F.3d ---,

1

No. 18-1040, 2019 WL 1868828, at *8 (3d Cir. Apr. 26, 2019). In addition to the jurisdiction explicitly retained in the order approving the Settlement, this Court also has "authority to enforce its order under the All Writs Act, 28 U.S.C. § 1651, as well as authority to protect the class as a fiduciary under Federal Rule of Civil Procedure 23." *Id*. This Court's continuing jurisdiction over the Settlement includes authority to "enforce the terms of, and administer, the settlement." *Id*. at *9.

Pursuant to this authority, the Court directed the Special Masters and the Claims Administrator to revise the Rules Governing Qualified MAF Physicians. *See* ECF No. 10370. In response to this order, and drawing upon their experience implementing the Settlement Agreement thus far, the Claims Administrator and the Special Masters developed the Revised Rules. These Revised Rules advance the fundamental goal of the Settlement: to process all meritorious claims as efficiently as possible, while ensuring that non-meritorious claims are not paid.

The Claims Administrator's brief adequately explains the reasons for these Revised Rules, why they are necessary to the honorable implementation of the Settlement, and how they will be implemented. The Court will not repeat this explanation, but instead will focus on Movants' legal arguments that the Revised Rules constitute amendments to the Settlement Agreement.

I.  **Rules 9 and 10(b): The 150-Mile Rule and the 50-Mile Rule**

Rule 9 of the Revised Rules states that Retired Players seeking a Qualifying Diagnosis from a Qualified MAF Physician must receive a diagnosis from a MAF Physician whose office is located within 150 miles of the Player's primary residence, unless the Player receives an exception from the Claims Administrator. Rule 10(b) states that if the MAF Physician determines that neuropsychological testing is necessary, such testing will be performed in a

neuropsychologist's regular office within 50 miles of the Qualified MAF Physician's office, unless the Player receives an exception from the Claims Administrator. Rules 9 and 10(b) are to be applied prospectively.

The Claims Administrator may grant an exception to these rules if there is no physician available within the mileage limit, if the wait time to see a physician within the mileage limit is over 100 days, or for any other circumstances the Claims Administrator, in its discretion, determines warrant an exception. For example, the Claims Administrator may grant an exception if a Retired Player has an existing relationship with a MAF Physician, the Retired Player desires to see a MAF Physician with a particular specialty, or if the MAF Physicians within the 150-mile radius do not accept the Retired Player's insurance.

The 150-mile and 50-mile rule are not amendments of or changes to the Settlement Agreement. The Settlement does not provide that Retired Players have an absolute right to choose a MAF Physician. The only relevant portion of the Settlement reads:

> Following the Effective Date, a Qualifying Diagnosis . . . shall be made only by Qualified MAF Physicians, except that a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment may also be made by Qualified BAP Providers.

Settlement Agreement § 6.3(b). Objectors have pointed to no other language in the Settlement Agreement or the Settlement's notice materials that provides Retired Players with the unilateral right to choose a MAF Physician. Thus, while Retired Players have the choice of seeking certain Qualifying Diagnoses from either BAP Providers or MAF Physicians, Retired Players do not have an unfettered right to choose their BAP Provider or MAF Physician.

Additionally, although this rule restricts Retired Players' choice of MAF Physicians, it does not eliminate that choice entirely. Far from it: this is a flexible rule with broad exceptions. Retired Players who live within 150 miles of multiple MAF Physicians may choose freely among

those Physicians, and Players seeking an exception may request to see any MAF Physician in the network. What this rule *does* prevent is lawyers manipulating the claims process by "forum shopping" for MAF Physicians. This kind of "forum shopping" is contrary to the principles of the Settlement—that Retired Players may receive claim awards only if they meet certain objective medical criteria.

Finally, the NFL does not, and will not, ever choose which MAF Physician a Retired Player sees. The MAF Physicians are agreed upon by both the NFL Parties and Co-Lead Class Counsel: either party has the power to veto the appointment of a MAF Physician, for any reason. This is the only role the NFL plays in choosing MAF Physicians, and the Revised Rules do not enlarge this role.

**II.     Rule 20: The "Generally Consistent" Explanation**

Rule 20 requires MAF Physicians who make a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment to explain, in writing, how their diagnoses are "generally consistent" with the BAP diagnostic criteria. This is a purely administrative rule that will increase the information provided to the Claims Administrator during the claims process, thus improving the efficiency of claims processing. It in no way changes the medical criteria for a Qualifying Diagnosis made by a MAF Physician nor otherwise alters the Settlement Agreement.

**III.    Rule 23: The AAP Leadership Council**

Rule 23 creates a new Appeals Advisory Panel ("AAP") Leadership Council, and designates two AAP Members who will be available to provide the Claims Administrator with advice and assistance on any medical issues that arise during the Claims Administrator's

monitoring of the work of Qualified MAF Physicians. This is not a change to the Settlement Agreement, but only formalizes one of the Settlement's provisions.

The Settlement defines the Appeals Advisory Panel as a panel of physicians, agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties and appointed by the Court, "any one of whom is eligible to advise the Court or the Special Master with respect to medical aspects of the Class Action Settlement and to perform the other duties of the Appeals Advisory Panel set forth in this Settlement Agreement." Settlement Agreement §2.1(g). Rule 23 merely formalizes part of the role of the AAP role: advising the Court or Special Master with respect to medical aspects of the Settlement. The AAP Leadership Council will not function as an extra level of review for claims, but will only serve to give as-needed medical advice to the Claims Administrator. Ensuring that the Claims Administrator has access to this expertise during the claims process will streamline the processing of claims.

### IV.    Rule 13(k): Avoidance of Questionable Practices

Rule 13(k) states that a MAF Physician may not conduct a MAF examination or diagnose a Retired Player who is represented by a lawyer or law firm for which the MAF Physician provides services as an expert witness. This is a commonsense rule designed to remove a possible conflict of interest from the claims process. Although objectors are correct that the Settlement expressly prohibits MAF Physicians from working as litigation experts for opt-outs, the Settlement does not say that this is the only ethical rule that may be applied to MAF Physicians. Rule 13(k) is not an amendment of the Settlement Agreement.

**AND NOW**, this _16___ day of May, 2019, the Motion for Reconsideration (ECF No. 10582) is **DENIED**.

    __ABB_____
    ANITA B. BRODY, J.

Copies VIA ECF 5/16/19