**Co-Lead Class Counsel's Response to the NFL's Appeal of the Special Master's March 19, 2019 Denial of the NFL's Appeal of the Claim Determination for ▮▮▮**

The NFL, in its Appeal of the Special Master's March 19, 2019 Denial of its Appeal of the Claim Determination for ▮▮▮, argues that the Special Master abused his discretion by failing to consult with an Appeals Advisory Panel Consultant ("AAPC") in deciding the appeal because the appeal "concerned the highly technical issue of egregious performance validity failures on neuropsychological testing." (NFL Objection at 1.) As the Court is aware, this appeal is not the first time the NFL has argued that the Special Master should be required to consult with an Appeals Advisory Panel ("AAP") member and/or an AAPC when deciding appeals. In fact, the NFL initially took the position that the Special Master is required to consult with an AAP member and/or an AAPC in *every* appeal. When that argument was rejected by the Special Master, the NFL shifted course and argued that the Special Master should be required to consult with an AAP member and/or an AAPC when appeals "turn on technical, medical grounds." The Court rejected that argument in its April 12, 2019 Order Pursuant to Settlement Implementation Determination ("April 12, 2019 Order"), finding that:

> [t]he decision to not consult an AAP member and/or an AAPC was within the range of reasonable choices available to the Special Master. It was not 'arbitrary, fanciful, or clearly unreasonable' for the Special Master to decide that he was capable of reviewing these claims appeals, including technical medical evidence, without outside assistance.

(April 12, 2019 Order at 3.)

Undaunted by the Court's April 12, 2019 Order, the NFL, once again, is arguing that the Special Master must consult with an AAP member and/or AAPC in certain cases, and failure to do so constitutes an abuse of discretion. Specifically, the NFL's newest argument is that whenever the "entire appeal turned on the highly technical issue of extreme performance validity failures in

neuropsychological testing", the Special Master must consult with an AAPC. The NFL's latest attempt to mandate AAPC review of certain appeals must fail. Simply by describing the issue as a "**highly** technical issue" as opposed to a "technical medical issue" does not change the analysis. As the Court stated in its April 12, 2019 Order, "[i]f the parties wished for compulsory AAP or AAPC review of certain claim appeals, they could have put this in writing." (April 12, 2019 Order at 2).

Based on the history of the ▇▇▇ claim, there is even less basis for the NFL's "abuse of discretion" argument than in the NFL's appeal of the 17 cases which resulted in the April 12, 2019 Order. First, because the Qualified BAP Providers (neurologist and neuropsychologist) did not agree on Mr. ▇▇▇'s Qualifying Diagnosis, the Claims Administrator sent Mr. ▇▇▇'s BAP test results, and other medical records, to an AAP member for review and decision, pursuant Section 5.13 of the Settlement Agreement. Section 5.13 states, in relevant part:

> If there is a lack of agreement, as required by Section 5.2 and Exhibit 1, between the two Qualified BAP Providers regarding whether a Retired NFL Football Player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none, the BAP Administrator may in its discretion: . . . (c) refer the results of the BAP baseline assessment examination and all relevant medical records to a member of the Appeals Advisory Panel for review and decision. The decision of the **member of the Appeals Advisory Panel** will determine whether the Retired NFL Football Player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none. . . The decision of the **Appeals Advisory Panel member** as to whether the Retired NFL Football Player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none, will be final and binding, except a claim for a Monetary Award or Derivative Claimant Award relying on such diagnosis may still be appealed, as set forth in Section 9.5.

(emphasis added).

The Settlement Agreement, as referenced above, specifically mandates that an AAP member, *not an AAPC*, make the decision when the Qualified BAP Providers cannot agree. Since

2

one of the Qualified BAP Providers is a neuropsychologist, almost every situation where the Qualified BAP Providers cannot agree is going to involve an issue that one may consider to be a "highly technical issue" regarding the interpretation of neuropsychological test results. Yet, the parties specifically agreed, as demonstrated by the cited language from Section 5.13, that the AAP member (a neurologist), *not the AAPC* (a neuropsychologist), is responsible for making the decision when the Qualified BAP Providers cannot agree. In addition, while AAP members always have the discretion to consult with an AAPC, such consultation is not required. Again, as the Court stated in its April 12, 2019 order, "[i]f the parties wished for compulsory AAP or AAPC review of certain claim appeals, they could have put this in writing." (April 12, 2019 Order at 2). The NFL cannot now take the position that parties intended for AAPCs to make the determination in certain cases.

The ▆▆▆ facts are also different from the facts of the 17 cases subject to the April 12, 2019 Order in that those 17 claims were all based on Qualifying Diagnoses rendered by either a Qualified MAF Physician or a Qualified BAP Provider. Accordingly, none of those cases had been reviewed by an AAP member at either the claim determination or appellate level. The fact that no AAP member had ever reviewed those cases was the main basis for the NFL's argument as to why the Special Master should have been required to consult with an AAP member. Mr. ▆▆▆'s claim is different. As described above, Mr. ▆▆▆ Qualifying Diagnosis **was** reviewed by an AAP member, as mandated by Section 5.13 of the Settlement Agreement. That process, agreed to by the parties, requires *only* AAP involvement. However, the NFL now seeks to require AAPC involvement in cases, like Mr. ▆▆▆'s, that the parties expressly agreed did not require AAPC involvement. Accordingly, the NFL's appeal must fail.

3

## CONCLUSION

Mr. ▓'s Qualifying Diagnosis was rendered by an AAP member who, in accordance with the terms of the Settlement Agreement, reviewed Mr. ▓'s BAP test results and other medical evidence, before issuing a decision. While the NFL had the right to appeal Mr. ▓'s award, it did not have the right to require that the Special Master consult with an AAPC before deciding that appeal. The Settlement Agreement allows the Special Master the discretion to consult with an AAP member and/or an AAPC when deciding appeals. That discretion applies to all appeals, which by their very nature, involve "highly technical issues" involving the interpretation of neuropsychological test results. In fact, this Court has already found that the Special Master is capable of reviewing claim appeals that involve technical medical evidence, without consulting with an AAP member or an AAPC. Accordingly, the Special Master did not abuse his discretion by deciding the NFL's appeal without consulting an AAPC. The NFL's appeal should be denied.

Respectfully submitted,

SEEGER WEISS LLP
/s/ Christopher A. Seeger
Christopher A. Seeger
David R. Buchanan
Michael L. Rosenberg
Scott A. George
CO-LEAD CLASS COUNSEL

Dated; May 8, 2019