UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>           Plaintiffs,<br><br>                v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>           Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**THIRD VERIFIED PETITION OF CLASS COUNSEL
CHRISTOPHER A. SEEGER FOR AN AWARD OF
<u>POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS</u>**

Pursuant to this Court's May 24, 2018 Explanation and Order (ECF No. 10019), and subsequent to the Second Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs (ECF No. 10374) ("Second Post-Effective Date Petition"), Class Counsel Christopher A. Seeger ("Class Counsel" or "Seeger Weiss") respectfully submits this Third Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs.

Based on the work undertaken from December 1, 2018, the first date after the close of the time period covered by the Second Post-Effective Date Petition,[1] to May 31, 2019, Seeger Weiss has undertaken work for the common benefit of the Settlement Class and dedicated over 2,100 hours, resulting in a lodestar (calculated using the blended rates set by the Court; *see* ECF No. 10019 at 7 n.4) of $1,445,488.66, and has incurred $243,788.10 in expenses.

**SUMMARY OF WORK COMPLETED – DECEMBER 1, 2018 TO MAY 31, 2019**

As was discussed in the Second Post-Effective Date Petition, the work of implementation of the Settlement continued alongside the on-going monitoring and oversight that the Settlement will continue to demand over the remainder of its term.  Although the foundational work necessary to establish this 65-year settlement was largely completed by the time of the Second Post-Effective Date Petition, several substantive matters above and beyond the monitoring and oversight of the Settlement continued to demand the attention and resources of Class Counsel.  Additionally, monitoring the Settlement Program to ensure that it continues to deliver the promised benefits to the Settlement Class has continued to require sundry efforts.

Among these efforts were revisions to the MAF and BAP policies and documentation, monitoring and oversight of the medical professionals in the network of Qualified MAF Physicians and BAP Providers, support of Class Members through the Claims Process, including on appeals, ongoing support of unrepresented Class Members and individual counsel, and work concerning the Education Fund (specifically, in determining appropriate programs and research resources contemplated for the Fund).  During the time period covered by the instant Petition, two significant

---

[1] The Second Post-Effective Date Petition covered the period from May 25, 2018 to November 30, 2018.  *See* ECF No. 10374 at 1.

2

deadlines in the Settlement took place or were imminent. Class Counsel coordinated with the Claims Administrator to ensure that players and their families with pre-Effective Date Diagnoses had no issue with the February 6, 2019 deadline for the filing of Monetary Award[2]. To that end, Class Counsel directly assisted unrepresented Settlement Class Members in meeting this deadline. Similarly, Class Counsel worked with the BAP Administrator to ensure that all players eligible for the BAP and who faced the June 6, 2019 deadline for their examinations[3] timely requested the BAP examinations to which they were entitled. As to both deadlines, Class Counsel sent reminder letters to all unrepresented Retired Players and all private counsel representing Retired Players regarding the February 6, 2019 deadline to file Pre-Effective Date claims, and also sent letters to all BAP-eligible Retired Players born on or before June 6, 1974, and their counsel, reminding them about the June 6, 2019 deadline to take their BAP exams.

Additionally, as with the Second Post-Effective Date Petition, Class Counsel continued to engage in certain significant work that was unanticipated, but which was essential to ensure the integrity of the Settlement Program and the benefits negotiated for the Retired NFL Football Players and their families. Most notably, this work included securing an Order of the Court that affirmed that the Special Masters are not required but, rather, have the unfettered discretion to consult with members of the AAP when deciding appeals (*see* ECF No. 10528), shoring up an inclusive definition of "generally consistent" for diagnoses made outside of the BAP, and

---

[2]  For the sake of simplicity and brevity, "Monetary Awards" refers to both Monetary Awards and Derivative Claimant Awards under, respectively, Articles VI and VII of the Settlement Agreement.

[3]  Under the Settlement Agreement, BAP-eligible players born on or before June 6, 1974 had until June 6, 2019 to have their BAP exams. Settlement Agreement § 5.3. To accommodate the practicalities of the BAP scheduling and appointment process, Class Counsel worked with the BAP Administrator to allow initial efforts by a player to schedule examinations to satisfy the deadline. The NFL consented to this accommodation.

providing that players on the practice squad received credit toward half an Eligible Season for bye weeks.

