UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>                                Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.<br>                                Defendants. | Civ. Action No.: 14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br>Settlement Class Member ▆▆▆ ▆▆▆<br>(SPID 100007094) | Hon. Anita B. Brody |

**THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC
OBJECTION TO THE SPECIAL MASTER'S FEBRUARY 28, 2019
RULING CONCERNING THE MONETARY AWARD CLAIM
<u>DETERMINATION FOR</u>** ▆▆▆▆▆▆

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

Preliminary Statement ............................................................................................................... 1

Background .............................................................................................................................. 3

ARGUMENT ........................................................................................................................... 6

    A.    The Special Master's Interpretation Allowing Backdating of Qualifying Diagnoses Violates the Unambiguous Terms of the Settlement Agreement .......... 6

    B.    The Special Master Abused His Discretion in Failing to Consult with an AAP Member in Connection with the NFL Parties' Appeal .................................. 9

Conclusion ............................................................................................................................. 10

The National Football League and NFL Properties LLC (collectively, the "NFL Parties") respectfully submit this Objection to the Special Master's February 28, 2019 decision denying their appeal of the Monetary Award granted to Settlement Class Member ███ ███ ("Claimant").

### Preliminary Statement

Claimant ███ ███ submitted a claim based on a Qualifying Diagnosis of Alzheimer's Disease ("Alzheimer's") rendered by Qualified MAF Physician Dr. ███ who first evaluated and diagnosed Mr. ███ on October 11, 2018. The NFL parties do not contest the Alzheimer's diagnosis as of that date. Instead, the NFL Parties contest the *backdating* of that diagnosis by *nearly six years* based on Dr. ███ records review of prior examinations by highly qualified physicians who never diagnosed Claimant with Alzheimer's and, in fact, specifically found that Claimant did *not* merit an Alzheimer's diagnosis as of the date of their evaluations.

Dr. ███ backdating of Claimant's Qualifying Diagnosis is inconsistent with the plain terms of the Settlement Agreement. Under the Agreement, a Qualifying Diagnosis may be backdated only where the claimant's prior physician provided the same Qualifying Diagnosis but then became unavailable to sign a Diagnosing Physician Certificate due to death or legal incapacity. (Settlement Agreement § 8.2(a)(iii).) But the circumstances here are precisely the opposite: Claimant's prior physicians did *not* provide an Alzheimer's diagnosis (indeed, they specifically disclaimed that diagnosis) and they are neither dead nor legally incapacitated.

Claimant defends the backdating of his diagnosis based on Settlement Program FAQ 93, which—contrary to the strict limitations on backdating set forth in the Settlement Agreement— purports to allow a diagnosing physician to use "his or her sound medical judgment" in deciding, based on a review of prior medical records and other information, that "the Player's Qualifying

Diagnosis conditions existed at a date earlier than the date of [that physician's] personal examination of the Player." (Ex. 1 at 8–9, Settlement Program FAQ 93 ("FAQ 93").) The NFL Parties objected to FAQ 93 at the time it was promulgated, and respectfully submit that FAQ 93 impermissibly and materially changes the terms of the Settlement Agreement to the extent it expands the circumstances in which a Qualifying Diagnosis may be backdated beyond those situations specifically agreed to by the Parties.

But even if this Court were to determine that FAQ 93 is valid (and it is not), that FAQ explicitly requires that any backdated diagnosis "be strictly scrutinized in the claims review process," and strict scrutiny was not applied in this case. (*Id.*) For strict scrutiny to have any meaning in this context, it must involve consultation with an Appeals Advisory Panel ("AAP") member, who would review the prior medical records and other information purportedly supporting the diagnosing physician's "sound medical judgment" that the physician can "pinpoint an earlier date" at which the "Player had the conditions amounting to a Qualifying Diagnosis." (*Id.*) Mere lay review by the Special Master of complex medical records—filled with specialized medical terminology, jargon and shorthand—cannot constitute strict scrutiny in these circumstances. Here, there is no indication that the Special Master consulted with an AAP member on whether the earlier medical records and other information support a "sound medical judgment" that Claimant had Alzheimer's Disease almost six years earlier. The Special Master's failure to consult with an AAP member in this case constitutes an abuse of discretion.

