**Co-Lead Class Counsel's Response to the NFL's Objection to the Special Master's February 28, 2019 Ruling Concerning the Monetary Award Claim Determination for ▮▮▮▮**

The NFL, in its Objection to the Special Master's February 28, 2019 Ruling Concerning the Monetary Award Claim Determination for ▮▮▮▮ argues that Diagnosing Physicians are not permitted to "backdate"[1] their Qualifying Diagnoses. In fact, the NFL argues, incorrectly, that "backdating" is "contrary to the Settlement Agreement's clear terms." (NFL Brief at 6). Importantly, the NFL does not (because it cannot) point to any language from the Settlement Agreement providing that the date of the Qualifying Diagnosis is the date on which the Retired Player was first examined by the Diagnosing Physician. If the NFL's position were correct, surely the NFL would cite to the provision of the Settlement Agreement that so limits the practice of Diagnosing Physicians. It does not because no such provision exists. Rather, FAQ 93, promulgated by the Special Masters, deals with this issue in a common-sense and reasonable manner, and in a way that contravenes <u>no</u> provision of the Settlement Agreement.

FAQ 93 states, in relevant part:

> (b) *General Rule for the other Qualifying Diagnoses*: The date of a Qualifying Diagnosis other than Death with CTE is when the diagnosing physician has enough information and materials, including test results, to be able to render a medically sound and reliable judgment about the Player's condition, the way a physician normally does in his or her clinical practice. **In some cases, using sound medical judgment, a physician may conclude that a Qualifying Diagnosis existed at some prior point in time.**

---

[1] "Backdating" is the pejorative term the NFL uses to describe the situation where the date of Qualifying Diagnosis predates the Diagnosing Physician's examination of the player being diagnosed. FAQ 93, which deals with this issue, does not use that term. As explained in this response, there is nothing pejorative about a Diagnosing Physician using his or her sound medical judgment to conclude that a player suffered from a particular condition prior to the date that he or she examined the player. In fact, medical professionals do that every day. In the clinical setting, it is especially important for treating neurologists to determine, if possible, the date of disease onset since the rate of cognitive and/or functional decline is a factor to be considered for treatment and diagnostic purposes.

> (c) *Are there other cases when the Qualifying Diagnosis might be before the date the physician personally examines the Player?* Maybe. **The unique facts and circumstances of a particular claim may allow the diagnosis date to be before the date the diagnosing physician personally examined the Player.** Here are the rules:
>
> ******
>
> (5) *Sound clinical medical judgment*: **Also, the physician making a diagnosis may conclude, in the exercise of his or her sound medical judgment, that he or she has enough information from personal examination, medical records from other healthcare providers, medical history, corroborating evidence from non-family members and other information that medical specialists rely on in their clinical practices, to form a sound medical judgment that the Player's Qualifying Diagnosis conditions existed at a date earlier than the date of a personal examination of the Player by the physician making the diagnosis and signing the Diagnosing Physician Certification Form.** The Settlement Class Member is best served by having the doctor who made an earlier diagnosis sign the Diagnosing Physician Certification Form. **But there may be situations where the diagnosing physician can pinpoint an earlier date that is based on sound clinical judgment and best medical practices.**

(emphases added).

Co-Lead Class Counsel recognizes that in most cases, the date of diagnosis will be the date that the Diagnosing Physician examined the player. However, there have been, and will be, instances where the Diagnosing Physician, in the words of FAQ 93, ". . . can pinpoint an earlier date that is based on sound clinical judgment and best medical practices." The following example shows the unfairness that would occur if the NFL's position is adopted, thereby preventing Diagnosing Physicians from exercising their sound medical judgment in deciding the appropriate date of diagnosis.

