IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Hon. Anita B. Brody |

August ___, 2019                                                                                   Anita B. Brody, J.

## EXPLANATION AND ORDER

Thirty-two Settlement Class Members (collectively, "the movants") have filed a motion seeking this Court's intervention to stop multiple audits of claimants that purportedly violate the Settlement Agreement. The Claims Administrator, BrownGreer PLC, submitted a response in opposition.

Before addressing the merits of the motion, the Court would also like to take a moment to discuss the importance of the audit program in the context of the NFL Concussion Settlement. This Settlement program grew out of lawsuits filed by over 5,000 former football players and their family members against the National Football League Foundation, and the NFL Properties (LLC) (collectively, the "NFL Parties"). After several years of negotiations, and approval by this Court and the Third Circuit, implementation of the Settlement began on January 7, 2017. All but one of the opt-out litigants have settled, or are in the process of settling, his or her claims. Yet the Court retains exclusive jurisdiction over the Settlement Agreement, for the next 63 years.

This places the Court in relatively uncharted territory—what Yale Law School Professor Judith Resnik has deemed "aggregation's third phase." *See* Judith Resnik, *Reorienting the Process Due: Using Jurisdiction to Forge Post-Settlement Relationships Among Litigants, Courts, and the Public in Class and Other Aggregate Litigation*, 92 N.Y.U. L. Rev. 1017, 1052-1067 (2017). In this third phase, the Court is guided not by Rule 23 or by much in the way of case law, but by the terms of the Settlement Agreement and by judicial principles of fairness, equity, and due process. The Court still engages in the judicial functions of interpreting the law and adjudicating disputes, but now with the singular goal of implementing the Settlement honorably. Every action of the Court is to ensure that every meritorious claim is paid—and that only meritorious claims are paid.

From the beginning of this litigation and throughout the Class settlement process, the Court has taken its role as the fiduciary of the class seriously. In exercising this role, the Court approved a Settlement that has many elements favoring Class Members: the uncapped Settlement fund has a lifetime of 65 years, and the substantial awards have no causation requirement, to name a few. To receive these benefits, however, Class Members must follow a formal claims process and meet certain evidentiary requirements. Safeguarding the integrity of this claims process is crucial to implementing the Settlement honorably.

To this end, the Court, the Special Masters, and the Claims Administrator, in conjunction with the parties, have taken significant steps to protect the integrity of the Settlement program. A central piece of this is the audit program, through which the Claims Administrator reviews claims to determine whether any intentional misrepresentation, omission, or concealment occurred. The Settlement Agreement both delineates circumstances under which audits of claim

packages are mandatory, and provides the Claims Administrator with broad discretion to develop standards and procedures in furtherance of its mission. *See* Settlement Agreement §§ 10.3, 10.4.

In addition to defining certain mandatory audit triggers, the Settlement Agreement directs the Claims Administrator, in consultation with Co-Lead Class Counsel and Counsel for the NFL Parties, to "establish system-wide processes to detect and prevent fraud" in claim submissions. Settlement Agreement § 10.4. Complying with this directive, the Claims Administrator developed the Rules Governing the Audit of Claims ("Audit Rules"), which were adopted by the Special Masters on January 26, 2018 and which are posted on the public Settlement Website. These Audit Rules lay out additional "red flags" that may, in the Claims Administrator's discretion, trigger an audit.

Turning to the motion itself, I will not restate the facts, and instead rely on BrownGreer's able summary of the complex factual history leading to this motion. *See* ECF No. 10506. In sum, however, the event the movants purport to object to—multiple audits of a single claim package—did not occur here. While Brown Greer's first audit of movants' claims were pending, the movants each filed *new* Diagnosing Physician Certifications, from new doctors, withdrawing the qualifying diagnoses that were the subject of the first audit. Brown Greer did not complete an audit of a claim record and then decide to re-audit that exact same record. Rather, when each movant submitted a wholly new Diagnosing Physician Certification form—the defining element of each claim package[1]—Brown Greer made an independent evaluation that these new Diagnosing Physician Certifications again raised red flags that triggered the audit process. This is

---

[1] The Settlement defines "Diagnosing Physician Certification" as "that document which a Settlement Class Member . . . must submit . . . as part of a Claim Package." Settlement Agreement § 2.1(gg). A Diagnosing Physician Certification form is a physician's sworn certification, based on examination of the claimant and consideration of specific criteria defined by the Settlement, that a claimant has a diagnosis compensable under the Settlement. Without a Diagnosing Physician Certification, there is in effect no claim for compensation.

plainly permitted by the Settlement Agreement. To say otherwise would permit an absurd result: a claimant could evade audit review simply by waiting until after an audit has been initiated, and only then filing fraudulent or questionable documents in support of his claim.

The Audit Rules, and BrownGreer's application of these rules to the movants' claims, are fully consistent with the text of the Settlement Agreement. Even if there were any ambiguity, the Court must interpret this in light of its duties to serve as the fiduciary of the class, and to ensure that only meritorious claims are paid. Imposing a rigid and narrow reading of the text of the Settlement Agreement would hamstring the claims process, prevent both the payment of meritorious claims and the detection of grounds for non-payment, and limit this Court's ability to continue to ensure justice is done to all parties to the Settlement.  The honorable implementation of the Settlement requires allowing the Claims Administrator the discretion to initiate a new audit whenever a claimant changes an element of a claim package.

**ORDER**

AND NOW, this __20th__ day of August, 2019, it is ORDERED that the Motion for Court Intervention (ECF No. 10434) is **DENIED**.

                                                s/Anita B. Brody

                                      _____
                                      ANITA B. BRODY, J.

Copies **VIA ECF   8/20/2019**

O:\ABB 2019\L - Z\NFL order on motion to stop multiple audits.docx