# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>SPID No. 260006736 | **Hon. Anita B. Brody** |

## SETTLEMENT IMPLEMENTATION DETERMINATION

Before this Court is an objection from a finding by the Special Master that Appellant, a Retired NFL Football Player, is not entitled to a claim award. Appellant argues that the Special Master wrongfully applied the terms of the Settlement when he applied the "generally consistent" standard to Appellant's pre-Effective Date diagnosis.

Due to an error early in the claims process, Appellant was issued a Notice of Monetary Award, despite the fact that he plainly did not meet the medical criteria for a Qualifying Diagnosis. While the Claims Administrator soon realized there had been an error, Appellant's claim was not denied until after the NFL Parties appealed to the Special Master and the Special Master granted the appeal. The Post-Appeal Notice of Denial of Monetary Claim Award was issued nearly a year after Appellant first submitted his claim.

The Court is troubled by the events leading to this objection and has looked into the matter. The Special Masters and the Claims Administrator have assured the Court that the events leading to this objection will not be repeated.

1

Turning to the merits of the objection, the Court reviews de novo any objections to conclusions of law from its Special Masters. *See* ECF No. 6871 at 4-5 (appointing the Special Masters and defining their roles). "The decision of the Court will be final and binding." Settlement Agreement § 9.8.

The terms of the Settlement Agreement plainly state that the "generally consistent" standard applies to all Qualifying Diagnoses of Level 1.5 and Level 2 Neurocognitive Impairment, including pre-Effective Date diagnoses. Under the Settlement, which medical providers can make a Qualifying Diagnosis depends in part on when the diagnosis is made. Prior to the Effective Date,[1] a Qualifying Diagnosis could be made by any medical professional meeting certain qualifications. Settlement Agreement §§ 6.3(c-d). After the Effective Date, a Qualifying Diagnosis can only be made by a Qualified MAF Physician or a BAP Provider. Settlement Agreement § 6.3(b).[2]

No matter who makes the Qualifying Diagnosis, Section 6.3(a) of the Settlement Agreement provides that:

> The following, as defined in Exhibit 1, are Qualifying Diagnoses eligible for a monetary award . . . . All Qualifying Diagnoses must be made by properly credentialed physicians as set forth below for the particular Qualifying Diagnosis, consistent with Exhibit 1 (Injury Definitions).

This means that *all* Qualifying Diagnoses—regardless of when they are made and by whom—are defined by Exhibit 1 (Injury Definitions). The Injury Definition for Level 1.5 Neurocognitive Impairment states:[3]

---

[1] The Settlement's Effective Date was January 7, 2017.

[2] Both Qualified MAF Physicians and BAP Providers may make Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment and Level 2 Neurocognitive Impairment; only MAF Physicians may make Qualifying Diagnoses of Alzheimer's Disease, Parkinson's Disease, and ALS.

[3] The Injury Definition for Level 2 Neurocognitive Impairment includes parallel language. Settlement Agreement Ex. 1 at 3 § 2(b).

2

> For living Retired NFL Football Players **diagnosed outside of the BAP**, a diagnosis while living of Level 1.5 Neurocognitive Impairment . . . based on evaluation and evidence **generally consistent** with the diagnostic criteria [used by BAP Providers], made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

Settlement Agreement Ex. 1 at 2 § 1(b) (emphasis added). Therefore, the generally consistent standard applies to all *non-BAP diagnoses* of Level 1.5 or 2 Neurocognitive Impairment. All Qualifying Diagnoses made outside of the BAP—whether post-Effective Date diagnoses by Qualified MAF Physicians or pre-Effective Date diagnoses made by other medical providers—must be "based on evaluation and evidence generally consistent" with the BAP diagnostic criteria.[4]

In addition, Exhibit 1 to the Settlement Agreement specifically states that the injury definitions (and, consequently, the "generally consistent" standard) apply to diagnoses made in Sections 6.3(c) and 6.3(d): the pre-Effective Date diagnoses. Indeed, if this section did not apply to pre-Effective Date claims, the reference to diagnoses made by "a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist" would be superfluous, because post- Effective Date diagnoses can be made only by BAP Providers or MAF Physicians. Thus, this provision must cover pre-Effective Date claims.

The applicability of the "generally consistent" standard to pre-effective date claims is also bolstered by the Settlement Agreement's requirement that certain pre-Effective Date claims be reviewed by members of the Appeals Advisory Panel (AAP). For pre-Effective Date

---

[4] These criteria are defined in Exhibit 2 of the Settlement Agreement.

3

diagnoses made by someone other than a Qualified MAF Physician, a member of the AAP must determine whether the claimant "has the Qualifying Diagnosis" identified in the claim package by "review[ing] the Qualifying Diagnosis based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 (Injury Definitions)." Settlement Agreement § 6.4(b).[5] This, too, establishes that pre-Effective Date diagnoses must be "generally consistent" with the BAP diagnostic criteria.

Based on a review of the Special Master's Ruling, a review of the Claimant's objection, and a review of the NFL's opposition to the Claimant's objection, I approve and adopt the conclusions in Special Master Pritchett's Ruling. Accordingly, the Claimant's objection is **DENIED**.[6]

July 2, 2019 /s/ Anita B. Brody
ANITA B. BRODY, J.

Copies VIA ECF 7.2.19

---

[5] As Appellant correctly point out in his Supplemental Brief, "the review of whether a Qualifying Diagnosis is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 (Injury Definitions) does not require identical diagnostic criteria, including without limitation, the same testing protocols or documentation requirements." Settlement Agreement § 6.4(b). This clarification of the "generally consistent" standard, however, does not mean that the standard does not apply to pre-Effective Date claims. Rather, it clarifies *how* it should be applied.

[6] This is not by any means Appellant's last chance to recover under the Settlement. The Settlement has a 65-year term, and Appellant is free to submit future claim packages for the same or different Qualifying Diagnoses in the future. Settlement Agreement § 9.1(c)(i). In addition, Appellant is eligible for a free Baseline Assessment Program exam.