# EXHIBIT 13

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE RETIRED PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>  Concussion Settlement ID No. 260006736 | Hon. Anita B. Brody |

### OBJECTION TO SPECIAL MASTER'S OCTOBER 11, 2018 RULING

▇▇▇▇▇▇ respectfully objects to the Special Master's October 11, 2018 Ruling (the "Order")(attached hereto as Exhibit 1) and requests that the Court reinstate Claimant's full award immediately, together with interest and attorneys' fees.  Now that the Special Master has finally explained the rationale in overturning ▇▇▇▇▇▇ thrice-approved award[1], it is clear that the Special Master is erroneously misapplying clear terms of the Settlement Agreement and *sui sponte* is raising an entirely new standard for approval of pre-effective date players' claims under the Settlement.  Moreover, the Special Master relied on matters outside the scope of the appeal and addressed and adopted arguments that were never raised in the claims process below.  This is a matter of law that must be corrected by the Court under the unambiguous terms of the Settlement Agreement.

**The Special Master Used a "Generally Consistent" Analysis
That Does Not Apply to the Pre-Effective Date Diagnosis made Here.**

In overruling three prior approvals of ▇▇▇▇▇▇ claim, the Special Master (based on advice of the same AAP Panel who ironically had approved ▇▇▇▇▇▇ award twice before)

---

[1] See Doc. 10094, ▇▇▇▇▇▇ Objection to Special Master's May 31, 2018 Ruling for background.  Claimant incorporates that entire filing herein.

concluded that "there is clear and convincing evidence that Claimant's diagnosis was not *generally consistent with* the Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment as defined in the Settlement Agreement." (Emphasis provided) (Special Master's Order, p.3). However, the "generally consistent" language pointed to by the Special Master **does not apply** to ▓▓▓▓ claim, because ▓▓▓▓ brings a claim for injuries that were diagnosed prior to the Effective Date of the Settlement. And under the clear terms of the Settlement Agreement, there was no requirement for a neuropsychological test under the applicable section of the Settlement Agreement. The Special Master acknowledges in the first paragraph of his Order that Mr. ▓▓▓▓ "received a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment by a Board Certified Neurologist, Dr. Michael Lobatz, on June 3, 2015, prior to the Effective Date of the Settlement Agreement." That admission should end the dispute as a matter of law under the clear terms of the Settlement Agreement. ▓▓▓▓on's claim falls under Section 6.3(d) of the Settlement Agreement, not Section 6.3(b).

Section 6.3(d) of the Settlement Agreement states as follows:

> (d) **Prior to the date of the Preliminary Approval and Class Certification Order**, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made only by board-certified neurologists, board certified neurosurgeons, or other board certified neuro-specialist physicians, or otherwise qualified neurologists, neurosurgeons, or other neuro specialist physicians, except as set forth in Section 6.3(e).[2]

Settlement Agreement, Section 6.3(d)  (Emphasis supplied).

There is no requirement for anything other than the report of a Board Certified neurologist or other board certified neo-specialist physician. There is no mention of a requirement for a neuropsychological report, let alone one using a certain set of T scores that are

---

[2] Section 6.3(e) relates to players who died prior to the Effective Date, not at issue in this claim.

to be utilized by the MAF and BAP providers for analytical purposes. There is no mention of MAF or BAP-approved providers that must diagnose the impairment. And, there is no mention of "Exhibit 1" where the reference to "generally consistent" lies.

Contrast Section 6.3 (b), which clearly does not apply here but states:

> (b) **Following the Effective Date**, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made only by Qualified MAF Physicians, except that a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment may also be made by Qualified BAP Providers as set forth in Section 5.2 and consistent with the term of Exhibit 1 (Injury Definitions).

Settlement Agreement, Section 6.3(b) (Emphasis supplied).

Using this improper standard, the Special Master then has to go all the way to Exhibit 1 under Level 1.5 Neurological Impairment, Section (a)(iii) to find that a player must exhibit functional impairment "generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale …." *See* Settlement Agreement Exhibit 1. However, **Exhibit 1 never comes into play in Section 6.3(d),** under which ▮▮▮▮▮ claim must be analyzed. And, the no one below mentioned the CDR standard. The first time, the CDR standard is mentioned in this claim is by the Special Master on this appeal.

