# EXHIBIT "A"

Case No. ___

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

IN RE: THRIVEST SPECIALTY FUNDING, LLC

THRIVEST SPECIALTY FUNDING, LLC,
Petitioner,

v.

HONORABLE ANITA B. BRODY, JUDGE OF THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA,
Respondent.

## PETITION FOR WRIT OF MANDAMUS
Case No. 12-md-02323 (E.D. Pa.)

**FOX ROTHSCHILD LLP**

Peter C. Buckley, Esquire
Eric E. Reed, Esquire
Attorney I.D. Nos. 93123, 204692
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103-3222
Tel: (215) 299-2854
Fax: (215) 299-2150
pbuckley@foxrothschild.com
ereed@foxrothschild.com

*Attorneys for Petitioner*
*Thrivest Specialty Funding, LLC*

September 18, 2019

Pursuant to 28 U.S.C. §1651 and Rule 21(a) of the Federal Rules of Appellate Procedure, Thrivest Specialty Funding, LLC ("Thrivest") applies for a writ of mandamus directed to the Honorable Anita B. Brody, Judge of the United States District Court for the Eastern District of Pennsylvania in In Re: National Football League Players' Concussion Injury Litigation (the "NFL Concussion Class Action").

## I.    **INTRODUCTION**

This mandamus petition concerns the District Court's failure to implement this Court's clear guidance regarding litigation funding agreements in the NFL Concussion Class Action. The Third Circuit rejected the District Court's transaction-level analysis and directed a provision-by-provision approach; yet, the District Court and the Claims Administrator are still purporting to void funding transactions in their entirety. Although the legal impact of these decisions is limited to a claims administration process from which Thrivest is excluded, the Claims Administrator's related communications to class members—which carry the imprimatur of the District Court—wrongfully suggest that Thrivest cannot enforce its agreements in private arbitration. As a practical matter, this misinformation creates unrealistic and legally unsound expectations in class members, who view the Court-sponsored communications as an invitation to ignore their contractual obligations—even when doing so may result in adverse financial consequences. Indeed, Thrivest's experience in arbitration confirms that to be the case. Having exhausted its avenues for relief in

the District Court, Thrivest seeks this Court's assistance to avoid irreparable injury to its interests as well as to the interests of class members whose decisions may be influenced by the breadth of the Claims Administrator's communications.

## II.   **STATEMENT OF FACTS**

On December 8, 2017, the District Court issued an order (the "Order") purporting to void in their entirety all cash advance agreements between class members in the NFL Concussion Class Action and litigation funding companies, including Thrivest.   (Order [Dkt. 9517], Exhibit A).   Thereafter, the Claims Administrator promulgated "Rules Governing Assignment of Claims" to implement the Order (the "Assignment Rules").   (Assignment Rules effective 2/22/18, Exhibit B).   The Assignment Rules created a process whereby the Special Masters would determine whether a funding transaction was an enforceable "Collateralized Loan" or a void "Prohibited Assignment"—a binary determination based upon the reasoning in Judge Brody's Order.   (Id. at Rule 5).   The Claims Administrator would communicate this decision to the class member through a Notice of Assignment Review Determination.   (Id.).   For transactions determined to be "Prohibited Assignments," the Claims Administrator would also provide a Waiver Relinquishing Rights Under Attempted Assignment, which—if executed by the class member and the funding company—would void the transaction and return the principal amount of the advance to the funder.   (Id. at Rule 7).   The Claims Administrator did not

involve the funding companies in this process and provided notice only after the Special Master made the decision.

In an appeal decided on April 26, 2019, this Court vacated the Order in part, reversing Judge Brody's decision "to the extent [it] purported to void the cash advance agreements *in their entirety* and void contractual provisions that went only to a lender's right to receive funds after the player acquired them." In Re: National Football League Players' Concussion Injury Litigation, 923 F.3d 96, 113 (3d. Cir., Apr. 26, 2019) (emphasis supplied). In so ruling, this Court explained that "true assignments contained within the cash advance agreements—that is, *contractual provisions* that allowed the lender to step into the shoes of the player and seek funds directly from the settlement fund"—must be reviewed on a provision-by-provision basis. Id. at 110 (emphasis supplied). Indeed, the unanimous panel agreed, "the [District] Court had the option of invalidating only *the assignment portions* of the agreements containing true assignments and directing the Claims Administrator not to recognize any true assignments, without voiding the agreements *in their entirety*." Id. at 111 (emphasis supplied).

Within this framework, the Court specifically addressed Thrivest's agreement, which, it explained, "gave [Thrivest] only the right to receive settlement funds after the funds are disbursed to a class member"—noting, "the District Court's power over the funds and class ends at that point." Id. at 112-113. Leaving no doubt,

3

the Court "held that the District Court did not have the authority to void Thrivest's agreement with [the class member] *in its entirety*." Id. (emphasis supplied). The Court issued its mandate on May 20, 2019.

The Claims Administrator has since amended the Assignment Rules, but not meaningfully so.[1] (Assignment Rules effective 5/31/19, Exhibit C). They still call for a transaction-level decision between "Collateralized Loan" and "Prohibited Assignment," and they continue to refer to Judge Brody's Order—but without any reference to this Court's subsequent decision or the fact that it rejected this all or nothing approach. (Id. at Rules 1 and 5). In reaching this binary determination, the Claims Administrator continues to consider criteria such as "the fairness and commercial reasonableness of the [agreement's] terms and whether they reflect the type of transaction the Court found invalid in its Explanation and Order." (Id. at Rule 6). Such criteria have nothing to do with whether a contractual provision is a "true assignment," as this Court defined that concept. See In Re: National Football League Players' Concussion Injury Litigation, 923 F.3d at 110.

Thrivest requested a conference and expressed concern to the District Court not only that this Court's mandate was being ignored but also that the Claims Administrator's communications "may create unrealistic (and legally unsound)

---

[1] The only update to the Assignment Rules was the removal of "Co-Lead" before the reference to "Class Counsel" in Rule 2.

expectations in Class Members." (Thrivest's July 12, 2019 Letter Motion [Dkt. 10736] at 3, Exhibit D). Soon thereafter, another class member shared a Notice of Assignment Review Determination with Thrivest, in which the Claims Administrator and the Special Masters once again "determined that *this transaction* is an assignment that is prohibited by Section 30.1 of the Settlement Agreement and [Judge Brody's Order]." (Notice of Assignment Review Determination (Redacted), Exhibit E) (emphasis supplied). Armed with the Claims Administrator's rescission waiver (which seemingly reinforces the message that the agreement is unenforceable), the class member suggested that Thrivest should waive its rights under their agreement in exchange for a return of principal only. (Waiver Relinquishing Rights Under Attempted Assignment (Redacted), Exhibit F). Later, citing the Notice of Assignment Review Determination, the class member's attorney argued in the arbitration, "[t]he District Court and the Claims Administrator have specifically determined that [Thrivest's Agreement] is a prohibited transaction under the terms of the Settlement Agreement and as such is unenforceable." What's more, he drew support from "the fact that neither the District Court, nor the Settlement Claim Administrator has changed any of their positions or policies regarding the prohibition of assignment agreements" since the Third Circuit ruled.

The Claims Administrator argued that a conference was unnecessary because "the Third Circuit Opinion [did] not require [it] to change [its] process for resolving

Prohibited Assignments, as outlined in the Rules Governing Assignment of Claims." (Claims Administrator's Response [Dkt. 10801] at 3, attached as Exhibit G). Notwithstanding the transaction-level language in its communications—"**We have determined that this transaction is an assignment that is prohibited ...**" (Notice of Assignment Review Determination, Ex. E) (emphasis in original)—the Claims Administrator took the position that it "is not unilaterally voiding cash advance agreements, nor ... communicating to [class members] or their counsel that they are not bound to honor such agreements." (<u>Id.</u>). The District Court denied Thrivest's request for a conference, finding it "unnecessary." (August 15, 2019 Order [Dkt. 10807], attached as Exhibit H). And thus the process continues unchanged.

## III.   <u>JURISDICTION</u>

This Court has jurisdiction to issue writs of mandamus under the All Writs Act, 28 U.S.C. § 1651. The requested mandamus relates to enforcement of this Court's mandate in <u>In re: National Football League Players' Concussion Injury Litigation</u>, where the Court had jurisdiction under 28 U.S.C. §§ 1291 and 1292.

## IV.   <u>ISSUE PRESENTED</u>

Where a District Court continues to implement an order—which has been vacated in part by the Court of Appeals—in a manner inconsistent with the appellate guidance, should the Court of Appeals issue a writ of mandamus directing the District Court to comply with its mandate?

Suggested Answer: Yes.

