UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**FOURTH VERIFIED PETITION OF CLASS COUNSEL
CHRISTOPHER A. SEEGER FOR AN AWARD OF
POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS**

Pursuant to this Court's May 24, 2018 Explanation and Order (ECF No. 10019), , Class Counsel Christopher A. Seeger ("Class Counsel" or "Seeger Weiss") respectfully submits this Fourth Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs, covering common benefit work performed and expenses incurred for the period June 1, 2019 to November 30, 2019 .

Based on the work undertaken from June 1, 2019, the first date after the close of the time period covered by the Third Verified Petition for an Award of Post-Effective Date Common

Benefit Attorneys' Fees and Costs (ECF No. 10767) ("Third Post-Effective Date Petition"),[1] to November 30, 2019, Seeger Weiss has dedicated over 1814.4 hours for the common benefit of the Settlement Class, resulting in a lodestar (calculated using the blended rates set by the Court, ECF No. 10019 at 7 n.4) of $1,146,470.19, and has incurred $91,159.62 in associated expenses.

**SUMMARY OF WORK COMPLETED – JUNE 1, 2019 TO NOVEMBER 30, 2019**

As was discussed in the Third Post-Effective Date Petition, the work of implementation of the Settlement continued alongside the ongoing monitoring and oversight that the Settlement will continue to demand over the remainder of its term. Although the foundational work necessary to establish this 65-year settlement is largely completed, substantive matters above and beyond the regular monitoring and oversight of the Settlement continued to demand significant attention and resources from Class Counsel. Additionally, monitoring the Settlement Program to ensure that it continues to deliver the promised benefits to the Settlement Class has continued to require substantial efforts.

Among the ongoing efforts were continuing revisions to the MAF program and policies, monitoring and oversight of the medical professionals in the network of Qualified MAF Physicians and BAP Providers, support of Class Members through the Claims Process, including on administrative appeals, ongoing support of unrepresented Class Members and Class Members' individually-retained counsel ("IRPAs"), and efforts to set up the Education Fund (specifically, identifying and negotiating with appropriate education programs and research institutions contemplated for the Fund, and preparation of a motion related to funding these projects).

---

[1] The Third Post-Effective Date Petition covered the period from December 1, 2018 to May 31, 2019. ECF No. 10767 at 1.

During the time period covered by the instant Petition, two significant deadlines in the Settlement had already recently passed.[2] The February 6, 2019 deadline for the filing of pre-Effective Date diagnoses led to a marked increase in Claims and an eventual increase in Notices of Preliminary Review and Claims Determinations. To that end, Class Counsel directly assisted unrepresented Class Members in addressing Notices of Preliminary Review and understanding and responding to Claims Determinations, including potential appeals of adverse decisions or the defense of appeals of Monetary Awards taken by the NFL. Similarly, Class Counsel worked with the BAP Administrator to ensure that all players eligible for the BAP and who faced the June 6, 2019 deadline for their examinations timely requested BAP examinations to which they were entitled and provided support thereafter.

Additionally, Class Counsel continued to face unanticipated work essential to the integrity of the Settlement Program and the benefits negotiated for the Retired NFL Football Players and their families. Most notably, this work included several issues taken to the Third Circuit. Among these efforts were the filing of opposition to the Petition for Writ of Mandamus of Thrivest Specialty Funding ("Thrivest"), challenging this Court's Rules Governing the Assignment of Claims; and challenges to the implementation of the Rules Governing the National Network of

---

[2] The Settlement Program is still handling the increase in Monetary Award claims ("Claims") and requests for BAP examinations associated with these deadlines. Accordingly, Class Counsel anticipates being better able to estimate the amount of work and expenses are necessary and appropriate for the regular, ongoing oversight and maintenance of the Settlement Program and support for Settlement Class Members later in 2020, as these deadlines recede.

