IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION LITIGATION _____ THIS DOCUMENT RELATES TO: ALL ACTIONS | § § § § § § § § § § No. 2:12-md-2323 (AB) MDL No. 2323 |

CERTAIN CLASS MEMBERS' OPPOSITION TO CLASS COUNSEL'S FOURTH VERIFIED PETITION FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS

Pending before the Court in the above referenced matter is Class Counsel Christopher A. Seeger's Fourth Post-Effective Date Fee Petition (ECF 10986). Class Members Melvin Aldridge, *et al.*[1] oppose the Fourth Petition in its current form and respectfully submit for the Court's consideration the following response in opposition thereto:

---

[1] The objecting Class Members include Melvin Aldridge, Patrise Alexander, Charlie Anderson, Charles E. Arbuckle, Cassandra Bailey Individually and as the Representative of the Estate of Johnny Bailey, Rod Bernstine, Reatha Brown Individually and as the Representative of the Estate of Aaron Brown, Jr., Curtis Ceasar, Jr., Larry Centers, Trevor Cobb, Darrell Colbert, Elbert Crawford III, Christopher Crooms, Gary Cutsinger, Jerry W. Davis, Tim Denton, Leland C. Douglas, Jr., Michael Dumas, Corris Ervin, Robert Evans, Doak Field, James Francis, Baldwin Malcom Frank, Murray Garrett, Clyde P. Glosson, Anthony Guillory, Roderick W. Harris, Wilmer K. Hicks, Jr., Patrick Jackson, Fulton Johnson, Richard Johnson, Gary Jones, Eric Kelly, Patsy Lewis Individually and as the Representative of the Estate of Mark Lewis, Ryan McCoy, Emanuel McNeil, Gerald McNeil, Jerry James Moses, Jr., Anthony E. Newsom, Winslow Oliver, John Owens, Robert Pollard, Derrick Pope, Jimmy Robinson, Thomas Sanders, Todd Scott, Nilo Silvan, Matthew Sinclair, Dwight A. Scales, Richard A. Siler, Frankie Smith, Eric J. Swann, Anthony Toney, Herbert E. Williams, James Williams, Jr., Butch Woolfolk, Keith Woodside and James A. Young, Sr.

# INTRODUCTION

By his Fourth Petition, Class Counsel seeks another fee/expense distribution ($1.23M)[2] from the $22.8M originally set aside by the Court to pay implementation fees and expenses "*through the ... 65-year term*" of the settlement.[3] Collectively, then, and only three years into the settlement's 65-year term, Class Counsel has, through his four (4) post-effective date fee petitions, requested the Court distribute (mainly to him) almost 70% ($15.6M) of the remaining fund.[4] At this pace, and if Class Counsel's repetitive fee petitions are granted, the $22.8M+ fund set aside by the Court to pay for "implementation" will be exhausted approximately *60 years* before the end of the settlement's term.[5]

---

[2] ECF 10986, at 2 (claiming fees of $1,146,470.19 and expenses of $91,159.62).

[3] ECF 10019, at 4, 25 (emphasis added). The $112.5M fund established by the NFL was, according to the Court, "to be used to pay Class Counsel for [i] securing *and* [ii] implementing" the settlement over the course of the next *six decades*. *See* ECF 10378, at 1; *see also* ECF 9860, at 2. The $112.5M fund, opined the Court's appointed expert, Professor William B. Rubenstein, "should be sufficient to fund past, present, *and* future [attorney] work." *See* ECF 9571, at 5. Ultimately, the Court awarded $85.6M to Class Counsel "for their work in securing" the settlement (ECF 10019, at 1) and directed that the remainder of the fund ($22.8M at the time) be held in reserve to pay for implementation over the term of the settlement. *See* ECF 10019, at 4, 25.

[4] *See, e.g.*, ECF 10128, at 1 (7/10/18 application for $9.485M); ECF 10374, at 2 (1/10/19 application for $3.195M); ECF 10767, at 2 (7/25/19 application for $1.689M); ECF 10986, at 2 (2/5/20 application for $1.237M). The sought-after fees and expenses are, of course, on top of the $85.6M previously awarded by the Court (ECF 10019, at 1).

