UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>      Plaintiffs,<br><br>      v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>      Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

**CLASS COUNSEL'S REPLY TO CERTAIN CLASS MEMBERS' OPPOSITION TO FOURTH VERIFIED PETITION FOR AN AWARD OF <u>POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS</u>**

As with each of the prior implementation-phase petitions for awards of common benefit attorneys' fees and reimbursement of expenses, the sole objections to the Fourth Verified Petition of Class Counsel for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs (ECF No. 10986) ("Fourth Post-Effective Date Fee Petition") were filed by counsel for the

Aldridge (previously knowns as the Alexander) Objectors, Lance H. Lubel (ECF No. 11006) ("Objections"). The Objections are the latest chapter in this attorney's ongoing rearguard campaign to thwart the compensation of those counsel who have labored to implement a settlement that has already resulted in over $750 million in payable Notices of Monetary Awards,[1] and who have secured many victories for Retired Players and their families from the launch of the Settlement Program to the present. The Objections rest on the faulty and unrealistic premise that the $112.5 million in class fees and expenses paid by the NFL must, at all costs, cover not only all of the work relating to the securing and defense of the Settlement but also the implementation of it over its entire 65-year term. Operating on that premise, the Aldridge Objectors have relentlessly opposed Class Counsel's implementation-phase fee petitions.

In this new round of Objections, the Aldridge Objectors merely recycle earlier, discredited arguments. For example, the Aldridge Objectors reargue that the "blended" hourly rates set by the Court are unreasonable and should not be used for the fee petitions, and that the Court's review of time records *in camera* is either improper or insufficient. Objections at 6-8. Class Counsel has already addressed these arguments at each prior juncture (ECF No. 10191 at 2-6, ECF No. 10809 at 4), and in granting the First Post-Effective Date Fee Petition (ECF No. 10378), the Court

---

[1]  *See* www.nflconussionsettlement.com/Reports_Statistics.asp (last accessed May 2, 2020).

implicitly rejected them by using the very rates it set[2] in determining the amount of the fees to be awarded after reviewing the time records submitted by Class Counsel.[3]

Similarly, the Aldridge Objectors again reiterate their ongoing assertion that the common benefit work undertaken by Class Counsel in the implementation and operation of the Settlement Program (such as providing assistance to unrepresented Retired Players and their families or work on the Education Fund benefit of the Settlement Program) is somehow excessive, unnecessary, or otherwise improper.  Objections at 5-6, 8-10.  Class Counsel has already addressed these baseless

---

[2]  Although there can be no genuine dispute on this point, the Aldridge Objectors continue to raise the argument that the rates set by the Court and used in the course of each of the fee petitions are "unreasonable."  When setting the "blended" rates (which were lower than the rates of many of the attorneys or firms who sought common benefit fees), the Court made clear that "[g]oing forward, fee petitions for the work done in implementing the settlement should be submitted by . . . Class Counsel [who] . . . should adopt the blended billing rates used in the present allocation."  ECF No. 10019 at 25.  Indeed, the rates were to be used throughout the like of the Settlement. If anything, when the Court set these "blended" rates and directed that Class Counsel employ them in implementation-phase fee petitions, it also contemplated a future adjustment of these hourly rates if Class Counsel "determines that such increase is necessary," such as to reflect inflation adjustments.  *Id.*  Class Counsel is not, at this time, requesting an increase in the prescribed billing rates.

