**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:  NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| | : | Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO: | : : | |
| ALL ACTIONS | : : | |

## CLAIMS ADMINISTRATOR STATUS REPORT NO. 8

### I.      INTRODUCTION

1.      ***The Purpose and Scope of this Status Report.***  BrownGreer PLC, the Court-appointed Claims Administrator of the Settlement Program established under the Class Action Settlement Agreement in this litigation, submits this Status Report No. 8 to apprise the Court on the implementation of its duties as the Claims Administrator and developments since Status Report No. 7 filed on December 11, 2019 (Document 10916).  Our earlier Status Reports are posted to the Settlement Website (under "Documents," click "Status Reports").  We do not repeat here what we covered in them.  All numbers and other information in this Status Report No. 8 are as of March 16, 2020, except for the information in paragraph 2 regarding the Alert on the Effect of the COVID-19 Pandemic, which is as of March 19, 2020.[1]  We will cover developments after that date in future reports.

---

[1] All dates formatted as 3/16/20 in this Status Report mean March 16, 2020.

## II.   COVID-19 PANDEMIC

**2.   *Alert on the Effect of the Covid-19 Pandemic*.**  On March 19, 2020, we posted

on the Settlement website an Alert regarding the effect of the COVID-19 Pandemic on the

Settlement Program. We repeat its content here:

> The coronavirus pandemic has forced everyone to face an uncertain time. Federal, state, and local governments are adopting various rules regarding group activities and social distancing. To reduce the risk of exposure and spread of infection, the Claims Administrator and the BAP and Lien Administrator have transitioned much of their staff to work remotely, as have most law firms and other businesses.

> We do not know how long these conditions will persist. At this time we do not foresee any interruption in the operations of this Settlement Program. The Program continues to schedule BAP appointments, receive the results of examinations by Qualified BAP Providers and Qualified MAF Physicians, receive and process Monetary Award Claims, issue notices and payments, resolve Liens, and perform the many other actions that take place in this Program.

> We know that the pandemic has affected appointments with Qualified BAP Providers and Qualified MAF Physicians, leading to cancelations by Retired NFL Players and by the providers. The spread of the virus has disrupted normal processes in all types of medical care across the country. Healthcare providers vary in their approaches to continuing to see patients, and the governmental guidances and restrictions in this area are evolving. Players and their lawyers will need to follow the directions of the medical offices as appointments are made, rescheduled, or canceled.

> If you have questions or incur any difficulties taking actions in the Program during these unprecedented circumstances, call the Claims Administrator at 1-855-887-3485, or email us at ClaimsAdministrator@NFLConcussionSettlement.com. Remember that there are rules in place concerning the need for more time to meet a deadline, which will continue to apply during this period. To avoid any difficulties, it is important that you make any request for an extension to a deadline or accommodation as soon as practicable after a need arises.

Our thoughts are with all those affected by these troubled times.

## III.   MONETARY AWARD CLAIMS

**3.   *Total Claims Received.*** Sections 3, 4 and 5 of the Summary Report on the

Settlement Website show the total Monetary Award claims submitted.  We have received 56 new

Monetary Award claims since Status Report No. 7, bringing the total to 2,989 Monetary Award

Claim Packages from Retired NFL Football Players and Representative Claimants (18.5% of the 16,138 Retired NFL Football Players and Representative Claimants who received favorable registration determinations and are eligible to submit claims).[2]  Five of these 2,989 claims were denied as untimely.[3]  We have received about four new claims a week since Status Report No. 7 in December 2019.  Of the 2,989 Monetary Award claims submitted, 1,972 (66%) rest on pre-Effective Date diagnoses, while 778 (26%) are for post-Effective Date diagnoses, of which 208 (27% of the 778) were made in the Baseline Assessment Program ("BAP")[4] and 570 (73% of the 778) were made by Qualified MAF Physicians.[5]  The other 239 claims did not tell us what diagnosis date they assert.  Table 1 compares these numbers to those in Status Report No. 7:

| Table 1 | QUALIFYING DIAGNOSIS DATES | | | | | |
|---|---|---|---|---|---|---|
| | | HOW MANY | | | % | | |
| | DATE | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE |
| 1. | Pre-Effective Date | 1,972 | 1,972 | 0 | 67% | 66% | -1% |
| 2. | Post-Effective Date | 718 | 778 | +60 | 25% | 26% | +1% |
| | *(a) BAP* | *179* | *208* | *+29* | *6%* | *7%* | *+1%* |
| | *(b) MAF Physician* | *539* | *570* | *+31* | *19%* | *19%* | *0%* |
| 3. | No Date Asserted | 243 | 239 | -4 | 8% | 8% | 0% |
| 4. | Totals | 2,933 | 2,989 | 56 | | | |

---

[2] Of these Monetary Award claims, 560 (19%) have at least one associated Derivative Claimant who has registered and 2,429 (81%) have no registered Derivative Claimants.  Note the total number of Retired NFL Football Players and Representative Claimants with favorable registration determinations is shown in Section 2 of the Summary Report on the Settlement Website (BAP Eligible + Not BAP Eligible); 2,691 of these Settlement Class Members submitted the 2,989 claims.

[3] We reviewed another 19 claims for potential untimeliness, of which we accepted 14 as timely and two because they showed substantial hardship under Section 8.3(a)(i) of the Settlement Agreement.

[4] Although a Retired NFL Football Player may have received a Qualifying Diagnosis in the BAP, we do not report on it until he (or his Representative Claimant) submits a Claim Package seeking a Monetary Award.  The BAP Administrator's status reports explain more about BAP diagnoses.

[5] This includes two claims where the Settlement Class Members submitted claims after the Pre-Effective Date, but the diagnoses were not rendered by MAF Physicians.  Given unique circumstances, the Parties allowed an AAP member or AAP Consultant to review the medical records to determine if there was a Qualifying Diagnosis.

Table 2 shows by diagnosis date how many claims we have for each type of Qualifying Diagnosis:

| Table 2 | CLAIMS BY QUALIFYING DIAGNOSIS TYPE AND DATE | | |
|---|---|---|---|
| | DIAGNOSIS | PRE-EFFECTIVE DATE | POST-EFFECTIVE DATE | |
| | | | MAF | BAP |
| 1. | Death with CTE | 124 | N/A | N/A |
| 2. | ALS | 51 | 5 | |
| 3. | Alzheimer's Disease | 421 | 79 | |
| 4. | Parkinson's Disease | 137 | 32 | |
| 5. | Level 2 | 507 | 177 | 77 |
| 6. | Level 1.5 | 732 | 276 | 126 |

We highlight the asserted Qualifying Diagnoses and diagnosis dates in Sections 4 and 5 of the Summary Report on the Settlement Website. We also show the current status of all Monetary Award claims based on the last notice or action taken in Section 8 of the Summary Report on the Settlement Website. There are 20 claims (<1% of 2,989) in our review process after an initial Claim Package submission or a response to a notice requesting additional information and/or documents (see Row 1 in Section 8 of the Summary Report).

