IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB <br><br> MDL No. 2323 <br><br> Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS | |

## BAP ADMINISTRATOR STATUS REPORT – 2nd QUARTER 2020

1. The Garretson Resolution Group, Inc. d/b/a Epiq Mass Tort serves as the Baseline Assessment Program ("BAP") Administrator ("the Administrator") for the Settlement program in the above-captioned action.[1] Since its appointment by the Court to serve in this role, the Administrator has worked diligently with Class Counsel and Counsel for the NFL Parties ("the Parties") to meet its responsibilities under the Settlement Agreement. The Administrator submits this Status Report to provide an update to the Court on the status of the Administrator's work implementing the BAP.

*Effects of COVID-19 Pandemic*

2. As a result of the COVID-19 pandemic, the BAP has experienced unusually heavy appointment cancellations by both Qualified BAP Providers and Retired NFL Football Players. During the 2nd Quarter of 2020, Qualified BAP Providers cancelled 163 appointments scheduled to take place by the end of the quarter, with an additional 134 appointments scheduled to take place

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.

in that period cancelled by Retired NFL Football Players.  During that same period, 120 Retired NFL Football Players attended BAP appointments, with an additional 36 scheduled to attend appointments by the end of the quarter.

3.     At the time of submission of this report, the Administrator is communicating with all Qualified BAP Providers and Retired NFL Football Players with appointments scheduled during the coming weeks and months to confirm their intention to complete appointments, to minimize the disruptions associated with appointment cancellations, to prepare for resumption of affected BAP activities as soon it is feasible to do so, and to assure everyone associated with the BAP that there will be no negative consequences for appointment cancellations resulting from COVID-19.  The Administrator continues to schedule appointments for later in 2020 in anticipation of increased Retired NFL Football Player and Qualified BAP Provider availability.

*Maintaining the Qualified BAP Provider Network*

4.     In implementing the BAP, the Administrator is responsible for establishing and maintaining a network of Qualified BAP Providers to administer the specified baseline assessment examinations under the BAP and authorized medical services under the BAP Supplemental Benefits program.

5.     As of June 15, 2020, the Administrator has contracted with 328 Qualified BAP Providers in fifty-two metropolitan areas across the United States.  The Administrator continues to diligently enroll Qualified BAP Providers to expand the BAP network wherever necessary to ensure sufficient depth of coverage and improve program efficiencies.  For cities without a sufficient number of contracted Qualified BAP Providers to fully meet demand, the Administrator continues to seek alternate arrangements to ensure timely appointments for Retired NFL Football Players.  In the previous quarter, the Administrator accommodated demand for clinical

neuropsychology appointments in cities with limited capacity by bringing Qualified BAP Providers from other cities with excess provider capacity to administer baseline assessment examinations. Specifically, the Administrator has utilized this approach in several cities with high concentrations of Retired NFL Football Players, including Dallas, Seattle, Tallahassee, Little Rock, and Jackson, MS.

*Baseline Assessment Examinations Scheduled and Attended to Date*

6. The BAP offers a two-part baseline assessment examination, consisting of a clinical neuropsychology appointment lasting an average of six to eight hours and a basic neurological examination lasting approximately one hour. The Administrator's scheduling process is intended to ensure that Retired NFL Football Players are scheduled at a provider location, date, and time acceptable and convenient to them. Typically, the Administrator attempts to schedule the clinical neuropsychology appointment so that it occurs first, and far enough in advance of the neurology appointment that the clinical neuropsychologist's report is available for review during the neurology appointment.

7. As of June 15, 2020, the Claims Administrator of the Settlement program determined that 12,837 Retired NFL Football Players are eligible to participate in the BAP. Of these 12,837 individuals, the BAP Administrator has received requests to schedule baseline assessment examinations from 7,495 Retired NFL Football Players directly or through their attorneys. This represents 58.4% of BAP-eligible Retired NFL Football Players.

8. Of the 7,495 Retired NFL Football Players who have requested appointments, the Administrator has offered one or more appointments with Qualified BAP Providers to 7,303 of them (97.4%). Retired NFL Football Players who have requested appointments have waited a median time of 15 days until the Administrator secured and offered a neuropsychology

appointment (consisting of a specific date, time, and location) from a Qualified BAP Provider neuropsychologist.  To ensure the neuropsychology appointment takes place before the neurology appointment, the Administrator seeks to confirm with the Retired NFL Football Player or his attorney that the Retired NFL Football Player accepts the offered neuropsychology appointment before securing a neurology appointment.  As a result of these activities, the median time between the initial offer of a neuropsychology appointment and the initial offer of a neurology appointment is 67 days.  Median time from the initial request until the actual neuropsychology appointment is 108 days; the median time from request until the actual neurology appointment is 179 days.  Table 1 summarizes wait times as of June 15, 2020.

