# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>    Plaintiffs,<br><br>    v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>    Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

## FIFTH VERIFIED PETITION OF CLASS COUNSEL CHRISTOPHER A. SEEGER FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS

Pursuant to this Court's May 24, 2018 Explanation and Order (ECF No. 10019),[1] Class Counsel Christopher A. Seeger ("Class Counsel" or "Seeger Weiss") respectfully submits this

---

[1] For the purposes of this and each of the prior pre-Effective Date Fee Petitions, on May 7, 2020, the Third Circuit affirmed the Court's April 5, 2018 aggregate common benefit fee award and related orders, including the Court's January 16, 2019 Order granting the First Verified Petition for Post-Effective Date Common Benefit Attorney's Fees and Costs (ECF No 10378), save a limited remand of the Court's May 24, 2018 Order allocating the aggregate common benefit fee award as concerns the fee awarded to one group of Settlement objectors, which is not pertinent here. *In re Nat'l Football League Players' Concussion Injury Litig.*, ___ F. App'x ___, No. 18-

Fifth Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs, covering common benefit work performed and expenses incurred for the period December 1, 2019 to May 31, 2020.  The Court granted the First Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs on January 16, 2019.  ECF No. 10378.  In addition to this Fifth Post-Effective Date Fee Petition being filed this date, the Court still has before it the Second Verified Petition for an Award of Post-Effective Date Attorneys' Fees and Costs, filed on January 10, 2019 (ECF No. 10374); the Third Verified Petition for an Award of Post-Effective Date Attorneys' Fees and Costs, filed on July 25, 2019 (ECF No. 10767); and the Fourth Verified Petition for an Award of Post-Effective Date Attorneys' Fees and Costs ("Fourth Post-Effective Date Fee Petition, filed on February 5, 2020 (ECF No. 10986).

Based on the work undertaken from December 1, 2019, the first date after the close of the time period covered by the Fourth Post-Effective Date Fee Petitions,[2] to May 31, 2020, Seeger Weiss has dedicated over 1444 hours for the common benefit of the Settlement Class, resulting in a lodestar (calculated using the blended rates set by the Court, ECF No. 10019 at 7 n.4) of $998,512.99, and has incurred $155,031.53 in associated expenses.

At this point in the Settlement's effectuation phase, it appears that the substantial start-up activity that had marked the first Post-Effective Date Fee Petitions is largely completed.  As with the prior, Fourth Post-Effective Date Fee Petition, the work undertaken and expenses incurred during the relevant time period are primarily work and expenditures that are and will be continuing in nature. That is, the work of Class Counsel dedicated to overseeing and maintaining the

---

2012, 2020 WL 2214131, at *3-6 (3d Cir. May 7, 2020); see ECF No. 11075 (Third Circuit's Mandate).

[2] The Fourth Post-Effective Date Petition covered the period from June 1, 2019 to November 30, 2019.  ECF No. 10986 at 1.

2

Settlement to ensure that the benefits promised through the MAF and the BAP are delivered to the football players and their families. Indeed, although the preceding implementation-phase fee petition covered increased activities associated with the then-approaching deadline for BAP examinations for older players and the deadline for the submission of Claims Packages for pre-Effective Date Qualifying Diagnoses, this fee petition covers a time with little or no increased activity associated with these two key deadlines.

**SUMMARY OF WORK COMPLETED – DECEMBER 1, 2019 TO MAY 31, 2020**

Among the ongoing efforts undertaken during the time period relevant to this petition were: addressing several "open issues" in the MAF[3] program to ensure that players with Qualifying Diagnoses receive Monetary Awards with minimal challenge and delay; ensuring the benefits of the BAP Program reach the players, including eligibility for free BAP examinations for those players whose MAF claims had been denied but whose deadlines for BAP examinations had passed while their claim was pending; support of Settlement Class Members through the Claims Process, including on administrative appeals; ongoing support of unrepresented Class Members and Class Members' IRPAs; and efforts to set up the Education Fund (specifically, continued negotiations with the education programs and research institutions contemplated for the Fund, and presentation of the projects for approval by the Court). Similarly, Class Counsel submitted statements in support of Settlement Class Members whose claims were the subject of appeals, and

---

[3] Given the Court's extensive familiarity with the Settlement Agreement and Settlement Program, Class Counsel assumes that it is unnecessary at this point to define the various terms and acronyms related to them, and accordingly adopts by reference the acronyms and shorthand definitions previously used.

responded to Objections taken to this Court by the NFL to certain decisions of the Special Masters, to ensure that the spirit and terms of the Settlement Agreement are followed.

