UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB |
| | MDL No. 2323 |
| | Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO: | Civ. Action No. 14-00029-AB |
| ALL ACTIONS: | |

**REPONSE IN OPPOSITION OF THE LOCKS LAW FIRM TO
CLASS COUNSEL'S MOTION TO SUPPLEMENT PETITION
FOR ADOPTION OF A 5% SET-ASIDE**

The Court should reject Class Counsel's request for a 5% set-aside and any other set-aside requests. While we believe that there is no need for additional funding via a set-aside, as a last resort, we would urge the Court to adopt a holdback of no more than 1% to be set-aside in escrow for future use. [ECF No. 9571 at 7-8]. Our position is both consistent with Professor Rubenstein's expert opinion as well as the ongoing needs to protect a vulnerable population of plaintiffs.

For these reasons and the reasons set forth below, the Locks Law Firm "Locks" respectfully requests that the Court reject the 5% set-aside requested by Class Counsel.

**I.   ARGUMENT**

    **A. Class Counsel's request for a 5% set-aside contradicts Professor Rubenstein's expert opinion**

First, the amount and increased need for common benefit fees and costs requested from Seeger Weiss is nothing less than outrageous. Making matters worse, we have never been provided with any specific breakdowns accounting for exactly what Class Counsel is billing for and the expenses claimed. Therefore, while we understand that not all of Seeger's work is dedicated to individual cases, in fact, likely very little as he represents very few clients, a great deal of weight

1

is nonetheless afforded on this work in their fee petitions. On this basis, if we were to isolate the amount requested per period in fees and expenses, specifically relating to the most recent fee petitions, against the number of claims filed, during the fourth period, his fees average around $9,096 and 12 hours per claim. And, in the fifth period, one in which saw a decrease in claims, his average is around $12,000 and 14.3 hours per claim.

| Period | Report | Cost for Hours Billed | Additional Expenses | Total Amt Requested | Filed Claims | Cost/filed claim | # hours | Hours/claim |
|---|---|---|---|---|---|---|---|---|
| 12/1/19-5/31/20 | 5th | $1,153,000 | $155,000 | $1,308,000 | 101 | $12,950 | 1,444 | 14.3 |
| 6/1/19-11/30/19 | 4th | $1,237,000 | $91,000 | $1,328,000 | 146 | $9,096 | 1,814 | 12.42 |

[1]

Not only is this an exorbitant amount of money, Class Counsel is somehow billing more within a slower period. It should be noted, this amount is also more than some of the fees our firm has collected on an individual case in which we spent months coordinating testing, results, creating the claim, responding to any notices or appeals, etc. In essence, he is asking for more per case as common benefit, than the attorney actually representing the client in many cases.

The Court should not consider suggestions or opinions from Class Counsel that differ from the Court's own expert, Professor William Rubenstein, whose recommendation was against 5% holdback as excessive and unnecessary. His recommendations received wide support from all counsel who formerly held class counsel and other leadership positions. [ECF Nos. 9526 and 9571]. If more recent data is needed, the court should again look to the expertise of Professor Rubenstein to provide a reanalysis of the settlement.

**B. If necessary, as a last resort, the court should adopt no more than a 1% holdback**

If the Court finds a set-aside necessary, the amount should be no more than 1% to be set-aside in escrow for future use.

---

[1] Data compiled using Brown Greer's Status Reports and Class Counsel's Verified Petitions (4 &5) for an Award of Common Benefit Attorneys' Fees and Costs.

While Locks agrees with Seeger's argument that there are not currently sufficient funds available to generate the interest discussed in Professor Rubenstein's report, this can nonetheless be accomplished by drastically lowering the set-aside amount and using a 1% holdback. A 1% holdback for future settlements is estimated to generate over $500,000 per year in interest. Given the downward trend in claims filed, *see infra*, this amount should be more than sufficient to ensure Class Counsel's future fees.

For example, as of June 15, 2020, 1,126 claims were funded, totaling $752,803,551.76. A 1% withholding of the funded claims to date totals $7,528,035.51. Meaning, a 1% set-aside would, therefore, add an additional $7.5 million to the common benefit fund. This would be in addition to the $5.8 million left in the Attorneys' Fees Qualified Settlement Fund "AFQSF" if the pending fee petitions are granted. If properly invested the $13 million should earn 4% interest which means the interest alone would be over $500,000 per year, which should be more than sufficient to cover all future common benefit fees and costs. The future 1% hold back would enable additional interest to accrue going forward.

