UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>　　　　　Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**RESPONSE OF LANGFITT GARNER PLLC
IN OPPOSITION TO CLASS COUNSEL'S FIFTH FEE PETITION AND
<u>DECLARATION SEEKING A PERMANENT 5% SET-ASIDE</u>**

　　Langfitt Garner PLLC respectfully submits this Response in Opposition to Class Counsel's Petition (ECF 111126) and Supplemental Declaration (ECF 111127-1).

**<u>INTRODUCTION</u>**

　　Class Counsel seeks an Order from the Court that permanently sets aside $37,000,000 held in an account (the "Fund") supervised by the Court to pay Class Counsel (the law firm of Seeger Weiss) for future work on the Settlement. The $37 million in the Fund was derived from a 5% charge (hereinafter the "5% Set-Aside") against all monetary awards paid to date.

-1-

Class Counsel also requests that the Court impose a permanent 5% Set-Aside on all future monetary awards, which Class Counsel estimates will be 4374 awards, the total value of which is unknown. Class Counsel, therefore, seeks to be paid substantial sums from pro se claimants and counsel to represented claimants for the next 61.5 years. This does not include the $66MM already paid to Class Counsel from the AFQSF.

Class Counsel, however, has not marshalled any evidence to justify its request. For that reason and the reasons set forth below, the undersigned respectfully requests that the Court sign a proposed Order in the proposed form provided that will require:

(a) that the Fund return to the claimants (and, where appropriate, counsel for the claimants) 80% of the $37 million fund (or $29,600,000);

(b) that the Fund retain 20% (or $7,400,000);

(c) that the 5% Set-Aside be modified and reduced to a 1% Set-Aside in the future, all of which will be placed in the Fund;

(d) that Class Counsel reduce its rates, implement a budget, and disclose to a Court-appointed representative of the claimants its time entries and costs for all unpaid fee petitions and future petitions for which Class Counsel seeks to be paid from the Fund;

(e) that precautions be taken to prevent any shortfall in the Fund by capping actual payment (as opposed to approved costs) in any given year to Class Counsel; in any year when approved costs exceed the payment cap, the excess can be carried over to a later year when approved costs are beneath the cap;[1] and

(f) that the NFL shall bear the risk in the unlikely event that the 1% set-aside becomes insufficient.

---

[1] This permits the Fund to earn interest and thereby perpetuate payments over 61.5 years.

## SUMMARY OF ARGUMENT

In the April 5, 2018 Order creating a Common Benefit fund, the Court observed that "no party or expert has provided the Court with an adequate estimate for the amount of work that will be required in the future." ECF 9860 at 17-18. The Court requested sufficient data to estimate how much of the 5% Set-Aside would be required in the future to pay Class Counsel's fees for monitoring and supervising various issues connected with the Settlement.

Class Counsel provides a summary of what has happened in the past, but gives no guidance for the future other than that its billing pattern will continue at an equivalent rate. Class Counsel does not address the numerical trends shown by the Status Reports furnished by the Claims Administrator ("BrownGreer") and does not justify a request for a 5% tax on every award paid by the Settlement.

At paragraph 85 of the Declaration, Class Counsel posits that there will be 5500 awards paid over the life of the Settlement, but provides no basis for the number. According to BrownGreer, only 1126 awards have been paid to date on 3034 claims filed or considered, a success rate of approximately one award for every three claims filed. The number of claims filed per week has dropped dramatically from an average of 27 per week in the first 12 months to 3 per week today. The claims process, therefore, was substantially front-end loaded, and the trend is downward. It will not remain static and will likely decrease in the coming months and years, which the Court and BrownGreer can monitor and measure. This makes unnecessary the full 5% Set-Aside.

Based on the data set forth in the BrownGreer reports, 20% of the $37MM in the Fund, plus a 1% Set-Aside should be sufficient. If it is not, the Court in its discretion can determine

under the terms of the Settlement that the NFL through the Monetary Award Fund shall pay these Administrative Costs in the future.

Because Class Counsel now seeks to be paid outside of the AFQSF, its relationship with the pro se players and individual lawyers has changed.  Now, Class Counsel seeks to be paid much more (possibly an additional $50,000,000 or more) not from the NFL, but from the pro se players and individual lawyers for players.  Under these circumstances, Class Counsel should be required by the Court to submit a competitive bid and a budget, adhere to the budget, and submit its time records and costs to a Court-designated representative for the claimants for scrutiny and assessment.

