# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB <br><br> MDL No. 2323 <br><br> **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., <br><br> Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## CLASS COUNSEL'S REPLY IN SUPPORT OF MOTION TO SUPPLEMENT PETITION FOR ADOPTION OF A SET-ASIDE FROM EACH MONETARY AWARD AND DERIVATIVE CLAIMANT AWARD

## INTRODUCTION

Class Counsel respectfully submits this reply in support of his motion for leave to file a supplemental declaration in connection with the pending petition for adoption of a 5% set-aside from Monetary Awards (ECF No. 11127) ("Motion for Leave").[1]

---

[1] This reply adopts the shorthand definitions employed in the Motion for Leave and its accompanying Supplemental Declaration of Christopher A. Seeger in Support of Petition for Adoption of a Set-Aside from Each Monetary Award and Derivative Claimant Award (ECF No. 11127-1) ("Supplemental Declaration").

Six oppositions to the Motion for Leave were filed. These were, in order of docketing, from Goldberg, Persky and White, P.C. ("Goldberg Persky") (ECF No. 11133); Lubel Voyles LLP and "Certain Class Members," who have heretofore been known as the so-called Aldridge Objectors (and earlier as the Alexander Objectors) (ECF No. 11135); the Locks Law Firm ("Locks") (ECF No. 11136); Girardi Keese, whose opposition was only a joinder in the other oppositions (ECF No. 11137); Langfitt Garner PLLC ("Langfitt") (ECF No. 11138); and four pro se claimants (the "Pro Se Claimants") (ECF No. 11139). In addition, Goldberg Persky and Pope McGlamry, Kilpatrick, Morrison & Norwood, P.C. ("Pope McGlamry") filed out-of-time joinders in the other oppositions (ECF Nos. 11140-41, docketed July 29 and 30, 2020, respectively).

The Court should disregard respondents' oppositions because they exceed the narrow scope of the Motion for Leave, which was simply to seek to supplement the record as to the pending application to establish a permanent 5% holdback. All of the respondents improperly used their responses as a subterfuge to mount for the first time or renew objections to the underlying set-aside request when the briefing of that request has long since closed and the only issue that the Motion for Leave presented was evidentiary supplementation. Moreover, three of the respondents – Locks, Langfitt, and Pope McGlamry – long ago waived any objection to the set-aside request by never having opposed it at the time that it was presented and briefed, and they are not suddenly entitled to contest it now for the first time. In any event, the respondents' objections to the underlying set-aside request are without merit and should be overruled.

**ARGUMENT**

**THE COURT SHOULD DISREGARD OR OVERRULE THE BELATED PUTATIVE OBJECTIONS TO THE SET-ASIDE REQUEST**

**I.   The Oppositions to the Motion for Leave, Which Are Really Objections to the Underlying Holdback Request, Improperly Exceed the Motion's Limited Scope**

Class Counsel moved for leave to update and supplement the record given the Court's stated need for further evidentiary development concerning the set-aside request, as to which briefing had closed in April 2017 (*see* Section II, *infra*) and the Court had deferred an adjudication back in 2018.  ECF No. 11127 at 2; *see* ECF No. 9860 at 2, 8-9, 17-20; ECF No. 9862 at 8 n.5; ECF No. 10019 at 4 n.2; ECF No. 10378 at 1 n.1.  Rather than confine their responses to the narrow purpose of the Motion for Leave, the respondents – most of whose objections appear to have been coordinated, as reflected by their substance, including cross-references to others' responses – failed to address the motion altogether.  Instead, they used their responses as a platform to mount for the first time or renew objections to the underlying holdback request.  For this reason alone, the Court should disregard the putative objections as exceeding the scope of the Motion for Leave.[2]

**II.   Locks', Langfitt's, and Pope McGlamry's Objections to the Set-Aside Request Are Waived**

The set-aside request was presented in the Common Benefit Petition filed on February 13, 2017.  *See* ECF Nos. 7151 at 2, 7151-1 at 70-75, 7151-2 at 31-35 (¶¶ 101-19).  Briefing in connection with the Common Benefit Petition closed on April 10, 2017, upon the filing of Class

---

[2] *See, e.g.*, *D'Angelo v. Petroleos Mexicanos*, 378 F. Supp. 1034, 1041 (D. Del. 1974) (court would not consider argument that exceeded motion's scope); *Migdal v. Portfolio Recovery Assocs., LLC*, No. 16-4750 (JLL), 2017 WL 3086223, at *2 (D.N.J. July 19, 2017) (same); *Peck v. Donovan*, No. 07-5500 JLL, 2012 WL 603558, at *5 (D.N.J. Feb. 22, 2012) (same); *Mars, Inc. v. Coin Acceptors, Inc.*, No. 90-49 JCL, 1996 WL 34385063, at *4 (D.N.J. Sept. 3, 1996) (same).

