# EXHIBIT "B"

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody** |
| Kevin Turner, et al.,<br>      Plaintiffs,<br>v.<br>National Football League, et al.,<br>      Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

## SUR-REPLY OF THE LOCKS LAW FIRM
## TO REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN

Pursuant to the January 23, 2018 order of the Court, class counsel Locks Law Firm ("LLF"), through their counsel Professor Tobias Barrington Wolff, respectfully submits this sur-reply to the Reply of Professor William B. Rubenstein to Reponses to Expert Report ("Rubenstein Reply"). In light of the changes Professor Rubenstein has made, LLF accepts the report's recommendations and withdraws its request to take discovery on those recommendations subject to the following qualifications, which LLF reserves the right to advance in any further proceedings.

<u>First</u>. LLF accepts Professor Rubenstein's modified recommendation imposing a 22% cap on contingency fees in all individual contracts. For the reasons

set forth in its initial reply, however, LLF continues to disagree with the methodology that Professor Rubenstein employs to arrive at his recommendation.

Professor Rubenstein has accepted updated actuarial estimates submitted by Co-Lead Counsel Seeger Weiss and used those estimates as the basis for his revised recommendation. Rubenstein Reply at 2–3. As LLF explained in its response to Seeger Weiss's petition for an award of common benefit fees, it is too early to make confident projections about the net present value of the settlement. Participation rates have diverged from the initial estimates advanced by Co-Lead Counsel and the NFL. As LLF argued in its response to the Seeger petition for common benefit fees, it would be premature for the Court to issue an award of all or substantially all common benefit fees at this stage. We respectfully submit that the willingness of the Court's appointed expert to modify an important recommendation based on a single, untested set of updated actuarial estimates demonstrates that it is still too early to make confident pronouncements about the exact value of the settlement.[1]

On the core methodological question — whether the amount of common benefit fees awarded to class counsel has any bearing on individual contingency fees in this case — LLF respectfully submits that Professor Rubenstein's reply fails to address the issue. LLF has explained the fundamental distinction between a lump-sum settlement award, where the amount available to the class is fixed and it may be appropriate to treat an award of common-benefit fees as an offset to that fixed

---

[1] LLF agrees with Professor Rubenstein that a partial interim award of common-benefit fees might be appropriate. *See* Rubenstein Reply at 7 n.23 ("If significant delay is a real concern, the Court might consider an interim fee award, while enabling the NFL the opportunity to respond to the updated initial fee petition.") LLF also asks that the Court promptly order the payment of all common-benefit expenses, as LLF is aware of no objections that have been made to those requests.

2

amount, and an uncapped settlement with a defined schedule of benefits and no limit to the total recovery available to the class, where a separately negotiated award of common-benefit fees will typically have no impact on the recovery available to class members. This case involves an uncapped settlement with a defined schedule of benefits. Nonetheless, Professor Rubenstein seeks to justify his position with a "simple analogy" that posits a lump-sum award in a case involving an individual claimant. Rubenstein Reply at 3 n.8. This misses the point altogether.

Professor Rubenstein goes on to emphasize later in his reply that "The Settlement Agreement states in no uncertain terms that the NFL will pay Class Counsel's fees: $112.5 million is simply the point at which the NFL begins to protest." Rubenstein Reply at 6. LLF agrees. It would be difficult to offer a more concise description of an independently negotiated fee that does not diminish the recovery available to the class. The common-benefit fees are a separate obligation under the Settlement Agreement, independent of the total class recovery.

Because Professor Rubenstein's bottom-line recommendation of a 22% cap is a reasonable one and will preserve the negotiated contingency fee in LLF's contracts with its individual clients, LLF accepts that recommendation and withdraws its objection to Professor Rubenstein's report on that score. It does so, however, subject to the disagreements set forth above and in its initial response, and without prejudice to its ability to raise those disagreements in future proceedings.

Second. LLF agrees with Professor Rubenstein's basic approach to the set-aside question: "the NFL's $112.5 million fee and expense payment should be sufficient to fund past, present, and future work, so long as certain safeguards are

3

put in place." There is no present indication that any additional holdback is required and no reason to believe that any such need will arise going forward.

Professor Rubenstein writes that a portion of the total common-benefit fee award should be allocated to an interest-bearing account that would produce a yearly budget of some $1,000,000 to cover any unforeseen implementation problems and, if necessary, that the Court should require the NFL to pay an additional $10,000,000 in common-benefit fees in the unlikely event that existing funds prove inadequate for implementation of the settlement. Rubenstein Reply at 6–7. LLF endorses this approach and further notes that existing funds already allocated through the Monetary Award Fund and the Baseline Assessment Program may be available to cover implementation issues arising in those settings.

More broadly, there is every reason to believe that $1,000,000 per year will be more than enough to cover the administration of the settlement going forward. Most of the major disputes over implementation are already fully joined. The documentation required for submitting claims; protocols for conducting audits; standards of review when the NFL contests a player award — these and other core issues are being decided now, largely through the efforts of LLF and other firms that represent individual players in the claims process. Once these questions are resolved, there should be far less occasion for resource-intensive fights over implementation. If such fights do continue, then more direct intervention by the Court or the Special Masters may be called for.

LLF also respectfully submits that the Court and the Special Masters would be well served by receiving input from lawyers who are actually litigating on behalf

4

of former players in the claims administration process when they seek to determine what additional demands that process might impose. Co-Lead Counsel Seeger took the lead in negotiating the Settlement Agreement, but by his own admission he represents only a few former players. It is LLF's understanding that Mr. Seeger has registered a handful of players and very recently filed a single claim. He thus has little to no first-hand experience advocating on behalf of individual players in the claims process.

At the end of his reply, Professor Rubenstein indicates that any set-aside should happen, if at all, only if "necessary as a last resort" and explores the possibility of placing a 2% set-aside in escrow for future use. Rubenstein Reply at 7–8. LLF believes that amount is still excessive, even as a last-resort contingency. What is more, any set-aside would have to be structured so as to impact unrepresented and represented players equally. But the Court need not reach these issues. It is already clear that no last resort is necessary. The plan that Professor Rubenstein lays out using funds already allocated under the Settlement, along with LLF's suggestions above, will suffice to ensure effective implementation of the fund.

        Respectfully submitted,

/s/ Tobias Barrington Wolff
Tobias Barrington Wolff
Professor of Law
University of Pennsylvania Law School*
3501 Sansom Street
Philadelphia, PA 19104
Phone: 215-898-7471
twolff@law.upenn.edu
*For identification purposes only

/s/ Gene Locks
Gene Locks
David D. Langfitt
LOCKS LAW FIRM
The Curtis Center
601 Walnut Street, Suite 720 East
Philadelphia, PA 19106
Phone: (215) 893-3423
Fax: (215) 893-3444
Email: glocks@lockslaw.com
dlangfitt@lockslaw.com

Dated: January 30, 2018

5

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true and correct copy of the foregoing Sur-Reply of The Locks Law Firm to Report of Professor William B. Rubenstein was served on this date via the Electronic Filing System on all counsel of record in Case No. 2:12-md-02323-AB, MDL No. 2323.

DATE: January 30, 2018

/s/ Gene Locks
Gene Locks, Class Counsel