IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL | § | |
| LEAGUE PLAYERS' CONCUSSION | § | |
| LITIGATION | § | |
| _____ | § | No. 2:12-md-2323 (AB) |
| | § | |
| | § | MDL No. 2323 |
| THIS DOCUMENT RELATES TO: | § | |
| ALL ACTIONS | § | |

RESPONSE OF CERTAIN CLASS MEMBERS TO CLASS COUNSEL'S
SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF POST-
EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS

The Court scheduled and conducted argument on Class Counsel's Second

(ECF 10374), Third (ECF 10767), and Fourth (ECF 10986) Post-Effective Date Fee

Petitions (the "Subject Fee Petitions"), collectively requesting the Court award Class

Counsel another $6.1 million for alleged settlement implementation and

administrate work.    Class  Members  Melvin  Aldridge,  *et al.* [1] (collectively,

_____

[1] The Class Members include Melvin Aldridge, Patrise Alexander, Charlie Anderson, Charles E. Arbuckle, Cassandra Bailey Individually and as the Representative of the Estate of Johnny Bailey, Rod Bernstine, Reatha Brown Individually and as the Representative of the Estate of Aaron Brown, Jr., Curtis Ceasar, Jr., Larry Centers, Trevor Cobb, Darrell Colbert, Elbert Crawford III, Christopher Crooms, Gary Cutsinger, Jerry W. Davis, Tim Denton, Leland C. Douglas, Jr., Michael Dumas, Corris Ervin, Robert Evans, Doak Field, James Francis, Baldwin Malcom Frank, Murray Garrett, Clyde P. Glosson, Anthony Guillory, Roderick W. Harris, Wilmer K. Hicks, Jr., Patrick Jackson, Fulton Johnson, Richard Johnson, Gary Jones, Eric Kelly, Patsy Lewis Individually and as the Representative of the Estate of Mark Lewis, Ryan McCoy, Emanuel McNeil, Gerald McNeil, Jerry James Moses, Jr., Anthony E. Newsom, Winslow Oliver, John Owens, Robert Pollard, Derrick Pope, Jimmy Robinson, Thomas Sanders, Todd Scott, Nilo Silvan, Matthew Sinclair, Dwight A. Scales, Richard A. Siler, Frankie Smith, Eric J. Swann, Anthony Toney, Herbert E. Williams, James Williams, Jr., Butch Woolfolk, Keith Woodside, Milton Wynn, and James A. Young, Sr.

"Aldridge") have filed oppositions opposing each of the Fee Petitions in their current forms and requesting the Court deny each at this time. *See* ECF 10403 (2nd); ECF 10792(3rd), and ECF 11006 (4th).[2] Following the Court-initiated status conference and arguments of counsel on the Subject Fee Petitions, the Court permitted Class Counsel to submit a supplemental memorandum to specifically respond to substantive arguments. *See* 9/9/20 Hearing Transcript, at 21. Class Counsel filed a supplemental memorandum addressing a single point: the reasonableness of the "blended billing rates" it used. *See* ECF 11187. It offers no response whatsoever on the other points at issue.

<u>INTRODUCTION</u>

During the September 9 hearing, Class Counsel extolled his professional efforts, citing "the number of appeals that we've handled" and "the creation of the Education Fund – all the major milestones of the settlement," through a 23-slide Power Point not shared with Aldridge and, according to the Court, not relevant to

---

[2] In its supplemental memorandum, Class Counsel attempts to broaden the scope of the Court's notice by including its most recently-filed Fifth Petition, which requests another $1.15 million. *Id.*, citing ECF 11125. The Fifth Petition, however, was not before the Court during the September 9, 2020 hearing. *See* 9/9/20 Transcript, at 5 (THE COURT: Mr. Lubel, it's on the second, third, and fourth petition, is that not correct? MR. LUBEL: That's what we received notification from Mr. Walton about, Judge. THE COURT: That's right, okay. . . .); 9 (the Court indicating that anything in your papers pertaining to the Fifth Petition "I'm not going to rule on"). In any event, Aldridge has opposed the Fifth Petition, too, and it is infirm for the reasons articulated herein as well. *See* ECF 11134. Indeed, the reason the Court did not include the Fifth Petition in the hearing is that a hearing on the Fifth Petition would necessarily "have a lot more people involved" in the challenge. *Id.* at 9.

the post-effective fees with the exception of the final three or four slides.[3]  The point is not a procedural criticism; but one of substance.  Class Counsel starts each hearing by "giving [the Court] a quick update on where we are on the numbers"; that is, how the settlement is performing because it "helps form the context of our [attorneys' fee] discussion today."  9/9/20 Transcript, at 5-6.

