**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION** | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| **THIS DOCUMENT RELATES TO:**<br><br>**REGARDING SETTLEMENT CLASS MEMBER JESSIE SMALL** | Honorable Anita B. Brody |

**OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING DISCHARGE OF ATTORNEY LIEN BY HOWARD AND ASSOCIATES, P.A.**

Shenaq PC, on behalf of its client and Settlement Class Member, Jessie Small, requests that the Court review and set aside the Magistrate's Report and Recommendation regarding the assertion of an Attorney Lien by Howard and Associates, P.A. ("Howard") in the National Football League's Player's Concussion Injury Litigation (the "Report," ECF Doc. No. 11193). In the Report and Recommendation, the Magistrate correctly noted that while Jessie Small was jointly represented by Howard and Amir Shenaq of Shenaq PC (collectively "Shenaq"), Shenaq performed the vast majority of the work to advance Mr. Small's claim while "Howard largely chose to remain in the background." **Exhibit 1, Report at 17**. The Magistrate further correctly found that Shenaq did all the meritorious work to advance Mr. Small's claim, while Howard hindered and delayed the claim.

Nevertheless, the Magistrate improperly attributed ***all*** of Shenaq's work on behalf of Mr. Small to Howard, up until the point Mr. Small terminated Howard's representation in September 2019 to proceed solely with Shenaq. This error largely stems from the Magistrate's failure to fully address the *McKenzie* factor requiring the Court to consider "the circumstances by the time the court enforces the agreement." *In re Nat'l Football League Players' Concussion Injury Litig.*, No.

19-1760, 2020 WL 5409015, at *2 (3d Cir. Sept. 9, 2020) and by placing too much weight on the first *McKenzie* factor—the agreement at the time of contracting—to the detriment of the other four factors which mandate significantly reducing Howard's apportionment of fees in favor of Shenaq.

The most significant changed circumstance not addressed by the Magistrate is the fact that Howard, in breach of his fiduciary duties, misrepresented to the Smalls that they could not sever their relationship with Howard without also severing their relationship with Shenaq. At the hearing before the Magistrate, Mrs. Small provided unrebutted testimony that Howard "made my husband believe that without [Howard], Amir wouldn't be there. And the only reason we had stayed [with Howard] was because of Amir's services." **Exhibit 2, Hrg. Tr. at 90:9-11**. But for Howard's misrepresentations to his client, Small would have severed his relationship with Howard well over a year before September 2019, most likely in May or June of 2018. Accordingly, it was error for the Magistrate to conclude that he "cannot conflate the two time periods" before and after Small formally severed his relationship with Howard. The Magistrate's conclusion ignores the change in circumstances between Howard and Small resulting from Howard's misrepresentation and improperly rewards Howard for his misconduct.

The Magistrate also erroneously awarded Howard $6,085.44 in expenses arising out of Howard's retention of a neurologist who relied upon testing from a neuropsychologist who lacked the appropriate credentials to allow a Qualifying Diagnosis under Settlement Agreement. Those costs were unreasonable because the neuropsychologist was not qualified to make the diagnosis under the NFL Settlement Agreement and any conclusion rendered by the neurologist could not have advanced Mr. Small's claim. Moreover, none of these evaluations supported or were used at all to support Small's claim for which he was ultimately paid. Howard's waste of money and

failure to comply with basic procedural requirements under the NFL Settlement should not be taxed against Mr. Small's recovery.

In light of such error, Shenaq, on behalf of Mr. Small, objects to the Magistrate's recommendation that Howard receive 13.2% of Small's Monetary Award as attorney's fees and for Shenaq to receive only 1.8% and to the Magistrate's recommendation that Howard be reimbursed $6,085.66 in costs associated with the 2017 evaluations by unqualified physicians. **Exhibit 1, Report at 24.** Shenaq, on behalf of Mr. Small, respectfully requests that the Court discharge Howard's Attorney Lien, not award any fees to Howard, and reduce Howard's reimbursement of costs by the $6,085.44 associated with the 2017 evaluations by unqualified physicians.

