```
                  IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA


HOWARD & ASSOCIATES, P.A.,        )   12-MD-2323
                                  )
           Plaintiff,             )   (Heard via Zoom)
                                  )
     vs.                          )
                                  )
                                  )
JESSIE SMALL,                     )   Philadelphia, PA
                                  )   July 7, 2020
           Defendant.             )   9:54 a.m.


                  TRANSCRIPT OF ATTORNEY LIEN HEARING
                BEFORE THE HONORABLE DAVID R. STRAWBRIDGE
                    UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


For the Plaintiff:        PHILLIP TIMOTHY HOWARD, ESQUIRE
                          HOWARD & ASSOCIATES, P.A.
                          1415 East Piedmont Drive, Ste. 5
                          Tallahassee, FL  32308


For the Defendant:        AMIR SHENAQ, ESQUIRE
                          SHENAQ, P.C.
                          3500 Lenox Road, Ste. 1500
                          Atlanta, GA  30326


Audio Operator:           ALISHA KINLAW


Transcribed by:           DIANA DOMAN TRANSCRIBING, LLC
                          P.O. Box 129
                          Gibbsboro, New Jersey  08026-0129
                          Office:  (856) 435-7172
                          Fax:     (856) 435-7124
                          Email:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

**Exhibit 2**

Case 2:12-md-02323-AB   Document 11209-2   Filed 10/13/20   Page 2 of 10

2

# I N D E X

| ARGUMENT: | PAGE |
|---|---|
| By Mr. Howard | 3, 106, 113 |
| By Mr. Shenaq | 14, 109 |

| WITNESS: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Amir Shenaq | | 47/How | | |
| Renessa Small | 65/She | 86/How | | |

| EXHIBITS MARKED: | IDENT. | EVID. |
|---|---|---|
| Exhibit 1 (Document refers to termination) | 84 | |

THE COURT

Colloquy                                              115

**\*Inaudibles due to static or blips in audio on Zoom.**

```
 1          (The following was heard via Zoom at 9:54 a.m.)
 2              THE COURT:  Mr. Shenaq is on?  Sir, yes?
 3              MR. SHENAQ:  Yes, Your Honor.
 4              THE COURT:  Mr. Howard?  Good morning, Mr. Howard.
 5              MR. HOWARD:  Good morning.
 6              THE COURT:  And just in terms of other faces, my law
 7   clerk, who is the Zoom master for this in my office, deals
 8   with all these Zoom things, Alisha is on.  You'll see her
 9   face.  And Mr. and Mrs. Small.  Good morning.
10              ALL:  Good morning.
11              THE CLERK:  Judge, if I may interrupt quickly, I
12   think your video is not on.
13              THE COURT:  Oh, me?  My video is not on.  Okay.
14              MR. SHENAQ:  Yeah.
15              THE COURT:  There you go.  So now they can see me,
16   instead of just hear me.
17              THE CLERK:  Can you click it one more time?  There
18   you go.
19              THE COURT:  We got that?
20              THE CLERK:  Uh-huh.
21              THE COURT:  All righty.  Let's see who else we have
22   here.
23              UNIDENTIFIED COUNSEL:  Your Honor, as I mentioned,
24   there are a few law students, and thank you for not objecting
25   to their participation.  These are students who've just
```

1   the reason why Mr. Shenaq knows how to do these things,
2   because it's the same kind of stuff he's dealing with in
3   taking inferences out of emails or from the audits.  This --
4   this -- this is not -- we're not instructing them to -- what
5   to do, we're letting them know that employment is a key issue,
6   and we're talking about two reports here.
7              And Mr. -- Mr. Shenaq, you can respond if you'd
8   like.
9              MR. SHENAQ:  Your Honor, I'd like to correct a
10  number of facts and representations that Mr. Howard made.
