# "Exhibit E"

■■■■■ (ID:950005876): Notice of Denial of Monetary Award Claim. Date of Notice: December 30, 2019.

Case 2:12-md-02323-AB Document 11218-6 Filed 10/27/20 Page 2 of 5

The Claims Administrators Denial concludes that:

## "Dr. Suite's (MAF Physician) diagnosis is not generally consistent with the Settlement criteria for Level 2 Neurocognitive Impairment"

The applicable "generally consistent" standard is provided by Section (2)(b) of the "Injury Definitions" (Exhibit 1 to Settlement Agreement). Section 2(b) of the Injury Definitions provides as follows:

For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 2 Neurocognitive Impairment, i.e., moderate dementia, **based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv).** Unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) is medically unnecessary because the Retired NFL Football Player's dementia is so severe, made by a Qualified MAF Physician.

**Side by side comparison of the applicable diagnostic criteria and the MAF Physician's Dr. Nicholas D.A. Suite M.D. application under the Generally Consistent principle**

**Level 2 Neurocognitive Impairment**

| BAP= Criteria set forth in subsections 2(a)(i)-(iv) | MAF Physician application of subsections 2(a)(i)-(iv) |
|---|---|
| **(i)** Concern of the Retired NFL Football Player, a knowledgeable informant that there has been a severe decline in cognitive function. | **(i)** ■■■■ expressed his severe decline and concerns of the issues with his brain. Symptoms of….. MAF also relies on prior medical records in which ■■■■ expressed similar concerns and symptoms dating back to 2010 to Neurologist Dr. Nuddleman. MAF physician relies on third party statement and the showing of severe decline in cognitive function as described by a lay person. MAF physician relies on the concerns of the most knowledgeable informant Rhonda Sellers who is the player's domestic partner and has lived with him for approximately 15 years. |
| **(ii)** Evidence of a severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 of the Settlement Agreement. | **(ii)** To comply with this section, MAF Physician applies section 2(b) which states in part that a diagnosing physician can certify in the Diagnosing Physician Certification Form that certain testing in 2(a)(i)-(iv), specifically here subsection **(ii)** is medically unnecessary because the Retired NFL Football Player's dementia is so severe. Here, MAF Physician certified in his Physician Certification Form pg. 4 that he determined under penalty of perjury and subject to disciplinary actions, that certain testing was medically unnecessary because the player's dementia is so severe. Specifically, here neuropsychological testing. |

| | |
|---|---|
| **(iii)** The Player exhibits functional impairment generally consistent with CDR scale 2.0 (Moderate) in the areas of Community Affairs, Home & Hobbies, and Personal Care. | **(iii)** Here, the MAF physician in addition to his personal examination and confidential discussion and evaluation of the players cognitive decline in the outlined areas, he relies on the third-party statement, diagnosis of Neurologist Dr. Nuddleman in 2010, the players history and information provided by the reliable informant. Specifically, the MAF physician acknowledge the sufficiency of the records and affirms that ▇▇▇ exhibits functional impairment under CDR scale 2.0 as follows:<br>Community affairs:<br>Loss of interest in activities outside the home/Has stopped visiting with friends, Has stopped attending social functions, and Loss of the ability to drive.<br>Home & Hobbies:<br>Loss of interest in hobbies.<br>Personal care:<br>Decline in appearance/Lapses in grooming<br><br>Additionally, the in-person discussion with the reliable informant, Rhonda Sellers and reference to the Clinical Dementia Rating Worksheet completed by her and accepted by MAF Physician provide an insight to the players functional impairment in the applicable areas. |
| **Subsection (iii) continued:** Such functional impairment shall be corroborated by documentary evidence (e.g., medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. | **Subsection (iii) continued:** The MAF Physician determined the sufficiency of the medical records he relied upon. Specifically, Neurologist Dr. Kenneth L. Nudleman, M.D produced the report titled, Qualified Medical Examination- Neurology dated October 28, 2010. Dr. Nudleman's diagnosis of Claimant did confirm his complaints as indicative and a clear showing of brain trauma from playing professional football. Dr. Nudleman states in part "Based on his symptoms and complaints, and combined with his physical examination, it is felt that he has the following diagnoses: |

