UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | No. 2:12-md-02323-AB<br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

### DECLARATION OF JUSTIN R. WYATT, ESQ.

I, Justin R. Wyatt, hereby declare as follows:

1. I submit this unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 in support of Kevin Henry's and Najeh Davenport's Motion for Relief in the above-referenced matter. The purpose of this Declaration is to: (a) authenticate various documents as set forth below; (b) proffer facts which are readily provable from a review of records kept in the ordinary course of business by the NFL Parties, Class Counsel, and other participants in the Settlement Agreement's claims administration process, such as Brown Greer, EPIQ or other individually retained attorneys; and (c) proffer additional facts for which Movants could present competent evidence if given a reasonable opportunity for discovery. I affirm that all documents

attached to this Declaration are authentic copies of documents maintained in the ordinary course of business.

2. My law firm, J.R. Wyatt Law PLLC, has represented over 100 claimants in the claims administration process in the NFL Players' Concussion Injury Litigation, including Mr. Henry and Mr. Davenport.

3. In addition to my firm's own clients, I am frequently in contact with a large cross-section of individuals who interact within the settlement program in various respects, including other counsel who collectively represent hundreds, if not thousands of claimants and prospective claimants.

4. If given a reasonable opportunity for discovery, Movants could demonstrate through competent evidence that the vast majority of MAF Physicians (and/or the Neuropsychologists that they work with) have employed race-normed scoring. This assertion is based on the fact that – with only two exceptions – the doctors who have performed examinations on my clients have used full demographic norms, and in my interactions with other attorneys active in the Settlement and with program-approved doctors related to appeals (or potential appeals), it has been made clear to me that program doctors understood the use of race-normed scoring to be required, or at least strongly encouraged, under the Settlement Agreement.

5. Based on the claims administration documents available to me, the overwhelming majority of my clients who are Black who have undergone neurocognitive testing under the Settlement Agreement have been scored using unfavorable race-normed scoring. The only exceptions are my Black clients who have been tested by the two doctors referenced above who have not universally used race-normed scoring.

6. I have read Class Counsel's assertion that "No Player Has Been Denied a Monetary Award Based Solely on a Neuropsychologist's Use of Demographic Norms." If given a reasonable opportunity for discovery, Movants could show through the relevant claims documents that there are claimants for whom the use of race norms appears to be the sole determining factor that caused the player not to receive a qualifying diagnosis for monetary compensation – i.e., Black claimants who obtained test scores that would have supported a qualifying diagnosis for monetary compensation if the claimant had been White. I am aware of claimants represented by other counsel who fit this description.

7. In several instances in which an evaluating clinician did not use race-normed scoring when generating T-scores for one of my clients, the claims documents show that the Claims Administrator has denied the claim in part on that basis, referring to non-race-normed scoring as using "incorrect norms," and referring to Heaton norms as the "correct" normative data. Exhibits 1–5 to this declaration are Notices of Denial of Monetary Award Claim in which the Claims Administrator has cited this issue in denying a claim.

8. In every case where the Claims Administrator has denied one of my clients' claims because the evaluating clinician did not use race-normed scoring and my client has appealed to the Special Masters on that basis, the claims documents would show that the NFL Parties have insisted that the clinician's failure to use race-normed scoring was inappropriate. Similarly, in every instance of which I am aware where a claimant obtained a qualifying diagnosis from a clinician who did not use race-normed scoring, and the claimant received a Notice of Award from the Claims Administrator, the NFL Parties have appealed the award on the basis of the clinician's failure to use race-normed scoring. Exhibits 6–8 to this declaration are

briefs that the NFL Parties have filed with the Special Masters in appeals of determinations by the Claims Administrator with respect to my clients.

9. Exhibits 9-10 to this declaration are Reviews submitted by the Appeal Advisory Panel Consultant in connection with appeals of Claims Administrator determinations in my clients' cases.

10. I have contacted Class Counsel asking for information regarding qualification rates for retired NFL players who have undergone neurocognitive testing in the BAP, broken down by race. Class Counsel declined to provide me with this information or to help me obtain it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 2, 2020

Justin R. Wyatt, Esq.