IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**MOTION TO INTERVENE AND TO STAY MEDIATION**

Class Members Kevin Henry and Najeh Davenport respectfully move to intervene in this case on behalf of a subclass of Black former players who have been or would be subjected to detrimental race-norming, for the purpose of participating in the mediation that the Court recently ordered and, if necessary, for any further litigation related to the issue of "race-norming."[1] The Court has directed Class Counsel and the NFL Parties to "seek to address the concerns relating to the race-norming issue." ECF 11302. But Class Counsel alone cannot adequately represent the interests of Black former players on the issue of race-norming: it has known of the problem for more than two years and did nothing. Just last week, Class Counsel publicly declared that "*we*

---

[1] Class Members Henry and Davenport also respectfully move the Court to stay the mediation it has ordered, pending a ruling on this Motion, to ensure that their interests, and the interests of the subclass that they seek to represent, are protected.

*have not seen any evidence of racial bias in the settlement program*." (emphasis added).[2] The NFL Parties likewise believe that there is "no basis in law or fact" for concerns that the current use of race norms in the Settlement Program is discriminatory. ECF 11204 at 1. It is not realistic to expect that concerns about race-norming will be addressed effectively by parties who do not view the current use of race-norming as a problem.

In contrast, Class Members Henry and Davenport have persistently raised the race-norming issue with the Court and have a direct interest in ensuring that the mediation the Court has ordered results in a true, comprehensive remedy. To ensure that any resolution of the race-norming issue protects the interests of Black Class Members who have been or may be subjected to detrimental race-norming, Class Members Henry and Davenport ("Intervenors") hereby move to intervene pursuant to Federal Rule of Civil Procedure 24(a) and (b).

## BACKGROUND

Black retired players who undergo testing for neurocognitive impairment in the Settlement Program have routinely been subjected to a discriminatory double-standard: their neurocognitive tests are presumptively scored using unfavorable Black-specific scoring norms that make it harder to qualify for monetary compensation. These race norms essentially presume that Black former players began with a lower level of cognitive functioning than White former players, and thus must obtain worse raw test scores in order to demonstrate the same degree of cognitive decline.

The discriminatory *status quo* has emerged and persisted on Class Counsel's watch. Class Counsel negotiated and agreed to the secret 2017 BAP Guide, which cements a presumption in

---

[2] Pete Madden, *Judge orders NFL, class counsel to 'address the concerns' about race-norming in concussion settlement*, ABC News (Mar. 8, 2021), https://abcnews.go.com/Sports/judge-orders-nfl-class-counsel-address-concerns-race/story?id=76321584#:~:text=The%20federal%20judge%20overseeing%20the,some%20football%2Drelated%20head%20injuries.

2

favor of race-norming.  The Special Masters relied on the BAP Guide in their decision in the NFL's appeal of Mr. Davenport's claim award, and they issued a published decision establishing a legal rule applicable to all Black Class members who have sought or will seek benefits for Cognitive Impairment under the Settlement Agreement.  *See* Aug. 20, 2020 Decision of Special Masters Regarding Demographic Norm Adjustments ("SM Decision").  Both the NFL Parties and Class Counsel have been presented with evidence, *at least as early as November 2018*, that the use of race-norming in the Settlement Program is discriminatory.

Yet in two-and-a-half years since, neither the NFL Parties nor Class Counsel has lifted a finger to address race-norming.  Class Counsel's inaction is particularly concerning given its fiduciary responsibilities to Class Members, large numbers of whom are unrepresented and cognitively impaired.

Intervenors previously brought the race-norming issue to the Court's attention in the context of a Motion for Relief under Article XXVII of the Settlement Agreement, which describes the practice of race-norming and its origins in greater detail.  ECF 11169.  Intervenors also filed a separate lawsuit asserting that race-norming in the Settlement Program violates the guarantee of equal treatment on the basis of race in 42 U.S.C. § 1981.  *See Kevin Henry et al. v. Nat'l Football League et al.*, Case No. 20-cv-4165-AB (E.D. Pa., filed Aug. 25, 2020).  And Mr. Davenport has brought the issue of race-norming to the Court's attention in his individual claim appeal, in which the Special Masters issued a decision that entrenched a presumption of race-norming in the Settlement Program, while acknowledging significant concerns.  *See* SM Decision.  The Court has denied Intervenors' Motion for Relief under Article XXVII and has dismissed Intervenors' separate lawsuit; Intervenors have appealed both rulings to the Third Circuit.  Mr. Davenport's

individual claim appeal remains pending in the form of a fully-briefed motion for reconsideration that is ripe for decision by the Court.

