## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB |
| | MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated, | **Hon. Anita B. Brody** |
| Plaintiffs, | |
| v. | CIVIL ACTION NO: 2:14-cv-00029-AB |
| National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## DECLARATION OF CHRISTOPHER A. SEEGER IN OPPOSITION TO MOTION FOR INTERVENTION AND TO STAY MEDIATION

CHRISTOPHER A. SEEGER declares, pursuant to 28 U.S.C. § 1746, based upon his personal knowledge, information and belief, the following:

1.    I am a founding member of the law firm of Seeger Weiss LLP and am Court-appointed Class Counsel, having previously served as Co-Lead Counsel and Co-Lead Class Counsel.  *See* ECF Nos. 64, 6034 at 4 (¶ 3.b), 6534 at 3 (¶ 6), 10624.

2.    I submit this declaration in opposition to the "Motion to Intervene and to Stay Mediation" ("Motion") filed by class members Kevin Henry ("Henry") and Najeh Davenport ("Davenport") (collectively, "Henry and Davenport" or "Movants") (ECF No. 11306).  The

statements in this Declaration are based on my review of files maintained by my office and on personal knowledge.

3.      Henry filed a Monetary Award claim that was denied on January 4, 2019.  Under the Settlement, he had thirty days in which to lodge an administrative appeal – *i.e.*, until Monday, February 4, 2019.  *See* Settlement Agreement § 9.7(a) (ECF No. 6481-1 at 52).  Henry, though, neither filed an appeal nor requested an extension of time to do so.

4.      Davenport filed a Monetary Award claim that was initially approved on December 12, 2019, but the NFL filed an administrative appeal of the award on January 13, 2020. On August 20, 2020, the Special Masters remanded the claim to the Claims Administrator to obtain further information from the examining neuropsychologist.  Davenport lodged with this Court (through the Settlement's claims portal) an objection to the Special Master's ruling on August 31, 2020.   On November 20, 2020, the Court issued an order on the Settlement Program's portal, denying Davenport's objection without prejudice because he had filed his objection before completion of proceedings on remand and therefore in contravention of the Rules Governing Appeals of Claim Determinations promulgated by the Special Masters to implement the Settlement.  Davenport subsequently moved for reconsideration of that order.  Class Counsel filed an opposition to that motion, which is fully briefed and currently *sub judice*. Proceedings on remand with respect to Davenport's Monetary Award claim remain pending as of this date.  True copies of the Special Masters' August 20, 2020 decision remanding Davenport's claim and of the Court's November 20, 2020 order denying Davenport's objection without prejudice are annexed hereto as Exhibits 1 and 2, respectively.

5.       The Motion references three Monetary Award claims.  *See* ECF No. 11306 at 7 n.6.  In two of those cases (SPID 100010093 and 100016045), the Players[1] – represented by J.R. Wyatt, who is co-counsel for Movants, along with Zuckerman Spaeder LLP ("Zuckerman Spaeder") – filed administrative appeals from the denials of their Monetary Award claims, but the Special Master remanded those claims before the NFL had an opportunity to oppose the appeal – and thus before Class Counsel even had an opportunity to file a statement in support of the appeal.[2]

6.       In the case of the third Player (SPID 10005553) – also represented by Mr. Wyatt – Class Counsel did, in fact, submit a statement in support of the Player's appeal – which was ultimately granted, with the Player receiving a Monetary Award of $1.56 million.   A true copy of that appeal, with appropriate redactions of the Player's and health professionals' names, is annexed hereto as Exhibit 3.

7.       The NFL filed an opposition to this Player's administrative appeal, a true copy of which, with appropriate redactions of the Player's and health professionals' names, is annexed hereto as Exhibit 4.

8.       Consistent with the NFL's acknowledgment that the Settlement does not require the use of demographic norms adjusted for race, and its further conclusion that the neuropsychologist had not used *any* demographic adjustments (*see* Exhibit 4 at 5), Class Counsel had an expert neuropsychologist recalculate the Player's scores using demographic adjustments for age, sex, and education.  Based on those calculations, Class Counsel determined that the

---

[1]  For purposes of brevity and simplicity, "Players" refers to Retired NFL Football Players as defined in section 2.1(ffff) of the Settlement Agreement, ECF No. 6481-1 at 18.

[2]  Class Counsel's time to file a statement in support of an appeal is triggered by the issuance of the Filed Appeal Alert, which gives Class Counsel fifteen days from the date of the Alert or fifteen days from the NFL's opposition to submit his statement.  Consequently, because the Special Master directed a remand, Class Counsel never had a chance to submit a statement.

Player's test scores did, in fact, satisfy the requirements for Level 2 (and Level 1.5) Neurocognitive Impairment.  Class Counsel then submitted a statement in support of the Player's appeal, disputing the NFL's contention that the Player's test scores did not satisfy the relevant criteria and arguing, among other things, that when the demographic adjustments for age, sex, and education were applied, the Player satisfied the requirements for Level 2 (and Level 1.5).  A true copy of that statement in support of the Player's appeal, with appropriate redactions of the Player's and the health professional's names, is annexed hereto as Exhibit 5.

9. A true copy of the Player's reply in further support of his administrative appeal, with appropriate redactions of the Player's and health professionals' names, is annexed hereto as Exhibit 6.

10. On December 10, 2019, Special Master Pritchett overturned the denial of the Player's claim, ruling that the Player had established a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment.  A true copy of Special Master Pritchett's decision, with appropriate redactions of the Player's and health professionals' names, is annexed hereto as Exhibit 7.  Based on the Special Master's decision, the Player received a Monetary Award of $1.563 million.

11. In an effort to address concerns about demographic norms that adjust for race, I reached out to Zuckerman Spaeder, first in email exchanges in early February 2021.  I then had three telephone conversations with Zuckerman Spaeder between February 12 and 26, 2021.  In those conversations, I shared information concerning my office's investigation as well as concepts from my proposal for a resolution.  I then organized a conference call with Zuckerman Spaeder and counsel for the NFL on March 4, 2021 to discuss an attempted mediation.  During that conference call, Zuckerman Spaeder revealed the information that I had shared with them to the NFL's counsel – violating confidences.  When I subsequently called them out on this in an email,

Zuckerman Spaeder did not deny having violated confidences or explain why they revealed that information to the NFL's counsel.

12. I have worked assiduously to ensure that no Class Member has been, or will be, adversely affected by race norming. My objectives in the upcoming discussions before Magistrate Judge Strawbridge are two-fold. My first goal is to ensure the elimination of demographic norms that adjust for race, and put in place purely race-neutral demographic norms. My second goal is to investigate if any Class Member has been harmed by race norming. The process is not a simple one and will take time. Demographic adjustments that adjust for race, when clinically appropriate, have been used by neuropsychologists for decades and are generally accepted by experts in the field of neuropsychology. But there is a societal importance in what I have undertaken and seek to accomplish: removal of race as a factor in neurocognitive testing and use of solely race-neutral demographic norms. In effect, we would be creating a model that is both new and accurate, one that may lead to significant changes in the way that people of all races are evaluated for neuropsychological problems. This is a daunting task but one of paramount importance. It is one that I am confident can, and will, be accomplished.

13. Any proposal for ensuring the elimination of race norming that the Settling Parties work out before Magistrate Judge Strawbridge will ultimately be submitted to this Court for its consideration, and all Class Members and their counsel will be afforded an opportunity to weigh in on the proposal. I intend for the process to be completely transparent.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of March, 2021.

*s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER
*Class Counsel*
