# EXHIBIT 7

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : | No. 2:12-md-02323-AB |
|  | : | MDL No. 2323 |
|  | : | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: APPEAL OF SETTLEMENT REPRESENTATIVE CLASS MEMBER ███████████REGARDING DENIAL OF MONETARY AWARD | : : : : : : | |

### INTRODUCTION

This matter requires the Special Master to determine whether the appellant has established by clear and convincing evidence that the medical support for Claimant's Qualifying Diagnosis is "generally consistent" with the diagnostic criteria for Level 2.0 Neurocognitive Impairment in the Settlement Agreement.

For the reasons stated below, the Special Master has determined that Claimant is entitled to a Monetary Award for a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment.

### FACTUAL AND PROCEDURAL BACKGROUND

Mr.████████████was a Retired NFL Player ("Player") and Class Member under the Amended Class Action Settlement Agreement ("the Settlement Agreement"). He received a Qualifying Diagnosis of Level 2.0 Neurocognitive Impairment on September 14, 2017 by neurologist Dr.████████ as supported by a neuropsychological evaluation conducted by Dr.█████████on July 26, 2017. (Doc. 134479; Doc. 134478.) Mr.██████passed away on November 20, 2017. (Doc. 157918.)

On January 9, 2018, the claim was submitted for auditing pursuant to §10.3 of the Settlement Agreement. (Doc. 151822.) On March 21, 2018,██████████was appointed the temporary administrator of Claimant's Estate and given authority to represent Claimant's interests in the Settlement Program. (Doc. 166777.) Thereafter, Mr.█████████registered to serve as the Representative Claimant ("Claimant") in the Settlement Program. (Doc. 168707.) On September 17, the Special Masters determined that claims relying on testing by Dr.█████and certain other neuropsychologists may involve misrepresentation, omission, or concealment of a material fact and ordered individualized assessment of those claims by a single member of the Appeals Advisory Panel ("AAP"), with consultation from a single AAP Consultant. (Doc.

185393.) On September 24, 2018, the audit process was concluded in light of the Special Masters' decision. (Doc. 186088), and the Claims Administrator sent the claim to a member of the AAP and an AAPC for review. Based on input from the AAPC (Doc. 217856), the AAP member found that the neuropsychological testing was not consistent with the testing protocols in the Settlement Agreement and recommended that the Claims Administrator deny the claim. The Claims Administrator issued a Denial Notice on November 21, 2018. (Doc. 191563.) After the Settlement Class Member appealed the denial, the Special Masters remanded the claim for re-review. (Doc. 206349; Doc. 206865.) The Claims Administrator again denied the claim and Claimant filed an appeal, in which he provided evidence supporting his diagnosis. (Doc. 211842; Doc. 213199.) The Special Master requested independent AAP review of the claim package to determine whether it contained medical evidence generally consistent with the diagnostic criteria for either Level 1.5 or Level 2 Neurocognitive Impairment. (Settlement Agreement §9.8; Order Appointing the Special Masters, 5.)

## STANDARD OF REVIEW

The Special Masters must decide an appeal of a Monetary Award based on a showing by the appellant of clear and convincing evidence that the determination of the Claims Administrator was incorrect. (Order Appointing Special Masters, 5.) "Clear and convincing evidence" is a recognized intermediate standard of proof—more demanding than preponderance of the evidence, but less demanding than proof beyond a reasonable doubt. In re Fosamax Alendronate Sodium Prods. Liab. Litig., 852 F.3d 268, 285-86 (3d Cir. 2017) ("Black's Law Dictionary defines clear and convincing evidence as 'evidence indicating that the thing to be proved is highly probable or reasonably certain.'").

## DISCUSSION

The Settlement Class Member has established by clear and convincing evidence that the medical support in the Claim Package is generally consistent with the diagnostic criteria for Level 1.5 Neurocognitive Impairment. For living Retired NFL Football Players who received a Qualifying Diagnosis outside of the Baseline Assessment Program ("BAP"), the diagnosis must be accompanied by "evaluation and evidence generally consistent with the diagnostic criteria set forth in" the relevant section of Exhibit A-1 of the Settlement Agreement. (Settlement Agreement Ex. A-1, hereinafter "Injury Definitions.") The parties to the Settlement Agreement have defined "generally consistent" to mean that the evidence has more elements or characteristics in common" with the diagnostic criteria than "elements or characteristics that differ" from the criteria. (*See* Settlement Portal, *Frequently Asked Questions,* FAQ #101.)

Claimant was diagnosed outside of the BAP. Thus, Claimant's appeal can only be granted if there is clear and convincing evidence that the medical support for Claimant's diagnosis of Level 1.5 Neurocognitive Impairment has more commonalities with than differences from the diagnostic criteria for such a Qualifying Diagnosis.

There are four diagnostic criteria for a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment:

    (i)      Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

    (ii)     Evidence of a moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with…standardized neuropsychological testing protocol annexed…to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual- spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

    (iii)    [F]unctional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 1.0 (Mild) in the areas of Community Affairs, Home & Hobbies, and Personal Care.

    (iv)     The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(Injury Definitions.)

The AAP member correctly found there to be sufficient objective evidence of cognitive impairment to alleviate questions of symptom validity raised by the neuropsychological testing. (Doc.217628.) Since neither Dr. ███████ nor Dr. █████ identify a knowledgeable informant to assess the player's functional abilities, the basis for CDR assignments must come from the third-party affidavits. *(Id.)* A score of 1.0 in Community Affairs indicates that the player is unable to function independently in activities, but that the player may still participate in activities. (*See* Clinical Dementia Rating Assessment Protocol; Doc. 174709.) The statement from ███████████ indicates that the player participated in youth activities, but was unable to keep scheduled appointments, return important phone calls, or remember important dates without being reminded by the staff. (Doc. 213199.) Mild but definite impairment of function at home and the abandonment of difficult chores and hobbies indicates a score of 1.0 in Home & Hobbies. (Doc. 174709.) The █████████ affidavit indicated that the player did in fact abandon the completion of chores and withdraw from coaching, an activity he enjoyed in the past. (Doc. 134475.) The ████████████ affidavit also noted that the player needed help getting dressed, indicating consistency with a CDR score of 1.0 in the area of Personal Care. (*Id.*) These findings are generally consistent with a diagnosis of Level 1.5 Neurocognitive Impairment. (Doc. 217628.) As a result, the AAP member was correct to conclude that the questionable quality of the player's self-reported ability does not preclude a finding of impairment in this case. (*Id.*)

The Special Master agrees that, taken as a whole, Claimant's medical evidence has more commonalities with than differences from the diagnostic criteria for Level 1.5 Neurocognitive Impairment. Therefore, Claimant has met his burden of showing by clear and convincing evidence that Claimant should have been granted a Monetary Award.

## **CONCLUSION**

For the reasons stated above, the Special Master rules that the Claimant has established a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment.

Date: December 10, 2019

Wendell E. Pritchett, Special Master