IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY LITIGATION

---

Kevin Turner and Shawn Wooden, on behalf of
themselves and others similarly situated,

                        Plaintiffs

        v.

National Football League and NFL Properties, LLC,
successor-in-interest to NFL Properties, Inc.,

                        Defendants.

---

THIS DOCUMENT RELATES TO:
ALL ACTIONS

No. 2:12-md-02323-AB
MDL No. 2323

---

**MOTION TO INTERVENE OR ALTERNATIVELY
TO PARTICIPATE AS AMICUS CURIAE**

Class Members Johnnie Lynn and Joshua Bell, on behalf of a subclass of living retired

NFL players diagnosed outside of the Baseline Assessment Program ("BAP"), who received Pre-

effective date Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment and Level 2

Neurocognitive Impairment by board-certified and MAF Qualified Physicians pursuant to Section

6.3(c) of the Amended Settlement Agreement, but were nevertheless thwarted from participation

in the pre-BAP process by the Claims Administrator's imposition of additional corroborating

documentation requirements under BAP, in contravention of the Agreement (hereinafter

collectively "Movants"), respectfully move to intervene for the purpose of participating in

proceedings this Court recently ordered to come before Magistrate Judge David Strawbridge "to

seek to address the concerns relating to the race-norming issue" (ECF 11302),[1] or alternatively requests that this Court exercise its inherent authority to designate Movants as amici curiae to assist it in the proceedings before Magistrate Judge David Strawbridge.

As grounds, the Movants state that Class Counsel Seeger Weiss has not and cannot adequately represent their interests, as living retired NFL players who have been thwarted from pre-BAP participation under Section 6.3(c) of the Settlement Agreement, because Class Counsel has actively participated in, or at the very least has been complicit with, the Claims Administrator's imposition of those very tactics, such as seemingly requiring corroborating documentary evidence and application of race norming standards, that go beyond the terms of Amended Settlement Agreement to the Movants' detriment.

Specifically, as detailed further below, Class Counsel:

- Approved of and even directed the Claims Administrator's "rigorous" handling, review and approval of Claim Packages, including analysis of pre-BAP claims submitted by the Movants pursuant to Section 6.3(c) under the "gold standard" BAP requirements (MDL ECF 8432-2, pp. 2-4);

- Directed the Claims Administrator in November 2017 to require that neuropsychological testing records submitted in support of claims for Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment and Level 2 Neurocognitive Impairment include the raw scores from that testing, which went beyond the terms of the Amended Settlement Agreement (MDL ECF 8923-1, p. 2);[2] and

---

[1] This Court referred only the NFL and Class Counsel Seeger Weiss, as the original parties that drafted the Settlement Agreement, to Magistrate Judge David Strawbridge to seek to address the concerns relating to the race-norming issue (ECF 11302). No further information on the nature of proceedings or when and where such proceedings will occur has been given on record.

[2] It should not escape this Court's notice that those same raw scores Class Counsel directed the

- Immediately thereafter, co-lead class counsel Chris Seeger, participated in an in-chambers conference to ostensibly "address issues regarding the implementation of the settlement agreement," which ultimately resulted in the Claims Administrator gaining more unfettered discretion to modify the terms and protocol for obtaining a Qualified Diagnoses beyond the terms of the Amended Settlement Agreement (MDL ECF No. 8909).

Notwithstanding the Movants' apprehension of Class Counsel's inability to adequately represent their interests in this matter, the Movants have a special interest that justifies them having a say in these proceedings, and should be permitted to be heard regarding the race-norming issue as amicus curiae because the Movants can contribute to Magistrate Judge Strawbridge's understanding of the race norming issue insofar as it is imbedded within the protocol and administration of Qualifying Diagnoses under the Amended Settlement Agreement.

In furtherance of the foregoing, Movants include a statement of background facts and procedure and incorporated memorandum of law and legal argument for this Honorable Court's consideration.

