IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>         Plaintiffs<br><br>    v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>         Defendants. | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

## **REPLY IN SUPPORT OF MOTION TO INTERVENE AND TO STAY MEDIATION**

  This Court has a critical decision to make. Now that the issue of "race-norming" harming Black players has been raised by Movants, and now that this Court has expressed its own concern about the practice, who should represent the interests of Black players attacking this scheme?

### **Introduction and Summary of Argument**

  Movants accept that Class Counsel feels strongly about this issue. But strong feelings and a defensive reaction are not the test here. Indeed, those strong feelings prove the point that representation of Black Class Members is likely to call into question Class Counsel's earlier conduct. Rather, the question is one of "adequate representation" under Rule 24. Class Counsel cannot overcome three facts demonstrating that it *alone* is not an adequate representative of Black class members on race norming issues. ***First***, Class Counsel negotiated and agreed to the secret

2017 BAP Guide, and thus played a role in introducing the presumptive use of race norms into the Settlement Program.  ***Second***, far from "work[ing] assiduously" to protect Class Members from being harmed by race norming, Opp'n, ECF 11312, at 15, Class Counsel has strained to avoid confronting the issue.  Class Counsel has been on notice of race norming's discriminatory use since at least 2018, yet it was not until August 2020, when Movants took legal action, that the issue was brought to the Court's attention.  And ***third***, even after all of the information that Movants have brought to light regarding race norming, Class Counsel still refuses to accept even the *possibility* that the present practice of race norming within the Settlement Program might constitute discrimination.[1]

## ARGUMENT

Class Counsel alone cannot adequately represent the interests of Black former players with respect to race norming for essentially three reasons.

***First***, Class Counsel played a role in introducing the presumptive use of race norming into the Settlement Program—a fact that Class Counsel does not, and cannot, refute.  *See* Opp'n at 7 (without explanation, labeling as "inaccurate" Movants' claim that Class Counsel played a role in effectuating the use of race norms).  Movants focused extensively on the fact that Class Counsel negotiated and agreed to the 2017 BAP Guide, which occurred in secret out of the view of Class Members and their counsel.  *See* Mot. at 2–3, 6.  Yet Class Counsel *never addresses* its role with

---

[1] Movants have also requested that the Court stay the mediation it previously ordered, pending a resolution of Movants' request to intervene. Mot. at 1 n.1.  Class Counsel faults Movants for not addressing the legal standard for stays, *see* Opp'n at 16, but courts have broad discretion to stay their own orders. *E.g. Robertshaw v. Pudles*, 2014 WL 1976890, at *2 (E.D. Pa. May 15, 2014). Here, the issue is simply one of scheduling:  staying the mediation until after this motion is decided avoids having to undo the effect of discussions and agreements before intervention if the Motion is granted.  Having waited more than two years to address the problem of race norming, Class Counsel has no cause to oppose such a scheduling decision.  And there would be no delay at all if Class Counsel agrees to intervention.

respect to the BAP Guide. *See generally,* Opp'n. The BAP Guide recommends the use of "full demographic corrections" for some tests and requires use of "Heaton norms" on others—norms that require clinicians to select either a "Black" or "White" normative reference population. The Special Masters relied on the BAP Guide in concluding that clinicians must explain any decision not to use unfavorable Black norms for Black former players. *See* Mot. at 6 & n.4 (citing SM Decision at 9, 11, 12). There is no avoiding that Class Counsel shares some blame for the problem of race norming in the Settlement Program. *See id.*

Blaming the Settlement Agreement itself and noting the lack of objections related to race norming, Opp'n at 12, is not sufficient—indeed it is contrary to the interests of Black Class Members who reasonably did not interpret the language of Exhibit 2 to the Settlement to require or presume the use of race norming. As Movants have extensively explained, and as the Special Masters recognized, the Settlement Agreement itself *does not* require or presume the use of race norms. If it did, the lack of objections would be startling. Rather, the presumption of race norming has arisen in the *administration* of the Settlement Agreement with Class Counsel's involvement by virtue of its agreement to the secret 2017 BAP Guide. Insofar as Class Counsel attributes the current practice of race norming to the Settlement Agreement itself, Class Counsel cannot adequately represent Black Class Members who seek to *dispute* that the Settlement Agreement itself is to blame.

***Second***, Class Counsel cannot serve as an adequate representative because it has previously gone to great lengths to *avoid* confronting the issue of race norming within the Settlement Program. As Movants previously noted and Class Counsel does not dispute, the discriminatory nature of race norming was raised in individual claim appeals at least as early as November 2018, and multiple times thereafter. *See* Mot. at 7; *see also* Ex. A, Decl. of Justin R. Wyatt, at ¶¶ 2–5.

