UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>      Plaintiffs,<br><br>      v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>      Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | |

**CLASS COUNSEL'S OPPOSITION TO MOTION TO
INTERVENE OR ALTERNATIVELY TO PARTICIPATE AS AMICUS CURIAE**

**INTRODUCTION**

Class Counsel respectfully submits this response to the "Motion to Intervene or Alternatively to Participate as Amicus Curiae" ("Motion"), filed by the law firm of X1LAW, P.A. f/k/a Patrick J. Tighe, P.A. ("X1LAW") on behalf of Class Members Johnnie Lynn and Joshua Bell ("Bell") (collectively, "Movants") (ECF No. 11320).

Two words sum up X1LAW's motion: rank opportunism. Indeed, of the worst sort. On the heels of the motion brought by Zuckerman Spaeder LLP ("Zuckerman Spaeder") on behalf of

class members Kevin Henry and Najeh Davenport (ECF No. 11306), seeking to intervene in the discussions regarding race norming[1] that the Court has directed the Settling Parties[2] to take up with Magistrate Judge Strawbridge (ECF No. 11302), X1LAW now seeks to introduce its complaints about an unrelated issue, and it presumptuously declares that the Court "must" grant intervention as of right.  ECF No. 11320 at 14.  X1LAW's request, though, fails for several reasons.

*First*, the Motion is untimely.  Zuckerman Spaeder first raised its issue in August 2020 (ECF No. 11169).  X1LAW, however, waited until briefing was to close on Zuckerman Spaeder's intervention motion before pitching its piggyback intervention request to the Court.

*Second*, as noted above, using Zuckerman Spaeder's motion as a smokescreen, X1LAW seeks to inject an impertinent issue.  X1LAW sidesteps the salient fact that *neither the Movants themselves nor its other clients who are the subject of its belated intervention request ever underwent neuropsychological testing with respect to their Monetary Award claims*.  Consequently, none of them were plausibly affected by demographic corrections to test results.  That in and of itself is fatal to X1LAW's tardy request to jump into the fray.

Instead, X1LAW's gripe relates to the Claims Administrator's requests for evidence to corroborate the suspect opinions rendered by a physician (Dr. Mircea Morariu) – which X1LAW had proffered in support of over fifty Monetary Award claims based on pre-Effective Date Qualifying Diagnoses, and whose author the Special Masters have since banned from the

---

[1] Although Zuckerman Spaeder has repeatedly used this term and it is mentioned in the Court's March 8, 2021 order (ECF No. 11302), Class Counsel has noted its shortcomings.  *See* ECF No. 11312 at 2 n.1.

[2] Class Counsel assumes the Court's familiarity with shorthand definitions employed in this memorandum that have previously been defined in earlier submissions to the Court – namely, AAP, BAP, IRPA, MAF, Players, Settlement, and Settling Parties – and that those terms therefore need not be defined here.

Settlement Program because of misrepresentations and concealment of material facts in his reports. Relatedly, X1LAW purports to seek intervention on behalf of a "subclass" of Class Members whose Monetary Award claims were affected by the Claims Administrator's efforts to obtain corroborative evidence relating to those suspect medical opinions, but this subclass is non-existent. The Court has never certified it, and X1LAW presents no formal request for certification or argument as to how the requisite certification elements under Federal Rule of Civil Procedure 23 are even met as to this putative subclass.

*Third*, even assuming that Movants have a genuine interest in the matter to be discussed before Magistrate Judge Strawbridge, intervention is not warranted. For several of the reasons that Class Counsel explained in his opposition to Zuckerman Spaeder's motion (ECF No. 11312), Movants wrongly accuse Class Counsel of either fostering or condoning the use of racially discriminatory demographic adjustments, but Class Counsel is working diligently to ensure that neuropsychologists will no longer have the ability to apply demographic norms that account for race in the Settlement Program. Moreover, there is no reason to involve X1LAW in discussions before the Magistrate Judge – which, if they yield a proposed resolution, will be put before the Court for its consideration, and Class Members such as Movants will have ample opportunity to weigh in.

Finally, the Court should reject X1LAW's alternative request for amicus curiae participation in the discussions before the Magistrate Judge. X1LAW fails to demonstrate a "special interest" in the subject issue or that it has "timely and useful" information on that issue to proffer. Accordingly, the Court should deny the Motion.

