IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE; NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION, | No. 2:12-md-02323 – AB |
| | MDL NO. 2323 |
| | **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, On behalf of themselves and Others similarly situated, | |
| Plaintiffs, | |
| v. | |
| National Football League and NFL Properties LLC, Successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO: ALL CLIENTS OF GOLDBERG, PERSKY & WHITE, P.C. | |

**DECLARATION OF JASON E. LUCKASEVIC
IN SUPPORT OF STECKLER WAYNE COCHRAN PLLC RENEWED MOTION TO
RELEASE THE 5% HOLDBACK AND REQUEST FOR EXPEDITED HEARINGS**

I, JASON E. LUCKASEVIC, an attorney licensed to practice in Pennsylvania and the U.S. District Courts for the Eastern and Western District of Pennsylvania declare, pursuant to 28 U.S.C. Section 1746 and under penalty of perjury, the following based upon my personal knowledge, information, and belief:

    1.    On behalf of my Pittsburgh law firm Goldberg, Persky & White, P.C., I initiated the first individual lawsuits against the NFL and Riddell for chronic brain injuries retired NFL

players developed years after the conclusion of their playing careers due to repetitive concussive and subconcussive traumas sustained while in the league. This lawsuit was the first of its kind and was the precursor to the NFL settlement program.

2.  The instant request for relief is based on our efforts on behalf of our individual clients regarding the multiple instances where the worked performed benefitted the entire settlement class.

3.  I bring all of these matters to the Court's attention to establish that my law firm has earned our entitlement to our 5% Common Benefit fee which has been a part of a Motion to Release filed by Class Counsel nearly one year ago.

*Worker's Compensation Issues*

4.  Our law firm represented one former player receiving worker's compensation benefits from his former team. The worker's compensation carrier sought subrogation of this claimant's entire $750,000.00 monetary award.

5.  The NFL Concussion Settlement Agreement is silent regarding subrogation by a workers' compensation carrier and the parties failed to provide any guidance to our firm in handling this matter of first impression when it was raised during the claims process.

6.  Because this was not dealt with in the Settlement Agreement, my law firm became the first to brief this matter. The work required to travel to California for Court-Ordered mediation or face Interpleading of our client's funds.

7.  Given that the resolution of the subrogation claims was directly tied to our client's underlying settlement award and distribution, our law firm was unable to receive any additional compensation for our extraordinary work on this matter above our court mandated contingent fee

cap. Furthermore, our fees, costs, and client's monetary award were tied up in appeals for over two years.

8. Goldberg, Persky & White expended inordinate time working on this issue and incurred significant travel expenses related to the mediation of the subrogation defense.

9. While my firm was ultimately successful in fully and favorably resolving this worker's compensation matter for our client, our forced mediation of this matter of first impression was done without any guidance, input, or assistance from the parties involved in crafting the Settlement Agreement.

10. The existence of state law insurance carrier's subrogation claim continues to impact the entire settlement class and will continue to impact future claimants. This matter of subrogation has arisen with many former players and will continue to haunt class members for the entirety of the NFL Concussion Settlement Program. In fact, this worker's compensation issue was recently raised again with another one of our clients.

11. It is unclear whether other NFL players have fought against insurance carriers for former teams related to subrogation issues or simply paid these liens to avoid court proceedings.

12. Accordingly, it is reasonable for this Honorable Court to release the 5% Common Benefit holdback. This subrogation defense issues affects the entirety of the Settlement Class members and is similar by analysis to issues being presently addressed in the race-norming mediation.

*Statute of Limitations Matters*

13. Our law firm expended significant resources and spent extraordinarily significant hours dealing with Statute of Limitations issues for the families of Mike Webster, Terry Long, and

Justin Strzelczyk.  These three former players provided the factual backdrop and were the impetus for the entirety of the NFL Concussion litigation and settlement.

14. These Statute of Limitations issues should have been addressed by the parties during the initial settlement discussions in 2014.

15. My firm and the other firms dealing with these SOL issues have not derived any benefit from the Common Benefit Fund for our worked performed.

16. Accordingly, it is reasonable for this Honorable Court to release the 5% Common Benefit holdback on behalf of our law firm's clients.

*Earned Work on Individual Monetary Awards without Class Counsel Assistance*

17. To date, my law firm has received over 70 award notices (9 for CTE, 3 for ALS, 10 for Alzheimer's Disease, and 7 for Parkinson's Disease diagnoses).  The remaining awards were for Level 1.5 and Level 2.0 cases.

18. Class Counsel has provided support in three of these claims.  (ECF #11126 at paragraph 51 and 53).  I expect that Class Counsel received fees for billing for hours worked on those claims as Common Benefit time.  Regardless, all of the work on our individual claims was performed by our office.  The risk of handling these individual claimants were undertaken by my law firm.  We expended many hours and advanced costs in litigating these claims through the Settlement Agreement to achieve monetary awards on their behalf.  For taking the risk and performing zealous advocacy, my law firm earned the 5% holdback on those claims.

*Appeal and Review Issues Impacting the Entire Class*

19. Recently, a BAP provider stated in a medical report that the reviewer (i.e. either the AAP or AAPC or Claims Administrator), "is tasked to find fault rather than apply the Settlement Agreement criteria." (See Exhibit # 2).

20. This statement by the BAP approved provider creates significant issues related to the impartiality of the fairness of the BAP program and review of claims for all claimants.

21. Despite my requests urging Class Counsel to investigate this critical matter, to our knowledge no such investigation has gone forward regarding this very concerning statement from a neutral BAP evaluator involving the NFL Settlement claims review process.

22. As a result, my law firm will oppose abuse of the BAP program and review process so that other NFL players will not face similar injustice.

23. Our efforts to address this matter should be compensated through the release of the 5% Common Benefit holdback.

*Conclusion*

24. Based on our ongoing work particularly related to issues impacting the entire settlement class, we should receive the entirety of the 5% holdback. Moreover, release of the 5% holdback was previously recommended by Professor William Rubenstein. (ECF #9571). In the alternative, this Honorable Court could also look to Professor Rubenstein's other options including looking to the NFL for additional fees or releasing three percent of the Common Benefit holdback to the individual attorneys. (ECF #9571 at paras. 9 and 10).

25. Based on the foregoing and the record of the work provided, this Honorable Court should release the 5% holdback to Goldberg, Persky & White, P.C. for their clients' awards.

26. If the 5% holdback cannot be released based on this Declaration and record to date, it is requested that the court schedule an expedited hearing on this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of June, 2021.

*s/ Jason E. Luckasevic*
Jason E. Luckasevic
Filed on behalf of Goldberg, Persky & White, P.C. clients