# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>      Plaintiffs,<br><br>      v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>      Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CLASS COUNSEL'S OPPOSITION TO STECKLER GRESHAM COCHRAN PLLC'S RENEWED MOTION TO RELEASE THE <u>5% HOLDBACK AND REQUEST FOR EXPEDITED HEARINGS</u>**

## I. INTRODUCTION

Over two years ago, the law firm of Steckler Gresham Cochran PLLC ("Steckler Gresham") moved to compel the return to class members who have qualified for Monetary Awards[1] on the basis of certain QDs the five-percent interim holdback that the Court had adopted on all such awards. ECF No. 10581 at 1-3; *see* ECF No. 10596 (Class Counsel's opposition to Steckler Graham's motion).[2] Steckler Gresham has now renewed that request, rehashing the same arguments and claiming that Class Counsel is "doing nothing" for those class members to warrant their being subject to a set-aside. ECF No. 11372 at 2.[3]

Like its predecessor motion, Steckler Gresham's renewed motion is devoid of merit. It manifests the same unfamiliarity with the Settlement Program and the extensive work entailed in launching and maintaining it as did the 2019 motion. As with the 2019 motion, the fundamental underpinning of the renewed motion is that those class members whose awards are based on QDs of Parkinson's Disease, Alzheimer's Disease, ALS, or Death with CTE have reaped no benefit from implementation-phase common benefit work. That is simply not so. *All* class members have

---

[1] "Monetary Awards" refers collectively to both Monetary Awards under Article VI of the Settlement and Derivative Claimant Awards under Article VII. *See* ECF No. 6481-1 at 35-43. In addition, because the Court is well acquainted with the Settlement and they have been defined in numerous prior filings, Class Counsel assumes the Court's familiarity with terms and acronyms such as QD, AAP, ALS, BAP, CTE, IRPA, and MAF.

[2] As it is well aware, the Court had provisionally adopted the holdback – pending further evidentiary development respecting Class Counsel's set-aside request and a formal adjudication of the request, as a precaution – so as to ensure that there will be sufficient funds to compensate common benefit work performed in connection with the Settlement's implementation. ECF Nos. 9860 (at 2 & n.1, 8-9, 17-20), 10019 (at 4 n.2, 25), 10378 (at 1 n.1); *see also* ECF Nos. 9862 at 8 n.5, 10104. The set-aside was not, as Steckler Gresham incorrectly suggests, imposed by a "settlement committee." ECF No. 11372 at 1.

[3] Apparently, although it does not clearly state it in its papers, Steckler Gresham also seeks to have the Monetary Awards of these same categories of class members excluded prospectively from the interim holdback in that it argues "there is no continuing justification for the holdback." ECF No.11372 at 2.

been aided by the wide-ranging work that went into (and will continue to go into) establishing and maintaining the Settlement Program, including sundry issues that Class Counsel has confronted, even if many of those class members have not received direct assistance with their individual claims. Moreover, contrary to Steckler Gresham's contention, Class Counsel's firm has, in fact, often assisted class members diagnosed with the very ailments that Steckler Gresham implies are black-and-white conditions that render their Monetary Award claims open-and-shut matters – including in the case of class members represented by Steckler Gresham itself.

As to Steckler Gresham's request for expedited resolution of the holdback request, which it bases on alleged class member hardship (including due to the COVID-19 pandemic), Class Counsel leaves that up to the Court. Class Counsel notes, however, that Steckler Gresham's fundamental assumption that the rejection of a set-aside would mean the reversion of funds to class members is flawed in the case of Steckler Gresham's clients and all other class members represented by IRPAs because any holdback was (and continues to be) withheld from the attorney's portion of a Monetary Award, not the class member's.

## II. ARGUMENT

### A. There Is No Merit to the Fundamental Premise of Steckler Gresham's Motion

The entire premise of Steckler Gresham's renewed motion, like its 2019 predecessor, is unfounded. Steckler Gresham argues that "very little or no work" from Class Counsel has been required in the case of those whose Monetary Awards are based on a QD of Parkinson's Disease, Alzheimer's Disease, ALS, or Death with CTE and that, as such, "it does not make sense for Class

Counsel to be granted [a] windfall." ECF No. 11372 at 3-4.  That contention, which raises nothing new, is meritless.[4]

