**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY
LITIGATION

No. 2:12-md-02323-AB

MDL No. 2323

Hon. Anita B. Brody, U.S.D.J.

---

**[PROPOSED] ORDER**

AND NOW, this _____ day of _____, 2021, upon consideration of the Motion

to Amend Rules Governing Payment of Claims Involving Third-Party Funders filed by Thrivest

Specialty Funding, LLC, it is **ORDERED** that the motion is **GRANTED.**

The Claims Administrator shall pay Monetary Awards directly to Settlement Class

Members only if the Settlement Class Member is *pro se* or if a tribunal of competent jurisdiction

has found that the Third-Party Funder's agreement constitutes an improper assignment of a right

or claim pursuant to Section 30.1 of the Settlement Agreement.  In all other cases not involving

the Third-Party Funder Resolution Protocol, the Claims Administrator shall pay Monetary Awards

to the Settlement Class Member's attorney of record.  The Claims Administrator is instructed to

amend the Rules Governing Payment of Claims Involving Third-Party Funders as follows (all

changes highlighted in gray, ~~deletions in strikethrough~~, ***additions in bold italics***):

**TITLE I: GENERAL**

**Rule 1. The Purpose of These Rules.** These Payment Rules govern the payment of
Monetary Claims that involve Third-Party Funder Transactions. These Rules do not address the
enforceability of the underlying agreements between Third-Party Funders and Settlement Class
Members. *See generally In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d
96 (3d Cir. 2019).

Any dispute over the enforceability or validity of a Third-Party Funder Transaction must
be litigated or arbitrated in an appropriate forum outside of the claims administration context,
subject to "the full array of standard contract defenses" available. *In re Nat'l Football League*, 923
F.3d at 112-13. As the Third Circuit has noted, "some of the class members are cognitively

impaired, and it is possible that some of them lacked the capacity to contract at the time they entered into [these] agreements. . . . There may also be issues of unconscionability, fraud, or usury based on the high effective interest rates in the agreements," which may function as "disguised predatory loans." *Id.* at 112. However, ~~if an agreement is found to be enforceable,~~ a Settlement Class Member may risk incurring additional expenses by refusing to ***comply with the Third-Party Funder agreement*** ~~pay any of the disputed funds while the dispute over enforceability plays out~~. These risks may include potential interest obligations and/or the cost of defending a lawsuit. Settlement Class Members might consider seeking legal advice on their options. ~~In some instances, these Rules call for the Claims Administrator to pay a Monetary Claim directly to a Settlement Class Member, rather than submitting that payment to the Settlement Class Member's lawyer. This payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations. For instance, Settlement Class Members receiving such direct payments may be sued by a Third-Party Funder.~~ A Settlement Class Member SHOULD NOT assume that his/her receipt of ~~direct~~ payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.[1]

\*       \*       \*

## TITLE III: PAYMENT STEPS

The next two Rules explain the payment steps that the Claims Administrator will take, depending on the version and content of the SWS-5 Form involved in a given case. ~~As explained in Rule 1 above, these Rules sometimes contemplate direct payment to a Settlement Class Member, rather than to his/her lawyer. This payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations. For instance, Settlement Class Members receiving such direct payments might be sued by a Third-Party Funder.~~ A Settlement Class Member SHOULD NOT assume that his/her receipt of ~~direct~~ payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.

**Rule 6. Payment Steps Under Form SWS-5(A)**. In cases where Settlement Class Members receive Form SWS-5(A), there are three potential payment outcomes, depending on whether a resolution has been reached through the Resolution Protocol and whether any NonParticipating Funders have been identified by the Settlement Class Member:

(a) <u>No Resolution Reached in Resolution Protocol</u>. If the Settlement Class Member fails to reach a resolution through the Resolution Protocol with any Participating Funders—either because the Settlement Class Member declined to consent/participate or failed to timely agree on the Resolution Amount with any of the Participating Funders—the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. ~~This payment will be made directly to the Settlement Class Member, whether represented by a lawyer or proceeding pro se.~~ ***If the Settlement Class***

---

[1] ~~Likewise, direct payment to a Settlement Class Member has no bearing on whether the underlying agreement with a given Third-Party Funder is or is not valid or enforceable.~~

*Member is represented by a lawyer, this payment will be made to that lawyer. If the Settlement Class Member is pro se or if a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement, this payment will be made directly to the Settlement Class Member.* Once payment has been made, any subsequent disputes between the Settlement Class Member and any Third-Party Funders must be litigated or arbitrated in an appropriate forum outside the claims administration process. *In re Nat'l Football League*, 923 F.3d at 113.

