**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:  NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : : : : : : : | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | | |

**MEMORANDUM IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE**

**I.      INTRODUCTION**

BrownGreer submits this Memorandum in Support of its Motion for Order to Show

Cause to explain the actions by Richard Collins giving rise to the Motion, the need for a

show cause proceeding to protect the Court's exclusive jurisdiction and avoid disruption of

the administration of the Settlement Agreement, and the legal basis for such an order.

**II.      FACTUAL BACKGROUND AND ARGUMENT AND AUTHORITIES**

**A. Respondent Richard Collins and His Law Firm, Collins & Truett Attorneys, P.A.**

Richard Collins is a senior partner in the law firm Collins & Truett Attorneys, P.A.,

located at 113 South Monroe Street, Tallahassee, Florida 32301.  Collins & Truett is counsel

to 64 Settlement Class Members who registered with BrownGreer for benefits in the NFL

Concussion Settlement Program established by the Class Action Settlement Agreement, 11 of

whom have submitted claims for Monetary Awards.  The firm took over representation of

eight of those 11 claims previously presented by other law firms, and has filed three claims

itself.  One of the 11 claims, one later was withdrawn; four have been denied; and six (one of

which was paid while being handled by predecessor counsel) are the subject of an Audit

investigation by BrownGreer. *See* Declaration of Orran L. Brown, Sr., submitted as

Attachment A to this Memorandum ("Brown Decl.") ¶ 5.

    **B.**  **The On-Going Audit Investigation Involving Tim Howard, Richard Collins and Collins & Truett.**

Section 10.3(b) of the Settlement Agreement directed Class Counsel, the NFL Parties

and BrownGreer to "establish and implement procedures to detect and prevent fraudulent

submissions to, and payments of fraudulent claims from, the Monetary Award Fund." The

procedures for this Audit function are set forth in the Rules Governing the Audit of Claims,

first adopted by the Court's Special Masters on January 26, 2018. These Rules are publicly

available on the official website of Settlement Program.

In an Audit, the "Claims Administrator will review the records and information relating

to that claim and determine whether the Claim Form . . . misrepresents, omits, and/or conceals

material facts that affect the claim." SA Section 10.3(g). The Settlement Agreement is clear

that a Settlement Class Member whose claim is in Audit may be required to submit

additional records and information as requested by BrownGreer, and that a "Settlement Class

Member who refuses to cooperate with an audit, including by unreasonably failing or refusing to

provide the auditing party with all records and information sought within the time frame

specified, will have the claim denied by the Claims Administrator, without right to an appeal."

SA Sections 10.3(b)(i) and (ii). Audit Rule 10 provides detail on acquiring information in an

Audit:

> **Rule 10.  Required Information and Records.** The Claims Administrator may require a Settlement Class Member, within 90 days or such other time as necessary and reasonable under the circumstances, to submit to the Claims Administrator such records and information as may be necessary and appropriate to audit the Claim of the Settlement Class Member, including the records and information described in

Sections 10.3(e) and 10.3(f) of the Settlement Agreement.  The Claims Administrator
also may require persons and entities other than the Settlement Class Member to
submit such records and information within 90 days or such other time as necessary
and reasonable under the circumstances.  Any request by the Claims Administrator for
records or information in connection with an Audit will have the force and effect of a
subpoena under Fed. R. Civ. P. 45 and may be served by any means that will cause
the recipient to receive it.  The Claims Administrator has the authority to take
testimony, issue follow-up requests for information and records, and/or obtain
additional materials and information pursuant to Fed. R. Civ. P. 45 as it deems
reasonably necessary to complete the Audit.

In March, April, and August 2017, BrownGreer received tips asserting that Howard &

Associates, a law firm run by Tim Howard in Tallahassee, Florida (with offices located a

little over four miles from the Collins & Truett offices), had recruited various doctors,

demanded revisions to medical reports, and, in some cases, altered or forged reports to

support inflated diagnoses to submit claims for Monetary Awards in the Settlement Program.

