UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>    Plaintiffs,<br><br>    v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>    Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**RESPONSE OF CLASS COUNSEL TO THRIVEST'S MOTION TO AMEND RULES GOVERNING PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS**

Thrivest Specialty Funding LLC (n/k/a Balanced Bridge Funding LLC) ("Thrivest") seeks amendment to the Rules Governing Payment of Claims Involving Third-Party Funders ("Rules") approved by the Special Masters on March 19, 2020 (ECF No. 11422) ("Motion"). These Rules were the "streamlined and concise" version of the earlier Rules Governing Assignment of Claims called for by the Court (ECF No. 10858) and comport with all relevant judicial decisions to date, including the decisions of this Court and the Third Circuit.

For the reasons that follow, the Court should deny the Motion. The amendments requested by Thrivest would walk back protections afforded to Retired NFL Football Players ("Players") from prohibited assignments, *i.e.,* requiring the payment of any affected Monetary Award directly to them when a third-party funder has staked a claim to part of a Player's Award.

## BACKGROUND

Acting as the fiduciary to the Settlement Class, many of whom are by definition cognitively impaired Players, the Court entered its December 8, 2017 Order ("Assignment Order") (ECF No. 9517) to protect the Players from usurious financing agreements that ran afoul of the Settlement Agreement's unambiguous prohibitions of the assignment of claims. *See* Settlement Agreement Section 30.1.[1] In the process that the Claims Administrator established to implement the Assignment Order, Settlement Class Members provided any funding agreements they entered into with third-party funders to the Claims Administrator, who determined, in consultation with the Special Masters, whether the funding agreement was a prohibited assignment. *See* Declaration of Christopher A. Seeger, dated July 19, 2021 ("Seeger Decl."), ¶3. In the case of a prohibited

---

[1] Section 30.1 of the Settlement Agreement provides:

<u>No Assignment of Claims</u>. Neither the Settlement Class nor any Class or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint. Any such assignment, or attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action.

ECF No. 6481-1 at 96.

assignment, the Claims Administrator would issue a notice to the Player, advising him of the determination and his rights.[2]  *See id.*

A striking fact arising from the Claims Administrator's review of funding agreements (there were many, most of which were prohibited assignments) is that these Players were typically represented by individual counsel who either had failed in their basic diligence to review the Settlement Agreement (including the prohibition on assignments under Section 30.1) for their client or were themselves complicit in the purchase of assignments of their clients' claims.[3]  *See* Seeger Decl., ¶4.  In either event, such counsel would not seek to void prohibited funding agreement if the funder pursued collection efforts in arbitration.

Accordingly, and subsequent to the Assignment Order, the Court directed "that the Claims Administrator pay directly to the Settlement Class Member any and all Monetary Awards in cases where there has been found an improper assignment of any right or claim pursuant to Section 30.1 of the Settlement Agreement."  ECF No. 9749.  Of course, this directive, which was incorporated in the then-titled Rules Governing Assignment of Claims,[4] assumed that the nature of the funding agreements would be made within the Settlement Program (as contemplated by the Assignment Order) and payment made directly to the Settlement Class Member only when a funding agreement was determined to be a prohibited assignment (and the Resolution Protocol was not agreed to).

---

[2]  Later, a Resolution Protocol was established, whereby willing funders and Settlement Class Members could resolve any claims for payment of disputed funding agreements, with an appropriate payment being made directly to the funder from the Monetary Award.  *See id.*

[3] At least one attorney representing Players undertook a scheme to push their clients into funding agreements (which were later determined to be prohibited assignments) and then use the promised proceeds from these funding agreements to establish a retirement investment fund for some of its other clients – which scheme has since collapsed along with the life savings of many Players.  *See, e.g.,* ECF No. 9750, 11340, 11344.

[4]  The former Rules Governing Assignment of Claims were amended on May 13, 2019, after the Third Circuit's April 26, 2019 decision regarding the Assignments Order (*infra*).

Thrivest, among other third-party lenders whose funding agreements were determined to have been assignments, appealed the Assignment Order (and related decisions), which the Third Circuit largely upheld on April 26, 2019. *In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96, 105-10 (3d Cir. 2019). The Third Circuit "commend[ed] [the Court for ... very able handling throughout this extraordinarily complicated class action and settlement, and ... appreciate[ed] [its] steadfast commitment to protecting class members' rights." *Id.* at 100. The Court of Appeals affirmed the Court's "authority to void prohibited assignments," but found that the Court had gone "too far in voiding the cash advance agreements in their entirety." *Id.* The Third Circuit "in no way suggest[ed] that an[y] individual agreement is enforceable," *id*. at 113, and "presume[d] that the full array of standard contract defenses will also apply in any subsequent litigation regarding these agreements. ... [S]ome of the class members are cognitively impaired, and it is possible that some of them lacked the capacity to contract at the time they entered into the agreements," *id*. at 112. The Third Circuit expressly reserved finding that any particular funding instrument was an assignment, and directed that determination of enforceability be made "outside of the NFL claims administration context." *Id.*

Subsequently, Thrivest petitioned the Third Circuit for mandamus relief, seeking to have this Court directed to amend the Rules that were still titled Rules Governing Assignments. Thrivest contended that the Rules were at variance with the Third Circuit's decision, and were causing Thrivest difficulty in its collection efforts. Petition at 2-4, 11, *In re Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. filed Sept. 9, 2019) (copy filed by Thrivest in this Court at ECF No. 10843-1). In particular, Thrivest challenged the Claims Administrator's continued review of funding agreements entered into by Players, along with the subsequent notice that the Claims

4

Administrator provided to these Players about the possible nature of these funding agreements and their rights under Section 30.1 prohibiting assignments. *Id.* at 5-6.

