# No. 19-3149

# United States Court of Appeals
# For the Third Circuit

IN RE THRIVEST SPECIALTY FUNDING LLC

(Related to *In re National Football League Players' Concussion Injury Litigation,*
Eastern District of Pennsylvania, No. 2:12-md-02323-AB)

### CLASS COUNSEL'S ANSWER TO PETITIONER
### THRIVEST SPECIALTY FUNDING LLC'S
### PETITION FOR WRIT OF MANDAMUS

Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road
6th Floor
Ridgefield Park, NJ
07660
(973) 639-9100

Scott Alan George
**SEEGER WEISS LLP**
1515 Market Street
Suite 1380
Philadelphia, PA 19102
(215) 564-2300

Diogenes P. Kekatos
**SEEGER WEISS LLP**
77 Water Street
8th Floor
New York, NY  10005
(212) 584-0700

*Class Counsel*

Samuel Issacharoff
40 Washington Square South, 411J
New York, NY  10012
Tel: (212) 998-6580
si13@nyu.edu

*Special Counsel for the Plaintiff Settlement Class*

Case 2:12-md-02323-AB    Document 11440-2    Filed 07/19/21    Page 2 of 67

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................5

THE COURT SHOULD DENY THRIVEST'S PETITION FOR WRIT OF
MANDAMUS.......................................................................................................5

A.  Applicable Standards.....................................................................................5

B.  Thrivest Is Not Entitled to Mandamus Relief ................................................6

    a.  The District Court Acted Within Its Discretion, and Fully and Faithfully
    Followed This Court's Mandate ..................................................................6

    b.  Petitioner Should Have Filed a Motion with the District Court ..................7

    c.  Thrivest Has Not Established Irreparable Injury .........................................8

    d.  Thrivest Has No Right to a Writ of Mandamus .........................................10

CONCLUSION...................................................................................................11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arthur Young & Co. v. U. S. Dist. Court*,
   549 F.2d 686 (9th Cir. 1977) ...............................................................10

*Borntrager v. Stevas*,
   772 F.2d 419 (8th Cir. 1985) ...................................................................8

*Commc'n Workers of Am., AFL-CIO v. AT & T*,
   932 F.2d 199 (3d Cir. 1991) .....................................................................9

*First Jersey Sec., Inc. v. Bergen*,
   605 F.2d 690 (3d Cir. 1979) .....................................................................7

*FTC v. Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980).................................................................................9

*In re Chambers Dev. Co.*,
   148 F.3d 214 (3d Cir. 1998) ...............................................................5, 6

*In re Flood*,
   500 F. App'x 105 (3d Cir. 2012) ..............................................................8

*In re Machne Israel, Inc.*,
   48 F. App'x 859 (3d Cir. 2002) ................................................................8

*In re McGraw-Hill Global Educ. Holdings, LLC*,
   909 F.3d 48 (3d Cir. 2018) .......................................................... 5, 6, 7

*In re Nat'l Football League Players' Concussion Injury Litig.*,
   923 F.3d 96 (3d Cir. 2019) .................................................... 1, 3, 8, 9

*In re Roberts*,
   178 F.3d 181 (3d Cir. 1999) .....................................................................5

*In re United States*,
884 F.3d 830 (9th Cir. 2018) ...................................................................8

*Mallard v. U.S. Dist. Ct. for the So. Dist. of Iowa*,
490 U.S. 296 (1989)................................................................................5

*Mussina v. Cavazos*,
61 U.S. 280 (1857)..................................................................................8

*Whitehouse v. Illinois Cent. R.R. Co.*,
349 U.S. 366 (1955)..............................................................................10

*Will v. Calvert Fire Ins. Co.*,
437 U.S. 655 (1978)..............................................................................11

*Will v. United States*,
389 U.S. 90 (1967)..................................................................................1

# INTRODUCTION

Mandamus is "among the most potent weapons in the judicial arsenal." *Will v. United States*, 389 U.S. 90, 107 (1967). Through its petition for writ of mandamus ("Petition"), Thrivest Specialty Funding LLC ("Thrivest" or "Petitioner") seeks to have this Court review the day-to-day administration of the settlement in the *National Football League Players' Concussion Injury Litigation* ("NFL Settlement"). As the Court recently made clear in addressing purported assignments of Monetary Awards under the NFL Settlement, "the District Court retained broad authority to administer the settlement," including the authority to declare "void, valid and of no force and effect" any prohibited assignment provisions. *In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96, 109, 111 (3d Cir. 2019).

As to the ultimate resolution of various claims by third-party lenders against individual class members, the Court stated that "[w]e express no opinion as to the ultimate enforceability of any of the cash advance agreements." *Id.* at 112. Further, the Court appreciated that any distinction between "true" assignments (where the funder "step[ped] into the shoes of the payer and seek[s] funds directly from the settlement fund") and a "false" one (where no legal claim is asserted directly from the settlement fund) is ultimately irrelevant; the outcome "is the same: the Special

Master will not enforce *any* purported assignment." *Id.* at 110 n.13 (emphasis added).

Any efforts by a funder to enforce a funding agreement (with either a true or false assignment) would be asserted as a matter of individual contract and made before the proper arbitral or other forum and subject to the full range of defenses, including "whether any individual agreement contains a true assignment and whether there remain any enforceable rights . . . after any true assignment is voided, . . . [as well as] lack[ ] [of] capacity to contract, . . . . issues of unconscionability, fraud or usury . . . ." *Id.* at 112.

The district court has faithfully and fully followed the mandate of the Court from that appeal. In a recent Notice, on September 27, 2019, "in light of the concern expressed in [the instant] mandamus petition," the district court summarized this Court's mandate, and concluded that the "import of the Third Circuit Decision is clear: the Court has the authority to prohibit the Claims Administrator from paying third-party funders directly from the Settlement Fund, but the overall enforceability of any third-party funder agreements must be litigated or arbitrated outside of the claims administration context. The Court and Claims Administrator have followed the Third Circuit's holding."[1] Ex. A (ECF No. 10858 at 2, ¶ 4 (Sep. 27, 2019)).

---

[1] In this Notice, the district court also directed the Claims Administrator to undertake review of "its guidance and rules regarding third-party funder

The district court's pronouncement is consistent with this Court's insistence on drawing a line between claims against funds that are still part of the class resolution process and funds that have been paid to individual class members. While the funds are still subject to being awarded by the court, no third party may claim an assignment that would interfere with payment being made to a class member. Once the money is paid to a class member, any lender or other creditor may make any claims that it believes may be legally recognized in any forum of competent jurisdiction.

The most significant example of the district court's fulfillment of the mandate of the Court is the arbitration between Thrivest and the one Retired NFL Football Player whose funding agreement Thrivest originally brought to this Court. *In re Nat'l Football Players' Concussion Injury Litig.,* 923 F.3d at 105 n.6. On remand, Thrivest began arbitration of its funding agreement with the Retired NFL Player. Having obtained an Interim Arbitration Award directing that the Retired NFL Football Player escrow money pending a final decision and Thrivest filed an Emergency Motion to Confirm the Interim Arbitration Award. Ex. B (2:18-cv-

---

agreements and propose a streamlined and concise version that is more user-friendly" which will "avoid any possibility of confusion." Ex. A, ¶ 5. In its Answer to Petitioner Thrivest Specialty Funding LLC's Petition for Writ of Mandamus, the Claims Administrator explains actions underway to streamline and clarify the guidance and rules, and provides a more complete explanation about the reason for and propriety of the current guidance and rules singled out by Thrivest in its Petition.

01877-AB, ECF No. 21 (June 14, 2019)). The district court granted Thrivest's Emergency Motion to Confirm an Interim Arbitration Award, denied the Retired NFL Player's related Motion to Vacate the Interim Arbitration Award, and held a Civil Contempt Hearing on October 10, 2019, on the matter of the Retired NFL Football Player's failure to comply with the Interim Arbitration Award. Exs. C (2:18-cv-01877-AB, ECF No. 25 (July 1, 2019)) and D (2:18-cv-01877-AB, ECF No. 38 (Sept. 24, 2019)).

Simply stated, this Court's mandate has been fulfilled.

There is no unfinished business related to the Court's mandate before the district court. On July 12, 2019, however, Thrivest submitted a letter to the district court, requesting a conference to discuss generalized concerns that it had with some of the notices and procedures used by the Claims Administrator as part of its efforts to ensure that no prohibited assignment agreements or provisions were acknowledged by it. Neither Thrivest's request nor its reply to the Claim's Administrator's response to the request for a conference (ECF Nos. 10734, 10806) set forth the list of demands that it now makes to the Court in the Petition. On August 15, 2019, the district court denied Thrivest's request for a conference. ECF No. 10807. Thrivest sought no further relief from the district court, and never filed a formal motion seeking the relief it now demands by way of mandamus.

Thrivest's Petition should accordingly be denied.

4

# ARGUMENT

## THE COURT SHOULD DENY THRIVEST'S
## PETITION FOR WRIT OF MANDAMUS

Thrivest cannot satisfy the heavy standards to justify the extraordinary remedy of writ of mandamus.

