IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : : : : : : : | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | | |

**DECLARATION OF ROMA PETKAUSKAS**
**REGARDING AUDIT INVESTIGATION RELATED TO COLLINS & TRUETT**
**ATTORNEYS, P.A.**

I, ROMA PETKAUSKAS, hereby declare and state as follows:

1. **Introduction.** My name is Roma Petkauskas. I am a partner at BrownGreer PLC, located at 250 Rocketts Way, Richmond, Virginia 23231 ("BrownGreer"). BrownGreer is the Court-appointed Claims Administrator for the Class Action Settlement in this litigation, approved by this Court on April 22, 2015, as amended May 8, 2015. I oversee all aspects of the NFL Settlement Program's implementation, including its process for auditing claims under Sections 10.3-10.4 of the Settlement Agreement.

2. **Purpose of this Declaration.** I submit this Declaration to explain reasons for conducting an Audit of the Collins & Truett Attorneys, P.A. ("Collins & Truett") law firm, the Audit process, and certain evidence obtained during that process.

3. **Terminology.** Unless I define them here, the capitalized terms I use in this Declaration have the meanings given to them in the Settlement Agreement and Governing Rules in the Program.

# EXHIBIT 5

4.      ***Reasons to Audit the Collins & Truett Law Firm.*** During our Audit of the law firm Howard & Associates, we saw that the law firm of Collins & Truett started taking over representation of Howard & Associates' clients.  The point of contact for this Settlement Program at Collins & Truett, is Neil Epstein, a paralegal who also was a key employee of Howard & Associates.  It appeared that Mr. Epstein worked for both firms from at least July 2020 to October 2020.  We issued an Audit Rule 15 Audit Report regarding Howard & Associates and Related Parties on November 25, 2020, outlining our findings.  Accepting the Rule 15 Audit Report, on January 22, 2021, the Special Masters issued an Audit Rule 18 Decision, noting that upon thorough review, they agreed there was compelling evidence indicating that Howard & Associates and related parties manipulated the medical examination process and medical records in ways that had the potential to affect whether Settlement Class Members qualify for a Monetary Award.  The Decision also directed that, given the significant issues raised in the Audit, we were to place all pending claims not yet processed or paid by any Settlement Class Member then or ever represented by Howard & Associates into Audit.  We immediately followed that direction, putting all such claims, including those from Settlement Class Members now represented by Collins & Truett, into Audit and notified Collins & Truett by providing them a copy of the Special Masters' decision.

5.      ***Examination of Connections Between Mr. Howard and Collins & Truett.*** While the Audit Proceeding on Howard & Associates and related parties continued through the briefing process, we started looking further into connections between Mr. Howard and the Collins & Truett firm.  We needed to determine whether Mr. Howard was involved in operations of the Collins & Truett firm and the extent of his involvement.  Settlement Class Members were

switching representation from Howard & Associates to Collins & Truett at a significant rate. We had outlined in the Howard & Associates and related parties Audit Report the serious concerns about Mr. Howard's handling of the NFL Class Members' evaluations. We were concerned that he was attempting to continue to stay involved in the preparation of the NFL Program claims, hidden under the name of another firm, while the Audit Proceeding to disqualify his participation in the Program was pending.

6.     *The Audit Process Under the Settlement Agreement.*  As directed by Section 10.3 of the Settlement Agreement and approved by the Special Masters, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Claims Administrator established and implement Audit Rules to detect and prevent fraudulent submissions to, and payments of fraudulent claims from, the Monetary Award Fund. Rule 10 of the Audit Rules states that in an audit we may require a Settlement Class Member as well as persons and entities other than the Settlement Class Member to submit records and information to us. Consistent with Section 10.3(e)(v), we may ask for authorizations to obtain medical records of a Settlement Class Member. Using the authorizations as appropriate, we obtain any necessary records or records verifications through telephone, mail, or a document retrieval vendor. When a third-party source provides us with information relevant to an audit, we keep the source's identity as confidential as possible. Doing so is keeping with the best practices of the industry. For example, the Manual of the Association of Certified Fraud Examiners, which outlines best practices related to fraud examinations, states that "[i]f the confidential source or informant has provided documents, names of potential witnesses, or other evidence, all reasonable steps must be taken to protect the identity of that source." *See* Association of Certified Fraud Examiners, Fraud Examiners Manual 3.519 (2019). In an audit, we also query commercial, proprietary,

and open source data to conduct additional verification of the submitted information as necessary.

