**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY
LITIGATION

Kevin Turner and Shawn Wooden,
*on behalf of themselves and others*
*similarly situated*,
            Plaintiffs,
                  v.                                    No. 2:12-md-02323-AB

National Football League and                            MDL No. 2323
NFL Properties LLC, successor-in-interest to
NFL Properties, Inc.,
            Defendants.                                 Hon. Anita B. Brody, U.S.D.J.

### [Proposed] ORDER

AND NOW, this _____ day of _____, 2021, upon consideration of the Emergency Consent Motion for Direct Payment of Loan Resolution Amount filed by Thrivest Specialty Funding, LLC nka Balanced Bridge Funding LLC ("Thrivest"), it is **ORDERED** that the motion is **GRANTED** as follows:

With the consent of Settlement Class Member George W. McCullough, Jr. and to effect Mr. McCullough's agreed-upon resolution with Thrivest as memorialized in their Payoff Agreement, the Claims Administrator is instructed to direct the Trustee to deduct the Loan Resolution Amount specified in the Payoff Agreement from Mr. McCullough's Monetary Award and to pay that Loan Resolution Amount directly to Thrivest before paying the remaining balance of Mr. McCullough's Monetary Award to him.

                              BY THE COURT:


                              _____
                              BRODY, J.

126496948.2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY
LITIGATION

Kevin Turner and Shawn Wooden,
*on behalf of themselves and others
similarly situated*,
      Plaintiffs,

      v.

National Football League and
NFL Properties LLC, successor-in-interest to
NFL Properties, Inc.,
      Defendants.

No. 2:12-md-02323-AB

MDL No. 2323

Hon. Anita B. Brody, U.S.D.J.

## THRIVEST'S EMERGENCY CONSENT MOTION FOR DIRECT PAYMENT OF LOAN RESOLUTION AMOUNT (GEORGE W. MCCULLOUGH, JR.)

With the consent of Settlement Class Member George W. McCullough, Jr. and to effect Mr. McCullough's agreed-upon resolution with Thrivest Specialty Funding, LLC nka Balanced Bridge Funding LLC ("Thrivest") as memorialized in their Payoff Agreement, Thrivest moves the Court to enter an order instructing the Claims Administrator to direct the Trustee to deduct the Loan Resolution Amount specified in the Payoff Agreement from Mr. McCullough's Monetary Award and to pay that Loan Resolution Amount directly to Thrivest before paying the remaining balance of Mr. McCullough's Monetary Award to him.  Because Mr. McCullough's Monetary Award is likely to be paid soon and in view of Thrivest's exposure to risk that necessitates the filing of an arbitration absent timely relief, Thrivest respectfully requests that the Court address this consent motion on an emergent basis.

In support of its motion, Thrivest relies upon and incorporates by reference the accompanying memorandum of law.

Respectfully submitted,

/s/ Peter C. Buckley
Peter C. Buckley, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2854
(215) 299-2150 (facsimile)
Attorneys for Thrivest Specialty Funding, LLC


Dated:  September 28, 2021

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY
LITIGATION

Kevin Turner and Shawn Wooden,
*on behalf of themselves and others
similarly situated*,
      Plaintiffs,

      v.

National Football League and
NFL Properties LLC, successor-in-interest to
NFL Properties, Inc.,
      Defendants.

No. 2:12-md-02323-AB

MDL No. 2323

Hon. Anita B. Brody, U.S.D.J.

## MEMORANDUM OF LAW IN SUPPORT OF THRIVEST'S EMERGENCY CONSENT MOTION FOR DIRECT PAYMENT OF LOAN RESOLUTION AMOUNT (GEORGE W. MCCULLOUGH, JR.)

Thrivest Specialty Funding, LLC nka Balanced Bridge Funding LLC ("Thrivest") submits this memorandum of law in support of its emergency consent motion for direct payment of loan resolution amount, which seeks an order instructing the Claims Administrator to direct the Trustee to deduct the Loan Resolution Amount specified in Thrivest's Payoff Agreement with Settlement Class Member George W. McCullough, Jr. (attached as "Exhibit 1") from Mr. McCullough's Monetary Award and to pay that Loan Resolution Amount directly to Thrivest before paying the remaining balance of Mr. McCullough's Monetary Award to him. The requested relief effects a post-award agreement reached between Thrivest and Mr. McCullough regarding Thrivest's entitlement to payment under its funding agreement with Mr. McCullough. What's more, if the relief sough here (direct payment of the Loan Resolution Amount to Thrivest) is effectuated timely, the agreement will avoid an arbitration that neither Thrivest nor Mr. McCullough wants.

## I.   <u>BACKGROUND AND RELEVANT FACTS</u>

Under a Non-Recourse Finance Transaction (Sales and Purchase Agreement) dated June 15, 2016 (the "Funding Agreement," attached as Exhibit A to the Payoff Agreement (Ex. 1)), Thrivest paid Mr. McCullough a $255,625.38 advance against the proceeds of his potential award in the NFL Concussion Litigation.  On September 15, 2021, Mr. McCullough's attorneys notified Thrivest that Mr. McCullough had been approved for a Monetary Award and that he expected to be paid by the Trustee in the October or November 2021 distribution.  Thereafter, in an attempt to avoid arbitration by facilitating direct payment of an agreed-upon payoff to Thrivest, Thrivest and Mr. McCullough reached an agreement, which they memorialized in the Payoff Agreement.  <u>See</u> Payoff Agreement (Exhibit 1).

Although Thrivest is not a "Participating Funder" as that term is defined in the Rules Governing Third-Party Resolution Protocol, the Payoff Agreement generally tracks the form and substance of the Termination and Release Agreement that has been approved by the Court and honored by the Claims Administrator and through which many Third-Party Funders and Settlement Class Members have effectuated a post-award compromise.  <u>See</u> Termination and Release Agreement available at https://www.nflconcussionsettlement.com/Docs/termination_release_agreement.pdf (last visited September 28, 2021).  Like the Termination and Release Agreement, the Payoff Agreement provides that, in exchange for payment of the Loan Resolution Amount, Thrivest agrees to release Mr. McCullough from his obligations under the Funding Agreement and to terminate the Funding Agreement upon such payment.  <u>See</u> Payoff Agreement at D2(b), D3 (Exhibit 1).  As part of the Payoff Agreement, Mr. McCullough acknowledged the validity and enforceability of the Funding Agreement.  <u>See</u> Payoff Agreement at D4(a) (Exhibit 1).

<center>2</center>

Mr. McCullough has consented to the relief requested herein—namely, direct payment of the Loan Resolution Amount to Thrivest by the Trustee.  See Payoff Agreement at D4(b).  Prompt payment directly to Thrivest is also in Mr. McCullough's interest as the Loan Resolution Amount increases on a per diem basis after November 30, 2021 and does not include enforcement expenses incurred to date.  See id. at C1.  The consent language in Section D4(b) of the Payoff Agreement tracks closely the language in the Termination and Release Agreement, which has been approved by the Court and used by the Claims Administrator to effectuate other Funder/Settlement Class Member agreements.