As of May 28, 2019, over 20,500 Settlement Class Members had registered for the Settlement Program, over 2790 Claim Packages had been submitted, 863 Notices of Monetary Awards had been issued, worth over $657 million; and over 10,230 BAP examinations had been scheduled for 5,870 players and over 9,281 appointments had been attended.[4]  *See* www.nflconcussionsettlement.com/Reports_Statistics.aspx (last accessed July 18, 2019).  These successes are not mere happenstance.  Seeger Weiss has worked tirelessly in coordination with the Administrators, the Special Masters, and the Court—and both cooperatively with and, as circumstances have warranted, against the NFL—to facilitate and oversee the Settlement.  The bi-weekly call that Seeger Weiss hosts with the NFL Parties, the Claims Administrator, the BAP Administrator, and the Lien Resolution Administrator, where ongoing issues and progress in resolving them are hashed out, has been a central component of these efforts.  Approximately 129 of these bi-weekly calls had taken place by the May 31, 2019 closing date of this petition.  Work on the Settlement has been a daily matter, requiring the dedication of several Seeger Weiss attorneys and paraprofessionals, and has focused around certain key areas that are summarized in the sections that follow.

---

[4]  Historic statistics related to the MAF are available on the Settlement Website.  *See* www.nflconcussionsettlement.com/Reports_Statistics.aspx (last accessed July 18, 2019).  Historic BAP statistics are not maintained on the Settlement Website.  The BAP Administrator, however, filed his Second Quarter Report on May 31, 3019 (ECF No. 10653).

Oversight of the Claims Process and Monetary Award Determinations.

Seeger Weiss devoted significant time to actively monitoring and supporting the Claims Process to ensure that Class Members are receiving the benefits that were negotiated on their behalf.  This oversight included ongoing reporting and requests for information from the Claims Administrator and reviewing each claim determination by a member of the AAP or the Claims Administrator to ensure that they are correctly following the terms of the Settlement Agreement.  Class Counsel's continuing engagement with Settlement Class Members and their counsel provided further bases and guidance on the needs of the Claims Process.  This type of "hands on" support was particularly needed in the lead-up to the February 6, 2019 deadline for the filing of pre-Effective Date claims, and the June 6, 2019 BAP deadline for those BAP-eligible players born on or before June 6, 1974.

Moreover, Class Counsel continues to support the petitions of Representative Claimants for Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis but who died before January 1, 2006.   Pursuant to the Settlement Agreement, before these claims can proceed to review on the merits, the Court needs to determine whether they are timely under the applicable state's law.  *See* ECF No. 6481-1 at 35 (Settlement Agreement § 6.2(b)).  Since the Second Post-Effective Date Fee Petition, Cass Counsel has submitted several additional Statements in support of the Representative Claimants' submissions that such claims are timely under the Settlement Agreement.

Furthermore, just as it had worked to ensure inclusion of protections for the interests of Class Members in the audit rules and procedures, Class Counsel has remained engaged in supporting Class Members with ongoing audits of claims.  In particular, Class Counsel has submitted Statements regarding the Claims Administrator's referrals to the Special Masters and

replies in those referral accepted by the Special Masters, to make certain that meritorious claims are not unduly caught up in the audit process and to ensure that the focus of any inquiry be on only those parties (e.g., medical and legal professionals) that may have engaged in behavior not permitted under the terms of the Settlement. More generally, Seeger Weiss monitors the progress of audit investigations and provides formal input at each juncture.

As in the prior implementation periods, Class Counsel has worked to protect the interests of Class Members (and will continue to do so) by monitoring the wider operation of the Settlement Program and addressing with the Claims Administrator all manner of issues as they arise.

Appeals of Claims Determinations.

Seeger Weiss has continued to monitor all Monetary Award determinations to provide guidance to Class Members. In those cases where an appeal from a determination is taken, either by a Class Member or the NFL Parties, Class Counsel also determines whether to file a Statement in support of the player's position. Through this active engagement, Seeger Weiss' goal is to make sure that Class Members' entitlement to benefits is not restricted or foreclosed outright by improper interpretations of the Settlement Agreement or by meritless appeals taken by the NFL. Whether through submitting Statements in support of a Class Member's appeal or through direct support of unrepresented Class Members and individual counsel, Class Counsel pursued, among other things: a determination, based on the NFL's Collective Bargaining Agreement, that players on the practice squad will earn credit toward half an Eligible Season for "bye" weeks; the application of the correct injury definition for Alzheimer's disease for deceased players, which differs from the injury definition for living players; and the proper use of screening tests, such as MMSE and MoCA, which are not designed to be used to rule out a Qualifying Diagnosis of Level 1.5 or 2 Neurocognitive Impairment. Regarding the "bye" week success, the player whose appeal

raised the issue had his monetary award increased by approximately $150,000 while 37 other players received an additional half of an Eligible Season and eight of these players became newly eligible for the BAP.