In fact, strict scrutiny by an AAP member undoubtedly would result in denial of the backdated diagnosis because the medical records Dr. ▮▮▮▮ reviewed show that the highly qualified medical professionals who examined Claimant in 2012 and 2013—including a neurosurgeon, neuropsychologist, and neurologist specializing in memory disorders—determined

2

that Claimant had dementia or another form of cognitive disorder but did *not* have Alzheimer's at that time. Indeed, one of those examining doctors was current AAP member Dr. ▇▇▇ ▇▇▇▇▇▇ who evaluated Mr. ▇▇▇▇ three times in 2013 and concluded that "[n]either the neuropsychological testing nor the bedside exam today raise particular suspicions for Alzheimer['s] disease or other progressive degenerative disorders as the cause of the symptoms at this time," but noted that Claimant's risk of developing the disease in the future "is high." (Ex. 2 at 4, Jan. 4, 2013 ▇▇▇▇▇ Report.) The fact that Claimant ultimately was diagnosed with Alzheimer's in 2018 is not a basis to retroactively conclude that he met the criteria for Alzheimer's Disease six years earlier—particularly when that diagnosis was considered, and rejected, by medical experts at that time.

For these reasons, this Court should overturn the Special Master's decision and direct, consistent with the Settlement Agreement, that Claimant's diagnosis date is October 11, 2018 for purposes of calculating his Monetary Award. Alternatively, to the extent the Court determines that FAQ 93 is valid, the Court should remand the appeal to the Special Master with direction to consult with an AAP member (other than Dr. ▇▇▇▇▇) on the appeal.

## Background

The definition of Qualifying Diagnoses was a key and heavily negotiated component of the Settlement Agreement. For a Qualifying Diagnosis of Alzheimer's, the Settlement Agreement requires that a Qualified MAF Physician, or other neuro-specialist physician (as set forth in Section 6.3), make a diagnosis of:

> [T]he specific disease of Alzheimer's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease as defined in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) . . . .

3

(Settlement Agreement Ex. A-1 at 4, § 3(a) (emphasis in original).)

Under the Settlement Agreement, a Qualifying Diagnosis may only be backdated in very limited circumstances not present here—*i.e.*, when the claimant's prior physician provided the *same* Qualifying Diagnosis on an earlier date but "has died or has been deemed by a court of competent jurisdiction legally incapacitated or incompetent prior to the Effective Date, or otherwise prior to completing a Diagnosing Physician Certification." (Settlement Agreement § 8.2(a)(iii).) In that specific case, the date of the Qualifying Diagnosis by the prior physician can be used to calculate the Monetary Award.

Here, Claimant had been evaluated by a highly qualified neurosurgeon, neurologist and neuropsychologist in 2012 and 2013 in his home state of Alabama. None of these doctors diagnosed Claimant with Alzheimer's at that time. On October 24, 2012, neurosurgeon Dr. ▇▇▇ examined Claimant, diagnosed him with "[d]ementia" (not Alzheimer's), and referred him for further evaluation to neurologist Dr. ▇▇▇ (currently an AAP) and neuropsychologist Dr. ▇▇▇.[1] These doctors also diagnosed Claimant with dementia or other cognitive disorder, and specifically concluded that there was not sufficient evidence to support an Alzheimer's diagnosis at that time. In his December 19, 2012 report, Dr. ▇▇▇ concluded that "the pattern of [Claimant's neuropsychological testing] results is not indicative of a primary dementia, such as Alzheimer's disease."[2] Dr. ▇▇▇ January 4, 2013 report agrees, stating that "[n]either the neuropsychological testing nor the bedside exam today raise particular suspicions for Alzheimer['s] disease or other progressive degenerative disorders as the cause of the symptoms at this time," but noted Claimant's risk of developing the disease in the future "is

---

[1] Ex. 3 at 2, Oct. 24, 2012 ▇▇▇ Report.
[2] Ex. 4 at 1, Dec. 19, 2012 ▇▇▇ Report.

4

high."[3]

Nearly six years later, Claimant traveled over 700 miles to see Qualified MAF Physician Dr. ▇ who evaluated Claimant on October 11, 2018 and concluded that Claimant presented with Alzheimer's. But instead of providing 2018 as the date of diagnosis for calculating a Monetary Award value, Dr. ▇ backdated the Alzheimer's diagnosis to October 24, 2012—the date of Claimant's evaluation by neurosurgeon Dr. ▇ in which Dr. ▇ diagnosed Claimant with "dementia," not Alzheimer's. Notably, Dr. ▇ a ▇ ▇, was eminently qualified under the Settlement Agreement to have provided Claimant with a pre-Effective Date diagnosis on the basis of his 2012 evaluation.