> A Qualified MAF Physician examines a player in 2019, at which time the player provides the Qualified MAF Physician with records from an earlier 2016 neurological exam which did not result in a Qualifying Diagnosis, but indicated signs of Parkinson's disease. Based on their personal examination of the player, the Qualified MAF Physician diagnoses the player with Parkinson's disease. But Parkinson's disease, like the other Qualifying

2

Diagnoses, is not contracted overnight. Based on a review of the earlier 2016 records, as well as their personal examination of the Retired Player, the Qualified MAF Physician, with the benefit of having seen the progression of the disease over time, determines that the player actually had Parkinson's disease several years before his 2019 examination of the Retired Player.

Under the NFL's position, the Qualified MAF Physician would not be able to assign a pre-2019 diagnosis date to that player even though the Qualified MAF Physician has no doubt that the player was suffering from Parkinson's disease before 2019. Rather, the NFL would require that the Qualified MAF Physician use the 2019 examination date as the Diagnosis Date, notwithstanding their sound medical judgment to the contrary. That result is unfair to the player, who should be compensated based on the pre-2019 diagnosis date, is at odds with the true medical judgment of the Qualified MAF Physician, and is contrary to the goal of the settlement (i.e., to fairly compensate injured Retired Players for their injuries and conditions they suffer from, based on their age when they developed.)

The unfairness of the NFL's position is compounded by its recent assertion that Retired Players should provide copies of prior neurological/neuropsychological records to their Qualified MAF Physician at the time of an MAF examination. Once in possession of such records, Qualified MAF Physicians must be permitted to utilize those records to determine, in their sound medical judgment, the proper diagnosis date, just as they would do for a patient in a clinical setting outside of the settlement program. Neurologists engage in this practice on a daily basis. The NFL would have the Qualified MAF Physician ignore those earlier records. As stated earlier, it is especially important for treating neurologists to determine, if possible, the date of disease onset since the rate of cognitive and/or functional decline is a factor to be considered for treatment and diagnostic purposes.

3

It should be noted that FAQ 93 does not permit the Diagnosing Physician to rely solely on his or her review of medical records to establish the date of the Qualifying Diagnosis. Rather, FAQ 93 allows the Diagnosing Physician to use an earlier diagnosis date only if he or she believes that they have sufficient information from "... **personal examination**, medical records from other healthcare providers, medical history, corroborating evidence from non-family members and other information that medical specialists rely on in their clinical practices." (emphasis added).

Lastly, the NFL -- unable to point to any provision in the Settlement Agreement that bans a Diagnosing Physician from doing what they do in their clinical practice – turns to Section 8.2(a)(iii), which generally concerns the contents of a Claim Package. But that section only concerns those instances where the physician who diagnosed the Retired Player is deceased or incompetent and, therefore, is unable to complete the Diagnosing Physician Certification. In no way does that section prohibit a living Diagnosing Physician from assigning a date of diagnosis that, in his or her sound medical judgment, is earlier than the date of his or her examination of the Retired Player. Importantly, at no point does the Settlement Agreement, particularly in Section 6 where "Monetary Awards for Qualifying Diagnoses" are addressed, discuss a requirement that the date of diagnosis is fixed at the date of the first examination by the Diagnosing Physician. Rather, the Diagnosing Physician is entrusted to make the requisite diagnostic judgments. This is particularly true when the Diagnosing Physician is a Qualified MAF Physician, such as Mr. ▆▆▆▆ Diagnosing Physician, Dr. ▆▆▆▆▆▆, who the NFL vetted prior to approving him to serve as a Qualified MAF Physician.

4

## CONCLUSION

Through FAQ 93, the Special Master provides reasonable guidance on the issue of establishing the correct date of diagnosis. It permits Diagnosing Physicians to do what they are trained to do -- i.e., use their clinical training and experience to diagnose players and determine when the diagnosed condition first existed. Nothing in the Settlement Agreement prohibits Diagnosing Physicians from doing so.

                                        Respectfully submitted,

                                        SEEGER WEISS LLP
                                        /s/ Christopher A. Seeger
                                        Christopher A. Seeger
                                        David R. Buchanan
                                        Michael L. Rosenberg
                                        Scott A. George

Dated; April 10, 2019                   CO-LEAD CLASS COUNSEL