The Special Master's reading of the Settlement Agreement makes Section 6.3(d) meaningless. The Special Master's Order improperly follows 6.3(b), without any explanation, rather than applying the standard that the parties agreed upon and the Courts approved, that Section 6.3(d) has to do with the claims asserted by retired players based upon diagnosis made before the Settlement became effective. ▮▮▮▮▮ complied with Section 6.3(b) and

received a qualifying diagnosis from a world-renowned specialist in the field.[3] The Special Master has no authority to unilaterally apply new requirements on ▉ or to turn a pre-effective diagnosis into a post-effective date diagnosis.

▉ agreed to the Settlement Agreement as written – not some changing document that alters terms at the whim of the NFL or the Special Master.

## CONCLUSION

▉ relied on the terms of the Settlement Agreement in making a decision to agree to the settlement at all.  His award has been approved, then approved again, then audited and approved a third time. He has followed his end of the bargain under the Settlement Agreement.  He has been waiting for nearly a year-and-a-half after his claim was first approved for the Settlement Agreement to be followed by other parties. The Special Master's Belated Explanation makes clear that the Special Master is not applying Section 6.3(d) under the terms of the Settlement Agreement. This Court must now intervene to ensure ▉ receives what he bargained for.

Dated: October 26, 2018

Respectfully submitted,

By: /s/ Wendy R. Fleishman
Wendy R. Fleishman

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

---

[3] Dr. Lobatz stands by his diagnosis even after reviewing the objections and arguments from the NFL.  See Exhibit 2 attached hereto.  While this letter was not prepared in time to become a part of the record earlier, Mr. ▉ provides it here.

**CERTIFICATE OF SERVICE**

      I, hereby certify that on October 26, 2018, I electronically filed OBJECTION TO THE SPECIAL MASTER'S October 11, 2018 RULING with the Clerk of the United States District Court for the Eastern District of Pennsylvania using the CM/ECF system, which shall send electronic notification to all counsel of record.

                                                              */s/ Wendy R. Fleishman*

1638405.1

# EXHIBIT 1



# POST-APPEAL NOTICE OF DENIAL OF MONETARY AWARD CLAIM
**DATE OF NOTICE:** October 11, 2018

## I. SETTLEMENT CLASS MEMBER INFORMATION

| | |
|---|---|
| **Settlement Program ID** | 260006736 |
| **Name:** | First ▮    M.I. ▮    Last ▮ |
| **Settlement Class Member Type** | Retired NFL Football Player |
| **Lawyer** | Lieff Cabraser Heimann & Bernstein, LLP |
| **Asserted Qualifying Diagnosis** | Level 1.5 Neurocognitive Impairment |
| **Appellant** | NFL |
| **Appellee** | Settlement Class Member |

## II. EXPLANATION OF CLAIM DETERMINATION

This Notice is an official communication from the Claims Administrator for the NFL Concussion Settlement Program. The Special Master reviewed the appeal and determined the following, which is final and binding:

See Special Master opinion uploaded on 10/10/18.

1. Special Master ruled that the claim is denied

## III. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

If you are represented by a lawyer, consult with your lawyer if you have questions or need assistance. If you are unrepresented and have any questions about this Notice or need help, contact us at 1-855-887-3485 or send an email to ClaimsAdministrator@NFLConcussionSettlement.com. If you are a lawyer, call or email your designated Firm Contact for assistance. For more information about the Settlement program, visit the official website at www.NFLConcussionSettlement.com to read the Frequently Asked Questions or download a copy of the complete Settlement Agreement.



# EXHIBIT 2




| Michael A. Lobatz, MD | Jay Rosen, PhD |
| Andrew M. Blumenfeld, MD | Jay H. Rosenberg, MD |
| Thomas J. Chippendale, MD, PhD Emeritus | Mark Sadoff, MD |
| Bilal Choudry, MD | Gregory Sahagian, MD |
| Laura Desadier, DO | Jack D. Schim, MD |
| Benjamin M. Frishberg, MD | Anchi Wang, MD |
| Reshma Gokaldas, MD | Tracy Wang, MD |
| Gary Gualberto, MD | |
| Andrew Hsing, MD | Margaret Hartig, NP |
| Lori Haase-Alasantro, PhD | J. Peter Heinen, PA |
| Jihad Jaffer, MD | Katie Hermanson, PA |
| Kalyani Korabathina, MD | Stephanie Huang, PA |
| Abigail Lawler, MD | Andrew Inocelda, PA |
| Amy Nielsen, DO | Jessica Savic, PA |
| Irene Oh, MD | Cristie Silverwood, NP |
| Remia Paduga, MD | Alicia Son, PA |
| Rachit Patel, MD | Hollis Stahl, PA |
| Tara Quesnell, DO | |