## V.    **RELIEF SOUGHT**

Thrivest seeks a writ of mandamus directing the District Court to:

1.    Suspend the process currently in place under the Assignment Rules unless and until the Assignment Rules are revised to conform to the Third Circuit's decision in In Re: National Football League Players' Concussion Injury Litigation, 923 F.3d 96, including by:

a.    eliminating any transaction-level determination and instead focusing solely on whether or not a specific provision in any funding agreement complies with Section 30.1 of the Settlement Agreement;

b.    in reaching any such determination, applying only the Third Circuit's test for a "true assignment" and avoiding consideration of other criteria;

c.    in any communication concerning a "true assignment" that will not be recognized by the Claims Administrator, making clear that such determination has no impact on the enforceability of the remainder of the agreement outside of the claims administration process;

d.    specifically referencing the Third Circuit's decision and the fact that it vacated in part the District Court's Order wherever the Order is mentioned; and

e.    providing funding companies and class members with a reasonable opportunity (at least 30 days) to review and comment on any revised Assignment Rules, and considering any comments received before promulgating a final revised procedure.

2.    Vacate any prior determination that does not conform to the Third Circuit's mandate, including all prior Notice of Assignment Review Determinations concerning Thrivest's agreements, with appropriate notice to all affected parties.

3.    Issue a corrective communication to all class members involved in funding transactions making clear:

a.    that Third Circuit vacated in part the District Court's Order;

b.    that neither the District Court nor the Claims Administrator has authority to void funding transactions in their entirety or to void contractual provisions that go only to a funder's right to receive funds after the class member acquires them; and

c.    that any determination by the District Court, the Claims Administrator or the Special Masters in the claims administration

8

process shall not impact the rights of the parties to any funding agreement outside of the claims administration process.

In addition, Thrivest requests such further relief that this Court deems necessary and proper.

## VI.   **REASONS WHY WRIT SHOULD ISSUE**

The Court of Appeals should issue a writ of mandamus here because the District Court is clearly not following its appellate guidance, Thrivest has exhausted its avenues of relief below, and continued implementation of the Assignment Rules is likely to cause irreparable injury to Thrivest, class members or both.

A court of appeals is empowered to "issue all writs necessary or appropriate in aid of [its] . . . jurisdiction[ ] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A writ of mandamus may issue if the petitioner shows: "(1) a clear and indisputable 'abuse of discretion or ... error of law,' (2) 'a lack of an alternate avenue for adequate relief,' and (3) 'a likelihood of irreparable injury.'" In re: Howmedica Osteonics Corp., 867 F.3d 390, 401 (3d Cir. 2017) (internal citations omitted); see also Hollingsworth v. Perry, 558 U.S. 183, 190 (2010); Cheney v. United States Dist. Court, 542 U.S. 367, 380-81 (2004). Mandamus issues only if "appropriate under the circumstances." Cheney, 542 U.S. at 381. Although the requirements are "demanding," the test is "not insuperable." Id.

<u>Abuse of Discretion and Error of Law.</u>  By continuing to implement the Assignment Rules unchanged after this Court said it had exceed its authority, the District Court both abused its discretion and committed errors of law.  Its transaction-level determinations directly contravene this Court's holding that "the District Court went beyond its authority when it purported to void the cash advance agreements in their entirety."  <u>In Re: National Football League Players' Concussion Injury Litigation</u>, 923 F.3d at 111.  The District Court likewise erred by continuing to apply stale criteria to determine compliance with Section 30.1 of the Settlement Agreement, rather than following this Court's guidance about what constitutes a "true assignment."  <u>Id.</u> at 110.  Indeed, although this Court held that Thrivest's agreement "gave it only the right to receive settlement funds after the funds are disbursed to a class member," the Claims Administrator recently declared the agreement void in its entirety under Section 30.1 of the Settlement Agreement—another clear error.  <u>Id.</u> at 112.  Considering that the Assignment Rules continue to refer to the Order without reference to the fact that it was vacated in part, there can be no doubt that the District Court's action warrant this Court's attention and intervention.

<u>Lack of Alternate Avenues of Relief.</u>  Thrivest sought to reform the Assignment Rules from within, raising its concerns and requesting a conference to implement the requested changes.  But the Claims Administrator has done nothing and the District

Court rejected its request for a conference. There is nothing to appeal and, in any event, this Court has already decided the issues raised herein. Mandamus is the only available avenue of relief.

Likelihood of Irreparable Injury. The District Court's failure to follow this Court's clear mandate is an injury to the administration of justice sufficient to warrant relief in and of itself. But, as evidenced by the position advocated by one class member in arbitration, the Claims Administrator's communications are likely creating confusion about the enforceability of Thrivest's agreements outside of the claims administration process. Even though this Court made clear that the District Court "did not have the authority to preclude Thrivest from litigating any of its remaining rights under the agreement," the Claims Administrator's communications may leave class members with the misimpression that Thrivest's agreement is unenforceable in arbitration. Id. at 113. Indeed, the Notice of Assignment Review Determination says that the "transaction is … prohibited" and the Claims Administrator likely reinforces the message that the funding company is without recourse by pairing that communication with the rescission waiver. These Court-sponsored communications are likely to influence class members to ignore their contractual promises or to take on additional risk in arbitration and, as such, they are likely to cause irreparable injury—in the form of additional financial obligations under the agreement and legal fees associated with the ever-protracting dispute (which are recoverable under the

11

agreement). The arbitrators will ultimately decide those issues, but, either way, both Thrivest and the class members are increasingly at risk as these disputes continue. Mandamus is warranted because the District Court should not be providing class members with inaccurate and incomplete information.

## VII.  **CONCLUSION**

This Court's April 26, 2019 decision vacated in part the Order, reversing the District Court's transaction-level determinations and directing a provision-by-provision analysis limited to the claims administration process. Since then, the District Court and the Claims Administrator have continued to implement the very process that this Court criticized without making any changes whatsoever. Mandamus is appropriate not only because the District Court must follow the Court of Appeals' mandate, but also because the District Court's communications may cause class members to misunderstand their legal rights and obligations. For all of the foregoing reasons, Thrivest respectfully requests this Court's assistance.

[remainder left blank intentionally]

Respectfully submitted,

**FOX ROTHSCHILD LLP**

Peter C. Buckley, Esquire
Eric E. Reed, Esquire
Attorney I.D. Nos. 93123, 204692
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103-3222
Tel: (215) 299-2854
Fax: (215) 299-2150
pbuckley@foxrothschild.com
ereed@foxrothschild.com

*Attorneys for Petitioner,*
*Thrivest Specialty Funding, LLC*

September 18, 2019

# EXHIBIT A

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **Hon. Anita B. Brody** |

## EXPLANATION AND ORDER

It has come to the Court's attention that members of the class or their representatives have assigned or attempted to assign monetary claims to third parties. Under the unambiguous language of the Settlement Agreement, Settlement Class Members[1] are prohibited from assigning or attempting to assign their monetary claims to third parties, and any agreement making such an assignment or attempt to assign is void, invalid and of no force and effect. Additionally, under the Settlement Agreement, the Claims Administrator is prohibited from paying a Class Member's monetary award to any third party that holds an assignment or an attempted assignment ("Third-Party Funder").[2]

The purpose of the anti-assignment provision is to protect the interests of Class Members by recognizing that Class Members receiving monetary awards are by definition cognitively

---

[1] Reference to Class Members includes any Class or Subclass Representative. *See* Settlement Agreement § 30.1.

[2] The Claims Administrator, BrownGreer, has already made an official statement that it will not recognize the assignment of any monetary claims. *See* NFL Concussion Settlement Website, Frequently Asked Questions 5.31, available at https://www.nflconcussionsettlement.com/Un-Secure/FAQDetails.aspx?q=67#67.

impaired. As the fiduciary of the Class, it is the Court's obligation to enforce this provision of the Settlement Agreement.

**BACKGROUND**

The administration of large settlements can provide unique challenges to the legal system as a whole, and the administration of the NFL Concussion Settlement has certainly been no exception. The issue before the Court was first raised by litigation before Judge Loretta A. Preska in the Southern District of New York. In that litigation, the Consumer Financial Protection Bureau ("CFPB") and the People of the State of New York ("NYAG") brought suit against RD Legal Funding, RD Legal Finance, LCC, RD Legal Funding Partners, LP, and Roni Dersovitz (collectively, "RD Legal"). As part of that suit, RD Legal[3] asserted that assignments of Class Member's monetary claims are permitted under the NFL Concussion Settlement Agreement. Upon learning of that assertion, Co-Lead Class Counsel, Chris Seeger, filed an amicus memorandum before Judge Preska disputing RD Legal's claims. *See CFPB, et al. v. RD Legal Funding, LCC, et al.*, No. 17-cv-890 (S.D.N.Y. Sept. 8, 2017), ECF No. 45.

Judge Preska was presented with the question of whether "the *NFL Concussion Litigation* settlement agreement forbids assignments of settlement benefits." Order at 4, *RD Legal Funding*, No. 17-cv-890 (S.D.N.Y. Sept. 8, 2017), ECF No. 59. Judge Preska referred that question to this Court because it implicates the administration of the settlement and the interpretation of the Settlement Agreement—over which this Court has continuing jurisdiction. *See* Settlement Agreement § 27.1, ECF No. 6481-1 ("Any disputes or controversies arising out of, or related to, the interpretation, implementation, administration, and enforcement of this Settlement Agreement will be made by motion to the Court."); *see also In re Nat. Football League Players'*

---

[3] RD Legal is a Third-Party Funder purports to have purchased assignments of Class Member's monetary claims.