Qualified MAF Physicians.[3] Similarly, Class Counsel responded to Objections to certain decisions of the Special Masters taken to this Court.[4]

As of December 2, 2019, over 20,500 Class Members had registered for the Settlement Program, over 2,933 Claim Packages had been submitted, 1,025 Notices of Monetary Awards had been issued, worth over $714 million, and over $611.9 million in awards paid [5]; and over 14,500 BAP examination had been scheduled for 7,425 players and over 12,100 appointments had been attended. ECF Nos. 10916 at 4-6, 10917 at 3.

These successes are not mere happenstance. Seeger Weiss has worked tirelessly in coordination with the Claims and BAP Administrators, the Special Masters, and the Court—and both cooperatively with and, as circumstances have warranted, against the NFL—to facilitate and oversee the Settlement. The biweekly call that Seeger Weiss hosts with the NFL Parties, the Claims Administrator, the BAP Administrator, and the Lien Resolution Administrator, where ongoing issues and progress in resolving them are hashed out, has been a central component of these efforts. Approximately 139 of these biweekly calls had taken place by the November 30,

---

[3] An appeal challenging those new Rules was filed following this Court's May 16, 2019 Order denying a motion for reconsideration (ECF No. 10612) of the April 11, 2019 Order adopting them (ECF No. 10527). The briefing of that appeal has since been completed and the matter recently taken by the Third Circuit on submission without oral argument. *See In re NFL Players' Concussion*, No. 19-2085 (3d Cir. submitted Jan. 14, 1020)

[4] Class Counsel had also submitted briefing on an Objection by the NFL to the ability of a Qualified MAF Physician to determined that the date of onset of a Qualifying Diagnosis predated the date of initial examination for the purposes of the "date of diagnosis" used to calculate the amount of a Monetary Award. On August 20, 2019, this Court overruled the NFL's Objections. ECF No. 10810.

[5] The Settlement Agreement provides for Supplemental Monetary Awards if a player's condition worsens and he receives a later, more severe Qualifying Diagnosis. ECF No. 6481-1 at 37 (Settlement Agreement § 6.8). Four of these Notices are Notices of Supplemental Monetary Awards. ECF No. 10916 at 11 (Claims Administrator Status Report No. 7).

2019 closing date of this petition. Work on the Settlement has been a daily matter, requiring the dedication of several Seeger Weiss attorneys and paraprofessionals, and has focused on certain key areas that are summarized in the sections that follow.

<u>Oversight of the Claims Process and Monetary Award Determinations</u>.

Seeger Weiss devoted significant time to actively monitoring and supporting the Claims Process to ensure that Class Members are receiving the benefits that were negotiated on their behalf. This oversight included ongoing reporting and requests for information from the Claims Administrator and reviewing each claim determination by a member of the AAP[6] or the Claims Administrator to ensure that they are correctly following the terms of the Settlement Agreement. Class Counsel's continuing engagement with Settlement Class Members and their counsel provided further bases and guidance on the needs of the Claims Process. This type of "hands on" support was particularly needed in the wake of the February 6, 2019 deadline for the filing of pre-Effective Date claims, and the June 6, 2019 BAP examination deadline for those BAP-eligible players born on or before June 6, 1974.

Moreover, Class Counsel continues to support the petitions of Representative Claimants for Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis but who died before January 1, 2006. Pursuant to the Settlement Agreement, before these claims can proceed to review on the merits, the Court needs to determine whether they are timely under the applicable state's law. *See* ECF No. 6481-1 at 35 (Settlement Agreement § 6.2(b)). Since the Third Post-Effective Date Fee Petition, Cass Counsel continued to submit Statements in support of the Representative Claimants' submissions that such claims are timely under the Settlement

---

[6] Given the Court's extensive familiarity with the Settlement Agreement and Settlement Program, Class Counsel assumes that it is unnecessary at this point to define the various terms and acronyms related to them.

Agreement. Class Counsel understands that all of the claims involving Retired NFL Football Players diagnosed with a Qualifying Diagnosis but who died before January 1, 2006 have now been filed and are in the briefing process, with Class Counsel having filed a supporting Statement. Accordingly, there is no longer a need for Class Counsel to submit Statements in support of those claims.