[5] To date, Class Counsel has requested the Court award approximately $15.6M for "implementation-phase" fees and expenses. True, the burn rate has slowed. But, it is still more than $200,000/month, and Class Counsel insists that the "work of implementation … and ongoing monitoring and oversight" will continue "over the remainder of [the settlement's] term." *See* ECF 10986, at 2. At his current pace, the remaining fund ($7.2M if the outstanding applications are granted) will be exhausted in roughly three (3) years—well short of the 65-year term.

Such a result is contrary to the Court's original plan (and the opinion of the Court's appointed expert, Professor Rubenstein) to grow the total $112.5M fund over time.[6] More importantly, it is detrimental to the Class, which the Court and Class Counsel is obligated to protect.[7] If the fund is prematurely exhausted, then the Class—the former NFL payers—will bear the burden of future fees and expenses via the five-percent (5%) holdback, which, of course, is already being withheld from their recoveries. This is true despite the fact that this settlement was sold to them (and the Court), in part, based on *repeated* representations that the NFL was—independent of its injury-related settlement obligations—separately compensating Class Counsel for its fees and expenses.[8]

Moreover, the prospect that these debilitated, former NFL players would bear the burden of administrative fees and expenses was opposed by (i) the majority of

---

[6] *See* ECF 9526.

[7] In class-action settlements, courts must carefully scrutinize applications for attorneys' fees to "ensure that the interests of class members are not subordinated to the interests of ... class counsel." *Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1078 (2d Cir. 1995).

[8] *See, e.g.,* ECF 6073, at 13, 24, 41 (citing cases recognizing "the value in *the defendant agreeing to bear all administrative costs and counsel fees*;" claiming "*the NFL Parties remain responsible to provide all of the funding for ... class attorneys' fees*;" and noting that "[u]nlike traditional common fund cases where attorneys' fees are obtained directly from the common fund, *the Settlement Class is further benefitted by the separate payment of Class attorneys' fees by the NFL Parties*"); ECF 5634-5, at 26 ("*Having the NFL Parties pay Class attorneys' fees and reasonable incurred costs separate from the $760 million is another very significant benefit to Settlement Class Members*.").

3

the previously-appointed *Co-Lead Class Counsel* and (ii) Professor Rubenstein.[9] But, at his current burn rate, the now-sole Class Counsel will tap into the multi-million dollar player holdback ($32M+) [10] to pay for continuing settlement "implementation" fees and expenses within a few years.

We oppose Class Counsel's Fourth Petition, and, for the reasons set forth herein, it should be denied at this time.

## ARGUMENT

Class Counsel's Fourth Petition (ECF 10986) suffers from many of the same flaws as the original fee application (ECF 7151), as well as his First (ECF 10128),

---

[9] *See, e.g.,* ECF 9526, at 2 ("The Court should *not* order a 5% set-aside of class members' recoveries"); ECF 9526, at 34-35, ¶ 42. Professor Rubenstein, for his part, noted: (i) nothing in the settlement suggests "the $112.5 million fee award was only meant to fund counsel's work up to the effective date of the settlement;" (ii) there is no support "for the argument that class counsel only do implementation work for extra money;" and (iii) "the $112.5 million magnitude of Class Counsel's aggregate fee request … undercuts the argument that it only funds work securing the settlement, but that counsel must be paid extra to implement it." (ECF 9526, at 33).

True enough, as Class Counsel notes, Professor Rubenstein offered additional opinions in a reply. *See* ECF 10809, at 3, citing ECF 9571, at 4-8. But his ultimate opinion on the propriety of a holdback—whether 5%, 2%, or something else—did not change: "*I stand by my conclusion that the NFL's $112.5 million fee and expense payment should be sufficient to fund past, present, and future work, so long as [appropriate] safeguards are put in place*." ECF 9571, at 5. And, even with Class Counsel's alleged rebuttal evidence "showing extensive effectuation-phase work," the Professor Rubenstein's 2% figure was offered only as "*a last resort*." *Id*., at 7.