[3]  Once again, the Aldridge Objectors complain that "not a single time or expense record has been supplied," and try to distinguish cases previously cited in response to their demands for public production of Class Counsel's billing records.  Objections at 7.  Of course, there are many other cases supporting Class Counsel's position.  *E.g.*, *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) ("We decline to adopt a rule that a district court must grant a request for discovery of contemporaneous time records in every case in which attorney fees are sought.") (affirming district court's denial of "spoiler" objector's request for discovery of class counsel's contemporaneous time records); *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2010 WL 3928638, at *5 (E.D. Pa. Oct. 5, 2010) (noting that this Court has generally refused to allow discovery in connection with class counsel fee applications) (citing cases).  Where courts have occasionally required production of billing records, it has typically been in statutory fee-shifting cases, where fees are being sought from a losing defendant that questions the reasonableness of the fees that it is being asked to pay.  *E.g.*, *Avaya, Inc. v. Telecom Labs, Inc.*, No. 06-2490, 2016 WL 223696, at *3, *6 (D.N.J. Jan. 19, 2016) (plaintiff prevailed against defendant on antitrust claims and petitioned for $59 million in fees; on defendant's motion, court directed plaintiff to produce billing records).  As with earlier fee requests, Class Counsel's billing records will be furnished to the Court upon its request for *in camera* review.

arguments (ECF No. 10191 at 2-3, ECF No. 10416 at 3-5, ECF No. 10809 at 2, 4-5). When granting the First Post-Effective Date Fee Petition, the Court made clear that during the early years of the Settlement Program such arguments are misplaced: "[the Objector] suggest[s] that the amount of work performed in this first year of implementation is unexpected. The objector is wrong. As I already have already explained, the Parties knew that the bulk of the work to implement the settlement would occur in the early years of the 65 year agreement. ECF No. 9860 at 17-18." ECF No. 10378 at 2.

Now that the implementation of the Settlement has gradually moved past its initial "start-up" period – with all of the attendant work required to get it up and running, iron out sundry issues, and resolve various disputes – the hours required of Class Counsel to oversee the Settlement Program continue to gradually decrease. The Fourth Post-Effective Date Fee Petition continues the steady downward trend of common benefit hours dedicated to the Settlement Program. *Compare* ECF No. 10128 at 19 (first implementation-phase petition covering the period Jan.7, 2017 – May 24, 2018, with 13,553.5 hours for a lodestar of $8,559,179.97 – or 4,928.55 hours for a lodestar of $3,112,429.08 if prorated over 6- month period) *with* ECF Nos. 10374 at 16 (second petition for the 6-month period May 25, 2018 – Nov. 30, 2018, with 4,378.1 hours for a lodestar of $2,895,044.17) *and* 10767 at 2, 15 (third petition for the 6-month period Dec. 1, 2018 – May 31, 2019, with 2,180.1 hours for a lodestar of $1,445,488.66) *and* 10986 at 12 (fourth petition for the 6-month period June 1, 2019 to November 30, 2019, with 1,814.4 hours for a lodestar of $1,146,470.19).

Similarly, as the emphasis of the common benefit work shifts from establishment of the Settlement Program's structure and initial launch toward oversight, gradually fewer matters have required the attention of partners and, conversely, paralegals are taking on more responsibilities.

*Compare* ECF Nos. 10374 at 16 (second petition for the 6-month period May 25, 2018 – Nov. 30, 2018, where 9% of hours are from paralegals and 63% of hours are from partners) *with* 10767 at 2, 15 (third petition for the 6-month period Dec. 1, 2018 – May 31, 2019, where 10% of hours are from paralegals and 61% of hours are from partners) *and* 10986 at 12 (fourth petition for the 6-month period June 1, 2019 to November 30, 2019, when 14% of hours are from paralegals and 51% of hours are from partners).[4]

At bottom, the Aldridge Objectors reveal that they are really concerned about the prospect of the Court permanently adopting *any* holdback from Monetary Awards rather than the propriety of any of the post-Effective Date fee petitions, including this one. *See* Objections at 2-4. They argue that they are not alone in their hostility to the 5% holdback, contending that "the majority of the previously-appointed *Co-Lead Class Counsel*" opposed the 5% holdback. Opposition at 3-4 (emphasis in original). That is not true. The argument only illustrates the limited grasp of the Settlement and its history on the part of the Aldridge Objectors' counsel. Prior to May 24, 2019, when he was reappointed to serve as "Class Counsel" (ECF No. 10624), the undersigned shared the title of Co-Lead Class Counsel with only one other attorney, Sol Weiss. See ECF No. 6534 at 3 (¶ 6) (Am. Final Order & J.). More to the point, all of the counsel whom the Court had appointed