### 4. *Monetary Awards and Payments.*

(a) We show Monetary Awards and payments in Sections 7 and 11 of the Summary Report on the Settlement Website. We have issued Notices of Monetary Award for 1,108 claims totaling $759,956,879.[6] We request funding from the NFL Parties by the 10th of each month (or the next business day if the 10th falls on a weekend or holiday) for claims that have received a Notice of Monetary Award for which the appeals process is complete (or the appeal deadline has passed with no appeal) and that are not in Audit.[7] Of the 1,108 claims

---

[6] The amount of these 1,108 Notices of Monetary Award includes the 1% of Awards allocated to eligible Derivative Claimants. See Paragraph 22 of this Status Report.
[7] We submitted the January 2020 Funding Request on January 15, 2020, to allow the Special Masters to set the annual inflation adjustment based on data for the full year before we made the request.

with Notices of Monetary Award, 1,059 reached the point at which we can request funding

from the NFL Parties, which have deposited $707,033,373.03 into the Monetary Award Fund

for 1,031 claims and not yet funded 28 claims because they are within the funding deadline

for the March Funding Request.[8]  Of the 1,031 Monetary Award claims for which the NFL

Parties had deposited funds, the Program paid 1,009 claims for a total of $660,166,495.  The

remaining 22 funded claims were not yet ready for payment when we submitted the most

recent Disbursement Report; some have holds preventing payment, some do not have a

submitted Payment Election Form or SWS-5, and some have holdbacks for potential Liens

which, together with the 5% deduction for the Common Benefit Fund, exceeded the gross

award amount.  For the 1,009 Retired NFL Football Players and Representative Claimants

who have been paid, the Trustee sent $35,182,572 (5% of those Monetary Awards), to the

Attorneys' Fees Qualified Settlement Fund, in accordance with the Court's June 27, 2018

Order Regarding the Common Benefit Fund (Document 10104).  Finally, we are required to

withhold money for unresolved Liens and for third-party funders.  Table 3 shows the

distribution of the $660,166,495 paid by the Settlement Program and compares the totals to

those reported in Status Report No. 7:

---

[8] The NFL Parties have 30 days from the date of the Funding Request to fund the amount requested.

| Table 3 | MONETARY AWARD PAYMENTS | | | |
|---|---|---|---|---|
| | **PAID TO** | **AS OF 12/2/19** | **AS OF 3/16/20** | **CHANGE** |
| 1. | **Settlement Class Members** (or their lawyers on their behalf, if represented) | $593,236,610 | $640,130,388 | +$46,893,778 |
| 2. | **Medical Lienholders** (on behalf of Settlement Class Members to the Lien Resolution Administrator to resolve medical Liens when a final Lien resolution amount is determined) | $3,209,839 | $3,341,034 | +$131,195 |
| 3. | **Non-Medical Lienholders** (on behalf of Settlement Class Members to lienholders to resolve non-medical Liens) | $8,067,554 | $8,676,073 | +$608,519 |
| 4. | **Third-Party Funders** (on behalf of Settlement Class Members to third-party funders who have accepted rescission of and/or terminated prohibited assignments that they had entered into with Settlement Class Members) | $7,431,876 | $8,019,000 | +$587,124 |
| 5. | **Totals** | **$611,945,879** | **$660,166,495** | **+$48,220,616** |

(b) Table 4 shows the changes in figures for payments and claims with Notices of

Monetary Award since Status Report No. 7:

| Table 4 | MONETARY AWARD CHANGES SINCE STATUS REPORT NO. 7 | | | | | |
|---|---|---|---|---|---|---|
| | **STATUS** | **HOW MANY** | | | **AMOUNT** | | |
| | | **AS OF 12/2/19** | **AS OF 3/16/20** | **CHANGE** | **AS OF 12/2/19** | **AS OF 3/16/20** | **CHANGE** |
| 1. | Notice of Monetary Award Issued | 1,025 | 1,102 | +77 | $714,132,721 | $758,001,149.35 | +$43,868,428.35 |
| 2. | Paid | 921 | 1,009 | +88 | $611,945,878 | $660,166,495 | +$48,220,617 |

(c) Table 5 shows how many claims for each type of Qualifying Diagnosis have received a Notice of Monetary Award and been paid:[9]

| Table 5 | MONETARY AWARDS AND PAYMENTS BY QUALIFYING DIAGNOSIS | | | | | |
|---|---|---|---|---|---|---|
| | DIAGNOSIS | CLAIMS SUBMITTED | NOTICE OF MONETARY AWARD | | PAID | |
| | | | HOW MANY | % | HOW MANY | % |
| 1. | Death with CTE | 124 | 80 | 65% | 80 | 65% |
| 2. | ALS | 56 | 39 | 70% | 39 | 70% |
| 3. | Alzheimer's Disease | 500 | 332 | 66% | 313 | 63% |
| 4. | Parkinson's Disease | 169 | 140 | 83% | 133 | 79% |
| 5. | Level 2 | 761 | 173 | 23% | 158 | 21% |
| 6. | Level 1.5 | 1,134 | 338 | 30% | 286 | 25% |

Of the 1,102 claims with Notices of Monetary Award, 196 (18%) have been appealed (137 by the NFL Parties and 59 by the Settlement Class Member). This is 10 more appeals (6 by the NFL Parties and 4 by Settlement Class Members) than we described in Status Report No. 7. We show the status of appealed Monetary Award claims in Section 9 of the Summary Report on the Settlement Website.

**5.** *Monetary Award Claims Reviewed by the AAP.*

(a) There are 41 claims in or still requiring Appeals Advisory Panel ("AAP") review, which is three more claims than the 38 we reported in Status Report No. 7. Many of the claims being reviewed by the AAP are based on Level 1.5 or Level 2 Neurocognitive Impairment diagnoses for which the AAP members may request input from Appeals Advisory Panel Consultants ("AAPC"), as highlighted in sub-paragraph (b) below. The AAP has completed reviews on 901 pre-Effective Date diagnosis Monetary Award claims,

---

[9] Section 8 of the Summary Report on the Settlement Website shows where claims that have not received a Notice of Monetary Award or been paid stand in the process.

approving 493 (55%) of those claims.[10]  Under FAQ 147 ("Can I be found eligible for a
Monetary Award based on a Qualifying Diagnosis that is different than the one I claimed?"), the
AAP has found a lower level diagnosis (meaning a Qualifying Diagnosis that is less severe
medically or with a lower Award amount under the Monetary Award Grid) on 91 claims (an
increase of four since Status Report No. 7).  Under Rule 27 of the Rules Governing Qualified
MAF Physicians, the AAP has reviewed 138 Monetary Award claims for diagnoses made by
terminated Qualified MAF Physicians, approving 42 (30%) of those claims.[11]

(b) We have assigned 635 claims (an increase of 27 since Status Report No. 7) to the
AAPC based on requests by AAP members for their input on Level 1.5 and Level 2
Neurocognitive Impairment Qualifying Diagnoses or the neuropsychological testing
supporting an Alzheimer's Disease diagnosis.  The AAPC has completed 617 reviews
(97.2%) and provided their assessments to the AAP.  An AAPC member is reviewing the
other pending claims.