Table 1.  Appointment Scheduling Wait Times

| Metric | Median in Days |
| --- | --- |
| Time from request to offered neuropsychology appointment | 15 |
| Time from offered neuropsychology appointment to offered neurology appointment | 66 |
| Time from request to neuropsychology appointment date | 108 |
| Time from request to neurology appointment date | 179 |

9. As of June 15, 2020, 6,363 Retired NFL Football Players (84.9% of those who have requested appointments) have attended a total of 12,544 appointments.  This number consists of 5,606 Retired NFL Football Players (74.8%) who have attended two or more[2] appointments and 757 Retired NFL Football Players (10.1%) who have attended one appointment.

10. Of the 7,303 Retired NFL Football Players for whom the Administrator has scheduled or offered one or more appointments, 6,480 (86.5% of those who have requested appointments) currently have one or more appointments scheduled (including appointments that have already taken place). Of the 6,480 Retired NFL Football Players with scheduled

---

[2]  Certain Retired NFL Football Players have attended more than two appointments because they and/or the Qualified BAP Providers have requested to break up the clinical neuropsychology appointments, which the Administrator has accommodated.

appointments, 5,779 (77.1% of all who have requested) have been scheduled for both neuropsychology and neurology appointments, and 701 (9.4% of all who have requested) have been scheduled for one appointment. For the latter group, the Administrator will continue to work to promptly schedule these Retired NFL Football Players' second appointments.

11. Of the 7,303 Retired NFL Football Players for whom the Administrator has scheduled or offered one or more appointments, 823 have had at least one appointment scheduled or offered to them in the past but did not accept or attend. These 823 Retired NFL Football Players have had a total of 3,316 rejected, cancelled, or missed appointments (an average of 4.0 each). Table 2 breaks down the reasons and sources of those cancellations (note that these percentages may not add up to exactly 100% due to rounding).

Table 2. Cancellation Reasons – Players with No Active Appointments

| Cancellation Reason | Source | | |
| --- | --- | --- | --- |
| | **Player** | **Provider** | **Administrator** |
| Confirmed, then Cancelled | 13.0% | 5.6% | 1.0% |
| Rejected or Withdrawn | 55.6% | 14.1% | 3.0% |
| Missed | 7.6% | 0.0% | 0.0% |

More than half of these Retired NFL Football Players reside in or near twelve cities – Houston, Atlanta, Los Angeles, Dallas, Miami, New Orleans, Phoenix, Tampa, Jacksonville, Washington, DC, San Francisco, and Charlotte – all of which are among the cities with the highest populations of Retired NFL Football Players. The median time from request to clinical neuropsychology appointment offered among Retired NFL Football Players with no active appointments in these cities ranges from four days in Houston to 45 days in New Orleans, with an average of 18 days. In all such cases, the Administrator continues to work with Qualified BAP Providers, and Retired NFL Football Players or their attorneys, to ensure Retired NFL Football Players receive

appointments that meet their preference for location, provider, and schedule, while accommodating the Qualified BAP Providers' schedules.

12. Finally, 192 (2.6%) Retired NFL Football Players have requested baseline assessment examinations but have not yet had appointments scheduled or offered to them. Of these 192 Retired NFL Football Players, 144 (75.0%) verbally requested participation in the BAP in the days immediately preceding their deadline for participation in the BAP but have been unresponsive to the Administrator's requests to submit a signed BAP HIPAA Authorization, which is the next step in the scheduling process (*see* paragraphs 13 through 15 below for additional details). Table 3 summarizes Retired NFL Football Players with requests and appointments scheduled through June 15, 2020.

**Table 3. Summary of Requests and Scheduling Activity to Date**

| Status | Number | % of Requested |
|---|---|---|
| Players requesting participation in BAP | 7,495 | 100.0% |
|     Players offered one or more appointments | 7,303 | 97.4% |
|         Players with two appointments currently scheduled | 5,779 | 77.1% |
|         Players with one appointment currently scheduled | 701 | 9.4% |
|         Players with appointments previously offered but none attended or currently scheduled | 823 | 11.0% |
|     Players waiting for their first offered appointments | 192 | 2.6% |

*Note: Indented rows are subsets of rows above.*

***Defining "Participation in the BAP"***

13. Section 5.4 of the Settlement Agreement provides for a 10% Monetary Award offset for any Retired NFL Football Player who "chooses not to participate in the BAP" and then receives a Qualifying Diagnosis on or after the Effective Date, unless the Qualifying Diagnosis is ALS, or any Qualifying Diagnosis has been made for that Retired NFL Football Player prior to his