As of June 15, 2020, over 20,500 Class Members had registered for the Settlement Program, over 3,000 Claim Packages had been submitted, 1,157 Notices of Monetary Awards had been issued, worth over $788 million, and over $692 million in awards paid[4]; and BAP examinations have been scheduled for 7,303 players with over 12,500 appointments already attended. ECF Nos. 11115 at 3-4 (BAP Administrator Status Report – Second Quarter 2020), 11116 at 2-5 (Claims Administrator Status Report No. 9).

These successes are not mere happenstance. Seeger Weiss has worked tirelessly in coordination with the Claims and BAP Administrators, the Special Masters, and the Court—and both cooperatively with and, as circumstances have warranted, against the NFL—to facilitate and oversee the Settlement. The biweekly call that Seeger Weiss hosts with the NFL, the Claims Administrator, the BAP Administrator, and the Lien Resolution Administrator, where ongoing issues and progress in resolving them are hashed out, has been a central component of these efforts. Approximately 147 of these biweekly calls had taken place by the May 31, 2020 closing date of this petition. Work on the Settlement has been a daily commitment, requiring the dedication of several Seeger Weiss attorneys and paraprofessionals, and has focused on certain key areas that are summarized in the sections that follow.

---

[4] The Settlement Agreement provides for Supplemental Monetary Awards if a player's condition worsens and he receives a later, more severe Qualifying Diagnosis. ECF No. 6481-1 at 37 (Settlement Agreement § 6.8). Eight of these Notices are Notices of Supplemental Monetary Awards. ECF No. 11116 at 12 (Claims Administrator Status Report No. 9).

Oversight of the Claims Process and Monetary Award Determinations.

Seeger Weiss devoted significant time to actively monitoring and supporting the Claims Process to ensure that Class Members are receiving the benefits that were negotiated on their behalf. This oversight included ongoing reporting and requests for information from the Claims Administrator and reviewing each claim determination by a member of the AAP or the Claims Administrator to ensure that they are correctly following the terms of the Settlement Agreement. Class Counsel's continuing engagement with Settlement Class Members and their counsel provided further bases and guidance on the needs of the Claims Process.

During the period covered by this Fee Petition, Class Counsel, in coordination with the Claims Administrator and the NFL, endeavored to resolve a number of "Open Issues" regarding the implementation of the MAF claims process. The "Open Issues" engaged with during the period of time covered by this petition covered a range of topics, some of which were also the subject of appeals of Monetary Award Determinations (discussed below). As with the appeals, Class Counsel sought to ensure that the procedures and guidance developed and adopted by the Claims Administrator lead to payment of all eligible Claims. Key among these "Open Issues" were: limiting the use of neurocognitive screening tests to challenge or invalidate Qualifying Diagnoses; the relevance of continued driving and employment to review of Claims Packages; protecting the clinical judgment of the Qualified MAF Physicians and BAP Providers in matters such as the estimation of a player's premorbid IQ and determination whether neuropsychological testing is required when a player has a Qualifying Diagnosis of Level 2 Neurocognitive Impairment; and limitation on the use of any validity measures of neuropsychological testing beyond those expressly negotiated as part of the Settlement Agreement, and requiring a full *Slick* analysis if such validity measures are the basis for the denial of a Claim. In addition, Class Counsel provided input

to the Claims Administrator as the latter developed guidance for the Qualified MAF Physicians, the AAP and the AAPC regarding some of these Open Issues.

Moreover, Class Counsel continues to support the petitions of Representative Claimants for Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis but who died before January 1, 2006. Pursuant to the Settlement Agreement, before these claims can proceed to review on the merits, the Court needs to determine whether they are timely under the applicable state's law. *See* ECF No. 6481-1 at 35 (Settlement Agreement § 6.2(b)). Since the Fourth Post-Effective Date Fee Petition, Cass Counsel continued to submit Statements in support of the Representative Claimants' submissions that such claims are timely under the Settlement Agreement. The briefing for all claims (except one) involving Retired NFL Football Players diagnosed with a Qualifying Diagnosis but who died before January 1, 2006 has been completed. The focus of the process has turned to potential resolution between these Representative Claimants and the NFL of these claims. Class Counsel is prepared to support the efforts of the Representative Claimants in these efforts, and will endeavor to reach an agreement on resolving these pending claims.