Moreover, data from Epiq and the BAP further supports our position. Based upon the most recent status update provided to the court[2]:

| Status | Number |
|---|---|
| Players who have attended both appointments | 5,606 |
| Players with both reports submitted to the Administrator | 5,349 |
| Players with review completed and approved to publish to portal | 4,883 |

Of those players listed above, the diagnoses received broke down as follows:

| Diagnosis | Number of Players Received |
|---|---|
| Level 1.0 | 172– diagnosis rate of 3.5% |
| Level 1.5 | 154 – diagnosis rate of 3.15% |
| Level 2.0 | 103 – diagnosis rate of 2.1% |
| No diagnosis | 4,454 |

---

[2] BAP Administrator Status Report – 2nd Quarter 2020. [ECF No. 11115 at 10]

As of June 15, 2020, a total of 7,495 have requested BAP appointments. If the diagnosis rate holds, the following would be true:

| Diagnosis | Number of Players Estimated to Receive |
|---|---|
| Level 1.0 | 262 will receive 1.0 – or 90 more |
| Level 1.5 | 236 will receive 1.5 – or 82 more |
| Level 2.0 | 157 will receive 2.0 – or 54 more |

At the time of the last Status Report, 1,069 claims were funded for $36,905,716. Based upon the numbers above, that would be 226 additional claims, or 21% more filed claims. 21% of the amount already funded is $7,750,200.36. If you reduced that to 1%, you are still adding another $1,550,040.07 in available common benefit funds. Even if you see a 20% reduction in approved claims over time (i.e. only 180 claims filed), there would still be an infusion of $1,240,032.05 in additional funds at a 1% hold-back rate, on top of the funds already provided. In addition, MAF and supplemental claims will provide additional funding with each approved claim moving forward.

### C. Responsibilities have significantly reduced and will continue do so as claims slow and litigated issues shrink due to precedents and maturity of the settlement

Concerning the need going forward, Class Counsel bears the burden of proving the need for a 5% set-aside and, to date, has failed to do so. [ECF No. 9526 at 36-42]. Even if the hours submitted by Seeger Weiss are legitimate, and putting aside the efficacy, given the status of the settlement, the vast majority of what has been done is no longer necessary.

In Class Counsel's July 14, 2020, Fifth Verified Petition for an Award of Post-Effective Common Benefit Fees and Costs, a significant amount of weight is afforded to the work undertaken, which is described as ongoing for the foreseeable future. Listed amongst the efforts claimed ongoing include, oversight of the claims process and monetary award determinations, and

support of both unrepresented Class Members as well as Class Members' individually retained private attorneys "IRPAs". This is incorrect and inconsistent with where the settlement is today.

The settlement effectuation is now in its fourth year and by Seeger's own admission, "the substantial start-up activity appears largely completed". [ECF No. 11126, at 2]. Most of the major disputes over implementation are already fully joined. The documentation required for submitting claims; protocols for conducting audits, guidelines for BAP/MAF examinations, amongst other core issues have been decided. Despite this, Class Counsel is still seeking payment for future settlement implementation and oversite when the need simply does not exist. Although, this court does not have to take our word on this, but need only look to any of the recent status reports issued, which have continually revealed a steady decline in both claims filed and the issuance of notices of monetary awards.

| Period Beginning | Period Ending | Claims Filed in Period | Total Monetary Award Claims Filed | Total Pre Effective Claims | Total Post Effective | Total Post Effective / BAP | Total Post Effective / MAF | Total Other | Total Notices of Monetary Award |
|---|---|---|---|---|---|---|---|---|---|
| 3/27/2020 | 6/15/2020 | 45 | 3,034 | 1,973 | 821 | 228 | 593 | 240 | 1,157 |
| 12/2/2019 | 3/26/2020 | 56 | 2,989 | 1,972 | 778 | 208 | 570 | 239 | 1,108 |
| 8/19/2019 | 12/2/2019 | 69 | 2,933 | 1,972 | 718 | 179 | 539 | 243 | 1,025 |
| 5/13/2019 | 8/19/2019 | 77 | 2,864 | 1,935 | 657 | 152 | 505 | 242 | 956 |
| 2/11/2019 | 5/13/2019 | 143 | 2,787 | 1,935 | 600 | 131 | 469 | 252 | 852 |
| 10/15/2018 | 2/11/2019 | 594 | 2,644 | 1,890 | 472 | 88 | 384 | 282 | 779 |
| 7/16/2018 | 10/15/2018 | 132 | 2,050 | 61 | 67 | NR | NR | 4 | 649 |
| 4/10/2018 | 7/16/2018 | 161 | 1,918 | 73 | 60 | NR | NR | 28 | 499 |

[3]

In fact, within the timeframe of December 1, 2019 – May 31, 2020 (subject to Class Counsel's most recent petition), only an additional 101 new claims were filed, and an additional 132 claims were approved. This is in sharp contrast from the previous year, which saw a surge in filed claims, largely occurring in or around February 2019, at the close of the deadline to file pre-effective date claims. The continuing decline is also seen within the fee petitions submitted by Class Counsel to date. In particular, this decrease occurs in the amount of hours billed. Albeit, this decline is subtle, it represents a decrease nonetheless.