## ARGUMENT

Under any numerical scenario, Class Counsel's request is unjustified.  Class Counsel seeks to receive indefinite payments of $2.4 million annually (or more) from the $37,000,000 Fund and an additional 5% tax on every future award.  The numerical data provided by BrownGreer does not support the request.  BrownGreer's data shows that the trend in claims submitted and paid is precipitously downward.  The data shows that even if, solely for the sake of argument, the Court were to accept Class Counsel's estimate of 5500 claims paid over the life of the Settlement (which assumes that every valid registrant will file a claim), the required holdback is not 5%.  It is less than 1%.

Under those circumstances, it is incumbent upon Class Counsel to marshal convincing evidence to support its request for a 5% Set-Aside and establish support for its estimates.  Class Counsel has not even attempted to provide this data.

It is also incumbent on Counsel to revise its relationship with the pro se players and individual counsel to the players.  Because Class Counsel seeks payment from these persons, not the NFL, Class Counsel should be prepared to present a budget, reduce its rates, streamline its

supervisory efforts, live within the budget, and suggest an alternative source of payments (the Monetary Award Fund, for example) to pay for its administrative activities if the 1% Set-Aside is inadequate in the future.

1. **The Trend in Claims Submitted and Paid is Downward.**

BrownGreer's nine Status Reports cover 3.5 years from the inception of the Settlement through June 15, 2020.  Class Counsel's five fee petitions cover nearly the identical 3.5 year period (off by only two weeks).  Using a *pro rata* adjustment, Class Counsel's fee petitions reasonably match the nine periods covered by BrownGreer, which permits an analysis of Class Counsel charges as a percent of benefits awarded to players.

The data show the following trends:

a. From January 2017 to February 2019 there were substantial start-up costs that required Class Counsel to bill far more than that of every subsequent year and up to the present.

b. In the first eighteen months, the average award was roughly $1 million.  Over the last year, the average award was roughly $557,000.

c. In the first year, the number of claims filed averaged 27 per week, but this fell to 3 per week as of June 15, 2020.

d. All or almost all of the pre-effective date claims have been resolved, and most activity going forward will arise exclusively from MAF examinations.[2]

e. There have been thousands of BAP examinations to date from which very few awards arose, which suggests that not every registrant will submit a claim and that, when future claims do arise, the players will be older and the average benefit per award will be less.

*See* Compilation of BrownGreer data, attached as Exhibits A through D.  Specifically, see Exhibit C for BrownGreer data regarding the trends in the number of claims filed and reviewed per week, the value of awards funded, and the Class Counsel fees and costs over time.

---

[2] The transition from pre-effective date to MAF diagnoses is still ongoing, but the trend shows that there will be very few pre-effective date claims submitted, if any, within 1-2 years.

When considering a set-aside figure, it is important to note that Class Counsel's claimed costs (defined as attorneys' fees plus expenses) originally were approximately 5% of every award at the beginning of implementation. This is the time-period when the Court rightfully questioned Mr. Rubenstein's expert opinion regarding set-aside figures. However, that figure quickly dropped. Over every subsequent period (after the initial start-up), Class Counsel's costs as a percentage of benefits paid to players dropped to 1.14%, 1.63%, 1.97%, 1.67%, 1.61%, 1.27%, 1.18%, and 1.26% respectively. *See* Exhibit C.

The consistency of Class Counsel's costs during these time periods as a percentage of Monetary Awards shows that the 5% set-aside is unnecessary and unwarranted. The percentages never exceed 2%. The money currently in the AFQSF will cover more than half that requirement, making a far smaller Set-Aside more than adequate.

### 2. The Number of Future Claims Will Not be as Numerous as Class Counsel Assumes.

The Court's ability to assess the adequacy of the AFQSF (and the need for a set-aside and what it might be) depends on the Court's ability to determine a *pro rata* contribution from the AFQSF for every claim going forward into the future. This requires an estimate of the number of successful awards that will occur over the next 61.5 years. Class Counsel's prediction of 5500 awards paid over the life of the Settlement is unrealistic, in part, because it requires every registrant to file a claim, an unlikely result, and, in part, because Class Counsel provides no data in support.[3] Class Counsel assumes that the number of claims filed each week will go against

---

[3] BrownGreer's recent reports show that one in three claims have received an award. To yield 5500 awards requires 16,500 claims to be filed, a claim for every registrant. Class Counsel provided no data to support the prediction.

current trends and actually increase and that Claims per week will rise and remain at approximately 4-per-week for 61.5 years.[4]

Professor Rubenstein's estimate, however, (which cites to the Parties' actuarial studies) is that 3488 awards will be paid over the life of the Settlement, not 5500. Given the current approval rate, the number assumes that roughly 10,000 of the 16,000 valid registrants will file a claim, and that two claims per week will be filed on average for the balance of the life of the Settlement.