Counsel's reply papers, which covered the holdback request. *See* ECF Nos. 7464 at 29-47 (Section III, specifically addressing set-aside request), 7464-1 at 4-11 (¶¶ 14-39) (same).

Although a number of objections to the holdback request were lodged during the period for doing so – including by the Aldridge Objectors (then known as the Alexander Objectors), Girardi Keese (jointly with Goldberg Persky), and at least one of the four Pro Se Claimants (Rickey Dixon)³ – no objection was ever raised by Locks, Langfitt, or Pope McGlamry. Locks' name partner submitted a declaration in support of the Common Benefit Petition (ECF No. 7151-7), as did Pope McGlamry's name shareholder (ECF No. 7151-22). More to the point, Locks was a signatory to the Settlement Agreement, which included the holdback provision (*see* ECF No. 6481-1 at 101), while at the time that the set-aside request was made Langfitt's name partner was a Locks partner (*see* ECF No. 7151-7 at 3 (¶ 6), 20-23).

Locks, Langfitt, and Pope McGlamry are conspicuously silent as to why they never addressed the set-aside request before and waited until now to do so. The reason for that should be fairly obvious: they have no excuse (or least not a credible one) for having slept on the matter until now. They cannot belatedly mount objections long after the briefing of the holdback request closed under the convenient guise of responding to a motion to update the evidentiary record. Having lodged no objection to the set-aside request when it was presented and briefed, Locks, Langfitt, and Pope McGlamry waived the opportunity to contest it now. Consequently, the Court should disregard those three respondents' putative objections (the latter of which were untimely to begin with) for this independent reason as well.⁴

---

³ *See* ECF Nos. 7161, 7205, 7237, 7282, 7299, 7344, 7346, 7351, 7353-56, 7359-60, 7367, 7370-71, 7373, 7375, 7401-1.

⁴ Langfitt's response and Pope McGlamry's late joinder also purport to oppose Class Counsel's fifth implementation-phase fee petition (ECF No 11126), but they were not separately

**III.  The Putative Objections Are, at Any Rate, Without Merit**

Even considered on their merits, however, the respondents' objections are unavailing.

Several of the respondents maintain that a set-aside (or at least for 5%) cannot be justified because of the downward trend in the number of Monetary Award claims filed, with Locks in particular suggesting that Class Counsel's implementation-phase fee requests are bloated given that decrease and complaining that, on a per-claim basis, Seeger Weiss is earning more than IRPAs. *See* ECF Nos. 11133 at 3-6, 11135 at 5, 11136 at 1-6, 11138 at 3, 5-8.

This myopic analysis treats Class Counsel's engagement in the Settlement's implementation as claimant-specific work, when in large measure it is not.  To be sure, there has been a decrease in the number of claims filed, particularly since the deadline for the filing of pre-Effective Date claims passed in early 2019, and the amount of time that Class Counsel dedicates to the review of new claims and decisions on pending claims has decreased commensurately. Much of Class Counsel's work, however, pertains to broader matters, including oversight of the BAP and Claims Administrators, the AAP, AAP Consultants, and the BAP and MAF Physician networks; appeals on issues pertaining to the operation of the Settlement as a whole; creation of new website FAQs and procedures as the Administrators face new Settlement-wide issues; and more recently with the release of monies from the Education Fund, the launch of the Medical Information Research Database at Columbia University's Mailman School of Public Health and the innovATe program with the Korey Stringer Institute at the University of Connecticut.  All of this is laid out in the Supplemental Declaration.  *See* ECF No. 11127-1 *passim*.  Simply stated, much of Class Counsel's work on behalf of the Settlement Class Members is program-wide and

---

docketed as such and do not address the substance of that petition, save indirectly in that Langfitt attacks Class Counsel's billing rates and calls for disclosure of Class Counsel's time records (ECF No. 11138 at 2, 8-9).  Both complaints are addressed below.

does not move in lockstep with ebbs and flows in the volume of Monetary Award claims in any given month or year.