The Court is right and Class Counsel is wrong.  The performance of the settlement bears no relationship whatsoever to whether Class Counsel's post-effective date fees are reasonable and necessary.  Class Counsel has been paid for achieving the settlement;[4] indeed Class Counsel has been paid a percent of Class Member's *projected* recovery for achieving the settlement—a settlement with administrative systems, appeals systems, Special Master systems in place.  Class Counsel is neither entitled to be paid a second time for achieving the Settlement nor entitled to use the success of the Settlement as a basis to be paid for work after the Settlement.  Class Counsel's post-effective fee petitions should demonstrate that the fees sought are for reasonable and necessary work at reasonable rates for the services performed.  In the subject Fee Petitions, Class Counsel has not even tried to make this showing.

---

[3] *See* 9/9/20 Transcript, at 7.

[4] Recall, Class Counsel was awarded $51+ million for "securing the settlement" in a "case in which there was no paper discovery, no depositions, no motion practice, no litigation, no trials, [etc.].)." ECF 10019, at 26 ($51,737,185.70); ECF 9526, at 40 n. 124, quoting ECF No. 8709 at 30.

ARGUMENT

I.   Response to Class Counsel's Supplement

Class Counsel's three-page supplemental memorandum advances a single argument in response to Aldridge's challenge to $6 million in fees:  The rates charged are okay because they are (a) "Court prescribed" blended rates[5] and (b) blended rates are recognized in the Third Circuit.  *See* ECF 11187, at 2.  Before

_____

[5] Even if blended billing rates are appropriate for use here, Class Counsel did not use the $623.05 "blended rate" chosen by the Court.  *See In re National Football League Players' Concussion Injury Litigation*, ("*NFL*") MDL No. 2323, 2018 WL 1635648, at \*9 (E.D. Penn. Apr. 5, 2018) (stating that "to avoid this [disparity among partner rates] problem with the submitted rates, I will use a blended billing rate, which is endorsed by the Third Circuit. … To "blend" rates, a court can simply average the rates of all partners, associates, and paralegals."), *aff'd in part, remanded in part*, 814 Fed. Appx. 678 (3d Cir. 2020).  Here, blending the rates of all partners, associates, and paralegals produces an average rate of $623.05 per hour.  *Id*.)  Instead, Class Counsel used an "average rate" later discussed by the Court. (*See* ECF 11187, at 2 n. 1, citing 10019, at 7 n.4 describing these rates as the "average billing rate" for each of the segregated categories of service necessary to address the lack of uniformity and departure from what the Court was previously advised was a "consensus to establish reasonable uniform hourly rates"—promised but not delivered by Class Counsel.  *See* ECF 10019, at 7, citing ECF 54, the 2012 Plaintiffs' Joint Application for Appointment of Plaintiffs' Executive Committee, at 8.) The average rate was calculated by reference to and to bring into a range of reasonable the rates of all Class Counsel participating in the initial fee request more than a year before the Court terminated all assignments other than Mr. Seeger's.  Consequently, even if the Court is persuaded that a blended rate could be used on a pure lodestar (vs. percent-of-the-recovery), a proposition for which Class Counsel offers no legal support, the Court still should recalculate a blended rate based upon proof of the reasonable billing rates of the partners, of counsel attorneys, associates, and paralegals at issue in the subject Fee Petitions.  At this point, with all other Class Counsel having been terminated, why should their firm's rates be relevant to what is reasonable solely for Class Counsel's lodestar fee petition?  Why, for example, are Class Counsel's paralegals billed at $260/hour when Class Counsel has sworn that he bills the vast majority of them (5 of 6) at $215/hour?  *See* ECF 7151-2, at Addendum 1.  The difference is not inconsequential.  In fact, Class Counsel, through its second, third, and fourth Fee Petitions, is attempting to bill almost $40,000 more for paralegal work (at $260/hour) than it might otherwise be entitled to receive for what it swore was its paralegals' reasonable rates ($215/hour).

turning to the argument, it bears mention that Class Counsel apparently assumes, incorrectly, that Aldridge's only challenge is to Class Counsel's rates.  Aldridge's challenge is simple and fundamental:  Class Counsel has failed to meet its burden to show that the Subject Fee Petitions should be granted because it has not established (or undertaken to establish) that the legal services for which compensation is sought represent services reasonably and necessarily performed at the rates charged. Practically speaking, the "examples of unreasonable" that Aldridge is left with— having receiving nothing that would reveal the actual services rendered—is the rate charged.  Neither Aldridge nor, more importantly, the Court could be expected to assess whether the total hours charged are reasonable for the service rendered or whether the service was necessary.  Still, Class Counsel's supplemental "rates" argument fails.