## I. FACTUAL BACKGROUND

In 2016, Mr. Small engaged attorney Timothy Howard and his law firm Howard and Associates (collectively, "Howard") to represent him in connection with submitting a claim for compensation pursuant to the NFL Concussion Settlement Agreement. In April 2018, Mr. Small agreed to associate Shenaq as co-counsel and designated Shenaq as his representative in the settlement program and authorized recipient for all future communications from the Claims Administrator.

Howard's representation of Mr. Small got off to a rocky start. Despite representations to the contrary in its contingent fee agreement, Howard did not provide accurate and timely information regarding Mr. Small's potential claim. Furthermore, the recommendations made by Howard early on in Mr. Small's representation delayed and complicated Mr. Small's claims that were later submitted by Shenaq in 2018 and 2019. For instance, Howard retained a neurologist who relied upon testing from a neuropsychologist who lacked the appropriate credentials to allow

a Qualifying Diagnosis under Settlement Agreement. These errors required a complete re-evaluation of Mr. Small's claim delaying its submission by a year, which likely cost Mr. Small at least $100,000 because the age of the claimant is a factor affecting the amount of a player's claim under the NFL Settlement. Furthermore, Howard's use of improper doctors caused Mr. Small's claims to be delayed by two audits. In a pattern of nondisclosure and misrepresentation, these facts were not disclosed to the Smalls by Howard, leaving the Smalls to incorrectly believe for nearly a year that Mr. Small had received a Qualifying Diagnosis and that they would be compensated under the terms of the Settlement Agreement. Compounding their predicament, Howard steered the Smalls to a predatory lending company that advanced them money against Small's eventual claim at 39.95% annual interest rate. Howard then failed to submit Small's claim, leaving the clock spinning on usurious interest rates.

It was not until Mr. Small sought additional assistance from Shenaq that he received medical evaluations from appropriately credentialed physicians, which culminated in a Qualifying Diagnosis in 2018 and a more severe Qualifying Diagnosis in 2019, and a properly processed claim that was ultimately approved for more than $1.5 million. Throughout the course of his representation, Mr. Small was very pleased with Shenaq's services and disappointed by Howard. Small blamed Howard's actions before Shenaq's involvement for causing his claim to be audited and later learned of Howard's legal troubles, which cast doubt on Howard's ability to adequately represent him.[1] In September 2019, Mr. Small severed his relationship with Howard proceeding with Shenaq as his sole representative.

---

[1] As disclosed in the briefing before the Magistrate, Tim Howard is facing a number of legal troubles that call into question Howard's ability to have been able to provide Mr. Small with adequate legal representation. Tim Howard is currently the subject of: (i) at least three separate bar complaints before the Florida Supreme Court brought by the State Bar of Florida; (ii) a civil complaint filed by the SEC that alleges fraud, and (iii) a civil lawsuit initiated by a former Retired NFL Football Player client for fraud as well. In addition, Tim Howard has been the subject of various news headlines that do not paint a flattering picture. *See*, *e.g.*, "The Ailing NFL Players and the Lawyer They Say Swindled Them" Law 360, July 19, 2019, https:// www.law360.com/articles/1180152/ailing-nfl-players-and-the-

Notably, Mr. Small would have severed his relationship with Howard much earlier but for the fact that Howard misrepresented to him that if he severed his relationship with Howard, he would no longer have the benefit of working with Shenaq. At the hearing before the Magistrate, Mrs. Small testified as follows:

> And let me just say this. The only reason -- my husband wanted to sever your services, and I was like, but you represented to him kind of like if he severs your services that we wouldn't have access to Amir anymore, because he was your employee, and he worked for you.
>
> And that was a misrepresentation. Because we could secure his services. And you made my husband believe that without you, Amir wouldn't be there. And the only reason we had stayed there was because of Amir's services.
>
> And his fantastic and exemplary communication with us, and the way that he handled our case. So I -- I don't think the time frame that we left was even a factor, because you misrepresented that, that he worked for you and pretty much that if we severed your services it would sever his services.