11  First of all, Dr. Lloyd and Dr. Morgan, neither of these
12  physicians, they may be board certified, but they lack the
13  certifications and credentials that a neuropsychologist needs
14  in order to support a neurologist in making a finding of a
15  Level 1.5 or Level 2 claim.
16             In addition, Mr. Howard's contention is that he is
17  referring to two reports.  If that was the case, why would he
18  want to focus on for every claim?  That to me doesn't seem
19  like two reports.  And to suggest that for every claim, you
20  know, the doctor should take an approach that there's no
21  current employment, is the very type of conduct that the audit
22  process is designed to investigate, Your Honor.  This is not
23  the typical work that a lawyer employs and -- you know, in
24  working up any of these cases.
25             I don't take a one size fits all approach.  I don't

1     instruct the doctors to make up facts that don't exist.
2     That's very troubling, and that type of conduct should not be
3     rewarded in any manner.
4                MR. HOWARD:  Your Honor, if I may respond.  Again,
5     taking this out of context, the -- receipt of employment
6     context are consistent with the underlying CDR and
7     neuropsychological reports, in Dr. Sadek's reports.  In these
8     two cases, they're all showing there's no current employment.
9     And so, you know, this taking -- it's disassembling
10    information in order to make smoke that doesn't exist.
11               And, Your Honor, (inaudible) correct that Dr. Morgan
12    -- Dr. Lloyd was board certified but not in the correct area
13    and neither was Dr. Morgan.  That is why they went through the
14    process.  We realized we -- we had to start over with the
15    proper board certified doctors.  But that's part of the less
16    -- the learning process.
17               Some of these things actually helped us understand
18    the -- in fact, all the -- all these reports and studies help
19    us understand the condition of the client, gave a good
20    foundation of what we're dealing with and allowed the properly
21    board certified doctors in the final reports that we did with
22    -- with the mission of to complete the report.  This -- this
23    effort was not wasted and in fact -- without the foundation
24    work that the final doctors relied upon.
25               THE COURT:  All right.  I'm sorry, I didn't mean to

1   interrupt you, other than just to say I understand.  But we're
2   now obviously into argument, we're not into questions of Mr.
3   Shenaq, which is what I -- what I wanted to focus on now to
4   get that completed.  You'll have a chance to make some
5   argument.
6   BY MR. HOWARD:
7   Q    All right.  So I wanted to focus on the -- I think it's
8   Exhibit No. 9, I think.  I want just to point out verified to
9   -- to -- I don't have it on the screen.  It may be 11.  Okay,
10  that -- we've got -- I've already covered nine, that's the --
11  the -- taking smoke and creating more smoke.  I think it's
12  number three, is that one?  So 11, Exhibit 11.
13           So I want to -- Mr. Shenaq, this is dealing with our
14  consistent communication with Jessie Small, and Mr. Small's
15  asking -- constantly asking questions.  I'm giving responses.
16  Mr. Shenaq, doesn't this evidence show we're constantly
17  communicating with Jessie Small?
18  A    Well, to the contrary, and I think Mrs. Small can -- you
19  know, is going to be in a better position to -- to describe
20  the communications.  But it is interesting that, you know, in
21  your voluminous 1800 page production, this email was -- was
22  not included.  So, you know, that seems sort of peculiar.
23  Q    What's the -- what's the Bates number on this?
24  A    There's no Bates number, Your Honor.
25  Q    So let's just say it's an email from Mr. Small to Mr.

1   took place?
2   A    I think it was 2018.
3   Q    All right.  Do you know month that took place?
4   A    I'm not -- I don't have the documents in front of me.
5   Q    It took place --
6   A    I was aware of that information, but I don't have those
7   particular documents in front of me.
8   Q    It took place in early May, late April of 2018.  And do
9   you know what -- what month Mr. Small ceased us as -- even
10  though Amir Shenaq works with and for me, by the way, you need
11  to know that --
12              MR. SHENAQ:  Objection, Your Honor.  I don't work
13  for Mr. Howard.  That's completely false.  I don't work for
14  that man.