| | |
|---|---|
| | Posttraumatic head syndrome characterized by a reduce attention, concentration and recall; posttraumatic headaches" (Doc. 175143 Pg.4) "As to the need for future medical care, the patient should be monitored relative to his memory and short-term concentration problems." (Id.) "With respect to his post traumatic head syndrome…, he would be considered at CDR at 0.5% benign forgetfulness "… this would lead to a total neurological impairment of 14% based upon the best medical evidence." ▓▓▓▓ lost the ability to work approximately ten years ago.  MAF Physician states "▓▓▓▓ me the same thing today that he was originally trained to be able to do welding but cannot do so." (Doc ID. 171337) The Claims Administrator by way of audit requested ▓▓▓▓ working history for the last five years.  The employment history form was submitted by ▓▓▓▓ with no work history for the past years due to the fact his brain disease has impaired his ability to work. |
| **Subsection (iii) continued:** In the event that no documentary evidence of functional impairment exist or is available, then (a) evidence of severe cognitive decline in accordance with the neurophysiological testing protocol…; and (b) the Player's functional impairment as described above, must be corroborated by a third party sworn affidavit from a person familiar with the Player… | **Subsection (iii) continued:** This subsection does not apply to ▓▓▓▓.  Documentary evidence was available and relied upon by the MAF Physician.  Therefore, evidence under (a) neurophysiological testing is not mandatory under this subsection. (b) Does not apply to ▓▓▓▓.  Documentary evidence was available and relied upon by the MAF Physician.  Based on a good faith belief that if ▓▓▓▓ was able to obtain a third party sworn statement that complied with the Settlement, the same should be submitted although not mandatory for him. Unfortunately, in the matter at hand the third party sworn affidavit has become a focal point of the Claims Administrators first, second and third Denial. |
| | |

| | |
|---|---|
| **(iv)** The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects. | **(iv)** MAF Physician confirms in his diagnosis report that ▮▮▮▮▮ CDR of 2.0 do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects. |
| **Section 2(b):** For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 2 Neurocognitive Impairment, i.e., moderate dementia, **based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv).** | **Section 2(b):** ▮▮▮▮▮ was diagnosed outside of the BAP. As the chart above shows, the MAF Physician complied with the generally consistent standard set forth in the above referenced sections **2(a)(i)-(iv).** <br><br>Although the Court has affirmed that the generally consistent principal does not mean that it must be identical to the diagnostic criteria set forth in sections **2(a)(i)-(iv).** This chart shows that the MAF Physician applied all the pertinent and applicable subsection of **2(a)(i)-(iv).** |
| **Section 2(b) continued:** Unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) is medically unnecessary because the Retired NFL Football Player's dementia is so severe. | **Section 2(b) continued:** MAF Physician did certify in his Diagnosing Physician Certification that "The Player's dementia is so severe that the testing is medically unnecessary". (Doc. 171336) |
| | |

**Section 6.4(b) of the Settlement Agreement:** requires, "For the avoidance of any doubt, the review of whether a Qualifying Diagnosis is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1(Injury Definitions) does not require identical diagnostic criteria, including without limitation, the same testing protocols or documentation requirements". It is a fundamental principle that MAF Physicians have broad discretion in the manner they determine the Qualifying Diagnosis. The rule promotes the honor of the Settlement Agreement in that MAF Physicians bear the duty to provide acceptable standards of medical care and ethical obligations to each patient.

According to FAQ 101, "Something is "generally consistent with" something else if the two things have more elements or characteristics in common with each other than they have elements or characteristics that differ from each other. The common elements or characteristics must predominate over the uncommon ones".

The above chart is presented as demonstrative evidence that the MAF Physician's diagnosis does in fact conform and satisfy the requirement of the generally consistent criteria as defined under Level 2 Neurocognitive Impairment outlined above and as agreed by the parties in the Settlement.