Even after Intervenors filed their Article XXVII motion and lawsuit in August 2020 and Mr. Davenport filed his appeal of the Special Masters' decision to the Court, both the NFL Parties and Class Counsel denied that any discrimination was occurring and stood in the way of a remedy.

The Court has now indicated that it is "concerned about the race-norming issue" and has ordered a mediation "to seek to address the concerns related to the race-norming issue." ECF 11302. But the only parties that the Court has ordered to mediation are "the NFL and Class Counsel Seeger Weiss," *id.*, the very parties who have stood in the way of addressing those concerns thus far, despite having every opportunity to do so. If Intervenors had not begun litigating the race-norming issue, Class Counsel and the NFL would never have brought it to the Court's attention. Intervenors should be allowed to participate as parties to ensure that the NFL and Class Counsel address the Court's concerns fairly and comprehensively.

## LEGAL STANDARD

"Members of a class have a right to intervene if their interests are not adequately represented by existing parties." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (quoting 5A Conte & H. Newberg, *Class Actions* § 16:7, p. 154 (4th ed. 2002)); *see also* Fed. R. Civ. P. 23(d)(1) (referencing class members' opportunity to "intervene . . . or to otherwise come into the action"). "[T]he practice of intervention in the class context is governed by the standard intervention norms of Rule 24." 3 William B. Rubenstein, *Newberg on Class Actions* § 9:30 n.19 (5th ed., 2020 update). To intervene as of right under Rule 24(a)(2), "a prospective intervenor must establish that: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the

disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *In re Community Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005). "[W]hen absent class members seek intervention as a matter of right," "the second and third prongs of the Rule 24(a)(2) inquiry are satisfied" automatically, and thus "the gravamen of a court's analysis must be on the timeliness of the motion to intervene and on the adequacy of representation." *Id.*[3] The claims for which intervention is sought are those set out in the filings already submitted to this Court in connection with the Article XXVII motion, Mr. Davenport's appeal of the Special Masters' decision, and Intervenors' Section 1981 action. Fed. R. Civ. P. 24(c).

## ARGUMENT

Intervenors, and the subclass of Black former players that they seek to represent for the limited purpose of litigating race-norming issues, have substantial interests at stake in how race-norming issues are resolved. Those interests are not adequately represented by Class Counsel. The Court should allow this intervention to ensure that the discriminatory practice of race-norming is ended in a fashion that truly protects the interests of Black former players who have already been subjected to it, and who may be subjected to it in the future.

**I.     Intervenors' Interests Are Not Adequately Represented By Class Counsel.**

Class Counsel Seeger Weiss cannot be solely entrusted with eradicating a discriminatory practice that it has had a role in effectuating, has allowed to continue, and does not view as discriminatory. As set forth in the Special Masters' decision, Class Counsel bears responsibility for the presumption of race-norming within the Settlement Program. Class Counsel's own conduct

---

[3] Mr. Henry and Mr. Davenport move in the alternative for *permissive* intervention on the grounds that they "ha[ve] a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), and their intervention will not "unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3).

is therefore in issue, and it cannot adequately represent the interests of Black Class Members who have been subjected to race-norming, or who may be subjected to it in the future.

Class Counsel agreed to the 2017 BAP Guide, which the Special Masters identified as the source for a presumption of race-norming in the Settlement Program. In their decision in Mr. Davenport's claim appeal, the Special Masters identified the 2017 BAP Guide as the basis for a one-way requirement that clinicians must justify any decision not to employ unfavorable Black norms for Black former players, which amounts to a presumption in favor of race-norming.[4] The 2017 BAP Guide was developed by both the NFL Parties and Class Counsel, without notice to Class Members, or a hearing before this Court. SM Decision at 9.

That presumption has hardened into a *de facto* requirement in practice: clinicians have nearly universally applied unfavorable race-norming to Black former players, *see* ECF 11222-5, at ¶¶ 4–5, with at least some of them believing that doing so is required under the Settlement Program.[5] These facts were exposed as a direct result of Movants' actions, and without Movants, they never would have been discovered.