## BACKGROUND

1.      Movants are comprised collectively of a subclass of upwards of fifty living retired NFL players who received pre-effective date qualifying diagnoses upon examination by Board-Certified Neurologist Dr. Mircea Morariu, Sr., which were thereafter evaluated and affirmed by Dr. Nicholas Suite, a Board-Certified Neurologist, who was at that time selected and approved by the NFL and Co-Lead Class Counsel as a Qualified MAF Physician, whose pre-BAP claims were

---

Claims Administrator to require are necessary for the race norming adjustments to even come into play (MDL ECF 11312-1 at pp. 4-6). The demographic norms are employed to convert those raw scores, which were not originally required as part of the Qualifying Diagnosis protocol, into T-scores. *See Aug. 20, 2020 Decision of Special Masters Regarding Demographic Norm Adjustments* ("SM Decision") at p. 9.

determined to be deficient by the Claims Administrator for failure to provide so-called

corroborating documentation under BAP, which were not required in the pre-BAP protocol under

the Amended Settlement Agreement.

2.      The Movants have submitted claims for Monetary Awards by and through

undersigned counsel under the Amended Class Action Settlement Agreement (MDL ECF No.

6481-1) (approved on April 22, 2015 and amended May 8, 2015, the "Settlement Agreement").

3.      Section 6.3(c) of the Amended Settlement Agreement categorizes the type of

qualifying diagnosis that the members of this subclass fall within:

> From the date of the Preliminary Approval and Class Certification Order through
> the Effective Date, a Qualifying Diagnosis of Level 1.5 Neurocognitive
> Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease,
> Parkinson's Disease, or ALS shall be made only by board-certified neurologists,
> board- certified neurosurgeons, or other board-certified neuro-specialist physicians,
> except as set forth in Section 6.3(e).

MDL ECF No. 6481-1, p. 32.

4.      For a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, claimants

presenting pre-effective date claims outside of the BAP must establish:

> For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis
> while living of Level 1.5 Neurocognitive Impairment, i.e., early dementia, based
> on evaluation and evidence generally consistent with the diagnostic criteria set forth
> in subsection 1(a)(i)-(iv) above, made by a Qualified MAF Physician or a board-
> certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist
> physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement
> Agreement.

MDL ECF No. 6481-1, p. 107.

5.      For a qualifying diagnosis of Level 2.0 Neurocognitive Impairment, claimants

presenting pre-effective date claims outside of the BAP must establish:

> For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while
> living of Level 2 Neurocognitive Impairment, i.e., moderate dementia, based on evaluation
> and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-

(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) is medically unnecessary because the Retired NFL Football Player's dementia is so severe, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

MDL ECF No. 6481-1, pp. 108-09.

6.      The Amended Settlement Agreement specifically provides that "generally consistent" shall not be read to mean identical to the BAP or post-effective date diagnosis criteria:

For the avoidance of any doubt, the review of whether a Qualifying Diagnosis is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 (Injury Definitions) does not require identical diagnosis criteria including without limitation, the same testing protocols or documentation requirements.

MDL ECF No. 6481-1, pp. 37-38.

7.      The Amended Settlement Agreement explicitly provides that "generally consistent" does not mean the same documentation requirements identified under the BAP diagnosis criteria under Section 1(a)(i)-(iv), Exhibit 1 to the Settlement Agreement.

8.      Yet, deficiency notices issued by the Claims Administrator to the Movants identified the claimants' purported failures to, among other things, comply with the BAP protocol by independently producing and/or ensuring their diagnosing physician(s) considered corroborating documentary evidence, such as medical records or employment records, from before the dates of their Pre-effective Date Qualifying Diagnoses (MDL ECF No. 8267-1).

9.      The Claims Administrator effectually modified the Amended Settlement Agreement as to these claims by indicating the lack of BAP protocol corroborating documentary evidence constituted a so-called deficiency in the pre-effective date claims packages, and further by indicating MAF Qualified Physician Dr. Suite's conclusions upon confirming consultations on those claims were lacking.

10.     Undersigned counsel filed a Motion to Determine Proper Administration of Claims

Under the Settlement Agreement on August 15, 2017, which requested that the Court enter an order compelling the Claims Administrator to administer the Settlement Agreement according to its terms, and among other items, require the Claims Administrator to disclose its internal procedures and criterion used to evaluate claims and make a determination whether the internal procedures and criterion are consistent with the Settlement Agreement (MDL ECF No. 8267).