Class Counsel protests that two of the claim appeals were remanded before it had an opportunity to file a supporting brief, Opp'n at 9, but the point here is one of *notice*. The reason Class Counsel has access to all appeals is to carry out its unflagging duty:

> to act in the best interest of the Settlement Class as a whole, with respect to promoting, supporting, and effectuating, as fair, adequate, and reasonable, the approval, *implementation, and administration of the settlement embodied in the Settlement*, and . . . . their professional responsibilities as attorneys are to be viewed in this light[.] [Settlement Agreement, Section 28.1, emphasis added.]

Individual Claimants presented the race norming issue in bold relief in 2018 and 2019. Yet Class Counsel took no action then to address the race-norming issue, or even to raise it with the Court. As to the third claim appeal, although Class Counsel filed a supporting brief, that brief *never mentioned* race norming (or race at all), and it ignored the claimant's argument that race norming harmed Black players. *See generally* Ex. 5 to Decl. of Christopher Seeger, ECF 11312-6. And this silence came *after* the Claimant's brief had devoted nine pages to the issue. *See* Ex. 3 to Decl. of Christopher Seeger, ECF 11312-4 at 16–25.

Class Counsel now emphasizes the fact that this specific claim appeal was resolved without addressing the propriety of race-norming, as if that were a positive, Opp'n at 9–10, but this has it exactly backwards. Even if Class Counsel did not appreciate the significance of race norming in 2017, it surely did in the years following—yet failed to act until Movants forced its hand. Put differently, resolving this one claim without a broad rejection of race norming only underlines the lengths to which Class Counsel has gone to avoid confronting race norming.

Even in October 2020, Class Counsel refused when counsel for Movants wrote to ask its help in obtaining data showing qualification rates in the BAP broken down by race. *See* Mot., Ex. A, ECF 11306-1. Rather than act as an ally in the cause to fulfill its fiduciary obligation to protect Black Class Members, Class Counsel wrote:

> [W]e cannot facilitate discovery for *your* claims from the various administrators. We have submitted to the Court our formal response on this matter, and on the current record, *we think that a request for more information from us (or the administrators is not appropriate or warranted.*

*Id.* (emphasis added). Regrettably, Class Counsel has not "worked assiduously" to protect Class Members from being harmed by race norming. Opp'n at 15. To the contrary, it has strained to avoid the issue, and cannot now—acting alone—serve as an adequate representative of Class Members' interests.[2]

***Third*** and finally, Class Counsel cannot claim to adequately represent the interests of Black Class Members with respect to race norming because it has continued to insist that no discrimination is occurring. Class Counsel recently pronounced in a media statement that, "[a]s we have investigated this issue, we have not seen any evidence of racial bias in the settlement program."[3] Class Counsel repeated this view in its Opposition Brief, rejecting even the *possibility* that race norming in the Settlement Program has resulted in discrimination. *See* Opp'n at 6 n.4 (accusing movants' counsel of "wrongly claiming that the Settlement discriminates against black players"). Class Counsel cannot now argue that it "should be allowed to move swiftly to . . .

---

[2] Trying again to avoid confronting the race norming issue, Class Counsel suggests that the Special Masters' decision in Mr. Davenport's claim appeal "was not because of race norming." Opp'n at 6. The Special Masters' *only* reason for remanding Mr. Davenport's claim was to require that the clinician explain why he chose not to use unfavorable Black norms—i.e., the Special Masters were implementing what they saw as a presumption of race norming. *See* SM Decision at 11 ("[S]ince full demographic adjustments are presently generally recommended, when a clinician does not use them, it is reasonable to require that the clinician explain why."); *id.* at 12 (remanding claim because the clinician did not provide such an explanation in regard to racial norms). To refute Class Counsel's claim, simply look at the Special Masters posting of the decision on their public website under the heading "Demographic Norm Adjustments. *See* Special Master Decisions, https://www.nflconcussionsettlement.com/PD-SpecialMasterDecisions-MonetaryAwardClaims.aspx (last visited Mar. 25, 2021).

[3] Pete Madden, *Judge orders NFL, Class counsel to 'address the concerns' about race-norming in concussion settlement*, ABC News (Mar. 8, 2021), https://abcnews.go.com/Sports/judge-orders-nfl-class-counsel-address-concerns-race/story?id=76321584#:~:text=The%20federal%20judge%20overseeing%20the,some%20football%2Drelated%20head%20injuries.

investigate scored claims to ensure that none were inappropriately denied" because of race norming. Opp'n at 17. The presumptive use of race norming in the context of this settlement program is discriminatory on its face, and Class Counsel should be able to recognize that on the present record—just as this Court did in in stating its concern about the practice and directing mediation. Class Counsel alone cannot adequately represent Black Class Members on this issue when it has already made up its mind that no discrimination is occurring.[4]