# ARGUMENT

## THE COURT SHOULD DENY BOTH INTERVENTION AND THE ALTERNATIVE REQUEST FOR AMICUS CURIAE PARTICIPATION

**I. Applicable Standards**

On timely motion, Federal Rule of Civil Procedure 24(a) provides for intervention as of right where the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *see Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987) ("[A] person is entitled to intervene if (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.").³ Rule 24(b) allows for permissive intervention on timely motion if the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).⁴

Both intervention as of right and permissive intervention are matters ultimately committed to this Court's discretion. *E.g.*, *Commonwealth of Pa. v. President United States of Am.*, 888 F.3d 52, 57 (3d Cir. 2018) ("We will overturn a district court's order denying a motion to intervene as of right only 'if the court has abused its discretion by applying an improper legal standard or [by]

---

³ Rule 24(a) also allows for intervention as of right where a federal statute confers an unconditional right to intervene. Fed. R. Civ. P. 24(a)(1). That is inapplicable here.

⁴ Six times in the Motion, X1LAW refers to Federal Rule 42, which governs consolidation, rather the correct Rule 24. *See* ECF No. 11320 at 4, 18. This carelessness only highlights the slapdash nature of X1LAW's unscrupulous attempt to latch onto Zuckerman Spaeder's intervention filing in order to push its unrelated agenda, discussed below in Section II.B.

reaching a conclusion we are confident is incorrect.'") (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998)); *United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014) (noting "'the highly discretionary decision of whether to grant permissive intervention'") (quoting *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992)).

Even more so than with respect to a request for intervention, whether to allow amicus curiae participation is a matter committed entirely to the Court's broad discretion. *E.g.*, *Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 554 (E.D. Pa. 1999); *Waste Mgmt. of Pa., Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995) (citing cases); *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985), *aff'd mem.*, 782 F.2d 1033 (3d Cir. 1986); *Wharton v. Vaughn*, No. 01-6049, 2020 WL 733107, at *5 (E.D. Pa. Feb. 12, 2020).

## II. Movants Fail the Test for Intervention

### A. The Motion Is Not Timely

As an initial matter, the Motion is not timely presented. At first blush, X1LAW's intervention request may seem timely in that it was filed just eleven days after Zuckerman Spaeder's intervention motion. This Court has explained, however, that in "[d]etermining whether a motion to intervene is timely requires an analysis of the facts and circumstances surrounding the proceedings and is decided in light of the totality of the circumstances by the district court in the exercise of its sound discretion." *In re Safeguard Scis.*, 220 F.R.D. 43, 46-47 (E.D. Pa. 2004) (citing cases). Therefore, the timeliness question "requires consideration of the totality of the circumstances rather than the mere counting of days." *Cmty. Vocational Sch. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, No. 09-1572, 2017 WL 1376298, at *3 (W.D. Pa. Apr. 17, 2017) (citing cases; internal quotation marks omitted).

Here, X1LAW never sought to intervene in the dispute that Zuckerman Spaeder first raised last August in its motion for relief under Article XXVII of the Settlement Agreement (ECF No. 11169). Nor, despite having been well aware of the dispute since that time, did X1LAW pursue that issue in this Court or proceed with dispatch and promptly file a joinder in Zuckerman Spaeder's intervention motion. If X1LAW had genuinely been concerned about the issue of demographic adjustments to neuropsychological test scores, it does not explain why it sat on the sidelines until now, filing a separate intervention motion only on the date that the Court directed for the filing of Zuckerman Spaeder's reply papers (and on which the briefing on Zuckerman Spaeder's motion would presumably close). *See* ECF No. 11317. For this reason alone, the Court should deny the Motion.

### B. X1LAW Demonstrates No Genuine Interest in the Matter That the Court Has Directed the Settling Parties to Discuss with the Magistrate Judge

Even were the Motion timely, however, X1LAW fails to justify its intervention under the Rule 24(a) criteria.

The issue that X1LAW wishes to throw into the mix before the Magistrate Judge – concerning the Claims Administrator's "interpretation and protocol" relating to Monetary Award claims based on pre-Effective Date Qualifying Diagnoses (ECF No. 11320 at 6 (¶ 14)) – demonstrates that this is not a situation where "disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2).