*First*, the only potential windfall here would be if the Court were to accede to Steckler Gresham's misguided request and exempt certain categories of Monetary Award claimants from a holdback.  Extensive labors went into the construction and administration of the Settlement Program, including drafting and updating of detailed rules, procedures, and Frequently Asked Questions; vetting and selection (and, in various instances, replacement) of BAP and MAF physicians, as well as program officers (e.g., AAP members and AAP Consultants); and addressing, either at the administrative level or before this Court, sundry issues, be they issues vis-à-vis the NFL or vis-à-vis third parties.  Those efforts are detailed in Class Counsel's July 2020 supplemental declaration in support of the set-aside request.  ECF No. 11127-1 at 12-44 (¶¶ 27-93).[5]  They have benefitted the class as a whole.  Without all of that work, not even those class members whose QDs are allegedly clear-cut could reap the Settlement's benefits.  Indeed, the AAP must evaluate a QD rendered prior to the Settlement's January 7, 2017 Effective Date in order to

---

[4] Aside from the fact that Steckler Gresham already made this argument in 2019 (ECF No. 10581 at 3), other objections raised the nearly identical contention that those not benefitting from the post-Effective Date work of Class Counsel by reason of the nature of their QD should not be subject to a holdback.  *See* ECF No. 7464 at 46 (addressing objections that class members with pre-Effective Date QDs of ALS and Alzheimer's Disease should not be subject to holdback).

[5] *See also* ECF Nos. 7464-1 at 5-11 (¶¶ 16-38) (Supp. Decl. of Christopher A. Seeger, addressing initial implementation efforts), 10128 at 2-17 (first implementation-phase common benefit fee petition, summarizing work and keystone accomplishments during Jan. 7, 2017-May 24, 2018 period), 10374 at 2-15 (second implementation-phase common benefit fee petition, summarizing work and keystone accomplishments during May 25, 2018-Nov. 30, 2018 period), 10767 at 2-13 (third implementation-phase common benefit fee petition, summarizing work and keystone accomplishments during Dec. 1, 2018-May 31, 2019 period), 10986 at 2-11 (fourth implementation-phase common benefit fee petition, summarizing work and keystone accomplishments during June 1, 2019-Nov. 30, 2019 period), 11126 at 3-12 (fifth implementation-phase common benefit fee petition, summarizing work and keystone accomplishments during Dec. 1, 2019-May 31, 2020 period).

determine whether it truly is a QD in accordance with the Settlement's terms. ECF No. 6481-1 at 37-38 (Settlement Agreement § 6.4).

Put simply, without the creation and maintenance of the Settlement's implementation structure, *no* class member could benefit from the Settlement. It is fair, reasonable, and just that all class members receiving Monetary Awards contribute to the compensation of implementation-phase common benefit work, and that the burden of supporting implementation-related work should not rest entirely on the shoulders of certain class members, while others get a free ride on the questionable justification that their claims are or were straightforward. Given this, particular categories of class members should not be relieved from a holdback merely because they have not required *individual* assistance with their Monetary Award claims from Class Counsel.

*Second*, and perhaps more importantly, it is simply untrue that little or no work has been required of Class Counsel for the categories of class members on behalf of whom Steckler Gresham purports to seek relief. *See* ECF No. 11372 at 2-3. Class Counsel's firm has assisted several such class members, including in the appeals process, and its efforts resulted in those class members receiving substantial Monetary Awards. *See* Declaration of Christopher A. Seeger, dated June 18, 2021 ("Seeger Decl."), ¶¶ 4-5.[6] Its assistance included the Parkinson's Disease-based

---

[6] When Class Counsel first pointed out the assistance provided in the case of two class members in its opposition to Steckler Gresham's initial motion (ECF Nos. 10596 at 5, 10596-1 at 2-3 (¶ 4)), Steckler Gresham blithely responded in its reply that "Class Counsel's office presumably has a contingency fee or other agreement with those class members." ECF No. 10605 at 4. Not so. *No* such agreement exists between Class Counsel and individual class members. Seeger Decl. ¶ 7. Furthermore, Class Counsel waived any claim for fees and expenses from its individual clients. *Id.*; *see* ECF Nos. 7151-1 at 15 n.8, 7151-2 at 30 (¶ 98). Steckler Gresham also argued that "Class Counsel has already been compensated more than $100 million for the implementation of the Settlement Agreement." ECF No. 10605 at 4. That was vacuous because the Court awarded and allocated over $87 million in fees in connection with the securing and defense of the Settlement (including to certain objectors), *not* for its implementation. *See* ECF Nos. 10019 at 24-25, 11230. Steckler Gresham's uninformed, unsupported, and inaccurate
(Footnote continued . . .)