(b) <u>Resolution Reached in Resolution Protocol; No Other Funders Identified</u>. In situations where (1) the Settlement Class Member reaches a timely resolution with all Participating Funders who have identified the Settlement Class Member; and (2) the Settlement Class Member answers "no" to the question described in Rule 4(c) above, the Claims Administrator will direct the Trustee to pay the Resolution Amount(s) to the Participating Funder(s). Any such payments will be deducted from the Settlement Class Member's Monetary Award. The Claims Administrator will then direct the Trustee to pay the remaining balance of the Monetary Award to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. If the Settlement Class Member is represented by a lawyer, this payment will be made to that lawyer. If the Class Member is pro se, this payment will be made directly to the Settlement Class Member.

(c) <u>Resolution Reached in Resolution Protocol; Other Funders Identified</u>. In situations where (1) the Settlement Class Member reaches a timely resolution with a Participating Funder, but (2) either fails to reach a resolution with other Participating Funders or answers "yes" and identifies Non-Participating Funders in response to Question 4(c) above, then the Claims Administrator will direct the Trustee to pay the Resolution Amount(s) to the Participating Funder(s) who reached a timely resolution with the Settlement Class Member. Any such payments will be deducted from the Settlement Class Member's Monetary Award. The Claims Administrator will then direct the Trustee to pay the remaining balance of the Monetary Award to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. ~~This payment will be made directly to the Settlement Class Member, whether represented by a lawyer or proceeding pro se.~~ *If the Settlement Class Member is represented by a lawyer, this payment will be made to that lawyer. If the Class Member is pro se or if a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement, this payment will be made directly to the Settlement Class Member.* Once payment has been made, any subsequent disputes between the Settlement Class Member and any Third-Party Funder must be litigated or arbitrated in an appropriate forum outside of the claims administration process. *In re Nat'l Football League*, 923 F.3d at 113.

3

**Rule 7. Payment Steps Under Form SWS-5(B)**. In cases where Settlement Class Members receive Form SWS-5(B), the Claims Administrator will pay Monetary Claims as follows:

(a) <u>Third-Party Funders Identified</u>. If the Settlement Class Member answers "yes" to the question described in Rule 5(b) above, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. ~~This payment will be made directly to the Settlement Class Member, whether represented by a lawyer or proceeding pro se.~~ ***If the Settlement Class Member is represented by a lawyer, this payment will be made to that lawyer. If the Class Member is pro se or if a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement, this payment will be made directly to the Settlement Class Member.*** Once payment has been made, any subsequent disputes between the Settlement Class Member and any Third-Party Funders must be litigated or arbitrated in an appropriate forum outside the claims administration process. *In re Nat'l Football League*, 923 F.3d at 113.

(b) <u>No Third-Party Funders Identified</u>. If the Settlement Class Member answers "no" to the question described in Rule 5(b) above, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. If the Settlement Class Member is represented by a lawyer, this payment will be made to that lawyer. If the Class Member is pro se, this payment will be made directly to the Settlement Class Member.

BY THE COURT:

_____

BRODY, J.

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody, U.S.D.J. |

## THRIVEST'S MOTION TO AMEND RULES GOVERNING PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS

Thrivest Specialty Funding, LLC n/k/a Balanced Bridge Funding LLC ("Thrivest") hereby moves the Court to amend the Rules Governing Payment of Claims Involving Third-Party Funders (the "Rules") to conform to this Court's February 20, 2018 Order and to decisions—by the United States Court of Appeals for the Third Circuit and by every arbitrator who has considered the issue—that Thrivest's agreements are enforceable in arbitration and do <u>not</u> constitute an improper assignment of a right or claim under Section 30.1 of the Settlement Agreement.[1]

At present, absent agreement under the Resolution Protocol, the Rules instruct the Claims Administrator to pay Monetary Awards directly to Settlement Class Members whenever there is a Third-Party Funding agreement in place, regardless of whether that agreement has been found to be improper under Section 30.1 of the Settlement Agreement.  This is not consistent with the Court's February 20, 2018 Order, which ordered payment directly to the Settlement Class Member *only* in the case of "improper assignments."  It is also not consistent with the Third Circuit's finding that Thrivest's "contract gave it only the right to receive settlement funds after the funds are

---

[1] Defined terms not defined in this motion refer to terms defined in the Rules, effective as of March 19, 2020.  <u>See</u> Rules available at https://www.nflconcussionsettlement.com/Docs/rules_governing_payment_of_claims.pdf   (last visited June 17, 2021).

disbursed"—i.e., that Thrivest's agreement did not contain an improper assignment.  See Nat'l Football League Players Concussion Inj. Litig., 923 F.3d 96, 112 (3d Cir. 2019).  The Court should instruct the Claims Administrator to amend the Rules and its procedures to conform to these decisions by ordering payment of Monetary Awards directly to Settlement Class Members only if the Class Member is *pro se* or if a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement.