In August 2017, we began auditing Howard & Associates and submitted an Interim

Investigation Report to the Special Masters and Parties detailing the allegations, as well as

next steps in its investigation.  We then suspended the investigation because we had not yet

received any Monetary Award claims submitted by Howard & Associates. (Brown Decl. ¶ 7.)

We resumed the analysis in June 2019, however, after Settlement Class Members

previously represented by Howard & Associates but now with other law firms submitted

medical records from time periods when they were Howard & Associates clients.  On

November 25, 2020, we issued to the NFL Parties and Class Counsel a Report of Adverse

Finding in Audit to the Special Masters under Audit Rule 15, finding that Howard &

Associates:

  (1) edited and/or drafted medical records with the purpose to affect whether the Settlement
      Class Members qualify for a Monetary Award;

  (2) instructed medical providers, including Qualified MAF Physicians and BAP Providers, to
      misrepresent material information in medical records for the Settlement Program;

(3) engaged in discussions with numerous healthcare providers about changes to Players' medical reports, and provided instructions to the providers about what the medical reports should include;

(4) directed a physician to omit material facts from the Network Provider Application and communicate untruthful information to become a (now former) Qualified MAF Physician and BAP Provider; and

(5) presented inflated costs for reimbursement in a lien dispute before the Court.

(Brown Decl. ¶ 8.)

Richard Collins and Collins & Truett are implicated in the Tim Howard Audit investigation.  Many Settlement Class Members formerly represented by Howard & Associates have switched representation to Collins & Truett.  A paralegal who used to work on Settlement Class Members' claims at Howard & Associates, Neil Bruce Epstein, now works on those claims for Richard Collins at Collins & Truett. (Brown Decl. ¶ 9.)

The due order of process under the Audit Rules is that under Rule 16, the NFL Parties and Class Counsel have 15 days to tell us whether they agree with referring the Adverse Report to the Special Masters for consideration.  In this instance, both did on December 10, 2020, and then the NFL Parties submitted their Statement of Position under Audit Rule 17 on December 29, 2020, arguing that all parties involved in Tim Howard's scheme should be banned from the Settlement Program or be subject to additional investigation.  On January 22, 2021, the Special Masters accepted referral of the Howard Audit Report under Audit Rule 18, at which time we sent the Audit Report to Tim Howard, and notified Richard Collins and his paralegal, Neil Epstein, that the Special Masters had directed us to Audit all pending Monetary Award claims of any Settlement Class Member that had at any time been represented by Howard & Associates, which included claims by then being handled by Collins & Truett. (Brown Decl. ¶ 10.)

Nonetheless, in February and March 2021, Richard Collins was asking us why his claims were on Audit hold.  On March 16, 2021, we acknowledged Richard Collins' correspondence

and separately sent questions to him about his relationships with Tim Howard.  On March 17,

2021, Richard Collins asked to speak with us, to which we replied that it may make sense to talk

after he had a chance to respond to our March 16 questions.  Richard Collins denied receiving

our questions and complained to us about the Audit delaying his claims, saying he would obtain

from Tim Howard a copy of our Adverse Audit Report.  We re-sent him our March 16 email

with our questions.  (Brown Decl. ¶ 11.)

On March 18, 2021, we received responses to our March 16 questions.  Richard Collins

acknowledged a "limited" professional relationship with Tim Howard and co-counsel

relationship with him on other cases. Sharon Delaney, a contractor who works with Collins &

Truett and other firms in preparing Monetary Award claims, denied knowing Tim Howard; Neil

Epstein said he worked for Howard until "early 2020."  All three denied any arrangements or

agreements with Tim Howard related to the NFL Program. (Brown Decl. ¶ 12.)

In April-May, we continued to try to understand the facts about the Collins & Truett

connections with Tim Howard and gradually obtained more data from Richard Collins about his

employees.  On April 15, 2021, we received a mailing from a confidential source that included

documents relating to Tim Howard and Collins & Truett, showing two email addresses at the

Collins & Truett firm that seemed to be related to Tim Howard:  tim@collinstruett.com and

phil@collinstruett.com.   Tim Howard's full name is Phillip Timothy Howard.[1]  (Brown Decl.