"In light of the concern raised in [the] mandamus petition," the Court issued a Notice "to clarify the legal status of third-party funder agreements." ECF No. 10858 at 1. The Court directed "the Claims Administrator to review its guidance and rules regarding third-party funder agreements and propose a streamlined and concise version that is more user-friendly." *Id.* at 3. Serving as Respondent on behalf of the Court, Class Counsel advised the Third Circuit of the Court's Notice and pointed out that the Rules were fully compliant with the Third Circuit's April 26, 2019 decision. In particular, Class Counsel explained that final determination of the enforceability of funding agreements, including under Section 30.1 of the Settlement Agreement, was left to be made outside of the Settlement Program, and by arbitrators hearing any collection action by third-party funders, not the Claims Administrator or the Court.[5] *See* Seeger Decl., Exhibit A at 6-7; *see also id.*, Exhibit B at 2-3.[6] On October 31, 2019, the Third Circuit denied Thrivest's mandamus petition without prejudice.

Under the new "streamlined and concise" Rules which issued on March 19, 2020 pursuant to the Court's Notice, absolutely no review is made of funding agreements by the Claims Administrator, and Players no longer receive the resulting notice of the rights they might enjoy under Section 30.1 of the Settlement Agreement. *See* Seeger Decl., ¶ 5. Players, however, are still offered some remaining protections under these Rules. Because there is no initial determination

---

[5] Class Counsel also pointed out that the Court has been mindful of and actively protected the rights of funders when they are successful in arbitration to enforce a funding agreement, and "has not sanctioned [any] class members' resistance to the decisions of arbitrators." Seeger Decl. Exhibit A at 9.

[6] Copies of the responses to Thrivest's mandamus petition are annexed hereto for the Court's convenience in the Addendum.

made as to the nature of any particular funding agreement, whenever a Player declares a funding agreement of any kind (and the Resolution Protocol is not pursued), payment is made directly to the Player. *See id.*, ¶ 6. The Rules make clear, however, in two places boldly and with capital letters, that such payment in no way reflects the discharge or satisfaction of any obligations a Player may have under their funding agreement. *See id.; see also* Rule 1 and Title III preamble.

Evidently satisfied with the resulting Rules that were promulgated (with approval of the Special Masters) over a year ago, Thrivest mounted no further challenge to the third-party funding in the Settlement Program, including the Rules. Now, Thrivest has encountered difficulty collecting from two Players and seeks to upend the modest protections afforded to every Player who has entered into a funding agreement, and wants the Court to require payment to individual counsel rather than directly to the Player when there is a funding agreement, even if the advance may be a prohibited assignment.

## ARGUMENT

When any question has arisen in this Settlement Program about prohibited funding agreements, the Court's primary concern has been – and should remain – the welfare of the Players, inasmuch as those that have been issued Monetary Awards presumably have some form of severe cognitive impairment. Thirvest has consistently sought to "deregulate" its business operations with Settlement Class Members and curtail the protections the Court has given Players from prohibited assignments. The amendments to the Rules requested by Thrivest thwart the remaining protections provided the Players and would effectively leave them where they were before the Assignment Order – with little guidance and potentially at the mercy of the malfeasance or misfeasance of individual counsel.
6

But there is no basis in law (or Thrivest's agreements) for Thrivest's latest attack on the decisions of the Court and the Rules approved by the Special Masters regulating third-party funding agreements. Thrivest finds no aspect of the decision of the Third Circuit to support it, and cites no support in the general legal landscape, not even in its own funding agreements. Rather, left now to lobby the Court for further deregulation, Thrivest argues only that it has had difficulty collecting from two of the Players with whom it entered into funding agreements.  The Court, though, has supported those efforts, confirming arbitration awards or, where warranted, entering contempt orders.  *E.g.*, *Thrivest Specialty Funding v. Wright*, No. 2:18-cv-04764 (E.D. Pa.  Jan. 2, 2020) (ECF No. 75) (Order confirming arbitrator's award, including attorneys' fees and expenses, and awarding post-judgment interest); *Thrivest Specialty Funding v. White*, No. 2:18-cv-01877 (E.D. Pa.  Oct.17, 2019) (ECF No. 44) (entering contempt order after defendant Player failed to comply with escrow order confirming arbitrator's interim award).

The Court is presumably aware of the challenges that Thrivest or other lenders may face from some recalcitrant Players.  Tellingly, Thrivest does not allege that the Court has hindered its efforts to pursue those very few Players who failed to honor their borrowing agreements.  At the same time, though, the Court is also aware that payment to a Player's individual counsel when there is a potentially prohibited assignment in play (along with substantial profits to be made by funders from usurious interest rates masked as assignments) may likely to lead to catastrophic financial consequences.

In the thicket of misrepresentations, predatory practices, usurious lending rates, and the exploitation of weakness that has marked the practices of some third-party lenders, allowing the Player directly to safeguard his Monetary Award when the funding agreement could be a prohibited assignment is necessary and, as it stands now, the last protection that Players have

7

within the Settlement Program's framework. The Court should not relax the Special Masters' Rules simply because lenders may, on occasion, have to expend some effort to pursue repayment from Player borrowers.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Dated:  July 19, 2021 	Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  (212) 584-0700
cseeger@seegerweiss.com

*CLASS COUNSEL*