### A.    Applicable Standards

So as not to become an alternative route to interlocutory appeal, mandamus jurisdiction is "exceedingly narrow" and allows for far "less opportunity to correct district court error . . . and less opportunity to provide guidance for future cases." *In re Chambers Dev. Co.*, 148 F.3d 214, 226-27 (3d Cir. 1998).  As the petitioner, Thrivest must establish clear entitlement to a writ of mandamus.  *Mallard v. U.S. Dist. Ct. for the So. Dist. of Iowa*, 490 U.S. 296, 309 (1989).  "Even reversible error by itself is not enough to obtain mandamus."  *In re McGraw-Hill Global Educ. Holdings, LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (Smith, J.).  Rather, mandamus is an "extraordinary remedy" for which the petitioner must demonstrate (1) a "clear abuse of discretion or usurpation of the judicial power," (2) lack of adequate alternative means to obtain the relief sought, and (3) a "clear and indisputable" right for the issuance of a writ.  *In re Roberts*, 178 F.3d 181, 183 (3d Cir. 1999).  In addition to these factors, this Court considers the likelihood of irreparable injury.  *McGraw-Hill*, 909 F.3d at 57.  Even when presented with those rare circumstances that may

rise to the level necessary for the grant of mandamus, the Court retains the discretion to deny the writ. *Id.*

## B.    Thrivest Is Not Entitled to Mandamus Relief

Thrivest cannot establish its entitlement to mandamus relief under any of the criteria that this Court has articulated.

### a.  The District Court Acted Within Its Discretion, and Fully and Faithfully Followed This Court's Mandate

While it is "axiomatic" that a district court must proceed in accordance with a mandate, the district court remains "free to make any order or direction in further progress of the case, not inconsistent with [the Court's] decision." *In re Chambers Dev. Co.*, 148 F.3d at 225. Although Thrivest may not agree with the minutiae of the implementation of rules and procedures related to potential assignments, it provides no basis to grant its Petition. A district court must be free to proceed "courageously in exercising [its] discretion" after remand. *In re McGraw-Hill*, 909 F.3d at 57 (citations and quotations omitted).

Notably, the district court has *not* held that any assignment agreements or any assignment provisions are unenforceable since this Court's mandate issued. On the contrary, the district court has left such determinations to arbitrators (when an assignment includes an arbitral provision) and acted to enforce arbitration awards that may issue, even when the assignment agreements had been determined. All that the district court has done is prohibit the Claims Administrator from making any

6

payments directly to funders, and any such notices, rules, or determinations made in the NFL Settlement are only for the purposes of the NFL Settlement. Indeed, the district court held a contempt hearing in connection with a class member's failure to escrow funds in accordance with an Arbitrator's Interim Arbitration Award. Ex. D.

Ignoring the full extent of the district court's compliance with the mandate, Thrivest argues that certain notices and rules should be revised, a matter that was neither before this Court earlier nor mandated by its decision. Even if the Court's mandate were construed as expansively as Thrivest's Petition requires, such administrative matters are not tantamount to an abuse of discretion necessary for mandamus. "More than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion" is necessary. *In re McGraw-Hill*, 909 F.3d at 57 (citations and quotation omitted).

### b. Petitioner Should Have Filed a Motion with the District Court

Mandamus may provide a remedy only if "there are no other adequate means of relief." *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 700 (3d Cir. 1979) (citing cases). Thrivest submitted to the district court, and only by way of a letter, merely a request for a conference to discuss generalized concerns with the handling of possible assignments. The district court declined Thrivest's request. Thrivest is not now seeking mandamus relief that a conference be held. Rather, Thrivest is now seeking specific revisions to certain notices and rules and other corrective action.

7

Thrivest never filed a formal motion seeking the relief that it now demands from this Court.

Having never filed such a motion below with the district court, Thrivest cannot seek mandamus from the Court. *E.g.*, *In re Flood*, 500 F. App'x 105, 109 (3d Cir. 2012) (denying mandamus where petitioner failed to show he had no alternative remedy or other adequate means to obtain relief he desired); *In re Machne Israel, Inc.*, 48 F. App'x 859, 861 (3d Cir. 2002) (same); *see also Mussina v. Cavazos*, 61 U.S. 280, 290 (1857) ("Had the appeal been prayed in open court, and entered upon the record, the judge below might well have refused it") (denying mandamus); *In re United States*, 884 F.3d 830, 835 (9th Cir. 2018) ("Absent any discovery order from the district court, or even any attempt to seek one, however, the defendants have not shown that they have no other means of obtaining relief from burdensome or otherwise improper discovery"); *Borntrager v. Stevas*, 772 F.2d 419, 420 (8th Cir. 1985) (availability of motion to Supreme Court regarding the conduct of its clerk "mandates denial of mandamus relief").

### c. Thrivest Has Not Established Irreparable Injury

The Court expressly mandated that the enforceability of funding agreements was subject to all available defenses, including that such an agreement may be prohibited, at least in part, if it includes an improper assignment. *In re Nat'l Football*

*Players' Concussion Injury Litig.*, 923 F.3d at 112. Thrivest characterizes class members' efforts to raise such a defense as an "irreparable injury."

Putting to one side that class members' raising of defenses cannot be laid at the feet of the district court, which has not sanctioned class members' resistance to the decisions of arbitrators, as Thrivest acknowledges, "arbitrators will ultimately decide those issues [of enforceability], but, either way, both Thrivest and the class members are increasingly at risk as these disputes continue." Petition at 12. The "inherent costs of litigation is not so consequential a harm," however, that justifies mandamus. *Commc'n Workers of Am., AFL-CIO v. AT & T*, 932 F.2d 199, 210 (3d Cir. 1991); *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.") (citation omitted).

This Court made no finding as to any particular agreement before it, and expected that such defenses would play out in the adversarial process, such as through arbitration. As Thrivest proceeds in its arbitration of funding disputes with class members (if there are more than the one that Thrivest discusses), the availability of such a defense will become developed. At this time, Thrivest is unable to identify any clear and definable injury to support its Petition, and speaks only in terms of possibilities and mere likelihoods: the communications that it seeks to challenge "are likely to influence class members and ignore their contractual

9

obligations," the Claims Administrator's "communications are likely creating confusion" and "as such, they are likely to cause irreparable injury." Petition at 11. Currently, the contractual obligations have yet to be determined. Moreover, Thrivest has not even identified a single funding agreement that may be subject to such procedures or notices in the future. Mandamus jurisdiction requires more than mere possibilities of harm. *See Whitehouse v. Illinois Cent. R.R. Co.*, 349 U.S. 366, 373 (1955) (speculative injuries do not warrant resort to mandamus, which is "governed by equitable considerations and is to be granted only in the exercise of sound discretion"); *Arthur Young & Co. v. U. S. Dist. Court*, 549 F.2d 686, 692 (9th Cir. 1977) ("[T]he proponent of the writ must also demonstrate that the harm will, in all likelihood occur, absent the writ.").

### d. Thrivest Has No Right to a Writ of Mandamus

Thrivest does not address the requirement that the right to a writ of mandamus be "clear and irrefutable." The only right that Thrivest can be said to have as a result of the mandate is the right to test the enforceability of its funding agreements before an arbitrator. By its own reports, it is doing that – unimpeded by the district court. Thrivest obtained no right, let alone a "clear and irrefutable" right, that certain procedures and notices be used in the NFL Settlement. Rather, such matters remain within the discretion of the district court and the Claims Administrator in implementing the NFL Settlement. "Where a matter is committed to the discretion

10

of a district court, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665-66 (1978).

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should deny the Petition.

**Dated:** October 11, 2019

Respectfully submitted,

<u>/s/ Christopher A. Seeger</u>

Christopher A. Seeger
(NY 2425304)
(NJ 042631990)
**Seeger Weiss LLP**
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07760
(212) 584-0700
cseeger@seegerweiss.com

Scott Alan George
**Seeger Weiss LLP**
1515 Market Street
Suite 1380
Philadelphia, PA 19102
(215) 564-2300
sgeorge@seegerweiss.
com

Diogenes P. Kekatos
**Seeger Weiss LLP**
77 Water Street
8th Floor
New York, NY 10005
(212) 584-0700
dkekatos@seegerweiss.
com

*Class Counsel*

Samuel Issacharoff
40 Washington Square South
411J
New York, NY 10012
Tel.: (212) 998-6580
Si13@nyu.edu

*Special Counsel for the Plaintiff Settlement Class*

11

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this Answer to Petition for Writ of Mandamus complies with the type-volume limitations prescribed by this Court's September 26, 2019 Order (Doc. 003113355524). This Answer is not more than 15 double-spaced pages.


*/s/ Christopher A. Seeger*
Christopher A. Seeger (NY 2425304;
NJ 042631990)

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Third Circuit Local Rule 28.3(d), I certify that I am a member of the Bar of this Court.

## CERTIFICATE OF VIRUS SCAN

I certify, pursuant to Third Circuit Local Rule 31.1(c), that a virus detection program has been run on this file and that no virus was detected.  The virus detection program utilized was Trend Micro™ OfficeScan™ Agent, version XG.

*/s/ Christopher A. Seeger*
Christopher A. Seeger (NY 2425304; NJ 042631990)

13

# CERTIFICATE OF SERVICE

I certify that on this date, October 11, 2019, I caused the foregoing Answer to Petitioner Thrivest Specialty Funding LLC's Petition for Writ of Mandamus to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Third Circuit using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  October 11, 2019

/s/ Christopher A. Seeger
Christopher A. Seeger (NY 2425304; NJ 042631990)

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **Hon. Anita B. Brody** |

**September 27, 2019**                                        **Anita B. Brody, J.**

### <u>NOTICE</u>

In light of the concern expressed in a recent mandamus petition filed on September 19, 2019,[1] the Court issues the following clarification regarding the legal status of third-party funder agreements:

1.        On December 8, 2017, the Court issued an Explanation and Order ("Assignment Order") providing that under Section 30.1 of the Settlement Agreement, any agreement entered into by a Class Member "that assigned or attempted to assign any monetary claims . . . is void, invalid and of no force and effect."  Assignment Order at 5, ECF No. 9517.