7.  ***No Unauthorized Access to Servers.***  We do not hack, attempt to hack, or attempt in any way to gain unauthorized access to anyone's computer network, email or other servers, or any systems when conducting Audits.  Nor do we ask or encourage any other party to do so. We have not done any such thing at any time concerning Collins & Truett or anyone else.

8.  ***Details on Our Audit of Collins & Truett.***  Our Audit investigation into Collins & Truett and their connection with Mr. Howard is ongoing.  We have done the following:

> (a) **First Set of Questions and Answers:** On March 16, 2021, we sent questions to Collins & Truett asking if Richard Collins knows Tim Howard and if he has any arrangements or agreements with Tim Howard or Howard & Associates.  On March 17, 2021, Mr. Collins emailed to say that he had not received any requests from us.  On March 18, 2021, Mr. Collins responded to our questions, acknowledging "a limited professional relationship" with Mr. Howard and saying they have co-counsel relationship on other cases, but said that he had "no arrangements or agreements with Mr. Howard relating to representation of players in the NFL Concussion Settlement Program."
>
> (b) **Second Set of Questions and Answers:** On April 8, 2021, we sent follow-up questions to Mr. Collins to try to clarify his March 18, 2021 responses.  We stated in our questions that our observations seemed to raise questions about some of Mr. Collins' previous responses and we wanted to give him an opportunity to explain.  Mr. Collins responded on the same day with his explanations.  Here is an overview of what we asked and what he responded:
>
>> 1. To his response that Collins & Truett has no arrangements or agreements with Tim Howard or Howard & Associates related to the representation of players in this Program, we noted that Collins & Truett currently represents 57 Settlement Class Members in this Program.  Of those, 49 (86%) were formerly represented by Howard & Associates.  In response, Mr. Collins said that: "Mr. Epstein, having been an independent contractor with Howard & Associates, had familiarity with some retired NFL players. They discovered that he was now contracting with Collins & Truett.

4

> Since Amir Shenaq, PC dropped all of the Howard-Shenaq co-counsel players, through word of mouth many players voluntarily elected to speak with staff members at Collins & Truett. They wanted to determine as to whether they would move their representation to this firm. A minor percentage of these players decided to come to my firm."

2. To his response that Neil Epstein worked as an Independent Contractor for Tim Howard "until early 2020," we noted that Mr. Epstein emailed us on October 23, 2020 using his Howard & Associates email address to discuss matters related to Howard & Associates (after Mr. Epstein had emailed us on August 19, 2020 to introduce himself as Collins & Truett's law firm contact). Mr. Collins responded that "It is known that as Mr. Epstein was departing as independent contractor with Howard & Associates, and beginning his independent contractor relationship with Collins & Truett, that here may be some inadvertent overlap servicing both law firms during this transition. Mr. Epstein informed me that he may have accidentally used his prior Howard & Associates email address while drafting correspondences from Collins & Truett, and vice versa. He will be more careful going forward."

3. We also noted that on February 5, 2020, Mr. Epstein and Tom Woods, Mr. Howard's former Business Manager and Director of NFL Claims, created Justice Advocates, P.A. Justice Advocates' website lists its contact phone number as (850) 765-5798. The Florida Bar Directory lists this same phone number as Mr. Collins' contact phone number. As to this, Mr. Collins said "Thank you for bringing this matter to my attention. I was unaware that there was an active Justice Advocates website, and was unaware that the website had the same number. …. We proceeded to add that number to my Florida Bar profile without my awareness that the number was used for the other inactive entity's website."