## II.   ARGUMENT

The Court should grant Thrivest's consent motion and instruct the Claims Administrator to facilitate direct payment of the Loan Resolution Amount to Thrivest for three reasons.

**First,** granting Thrivest's motion honors the parties' agreement and compromise.  The Third Circuit recognizes a strong policy in favor of enforcing settlement agreements. See Ehrheart v. Verizon Wireless, 609 F.3d 590, 594 (3d Cir. 2010) (there is a "strong presumption in favor of voluntary settlement agreements").  Similarly, Pennsylvania law (selected in the Funding Agreement) favors agreements that settle legal disputes between parties.  See Compu Forms Control Inc. v. Altus Group Inc., 574 A.2d 618, 624 (Pa. Super. 1990).  There is a strong judicial policy in favor of voluntarily settling disputes because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant.  See Felix v. Giuseppe Kitchens & Baths, Inc., 848 A.2d 943, 946 (Pa. Super. 2004).  As part of a bargained-for exchange of consideration, Mr. McCullough agreed to ask the Claims Administrator to pay Thrivest the Loan Resolution Amount directly.  This request is consistent with the requests of other Settlement Class Members made through the Resolution Protocol, which the Court and the Claims Administrator have honored.  Moreover, Mr. McCullough's promise to request direct payment to Thrivest may

3

help the parties avoid arbitration, which could involve an interim award directing the impoundment of his entire Monetary Award and additional enforcement expenses that would ultimately reduce his recovery.  By granting Thrivest's consent motion and honoring Mr. McCullough's request, the Court would be promoting strong judicial policy in favor of settling disputes—both with respect to Thrivest's relationship with Mr. McCullough, but also with respect to other Settlement Class Members.

**Second,** direct payment of the Loan Resolution Amount by the Trustee to Thrivest is in the best interests of Mr. McCullough, Thrivest, and the Court.  The Payoff Agreement contains a per diem rate if the Loan Resolution Amount is not paid to Thrivest on or before November 30, 2021. With other Settlement Class Members, Thrivest has experienced payment delays of up to ten days following the Settlement Class Member's receipt of funds from the Trustee due to holds placed by the Settlement Class Member's bank because of the size of the deposit.  Allowing Thrivest to be paid directly will expedite Thrivest's receipt of funds and minimize the per diem expense to Mr. McCullough.  Of course, direct payment is also in Thrivest's interest in that it avoids the risk of dishonor.  Thrivest's experience with such matters is detailed in Thrivest's pending motion to amend rules governing payment of claims involving Third-Party Funders (Dkt. 11422).  Avoiding another such situation is not only in Thrivest's best interest, but also in the interest of the Court and Mr. McCullough—who faces liability for enforcement expenses if an arbitration becomes necessary.  The matters involving Mr. Wright and Mr. Harper consumed Court resources and filled the Court's docket with enforcement actions, which Mr. Wright and Mr. Harper ignored.  For their part, Mr. Wright and Mr. Harper incurred additional liabilities as a result of Thrivest's incurring of enforcement expenses.  Like Thrivest, the Court has reason to avoid creating opportunities for

4

dishonor—and the attendant Court proceedings—by facilitating direct payment of the Loan Resolution Amount to Thrivest.

**Third,** there is no basis to refuse this request from Mr. McCullough and Thrivest while, at the same time, honoring similar requests from other Settlement Class Members and Third-Party Funders.  The Court has adopted a Resolution Protocol that allows Funders and Settlement Class Members to resolve their disputes including with direct payment to the Funder of the agreed-upon "Loan Resolution Amount," but only after the Funder agrees in advance to reduce the interest rate on the agreement to 10% simple interest by executing a Declaration of Consent to Substitution. See Declaration of Consent to Substitution, available at https://www.nflconcussionsettlement.com/Docs/declaration_consent_substitute.pdf (last visited September 28, 2021).  There is no legal basis to prefer resolutions reached under the Resolution Protocol to Thrivest's resolution with Mr. McCullough, as memorialized in the Payoff Agreement. The only real difference is in the rate, and there has been and can be no allegation that Thrivest's rate—the lowest rate charged by any non-recourse funder in the NFL Concussion Class Action— is in any way unenforceable.  Indeed, Thrivest's agreement has been universally upheld by every arbitrator who has considered it.  What's more, the Court has derived its authority to oversee funding arrangements from an anti-assignment of claims provision in the Settlement Agreement, and the Third Circuit specifically found that Thrivest's agreement "gave [Thrivest] only the right to receive settlement funds after the funds are disbursed to a class member"—noting, "the District Court's power over the funds and class ends at that point."  In Re: National Football League Players' Concussion Injury Litigation, 923 F.3d 96, 113-13 (3d. Cir. 2019).  In other words, Thrivest's agreement did not violate the anti-assignment of claims provision.  The Court should enforce the Payoff Agreement and allow direct payment to Thrivest so that funders whose

agreements violate the Settlement Agreement are not afforded better treatment than Thrivest, whose agreement was found by the Third Circuit not to be in violation.  Indeed, there can be no justification for enforcing some agreed-upon resolutions, but not others merely because of the amount of interest to which the parties have agreed.  The Court should modify the Resolution Protocol to allow enforcement of the Payoff Agreement—and other agreed-upon payoffs—so as not to treat funders with agreements that violate the anti-assignment of claims provision better than it does Thrivest.

## III.  <u>CONCLUSION</u>

Thrivest respectfully requests that the Court grant this emergency consent motion to effectuate the parties' settlement allowing direct payment of the Loan Resolution Amount specified in the Payoff Agreement to Thrivest.

<div align="right">

Respectfully submitted,

/s/ Peter C. Buckley
Peter C. Buckley, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2000
(215) 299-2150 (facsimile)
*Attorneys for Thrivest Specialty Funding, LLC*

</div>

Dated: September 28, 2021

6

# EXHIBIT "1"

**NFL Concussion Settlement**
**In Re National Football League Players' Concussion Injury Litigation**
**No. 2:12-md-02323 (E.D. Pa.)**

**PAYOFF AGREEMENT**

**A.      PARTIES**

1.      <u>Settlement Class Member</u>:  George W. McCullough, Jr.

2.      <u>Funder</u>: Balanced Bridge Funding LLC fka Thrivest Specialty Funding

3.      <u>Covered Parties</u>.  The term "Settlement Class Member" includes his/her heirs, agents, guardians, successors, and assigns.  The term "Funder" includes all of its representatives, predecessors, successors, affiliates, subsidiaries, owners, officers, directors, employees, agents and insurers.  The term "Parties" refers to the Settlement Class Member and the Funder.

**B.      THE CONTRACT**

1.      <u>"Contract" Defined</u>.  As used in this Payoff Agreement, the term "Contract" means the original agreement between the Funder and Settlement Class Member, which is attached to this Agreement as "Exhibit A."