### Maintenance of the Networks of Qualified BAP Providers and Qualified MAF Physicians.

The process of identifying and vetting BAP Providers and Qualified MAF Physicians is on-going as the BAP and MAF networks continue to require qualified neurologists and neuropsychologists (BAP only) in new regions, to add medical professionals in existing regions and to replace those providers no longer in the program. That process involves a detailed review of each provider's curriculum vitae and application, as well as an investigation concerning such candidates' qualifications.  Seeger Weiss has continually been engaged in this effort.

### BAP Examinations and Supplemental Benefits.

Beyond its role in helping to maintain the BAP network of Providers, Seeger Weiss continues to monitor the BAP to ensure that examinations are scheduled efficiently and appropriate standards are followed.  Moreover, in coordination with the BAP Administrator, Class Counsel has continued to roll out BAP Supplemental Benefits for those Retired NFL Football Players whose BAP examinations yield a diagnosis of Level 1 Neurocognitive Impairment.  These efforts include monitoring initial orientation of such eligible players, first consultations, and the expansion of covered services to allow each player to receive the care most appropriate to his condition. As of the BAP Administrator's last Status Report, 85 players had received Level 1 diagnoses and were either in the process of selecting the BAP Provider who will be overseeing their treatment and benefits, or were already receiving their Supplemental Benefits.  These benefits include a range of therapeutics, pharmaceuticals, and diagnostic and imaging services, and require additional contracting with BAP Providers as well as with those entities outside of the BAP network of

Providers who will provide many of the services. Class Counsel has also monitored these retention efforts by the BAP Administrator. Finally, in anticipation of the June 6, 2019 deadline for BAP exams, and in coordination with the BAP Administrator, Class Counsel negotiated a compromise with the NFL that offered the players subject to the deadline an extension so long as they request an appointment by the deadline (as opposed to completing the examinations).

Fielding Communications from, and Supporting, Class Members and Individual Counsel.

Seeger Weiss continues to receive (and address) hundreds of telephone calls and emails each month from Class Members and attorneys representing Class Members. The inquiries involve all manner of issues concerning the Settlement, including the claims process, matters relating to post-Effective Date examinations through the BAP and MAF, liens, and appeals. Seeger Weiss handles every inquiry and has assisted numerous Class Members in successfully navigating the claims process. Class Counsel has further assisted unrepresented Class Members in gathering necessary documents, including medical records, and completing their claims packages so that their claims can be promptly reviewed and, where qualifying, approved. Class Counsel also frequently speaks and corresponds with counsel representing Class Members concerning, *inter alia*, questions they have about the claims process, the Settlement's Frequently Asked Questions (which guide the claims process), and otherwise offering support to ensure that qualifying claims are properly presented and paid. Given the deadline to file pre-Effective Date claims and the deadline for certain players to take BAP exams fell within the time period covered by this Petition (along with Class Counsel's reminder letters), Class Counsel received a very high number of calls and correspondence during this period.

Efforts to Protect Class Members from Third-Party Profiteers.

Class Counsel has continued its efforts to protect Class Members whom litigation funders lured into putative assignments of their prospective Monetary Awards.[5] Professor Issacharoff presented oral argument in the Third Circuit in the appeals taken by several third-party funders who challenged the Court's declaration that their putative assignment agreements were void. *See* ECF Nos. 9558, 9755, 9794, 10027, 10141 (notices of appeal filed by various funders). In a victory for the players, the Third Circuit affirmed the authority of this Court to protect the *res* along with the players from prohibited assignments. *See Nat'l Football League Players' Concussion Injury Litig.* 923 F.3d 96, 107-10 (3d Cir. 2019).

Education Fund and Medical Research Data.

Class Counsel and the NFL Parties continued exploring organizations that support safety and injury protection in football and may be appropriate recipients of proceeds from the $10 million Education Fund that was established as part of the Settlement. *See* ECF No. 6481-1 at 68 (Settlement Agreement, art. XII). In that regard, the Parties are in advanced discussions with an initial candidate organization.

Similarly, the Settlement Agreement contemplated that the medical records and information that would be generated through the free BAP examinations provided to consenting and eligible Retired NFL Football Players would be made available for medical research.[6] *Id.* at 33 (Settlement Agreement § 5.10(a)). Class Counsel continued efforts with the BAP

---

[5] As the Court is already well aware from the copious briefing of the assignment issues, these putative purchases of Class Members' prospective Monetary Awards at steep discounts (often exceeding 50%) were cleverly packaged as what are, in effect, advances against the awards at usurious rates of interest. *See* ECF No. 8434 at 7 & n.2.