On November 28, 2018, Claimant received a claim determination for Alzheimer's based on the October 24, 2012 diagnosis date selected by Dr. ▇.[4] There is no indication that the Claims Administrator consulted an AAP member in connection with that determination.

The NFL Parties appealed the claim determination, challenging only the backdating of the diagnosis. The NFL Parties argued that backdating was impermissible under the Settlement Agreement and, in all events, wholly unsupported by the medical records from 2012 and 2013, given that all the highly qualified medical professionals who personally examined Claimant determined that he did not evidence Alzheimer's at that time.[5] The NFL Parties argued that the mere fact that Claimant's cognitive impairment eventually progressed to Alzheimer's provided no

---

[3] Ex. 2 at 4, Jan. 4, 2013 ▇ Report. Indeed, Claimant's cognitive testing in 2013 supports the conclusion that he did not qualify for an Alzheimer's diagnosis at that time. Claimant received a *normal score* of 26/30 on the Montreal Cognitive Assessment ("MoCA") on January 4, 2013, and a *perfect score* of 30/30 on the Alabama Brief Screener test on both January 4, 2013, and April 15, 2013. (Ex. 2 at 3, 6, Jan. 4, 2013 ▇ Report; Ex. 5 at 5, Apr. 15, 2013 ▇ Report; Ex. 6 at 4, MoCA FAQs.)

[4] Ex. 7, Nov. 28, 2018 Notice of Monetary Award Claim Determination.

[5] Ex. 8, NFL Parties' Appeal.

5

sound basis to backdate the diagnosis by six years.[6] Claimant opposed the NFL Parties' appeal, arguing that the backdated diagnosis was permissible under FAQ 93, which generally allows backdating based on a physician's "sound medical judgment."[7] Claimant also argued that the backdating was supported by the 2012–13 medical records because these "identified significant memory disorder, the signature symptom of Alzheimer's" and that "there is no rational reason why significant symptoms of memory disorder in 2012 would ever be unrelated to an advanced Alzheimer's diagnosis six years later."[8]

The Special Master denied the NFL Parties' appeal on February 28, 2019.[9]

## ARGUMENT

### A. The Special Master's Interpretation Allowing Backdating of Qualifying Diagnoses Violates the Unambiguous Terms of the Settlement Agreement

While the Special Master's decision purports to be "a factual determination" that is "final and binding," the decision, in fact, turns on an interpretation of the Settlement Agreement's terms and thus reflects a conclusion of law that the Court may review *de novo*. *See, e.g., In re Johns-Manville Corp.*, 759 F.3d 206, 214 (2d Cir. 2014) ("The interpretation of unambiguous settlement-agreement terms is a question of law subject to *de novo* review.")[10]

The Special Master's decision permitting Dr. ▮▮▮ to backdate a Qualifying Diagnosis by almost six years is contrary to the Settlement Agreement's clear terms. Settlement Agreement Section 8.2(a)(iii) identifies the limited circumstances in which a diagnosis may be backdated:

---

[6] *Id.*

[7] Ex. 9, Opposition of ▮▮▮ to the NFL Parties' Appeal.

[8] *Id.* at 2.

[9] Ex. 10, Feb. 28, 2019 Post-Appeal Notice of Monetary Award Claim Determination.

[10] Moreover, this Court expressly retained "continuing and exclusive jurisdiction to interpret, implement, administer and enforce the Settlement Agreement" in accordance with its terms. (Am. Final Order and J. § 17, ECF No. 6534; *see also* Settlement Agreement § 20.1(n).) As such, this Court has authority to review and determine the proper interpretation of the Settlement Agreement.