Medical Neurology / Medical Legal Evaluations / Neuro Diagnostic Testing / Neuropsychological Testing / Neuro Ophthalmology / Neurologic Rehabilitation / Sleep Medicine / Movement Disorders / Botox Therapy / Headache Medicine / Epilepsy Monitoring / Psychiatry

September 14, 2018

Lieff Cabraser Heimann & Bernstein, LLP
Attention Wendy Fleischman Esq.
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

Re: ▆▆▆▆▆▆▆
DOB: ▆▆▆▆▆▆▆
Your Client-Matter No. 3554-0155

Dear Ms. Fleischman:

I have reviewed the following documents recently forwarded to me regarding my patient ▆▆▆▆▆▆▆

1. Objection to the Special Master's May 31, 2018 Ruling
2. Post Appeal Notice of Denial of Monetary Award Claim May 31, 2018
3. Neuropsychology Report Dean Delis PhD July 26, 2016
4. Laura Hopper Report April 16, 2018

As previously noted in my July 10, 2015 report, my patient ▆▆▆▆▆▆▆ was diagnosed with the following conditions:

1. Multiple concussive injuries
2. Traumatic brain injury due to above
    a. Cognitive impairment
        i. Memory loss
        ii. Impaired processing and executive function
        iii. Impaired attention and concentration
        iv. Tinnitus
        v. Abnormal brain imaging
    b. Mood disturbance
        i. Depression
        ii. Anxiety
        iii. Irritability

RE: ██████████  2

3. Post-traumatic headaches
4. Sleep apnea
5. Chronic pain

These diagnoses remain unchanged. Treatment has consisted of psychiatric evaluation and provision of antidepressant therapy. While Mr. ██████ mood is stable, his cognitive issues remain unchanged. My diagnoses remain unchanged.

It is my understanding that based on the 2016 testing by Dr. Delis, a question and point of appeal has arisen regarding the testing results. I also understand that Dr. Hopper, an qualified and experienced neuropsychologist has opined in her April 16, 2018 memo that the performance of Mr. ██████ was affected in subsequent testing by single day testing rather than a more spread out schedule. She noted (and this appears quite reasonable), that the single day testing could result in lower scores due to fatiguing that do not accurately reflect his true abilities, thus variability that an observer might interpret inappropriately. She also notes that there were many areas of similar cognitive strengths in Dr. Delis as well as her own testing indicating a degree of congruency did exist.

Dr. Hopper addresses the effort testing and noted that after two hours of testing with Dr. Delis, Mr. ██████ demeanor changed, appearing tired, frustrated, depressed, withdrawn and/or negativistic about the testing. It was her opinion that Mr. ██████ efforts were sufficient on all measures of validity with one exception. She noted that on the MSVT testing that it was mis scored. Furthermore, on measures of embedded validity testing, Mr. ██████ performed below expectation on only one of four measures. This one measure occurred during the time when Mr. ██████ became behaviorally different with a depressed mood, fatigue, frustration and negativism.

In my own ongoing observation of Mr. ██████, now at approximately four years as his treating physician, I have no doubt that he has cognitive impairments and associated impairments in the domains of memory, judgement, problem solving, home/hobbies that achieve a combined CDR of 1.5  One does not need neuropsychological testing to know this man's deficits. That said, while I have great respect for Dr. Delis, I must concur with Dr. Hopper and offer that her interpretation of the data fits with what I know about this man.

If you have any questions, please do not hesitate to call.

Sincerely yours,

Michael A. Lobatz, M.D., APC
Diplomate, American Board of Psychiatry and Neurology

RE:   3

Senior Neurologist, The Neurology Center
System Medical Director, Scripps Health Neurosciences
Medical Director Scripps Rehabilitation & Traumatic Brain Injury Programs