*Concussion Injury Litig.*, 307 F.R.D. 351, 426 (E.D. Pa. 2015) ("The Court retains continuing and exclusive jurisdiction over this action including jurisdiction over . . . all Settlement Class Members . . . .").[4]

**DISCUSSION**

The Settlement Agreement is interpreted under New York Law, Settlement Agreement § 27.1(a), ECF 6481-1, and New York law allows parties to void assignments of contractual rights so long as the anti-assignment language is unambiguous, *Neuroaxis Neurosurgical Associates, PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 352 (S.D.N.Y. 2013) (collecting cases).

In order to protect Class Members, the Settlement Agreement unambiguously prohibits Class Members from assigning claims or attempting to assign claims and renders any such assignment void, invalid and of no force and effect.

> Section 30.1 <u>No Assignment of Claims</u>. Neither the Settlement Class nor any Class or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint. Any such assignment, or attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action.

Settlement Agreement, ECF No. 6481-1.

The above section bars the assignment of a Class Member's monetary claims—as can be shown by a simple syllogism. Section 30.1 prevents a Settlement Class Member from assigning "any rights or claims relating to the subject matter of the Class Action Complaint." *Id*. The subject matter of the Class Action Complaint includes the allegations that directly produced the Settlement Agreement and its monetary claim structure. Thus, any monetary claims under the

---

[4] To address the question, Co-lead Class Counsel, the CFPB, NYAG, and RD Legal submitted briefs to this Court. *See* ECF No. 8380.

Settlement Agreement are "relat[ed] to"[5] the Class Action Complaint, and assignment of those claims is prohibited.[6]

Therefore, under the Settlement Agreement, Class Members are prohibited from assigning or attempting to assign any monetary claims, and any such purported assignment is void, invalid and of no force and effect. Furthermore, the Settlement Agreement instructs that the Claims Administrator shall not recognize any such action taken by a Settlement Class Member. Thus, Class Members simply cannot enter into a binding agreement that assigns or attempts to assign their claims. A Third-Party Funder that failed to perform proper due diligence before deciding to enter such an agreement is prohibited from now reaping the benefit of the contract.

---

[5] Under New York state law, the phrase "relating to" is commonly given broad scope. *See, e.g.*, *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) (defining "related to" broadly—and more broadly than "arising out of").

[6]     RD Legal argues that the assignment of a Class Member's monetary claim is permissible under the Settlement Agreement. Two main arguments are given, but neither is persuasive.

     RD Legal performs linguistic backflips trying to demonstrate that the phrase "rights or claims relating to the subject matter of the Class Action Complaint" does not include Class Members' *monetary claims* and is instead limited to Class Members' *tort claims*. RD Legal's argument fails because its entire analysis is predicated on excising the phrase "relating to" from its interpretation of the Settlement Agreement's text. *See* RD Legal Mem. 10-12, ECF No. 8435 (repeating the phrase "subject matter of the Class Action Complaint" without discussing, at all, the meaning or existence of the preceding words "relating to"). The phrase "relating to" expands the definition of "subject matter of the Class Action Complaint" to include monetary claims under the settlement agreement. RD Legal evades discussing this important phrase, and therefore, its definition of the "plain meaning" of the Settlement Agreement is incorrect.

     Also, RD Legal argues that Article 9 of the Uniform Commercial Code invalidates any attempts to restrict the assignment of payments stemming from a legal settlement. RD Legal argues that under Article 9, parties cannot restrict assignment of "a general intangible," which includes settlement proceeds. RD Legal Mem. 8-9, ECF No. 8435. Even if Article 9 covers the Settlement Agreement, the monetary claims under the agreement would be excluded by New York's version of the UCC.

     The invalidation of anti-assignment provisions does not apply to "a claim or right to receive compensation for injuries." N.Y. U.C.C. Law § 9-408(d)(1). Clearly, an award that pays money for suffering head concussions is "compensation for injuries." Therefore, New York's UCC provisions allow for parties to create terms that prevent assignment of settlement claims, and RD Legal's argument that the Settlement Agreement cannot restrict assignment under the UCC fails.

Thus, based on the above reasoning, the answer to Judge Preska's question is: yes, the *NFL Concussion Litigation* Settlement Agreement forbids assignments of settlement benefits.

**CONCLUSION**

The Claims Administrator is instructed to inquire of every Class Member, who is eligible for an award, as to whether that Class Member has made an assignment or attempt to assign. Every such class member must provide a verified response to the Claims Administrator. If an assignment or attempt to assign has been made, the Class Member must also submit to the Claims Administrator any documents related to the transaction, including any documents signed by the Class Member's attorney.

To the extent that any Class Member has entered into an agreement that assigned or attempted to assign any monetary claims, that agreement is void, invalid and of no force and effect. Class Members receiving awards are, by definition, cognitively impaired. A Third-Party funder entering an agreement with a Class Member would obviously know that simple fact. Additionally, the anti-assignment language in the Settlement Agreement clearly states the intent that Class Members are unable to make assignments. Thus, the Court has little sympathy for a Third-Party Funder that will not receive a return on its "investment." Nevertheless, under the principle of rescission, Class Members should return to the Third-Party Funder the amount already paid to them. Accordingly, if the Third-Party Funder is willing to accept rescission and execute a valid waiver relinquishing any claims or rights under the entire agreement creating the assignment or attempted assignment, then the Claims Administrator will be authorized to withhold—from the Class Member's monetary award—the amount already paid to the Class Member under the agreement and return it to the Third-Party Funder.

Further instructions to the Claims Administrator will follow. So **ORDERED**.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

12/8/2017

_____

DATE

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to:

6

# EXHIBIT B



# RULES GOVERNING ASSIGNMENT OF CLAIMS

# TABLE OF CONTENTS

**Page**

**TITLE I:  GENERAL**................................................................................................1

    Rule 1.   The Purpose of These Rules.................................................................1

    Rule 2.   Adoption of These Rules.....................................................................1

    Rule 3.   Definitions Used in These Rules.........................................................1

**TITLE II:  ASSIGNMENT REVIEW** ...................................................................2

    Rule 4.   Third-Party Funder Transactions Subject to Assignment Review .................2

    Rule 5.   Assignment Review.............................................................................2

    Rule 6.   Review Criteria ..................................................................................3

**TITLE III:  PROCESS FOR ASSIGNMENTS** ....................................................3

    Rule 7.   Waiver Form ......................................................................................3

    Rule 8.   Payment Steps ....................................................................................3

## RULES GOVERNING ASSIGNMENT OF CLAIMS

### TITLE I:  GENERAL

**Rule 1.     The Purpose of These Rules.**  These Rules govern the analysis of transactions involving a Settlement Class Member and a person or entity other than the NFL Parties to determine whether the transaction is an assignment of rights or claims prohibited by Section 30.1 of the Settlement Agreement and the Court's Explanation and Order entered on December 8, 2017 (Document 9517) and the implementation of that Explanation and Order.

**Rule 2.     Adoption of These Rules.**  The Special Masters have adopted these Rules in the exercise of their duties pursuant their appointment by the Court in its July 13, 2016 Order (Document 6871).  The Special Masters may amend these Rules at any time *sua sponte* or after request by the Claims Administrator and such input from Co-Lead Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3.     Definitions Used in These Rules.**  All capitalized terms used in these Rules will have the meanings given to them in the Settlement Agreement.  In addition:

(a) "Collateralized Loan" means a Third-Party Funder Transaction determined not to be a Prohibited Assignment.

(b) "Explanation and Order" means the Explanation and Order entered by the Court on December 8, 2017 (Document 9517), regarding the application of Section 30.1 of the Settlement Agreement to monetary claims under the Settlement Agreement.

(c) "Monetary Claims" means a Monetary Award, Supplemental Monetary Award or Derivative Claimant Award in the Settlement Program.

(d) "Notice of Assignment Review Determination" means a notice the Claims Administrator will issue after determining with a Special Master whether a Third-Party Funder Transaction is a Prohibited Assignment or is a Collateralized Loan.

(e) "Prohibited Assignment" means a Third-Party Funder Transaction determined to be an assignment, or attempt to assign, by a Settlement Class Member of Monetary Claims that is void, invalid, and of no force and effect and that shall not be recognized by the Claims Administrator, pursuant to Section 30.1 of the Settlement Agreement and the Explanation and Order.

(f) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).



(g) "Settlement Class Member" means a Retired NFL Football Player (or the Representative Claimant of a deceased or incompetent Retired NFL Football Player), or a Derivative Claimant, which is how this term is defined in the Settlement Agreement.