Furthermore, just as it had worked to ensure inclusion of protections for the interests of Class Members in the audit rules and procedures, Class Counsel has remained engaged in supporting Class Members facing ongoing audits of claims. In particular, Class Counsel has submitted Statements regarding the Claims Administrator's referrals to the Special Masters and replies in those referrals accepted by the Special Masters, to make certain that meritorious claims are not unduly caught up in the audit process and to ensure that the focus of any inquiry be on only those parties (e.g., medical and legal professionals) that may have engaged in suspicious practices. More generally, Seeger Weiss monitors the progress of audit investigations and provides formal input at each juncture. Similarly, Class Counsel continues to monitor the status of the investigations undertaken by the Court-Appointed Special Investigator.

As in the prior implementation periods, Class Counsel has worked to protect Class Members' interests (and will continue to do so) by monitoring the wider operation of the Settlement Program and addressing with the Claims Administrator all manner of issues as they arise.

<u>Appeals of Claims Determinations</u>.

Seeger Weiss has continued to monitor all Monetary Award determinations to provide guidance to Class Members. In those cases where an appeal from a determination is taken, either by a Class Member or the NFL Parties, Class Counsel also determines whether to file a Statement

in support of the Class Member's position. Through this active engagement, Seeger Weiss' goal is to make sure that Class Members' entitlement to benefits is not restricted or foreclosed outright by incorrect interpretations of the Settlement Agreement or by meritless appeals taken by the NFL. Whether through submitting Statements in support of a Class Member's appeal or through direct support of unrepresented Class Members and IRPAs, Class Counsel pursued, among other things: arguing against the denial of claims for Level 1.5 and Level 2 Neurocognitive Impairment because the Retired NFL Football Player failed to satisfy "criteria" that are not included in the BAP criteria (e.g., comparison of pre-morbid IQ with current full-scale IQ), arguing against the denial of claims where such denials are based upon suboptimal performance validity test results from earlier neuropsychological testing where the Retired NFL Football Player passed the performance validity tests during the current testing relied upon by the diagnosing physician, deference to be afforded to neuropsychologists' determination of Retired NFL Football Players' pre-morbid IQ where the method utilized is one of the three methods prescribed by the terms of the Settlement Agreement, the proper use of screening tests, such as MMSE and MoCA, which are not designed to be used to rule out a Qualifying Diagnosis of Level 1.5 or 2 Neurocognitive Impairment, and misuse of the validity measures of the MMPI as part of the extensive validity testing negotiated as part of the BAP.

    Maintenance of the Networks of Qualified BAP Providers and Qualified MAF Physicians.

The process of identifying and vetting BAP Providers and Qualified MAF Physicians is ongoing as the BAP and MAF networks continue to require qualified neurologists and, in the case of the BAP only, neuropsychologists in new regions, to add medical professionals in existing regions, and to replace those providers no longer in the program. That process involves a detailed

review of prospective providers' curriculum vitae and application, as well as an investigation concerning their qualifications. Seeger Weiss has continually been engaged in this effort.

BAP Examinations and Supplemental Benefits.

Beyond its role in helping to maintain the BAP network of Providers, Seeger Weiss continues to monitor the BAP to ensure that examinations are scheduled efficiently and appropriate standards are followed. Moreover, in coordination with the BAP Administrator, Class Counsel has continued to roll out BAP Supplemental Benefits for those Retired NFL Football Players whose BAP examinations yield a diagnosis of Level 1 Neurocognitive Impairment. These efforts include monitoring initial orientation of such eligible players, initial consultations, and the expansion of covered services to allow each player to receive the care most appropriate to his condition. On the latter point, during this period, Class Counsel worked with the BAP Administrator to introduce Cognitive Rehabilitation Therapy ("CRT") as an additional benefit available to Retired NFL Football Players who receive Supplemental Benefits. CRT is a collection of treatment strategies designed to address problems with memory, attention, perception, learning, planning, and judgment brought about by brain injury, neurological disorders, and other illnesses.