Also, Class Counsel has, in the past, attempted to disparage us because we cited to Professor Rubenstein's opinions while originally opposing his appointment. *See, e.g*., ECF 10809, at 3-4 and n. 1. Yes, we opposed the appointment, believing it unnecessary. *See* ECF 8350. But those objections were overruled. So, we are left with the record he created. And, that record *rejects* Class Counsel's seemingly-endless requests for fees on top of fees.

[10] *See* ECF 10916, at 4 ("the Trustee sent $32,673,496 (5% of those Monetary Awards), to the Attorneys' Fees Qualified Settlement Fund….").

4

Second (ECF 10374), and Third (ECF 10767) Post-Effective Date Petitions. Accordingly, we incorporate by reference the arguments, authorities, and evidence set forth in the oppositions filed in response to those applications/petitions.[11] In addition to the reasons set forth in those prior oppositions, Class Counsel's Fourth Petition should be denied for the following reasons:

1. <u>The Fourth Petition, like the others, contains no plan or "safeguard" for reining in fees and expenses</u>

Class Counsel has repeatedly represented that his "implementation-phase" fees and expenses would dwindle over time, and that his successive fee petitions "should considerably decrease going forward" and would be for "markedly lower amounts."[12] True, he is not requesting $9+ million this time. However, he is still burning through approximately $200,000 per month. While *slightly* lower, Class Counsel's burn rate is still significantly higher than what Professor Rubenstein concluded would be reasonable to implement the settlement.[13] Yet Class Counsel offers no discussion of any efforts to reduce these fees or expenses, and he still refuses to commit to the nature and extent of future work required or the amount of

---

[11] *See, e.g.,* ECF 7354-55; ECF 10165; 10403; 10792. As the Court is aware, the propriety of the Court's original attorneys' fees award and distribution is currently on appeal. *See, e.g.*, Case Nos. 18-2012, *In re: National Football Players' Concussion Injury Lit*. (and consolidated/related appeals 18-2225, 18-2249, 18-2253, 18-2281, 18-2332, 18-2416, 18-2417, 18-2418, 18-2419, 18-2422, 18-2650, 18-2651, 18-2661, 18-2724 and 19-1385).

[12] *See, e.g.*, ECF 10191, at 2-3; ECF 10416, at 5; ECF 10809, at 2.

[13] *See* ECF 9526, at 43, ¶ 51.

money needed to fund future implementation.[14] For this reason, alone, Class Counsel's Fourth Petition should be denied.

2. The Fourth Petition, like the others, lacks transparency

Once again, there is no documentation or other data supporting the requested fees ($1,146,470.19) or the alleged expenses ($91,159.62), rendering it is impossible to conduct the required review.[15] While the Fourth Petition contains a "summary of work completed" and includes a chart allegedly summarizing Class Counsel's hours,[16] it noticeably omits—despite CMO 5—any evidentiary proof supporting the claimed hours or expenses.[17] Moreover, the Fourth Petition, like the others, fails to disclose the actual billing rates, the dates or a range of dates for the hours allegedly worked, the identity of the individuals alleged to have performed the service(s), or how the work was divided between partners, "counsel," associates, or paralegals.

---

[14] *See* ECF 10767, at 11, n. 7. Three years in, Class Counsel claims he'll now be able to project future fee and expense obligations "later in 2020." ECF 10986, at 3 n. 2.

[15] *See* Fed. R. Civ. P. 23(h) (authorizing an award of "reasonable attorney fees"); *see also Washington v. Phila. City Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (confirming a reasonable attorney fee is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate); *Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998) ("In calculating the second part of the lodestar determination, the time reasonably expended," a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary").

[16] ECF 10986, at 2, 12.

[17] Once again, CMO 5 was entered *at Class Counsel's request*. *See* ECF 3710. The order has never been vacated, and counsel petitioning for fees are still required to follow CMO 5's mandates. But none of that has happened in this case.

Again, not a single time or expense record has been supplied.[18]

Class Counsel, for his part, has claimed he has no obligation to produce his time/expense records.[19] But his secrecy in that regard completely undermines due process, open access, and confidence in the judicial process.[20] Moreover—and perhaps more importantly—Class Counsel's lack of transparency deprives the Class of vital information material to judicial review of his repetitive fee applications.[21] For this reason, too, the Fourth Petition should be denied.