---

[4] The offer of counsel for the Aldridge Objectors to assist with the implementation and oversight of the Settlement Program has nothing to commend it. Objection at 9. To begin with, the suggestion that stewardship of the Settlement should be entrusted, even if only in part, to counsel who relentlessly sought to scuttle it (including on appeal from final approval), is dubious, to say the least. Nor does counsel outline his qualifications to take on the scope of responsibilities demanded of this historic, 65-year Settlement Program. His various filings to date have often demonstrated a limited appreciation of the Settlement Program. Moreover, counsel's firm has not had a wide-ranging involvement in the Settlement Program to date that would suggest that it has acquired sufficient expertise with the Program's multiple facets. It has submitted only 13 Monetary Award claims, all of which were for pre-Effective Date Qualifying Diagnoses, and almost exclusively for Level 1.5 or Level 2 Neurocognitive Impairment. Nine of those claims have been denied. One of the paid claims was the subject of a prohibited assignment.

to represent the class and subclasses were signatories to the Settlement Agreement, which provides for the 5% holdback in addition to the $112.5 million paid by the NFL to establish the AFQSF for the payment of common benefit fees and expenses. *See* ECF No. 6481-1 at 82 (Settlement Agreement § 21.1). And none of them opposed the request for adoption of a 5% holdback that was made as part of the February 2017 class fee petition. See ECF Nos. 7151 at 2, 7151-1 at 70-75, 7151-2 at 31-35 (¶¶ 101-19).

More to the point, the matter of the holdback is not at issue in this petition, which seeks payment from the AFQSF for common benefit fees and expenses. The Court has not yet ruled on the requested holdback – funds have been withheld only provisionally pending a formal decision – and in the case of represented class members, the source of the holdback would be the contingent fee portion that would earned by the individual attorneys, such as the Aldridge Objectors' counsel, rather than the class member's share. Whether sufficient funds will remain in the AFQSF down the road is immaterial, if not irrelevant, to the question of whether work *was* performed and expenses *were* incurred on behalf of the class during the six-month period ending November 30, 2019 and should be compensated and reimbursed, respectively. Finally, the steadily decreasing amounts sought in the implementation-phase petitions should dispel any suggestion that Class Counsel has been trying to burn through the remaining funds in the AFQSF in order to justify the requested set-aside[5]

---

[5] The Aldridge Objectors point to Professor Rubenstein's opinions regarding the matter of the holdback request. Opposition at 3-4. To be sure, Professor Rubenstein initially recommended against a set-aside (ECF No. 9526 at 34-48 [¶¶ 42-56]). But when he was presented with rebuttal evidence by Class Counsel – showing the extensive effectuation-phase work performed (a good deal of it involving unanticipated work such as disputes with third-party funders) (ECF Nos. 9552 [at 6-11], 9552-1 at 2-3 [¶¶ 2-7]) – he modified his opinion and recommended that a two-percent holdback could be imposed if remaining funds in the AFQSF proved insufficient (ECF No. 9571 at 4-8 [¶¶ 7-11]). At any rate, the Aldridge Objectors' cherry-picking of Professor Rubenstein's

## CONCLUSION

Based on the foregoing, the Court should overrule the Objections and grant the Fourth Post-Effective Date Fee Petition.

Date:  March 2, 2020                                                                   Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  (973) 639-9100
Facsimile: (973) 639-9393
cseeger@seegerweiss.com

**CLASS COUNSEL**

---

opinions is ironic given that they had attacked his other recommendation – made in the very same December 2017 report – that IRPAs' fees be capped by accusing him of a conflict of interest (ECF No. 9554 at 1, 9-10), and had unsuccessfully sought to depose him (ECF Nos. 9536, 10085).

7

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2020, service of the Class Counsel's Reply to Certain Class Members' Opposition to Fourth Verified Petition for An Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs and supporting documents was accomplished pursuant to the court's electronic filing procedures by filing these documents through the ECF system.

Dated: March 2, 2020

*s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
cseeger@seegerweiss.com