6.      ***Notices for Missing Materials***.  We have sent one or more notices requesting
additional documents or information on 2,013 Monetary Award claims (49 more since Status
Report No. 7), as shown in Table 6:

---

[10] Broken down by Qualifying Diagnosis, the AAP members approved 98% of Death with CTE claims, 95% of ALS
claims, 87% of Alzheimer's claims, 97% of Parkinson's claims, 28% of Level 2 claims and 34% of Level 1.5
claims.

[11] This figure excludes those claims reviewed by the AAP under Section 8.6(b) of the Settlement Agreement, which
provides the Claims Administrator with the discretion to verify and investigate the sufficiency of a Claim Package to
determine if it qualifies for a Monetary Award.  At our request, the AAP has reviewed 58 claims to verify the
sufficiency of the claimed Qualifying Diagnosis.

| Table 6 | | NOTICES FOR MISSING MATERIALS | | | | | | | |
|---------|------|-----------------|-----|----------------------|-----------------------|---------|-----------|----------------------|-------|
| | CLAIMS | DEATH WITH CTE | ALS | ALZHEIMER'S DISEASE | PARKINSON'S DISEASE | LEVEL 2 | LEVEL 1.5 | MULTIPLE/ UNKNOWN[12] | TOTAL |
| 1. | Total Submitted | 124 | 56 | 500 | 169 | 761 | 1,134 | 245 | 2,989 |
| 2. | Notice Issued | 48 | 28 | 294 | 92 | 525 | 804 | 222 | 2,013 |
| 3. | % Missing Materials | 39% | 50% | 59% | 54% | 69% | 71% | 91% | 67% |

So far, 87% of the Settlement Class Members who received a notice requesting additional documents have responded to the notice.  Settlement Class Members take an average of about 60 days to respond.  We generally receive up to five responses to these notices each week and review each reply to determine if it cures the problem.  Of those who responded, 37% cured the problem.  Section 6 of the Summary Report on the Settlement Website shows how many claims last received a notice requesting additional documents/information.

    **7.**    ***Statute of Limitations Matters***.  We received 136 Claim Packages from Representative Claimants on behalf of Retired NFL Football Players who died before January 1, 2006.[13]  The Rules Governing Statute of Limitations Proceedings explain how the Special Masters make determinations as to whether such claims are barred by statutes of limitations, as specified in Section 6.2(b) of the Settlement Agreement.  Statute of Limitations Rule 7 requires that a Claim Package be complete before a statute of limitations proceeding may begin.  Of the 136 claims we received:  (a) 72 are complete and assert a

---

[12] These "Multiple/Unknown" claims are ones where the Settlement Class Member asserted more than one Qualifying Diagnosis, or the claim is so incomplete that we cannot tell what Qualifying Diagnosis is claimed.  We process and pay a person for only one Qualifying Diagnosis per claim submission.

[13] We received Registration Forms from 370 Representative Claimants on behalf of Retired NFL Football Players who died before January 1, 2006, but 134 of them did not properly register because of uncured incompleteness reasons or the player was not a Settlement Class Member because he did not play NFL Football as required by the Settlement Agreement.  Of the 236 Representative Claimants who successfully registered, 100 (42%) did not submit a Claim Package.

potentially compensable Qualifying Diagnosis if the claim is not time-barred under

Settlement Agreement Section 6.2(b); (b) one was withdrawn; and (c) 63 have been denied

for failing to cure deficiencies or for not asserting a compensable Qualifying Diagnosis.[14]

Table 7 summarizes the changes to these numbers since Status Report No. 7:

| Table 7 | STATUS OF CLAIMS REQUIRING STATUTE OF LIMITATIONS ANALYSIS | | | | | | |
|---|---|---|---|---|---|---|---|
| | STATUS | HOW MANY | | | % | | |
| | | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE |
| 1. | Complete - Potentially Compensable Qualifying Diagnosis | 71 | 72 | +1 | 53% | 53% | 0 |
| 2. | Claim Package Withdrawn | 1 | 1 | 0 | <1% | < 1% | 0 |
| 3. | Denied – Deficient or No Compensable Qualifying Diagnosis | 63 | 63 | 0 | 47% | 46% | -1% |
| 4. | Totals | 135 | 136 | +1 | | | |

The Special Masters originally stayed a decision on all claims presenting this issue until all

were fully briefed, to permit all affected Representative Claimants to be heard before any

ruling and allow for the consideration of all arguments in a uniform and efficient manner.

Then, on December 11, 2019, the Court appointed United States Magistrate Judge Diane M.

Welsh as the Mediator to seek to resolve all claims implicated by Section 6.2(b) of the

Settlement Agreement.  Judge Welsh has set April 20, 2020, as the initial mediation session

for these 72 pending claims.

        **8.**    ***Monetary Award Denials***.  There have been 1,013 denials of Monetary Award

claims for reasons other than an Audit (98 more since Status Report No. 7), as shown in

Table 8.[15]

---

[14] The 2020 Grid Value of the 72 complete and potentially compensable claims is $63,999,220.
[15] We discuss Audit denials in Paragraph 18 of this Status Report.

| Table 8 | | MONETARY AWARD DENIALS | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | CLAIMS | DEATH WITH CTE | ALS | ALZHEIMER'S DISEASE | PARKINSON'S DISEASE | LEVEL 2 | LEVEL 1.5 | MULTIPLE/ UNKNOWN | TOTALS |
| 1. | Total Submitted | 124 | 56 | 500 | 169 | 761 | 1,134 | 245 | 2,989 |
| 2. | Denied | 41 | 3 | 76 | 10 | 240 | 423 | 220 | 1,013 |
| 3. | % Denied | 33% | 5% | 15% | 6% | 32% | 37% | 90% | 34% |

Sections 6 and 10 of the Summary Report on the Settlement Website show these denials and the reasons for them.  Overall, the AAP found 504 (50%) of these claims did not reflect a valid Qualifying Diagnosis.  When an AAP member denies a claim, we include in the notice comments from that AAP member explaining why.  When a claim is denied on other grounds, we typically call or email the Settlement Class Member (or his or her lawyer, if represented) to explain why the claim is being denied and discuss options for resubmitting the claim, appealing the denial, or withdrawing the claim until the claimant can obtain the missing mandatory information and/or documents.  Our denial notices explain all appeal rights and that another claim may be submitted if circumstances change or if the claimant receives a new diagnosis from a Qualified MAF Physician or after a BAP exam.  Settlement Class Members have appealed 314 (31%) of the 1,013 denials.

## IV.    SUPPLEMENTAL MONETARY AWARD CLAIMS

**9.**    ***Total Supplemental Monetary Award Claims Received.***  A Retired NFL Football Player (or Representative Claimant) who was paid a Monetary Award may be eligible for a Supplemental Monetary Award if the Retired NFL Football Player later is diagnosed while living with a different Qualifying Diagnosis.  The new Qualifying Diagnosis must have occurred after the Qualifying Diagnosis for which the Award was paid and the amount payable for the new Qualifying Diagnosis must be more than the Monetary Award already paid.  We have received claims from seven Retired NFL Football Players and one Representative Claimant seeking

Supplemental Monetary Awards, six for Qualifying Diagnoses of Alzheimer's Disease and two for a Level 2 Neurocognitive Impairment diagnosis. This is two more claims than we reported in Status Report No. 7.