6

BAP deadline.  A Retired NFL Football Player will be deemed to have participated in the BAP if he attends one or more BAP appointments (either clinical neuropsychology or neurology), although all Retired NFL Football Players are strongly encouraged to attend both appointments. In addition, Retired NFL Football Players who had not yet attended one or more of their BAP appointments, and whose deadline to participate in the BAP, as defined by Section 5.3 of the Settlement Agreement, had passed were given one final opportunity to schedule and attend BAP appointments if they met all of the following criteria:

    a.  Timely requested to participate in the BAP;

    b.  Had not been a "no-show" for more than one scheduled BAP appointment: <u>and</u>

    c.  Had their appointment request closed due to lack of interest, lack of cooperation with the Administrator, or failure to submit a signed BAP HIPAA Authorization.

    14.  Of the 7,463 Retired NFL Football Players who have requested participation in the BAP, 253 met the criteria described above:  109 had their requests closed due to continued lack of response or cooperation, and 144 had their requests closed due to failure to submit a signed BAP HIPAA Authorization (*see* paragraph 12 above).  The Administrator, in coordination with Class Counsel, notified all Retired NFL Football Players who met the above criteria (or their attorneys) in March 2020 that the Retired NFL Football Players or their attorneys had 45 days to respond to said notice and either re-engage in the scheduling process (for those 109 whose requests had been closed due to lack of interest or cooperation) or submit a signed BAP HIPAA Authorization (for those 144 whose requests had been closed due to a failure to submit a signed BAP HIPAA Authorization).

15. Of the 109 whose requests had been closed due to lack of interest or cooperation, six contacted the Administrator to reopen their BAP requests; all are currently in the process of having appointments scheduled for them. Of the 144 who had verbally requested participation but not submitted a signed BAP HIPAA Authorization, seven returned signed HIPAA Authorizations and are now in the scheduling process. The remaining Retired NFL Football Players in both groups are now classified as non-participants in the BAP and the offset will apply.

16. In addition, the Administrator is permitting participation in the BAP by a Retired NFL Football Player who had not previously participated in the BAP, submitted a Monetary Award claim prior to his deadline to participate in the BAP, and had that Monetary Award claim denied after his deadline to participate in the BAP expired, where that Retired NFL Football Player contacts the Administrator to request participation in the BAP within 45 days of receiving his denial notice, even if he intends to appeal the denial.

.

*Providing Reports from Baseline Assessment Examinations*

17. As part of its efforts to ensure prompt and accurate production of medical records and reports, the Administrator conducts training sessions and offers guidance materials to each Qualified BAP Provider. The Administrator is also in regular contact with Qualified BAP Providers as questions or issues arise that may slow the production of medical records and reports. Importantly, to provide incentives for Qualified BAP Providers to submit medical records and reports in a timely manner, the Administrator included a provision in all of its Qualified BAP Provider contracts that makes provider payment contingent on the Qualified BAP Providers submitting such documents.

18. Since inception of the BAP, the Administrator has received BAP-generated medical records and reports from at least one specialist (neurologist or clinical neuropsychologist)

8

for 6,329 Retired NFL Football Players, including records and reports from both specialists for 5,349 Retired NFL Football Players, and records from one specialist for 980 Retired NFL Football Players.

19. After the Administrator receives the medical records and reports, the Administrator reviews them for accuracy and completion, particularly against the requirements of the Settlement Agreement.

20. When either the records or reports are incomplete, the Administrator works with the Qualified BAP Provider to ensure completion. The most common reasons for such follow-ups with providers include:

> a. failure to clearly state what, if any, Neurocognitive Impairment level the Retired NFL Football Player qualified for, as defined by the Settlement Agreement;
>
> b. omission of references to corroborating evidence, as required for diagnosing Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment under the Settlement;
>
> c. failure to adequately address test validity and/or functional impairment, two topics required to be reported by clinical neuropsychologists as part of their reports; and
>
> d. failure to meet other administrative requirements as articulated in the Clinician's Interpretation Guide promulgated pursuant to Exhibit A-2 of the Settlement Agreement.

21. Of the 5,349 Retired NFL Football Players for whom both reports have been submitted by Qualified BAP Providers, the Administrator has completed its review process for 4,883 and has published (or is in the process of publishing) them to the Retired NFL Football

Player's online portal. Table 4 shows the status for Retired NFL Football Players whose reports have been submitted to the Administrator as of June 15, 2020.