Furthermore, just as it had worked to ensure inclusion of protections for the interests of Class Members in the audit rules and procedures, Class Counsel has remained engaged in supporting Class Members facing ongoing audits of claims. In particular, Class Counsel has submitted Statements regarding the Claims Administrator's referrals to the Special Masters and replies in those referrals accepted by the Special Masters, to make certain that meritorious claims are not unduly caught up in the audit process and to ensure that the focus of any inquiry be on only those parties (e.g., medical and legal professionals) that may have engaged in suspicious practices. More generally, Seeger Weiss monitors the progress of audit investigations and provides formal

input at each juncture. During this period, all of the longer-standing audits of law firms, medical providers and others, which had been referred to the Special Masters were concluded with decision by the Special Masters. Similarly, Class Counsel continued to monitor the status of the investigations undertaken by the Court-Appointed Special Investigator, who completed all the pending investigations prior to the end of his term of appointment on May 30, 2020.[5]

As in the prior implementation periods, Class Counsel has worked to protect Class Members' interests (and will continue to do so) by monitoring the wider operation of the Settlement Program and addressing with the Claims Administrator all manner of issues as they arise.

<u>Appeals of Claims Determinations</u>.

Seeger Weiss has continued to monitor all Monetary Award determinations to provide guidance to Class Members. In those cases where an appeal from a determination is taken, either by a Class Member or the NFL, Class Counsel determines whether to file a Statement in support of the Class Member's position. Through this active engagement, Seeger Weiss' goal is to make sure that Class Members' entitlement to benefits is not restricted or foreclosed outright by incorrect interpretations of the Settlement Agreement or by meritless appeals taken by the NFL.

Whether through submitting Statements in support of a Class Member's appeal or through direct support of unrepresented Class Members and IRPAs, Class Counsel pursued, among other things: arguing against the denial of claims for Level 1.5 and Level 2 Neurocognitive Impairment based on validity thresholds that were not negotiated as part of the Settlement Agreement; ensuring

---

[5] The Special Investigator was initially appointed to a one-year term on December 10, 2018 (ECF No. 10355), which was extended to March 30, 2020 on January 6, 2020 (ECF No. 10937) and further extended for two additional months on March 30, 2020, to end on May 30, 2020 (ECF No. 11037).

appropriate deference is given to the Qualified MAF Physicians and BAP Providers, including in estimations of players' premorbid IQs; limiting the use of screening tests (such as the Mini-Mental State Examination ("MMSE") and Montreal Cognitive Assessment ("MoCA")) to rule out a Qualifying Diagnosis of Level 1.5 or 2 Neurocognitive Impairment; curtailing the misuse of other validity measures (such as those in the Minnesota Multiphasic Personality Inventory ("MMPI")) without a full analysis under the *Slick* criteria[6]; and ensuring that the governing "generally consistent" standard negotiated by the Parties is followed by the AAP.

Similarly, Class Counsel opposed the NFL's objections to two decisions by the Special Master where the Special Master had not consulted with a member of the AAP or an AAPC. Class Counsel sought to protect these Monetary Awards from this sort of collateral attack by the NFL by, *inter alia*, pointing out that the Court had earlier affirmed the discretion of the Special Masters to choose whether or not consultation with the AAP or an AAPC is warranted in any given appeal.

BAP Examinations and Supplemental Benefits.

Beyond its role in helping to maintain the BAP network of Providers, Seeger Weiss continues to monitor the BAP to ensure that examinations are scheduled efficiently and appropriate standards are followed. Moreover, in coordination with the BAP Administrator, Class Counsel has continued to roll out BAP Supplemental Benefits for those Retired NFL Football Players whose BAP examinations yield a diagnosis of Level 1 Neurocognitive Impairment. These efforts

---

[6] The so-called *Slick* criteria are standards for detecting exaggeration or fabrication of cognitive dysfunction, named after the lead author of a ground-breaking 1999 study. *See* D.J. Slick *et. al.*, *Diagnostic criteria for malingered neurocognitive dysfunction: proposed standards for clinical practice and research*, 13(4) Clinical Neuropsychology 545-61 (Nov. 1999).

include monitoring initial orientation of such eligible players, initial consultations, and the expansion of covered services to allow each player to receive the care most appropriate to his condition.