---

[3] Claim data was created using Status Reports 1-9.

| Date | Filing | Dkt No. | Timeframe | Hours | Blended Lodestar | Expenses | Total |
|---|---|---|---|---|---|---|---|
| 7/10/2018 | 1st Petition | 10128 | Effective date - May 24, 2018 | 12230.1 | $7,611,859.69 | $745,041.28 | $8,356,900.97 |
| 1/10/2019 | 2nd Petition | 10374 | May 24, 2018 - Nov. 30, 2018 | 3728.4 | $2,403,922.14 | $297,647.27 | $2,701,569.41 |
| 7/25/2019 | 3rd Petition | 10767 | Dec. 1, 2018 - May 31, 2019 | 2,100 | $1,445,488.66 | $243,788.10 | $1,689,276.76 |
| 2/5/2020 | 4th Petition | 10986 | June 1, 2019 - Nov. 30, 2019 | 1814.4 | $1,146,470.19 | $91,159.62 | $1,237,629.81 |
| 7/14/2020 | 5th Petition | 11126 | Dec. 1, 2019 - May 31, 2020 | 1444 | $998,512.99 | $155,031.53 | $1,153,544.52 |
|  |  |  |  | 21316.9 | $13,606,253.67 | $1,532,667.80 | $13,901,291.66 |

[4]

This is likewise contrary to the claim of ongoing support to both unrepresented claimants and Class Members' IRPAs. Class Counsel claims a good portion of their time as representing SCMs through hardships. Some of the examples provided as to when this would occur include, rendering guidance to both unrepresented SCMs and IRPAs, and submitting statements in support of SCM's appeal or intervening against a claim denial. These examples relate to settlement navigation, which is usually handled by the IRPAs[5] and as noted, this need has decreased. With regard to Class Counsel's purported support and guidance of unrepresented class members, this support is unnecessary and inappropriate. As it is well known, this court has appointed an attorney specifically to represent unrepresented claimants. Therefore, there is no reason for Seeger Weiss to do so.

### D. Any holdback adopted would result in an inappropriate, improper, and unnecessary monetary burden on the class

That being said, it is still Lock's position that even as a last-resort contingency, any holdback adopted would result in an inappropriate, improper, and unnecessary monetary burden on the class. After all, the concern for this very result, skyrocketing claims for fees and expenses, was the impetus behind this Court's May 24, 2019 Order terminating the leadership positions of all attorneys other than Chris Seeger. [ECF No. 10624 at FN 1]. Yet, to date, the termination

---

[4] Data compiled using Class Counsel's Verified Petitions (1-5) for an Award of Common Benefit Attorneys' Fees and Costs.
[5] Locks has not received any recent assistance in obtaining monetary awards or claim denial intervention from Class Counsel.

order has not had the intended result of reducing common benefit fees and/or expenses filed by Class Counsel. [ECF No. 10624]. This is not surprising. Although the second fee petition does include a request for approximately $500,000 from Locks Law Firm, since the effective date of the settlement, no attorney other than Seeger has been permitted to receive or even request anything other than relatively minimal common benefit fees and expenses. Yet, Seeger continues to bill hours upon hours for work that seems to be making no impact on the greater good, as BAP claims continue to be difficult to schedule, BAP results take years to receive, no support is provided on appeals or AAP claim reviews, and the list could go on. A list of issues that the individual attorneys, representing these plaintiffs, are left to deal with and spend hours upon hours fighting for every single day.

Despite statements that Seeger and others have made that attorney representation is not necessary to file a claim and navigate the settlement that has never been the case. It is more true now than ever that you need not only an attorney, but, one very familiar with the process given the increasingly common audits and appeals. The point is that the reduced fees (17 or 18% rather than 22%) will discourage attorneys from representing claimants. Therefore, many deserving players will never receive a diagnosis that would qualify them for a monetary award.

A holdback is also unnecessary as there are lawyers with knowledge of the settlement that are willing to contribute time for free, or at substantially reduced rates, certainly, at rates substantially below Seeger Weiss. As this court noted, our office represents over a thousand individual class members, and until May 24, 2019, served as Class Counsel. *Id* at FN 1. From the knowledge gained through a leadership role and our direct experience representing such a high volume of class members, our firm (as well as many others) remain better positioned to defend and implement the Settlement in the best interests of the class. We know the players, diagnostics,

medical science, and Settlement process from direct experience intimately. Given the experience our firm has implementing this Settlement, and serious concern for improper spending, Locks has been providing any plaintiff who has reached out and continues to be willing to work for the available interest generated by a 1% set-aside. Unquestionably, this would provide the safeguards needed to ensure the fund remains viable over the 65-year duration of the settlement and protect the class interests.

## II.   CONCLUSION

As stated above, the recommendations provided by Professor Rubenstein remain correct. This Court should not deviate from the professional opinion of its own expert now. Consistent with Professor Rubenstein's recommendations, the Court should reject the 5% set-aside requested by Class Counsel and adopt a 0% hold-back. If necessary, and only if required as a last resort, the Court should adopt no more than 1% to be set-aside in escrow for future use.

Respectfully submitted,

Dated: July 28, 2020

/s/ Gene Locks
Gene Locks
Heather M. Schneider
LOCKS LAW FIRM
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 893-3423
Fax: (215) 893-3444
Email: glcoks@lockslaw.com
hschneider@lockslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served upon all counsel of record via the **CM/ECF system**, this 28th day of July, 2020.

*/s/* Gene Locks
LOCKS LAW FIRM