Both numbers are too large, because BrownGreer's data (Exhibit C) shows a steady decline in the number of filings per week. The trend shows that claims will continue to drop over the next two years (a phenomenon the Court can monitor to see whether the trend continues), to fewer than three per week, and eventually to even fewer in years to come.

Moreover, the average dollar value per award over the past six months is $570,000, but it will not remain static. The trend is distinctly downward. Professor Rubenstein referred to the NFL's own actuarial studies that show, by the end of the Settlement, that the claimants' average age will be 80 years or older. *See* W. Rubinstein Report, ECF 9526 at 23. Based on the monetary award grid, the average award value, therefore, will descend as the player class ages. It will not remain static. Professor Rubenstein estimated that the average award will be roughly $50,000 at the close of the Settlement. ECF 9526 at 23. Over time, as the average award value drops, and the number of filed claims drops, Class Counsel fees must also drop.

### 3. Class Counsel's Trend in Costs Does Not Justify a 5% Set-Aside.

Therefore, there no reason to believe the number of claims filed or the average value of

---

[4] This calculation is as follows: 16,500 total claim filings, of which 3000 have already occurred, leaving 13,500 remaining to be filed. There are 3200 weeks left in the Settlement's 61.5 years, so Class Counsel an average of more than 4 claims filed per week, every week, to reach 16,500 filings. That is not happening now, and there is no data to suggest that it will.

those claims will rise. In fact, they will decline, and the BrownGreer data shows that. In April 2018, well into the claims process, Class Counsel estimated that the total benefits from this Settlement will be $1,297,000,000. *See* Exhibit D and ECF 9860 at FN 10. If Class Counsel's 2018 number is correct, then the remaining money required to fund those new claims will be $544,196,000 over 61.5 years. *See* Exhibit D. The average award for the entire Settlement will be $235,818. *See* Exhibit D. The average award for new claims (and there is no evidence that they will be an additional 4374) will be $124,416, because the class population will age, the awards per year become less frequent, and the value of those awards will decline in value. *See* Exhibit D. Class Counsel is not entitled to many tens of millions of dollars to manage those claims, certainly not if pro se claimants and counsel to represented players have to pay the bill.

This is simple arithmetic using Class Counsel's own numbers. If the Court retained an independent actuary and accountant and asked them to analyze BrownGreer's current data and monitor trends over the next year, those professionals would probably yield a professional and reliable assessment. But, again, using Class Counsel's own numbers, and assuming no reduction in Class Counsel's rates, the required set-aside is far less than 5% and likely closer to 1%.

**4. Class Counsel's Charges Should Be Less Costly.**

The Court has always expected a practical approach in relation to costs associated with this Settlement. The pro se claimants and the lawyers for individual claimants, who may soon be paying Class Counsel's fees, expect the same. Class Counsel's choice to charge $260 per hour for a paralegal equates to an annual salary of $541,000 (based on a 40-hour work week), which is ten times the going rate for a paralegal in Manhattan. Class Counsel's $486.67 hourly rate for a legal associate equates to an annual salary of over $1,012,000, which is almost ten times the

$128,000 average salary for an associate in Manhattan and higher also than the $108,500 average in Philadelphia (where the Court sits). The hourly rates that Class Counsel bills for its of-counsel attorneys and its partners equate to annual salaries of $1,400,000 and $1,600,000 respectively. These figures are significantly higher than what the normal partner makes in either Manhattan or Philadelphia. Class Counsel's expenses, which are currently $6000 per week, are un-itemized and not disclosed. On behalf of all claimants and their counsel, the undersigned suggests that Class Counsel should lower its cost structure to accommodate the pro se players and counsel to players whom Class Counsel now demands pay the bills.

Class Counsel's fifth fee petition claims $1,154,000 in fees and expenses for a total of 1444 hours of work over a 26-week period (half a year). This amounts to $800 per hour. Excluding the $155,000, the average billable rate in Class Counsel's latest petition is $700 per hour. These numbers suggest mark-ups that are no longer reasonable in light of the fact that Class Counsel has already received fees in excess of $63 million[5] and the fact that Class Counsel now demands that pro se players and counsel to players pay its fees and expenses.