Perhaps anticipating this point, the Aldridge Objectors dismiss Class Counsel's extensive oversight work, contending that Seeger Weiss should not be compensated for work that is already being performed by Settlement Program officers, such as the Special Masters and the BAP and Claims Administrators. ECF No. 11135 at 2, 9. The Aldridge Objectors do not explain how those *neutral* officers could be expected to represent the interests *of the Class* when it comes to, for example, the selection of AAP members, AAP Consultants, and BAP and MAF Physicians, and even the replacement (should the need arise) of the BAP and Claims Administrators themselves. *See* ECF No. 6481-1 at 9-10, 27-28, 38, 52-53, 59 (Settlement Agreement §§ 2.1(g)-(h), 5.6(d), 5.7(a)(i), 6.5(a), 9.8(a), 10.2(e)). Similarly, they do not explain how such *neutral* officers could be expected to represent *the Class's* interests whenever FAQs have to be formulated or revised, Settlement Agreement interpretation disputes arise, audits occur, or other program-wide issues arise. So much more can be said here, but the Supplemental Declaration lays out the myriad ways in which Class Counsel exercises oversight to further the Class's interests in a process that is often adversarial vis-à-vis the NFL, and it should be self-evident that neutral Settlement Program officers cannot fill that void. Never having held any leadership appointment in this litigation, let alone the Settlement Program, counsel for the Aldridge Objectors does not appreciate the manifold needs for advocacy at every juncture in this Settlement. The suggestion that Class Counsel's oversight role is redundant is uninformed and shortsighted.[5]

---

[5] Locks gripes that it is "unnecessary and inappropriate" for Class Counsel to be assisting unrepresented Class members. ECF No. 11136 at 6. Seeger Weiss has long fielded questions or requests for assistance from Class members as well as IRPAs themselves, the latter of whom, despite respondents' contentions, are often not as knowledgeable about the Settlement as respondents would have the Court believe. Under Locks' questionable reasoning, Class Counsel

No more availing is the Aldridge Objectors' contention that the Supplemental Declaration's projected number of Monetary Awards over the Settlement's lifespan (ECF No. 11127-1 at 37-38 (¶ 85)) is "pure speculation." ECF No. 11135 at 6. The estimate offered by Class Counsel is based on an actuarial analysis by Dr. Thomas Vasquez, an expert economist. In 2018, Dr. Vasquez updated his initial 2014 projections based on actual participation and claims-related data. *Compare* ECF No. 6167 at 34 (Sept. 2014 report, projecting 3,596 compensable claims) *with* ECF No. 10145 at 4-5 (July 2018 report, noting that Settlement's participation rate is 80%, compared with 59% first projected, and that total amount of Monetary Awards approved in Settlement's first year was 68% greater; projecting that total amount to be paid out in Monetary Awards over Settlement's course would be 50% greater, or total of $1.4 billion).

In contrast, the Aldridge Objectors look only at participation in and diagnoses through the BAP to suggest that only another 500 Monetary Awards will be made in the Settlement Program's remaining six decades – that is, a mere 8-9 each year. That is demonstrably inaccurate. The Claims Administrator's most recent Status Report shows that 55 Notices of Monetary Awards were issued between March 16 and June 15, 2020 alone. *See* ECF No. 11116 at 6 (Table 4). Moreover, the Aldridge Objectors' estimate is limited to diagnoses for Level 1.5 and Level 2 Neurocognitive Impairment (the only diagnoses that can be made through the BAP), which, to date, account for fewer than half of all Monetary Awards, and the Aldridge Objectors do not consider the Supplemental Monetary Awards that are made if and when Retired NFL Football Players' conditions worsen. *See id.* at 7 (Table 5), 12 (Table 9). Even assuming that the Aldridge

---

should not be assisting IRPAs, either. Also, there have been many occasions when Class members represented by IRPAs have reached out to Class Counsel when their own lawyers have failed to return their calls. Seeger Weiss will not rebuff those who reach to it for help – be they unrepresented Class members or IRPAs – Locks' vacant grumbling to the contrary notwithstanding.