First, the use of a "blended billing rate" in the administrative phase of the Settlement is inappropriate because blended rate, as a concept, is inapplicable.  Class Counsel points only to the Court's prior determination to use a blended rate.  But, as the Court of Appeals observed reviewing the percent-of-recovery fees, the Subject Fee Petitions are no longer measured by a lodestar "crosscheck," or estimate.  *See In re Nat'l Football League Players' Concussion Injury Litig.*, 814 Fed. Appx. 678, 683 n. 8 (3d Cir. 2020).  Rather, Class Counsel's Fee Petitions are subject to a pure lodestar analysis, where (i) the reasonableness of the actual rates, (ii) the hours spent

on particular tasks (especially in light of the appointment of Administrators, Magistrates, and other counsel to perform tasks at no additional cost to Class Members), and (iii) the ultimate fee are directly before the Court.

Class Counsel has never disputed and does not by its supplement dispute that the Court must measure its post-effective fees on a vastly different methodology. Because Class Counsel's administrative Fee Requests are subject to a pure lodestar analysis, as opposed to a "back-of-the-napkin" "crosscheck," they require greater *public* security. *See id.* For example, Mr. Seeger, now as sole Class Counsel, is delegating to himself the performance of professional services to the Class. He has not, however, disclosed anything beyond generalities—previously rejected by this Court in connection with the issue of the 5% set aside[6]—about what he is doing and why he is doing it. Is Mr. Seeger duplicating the efforts of the multiple Special Masters or Claims Administrators? Is he duplicating the efforts of Mr. Suplee, reserve counsel for *pro se* Class Members,[7] or the IRPAs? Is he otherwise efficiently prosecuting this matter for the benefit of the Class without undue costs or fees? Nothing in his filings allow the Court to make those determinations; there are no time and expense records; there is no disclosure of Class Counsel's actual billing rates, the dates for the hours allegedly worked, the identity of the individuals alleged

---

[6] *See* ECF 9860, at 2 and 17.

[7] *See* ECF 9561.

to have performed the service(s), or how the work was divided among partners, "counsel," associates, or paralegals.[8]  These are but a few examples of the critical analysis the Court must perform on a pure lodestar to know that Class Counsel's post-effective fees are reasonable and necessary.  But, Class Counsel has not provided the Court anything with which to perform the analysis.

On this point, Aldridge points to the CMO 5-mandated billing and expense records that should be available for audit.  Aldridge has asked for these materials.  Aldridge has asked, in the alternative, for the Court's previously-appointed auditor to review these materials.  By its supplement, Class Counsel offers no reason that CMO-5 data cannot be supplied.

In the past, Class Counsel's only retort is a suspicion of Adridge's nitpicking motives.  Although Adridge still urges that Class Members are entitled to examine the data supporting the fee statement they are being asked to pay, the Court could nonetheless easily address Class Counsel's suspicions while discharging its fiduciary duty to Class Members to scrutinize the reasonable and necessary basis for such fees, as follows.  Class Counsel has offered to tender the supporting data to the Court.  Assuming, without conceding, Class Counsel could make some modicum of showing of privilege, the Court could receive the supporting data *in camera* for its

---

[8] This lack of transparency deprives the Class of vital information material to judicial review of Class Counsel's repetitive Fee Petitions.  *See Torres v. SGE Management, L.L.C.*, 945 F.3d 347, 353 (5th Cir. 2019).

fee expert's review and report.  Thereby, the Court would (a) allow for meaningful review of Class Counsel's Petitions, (b) provide the Class Members with comfort that Professor Rubenstein has undertaken a critical analysis, taking into account his prior concerns for unbridled fees; and (c) provide a tangible record for review by the Court of Appeals.  *See In re Cendant Corp*., 260 F.3d 183, 192-93 (3d Cir. 2001) (confirming the public right of access is "particularly compelling" when "members of the 'public' are also plaintiffs in a class action.")