**Exhibit 2, Hrg. Tr. at 90:3-17.** Mrs. Small has supplemented her testimony, explaining that her husband would have terminated Howard's representation as early as May or June 2018, but for his misrepresentations at that time. **Exhibit 3, Unsworn Declaration of Renessa Small.** Following the October 28, 2019 resolution of his second audit, Mr. Small's claim was approved for approximately $1.5 million. On December 13, 2019, Howard filed the attorneys' lien that is the subject of the Magistrate's Report. The Magistrate conducted an attorney lien hearing on July 7, 2020 and issued its Report on September 28, 2020.

## II. OBJECTIONS TO MAGISTRATE'S REPORT

The Magistrate conducted an analysis pursuant to the five *McKenzie* factors identified by the third circuit. *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 100 (3d Cir. 1985) ("*McKenzie*

---

lawyer-they-say-swindled-them. These concerns call into question Howard's ability to adequately represent Mr. Small and were a significant reason why Mr. Small terminated Howard.

*I*") and *McKenzie Constr., Inc. v. Maynard*, 823 F.2d 43, 45 (3d Cir. 1987) ("*McKenzie II*"). The *McKenzie* factors require the Court to consider (1) Mr. Small's agreement with Howard at the time of contracting; (2) any change in circumstances by the time the court enforces the agreement; (3) the results obtained; (4) the quality of the work performed; and (5) how much of the work contributed to the result. *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 19-1760, 2020 WL 5409015, at *2 (3d Cir. Sept. 9, 2020). Shenaq agrees that *McKenzie* provides the appropriate analysis, but objects to the Magistrate's recommendation that Howard receive 13.2% of Small's Monetary Award as attorney's fees and that Shenaq receive only 1.8%. **Exhibit 1, Report at 24.** Shenaq further objects to the Magistrate's award of $6,085.44 in costs to Howard associated with evaluations of Mr. Small by physicians who were unqualified or relied upon unqualified doctors under the NFL Settlement Agreement to provide a qualifying diagnosis. **Exhibit 1, Report at 24.**

**A. THE MAGISTRATE'S FINDINGS OF FACT**

The Magistrate's Report made several correct findings of fact concluding that not only did Howard do little to advance Mr. Small's claim, he in fact hindered it, and that it was entirely through Shenaq's efforts that Mr. Small was able to successfully resolve his claim. These findings include:

- "We find that the delays Mr. Small experienced from the two audits initiated by the Claims Administrator are attributable to Howard and diminish the quality of work performed by Howard in its representation of Mr. Small between 2016 and 2019." **Exhibit 1, Report at 14.**
- "The record reflects no deficiencies in the quality of Shenaq's work either at the time of his association with Howard or otherwise." **Exhibit 1, Report at 14.**

- "Howard may have risked *exposing* Mr. Small to predatory lending practices." **Exhibit 1, Report at 18.**
- "Shenaq later saved Mr. Small 'more than $90,000' when it assisted him in modifying the terms of loans that Howard allegedly recommended." **Exhibit 1, Report at 18.**
- "Both firms shared a role in [shepherding the individual client through a claims process], although Howard largely chose to remain in the background and use Shenaq as the liaison with the Claims Administrator." **Exhibit 1, Report at 17.**

Shenaq does not object to these findings of fact.

## B. THE MAGISTRATE DID NOT CONSIDER UNREBUTTED EVIDENCE OF CHANGED CIRCUMSTANCES ARISING FROM HOWARD'S MISREPRESENTATIONS TO MR. SMALL

Under a proper *McKenzie* analysis, the above findings would strongly support significantly reducing Howard's fee under the last three factors: (3) the results obtained; (4) the quality of the work performed (which the Magistrate correctly referred to as "the more important question in this analysis" (**Exhibit 1, Report at 15**); and (5) how much of the work contributed to the result. However, the Magistrate gave undue consideration to the first factor, the fee agreement at the time of execution, at the expense of the other more important factors, and did not properly consider evidence of changed circumstances when enforcing that agreement.