15              MR. HOWARD:  Yes.  We have joint co-counsel, do you
16  know we have a co-counsel relationship, Mr. Small and Mrs.
17  Small?
18              THE COURT:  Well let's see -- let me see what the
19  document says, if you would submit that, either one of you, I
20  don't care, but submit that document to me and that might very
21  well clarify it with me.
22              MS. SMALL:  I think we terminated his services in
23  September of 2020, if I'm not mistaken -- I mean 2019, I
24  apologize.
25  BY MR. HOWARD:

| | |
|---|---|
| 1 | Q   Correct.  So that would have been a year and a half after |
| 2 | we had been jointly representing you, is that correct? |
| 3 | A   And let me just say this.  The only reason -- my husband |
| 4 | wanted to sever your services, and I was like, but you |
| 5 | represented to him kind of like if he severs your services |
| 6 | that we wouldn't have access to Amir anymore, because he was |
| 7 | your employee, and he worked for you. |
| 8 | And that was a misrepresentation.  Because we could |
| 9 | secure his services.  And you made my husband believe that |
| 10 | without you, Amir wouldn't be there.  And the only reason we |
| 11 | had stayed there was because of Amir's services. |
| 12 | And his fantastic and exemplary communication with |
| 13 | us, and the way that he handled our case.  So I -- I don't |
| 14 | think the time frame that we left was even a factor, because |
| 15 | you misrepresented that, that he worked for you and pretty |
| 16 | much that if we severed your services it would sever his |
| 17 | services. |
| 18 | Q   Did you not state the reason you left our services is |
| 19 | because we were not providing care for you, and that's why you |
| 20 | went with Amir Shenaq? |
| 21 | A   I said there were multiple reasons that we left your |
| 22 | services.  And one of them was the fact that you, who were |
| 23 | supposed to be our major attorney, would never return our |
| 24 | calls or communications.  And that, for me, is egregious. |
| 25 | Q   Ms. Small, how many emails did you ever send me? |

1   A     How many emails?  We sent --

2   Q     Not -- Mr. Small I responded to, I'm talking about from
3   you?

4   A     I'm sorry?  You sent email to my husband?  It was --

5   Q     No.  My question is how many --

6   A     -- to me because --

7   Q     -- emails did you send me?

8   A     No, you can't over-talk me in this.

9   Q     (Inaudible)?

10  A     You know that I assisted him in that.  And you know that
11  I was there, and you didn't respond to our communications, so
12  much to the fact that one of the players had to suggest to you
13  to give telephonic meetings to give us updates on what was
14  happening on these cases.

15         And even on those telephone meetings nothing was
16  relayed that was pertinent to the cases.  And actually false
17  information was given on those calls.

18  Q     So you acknowledge that we had bi-weekly phone calls with
19  all of our clients available to listen?

20  A     I acknowledge that you had phone calls, I didn't
21  acknowledge that we were on all of them.

22  Q     And you know that --

23  A     And that even on those calls misinformation was given to
24  your clients.  And on a few occasions you shared information
25  about your clients that should never have been shared in that

1  particular time line on it.  But this is, you know, it's fresh
2  in our minds and we'll do our best to try to sort through
3  this.  So thank you very much for your participation.
4        Jimmy Cruz, we are now adjourned.
5     (Proceedings concluded at 1:02 p.m.)
6                        * * * * *
7                    **C E R T I F I C A T I O N**
8        We, Roxanne Galanti, Josette Jones and Brenda
9  Boulden, court approved transcribers, certify that the
10 foregoing is a correct transcript from the official electronic
11 sound recording of the proceedings in the above-entitled
12 matter.
13
14    /s/Roxanne Galanti
15 ROXANNE GALANTI
16
17    /s/Josette Jones
18 JOSETTE JONES
19
20    /s/Brenda Boulden                    07/27/20
21 BRENDA BOULDEN                          DATE
22 DIANA DOMAN TRANSCRIBING, LLC
23
24
25