The presumption in favor of race-norming that emanates from the BAP Guide is not found in the Settlement Agreement. In agreeing to the BAP Guide's explicit recommendation in favor of race-norming, Class Counsel failed to protect the interests of Black Class Members, who had no notice that they would be systematically subjected to discriminatory test scoring. Even if the

---

[4] *See* SM Decision at 9 ("[T]he Guide suggests that clinicians 'in general' employ a 'full demographic correction' for the ACS norms, or some variation of the Heaton norms, in adjusting the raw scores to 'demographically-corrected T-scores.'"); *id.* at 11 ("[S]ince full demographic adjustments are presently generally recommended, when a clinician does not use them, it is reasonable to require that the clinician explain why."); *id.* at 12 (noting that absent such an explanation, "the test scores would not sufficiently support the Diagnosis").

[5] *See* Pete Madden *et al.*, *Clinician's fear NFL's concussion settlement protocols discriminate against Black players*, ABC News (Feb. 3, 2021), https://abcnews.go.com/Sports/clinicians-fear-nfls-concussion-settlement-program-protocols-discriminate/story?id=75646704.

BAP Guide reflected Class Counsel's unstated understanding with the NFL about how the Settlement would be administered, rather than a deliberate change in the Settlement harmful to Black former players, *see* SM Decision at 9 (suggesting that the BAP Guide "represents the Parties [i.e, the NFL's and Class Counsel's] joint understanding of the [Settlement], Agreement"), that understanding itself—never made explicit in the text of the Settlement where reviewing judges and Class members could see it—was contrary to the interests of Black former players. Whether the 2017 BAP Guide or Class Counsel's understanding of the Settlement Agreement itself is the ultimate source for the presumption of race-norming now in effect, Class Counsel's past conduct is at issue.

In addition to having played a role in the introduction of race-norming into the Settlement Program, Class Counsel has resisted multiple opportunities to help rectify it, instead asserting that no discrimination or bias is occurring:

- In November 2018 and twice in May 2019, individual players argued in their claim appeals that the use of race norms in the Settlement Program was discriminatory. Class Counsel had an opportunity to respond in each case but declined to address the race-norming issue. Class Counsel took no action to address race-norming more broadly in response to any of these cases.[6]

- In August 2020, when Mr. Henry and Mr. Davenport initiated litigation related to the issue of race-norming, Class Counsel stated, in response to a media inquiry: "the testing and diagnostic criteria were designed by leading experts and approved by the judge overseeing the case, Anita B. Brody." Class Counsel also stated that "***we have not seen any evidence of racial bias in the settlement program***." (emphasis added).[7]

- In October 2020, counsel for Movants wrote to Class Counsel asking for racial breakdown data regarding qualification rates for Level 1.5 and Level 2.0 impairment in the BAP, referencing the Special Masters' finding that the effect of race norms can

---

[6] *See* appeals related to SPID # 100010093, SPID # 10005553 and SPID # 100016045.

[7] Ken Belson, *Black Former N.F.L. Players Say Racial Bias Skews Concussion Payouts*, The New York Times (Aug. 25, 2020), https://www.nytimes.com/2020/08/25/sports/football/nfl-concussion-racial-bias.html.

   be "extremely consequential."  Class Counsel responded that "we think that a request for more information from us . . . is not appropriate or warranted."[8]

- In October 2020, in its response to Mr. Henry's and Mr. Davenport's Motion for Relief, Class Counsel wrote that "Movants' contention that the Settlement Program is employing 'a formula that explicitly and deliberately discriminates on the basis of race' *is without merit*." ECF 11205 at 2 (emphasis added).

- *Last week*, in response to media inquiries regarding the Court's order directing the NFL and Class Counsel to mediate, Class Counsel stated: "As we have investigated this issue, *we have not seen any evidence of racial bias in the settlement program.*" (emphasis added).[9]

Even in the wake of the Court expressing concerns about race-norming, Class Counsel has continued to deny that race-norming reflects "evidence of racial bias in the settlement program." But reporting on Movants' Article XXVII motion has uncovered the fact that race-norming makes Black players one-third as likely to qualify for Cognitive Impairment benefits, and that fact would not have come to light but for Movants' actions.[10]

Class Counsel cannot protect the interests of Black former class members who have been harmed by detrimental race-norming, or who may be in the future, when Class Counsel itself does not recognize race-norming as a form of discrimination.  In contrast, Intervenors have doggedly pursued the issue of race-norming and have retained multiple experts, including the leading expert on the use of race norms in neuropsychological testing, who would be of tremendous help in crafting an appropriate path forward.  *See* Ex. B (Declaration of Jennifer J. Manly); Ex. C

---

[8] Ex. A, Email exchange with Seeger Weiss (October 20-23, 2020).