11.     Issues with the Claims Administrator's interpretation and protocol on Pre-effective date Qualifying Diagnoses were further raised by motion to submit a Statement of Information and Evidence filed by Plaintiffs' counsel Neurocognitive Football Lawyers, PLLC, and The Yerrid Law Firm, which cites similar problems encountered by other retired NFL players who received pre-effective date qualifying diagnoses (MDL ECF No. 8375). This Court later denied that motion as moot (MDL ECF No. 8877).

12.     Another group of retired NFL Players, represented by Attorney Simona Farrise and the Farrise Law Firm, P.C., who likewise received pre-effective date qualifying diagnoses and were otherwise eligible but for the so-called deficiencies cited by the Claims Administrator, such as purported lack of corroborating documentary evidence from before the date of the Pre-effective date Qualifying Diagnoses, filed notice of joinder with the undersigned's Motion to Determine Proper Administration of Claims Under the Settlement Agreement, on the basis that the Claims Administrator effectually amended the terms of the Amended Settlement Agreement (MDL ECF No. 8387).

13.     Still another group of more than two hundred and thirty retired NFL Players represented by Attorney Anoush Hakimi and The Law Office of Hakimi & Shahriari, filed notice of joinder with the undersigned's Motion to Determine Proper Administration of Claims Under the Settlement Agreement, citing deviations in implementation of the procedure and protocol of

the Amended Settlement Agreement by the Claims Administrator (MDL ECF No. 8397).

14.     Despite Class Counsel's obligation to actively monitor the implementation of the Settlement Program on behalf of the Settlement Class, and in the face of hundreds of claimants' raising the same or similar problems they were actively encountering in the process due to the Claim Administrator's deviations from the terms of the Amended Settlement Agreement, Co-Lead Counsel chose to *join* the National Football League and NFL Properties LLC in *opposing* the Motion to Determine Proper Administration of Claims and all the concerns of those numerous class members who joined or otherwise supported the motion (MDL ECF No. 8432).

15.     In fact, as the Movants came to find out, it was Class Counsel who directed the Claims Administrator to assess the medical records in every Level 1.5 and Level 2 Claim Package against the BAP diagnostic criteria, irrespective of when the Qualifying Diagnosis occurred and who made it (MDL ECF No. 8432-2, p. 3).

16.     It was Class Counsel who directed the Claims Administrator to require that neuropsychological testing records include the **raw scores** from that testing, the inclusion of which were not originally required by the Amended Settlement Agreement (MDL ECF 8923-1, p. 2), and which are at the very heart of the race norming issues this Court now seeks to address.

17.     Specifically, ***the race norming adjustments are applied to the raw score*** in order to yield a T-Score ("SM Decision" at p. 9) (emphasis added). The Claims Administrator, and frankly, this Court, have become ingratiated in this racial norming fiasco because Class Counsel directed the Claims Administrator to require claimants to disclose their raw score data, heedless of the original Qualifying Diagnosis protocol in the Amended Settlement Agreement (MDL ECF 8923-1, p. 2).

18.     Co-Lead Counsel argued the Motion to Determine Proper Administration of Claims

should be denied as premature under the pretext that the movants and hundreds of other claimants who had joined or otherwise supported the motions had simply not obtained their final decisions on the merits and/or appealed those denials on the merits (MDL ECF No. 8432).

19.     Co-Lead Counsel blatantly minimalized its class members concerns, stating the deficiency notices were only preliminary, and rationalizing that claims initially found to be deficient could potentially be found generally consistent upon a subsequent merits review (MDL ECF No. 8432).

20.     In addressing the corroborating documentary evidence issue, Co-Lead Counsel's opposition stated: "such information and/or documents ***are not mandatory*** for a review on the merits, but instead are strongly encouraged to be provided to the extent such material existed and was considered as part of the Qualifying Diagnosis" (MDL ECF No. 8432, p. 13) (emphasis added).

21.     Class Counsel and the NFL have, incredibly, revived this language in reference to application of the race norming requirements, as recently reported by ABC News, including a public statement by Christopher Seeger that "the use of demographic adjustments, including for race, is not required, and that the neuropsychologist examining a player should use their professional judgment to select the appropriate demographic adjustments to apply to the player's test results."[3]

22.     This Court summarily denied the Motion to Determine Proper Administration of Claims Under the Settlement Agreement on the basis that the subclass had improperly "attempt[ed] to circumvent those processes by directly petitioning the Court" (MDL ECF No. 8882).