Cognizant of this problem, Class Counsel also argues that Movants have no "interest" in how the race norming issue is resolved, *see* Opp'n at 5–7, but that argument is meritless. Mr. Henry and Mr. Davenport would have an interest in how race-norming issues are resolved even if they had never applied for benefits: *any* Black Class Members who is eligible to apply for benefits in the future has an interest in ensuring that he will not be presumptively held to a more stringent standard for neurocognitive impairment than similarly situated White Class Members. Indeed, Mr. Henry has specifically stated that he intends to apply for benefits again in the future. *Kevin Henry et al. v. National Football League et al.*, Compl., ECF 1, ¶ 6, Case No. 20-cv-4165 (E.D. Pa., filed Aug. 25, 2020). And Mr. Davenport has a currently pending claim for benefits that plainly would be impacted by any resolution of the race norming issue. Mr. Henry and Mr. Davenport also happen to have a *particular* interest in how the issue is resolved because they have

---

[4] For the same reason, the fact that the results of mediation will later be disclosed to Class members, Opp'n at 16, does not cure the problem. If the attorney representing a client has divided loyalties, it is no defense to say that the client may later examine the attorney's actions to see if that division caused tangible harm. Without adequate representation "in the room where it happens," Black players will never know with certainty the underlying facts, strategies and motives that led to a particular negotiated outcome – and how that outcome might have been improved. That is why, for example, judicial approval of the substance of a class action settlement cannot cure an absence of adequate representation of the class or subclasses in negotiating it.

been harmed by the presumption of race norming in the past and could benefit from retrospective relief. Class Counsel's argument that Movant's have no protectable interest is meritless.[5]

Class Counsel makes a final argument requiring only brief response. It is not relevant that one of Movants' three law firms (Zuckerman Spaeder LLP) represented different clients who objected to the Settlement. This Motion to Intervene and other filings related to race norming have been submitted on behalf of Mr. Henry and Mr. Davenport, as well as the subclass of Black former players that they seek to represent, not on behalf of the Zuckerman Spaeder law firm or other clients who objected to the Settlement Agreement on other grounds. Indeed, race norming did not become a central feature of the Settlement Program until 2017 with the adoption of the confidential BAP Guide—after all objections had been resolved and the Settlement Agreement became final.

## CONCLUSION

Acting alone, Class Counsel cannot adequately represent Black Class Members with respect to the race norming issue because it played a role in introducing presumptive race norming into the Settlement Program in 2017 and has avoided addressing the issue despite multiple opportunities to do so, dating back at least to 2018. Movants should be allowed to intervene to represent the interests of Black Class Members in the mediation that the Court has ordered and in any further litigation related to race norming.

---

[5] Also meritless is the objection to Movants' involvement, asserting that Movant's counsel revealed to the NFL Parties, in a joint call, Class Counsel's supposed plans for addressing race norming. Opp'n at 13. In fact, Class Counsel never disclosed any particular planned approach for addressing race norming to Movants' counsel; to the contrary, he promised to do so, but never followed up. Ex. B., Decl. of Cyril V. Smith, ¶ 4. Thus, Movants' counsel could not have, and did not, violate Class Counsel's confidences in the subsequent call with NFL counsel. *Id.* ¶ 6. If the Court considers any communications between Class Counsel and Movants' counsel material to this motion, Movants' Counsel will gladly waive any confidentiality agreement so that this Court and the Court of Appeals can have an accurate record of what Class Counsel did and did not say regarding communications with the NFL and others.

Dated: March 26, 2021            Respectfully submitted,

                         /s/ *Cyril V. Smith*
Cyril V. Smith
Zuckerman Spaeder LLP
100 E. Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 332-0444
csmith@zuckerman.com

Aitan D. Goelman
Ezra B. Marcus
Zuckerman Spaeder LLP
1800 M Street, 10th Floor
Washington, DC 20036
(202) 778-1800
agoelman@zuckerman.com
emarcus@zuckerman.com


                         /s/ *Edward S. Stone*
Edward S. Stone
Edward Stone Law P.C.
300 Park Avenue, 12th Floor
New York, NY 10022
(203) 504-8425
eddie@edwardstonelaw.com


                         /s/ *J.R. Wyatt*
J.R. Wyatt
JR Wyatt Law PLLC
49 West 37th Street, 7th Floor
New York, New York 10018
(215) 557-2776
justin@jrwyattlaw.com

Attorneys for Kevin Henry and Najeh Davenport

8

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was filed electronically with the Clerk of the Court on the 26th day of March, 2021, to be served by operation of the Court's electronic filing system which sent notification of such filing via electronic mail to all counsel of record.


Dated: March 26, 2021              */s/ Ezra B. Marcus*_    ___
                                   Ezra B. Marcus