Specifically, X1LAW complains about the Claims Administrator's treatment of diagnoses received by over fifty of its clients from the same neurologist, Dr. Morariu. ECF No. 11320 at 3-4 (¶ 1). In this respect, X1LAW omits two salient facts. First, the Claims Administrator launched an audit of the reports authored by Dr. Morariu, following an AAP member's expression of serious concerns about Dr. Morariu's diagnostic methodologies. In October 2019, the Special Masters

6

found that "the claims relying on Dr. Morariu's diagnoses may be based on misrepresentations, omissions, and/or concealment of material facts," and they disqualified him from participating in the Settlement Program.  The Special Masters also ordered that "any Monetary Award Claim that relies on evaluation performed by, or a diagnosis made by Dr. Morariu is disallowed, and no future claims may be submitted in reliance on his evaluations or opinions."  This is a matter of public record on the Settlement Program's website.  *See* https://www.nflconcussionsettlement.com/Docs/morariu_SM.pdf (last visited Apr. 5, 2021).

Second, and more fundamentally, *none of the Class Members in support of whose claims Dr. Morariu issued reports ever underwent neuropsychological testing* – and that includes the Movants themselves.  Indeed, as the Special Masters noted, no neuropsychological testing had been included in Dr. Morariu's reports, even though there was no indication that X1LAW's clients' impairments were of such severity as to preclude such testing.  *See id.* at 2.  Therefore, Movants' own claims do not even implicate the use of demographic adjustments to neuropsychological testing.

Nevertheless, X1LAW tries to connect the evidentiary shortcomings in its clients' claims to the subject issue by attacking Class Counsel's resistance to its earlier efforts to short-circuit the administrative process.  In a display of remarkable gall, X1LAW points to Class Counsel having joined with the NFL to oppose its "Motion to Determine Proper Administration of Claims under the Settlement Agreement" ("Motion to Determine Proper Administration") (ECF No. 8267), citing it as an example of how Class Counsel has supposedly been derelict in protecting the Class from the Claims Administrator's "deviations" from the Settlement's terms.  *See* ECF No. 11320 at 7-9 (¶¶ 14-25).  X1LAW and another firm filed that motion back in August 2017 to challenge certain claims deficiency notices issued by the Claims Administrator.  The Motion to Determine

Proper Administration, however, was an attempt to circumvent the Claims Administrator's proper rejection of substitute Diagnosing Physician Certification ("DPC") Forms and was utterly meritless for the reasons that the Settling Parties and the Claims Administrator explained in detail at the time.  *See* ECF Nos. 8432, 8431-1, 8432-2.

In particular, the response to the Motion to Determine Proper Administration pointed out X1LAW's failure to disclose that each of the claims that it had submitted that were the subject of its motion had initially been supported by a DPC Form signed by Dr. Morariu or his father, Dr. Albin Morariu, Sr., the former of whom had applied to serve as a Qualified MAF Physician but had not been approved.  ECF No. 8432 at 10.  Under the terms of the Settlement, pre-Effective Date Qualifying Diagnoses made by physicians who are not Qualified MAF Physicians must be reviewed by an AAP neurologist to determine if the medical records in the file support the physician's diagnosis.  *Id.*; ECF No. 8432-1 at 4 (¶ 6); *see* ECF No. 6481-1 at 37 (Settlement Agreement § 6.4(a)).  Therefore, the claim packages that X1LAW had submitted were subject to such review.

To bypass it, X1LAW directed the Claims Administrator to substitute the DPC Forms in its clients' claim packages with new ones, completed by a board-certified neurologist who had recently been approved as a Qualified MAF Physician, Dr. Nicholas Suite.   ECF Nos. 8432 at 10-11, 8432-1 at 4-5 (¶ 7).  The Claims Administrator, however, determined that there were no records in the claim packages showing that Dr. Suite had actually examined any of X1LAW's clients.  ECF Nos. 8432 at 11, 8432-1 at 5 (¶ 8).  As a result, the Claims Administrator cited the resulting deficiency in Notices of Preliminary Review, which also flagged other issues, such as lack of corroboration of neurocognitive impairment and loss of neurocognitive function.  ECF Nos.

8

8432 at 11, 8432-1 at 5 (¶ 8).[5]  X1LAW then sought to upend the administrative process by bringing the Motion to Determine Proper Administration, wrongly arguing, among other things, that the Claims Administrator had effectively amended the Settlement's terms.  ECF No. 8267 at 7-13 (¶¶ 17-33).  The Court rightly rejected X1LAW's maneuver as an attempted end-run of the Settlement Program's orderly claims and appeals process (ECF No. 8882).[6]

Movants complain about an "adversity of interest" between themselves and Class Counsel.  ECF No 11320 at 13.  Class Counsel, however, has not been antagonistic towards bona fide claimants or failed to zealously protect Class Members' legitimate interests.  To the extent that he has sometimes found himself at odds with the likes of IRPAs such as X1LAW, Class Counsel's adversarial position was in furtherance of his fiduciary obligations to the Class and responsibility to act as a steward over the Settlement Program, protecting both the Class's interests and the Settlement's integrity from exploitation by unscrupulous lawyers filing spurious claims.[7]

---

[5] Not surprisingly, Dr. Suite was later removed as a Qualified MAF Physician, a fact that X1LAW acknowledges in passing (ECF No. 11320 at 9 (¶ 24), 13).