Monetary Award claims of two class members represented *by Steckler Gresham itself*. Seeger Decl. ¶ 5. Moreover, Class Counsel's successful campaign against predatory third-party funders enabled one of two clients represented by Steckler Gresham to avail himself of the opportunity to rescind a prohibited assignment of his Monetary Award. *Id.* ¶ 6.

**B. The Timing of Resolution of the Set-Aside Request Is Entirely up to the Court**

Steckler Gresham also asserts that it is "imperative" that the Court resolve the issue of the holdback request "in order for the claimants to receive the money they are entitled to under the Settlement." ECF No. 11372 at 4. "While this issue lingers," claims Steckler Gresham, "the individuals who are in most need of the funds are unable to obtain all they are entitled to." *Id.* It adds that the health risks associated with the COVID-19 pandemic heighten the need for prompt resolution. *Id.*

Class Counsel is not opposed to the set-aside request being resolved sooner rather than later given the length of its pendency and the fact that Court now has before it a more fulsome record than it did in 2018 (including its experience from three additional years of Settlement implementation oversight), when it deferred adjudication of the request pending further evidentiary development. At the same time, however, it is entirely up to the Court to determine when the time is ripe and appropriate for it to do so, and Steckler Gresham presents no compelling argument for the Court to give this matter immediate attention.

What is more, Steckler Gresham operates from the misconception that, were the Court to deny the set-aside request or to adopt a holdback of less than 5%, the monies heretofore withheld pursuant to the Court's provisional holdback would thereupon immediately revert to the affected

---

statements underscore its lack of familiarity with the Settlement Program and the proceedings surrounding the defense of the Settlement itself.

5

class members. That is not the case with Steckler Gresham's clients, or any other class member represented by an IRPA. Any set-aside from a Monetary Award to a class member represented by an IRPA will reduce the IRPA's attorneys' fees by the amount of the set-aside. ECF Nos. 6481-1 at 82 (Settlement Agreement § 21.1), 10103 at 1 (§ 2.a) (June 27, 2018 Order). Put another way, for represented class members, any holdback comes out of the attorney's share of a Monetary Award, not the class member's. To the extent that Steckler Gresham is aware of this, then its request for release of holdback monies is really about seeking an increase in IRPAs' fees than about concerns for class member hardship, as the declaration filed by another firm in support of its motion on June 14, 2021 manifests. *See* Section C, *infra*.

Finally, Steckler Gresham's reference to health concerns stemming from the COVID-19 pandemic is not persuasive. The belated assertion that the pandemic – some fifteen months after its onset in the U.S., and months after vaccines were rolled out and roughly half the country's population is already vaccinated – mandates that the Court hurry up and give this matter priority is far from convincing. All told, Steckler Gresham's assertions of hardship are overstated.

**C. The Arguments of Goldberg, Persky & White Are Impertinent**

On June 14, 2021, ten days after Steckler Gresham filed its motion, the law firm of Goldberg, Persky & White, P.C. ("Goldberg Persky") filed the Declaration of Jason E. Luckasevic in support of the motion (ECF Nos. 11396, 11396-1). Mr. Luckasevic's declaration touts work on a Workers Compensation subrogation issue (ECF No. 11396-1 at 2-3 (¶¶ 4-12)), statute of limitations issues (*id.* at 3-4 (¶¶ 13-16), individual Monetary Award claims (*id.* at 4-5 (¶¶ 17-18)), and a review issue allegedly benefitting the class (*id.* at 5 (¶¶ 19-23)). As to some of these matters, Mr. Luckasevic claims that his firm received no assistance from Class Counsel, which is partially

6

inaccurate.[7]  He maintains that "[b]ased on [its] ongoing work particularly related to issues impacting the entire settlement class, [Goldberg Persky] should receive the entirety of the 5% holdback." ECF No. 11396-1 at 5 (¶ 24).

These contentions miss the point.  As noted above (*see supra* at 1 n.2), the Court adopted the provisional holdback as a precaution, so as to ensure that adequate funds will be available to compensate implementation-phase common benefit work until the Court formally adjudicates the set-aside request.  The set-aside is not a penalty on IRPAs.  Nor is it based on an assumption that IRPAs never have to perform significant work on behalf of their individual clients or, conversely, its need vitiated by the fact that IRPAs often perform significant work.