The Rules must be amended not only because of these inconsistencies, but also because they are *de facto* undermining enforcement of Thrivest's agreement.  While the Rules say direct "payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations," the reality is that direct payment is determining whether Thrivest can enforce its agreements successfully.  Settlement Class Members with Monetary Awards in hand are ignoring arbitrators' emergency orders to escrow the funds—even after those orders have been confirmed by this Court—rendering themselves judgment-proof or bankrupt by spending, gambling, or otherwise wasting their Monetary Awards as Thrivest seeks to enforce their contractual promises. As such, by paying the Settlement Class Members directly, the Claims Administrator is *de facto* determining whether Thrivest can enforce its agreement.  This unintended paradigm can be resolved by paying the Monetary Award to the Settlement Class Member's attorney, who is ethically bound to protect disputed funds and to follow binding orders.

The amendment sought here is also in the best interest of the Settlement Class Members and supports the interests of justice and judicial economy.  When a system intended to compensate injured Settlement Class Members encourages noncompliance that leaves them worse off, penniless, or in bankruptcy, change is needed.  When enforceable agreements are rendered

2

meaningless by diverting the ordinarily flow of funds around counsel, change is needed.  And when direct payments regularly kick off a chain reaction of arbitrations and court proceedings that burden the parties and the courts, change is needed.  The law and the equities compel action.

For these reasons, more fully articulated in Thrivest's Memorandum of Law and supported by the Declaration of Peter C. Buckley, Esquire, Thrivest respectfully requests that the Court instruct the Claims Administrator to amend the Rules by entering an Order in the form proposed.

Respectfully submitted,

/s/ Peter C. Buckley
Peter C. Buckley, Esquire
Christopher Popper, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2854
(215) 299-2150 (facsimile)

Attorneys for Thrivest Specialty Funding, LLC
n/k/a Balanced Bridge Funding, LLC

June 28, 2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody, U.S.D.J. |

**MEMORANDUM OF LAW IN SUPPORT OF
THRIVEST'S MOTION TO AMEND RULES GOVERNING
<u>PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS</u>**

Thrivest Specialty Funding, LLC n/k/a Balanced Bridge Funding, LLC ("Thrivest") submits this memorandum of law in support of its Motion to Amend Rules Governing Payment of Claims Involving Third-Party Funders, which seeks (1) an order directing payment of Monetary Awards to the Settlement Class Member's attorney of record unless the Class Member is *pro se* or a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement, and (2) a corresponding amendment to the Rules Governing Payment of Claims Involving Third-Party Funders (the "Rules").[1]  Thrivest's motion is supported by the Declaration of Peter C. Buckley, Esquire (the "Declaration"), attached as "Exhibit 1."

I.   <u>**INTRODUCTION**</u>

In their current form, the Rules have created a paradigm that is inconsistent with this Court's directives, the Special Masters' expressed desire to avoid deciding whether to enforce Third-Party Funder agreements, and the findings of both the United States Court of Appeals for

---

[1] Defined terms not defined in this motion refer to terms defined in the Rules, effective as of March 19, 2020.    <u>See</u>    Rules    available    at https://www.nflconcussionsettlement.com/Docs/rules_governing_payment_of_claims.pdf   (last visited June 17, 2021), attached as "Exhibit A" to Declaration.

the Third Circuit and every arbitrator who has considered Thrivest's agreement.  This paradigm, moreover, is inefficient, inequitable, and not in the best interests of Settlement Class Members. There is a simple solution to these serious problems—an amendment to the Rules that directs payment of Monetary Awards to the Settlement Class Member's attorney except in limited circumstances.  To that end, Thrivest brings the instant motion for relief.

## II.     RELEVANT BACKGROUND

The Court and the parties are familiar with the Rules and the history of issues concerning Third-Party Funders in this action.  Thrivest will summarize that background below before illustrating, through several examples, the concerns this motion seeks to remedy.

### A.     The Court Voids All Third-Party Funding Agreements As "Improper Assignments" Prohibited By The Settlement Agreement And Orders Direct Payment Of Monetary Awards To Settlement Class Members On That Basis.

During the Fall of 2017, the Court considered generally whether transactions between Settlement Class Members and Third-Party Funders complied with Section 30.1 of the Settlement Agreement, which prohibited Class Members from assigning "any rights or claims relating to the subject matter of the Class Action Complaint."  See Settlement Agreement (Dkt. 6481-1).  On December 8, 2017, the Court issued an Explanation and Order in which the Court held that "Class Members are prohibited from assigning or attempting to assign any monetary claims" by Section 30.1. See December 8, 2017 Explanation and Order at p. 4 (Dkt. 9517).  Finding that Third-Party Funder Transactions involved the improper assignment of monetary claims, the Court ruled that "any such purported assignment is void, invalid, and of no force and effect."  Id.  And, on that basis, the Court prohibited the Claims Administrator "from paying a Class Member's monetary award to any third party that holds an assignment or an attempted assignment." Id. at p. 1.  At the conclusion of its Explanation and Order, the Court indicated that "[f]urther instructions to the Claims Administrator will follow."  Id. at p. 5.