¶ 13.)  We have no access to any Collins & Truett email server and have not attempted to gain

any such access. (Brown Decl. ¶ 14.)

---

[1] In the effort to detect and prevent fraud on the Settlement Program, we receive anonymous tips and information from persons who wish to remain confidential. The Manual of the Association of Certified Fraud Examiners, which outlines best practices related to fraud examinations, states that "[i]f the confidential source or informant has provided documents, names of potential witnesses, or other evidence, all reasonable steps must be taken to protect the identity of that source." *See* Association of Certified Fraud Examiners, Fraud Examiners Manual 3.519 (2019).

On April 19, 2021, we sent follow-up questions to Richard Collins about Neil Epstein's email addresses, his use of two names at the firm, participants in the video they sent us, more information about the three Collins & Truett firms, a Collins & Truett fax cover sheet also bearing the logo of "Howard Justice," who were the persons using the phil and tim email addresses at Collins & Truett, and whether Tim Howard does any business under Collins & Truett.[2]  (Brown Decl. ¶ 15.)

Also in 2021, Tim Howard was filing with the Special Masters his responses to the Adverse Audit Report, as provided by Audit Rule 20, which allows a memo of up to 25 pages; Tim Howard filed an initial response in three parts on February 4, 2021, a Supplemental Response in two parts on February 17, 2021, and then a "Final Supplemental Response" on February 22, 2021, for a total of 36 pages (not including exhibits).  After the NFL Parties replied to these materials on April 5, 2021, Tim Howard filed on April 6, 2021, a sur-reply, which is not contemplated by the Audit Rules.  (Brown Decl. ¶ 16.)

As Richard Collins now has done in Florida state court, Tim Howard went on the offensive against the Audit investigation of his practices, but at least he launched his attack in the correct court.  On April 9, 2021, after several corrections to remove confidential information, Mr. Howard filed with this Court a "Motion to Discipline or Dismiss Special Masters and Auditors" (Document 11328), arguing that the auditors and Special Masters violated investigative standards and exhibited bias in their operations.  That Motion is pending. (Brown Decl. ¶ 17.)

---

[2] As best we can tell, Richard Collins has had three Collins & Truett law firms:  Collins & Truett Attorneys, P.A., a Florida Profit Corporation, formed 7/13/20 and currently active; Collins & Truett, LLC, a Florida Limited Liability Company, formed 3/1/13, also currently active; and Collins & Truett Law Firm, P.A., a Florida Profit Corporation, formed 4/30/20 and dissolved 6/18/20.  (Brown Decl. ¶ 5.)

On June 22, 2021, the Special Masters issued their Decision under Audit Rule 27 on

Howard & Associates, disqualifying Howard and his employees from participating in the

Settlement Program.  The Special Masters also ruled that "Given the apparent connection

between Collins & Truett and Tim Howard, the Claims Administrator shall investigate the

relationship between the two firms and Collins & Truett's current representation of Settlement

Class Members in the Program."  On June 28, 2021, we emailed a copy of that Decision to

Richard Collins and Neil Epstein.  (Brown Decl. ¶ 18.)

At this stage, the next appropriate administrative step for Mr. Collins under the Audit

Rules will be to cooperate with the audit investigation of Collins & Truett and respond in a

timely and truthful manner to BrownGreer's requests under that investigation.  The

investigations, chances to be heard by the Special Masters, and final decision will proceed

under the Audit Rules.