2.        On April 26, 2019, the Third Circuit affirmed the Assignment Order in part and reversed the Assignment Order in part.  *In re Nat'l Football League Players' Concussion Injury*

---

[1] *See* Petition for Writ of Mandamus, *In re: Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. 2019).

*Litig.*, 923 F.3d 96 (3d Cir. 2019). The Third Circuit affirmed that "any true assignments contained within [third-party] cash advance agreements—that is, contractual provisions that allowed the lender to step into the shoes of the player and seek funds directly from the settlement fund—were void *ab initio*." *Id.* at 110. The Third Circuit reversed the Assignment Order to the extent that it "void[ed] the agreements in their entirety." *Id.* at 111.

3. The Third Circuit "express[ed] no opinion as to the ultimate enforceability of any of the cash advance agreements," but held that any such determination must occur "outside of the NFL claims administration context." *Id.* at 112. The Third Circuit "in no way suggest[ed] that an[y] individual agreement is enforceable," *id.* at 113, and "presume[d] that the full array of standard contract defenses will also apply in any subsequent litigation regarding these agreements. . . . [S]ome of the class members are cognitively impaired, and it is possible that some of them lacked the capacity to contract at the time they entered into the agreements," *id.* at 112. Further, "[t]here may also be issues of unconscionability, fraud, or usury based on the high effective interest rates in the agreements." *Id.*

4. The import of the Third Circuit decision is clear: the Court has the authority to prohibit the Claims Administrator from paying third-party funders directly from the Settlement Fund, but the overall enforceability of any third-party funder agreements must be litigated or arbitrated outside of the claims administration context. The Court and Claims Administrator have followed the Third Circuit's holding.

2

5.      To avoid any possibility for confusion, the Court directs the Claims Administrator

to review its guidance and rules regarding third-party funder agreements and propose a

streamlined and concise version that is more user-friendly.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF:  9/27/2019**

Case 2:12-md-02323-AB   Document 11640-2   Filed 07/19/21   Page 23 of 67

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THRIVEST SPECIALTY FUNDING, LLC     :
                                     :
        v.                           :    Civil Action No. 2:18-CV-1877
                                       :
WILLIAM E. WHITE                     :

## THRIVEST'S EMERGENCY MOTION TO CONFIRM ARBITRATION AWARD
### [FILED UNDER SEAL]

Thrivest Specialty Funding, LLC ("Thrivest') respectfully requests that the Court confirm the Emergency Arbitrator's Interim Award of Emergency Relief in <u>Thrivest Specialty Funding, LLC v. White</u>, AAA Case No. 01-18-0001-4765, and enter an Order in the form proposed. In support thereof, Thrivest relies upon and incorporates by reference the accompanying memorandum of law and its Complaint to Compel Arbitration (Dkt. 1).

Respectfully submitted,

<u>/s/ Peter C. Buckley, Esquire</u>
Peter C. Buckley, Esquire
Eric E. Reed, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2000
(215) 299-2150 (facsimile)
*Attorneys for Thrivest Specialty Funding, LLC*

Dated: June 14, 2019

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THRIVEST SPECIALTY FUNDING, LLC     :
                                      :

         v.                             :    Civil Action No. 2:18-CV-1877
                                        :

WILLIAM E. WHITE                    :

**THRIVEST'S MEMORANDUM OF LAW IN SUPPORT OF ITS
EMERGENCY MOTION TO CONFIRM ARBITRATION AWARD
[FILED UNDER SEAL]**

Thrivest Specialty Funding, LLC ("Thrivest") submits this memorandum of law in

support of its emergency request to confirm the Emergency Arbitrator's Interim Award of

Emergency Relief (the "Award") in Thrivest Specialty Funding, LLC v. White, AAA Case No.

01-18-0001-4765 (the "Arbitration").

**I.**     **BACKGROUND AND RELEVANT FACTS**

In December 2016, Thrivest provided Respondent William E. White ("White") with a

$500,000 advance on his potential recovery in the NFL Concussion Litigation. See Agreement

(Dkt. 1-3, Exhibit A). White has refused—and continues to refuse—to honor their Agreement.

To date, despite having the use and enjoyment of Thrivest's advance for more than two and a

half years and receiving a $3.5 million award in the NFL Concussion Litigation triggering his

payment obligations, White has not paid Thrivest anything.

Thrivest commenced this action against White, seeking to compel White to participate in

the Arbitration pursuant to the agreement to arbitrate at Section 6(z) of their Agreement. See

Complaint to Compel Arbitration (Dkt. 1). The Court dismissed the action on August 30, 2018,

citing its May 22, 2018 Explanation and Order in the NFL Concussion Litigation enjoining

Thrivest from proceeding with the Arbitration. (Dkt. 13). After Thrivest appealed, the Third

Circuit vacated the injunction and the order dismissing this action, remanding for further

proceedings. See Thrivest v. White, No. 18-3005, 2019 WL 1868828, *11 (Apr. 26, 2019). On

May 20, 2019, the Third Circuit issued its mandate.

On April 26, 2019, following the Third Circuit's decision, Thrivest notified the American

Arbitration Association that the injunction had been vacated and the Arbitration resumed with

proceedings on Thrivest's application for emergency relief (Dkt. 1-3) under Rule 38 of the AAA

Commercial Rules. Previously, AAA had appointed Hon. Steven I. Platt (Ret.) to serve as the

Emergency Arbitrator and to decide Thrivest's request for injunctive relief—i.e., that White

escrow funds pending resolution of the Arbitration on the merits. See Appointment of

Emergency Arbitrator, Exhibit A. Judge Platt held a scheduling call with the parties on May 8,

2019. Later, on May 15, 2019, White filed an Answering Statement contesting AAA's

jurisdiction—among other things, because Thrivest did not first mediate the dispute. Thereafter,

Judge Platt held a telephonic hearing on Thrivest's application. Although White ignored a notice

to attend and did not participate in the hearing, his attorney Robert Wood, Esquire, participated

and opposed Thrivest's application, arguing that AAA lacked jurisdiction and that Thrivest had

not established circumstances justifying injunctive relief.

On June 4, 2019, Judge Platt issued a Determination and Award (the "Determination")

and an Interim Award of Emergency Relief (the "Award") pursuant to AAA Rule 38, which

authorizes the Emergency Arbitrator to award emergency relief in the case of "immediate and

irreparable loss or damage." See Determination and Award, Exhibits B and C respectively.

Judge Platt flatly rejected White's jurisdictional challenge, describing it as not credible and

"disingenuous." See Determination at 10-13 (Exhibit B). Finding he had jurisdiction to

adjudicate Thrivest's application, Judge Platt noted, "to use the formal notice and meeting

requirements contained within what [White] considers to be a 'False Assignment' with no

binding legal effect in an attempt to defeat the Agreement's arbitration mandate, when it is clear [White] had and continues to have no intention of mediating this dispute, is unpersuasive at best." Id. at 13.

Turning to the merits of the injunction, Judge Platt found that "there is a strong likelihood that [Thrivest] will prevail on the merits of this case and that Thrivest's Agreement with [White] will be enforced pursuant to the terms contained therein." Id. at 17. Further, Judge Platt explained, Thrivest "has demonstrated a real likelihood that the settlement funds distributed to Mr. White are in danger of being dissipated, if not already dissipated, such that [Thrivest] will be unable, if successful on the merits, to collect the money owed it pursuant to the Agreement." Id. Accordingly, Judge Platt issued the Award, directing White to escrow $1,250,000 "into the trust account of his attorney, Robert C. Wood, Esq. ... pending and subject to a Final Award, further order of the arbitrator, or written agreement signed by the parties." See Award (Exhibit C). An injunction directing the escrow of funds only, Judge Platt's Award makes clear that "deposit of the Escrowed Funds as set forth herein shall not alter the parties' rights and obligations under the Agreement". Id.

White did not comply with the Award and, on June 11, 2019, Attorney Wood confirmed that White contests the Award and AAA's authority to issue it. Thrivest brings this emergency motion to confirm the Award and for an order directing White to comply as ordered by the Emergency Arbitrator. Because Thrivest's Complaint to Compel Arbitration (Dkt. 1) is pending and White has filed a Counterclaim (Dkt. 19) contesting AAA's jurisdiction for the same reasons rejected by Judge Platt as "unpersuasive at best," Thrivest respectfully requests that the Court also direct White to arbitrate and to stay these proceedings in favor of the Arbitration.

4

## II.    STANDARD OF REVIEW

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, provides that, "within one year after the award is made, any party to the arbitration may apply to the court so specified for an order confirming the award and thereupon the court must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The Agreement satisfies this requirement because it authorizes Thrivest to "enforce any award rendered pursuant to the arbitration provisions … by moving to compel the award in the appropriate Pennsylvania court. <u>See</u> Agreement at 6(aa) (Dkt. 1-3, Exhibit A).