(c) **Third Set of Questions and Answers:** On April 12, 2021, we sent a third set of follow up questions. Among them, we noted that "we have observed that Mr. Epstein has two Collins & Truett email addresses: neil@collinstruett.com and bruce@collinstruett.com. Mr. Epstein uses the name "Bruce" and that associated email address when communicating with Retired NFL Player clients represented by Collins & Truett. Why does Mr. Epstein have two email addresses? Why does Mr. Epstein use the name "Bruce" and that associated email address in these communications?" We also requested "please provide a full list of all employees and contractors who work for or with Collins & Truett." On April 14, 2021, Mr. Collins responded about Mr. Epstein's email addresses to say that "To the best of my knowledge, Mr. Epstein may use either email account interchangeably. His name is Neil Bruce Epstein." For our request of the list of employees, Mr. Collins responded saying: "Currently: - Neil B. Epstein, JD - Independant [sic] Contractor; - Sharon Delaney – Consultant." On

5

the same day, we followed up to clarify: "could you tell me if there are any other employees/contractors/agents who had worked for or with Collins & Truett at any point since its inception (other than just "current" ones)." In response, on the same day, Mr. Collins responded to say: "Yes, there was young Mr. Winslow Robinson, part-time intern. He recently left to prepare to attend law school. Although he may work some hours during the Summer, holidays, or when his schedule permits." On April 19, 2021, though, Mr. Collins followed up to this response and said that "In furtherance to my April 14 response, having had the weekend to thoroughly review all historical Collins & Truett records, we provide the list of all current and prior Collins & Truett employees, consultants, and agents to the best of our recollection …" That list included names of people, classified as 41 "attorneys", 8 "paralegals," 35 "secretaries", another 15 as "administration," and another 83 as "consultants/contractors." That is 182 names altogether. The list did not include Mr. Howard in any of the listed capacities.

(d) **Information from the Confidential Source:** On April 15, 2021, we received a package from a confidential source that included documents relating to Tim Howard and Collins & Truett, showing two email addresses at the Collins & Truett firm that seemed to be related to Tim Howard: tim@collinstruett.com and phil@collinstruett.com. Tim Howard's full name is Phillip Timothy Howard. The source of this information is known to the Claims Administrator but wishes to remain anonymous. During an Audit interview with this source, on April 13, 2021, we asked whether the source was aware of any connections between Mr. Howard and Collins & Truett. The source offered that the connection must exist because Mr. Howard has email addresses at the Collins & Truett firm (tim@collinstruett.com and phil@collinstruett.com). The source mentioned that he had copies of actual emails and stressed that these copies were obtained legally. We agreed that the source would provide us with copies of those emails. Those emails were included in the April 15, 2021 packet that we received. The emails showing the tim@collinstruett.com and phil@collinstruett.com email addresses were unrelated to the NFL Concussion Settlement. The source informed me these emails were disposed of in a dumpster outside of Mr. Howard's office and were collected from that trash.

(e) **Fourth Set of Questions and Answers:** On April 19, 2021, we sent the fourth set of 15 questions to Mr. Collins. In it, we asked why Mr. Epstein has two separate firm email addresses that he uses "interchangeably" (neil@collinstruett.com and bruce@collinstruett.com). In these questions, we also asked about phil@collinstruett.com and tim@collinstruett.com emails that we had reason to believe existed based on information provided to us by the confidential source (*see* Paragraph 8.(d) above). Mr. Howard's full name is Phillip Timothy Howard, so we wondered if the emails belonged to Mr. Howard, despite Mr. Collins having denied Mr. Howard working for the firm, so we asked. Mr. Collins responded to these questions on April 22, 2021. To our question why Mr. Epstein has two email addresses, Mr. Collins said that it was