2.      <u>Date(s) of the Contract</u>: June 15, 2016

3.      <u>Status</u>.  There are now no pending actions between the Settlement Class Member and the Funder relating to the Contract.  Funder hereby warrants and represents that it has not assigned or transferred to any third party any claim, demand, or cause of action against the Settlement Class Member.

**C.      LOAN RESOLUTION AMOUNT**

1.      <u>"Loan Resolution Amount" Defined</u>.  As used in this Payoff Agreement, the term "Loan Resolution Amount" means the amount of money owed by the Settlement Class Member to the Funder under this agreed-upon resolution.

2.      <u>Loan Resolution Amount</u>.  The Loan Resolution Amount is $687,731.51 if received by Funder by September 30, 2021; $698,620.59 if received by Funder by October 31, 2021; and $709,682.08 if received by Funder by November 30, 2021 with an additional $374.55 per diem if received by Funder after November 30, 2021.

3.      <u>Resolution</u>.  The Claims Administrator may pay the Loan Resolution Amount to the Funder as the amount due from the Settlement Class Member to the Funder.

126416403.1

**D.   CONSIDERATION AND RELEASE**

1.   <u>Payment</u>.  The Funder agrees to accept from the Trustee of the Settlement Fund of the NFL Concussion Settlement the Loan Resolution Amount as consideration for this Payoff Agreement.

2.   <u>Mutual Release</u>.

(a)   Except with respect to the terms and conditions in this Agreement, effective immediately, the Settlement Class Member hereby fully and forever releases, acquits, terminates, and discharges the Funder from any and all claims (express or implied) which the Settlement Class Member ever had, now has, or may have against the Funder.

(b)   Except with respect to the terms and conditions in this Agreement, upon payment of the Loan Resolution Amount to the Funder, the Funder hereby fully and forever releases, acquits, terminates, and discharges the Settlement Class Member from any and all claims (express or implied) which the Funder ever had, now has, or may have against the Settlement Class Member.

3.   <u>Termination of the Contract</u>.  The Parties agree that, upon payment of the Loan Resolution Amount to the Funder, the Contract and any rights held under it will be terminated. The Parties further agree that, if the Settlement Class Member willfully and materially defaults on his obligations under this Payoff Agreement, the Funder shall be entitled to enforce the Contract and recover the full amount due under the Contract, including any enforcement costs.

4.   <u>Settlement Class Member</u>.  By signing this form, the Settlement Class Member:

(a)   Acknowledges the Contract with the Funder and that it is valid and enforceable;

(b)   Provides the Claims Administrator with consent to pay the Loan Resolution Amount directly to the Funder and deduct the Loan Resolution Amount from the Settlement Class Member's Monetary Award;

(c)   Agrees to use his best efforts to pay the Funder the Loan Resolution Amount as promptly as possible, including (i) by cooperating with any request or application by the Funder to be paid directly by the Claims Administrator, and (ii) wiring the Loan Resolution Amount to the Funder as soon as the bank releases any hold on the funds; and

(d)   Agrees to hold his Monetary Award, including but not limited to the Loan Resolution Amount, in trust for the Funder in a segregated account until the Loan Resolution Amount is paid to the Funder.

5.   <u>Entire Agreement</u>.  This Agreement sets forth the entire understanding between the Parties with respect to the payoff of the Settlement Class Member's obligations to the Funder.

126416403.1

6.     Execution.  This Agreement may be executed and delivered (including by fax or e-mail of a "pdf" or similar image of the executed signature page) in counterparts, each of which when so executed and delivered shall be an original, but both of which together shall constitute one and the same instrument.

**E.     SIGNATURE**

**Funder**

Signature _____

Name        Joseph R. Genovesi_____

Title        President_____

Date        9/27/21_____

**Settlement Class Member**

Signature _____

Name        George W. McCullough, Jr._____

Date        _____

STATE OF                          }:
                                        SS:
COUNTY OF                    }

On this, the __ day of _____, 2021, before me _____, the undersigned officer, personally appeared George W. McCullough, Jr., known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
          Notary Public

Printed Name: _____

My Commission Expires:

_____

3

6. **Execution.** This Agreement may be executed and delivered (including by fax or ... of a "pdf" or similar image of the executed signature page) in counterparts, each of which ... so executed and delivered shall be an original, but both of which together shall constitute ... and the same instrument.

E. **SIGNATURE**

EXHIBIT "A"

**Funder**

Signature _____

Name        Joseph R. Genovesi

Title        President

Date        _____


**Settlement Class Member**

Signature   _____

Name        George W. McCullough, Jr.

Date        9/25./21


STATE OF                         }:        SS:

COUNTY OF                        }

On this, the 25th day of September, 2021, before me _Sheanika Williams_, the undersigned officer, personally appeared George W. McCullough, Jr., known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

Case 3:15-md-02353-AB. Document 11100-1 Filed 11/15/21 Page 14 of 30

In witness whereof, I hereunto set my hand and official seal.

_Sheanika Williams_
          Notary Public

Printed Name: Sheanika Williams

My Commission Expires:

January 26, 2022

SHEANIKA WILLIAMS
Notary ID #131425082
My Commission Expires
January 26, 2022

3

126416403.1

# EXHIBIT "A"

# NON- RECOURSE FINANCE TRANSACTION

# (SALES AND PURCHASE AGREEMENT)

This **PURCHASE AGREEMENT** (this "Agreement") is entered into this 15th day of June, 2016 by and between, George W. McCullough, Jr., who resides at 121 Highland St., Texas City, TX 77591, and his/her agents, successors in interest, heirs, executors, representatives, successors and assignors ( hereinafter referred to collectively as "Seller"), and Thrivest Specialty Funding, LLC, a Delaware Limited Liability Company with its principal place of business located at 2 Penn Center Plaza, 1500 JFK Blvd., Suite 220, Philadelphia, PA 19102, and its' representatives, successors and assignors (hereinafter referred to collectively as the "Buyer").

*WHEREAS*, on April 22, 2015 the United States District Court for the Eastern District of Pennsylvania entered a Final Order and Judgment approving the Settlement in the matter of *In re: National Football League Player's Concussion Injury Litigation; Docket No: 2:12-md-02323-AB / MDL No. 2323 (the* "Settlement"). George W. McCullough, Jr. is an eligible claimant in the *Settlement* and has an anticipated financial award in the amount of $1,200,000.00 (the "Distribution").

*WHEREAS*, Seller has agreed to assign and sell, and Buyer has agreed to acquire and purchase, pursuant to the terms of this Agreement, all rights, title, benefits, and interests of Seller in and to the Distribution (as defined herein) until Buyer has collected $255,625.38 plus a 19% per annum investment return thereon accruing and compounding monthly (the "TSF Distribution") including all rights to payment of or on account of the TSF Distribution, and all proceeds of the Distribution until Buyer has collected the TSF Distribution.