[6] As further provided in the Settlement Agreement, player confidentiality will be maintained.

Administrator, the Claims Administrator, its own expert, a potential university partner, and the NFL Parties to establish a medical research database that will gather, systematically organize, and maintain the medical information that the BAP Administrator is collecting from the BAP Examinations.

Class Counsel anticipates presenting a formal motion to the Court for approval of the organizations that will be engaged in both initiatives and for and initial release of some portion of the Education Fund to commence both programs.

## INITIAL ASSESSENT OF ON-GOING WORK NECESSARY TO OVERSEE AND MAINTAIN THE SETTLEMENT PROGRAM

As is evident from the foregoing, Class Counsel's efforts to ensure that the Settlement Program is implemented in accordance with the Settlement Agreement has borne substantial fruit for the players and their families.  Unlike prior fee petitions, this Third Fee Petition marks the first period where the majority of Class Counsel's efforts have been dedicated to the oversight and maintenance of the Settlement Program, as opposed to the development and implementation of the program.  These daily oversight and maintenance tasks, however, are themselves demanding and will continue to require commitments by Class Counsel as the submission of Claims Packages to the Claims Administrator and the BAP process continue.  With the deadline for filing Claims based on pre-Effective Date Qualifying Diagnoses recently passed, Class Counsel anticipates that the volume of all claims-related activity will remain high for several more months as these Claims, as well as any related deficiencies and appeals, are processed.

Three key areas illustrate the kinds of responsibilities Class Counsel undertakes and will continue to undertake as part of its on-going monitoring and oversight of the Settlement.[7] Looking forward, Class Counsel anticipates that the following areas will comprise its primary monitoring and oversight obligations.

*Daily Communications with Unrepresented Players and Lawyers*

In the period since the last Petition, Class Counsel received hundreds of calls and emails each week in advance of key milestones (e.g., the pre-Effective Date Claims deadline). Currently, Seeger Weiss receives approximately one hundred calls and emails each month. Calls are initially received by a dedicated paralegal, who often can address the caller's needs. Those calls that present a more complex issue or problem and require investigation and engagement with the Claims Administrator and/or the BAP Administrator, are escalated to an attorney. Some calls

---

[7] In its April 5, 2018 Memorandum addressing the aggregate award of common benefit fees and expenses, the Court noted that it hoped to address the question of the nature and amount of on-going work to determine the funds that will be appropriate for the duration of the Settlement program, including the potential need for the imposition of a holdback from Monetary Awards, for the purposes of compensating the on-going monitoring and oversight of the Settlement. *See* ECF No. 9860 at 2, 17-18 & n. 1. Although Class Counsel is unable to provide a sum certain at this juncture, Class Counsel makes this proffer to lay the foundation for an estimate of the nature and amount of work that the Settlement program will demand on a long-term basis. With respect to the amount of work anticipated, Class Counsel notes that, consistent with previous representation that once the "start-up" efforts were substantially concluded, future implementation-related petitions would likely be for smaller attorneys' fees awards, the hours submitted with this Petition are substantially fewer (only 60%) than those submitted in the Second Post-Effective Date Fee Petition. The deadline for pre-Effective Date claims has passed, with a subsequent, marked increase in claims to be processed. In the month leading up to the pre-Effective Date claim deadline, over 500 Claims were submitted, 170 of which were submitted by unrepresented Settlement Class Members (who may require particular attention from Class Counsel). As these claims are processed and the number of new MAF/BAP claims reaches a new baseline, Class Counsel will be in a better position to frame both the scope and volume of the expected ongoing work.

11

result in long-term assistance, including help with obtaining and reviewing medical records, assistance with Claim forms, or appeals (or in some case all three).

*Review and Responses to Daily MAF Notices – Claims Determinations through Appeals*

Since the launch of the Settlement, 863 Notices of Monetary Awards have been issued, and that number increases with each passing day.  Class Counsel reviews each Notice for accuracy and possible issues that may impact the amount of award to which a Settlement Class Member is entitled (e.g., age at diagnosis, wrong diagnosis date, Eligible Seasons).  Through its investigation and work with the Claims Administrator, Class Counsel's vigilance and engagement has resulted in increases to Monetary Awards for several players.