6

> In cases where a [claimant] has received a Qualifying Diagnosis and the diagnosing physician who provided the Qualifying Diagnosis . . . has died or has been deemed by a court of competent jurisdiction legally incapacitated or incompetent prior to the Effective Date, or otherwise prior to completing a Diagnosing Physician Certification, the [claimant] may obtain a Diagnosing Physician Certification from a separate qualified physician for the Qualifying Diagnosis as specified in Exhibit 1 based on an independent examination by the qualified physician and a review of the Retired NFL Football Player's medical records that formed the basis of the Qualifying Diagnosis by the deceased or legally incapacitated or incompetent physician. If the same Qualifying Diagnosis is found by both doctors, the date of Qualifying Diagnosis used to calculate Monetary Awards shall be the date of the earlier Qualifying Diagnosis.

Those circumstances are not remotely present here. In this case, the physicians who evaluated Claimant in 2012 and 2013 did *not* diagnose Alzheimer's (and, indeed, expressly ruled it out at that time). Moreover, Dr. ▮▮▮ is clearly qualified under the Settlement Agreement to have provided a Diagnosing Physician Certification for a pre-Effective Date diagnosis.

Because the only portion of the Settlement Agreement that contemplates the backdating of diagnoses states the specific conditions in which it is allowed, backdating is prohibited in all other circumstances. The Special Master's contrary interpretation violates the fundamental canon of contractual interpretation *expressio unius est exclusio alterius*, which instructs that when a contract expressly includes certain powers, others are impliedly excluded.[11] The Special Master's ruling materially alters the agreed-upon terms of the Settlement Agreement and is therefore invalid as a matter of law. *See Ehrheart* v. *Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) ("A district court is not a party to the settlement, nor may it modify the terms of a voluntary settlement

---

[11] *See Sony Corp.* v. *Fujifilm Holdings Corp.*, No. 16 CIV. 5988 (PGG), 2017 WL 4342126, at *7 (S.D.N.Y. Sept. 28, 2017) ("*Expressio unius est exclusio alterius* is a maxim, or canon of construction, providing that 'the expression of one thing is the exclusion of the other.'"); *Realtime Data, LLC* v. *Malone*, 961 N.Y.S.2d 275, 277–78 (N.Y. App. Div. 2013) (invoking *expressio unius est exclusio alterius* to conclude that contract language conditioning employee bonus "upon" sale of assets implies that bonus does not apply to other distributions); *Bank of N.Y. Mellon Tr. Co.* v. *Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 306 (2d Cir. 2016).

7

agreement between parties.").

This material alteration is also highly prejudicial to the NFL Parties because it could substantially increase the cost of this un-capped settlement. The parties negotiated the compensation values in the Monetary Award Grid (which grants larger monetary awards to younger players) based on the player's age at the time the Qualifying Diagnosis actually occurs, not based on the earliest date to which a sympathetic doctor might be willing to backdate a diagnosis. To the contrary, the structure of the Settlement Agreement separately accounts for the progressive nature of these cognitive diseases by providing supplemental awards if a claimant is initially diagnosed with a less severe Qualifying Diagnosis (*e.g.*, Level 1.5 Neurocognitive Impairment), that later progresses to a more severe Qualifying Diagnosis (*e.g.*, Alzheimer's). *See In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 366–67, 377 (E.D. Pa. 2015) ("[T]he Settlement provides Supplemental Monetary Awards for worsening symptoms. Retired Players who receive more severe Qualifying Diagnoses after receiving initial Monetary Awards are entitled to supplemental payments."). As such, the progression of a claimant's condition is not a proper basis to backdate a later, more severe, diagnosis to the date a player may have received an earlier, less severe, diagnosis. Such backdating is contrary to very design of the Injury Grid and Supplemental Monetary Awards negotiated by the Parties.

Notably, the NFL Parties expressly objected to FAQ 93—which incorrectly states that backdating is permissible in the "[s]ound clinical medical judgment" of a diagnosing physician—for this very reason when it was proposed. (Ex. 11, Feb. 2, 2018 Email from B. Birenboim to O. Brown ("The NFL Parties respectfully submit that this provision also impermissibly alters an express term of the Settlement Agreement.").) As the NFL Parties correctly noted, backdating may not occur in circumstances not expressly provided for in the Settlement Agreement or

8

otherwise mutually agreed by the parties.[12] This issue is now ripe for this Court's review, and the Special Master's ruling should be overturned.

### B. The Special Master Abused His Discretion in Failing to Consult with an AAP Member in Connection with the NFL Parties' Appeal

Even if this Court were to find FAQ 93 to be valid insofar as it permits the backdating of diagnoses in the "sound medical judgment" of the physician, the Special Master's decision should still be reversed. The Special Master's apparent failure to consult with an AAP member constituted a clear abuse of discretion given FAQ 93's requirement that any backdated diagnoses "be strictly scrutinized in the claims review process." (Ex. 1 at 8–9, Settlement Program FAQ 93.)[13]

In reviewing for abuse of discretion, the Court must determine, based on the totality of the circumstances, whether the Special Master's decision not to consult an AAP member was unreasonable.[14] The Special Master's decision is entitled to less deference than an appellate court would give to a trial court's determination.[15] Moreover, this Court expressly retains "continuing and

---

[12] *See Ehrheart* v. *Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010); *see also In re Cendant Corp. Prides Litig.*, 233 F.3d 188 (3d Cir. 2000). The parties did agree to one additional situation in which a Qualifying Diagnosis may be backdated: where the same Qualifying Diagnosis had been made earlier by an 88 Plan neutral physician who then refused to sign the Diagnosing Physician Certification. Because the 88 Plan did not permit these physicians to sign the certificates, the parties agreed to consider these physicians "unavailable" in the spirit of the Section 8.2(a)(iii) exception, such that the earlier 88 Plan diagnosis date would govern where a Qualified MAF Physician or Qualified BAP Provider later provided the same Qualifying Diagnosis. Claimant has offered no basis to believe that this exception has any application here.

[13] *See* Fed. R. Civ. P. 53(f)(5) ("Unless the appointing order establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion.").

[14] *See Loinaz* v. *EG & G, Inc.*, 910 F.2d 1, 7 (1st Cir. 1990) ("There is no neat, standardized test for judging abuse of discretion; each case must be judged on its own facts and circumstances."); *Zervos* v. *Verizon N.Y., Inc.*, 252 F.3d 163, 169 n.6 (2d Cir. 2001) ("Discretion is said to be 'abused' ('exceeded' would be both a more felicitous and correct term) when the decision reached is not within the range of decision-making authority a reviewing court determines is acceptable for a given set of facts.") (internal quotation omitted)); *U.S.* v. *Cunningham*, 694 F.3d 372, 383 (3d Cir. 2012) (district court's rulings are an abuse of discretion if "clearly unreasonable"); *Ferguson* v. *Eakle*, 492 F.2d 26, 29 (3d Cir. 1974) (considering "totality of [] circumstances" in determining that district court abused its discretion).

[15] *See* Fed. R. Civ. P. 53, Special Committee Notes, 2003 Amendment Subdivision (g) ("The subordinate role of the master means that the trial court's review for abuse of discretion may be more searching than the review that an appellate court makes of a trial court.").

9

exclusive jurisdiction to interpret, implement, administer and enforce the Settlement Agreement,"[16] and thus has the unfettered authority to opine on the proper implementation of strict scrutiny in this context.

Here, there can be no pretense that strict scrutiny was applied in the claim review process since neither the Claims Administrator nor the Special Master consulted with the AAP. A lay person lacks the requisite expertise to assess—much less strictly scrutinize—whether or not the evidence available to the Qualified MAF Physician, primarily in the form of historical medical records full of specialized terminology and medical jargon and shorthand, supports a "sound medical judgment" that Claimant satisfied the strict diagnostic criteria for Alzheimer's six years earlier. We submit that review by an AAP member would readily reveal the impropriety of the backdating in this case, particularly where, as here, all of the highly qualified medical professionals who examined Claimant at the time failed to diagnose Alzheimer's and, indeed, expressly found no basis to support an Alzheimer's diagnosis.

## Conclusion

For the reasons set forth herein, the NFL Parties respectfully request that the Court reverse the Special Master's decision and approve Mr. ▮ claim as of October 11, 2018. Alternatively, the NFL Parties respectfully request that the Court reverse and remand the Special Master's decision, directing the Special Master to consult an AAP member on the appeal.

---

[16] Am. Final Order and J. § 17, ECF No. 6534; *see also* Settlement Agreement § 20.1(n).

Dated: March 20, 2019					Respectfully submitted,

/s/ Brad S. Karp
PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
Brad S. Karp
Bruce Birenboim
Claudia Hammerman
Richard C. Tarlowe
Douglas M. Burns
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
bkarp@paulweiss.com

*Attorneys for Defendants the National Football League and NFL Properties LLC*