(h) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(i) "Special Master" and "Special Masters" mean any one or both of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

(j) "Third-Party Funder" is a person or entity that engaged in a Third-Party Funder Transaction with a Settlement Class Member.

(k) "Third-Party Funder Transaction" is any agreement, contract, document, or arrangement between a Settlement Class Member and a Third-Party Funder involving the actual or potential advance or transfer of funds from the Third-Party Funder to the Settlement Class Member, disclosed to the Claims Administrator before payment of a Monetary Claim to that Settlement Class Member.

(l) "Waiver Form" means the Waiver Relinquishing Rights Under Attempted Assignment contemplated in the Explanation and Order.

## TITLE II:  ASSIGNMENT REVIEW

**Rule 4.    Third-Party Funder Transactions Subject to Assignment Review.**  The Explanation and Order requires the Claims Administrator to ask all Settlement Class Members eligible for payment on a Monetary Claim whether they have assigned or attempted to assign their Monetary Claim.  To receive payment from the Claims Administrator, an eligible Settlement Class Member must complete, sign and submit to the Claims Administrator a Sworn Statement: Status of Assignment of Monetary Claim (SWS-5).  If a Settlement Class Member indicates on this Sworn Statement that he/she has assigned or attempted to assign any settlement benefits from his/her Monetary Claim to a Third-Party Funder or borrowed any funds against his/her Monetary Claim as collateral, the Settlement Class Member must provide to the Claims Administrator all documents relating to that Third-Party Funder Transaction.  The Claims Administrator may require the Settlement Class Member and/or the Third-Party Funder to submit such documents and information as the Claims Administrator deems necessary for its review of a Third-Party Funder Transaction under these Rules, by such deadline as the Claims Administrator sets.

**Rule 5.    Assignment Review.**  The Claims Administrator will review each Third-Party Funder Transaction with a Special Master to determine whether the Third-Party Funder Transaction is a Prohibited Assignment or is a Collateralized Loan and will notify the affected Settlement Class Member of that decision by issuing a Notice of Assignment Review Determination.  If the Settlement Class Member or Third-Party Funder wishes to challenge the decision, it will be presented to the other Special Master for review, along with any argument

2



offered by the Settlement Class Member or Third-Party Funder for the Special Master's consideration. The final decision of the Special Master is not appealable to the Court, unless the Special Master or the Court finds that it involves a conclusion of law and that the objecting party has standing to pursue review by the Court.

**Rule 6.     Review Criteria.**  The Claims Administrator and the Special Masters will assess the terms of a Third-Party Funder Transaction to determine whether they reflect the attributes of a Prohibited Assignment under the Explanation and Order. In general, a Third-Party Funder Transaction constitutes a Prohibited Assignment where there is an express assignment of a Monetary Claim. The Claims Administrator and the Special Masters will consider attributes of the transaction to assess the fairness and commercial reasonableness of its terms and whether they reflect the type of transaction the Court found invalid in its Explanation and Order.

### TITLE III:  PROCESS FOR PROHIBITED ASSIGNMENTS

**Rule 7.     Waiver Form.**  On any Prohibited Assignment, the Claims Administrator will issue a Waiver Form for the Third-Party Funder to sign and return within 30 days to (a) indicate the amount advanced to the Settlement Class Member that has not been repaid to the Third-Party Funder and (b) to rescind the Prohibited Assignment and relinquish all claims relating to it. The Claims Administrator will send this Waiver Form to the lawyer for a represented Settlement Class Member and directly to the Third-Party Funder if the Settlement Class Member is not represented by a lawyer. The Waiver Form includes an attachment for the Settlement Class Member to sign and return to the Claims Administrator indicating agreement with the amount of the funds advanced stated by the Third-Party Funder in the Waiver Form.

**Rule 8.     Payment Steps.**  The Claims Administrator will follow these steps to pay a Monetary Claim with a Prohibited Assignment:

    **(a) No Complete Waiver:**  If the Claims Administrator has not received a timely complete Waiver Form signed by the Third-Party Funder, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court.

    **(b) Complete Waiver:**  If the Claims Administrator has received a timely complete Waiver Form signed by the Third-Party Funder and the Settlement Class Member agrees with the amount advanced that has not been repaid, the Claims Administrator will direct the Trustee to pay that amount to the Third-Party Funder and pay the balance to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. If the Settlement Class Member has not agreed to the amount advanced that has not been repaid, the Claims Administrator and a Special Master will determine the correct amount from the materials submitted.

    **(c) Payment to Settlement Class Members:**  The Claims Administrator will direct the Trustee to pay Monetary Claims with a Prohibited Assignment directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*.



# EXHIBIT C



# NFL CONCUSSION SETTLEMENT
### IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

# RULES GOVERNING ASSIGNMENT OF CLAIMS

## TABLE OF CONTENTS

**Page**

**TITLE I:  GENERAL**...........................................................................................1

    Rule 1.  The Purpose of These Rules...................................................1

    Rule 2.  Adoption of These Rules.......................................................1

    Rule 3.  Definitions Used in These Rules............................................1

**TITLE II:  ASSIGNMENT REVIEW** ........................................................2

    Rule 4.  Third-Party Funder Transactions Subject to Assignment Review ...................2

    Rule 5.  Assignment Review...............................................................2

    Rule 6.  Review Criteria ....................................................................3

**TITLE III:  PROCESS FOR ASSIGNMENTS** ........................................3

    Rule 7.  Waiver Form .........................................................................3

    Rule 8.  Payment Steps ......................................................................3

## RULES GOVERNING ASSIGNMENT OF CLAIMS

### TITLE I:  GENERAL

**Rule 1.    The Purpose of These Rules.**  These Rules govern the analysis of transactions involving a Settlement Class Member and a person or entity other than the NFL Parties to determine whether the transaction is an assignment of rights or claims prohibited by Section 30.1 of the Settlement Agreement and the Court's Explanation and Order entered on December 8, 2017 (Document 9517) and the implementation of that Explanation and Order.

**Rule 2.    Adoption of These Rules.**  The Special Masters have adopted these Rules in the exercise of their duties pursuant their appointment by the Court in its July 13, 2016 Order (Document 6871).  The Special Masters may amend these Rules at any time *sua sponte* or after request by the Claims Administrator and such input from Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3.    Definitions Used in These Rules.**  All capitalized terms used in these Rules will have the meanings given to them in the Settlement Agreement.  In addition:

(a)  "Collateralized Loan" means a Third-Party Funder Transaction determined not to be a Prohibited Assignment.

(b)  "Explanation and Order" means the Explanation and Order entered by the Court on December 8, 2017 (Document 9517), regarding the application of Section 30.1 of the Settlement Agreement to monetary claims under the Settlement Agreement.

(c)  "Monetary Claims" means a Monetary Award, Supplemental Monetary Award or Derivative Claimant Award in the Settlement Program.

(d)  "Notice of Assignment Review Determination" means a notice the Claims Administrator will issue after determining with a Special Master whether a Third-Party Funder Transaction is a Prohibited Assignment or is a Collateralized Loan.

(e)  "Prohibited Assignment" means a Third-Party Funder Transaction determined to be an assignment, or attempt to assign, by a Settlement Class Member of Monetary Claims that is void, invalid, and of no force and effect and that shall not be recognized by the Claims Administrator, pursuant to Section 30.1 of the Settlement Agreement and the Explanation and Order.

(f)  "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).



(g) "Settlement Class Member" means a Retired NFL Football Player (or the Representative Claimant of a deceased or incompetent Retired NFL Football Player), or a Derivative Claimant, which is how this term is defined in the Settlement Agreement.

(h) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(i) "Special Master" and "Special Masters" mean any one or both of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

(j) "Third-Party Funder" is a person or entity that engaged in a Third-Party Funder Transaction with a Settlement Class Member.

(k) "Third-Party Funder Transaction" is any agreement, contract, document, or arrangement between a Settlement Class Member and a Third-Party Funder involving the actual or potential advance or transfer of funds from the Third-Party Funder to the Settlement Class Member, disclosed to the Claims Administrator before payment of a Monetary Claim to that Settlement Class Member.

(l) "Waiver Form" means the Waiver Relinquishing Rights Under Attempted Assignment contemplated in the Explanation and Order.

## TITLE II:  ASSIGNMENT REVIEW

**Rule 4.    Third-Party Funder Transactions Subject to Assignment Review.**  The Explanation and Order requires the Claims Administrator to ask all Settlement Class Members eligible for payment on a Monetary Claim whether they have assigned or attempted to assign their Monetary Claim.  To receive payment from the Claims Administrator, an eligible Settlement Class Member must complete, sign and submit to the Claims Administrator a Sworn Statement: Status of Assignment of Monetary Claim (SWS-5).  If a Settlement Class Member indicates on this Sworn Statement that he/she has assigned or attempted to assign any settlement benefits from his/her Monetary Claim to a Third-Party Funder or borrowed any funds against his/her Monetary Claim as collateral, the Settlement Class Member must provide to the Claims Administrator all documents relating to that Third-Party Funder Transaction.  The Claims Administrator may require the Settlement Class Member and/or the Third-Party Funder to submit such documents and information as the Claims Administrator deems necessary for its review of a Third-Party Funder Transaction under these Rules, by such deadline as the Claims Administrator sets.

**Rule 5.    Assignment Review.**  The Claims Administrator will review each Third-Party Funder Transaction with a Special Master to determine whether the Third-Party Funder Transaction is a Prohibited Assignment or is a Collateralized Loan and will notify the affected Settlement Class Member of that decision by issuing a Notice of Assignment Review Determination.  If the Settlement Class Member or Third-Party Funder wishes to challenge the decision, it will be presented to the other Special Master for review, along with any argument

offered by the Settlement Class Member or Third-Party Funder for the Special Master's consideration.  The final decision of the Special Master is not appealable to the Court, unless the Special Master or the Court finds that it involves a conclusion of law and that the objecting party has standing to pursue review by the Court.

**Rule 6.     Review Criteria.**  The Claims Administrator and the Special Masters will assess the terms of a Third-Party Funder Transaction to determine whether they reflect the attributes of a Prohibited Assignment under the Explanation and Order.  In general, a Third-Party Funder Transaction constitutes a Prohibited Assignment where there is an express assignment of a Monetary Claim.  The Claims Administrator and the Special Masters will consider attributes of the transaction to assess the fairness and commercial reasonableness of its terms and whether they reflect the type of transaction the Court found invalid in its Explanation and Order.

## TITLE III:  PROCESS FOR PROHIBITED ASSIGNMENTS

**Rule 7.     Waiver Form.**  On any Prohibited Assignment, the Claims Administrator will issue a Waiver Form for the Third-Party Funder to sign and return within 30 days to (a) indicate the amount advanced to the Settlement Class Member that has not been repaid to the Third-Party Funder and (b) to rescind the Prohibited Assignment and relinquish all claims relating to it.  The Claims Administrator will send this Waiver Form to the lawyer for a represented Settlement Class Member and directly to the Third-Party Funder if the Settlement Class Member is not represented by a lawyer.  The Waiver Form includes an attachment for the Settlement Class Member to sign and return to the Claims Administrator indicating agreement with the amount of the funds advanced stated by the Third-Party Funder in the Waiver Form.

**Rule 8.     Payment Steps.**  The Claims Administrator will follow these steps to pay a Monetary Claim with a Prohibited Assignment:

   **(a) No Complete Waiver:**  If the Claims Administrator has not received a timely complete Waiver Form signed by the Third-Party Funder, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court.

   **(b) Complete Waiver:**  If the Claims Administrator has received a timely complete Waiver Form signed by the Third-Party Funder and the Settlement Class Member agrees with the amount advanced that has not been repaid, the Claims Administrator will direct the Trustee to pay that amount to the Third-Party Funder and pay the balance to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court.  If the Settlement Class Member has not agreed to the amount advanced that has not been repaid, the Claims Administrator and a Special Master will determine the correct amount from the materials submitted.

   **(c) Payment to Settlement Class Members:**  The Claims Administrator will direct the Trustee to pay Monetary Claims with a Prohibited Assignment directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*.

3



# EXHIBIT D



**Fox Rothschild** LLP
ATTORNEYS AT LAW

2000 Market Street
20th Floor
Philadelphia, PA 19103-3222
Tel (215) 299-2000  Fax (215) 299-2150
www.foxrothschild.com

PETER C. BUCKLEY
Direct No: 215.299.2854
Email: PBuckley@FoxRothschild.com

July 12, 2019

## VIA ECF AND HAND DELIVERY

The Honorable Anita B. Brody
United States District Court for the Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Room 7613
Philadelphia, Pennsylvania 19106-1751

Re:     *In Re: National Football League Players' Concussion Injury Litigation*,
        **No. 12-md-02323 (E.D. Pa.)**

Dear Judge Brody:

I represent Thrivest Specialty Funding, LLC ("Thrivest") and write to request a conference to discuss the Claims Administrator's implementation of the Court's December 8, 2017 Explanation and Order following the Third Circuit's ruling in In re: National Football League Players' Concussion Injury Litigation, 923 F.3d 96 (3d Cir., Apr. 26, 2019). Specifically, Thrivest seeks to discuss changes to the Claims Administrator's "Rules Governing Assignment of Claims" and related processes to conform those processes to the Third Circuit's ruling.

The Third Circuit issued its mandate on May 20, 2019. Subsequently, the Claims Administrator published revised "Rules Governing Assignment of Claims"[1] and filed its Status Report No. 5 (Doc. No. 10652) on May 31, 2019. Neither of the Claims Administrator's post-mandate issuances appear to incorporate the Third Circuit's direction. Indeed, neither document even refers to the Third Circuit's decision.

---

[1] Available at https://www.nflconcussionsettlement.com/Docs/Rules_Governing_Assignment_of_Claims.pdf (last accessed on July 12, 2019).

A Pennsylvania Limited Liability Partnership

California      Colorado      Connecticut      Delaware      District of Columbia      Florida      Illinois
Minnesota       Nevada        New Jersey       New York      Pennsylvania              Texas        Washington



**Fox Rothschild** LLP
ATTORNEYS AT LAW

The Honorable Anita B. Brody
July 12, 2019
Page 2

The revised "Rules Governing Assignment of Claims" still speak in binary terms, separating all funding arrangements into "collateralized loans" or "prohibited assignments." Similarly, Paragraph 18 of the May 31, 2019 Status Report still refers to the Court's December 8, 2017 Explanation and Order as defining whether a funding arrangement is a "Prohibited Assignment" that triggers a Notice of Assignment Review Determination.[2] The Third Circuit made clear, however, that a more nuanced provision-by-provision approach is required.

The Third Circuit partially reversed the Court's December 8, 2017 Explanation and Order, noting—as relevant to Thrivest's concern—"We will reverse to the extent the District Court purported to void the cash advance agreements *in their entirety* and void contractual provisions that went only to a lender's right to receive funds after the player acquired them." 923 F.3d at 113 (emphasis supplied). The Third Circuit's decision requires a provision-by-provision analysis to determine whether a specific term of the agreement is a "true assignment" of rights, which "allow[s] a litigation funding company to step into the shoes of a class member and pursue the class member's rights through the claims process." Id. at 111. It appears that the Claims Administrator is not following this guidance and, instead, is continuing to issue blanket determinations that entire agreements are "prohibited" when it may be that the agreement does not allow the funding company to stand in the shoes of the Class Member in the claims administration process or that any provisions that purport to provide such access should be ignored by the Claims Administrator.

Within this framework, the Third Circuit specifically addressed Thrivest's funding agreement:

> Thrivest's contract gave it only the right to receive settlement funds after the funds are disbursed to a class member, and the District Court's power over the funds and class ends at that point. ... Even if the parties had attempted to create a true assignment, we have held that the District Court did not have the authority to void Thrivest's agreement with White *in its entirety*.

Id. at 112-13 (emphasis supplied).

Thrivest is concerned that the Claims Administrator has not incorporated the Third Circuit's ruling into its work, and instead continues to regard all funding agreements as "Prohibited Assignments."

---

[2] The Claims Administrator previously designated Thrivest's funding agreement as a "Prohibited Assignment" under the December 8, 2017 Explanation and Order.



**Fox Rothschild** LLP
ATTORNEYS AT LAW

The Honorable Anita B. Brody
July 12, 2019
Page 3

This contradicts the Third Circuit's mandate, especially as to Thrivest in that the Third Circuit found that Thrivest did not have the right to stand in a Class Member's shoes and seek payment directly from the Claims Administrator. Thrivest is concerned that the Claims Administrator's current practice could result in the issuance of another Notice of Assignment Review Determination suggesting that Thrivest's Agreement is invalid in its entirety—which not only is contrary to the Third Circuit's ruling, but also may create unrealistic (and legally unsound) expectations in Class Members. The Court has been appropriately concerned about the accuracy of communications to Class Members and the Notice of Assignment Review Determination is no different, especially when a Class Member could view the notice as an invitation to ignore enforceable obligations and when doing so may result in additional financial consequences.

In light of the Third Circuit's ruling, Thrivest respectfully requests that the Court direct the Claims Administrator to revise its "Rules Governing Assignment of Claims" to conform to the provision-by-provision analysis required and to avoid the "all or nothing" nature of the current Notice of Assignment Review Determination.

Thrivest would welcome the opportunity to further explain its concerns and to participate in the Claims Administrator's consideration of the required revisions. Consideration of these issues now may help all parties avoid costly litigation later. To that end, Thrivest respectfully requests a conference with the Court, the Claims Administrator, Class Counsel, and any others who wish to participate in consideration of these issues.

Thank you.

Respectfully submitted,

Peter C. Buckley

cc:     Chambers (via fax)
        All Counsel of Record (via ECF)

# EXHIBIT E

# NFL CONCUSSION SETTLEMENT

*IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*

No. 2:12-md-02323 (E.D. Pa.)

## NOTICE OF ASSIGNMENT REVIEW DETERMINATION

### DATE OF NOTICE:  AUGUST 8, 2019

| I. | SETTLEMENT CLASS MEMBER INFORMATION |
|---|---|

| Settlement Program ID | ██████████ | | |
|---|---|---|---|
| **Name** | First ██████ | M.I. | Last ██████████ |
| **Settlement Class Member Type** | Retired NFL Football Player | | |
| **Lawyer** | ██████████████ | | |

| II. | EXPLANATION OF ASSIGNMENT REVIEW DETERMINATION |
|---|---|

This Notice is an official communication from the Claims Administrator for the NFL Concussion Settlement Program.  Under the Court's Explanation and Order entered on December 8, 2017 (Document 9517) (the "Explanation and Order"), the Claims Administrator is required to ask all eligible Settlement Class Members whether they have assigned or attempted to assign their monetary claim.  To receive payment, eligible Settlement Class Members must provide a verified response by completing, signing and submitting a Sworn Statement: Status of Assignment of Monetary Claim (SWS-5) to the Claims Administrator.

You indicated on your SWS-5 form that you assigned or attempted to assign settlement benefits from your monetary claim to a third-party, or borrowed funds using your monetary claim as collateral.

The Claims Administrator and the Special Master appointed by the Court in its July 13, 2016 Order (Document 6871) have reviewed the documents you submitted related to the attempted assignment or loan secured by your monetary claim, as shown in Section III below.  **We determined that this transaction is an assignment that is prohibited by Section 30.1 of the Settlement Agreement and the Explanation and Order.**  The Assignment Review Summary in Section III below explains more about this determination.

| III. | ASSIGNMENT REVIEW SUMMARY |
|---|---|

| 1. | **Name of Third Party-Funder:** | Thrivest Specialty Funding, LLC |
|---|---|---|
| 2. | **Document ID(s) of Assignment/Loan Documents:**  These are the Document ID references of the Assignment/Loan Documents you provided, which have been uploaded to the NFL Concussion Settlement Program Portal. | ██████ |
| 3. | **Amount Advanced by Third-Party Funder:**  This is the amount that the Third-Party Funder paid to you or on your behalf in exchange for a right, title and interest in a portion of your claim, according to the Assignment/Loan Documents you provided.  This amount will be withheld from your award payment until we determine whether the Third-Party Funder will accept rescission and execute a waiver relinquishing any claims or rights under the agreement creating the prohibited assignment. | ██████ |

| | |
|---|---|
| **4.** | **Assignment Review Findings:**  We determined this transaction is a prohibited assignment for these reasons:<br><br>(a) The transaction involves an express assignment of a monetary claim;<br><br>(b) The Settlement Class Member is attempting to assign to the Third-Party Funder an interest in a portion of the claim;<br><br>(c) The transaction is not a loan;<br><br>(d) The transaction is memorialized by a Sales and Purchase Agreement; and<br><br>(e) The transaction required the Settlement Class Member to pay an origination fee, processing fee, brokerage fee and/or other transaction fees. |

## IV.    HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

If you are a Settlement Class Member, consult with your lawyer if you have questions or need assistance.  If you are a lawyer, call or email your designated Firm Contact for assistance.  For more information about the Settlement Program, visit the official website at www.NFLConcussionSettlement.com to read the Frequently Asked Questions or download a copy of the complete Settlement Agreement.

# EXHIBIT F

 **CONCUSSION SETTLEMENT**

*IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*

No. 2:12-md-2323 (E.D. Pa.)

## WAIVER RELINQUISHING RIGHTS UNDER ATTEMPTED ASSIGNMENT

### DEADLINE FOR RECEIPT OF COMPLETED WAIVER: SEPTEMBER 7, 2019

In the Explanation and Order dated 12/8/17 (the "Order"), the Court ruled that Settlement Class Members are prohibited from assigning or attempting to assign their monetary claims to third parties. Additionally, the Claims Administrator is prohibited from paying a Class Member's monetary award to any third-party that holds an assignment or attempted assignment ("Third-Party Funder").

The Order provides an opportunity for Third-Party Funders to accept rescission. To do so, Third Party Funders must execute this Waiver Relinquishing Rights Under Attempted Assignment (this "Waiver"), thereby relinquishing any claims to rights under the agreement that created the assignment or attempted assignment, and return it to the Claims Administrator within 30 days of the date that the Claims Administrator issued it. This deadline is printed in the banner heading above.

The Claims Administrator will withhold – from the Class Member's monetary award – the amount of money that the Third-Party Funder has already paid to the Class Member and that the Class Member has not returned to the Third-Party Funder, if:

1. The Third-Party Funder has provided a completed, signed Waiver to the Claims Administrator; and
2. The Class Member confirms the monetary amount indicated in Section III below.

If the Class Member is represented by a lawyer, the Third-Party Funder must submit the completed, signed Waiver to the Class Member's lawyer.

If the Class Member is <u>not</u> represented by a lawyer, the Third-Party Funder must submit the completed, signed Waiver directly to the Claims Administrator.

| I. | SETTLEMENT CLASS MEMBER INFORMATION | |
|---|---|---|

| | | |
|---|---|---|
| **Settlement Program ID** | ███████ | |
| **Name** | First ████████ | M.I. ████ Last ██████ |
| **Settlement Class Member Type** | Retired NFL Football Player | |
| **Lawyer** | ████████████ | |

| II. | THIRD-PARTY FUNDER INFORMATION | |
|---|---|---|

| | |
|---|---|
| **Name** | Thrivest Specialty Funding, LLC |
| **Employer Identification Number** | EIN ⎩_⎭_⎩_⎭ - ⎩_⎭_⎩_⎭_⎩_⎭_⎩_⎭_⎩_⎭ |
| **Address** | Street |

|  | City | State | Zip Code |
|---|---|---|---|
| **Name of Authorized Business Representative** | | | |
| **Title of Authorized Business Representative** | | | |
| **Email Address** | | | |
| **Phone Number** | ( \|  \| ) \| \| \| \| - \| \| \| \| | | |

## III.    DETAILS OF AGREEMENT(S) BETWEEN THIRD-PARTY FUNDER AND CLASS MEMBER

**Name and Date of Agreement(s) Between Third-Party Funder and Class Member.**  Enter the names (*e.g.*, Funding Agreement, Promissory Note, Security Agreement, etc.) of the agreements between the Third-Party Funder and the Class Member in which the Class Member assigned or attempted to assign a monetary claim to the Third-Party Funder, together with the effective dates of those agreements.  If one transaction includes multiple agreements, list them all.  If there are more than five agreements, list additional agreements on a separate page.

| Name of Agreement Document | Effective Date of Agreement |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

| | |
|---|---|
| **Amount Third-Party Funder Paid to Class Member.**  Enter the total amount of money that the Third-Party Funder has already paid to the Class Member. | ███████ |
| **Amount Class Member Has Returned to Third-Party Funder.**  If applicable, enter the total amount of money that the Class Member has returned to the Third-Party Funder. | $_____ |

**NOTE:  Upon receipt of this completed Waiver signed by the Third-Party Funder and the Attachment A signed by the Class Member, the Claims Administrator will withhold the amount the Third-Party Funder has paid to the Class Member, minus any amount the Class Member has returned to the Third-Party Funder, from the Class Member's Monetary Award payment and direct that amount to the Third-Party Funder.**

## IV.    ACCEPTANCE OF RESCISSION AND WAIVER RELINQUISHING RIGHTS UNDER ATTEMPTED ASSIGNMENT

By signing this Waiver and accepting the amount noted at Section III above, the Third-Party Funder accepts rescission and relinquishes any and all claims or rights under each and every agreement, in its entirety, between the Class Member and the Third-Party Funder creating the assignment or attempted assignment.  The Third-Party Funder will not seek any further payment from the Class Member, the Class Member's estate, or any other party, by any collection method, as a result of the agreement(s) noted above and certifies by signing this Waiver that the Third-Party Funder accepts the amount noted as full and complete repayment of any and all amounts due from the Class Member.  Additionally, the Third-Party Funder waives any and all claims against the Class Member's attorney, the Claims Administrator, and the Trustee of the Settlement Trust Account.

| V. | PAYMENT ELECTION INFORMATION FOR THIRD-PARTY FUNDER | |
|---|---|---|
| **Payment Method** | Wire Transfer ☐ | Check ☐ |
| V(A). | REQUIRED INFORMATION TO RECEIVE PAYMENT BY WIRE TRANSFER<br>(Complete only if Payment Method selected is Wire Transfer) | |
| **1.** | BANK NAME | |
| **2.** | BANK ABA ROUTING NUMBER | |
| **3.** | ACCOUNT NAME | |
| **4.** | ACCOUNT NUMBER | |
| **5.** | INTERMEDIARY BANK NAME (IF APPLICABLE) | |
| **6.** | INTERMEDIARY BANK ABA ROUTING NUMBER (IF APPLICABLE) | |
| **7.** | FOR FURTHER CREDIT INSTRUCTION (IF APPLICABLE) | |
| V(B). | REQUIRED INFORMATION TO RECEIVE PAYMENT BY CHECK<br>(Complete only if Payment Method selected is Check) | |
| **1.** | PAYEE NAME | |
| **2.** | MAILING ADDRESS | Street<br>City            State            Zip Code |

| VI. | SIGNATURE OF THIRD-PARTY FUNDER | |
|---|---|---|

This Waiver is an official document submitted in connection with the Class Action Settlement in *In re: National Football League Players' Concussion Injury Litigation, MDL No. 2323*.  By signing this Waiver, the Third-Party Funder accepts rescission and relinquishes any claims or rights under the entire agreement between the Class Member and the Third-Party Funder creating the assignment or attempted assignment.  **By signing below, I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that all information provided in this Waiver is true and correct to the best of my knowledge, information and belief.**

| **Signature** | | | **Date** | |
|---|---|---|---|---|
| **Printed Name** | First | M.I. | Last | |
| **Title** | | | | |

| VII. | HOW TO SUBMIT THIS WAIVER | |
|---|---|---|

Complete this Waiver fully, sign it and submit it to the Claims Administrator.  You may submit this Waiver using one of these methods:

| **By Online Portal:** | Go to your secure online portal with the Claims Administrator and upload this signed PDF. |
|---|---|
| **By Email:** | ClaimsAdministrator@NFLConcussionSettlement.com |
| **By Mail:** | NFL Concussion Settlement<br>Claims Administrator<br>P.O. Box 25369<br>Richmond, VA 23260 |
| **By Delivery:** | NFL Concussion Settlement<br>c/o BrownGreer PLC<br>250 Rocketts Way<br>Richmond, VA 23231 |

 **CONCUSSION SETTLEMENT**

*IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*
No. 2:12-md-02323 (E.D. Pa.)

### WAIVER RELINQUISHING RIGHTS UNDER ATTEMPTED ASSIGNMENT
### ATTACHMENT A

In the Explanation and Order dated 12/8/17 (the "Order"), the Court ruled that Settlement Class Members are prohibited from assigning or attempting to assign their monetary claims to third parties.  Additionally, the Claims Administrator is prohibited from paying a Class Member's monetary award to any third-party that holds an assignment or attempted assignment ("Third-Party Funder").

The Order provides an opportunity for Third-Party Funders to accept rescission. This means that they will accept the return of the funds they extended to you in lieu of enforcing the purported agreement you entered into with the Third-Party Funder.  To accept rescission, Third Party Funders must execute a Waiver Relinquishing Rights Under Attempted Assignment (the "Waiver"), thereby relinquishing any claims to rights under the agreement that created the assignment or attempted assignment.

The Claims Administrator will withhold – from your monetary award – the amount of money that the Third-Party Funder has already paid to you and that you have not returned to the Third-Party Funder, if:

1. The Third-Party Funder has provided a completed, signed Waiver to the Claims Administrator; and

2. You confirm the monetary amount indicated in Section III of the Waiver.

You must sign this Attachment A to confirm the amount indicated in Section III of the Waiver.

### SIGNATURE OF SETTLEMENT CLASS MEMBER

This Attachment A to the Waiver is an official document submitted in connection with the Class Action Settlement in *In re: National Football League Players' Concussion Injury Litigation, MDL No. 2323.*  **By signing below, I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that all information provided in the Waiver is true and correct to the best of my knowledge, information and belief.**

| **Signature by Settlement Class Member** | | **Date** | |
|---|---|---|---|
| **Printed Name** | First | M.I. | Last |

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : | No. 2:12-md-02323-AB |
| | : | MDL No. 2323 |
| | : | Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO: | : : | |
| ALL ACTIONS | : : | |

**STATEMENT OF THE CLAIMS ADMINISTRATOR IN RESPONSE TO THE MOTION
REQUEST FOR CONFERENCE FILED BY THRIVEST SPECIALTY FUNDING, LLC**

BrownGreer PLC, the Court-appointed Claims Administrator of the Class Action

Settlement Agreement of this litigation, submits this Statement in response to the "Motion

Request for Conference Filed by Thrivest Specialty Funding, LLC" filed with this Court on

July 15, 2019 (Document No. 10736) (the "Thrivest Motion").

## I. BACKGROUND

### A. The Explanation and Order Concerning Assignment of Claims.

On December 8, 2017, the Court entered an Explanation and Order regarding the

assignment of monetary claims to third parties (Document No. 9517) (the "Explanation and

Order"). The Explanation and Order applied Section 30.1 of the Settlement Agreement to

prohibit Settlement Class Members from assigning or attempting to assign their monetary claims

to third parties, making any such agreement void, invalid and of no force and effect and directed

the Claims Administrator not to pay a Settlement Class Member's Monetary Award to any third

party holding a purported assignment ("Third-Party Funder"). The Explanation and Order also explained that under the principle of rescission, Class Members should return the amount the Third-Party Funder had paid:

> Accordingly, if the Third-Party Funder is willing to accept rescission and execute a valid waiver relinquishing any claims or rights under the entire agreement creating the assignment or attempted assignment, then the Claims Administrator will be authorized to withhold—from the Class Member's monetary award—the amount already paid to the Class Member under the agreement and return it to the Third-Party Funder.

### B. The Third Circuit Opinion Concerning Assignment of Claims.

On April 26, 2019, the United States Court of Appeals for the Third Circuit issued an Opinion that reversed in part and affirmed in part the Explanation and Order (Document 003113222504) (the "Third Circuit Opinion"). Page 34 of the Third Circuit Opinion states:

> We will reverse to the extent the District Court purported to void the cash advance agreements in their entirety and void contractual provisions that went only to a lender's right to receive funds after the player acquired them. We will affirm as to the District Court's ruling that any true assignments – contractual provisions that permit the lender to seek funds directly from the Claims Administrator – are void.

### C. The Rules Governing Assignment of Claims.

To implement the Explanation and Order, as clarified by the Third Circuit Opinion, we follow the Rules Governing Assignment of Claims attached as Exhibit A. The Special Masters adopted these Rules in the exercise of their duties under the Court's July 13, 2016 Order (Document 6871). They were posted on the official Settlement website on February 22, 2018 and revised on May 31, 2019.

## II.     THE THRIVEST MOTION

### A. Thrivest's Requests.

In the Thrivest Motion, Thrivest asks for a conference to discuss the Claims Administrator's implementation of the Explanation and Order following the Third Circuit Opinion. Thrivest requests further that the Court direct the Claims Administrator to revise the Rules Governing Assignment of Claims and related processes, to conform them to the Third Circuit Opinion.

### B. **The Claims Administrator's Response.**

The Claims Administrator takes the position that the Third Circuit Opinion does not require us to change our process for resolving Prohibited Assignments, as outlined in the Rules Governing Assignment of Claims. The Third Circuit Opinion says, "We will reverse to the extent the District Court purported to void the cash advance agreements in their entirety and void contractual provisions that went only to a lender's right to receive funds after the player acquired them." The Claims Administrator is not unilaterally voiding cash advance agreements, nor are we communicating to Settlement Class Members or their counsel that they are not bound to honor such agreements. Instead, we are following the instruction in the Explanation and Order that requires us to "inquire of every Class Member, who is eligible for an award, as to whether that Class Member has made an assignment or attempt to assign." To the extent we identify an agreement containing language indicating that the Settlement Class Member is attempting to assign a portion of his/her award, we offer Third-party Funders the option to accept rescission.

1. If the Third-Party Funder accepts rescission, we pay the Third-Party Funder the amount from the Settlement Class Member's monetary award that it already advanced to the Settlement Class Member, minus any amount that the Settlement Class Member has already returned to the Third-Party Funder.

2. If the Third-Party Funder does not accept rescission, we pay the Settlement Class Member's monetary award to the Settlement Class Member without paying any amount for the Third-Party Funder.

Third-Party Funders have the option to pursue, outside of the claims administration process, whatever rights they may continue to have under their cash advance agreements with Settlement Class Members.

### III.    <u>CONCLUSION</u>

The Claims Administrator certainly will attend the conference Thrivest requests if the Court would find it beneficial; however, such a conference does not seem necessary in our view for the reasons stated above.  We will continue to follow whatever the Court directs as to the process for handling Prohibited Assignments.


Respectfully submitted,
**CLAIMS ADMINISTRATOR**

By:    /s/ Andrew W. Oxenreiter
       Andrew W. Oxenreiter
       Virginia State Bar No. 73292
       BrownGreer PLC
       250 Rocketts Way
       Richmond, Virginia  23231
       Telephone:  (804) 521-7215
       Facsimile:  (804) 521-7299
       Email:  aoxenreiter@browngreer.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Statement of the Claims Administrator in Response to the Motion Request for Conference Filed by Thrivest Specialty Funding, LLC was filed electronically on this 13th day of August, 2019, and thus was served electronically upon Class Counsel, counsel for the NFL Parties and all counsel of record by the United States District Court for the Eastern District of Pennsylvania's electronic filing system.

  /s/ Andrew W. Oxenreiter
Andrew W. Oxenreiter
Virginia State Bar No. 73292
BrownGreer PLC
250 Rocketts Way
Richmond, Virginia  23231
Telephone:  (804) 521-7215
Facsimile:  (804) 521-7299
Email:  aoxenreiter@browngreer.com

# RULES GOVERNING ASSIGNMENT OF CLAIMS

# TABLE OF CONTENTS

<u>Page</u>

**TITLE I:  GENERAL**.................................................................................................................1

      Rule 1.   The Purpose of These Rules..........................................................................1

      Rule 2.   Adoption of These Rules................................................................................1

      Rule 3.   Definitions Used in These Rules......................................................................1

**TITLE II:  ASSIGNMENT REVIEW** ......................................................................................2

      Rule 4.   Third-Party Funder Transactions Subject to Assignment Review ..................2

      Rule 5.   Assignment Review......................................................................................2

      Rule 6.   Review Criteria ............................................................................................3

**TITLE III:  PROCESS FOR ASSIGNMENTS** .......................................................................3

      Rule 7.   Waiver Form .................................................................................................3

      Rule 8.   Payment Steps ..............................................................................................3

**NFL** CONCUSSION SETTLEMENT

## RULES GOVERNING ASSIGNMENT OF CLAIMS

### TITLE I:  GENERAL

**Rule 1.     The Purpose of These Rules.**  These Rules govern the analysis of transactions involving a Settlement Class Member and a person or entity other than the NFL Parties to determine whether the transaction is an assignment of rights or claims prohibited by Section 30.1 of the Settlement Agreement and the Court's Explanation and Order entered on December 8, 2017 (Document 9517) and the implementation of that Explanation and Order.

**Rule 2.     Adoption of These Rules.**  The Special Masters have adopted these Rules in the exercise of their duties pursuant their appointment by the Court in its July 13, 2016 Order (Document 6871).  The Special Masters may amend these Rules at any time *sua sponte* or after request by the Claims Administrator and such input from Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3.     Definitions Used in These Rules.**  All capitalized terms used in these Rules will have the meanings given to them in the Settlement Agreement.  In addition:

(a) "Collateralized Loan" means a Third-Party Funder Transaction determined not to be a Prohibited Assignment.

(b) "Explanation and Order" means the Explanation and Order entered by the Court on December 8, 2017 (Document 9517), regarding the application of Section 30.1 of the Settlement Agreement to monetary claims under the Settlement Agreement.

(c) "Monetary Claims" means a Monetary Award, Supplemental Monetary Award or Derivative Claimant Award in the Settlement Program.

(d) "Notice of Assignment Review Determination" means a notice the Claims Administrator will issue after determining with a Special Master whether a Third-Party Funder Transaction is a Prohibited Assignment or is a Collateralized Loan.

(e) "Prohibited Assignment" means a Third-Party Funder Transaction determined to be an assignment, or attempt to assign, by a Settlement Class Member of Monetary Claims that is void, invalid, and of no force and effect and that shall not be recognized by the Claims Administrator, pursuant to Section 30.1 of the Settlement Agreement and the Explanation and Order.

(f) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).



(g) "Settlement Class Member" means a Retired NFL Football Player (or the Representative Claimant of a deceased or incompetent Retired NFL Football Player), or a Derivative Claimant, which is how this term is defined in the Settlement Agreement.

(h) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(i) "Special Master" and "Special Masters" mean any one or both of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

(j) "Third-Party Funder" is a person or entity that engaged in a Third-Party Funder Transaction with a Settlement Class Member.

(k) "Third-Party Funder Transaction" is any agreement, contract, document, or arrangement between a Settlement Class Member and a Third-Party Funder involving the actual or potential advance or transfer of funds from the Third-Party Funder to the Settlement Class Member, disclosed to the Claims Administrator before payment of a Monetary Claim to that Settlement Class Member.

(l) "Waiver Form" means the Waiver Relinquishing Rights Under Attempted Assignment contemplated in the Explanation and Order.

## TITLE II:  ASSIGNMENT REVIEW

**Rule 4.    Third-Party Funder Transactions Subject to Assignment Review.**  The Explanation and Order requires the Claims Administrator to ask all Settlement Class Members eligible for payment on a Monetary Claim whether they have assigned or attempted to assign their Monetary Claim.  To receive payment from the Claims Administrator, an eligible Settlement Class Member must complete, sign and submit to the Claims Administrator a Sworn Statement: Status of Assignment of Monetary Claim (SWS-5).  If a Settlement Class Member indicates on this Sworn Statement that he/she has assigned or attempted to assign any settlement benefits from his/her Monetary Claim to a Third-Party Funder or borrowed any funds against his/her Monetary Claim as collateral, the Settlement Class Member must provide to the Claims Administrator all documents relating to that Third-Party Funder Transaction.  The Claims Administrator may require the Settlement Class Member and/or the Third-Party Funder to submit such documents and information as the Claims Administrator deems necessary for its review of a Third-Party Funder Transaction under these Rules, by such deadline as the Claims Administrator sets.

**Rule 5.    Assignment Review.**  The Claims Administrator will review each Third-Party Funder Transaction with a Special Master to determine whether the Third-Party Funder Transaction is a Prohibited Assignment or is a Collateralized Loan and will notify the affected Settlement Class Member of that decision by issuing a Notice of Assignment Review Determination.  If the Settlement Class Member or Third-Party Funder wishes to challenge the decision, it will be presented to the other Special Master for review, along with any argument



5/31/19

offered by the Settlement Class Member or Third-Party Funder for the Special Master's consideration. The final decision of the Special Master is not appealable to the Court, unless the Special Master or the Court finds that it involves a conclusion of law and that the objecting party has standing to pursue review by the Court.

**Rule 6. Review Criteria.** The Claims Administrator and the Special Masters will assess the terms of a Third-Party Funder Transaction to determine whether they reflect the attributes of a Prohibited Assignment under the Explanation and Order. In general, a Third-Party Funder Transaction constitutes a Prohibited Assignment where there is an express assignment of a Monetary Claim. The Claims Administrator and the Special Masters will consider attributes of the transaction to assess the fairness and commercial reasonableness of its terms and whether they reflect the type of transaction the Court found invalid in its Explanation and Order.

## TITLE III: PROCESS FOR PROHIBITED ASSIGNMENTS

**Rule 7. Waiver Form.** On any Prohibited Assignment, the Claims Administrator will issue a Waiver Form for the Third-Party Funder to sign and return within 30 days to (a) indicate the amount advanced to the Settlement Class Member that has not been repaid to the Third-Party Funder and (b) to rescind the Prohibited Assignment and relinquish all claims relating to it. The Claims Administrator will send this Waiver Form to the lawyer for a represented Settlement Class Member and directly to the Third-Party Funder if the Settlement Class Member is not represented by a lawyer. The Waiver Form includes an attachment for the Settlement Class Member to sign and return to the Claims Administrator indicating agreement with the amount of the funds advanced stated by the Third-Party Funder in the Waiver Form.

**Rule 8. Payment Steps.** The Claims Administrator will follow these steps to pay a Monetary Claim with a Prohibited Assignment:

 **(a) No Complete Waiver:** If the Claims Administrator has not received a timely complete Waiver Form signed by the Third-Party Funder, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court.

 **(b) Complete Waiver:** If the Claims Administrator has received a timely complete Waiver Form signed by the Third-Party Funder and the Settlement Class Member agrees with the amount advanced that has not been repaid, the Claims Administrator will direct the Trustee to pay that amount to the Third-Party Funder and pay the balance to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. If the Settlement Class Member has not agreed to the amount advanced that has not been repaid, the Claims Administrator and a Special Master will determine the correct amount from the materials submitted.

 **(c) Payment to Settlement Class Members:** The Claims Administrator will direct the Trustee to pay Monetary Claims with a Prohibited Assignment directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*.

3



# EXHIBIT H

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **Hon. Anita B. Brody** |

## <u>ORDER</u>

**AND NOW**, this _15th _ day of August, 2019, it is **ORDERED** that Thrivest Specialty Funding, LLC's Motion requesting a conference (ECF No. 10736) is DENIED. After reading the Motion, the Claims Administrator's Statement in response, and Thrivest's response in support of its Motion, the Court concludes that a conference is unnecessary.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF  8/15/2019**

## PROOF OF SERVICE

The undersigned certifies that on this 18th day of September 2019 he caused

the foregoing Petition for Writ of Mandamus to be served as follows:

The Honorable Anita B. Brody
United States District Court for the Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Room 7613
Philadelphia, Pennsylvania 19106-1751
**Via Hand Delivery**


All Counsel of Record in:

IN RE:  National Football League Players' Concussion Injury Litigation
U.S.D.C., E.D. Pa., No. 2:12-md-02323-AB
**Via ECF**

Peter C. Buckley, Esquire