As of the BAP Administrator's latest Status Report, 131 players had received a Level 1 Neurocognitive Impairment diagnosis and were either in the process of selecting the BAP Provider who will be overseeing their treatment and benefits, or were already receiving their Supplemental Benefits. ECF No. 10917 at 8 (¶ 16).[7] These benefits include a range of therapeutics, pharmaceuticals, and diagnostic and imaging services, and require additional contracting with BAP Providers as well as with those entities outside of the BAP network of providers who will

---

[7] Additionally, 128 players had received diagnoses of Level 1.5 Neurocognitive Impairment and 89 players received diagnoses of Level 2 Neurocognitive Impairment through the BAP. *Id.*

provide many of the services.  Class Counsel has also monitored these retention efforts by the BAP Administrator.

   Fielding Communications from, and Supporting, Class Members and Individual Counsel.

   Seeger Weiss continues to receive (and address) hundreds of telephone calls and emails each month from Class Members and IRPAs.  The inquiries involve all manner of issues concerning the Settlement, including the Claims Process, matters relating to post-Effective Date examinations through the BAP and MAF, liens, and appeals.  Seeger Weiss handles every inquiry and has assisted numerous Class Members in successfully navigating the Claims Process.  Class Counsel has further assisted unrepresented Class Members in gathering necessary documents, including medical records, and completing their claims packages so that their claims can be promptly reviewed and, where qualifying, approved.  Class Counsel also frequently speaks and corresponds with IRPAs concerning, *inter alia*, questions they have about the Claims Process, the Settlement's Frequently Asked Questions (which guide the Claims Process), and otherwise offering support to ensure that qualifying claims are properly presented and paid.  Given that the deadlines for the filing of file pre-Effective Date claims and for certain Retired NFL Football Players to take BAP exams fell within the time period covered by this Petition (along with Class Counsel's reminder letters), Class Counsel received a very high number of calls and correspondence during this period.

   Continuing Efforts to Protect Class Members from Third-Party Profiteers.

   Class Counsel has continued its efforts to protect Class Members whom litigation funders lured into putative assignments of their prospective Monetary Awards.[8]  In a victory for the

---

[8] As the Court is well aware, these putative purchases of Class Members' prospective Monetary Awards at steep discounts (often exceeding 50%) were cleverly packaged as what are, in effect, advances against the awards at usurious rates of interest.  *See* ECF No. 8434 at 7 & n.2.

players, just prior to the Third Fee Petition, the Third Circuit affirmed the authority of this Court to protect the *res* along with the players from prohibited assignments. *See Nat'l Football League Players' Concussion Injury Litig.* 923 F.3d 96, 107-10 (3d Cir. 2019). In September, Thrivest launched a further challenge to the Court's authority, this time attacking the Rules Governing Assignment of Claims (now crafted as Rules Governing Third-Party Funder Voluntary Compromise Process). The rules govern the consensual program established by the Court to allow funders who may have entered into a prohibited assignment of proceeds from a Monetary Award to resolve any further dispute, and accept rescission of the agreement in exchange for a compromise repayment by the player based on a commercially reasonable interest rate. After the Court denied Thrivest's request for a conference concerning the program (ECF Nos. 10736, 10807), Thrivest filed a Petition for Writ of Mandamus with the Third Circuit (ECF No. 10843). In particular, Thrivest argued that those rules are in contravention of the Third Circuit's recent decision respecting putative assignments of Monetary Awards. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96 (3d Cir. 2019). Working in coordination with the Claims Administrator, Class Counsel opposed Thrivest's Petition, which the Third Circuit denied. *In re Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. Oct. 31, 2019).[9]

Education Fund and Medical Research Data.

Class Counsel and the NFL Parties continued exploring organizations that support safety and injury protection in football and may be appropriate recipients of proceeds from the $10 million Education Fund that was established as part of the Settlement. *See* ECF No. 6481-1 at 68

---

[9] During the Pendency of Thrivest's Petition, and "[i]n light of the concern expressed in a recent mandamus petition," the Court entered a notice clarifying the legal status of third-party funder agreements. ECF No. 10858.

(Settlement Agreement, art. XII). In that regard, the Parties have concluded discussions with an initial candidate organization.

Similarly, the Settlement Agreement contemplated that the medical records and information that would be generated through the free BAP examinations provided to consenting and eligible Retired NFL Football Players would be made available for medical research.[10]  *Id.* at 33 (Settlement Agreement § 5.10(a)).  Class Counsel continued efforts with the BAP Administrator, the Claims Administrator, its own expert, a potential university partner, and the NFL Parties to establish a medical research database that will gather, systematically organize, and maintain the medical information that the BAP Administrator is collecting from the BAP Examinations.

Class Counsel has prepared and will be filing a formal motion to the Court for approval of the organizations that will be engaged in both initiatives and for authorization of an initial release of a portion of the Education Fund to commence both programs.

---

[10]  As further provided in the Settlement Agreement, player confidentiality will be maintained.

**SUMMARY OF HOURS & LODESTAR AND EXPENSES INCURRED**

Throughout the time period covered by this Petition, Class Counsel dedicated 1814.4 hours, for a lodestar of $1,146,470.19. This calculation is based on the blended rates established by the Court,[11] and reflects the following time expended[12]:

| Professional Rank | Total Hours |
|---|---|
| Partners[13] | 929.3 |
| Counsel | 340.9 |
| Associates | 283.1 |
| Paralegals | 261.1 |
| TOTAL | 1814.4 |

In addition, Seeger Weiss incurred $91,159.62 in common benefit expenses.

---

[11] As directed by the Court, the lodestar billed employs the blended rates that the Court prescribed in its May 24, 2018 allocation order. Accordingly, the billing rate for partners is $758.35; the rate for "counsel" or "of counsel" attorneys is $692.50; the rate for associates is $486.67; the rate for contract attorneys is $537.50; and the rate for paralegals is $260.00. *See* ECF No. 10019 at 7 n.4.

[12] Class Counsel stands ready to submit supporting time records and supporting backup for expenses to the Court for *in camera* review.

[13] This includes 4.5 hours for Prof. Issacharoff's work in connection with the pending Third Circuit appeal challenging the new Rules Governing Qualified MAF Physicians and Thrivest's Petition.

## CONCLUSION

WHEREFORE, the undersigned, as Class Counsel, respectfully requests that the Court approve this Fourth Post-Effective Date Fee Petition for Post-Effective Date Attorneys' Fees and Costs and award $1,237,629.81, which reflects $1,146,470.19 in attorneys' fees based on the blended rates established by the Court, and $91,159.62 for reimbursement of common benefit expenses, to be paid from the Attorneys' Fees Qualified Settlement Fund.

Date:  February 5, 2020

    Respectfully submitted,

    */s/ Christopher A. Seeger*
    Christopher A. Seeger
    SEEGER WEISS LLP
    55 Challenger Road, 6th Floor
    Ridgefield Park, NJ  07660
    cseeger@seegerweiss.com
    Telephone:  (212) 584-0700

    *CLASS COUNSEL*

## **VERIFICATION**

CHRISTOPHER A. SEEGER declares, under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746, that he is the Petitioner in this matter, has read the foregoing Fourth Verified Petition of Class Counsel Christopher A. Seeger for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs, and knows the contents thereof, and that the same are true to his personal knowledge, information, and belief. Executed this 5th day of February, 2020.

                                                        */s/ Christopher A. Seeger*
                                                        CHRISTOPHER A. SEEGER

## CERTIFICATE OF SERVICE

    I, Christopher A. Seeger, hereby certify that a true and correct copy of the foregoing was served electronically via the Court's electronic filing system on the date below upon all counsel of record in this matter.


Dated: February 5, 2020　　　　　　　　　　　　/s/ Christopher A. Seeger
　　　　　　　　　　　　　　　　　　　　　　　　CHRISTOPHER A. SEEGER