3.   <u>The Fourth Petition, like the others, bills excessive rates</u>

The Fourth Petition, like its predecessors, seeks fees based on unreasonable

---

[18] Among other things, the petition identifies as work allegedly performed on behalf of the Class as "continuing revisions to the MAF program and policies;" "monitoring and oversight of the medical professionals;" "support of Class Members through the Claims Process;" "ongoing support of unrepresented Class Members," *etc*. *See* ECF 10986, at 2. But it includes no detail—none—from which the Court <u>or the Class</u> can assess the reasonableness of the fees and expenses requested based on what lawyers or paraprofessional performed what task, when, or at what rate.

[19] *See, e.g*., ECF 10809, at 4, citing, *e.g. Cassese v. Williams*, 503 F. App'x 55, 58 (2nd Cir. 2012), and *In re: Whirlpool Corp. Front-loading Washer Products Liab. Litig.*, 1:08-WP-65000, 2016 WL 5338012, at *18 (N.D. Ohio Sept. 23, 2016). The facts of both cases are markedly different and neither supports the proposition that there is a wholesale bar to the disclosure of Class Counsel fee and expense data. Instead, they confirm the Court has discretion to release the data for review.

[20] *See In re Cendant Corp. Litig*., 260 F.3d 183, 192 (3d Cir. 2001).

[21] *See Torres v. SGE Management, L.L.C*., 945 F.3d 347,353 (5th Cir. 2019) (noting that the fee documentation "allegedly submitted to the Fee Committee" was absent from the appellate record and, therefore, the fee award defied appellate review).

rates.[22] Class Counsel's "blended" billing rate—$623+/hour[23]—is excessive and should be rejected. Much of what is described in Class Counsel's Fourth Petition is "hands on" administrative work.[24] That being the case, there is no justification for billing those administrative services at an effective rate of $600+/hour. And, there is no support for the use of a "blended rate" in a pure loadstar analysis.

Simply put, there is no reason why the daily oversight and maintenance tasks that appear to comprise the majority of time allegedly incurred are being performed by partners or "counsel"/"of counsel" at hourly rates close to or exceeding $700/hour, instead of associates and/or paralegals at substantially lower rates.[25] Again, there are numerous qualified lawyers and paralegals outside of Seeger Weiss who (i) represent former players, (ii) are deeply invested in those players and this litigation, (iii) are intimately familiar with and involved in the settlement and the claims process, and (iv) could provide the services referenced by Class Counsel at substantially reduced rates.

These lawyers/paraprofessionals are not, as Class Counsel has previously

---

[22] *See* ECF 10986, at 12, n. 11.

[23] Recall, the Court calculated the "blended rate" across all of the law firms seeking fees; the "blended rate" was not calculated firm by firm (and therefore not specific to Seeger Weiss, its partners, "of counsel;" associates, or paraprofessionals). *See* ECF 100019, at 7 and n. 4.

[24] *See, e.g.,* ECF 10986, at 5.

[25] ECF 10986, at 12 (claiming the majority of time as "partners" time billed at $758/hour).

described, "unnamed."[26]  Our firm, and many others who actually represent Class Members, and, by virtue of that individual client representation, have developed "the same breadth of familiarity with the Settlement program … as Class Counsel," stand ready, willing, and able assist Class Counsel in the oversight and maintenance of the settlement at rates substantially below those being requested in the Fourth Petition—$600+/hour. But there appears to be no interest by Class Counsel to reach out to former Co-Class Counsel, members of the former PEC/PSC, or other lawyers/law firms involved in the litigation to provide the necessary "implementation" services at reduced rates.[27]  That treatment by Class Counsel should not be countenanced and, for this reason, too, the Court should deny the Fourth Petition.[28]

4.  <u>The Fourth Petition, like the others, bills for time and expenses that should be borne by others, not the Class</u>

Setting aside its other flaws, described above, the Fourth Petition spends considerable time describing services the associated costs that should be borne by Class Counsel or paid for by other parties (*i.e.*, the NFL), not the Class.  For example,

---

[26] *See* ECF 10809, at 5.

[27] Just by way of comparison, the settlement agreement dictates that the *"[a]nnual* compensation of the Special Master will not exceed … $200,000.00" for all of the responsibilities assumed under the settlement.  See ECF 6481-1, at 51.  That is equivalent to one (1) month of Class Counsel's burn rate.

[28] We submit that one or two qualified lawyers (making $200,000/year) and a dedicated paralegal (making $60,000/year) could perform the "monitoring and oversight" of the settlement with oversight of Class Counsel, resulting in a significant cost saving to the Class.

9

Class Counsel describes services he allegedly directed toward the "education fund and medical research data."[29] The claimed services do not directly benefit the Class and should not be compensated as such. Again, while we applaud his efforts, his associated fees and expenses associated with the "education fund" should not burden the Class—certainly not as an additional expense on top of the multi-million dollar fee award previously granted by the Court.

On this point, other work described in the Fourth Petition appears to be work that is the financial obligation of the BAP administrator and/or the Claims Administrator—*i.e.*, work paid for by the NFL, not the Class.

And finally, the Fourth Petition also appears to seek fees/expenses for work done for individual claimants.[30] Again, we applaud Class Counsel's efforts in assisting individual claimants in development of their specific claim—it is true that navigating the claims process is a monumental challenge. But, CMO 5 expressly prohibits compensation for "time [and] expense on developing or processing a case for an individual client…."[31] Whether the claimants are his "client" or not, time

---

[29] *See, e.g.,* 10986, at 10-11. As this Court described it in approving the settlement, the $10 million education fund was "to promote safety and injury prevention for football players of all ages, including youth football players." To the extent that the fund applies to educating non-Class Members, it cannot be considered a benefit to the Settlement Class.

[30] *See, e.g.*, 10986, at 2-3 (claiming time for "support[ing] … unrepresented Class Members and Class Members' … IRPAs").

[31] ECF 3710, at 3.

10

expended on individual cases should not burden the Class. But it is clearly included in Class Counsel's fee petition.

## PRAYER

Class Counsel's Fourth Post-Effective Date Fee Petition should be denied at this time. As with its prior applications, Class Counsel should be required to submit for review detailed time and expense data justifying the requested fees/expenses. The Class is entitled to see exactly what Class Counsel is charging them for. Additionally, Class Counsel should be ordered to confer with other attorneys currently representing Class Members regarding the performance of common benefit services at rates lower than those charged by Seeger Weiss. And, the Court should seek formal proposals from other qualified legal professionals with respect to the performance of the services required to implement the settlement over the remainder of its 65-year term.

Dated: Feburary 19, 2020

Respectfully submitted,

*/s/ Lance H. Lubel*

Charles L. Becker, Esq.
KLINE & SPECTER, PC
1525 Locust Street, 19th Floor
Philadelphia, Pennsylvania 19102
Telephone: (215) 772-1000
Facsimile: (215) 772-1359
Email: Chip.Becker@KlineSpecter.com

Mickey L. Washington, Esq.
WASHINGTON & ASSOCIATES PLLC
2019 Wichita Street

Lance H. Lubel, Esq.
Texas Bar No. 12651125
Adam Q. Voyles
Texas Bar No. 24003121
LUBEL VOYLES LLP
675 Bering Drive, Suite 850
Houston, Texas 77057
Telephone: (713) 284-5200
Facsimile: (713) 284-5250
Email: lance@lubelvoyles.com
Email: adam@lubelvoyles.com

Houston, Texas 77004
Telephone: (713) 225-1838
Facsimile: (713) 225-1866
Email: mw@mickeywashington.com

*Attorneys for the Identified Class Members*

## CERTIFICATE OF SERVICE

    I hereby certify that on February 19, 2020, I filed the foregoing through the Court's CM/ECF system, which will provide electronic notice to all counsel of record and constitutes service on all counsel of record.

*/s/ Lance H. Lubel*
Lance H. Lubel