      **10.** ***Supplemental Monetary Award Reviews and Payments.*** A Supplemental Monetary Award is the difference between the Monetary Award Grid value of the new Qualifying Diagnosis and the amount of the earlier Award for a different Qualifying Diagnosis. We have issued six Notices of Supplemental Monetary Award to eligible Retired NFL Football Players and denied one claim for a Supplemental Monetary Award.[16] The combined Monetary Award Grid value of these six Supplemental Monetary Awards was $1,955,729, but after subtracting the prior Monetary Award values, totaled $897,191, as detailed below in Table 9:

| Table 9 | SUPPLEMENTAL MONETARY AWARD CALCULATIONS | | | | |
|---|---|---|---|---|---|
| | SUPPLEMENTAL CLAIM | | PREVIOUSLY PAID CLAIM | | SUPPLEMENTAL MONETARY AWARD |
| | QUALIFYING DIAGNOSIS | HOW MUCH | QUALIFYING DIAGNOSIS | HOW MUCH | |
| 1. | Alzheimer's Disease | $187,217 | Level 1.5 | $93,904 | $93,313 |
| 2. | Alzheimer's Disease | $713,504 | Level 1.5 | $255,175 | $458,329 |
| 3. | Level 2 | $215,923 | Level 1.5 | $153,105 | $62,818 |
| 4. | Alzheimer's Disease | $316,188 | Level 1.5 | $99,620 | $216,568 |
| 5. | Alzheimer's Disease | $118,571 | Level 1.5 | $41,604 | $76,967 |
| 6. | Alzheimer's Disease | $404,326 | Level 2 | $253,783 | $150,543 |
| **7.** | **Totals** | **$1,955,729** | | **$897,191** | **$1,058,538** |

The Program has paid four Retired NFL Football Players $674,895 for their Supplemental Monetary Awards.

---

[16] The eighth claim for a Supplemental Monetary Award was submitted by a Representative Claimant on November 26, 2019, and is still under review.

## V.    QUALIFIED MAF PHYSICIANS

**11.    *Maintaining the MAF Network.***

(a) Settlement Class Members and lawyers can locate Qualified MAF Physicians using the MAF Physician Locator Tool on the Settlement Website.  There are 108 Qualified MAF Physicians on the website now, representing 35 of the 53 target cities closest to where the majority of living Retired NFL Football Players reside.  We hope to add another 20 approved Qualified MAF Physicians as we confirm their participation and/or contract with them.  Table 10 shows the changes in these numbers since Status Report No. 7:

| Table 10 | QUALIFIED MAF PHYSICIANS | | | |
|---|---|---|---|---|
| | DATA POINT | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE |
| 1. | Approved Physician – On Posted List | 109 | 108 | -1 |
| 2. | Target Cities Represented by Approved Physicians on Posted List | 36 | 35 | -1 |
| 3. | Approved Physician – Not Yet Posted | 22 | 20 | -2 |

The Parties approved three new Qualified MAF Physicians since Status Report No. 7.[17]  From those three, we secured a signed contract from two, added one to the posted list (we will add the second after we complete her orientation training) and are working with the third approved physician to get a signed contract in place so we can add him too.  We also added three other approved physicians to the list.  Although we added four Qualified MAF Physicians since Status Report No. 7, the total number of approved physicians on the posted list (Row 1 of Table 10) went down by one because we removed five physicians.  Of the five physicians we removed, one retired, one withdrew from the MAF Network and three withdrew from the Program (one due to lack of time and two for unspecified reasons).

---

[17] The "Parties" are the parties to the Settlement Agreement, Class Counsel and the NFL Parties.  Our contacts with Class Counsel are at Seeger Weiss LLP.  We work with counsel for the NFL Parties at Paul, Weiss, Rifkind, Wharton & Garrison LLP.

(b) We continue to identify and contact potential new providers, collect applications, verify credentials and submit applicants to the Parties for approval, in conjunction with the BAP Administrator.  From the 66 persons who expressed interest in the Network and gave us their contact information at the May 2019 American Academy of Neurology ("AAN") Annual Meeting in Philadelphia, we have received four applications, three which the Parties approved, and one which the Parties did not approve.  Of the three AAN approvals, we added two to the posted list and are in the process of scheduling orientation with the third.  We have another 349 physicians on our radar, 31 whom the Parties are considering whether to approve as Qualified MAF Physicians, one for whom we are preparing credentials for submission to the Parties, 160 with whom we are engaged in initial and follow-up communications to determine interest and 157 who we have identified as possibly having appropriate qualifications but who we need to research more fully before contacting.  Although overall coverage has not been a problem, we constantly push hard to add new physicians to the MAF Network and to keep the ones we have.

12.   *150-Mile Rule.*

(a) Rule 9 of the Rules Governing Qualified MAF Physicians requires that a Retired NFL Football Player be examined by a Qualified MAF Physician whose office is within 150 miles of his primary residence.[18]  We can make exceptions to this 150-Mile Rule if the exception is requested prior to the appointment.  We have received 47 requests for exceptions to the 150-Mile Rule, of which we granted 33 (70%) and denied 14 (30%).  Table 11 shows the changes since Status Report No. 7:

---

[18] This requirement applies only to appointments made after April 11, 2019.  Appointments made on or before April 11, 2019, do not need to be rescheduled with a different Qualified MAF Physician.

| Table 11 | REQUESTS FOR EXCEPTIONS TO 150-MILE RULE | | | | | |
|---|---|---|---|---|---|---|
| | **DECISION** | **HOW MANY** | | | **%** | | |
| | | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE |
| 1. | Granted | 21 | 33 | +12 | 66% | 70% | +4% |
| 2. | Denied | 11 | 14 | +3 | 34% | 30% | -4% |
| 3. | Totals | 32 | 47 | +15 | | | |

For each denied request, the Retired NFL Football Player had at least one Qualified MAF Physician within 150 miles and did not provide a reasonable explanation for wanting to see a Qualified MAF Physician further away.

(b) The 150-Mile Rule is a flexible rule with broad exceptions. Of the living Retired NFL Football Players registered in the Program, 90.5% have a Qualified MAF Physician within 150 miles of their primary residence. We work with those who do not to help them schedule appointments with physicians further away, when they tell us they are ready to be examined.

**13.**    *50-Mile Rule.*  Rule 10(b) of the Rules Governing Qualified MAF Physicians requires that, where neuropsychological testing is necessary as part of an MAF examination, the Qualified MAF Physician must refer a Retired NFL Football Player to a neuropsychologist who is located within 50 miles of the Qualified MAF Physician's office. Like the 150-Mile Rule, we have discretion to grant exceptions. Table 12 shows how many exception requests we have received and our decisions on those requests:

| Table 12 | REQUESTS FOR EXCEPTIONS TO 50-MILE RULE | | | | | |
|---|---|---|---|---|---|---|
| | **DECISION** | **HOW MANY** | | | **%** | | |
| | | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE |
| 1. | Granted | 6 | 8 | +2 | 100% | % | % |
| 2. | Denied | 0 | 0 | 0 | 0% | % | % |
| 3. | Totals | 6 | 8 | +2 | | | |

We have not denied any of these requests yet.  Of the 108 Qualified MAF Physicians who are actively scheduling appointments, 102 (94.4%) have an approved neuropsychologist within 50 miles of their office, and we will grant exceptions for the six who do not.

14.     ***Deviation Explanations for Level 1.5 and Level 2 Diagnoses.***  Under Rule 20 of the Rules Governing Qualified MAF Physicians, we request an explanation from a Qualified MAF Physician and/or neuropsychologist whenever the BAP criteria are not strictly followed on a diagnosis of Level 1.5 or Level 2 Neurocognitive Impairment and we determine more information is needed.  We delay processing these claims further until we receive the requested explanation.  We report on claims held in review for this reason in Section 8 (Row 2) of the Summary Report on the Settlement Website.  Since first reporting on this claim status in August 2019, we continue to see the number of affected claims decrease.  We expect the number of claims in this group will continue to go down over time as the Qualified MAF Physicians become more familiar with this requirement and include the necessary explanation in their initial submissions to us.

15.     ***AAP Leadership Council.***  Two AAP members serve as our AAP Leadership Council to provide advice and assistance on medical issues arising in our oversight of the Qualified MAF Physician Network.  We enlist their help, as needed, to review specific claims or groups of claims to determine compliance by Qualified MAF Physicians with the Settlement Agreement, the Qualified MAF Physician Manual and any guidance materials or instructions we issued, and whether Claim Packages reflect and support the stated Qualifying Diagnoses.  The AAP Leadership Council also assists us by participating in our calls with Qualified MAF Physicians to offer medical guidance on making diagnoses under the Settlement Agreement criteria.  Overall, our collaboration with the AAP Leadership Council

has been successful, and the Qualified MAF Physicians have responded positively to receiving feedback from AAP members.

## VI.    **AUDIT**

**16.**    *Closed Audits.*  We have concluded the Audit investigations of 687 Settlement Class Members with Monetary Award claims.  Table 13 summarizes the reasons for these closures and changes in the numbers since Status Report No. 7:

| Table 13 | CLOSED AUDITS | | | |
|---|---|---|---|---|
| | **REASON FOR CLOSURE** | **AS OF 12/2/19** | **AS OF 3/16/20** | **CHANGE** |
| 1. | No Finding of Misrepresentation, Omission, or Concealment; or Special Masters Directed Result | 462 | 513 | +51 |
| 2. | Claim Withdrawn by Settlement Class Member | 172 | 174 | +2 |
| 3. | **Totals** | **634** | **687** | **+53** |

**17.**    *Reports of Adverse Finding in Audit.* We have issued to the Parties 19 Reports of Adverse Finding in Audit (the same number that we reported in Status Report No. 7) affecting 566 Monetary Award claims, all 19 of which were then referred to the Special Masters.  The 19 Audit Reports referred to the Special Masters concern four neurologists, 12 neuropsychologists, two law firms, seven individual Settlement Class Members and one claims preparation company.  The Special Masters accepted our referrals on 12 of the 19 Audit Reports, which concern four neurologists, 11 neuropsychologists, one law firm, two Settlement Class Members and one claims preparation company; they rejected our referral on six Audit Reports covering one neuropsychologist and five individual Settlement Class

Members.[19]  They referred the remaining Audit Report, concerning one law firm, to the Special Investigator for additional investigation.

18.      ***Audit Proceeding Decisions.***  Since Status Report No. 7, the Special Masters have issued findings on two Audit Proceedings that they did not designate for publication under Audit Rule 35. Copies of the Special Masters' past decisions that were designated for publication are published on the Settlement Website (under "Documents" click "Special Master" below "Published Decisions").  We have denied 201 claims after Audit based on decisions by the Court or Special Masters.[20]  Sections 6 and 8 (Row 17) of the Summary Report on the Settlement Website show these denials.  A Settlement Class Member whose claim is denied after Audit may submit a new claim if based on a Qualifying Diagnosis that does not rely on records or opinions from disqualified doctors.  Copies of the Special Masters' past decisions are published on the Settlement Website (under "Documents" click "Special Master" below "Published Decisions").

19.      ***Ongoing Audit Investigations.***  We have other Audit investigations underway affecting 30 individual Monetary Award claims (three less than the 33 we reported in Status Report No. 7).

20.      ***Claims Investigated More than Once.***  Sometimes, claims on which we have concluded an Audit undergo another Audit if we later learn information that requires further

---

[19] Pursuant to Rule 34 of the Rules Governing the Audit of Claims, on May 15, 2019, the NFL Parties submitted an objection to the Special Masters' decisions on the five Audit Reports concerning individual Settlement Class Members.  On August 19, 2019, the Court issued a decision on that objection, finding that: (1) four Claim Packages contained material misrepresentations and/or omissions and must be denied; and (2) one Claim Package did not include a material misrepresentation or omission.

[20] Of the 201 denials, 195 are associated with providers the Special Masters disqualified from participating in the Program: neurologist Dr. Ena Andrews (47 claims) and neuropsychologists Dr. Serina Hoover (139 claims), Dr. August Dolan-Henderson (four claims) and Dr. Darren Fuerst (five claims).  The Special Masters denied one Retired NFL Football Player's claim.  The Court denied four claims (see Footnote 19 of this Status Report).  The remaining denial is the one Dr. Pollock claim that the Special Masters directed us to deny based on the unique circumstances of a Retired NFL Football Player's medical examinations.

investigation.  We notify Settlement Class Members when this happens.  We have audited 90 Monetary Award claims more than one time (four more than the 86 we reported in Status Report No. 7); the most times a Monetary Award claim has been audited to date is twice.

21.   ***Activities of the Special Investigator.***   The Special Masters have referred five investigations to the Special Investigator, concerning three law firms, one litigation funding company and one individual Settlement Class Member.  The Special Investigator previously finished his work on the one Settlement Class Member, finding clear evidence of misstatements in an affidavit submitted as part of the Claim Package. Since Status Report No. 7, the Special Investigator completed his work concerning one law firm, finding that the law firm had not attempted to misrepresent, omit or conceal material facts regarding players' claims. The Special Investigator also finished his work on the litigation funding company, finding that the company, and law firms who used the litigation funding company, acted in ways that are unfair to retired players and threaten to endanger or impugn the Settlement Agreement and Program. The other investigations by the Special Investigator involve 145 Monetary Award claims in Audit.  We show those claims in Section 8 (Row 13) of the Summary Report on the Settlement Website. The Court entered an Order on January 6, 2020 extending the Special Investigator's term to March 31, 2020.  HML Group provides supportive investigative services to the Special Investigator.

## VII.   <u>DERIVATIVE CLAIMANTS</u>

**22.**   *Derivative Claims.*  We have received 591 Derivative Claim Packages, which

is an increase of eight since Status Report No. 7.  Table 14 shows the status of these claims:

| Table 14 | DERIVATIVE CLAIMS | | |
|---|---|---|---|
| | **STATUS** | **HOW MANY** | **%** |
| 1. | Paid Derivative Claimant Award ($884,483) | 202 | 34% |
| 2. | Derivative Claimant Award Notice Issued but Not Paid ($53,672) | 9 | 2% |
| 3. | Denied – Associated Retired NFL Football Player's Claim Denied | 46 | 8% |
| 4. | Denied – No Timely Claim for Associated Retired NFL Football Player | 42 | 7% |
| 5. | Denied – No Timely or Proper Registration for Associated Retired NFL Football Player | 34 | 6% |
| 6. | Denied – Untimely Derivative Claim Package | 13 | 2% |
| 7. | Denied – Deceased Derivative Claimant | 4 | <1% |
| 8. | Denied – Derivative Claimant Not Registered | 1 | <1% |
| 9. | Successful Challenge to Derivative Claimant - Not Eligible | 15 | 3% |
| 10. | Withdrawn | 9 | 2% |
| 11. | Derivative Claim Package Receipt Notice Issued (no action required because the associated Retired NFL Football Player has not yet submitted a claim, or his claim status was not final) | 216 | 37% |
| **12.** | **Total** | **591** | |

Since Status Report No. 7, 10 more Derivative Claimants were paid, and we issued three

more Notices of Derivative Claimant Award.  We have so far paid 96% of the 211 Derivative

Claimants who received Notices of Derivative Claimant Award; of the nine eligible

Derivative Claimants who have not yet been paid, eight are in the payment process.  We have

not received an objection from any of the 158 Derivative Claimants who equally shared a 1%

Derivative Claimant Award with other Derivative Claimants associated with the same

Retired NFL Football Player.

**23.**   *Additional Derivative Claimant Details.*  We have received challenges from

29 Retired NFL Football Players (or their Representative Claimants) to 41 Derivative

Claimants (one more since Status Report No. 7); 19 (46%) of those 41 challenged Derivative Claimants never submitted a timely Derivative Claim Package, making them ineligible for a Derivative Claimant Award.  We issued a Notice of Derivative Claim Package Submission Deadline to 442 registered Derivative Claimants.  Table 15 summarizes their claim submission statuses and the changes since Status Report No. 7:

| Table 15 | CLAIM STATUS FOR DERIVATIVE CLAIMANTS WITH DERIVATIVE CLAIM PACKAGE SUBMISSION DEADLINE NOTICE | | | | | | |
|---|---|---|---|---|---|---|---|
| | | HOW MANY | | | % | | |
| | STATUS | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE |
| 1. | Claim Submitted | 150 | 152 | +2 | 35% | 34% | -1% |
| 2. | No Claim Submitted | 276 | 287 | +11 | 64% | 65% | +1% |
| 3. | Within 30-Day Deadline | 7 | 3 | -4 | 1% | 1% | 0% |
| 4. | Totals | 433 | 442 | +9 | | | |

24.   ***Supplemental Derivative Claimant Awards.***  Section G of the Overview of Derivative Claimant Process on the Settlement Website (https://www.nflconcussionsettlement.com/Docs/DerivativeClmtProcessOverview.pdf) explains how Supplemental Derivative Claimant Awards are handled.  As discussed in Paragraph 10 of this Status Report, we issued Notices of Supplemental Monetary Award to six Retired NFL Football Players.  None of those Supplemental Monetary Award Notices had a 1% offset for potential Derivative Claimant Awards.  Five Retired NFL Football Players had no registered Derivative Claimants associated with them, and the sixth Retired NFL Football Player had one registered Derivative Claimant, but she did not submit a Derivative Claim Package to share 1% of the Retired NFL Football Player's earlier Monetary Award and was not eligible for any portion of his Supplemental Monetary Award.  We have not yet issued any Notices of Supplemental Derivative Claimant Award.

### VIII.   <u>OTHER CLAIM PROCESSES</u>

25.     ***Handling of Attempted Assignments of Claims.***  On September 27, 2019, the

Court issued a Notice (Document 10858) directing us to streamline the process regarding

attempted assignments by Settlement Class Members of claims to third-party lenders.  Since

then, we have suspended the process for handling such assignment questions under the Rules

Governing Assignment of Claims and have been working with the Court and the Special

Masters on how these Rules will be modified.

26.     ***Petitions for Deviation from the Attorneys' Fee Cap.***  We have received

seven Petitions for Deviation, one of which was withdrawn.  The Court resolved two of the

remaining six Petitions for Deviation in conjunction with the Attorneys' Lien Dispute

Process; the other four are pending final resolution.  This is unchanged from Status Report

No. 7.

27.     ***Non-Medical Liens Process and Attorneys' Lien Disputes.***

(a) Table 16 summarizes Non-Medical Lien assertions, notices and disputes by Lien

type and reflects changes to those numbers since Status Report No. 7:

| Table 16 | | NON-MEDICAL LIENS SUMMARY | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | **LIEN TYPE** | **LIENS ASSERTED** | | | **NOTICES OF LIEN ISSUED BY CLAIMS ADMINISTRATOR** | | | **LIENS DISPUTED BY SETTLEMENT CLASS MEMBERS** | | |
| | | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE |
| 1. | Attorneys' | 1,123[21] | 1,165[22] | +42 | 431 | 450 | +19 | 289 | 290 | +1 |
| 2. | Child Support | 344 | 345 | +1 | 48 | 49 | +1 | 21 | 19 | -2 |
| 3. | Judgment | 63 | 64 | +1 | 15 | 15 | 0 | 9 | 9 | 0 |
| 4. | Tax | 51 | 54 | +3 | 3 | 3 | 0 | 0 | 0 | 0 |
| 5. | **Totals** | **1,581** | **1,628** | **+47** | **497** | **517** | **+20** | **319** | **318** | **-1** |

---

[21] These 1,123 Attorneys' Liens were asserted by 50 law firms.
[22] These 1,165 Attorneys' Liens were asserted by 51 law firms.

(b) Table 17 shows the status of Liens in the Attorneys' Liens dispute resolution

process:

| Table 17 | ATTORNEYS' LIENS IN DISPUTE RESOLUTION PROCESS[23] | | |
|---|---|---|---|
| PENDING | RESOLVED | | TOTAL |
| | BY AGREED WITHDRAWAL | BY COURT DETERMINATION | |
| 22 | 57 | 9 | 88 |

(c) Table 18 breaks down the Non-Medical Lien holdbacks by Lien type:

| Table 18 | NON-MEDICAL LIEN HOLDBACKS | | |
|---|---|---|---|
| | LIEN TYPE | MONETARY AWARDS AFFECTED | MONETARY AWARD AMOUNTS | LIEN HOLDBACKS |
| 1. | Attorneys' | 21 | $21,620,140.02 | $3,660,662.66 |
| 2. | Child Support | 1 | $58,520.87 | $9,451.99 |
| 3. | Judgment | 1 | $82,375.20 | $7,333 |
| 4. | Tax | 0 | $0 | $0 |
| 5. | Totals | 23 | $21,761,036.09 | $3,677,447.65 |

(d) Table 19 summarizes the Non-Medical Lien payments by Lien type:

| Table 19 | NON-MEDICAL LIEN PAYMENTS | | |
|---|---|---|---|
| | LIEN TYPE | MONETARY AWARDS AFFECTED | MONETARY AWARD AMOUNTS | LIEN PAYMENTS |
| 1. | Attorneys' | 61 | $78,567,735.08 | $5,322,535.09 |
| 2. | Child Support[24] | 12 | $11,437,991.60 | $486,492.42 |
| 3. | Judgment | 4 | $5,719,786 | $2,860,553.18 |
| 4. | Tax | 1 | $33,282.80 | $6,492.65 |
| 5. | Totals | 78 | $95,758,795.48 | $8,676,073.34 |

[23] We refer Attorneys' Liens Disputes to the Court after we issue a Notice of Duty to Resolve Lien Dispute.
[24] In addition to the 12 Child Support Lien payments from Monetary Awards, we made a $1,442.10 Child Support Lien payment from a Derivative Claimant Award on 2/24/2020.

## IX.   COMMUNICATIONS CENTER FOR THE PROGRAM

**28.**   *Our Contact Activity.*   Since our contact center opened on February 6, 2017, we have handled 77,294 total communications, including 49,634 calls made or received and 23,770 emails to us at our Claims Administrator email box.   Since Status Report No. 7, we handled 1,852 such total communications.   The most common topics of these communications have been general Settlement Program information, non-medical liens, payments, the BAP, and representation changes questions.

**29.**   *Law Firm Contacts.*   Our Law Firm Contacts are assigned to 544 different law firms or lawyers representing Settlement Class Members in the Program.   This is one more law firm or lawyer than we reported in Status Report No. 7.   The calls and emails handled by the Law Firm Contacts are part of the total contact activity described in Paragraph 28 above.

**30.**   *Newsletters.*   Since Status Report No. 7, we issued three more editions of our "Insights" newsletter (December 2019, January 2020 and February 2020).   We send the newsletters to unrepresented Settlement Class Members and lawyers by email or mail.   We also post them to the Settlement Website (under "Documents" click "Newsletters").   We invite all lawyers and Settlement Class Members to send us suggested topics for our newsletters.

**31.**   *Settlement Program Website.*   We regularly update the Settlement Website to reflect progress and changes to the Program.   We have made these changes since Status Report No. 7:

> (1) Added four new Court Orders to the Court Orders and Opinions page at https://www.nflconcussionsettlement.com/Court_Orders_Opinions.aspx.  These include: (a) Protective Order on Release of Confidential Information by Lawyers to the Special Investigator (Document 10905, filed December 5, 2019); (b) Order Appointing Mediator in Statute of Limitations Cases (Document 10914, filed December 11, 2019); (c) Order Extending Special Investigator's Appointment (Document 10937, filed January 6, 2020); and (d) Order Appointing Additional Special Master (Document 11022, filed March 5, 2020).

(2) Put three more documents on the Other Court Filings page at https://www.nflconcussionsettlement.com/Other_Court_Filings.aspx, including: (a) District Court Notice Clarifying Legal Status of Third-Party Funder Agreements (Document 10858, filed September 27, 2019); (b) Class Counsel's Motion for the Approval of Education Fund Programs and Memorandum in Support (Document 10970, filed January 23, 2020); and (c) Notice of Hearing on Class Counsel's Motion for Approval of the Education Fund Programs (Document 10974, filed January 27, 2020).

(3) Posted a Report of the Special Masters (Document 10915, filed December 11, 2019), Claims Administrator Status Report No. 7 (Document 10916, filed December 11, 2019) and BAP Administrator Status Report 4th Quarter 2019 (Document 10917, filed December 11, 2019) to the Status Reports page at https://www.nflconcussionsettlement.com/Status_Reports.aspx.

(4) Updated the Summary Report on the Reports & Statistics page (https://www.nflconcussionsettlement.com/Reports_Statistics.aspx) to include footnotes with details on Supplemental Monetary Awards in Sections 3, 4, 6, 7 and 11, and information about paid Derivative Claimant Awards in Section 7.

(5) Posted two new Alerts dated January 17, 2020, and January 30, 2020, discussing the annual inflation adjustment to Monetary Award Amounts and an Education Fund hearing on February 12, 2020 (https://www.nflconcussionsettlement.com/Alerts.aspx).

(6) Replaced the existing Monetary Award Grid and Overview of Derivative Claimant Process with new versions on the Reference Guides page at https://www.nflconcussionsettlement.com/Reference_Guides.aspx.

Since Status Report No. 7, the Program's Home page has had 17,616 more unique visits, giving us 464,580 total unique visits, coming from 190 countries and all 50 of the United States.  The top five downloaded documents since Status Report No. 7 in December 2019 were the Settlement Agreement (634 clicks), Monetary Award Grid (338 clicks), Diagnosis and Review Table (158 clicks), Payment Process Timeline (126 clicks) and Exhibit 1 Injury Definitions (96 clicks).

## X.    SPECIAL MASTERS

**32.    *Our Work with the Special Masters*.**  Since Status Report No. 7, we had six more regularly scheduled calls to discuss policy and operational issues, and have held 89 such calls with the Special Masters to date.  We have many other calls and exchange countless emails with

them to address issues as they arise.  The Special Masters have the final say in how the Settlement is implemented, subject only to the Court's oversight.

33.     *Program Rules.*  Since Status Report No. 7, we replaced the Rules Governing Assignment of Claims with the Rules Governing Third-Party Funder Voluntary Compromise Process, in accordance with the District Court's Notice entered September 27, 2019 (Document 10858).  All nine sets of Rules are available on the Settlement Website (under "Documents," click "Governing Rules") and on the online portals of law firms, lawyers and *pro se* Settlement Class Members.

34.     *Published Decisions.*  Since Status Report No. 7, the Special Masters have not issued any new decisions they designated for publication.  We post all such rulings to the Settlement Website (under "Documents," click "Special Master" below "Published Decisions"). The Special Masters have so far issued five published Monetary Award appeal decisions and nine Audit decisions (14 total such decisions).

### XI.     PROCEDURES AND FREQUENTLY ASKED QUESTIONS

35.     *Coordination with the Parties.*  We conducted five scheduled policy and operational issue calls with the Parties after Status Report No. 7 and have held 144 such calls in this Program since April 19, 2016.  We also have other calls, meetings and emails with the Parties on particular interpretation or operational issues that arise.  Where we do not have consensus among the Parties on an issue, we consult the Special Masters to determine the best practices approach, while still honoring the terms of the Settlement Agreement.

36.     *Frequently Asked Questions*.  Since Status Report No. 7, we have not added any new FAQs.  We revised FAQ 5 ("Who are the Special Masters?") to discuss a newly appointed Special Master named David Hoffman.  There are 352 FAQs in 15 categories.

"FAQs" is one of the options in the green menu bar on the Settlement Website.  These FAQs contain links to other tools and resource guides posted on the Settlement Website to help Settlement Class Members and their lawyers navigate the Program.  The banner at the top of the page contains a link to a printable PDF version of the full set of FAQs.  Note that when we add new FAQs, we place them within the existing set where it makes the most sense. This means that the numbering of FAQs within the set may change from time to time.

## XII.   REGISTRATION

**37.**   *Registration Submissions.*

(a) Sections 1 and 2 of the Summary Report on the Settlement Website cover Registration.  Table 20 here shows changes in the number of timely Registration submissions since our Status Report No. 7:

| Table 20 | TIMELY REGISTRATION SUBMISSIONS | | | |
|---|---|---|---|---|
| | **TYPE OF SETTLEMENT CLASS MEMBER** | **AS OF 12/2/19** | **AS OF 3/16/20** | **CHANGE** |
| 1. | Retired NFL Football Players | 15,915 | 15,909 | -6 |
| 2. | Representative Claimants | 1,328 | 1,334 | +6 |
| 3. | Derivative Claimants | 3,305 | 3,310 | +5 |
| **4.** | **Totals** | 20,548 | 20,553 | +5 |

The number of Retired NFL Football Players (Row 1) went down by six from Status Report No. 7 because they were replaced by Representative Claimants.  Of the 20,553 who we issued Registration notices to, we were able to confirm that 19,393 of them are Settlement Class Members under the Settlement Agreement, of whom 12,837 are Retired NFL Football Players eligible to participate in the BAP.  The other 1,160 persons have incomplete registrations or are not Settlement Class Members under the Settlement Agreement because of one or more of these reasons:  (1) they were on an Active Roster as of July 7, 2014; (2) they did not play "NFL Football" as defined in the Settlement Agreement; (3) they opted out

of the Settlement Program; (4) they did not provide us with the information or support required by the Settlement Agreement to register, after several notices from us and up to 150 days to turn it in; or (5) they tried to register as a Derivative Claimant but did not have a relationship with the Retired NFL Football Player by which they had a right under applicable state law to sue independently or derivatively.

(b) We are responsible for determining whether registrations submitted after August 7, 2017, meet one of the good cause exceptions specified in Section 4.2(c)(i) of the Settlement Agreement or can otherwise be accepted under the Rules Governing Registration Determinations and Appeals.  We have made determinations on 286 such Registrations and found that 155 (54%) of them presented good reasons to be allowed to register after August 7, 2017.  Table 21 shows the change in these numbers since Status Report No. 7:

| Table 21 | REGISTRATIONS SUBMITTED AFTER AUGUST 7, 2017 | | | |
|---|---|---|---|---|
| | STATUS | AS OF 12/2/19 | AS OF 3/16/20 | CHANGE |
| 1. | Accepted | 150 | 155 | +5[25] |
| 2. | Not Accepted | 131 | 131 | 0 |
| 3. | Totals | 281 | 286 | +5 |

(c) Settlement Class Members who disagree with our Registration determinations may object to them by sending us a challenge.  The NFL Parties also may challenge our good cause exception decisions.  We have received 377 challenges, which is one more than we reported in Status Report No. 7.  Table 22 explains these challenges and what happened to them:

---

[25] These were Derivative Claimants who qualified for a good cause exception under Section 4.2(c)(i) because the subject Retired NFL Football Player timely registered and the Derivative Claimants sought to register within 30 days of that Retired NFL Football Player's submission of a Claim Package.

| Table 22 | CHALLENGES OF OUR REGISTRATION DETERMINATIONS | | | | |
|---|---|---|---|---|---|
| | ISSUE | HOW MANY | WHO CHALLENGED | CHALLENGE SUCCESSFUL | CHALLENGE NOT SUCCESSFUL |
| 1. | Not a Retired NFL Football Player | 46 | Settlement Class Member | 23 | 23 |
| 2. | Not Eligible for the BAP | 245 | Settlement Class Member | 77 | 168 |
| 3. | Not Properly Registered | 53 | Settlement Class Member | 44 | 9 |
| 4. | Granted Good Cause Extension for Untimely Registration | 9 | NFL | 1 | 8 |
| 5. | Denied Good Cause Extension for Untimely Registration | 22 | Settlement Class Member | 5 | 17 |
| 6. | Not a Valid Derivative Claimant Relationship | 2 | Settlement Class Member | 0 | 2 |
| 7. | Totals | 377 | | 150 | 227 |

Those who are not successful in challenging Registration determinations to us may appeal our decision to the Special Masters.  Table 23 shows the appeals thus far and the Special Masters' rulings on them:

| Table 23 | APPEALS OF OUR DECISIONS ON REGISTRATION CHALLENGES | | | | |
|---|---|---|---|---|---|
| | ISSUE | HOW MANY | WHO APPEALED | DECISION UPHELD | DECISION OVERTURNED |
| 1. | Not a Retired NFL Football Player | 3 | Settlement Class Member | 3 | 0 |
| 2. | Not Eligible for the BAP | 26 | Settlement Class Member | 24 | 2[26] |
| 3. | Not a Valid Derivative Claimant Relationship | 1 | Settlement Class Member | 1 | 0 |
| 4. | Denied Good Cause Extension for Untimely Registration | 6 | Settlement Class Member | 5 | 1 |
| 5. | Totals | 36 | | 33 | 3 |

---

[26] These two were the result of the 53-Man Roster decision issued on December 5, 2017 (Document 9513).

38.     ***Centralized Process for Appointment of Representative Claimants and Derivative Claimant Representatives.***  The Special Masters have approved 414 petitions from persons to serve as the Representative Claimant of a deceased or legally incapacitated or incompetent Retired NFL Football Player and three petitions from Derivative Claimant Representatives to act on behalf of minor Derivative Claimants.  These are four new Representative Claimant approvals since Status Report No. 7.  There have been no new Derivative Claimant Representatives since Status Report No. 7.

## XIII.  <u>CONCLUSION</u>

39.     ***General Status.***  We have 192,806 documents (20,047 gigabytes, or 20 terabytes of registration and claims data), including notices we have issued, stored on Settlement Class Members, which is 3,499 more than when we filed Status Report No. 7. We have issued 37,428 notices (597 more since Status Report No. 7) of various kinds (Registration, claims, appeals, Audit, etc.) to 20,975 different persons since March 23, 2017, and developed over 100 different types of notices and forms for use in the Program.

Respectfully submitted,

**CLAIMS ADMINISTRATOR**

By: _____
Orran L. Brown, Sr.
Virginia State Bar No.:  25832
BrownGreer PLC
250 Rocketts Way
Richmond, Virginia  23231
Telephone:  (804) 521-7201
Facsimile:  (804) 521-7299
Email:  obrown@browngreer.com