**Table 4. BAP Report Review Status**

| Status | Number | % of Players with Both Appts Attended |
|---|---|---|
| Players who have attended both appointments | 5,606 | 100.0% |
| Players with both reports submitted to the Administrator | 5,349 | 95.4% |
|     Players with review completed and approved to publish to portal | 4,883 | 87.1% |
|     Players with reports awaiting initial review | 0 | 0.0% |
|     Players with reports in follow up status with Qualified BAP Providers | 440 | 7.8% |
|     Players with reports undergoing review by the Appeals Advisory Panel due to conflicting diagnoses between Qualified BAP Providers (per the Settlement Agreement) | 26 | 0.5% |

*Note: Indented rows are subsets of rows above.*

22. As of June 15, 2020, BAP examinations have resulted in 172 diagnoses of Level 1 Neurocognitive Impairment, 154 diagnoses of Level 1.5 Neurocognitive Impairment, and 103 diagnoses of Level 2 Neurocognitive Impairment, with 4,454 Retired NFL Football Players receiving no diagnosis.

*BAP Supplemental Benefits*

23. Under the Settlement Agreement, a Retired NFL Football Player diagnosed with Level 1 Neurocognitive Impairment is eligible to receive BAP Supplemental Benefits related to the Retired NFL Football Player's impairment in the form of medical treatment, counseling, and/or examination by Qualified BAP Providers, including pharmaceuticals if medically appropriate and prescribed by a Qualified BAP Provider.

24. The Settlement Agreement required Class Counsel and Counsel for the NFL Parties, in consultation with the BAP Administrator, to establish the maximum per-player benefit

under the BAP Supplemental Benefits on the first anniversary of the commencement of the BAP. Accordingly, on June 6, 2018 (the first anniversary of the commencement of the BAP), Co-Lead Class Counsel and Counsel for the NFL Parties, in consultation with the BAP Administrator, established a $35,000 maximum per-player benefit under the BAP Supplemental Benefits.  Given the number of Retired NFL Football Players eligible for the BAP at that time, this amount was determined to be the maximum benefit that would ensure sufficient funds to pay for all possible baseline assessment examinations, which in turn, ensured the overall sufficiency of the BAP Fund. Co-Lead Class Counsel and Counsel for the NFL Parties agreed to revisit this amount after June 6, 2019, the date when eligibility for baseline assessment examinations expired for Retired NFL Football Players born on or before June 6, 1974.  The Administrator is currently performing an analysis to support this effort.  As of June 15, 2020, the maximum amount of funds billed for covered services to any one participant's account in the BAP Supplemental Benefits is $13,089.55.

25. Once a Retired NFL Football Player's diagnosis of Level 1 Neurocognitive Impairment is finalized, the Administrator contacts the Retired NFL Football Player (or, in the case of a represented Retired NFL Football Player, his attorney) to inform him of his eligibility and schedule an orientation.  Given that Retired NFL Football Players eligible for the BAP Supplemental Benefits suffer from moderate cognitive impairment, the Administrator seeks to include a family member or close friend of the Retired NFL Football Player during scheduling who can help the Retired NFL Football Player maximize program benefits.  During this orientation, the Administrator outlines the benefits offered and solicits the Retired NFL Football Player's choice of a Qualified BAP Provider neurologist to perform an initial consultation.  The purpose of the initial consultation is to review the results of the baseline assessment examination and determine a treatment and evaluation plan for the Retired NFL Football Player.  Table 5 shows

the status of Retired NFL Football Players who have been notified of their eligibility for participation in the BAP Supplemental Benefits, as of June 15, 2020.

**Table 5. BAP Supplemental Benefits Participation Status**

| Status | Number |
|---|---:|
| Retired Players/Attorneys notified of BAP Supplemental Benefits eligibility | 167 |
| Awaiting attorney response to schedule orientation | 11 |
| Retired Players in scheduling process for orientations | 15 |
| Retired Players with upcoming orientations scheduled | 2 |
| Retired Players with orientation complete | 139 |
| Awaiting provider selection by Retired Player | 48 |
| Contracting with selected provider | 5 |
| In process of scheduling initial consultation | 8 |
| Initial consultation upcoming | 1 |
| Initial consultation attended/receiving ongoing benefit | 77 |

*Note: Indented rows are subsets of rows above.*

26.   During the fourth quarter of 2019, the Administrator initiated a pilot program to evaluate the feasibility of offering cognitive rehabilitation therapy, a treatment that had been requested by several Settlement Class Members and their treating Qualified BAP Providers. As of June 15, 2020, the Administrator had contracted with four Qualified BAP Providers to participate in the pilot program. In addition, twenty Retired NFL Football Players have requested to participate in the pilot. As with all other BAP efforts, the progress of this pilot program will be affected by the (as yet unknown) duration of the COVID-19 pandemic.

Respectfully submitted,

BAP ADMINISTRATOR

By: *[signature]*

Sylvius von Saucken
Vice President
Epiq Mass Tort
9144 Arrowpoint Boulevard, 4th Floor
Charlotte, NC  28173