In addition, with the passage of the initial deadline for many of the eligible older Retired NFL Football Players (those born before June 6, 1974) to participate in the BAP, Class Counsel ensured that their benefits under the Settlement Agreement were protected. First, although not mandated by the Settlement Agreement, Class Counsel worked to guarantee that players whose initial MAF Claims were denied, but whose deadline for their BAP examinations had passed while their claims were pending, could still participate in the BAP and receive their free neurological and neuropsychological examinations (and not face a possible 10% deduction on any future Monetary Award). This was particularly beneficial to those players who are already suffering from neurocognitive decline, but were found not to qualify for a Monetary Award.

Second, the Settlement Agreement provides for a 10% offset for eligible players who "chose not to participate" in the BAP before their deadline, in recognition of the importance of an established neurocognitive baseline to measure potential, future decline. *See* ECF No. 6481-1 at 35 (Settlement Agreement § 5.4). Working in coordination with the BAP Administrator, Class Counsel ensured that those players whose deadlines had passed, but who had not yet actually scheduled or attended both of their BAP appointments, be given the opportunity to do so. Class Counsel notified all unrepresented Retired Players who had initially contacted the BAP Administrator but had not yet scheduled and/or attended both BAP appointment that they were still eligible to participate in the BAP program but that they needed to take action in order to maintain that eligibility. Class Counsel also worked with the BAP Administrator to ensure that IRPA's also were provided similar notice regarding maintaining BAP eligibility for their clients.

As of the BAP Administrator's latest Status Report, 172 players had received a Level 1 Neurocognitive Impairment diagnosis and were either in the process of selecting the BAP Provider who will be overseeing their treatment and benefits, or were already receiving their Supplemental Benefits. ECF No. 11115 at 10.[7] These benefits include a range of therapeutics, pharmaceuticals, and diagnostic and imaging services, and require additional contracting with BAP Providers as well as with those entities outside of the BAP network of providers, who will provide many of the services. Class Counsel has also monitored these retention efforts by the BAP Administrator.

<u>Fielding Communications from, and Supporting, Class Members and Individual Counsel</u>.

Seeger Weiss continues to receive (and address) hundreds of telephone calls and emails each month from Class Members and IRPAs. The inquiries involve all manner of issues concerning the Settlement, including the Claims Process, matters relating to post-Effective Date examinations through the BAP and MAF, liens, and appeals. Seeger Weiss handles every inquiry and has assisted numerous Class Members in successfully navigating the Claims Process. Class Counsel has further assisted unrepresented Class Members in gathering necessary documents, including medical records, and completing their claims packages so that their claims can be promptly reviewed and, where qualifying, approved. Class Counsel also frequently speaks and corresponds with IRPAs concerning, *inter alia*, questions they have about the Claims Process, Appeal Process and Audit Process, the Settlement's Frequently Asked Questions (which guide the Claims Process), and otherwise offering support to ensure that qualifying claims are properly presented and paid.

---

[7] Additionally, 154 players had received diagnoses of Level 1.5 Neurocognitive Impairment and 103 players received diagnoses of Level 2 Neurocognitive Impairment through the BAP. *Id.*

Education Fund and Medical Research Data.

Class Counsel and the NFL continued exploring organizations that support safety and injury protection in football and may be appropriate recipients of proceeds from the $10 million Education Fund that was established as part of the Settlement.  *See* ECF No. 6481-1 at 68 (Settlement Agreement, art. XII). Class Counsel continued its engagement with the Korey Stringer Institute, to set up the innovATe program through the University of Connecticut.  The innovATe program will identify and engage with select public high school districts to promote safety and injury prevention in football in youth football, including the involvement of Retired NFL Football Players as "Ambassadors" with these school districts.

Similarly, the Settlement Agreement contemplated that the medical records and information that would be generated through the free BAP examinations provided to consenting and eligible Retired NFL Football Players would be made available for medical research through a Medical Information Research Database. *Id.* at 33 (Settlement Agreement § 5.10(a)).[8]   Class Counsel continued efforts with the BAP Administrator, the Claims Administrator, its own expert, the university partner, and the NFL to establish the Medical Information Research Database that will gather, systematically organize, and maintain the medical information that the BAP Administrator is collecting from the BAP Examinations.

Additionally, the Settlement Agreement provides that a portion of the Education Fund be used for "the education of Retired NFL Football Players regarding the NFL CBA Medical and Disability Benefits programs and other educational initiatives benefitting Retired NFL Football."

---

[8]   As further provided in the Settlement Agreement, player confidentiality will be maintained.

11

*See id*. at 68 (Settlement Agreement, § 12.1).  Class Counsel worked with the NFL to identify the scope and nature of such outreach efforts to the players.

On January 23, 2019, Class Counsel filed a formal motion for Court approval of the projects and the organizations that will be engaged, and for authorization of an initial release of a portion of the Education Fund to commence both programs and the initiative to educate players about the range of benefits available to them.  ECF No. 10970.  On February 12, 2020, the Court held a hearing on the Education Fund Motion, which it subsequently granted on March 23, 2020 (ECF No. 11033).  Since that approval, Class Counsel has been actively engaged in formalizing the relationship with each institution and implementing both programs, and overseeing the initial transfer of the medical records from the BAP Administrator to Columbia University for the creation of the Medical Information Research Database.  Class Counsel's engagement with both programs will be continuing in the coming years.

## SUMMARY OF HOURS & LODESTAR AND EXPENSES INCURRED

Throughout the time period covered by this Petition, Seeger Weiss dedicated 1444.2 hours, for a lodestar of $998,512.99.  This calculation is based on the blended rates established by the Court,[9] and reflects the following time expended[10]:

---

[9] As directed by the Court, the lodestar billed employs the blended rates that the Court prescribed in its May 24, 2018 allocation order.  Accordingly, the billing rate for partners is $758.35; the rate for "counsel" or "of counsel" attorneys is $692.50; the rate for associates is $486.67; the rate for contract attorneys is $537.50; and the rate for paralegals is $260.00.  *See* ECF No. 10019 at 7 n.4.

[10] As with all prior fee petitions, Class Counsel stands ready to submit supporting time records and supporting backup for expenses to the Court for *in camera* review.

| Professional Rank | Total Hours |
|---|---|
| Partners | 906.1 |
| Counsel | 350.7 |
| Associates | 87.3 |
| Paralegals | 100.1 |
| **TOTAL** | **1444.2** |

In addition, Seeger Weiss incurred $155,031.53 in common benefit expenses.

## CONCLUSION

WHEREFORE, the undersigned, as Class Counsel, respectfully requests that the Court approve this Fifth Post-Effective Date Fee Petition for Post-Effective Date Attorneys' Fees and Costs and award $1,153,544.52, which reflects $998,512.99 in common benefit attorneys' fees based on the blended rates established by the Court, and $155,031.53 for reimbursement of common benefit expenses, both to be paid from the Attorneys' Fees Qualified Settlement Fund.

Date:  July 14, 2020

                                        Respectfully submitted,

                                        */s/ Christopher A. Seeger*
                                        Christopher A. Seeger
                                        SEEGER WEISS LLP
                                        55 Challenger Road, 6th Floor
                                        Ridgefield Park, NJ  07660
                                        cseeger@seegerweiss.com
                                        Telephone:  (212) 584-0700

                                        ***CLASS COUNSEL***

## **VERIFICATION**

CHRISTOPHER A. SEEGER declares, under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746, that he is the Petitioner in this matter, has read the foregoing Fifth Verified Petition of Class Counsel Christopher A. Seeger for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs, and knows the contents thereof, and that the same are true to his personal knowledge, information, and belief. Executed this 14th day of July 2020.

*/s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER

**CERTIFICATE OF SERVICE**

  I, Christopher A. Seeger, hereby certify that a true and correct copy of the foregoing was served electronically via the Court's electronic filing system on the date below upon all counsel of record in this matter.

Dated: July 14, 2020             <u>/s/ Christopher A. Seeger</u>
                    CHRISTOPHER A. SEEGER