**5.  Class Counsel's Relationship with Claimants and Attorneys Should be Transparent.**

The Settlement itself mandates transparency in invoicing when the money comes from a set-aside: "Any future petition for a set-aside will describe: (i) the proposed amount; (ii) how the money will be used; and (iii) any other relevant information. *See* Settlement Agreement at section 21.1. By choosing to seek payment from a set-aside, rather than from the NFL-funded AFQSF or from the NFL directly, Class Counsel has entered into an entirely new relationship

---

[5] It is common for a law firms to mark up the hourly rate of employees and partners beyond actual cost, but this mark-up is not appropriate in the ongoing administration of this Settlement. For example, the Special Masters are restricted to a $200,000 salary. The Claims Administrator, BrownGreer, pays annualized salaries that are many multiples less than those charged by Class Counsel and does generate a windfall through mark-ups.

with the pro-se players and the individual attorneys.  Under these circumstances, Class Counsel should be required by the Court to submit a competitive bid and a budget, adhere to the budget, and submit its time records and costs for scrutiny to a Court-designated representative of the pro se claimants and the individual attorneys.  Class Counsel's submissions so far do not include a budget, have not been released to the parties who will be paying the bill, and have not identified, as the Settlement mandates, "how the money will be used."  Without a specific budget and a scrutiny of rates, Class Counsel should not expect payment from a set-aside.

**6. There Are Negative Consequences to the Set-Aside.**

There are policy reasons not to reward Class Counsel the 5% Set-Aside.

First, it creates a large and unjustified tax on the victims of the NFL and on counsel for represented players.  Every 5% set-aside requested by Class Counsel results in a 5% reduction in the awards to pro se claimants and nearly a 25% reduction in the fees received by individual attorneys through retention agreements.

Second, claimants have found it more difficult than advertised to navigate this Settlement.  In Class Counsel's own words, "[t]his Settlement is without precedent in its complexity…" (*see* Class Counsel's Declaration at ¶ 94), and the NFL aggressively disputes and/or litigates most submitted Claims.  The fact that only 1 in 3 claims receives an award speaks for itself.  This means that two-thirds of all claims are denied, and claimants and counsel for them must either give up or start over again.  Current expenses for MAF neuropsychological and neurology testing combined can cost many thousands of dollars.  Either claimants pay these bills or their counsel pays them.  Since two in three claims fail, two in three players must submit to re-testing, which is an ongoing and expensive prospect, or give up.  Audits are now common.  As a

result, claimants and counsel work far harder and take on far greater risk than anyone ever expected.

Third, a 5% Set-Aside will create disunity. Mr. Rubenstein's expert report noted that Class Counsel's invoicing by that date was inordinately high – at an average rate of $800 per hour. He cited numerous other cases where billable rates were capped at more reasonable levels: $185 for paralegals, and staggered rates of $225 to $285 for associates, $380 to $475 for more experienced attorneys, and maxing out at no more than $595 per hour for any single attorney. W. Rubenstein Report at page 44, ECF 9826. In contrast, Class Counsel's average hourly charges in this Settlement have been at partner's levels and, moreover, have increased over time from $633 in the first petition to $691 per hour in the most recent petition.

## **CONCLUSION**

For all of the foregoing reasons, Langfitt Garner respectfully requests that the Court enter an Order in the proposed form that orders that:

1. 80% of the current Set-Aside shall be paid to the pro se claimants and the attorneys from whom the Set-Aside was derived;
2. A 1% Set-Aside shall be required going forward;
3. BrownGreer shall monitor the trends in claims filed and paid;
4. The Court shall appoint an independent actuary and accountant to prepare a report that analyzes the likely number of claims submitted and paid over the life of the Settlement and the likely average value of those awards;
5. The independent actuary and accountant shall be paid by the AFQSF; and

6. Class Counsel shall submit a competitive bid with reduced rates and a specific budget if Class Counsel seeks to be paid from a Set-Aside.

July 28, 2020                                      Respectfully submitted,

*/s/ David D. Langfitt*
David D. Langfitt
Margaret G. Bellamy
LANGFITT GARNER PLLC
Two Commerce Square
Suite 3900
2001 Market Street
Philadelphia, PA 19103
Phone: (610)-787-1706
Email: david@langfittgarner.com
           margaret@langfittgarner.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 28, 2020, a true copy of the foregoing Response in Opposition to Class Counsel's Petition and Supplemental Declaration was filed and served on all counsel of record in 12-md-2323 via the ECF system in the Eastern District of Pennsylvania.

> */s/ David D. Langfitt*
> David D. Langfitt