Objectors' back-of-the-envelope critique has any value, the Settlement Program is not even halfway through the Notices of Monetary Awards that will issue, and far short of halfway through the number of expected claims that will be filed during the Settlement's term.

Several respondents argue that a holdback would harm the Class because it would be deducted from IRPAs' share of Monetary Awards, thereby effectively making the IRPA fee cap 17% (assuming a 5% holdback), which would reduce the incentive of private counsel to represent Class members at a time when IRPAs are needed more than ever. ECF Nos. 11135 at 12-13, 11136 at 7, 11138 at 10. Respondents, however, cannot have it both ways, contending that Class Counsel's projected work is unjustifiable in light of a decline in claims while insisting that IRPAs' services have somehow become more crucial than ever. If claims have dwindled, the importance of IRPAs has correspondingly diminished. In any case, the fear that IRPAs will be disincentivized is rank conjecture. There should be no shortage of counsel willing to undertake the representation of Class members in the claims process in exchange for a 17% fee. That representation has become low-risk as a result of the Settlement achieved and successfully defended by Class Counsel, which removed the daunting obstacle of proving causation of Class members' injuries and successfully pursuing the NFL to judgment against its formidable defenses.[6] Moreover, the Court has already noted that an effective reduction of the cap to 17% by reason of a 5% holdback would still be reasonable given the average 17.95% ceiling in aggregate settlements surveyed by Professor Rubenstein where IRPA fees were directly capped. ECF No. 9862 at 8 n.5.

---

[6] The Aldridge Objectors contend that IRPAs are more vital than ever because two out of three claims wind up being denied (ECF No. 11135 at 13 n.32), but that is false. *See* ECF No. 11116 at 11 (Table 8 of Claims Admr's Status Report No. 9, listing percentages of denials by category of claimed Qualifying Diagnosis).

The Aldridge Objectors also rehash their structural objection to the very concept of a set-aside. They inaccurately claim that the $112.5 million in fees paid by the NFL was meant to compensate "'past, present, and future work'" (ECF No, 11135 at 3 & n.3), which it was not. The quoted language appears nowhere in the two orders they cite – which makes their direct citation to those orders grossly misleading. Rather, the quotation is taken from Professor Rubenstein's reply – which reflected his opinion only as to the *sufficiency* of the fees paid by the NFL, not the Settling Parties' or the Court's intention. *See* ECF No. 9571 at 5. To the contrary, the Settlement Agreement expressly provided for Class Counsel to seek a set-aside "to facilitate the Settlement program and related efforts of Class Counsel," ECF No. 6481-1 at 82 (Settlement Agreement § 21.1), and the Third Circuit's recent pronouncement on this issue should foreclose any debate as to whether a set-aside is contemplated or permissible. *See In re Nat'l Football League Players' Concussion Injury Litig.*, ___ F. App'x ___, No. 18-2012, 2020 WL 2214131, at *2 n.2 (3d Cir. May 7, 2020).

In addition, the Aldridge Objectors use their response to the Motion to Leave to mount a backdoor attack on Class Counsel's implementation-phase fee petitions, asserting that they have not been subject to scrutiny. ECF No. 11135 at 5-6. That, too, is untrue. In adjudicating the first petition, the Court reviewed billing records of all counsel for whom common benefit time was claimed, and it adjusted for work that did not comport with CMO5 (ECF No. 3710). *Se*e ECF No. 10378 at 3-6, 8. Moreover, Class Counsel has stated in each of his ensuing implementation-phase fee petitions that he stands ready, as always, to submit billing records to the Court for its *in camera* review. ECF Nos. 10374 at 16 n.7, 10767 at 14 n.9, 10986 at 12 n.12, 11126 at 12 n.10. If what the Aldridge Objectors are really complaining about is that they have not been afforded an opportunity to scrutinize those records, the simple answer, as before, is that they are not entitled

9

to one, nor is Langfitt, who similarly calls for disclosure of time records (ECF No. 11138 at 2, 10).[7]  Furthermore, given that the Court has conducted or will conduct such review itself, Langfitt's misguided call for a "Court-appointed representative" to do so (ECF No. 11138 at 2; *accord id.* at 10) is pointless.

The Aldridge Objectors also fault Class Counsel for not laying out the work that will be required for the duration of the Settlement.  *See* ECF No. 11135 at 4.  But Class Counsel has clearly complied with the Settlement's mandate that his set-aside request "describe[] (i) the proposed amount; (ii) how the money will be used; and (iii) any other relevant information." ECF No. 6481-1 at 82 (Settlement Agreement § 21.1).  He has catalogued the implementation-related common benefit work performed to date, distinguishing between those matters that were entirely "start-up" in nature and those that will probably be recurring (whether on the same or on a lesser scale), and has given as reasonable a projection as is feasible at this time as to the types of matters that can be expected over the next several years.  The Aldridge Objectors' unrealistic insistence on long-term precision, where the Settlement has more than six decades to run, demands the exercise of clairvoyance.

Locks declares that the funds generated by a 1% holdback added to the balance of what would remain in the AFQSF after disposition of the outstanding fee petitions would yield about $13 million which, if invested, would generate about $500,000 annually, and that this should suffice to compensate common benefit work.  ECF No. 11136 at 2-4.  It maintains that it is better

---

[7] *See, e.g.*, *Cassese v. Williams*, 503 F. App'x 55, 58 (2d Cir. 2012) ("[W]e are aware of no authority holding that class counsel must open its books to objectors for inspection by virtue of filing a fee motion."); *In re Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *17 (N.D. Ohio Sept. 23, 2016) (rejecting objectors' argument that they should have access to class counsel's billing and expense records; "the only requirement is that these documents must be provided to *the Court* for its own review") (italics in original).

positioned to assist Class members on a budget limited to such an annual income from the AFQSF. *Id.* at 7-8. That argument fails for three reasons.

First, it is simply wrong and unrealistic to assume that all common benefit work could be performed on an annual $500,000 shoestring budget. Second, the suggestion that Locks would be a better steward of the Settlement is, to put it charitably, unpersuasive. The Court itself was previously unconvinced of it in denying Locks' motion to be appointed Administrative Class Counsel (ECF No. 9890), and it subsequently terminated Locks' Class Counsel appointment (ECF No. 10624). Locks' asserted prowess is also unconvincing given its admission that it had not even been aware of the Settlement's prohibition against assignments of Monetary Awards. *See* Decl. of Gene Locks at 3, *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:18-md-02323-AB (E.D. Pa. May 1, 2018) (ECF No. 20). Third, unlike the case with Class Counsel, who at the outset renounced IRPA fees, there could be no assurance that Locks or any other firm with a substantial client inventory would not prioritize its own clients' interests over those of other Class members or the Class as a whole for the simple reason that the bulk of its compensation in this litigation will come from IRPA fees. Such temptation would become irresistible if the common benefit compensation pool were arbitrarily capped at $500,000 annually.[8]

In a similar vein, the Aldridge Objectors criticize Class Counsel for not pursuing cost containment efforts by using "willing IRPAs" or less expensive attorneys and paralegals from

---

[8] For its part, Langfitt proposes that if the income from investing the sum of what currently remains in the AFQSF and a 1% holdback proves insufficient, "the NFL shall bear the risk." ECF No. 11138 at 2; *acoord id.* at 3-4, 9. That offhand suggestion ignores that any directive to the NFL to pay additional class fees would effectively and unilaterally amend the Settlement Agreement, which capped the NFL's fee obligations. Moreover, the NFL has already gone on record that it will oppose any further fee request. ECF No. 9581 at 1. Langfitt offers no source of authority for forcing the NFL to pay additional attorneys' fees, save a vague and amorphous reference to the Court's "discretion" to determine whether the Settlement Agreement so permits. ECF No. 11138 at 3.

other firms to handle common benefit work, and their counsel offers his services in that respect. ECF No. 11135 at 2, 5, 10-12.  Setting aside the aforementioned concern about IRPAs potentially placing their clients' interests ahead of those of other Class members or the Class as a whole, that complaint is uninformed second-guessing of Class Counsel's judgment concerning which firm or professional is best qualified to assist Class members or to handle particular matters.  The Settlement Program demands sophisticated lawyering, including a nuanced understanding not only of the terms of the Settlement Agreement, but also the intersection of the science of neurocognitive impairment and neurological diseases with the interpretation of the Settlement Agreement and administration of the Settlement.  Proposals that cheaper lawyers and paralegals be employed show little understanding and respect for the breadth and complexity of issues that will need to be addressed over the lifetime of the Settlement to ensure that Class members continue to receive the benefits to which they are entitled under its terms.  Neither the Aldridge Objectors' counsel nor others griping about Class Counsel's billing rates can credibly claim to have the same breadth of familiarity with the Settlement Program as does Seeger Weiss.  Besides, the suggestion that any part of the stewardship of the Settlement should be entrusted to a lawyer who relentlessly sought to scuttle it (including on appeal from final approval) is dubious.

The Aldridge Objectors further complain that Class Counsel is "on the verge of exhausting" the AFQSF.  ECF No. 11135.  That is factually incorrect because, even if the Court grants the pending implementation-phase fee petitions (which collectively seek just over $7.2 million), about $5.8 million will still remain in the AFQSF.  ECF No. 11127-1 at 45-46 (¶ 98 & n.16).  Certainly, there is a kernel of truth to the Aldridge Objectors' point here:  namely, even with the steadily diminishing amounts of Class Counsel's common benefit fee requests, the AFQSF is at risk of being exhausted in some years' time, while this Settlement still has over 61 years to run.  That,

however, only points up the need for adoption of a set-aside that will be sufficient to ensure that funds remain available throughout the decades-long life of the Settlement Program.

Langfitt's attack on the hourly rates used by Class Counsel in his implementation-phase fee petitions fares no better.  *See* ECF No.  11138 at 8-9.   First, those rates are the blended rates that the Court has prescribed.  *See* ECF No. 10019 at 7 n.4, 25.  Second, they are well below Seeger Weiss' normal billing rates, which currently range from $875 to $985 per hour for the attorneys of partner and counsel rank involved in this case (who performed the bulk of the work in connection with the latest implementation-phase fee petition, *see* ECF No. 11126 at 13).  Third, contrary to Langfitt's unsupported contention, the Court's prescribed rates are, if anything, *far below* New York City market rates for lawyers and in line with paralegal rates.[9]  Fourth, the rates are *Class Counsel's* rates but, rather, the *same* rates used to compensate others for *their* implementation-phase common benefit work – including Locks for the work of its former partner, Langfitt.[10]  Fifth, Langfitt's disingenuous extrapolation of bloated annual salaries from these rates is ludicrous, for anyone knows (or ought to) the difference between the rates at which firms bill their legal professionals' services and the actual compensation that the timekeepers themselves actually earn.

---

[9] *Cf. Vista Outdoor Inc. v. Reeves Family Tr.*, No. 16 Civ. 5766 (JSR), 2018 WL 3104631, at *5-6 (S.D.N.Y. May 24, 2018) (partners' hourly rates of $1,165-$1,260 "not excessive in the New York City 'big firm' market"); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-CV-8925 (KMW), 2017 WL 3579892, at *5 (S.D.N.Y. Aug. 18, 2017) (approving class action fee award with partner billing rates of up to $995 per hour); *Genger v. Genger*, No. 14-cv-5683 (KBF) (DF), 2017 WL 9771814, at *4 (S.D.N.Y. May 22, 2017) (approving rates of $265.50 and $280 per hour for work performed by paralegals), *report and recommendation adopted*, No. 14-cv-5683 (KBF), 2017 WL 9771807 (May 30, 2017); *Rembert v. Cheverko*, No. 12-CV-9196 (KBF), 2015 WL 6971363, at *1 (S.D.N.Y. Nov. 9, 2015) (approving $620 and $660 per hour for work of experienced associates).

[10] *See* ECF No. 10378 at 5, 9 (Court's Jan. 16, 2019 decision on first implementation-phase fee petition, awarding Locks over $502,000); ECF No. 10374 at 16 (second implementation-phase fee petition, requesting nearly $414,000 for work performed by Locks).

Contrary to the theme underlying Langfitt's attack on the billing rates and the Aldridge Objectors' related innuendo that Class Counsel seeks an "uncapped, unchecked incentive . . . to work on its maintenance and oversight services" (ECF No. 11135 at 8), Class Counsel does not seek a holdback to fund a perpetual sinecure. Two years' worth of implementation-phase work currently remain uncompensated. Moreover, on a per-hour basis, there are more profitable endeavors for Class Counsel and his firm to be investing the substantial resources deployed here. Class Counsel, though, is mindful of his obligations to the Class. But given the sheer length of the Settlement, there will be insufficient funds down the road to compensate common benefit work, even if one accepts respondents' wishful thinking that all common benefit work could be performed at a cost of no more than $500,000 annually. What is more, as Class Counsel has previously explained that, given the lengthy lifespan of this Settlement, the responsibility for protecting the Class's interests and handling effectuation-related common benefit work will inevitably have to be transitioned to other counsel at some point.

Citing Professor Rubenstein's initial recommendation against a set-aside, the Alexander Objectors urge that he "be re-engaged to consider any new facts and to provide any supplemental opinions on the proposed holdback." ECF No. 11135 at 2, 7-8. That the Aldridge Objectors invoke Professor Rubenstein several times in their objections is ironic, given that they had attacked his recommendation that IRPA fees be capped by wrongly accusing him of a conflict of interest – a smear they repeated in the Third Circuit. *See* ECF No. 9554 at 1, 9-10; Opening Br. of Appellants Melvin Aldridge *et al.* at 18-19, *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 18-2012 (3d Cir. filed Aug.12, 2019) (arguing that "Professor Rubenstein had a direct conflict

of interest that precluded [his] appointment" as expert).[11] Thus, the Aldridge Objectors' esteem for Professor Rubenstein's views is selective. He is either an expert deserving of deference or a compromised one, depending on whether his opinion advances or undercuts their position. Putting that aside, Class Counsel has already addressed the flaws in Professor Rubenstein's recommendation, explaining that, in initially recommending against a set-aside, (i) Professor Rubenstein substantially underestimated the nature and extent of effectuation-phase work; and (ii) his assumption that the fees paid by the NFL would suffice to compensate both the work that went into securing and defending the Settlement and that entailed in overseeing its implementation flowed in large part from his undervaluing the former. ECF Nos. 9552-1 at 6-11, 11127-1 at 6, 12-44 (¶¶ 11, 27-93).

Finally, the Pro Se Claimants contend that Class Counsel is seeking fees "without providing any details to justify the payments." ECF No. 11139 at 2. That is incorrect given all of the detail that Class Counsel has furnished concerning implementation-phase work performed on behalf of the Class – both in the Supplemental Declaration and in the individual effectuation-phase common benefit petitions. The Pro Se Claimants also insist that "there should be a budget" set as to Class Counsel's implementation-phase work (*id.* at 3), and Langfitt similarly calls for Class Counsel to adopt a budget (ECF No. 11138 at 4).[12] That, however, is unrealistic because sundry

---

[11] As the Court noted, Prof. Rubenstein had spoken at a February 21, 2012 meeting of Plaintiffs' counsel, after which he had no further involvement in this litigation. ECF No. 8376 at 1-2 n.1. That meeting occurred over two weeks before the Court issued its initial CMO. *See* ECF No. 4 (Mar. 6, 2012). There was no suggestion that this fleeting appearance influenced his recommendations nearly six years later – which applied equally to *all* counsel representing Class members, including attendees at that meeting.

[12] Langfitt further suggests that, with any budget, Class Counsel should also have to submit a "competitive bid." ECF No. 11138 at 10, 12. Competitive as to whom it does not explain. At this stage, Seeger Weiss has been overseeing the operation of the Settlement Program without any peer, and it has been doing so successfully for over three years. Given both the firm's accumulated knowledge and the quality of personnel that it has dedicated to the task, this is an empty proposal.

unexpected issues and events will undoubtedly continue to arise at times, requiring commitment of extra resources.

## CONCLUSION

For the foregoing reasons, the Court should disregard or overrule the putative objections to the requested set-aside that were improperly lodged in response to the Motion for Leave.

Dated:  August 7, 2020

                                  Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
cseeger@seegerweiss.com
(T) 212-584-0700
(F) 212-584-0799

***Class Counsel***

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's ECF system on August 7, 2020.

*/s/ Christopher A. Seeger*
Christopher A. Seeger