On the present record, by contrast, (a) Class Counsel has provided no category-breakdown of service or expenses claimed; (b) none of Class Counsel's billing and expense records necessary to support a lodestar have been made part of the record (public, sealed, or otherwise); and (c) Class Counsel does not even suggest to the Court that any effort has been made to manage or coordinate services with other professionals similarly tasked to avoid overlap or double billing and in a manner that preserves or maximizes the monies set aside for ongoing implementation legal fees and expenses.

Second, the "plethora" of cases string-cited by Class Counsel in support of its reasonableness argument are inapposite.  None of those cases support the billing rates requested by Class Counsel under these circumstances.  None involve a fee award that was ultimately segregated between "securing the settlement" and "implementing the settlement," as was done here; none address reasonable

compensation for administrative, implementation work; and most involve "abridged," back-of-the-napkin lodestar analyses done solely as a crosscheck on the reasonableness of a percentage-of-the-recovery fee. *See* ECF 11187, at 3 n. 2.[9] In short, none of those cases support the use of billings rates for attorneys at $490-

---

[9] Citing, *e.g.*, *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 657-58 & n. 30 (E.D. Pa. 2015) (dealing with the original fee request and approving a reduced total fee award—$11 million percentage-of-recovery vs. $33 million lodestar—to avoid reducing the class's recovery); *Stevens v. SEI Investments Co.*, CV 18-4205, 2020 WL 996418, at *10, 13 (E.D. Pa. Feb. 28, 2020) (dealing with the original fee request and approving a percentage-of-recovery fee award even though the fee was expected to cover "additional work … following … approval;" used an "abridged lodestar analysis" merely as a crosscheck); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *12 (E.D. Pa. Sept. 24, 2019) (dealing with the original fee request and granting an unopposed fee award of $300,000, which accounted for continued "training and monitoring" associated with the settlement that "could be as substantial as $290,000 per year."); *In re Cigna-Am. Specialty Health Admin. Fee Litig.*, 2:16-CV-03967-NIQA, 2019 WL 4082946, at *2, 13 (E.D. Pa. Aug. 29, 2019) (dealing with original fee request and granting unopposed percentage-of-recovery fee award in case involving virtually no post-settlement implementation/administrative work); *Vista Outdoor Inc. v. Reeves Family Tr.*, No. 16 Civ. 5766 (JSR), 2018 WL 3104631, at *5-6 (S.D.N.Y. May 24, 2018) (non-class action case rejecting excessive rates requested for "paralegals, research managers, research analysts, and eDiscovery specialists," and concluding rates of $150-$200/hour were reasonable, even for the "New York City 'big firm' market"); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 14-CV-8925 (KMW), 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (dealing with original fee petition and awarding percentage-of-recovery fee; no discussion on post-settlement implementation work or fees); *Genger v. Genger*, 14CV05683 (DF), 2017 WL 9771814, at *4 (S.D.N.Y. May 22, 2017), *report and recommendation adopted*, 14-CV-5683 (KBF), 2017 WL 9771807 (S.D.N.Y. May 30, 2017) (performing a true lodestar calculation in a non-class action case involving actual litigation, not settlement administration); *In re Viropharma Inc. Sec. Litig.*, CV 12-2714, 2016 WL 312108, at *15, 17-18 (E.D. Pa. Jan. 25, 2016) (dealing with original fee request and using the percentage-of-the-recovery method with lodestar merely as a crosscheck); *Rembert v. Cheverko*, 12-CV-9196 KBF, 2015 WL 6971363, at *1 (S.D.N.Y. Nov. 9, 2015) (performing a true lodestar calculation in a non-class action case involving actual litigation, not settlement administration; more than 30 million pages of documents; *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 07-MD-01871, 2012 WL 6923367, at *1–2 (E.D. Pa. Oct. 19, 2012) (noting reasonableness of billing rates in a case involving "220 depositions; "more than 20 expert witnesses, from numerous fields of discipline;" "30 discovery hearings;" "preparing several bellwether cases for trial;" etc); *In re Merck & Co., Inc. Vytorin Erisa Litig.*, CIV.A. 08-CV-285DMC, 2010 WL 547613, at *12 (D.N.J. Feb. 9, 2010) (using lodestar as a crosscheck for percentage-of-the-recovery method on total fee award).

$760/hour and paralegals at $260/hour[10] for fielding phone calls, assisting with the quickly-declining, trickle of new claims,[11] or otherwise generally "overseeing" a now-mature settlement, which, by the way, is already overseen by separately-compensated Special Masters, Administrators, *etc*. The Special Masters, for example, are separately compensated from the MAF (funded by the NFL) at $200,000/year for overseeing the administration and implementation of the entire Settlement.[12] By its most recent Fee Petitions, Class Counsel is seeking ten times (10x) that amount for basically the same function.

## II.    Response to Class Counsel's Telling Silence

Class Counsel's supplemental memorandum fails to address in any way the following argument points made by Aldridge's counsel – though that was the point of the Court's affording post-argument briefing:

1.    Approving these Fee Petitions would bring the Court dangerously close to exhausting the Fee Fund though the Court's expert, Professor Rubenstein, declared (ECF 9571, at 5) that the $22.8 million originally set aside by the Court should be sufficient to fund implementation-related fees and expenses for the remainder of Settlement. *See* 9/9/20 Transcript, at 10.

2.    These Fee Petitions are to be reviewed using a rigorous lodestar methodology, not a ballpark lodestar crosscheck particularly where, as

---

[10] *See* ECF 11187, at 2 n. 1.

[11] *See, e.g.*, ECF 11115 and 11116.

[12] *See, e.g.*, ECF 6073-2, at 53-54 (Article X, Class Action Settlement Administration) and § 10.1(a)-(c).

here, Class Counsel's request for fees is truly adverse to the Class Members. *See* 9/9/20 Transcript, at 20; *see also* ECF 9526, at 14 n. 47-48; ECF 9571, at 8 n. 25 (Professor Rubenstein recommending that "as the Class's counsel is adverse to the class members as to the use of these monies, I recommend that the newly appointed advocate for *pro se* class members be charged with safeguarding these monies for them.");

3.  Using the barest information to which Aldridge has access, these fee petitions raise a number of "unreasonableness" *red flags* such as the hourly paralegal rates placed in context, that:

    a.  exceed those paralegal rates to which Class Counsel swore at the initial petition stage (ECF 7151-2); and

    b.  amount to, for example from the Fourth Petition, an annualized salary of $136,000 for the paralegal working 10 hours per week. *See* 9/9/20 Transcript, at 10-12.

Again, this failure-to-address is not a procedural point.  Class Counsel bears the burden on these fee petitions.  Class Counsel must show that it should be paid for the professional services rendered *not* because they were actually rendered, but because they were reasonably rendered and necessarily rendered at the rate charge. That means, at a minimum, Class Counsel should show why Class Counsel attorneys are seeking fees that fall into categories overlapping other professionals designated by the Court (Mr. Suplee) or the Settlement (Claims Administrator; BAP Administrator) to perform such services.  These are professionals whose efforts are capped at a rate predetermined to be reasonable for the work assigned and whose fees are not back charged to Class Members.  Class Counsel's Subject Fee Petitions do not afford sufficient information to meet that burden or to allow the Court to

perform the rigorous lodestar analysis required now that the percent of recovery fee has been paid on a lesser standard.

Adridge asks the Court to hold Class Counsel to that standard. Specifically, Aldridge asks the Court to return to its appointed expert to evaluate the work for which Class Counsel seeks payment as reasonable and necessary under the circumstances, particularly as Class Counsel's interests are categorically in conflict with Class Members on these continuing fees.

## PRAYER

For the reasons stated herein, during the September 9, 2020 hearing, and in Aldridge's responses and objections to Class Counsel's repetitive Fee Petitions, each Fee Petition should be denied at this time. Class Counsel should be required to submit for review detailed time and expense data justifying the requested fees/expenses. The Class—or, at a minimum, a Court-appointed neutral—is entitled to see exactly what Class Counsel is charging them for.

Dated: September 30, 2020                    Respectfully submitted,

                                             */s/ Lance H. Lubel*
                                             Lance H. Lubel, Esq.
                                             Texas Bar No. 12651125
                                             Adam Q. Voyles
                                             Texas Bar No. 24003121
                                             LUBEL VOYLES LLP
                                             675 Bering Drive, Suite 850
                                             Houston, Texas 77057
                                             Telephone: (713) 284-5200
                                             Facsimile: (713) 284-5250

Email: lance@lubelvoyles.com
Email: adam@lubelvoyles.com

*Attorneys for the Identified Class Members*

CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2020, I filed the foregoing through the Court's CM/ECF system, which will provide electronic notice to all counsel of record and constitutes service on all counsel of record.

*/s/   Lance  H. Lubel*
Lance H. Lubel