Despite finding that Shenaq clearly did all the work that advanced Mr. Small's claim, and that Howard did little to advance it and, in fact, hindered the claim, the Magistrate gave Howard full credit for Shenaq's work up until the point Mr. Small's severed his relationship with Howard. The Magistrate held that "until September 20, 2019, when Mr. Small terminated Howard and entered into a CFA with Shenaq, work performed by Shenaq personnel was done in support of

Howard's CFA with Mr. Small." **Exhibit 1, Report at 15.** The Magistrate determined that it "cannot conflate the two time periods." **Exhibit 1, Report at 19**.

But as Mrs. Small testified, the time period under Howard's contingent fee agreement was artificially enlarged because Howard mispresented to the Smalls that if they severed their relationship with Howard, they would lose the benefit of working with Shenaq. If Howard had been honest with the Smalls, they would have severed their relationship with Howard as early as May or June of 2018. Mrs. Small's testimony on the subject is not rebutted.

"It is well-settled law, regardless of jurisdiction, that attorneys owe their clients a fiduciary duty." *Huber v. Taylor*, 469 F.3d 67, 81 (3d Cir. 2006). "The duty includes undivided loyalty, candor, and provision of material information." *Id*. Howard's misrepresentation to the Smalls was a significant change in circumstances that should have been considered by the Magistrate and should have compelled a different result. This change in circumstances is especially relevant to the Magistrate's analysis, given that the Magistrate attributed Shenaq's good work to Howard for the full time up to Mr. Small's severance of Howard's representation. It is true that Mr. Small did not terminate his attorney client relationship with Howard until September 2019. Generally, "[w]hen a client terminates the relationship the original attorney can recover reasonable compensation up the time he was discharged." *Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212, 218 (3d Cir. 1987). However, under the circumstances of Howard's misrepresentation to the Smalls, it is unreasonable to give Howard full credit for Shenaq's work up until that termination.

The effect of the Magistrate's recommendation is to confer an improper benefit to Howard by rewarding its misrepresentation to Mr. Small. Disgorgement of fees is the customary remedy when a fiduciary breaches its duty of honesty and loyalty for its own benefit. *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013) ("Generally, disgorgement claims

for breach of fiduciary duty do not require that a plaintiff suffer a financial loss, as relief in a disgorgement claim 'is measured by the defendant's profits.' This is because disgorgement claims seek not to compensate for a loss, but to 'deprive[] wrongdoers of ill-gotten gains.'" (internal citations omitted)). But because the Magistrate declined to consider the change in circumstances arising from Howard's misrepresentation to the Smalls, the opposite occurred and Howard is being awarded ill-gotten gains.

### C. UNDER THESE FACTS THE MAGISTRATE'S *McKENZIE* ANALYSIS IS FLAWED

On this record, there is no basis to award Howard credit for Shenaq's work up until Howard's representation of Mr. Small terminated. There can be no dispute that Shenaq performed the high-quality work which directly resulted in Mr. Small's successful claim, satisfying three of the five *McKenzie* factors (including the most important factor of substantiality). Shenaq was not an employee of Howard while they jointly represented Mr. Small as co-counsel. The fact that Shenaq's contingent fee agreement with Mr. Small was not executed until after Shenaq had conducted much of the work to advance Mr. Small's claim is immaterial, especially considering the impact of Howard's misrepresentations about Mr. Small's ability to sever his relationship with Howard.

Indeed, the Magistrate previously apportioned attorneys' fees in an NFL concussion settlement case based upon individual efforts to attorneys who never produced an executed contingency fee agreement at all. "We appreciate that Locks Law seeks a contingent fee without presenting a writing signed by Mr. Rhett, nor any other affirmative evidence of his acceptance of particular terms of representation." *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-MD-02323-AB, 2020 WL 2992462, at *6 (E.D. Pa. June 4, 2020). The Magistrate reasoned that Locks Law was entitled to the lion's share of the fee in that case because "[t]he work

performed by Locks Law during the claim development and filing stages provided the most significant contribution in ensuring that Mr. Rhett would qualify for the best possible award." *Id.* at *14. In that case, the Magistrate specifically declined to consider a fee-splitting agreement between Locks Law and the claimant's prior and concurrent counsel, similar to the co-counsel agreement between Shenaq and Howard. There is no reason that Howard's contingent fee agreement should subsume Shenaq's efforts and later agreement, especially given Howard's egregious record in this case and the fact that Shenaq provided the most significant contribution to Mr. Small's successful award.

### D. COSTS FOR DIAGNOSIS BY UNQUALIFIED PHYSICIANS ARE UNREASONABLE

The Magistrate also erred in awarding Howard costs advanced for a diagnosis of Mr. Small by unqualified physicians. Shenaq does not object to the reimbursement of $10,664.56 in costs for the 2018 and 2019 evaluations Shenaq arranged that led to Mr. Small's successful claim. However, the Magistrate also awarded $6,085.66 in costs to Howard for a 2017 examination of Mr. Small by Dr. Christine Lloyd (neuropsychologist) and Dr. Ahmed Sadek (neurologist). Under the terms of the NFL Settlement Agreement, "Any licensed neuropsychologist who assists a Qualified MAF Physician in making a Qualifying Diagnosis must be certified by the American Board of Professional Psychology, or the American Board of Clinical Neuropsychology…" NFL Settlement Agreement § 6.3(b)(i). At the time of the examination, Dr. Lloyd was not board certified by either institution.[2] Accordingly, the costs advanced by Howard for these evaluations could not have reasonably advanced Mr. Small's claim. The Magistrate in fact noted that not only did these unqualified evaluations delay Mr. Small's claims, they likely caused the two audits which further

[2] Howard admitted at the July 7, 2020 hearing that it is "correct that Dr. Morgan—Dr. Lloyd was board certified but not in the correct area and neither was Dr. Morgan." **Exhibit 2, Hrg. Tr. at 58:11-13** Howard chalked up this obvious error as "part of the less—the learning process." ***Id.* at 58:15-16**.

delayed Mr. Small's claim. **Exhibit 1, Report at 14.** Howard's waste of money should not be taxed against Mr. Small's recovery.

## III. CONCLUSION

Four of the five *McKenzie* factors support a dramatic reduction of Howard's fee in favor of Shenaq. Shenaq did all the work to successfully advance Mr. Small's claim. Howard delayed, and even hindered, Mr. Small's claim, while exposing the Smalls to predatory lenders. The Magistrate gave improper deference to the circumstances surrounding the execution of Mr. Small's contingent fee agreement with Howard, while ignoring evidence of a significant change in circumstances at the time of enforcing the agreement arising out of Howard's misrepresentations to Mr. Small. The Magistrate's analysis awarding Howard the benefit of Shenaq's work up until the point Mr. Small formally severed his relationship with Howard is fatally flawed because that time period was artificially enlarged by Howard's misrepresentations to its then client. The Magistrate's flawed analysis serves to award Howard ill-gotten gains for its misconduct when the law compels the opposite result. Furthermore, the Magistrate improperly awarded $6,085.44 withheld from Mr. Small's settlement for costs associated with unqualified evaluations that could not have assisted Mr. Small's claim, but instead delayed and hindered it. Shenaq, on behalf of Mr. Small, respectfully requests that the Court discharge Howard's Attorney Lien, not award any fees to Howard, and reduce Howard's reimbursement of costs by the $6,085.44 associated with the 2017 evaluations by unqualified neuropsychologists.

Respectfully submitted,

SHENAQ PC

/s/ Amir Shenaq
Amir Shenaq
State Bar No. 505281

3500 Lenox Road Ste. 1500
Atlanta, GA 30326
Telephone: (888) 909-9993
Telecopier: (713) 583-3538
E-mail: amir@shenaqpc.com

Attorney for Settlement Class Member Jessie Small