[9] Pete Madden, *Judge orders NFL, class counsel to 'address the concerns' about race-norming in concussion settlement*, ABC News (Mar. 8, 2021), https://abcnews.go.com/Sports/judge-orders-nfl-class-counsel-address-concerns-race/story?id=76321584#:~:text=The%20federal%20judge%20overseeing%20the,some%20football%2Drelated%20head%20injuries

[10] *See* Pete Madden *et al.*, *Clinicians fear NFL's concussion settlement program protocols discriminate against Black players*, ABC News (Feb. 3, 2021), https://abcnews.go.com/Sports/clinicians-fear-nfls-concussion-settlement-program-protocols-discriminate/story?id=75646704.

(Declaration of Kirk R. Daffner). These experts would be vital to assuring the Class and the Court that the mistakes made by the parties and their experts on this issue are not repeated or worsened.

The Court should permit this Intervention to ensure that the interests of Black former players are protected in negotiations, and, if necessary, further litigation, related to race-norming. *See Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 686 (D. Minn. 1994) (allowing absent class members to intervene in class action in order to participate in settlement discussions); *see also Benjamin ex rel. Yock v. Dep't of Public Welfare of Pa.*, 701 F.3d 938, 958 (3d Cir. 2012) (granting motion to intervene in class action where party's broad interests were divergent from more specific interests of intervenors).

## II.     This Motion Is Timely.

In light of the Court's March 8 order opening negotiations related to race-norming and Class Counsel's continued denial that any discrimination is occurring, Intervenors' motion is timely. "A district court's timeliness inquiry for both types of Rule 24 motions requires considering the totality of the circumstances," and in particular, "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016). Courts "maintain a general reluctance to dispose of a motion to intervene as of right on timeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene." *Id.* at 371–72.

Intervenors are filing this motion one week after the Court issued an order directing mediation related to race-norming. For purposes of timeliness, new negotiations that are likely to implicate absent Class Members' rights are analogous to the initial consideration of a class action settlement agreement, during which time intervention motions are presumptively timely. *Id.* at 372. Intervenors have diligently pursued every procedural avenue available to them in order to

rectify the issue of race-norming as it presently exists in the Settlement Program. They have also made multiple efforts to encourage Class Counsel to address race-norming, to no avail. *See, e.g.*, Ex. A. The Court's recent order—which directs mediation, but includes only the NFL Parties and Class Counsel, despite Class Counsel's ongoing view that no discrimination is presently occurring—makes now the appropriate time for Intervenors to step in to ensure that the interests of the past and future victims of race-norming are protected.

## CONCLUSION

Class Members Henry and Davenport respectfully ask the Court to allow them to intervene in this action, on behalf of themselves and other Black former players who have been or would be subjected to unfavorable race-norming, for the purpose of participating in the upcoming mediation and any other litigation related to race-norming. Mr. Henry and Mr. Davenport also ask that the Court stay the mediation it has ordered pending resolution of this Motion.

Dated: March 15, 2021	Respectfully submitted,

	  /s/  *Cyril V. Smith*  
	Cyril V. Smith
	Zuckerman Spaeder LLP
	100 E. Pratt Street, Suite 2440
	Baltimore, MD  21202
	(410) 332-0444
	csmith@zuckerman.com

	Aitan D. Goelman
	Ezra B. Marcus
	Zuckerman Spaeder LLP
	1800 M Street, 10th Floor
	Washington, DC 20036
	(202) 778-1800
	agoelman@zuckerman.com
	emarcus@zuckerman.com

                        /s/ *Edward S. Stone*
Edward S. Stone
Edward Stone Law P.C.
300 Park Avenue, 12th Floor
New York, NY 10022
(203) 504-8425
eddie@edwardstonelaw.com


                        /s/ *J.R. Wyatt*
J.R. Wyatt
JR Wyatt Law PLLC
49 West 37th Street, 7th Floor
New York, New York 10018
(215) 557-2776
justin@jrwyattlaw.com

Attorneys for Kevin Henry and Najeh Davenport

11

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was filed electronically with the Clerk of the Court on the 15th day of March, 2021, to be served by operation of the Court's electronic filing system which sent notification of such filing via electronic mail to all counsel of record.


Dated: March 15, 2021           */s/ Ezra B. Marcus*
                                Ezra B. Marcus