---

[3] *See* Pete Madden et al., *Clinicians fear NFL's concussion settlement program protocols discriminate against Black players*, ABC News (Feb. 3, 2021), https://abcnews.go.com/Sports/clinicians-fear-nfls-concussion-settlement-program-protocols-discriminate/story?id=75646704.

Notwithstanding clear flaws in administration of the process, as detailed by undersigned counsel and additional firms representing former NFL players in the same circumstances, the Court capitulated: "Movants must proceed through the Claims Administration process, and if the claims are denied, movants must follow the proper appeals process" (MDL ECF No. 8882).

23.     Nevertheless, within days of issuing its summary denial, the Court called for a closed conference to take place in chambers, with representatives of the NFL, class counsel (represented solely by co-lead class counsel Chris Seeger), and the special masters only, for the purpose of "address[ing] any issues regarding the implementation of the settlement agreement" (MDL ECF No. 8909).

24.     Soon thereafter, the Claims Administrator notified Dr. Suite that he had been terminated as a Qualified MAF Physician on grounds that he failed to provide to it with all medical records concerning the examination of Retired NFL Football Players.

25.     The Court's Order Denying the Motion to Determine Proper Administration of Claims Under the Settlement Agreement, effectually gave carte blanche to counsel for the NFL Parties and Class Counsel to modify and manipulate the terms of the Amended Settlement Agreement, including the prerogative to "strongly recommend" and seemingly require that MAF Qualified Physicians consider particular forms of corroborating documentary evidence or apply specified race norming standards in their diagnoses.

26.     The Movants fear that without meaningful intervention and participation by the subclass members, these unfettered deviations and modifications of the terms agreed to vis-à-vis the Amended Settlement Agreement will continue to go unchecked and will irrevocably erode the foundations of the Agreement and this Court's essential role in faithfully enforcing its terms.

<u>**MEMORANDUM OF LAW**</u>

**I.     The Movants are Entitled to Intervene in the Proceedings Before Magistrate Judge Strawbridge as By Right or Should at the Very Least be Permitted to Intervene.**

"'[M]embers of a class have a right to intervene if their interests are not adequately represented by existing parties.'" *Tech. Training Assocs. v. Buccaneers Ltd. P'ship,* 874 F.3d 692, 696 (11th Cir. 2017) (*quoting Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 594, 133 S. Ct. 1345, 1349, 185 L. Ed. 2d 439 (2013)). An appellate court reviews the denial of a motion to intervene as of right *de novo* and subsidiary findings of fact for clear error. *Id.* at 695.

The Movants' right to intervene under Rule 24(a) of the Federal Rules of Civil Procedure arises primarily from Class Counsel and Co-Counsel's pervasive nonfeasance in monitoring implementation of the claims processes per the terms agreed to in the Amended Settlement Agreement. Parties seeking to intervene under Rule 24(a)(2) must show that:

> (1) [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit.

*Tech. Training Assocs.,* 874 F.3d at 695-96. "[W]hen absent class members seek intervention as a matter of right, the gravamen of a court's analysis must be on the timeliness of the motion to intervene and on the adequacy of representation." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Sec. Mortg. Loan Litig.,* 418 F.3d 277, 314 (3d Cir. 2005).

Here, the Movants (1) have timely filed an application to intervene or otherwise contribute to a discussion of the race-norming issue as pertains to implementation of claims under the Amended Settlement Agreement before Magistrate Judge Strawbridge. "Timeliness of an intervention request 'is determined by the totality of the circumstances.'" *Id.* Factors that may be considered include: the stage of the proceeding, the prejudice that delay may cause the parties, and

the reason for the delay. *Id.*

This Court's order referring the parties to Magistrate Judge Strawbridge, entered March 8, 2021, contained no directive as to when said mediation and/or conference was to take place, ergo the Movants' intervention cannot cause any actual delay or prejudice to the parties. Moreover, this stage of the proceedings is before the Court under its continuing and exclusive jurisdiction, which by the terms of the Amended Settlement Agreement, extends:

> over the Parties and their counsel, all Settlement Class Members, the Special Master, BAP Administrator, Claims Administrator, Liens Resolution Administrator, Appeals Advisory Panel, Appeals Advisory Panel Consultants, and Trustee with respect to the terms of the Settlement Agreement. Any disputes or controversies arising out of, or related to, the interpretation, implementation, administration, and enforcement of this Settlement Agreement will be made by motion to the Court. In addition, the Parties, including each Settlement Class Member, are hereby deemed to have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of, or relating to, this Settlement Agreement. The terms of the Settlement Agreement will be incorporated into the Final Order and Judgment of the Court, which will allow that Final Order and Judgment to serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to the Settlement Agreement.

MDL ECF No. 6481-1, p. 95. Given that the proceedings before Magistrate Judge Strawbridge relate to the interpretation, implementation, administration, and enforcement of the Amended Settlement Agreement, the Movants' application must satisfy the timeliness requirement.

(2) The Movants' interest in the subject of the proceedings is apparent largely in the fact that they are, as Settlement Class Members, bound by the Parties' interpretation and implementation of the Amended Settlement Agreement, and have (as identified above) submitted to the exclusive jurisdiction of this Court for all matters related thereto. The Movants' rights vis-à-vis the Amended Settlement Agreement are very much and very directly at stake here.

Consequently, (3) the Movants' interests may be impaired by disposition that may result from the proceedings before Magistrate Judge Strawbridge because, although the Movants'

applications for Monetary Awards under section 6.2(c) were largely denied or withdrawn, they qualify for at least one baseline assessment examination as provided in Section 5.2 of the Amended Settlement Agreement (MDL ECF No. 6481-1, pp. 24-25) ("[A]n eligible Retired NFL Football Player who submits a claim for a Monetary Award, whether successful or not, may participate in the BAP, except a Retired NFL Football Player who submits a successful claim for a Monetary Award is not eligible to later receive BAP Supplemental Benefits.").

Moreover, because the Parties' have historically modified the definitions of Qualifying Diagnoses and/or protocols for making Qualifying Diagnoses, and obtained the Court's approval of such modifications, as occurred by way of the closed in chambers conference with representatives of the NFL, co-lead class counsel Chris Seeger, and the special masters (MDL ECF No. 8909), without giving the class members any opportunity to protect their interests, there is a very real likelihood that the proceedings before Magistrate Judge Strawbridge, as currently limited to the NFL and Class Counsel Seeger Weiss, will definitively determine the Movants' substantive rights under the Amended Settlement Agreement.

A class member "should not be put to the risk of having a judgment entered in the action which by its terms extends to him, and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack. Rather he should, as a general rule, be entitled to intervene in the action." Advisory Committee Note, Fed. R. Civ. P. 24(a), 39 F.R.D. 110; *see also Tech. Training,* 874 F.3d at 696 (discussing the advisory committee note to the 1966 amendment to Rule 24, which was the last substantive amendment to Rule 24(a)(2)). The Movants are, indeed, at risk, and are therefore entitled to intervene here.

Finally, (4) it is clear that the Movants' interest is no longer adequately protected by the Parties. "To overcome the presumption of adequate representation, the proposed intervenor must

ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit." *In re Cmty. Bank,* 418 F.3d at 315. In this regard, "the presumption is weak; in effect, it merely imposes upon the proposed interven[o]rs the burden of coming forward with some evidence to the contrary." *Tech Training,* 874 F.3d at 697.

First of all, Class Counsel and Co-Counsel's adversity of interest against the Movants is apparent in its habitual *joinder* with the National Football League and NFL Properties LLC in *opposing* motions filed by subclass members regarding the interpretation, implementation, administration, and enforcement of the Amended Settlement Agreement, as detailed above, and most recently by Class Counsel's independent opposition to class members Kevin Henry and Najeh Davenport's motion to intervene and stay mediation (MDL ECF 11312). Class Counsel's adversity of interest against the Movants is also apparent in its role in initially approving Dr. Suite as a Qualified MAF Physician (6481-1, p. 38), who was at that time the only Black physician included on the Qualified MAF Physician list, and apparent acquiescence to his termination from the program for purported failure to provide all medical records concerning the examination of Retired NFL Football Players, which effectively prevents Dr. Suite from speaking out about the practices employed.

Further, Class Counsel's nonfeasance in monitoring implementation of the claims process so as to protect class members is evinced by its pervasive complacency and off-record agreements and instructions to the Claims Administrator to change and modify the protocols for making Qualifying Diagnoses under the Amended Settlement Agreement, including its role in clandestinely introducing race-norming into the Settlement Program through the BAP Guide, as alluded to and detailed in the Henry/Davenport motion to intervene and stay mediation (MDL ECF 11306, pp. 2, 5-7).

While the foregoing grounds are dispositive of the Movants' right to intervene under Rule 42(a), it is further suggested that that Court may permit the Movants to intervene under Rule 24(b) as parties who have a claim or defense that shares with the main action a common question of law or fact. "Permissive intervention is within the discretion of the trial court, which must consider 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Diduck v. Kaszycki & Sons Contractors, Inc.,* 149 F.R.D. 55, 59 (S.D.N.Y. 1993).

The common question of law and fact here at issue is the extent to which the Parties can properly direct diagnosing physicians to implement standards, such as race norming, which are not included as a criterion for identifying a Qualifying Diagnosis under the Amended Settlement Agreement, in order to reach a Qualifying Diagnosis. As noted above, the Parties cannot show intervention by the Movants will unduly delay or prejudice the adjudication of the rights of the original parties given the stage of proceedings and the fact that no date or directives for the mediation and/or conference between the NFL, Class Counsel Seeger Weiss and Magistrate Judge Strawbridge have been set or announced.

Therefore, the Movants respectfully submit that this Court must grant intervention as of right under Rule 42(a), and may additionally exercise its discretion to permit the Movants to intervene under Rule 42(b). *See, e.g., Diduck* (granting intervention as of right under Rule 42(a) and further granting intervention by permission under Rule 42(b)).

II.   **If the Court Finds the Movants Do Not Meet the Standard for Intervention, it Should Allow Movants to Participate in the Proceedings before Magistrate Judge Strawbridge as Amicus Curiae**

If a party "fails to meet the standard for intervention under Rule 24, a court may nonetheless allow a party to participate in litigation as an amicus curiae where 'although short of a right to intervene, the amicus has a special interest that justifies his having a say.' *Liberty Res., Inc. v. Phila. Hous. Auth.,* 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005). It is fully within this Court's inherent authority to designate amici curiae to assist it in any capacity in a proceeding. *See id.*

Of the utmost importance here is that former NFL Players and their families and loved ones feel they no longer have a seat at the table to receive compensation through the protocol they originally agreed to, as is evinced both through numerous class members' filings in this Court over the last 4 years, most of which have been denied as unripe, as well as through a resounding public outcry and appeal, as by the public letter addressed to Judge Brody the last time she permitted a closed conference between the Court, the NFL and Class Counsel, which implored Judge Brody to employ better administration and transparency in this process (MDL ECF 8923-3, pp. 6-7). There is no more important time, and no greater opportunity, for this Court to address the public's entreaty than by exercising its discretion to designate the Movants as amicus curiae to the proceedings before Magistrate Judge Strawbridge.

In cases affected with the interest of the general public, it is all the more imperative that the Court ensure complete and plenary presentation of difficult issues so it may reach a proper decision, which is effectively accomplished by and through the participation of an amicus. *See Liberty Res.,* 395 F. Supp. 2d at 209-10; *see also Harris v. Pernsley,* 820 F.2d 592, 603 (3rd Cir. 1987) (finding even when an applicant is not entitled to intervene, it may still appear as a friend of the court for a limited purpose where the applicant "can contribute to the court's understanding").

That being said, "[a]micus curiae status is generally granted when: (1) the petitioner has a 'special interest' in the particular case; (2) the petitioner's interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the petitioner is not partial to a particular outcome in the case." *See id.* The Movants meet these factors with respect to the forthcoming proceedings before Magistrate Judge Strawbridge.

Firstly, the Movants' special interest in this particular matter is clear as applicants for Qualifying Diagnosis to which the subject race-norming standards apparently must, but perhaps may not, be integral, and as participants in those Monetary Award and, ultimately, BAP protocols that the NFL and Class Counsel will be discussing with Magistrate Judge Strawbridge. Secondly, the Movants' interests are not represented competently in this case given Class Counsel and Co-Counsel's nonfeasance in monitoring implementation of the claims process so as to protect class members, and given the adverse positions and denigrating attitude Class Counsel and Co-Counsel have taken in opposition to its class members concerns, as detailed *supra* at pages 12-13.

Thirdly, the Movants' information and experience from having brought the over-arching issue of improper administration and monitoring of claims under the Amended Settlement Agreement before this Court, which resulted in a closed conference on the matter, will be timely and useful to Magistrate Judge Strawbridge in considering the issue of race norming as it is imbedded within the Qualifying Diagnosis protocol and administration. Additionally, the Movants offer a unique prospective insofar as their subclass includes former NFL Players from many races and backgrounds, including White, Black, Hispanic and Pacific Islander.

Lastly, although it could be said that the Movants are partial to and would side with the positions taken by its fellow subclass of Black former NFL players, the Movants' concerns are more broadly directed to the outcome of any decision that would further expand the already

unconstrained discretion this Court has allowed the NFL and Class Counsel to take in transforming the original foundations of the Qualifying Diagnosis protocol through the Claims Process. At any rate, there is no absolute rule that amici must be totally disinterested. *See, e.g., Neonatology Assocs., P.A. v. C.I.R.,* 293 F.3d 128, 132 (3d Cir. 2002) (rejecting argument that amicus must be impartial person not motivated by pecuniary concerns).

Traditionally, amicus curiae status confers the right to file briefs on motions before the court and to participate at oral argument, but the concept of amicus curiae is "flexible," and the Court has exclusive discretion to determine "the fact, extent, and manner" of participation by an *amicus. See Wharton v. Vaughn,* No. 01-6049, 2020 U.S. Dist. LEXIS 24816, at *13 (E.D. Pa. Feb. 12, 2020) (citing *Matheis v. CSL Plasma, Inc.,* 936 F.3d 171, 176 (3rd Cir. 2019)).  Here, the Movants suggest it would be most helpful for the Court to granting Movants the right to receive notice of all developments regarding the proceedings before Magistrate Judge Strawbridge, a right of access to all the parties' discovery materials and to receive copies of all correspondence between the parties, the right to file briefs and memoranda in those proceedings, and the right to listen to and comment on those matters before Magistrate Judge Strawbridge. *See Liberty Res.,* 395 F. Supp. 2d at 210 (exercising its discretion in tailoring the extent and manner of the participation of an amicus thusly).

**CONCLUSION**

The Movants Johnnie Lynn and Joshua Bell, on behalf of living retired NFL players diagnosed outside of the Baseline Assessment Program ("BAP"), who received Pre-effective date Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment and Level 2 Neurocognitive Impairment by board-certified and MAF Qualified Physicians pursuant to Section 6.3(c) of the Amended Settlement Agreement, but were nevertheless thwarted from participation in the pre-BAP process by the Claims Administrator's apparent imposition of additional corroborating documentation requirements under BAP beyond the terms of the Agreement (hereinafter collectively "Movants"), respectfully ask the Court to enter an order granting intervention as of right under Rule 42(a), or permitting intervention under Rule 42(b), in proceedings before Magistrate Judge David Strawbridge relating to the race-norming issue, and in light of the affects of the general public's interest in this matter, asks this Court to exercise its inherent authority to designate Movants as amici curiae to contribute to the Court's understanding in those proceedings.

Dated: March 26, 2021

Respectfully Submitted,

Attorneys for Plaintiffs/Movants
Patrick J. Tighe
X1LAW, P.A. f/k/a Patrick J. Tighe, P.A.
721 US Highway 1, Ste 101
North Palm Beach, FL 33408
Phone: (561)537-3319
Fax: (561)537-7193
Pat@X1LAW.com
Florida Bar No. 568155

*s/Patrick J. Tighe*
Patrick J. Tighe

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 26, 2021, the foregoing document was electronically filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

<div style="margin-left:40%">

X1LAW, P.A.

*s/Patrick J. Tighe*
Patrick J. Tighe

</div>