[6] Movants derisively describe the Court's ruling on their motion as a "capitulat[ion]," (ECF No. 11320 at 9 (¶ 22)), which it plainly was not.

[7] The facts surrounding the Monetary Award claim of one of the two Movants underscore this.  Movants assert that Bell is among those who received a pre-Effective Date Level 2 Neurocognitive Impairment diagnosis (*i.e.*, moderate dementia) from Dr. Morariu.  ECF No. 11320 at 1, 3 (¶ 1).  At the same time that he was supposedly afflicted with what is in essence moderate dementia, though, Bell *was still playing professional football*.  After his NFL career ended, he played for six seasons in the Canadian Football League, including four seasons with the Calgary Stampeders, for whom he subsequently became an assistant coach in 2018 – *after* Dr. Morariu had diagnosed him with Level 2 Neurocognitive Impairment in January 2017 without the benefit of any neuropsychological testing.  *See* "Joshua Bell Joins Stamps Coaching Staff," https://www.stampeders.com/2018/02/01/joshua-bell-joins-stamps-coaching-staff/ (Feb. 1, 2018) (last visited Apr. 5, 2021) (team website, announcing that "[a]fter a six-year career in the Canadian Football League including the past four seasons with the Stampeders, Joshua Bell is retiring as an active player and has been named Calgary's defensive backs coach").

At any rate, X1LAW does not demonstrate how the Motion to Determine Proper Administration, filed forty-three months ago, has *any* bearing on the question to be discussed by the Settling Parties with the Magistrate Judge.  Instead, X1LAW strains to tie the Claims Administrator's rebuff of the suspect Monetary Award claims it had filed – again, *none* of which entailed neuropsychological testing – to the subject issue (*see* ECF No. 11320 at 5-8 (¶¶ 8-21), 13-14), using Zuckerman Spaeder's motion as cover for slipping in its unrelated peeve.  For all of X1LAW's grumbling, the fact remains that what it complains about is *completely unconnected* to the issue that the Court has directed the Settling Parties to discuss with the Magistrate Judge.

Relatedly, the Motion is purportedly brought on behalf of a subclass defined as "living retired NFL players diagnosed outside of the Baseline Assessment Program ("BAP"), who received Pre-effective date Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment and Level 2 Neurocognitive Impairment by board-certified and MAF Qualified Physicians pursuant to Section 6.3(c) of the Amended Settlement Agreement, but were nevertheless thwarted from participation in the pre-BAP process by the Claims Administrator's imposition of additional corroborating documentation requirements under BAP, in contravention of the Agreement." ECF No. 11320 at 1.  But no such subclass has been certified.  Nor does X1LAW seek certification of this putative subclass or explain how it even satisfies the Rule 23 criteria.[8]  In any event, on its

---

[8] It could not.  Any proposed subclass consisting of Class Members who were "thwarted from participation in the pre-BAP process" (ECF No. 11320 at 1) is not ascertainable or manageable because it is indefinite, looking not to objective criteria but, instead, to state of mind to determine membership.  *See*, *e.g.*, *Simer v. Rios*, 661 F.2d 655, 664 (7th Cir. 1981) (class not manageable where definition included members who were "discouraged from applying"); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999); *Nat'l Org. for Women, Inc. v. Scheidler*, 172 F.R.D. 351, 358 (N.D. Ill. 1997); *Harris v. Gen. Dev. Corp.*, 127 F.R.D. 655, 657, 659 (N.D. Ill. 1989) (members "who were discouraged or excluded from applying"); *Koen v. Long*, 302 F. Supp. 1383, 1387-89 (E.D. Mo. 1969), *aff'd on opinion below*, 428 F.2d 876 (8th

face, the very subclass definition only highlights how any concerns of the Class Members that constitute this amorphous group have nothing to do with the use of demographic norms that account for race.

"[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote," *Kleissler*, 157 F.3d at 972, and "[t]o intervene as of right as a party to the litigation … the applicant must do more than show that his or her interests may be affected in some incidental manner." *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987). Here, X1LAW has failed to demonstrate *any* bona fide interest in the issue that the Court has directed the Settling Parties to discuss with Magistrate Judge Strawbridge. Rather, what is evident is that X1LAW has seized on Zuckerman Spaeder's intervention motion as a convenient opening to revive a stale, extraneous issue and inject it into those discussions and, despite having been knee-deep in presenting illegitimate Monetary Award claims, now tries to recast its clients as victims. The Court should not countenance such transparent opportunism.

But even assuming, for the sake of argument, that X1LAW has articulated a genuine interest in the subject question, for several of the reasons that Class Counsel discussed in his opposition to Zuckerman Spaeder's motion (ECF No. 11312), the Court should likewise not allow X1LAW to intervene in the discussions before the Magistrate Judge. Contrary to X1LAW's suggestion that Class Counsel has been complicit in the use of a racially discriminatory practice or has allowed it to take root through complacency (ECF No. 11320 at 7 (¶¶ 16-17, 25), 13), as previously explained, full demographic corrections to neuropsychological test results are simply one of the tools available to neuropsychologists for use at their discretion, and they have commonly

---

Cir. 1970); *Lukovsky v. City & Cty. of San Fran.*, No. C 05-00389 WHA, 2006 WL 140574, at *1-2 (N.D. Cal. Jan. 17, 2006) ("deterred applicants").

been used in day-to-day clinical practice for decades. ECF No. 11312 at 7-8, 12; *see also* ECF No. 11205 at 5. The NFL itself has acknowledged that the Settlement does not require the use of demographic norms adjusted for race and, far from having effectuated or otherwise condoned any racially discriminatory practice in the Settlement's administration, Class Counsel has worked assiduously to ensure the elimination of demographic norms that account for race and investigate if any Class Member has been harmed by the use of such norms, as well as to put in place purely race-neutral demographic norms. EF No. 11312 at 10, 15; ECF No. 11312-1 at 5 (¶ 12).

Nor is there any reason to involve X1LAW in any discussions before the Magistrate Judge. If those discussions yield a proposed resolution, it will be put before the Court for its consideration, and Class Members such as Movants will have ample opportunity to weigh in. ECF No. 11312 at 16; ECF No. 11312-1 at 5 (¶ 13).

In sum, Movants are not entitled to intervene as of right.

### C. The Court Should Also Refuse Permissive Intervention

Based on the foregoing, it is abundantly clear that X1LAW seeks to shoehorn into the discussions before the Magistrate Judge its frustration over the Claims Administrator's efforts to ensure that pre-Effective Date claims are properly supported and to safeguard the Settlement Program from efforts to game the system. Simply put, X1LAW presents no "claim or defense that shares … a common question of law or fact" with the subject issue. Fed. R. Civ. P. 24(b)(1)(B); *see United States v. Allgyer*, No. 11-02651, 2011 WL 3296171, at *3 (E.D. Pa. July 29, 2011) (denying Rule 24(b) permissive intervention where movant sought to introduce "tangential" issues). Therefore, the Court should not permit Movants to intervene permissively, either.

### III. Movants Are Not Entitled to Amicus Curiae Status

Finally, the Court should also deny Movants' alternative request to be allowed to participate as amici curiae before the Magistrate Judge.  Amicus status is typically granted when the (1) petitioner has a "special interest" in the particular case, (2) its interest is not represented competently or at all in the case, and (3) its proffered information is timely and useful.  *Sciotto*, 70 F. Supp. 2d at 555 (citing cases; internal quotation marks omitted).  X1LAW's request fails to satisfy at least two of these criteria.  X1LAW, which complains about the rejection of dubious evidence it had used to support Monetary Award claims based on pre-Effective Date Qualifying Diagnoses and whose clients did not even undergo neuropsychological testing, cannot credibly claim that it has a special interest in the issue of demographic adjustments to neuropsychological test results.[9]  *A fortiori*, X1LAW cannot credibly maintain that any information it has to offer would be germane to the subject question.

### CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Date:  April 5, 2021

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  (212) 584-0700
cseeger@seegerweiss.com

***CLASS COUNSEL***

---

[9] In fact, because the Monetary Award claims submitted by X1LAW relied on diagnoses made by Dr. Morariu, had X1LAW not withdrawn those claims, they would have been disallowed in accordance with the Special Masters' audit ruling regarding Dr. Morariu.  *See* https://www.nflconcussionsettlement.com/Docs/morariu_SM.pdf at 3 (§ III.A).