As to Goldberg Persky's complaint that it has had to perform work on issues that the Settlement Agreement did not address (ECF No. 11396-1 at 2, 4 (¶¶ 5-6, 14)), no settlement can reasonably be expected to address every conceivable issue that may arise, which is why IRPAs were permitted to collect fees.  Goldberg Persky's suggestion that the issues it outlines were unaddressed or needed to be addressed, however, is incorrect.  For example, the matter of governmental liens related to Workers Compensation could not be resolved through a settlement with the NFL.[8]  Moreover, there is no denying that, in the case of older diagnoses, the statutes of

---

[7] Relying on a former BAP provider's unsupported assertion, Goldberg Persky maintains that Settlement Program reviewers are "tasked to find fault rather than apply the Settlement Agreement criteria." ECF Nos. 11396-1 at 4 (¶ 5) (internal quotation marks omitted), 11396-2 at 2-3.  Class Counsel will not get into the details of this unfounded accusation because this gripe is extraneous to the narrow issue presented by Steckler Gresham's motion.  *See infra* at 8.  Class Counsel notes, however, that Goldberg Persky's suggestion that his office has failed to act on the underlying claim is inaccurate, and also notes that Goldberg Persky has omitted details regarding the claim, including further emails exchanged between the Claims Administrator and the former BAP provider.

[8] As is typical in an aggregate settlement of this nature, Class Counsel did negotiate the role of a Lien Resolution Administrator, who endeavored to negotiate certain governmental liens
(Footnote continued . . .)

7

limitations were in play in negotiation of the Settlement (*e.g.*, ECF Nos. 6073-4 at 8 (¶ 15), 7151-2 at 8 (¶ 22 & n.2)) and the NFL took a narrow view of what claims were timely. Class Counsel negotiated a generous time period that would shield claims from any assertion of untimeliness, *see* ECF No. 6481-1 at 35 (Settlement Agreement, § 6.2(b)), and a process through which individual counsel (like Goldberg Persky) could undertake to prove the timeliness of the handful of claims that were not deemed timely under the Settlement. Furthermore, Class Counsel submitted statements in support of class members who sought to establish that older claims were not time-barred. Presumably, Goldberg Persky's work for those of its clients who faced such complications was or will be compensated through its contingent fee agreement with these clients.

Putting all of that aside, Goldberg Persky's arguments touting work it has performed are pertinent to its individual fee requests, and are perhaps germane to the issue of whether the Court should adopt a permanent set-aside and, if so, of what percentage – an issue on which Goldberg Persky has already weighed in. *See* ECF No. 11140. Its arguments, however, are completely irrelevant to the discrete and narrow issue presented in Steckler Gresham's motion, which is whether class members with particular QDs should be exempt from the provisional holdback.

Lastly, Goldberg Persky, Steckler Gresham, and others complaining about the set-aside overlook salient facts. The $15.312 million in implementation-phase common benefit fee and expense reimbursement awards to date to Class Counsel's firm and other counsel (*see* ECF Nos. 10378 (at 2, 9), 11240 (at 10)) were paid out of the $22.823 million that the Court reserved from

---

related to medical care and was available, for a fee, to negotiate resolutions with private insurers. *See generally* ECF No. 6481-1 at 63-68 (Settlement Agreement, art. XI).

the aggregate common benefit award back in May 2018.[9]  (Fees have also been paid to court-appointed counsel for certain pro se class members.)  Also, one implementation-related fee petition (covering the December 1, 2019-May 31, 2020 period and requesting $1,153,544.52 in fees and reimbursement of expenses) is currently *sub judice* (*see* ECF No. 11126), and another one is forthcoming.  Thus, even though the trajectory of implementation-phase common benefit fee requests has gradually declined, at some point over the next few years, the Court's 2018 earmark from the aggregate common benefit fee award for implementation-phase work stands to be exhausted.  The Settlement Program, though, will continue to operate for some six more decades, with the concomitant need for common benefit work to be performed on behalf of the class and requiring appropriate compensation.

### III. CONCLUSION

For the foregoing reasons, the Court should deny the renewed motion.

Date:  June 18, 2021

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  (212) 584-0700
cseeger@seegerweiss.com

***CLASS COUNSEL***

---

[9] As was $1,750,000 of the $2.1 million total awarded to the Faneca Objectors, with the remaining $350,000 having been paid out of the Court's original allocation of $85.619 million of the aggregate fee award.  *See* ECF Nos. 10019 at 25, 11230.