2

On February 20, 2018, the Court issued further instructions, instructing the Claims Administrator to "pay directly to the Settlement Class Member any and all Monetary Awards in cases *where there has been found an improper assignment of any right or claim pursuant to Section 30.1 of the Settlement Agreement*." See February 20, 2018 Order (Dkt. 9749) (emphasis added).

Two days later, the Special Masters adopted the first iteration of the Rules. See Rules effective as of February 22, 2018 (the "2018 Rules"), attached as "Exhibit B" to the Declaration. The 2018 Rules set forth a procedure by which the "Claims Administrator and the Special Masters will assess the terms of a Third-Party Funder Transaction to determine whether they reflect the attributes of a Prohibited Assignment under the Explanation and Order." See id. at Rule 6. Following that determination, the 2018 Rules provided that "[t]he Claims Administrator will direct the Trustee to pay Monetary Claims *with a Prohibited Assignment* directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*." See id. at Rule 8(c) (emphasis added).  In accordance with these new procedures, the Claims Administrator began a practice of paying Monetary Awards directly to Settlement Class Members whenever the Class Member had entered into a transaction with a Third-Party Funder; this practice included Settlement Class Members that had contracted with Thrivest. See Discussion of Thrivest v. White and Thrivest v. Wright, *infra*.

### B.   The Third Circuit Overturns The Blanket Invalidation Of Funder Agreements And Notes That Thrivest Did Not Obtain An Improper Assignment; Thrivest Enforces Its Agreement In Arbitration.

Over a year later, the Third Circuit reversed the Court's December 8, 2017 Explanation and Order "to the extent the District Court purported to void the cash advance agreements in their entirety and void contractual provisions that went only to a lender's right to receive funds after the player acquired them." Nat'l Football League Players Concussion Inj. Litig., 923 F.3d 96, 100 (3d

3

121564722.9

Cir., Apr. 26, 2019).  The Third Circuit explained that, while the District Court had authority to void "true assignments" that violate Section 30.1 of the Settlement Agreement by "allow[ing] a litigation funding company to step into the shoes of a class member and pursue the class member's rights through the claims process," "[t]he District Court's authority certainly does not extend to how class members choose to use their settlement proceeds after they are disbursed."  Id. at 111.

In that regard, the Third Circuit noted that Thrivest "obtained no right to submit a claim directly to the Claims Administrator and instead acquired only the right to receive settlement funds after the Claims Administrator had paid out the awards to the particular class members with whom they contracted."  Id. at 101.  In other words, because "Thrivest's contract gave it only the right to receive settlement funds after the funds are disbursed to a class member," the Third Circuit found that Thrivest's agreement did not include an improper assignment subject to the District Court's oversight.  Id. at 112.  As such, the Third Circuit vacated the Court's order enjoining Thrivest from pursuing arbitration against Settlement Class Member William White.  Id. at 113.

Following the Third Circuit's decision, Thrivest pursued arbitration against Settlement Class Member White, who had previously received his Monetary Award directly but failed to honor his agreement with Thrivest.  See Docket in Thrivest v. White, No. 18-1877 (E.D.Pa.), attached as "Exhibit C" to the Declaration.  An Emergency Arbitrator entered an Interim Award of Emergency Relief directing White to escrow $1,250,000 pending resolution of Thrivest's claims; and, on July 1, 2019, this Court confirmed the Emergency Arbitrator's Interim Award.  See id., Order (Dkt. 25).  When White did not comply with the Court's July 1, 2019 Order, extensive contempt proceedings ensued, culminating in an October 17, 2019 Explanation and Order holding White in contempt and freezing his accounts to coerce compliance.  See id., Explanation and Order (Dkt. 44).  When White still did not comply with the required escrow, the Court ordered him to

4

produce an accounting of his award proceeds and, later, threatened further sanctions.  See id., Order (Dkt. 53).  Soon thereafter, the Arbitrator entered a Final Award in Thrivest's favor, ordering White to pay over $1.2 million (including attorneys' fees and arbitration expenses totaling over $340,000) for breaching the Thrivest agreement; in so ruling, the Arbitrator expressly found that Thrivest's agreement was "valid and enforceable" and not a "true assignment" barred by Section 30.1 of the Settlement Agreement.  See id., Final Award, attached as Ex. A to Stipulation to Confirm Arbitration Award (Dkt. 57).  White later satisfied the Arbitrator's Final Award.  See id., Stipulation to Confirm Arbitration Award (Dkt. 57).

> ### C.    The Claims Administrator Revises The Rules To Avoid Deciding Whether To Enforce Third-Party Funder Agreements, But Continues To Pay Settlement Class Members Directly Whenever Funding Is Involved.

After the Third Circuit's decision reversing in part the December 8, 2017 Explanation and Order, the Claims Administrator did not meaningfully revise the 2018 Rules until after Thrivest commenced a mandamus action in September 2019 seeking revisions consistent with the Third Circuit's guidance.  Compare Rules (Ex. A) with 2018 Rules (Ex. B).  On September 27, 2019, soon after Thrivest's mandamus filing, the Court issued a Notice directing the "the Claims Administrator to review its guidance and rules regarding third-party funder agreements and propose a streamlined and concise version that is more user-friendly."  See Notice (Dkt. 10858).  In reliance on the Court's expressed willingness to consider revisions to the Rules, the Third Circuit denied Thrivest's mandamus petition without prejudice in October 2019, noting that "[a]ny further concerns should first be raised with the District Court by motion."  See In re: Thrivest Specialty Funding, LLC, No. 19-3149 (3d Cir.), Doc. 003113392583.

On March 19, 2020, the Special Masters adopted the Rules—a revision that replaced the 2018 Rules.  See Rules (Ex. A).  The new Rules eliminated the process whereby the Claims Administrator had been deciding whether a Third-Party Funding agreement should be

5

characterized as a "Prohibited Assignment" under the December 8, 2017 Explanation and Order, which the Third Circuit reversed in part.  See id.  In the absence of such a determination, the new Rules direct the Claims Administrator to pay Monetary Awards directly to Settlement Class Members whenever *any* Third-Party Funding is involved—unless the Third-Party Funder elects to participate in the Resolution Protocol.  See id., Rule 7.  This directive is mandatory and applies to all Settlement Class Members that received Third-Party Funding, regardless of whether they are represented by counsel, in the absence of any finding that the transaction was somehow improper, and even in the face of specific findings that the funding agreement is valid and enforceable.  See id.  Of note, the Rules expressly disclaim any connection between these direct payments and the enforceability of funding agreements:

> **This payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations. For instance, Settlement Class Members receiving such direct payments might be sued by a Third-Party Funder. A Settlement Class Member SHOULD NOT assume that his/her receipt of direct payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.**

Id. at p. 4 (emphasis in original).  In accordance with these Rules, the Claims Administrator has continued its practice of paying Monetary Awards directly to Settlement Class Members whenever the Class Member has entered into a transaction with a Third-Party Funder.  See Discussion of Thrivest v. Harper, *infra*.  In Thrivest's experience, these direct payments have undermined enforcement of its agreements, encouraged Settlement Class Members to render themselves judgment-proof or bankrupt by spending, gambling or otherwise wasting their Monetary Awards, and resulted in inefficient and inequitable outcomes.  See Discussion of Thrivest v. Wright and Thrivest v. Harper, *infra*.

6

**D.**     **Toby Wright Gambles Away $1.1 Million In Award Proceeds, Leaving Himself Judgment Proof And Homeless As He Ignores Orders Enforcing Thrivest's Agreement.**

Thrivest provided Settlement Class Member Toby Wright with a $323,792.15 advance in 2016; when Wright received a $1.5 million Monetary Award in 2018 and failed to honor his contractual promises, Thrivest filed an action to compel arbitration on November 2, 2018.  See Docket in Thrivest v. Wright, No. 18-4764 (E.D.Pa.), attached as "Exhibit D" to the Declaration. More than seven months later, following extensive briefing and a hearing, this Court entered an Order directing Wright to arbitrate Thrivest's claim.  See id., Order (Dkt. 22).  Early in the arbitration, an Emergency Arbitrator entered an Interim Award of Emergency Relief directing Wright to escrow $800,000 pending resolution of Thrivest's claims; Thrivest quickly moved to confirm the Interim Award on July 3, 2019.  See id., Emergency Motion to Confirm Interim Award (Dkt. 25).  The Court confirmed the Interim Award on August 12, 2019 and, days later, Thrivest sought a finding of contempt due to Wright's continued failure to comply with the instruction to escrow the disputed funds.  See id., Order Confirming Interim Award (Dkt. 35) and Emergency Motion for Contempt (Dkt. 36).  This set off a flurry of docket activity that concluded more than two months later with the Court holding Wright in contempt and freezing his accounts for his failure to comply with the escrow instruction; nevertheless, Wright would never comply with the Court's directive to escrow the disputed funds.  See id., Contempt Order (Dkt. 68).  In November 2019, the Arbitrator entered a Final Award in Thrivest's favor, ordering Wright to pay nearly $700,000 for breaching the Thrivest agreement; on January 2, 2020, the Court confirmed the Award as a judgment.  See id., Order Confirming Award (Dkt. 75).  Thrivest has since sought to enforce its judgment against Wright in Arizona and to recover for Wright's fraudulent transfer of the award proceeds; however, because Wright spent, gambled or otherwise dissipated his

7

Monetary Award leaving him penniless, Thrivest has not recovered anything to date.  See Thrivest v. Wright, et al., No. CV2020-4560 (Ariz. Sup., Maricopa).

Bank records subsequently obtained by Thrivest show that payment of Wright's Monetary Award directly to him in accordance with the Rules substantially contributed to this outcome.  In November 2018, soon after Thrivest filed an action to compel Wright to arbitrate its claim to a portion of his award proceeds, Wright received (directly) the first two installments of his Monetary Award totaling more than $370,000—$62,793.42 on November 15, 2018 and $307,602.54 on November 23, 2018.  See Wright's Bank Records, attached as "Exhibit E" to the Declaration.[2]  In the weeks that followed, Wright would burn through those funds through a series of near-daily trips to Casino Arizona, leaving his account overdrawn by February 7, 2019.  See id.  Wright received another direct payment from the Claims Administrator on May 13, 2019, a payment in the amount of $766,275.  See id.  As Thrivest sought to enforce its agreement in arbitration and in this Court, Wright continued wasting the disputed funds.  See id.  By the time of the Interim Award directing him to escrow $800,000, Wright's account was down to $321,416.29; when the Court finally confirmed the Interim Award five weeks later, Wright had depleted his account balance to $154,902.95.  See id.  Wright's account held $143,870.24 when Thrivest sought a contempt finding and $45,525.82 when the Court held him in contempt on October 21, 2019.  See id.  Within ten days, Wright's balance was less than $500—he had wasted more than $1.1 million in less than a year.  See id.

Later, during an April 2021 deposition in the Arizona action, Wright confirmed that he has nothing left from the more than $1.1 million he received from the Settlement Agreement, having

---

[2] Wright did his personal banking through a non-functioning entity known as Players Authority LLC.

gambled away the "majority" of the award proceeds at Casino Arizona.  See Transcript of Wright Deposition at 16:12-19, attached as "Exhibit F" to the Declaration ("Majority of it I gambled it off.").  At the time of that deposition, Wright was homeless.  See id. at 9:13-16 ("I'm everywhere. I'm out sometimes.  I'm out in the street sometimes.  I'm at different locations.").

### E.   Alvin Harper Dissipates Nearly $400,000 In Award Proceeds, Declaring Bankruptcy After He Ignores Orders Enforcing Thrivest's Agreement.

As with White and Wright, Settlement Class Member Alvin Harper received his Monetary Award directly from the Claims Administrator, kicking off another race against time that ended badly for all involved.

Thrivest provided Harper with a $431,722.86 advance in 2016; when Harper received $491,623.20 in award proceeds in December 2020 (directly from the Claims Administrator) and failed to honor his contractual promises, Thrivest filed an arbitration on December 21, 2020.[3]  See generally Docket in Balanced Bridge Funding v. Harper, No. 20-6525 (E.D.Pa.) (the "Pennsylvania Action"), attached as "Exhibit G" to the Declaration.  On December 29, 2020, an Emergency Arbitrator entered an Interim Award of Emergency Relief directing Harper to escrow $491,623.20 pending resolution of Thrivest's claims; Thrivest quickly moved to confirm the Interim Award that same day.  See id., Emergency Application to Confirm Interim Award (Dkt. 1).  Bank records subsequently obtained by Thrivest show that Harper had over $395,000 in his bank accounts at that time.  See id., Harper's Bank Records, Ex. A to Letter to Judge Brody dated 1/28/21 (Dkt. 7).  Harper did not comply with the Interim Award and instead continued dissipating the award proceeds.  See id.

---

[3] Before receiving his Monetary Award, Harper used the threat of collection risk to negotiate changes to his arrangement with Thrivest; however, Harper reneged on that agreement as well.

While its emergency application to confirm the Interim Award was pending, Thrivest sought a preliminary injunction on January 13, 2021, seeking to freeze Harper's accounts and prevent further dissipation of the award proceeds.  See id., Emergency Motion for Preliminary Injunction (Dkt. 5).  Harper's bank records show that he still had over $395,000 in his possession when Thrivest sought this emergency injunctive relief.  See id., Harper's Bank Records, Ex. A to Letter to Judge Brody dated 1/28/21 (Dkt. 7).  When the Court did not respond to Thrivest's two emergency filings, Thrivest filed a separate action in California Federal Court on January 25, 2021 against Harper and his daughter—who was a joint owner of the California account holding the award proceeds.  See Docket in Balanced Bridge Funding, LLC v. Harper et al., No. 21-663 (C.D.Cal.) (the "California Action"), attached as "Exhibit H" to the Declaration.

After receiving some of Harper's bank records in response to a subpoena, Thrivest presented evidence of Harper's active dissipation of the disputed funds in violation of the Interim Award to the Court on January 28, 2021.  See Docket in Pennsylvania Action, Letter to Judge Brody dated 1/28/21 (Dkt. 7).  Records subsequently obtained by Thrivest would later reveal that Harper withdrew $180,000 that day, reducing his account balance to less than $40,000 as he continued to ignore the Emergency Arbitrator's Interim Award.  See id., Letter to Judge Diamond dated 2/9/21 (Dkt. 14).  The next day the Pennsylvania Action was reassigned to a different judge at the Court's request.  See id., Reassignment Order (Dkt. 9).

On February 23, 2021, the new judge assigned to the Pennsylvania Action confirmed the Interim Award and entered the injunctive relief requested by Thrivest, but, by that time, Harper had dissipated most of the award proceeds.  See id., Order Confirming Interim Award (Dkt. 15, 17).  While Thrivest sought a finding of contempt for Harper's continued non-compliance, an arbitrator entered a Final Award in Thrivest's favor on March 16, 2021, ordering Harper to pay

$543,412.06 for breaching the Thrivest agreement.  See id.; Final Award of Arbitrator in Balanced Bridge Funding, LLC v. Harper, AAA Case No. 01-20-0019-2914, attached as "Exhibit I" to the Declaration.

A short time later, on April 9, 2021, Harper filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Florida, identifying $112,238.60 in assets just months after receiving award proceeds over $490,000.  See In re: Alvin Craig Harper, No. 21-13418 (Bankr. S.D. Fla.), Voluntary Petition (Dkt. 1).

## III.    ARGUMENT

The payment of Monetary Awards directly to Settlement Class Members when funding is involved is premised on a since-reversed, blanket finding that funding transactions constitute "improper assignments" under the Settlement Agreement.   In this respect, the Rules are inconsistent with the Court's February 20, 2018 instruction to make direct payment only where "there has been found an improper assignment" and, moreover, with findings—by the Third Circuit and every arbitrator that has considered the issue—that Thrivest's agreement is *not* an "improper assignment" under Section 30.1 of the Settlement Agreement.  The Court should instruct the Claims Administrator to amend the Rules not only to remedy this inconsistency, but also because direct payment is *de facto* determining whether Thrivest can enforce its agreement. This is especially concerning because the Special Masters have expressed a desire to remain neutral in any dispute over the enforcement of a funding agreement.  The relief requested by Thrivest, moreover, is consistent with the best interests of Settlement Class Members and the interests of justice and judicial economy.  See Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561, 572 (E.D. Pa. 2001) (explaining that courts should administer class action settlements "consistent with the public interest and [to support] the public's confidence in the administration

11

121564722.9

of justice and the integrity of the class action process").  Accordingly, the Court should exercise its authority to implement and administer the Settlement Agreement, and grant Thrivest's motion.

### A.  The Rules Incorrectly Treat All Funding Transactions As "Improper Assignments" When Thrivest's Agreement Has Been Validated By The Third Circuit And Every Arbitrator That Has Considered It.

When the Claims Administrator initially adopted the 2018 Rules, the Court had just recently invalidated all funding transactions as "improper assignments" and directed that, where "there has been found an improper assignment," the Claims Administrator should pay Monetary Awards directly to Settlement Class Members.  See December 8, 2017 Explanation and Order (Dkt. 9517); February 20, 2018 Order (Dkt. 9749).  Since then, the Third Circuit reversed the blanket invalidation of funding transactions, finding, as relevant here, that there was nothing improper about Thrivest's agreement under Section 30.1 of the Settlement Agreement.  See NFL Players Concussion Inj. Litig., 923 F.3d at 112.  Thereafter, consistent with the Third Circuit's conclusion, every arbitrator who has considered Thrivest's agreement has enforced it, rejecting the argument that Thrivest somehow obtained an improper assignment of claims in this class action; the Court has confirmed every award for which confirmation has been sought.  Yet, the Claims Administrator continues to treat Thrivest's agreement as an "improper assignment" deserving of negative treatment, paying Monetary Awards directly to Settlement Class Members whenever they had requested and received Thrivest funding.  The result is a flawed process that treats Settlement Class Members with valid and enforceable funding agreements differently than Class Members that did not receive funding—with serious negative consequences for all involved.  There is no basis for disparate treatment, especially disparate treatment based on the existence of a valid, legal transaction.  There is no reason why some Monetary Awards should be paid to the attorneys of record, while others are paid directly to the Settlement Class Members.  Thrivest did not engage in an "improper assignment" and, thus, the Court's February 20, 2018 Order should not be applied

12

to Settlement Class Members that received Thrivest funding—or any funding that has <u>not</u> been found to violate the Settlement Agreement.  The Court should amend the Rules to direct payment to the attorneys unless the Settlement Class Member is *pro se* or a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement.

**B.      Direct Payment To Settlement Class Members Is *De Facto* Encouraging Noncompliance By Settlement Class Members And Impairing Thrivest's Enforcement Of Valid Agreements.**

The distinction drawn by the Claims Administrator—between Settlement Class Members with funding and those without—matters.  As evidenced by Thrivest's experience with White, Wright and Harper, Settlement Class Members who receive direct payment of their Monetary Awards have repeatedly failed to comply with their contractual promises and with binding orders from arbitrators and courts, with serious consequences for themselves and for Thrivest's ability to meaningfully enforce its agreements.

With his award in hand, White fought enforcement of Thrivest's agreement all the way to the Third Circuit and through an arbitration and subsequent confirmation proceedings in this Court. In the end, the arbitrator awarded Thrivest nearly double what White would have paid had he merely honored his contractual promises.  Wright followed a similar path, resisting enforcement every step of the way; however, during those protracted proceedings, he gambled and otherwise wasted away his entire Monetary Award.  As a result, Thrivest has been unable to recover on an enforceable obligation and Wright is destitute a short time after receiving more than $1 million under the Settlement Agreement.  For his part, Harper dissipated nearly $400,000 in award proceeds before declaring bankruptcy.  In each instance, the Settlement Class Member not only ignored a contractual promise to hold the award proceeds "in trust" for Thrivest, but also flaunted orders from arbitrators and this Court directing them to escrow the disputed funds before Thrivest's

13

agreement was later upheld and enforced.  These negative outcomes are not a coincidence; they can be traced to a common source—the direct payment of Monetary Awards to Settlement Class Members whenever funding is involved.

In response to Thrivest's concerns that the 2018 Rules were encouraging risky decisions and leading to negative outcomes, the Special Masters adopted new Rules.  The new Rules expressly disclaim any connection between direct payment and the enforceability of funding agreements and warn Settlement Class Members that there may be risks if they shirk their contractual promises.  In this way, the Special Masters expressed a clear desire to remain neutral in any dispute over the enforcement of a funding agreement.  Yet, as the White, Wright and Harper examples illustrate, there can be no doubt that, in practice, the decision to pay Settlement Class Members directly has meaningfully impaired Thrivest's ability to enforce its agreements—the opposite of the neutrality embodied in the Rules.  Indeed, these examples show that the existence of a separate procedure when funding is involved cannot co-exist with the Special Masters' desire for neutrality.[4]  This disconnect requires a change, especially considering that Thrivest's agreements have uniformly been upheld and enforced.

Here, as in litigation generally, Monetary Awards are typically paid to the attorneys, who are ethically bound to honor orders entered by arbitrators and courts and to hold disputed funds until the dispute is resolved.  See Pa. R.P.C. 1.15(f) ("When in possession of funds or property in which two or more persons … claim an interest, the funds or property shall be kept separate by the lawyer until the dispute is resolved.").  On the basis of since-rejected legal reasoning, the Rules

---

[4] If the purpose is to encourage Third-Party Funders to accept the Resolution Protocol rather than pursue enforcement of valid agreements due to heightened collection risk associated with direct payment, then the Rules are, in fact, choosing sides—and in this way undermining public confidence in the judicial process.

14

create an exception when funding is involved, directing the Claims Administrator to divert the ordinary flow of funds around the attorneys to Settlement Class Members who have proven themselves unworthy of this Court's trust.  In practice, the decision to pay Settlement Class Members directly is a decision to undermine enforcement of Thrivest's agreement, which has been repeatedly upheld as valid and enforceable.  As such, the Court should amend the Rules to eliminate the unnecessary and inequitable exception to the typical flow of funds when funding is involved.

### C.   <u>Direct Payment Has Created Chaos And Inequity, And Burdened Thrivest And The Courts With Unnecessary Proceedings.</u>

As the aforementioned examples illustrate, direct payment of Monetary Awards to Settlement Class Members has generally kicked off a flurry of frantic litigation activity that resembles the Wild West.  With funds in hand, Settlement Class Members have ignored directives to escrow disputed funds and instead spent, gambled, and otherwise wasted their Monetary Awards while Thrivest has pursued preservation of the disputed funds through available legal channels. This incredibly inefficient process has burdened Thrivest with arbitration expenses and attorneys' fees (which are ultimately the responsibility of the Settlement Class Members under the agreement) and, moreover, burdened the courts with proceedings to enforce arbitration findings in Thrivest's favor.  The process has universally included an injunction directing the escrow of disputed funds that the Settlement Class Member has ignored, and further contempt proceedings to compel compliance with this Court's orders—which have included frozen accounts and threats of incarceration.  When the dust has settled, Thrivest has prevailed on the merits, but its legal victories mean little when the money is gone.  For their part, the Settlement Class Members have upended their financial lives and created trouble for family and friends whom they have involved;

each has ended up worse off than had they simply complied with their contractual promises.  This chaos and inequity deserves attention and demands change.

**IV.**     <u>**CONCLUSION**</u>

Thrivest is asking only that the Rules comport with this Court's Orders and the Third Circuit's guidance, and that Thrivest not be prejudiced by diverting the flow of funds around the attorneys who would ordinarily receive them.  If there are disputes, Thrivest will work to resolve them, but the Claims Administration process should not impair Thrivest's rights by adding to the collection risk.  The current process is causing problems and needs to be changed.  Thrivest respectfully requests that the Court amend the Rules by entering an order in the form proposed.

Respectfully submitted,

/s/ Peter C. Buckley
Peter C. Buckley, Esquire
Christopher C. Popper, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2854
(215) 299-2150 (facsimile)

*Attorneys for Thrivest Specialty Funding, LLC*
*n/k/a Balanced Bridge Funding, LLC*

June 28, 2021

16