C.  **The Lawsuit Filed by Richard Collins in State Court in Florida and His Discovery Requests There.**

On June 21, 2021, two copies of a summons and a pleading called "Complaint for

Temporary and Permanent Injunction" were delivered to the front desk at the offices of

BrownGreer in Richmond, Virginia.  A copy of one of those two documents is attached as

Exhibit 1 to the Brown Declaration.  The front desk receptionist at BrownGreer has not been

authorized to accept service of process on behalf of BrownGreer or Roma Petkauskas.  Service

of the Complaint has not been made in any other manner on either BrownGreer or

Ms. Petkauskas.  (Brown Decl. ¶ 19.)

The Complaint for Temporary and Permanent Injunction reflects that it was filed by

Richard Collins on behalf of Collins & Truett Attorneys, P.A., in the Circuit Court of the Second

Judicial Circuit, in and for Leon County, Florida, on June 17, 2021.  It purports to name as

defendants:

      (1) Roma Petkauskas, in her "individual and official capacity;"
      (2) BrownGreer PLC;
      (3) Perry Golkin, who is alleged to be a Special Master appointed by this Court;
      (4) "Wendelle E. Pritchett" or "Ritchett," sued as a Special Master;
      (5) "Jo-Ann M. Verrier," Special Master;
      (6) Susan M. Lin, named in the body of the Complaint but not in its caption, also
           alleged to be a Special Master;
      (7) Lawrence F. Stengel, named as Special Master;
      (8) David Hoffman, Special Master;
      (9) HML Group, LLC, alleged to be a Special Master.

There are many factual errors in those assertions, all of which would have to be cleared up if

and when Richard Collins properly asks this Court to address any of his arguments about the

Audit of him and his firm.  At this stage, these jumbled allegations reflect that Richard

Collins did not adequately determine the factual basis for his assertions before signing and

filing his Complaint in a Florida tribunal.[3]

      In its Complaint, Collins & Truett "is seeking to enjoin Defendants from access to

attorney work product and attorney-client communications found in its emails and email server."

(Paragraph 5.)  The firm then asserts that the questions presented to Richard Collins by Roma

Petkauskas in an Audit in accordance with Audit Rule 10 about his relationship with Tim

Howard and email addresses at his firm used by Tim Howard "demonstrate criminal violations

and an unauthorized breach of protected attorney-client communications and attorney work

product privileged documents that has not been sought, requested or waived [*sic*]."

(Paragraph 9.)  Though the Complaint is confusing and difficult to follow, Collins & Truett

claims that the Audit questions to the firm are "intentional, unauthorized, illegal and criminal

---

[3] The Complaint and the materials with it suggest their hasty and sloppy preparation; at one point, Roma Petkauskas is referred to as "Aroma."

security breach" (Paragraph 12) and that BrownGreer and the Special Masters have "failed to

supervise to ensure that auditors and investigators do not engage in criminal conduct"

(Paragraph 17).  Though called a Complaint for an injunction, it goes on to ask the Florida court

to award Collins & Truett monetary damages, attorney fees, and other relief against the Court's

Special Masters and administrators.  Apparently, it was the Audit questions to Richard Collins

asking why Tim Howard had email addresses at his firm and his desire to prevent inquiry into his

connections with Tim Howard that caused him to launch this attack in the Florida court and with

no cause whatsoever to accuse all the parties and entities he attempted to name as defendants of

"illegal access to and use of COLLINS FIRM emails and email servers as an ECS."  (Paragraph

 16.)

      The rambling and confusing factual allegations in the Complaint have no basis in fact.

Little can be gleaned from the Complaint about the legal grounds for any of the relief sought.

Richard Collins had no reasonable basis in fact or law for accusing the Court's Special Masters

and administrators, and other persons not even involved in the Audit of his law firm, of

"unbridled, illegal and criminal abuse of discovery" (Paragraph 19).  BrownGreer's Motion,

however, is not about the complete lack of merit in Richard Collins' libelous accusations.

Instead, it is about when and where complaints about the conduct of an Audit must be raised and

the proper forum for their resolution.[4]

      Richard Collins did not stop with merely filing a Complaint in a court other than this one.

He included with his Complaint 16 Interrogatories, 21 Requests for Admissions, and 16 Requests

---

[4] Another significant issue the Court would resolve is whether Collins & Truett and Richard Collins can sue the Special Masters and the Court's administrators for any kind of relief, especially monetary damages. By Order of June 14, 2017 (Document 7825 and Document 7715-2), the Court directed that the Special Masters, the Claims Administrator, the BAP Administrator, the Lien Resolution Administrator, the Appeals Advisory Panel members, the Appeals Advisory Panel Consultants, and all their employees, agents, representatives, owners, and officers have immunity in the performance of tasks in the Settlement Program and no suit or action may be brought against them, except for willful misconduct.

for Production, all of which would interfere with the Audit investigation of him and his firm, run

completely counter to how Audits work under the approved Audit Rules, and would needlessly

consume the time and resources of the Claims Administrator, in large part because many of the

requests are unintelligible.

### D.  This Court's Exclusive Jurisdiction Over the Settlement

Section 27.1 of the NFL Concussion Settlement Agreement provides:

> Section 27.1   Pursuant to the Final Order and Judgment, the
> Court will retain continuing and exclusive jurisdiction over the Parties and
> their counsel, all Settlement  Class  Members,  the  Special  Master,
> BAP   Administrator,   Claims Administrator, Liens Resolution
> Administrator, Appeals Advisory Panel, Appeals Advisory Panel
> Consultants, and Trustee with respect to the terms of the Settlement
> Agreement.  Any disputes or controversies arising out of, or related to, the
> interpretation, implementation, administration, and enforcement of this
> Settlement Agreement will be made by motion to the Court.  In addition,
> the Parties, including each Settlement Class Member, are hereby deemed to
> have submitted to the exclusive jurisdiction of this Court for any suit,
> action, proceeding, or dispute arising out of, or relating to, this Settlement
> Agreement.  The terms of the Settlement Agreement will be incorporated
> into the Final Order and Judgment of the Court, which will allow that
> Final Order and Judgment to serve as an enforceable injunction by the
> Court for purposes of the Court's continuing jurisdiction related to the
> Settlement Agreement.

When this Court approved the Settlement Agreement in its April 22, 2015 Final Order and

Judgment (Document 6510), it directed in Paragraph 16 as follows:

> 16.     The Court retains continuing and exclusive jurisdiction over
> this action including jurisdiction over the Parties and their counsel, all
> Settlement Class Members, the Special Master, BAP Administrator, Claims
> Administrator, Lien Resolution Administrator, Appeals Advisory Panel,
> Appeals Advisory Panel Consultants, and Trustee. In accordance with the
> terms of the Settlement Agreement, the Court retains continuing and
> exclusive jurisdiction to interpret, implement, administer and enforce the
> Settlement Agreement, and to implement and complete the claims
> administration and distribution process. The Court also retains continuing
> jurisdiction over any "qualified settlement funds," that are established
> under the Settlement Agreement as defined under § 1.468B-1 of the

Treasury Regulations promulgated under Sections 461 (h) and 468B of the Internal Revenue Code of 1986, as amended.

The exclusive jurisdiction retained by the Court is essential to the successful implementation of the Settlement Agreement.  It ensures that all disputes about how the Settlement Agreement is to be implemented, how it is being administered, how it is to be read and interpreted, and how it is to be enforced, will be heard and determined by the Court most familiar with the origins, terms, and purposes of the Settlement Agreement and the many processes required to implement it, and that has a fiduciary duty to the entire Settlement Class to implement the Settlement Agreement correctly and fairly.  The channeling of all such disputes and proceedings to this Court promotes uniformity and consistency of rulings and efficiency in their resolution, by avoiding the risks that courts in other jurisdictions might interpret or enforce the terms of the Settlement Agreement in different and conflicting ways, causing the Special Masters and administrators to face rules that vary from state to state or court to court.  Centralizing issues in this Court prevents such disruption of the Settlement Program and the diversion of the time and resources of the Claims Administrator and the Court's appointees that would be required to respond to proceedings against them across the country.

The Court of Appeals for the Third Circuit endorsed this Court's broad retained jurisdiction in its decision in *In Re: National Football League Players' Concussion Injury Litigation*, 923 F.3d 96, 108-09 (3rd Cir. 2019), writing:

> Where parties have entered into a settlement agreement and a district court has dismissed the case, the court retains jurisdiction over issues related to the case only to the extent it has expressly retained jurisdiction or incorporated the settlement agreement into its dismissal order. Shaffer v. GTE N., Inc., 284 F.3d 500, 503 (3d Cir. 2002). Here, the District Court broadly retained jurisdiction over administration of the NFL class settlement and the class action parties. The Court expressly incorporated the settlement agreement into the order approving the settlement, including the jurisdiction retention

11

provision. . . . The District Court also included a second jurisdiction retention provision in the final order:

> The Court retains continuing and exclusive jurisdiction over this action including jurisdiction over the Parties and their counsel, all Settlement Class Members, the Special Master, BAP Administrator, Claims Administrator, Lien Resolution Administrator, Appeals Advisory Panel, Appeals Advisory Panel Consultants, and Trustee. In accordance with the terms of the Settlement Agreement, the Court retains continuing and exclusive jurisdiction to interpret, implement, administer and enforce the Settlement Agreement, and to implement and complete the claims administration and distribution process. The Court also retains continuing jurisdiction over any "qualified settlement funds," that are established under the Settlement Agreement ….

RD App. 285. As a result, the District Court retained broad jurisdiction to administer the settlement and resolve issues relating to it.

923 F.3d at 108.  The court of appeals also explained how this Court's power under the All Writs

Act, 28 U.S.C. § 1651, and its role as a fiduciary to the Settlement Class, extend the Court's

authority to act to enforce the Settlement Agreement and its own orders relating to it:

> Although the District Court's retention of jurisdiction applied only to the parties and other related entities expressly set out in the retention provision—and there can be no dispute that the settlement agreement was not binding on nonparties—the Court also had authority to enforce its orders under the All Writs Act, 28 U.S.C. § 1651, as well as authority to protect the class as a fiduciary under Federal Rule of Civil Procedure 23. Neither of these sources of authority independently create jurisdiction, *see* Clinton v. Goldsmith, 526 U.S. 529, 534–35, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999); Fed. R. Civ. P. 82, but they both allow a court to exercise some degree of control over third parties in specific circumstances. See In re Grand Jury Proceedings , 654 F.2d 268, 277 & n.14 (3d Cir. 1981) (The All Writs Act "extends to all persons who are in a position to frustrate the implementation of a court order or the proper administration of justice." (internal quotation marks omitted)); Communications Among Parties, Counsel, and Class Members, Ann. Manual Complex Lit. § 21.33 (4th ed.) ("The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class.").

> Specifically, under the All Writs Act, action is authorized to the extent it is "necessary or appropriate" to enforce a Court's prior orders. See 28 U.S.C. § 1651; see also United States v. N.Y. Tel. Co., 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the

frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."). Or, as this Court has explained it, there is authority under the Act to issue an injunction where such relief is "necessary, or perhaps merely helpful." Pittsburgh-Des Moines Steel Co. v. United Steelworkers of Am., AFL-CIO , 633 F.2d 302, 307 (3d Cir. 1980). This Court has similarly clarified that any remedy under Rule 23(d) "should be restricted to the minimum necessary to correct the effects of improper conduct under Rule 23." In re Cmty. Bank of N. Va. , 418 F.3d 277, 310 (3d Cir. 2005) ; see also Coles v. Marsh , 560 F.2d 186, 189 (3d Cir. 1977) ("[T]he district court must find that the showing provides a satisfactory basis for relief and that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties.").

Pursuant to the settlement agreement and the District Court order approving and adopting the agreement, the District Court retained the authority to enforce the terms of, and administer, the settlement.

*Id*. at 108-109.

E.  **The Collins & Truett Complaint Falls Squarely Within This Court's Retained Exclusive Jurisdiction.**

The Collins & Truett Complaint attacks the conduct of an Audit proceeding under Section 10.3 of the Settlement Agreement and the Audit Rules approved by the Court's Special Masters.  It asks the Florida court to enjoin the Claims Administrator and Special Masters from "access to or use of emails or email server and disclosure of the source of this breach." (page 11.)  Discovery and trial over this Complaint would inject the Florida court in the Settlement Agreement's Audit process and frustrate the administration and implementation of the Settlement Agreement.

The voluminous discovery requests that Mr. Collins sent along with his Complaint show how intrusive, time-consuming, and burdensome dealing with his discovery outside the rules and procedures of this Court and the Settlement Agreement would be.  Moreover, they violate Rule 23 of the Audit Rules adopted by the Special Masters, which provides:

**Rule 23. No Discovery.** No requests for production, interrogatories, requests for admission, depositions or other discovery is allowed by or on behalf of any Party to the Audit Proceeding.

Sending his requests for production, interrogatories, and requests for admission to us was a

deliberate attempt to side-step Audit Rule 23.

F. **How and When Complaints About Administration Are Supposed to be Raised to this Court.**

If Richard Collins and Collins & Truett do not wish to provide information to us in our

Audit investigation, would like to shield any of their emails or information from scrutiny, or

would like to adjudicate whether what they wish to conceal is indeed protected by an attorney-

client privilege or the work product doctrine, they have ample opportunity to be heard on those

arguments under the Audit Rules, including the possible review by this Court under Audit

Rule 33 of any conclusions of law made by the Special Masters.  This Court has ruled that

Settlement Class Members and their lawyers must first exhaust their administrative remedies

under the Settlement Agreement and related Rules before filing motions with the Court

seeking to bypass those remedies.  *See, e.g.*, the Order denying a Motion to Determine Proper

Administration of Claims Under the Settlement Agreement entered on November 2, 2017

(Document 8882) ("Movants must proceed through the Claims Administration process, and if

the claims are denied, movants must follow the proper appeals process. Movants' attempt to

circumvent those processes by directly petitioning the Court is improper.").  Richard Collins

and Collins & Truett should be required to follow those rules, just as all Settlement Class

Members and their lawyers are required to do.

G. **Efforts to Obtain Compliance by Richard Collins and Collins & Truett**

On June 23, 2021, Roma Petkauskas at BrownGreer emailed Richard Collins asking

to speak with him about his Complaint filed in Florida and request his cooperation in

addressing his complaints in this Court as the proper forum.  Mr Collins has not responded.

(Brown Decl. ¶ 20 and Ex. 2.)

In an additional effort to avoid needless proceedings before this Court, Orran Brown

emailed Richard Collins, Neil Epstein, and Sharon Delaney a letter (Brown Decl. Ex. 3) on

June 25, 2021, explaining that the filing in Florida failed to honor this Court's exclusive

jurisdiction and violated the Final Order and Judgment of this Court, and asking Mr. Collins

to call so we could meet and confer on withdrawing his suit and addressing his complaints

properly. (Brown Decl. ¶ 21.)  That same day, Sharon Delaney emailed Orran Brown saying

that neither she nor her company, Ohana Management Group, "have anything to do with this

injunction lawsuit."  (Brown Decl. ¶ 22 and Ex. 4.)

Richard Collins has not responded to the June 25 letter.  Instead, his paralegal, Neil

Epstein emailed on June 29, 2021 (Brown Decl. Ex. 5), saying "In discussions with

Mr. Collins, we are certainly not going to rescind our Complaint for Injunctive Relief . . .."

(Brown Decl. ¶ 23.)

### H.  An Order to Show Cause is Needed Here to Enforce the Court's Order.

The suit filed by Richard Collins in Florida state court to try to stop an Audit

investigation of Collins & Truett, underway to implement the Audit provisions of Section 10.3

of the Settlement Agreement, clearly is within this Court's exclusive jurisdiction over matters

relating to the implementation of the Settlement Agreement, as the Court ordered in

Paragraph 16 of its Final Order and Judgment approving the Settlement Agreement.  We have

been unable to secure voluntary cooperation with that Order by Richard Collins, his paralegal,

Neil Epstein, or Collins & Truett.

This Court may use its power of contempt to secure compliance with its orders, as the

Court of Appeals confirmed in *In re the Honorable Leon A. Kendall*, 712 F.3d 814 (3rd Cir.

2013):

> As Alexander Hamilton famously explained, courts have "no influence over either the
> sword or the purse." The Federalist No. 78 (Alexander Hamilton). They have "neither
> FORCE nor WILL but merely judgment." Id. Except for the persuasiveness of their
> decisions, courts can compel obedience to their orders only through their inherent power
> of contempt. Int'l Union of United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 831,
> 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (describing the "inherent contempt authority" as
> a power "necessary to the exercise of all other[ ]" judicial powers (quoting *United States
> v. Hudson*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812))).

712 F.3d at 816.  Federal district courts have the "inherent power to enforce compliance with

their lawful orders through civil contempt."  *See Spallone v. United States*, 493 U.S. 265, 276

(1990); *Shillitani v. United States*, 384 U.S. 364, 370 (1966).  A person is liable for civil

contempt where clear and convincing evidence establishes that (1) a valid order of the court

existed; (2) the person had knowledge of the order; and (3) the person disobeyed the order.  *See*

*Marshak v. Treadwell*, 595 F.3d 478 (3rd Cir. 2009); *John T. v. Del. Cty. Intermediate Unit*, 318

F.3d 545, 552 (3d Cir. 2003).  Willfulness is not a necessary element of civil contempt and

evidence of good faith bar a finding of contempt.  *See Robin Woods Inc. v. Woods*, 28 F.3d 396,

399 (3rd Cir. 1994).  Civil contempt sanctions have two purposes:  (1) "to coerce the defendant

into compliance with the court's order," and (2) "to compensate for losses sustained by the

disobedience."  *Id.* at 400.  Sanctions may include a coercive daily fine, a compensatory fine,

coercive incarceration, or a combination of these.  *See Int'l Union, United Mine Workers v.*

*Bagwell*, 512 U.S. 821, 827-29 (1994).

## III.    CONCLUSION

16

The Court's Final Order and Judgment approving the Settlement Agreement was a valid Order.  Richard Collins has knowledge of that Order and he has disobeyed it.  His attempt to have a Florida court determine how an Audit investigation may proceed and to do extensive discovery against the Claims Administrator and others interfere with the implementation of the Settlement Agreement, violate the Audit Rules, and dishonor this Court's sole jurisdiction over that implementation.  Richard Collins should be directed to appear and show cause why he should not be held in civil contempt of Paragraph 16 of the Final Order and Judgment.  If found to be in contempt, BrownGreer will ask that Richard Collins and Collins & Truett be required to compensate it for the time spent attempting to obtain his compliance with the Court's Order.  Further, to preserve the status quo and avoid unnecessary effort and expense, Richard Collins should be directed to stay the proceedings in his Florida suit during the pendency of this show cause matter.

Respectfully submitted,

**BROWNGREER, PLC,**
Claims Administrator

By:   /s/ Orran L. Brown
      Orran L. Brown
      Virginia State Bar No.:  25832
      BrownGreer PLC
      250 Rocketts Way
      Richmond, Virginia 23231
      Telephone: (804) 521-7200
      Facsimile: (804) 521-7299
      Email:  obrown@browngreer.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Memorandum in Support of

Motion for Order to Show Cause was served on all counsel of record through the Court's ECF

system and by electronic mail, on this 6th day of July, 2021 upon the following:

> Richard B. Collins, Esquire
> Collins & Truett Attorneys, P.A.
> 113 South Monroe Street
> Tallahassee, Florida  32301

> _____/s/ Orran L. Brown_____
> Orran L. Brown