The standard of review of an arbitration award is very deferential. Authority to vacate an award is limited to those rare instances where there is "absolutely no support at all in the record justifying the arbitrator's determinations." <u>Jeffrey M. Brown Assoc., Inc. v. Allstar Drywall & Acoustics, Inc.</u>, 195 F.Supp.2d 681, 684 (E.D. Pa. 2002). The FAA expressly limits the power of a reviewing court to vacate or modify an arbitration award to the following circumstances:

(1)    where the award was procured by corruption, fraud, or undue means;

(2)    where there was evident partiality or corruption in the arbitrators, or either of them;

(3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a). The Third Circuit also recognizes a fifth ground for vacatur in "exceptional cases" where there is a demonstrable "manifest disregard of the law." <u>Popkave v. John Hankcock Distrib., LLC</u>, 768 F.Supp.2d 785, 789 (E.D. Pa. 2011); <u>see also</u> <u>Southco, Inc. v. Reel Precision Mfg. Corp.</u>, 556 F.Supp.2d 505, 511 (E.D. Pa. 2008) (holding "the Court must affirm

the award unless [it is] completely irrational . . ." which necessitates a showing that the decision "escape[s] the bounds of rationality."). This judicially-created exception must only be applied in the rarest of circumstances where it is readily apparent from the record that the arbitrators willfully ignored applicable law. Id. at 790. The Court can also modify or correct an arbitration award to address clerical errors that do not go to the merits of the award. See 9 U.S.C. §11(a)-(c). None of these exceptions apply and so the Court should confirm the Award.

## III.   ARGUMENT

Judge Platt had authority and jurisdiction to issue the Award and the Court has authority and jurisdiction to confirm the Award. There are no grounds to vacate, modify or correct it. Thrivest respectfully requests that the Court confirm the Award and issue an order in the form proposed.

### A.   The Parties Authorized The Emergency Arbitrator To Issue Injunctive Relief; This Court Lacks Jurisdiction To Consider White's Jurisdictional Challenge.

Thrivest and White specifically agreed that "the arbitrator shall have authority to grant injunctive relief or other forms of equitable relief to either party." See Agreement at 6(aa) (Dkt. 1-3, Exhibit A). There can be no doubt that Judge Platt had authority to issue the Award and to require that White escrow funds pending a decision on the merits.

Likewise, there can be no doubt that Judge Platt had jurisdiction over Thrivest's application for emergency relief under AAA Rule 38 (titled "Emergency Measures of Protection"). White argued that AAA lacked jurisdiction because Thrivest did not first mediate this dispute, but Judge Platt rejected his argument, characterizing it as "disingenuous" considering that White has refused even to recognize the Agreement as binding on him. See Determination at 10-13 (Exhibit B). White's Counterclaim asks the Court to consider the identical "condition precedent" issue; however, the Supreme Court of the United States has made

clear that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (emphasis in original, internal quotations omitted) (noting that application of a condition precedent to arbitrability is such a procedural question that must be decided by the arbitrator); see also John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 556-558 (1964) (making clear that pre-arbitration mediation is a question of procedural arbitrability that must be decided by the arbitrator). Pennsylvania law is in accord. See Interdigital Com., Corp. v. Fed. Ins. Co., 392 F.Supp.2d 707, 716 (E.D. Pa.) (citing Ross Dev. Co. v. Advanced Bldg. Dev., Inc., 803 A.2d 194, 197 (Pa. Super. 2002), and explaining "[u]nder Pennsylvania law, the procedural issue of whether a condition precedent to arbitration has been met is for an arbitrator to decide."). Accordingly, although White may revisit his jurisdictional challenge in the arbitration now that the emergency measures of protection hearing has concluded, he may not do so here. His challenge does not bear on the Court's confirmation of Judge Platt's Award.

Finally, because White's counterclaim and challenge raise issues that must be decided by the arbitrator rather than the Court, the Court should enter an order on Thrivest's Complaint seeking to compel arbitration and stay this action in favor of the Arbitration. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006) ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

**B.      The Court Should Confirm The Award Because It Disposes Of An Independent Claim For Emergency Relief And, Without Immediate Confirmation, The Award Lacks Meaning.**

Judge Platt directed that White escrow funds pending resolution of the parties' dispute on the merits to avoid "ongoing, irreparable harm." See Determination at 19 (Exhibit B). However, "[a]rbitrators have no power to enforce their decisions[;] [o]nly courts have that power." See Recyclers Ins. Group, Ltd. v. Ins. Co. of North America, No. 91-503, 1992 WL 150662, *3 (E.D.

Pa., June 15, 1992) (citing Pacific Reins. Mgt. Corp. v. Ohio Reins. Corp., 935 F.2d 1019, 1023

(9th Cir. 1991)). As a final order authorized by the parties' arbitration agreement, the Award is

enforceable by confirmation here. See Meadows Indem. Co., Ltd. v. Arkwright Mut. Ins. Co.,

No. 88-0600, 1996 WL 557513, *7 (E.D. Pa., Sept. 30, 1996) (confirming arbitrators' injunction

and holding that "an arbitration panel ordering a party to post security before a panel will

consider the merits may rationally derive such an award from a contract [even where it] does not

expressly provide that it may impose such an award."). Indeed, "temporary equitable orders

calculated to preserve assets or performance needed to make a potential final award meaningful

... are final orders that can be reviewed for confirmation and enforcement by district courts

under the FAA." Pacific Reins. Mgt. Corp., 935 F.2d at 1023.

It is settled law that "[t]emporary equitable relief in arbitration may be essential to

preserve assets or enforce performance which, if not preserved or enforced, may render a final

award meaningless." Id. at 1022–23. That is because "if temporary equitable relief is to have

any meaning, the relief must be enforceable at the time it is granted, not after an arbitrator's final

decision on the merits." Id. at 1023 (citing Southern Seas Navigation Ltd. v. Petroleos

Mexicanos, 606 F.Supp. 692, 694 (S.D.N.Y.1985)).

Judge Platt found it likely that Thrivest would prevail on the merits and enforce White's

promises in the Agreement, but also that there was a serious risk that White would become

judgment proof in the interim without relief. The Court should confirm Judge Platt's Award to

preserve the status quo pending the ultimate outcome of the Arbitration.

IV. <u>**CONCLUSION**</u>

For the foregoing reasons, Thrivest respectfully requests that the Court confirm the

Award and enter an Order in the form proposed.

Respectfully submitted,

/s/ Peter C. Buckley, Esquire
Peter C. Buckley, Esquire
Eric E. Reed, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2000
(215) 299-2150 (facsimile)
*Attorneys for Claimant*

Dated: June 14, 2019

# EXHIBIT A

# General Arbitrator Oath Form

## American Arbitration Association

Thrivest Specialty Funding, LLC
Vs.
William E. White

Case# 01-18-0001-4765

### Notice of Appointment for Hon. Steven Platt (Ret.)

### Disclosure Obligations

It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. All disclosures will be brought to the attention of the parties.

### Instructions

You will not be able to serve until this duly executed Notice of Appointment has been completed and submitted. Please review the *Disclosure Guidelines* found under the Neutrals eCenter "Resources" menu and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment.

Should the answer to any of the following questions be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) in the space provided.

1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration?

Answer : NO

2. Have you represented any person against any party to the arbitration?

Answer : NO

3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work?

Answer : NO

4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work?

Answer : NO

5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in

# General Arbitrator Oath Form

the proceeding?

Answer : NO

6. Have you, any member of your family, or any close social or business associate ever served as a neutral in a proceeding in which any of the identified witnesses or named individual parties gave testimony?

Answer : NO

7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case which you are assigned?

Answer : NO

8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case?

Answer : NO

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases?

Answer : NO

10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration?

Answer : NO

11. Have you ever sued or been sued by either party or its representative?

Answer : NO

12. Do you or your spouse own stock in any of the companies involved in this arbitration?

Answer : NO

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators?

Answer : NO

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions?

Answer : NO

15. Are you aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality?

Answer : NO

# General Arbitrator Oath Form

**Arbitrator's Oath**

I attest that I have reviewed my biographical information provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

**Terms of Compensation**

Before proceeding, please indicate that you have reviewed the Notice of Compensation Arrangements for this case.



Once completed, please indicate your acceptance of this appointment as arbitrator by entering your initials in the space provided.

(SIP)

Hon. Steven Platt (Ret.)
20-Apr-18

# EXHIBIT B

**AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration**
**Under AAA Commercial Arbitration Rules and Mediation Procedures**
**Amended and effective October 1, 2013**

THRIVEST SPECIALTY FUNDING, LLC

      Claimant

      Represented by Peter Buckley of Fox Rothschild, LLP

v.

WILLIAM E. WHITE

      Respondent

      Represented by Robert Wood of Wood Law Limited

No: 01-18-0001-4765

R-38 Emergency Measures of Protection Hearing

## DETERMINATION AND AWARD OF EMERGENCY ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration Agreement dated December 8, 2016 entered into by the above-named parties and the Claimant's Demand for Arbitration and Application for Emergency Interim Relief and Respondent's Answering Statement, having been considered and a Hearing having been held via telephonic conference call on May 15, 2019, at which evidence and the arguments of Counsel were heard and viewed, the Emergency Arbitrator makes the following findings.

## I.    STATEMENT AND HISTORY OF CASE

    A.    Prior History

        1.    *Filing*

On April 11, 2018, Claimant Thrivest Specialty Funding, LLC ("Thrivest") filed with the AAA a "Demand for Arbitration and Application for Emergency Relief" ( "Claimant's Demand") for declaratory judgment and breach of contract, seeking *inter*

01-18-0001-4765

1

*alia* emergency interim relief directing Respondent William White ("White") to escrow $750,000[1] from his award into his attorney's trust account pending the Final Arbitrator's Award.

### 2. *Prior Scheduling Conference*

An R-38 Emergency Measures of Protection Scheduling Call was scheduled by this Arbitrator on April 26, 2018. Prior to the call on April 21, 2018, Claimant's Counsel, by email, requested from Respondent in advance of the Hearing, production of certain documents and information relating to Respondent's "distribution" as termed in Thrivest's Agreement as a member of the "Class" in the NFL Concussion Litigation in order to prepare and present its case for "Emergency Relief" at the Emergency Relief Arbitration Hearing. This Arbitrator did not order production of the requested Pre-Hearing Discovery at that time due to the limited subject matter of the scheduled Hearing, i.e., Scheduling, the lack of sufficient time and notice of the Request For Discovery and preliminary issues of whether AAA and this "Emergency Arbitrator" had subject matter jurisdiction.

### 3. *Judge Brody's Order*

Subsequently, on April 25, 2018, counsel for Respondent by email raised a number of issues pertaining to the jurisdiction of AAA over the dispute. In particular, Respondent cited the April 22, 2015 "Final Order and Judgment" of United States District Court Judge for the Eastern District of Pennsylvania, Anita Brody, which provided (in pertinent part) that Judge Brody's jurisdiction was "both continuing and

---

[1] This amount was later amended to $1,250,000 to include interest, attorney's and arbitration fees per Claimant's May 7, 2019, prehearing email communication.

exclusive over all matters pertaining to the Settlement Agreement[2] and its administration". Judge Brody's Order also determined that any assignments of proceeds of the Settlement Agreement were "void, invalid, and of no force and effect".[3]

### 4. *Arbitrator's Denial of Requested Discovery*

Claimant responded to Respondent by email on April 26, 2018, arguing that the Court has no jurisdiction over Thrivest and that once the settlement proceeds were distributed to White, the Court's jurisdiction over the settlement award would end.

During (and after) the April 26, 2018, Scheduling Call, this Arbitrator denied Claimant's requested items of discovery for the reasons stated *supra,* and a hearing on the Request For Emergency Measures of Protection was scheduled for May 4, 2018, before this Emergency Arbitrator.

### 5. *Further Court Action*

However, prior to that hearing, on May 2, 2018, after a telephonic hearing on Co-Lead Class Counsel's Emergency Motion for a Temporary Restraining Order enjoining the instant arbitration, Judge Brody granted the relief requested and enjoined the previously scheduled May 4, 2018, Emergency Arbitration Hearing until further hearing before the U.S. District Court on May 9, 2018, to determine whether a permanent

---

[2] "Settlement Agreement" refers to the NFL Concussion Settlement approved by the Court on April 22, 2015, effective January 7, 2017. The claims submission process opened for Class Members in March 2017.

[3] See also the Court's December 8, 2017 "Explanation and Order" (…"to the extent that any Class Member has entered into an agreement that assigned or attempted to assign any monetary claims, that agreement is void, invalid, and of no force and effect") and February 20, 2018 Order (directing Claims Administrator to pay awards directly to Class Members instead of their attorneys where Claims Administrator has notice of assigned transactions).

injunction would be appropriate[4]. A permanent injunction was issued on May 22, 2018, to which Thrivest timely appealed. In August 2018, Judge Brody dismissed Thrivest's lawsuit against White, citing her May 22, 2018, Order enjoining arbitration. Thrivest appealed.

Oral arguments on various appeals by third party cash advance companies to Judge Brody's Orders were heard by the 3rd Circuit Court of Appeals on January 23, 2019, among them Claimant Thrivest's appeal. Specifically, Thrivest challenged the Court's jurisdiction over Thrivest as well as Judge Brody's sweeping Order invalidating all third-party lender assignments and attempting to control what settlement recipients did with their settlement money *after* it had been dispersed to the NFL player members of the certified class.

6.    *Partial Reversal of Judge Brody's Order by the 3rd Circuit*

On 4/26/19, in a reported opinion, the Court of Appeals for the Third Circuit partially reversed Judge Brody's Order, specifically holding that, "...despite having the authority to void prohibited assignments, the District Court went too far in voiding the cash advance agreements in their entirety and voiding contractual provisions that went only to a lender's right to receive funds after the player acquired them"[5].

The Court noted that Judge Brody's December 8, 2017, Order "went beyond pure issues of settlement administration to adjudicate the third-party contract rights of litigation funding companies"[6] when it voided all cash advance agreements in their entirety. Instead, the Appeals Court noted, that "the Court had the option of invalidating

---

[4] Counsel has provided a transcript of that hearing which has been reviewed.
[5] 3rd Circuit Order, p.7.
[6] 3rd Circuit Order, p.26.

only the assignment portions of the agreements containing true assignments and directing the Claims Administrator not to recognize any true assignments, without voiding the agreements in their entirety"[7].

The Appeals Court further stated that "...*once the funds are disbursed to the players, the District Court's power over the funds – and any contracts affecting the funds – is at an end*"[8] (emphasis provided). In holding that cash advance agreements remain enforceable – outside of the NFL claims administration context – to the extent the litigation companies retain rights under the agreements after any true assignments are voided[9], the Court concluded that:

> "...although the District Court had the authority to enforce the clear terms of the settlement agreement by ordering that any true assignments are void and unenforceable, the Court did not have the authority to void other obligations under the cash advance agreements, particularly without affording the lenders notice and a hearing, or making specific findings that those obligations violated the Court's prior orders or would impair the Court's administration of the settlement"[10].

Finally, the Appeals Court vacated Judge Brody's May 22, 2018, Order enjoining Thrivest from arbitrating its claims, and remanded for further proceedings. The Court noted that Thrivest and other "...litigation funding companies will be able to pursue, outside of the claims administration process, whatever rights they may continue to have under their cash advance agreements with class members", and that "...[a]ny questions going to the enforceability of the funding agreements will have to be litigated or

---

[7] 3rd Circuit Order, p.29.
[8] 3rd Circuit Order, p.30.
[9] The Appeals Court specifically added that "..a court or arbitrator subsequently adjudicating these issues will need to address whether any individual agreements contains a true assignment and whether there remain enforceable rights under the agreement after any true assignment is voided".
[10] 3rd Circuit Order, p.32.

arbitrated in the appropriate fora"[11].

B.   Renewal of Request for Emergency Relief and Demand for Arbitration

Following the Third Circuit's decision, Claimant notified AAA on April 26, 2019, of the Third Circuit's ruling and requested that this Emergency Arbitrator schedule a hearing on Claimant's Application for Emergency Interim Relief, with the indication that an amended filing would be forthcoming.

Claimant submitted its Final Demand for Arbitration and Application for Emergency Interim Relief ("Final Demand") on May 8, 2019, requesting a directive that Respondent escrow $750,000 from his award, once received, in his attorney's trust account pending the arbitrator's final award[12], as well as a declaration that Thrivest's Agreement is valid and enforceable, and finding that Respondent breached his contract with Claimant, together with attorneys' fees and costs. In total, Claimant is requesting this Arbitrator escrow $1,250,000 pending resolution of the arbitration.[13]

C.   Respondent's Response to Claimant's Renewal of Demand

Respondent issued an Answering Statement and email response dated May 15, 2019, again arguing that AAA does not have jurisdiction over this dispute. In characterizing Thrivest's Agreement with White as a "False Assignment", Respondent notes that §6(z) of the Assignment states that:

> "Within thirty (30) days of [written] notice of a dispute, Buyer and Seller agree to meet at an agreed upon location in Philadelphia, PA to attempt to resolve the dispute in good faith without the necessity of moving forward with binding Arbitration through the American Arbitration Association. Should the dispute not

---

[11] 3rd Circuit Order, p.34.
[12] The actual binder containing the Final Demand for Arbitration accompanying Claimant's May 8, 2019, cover letter appears to be unchanged from that previously submitted and is in fact dated April 11, 2018.
[13] See Claimant's May 7, 2019, prehearing email @ p.5.

be resolved between the parties within 60 days of the above-referenced meeting, either party may seek remedies exclusively through a binding arbitration request to the American Arbitration Association and/or one of their representatives".

Respondent argues that Claimants failure to provide written notice and/or meet with

him in Philadelphia ("conditions precedent") amounts to a material breach of the

Dispute Resolution provisions of the Assignment, and "accordingly the AAA does not

have jurisdiction to consider the dispute".

Respondent also argues that Claimant has not demonstrated it is entitled to

emergency relief under R-38, stating that Claimant has cited no facts other than mere

speculation that over time its prospects for collecting might decrease. Respondent adds

that Claimant has offered no proof that Respondent has not made arrangements and/or

will not make arrangements to pay under the terms of the Agreement, particularly since

Respondent's obligation to pay has only recently been triggered, and that up until the 3rd

Circuit's 4/26/19 ruling, Respondent was justified in considering the Agreement null

and void.

## II.   **DETERMINATION AS TO ISSUE OF AAA JURISDICTION BY EMERGENCY ARBITRATOR**

Section 6(z) of the Agreement between Thrivest and White states that:

> "Within thirty (30) days of [written] notice of a dispute, Buyer and Seller agree to meet at an agreed upon location in Philadelphia, PA to attempt to resolve the dispute in good faith without the necessity of moving forward with binding Arbitration through the American Arbitration Association. Should the dispute not be resolved between the parties within 60 days of the above-referenced meeting, either party may seek remedies exclusively through a binding arbitration request to the American Arbitration Association and/or one of their representatives".

Respondent argues that Claimants failure to provide written notice and/or meet with

him in Philadelphia ("conditions precedent") amounts to a material breach of the

Dispute Resolution provisions of the Agreement, and "accordingly the AAA does not have jurisdiction to consider the dispute".

Claimant counters, however, that the reason Thrivest did not demand pre-arbitration mediation was "..in part it was due to timing and in part it was due to the absence of any meaningful opportunity at resolution"[14]. Counsel Buckley notes that on March 19, 2018, Respondent's Counsel, Wood, presented Thrivest with a waiver relinquishing Thrivest's rights under the attempted assignment and guaranteeing return only of its principal. Claimant's Counsel, Buckley, was allowed by this Arbitrator, to testify and in fact did testify, that acceptance of rescission and return of principal only was "communicated to us by Mr. Wood as the only option"[15] for settlement with his client and the deadline for acceptance of this offer was set at April 12, 2018. Mr. Buckley further testified that "...we engaged in some preliminary discussions with Mr. Wood that went nowhere"[16] and subsequently filed for arbitration on April 11, 2018. Mr. Buckley then testified that because the pre-arbitration discussions "have never gone anywhere productive"[17], that mediation in Philadelphia would have been "futile"[18] because there was insufficient time before the April 12, 2018, waiver deadline[19] and that "Mr. Wood communicated that there was really no room to negotiate"[20].

Claimant had also previously advanced this position in its Demand:

"[a]although the Arbitration Clause encourages a pre-arbitration meeting in Philadelphia for the purpose of discussing resolution, such a meeting is not

---

[14] Tr. p.28, 9-12.
[15] Tr. p.29, 20-23.
[16] Tr. p.29, 11-13.
[17] Tr. p.30, 17-18.
[18] Tr. p.30, 21.
[19] Tr. p. 44, 11-15. Mr. Buckley testified he wanted to commence the arbitration prior to the expiration of the April 12, 2018, waiver ultimatum, and to attempt to prevent dissipation of assets. Tr. p.45, 1-16.
[20] Tr. p.31, 1-3.

practicable in view of White's health and the impending April 12, 2018, deadline imposed by White for Thrivest to accept rescission of the Agreement. Moreover, White's attorney confirmed that mediation would not be productive considering White's position that he need not comply with his obligations under the Agreement because, he claims, it is null and void[21].

Claimant's Counsel, Buckley, further added that Mr. Wood was also unwilling in June 2018 to escrow the disputed funds in an effort to forego accruing interest[22].

Counsel Buckley also testified that after the 3rd Circuit decision he sent an email to Mr. Wood on May 10, 2019, basically outlining past discussions and confirming that rescission was the only option on the table, and that if there was any room for compromise, Mr. Wood should let Claimant know Mr. Buckley testified that he did not receive a response[23]. Counsel Buckley also added that Respondent had never "requested or indicated an openness to mediation in Philadelphia at any time since we commenced this arbitration"[24].

In response to Mr. Wood's argument that the dispute resolution provision of the Agreement required 30 days written notice followed by a mediation in Philadelphia within 30 days, Counsel Buckley notes that Respondent was denying that any valid, enforceable agreement existed (based on the Court's December 8, 2017, Order), that Mr. White had no obligations with regard to Thrivest, and therefore Claimant proceeded with the filing of the Demand for Arbitration and Application for Emergency Interim Relief[25].

C.     Jurisdictional Analysis

---

[21] Claimant Demand p.5, fn. 2.
[22] Tr. p.33, 21 – p.33, 6.
[23] Tr. p.31, 6 – p.32, 14.
[24] Tr. p.32, 7-14.
[25] Tr. p.39-41.

The Agreement between Claimant Thrivest and Respondent, White specifies that Pennsylvania law controls the arbitration and that that any arbitration would be conducted within the jurisdiction of the Commonwealth of Pennsylvania. However, neither party has submitted any authority to support their position with regard to whether failure of the condition precedent (if found) is grounds to defeat the jurisdiction of AAA under the terms of the arbitration clause contained within the Agreement. Accordingly, as stated by this "Emergency Arbitrator" during the hearing, this decision will be made on the "record and evidence presented and the arguments in this case and in this hearing and anything else I have in the file leading up to this hearing"[26].

1.   *AAA Jurisdiction*

AAA Rule 38(d) states in pertinent part that the "emergency arbitrator shall have the authority vested in the tribunal under Rule 7, including the authority to rule on her/his own jurisdiction, and shall resolve any disputes over the applicability of this Rule 38". Specifically, AAA Rule R- 7 vests the arbitrator with the "power to rule on his or her own jurisdiction including any objections with respect to the existence, scope or validity of the arbitration agreement or the arbitrability of any claim or counterclaim"[27]. In cases where an Agreement containing an arbitration clause is at issue, the arbitration clause "shall be treated as an agreement independent of the other terms of the contract"[28].

This Arbitrator concludes that Claimant has substantially complied with the notice and mediation requirement contained within the Agreement.

First, with regard to the 30 days' notice of a dispute, this Arbitrator notes that the

---

[26] Tr. p.16, 4-11.
[27] AAA R-7(a).
[28] AAA R-7(b).

01-18-0001-4765

original Demand for Arbitration was filed April 11, 2018, and subsequently resurrected in identical form over a year later on May 8, 2019, following the 3rd Circuit's ruling. Mr. Buckley testified that on March 19, 2018, Claimant was presented with an ultimatum by Respondent: either execute a waiver by April 12, 2018, which would return only principal paid ($500,000) and relinquishing all other rights under their Agreement or receive nothing[29]. Mr. Buckley understood that the waiver offer communicated by Mr. Wood was "the only option"[30], and that there would be no other offers. Mr. Buckley also testified to a May 4, 2018; email received from Mr. Wood whereby Mr. Wood stated "Thrivest's election to refuse the rescission offered by the court constitutes a rejection that it must now live with"[31].

Mr. Buckley further testified that "throughout, we have certainly had discussions and been open to a resolution. Those conversations have never gone anywhere productive"[32]. There was certainly no indication of a willingness to compromise and, even though Claimant's Demand for Arbitration had been filed on April 11, 2018, no mention of any failure to provide notice and/or submit to a mediation in Philadelphia at that time was noticed. Mr. Buckley also testified that even as late as May 10, 2019, after the 3rd Circuit's decision and after Mr. Buckley's May 8, 2019 re-submission of the Demand for Arbitration, he sent an email to Mr. Wood "recount[ing] some of the history of the settlement conversations" and that his client, Thrivest saw "no reason to believe that mediation in Philadelphia would be anything other than futile" to which Claimant maintains Mr. Wood never responded[33]. Finally, nothing in the record of this case even

---

[29] Tr. p.28-29.
[30] Tr. p.29, 22-23.
[31] Tr. p.30, 3-13.
[32] Tr. p.30, 14-18.
[33] Tr. p.31, 6 – p.32, 14.

suggests that Respondent or his Counsel evidenced a willingness to mediate[34] or submit the disputed funds to escrow pending final resolution[35] as Respondent continued to believe that he owed no obligations whatsoever to Thrivest.

Counsel Wood, however, argued that he called Mr. Buckley prior to the hearing to "...see if we can meet and, you know, mediate this thing in Pittsburgh" to which Mr. Buckley replied that he wasn't interested.[36] Mr. Wood indicated that it was his impression that Claimants wanted the "maximum amount, the amount we feel we're due under the contract, plus attorney's fees. Otherwise, there's nothing to talk about".[37]

This "Emergency Arbitrator" finds that it cannot be credibly argued that Respondent was not fully aware of facts surrounding the dispute such that formal "notice" of the dispute needed to be issued, especially in light of the fact that Respondent had up until recently (and perhaps continues to) view the Agreement as a whole null and void. Moreover, Respondent had been queried repeatedly by Claimant as to the status of the receipt of the Settlement funds in an attempt to allay Claimant's fears regarding potential dissipation, giving Respondent clear and unambiguous notice of Claimant's position and concerns. Likewise, I find that Respondent had been fully aware since at least the time of the filing of the Arbitration Demand in April 2018 of Claimant's expressed desire to escrow the disputed funds pending final resolution of this dispute.

Second, with regard to the meeting in Philadelphia, this Arbitrator finds Claimant's explanation for not moving to implement a formal meeting persuasive.

---

[34] Tr. p.32, 5-14.
[35] Tr. p.33, 2-6.
[36] Tr. p.86, 14 – p.87, 1.
[37] Tr. p.87, 2-6.

01-18-0001-4765

12

Respondent disputed and in fact continues to dispute that a valid, enforceable agreement exists between the parties. This Arbitrator finds the position of Respondent disingenuous to then attempt to defeat the terms of the applicable provision in the Agreement by citing a "precondition" contained within the disputed document and claiming it was not met, when in fact, Respondent has had and continues to have no intention of acknowledging the existence and/or validity of the Agreement in the first place.[38]

Moreover, Respondent has offered nothing that would support a finding that even if "formal" mediation had been attempted/initiated by Claimant, that Respondent would have participated in any meaningful way in light of Respondent's position, and vice versa. *Both* parties argued as to informal overtures made in an attempt to settle which were not acknowledged by the other party as reasonable and/or worthy of further discussion. Such an impasse would certainly indicate that any further attempts at mediating the dispute would be fruitless. Therefore, to use the formal notice and meeting requirements contained within what Respondent considers to be a "False Assignment" with no binding legal effect in an attempt to defeat the Agreement's arbitration mandate, when it is clear Respondent had and continues to have no intention of mediating the dispute, is unpersuasive at best.

### 2.   *Emergency Relief*

AAA Rule 38 permits an emergency arbitrator to award emergency interim relief upon a showing that "...immediate and irreparable loss or damage shall result in the

---

[38] Mr. Wood, in his closing argument, stated: "Mr. Buckley pointed to provision in the Agreement that he says requires Mr. White to do certain things, well, there's no determination that that's enforceable at all at this point, none.". Tr. p.84, 1-5.

absence of emergency relief, and that such party is entitled to such relief..."[39]. Claimant requests that Respondent escrow $1,250,000 of his award into Mr. Wood's account pending final arbitration of all issues.

The Agreement between the parties mandated that Respondent, within 3 business days of receiving his Settlement Distribution, was to:

> "distribute, or cause to be distributed, all such collections and receipts to Buyer (Thrivest), prior to paying any expenses of Seller or making any other distributions, until Buyer has received the TSF Distribution[40] in full. Until disbursement in accordance with the terms of this Section 2(c), Seller shall hold the Purchased Property and other Distributions in trust for Buyer"[41].

The Agreement also states that the "parties agree that the arbitrator shall have authority to grant injunctive or other forms of equitable relief to either party"[42].

Respondent's Answering Statement purports to incorporate all prior Orders of the District Court and Third Circuit "which denied the Claimant's numerous requests for Emergent relief, and/or expedited consideration"[43]. Yet, the most recent Order from the Third Circuit dated April 26, 2019, does not deny the emergent relief requested by Claimant. In fact, in vacating the District Court's Order enjoining Thrivest from pursuing arbitration and dismissing Thrivest's complaint in *Thrivest v. White* and remanding for further proceedings, the 3rd Circuit stated that:

> "...Thrivest's contract gave it only the right to receive settlement funds after the funds are disbursed to a class member, and the District Court's power of the funds and class ends at that point" .... "[I]t also did not have the authority to preclude Thrivest from litigating any of its remaining rights under the agreement".[44]

---

[39] AAA R-38(d).

[40] The TSF Distribution amount as specified in the Agreement is $880,194.29.

[41] Agreement §2(c).

[42] Agreement §6(z)(aa).

[43] It would appear that each of the instances where Claimants requested relief was denied it was done so by Judge Brody or by another Judge on the basis that Judge Brody's prior orders invalidated all cash advance agreements, rendering Claimant's requested relief moot.

[44] 3rd Circuit p.33.

The 3rd Circuit also stated that the "litigation funding companies will be able to pursue, outside of the claims administration process, whatever rights they many continue to have under their cash advance agreements with class members", and that "[a]ny questions going to the enforceability of the funding agreements will have to be litigated or arbitrated in the appropriate fora".[45]

Claimant also argues that the emergency relief sought "is consistent with Thrivest's ownership of the disputed funds, which Mr. White sold to Thrivest in exchange for the $500,000 advance more than two years ago"[46]. Claimant supports its argument with caselaw affirming injunctive relief to preserve and protect property pending resolution of a dispute.[47] Respondent has not addressed the caselaw cited by Claimant except to characterize it as "inapposite" in that in each case "the aggrieved party came to the tribunal with known facts that established irreparable harm in the absence of relief"; that "[g]iven the Claimant can only speculate, and does not have known facts to supports its request for emergency relief"; and that the Claimant cannot request expedited discovery to "fish" for information but rather "must come with known facts which justify a need for emergency relief"[48].

Respondent's arguments are not persuasive in view of the evidence to the contrary. Not only was there indication back in May 2018 that Mr. White did not have

---

[45] 3rd Circuit p.34.
[46] See Claimant's May 7, 2019 prehearing email to Arbitrator outlining the hearing issues.
[47] See *American Express Travel Related Services Company, Inc. v. Laughlin*, 623 A.2d 854, 856-57 (Pa. Super. Ct. 1993) (affirming injunction enjoining the concealing or dissipation of disputed funds held by fiduciary); and *East Hills TV & Sporting v. Dibert*, 531 A.2d 507, 509 (Pa. Super. Ct. 1987) (holding that seller may be enjoined from using funds in seller's bank so as to prevent potential loss of funds belonging to buyer).
[48] Respondent's May 15, 2019, prehearing email communication to Arbitrator.

the $750,000 requested to be escrowed by Thrivest[49], Respondent has never provided any indication, even after the Demand was re-filed in May 2019, as to when Mr. White received the settlement distribution, how much he received, and most importantly, its present status, despite repeated queries by Claimants. Mr. White chose not to participate in this emergency hearing (despite Claimant's formal request for his attendance) and therefore could not be queried as to the status of the settlement funds and/or his intention to honor his Agreement with Thrivest or even his willingness to negotiate in light of Respondent's "defense" that mediation had not first been attempted.[50] Had Respondent simply provided **any** assurance at any time (but certainly after the 3rd Circuit's ruling) that Claimant's investment would be protected in the event Claimant prevailed, it is unlikely that Claimant would have sought emergency relief, or that this "Emergency Arbitrator" would have granted it if requested under the authority of AAA Rule R-38 and the standard set thereunder. Respondent through his lack of transparency regarding the status of the settlement funds has created the emergent situation in which he now belatedly finds himself.

Moreover, Claimant's concern regarding dissipation of funds by Respondent necessitating an emergency order mandating escrow is not without merit. The Agreement mandated that within three (3) business days of Respondent receiving the Settlement Distribution, Respondent would hold the Distribution in trust for Claimant until such time as Claimant had received the TSF Distribution in full[51]. However, Judge

---

[49] See 5/2/18 hearing transcript @p.5, 22-25 "...Mr. W. have to put up $750,000 that I can assure you he does not have...".
[50] Mr. Wood stated in closing argument that "Mr. White did, in fact, offer to pay them back the 475 plus a reasonable rate of interest, and Thrivest said it wasn't interested in that. And that was just, and that was just recently". Tr. p.82 12-18. This was neither admitted nor denied by Claimant.
[51] Agreement §2(c)

Brody's interim Orders arguably provided Respondent with justification for refusing to honor the Agreement up until April 2019 when the 3rd Circuit made clear that the Court had no jurisdiction over Respondent or his settlement proceeds once he had received those proceeds.

In fact, there was a representation made during the 3rd Circuit hearing in May 2018, by class counsel, Mr. Seeger, that "Mr. W. would have to put up $750,000, that I can assure you he does not have. He is going to be stuck paying their attorneys' fees"[52]. This statement was made over a year ago and even at that time it appeared that Mr. White had dissipated his settlement to the extent he would not be able to escrow the $750,000 originally requested by Claimant to be set aside pending resolution of this dispute.

In sum, this Arbitrator finds that there is a strong likelihood that the Claimant will prevail on the merits of this case and that Thrivest's Agreement with Respondent will be enforced pursuant to the terms contained therein. Moreover, Claimant has demonstrated a real likelihood that the settlement funds distributed to Mr. White are in danger of being dissipated, if not already dissipated, such that Claimant will be unable, if successful on the merits, to collect the money owed it pursuant to the Agreement.

With regard to including current and prospective legal fees into the escrowed amount, the issue will depend on whether there is a finding of a breach, and if so, when the breach occurred, as it may be the case that a finder-of-fact does not find that some and/or all of the legal fees were reasonable depending if/when the fact-finder determines a breach occurred. Claimant has urged this Emergency Arbitrator to hold

---

[52] Tr. 59-62 citing Transcript of Telephone Conference Before The Honorable Anita B. Brody, p.5, 23-25.

$1.25 million in trust pending a decision on the merits.[53] Mr. Buckley testified that Claimant has expended nearly $250,000 in legal fees and expenses on this matter, and has offered "lightly redacted" legal bills in support of its request that that amount be considered pursuant to the fee-shifting provision of the Agreement when deciding what if any escrow amount might be appropriate.[54]

Respondent counters by arguing that there must first be a breach before the fee-shifting provision would be triggered. That assertion is obviously legally correct. However, for purposes of this emergency motion Claimant is not asking that the fee-shifting be substantively applied at this time; rather, that the legal fees be factored in when considering the amount to be escrowed, if any. Indeed, should Claimant prevail on the merits, which this Arbitrator believes will be likely, Claimant would be entitled to proven reasonable attorneys' fees and costs pursuant to the fee shifting arrangement contained within the Agreement. Accordingly, Claimants have demonstrated the need for equitable emergency relief to include anticipated attorneys' fees and costs.

Accordingly, this Arbitrator orders Respondent to deposit into Mr. Woods' escrow account the sum of $1,250,000 until such time as the merits of this dispute are decided.

## III.   **OTHER DEFENSE ISSUES**

### A.   Lack of Capacity to Sign Contract

Respondent has pled the affirmative defense[55] that Mr. White lacked the capacity to enter into his Agreement with Thrivest, and for that (and other) reasons, no

---

[53] Tr. p.81, 4-6
[54] Tr. 56-57.
[55] Respondent's Answering Statement ¶8

Agreement exists. While full discussion on this issue would be premature, suffice to say based on the very limited evidence and even argument presented to this Emergency Arbitrator, Respondent's capacity argument appears to be meritless. Mr. White not only signed the Agreement in the presence of his attorney, but in addition, his own treating neurologist provided a signed (but undated) Statement of Mental Capacity indicating Mr. White was diagnosed with ALS on 10/19/16, and that at no time did Mr. White lack the capacity to make independent legal, medical and financial decisions.

Claimant also points to a TV interview during which Mr. White delivered an "eloquent" speech which, at that time, "certainly demonstrates that he had the capacity to enter into this contract..."[56]. While Respondent's Counsel mentions in closing argument that Mr. White "has a separate diagnosis for a cognitive disability that's completely unrelated to the ALS determination", he offered no further evidence on this point, stating that it is beyond the scope of this emergency hearing.[57] Finally, class counsel gave no indication in either District Court or the 3rd Circuit that Mr. White's capacity to contract was at issue.

## **Conclusion**

The Arbitrator finds that Claimant has sustained its burden of demonstrating ongoing, irreparable harm in the form of dissipation of settlement funds previously distributed to Claimant, and orders Respondent to deposit into escrow the sum of $1,250,000 out of the settlement funds received within two (2) business days as

---

[56] Tr. 74.
[57] Tr. p.89, 11 – p.90, 2.

specified in the accompanying Order of Arbitrator.


Signed: _____        Date: ____06/04/19_____

Judge Steven I. Platt (Ret.)
AAA Emergency Arbitrator

# EXHIBIT C

**AMERICAN ARBITRATION ASSOCIATION**

THRIVEST SPECIALTY FUNDING, LLC

      Claimant

v.

WILLIAM E. WHITE

      Respondent

No: 01-18-0001-4765

R-38 Emergency Measures of Protection Hearing

<u>**EMERGENCY ARBITRATOR'S INTERIM AWARD OF EMERGENCY RELIEF**</u>

UPON CONSIDERATION of Claimant's Application for Emergency Interim Relief, Respondent's Answering Statement, a Hearing having been held via Telephonic Conference Call on May 15, 2019, hearing, at which evidence and the arguments of Counsel were heard and I viewed, is This 31st day of May 2019;

**ORDERED**, that Claimant's Application For Emergency Interim Relief is GRANTED; and it is further;

**ORDERED** that within two (2) business days, Respondent William E. White shall cause the sum of One Million Two Hundred Fifty Thousand Dollars ($1,250,000) (the "Escrowed Funds") to be deposited into the trust account of his attorney, Robert C. Wood, Esq.; and it is further;

**ORDRED** that within one (1) business day of receipt, Attorney Wood shall provide Claimant Thrivest with evidence that Mr. White has so complied and, in addition, furnish evidence of insurance coverage in an amount in excess of the Escrowed Funds; and its further;

1

**ORDERED** that Attorney Wood shall hold the Escrowed Funds in escrow in his trust account pending and subject to a Final Award, further order of the arbitrator, or written agreement signed by the parties; and it is further;

**ORDERED** that deposit of the Escrowed Funds as set forth herein shall not alter the parties' rights and obligations under the Agreement, including the accrual of additional interest on any unpaid obligations; and it is further;

**ORDERED** that this Interim Award of Emergency Relief shall be enforceable in any court of competent jurisdiction.

Signed:_____ _____ _____    Date:  ___06/04/19_____
    Judge Steven I. Platt (Ret.)
    AAA Emergency Arbitrator

Copies to:

Peter C. Buckley, Esq.
pbuckley@foxrothschild.com
Attorney for Claimant

Robert Wood, Esq.
rwood@rwoodlaw.com
Attorney for Respondent

Matthew Conger
matthewconger@adr.org

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THRIVEST SPECIALTY FUNDING, LLC,    :
                                               :

                v.                            :   Civil Action No. 2:18-CV-1877
                                                 :

WILLIAM E. WHITE,                       :

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June, 2019, I caused the Emergency Motion to Confirm Arbitration Award to be filed with the Court via hand delivery and served on all counsel of record via e-mail and U.S.Mail, including:

Robert Wood, Esquire
Wood Law Limited
68 North High Street
Building B, Suite 202
New Albany, Ohio 43054
*Attorneys for Respondent*

/s/ Peter C. Buckley, Esquire
Peter C. Buckley, Esquire
Eric E. Reed, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2000
(215) 299-2150 (facsimile)
*Attorneys for Thrivest Specialty Funding, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THRIVEST SPECIALTY FUNDING, LLC   :
                                     :
          v.                     :   Civil Action No. 2:18-CV-1877
                                     :
WILLIAM E. WHITE                  :

## ORDER

AND NOW, this _____ day of _____, 2019, upon

consideration of Thrivest Specialty Funding, LLC's ("Thrivest") Emergency Motion to Confirm

Arbitration Award, it is ORDERED as follows:

    1.      Thrivest's Emergency Motion to Confirm Arbitration Award is GRANTED;

    2.      The Emergency Arbitrator's Interim Award of Emergency Relief issued on June

4, 2019 is CONFIRMED, and William E. White is ORDERED to comply as directed therein;

and

    3.      Upon consideration of Thrivest's Complaint to Compel Arbitration, this action is

STAYED in favor of arbitration in <u>Thrivest Specialty Funding, LLC v. White</u>, AAA Case No.

01-18-0001-4765.

                          BY THE COURT:


                          _____
                          BRODY, J.

Case 2:12-md-02323-AB    Document 11640-2    Filed 07/19/21    Page 63 of 67

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THRIVEST SPECIALTY FUNDING, LLC | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 18-1877 |
| v. | : | |
| WILLIAM E. WHITE, | : | |
| Defendant. | : | |

## ORDER

AND NOW, this 1<u>st</u> day of July, 2019, it is **ORDERED** that:

- Upon consideration of Thrivest's Complaint to Compel Arbitration (ECF No. 1), this action is **STAYED** in favor of arbitration.[1] The parties must advise the Court of the status of this action upon completion of arbitration.

- Thrivest's Motion to confirm the Emergency Arbitrator's Interim Award of Emergency Relief (ECF No. 21) is **GRANTED** and White's Application to Vacate the Interim Award is **DENIED** (ECF No. 24).[2]

---

[1]    Thrivest seeks to compel arbitration of a dispute arising out of the parties' Non-Recourse Finance Transaction, Sales and Purchase Agreement (the "Agreement"). White argues—in an affirmative defense improperly characterized as a counterclaim—that arbitration should not be compelled because Thrivest did not follow the Agreement's pre-arbitration procedures. However, "'procedural' questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds*, Inc., 537 U.S. 79, 84 (2002) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). *See also John Wiley & Sons*, 376 U.S. at 556-58 (holding that the issue of whether procedural conditions to arbitration have been met is a matter for the arbitrator, not the court). Because White only raises a procedural question, namely, whether Thrivest followed the Agreement's pre-arbitration procedures, the dispute must go to arbitration.

[2]    Thrivest seeks confirmation of the arbitrator's Interim Award of Emergency Relief, which directed White to escrow a portion of the disputed funds. The Court may confirm this Interim Award because it is a "temporary equitable order[ ] calculated to preserve assets or performance needed to make a potential final award meaningful." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991).
       "Under the terms of § 9 [of the FAA], a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11 [of the FAA]." *Hall St. Assocs., L.L.C. v.*

- Thrivest's Motion to Seal its Motion to Confirm Arbitration Award (ECF No. 20) is

  **DENIED**.[3]




                          /s/ Anita B. Brody

                          ANITA B. BRODY, J.


COPIES VIA ECF 7.1.19

---

*Mattel, Inc.*, 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 9). White asks this Court to vacate the award because the Emergency Arbitrator misapplied Rule 38(b) of the Commercial Arbitration Rules and Mediation Procedures, which governs emergency relief. The Court may vacate the Interim Award on this ground only if the arbitrator "so exceeded [his] powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. §10(a)(4). None of the legal errors alleged by White meet this demanding standard.

        White also argues that the Emergency Arbitrator did not have the authority under the Agreement to order emergency relief. This is incorrect: Section 6(aa) of the Agreement states that "the parties agree that the arbitrator shall have authority to grant injunctive or other forms of equitable relief to either party."

[3]         Once a document is filed with the court and "becomes a judicial record, a presumption of access attaches." *In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d. Cir. 2019). "The party seeking to overcome the presumption of access bears the burden of showing that the interest in secrecy outweighs the presumption" and must show "that the disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (internal quotation marks omitted). Thrivest fails to put forth any injury it will suffer if its Motion remains a publicly accessible court record. Therefore, the presumption of public access must prevail.

Case 2:12-md-02323-AB   Document 11640-2   Filed 07/18/21   Page 66 of 67

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THRIVEST SPECIALTY FUNDING, LLC | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 18-1877 |
| v. | : | |
| WILLIAM E. WHITE, | : | |
| Defendant. | : | |

## <u>ORDER</u>

**AND NOW**, this _24th __ day of September, 2019, it is **ORDERED** as follows:

1.      Upon consideration of the motions filed by Plaintiff (ECF No. 32, ECF No. 36) and Defendant (ECF No. 35), responding to the Court's Order issued on August 16, 2019 (ECF No. 31), the Court concludes that Plaintiff's Emergency Motion for Contempt (ECF No. 26) is properly before the Court.

2.      A civil contempt hearing will be held on October 10, 2019, at 1:00pm Eastern Standard Time in Courtroom 7-B on the 7th floor of the U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106.  Defendant may arrange to appear by telephone for the hearing by contacting Chambers at 215-597-3978 prior to the date of the hearing.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

COPIES VIA ECF 9/24/2019