so "Because he [Mr. Epstein] determined that he wanted the two email addresses. It is not important to me what email address a paralegal uses, as long he communicates with me on the day-to-day activities, tasks and communications at the law firm." As to the existence and purpose of the emails apparently belonging to Mr. Howard, Mr. Collins said that the tim@collinstruett.com email address did not exist. As to phil@collinstruett.com, he explained that "since Collins & Truett is representing Phil S. Howard, Mr. Tim Howard's father, on the Laketown Wharf wrongful death, and on the Mill Creek personal injury cases, and his son, Tim is assisting *pro bono* on these cases, we have setup a Phil@collinstruett email to facilitate communications on these cases." In his response, Mr. Collins asserted "by virtue of the fact that you have an awareness of this non-existent email address inadvertently used by me for communications a few times, having nothing to do with NFL matters, we conclude that you now have access to our in-house email servers." We were stunned by that outlandish allegation and knew it was fanciful. We assumed that Mr. Collins wrote it in a fit of anger, or was attempting to deter us from doing our Audit job by accusing us of such behavior. We assumed it was just another smokescreen to throw us off track. We wanted full answers from Mr. Collins about his firm's dealings with Tim Howard and Tim Howard's employees without giving him the opportunity to match what he told us to what he thought we already knew, which is a common and necessary approach to any investigation. We also knew that if Mr. Collins really thought someone had penetrated his network security systems and accessed his email or other servers without permission, or even attempted to do so, all he had to do was ask the person responsible for network security at his firm to check their logs to see who had accessed the system and when, which would have confirmed there had been no external penetration. If there had been, those logs would show when it happened and the IP address of the person who did it. We would like to know now if Mr. Collins even asked his IT personnel that question before filing his lawsuit. The Court would benefit from seeing those Collins & Truett security logs. We never imagined that Mr. Collins would file suit, accusing eight persons and entities of criminal hacking, without first confirming that his server had in fact been hacked. He must not have, because amidst all his accusations, he has not said his server was in fact hacked.

(f) ***Other Steps We Took in Audit.*** Other than the confidential source mentioned in paragraph 8.(d) of this Declaration, we interviewed various other persons and continued our research, to further our audit and prepare to interview Mr. Collins. On May 21, 2021, and May 27, 2021, we interviewed two Settlement Class Members who were previously represented by Howard & Associates and now are unrepresented, to determine whether they were solicited to be represented by Collins & Truett. We then, on June 2, 2021, through facilitation of his attorney, interviewed another Settlement Class Member previously represented by Mr. Howard, to ask similar questions. Meanwhile, on April 12, 2021 and on May 7, 2021, we sent questions to Sharon Delaney, one of Collins & Truett's employees. After reviewing the responses, we had a zoom interview with Ms. Delaney on June 22, 2021. Finally, on June 30,

7

2021, we had a zoom interview with one of former Howard & Associates employees. On June 28, 2021, we notified Mr. Collins of the Special Masters' Rule 27 Decision regarding Howard & Associates and related parties. We noted that the Decision directed that:

(1) Any Claims by Settlement Class Members who were at any time represented by Howard & Associates (including its employees) shall be audited, whether those Claims are currently pending or submitted in the future. The Claims Administrator shall certify to the Special Masters, before releasing each Claim from Audit, that there is no indication or evidence that any material from Howard & Associates affected its disposition; and

(2) Given the apparent connection between Collins & Truett and Tim Howard, the Claims Administrator shall investigate the relationship between the two firms and Collins & Truett's current representation of Settlement Class Members in the Program.

We also said in that communication that "we will be in touch with you with follow up questions soon to further the Audit. We would also like to see if you might be available in a latter part of July to talk to us. Let us know your available times/dates. We anticipate conducting this interview through zoom." On July 7, 2021, Mr. Collins responded that "I am compelled to respond to your request, but this response is limited under the Florida Rules of Professional Responsibility. I am not able to communicate with you as you are a named Defendant in an injunction matter, which is not related to the NFL Concussion Settlement. I am happy to have a discussion with your counsel."

I, Roma Petkauskas, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. Executed on this 19th day of July, 2021.

_____
Roma Petkauskas