*WHEREAS*, the parties agree that a true and accurate summary of the financial terms of this sale are accurately reflected in the Disclosure Statement below. (The Disclosure Statement shall be referred to herein as the "Disclosure Statement).

<div style="border-top: 3px solid black"></div>

## DISCLOSURE STATEMENT

Distribution:
The financial portion of the Settlement that the Seller is personally entitled to:      $1,200,000.00

TSF Distribution:
The portion of the Distribution that is being sold by the Seller and
purchased by Buyer:      $ 450,000.00

The TSF Purchase Price amount:
The dollar amount being paid to the Seller by Buyer as consideration for the
sale of the TSF Distribution (as set forth in Exhibit B hereof):      $ 255,625.38
            Payoff of prior liens and judgments:      $ 55,210.42
            Net payment to Seller:      $ 187,633.69

Transaction Fees (which shall not be deemed to be interest (if this agreement is characterized as a loan) to be paid by Seller:

| | |
|---|---|
| Origination Fee | $ 1,233.13 |
| Application Fee | $ 200.00 |
| Underwriting Fee | $ 2,466.25 |
| Due Diligence Fee | $ 3,699.38 |
| Lien/Judgment Search Fee | $ 2,466.25 |


Initial here

| | |
|---|---:|
| Broker Fee | WAIVED |
| Legal Fee | $ 2,466.25 |
| Closing Fee | $ 250.00 |
| Total Transaction Fees: | $ 12,781.27 |

**WHEREAS**, Seller is the holder of economic claims of loss for which Seller is entitled to receive consideration payable in connection with the Settlement (collectively, the "Distribution") and, for purposes of this Agreement, the Distribution (a) shall include (i) any monetary or non-monetary consideration (including the value of any non-monetary consideration) payable to, or on behalf of, Seller in connection with the Settlement (whether by suit, judgment, settlement, or otherwise), (ii) any consequential, actual, punitive, exemplary, or treble damages on account thereof, and (iii) any interest awarded or later accruing on the foregoing, and (b) shall be calculated and determined without taking into consideration and prior to deduction of (i) any taxes payable by Seller in connection with the Distribution, (ii) setoffs of any kind, including setoffs in respect of any claim or counterclaim asserted against Seller by any person, or (iii) fees and/or expenses incurred in connection with the Settlement or the collection of any Distribution; and

**WHEREAS**, the parties agree that this sale is without recourse against the Seller (other than by a breach as defined in this Agreement below). This means that in the event that the Buyer does not receive the full TSF Distribution as agreed upon in the Agreement, the Seller shall have no personal obligation to the Buyer to pay any portion of the TSF Distribution that is not received by the Buyer.

**NOW, THEREFORE**, in consideration of the above premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties, intending to be legally bound, hereby agree as follows:

**1.     ASSIGNMENT, CONSIDERATION, RIGHT OF FIRST REFUSAL AND PAYMENT OF THE TSF DISTRIBUTION.**

Seller hereby agrees to sell and assign to Buyer, his or her interest in the TSF Distribution and any future payments made in satisfaction of the TSF Distribution. Seller furthers agrees and represents that his/her interests in the TSF Distribution that are being assigned and sold are free and clear of any adverse interests in favor of, or obtained by third parties other than those liens/judgments specially set forth in this Agreement.

    (a) In consideration for the purchase of the TSF Distribution, Buyer agrees to pay Seller the sum of $255,625.38 (Two Hundred Fifty Five Thousand Six Hundred Twenty Five Dollars and 38 Cents) (the TSF Purchase Price as stated in the Disclosure Statement).

    (b) Seller agrees that Buyer may withhold from the TSF Purchase Price the amount of $55,210.42, to repay the current outstanding lien(s)/judgment(s) along with any penalties and interest that may have accrued with reference to Portfolio Recovery Associates, LLC and Cash4Case, Inc.

    (c) Seller agrees that Buyer may deduct the Transaction Fees set forth in the Disclosure Statement the amount of $12,781.27 from the TSF Purchase Price.

    (d) Seller hereby grants to the Purchaser a right of first refusal to purchase any or all remaining amounts in respect of the Award Amount. In the event the Seller seeks to or obtains any funding in respect

<div align="center">2</div>


Initial here

to the Award Amount from a source other than the Buyer, such event shall be deemed to be an event of default under Section 4 hereof. In the event that Seller should obtain any such financing (after the Buyer declines to purchase any such amount), all amounts due under this Agreement in respect to the TSF Distribution shall be paid in full before any such financing is obtained.

(e) Payment of the TSF Distribution shall be made in accordance and pursuant to the "Additional Documents" set forth in section 5.

(f) The TSF Distribution amount is set forth in Exhibit B hereto and made a part hereof and is denoted as the Repayment Schedule.

## 2.    GENERAL TERMS OF THE PURCHASE AND SALE

(a) Seller absolutely assigns, conveys, sells, sets over, transfers, and warrants to Buyer all rights, title, benefits, and interests of Seller in and to:

      (i)     The TSF Distribution, all rights to payment of or on account of the TSF Distribution, and all proceeds of Distribution until Buyer has collected the TSF Distribution; and

      (ii)    All rights of Seller to ask for, demand, sue for, collect, receive, and enforce payment of the Distribution and to enforce all other covenants and obligations in connection with the Distribution payable to Seller, and the rights and remedies of Seller, in respect of the Distribution, until Buyer has collected the TSF Distribution (collectively, the "Purchased Property"), in each instance free and clear of all claims, liens, interests and encumbrances (collectively, "Adverse Interests").

(b) As consideration for Seller's assignment and sale of the Purchased Property to Buyer (the "Transaction"), Buyer hereby agrees to pay to Seller, within three (3) business days after the date of this Agreement, $255,625.38 (the "TSF Purchase Price") by wire transfer pursuant to the wiring instructions for Seller (the date on which such payment is made, the "Payment Date").

(c) Within three (3) business days after Seller's collection and receipt, or the collection and receipt on Seller's behalf, of any Distribution, Seller shall distribute, or cause to be distributed, all such collections and receipts to Buyer, prior to paying any expenses of Seller or making any other distributions, until Buyer has received the TSF Distribution in full.   Until disbursement in accordance with the terms of this Section 2(c), Seller shall hold the Purchased Property and other Distributions in trust for Buyer.  Seller and Buyer intend and agree that the Transaction shall constitute a true sale and absolute transfer of the Purchased Property to Buyer, thereby providing Buyer with the full risks and benefits of ownership of the Purchased Property, and each of Seller and Buyer agrees that the this transaction shall be reflected on their respective books and records in a manner consistent with this intent and agreement.

(d) Notwithstanding that Seller and Buyer intend that this transaction to be a true sale, in an abundance of caution, in the event that such sale and assignment ever is characterized as a loan or other financial accommodation and not as a true sale, or that such sale shall for any reason be ineffective or unenforceable as such, each as determined in a judicial, administrative or other proceeding (any of which, a "re-characterization"), Seller hereby grants to Buyer a first-priority security interest within the meaning of Article 9 of the Uniform Commercial Code in effect as of the date hereof in

3


Initial here

the Commonwealth of Pennsylvania (the "UCC") in all of Seller's rights, title, benefits, and interests in and to the Distribution and any proceeds thereof in order to secure Buyer's advance of the TSF Purchase Price and Seller's obligation to pay the sum of (i) the Purchase Price, together with (ii) interest thereon from the day of disbursement of the TSF Purchase Price to the date of repayment in an amount equal to the TSF Purchase Price multiplied by (A) 19% per annum, accruing daily and compounding annually, or (B) if less, the maximum rate permitted by applicable law. Buyer may, at its option and in addition to all other rights provided to Buyer in this Agreement, and without Seller's signature or further authorization by Seller, file financing statements (including continuations and amendments thereto) under the UCC, to perfect Buyer's rights under this of this Agreement in Buyer's rights in and to the Distribution.

(e) Seller is represented in its interest in the Settlement by James W. Holliday, Esq. on behalf of Holliday Karatinos Law Firm, PLLC; Yerrid Law Firm; Gibbs & Parnell, P.A.; and Jeffrey D. Murphy, P.A., 18920 N. Dale Mabry Hwy #101, Lutz, FL 33538 – (813) 868-1887;

(f) Buyer and Seller fully acknowledge that this transaction is a true sale and assignment of the TSF Distribution and the full benefits of the transaction and assignment apply to the sale. Buyer and Seller acknowledge that even though Buyer is entitled to all of the benefits associated with the sale, Seller remains responsible for all obligations, representations, warranties, covenants and liabilities and expenses explicitly (and not explicitly) set forth in this Agreement and in respect to the Distribution.

(g) Seller agrees that it shall pay to Buyer the TSF Distribution as set forth in this Agreement and reflected accurately in the Disclosure Statement and that payment shall be made to Buyer from any funds received in full or in partial satisfaction of the Distribution, regardless of the source of those funds, before any payment is made from the Distribution to the Seller, or any other person.

(h) Seller irrevocably directs its attorney and/or representative responsible for the disbursement of the Seller's Distribution to pay Buyer the TSF Distribution prior to Seller receiving any payment from the Distribution in accordance with the terms of this Agreement.

(i) Whether the TSF Distribution is received in a lump sum or in multiple payments, Buyer's right to receive the full TSF Distribution shall be in priority and senior to Seller's right to receive any portion of the Distribution.

(j) If the Distribution amount is less than the anticipated amount and is insufficient to pay Buyer the TSF Distribution , then Buyer will be limited to the lesser Distribution received with no recourse to Seller for any remaining balance;

(k) If Seller recovers no money from the Distribution, the Seller shall owe nothing to the Buyer

## 3.   SELLER REPRESENTATIONS AND WARRANTIES

(a) Seller warrants and represents that Seller owns all right, title, and interest in the Distribution and acknowledges that it is selling and assigning the TSF Distribution to the Buyer.

(b) Seller warrants that Seller is legally entitled to the Distribution for which it has represented, and Seller further warrants that it owns the Distribution free and clear of any other liens, judgments and/or security interests than those set forth in Section 1 of this Agreement.

(c) Seller warrants that Seller has the unrestricted right to assign the TSF Distribution to Buyer and

4


Initial here

that it has not previously sold or assigned the Distribution, in whole or in part, to any other party. Upon Buyer's payment in full to Seller of the TSF Purchase Price, Buyer shall own all of the TSF Distribution, free and clear of liens, judgments, or other adverse interests.

(d) Seller warrants that Seller has the legal capacity and the mental competency to execute this Agreement and to perform all duties set forth within the terms of this Agreement and that it is doing so voluntarily and of its own free will.

(e) Seller warrants that Seller is under no contractual obligations or other restrictions that are adverse to Buyer's interests with regard to the terms of this Agreement and Seller's assignment and sale of the TSF Distribution. Seller warrants that the execution, delivery and performance of this Agreement, and the consummation of the transaction contemplated in this Agreement, does not violate any law, rule, regulation, order, other agreement, or other instrument.

(f) Seller warrants that there are no bankruptcy or insolvency proceedings in progress or in prospect, either personally or with regard to any entity owned, in whole or in part, that could affect the Distribution.

(g) Seller warrants that Seller is not the subject of any legal proceeding that could in any way adversely affect the terms of this Agreement, the Distribution, and the Buyer's right, title, or interest in the Distribution. Seller further warrants that the Distribution has not been and is not in jeopardy of being subject to a levy or any type of other adverse interest.

(h) Seller warrants that of the information Seller has provided to Buyer that is contained in this Agreement, as well as any information given prior to this Agreement is true, accurate and complete in all respects. Seller further acknowledges that Buyer has relied and will continue to rely on this information in acquiring, protecting and otherwise dealing with the TSF Distribution.

(i) Seller warrants that Seller has not engaged in any acts or conduct, or made any omissions that could potentially result in Buyer receiving less than the full amount of the TSF Distribution, and that there are no other parties that hold a similar interest in the Distribution.

(j) Seller warrants that Seller has paid all federal, state and local taxes due through the date this Agreement is to be executed, or, has made adequate and acceptable terms for any tax payment due with the appropriate tax agency responsible for accepting such payment.

(k) Seller warrants that there are no outstanding: (i) tax liens or judgments against Seller or the Distribution, (ii) no obligations owed by Seller to any County, City or State Government entity; or (iii) any other liens owed to the United States Government or other person or entity for any social service or other benefit that Seller has received and is obligated to pay; including but not limited to child support and/or alimony.

(l) Seller warrants that Seller possesses the mental capacity to understand the terms set forth in this Agreement. Seller further understands that once it signs this Agreement it will become a legally binding document whereby Seller will have forever assigned and sold a portion of their financial recovery from their legal claim. Seller understands that in exchange for receiving money now from the Buyer, instead of waiting to receive it later, there is a cost to be paid by Seller. Seller further acknowledges that the financial cost associated with assigning and selling a portion of Seller's financial recovery is accurately summarized in the Disclosure Statement. Seller acknowledges that Seller has reviewed and fully understands the Disclosure Statement and the financial benefits and costs reflected with the sale. Seller further warrants that Seller is of legal age to enter into the Agreement and has the authority to accept its terms.

4.      COVENANTS OF SELLER.

Seller covenants and agrees with Buyer, as follows:

5

GNL
Initial here

(a) Seller shall use its best efforts to collect the TSF Distribution and take all steps to make it available to the Buyer when due;

(b) Seller shall not negotiate or enter into any agreement to reduce or modify the TSF Distribution;

(c) Seller shall immediately notify the Buyer of any change in the terms of the Settlement as it applies to the Seller;

(d) Upon request of the Buyer, Seller shall provide Purchaser with updates, including status and documentation changes, if any, in respect of the Settlement, Distribution, or the TSF Distribution;

(e) Seller shall execute such additional documents and take such further action as may be reasonable necessary for the Buyer to perfect any and all interests of the Buyer in respect of the TSF Distribution;

(f) If the Seller becomes a party to any tax lien dispute with any governmental agency or incurs any judgement against it, Seller shall immediately notify Buyer of same.

(g) Sell shall promptly pay all federal and state taxes.

(h) Seller will not issue any Form 1099 to Buyer in connection with the TSF Distribution

(i) Seller shall notify Buyer in writing if there is any change in his/her legal of other representation.

## 5.   BREACH BY SELLER

(a) A breach of this Agreement shall occur upon one of the following events:

   i.   Seller breaches any representation or warranty contained in this Agreement. If a breach occurs with regard to any representation or warranty set forth herein, Buyer agrees to give Seller a five (5) day period to cure any breach.

   ii.   Seller files for bankruptcy;

   iii.   Seller incurs any federal, state or other tax lien or judgment;

   iv.   Seller fails to stay current in any federal, state or other tax payment due;

   v.   Seller becomes the subject of a civil lien and/or civil judgment;

   vi.   Seller becomes indebted to any present or former spouse for support, maintenance or similar obligations, or become indebted to any child or to a guardian of any child for any child support or similar payments;

   vii.   Seller is convicted of a felony involving a crime of fraud, theft, perjury, or moral turpitude;

   viii.   Seller engages in any other action or behavior that could encumber the Seller's Distribution.

   ix.   Seller fails to immediately notify Buyer of receipt of any partial payment of the Distribution and fails to pay that amount to Buyer (or the balance of any amount still due to Buyer) in accordance with the terms of this Agreement.

   x.   Seller breaches Section 1(g) of this Agreement.

(b) Buyer and Seller agree that in addition to any other legal rights and remedies available to Buyer for any breach by Seller, Buyer shall be entitled to enforce Seller's obligations hereunder by court injunction, or court ordered affirmative action, which injunction or ordered action may also serve

6


Initial here

to restrain a future breach of this Agreement if there is reasonable ground to believe that such a breach is threatened.

(c) If Seller breaches this Agreement, Buyer may terminate their obligations under this Agreement and shall be entitled to the full payment from Seller of the TSF Distribution as, plus interest calculated at 19% per annum or the maximum rate permitted by law in the event this transaction is re-characterized as a loan, whichever is less, calculated from the date of payment of the TSF Purchase Price to the date of repayment.

(d) If Seller breaches this Agreement, Seller shall pay to Buyer all costs and expenses incurred by Buyer (including reasonable attorney's fees) paid to enforce the terms of the Agreement.

(e) If Seller breaches this Agreement, Seller shall notify its attorney, representative, or agent responsible for the distribution of the TSF Distribution to issue payment to Buyer in order to satisfy Seller's obligations under this Agreement. Buyer may further directly notify Seller's attorney or representative responsible for the TSF Distribution and request that such attorney or representative make direct payment of all monies due and owing to Buyer without any further authorization by Seller.

## 6.  MISCELLANOUS PROVISIONS

(a) Any required notice set forth herein by either party shall be in writing and (i) delivered by overnight courier, (ii) certified mail, or (iii) transmitted by facsimile and confirmed by a similar mailed writing, to the following address (email is specifically excluded as a proper form of notice):

> As to Buyer:
> Thrivest Specialty Funding, LLCSF
> 2 Penn Center Plaza, 1500 JFK Blvd
> Suite 220 Philadelphia, PA, 19102,
> ATTN: Joseph Genovesi
>
> As to Seller:
> George W. McCullough, Jr.
> 121 Highland St
> Texas City, TX 77591

(b) <u>Right to Sue.</u> The parties to this Agreement acknowledge (i) the Buyer is in no way acquiring the Seller's right to sue in regard the Settlement, (ii) the TSF Purchase Price received by Seller from Buyer will be used for immediate economic and personal necessities or other purposes that Seller deems important, (iii) the Seller or other class representative has already made the claim in the Settlement and the claim in the Settlement has been settled, (iv) Seller and Buyer acknowledge Buyer will in no way be involved in or influence the decisions Seller and its attorney make in connection with the Seller's claim and that the right to make those decisions remains solely with Seller and Seller's attorney.

(e) <u>Bankruptcy.</u> Seller is not presently, nor intends to be, a party to any action or proceeding for relief under any federal or state bankruptcy or insolvency law or appointment of a trustee or receiver for all or any portion of Seller's assets including the Distribution. In the event Seller commences or has commenced against it, any case, or other proceeding, pursuant to any bankruptcy, insolvency or similar law prior to full payment of the TSF Distribution amount, Seller shall cause the TSF Distribution amount to be categorized as an asset of Buyer and not of Seller. In no event shall Seller



permit Buyer's share to be described as a debt obligation of Seller in any such proceeding, except as may be required by law.

(f) <u>Pledge Rights.</u> Seller hereby relinquishes any rights to sell, assign, pledge or transfer any rights in the TSF Distribution that it is entitled to from the Settlement other than to Buyer.

(g) <u>Other Advances.</u> Seller acknowledges that Seller may not solicit or accept funding or advances against the TSF Distribution from any other source or funding company unless and until Thrivest Specialty Funding, LLC, is first paid in full.

(i) <u>Counterparts.</u> This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument. A faxed signature of this Agreement shall be effective to bind such party to the terms hereof, but an original of such signature shall be promptly forwarded to the other party.

(j) <u>Integration.</u> This Agreement constitutes the complete agreement and understanding of the parties with respect to the subject matter hereof, supersedes any prior agreements or understandings of the parties (whether oral or written) with respect to the subject matter hereof and may be amended only in a writing signed by the parties.

(k) <u>Enforceability of Agreement.</u> If any provision of this Agreement is held to be illegal, void or unenforceable, such provision shall be of no force or effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality or enforceability of, any other provision of this Agreement.

(l) <u>Construction.</u> For purposes of construction, this Agreement shall be deemed to have been jointly drafted by the respective parties and their counsel, and the rule of construction of contracts that ambiguities are construed against the drafting party shall not be applied against any person.

(m) <u>Governing Law.</u> This Agreement shall be construed in accordance with and be governed by the laws of the Commonwealth of Pennsylvania without regard to conflicts of laws principles.

(n) <u>Successors and Assigns.</u> This Agreement is binding upon, and shall inure to the benefit of, the parties, and their respective heirs, executors, administrators, successors and assigns.

(o) <u>The Parties Joint Representations and Warranties.</u> Each party hereto represents and warrants that (i) it has carefully read this Agreement in its entirety; (ii) it has had an adequate opportunity to consider this Agreement and to consult with independent counsel of its choice regarding its terms; (iii) it understands all of the terms hereof; (iv) it has relied wholly upon its individual judgment, belief and knowledge of the nature, extent and effect of the terms contained in the Agreement, including the summary of financial terms set out in the Disclosure Statement contained herein; (v) it voluntarily assents to all of the terms and conditions contained herein; and (vi) it is authorized to sign this Agreement on behalf of the party for whom it has executed this Agreement.

(p) <u>Attorney Review.</u> Seller has been advised by Buyer to discuss this matter and to review this Agreement with an attorney prior to signing it. Seller acknowledges that it has either received such counsel, or has expressly waived it.

(q) <u>Additional Documents.</u> As a condition to Buyer's obligations hereunder, Seller has provided Buyer with an executed copies of the following documents: (1) Irrevocable Authorization and Directive;

8


Initial here

(2) Limited Irrevocable Power of Attorney; (3) Attorney Acknowledgment and Notice of Assignment; (4) Certification of Seller; and (5) Medical doctor's letter attesting to mental competency.

(u) Notice of Assignment by Seller's Attorney.  Seller shall make a demand of his or her attorney to acknowledge and sign the Attorney Acknowledgement and Notice of Assignment. . If Seller changes his or her attorney subsequent to the execution of this Agreement, Seller shall have a continuing obligation to demand the newly retained attorney acknowledge and sign a new Attorney Acknowledgement and Notice of Assignment under the terms set forth in subsection (u) above. If Seller fails to obtain such attorney's signature, Buyer shall have the right to maintain and enforce its rights under the Agreement.

(x) Case Updates.  In the event that the Seller and or its attorney fail to provide updates and or relevant information regarding the Settlement claim to Buyer, Buyer shall be entitled to notify the Seller's attorney to inquire about the status of the Award Amount, a Settlement claim and/or the Seller's Distribution from the Settlement.

(y) Indemnification.  Seller agrees to indemnify Buyer for any and all claims, losses, liabilities, obligations, damages, penalties, judgments, suits, causes of action, and related costs and expenses of any nature (including attorney's fees) suffered by Buyer due to Seller's misrepresentation, breach of warranty, or failure to perform any covenant of this Agreement.

(z) Execution.  This Agreement has been properly executed by the Seller and represents the Seller's legal, valid and binding obligation, enforceable in accordance with its terms and inures to the benefit of the parties hereto and their respective successors-in-interest, heirs, executors, representatives, successors and assigns.

(aa) Assignment.  Buyer and any party to whom Buyer assigns this Agreement may assign its right, title, and interest in and to this Agreement including the TSF Distribution without any further authorization or approval from Seller. Furthermore:

    a.  If Buyer assigns its rights to a third party, Buyer shall not be responsible to Seller and Seller may look solely to such third party for performance of this Agreement.

    b.  Upon request of Buyer or assignee of Buyer, Seller shall execute and deliver any documents, as either party reasonably requires, for performance of this Agreement.

    c.  In no event shall Seller be permitted to assign its rights in this Agreement.

(bb)      Prior Funding.  In the event Seller has received prior funding from Buyer this Agreement does not supersede the amounts due pursuant to any prior funding agreement between Seller and Buyer, unless specifically set forth herein, and the terms and payoff schedule of such prior agreement are incorporated herein.

(cc)      <u>Fraud or Misrepresentation.</u>  If Seller has made a material misstatement, or committed a fraudulent or criminal act either in connection with this transaction or in a matter that would adversely and significantly impact the funding of the TSF Purchase Price, Buyer shall have the right to file for a Declaratory Judgment in order to determine whether such statement or act was fraudulent. In the event that a court and or arbitrator determines that Buyer was fraudulently induced into entering into this Agreement, Buyer shall be entitled to recover the amount of the TSF

9


Initial here

Purchase Price, plus legal interest rate from the date of this Agreement, plus attorneys' fees and costs.

(dd)    <u>Buyer Risk Factors.</u>  Seller acknowledges and understands that the cost of entering into this Agreement is expensive and that the Buyer is taking a significant risk engaging in this purchase and sale transaction. Seller is advised by Buyer to explore other sources of funding, including loans that may be available to Seller at more favorable terms.

(ee)    <u>Seller Review.</u>  Seller has had a full and complete opportunity to consult with an attorney and/or other advisors before entering into this Agreement. This Agreement and its terms have been fully explained to Seller and all questions that Seller might have about this transaction and/or Agreement have been fully explained.

(ff)    <u>No Brokers.</u> I represent and warrant that I have not used any broker in connection with this Agreement other than N/A ("Broker"), who is representing me pursuant to a separate broker agreement. I acknowledge and agree that Buyer may (but shall not be obligated to): (i) pay to Broker any fees due under such broker agreement ("Broker Fee"); and (ii) deduct such Broker Fee from the Purchase Price. I agree to indemnify Buyer for any and all loss or damage which Buyer sustains by reason of my use of any broker, including but not limited to attorneys' fees and cost incurred by Buyer.

(gg)    <u>Rescission.</u>  Seller may rescind this Agreement within five (5) business days following the Seller's execution of this Agreement, without penalty or further obligation.

(hh)    <u>Dispute Resolution.</u>  Notwithstanding anything to the contrary herein,  Buyer and Seller unconditionally agree that any dispute, controversy or claim arising out of, or relating in any way to this purchase and sale Agreement, including without limitation, any dispute concerning the construction, validity, interpretation, enforceability, alleged breach by either party, and/or any other term set forth in the Agreement shall be exclusively resolved by binding arbitration upon Buyer or Seller submitting the dispute to the American Arbitration Association within 30 days of written notice to the other party. Within thirty (30) days of notice of a dispute, Buyer and Seller agree to meet at an agreed upon location in Philadelphia, PA to attempt to resolve the dispute in good faith without the necessity of moving forward with binding Arbitration though the American Arbitration Association. Should the dispute not be resolved between the parties within 60 days of the above referenced meeting, either party may seek remedies exclusively through a binding arbitration request to the American Arbitration Association and/or one of their representatives. Both parties to this Agreement agree that if arbitration becomes necessary, the process and procedure including naming of the arbitrator/s shall be governed by American Arbitration Association's suggested guidelines and/or procedures. The final decision made through the Arbitration shall be binding on both parties. Either Buyer or Seller may apply (in the event of an emergent issue) to a Pennsylvania state or federal court for interim or emergent relief, including without limitation a proceeding to compel arbitration as set forth above. Any arbitration shall be conducted within the jurisdiction of the Commonwealth of Pennsylvania. The laws of the Commonwealth of Pennsylvania shall be applied in any arbitration proceeding, without regard to principles of conflict of laws. It is the intent of the parties that, barring extraordinary circumstances, arbitration proceedings will be concluded within one hundred and twenty 120 days from the date the arbitrator/s are appointed. The arbitrator/s may extend this time limit in the interests of justice. Except as may be required by law, neither party nor its' representative/s may disclose the existence, content, or results of any arbitration hereunder without the express prior written consent of both Buyer and Seller. Both Buyer and Seller shall exchange a copy of all exhibits intended for use at the arbitration hearing and shall identify each witness who will testify at the arbitration, with a summary of the anticipated



testimony of such witness no later than ten (10) days before the arbitration hearing. The arbitrator shall award interest from the time of the dispute/breach to the time of the arbitration award at the rate of interest if this transaction is re-characterized as a loan at the maximum rate permitted by law in the Commonwealth of Pennsylvania. The cost of the arbitration proceeding shall be borne by the unsuccessful party to the arbitration.

(ii) It is specifically understood and agreed to by the parties that either of them may enforce any award rendered pursuant to the arbitration provisions of this section by moving to compel the award in the appropriate Pennsylvania court. Lastly, the parties agree that the arbitrator shall have authority to grant injunctive or other forms of equitable relief to either party.

(jj) SELLER HEREBY WAIVES THE RIGHT TO CONSOLIDATE UNDER ANY MULTI DISTRICT LITIGATION OR OTHER CONSOLIDATION, OR BECOME PART OF A CLASS ACTION, OR ANY OTHER PROCEEDING, CONTROVERSY, ARBITRATION AND/OR DISPUTE OF ANY NATURE INVOLVING ANY PERSON OR ENTITY WHO IS NOT A PARTY TO THIS AGREEMENT. WHETHER ANY CLAIM HEREUNDER IS DECIDED BY ARBITRATION OR BY TRIAL BY A JUDGE, THE PARTIES AGREE AND UNDERSTAND THAT THE EFFECT OF THIS AGREEMENT IS THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JUSRY TO THE EXTENT PERMITTED BY APPLICABLE LAW.

(kk) **IMPORTANT NOTICE**

**SELLER UNDERSTANDS THAT THIS IS A COMPLEX FINANCIAL TRANSACTION. BY SIGNING THIS AGREEMENT, SELLER IS ASSIGNING ITS RIGHTS TO A PORTION OF THE AWARD THAT SELLER MAY RECEIVE IN REGARD TO THE CASE. IN RETURN FOR SELLER'S ASSIGNMENT, SELLER WILL RECEIVE AN IMMEDIATE CASH PAYMENT THAT IS SIGNIFICANTLY LESS THAN THE PORTION OF THE AWARD THAT SELLER IS ASSIGNING. SELLER IS STRONGLY ENCOURAGED BEFORE SIGNING THIS AGREEMENT TO CONSULT WITH AN ATTORNEY AND/OR TRUSTED FINANCIAL ADVISOR OF SELLER'S CHOICE, WHO CAN ASSIST SELLER IN DETERMINING WHETHER THIS TRANSACTION WILL BEST FULFILL SELLER'S FINANCIAL NEEDS AND OBJECTIVES AND PROTECT SELLER'S INTERESTS IN THE EVENT SELLER CHOOSES TO PROCEED WITH THIS TRANSACTION.**

(ll) The Seller agrees to keep this Agreement confidential and not to disclose the existence of this Agreement or its terms, except as required by law.

11


Initial here

The Buyer and Seller named below do hereby agree to all of the terms set forth above and contained within this Agreement and signed on this 15th day of June, 2016:

**BUYER:** THRIVEST SPECIALTY FUNDING, LLC

By: _Joseph R. Genovesi_         Date: _____

Title: _____ President/CIO _____

**SELLER:** GEORGE W. MCCULLOUGH, JR.

By: _George W. McCullough II_      Date: _6/22/16_
     George W. McCullough, Jr.

_Jennifer Hull_              Date: _6/22/16_
     Jennifer Hull, As Durable Power of
     Attorney for George W. McCullough, Jr.

Notary acknowledgement appears on the next page

12

GM
*Initial here*

STATE OF _Tx_          }:      ss: 452.43.4100
COUNTY OF _Galveston_  }

On this, the _22nd_ day of _June_____, 20 _16_, before me
_Espanola Johnson_____, the undersigned officer, personally appeared
_____, known to me (or satisfactorily proven) to be the
person whose name subscribed to the within instrument, and acknowledged that _____
(he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Espanola Johnson_____
          Notary Public

Printed Name: _Espanola Johnson_

My Commission Expires:

_7-10-2017_____

ESPANOLA JOHNSON
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 07-10-2017

STATE OF _TX_          }:      ss: 452.43.4100
COUNTY OF _Galveston_  }

On this, the _22nd_ day of _June_____, 20 _16_, before me
_Espanola Johnson_____, the undersigned officer, personally appeared
_George McCullough_____, known to me (or satisfactorily proven) to be the
person whose name subscribed to the within instrument, and acknowledged that _____
(he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Espanola Johnson_____
          Notary Public

Printed Name: _Espanola Johnson_

My Commission Expires: _7-10-2017_____

ESPANOLA JOHNSON
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 07-10-2017

Last Page of Agreement

13



Initial here

## Exhibit B – Repayment Schedule

### TSF Distribution Due if Repaid by:

| | | | |
|---|---|---|---|
| June 30, 2016 | $259,672.78 | December 31, 2017 | $344,532.90 |
| July 31, 2016 | $263,784.27 | January 31, 2018 | $349,988.01 |
| August 31, 2016 | $267,960.85 | February 28, 2018 | $355,529.48 |
| September 30, 2016 | $272,203.56 | March 31, 2018 | $361,158.70 |
| October 31, 2016 | $276,513.45 | April 30, 2018 | $366,877.04 |
| November 30, 2016 | $280,891.58 | May 31, 2018 | $372,685.93 |
| December 31, 2016 | $285,339.03 | June 30, 2018 | $378,586.79 |
| January 31, 2017 | $289,856.90 | July 31, 2018 | $384,581.08 |
| February 28, 2017 | $294,446.30 | August 31, 2018 | $390,670.28 |
| March 31, 2017 | $299,108.37 | September 30, 2018 | $396,855.90 |
| April 30, 2017 | $303,844.25 | October 31, 2018 | $403,139.45 |
| May 31, 2017 | $308,655.12 | November 30, 2018 | $409,522.49 |
| June 30, 2017 | $313,542.16 | December 31, 2018 | $416,006.60 |
| July 31, 2017 | $318,506.58 | January 31, 2019 | $422,593.37 |
| August 31, 2017 | $323,549.60 | February 28, 2019 | $429,284.43 |
| September 30, 2017 | $328,672.47 | March 31, 2019 | $436,081.43 |
| October 31, 2017 | $333,876.45 | April 30, 2018 | $442,986.05 |
| November 30, 2017 | $339,162.82 | May 31, 2018 | $450,000.00 |

NOTE: If distribution of the TSF Distribution amount has not been paid to TSF by the last date of the above repayment schedule, interest will continue to accrue at the same rate as described in the Non-Recourse Purchase Agreement until distribution occurs.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on September 28, 2021, he filed the foregoing using the

ECF system, which will provide notice and a copy to counsel of record and by US Mail and email

to:

George W. McCullough, Jr.
12400 Shadow Creek Parkway, #102
Pearland, TX 77584
Gmac292002@yahoo.com


/s/ Peter C. Buckley
Peter C. Buckley, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2000
(215) 299-2150 (facsimile)
*Attorneys for Thrivest Specialty Funding, LLC*

126496948.2