Relatedly, since the launch of the Settlement, 648 Notices of Denial of Monetary Awards have been issued, and that number similarly increases with each passing day.  As with the Notices of Monetary Awards, Class Counsel reviews each of these denial notices for accuracy and possible issues that may have led to an imprudent denial.  Class Counsel contacts every unrepresented Settlement Class Member to explain the decision and discuss possible next steps.  Alongside these efforts, Class Counsel investigates any issues that may exist, seeks expert medical and scientific guidance (as may be required), and works with the Settlement Class Member (or their counsel) to reach the best resolution.

In addition, since the launch of the Settlement, 351 appeals from claims determinations have been taken by Settlement Class Members or the NFL, and several appeals have led to post-appeal briefing.  Throughout the administrative appeals process, Class Counsel reviews all filings by the Settlement Class Members and the NFL, both to determine whether a Statement from Class Counsel is warranted and to provide all appropriate support to unrepresented Settlement Class Members or their individual counsel.  As the Special Master issues decisions on Appeals, Class

12

Counsel tracks each determination for potential precedential value, monitors objections that may be submitted to the determinations and, as with the initial appeals process, provides support to Settlement Class Members and may submit Statements in their support.

Finally, over 800 audit notices have posted since the launch of the Settlement. Class Counsel reviews each audit notice to determine the basis of the audit and the position that Class Counsel will be taking, raising any initial issues with the Claims Administrator that may lead to a quicker resolution of the audit. For those audits that lead to a formal proceeding, Class Counsel seeks to protect the interests of the affected Settlement Class Members, including possible referral to the Special Masters and/or decision by the Special Masters when referral is taken.

*Ongoing Settlement Coordination and Communication with Administrators*

Beyond the engagement with the daily MAF Notices, Class Counsel addresses a wide range of ongoing issues that arise in the course of the Settlement Program. In addition to internal coordination within Seeger Weiss, including regularly scheduled team calls, Class Counsel is in regular communication with the Claims Administrator, the BAP Administrator, and the Lien Resolution Administrator to discuss current "action" issues. These communications take place at what is now a biweekly call, which includes the NFL, as well as throughout the week via email or calls with particular personnel at the Claims Administrator and BAP Administrator to identify and move toward resolution of issues as they arise.

**SUMMARY OF HOURS & LODESTAR AND EXPENSES INCURRED**

Throughout the time period covered by this Petition, Class Counsel dedicated 2,180.1 hours, for a lodestar of $1,445,488.66. This calculation is based on the blended rates established by the Court,[8] and reflects the following[9]:

| Professional Rank | Total Hours |
|---|---|
| Partners[10] | 1327.1 |
| Counsel | 352.7 |
| Associates | 285.7 |
| Paralegals | 214.6 |
| TOTAL | 2,180.1 |

Seeger Weiss also incurred $243,788.10 in expenses.

---

[8] As directed by the Court, the lodestar billed employs the blended rates that the Court prescribed in its May 24, 2018 allocation order. Accordingly, the billing rate for partners is $758.35; the rate for "counsel" or "of counsel" attorneys is $692.50; the rate for associates is $486.67; the rate for contract attorneys is $537.50; and the rate for paralegals is $260.00. *See* ECF No. 10019 at 7 n.4.

[9] Class Counsel stand ready to submit supporting time records and supporting backup for expenses to the Court for *in camera* review.

[10] This includes 50.3 hours for Prof. Issacharoff's time dedicated to his work before the Third Circuit, particularly that relating to oral argument in opposition to the appeals of third-party funders.

## CONCLUSION

WHEREFORE, the undersigned, as Class Counsel, respectfully requests that the Court approve this Third Post-Effective Date Fee Petition for Post-Effective Date Attorneys' Fees and Costs and award $1,689,276.76, which reflects $1,445,488.66 in attorneys' fees based on the blended rates established by the Court, and $243,788.10 for reimbursement of expenses, to be paid from the Attorneys' Fees Qualified Settlement Fund.

Date:  July 25, 2019

    Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
cseeger@seegerweiss.com
Telephone:  (212) 584-0700

*CLASS COUNSEL*

## **VERIFICATION**

CHRISTOPHER A. SEEGER declares, under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746, that he is the Petitioner in this matter, has read the foregoing Third Verified Petition of Class Counsel Christopher A. Seeger for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs, and knows the contents thereof, and that the same are true to his personal knowledge, information, and belief. Executed this 25th day of July, 2019.

                                              */s/ Christopher A. Seeger*
                                              CHRISTOPHER A. SEEGER

**CERTIFICATE OF SERVICE**

I, Christopher A. Seeger, hereby certify that a true and correct copy of the foregoing was served electronically via the Court's electronic filing system on the date below upon all counsel of record in this matter.

Dated: July 25, 2019

*/s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER