Case No. ___

_____

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____

### IN RE: THRIVEST SPECIALTY FUNDING, LLC

_____

THRIVEST SPECIALTY FUNDING, LLC
n/k/a BALANCED BRIDGE FUNDING LLC,
Petitioner,

v.

HONORABLE ANITA B. BRODY, JUDGE OF THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA,
Respondent.

_____

**PETITION FOR WRIT OF MANDAMUS**
Case No. 12-md-02323 (E.D. Pa.)

**FOX ROTHSCHILD LLP**

Peter C. Buckley, Esquire
Attorney I.D. No. 93123
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103-3222
Tel: (215) 299-2854
Fax: (215) 299-2150
pbuckley@foxrothschild.com

*Attorneys for Petitioner,*
*Thrivest Specialty Funding, LLC*
*n/k/a Balanced Bridge Funding LLC*

December 2, 2021

Pursuant to 28 U.S.C. §1651 and Rule 21(a) of the Federal Rules of Appellate Procedure, Thrivest Specialty Funding, LLC n/k/a Balanced Bridge Funding LLC ("Thrivest") applies for a writ of mandamus directed to the Honorable Anita B. Brody, Judge of the United States District Court for the Eastern District of Pennsylvania in In re: National Football League Players' Concussion Injury Litigation (the "NFL Concussion Class Action").

## I.   **INTRODUCTION**

This petition concerns the District Court's continued failure to implement this Court's clear guidance regarding funding agreements in the NFL Concussion Class Action.  The Court of Appeals rejected the District Court's blanket invalidation of funding agreements, in particular, finding that Thrivest's agreement did not constitute an improper assignment of rights or claims under Section 30.1 of the NFL Concussion Class Action Settlement Agreement.  Nevertheless, the District Court continues to subject Thrivest to its February 20, 2018 Order (the "Direct Payment Order"), which instructed the Claims Administrator to "pay directly to the Settlement Class Member any and all Monetary Awards in cases where there has been found an ***improper assignment*** of any right or claim pursuant to Section 30.1 of the Settlement Agreement."  (Direct Payment Order [Dkt. 9749], Exhibit 1) (emphasis added).  The Claims Administrator has implemented the Direct Payment Order through a set of "Rules Governing Payment of Claims Involving Third-Party Funders" (the

"Payment Rules"); the Payment Rules require direct payment of awards to Settlement Class Members whenever *any* funding is involved. (Payment Rules effective March 19, 2020, attached as Exhibit A to Declaration in Support of Motion to Amend Payment Rules, Exhibit 2).[1] Applying the Direct Payment Order (through the Payment Rules) to Thrivest violates the Third Circuit's specific findings regarding Thrivest's agreement. Moreover, by paying Settlement Class Members directly, the District Court is *de facto* undermining enforcement of Thrivest's agreements by creating a "Wild West" enforcement paradigm that is inefficient, inequitable and not in the best interests of Settlement Class Members or the administration of justice. Mandamus is necessary to enforce the Third Circuit's prior mandate.

Consistent with the Third Circuit's directive in concluding an earlier mandamus action (In re: Thrivest Specialty Funding, LLC, No. 19-3149), Thrivest raised its concerns with the District Court in a June 28, 2021 Motion to Amend Rules Governing Payment of Claims (the "Motion to Amend Payment Rules"). (Motion to Amend Payment Rules [Dkt. 11422], Ex. 2). Pointing to the Third Circuit's earlier findings and detailing the chaos and irreparable harm wrought by the Payment Rules, Thrivest sought to reform the Payment Rules to permit direct payment only to *pro se* Settlement

---

[1] The Payment Rules are available at: https://www.nflconcussionsettlement.com/Docs/rules_governing_payment_of_claims.pdf, last visited December 1, 2021.

Class Members or if a tribunal of competent jurisdiction has found that the funding agreement violates Section 30.1 of the Settlement Agreement. (Id.). Class Counsel opposed Thrivest's motion on July 19, 2021 and Thrivest filed a reply on July 29, 2021. (Class Counsel Response [Dkt. 11440], Exhibit 3; Thrivest Reply [Dkt. 11448], Exhibit 4). Four months have since passed and the District Court has not addressed Thrivest's motion. Meanwhile, the Payment Rules continue to undermine Thrivest's ability to enforce its agreements—in some cases, *de facto* invalidating Thrivest's agreement even though the Third Circuit expressly reversed the District Court's invalidation order. As such, mandamus is also necessary because the District Court's delay in adjudicating Thrivest's Motion to Amend Payment Rules is tantamount to a failure to exercise jurisdiction; it leaves in place the challenged Payment Rules without triggering an opportunity to appeal.

Having exhausted its avenues for relief in the District Court, Thrivest seeks this Court's assistance to avoid irreparable injury to its interests as well as to the interests of Settlement Class Members whose decisions may be influenced by the implicit bias against Thrivest's agreement that has been embedded in the Payment Rules in violation of this Court's mandate.

## II.   **STATEMENT OF FACTS**

On December 8, 2017, the District Court issued an order (the "Invalidation Order") purporting to void in their entirety all cash advance agreements between

Class Members in the NFL Concussion Class Action and funding companies, including Thrivest. (Invalidation Order [Dkt. 9517], Exhibit 5). The Court held that "Class Members are prohibited from assigning or attempting to assign any monetary claims" by Section 30.1 of the Settlement Agreement. (Id. at p. 4). Finding that funding transactions involve the improper assignment of monetary claims, the Court ruled that "any such purported assignment is void, invalid, and of no force and effect." (Id.). On that basis, the Court prohibited the Claims Administrator "from paying a Class Member's monetary award to any third party that holds an assignment or an attempted assignment." (Id. at p. 1). At the conclusion of its Invalidation Order, the Court indicated that "[f]urther instructions to the Claims Administrator will follow." (Id. at p. 5).

On February 20, 2018, further instructions followed; the Court issued the Direct Payment Order, instructing the Claims Administrator to "pay directly to the Settlement Class Member any and all Monetary Awards in cases where there has been found an ***improper assignment*** of any right or claim pursuant to Section 30.1 of the Settlement Agreement." (Direct Payment Order, Ex. 1) (emphasis added).

Two days later, the Special Masters adopted the first iteration of the Payment Rules, then known as the "Rules Governing Assignment of Claims." (Rules Governing Assignment of Claims effective as of February 22, 2018 (the "2018 Payment Rules"), attached as Exhibit B to Declaration in Support of Motion to Amend

4

Payment Rules, Ex. 2).  The 2018 Payment Rules set forth a procedure by which the "Claims Administrator and the Special Masters will assess the terms of a 'Third-Party Funder Transaction' to determine whether they reflect the attributes of a Prohibited Assignment under the [Invalidation Order]."  (Id. at Rule 6).  Following that determination, the 2018 Payment Rules provided that "[t]he Claims Administrator will direct the Trustee to pay Monetary Claims **with a Prohibited Assignment** directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*."  (Id. at Rule 8(c)) (emphasis added).  In accordance with these new procedures, the Claims Administrator began a practice of paying Monetary Awards directly to Settlement Class Members whenever the Class Member had entered into a funding transaction; this practice included Settlement Class Members that had contracted with Thrivest.

In an appeal decided on April 26, 2019, this Court vacated the Invalidation Order in part, reversing the District Court's decision "to the extent [it] purported to void the cash advance agreements in their entirety and void contractual provisions that went only to a lender's right to receive funds after the player acquired them." In re: National Football League Players' Concussion Injury Litigation, 923 F.3d 96, 113 (3d. Cir., Apr. 26, 2019).  In so ruling, this Court explained that, while the District Court had authority to void "true assignments" that violate Section 30.1 of the Settlement Agreement by "allow[ing] a litigation funding company to step into

the shoes of a class member and pursue the class member's rights through the claims process," "[t]he District Court's authority certainly does not extend to how class members choose to use their settlement proceeds after they are disbursed." Id. at 111.

Within this framework, the Court of Appeals specifically addressed Thrivest's agreement, noting Thrivest "obtained no right to submit a claim directly to the Claims Administrator and instead acquired only the right to receive settlement funds after the Claims Administrator had paid out the awards to the particular class members with whom they contracted." Id. at 101. In other words, because "Thrivest's contract gave it only the right to receive settlement funds after the funds are disbursed to a class member," the Third Circuit found that Thrivest's agreement did not include an improper assignment subject to the District Court's oversight. Id. at 112. As such, the Third Circuit reversed the Invalidation Order in pertinent part and vacated the Court's order enjoining Thrivest from pursuing arbitration to enforce its agreement. Id. at 113.

The Third Circuit issued its mandate on May 20, 2019.

After the Third Circuit's decision, the Claims Administrator did not meaningfully revise the 2018 Payment Rules until after Thrivest commenced a mandamus action seeking revisions consistent with the Third Circuit's guidance; this earlier mandamus action was captioned In re Thrivest Specialty Funding, LLC, No.

19-3149 (3d Cir.).  On September 27, 2019, soon after Thrivest's mandamus filing, the District Court issued a Notice directing "the Claims Administrator to review its guidance and rules regarding third-party funder agreements and propose a streamlined and concise version that is more user-friendly." (Notice [Dkt. 10858], Exhibit 6).  "[C]onfident that the District Court's oversight of the settlement is faithfully adhering" to its prior decision, the Third Circuit denied Thrivest's mandamus petition without prejudice on October 31, 2019, noting that "[a]ny further concerns should first be raised with the District Court by motion."  See In re: Thrivest Specialty Funding, LLC, No. 19-3149 (3d Cir.), Doc. 003113392583.  The Clerk's Order went on to say that "Thrivest is free to appeal the denial of a motion in due course or to re-file a petition with this Court."  Id.

On March 19, 2020, the Special Masters adopted the Payment Rules—a revision that replaced the 2018 Payment Rules.  (Payment Rules effective March 19, 2020, Ex. 2(A)).  The new Payment Rules eliminated the process whereby the Claims Administrator had been deciding whether a funding agreement should be characterized as a "Prohibited Assignment" under the Invalidation Order.  (Id.).  Nevertheless, in the absence of any finding of an improper "true assignment," the new Payment Rules direct the Claims Administrator to pay Monetary Awards directly to Settlement Class Members whenever *any* funding is involved—unless the funding company elects to participate in the Court's "Third-Party Funder Resolution

Protocol."[2]  (Id. at Rule 7).  This directive is mandatory and applies to all Settlement Class Members that received funding.  (Id.).  Under the Payment Rules, all funding transactions are treated as "improper assignments" subject to the Direct Payment Order.  Notwithstanding this implicit bias against funding, the Payment Rules expressly disclaim any connection between these direct payments and the enforceability of funding agreements:

> This payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations. For instance, Settlement Class Members receiving such direct payments might be sued by a Third-Party Funder. A Settlement Class Member SHOULD NOT assume that his/her receipt of direct payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.

(Id. at p. 4) (emphasis in original).  In accordance with these Payment Rules, the Claims Administrator has continued its practice of paying Monetary Awards directly

---

[2] The Third-Party Funder Resolution Protocol is another Court-sponsored effort to undermine funding agreements on the basis of the since-rejected reasoning that funding agreements are "improper assignments."   The protocol is available at https://www.nflconcussionsettlement.com/Docs/third_party_funding_resolution_pr otocol_rules.pdf, last visited December 2, 2021.

Recognizing that direct payment of Monetary Awards to Settlement Class Members poses collection risk to funders, the "protocol" allows a funding company to receive payment directly from the Claims Administrator (eliminating that risk), but only if the funding company agrees to terminate its existing contractual rights and renegotiate a new agreement with the Settlement Class Member.  In other words, the protocol leverages the collection risk created by the Direct Payment Order and the Payment Rules to create an opportunity for Settlement Class Members to renegotiate more favorable terms.  The existence of Third-Party Funder Resolution Protocol further underscores the need for mandamus relief.

to Settlement Class Members whenever funding is involved.

In Thrivest's experience, these direct payments have undermined enforcement of its agreements, encouraged Settlement Class Members to render themselves judgment-proof or bankrupt by spending, gambling or otherwise wasting their Monetary Awards, and resulted in inefficient and inequitable outcomes. The District Court's delay in enforcing time-sensitive arbitration awards and in holding Settlement Class Members accountable has only exacerbated these issues and Thrivest's concerns.[3]   A more detailed discussion of Thrivest's enforcement experience under the current paradigm appears in Thrivest's Motion to Amend Payment Rules. (Motion to Amend Payment Rules, Ex. 2).  Thrivest filed that motion on June 28, 2021; the motion has been fully briefed since July 29, 2021.  The District Court has not taken any action on Thrivest's Motion to Amend Payment Rules and thus the Claims Administrator continues to subject Thrivest to treatment reserved for "improper assignments" despite the Third Circuit's explicit findings to the contrary.

---

[3] By way of example, the District Court took more than five weeks to rule on an emergency application to confirm an Interim Award of Emergency Relief directing a Settlement Class Member to escrow $800,000 pending the outcome of arbitration; during that period, the Settlement Class Member dissipated over $150,000 and, while the Court considered Thrivest's emergency motion for contempt for over two months, the Settlement Class Member dissipated nearly $100,000 more.  (Motion to Amend Payment Rules at p. 8, Ex. 2).

## III.   **JURISDICTION**

This Court has jurisdiction to issue writs of mandamus under the All Writs Act, 28 U.S.C. § 1651.  The requested mandamus relates to enforcement of this Court's mandate in In re: National Football League Players' Concussion Injury Litigation, where the Court had jurisdiction under 28 U.S.C. §§ 1291 and 1292.

## IV.   **ISSUES PRESENTED**

A.    Where a District Court continues to administer a settlement employing reasoning and enforcing orders that the Court of Appeals has explicitly rejected, should the Court of Appeals issue a writ of mandamus directing the District Court to comply with its mandate?

Suggested Answer: Yes.

B.    Where a District Court does not take action on a motion that has been fully briefed for more than four months and which seeks to reform Court-sponsored rules that do not comport with prior appellate guidance, effectively allowing those rules to continue without challenge or appeal, should the Court of Appeals issue a writ of mandamus directing the District Court to decide the motion?

Suggested Answer: Yes.

## V.   **RELIEF SOUGHT**

Thrivest seeks a writ of mandamus directing the District Court to grant its Motion to Amend Payment Rules and enter an order in the form proposed.  Thrivest's proposed order contains suggested revisions to the Payment Rules that would conform

the Payment Rules to the Third Circuit's findings and prior mandate.  The proposed revisions would instruct the Claims Administrator to pay Monetary Awards directly to Settlement Class Members <u>only if</u> the Settlement Class Member is *pro se* or if a tribunal of competent jurisdiction has found that the funding agreement constitutes an improper "true assignment" of a right or claim pursuant to Section 30.1 of the Settlement Agreement; in all other cases not involving the Third-Party Funder Resolution Protocol, the Claims Administrator would be required to pay Monetary Awards to the Settlement Class Member's attorney of record—as is the case when funding is not involved.  Thrivest also requests such further relief that this Court deems necessary and proper.

## VI.    <u>REASONS WHY WRIT SHOULD ISSUE</u>

The Court of Appeals should issue a writ of mandamus because the District Court is not following its appellate guidance, Thrivest has exhausted its avenues of relief below, and continued implementation of the Payment Rules is likely to cause irreparable injury to Thrivest, Class Members, or both as well as to the administration of justice.

A court of appeals is empowered to "issue all writs necessary or appropriate in aid of [its] . . . jurisdiction[ ] and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  A writ of mandamus may issue if the petitioner shows:  "(1) a clear and indisputable 'abuse of discretion or ... error of law,' (2) 'a lack of an alternate

avenue for adequate relief,' and (3) 'a likelihood of irreparable injury.'" <u>In re:</u> <u>Howmedica Osteonics Corp.</u>, 867 F.3d 390, 401 (3d Cir. 2017) (internal citations omitted); <u>see also</u> <u>Hollingsworth v. Perry</u>, 558 U.S. 183, 190 (2010); <u>Cheney v. United</u> <u>States Dist. Court</u>, 542 U.S. 367, 380-81 (2004). Mandamus issues only if "appropriate under the circumstances." <u>Cheney</u>, 542 U.S. at 381. Although the requirements are "demanding," the test is "not insuperable." <u>Id</u>.

    <u>Abuse of Discretion and Error of Law.</u> By continuing to treat Thrivest as though its agreement were an "improper assignment" prohibited by the Settlement Agreement when the Third Circuit explicitly found that it is not, the District Court is abusing its discretion and committing errors of law. The Direct Payment Order and Payment Rules create an exception to the ordinary flow of Monetary Awards—first, to the attorney and, then, to the Settlement Class Member—on the basis of a distinction that the Third Circuit explicitly rejected, embedding an implicit bias against Thrivest in its claims administration process. What's more, using this since-rejected reasoning, the Direct Payment Order and Payment Rules create collection risk that the District Court's Third-Party Funder Resolution Protocol attempts leverage against funders and in favor of Settlement Class Members. This paradigm undermines Thrivest's ability to enforce its agreements, in some cases *de facto* effectuating the very Invalidation Order that the Third Circuit reversed. By indirectly seeking to affect an outcome that the Court of Appeals directly rebuffed, the District Court is abusing its discretion and

12

committing errors of law.

Lack of Alternate Avenues of Relief.  Thrivest sought relief in the District Court through its June 28, 2021 Motion to Amend Payment Rules; however, the Court has taken no action in the more than four months since the motion has been fully briefed. As a result, the Claims Administrator continues to subject Thrivest to the improper, Court-sponsored Payment Rules without providing Thrivest an opportunity for an appeal.  In denying Thrivest's earlier mandamus petition without prejudice, this Court recognized that a second mandamus action would be appropriate in these circumstances.  Indeed, "a writ of mandamus may be warranted where undue delay is tantamount to a failure to exercise jurisdiction."  Madden v. Myers, 102 F.3d 74, 79 (3d Cir. 1996).  The District Court's failure to decide Thrivest's Motion to Amend Payment Rules leaves intact a paradigm that contravenes this Court's earlier mandate; mandamus is the only available avenue of relief.

Likelihood of Irreparable Injury.  The District Court's failure to follow this Court's clear mandate and use of its authority to undermine Thrivest's contractual rights based on since-rejected reasoning are injuries to the administration of justice sufficient to warrant relief in and of themselves.  But, as evidenced by the "Wild West" enforcement paradigm further detailed in Thrivest's Motion to Amend Payment Rules, the Direct Payment Order and Payment Rules are causing irreparable injury to Thrivest and Settlement Class Members as well as to the administration of justice.

Despite corrective language inserted in the revised Payment Rules to disclaim any perceived comment about the enforceability of funding agreements, the Payment Rules embed an implicit bias against Thrivest by creating an exception to the ordinary flow of Monetary Awards whenever funding is involved.  This implicit bias springs from the Direct Payment Order, which instructs the Claims Administrator to employ this exception only in the case of "improper assignments."  In this way, Settlement Class Members are receiving a Court-sponsored suggestion to ignore their obligations to Thrivest—or at least to threaten doing so to renegotiate more favorable terms under the Resolution Protocol.  The irreparable injury (in both directions) of this unjustified taint has been exacerbated when, with direct access to their Monetary Awards, certain Settlement Class Members have rendered themselves judgment-proof or bankrupt by spending, gambling or otherwise wasting their Monetary Awards rather than honoring their contractual promises to Thrivest; delays in enforcing injunctions against dissipation have only made this situation worse.  (Motion to Amend Payment Rules, generally, Ex. 2).

As the Resolution Protocol recognizes (and attempts to leverage against funding companies), this can all be avoided if the flow of funds is not diverted from its ordinary course.  If the Claims Administrator pays Monetary Awards to the attorneys, disputed funds are set aside and the orders of arbitrators and courts are respected.  Settlement Class Members can still seek to oppose enforcement of

14

contractual funding obligation, but not with the benefit of collection risk brought about by the Direct Payment Order, the Payment Rules, and their since-rejected reasoning. These circumstances call out for a writ of mandamus.

## VII.   **CONCLUSION**

This Court's April 26, 2019 decision vacated in part the Invalidation Order, reversing the District Court's decision that Thrivest's agreement was somehow an "improper assignment." Nevertheless, the District Court and the Claims Administrator continue to subject Thrivest to negative treatment and resultant harm on the basis of that flawed reasoning. For all of the foregoing reasons, Thrivest respectfully requests this Court's assistance.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

Peter C. Buckley, Esquire
Attorney I.D. Nos. 93123
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103-3222
Tel: (215) 299-2854
Fax: (215) 299-2150
pbuckley@foxrothschild.com

*Attorneys for Petitioner,*
*Thrivest Specialty Funding, LLC*

December 2, 2021

1

# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **Hon. Anita B. Brody** |

## ORDER

**AND NOW**, this __20th__ day of February, 2018, pursuant to this Court's continuing and exclusive jurisdiction under Article XXVII of the NFL Concussion Settlement Agreement (the "Settlement Agreement"), it is **ORDERED** that the Claims Administrator pay directly to the Settlement Class Member any and all Monetary Awards in cases where there has been found an improper assignment of any right or claim pursuant to Section 30.1 of the Settlement Agreement.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to:

1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY
LITIGATION

_____

No. 2:12-md-02323-AB

MDL No. 2323

Hon. Anita B. Brody, U.S.D.J.

### [PROPOSED] ORDER

AND NOW, this _____ day of _____, 2021, upon consideration of the Motion

to Amend Rules Governing Payment of Claims Involving Third-Party Funders filed by Thrivest

Specialty Funding, LLC, it is **ORDERED** that the motion is **GRANTED.**

The Claims Administrator shall pay Monetary Awards directly to Settlement Class

Members only if the Settlement Class Member is *pro se* or if a tribunal of competent jurisdiction

has found that the Third-Party Funder's agreement constitutes an improper assignment of a right

or claim pursuant to Section 30.1 of the Settlement Agreement.  In all other cases not involving

the Third-Party Funder Resolution Protocol, the Claims Administrator shall pay Monetary Awards

to the Settlement Class Member's attorney of record.  The Claims Administrator is instructed to

amend the Rules Governing Payment of Claims Involving Third-Party Funders as follows (all

changes highlighted in gray, ~~deletions in strikethrough~~, *additions in bold italics*):

### TITLE I: GENERAL

**Rule 1. The Purpose of These Rules.** These Payment Rules govern the payment of
Monetary Claims that involve Third-Party Funder Transactions. These Rules do not address the
enforceability of the underlying agreements between Third-Party Funders and Settlement Class
Members. *See generally In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d
96 (3d Cir. 2019).

Any dispute over the enforceability or validity of a Third-Party Funder Transaction must
be litigated or arbitrated in an appropriate forum outside of the claims administration context,
subject to "the full array of standard contract defenses" available. *In re Nat'l Football League*, 923
F.3d at 112-13. As the Third Circuit has noted, "some of the class members are cognitively

impaired, and it is possible that some of them lacked the capacity to contract at the time they entered into [these] agreements. . . . There may also be issues of unconscionability, fraud, or usury based on the high effective interest rates in the agreements," which may function as "disguised predatory loans." *Id.* at 112. However, ~~if an agreement is found to be enforceable,~~ a Settlement Class Member may risk incurring additional expenses by refusing to ***comply with the Third-Party Funder agreement*** ~~pay any of the disputed funds while the dispute over enforceability plays out.~~ These risks may include potential interest obligations and/or the cost of defending a lawsuit. Settlement Class Members might consider seeking legal advice on their options. ~~In some instances, these Rules call for the Claims Administrator to pay a Monetary Claim directly to a Settlement Class Member, rather than submitting that payment to the Settlement Class Member's lawyer. This payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations. For instance, Settlement Class Members receiving such direct payments may be sued by a Third-Party Funder.~~ A Settlement Class Member SHOULD NOT assume that his/her receipt of ~~direct~~ payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.[‡]

<p style="text-align:center">*     *     *</p>

## TITLE III: PAYMENT STEPS

The next two Rules explain the payment steps that the Claims Administrator will take, depending on the version and content of the SWS-5 Form involved in a given case. ~~As explained in Rule 1 above, these Rules sometimes contemplate direct payment to a Settlement Class Member, rather than to his/her lawyer. This payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations. For instance, Settlement Class Members receiving such direct payments might be sued by a Third-Party Funder.~~ A Settlement Class Member SHOULD NOT assume that his/her receipt of ~~direct~~ payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.

**Rule 6. Payment Steps Under Form SWS-5(A).** In cases where Settlement Class Members receive Form SWS-5(A), there are three potential payment outcomes, depending on whether a resolution has been reached through the Resolution Protocol and whether any NonParticipating Funders have been identified by the Settlement Class Member:

(a) <u>No Resolution Reached in Resolution Protocol</u>. If the Settlement Class Member fails to reach a resolution through the Resolution Protocol with any Participating Funders—either because the Settlement Class Member declined to consent/participate or failed to timely agree on the Resolution Amount with any of the Participating Funders—the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. ~~This payment will be made directly to the Settlement Class Member, whether represented by a lawyer or proceeding pro se.~~ ***If the Settlement Class***

---

[‡] ~~Likewise, direct payment to a Settlement Class Member has no bearing on whether the underlying agreement with a given Third-Party Funder is or is not valid or enforceable.~~

<p style="text-align:center">2</p>

*Member is represented by a lawyer, this payment will be made to that lawyer. If the Settlement Class Member is pro se or if a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement, this payment will be made directly to the Settlement Class Member.* Once payment has been made, any subsequent disputes between the Settlement Class Member and any Third-Party Funders must be litigated or arbitrated in an appropriate forum outside the claims administration process. *In re Nat'l Football League*, 923 F.3d at 113.

(b)  <u>Resolution Reached in Resolution Protocol; No Other Funders Identified</u>. In situations where (1) the Settlement Class Member reaches a timely resolution with all Participating Funders who have identified the Settlement Class Member; and (2) the Settlement Class Member answers "no" to the question described in Rule 4(c) above, the Claims Administrator will direct the Trustee to pay the Resolution Amount(s) to the Participating Funder(s). Any such payments will be deducted from the Settlement Class Member's Monetary Award. The Claims Administrator will then direct the Trustee to pay the remaining balance of the Monetary Award to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. If the Settlement Class Member is represented by a lawyer, this payment will be made to that lawyer. If the Class Member is pro se, this payment will be made directly to the Settlement Class Member.

(c)  <u>Resolution Reached in Resolution Protocol; Other Funders Identified</u>. In situations where (1) the Settlement Class Member reaches a timely resolution with a Participating Funder, but (2) either fails to reach a resolution with other Participating Funders or answers "yes" and identifies Non-Participating Funders in response to Question 4(c) above, then the Claims Administrator will direct the Trustee to pay the Resolution Amount(s) to the Participating Funder(s) who reached a timely resolution with the Settlement Class Member. Any such payments will be deducted from the Settlement Class Member's Monetary Award. The Claims Administrator will then direct the Trustee to pay the remaining balance of the Monetary Award to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. ~~This payment will be made directly to the Settlement Class Member, whether represented by a lawyer or proceeding pro se.~~ *If the Settlement Class Member is represented by a lawyer, this payment will be made to that lawyer. If the Class Member is pro se or if a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement, this payment will be made directly to the Settlement Class Member.* Once payment has been made, any subsequent disputes between the Settlement Class Member and any Third-Party Funder must be litigated or arbitrated in an appropriate forum outside of the claims administration process. *In re Nat'l Football League*, 923 F.3d at 113.

3

**Rule 7. Payment Steps Under Form SWS-5(B)**. In cases where Settlement Class Members receive Form SWS-5(B), the Claims Administrator will pay Monetary Claims as follows:

    (a) <u>Third-Party Funders Identified</u>. If the Settlement Class Member answers "yes" to the question described in Rule 5(b) above, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. ~~This payment will be made directly to the Settlement Class Member, whether represented by a lawyer or proceeding pro se.~~ *If the Settlement Class Member is represented by a lawyer, this payment will be made to that lawyer. If the Class Member is pro se or if a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement, this payment will be made directly to the Settlement Class Member.* Once payment has been made, any subsequent disputes between the Settlement Class Member and any Third-Party Funders must be litigated or arbitrated in an appropriate forum outside the claims administration process. *In re Nat'l Football League*, 923 F.3d at 113.

    (b)     <u>No Third-Party Funders Identified</u>. If the Settlement Class Member answers "no" to the question described in Rule 5(b) above, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. If the Settlement Class Member is represented by a lawyer, this payment will be made to that lawyer. If the Class Member is pro se, this payment will be made directly to the Settlement Class Member.

BY THE COURT:

_____

BRODY, J.

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody, U.S.D.J. |

## THRIVEST'S MOTION TO AMEND RULES GOVERNING PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS

Thrivest Specialty Funding, LLC n/k/a Balanced Bridge Funding LLC ("Thrivest") hereby moves the Court to amend the Rules Governing Payment of Claims Involving Third-Party Funders (the "Rules") to conform to this Court's February 20, 2018 Order and to decisions—by the United States Court of Appeals for the Third Circuit and by every arbitrator who has considered the issue—that Thrivest's agreements are enforceable in arbitration and do not constitute an improper assignment of a right or claim under Section 30.1 of the Settlement Agreement.[1]

At present, absent agreement under the Resolution Protocol, the Rules instruct the Claims Administrator to pay Monetary Awards directly to Settlement Class Members whenever there is a Third-Party Funding agreement in place, regardless of whether that agreement has been found to be improper under Section 30.1 of the Settlement Agreement.  This is not consistent with the Court's February 20, 2018 Order, which ordered payment directly to the Settlement Class Member *only* in the case of "improper assignments." It is also not consistent with the Third Circuit's finding that Thrivest's "contract gave it only the right to receive settlement funds after the funds are

---

[1] Defined terms not defined in this motion refer to terms defined in the Rules, effective as of March 19, 2020.        See        Rules        available        at https://www.nflconcussionsettlement.com/Docs/rules_governing_payment_of_claims.pdf   (last visited June 17, 2021).

121564722.9

disbursed"—i.e., that Thrivest's agreement did not contain an improper assignment. See Nat'l Football League Players Concussion Inj. Litig., 923 F.3d 96, 112 (3d Cir. 2019). The Court should instruct the Claims Administrator to amend the Rules and its procedures to conform to these decisions by ordering payment of Monetary Awards directly to Settlement Class Members only if the Class Member is *pro se* or if a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement.

The Rules must be amended not only because of these inconsistencies, but also because they are *de facto* undermining enforcement of Thrivest's agreement. While the Rules say direct "payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations," the reality is that direct payment is determining whether Thrivest can enforce its agreements successfully. Settlement Class Members with Monetary Awards in hand are ignoring arbitrators' emergency orders to escrow the funds—even after those orders have been confirmed by this Court—rendering themselves judgment-proof or bankrupt by spending, gambling, or otherwise wasting their Monetary Awards as Thrivest seeks to enforce their contractual promises. As such, by paying the Settlement Class Members directly, the Claims Administrator is *de facto* determining whether Thrivest can enforce its agreement. This unintended paradigm can be resolved by paying the Monetary Award to the Settlement Class Member's attorney, who is ethically bound to protect disputed funds and to follow binding orders.

The amendment sought here is also in the best interest of the Settlement Class Members and supports the interests of justice and judicial economy. When a system intended to compensate injured Settlement Class Members encourages noncompliance that leaves them worse off, penniless, or in bankruptcy, change is needed. When enforceable agreements are rendered

2

meaningless by diverting the ordinarily flow of funds around counsel, change is needed.  And when direct payments regularly kick off a chain reaction of arbitrations and court proceedings that burden the parties and the courts, change is needed.  The law and the equities compel action.

For these reasons, more fully articulated in Thrivest's Memorandum of Law and supported by the Declaration of Peter C. Buckley, Esquire, Thrivest respectfully requests that the Court instruct the Claims Administrator to amend the Rules by entering an Order in the form proposed.

Respectfully submitted,

/s/ Peter C. Buckley
Peter C. Buckley, Esquire
Christopher Popper, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2854
(215) 299-2150 (facsimile)

Attorneys for Thrivest Specialty Funding, LLC
n/k/a Balanced Bridge Funding, LLC

June 28, 2021

3

121564722.9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody, U.S.D.J. |

**MEMORANDUM OF LAW IN SUPPORT OF
THRIVEST'S MOTION TO AMEND RULES GOVERNING
PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS**

Thrivest Specialty Funding, LLC n/k/a Balanced Bridge Funding, LLC ("Thrivest") submits this memorandum of law in support of its Motion to Amend Rules Governing Payment of Claims Involving Third-Party Funders, which seeks (1) an order directing payment of Monetary Awards to the Settlement Class Member's attorney of record unless the Class Member is *pro se* or a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement, and (2) a corresponding amendment to the Rules Governing Payment of Claims Involving Third-Party Funders (the "Rules").[1]   Thrivest's motion is supported by the Declaration of Peter C. Buckley, Esquire (the "Declaration"), attached as "Exhibit 1."

**I.     INTRODUCTION**

In their current form, the Rules have created a paradigm that is inconsistent with this Court's directives, the Special Masters' expressed desire to avoid deciding whether to enforce Third-Party Funder agreements, and the findings of both the United States Court of Appeals for

---

[1] Defined terms not defined in this motion refer to terms defined in the Rules, effective as of March 19, 2020.   See   Rules   available   at https://www.nflconcussionsettlement.com/Docs/rules_governing_payment_of_claims.pdf   (last visited June 17, 2021), attached as "Exhibit A" to Declaration.

121564722.9

the Third Circuit and every arbitrator who has considered Thrivest's agreement.  This paradigm,

moreover, is inefficient, inequitable, and not in the best interests of Settlement Class Members.

There is a simple solution to these serious problems—an amendment to the Rules that directs

payment of Monetary Awards to the Settlement Class Member's attorney except in limited

circumstances.  To that end, Thrivest brings the instant motion for relief.

## II.     **RELEVANT BACKGROUND**

The Court and the parties are familiar with the Rules and the history of issues concerning

Third-Party Funders in this action.   Thrivest will summarize that background below before

illustrating, through several examples, the concerns this motion seeks to remedy.

### A.     **The Court Voids All Third-Party Funding Agreements As "Improper Assignments" Prohibited By The Settlement Agreement And Orders Direct Payment Of Monetary Awards To Settlement Class Members On That Basis.**

During the Fall of 2017, the Court considered generally whether transactions between

Settlement Class Members and Third-Party Funders complied with Section 30.1 of the Settlement

Agreement, which prohibited Class Members from assigning "any rights or claims relating to the

subject matter of the Class Action Complaint."   <u>See</u> Settlement Agreement (Dkt. 6481-1).   On

December 8, 2017, the Court issued an Explanation and Order in which the Court held that "Class

Members are prohibited from assigning or attempting to assign any monetary claims" by Section

30.1.  <u>See</u> December 8, 2017 Explanation and Order at p. 4 (Dkt. 9517).  Finding that Third-Party

Funder Transactions involved the improper assignment of monetary claims, the Court ruled that

"any such purported assignment is void, invalid, and of no force and effect."  <u>Id.</u>  And, on that

basis, the Court prohibited the Claims Administrator "from paying a Class Member's monetary

award to any third party that holds an assignment or an attempted assignment."  <u>Id.</u> at p. 1.  At the

conclusion of its Explanation and Order, the Court indicated that "[f]urther instructions to the

Claims Administrator will follow."  <u>Id.</u> at p. 5.

<div align="center">2</div>

On February 20, 2018, the Court issued further instructions, instructing the Claims Administrator to "pay directly to the Settlement Class Member any and all Monetary Awards in cases *where there has been found an improper assignment of any right or claim pursuant to Section 30.1 of the Settlement Agreement*." See February 20, 2018 Order (Dkt. 9749) (emphasis added).

Two days later, the Special Masters adopted the first iteration of the Rules. See Rules effective as of February 22, 2018 (the "2018 Rules"), attached as "Exhibit B" to the Declaration. The 2018 Rules set forth a procedure by which the "Claims Administrator and the Special Masters will assess the terms of a Third-Party Funder Transaction to determine whether they reflect the attributes of a Prohibited Assignment under the Explanation and Order." See id. at Rule 6. Following that determination, the 2018 Rules provided that "[t]he Claims Administrator will direct the Trustee to pay Monetary Claims *with a Prohibited Assignment* directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*." See id. at Rule 8(c) (emphasis added). In accordance with these new procedures, the Claims Administrator began a practice of paying Monetary Awards directly to Settlement Class Members whenever the Class Member had entered into a transaction with a Third-Party Funder; this practice included Settlement Class Members that had contracted with Thrivest. See Discussion of Thrivest v. White and Thrivest v. Wright, *infra*.

### B. The Third Circuit Overturns The Blanket Invalidation Of Funder Agreements And Notes That Thrivest Did Not Obtain An Improper Assignment; Thrivest Enforces Its Agreement In Arbitration.

Over a year later, the Third Circuit reversed the Court's December 8, 2017 Explanation and Order "to the extent the District Court purported to void the cash advance agreements in their entirety and void contractual provisions that went only to a lender's right to receive funds after the player acquired them." Nat'l Football League Players Concussion Inj. Litig., 923 F.3d 96, 100 (3d

3

Cir., Apr. 26, 2019). The Third Circuit explained that, while the District Court had authority to void "true assignments" that violate Section 30.1 of the Settlement Agreement by "allow[ing] a litigation funding company to step into the shoes of a class member and pursue the class member's rights through the claims process," "[t]he District Court's authority certainly does not extend to how class members choose to use their settlement proceeds after they are disbursed." Id. at 111.

In that regard, the Third Circuit noted that Thrivest "obtained no right to submit a claim directly to the Claims Administrator and instead acquired only the right to receive settlement funds after the Claims Administrator had paid out the awards to the particular class members with whom they contracted." Id. at 101. In other words, because "Thrivest's contract gave it only the right to receive settlement funds after the funds are disbursed to a class member," the Third Circuit found that Thrivest's agreement did not include an improper assignment subject to the District Court's oversight. Id. at 112. As such, the Third Circuit vacated the Court's order enjoining Thrivest from pursuing arbitration against Settlement Class Member William White. Id. at 113.

Following the Third Circuit's decision, Thrivest pursued arbitration against Settlement Class Member White, who had previously received his Monetary Award directly but failed to honor his agreement with Thrivest. See Docket in Thrivest v. White, No. 18-1877 (E.D.Pa.), attached as "Exhibit C" to the Declaration. An Emergency Arbitrator entered an Interim Award of Emergency Relief directing White to escrow $1,250,000 pending resolution of Thrivest's claims; and, on July 1, 2019, this Court confirmed the Emergency Arbitrator's Interim Award. See id., Order (Dkt. 25). When White did not comply with the Court's July 1, 2019 Order, extensive contempt proceedings ensued, culminating in an October 17, 2019 Explanation and Order holding White in contempt and freezing his accounts to coerce compliance. See id., Explanation and Order (Dkt. 44). When White still did not comply with the required escrow, the Court ordered him to

4

produce an accounting of his award proceeds and, later, threatened further sanctions. See id., Order (Dkt. 53). Soon thereafter, the Arbitrator entered a Final Award in Thrivest's favor, ordering White to pay over $1.2 million (including attorneys' fees and arbitration expenses totaling over $340,000) for breaching the Thrivest agreement; in so ruling, the Arbitrator expressly found that Thrivest's agreement was "valid and enforceable" and not a "true assignment" barred by Section 30.1 of the Settlement Agreement. See id., Final Award, attached as Ex. A to Stipulation to Confirm Arbitration Award (Dkt. 57). White later satisfied the Arbitrator's Final Award. See id., Stipulation to Confirm Arbitration Award (Dkt. 57).

**C.** **The Claims Administrator Revises The Rules To Avoid Deciding Whether To Enforce Third-Party Funder Agreements, But Continues To Pay Settlement Class Members Directly Whenever Funding Is Involved.**

After the Third Circuit's decision reversing in part the December 8, 2017 Explanation and Order, the Claims Administrator did not meaningfully revise the 2018 Rules until after Thrivest commenced a mandamus action in September 2019 seeking revisions consistent with the Third Circuit's guidance. Compare Rules (Ex. A) with 2018 Rules (Ex. B). On September 27, 2019, soon after Thrivest's mandamus filing, the Court issued a Notice directing the "the Claims Administrator to review its guidance and rules regarding third-party funder agreements and propose a streamlined and concise version that is more user-friendly." See Notice (Dkt. 10858). In reliance on the Court's expressed willingness to consider revisions to the Rules, the Third Circuit denied Thrivest's mandamus petition without prejudice in October 2019, noting that "[a]ny further concerns should first be raised with the District Court by motion." See In re: Thrivest Specialty Funding, LLC, No. 19-3149 (3d Cir.), Doc. 003113392583.

On March 19, 2020, the Special Masters adopted the Rules—a revision that replaced the 2018 Rules. See Rules (Ex. A). The new Rules eliminated the process whereby the Claims Administrator had been deciding whether a Third-Party Funding agreement should be

5

characterized as a "Prohibited Assignment" under the December 8, 2017 Explanation and Order, which the Third Circuit reversed in part. See id. In the absence of such a determination, the new Rules direct the Claims Administrator to pay Monetary Awards directly to Settlement Class Members whenever *any* Third-Party Funding is involved—unless the Third-Party Funder elects to participate in the Resolution Protocol. See id., Rule 7. This directive is mandatory and applies to all Settlement Class Members that received Third-Party Funding, regardless of whether they are represented by counsel, in the absence of any finding that the transaction was somehow improper, and even in the face of specific findings that the funding agreement is valid and enforceable. See id. Of note, the Rules expressly disclaim any connection between these direct payments and the enforceability of funding agreements:

> **This payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations. For instance, Settlement Class Members receiving such direct payments might be sued by a Third-Party Funder. A Settlement Class Member SHOULD NOT assume that his/her receipt of direct payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.**

Id. at p. 4 (emphasis in original). In accordance with these Rules, the Claims Administrator has continued its practice of paying Monetary Awards directly to Settlement Class Members whenever the Class Member has entered into a transaction with a Third-Party Funder. See Discussion of Thrivest v. Harper, *infra*. In Thrivest's experience, these direct payments have undermined enforcement of its agreements, encouraged Settlement Class Members to render themselves judgment-proof or bankrupt by spending, gambling or otherwise wasting their Monetary Awards, and resulted in inefficient and inequitable outcomes. See Discussion of Thrivest v. Wright and Thrivest v. Harper, *infra*.

6

**D.**     **Toby Wright Gambles Away $1.1 Million In Award Proceeds, Leaving Himself Judgment Proof And Homeless As He Ignores Orders Enforcing Thrivest's Agreement.**

Thrivest provided Settlement Class Member Toby Wright with a $323,792.15 advance in 2016; when Wright received a $1.5 million Monetary Award in 2018 and failed to honor his contractual promises, Thrivest filed an action to compel arbitration on November 2, 2018. See Docket in Thrivest v. Wright, No. 18-4764 (E.D.Pa.), attached as "Exhibit D" to the Declaration. More than seven months later, following extensive briefing and a hearing, this Court entered an Order directing Wright to arbitrate Thrivest's claim. See id., Order (Dkt. 22). Early in the arbitration, an Emergency Arbitrator entered an Interim Award of Emergency Relief directing Wright to escrow $800,000 pending resolution of Thrivest's claims; Thrivest quickly moved to confirm the Interim Award on July 3, 2019. See id., Emergency Motion to Confirm Interim Award (Dkt. 25). The Court confirmed the Interim Award on August 12, 2019 and, days later, Thrivest sought a finding of contempt due to Wright's continued failure to comply with the instruction to escrow the disputed funds. See id., Order Confirming Interim Award (Dkt. 35) and Emergency Motion for Contempt (Dkt. 36). This set off a flurry of docket activity that concluded more than two months later with the Court holding Wright in contempt and freezing his accounts for his failure to comply with the escrow instruction; nevertheless, Wright would never comply with the Court's directive to escrow the disputed funds. See id., Contempt Order (Dkt. 68). In November 2019, the Arbitrator entered a Final Award in Thrivest's favor, ordering Wright to pay nearly $700,000 for breaching the Thrivest agreement; on January 2, 2020, the Court confirmed the Award as a judgment. See id., Order Confirming Award (Dkt. 75). Thrivest has since sought to enforce its judgment against Wright in Arizona and to recover for Wright's fraudulent transfer of the award proceeds; however, because Wright spent, gambled or otherwise dissipated his

7

Monetary Award leaving him penniless, Thrivest has not recovered anything to date.  See Thrivest v. Wright, et al., No. CV2020-4560 (Ariz. Sup., Maricopa).

Bank records subsequently obtained by Thrivest show that payment of Wright's Monetary Award directly to him in accordance with the Rules substantially contributed to this outcome.  In November 2018, soon after Thrivest filed an action to compel Wright to arbitrate its claim to a portion of his award proceeds, Wright received (directly) the first two installments of his Monetary Award totaling more than $370,000—$62,793.42 on November 15, 2018 and $307,602.54 on November 23, 2018.  See Wright's Bank Records, attached as "Exhibit E" to the Declaration.[2]  In the weeks that followed, Wright would burn through those funds through a series of near-daily trips to Casino Arizona, leaving his account overdrawn by February 7, 2019.  See id.  Wright received another direct payment from the Claims Administrator on May 13, 2019, a payment in the amount of $766,275.  See id.  As Thrivest sought to enforce its agreement in arbitration and in this Court, Wright continued wasting the disputed funds.  See id.  By the time of the Interim Award directing him to escrow $800,000, Wright's account was down to $321,416.29; when the Court finally confirmed the Interim Award five weeks later, Wright had depleted his account balance to $154,902.95.  See id.  Wright's account held $143,870.24 when Thrivest sought a contempt finding and $45,525.82 when the Court held him in contempt on October 21, 2019.  See id.  Within ten days, Wright's balance was less than $500—he had wasted more than $1.1 million in less than a year.  See id.

Later, during an April 2021 deposition in the Arizona action, Wright confirmed that he has nothing left from the more than $1.1 million he received from the Settlement Agreement, having

---

[2] Wright did his personal banking through a non-functioning entity known as Players Authority LLC.

8

gambled away the "majority" of the award proceeds at Casino Arizona.  See Transcript of Wright Deposition at 16:12-19, attached as "Exhibit F" to the Declaration ("Majority of it I gambled it off.").  At the time of that deposition, Wright was homeless.  See id. at 9:13-16 ("I'm everywhere. I'm out sometimes.  I'm out in the street sometimes.  I'm at different locations.").

**E.**      **Alvin Harper Dissipates Nearly $400,000 In Award Proceeds, Declaring Bankruptcy After He Ignores Orders Enforcing Thrivest's Agreement.**

As with White and Wright, Settlement Class Member Alvin Harper received his Monetary Award directly from the Claims Administrator, kicking off another race against time that ended badly for all involved.

Thrivest provided Harper with a $431,722.86 advance in 2016; when Harper received $491,623.20 in award proceeds in December 2020 (directly from the Claims Administrator) and failed to honor his contractual promises, Thrivest filed an arbitration on December 21, 2020.[3]  See generally Docket in Balanced Bridge Funding v. Harper, No. 20-6525 (E.D.Pa.) (the "Pennsylvania Action"), attached as "Exhibit G" to the Declaration.  On December 29, 2020, an Emergency Arbitrator entered an Interim Award of Emergency Relief directing Harper to escrow $491,623.20 pending resolution of Thrivest's claims; Thrivest quickly moved to confirm the Interim Award that same day.  See id., Emergency Application to Confirm Interim Award (Dkt. 1).  Bank records subsequently obtained by Thrivest show that Harper had over $395,000 in his bank accounts at that time.  See id., Harper's Bank Records, Ex. A to Letter to Judge Brody dated 1/28/21 (Dkt. 7).  Harper did not comply with the Interim Award and instead continued dissipating the award proceeds.  See id.

---

[3] Before receiving his Monetary Award, Harper used the threat of collection risk to negotiate changes to his arrangement with Thrivest; however, Harper reneged on that agreement as well.

9

While its emergency application to confirm the Interim Award was pending, Thrivest sought a preliminary injunction on January 13, 2021, seeking to freeze Harper's accounts and prevent further dissipation of the award proceeds.  See id., Emergency Motion for Preliminary Injunction (Dkt. 5).  Harper's bank records show that he still had over $395,000 in his possession when Thrivest sought this emergency injunctive relief.  See id., Harper's Bank Records, Ex. A to Letter to Judge Brody dated 1/28/21 (Dkt. 7).  When the Court did not respond to Thrivest's two emergency filings, Thrivest filed a separate action in California Federal Court on January 25, 2021 against Harper and his daughter—who was a joint owner of the California account holding the award proceeds.  See Docket in Balanced Bridge Funding, LLC v. Harper et al., No. 21-663 (C.D.Cal.) (the "California Action"), attached as "Exhibit H" to the Declaration.

After receiving some of Harper's bank records in response to a subpoena, Thrivest presented evidence of Harper's active dissipation of the disputed funds in violation of the Interim Award to the Court on January 28, 2021.  See Docket in Pennsylvania Action, Letter to Judge Brody dated 1/28/21 (Dkt. 7).  Records subsequently obtained by Thrivest would later reveal that Harper withdrew $180,000 that day, reducing his account balance to less than $40,000 as he continued to ignore the Emergency Arbitrator's Interim Award.  See id., Letter to Judge Diamond dated 2/9/21 (Dkt. 14).  The next day the Pennsylvania Action was reassigned to a different judge at the Court's request.  See id., Reassignment Order (Dkt. 9).

On February 23, 2021, the new judge assigned to the Pennsylvania Action confirmed the Interim Award and entered the injunctive relief requested by Thrivest, but, by that time, Harper had dissipated most of the award proceeds.  See id., Order Confirming Interim Award (Dkt. 15, 17).  While Thrivest sought a finding of contempt for Harper's continued non-compliance, an arbitrator entered a Final Award in Thrivest's favor on March 16, 2021, ordering Harper to pay

10

$543,412.06 for breaching the Thrivest agreement. See id.; Final Award of Arbitrator in Balanced Bridge Funding, LLC v. Harper, AAA Case No. 01-20-0019-2914, attached as "Exhibit I" to the Declaration.

A short time later, on April 9, 2021, Harper filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Florida, identifying $112,238.60 in assets just months after receiving award proceeds over $490,000. See In re: Alvin Craig Harper, No. 21-13418 (Bankr. S.D. Fla.), Voluntary Petition (Dkt. 1).

## III.   **ARGUMENT**

The payment of Monetary Awards directly to Settlement Class Members when funding is involved is premised on a since-reversed, blanket finding that funding transactions constitute "improper assignments" under the Settlement Agreement.   In this respect, the Rules are inconsistent with the Court's February 20, 2018 instruction to make direct payment only where "there has been found an improper assignment" and, moreover, with findings—by the Third Circuit and every arbitrator that has considered the issue—that Thrivest's agreement is *not* an "improper assignment" under Section 30.1 of the Settlement Agreement.   The Court should instruct the Claims Administrator to amend the Rules not only to remedy this inconsistency, but also because direct payment is *de facto* determining whether Thrivest can enforce its agreement. This is especially concerning because the Special Masters have expressed a desire to remain neutral in any dispute over the enforcement of a funding agreement.   The relief requested by Thrivest, moreover, is consistent with the best interests of Settlement Class Members and the interests of justice and judicial economy.   See Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561, 572 (E.D. Pa. 2001) (explaining that courts should administer class action settlements "consistent with the public interest and [to support] the public's confidence in the administration

11

of justice and the integrity of the class action process").  Accordingly, the Court should exercise

its authority to implement and administer the Settlement Agreement, and grant Thrivest's motion.

> **A.**     **The Rules Incorrectly Treat All Funding Transactions As "Improper Assignments" When Thrivest's Agreement Has Been Validated By The Third Circuit And Every Arbitrator That Has Considered It.**

When the Claims Administrator initially adopted the 2018 Rules, the Court had just

recently invalidated all funding transactions as "improper assignments" and directed that, where

"there has been found an improper assignment," the Claims Administrator should pay Monetary

Awards directly to Settlement Class Members.  See December 8, 2017 Explanation and Order

(Dkt. 9517); February 20, 2018 Order (Dkt. 9749).  Since then, the Third Circuit reversed the

blanket invalidation of funding transactions, finding, as relevant here, that there was nothing

improper about Thrivest's agreement under Section 30.1 of the Settlement Agreement.  See NFL

Players Concussion Inj. Litig., 923 F.3d at 112.  Thereafter, consistent with the Third Circuit's

conclusion, every arbitrator who has considered Thrivest's agreement has enforced it, rejecting the

argument that Thrivest somehow obtained an improper assignment of claims in this class action;

the Court has confirmed every award for which confirmation has been sought.  Yet, the Claims

Administrator continues to treat Thrivest's agreement as an "improper assignment" deserving of

negative treatment, paying Monetary Awards directly to Settlement Class Members whenever they

had requested and received Thrivest funding.  The result is a flawed process that treats Settlement

Class Members with valid and enforceable funding agreements differently than Class Members

that did not receive funding—with serious negative consequences for all involved.  There is no

basis for disparate treatment, especially disparate treatment based on the existence of a valid, legal

transaction.  There is no reason why some Monetary Awards should be paid to the attorneys of

record, while others are paid directly to the Settlement Class Members.  Thrivest did not engage

in an "improper assignment" and, thus, the Court's February 20, 2018 Order should not be applied

12

121564722.9

to Settlement Class Members that received Thrivest funding—or any funding that has <u>not</u> been found to violate the Settlement Agreement. The Court should amend the Rules to direct payment to the attorneys unless the Settlement Class Member is *pro se* or a tribunal of competent jurisdiction has found that the Third-Party Funder's agreement constitutes an improper assignment of a right or claim pursuant to Section 30.1 of the Settlement Agreement.

**B.**     <u>**Direct Payment To Settlement Class Members Is *De Facto* Encouraging Noncompliance By Settlement Class Members And Impairing Thrivest's Enforcement Of Valid Agreements.**</u>

The distinction drawn by the Claims Administrator—between Settlement Class Members with funding and those without—matters. As evidenced by Thrivest's experience with White, Wright and Harper, Settlement Class Members who receive direct payment of their Monetary Awards have repeatedly failed to comply with their contractual promises and with binding orders from arbitrators and courts, with serious consequences for themselves and for Thrivest's ability to meaningfully enforce its agreements.

With his award in hand, White fought enforcement of Thrivest's agreement all the way to the Third Circuit and through an arbitration and subsequent confirmation proceedings in this Court. In the end, the arbitrator awarded Thrivest nearly double what White would have paid had he merely honored his contractual promises. Wright followed a similar path, resisting enforcement every step of the way; however, during those protracted proceedings, he gambled and otherwise wasted away his entire Monetary Award. As a result, Thrivest has been unable to recover on an enforceable obligation and Wright is destitute a short time after receiving more than $1 million under the Settlement Agreement. For his part, Harper dissipated nearly $400,000 in award proceeds before declaring bankruptcy. In each instance, the Settlement Class Member not only ignored a contractual promise to hold the award proceeds "in trust" for Thrivest, but also flaunted orders from arbitrators and this Court directing them to escrow the disputed funds before Thrivest's

13

121564722.9

agreement was later upheld and enforced.  These negative outcomes are not a coincidence; they can be traced to a common source—the direct payment of Monetary Awards to Settlement Class Members whenever funding is involved.

In response to Thrivest's concerns that the 2018 Rules were encouraging risky decisions and leading to negative outcomes, the Special Masters adopted new Rules.  The new Rules expressly disclaim any connection between direct payment and the enforceability of funding agreements and warn Settlement Class Members that there may be risks if they shirk their contractual promises.  In this way, the Special Masters expressed a clear desire to remain neutral in any dispute over the enforcement of a funding agreement.  Yet, as the White, Wright and Harper examples illustrate, there can be no doubt that, in practice, the decision to pay Settlement Class Members directly has meaningfully impaired Thrivest's ability to enforce its agreements—the opposite of the neutrality embodied in the Rules.  Indeed, these examples show that the existence of a separate procedure when funding is involved cannot co-exist with the Special Masters' desire for neutrality.[4]  This disconnect requires a change, especially considering that Thrivest's agreements have uniformly been upheld and enforced.

Here, as in litigation generally, Monetary Awards are typically paid to the attorneys, who are ethically bound to honor orders entered by arbitrators and courts and to hold disputed funds until the dispute is resolved.  See Pa. R.P.C. 1.15(f) ("When in possession of funds or property in which two or more persons … claim an interest, the funds or property shall be kept separate by the lawyer until the dispute is resolved.").  On the basis of since-rejected legal reasoning, the Rules

---

[4] If the purpose is to encourage Third-Party Funders to accept the Resolution Protocol rather than pursue enforcement of valid agreements due to heightened collection risk associated with direct payment, then the Rules are, in fact, choosing sides—and in this way undermining public confidence in the judicial process.

14

121564722.9

create an exception when funding is involved, directing the Claims Administrator to divert the ordinary flow of funds around the attorneys to Settlement Class Members who have proven themselves unworthy of this Court's trust.   In practice, the decision to pay Settlement Class Members directly is a decision to undermine enforcement of Thrivest's agreement, which has been repeatedly upheld as valid and enforceable.   As such, the Court should amend the Rules to eliminate the unnecessary and inequitable exception to the typical flow of funds when funding is involved.

**C.**   **Direct Payment Has Created Chaos And Inequity, And Burdened Thrivest And The Courts With Unnecessary Proceedings.**

As the aforementioned examples illustrate, direct payment of Monetary Awards to Settlement Class Members has generally kicked off a flurry of frantic litigation activity that resembles the Wild West.  With funds in hand, Settlement Class Members have ignored directives to escrow disputed funds and instead spent, gambled, and otherwise wasted their Monetary Awards while Thrivest has pursued preservation of the disputed funds through available legal channels. This incredibly inefficient process has burdened Thrivest with arbitration expenses and attorneys' fees (which are ultimately the responsibility of the Settlement Class Members under the agreement) and, moreover, burdened the courts with proceedings to enforce arbitration findings in Thrivest's favor.   The process has universally included an injunction directing the escrow of disputed funds that the Settlement Class Member has ignored, and further contempt proceedings to compel compliance with this Court's orders—which have included frozen accounts and threats of incarceration.   When the dust has settled, Thrivest has prevailed on the merits, but its legal victories mean little when the money is gone.  For their part, the Settlement Class Members have upended their financial lives and created trouble for family and friends whom they have involved;

121564722.9

each has ended up worse off than had they simply complied with their contractual promises. This chaos and inequity deserves attention and demands change.

## IV.    **CONCLUSION**

Thrivest is asking only that the Rules comport with this Court's Orders and the Third Circuit's guidance, and that Thrivest not be prejudiced by diverting the flow of funds around the attorneys who would ordinarily receive them. If there are disputes, Thrivest will work to resolve them, but the Claims Administration process should not impair Thrivest's rights by adding to the collection risk. The current process is causing problems and needs to be changed. Thrivest respectfully requests that the Court amend the Rules by entering an order in the form proposed.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Peter C. Buckley
Peter C. Buckley, Esquire
Christopher C. Popper, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2854
(215) 299-2150 (facsimile)

*Attorneys for Thrivest Specialty Funding, LLC
n/k/a Balanced Bridge Funding, LLC*

</div>

June 28, 2021

121564722.9

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| _____ | No. 2:12-md-02323-AB |
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | MDL No. 2323 |
|  | Hon. Anita B. Brody, U.S.D.J. |
| _____ |  |

**DECLARATION OF PETER C. BUCKLEY, ESQUIRE
IN SUPPORT OF THRIVEST'S MOTION TO AMEND RULES GOVERNING
PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS**

I, Peter C. Buckley, Esquire, hereby declare as follows:

1.      I am a partner at the law firm of Fox Rothschild LLP and counsel to Thrivest Specialty Funding, LLC n/k/a Balanced Bridge Funding, LLC ("Thrivest") in this litigation and the other actions referenced herein.

2.      A true and correct copy of the Rules Governing Payment of Claims Involving Third-Party Funders published by the Claims Administrator and effective as of March 19, 2020 is attached as "Exhibit A."

3.      A true and correct copy of the Rules Governing Payment of Claims Involving Third-Party Funders published by the Claims Administrator and effective as of February 22, 2018 is attached as "Exhibit B."

4.      A true and correct copy of the docket in Thrivest v. White, No. 18-1877 (E.D.Pa.), is attached as "Exhibit C."

5.      A true and correct copy of the docket in Thrivest v. Wright, No. 18-4764 (E.D.Pa.), is attached as "Exhibit D."

6.      A true and correct copy of Toby Wright's bank records received in response to Thrivest's subpoena is attached as "Exhibit E."

121564722.9

7.     A true and correct copy of relevant excerpts from the deposition of Toby Wright in

Thrivest v. Wright, et al., No. CV2020-4560 (Ariz. Sup., Maricopa), is attached as "Exhibit F."

8.     A true and correct copy of the docket in Balanced Bridge Funding v. Harper, No.

20-6525 (E.D.Pa.), is attached as "Exhibit G."

9.     A true and correct copy of the docket in Balanced Bridge Funding, LLC v. Harper

et al., No. 21-663 (C.D.Cal.), is attached as "Exhibit H."

10.     A true and correct copy of the Final Award of Arbitrator in Balanced Bridge

Funding, LLC v. Harper, AAA Case No. 01-20-0019-2914, is attached as "Exhibit I."

11.     I declare under penalty of perjury that the forgoing is true and correct.

Executed on June 23, 2021

/s/ Peter C. Buckley
Peter C. Buckley, Esquire

2

121564722.9

# EXHIBIT "A"

# NFL CONCUSSION SETTLEMENT

*IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*
No. 2:12-md-02323 (E.D. Pa.)

# RULES GOVERNING PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS

# TABLE OF CONTENTS

**Page**

**TITLE I:  GENERAL**................................................................................................1

    Rule 1.   The Purpose of These Rules.........................................................1
    Rule 2.   Adoption of These Rules.............................................................1
    Rule 3.   Definitions Used in These Rules .................................................2

**TITLE II:  INFORMATION ON FUNDING AGREEMENTS** ..........................3

    Rule 4.   Form SWS-5(A): Cases Involving Resolution Protocol .................3
    Rule 5.   Form SWS-5(B): Cases Not Involving Resolution Protocol ..........4

**TITLE III: PAYMENT STEPS** ..............................................................................4

    Rule 6.   Payment Steps Under Form SWS-5(A) .......................................4
    Rule 7.   Payment Steps Under Form SWS-5(B).......................................5

**NFL** CONCUSSION SETTLEMENT

3/19/2020

<div style="border:1px solid black; text-align:center;">

### RULES GOVERNING PAYMENT OF CLAIMS
### INVOLVING THIRD-PARTY FUNDERS

</div>

### TITLE I:  GENERAL

**Rule 1.    The Purpose of These Rules.**  These Payment Rules govern the payment of Monetary Claims that involve Third-Party Funder Transactions.   These Rules do not address the enforceability of the underlying agreements between Third-Party Funders and Settlement Class Members.  *See generally In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96 (3d Cir. 2019).

Any dispute over the enforceability or validity of a Third-Party Funder Transaction must be litigated or arbitrated in an appropriate forum outside of the claims administration context, subject to "the full array of standard contract defenses" available.  *In re Nat'l Football League*, 923 F.3d at 112-13.  As the Third Circuit has noted, "some of the class members are cognitively impaired, and it is possible that some of them lacked the capacity to contract at the time they entered into [these] agreements. . . . There may also be issues of unconscionability, fraud, or usury based on the high effective interest rates in the agreements," which may function as "disguised predatory loans."  *Id.* at 112.  However, if an agreement is found to be enforceable, a Settlement Class Member may risk incurring additional expenses by refusing to pay any of the disputed funds while the dispute over enforceability plays out.  These risks may include potential interest obligations and/or the cost of defending a lawsuit.  Settlement Class Members might consider seeking legal advice on their options.

In some instances, these Rules call for the Claims Administrator to pay a Monetary Claim directly to a Settlement Class Member, rather than submitting that payment to the Settlement Class Member's lawyer.  This payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations.  For instance, Settlement Class Members receiving such direct payments may be sued by a Third-Party Funder.  A Settlement Class Member **SHOULD NOT** assume that his/her receipt of direct payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.[1]

**Rule 2.    Adoption of These Rules.**  The Special Masters have adopted these Rules in the exercise of their duties pursuant their appointment by the Court in its July 13, 2016 Order (Document 6871).  The Special Masters may amend these Rules at any time *sua sponte* or after request by the Claims Administrator and such input from Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.  These Rules were amended to their current form on March 19, 2020.

---

[1] Likewise, direct payment to a Settlement Class Member has no bearing on whether the underlying agreement with a given Third-Party Funder is or is not valid or enforceable.



3/19/2020

**Rule 3.    Definitions Used in These Rules.**  The capitalized terms used in these Rules are defined as follows:

(a) "Final Decision" means the moment when the window for all potential appeals of a Monetary Award has closed—which can be either the moment the time for filing an initial appeal passes with no appeal filed or the moment any appeals have been resolved.

(b) "Monetary Award" means a Monetary Award, Derivative Claimant Award, or Supplemental Monetary Award, as those terms are defined, respectively, in Sections 2.1(aaa), 2.1(zzzz), and 2.1(ff) of the Settlement Agreement.

(c) "Monetary Claim" means a claim submitted by a Settlement Class Member for a Monetary Award.

(d) "Non-Participating Funder" means a Third-Party Funder who is not participating in the Resolution Protocol.

(e) "Participating Funder" means a Third-Party Funder who is participating in the Resolution Protocol.

(f) "Resolution Amount" means the amount of money—described further in the Resolution Protocol—that a Participating Funder will accept to resolve any claims arising under the original agreement(s) between the Participating Funder and the Settlement Class Member.

(g) "Resolution Protocol" means the process described in the Rules Governing the Third-Party Funding Resolution Protocol.

(h) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).

(i) "Settlement Class Member" means a Retired NFL Football Player (or the Representative Claimant of a deceased or incompetent Retired NFL Football Player), or a Derivative Claimant, which is how this term is defined in the Settlement Agreement.

(j) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(k) "Special Master" and "Special Masters" mean any Special Master appointed by the Court in its July 13, 2016 Order (Document 6871) or in any subsequent Order of the Court.



(l) "Third-Party Funder" means a person or entity that engaged in a Third-Party Funder Transaction with a Settlement Class Member.

(m) "Third-Party Funder Transaction" means any agreement, contract, document, or arrangement between a Settlement Class Member and a third party under which: (i) the Settlement Class Member borrowed or received funds from a third party prior to receipt of a Monetary Award from the Settlement Program; and (ii) in exchange, either assigned/attempted to assign any rights related to the Settlement Class Member Monetary Award or Monetary Claim. This definition is meant to be construed broadly, so as to cover all potential cash advance agreements where a third-party entity loans or advances funds in exchange for rights to receive payment from the proceeds of any future Monetary Award, or in exchange for rights to "step into the shoes of" the Settlement Class Member and "seek funds directly from" the Settlement Program.

## TITLE II:  INFORMATION ON FUNDING AGREEMENTS

Once a Settlement Class Member's Monetary Claim receives a Final Decision, the Claims Administrator will send him/her a form called a "Sworn Statement: Status of Assignment of Monetary Claim" ("Form SWS-5"), which he/she must complete and return. The Settlement Class Member will receive one of two versions of the Form SWS-5—either "Form SWS-5(A)" or "Form SWS-5(B)"— depending on whether or not the Settlement Class Member has been identified by one or more Participating Funders through the Resolution Protocol.[2]

**Rule 4.     Form SWS-5(A): Cases Involving Resolution Protocol.**  Settlement Class Members identified by Participating Funders will receive Form SWS-5(A), which does the following:

(a)    <u>Provides Information to Settlement Class Member</u>.  The form informs the Settlement Class Member that (i) his/her Monetary Claim has received a Final Decision and (ii) one or more Participating Funders have named the Settlement Class Member as part of the Resolution Protocol.

(b)    <u>Asks the Settlement Class Member for Consent</u>. As to each Participating Funder who has identified the Settlement Class Member, the form asks the Settlement Class Member to (i) consent or decline to participate in the Resolution Protocol; and (ii) consent or decline to share information regarding his/her claim status with the Participating Funder.

(c)    <u>Asks Settlement Class Member About Third-Party Funder Transactions</u>. The form asks the Settlement Class Member whether he/she has assigned or attempted

---

[2] As explained in Rule 5 of the Resolution Protocol, Third-Party Funders who wish to participate in the Resolution Protocol must provide the Claims Administrator with a "Third-Party Funder Transaction List." This list identifies all Settlement Class Members with whom the Third-Party Funder has entered into a Third-Party Funder Transaction. Whenever a Settlement Class Member's Monetary Claim receives a Final Decision, the Claims Administrator will check to see if the Settlement Class Member has been identified on any Third-Party Funder Transaction Lists. If so, the Claims Administrator will send a Form SWS-5(A) to the Settlement Class Member. If not, Form SWS-5(B) will be sent instead.



to assign any settlement benefits from his/her Monetary Claim to any Non-Participating Funders.  If the answer is "yes," the form asks the Settlement Class Member to provide all relevant related documents.

**Rule 5.**    **Form SWS-5(B): Cases Not Involving Resolution Protocol.**  Settlement Class Members who have not been identified by a Participating Funder will receive Form SWS-5(B), which does the following:

(a)    <u>Provides Information to the Settlement Class Member</u>. The form informs the Settlement Class Member that his/her Monetary Claim has received a Final Decision.

(b)    <u>Asks Settlement Class Member About Third-Party Funder Transactions</u>. The form asks the Settlement Class Member whether he/she has assigned or attempted to assign any settlement benefits from his/her Monetary Claim to any other Non-Participating Funders.  If the answer is "yes," the form asks the Settlement Class Member to provide all relevant related documents.

## TITLE III:  PAYMENT STEPS

The next two Rules explain the payment steps that the Claims Administrator will take, depending on the version and content of the SWS-5 Form involved in a given case.  As explained in Rule 1 above, these Rules sometimes contemplate direct payment to a Settlement Class Member, rather than to his/her lawyer.  **This payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations.  For instance, Settlement Class Members receiving such direct payments might be sued by a Third-Party Funder.  A Settlement Class Member SHOULD NOT assume that his/her receipt of direct payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.**

**Rule 6.**    **Payment Steps Under Form SWS-5(A).**  In cases where Settlement Class Members receive Form SWS-5(A), there are three potential payment outcomes, depending on whether a resolution has been reached through the Resolution Protocol and whether any Non-Participating Funders have been identified by the Settlement Class Member:

(a)    <u>No Resolution Reached in Resolution Protocol</u>.  If the Settlement Class Member fails to reach a resolution through the Resolution Protocol with any Participating Funders—either because the Settlement Class Member declined to consent/participate or failed to timely agree on the Resolution Amount with any of the Participating Funders—the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court.  This payment will be made directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*.  Once payment has been made, any subsequent disputes between the Settlement Class Member and any Third-Party Funders must be litigated or arbitrated in an appropriate



forum outside the claims administration process.  *In re Nat'l Football League*, 923 F.3d at 113.

(b)  <u>Resolution Reached in Resolution Protocol; No Other Funders Identified</u>.  In situations where (1) the Settlement Class Member reaches a timely resolution with all Participating Funders who have identified the Settlement Class Member; and (2) the Settlement Class Member answers "no" to the question described in Rule 4(c) above, the Claims Administrator will direct the Trustee to pay the Resolution Amount(s) to the Participating Funder(s).  Any such payments will be deducted from the Settlement Class Member's Monetary Award.  The Claims Administrator will then direct the Trustee to pay the remaining balance of the Monetary Award to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court.  If the Settlement Class Member is represented by a lawyer, this payment will be made to that lawyer.  If the Class Member is *pro se*, this payment will be made directly to the Settlement Class Member.

(c)  <u>Resolution Reached in Resolution Protocol; Other Funders Identified</u>.  In situations where (1) the Settlement Class Member reaches a timely resolution with a Participating Funder, but (2) either fails to reach a resolution with other Participating Funders or answers "yes" and identifies Non-Participating Funders in response to Question 4(c) above, then the Claims Administrator will direct the Trustee to pay the Resolution Amount(s) to the Participating Funder(s) who reached a timely resolution with the Settlement Class Member.  Any such payments will be deducted from the Settlement Class Member's Monetary Award.  The Claims Administrator will then direct the Trustee to pay the remaining balance of the Monetary Award to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court.  This payment will be made directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*.  Once payment has been made, any subsequent disputes between the Settlement Class Member and any Third-Party Funder must be litigated or arbitrated in an appropriate forum outside of the claims administration process.  *In re Nat'l Football League*, 923 F.3d at 113.

**Rule 7.    Payment Steps Under Form SWS-5(B).**  In cases where Settlement Class Members receive Form SWS-5(B), the Claims Administrator will pay Monetary Claims as follows:

(a)  <u>Third-Party Funders Identified</u>.  If the Settlement Class Member answers "yes" to the question described in Rule 5(b) above, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court.  This payment will be made directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*.  Once payment has been made, any subsequent disputes between the Settlement Class Member and any Third-Party Funders must be litigated or arbitrated in an



appropriate forum outside the claims administration process.  *In re Nat'l Football League*, 923 F.3d at 113.

(b)     <u>No Third-Party Funders Identified</u>.  If the Settlement Class Member answers "no" to the question described in Rule 5(b) above, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court.  If the Settlement Class Member is represented by a lawyer, this payment will be made to that lawyer.  If the Class Member is *pro se*, this payment will be made directly to the Settlement Class Member.

3/19/2020

# EXHIBIT "B"



# RULES GOVERNING
# ASSIGNMENT OF CLAIMS

# TABLE OF CONTENTS

**Page**

**TITLE I:  GENERAL**.................................................................................................1

     Rule 1.   The Purpose of These Rules.............................................................1
     Rule 2.   Adoption of These Rules..................................................................1
     Rule 3.   Definitions Used in These Rules......................................................1

**TITLE II:  ASSIGNMENT REVIEW** ....................................................................2

     Rule 4.   Third-Party Funder Transactions Subject to Assignment Review ..................2
     Rule 5.   Assignment Review..........................................................................2
     Rule 6.   Review Criteria ................................................................................3

**TITLE III:  PROCESS FOR ASSIGNMENTS** ......................................................3

     Rule 7.   Waiver Form ....................................................................................3
     Rule 8.   Payment Steps .................................................................................3

NFL CONCUSSION SETTLEMENT

<div style="border: 1px solid black;">

# RULES GOVERNING ASSIGNMENT OF CLAIMS

</div>

## TITLE I:  GENERAL

**Rule 1.    The Purpose of These Rules.**  These Rules govern the analysis of transactions involving a Settlement Class Member and a person or entity other than the NFL Parties to determine whether the transaction is an assignment of rights or claims prohibited by Section 30.1 of the Settlement Agreement and the Court's Explanation and Order entered on December 8, 2017 (Document 9517) and the implementation of that Explanation and Order.

**Rule 2.    Adoption of These Rules.**  The Special Masters have adopted these Rules in the exercise of their duties pursuant their appointment by the Court in its July 13, 2016 Order (Document 6871).  The Special Masters may amend these Rules at any time *sua sponte* or after request by the Claims Administrator and such input from Co-Lead Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3.    Definitions Used in These Rules.**  All capitalized terms used in these Rules will have the meanings given to them in the Settlement Agreement.  In addition:

(a) "Collateralized Loan" means a Third-Party Funder Transaction determined not to be a Prohibited Assignment.

(b) "Explanation and Order" means the Explanation and Order entered by the Court on December 8, 2017 (Document 9517), regarding the application of Section 30.1 of the Settlement Agreement to monetary claims under the Settlement Agreement.

(c) "Monetary Claims" means a Monetary Award, Supplemental Monetary Award or Derivative Claimant Award in the Settlement Program.

(d) "Notice of Assignment Review Determination" means a notice the Claims Administrator will issue after determining with a Special Master whether a Third-Party Funder Transaction is a Prohibited Assignment or is a Collateralized Loan.

(e) "Prohibited Assignment" means a Third-Party Funder Transaction determined to be an assignment, or attempt to assign, by a Settlement Class Member of Monetary Claims that is void, invalid, and of no force and effect and that shall not be recognized by the Claims Administrator, pursuant to Section 30.1 of the Settlement Agreement and the Explanation and Order.

(f) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).



(g) "Settlement Class Member" means a Retired NFL Football Player (or the Representative Claimant of a deceased or incompetent Retired NFL Football Player), or a Derivative Claimant, which is how this term is defined in the Settlement Agreement.

(h) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(i) "Special Master" and "Special Masters" mean any one or both of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

(j) "Third-Party Funder" is a person or entity that engaged in a Third-Party Funder Transaction with a Settlement Class Member.

(k) "Third-Party Funder Transaction" is any agreement, contract, document, or arrangement between a Settlement Class Member and a Third-Party Funder involving the actual or potential advance or transfer of funds from the Third-Party Funder to the Settlement Class Member, disclosed to the Claims Administrator before payment of a Monetary Claim to that Settlement Class Member.

(l) "Waiver Form" means the Waiver Relinquishing Rights Under Attempted Assignment contemplated in the Explanation and Order.

## TITLE II:  ASSIGNMENT REVIEW

**Rule 4.    Third-Party Funder Transactions Subject to Assignment Review.**  The Explanation and Order requires the Claims Administrator to ask all Settlement Class Members eligible for payment on a Monetary Claim whether they have assigned or attempted to assign their Monetary Claim.  To receive payment from the Claims Administrator, an eligible Settlement Class Member must complete, sign and submit to the Claims Administrator a Sworn Statement: Status of Assignment of Monetary Claim (SWS-5).  If a Settlement Class Member indicates on this Sworn Statement that he/she has assigned or attempted to assign any settlement benefits from his/her Monetary Claim to a Third-Party Funder or borrowed any funds against his/her Monetary Claim as collateral, the Settlement Class Member must provide to the Claims Administrator all documents relating to that Third-Party Funder Transaction.  The Claims Administrator may require the Settlement Class Member and/or the Third-Party Funder to submit such documents and information as the Claims Administrator deems necessary for its review of a Third-Party Funder Transaction under these Rules, by such deadline as the Claims Administrator sets.

**Rule 5.    Assignment Review.**  The Claims Administrator will review each Third-Party Funder Transaction with a Special Master to determine whether the Third-Party Funder Transaction is a Prohibited Assignment or is a Collateralized Loan and will notify the affected Settlement Class Member of that decision by issuing a Notice of Assignment Review Determination.  If the Settlement Class Member or Third-Party Funder wishes to challenge the decision, it will be presented to the other Special Master for review, along with any argument

2



offered by the Settlement Class Member or Third-Party Funder for the Special Master's consideration. The final decision of the Special Master is not appealable to the Court, unless the Special Master or the Court finds that it involves a conclusion of law and that the objecting party has standing to pursue review by the Court.

**Rule 6.     Review Criteria.** The Claims Administrator and the Special Masters will assess the terms of a Third-Party Funder Transaction to determine whether they reflect the attributes of a Prohibited Assignment under the Explanation and Order. In general, a Third-Party Funder Transaction constitutes a Prohibited Assignment where there is an express assignment of a Monetary Claim. The Claims Administrator and the Special Masters will consider attributes of the transaction to assess the fairness and commercial reasonableness of its terms and whether they reflect the type of transaction the Court found invalid in its Explanation and Order.

## TITLE III: PROCESS FOR PROHIBITED ASSIGNMENTS

**Rule 7.     Waiver Form.** On any Prohibited Assignment, the Claims Administrator will issue a Waiver Form for the Third-Party Funder to sign and return within 30 days to (a) indicate the amount advanced to the Settlement Class Member that has not been repaid to the Third-Party Funder and (b) to rescind the Prohibited Assignment and relinquish all claims relating to it. The Claims Administrator will send this Waiver Form to the lawyer for a represented Settlement Class Member and directly to the Third-Party Funder if the Settlement Class Member is not represented by a lawyer. The Waiver Form includes an attachment for the Settlement Class Member to sign and return to the Claims Administrator indicating agreement with the amount of the funds advanced stated by the Third-Party Funder in the Waiver Form.

**Rule 8.     Payment Steps.** The Claims Administrator will follow these steps to pay a Monetary Claim with a Prohibited Assignment:

(a) **No Complete Waiver:** If the Claims Administrator has not received a timely complete Waiver Form signed by the Third-Party Funder, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court.

(b) **Complete Waiver:** If the Claims Administrator has received a timely complete Waiver Form signed by the Third-Party Funder and the Settlement Class Member agrees with the amount advanced that has not been repaid, the Claims Administrator will direct the Trustee to pay that amount to the Third-Party Funder and pay the balance to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. If the Settlement Class Member has not agreed to the amount advanced that has not been repaid, the Claims Administrator and a Special Master will determine the correct amount from the materials submitted.

(c) **Payment to Settlement Class Members:** The Claims Administrator will direct the Trustee to pay Monetary Claims with a Prohibited Assignment directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*.

3



# EXHIBIT "C"

STAYED,CLOSED,MDL-2323 TR,STANDARD

## United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:18-cv-01877-AB

THRIVEST SPECIALTY FUNDING, v. WHITE
Assigned to: HONORABLE ANITA B. BRODY
all others Case: 2:18-cv-04764-AB
Case in other court:  USCA, 18-03005
                USCA, 19-02771
                Pennsylvania Western, 2:18-cv-00563
Cause: 09:1 U.S. Arbitration Act

Date Filed: 05/04/2018
Date Terminated: 08/30/2018
Jury Demand: None
Nature of Suit: 896 Other Statutes:
Arbitration
Jurisdiction: Diversity

**Plaintiff**

**THRIVEST SPECIALTY FUNDING,**
**LLC**

represented by **JOHN R. GOTASKIE , JR.**
FOX ROTHSCHILD LLP
BNY MELLON CENTER
500 GRANT STREET, SUITE 2500
PITTSBURGH, PA 15219
(412) 391-1334
Fax: (412) 391-6984
*TERMINATED: 06/12/2018*
*LEAD ATTORNEY*

**ERIC E. REED**
FOX ROTHSCHILD LLP
2000 MARKET ST. 20TH FL
PHILADELPHIA, PA 19103
215-299-2741
Fax: 215-299-2150
Email: ereed@foxrothschild.com
*ATTORNEY TO BE NOTICED*

**MARK J. FANELLI**
FOX ROTHSCHILD LLP
2000 MARKET ST 20TH FL
PHILADELPHIA, PA 19103-3222
215-444-7160
Email: mfanelli@foxrothschild.com
*ATTORNEY TO BE NOTICED*

**PETER C. BUCKLEY**
FOX ROTHSCHILD, LLP
2000 MARKET STREET
10TH FLOOR
PHILADELPHIA, PA 19103
215-299-2854
Email: pbuckley@foxrothschild.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**WILLIAM E. WHITE**                                    represented by **ROBERT C. WOOD**
WOOD LAW LTD
68 NORTH HIGH ST
BUILDING B SUITE 202
NEW ALBANY, OH 43054
614-252-3146
Email: rwood@rwoodlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**SCOTT A. GEORGE**
SEEGER WEISS
1515 MARKET STREET
SUITE 1380
PHILADELPHIA, PA 19102
215-553-7982
Email: sgeorge@seegerweiss.com
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**WILLIAM E. WHITE**                                    represented by **ROBERT C. WOOD**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**SCOTT A. GEORGE**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**THRIVEST SPECIALTY FUNDING,**              represented by **JOHN R. GOTASKIE , JR.**
**LLC**                                                                  (See above for address)
*TERMINATED: 06/12/2018*
*LEAD ATTORNEY*

**ERIC E. REED**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MARK J. FANELLI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**PETER C. BUCKLEY**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/01/2018 | 1 | COMPLAINT against WILLIAM E. WHITE (Filing fee, including Administrative fee, $400, receipt number 0315-4713891), filed by THRIVEST SPECIALTY FUNDING, LLC. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Order, # 3 Exhibit) (jv) [Transferred from Pennsylvania Western on 5/4/2018.] (Entered: 05/03/2018) |
| 05/01/2018 | | *** Case Assigned to Category Number 7 (jv) [Transferred from Pennsylvania Western on 5/4/2018.] (Entered: 05/03/2018) |
| 05/03/2018 | 2 | NOTICE that instant civil action has been designated for placement into the United States District Court's Alternative Dispute Resolution program. Parties are directed to fully complete the required 26(f) report, which includes the stipulation of selecting an ADR process. Counsel for plaintiff (or in the case of a removal action, counsel for removing defendant) shall make service of the notice on all parties. (jg) [Transferred from Pennsylvania Western on 5/4/2018.] (Entered: 05/03/2018) |
| 05/04/2018 | 3 | ORDER indicating that upon consideration of the 1 Complaint filed by THRIVEST SPECIALTY FUNDING, LLC, this matter shall be transferred to the U.S. District Court for the Eastern District of Pennsylvania, forthwith; and the Clerk is to mark CASE CLOSED (details more fully stated in said Order). Signed by Judge Nora Barry Fischer on 5/4/2018. (bdk) [Transferred from Pennsylvania Western on 5/4/2018.] (Entered: 05/04/2018) |
| 05/04/2018 | 4 | Case transferred in from District of Pennsylvania Western; Case Number 2:18-cv-00563. Original file certified copy of transfer order and docket sheet received. (Entered: 05/04/2018) |
| 05/04/2018 | 5 | Request *that the Court enter an order in Thrivest v. White, scheduling a hearing on Thrivests complaint to compel arbitration that will be combined with the May 9, 2018 hearing in the NFL Concussion Class Action* by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 05/04/2018) |
| 05/07/2018 | 6 | ACCEPTANCE OF SERVICE *of Robert C. Wood, Esquire, on behalf of William E. White* Re: accepted summons and complaint for THRIVEST SPECIALTY FUNDING, LLC on 5/1/2018, answer due 5/22/2018. (BUCKLEY, PETER) (Entered: 05/07/2018) |
| 05/08/2018 | 7 | NOTICE of Appearance by PETER C. BUCKLEY on behalf of THRIVEST SPECIALTY FUNDING, LLC (BUCKLEY, PETER) (Entered: 05/08/2018) |
| 05/08/2018 | 8 | NOTICE of Appearance by MARK J. FANELLI on behalf of THRIVEST SPECIALTY FUNDING, LLC (FANELLI, MARK) (Entered: 05/08/2018) |
| 05/08/2018 | 9 | NOTICE of Appearance by ERIC E. REED on behalf of THRIVEST SPECIALTY FUNDING, LLC (REED, ERIC) (Entered: 05/08/2018) |
| 05/08/2018 | 10 | APPLICATION/PETITION *Letter Brief in Support of Petition to Compel Arbitration* by THRIVEST SPECIALTY FUNDING, LLC. (Attachments: # 1 Declaration Joseph Genovesi, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(BUCKLEY, PETER) (Entered: 05/08/2018) |
| 05/24/2018 | 11 | Request *Regarding Administrative Matter* by THRIVEST SPECIALTY FUNDING, LLC. (REED, ERIC) (Entered: 05/24/2018) |
| 06/12/2018 | 12 | NOTICE of Withdrawal of Appearance by JOHN R. GOTASKIE, JR on behalf of THRIVEST SPECIALTY FUNDING, LLC, CERTIFICATE OF SERVICE.(jl, ) (Entered: 06/12/2018) |
| 08/30/2018 | 13 | ORDER - IN ACCORDANCE WITH THE COURT'S MAY 22, 2018 EXPLANATION |

|            |    |                                                                                                                                                                                                                                                                                                                      |
|------------|----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |    | AND ORDER (NO. 12-md-2323, ECFNO. 10011) REGARDING THRIVEST'S ATTEMPTS TO ARBITRATE THIS MATTER, IT IS ORDERED that THIS CASE IS DISMISSED.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/29/2018. 8/30/2018 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/30/2018) |
| 09/07/2018 | 14 | NOTICE OF APPEAL as to 13 Order Dismissing Case, by THRIVEST SPECIALTY FUNDING, LLC. Filing fee $ 505, receipt number 0313-13032911. Copies to Judge, Clerk USCA, Appeals Clerk and Counsel of Record. Certificate of Service. (FANELLI, MARK) Modified on 9/10/2018 (ems). (Entered: 09/07/2018) |
| 09/12/2018 | 15 | NOTICE of Docketing Record on Appeal from USCA re 14 Notice of Appeal (Credit Card Payment), filed by THRIVEST SPECIALTY FUNDING, LLC. USCA Case Number 18-3005 (dmc, ) (Entered: 09/13/2018) |
| 02/08/2019 | 16 | NOTICE of Withdrawal of Appearance by MARK J. FANELLI on behalf of THRIVEST SPECIALTY FUNDING, LLC(FANELLI, MARK) (Entered: 02/08/2019) |
| 05/14/2019 | 17 | Application for Pro Hac Vice *of Robert C. Wood* ( Filing fee $ 40 receipt number 0313-13539965.) filed by WILLIAM E. WHITE.Certificate of Service.(GEORGE, SCOTT) Modified on 5/15/2019 (kp, ). (Entered: 05/14/2019) |
| 05/24/2019 | 18 | ORDER THAT THE APPLICATION OF ROBERT C. WOOD TO APPEAR PRO HAC VICE IS GRANTED; ETC.. SIGNED BY HONORABLE ANITA B. BRODY ON 5/23/19. 5/28/19 ENTERED AND COPIES MAILED AND E-MAILED.(jl, ) (Entered: 05/28/2019) |
| 06/06/2019 | 19 | *Respondent's* ANSWER to 1 Complaint, , COUNTERCLAIM *of Respondent* against THRIVEST SPECIALTY FUNDING, LLC by WILLIAM E. WHITE.(WOOD, ROBERT) (Entered: 06/06/2019) |
| 06/14/2019 | 20 | MOTION to Seal *Emergency Motion to Confirm Arbitration Award* filed by THRIVEST SPECIALTY FUNDING, LLC.Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A)(BUCKLEY, PETER) (Entered: 06/14/2019) |
| 06/14/2019 | 21 | THRIVEST SPECIALTY FUNDING, LLC. EMERGENCY MOTION TO CONFIRM ARBITRATION AWARD,MEMORANDUM, CERTIFICATE OF SERVICE..(jl, ) (Additional attachment(s) added on 6/14/2019: # 1 Memorandum, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Certificate of Service, # 6 Text of Proposed Order) (fb, ). Modified on 7/2/2019 (jl, ). (Entered: 06/14/2019) |
| 06/17/2019 | 22 | ORDER THAT DEFENDANT MUST FILE RESPONSES TO TRIVEST'S MOTION TO SEAL EMERGENCY MOTION TO CONFIRM ARBITRATION AND THRIVEST'S EMERGENCY MOTION TO CONFIRM ARBITRATION AWARD ON OR BEFORE 6/25/19; ETC.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/17/19. 6/18/19 ENTERED AND E-MAILED.(jl, ) (Entered: 06/18/2019) |
| 06/25/2019 | 23 | RESPONSE in Opposition re 20 MOTION to Seal *Emergency Motion to Confirm Arbitration Award* filed by WILLIAM E. WHITE. (WOOD, ROBERT) (Entered: 06/25/2019) |
| 06/25/2019 | 24 | RESPONSE in Opposition re 21 MOTION to Confirm Arbitration Award *and Application to Vacate Emergency Arbitrator's Award of Interim Relief* filed by WILLIAM E. WHITE. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(WOOD, ROBERT) (Entered: 06/25/2019) |
| 07/01/2019 | 25 | ORDER THAT UPON CONSIDERATION OF THRIVEST'S COMPLAINT TO COMPEL ARBITRATION IS STAYED IN FAVOR OF ARBITRATION. THRIVEST'S MOTION TO CONFIRM THE EMERGENCY ARBITRATOR'S INTERIM AWARD OF EMERGENCY RELIEF IS GRANTED AND WHITE'S APPLICATION TO VACATE |

| | | |
|---|---|---|
| | | THE INTERIM AWARD IS DENIED. THRIVEST'S MOTION TO SEAL MOTION TO CONFIRM ARBITRATION IS DENIED; ETC.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/1/19. 7/2/19 ENTERED AND E-MAILED.(jl, ) (Entered: 07/02/2019) |
| 07/09/2019 | 26 | Emergency MOTION for Contempt filed by THRIVEST SPECIALTY FUNDING, LLC.Memorandum, Certificate of Service.(BUCKLEY, PETER) (Entered: 07/09/2019) |
| 07/23/2019 | 27 | RESPONSE in Opposition re 26 Emergency MOTION for Contempt filed by WILLIAM E. WHITE. (WOOD, ROBERT) (Entered: 07/23/2019) |
| 07/24/2019 | 28 | RESPONSE re 26 Emergency MOTION for Contempt *with Certificate of Service* filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 07/24/2019) |
| 07/30/2019 | 29 | NOTICE OF APPEAL as to 25 Order, by WILLIAM E. WHITE. Filing fee $ 505, receipt number 0313-13701152. Copies to Judge, Clerk USCA, Appeals Clerk and Appeal Record due by 8/30/2019. (Attachments: # 1 Exhibit A)(WOOD, ROBERT) (Entered: 07/30/2019) |
| 08/02/2019 | 30 | NOTICE of Docketing Record on Appeal from USCA re 29 Notice of Appeal (Credit Card Payment) filed by WILLIAM E. WHITE. USCA Case Number 19-2771 (dmc, ) (Entered: 08/02/2019) |
| 08/16/2019 | 31 | ORDER that PLAINTIFF THRIVEST SPECIALTY FUNDING, LLC MUST FILE A BRIEF REGARDING WHY ITS EMERGENCY MOTION FOR CONTEMPT (ECF NO. 26) IS PROPERLY BEFORE THE COURT INSTEAD OF BEFORE THE ARBITRATOR ON OR BEFORE AUGUST 30, 2019. DEFENDANT WILLIAM E. WHITE MUST RESPOND TO THRIVEST'S BRIEF ON OR BEFORE SEPTEMBER 13, 2019.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/15/2019. 8/16/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/16/2019) |
| 08/21/2019 | 32 | RESPONSE in Support re 26 Emergency MOTION for Contempt *and in Response to the Court's August 16, 2019 Order (DKT. 31)* filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 08/21/2019) |
| 08/21/2019 | 33 | Emergency MOTION to Shorten the Deadline for White's Responsive Brief to September 4, 2019 filed by THRIVEST SPECIALTY FUNDING, LLC..(BUCKLEY, PETER) (Entered: 08/21/2019) |
| 08/22/2019 | 34 | ORDER that PLAINTIFF THRIVEST SPECIALTY FUNDING, LLC'S MOTION TO SHORTEN THE DEADLINE (ECF NO. 22) IS GRANTED AS FOLLOWS: DEFENDANT WILLIAM E. WHITE MUST RESPOND TO THRIVEST'S BRIEF (ECF NO. 32) ON OR BEFORE SEPTEMBER 10, 2019.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/22/2019.8/22/2019 ENTERED AND COPIES VIA ECF..(mo, ) Modified on 8/22/2019 (mo, ). (mo, ). (Entered: 08/22/2019) |
| 08/22/2019 | | Set/Reset Deadlines as to RESPONSES DUE BY 9/10/2019. (mo, ) (Entered: 08/22/2019) |
| 09/10/2019 | 35 | RESPONSE to Motion re 26 Emergency MOTION for Contempt , RESPONSE in Opposition filed by WILLIAM E. WHITE. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(WOOD, ROBERT) (Entered: 09/10/2019) |
| 09/11/2019 | 36 | RESPONSE in Support re 26 Emergency MOTION for Contempt *and in Response to the Court's August 16, 2019 Order with Certificate of Service* filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 09/11/2019) |
| 09/23/2019 | 37 | RESPONSE in Support re 26 Emergency MOTION for Contempt filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 09/23/2019) |

| | | |
|---|---|---|
| 09/24/2019 | 38 | ORDER that 1. UPON CONSIDERATION OF THE MOTIONS FILED BY PLAINTIFF (ECF NO. 32, ECF NO. 36) AND DEFENDANT (ECF NO. 35), RESPONDING TO THE COURT'S ORDER ISSUED ON AUGUST 16, 2019 (ECF NO. 31), THE COURT CONCLUDES that PLAINTIFF'S EMERGENCY MOTION FOR CONTEMPT (ECF NO. 26) IS PROPERLY BEFORE THE COURT. 2. A CIVIL CONTEMPT HEARING WILL BE HELD ON OCTOBER 10, 2019, AT 1:00 PM EASTERN STANDARD TIME IN COURTROOM 7-B ON THE 7TH FLOOR OF THE U.S. COURTHOUSE, 601 MARKET STREET, PHILADELPHIA, PA 19106. DEFENDANT MAY ARRANGE TO APPEAR BY TELEPHONE FOR THE HEARING BY CONTACTING CHAMBERS AT 215-597-3978 PRIOR TO THE DATE OF THE HEARING.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/24/2019. 9/24/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/24/2019) |
| 10/10/2019 | 39 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Contempt Hearing held on 10/10/2019. (jl, ) (Entered: 10/10/2019) |
| 10/10/2019 | 40 | ORDER that ON OR BEFORE OCTOBER 15, 2019, DEFENDANT WILLIAM WHITE MUST PRODUCE AND SUBMIT TO THE COURT PROOF OF HIS INABILITY TO COMPLY WITH THE COURT'S JULY 1, 2019 ORDER (ECF NO. 25) CONFIRMING THE EMERGENCY ARBITRATOR'S INTERIM AWARD DIRECTING MR. WHITE TO PLACE A PORTION OF DISPUTED FUNDS IN ESCROW.-1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 10/10/2019. 10/10/2019 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 10/10/2019) |
| 10/11/2019 | 41 | SETTLEMENT CONFERENCE ORDER THAT A SETTLEMENT CONFERENCE WILL BE HELD ON 10/16/19 AT 9:30 A.M.; ETC.. SIGNED BY MAGISTRATE JUDGE DAVID R. STRAWBRIDGE ON 10/11/19. 10/11/19 ENTERED AND E-MAILED.(jl, ) (Entered: 10/11/2019) |
| 10/15/2019 | 42 | Response to Order of October 10, 2019 re 40 Order, by WILLIAM E. WHITE. (Attachments: # 1 Exhibit A) (WOOD, ROBERT) (Entered: 10/15/2019) |
| 10/16/2019 | 43 | Response in Opposition re 42 Response *by White to this Court's Order of October 10, 2019* by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 10/16/2019) |
| 10/17/2019 | 44 | EXPLANATION AND ORDER - FOR THE REASONS that FOLLOW, THE COURT HOLD DEFENDANT WILLIAM E. WHITE IN CONTEMPT OF THE COURT'S JULY 1, 2019 ORDER (ECF NO. 25)("ESCROW ORDER") CONFIRMING THE EMERGENCY ARBITRATOR'S INTERIM AWARD DIRECTING WHITE TO ESCROW $1,250,000 PENDING RESOLUTION OF ARBITRATION AND IMPOSES THE CIVIL CONTEMPT SANCTIONS LISTED IN PARAGRAPH 5 BELOW: 5. ACCORDINGLY, THE COURT HOLDS WHITE IN CONTEMPT OF THE COURT'S ESCROW ORDER AND IMPOSES THE FOLLOWING CIVIL CONTEMPT SANCTIONS d. THE COURT MAY IMPOSE FURTHER SANCTIONS IF WHITE PERSISTS IN HIS FAILURE TO EITHER COMPLY WITH THE ESCROW ORDER OR PROVE HIS INABILITY TO COMPLY. ON OCTOBER 31, 2019, AT NO LATER THAN 2:00 P.M. EST, THRIVEST MUST SUBMIT A STATUS REPORT UPDATING THE COURT ON WHITE'S COMPLIANCE.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/17/2019. 10/17/2019 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 10/17/2019) |
| 10/21/2019 | 45 | MOTION for Discovery *Conference to Address this Motion to Compel White Failure to Comply with Discovery* filed by THRIVEST SPECIALTY FUNDING, LLC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (BUCKLEY, PETER) (Entered: 10/21/2019) |

| 10/23/2019 | 46 | RESPONSE in Support re 45 MOTION for Discovery *Conference to Address this Motion to Compel White Failure to Comply with Discovery WITH PROPOSED ORDER* filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 10/23/2019) |
| 10/24/2019 | 47 | ORDER that ON OR BEFORE OCTOBER 29, 2019, DEFENDANT WILLIAM WHITE MUST FILE A RESPONSE TO THRIVEST'S MOTION TO COMPEL (ECF NO. 45) AND SUBSEQUENT FILING SUPPORTING THAT MOTION. (ECF NO. 46). SIGNED BY HONORABLE ANITA B. BRODY ON 10/24/2019. 10/24/2019 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 10/24/2019) |
| 10/25/2019 | 48 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Telephone Conference held on 10/23/19 Court Reporter: ESR. (jl, ) (Entered: 10/25/2019) |
| 10/29/2019 | 49 | RESPONSE to Motion re 45 MOTION for Discovery *Conference to Address this Motion to Compel White Failure to Comply with Discovery* filed by WILLIAM E. WHITE. (WOOD, ROBERT) (Entered: 10/29/2019) |
| 10/30/2019 | 50 | ORDER of USCA THAT THE JUDGMENT OF THE DISTRICT COURT ENTERED 7/1/19 BE AND THE SAME HEREBY IS AFFIRMED; ETC. (jl, ) (Entered: 10/30/2019) |
| 10/30/2019 | 51 | MOTION to Quash *Subpoenas* filed by WILLIAM E. WHITE.Certificate of Service. (Attachments: # 1 Exhibit A)(WOOD, ROBERT) (Entered: 10/30/2019) |
| 10/31/2019 | 52 | STATUS REPORT *in Accordance with Court's October 17, 2019 Order* by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 10/31/2019) |
| 10/31/2019 | 53 | ORDER as follows: 1. ON OR BEFORE TUESDAY, NOVEMBER 5, 2019, WILLIAM E. WHITE MUST PROVIDE FULL AND COMPLETE RESPONSES TO THRIVEST'S INTERROGATORIES IN AID OF ENFORCEMENT AND REQUEST FOR PRODUCTION OF DOCUMENTS. IN PARTICULAR, MR. WHITE MUST PRODUCE A FULL ACCOUNTING OF THE PROCEEDS OF HIS AWARD IN THE NFL CONCUSSION CLASS ACTION, INCLUDING THE CURRENT LOCATION AND ANY DISPOSITION THEREOF. THIS DISCOVERY IS RELEVANT TO THE COURT'S CONTEMPT ORDER (ECF NO.44) AND MR. WHITE'S CLAIMED INABILITY TO ESCROW THE DISPUTED FUNDS AS DESCRIBED IN THE CONTEMPT ORDER.-1(footnote) 2. MR. WHITE'S MOTION TO QUASH SUBPOENAS (ECF NO. 51) IS DENIED.. SIGNED BY HONORABLE ANITA B. BRODY ON 10/31/2019.10/31/2019 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 10/31/2019 (mo, ). (Entered: 10/31/2019) |
| 11/06/2019 | 54 | Emergency MOTION to Enforce *the Court's October 31, 2019 Order (ECF No. 53) and for Further Contempt Sanctions Pursuant to the Court's Order of Contempt (ECF No. 44)* filed by THRIVEST SPECIALTY FUNDING, LLC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(BUCKLEY, PETER) (Entered: 11/06/2019) |
| 11/08/2019 | 55 | RESPONSE in Support re 54 Emergency MOTION to Enforce *the Court's October 31, 2019 Order (ECF No. 53) and for Further Contempt Sanctions Pursuant to the Court's Order of Contempt (ECF No. 44)* filed by THRIVEST SPECIALTY FUNDING, LLC. (Attachments: # 1 Text of Proposed Order)(BUCKLEY, PETER) (Entered: 11/08/2019) |
| 11/08/2019 | 56 | ORDER that THRIVEST'S NOVEMBER 6, 2019 MOTION (ECF NO. 54) IS GRANTED IN PART AND DENIED IN PART AS FOLLOWS: 3. ON OR BEFORE WEDNESDAY, NOVEMBER 13, 2019, NO LATER THAN 5:00 PM EST. MR. WHITE MUST PROVIDE FULL, COMPLETED AND VERIFIED RESPONSES TO THRIVEST'S INTERROGATORIES IN AID OF ENFORCEMENT, AS WELL AS THRIVEST'S REQUESTS FOR PRODUCTION OF DOCUMENTS. THOS RESPONSES MUST INCLUDE THE FOLLOWING:.... SIGNED BY HONORABLE GERALD A. MCHUGH AS EMERGENCY JUDGE FOR THE HONORABLE ANITA B. BRODY ON |

| | | |
|---|---|---|
| | | 11/8/2019.11/8/2019 ENTERED AND COPIES VIA ECF.(mo, ) Modified on 11/8/2019 (mo, ). (Entered: 11/08/2019) |
| 11/14/2019 | 57 | MOTION to Approve Stipulation to Confirm Arbitration Award, to Lift Sanctions in October 17, 2019 Order of Contempt (Dkt. 44), and of Dismissal Pursuant to Rule 41(a)(1)(A)(ii) *(UNOPPOSED)* filed by THRIVEST SPECIALTY FUNDING, LLC..(BUCKLEY, PETER) (Entered: 11/14/2019) |
| 11/18/2019 | 58 | ORDER THAT PLAINTIFF THRIVEST'S UNCONTESTED MOTION TO APPROVE STIPULATION TO CONFIRM ARBITRATION AWARD AND LIFT SANCTIONS IS RESOLVED; ETC.. SIGNED BY HONORABLE ANITA B. BRODY ON 11/18/19.11/19/19 ENTERED AND E-MAILED.(jl, ) (Entered: 11/19/2019) |
| 11/22/2019 | 59 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Telephone Conference held on 11/8/19 Court Reporter: ESR. (jl, ) (Entered: 11/22/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/25/2021 12:48:49 | | | |
| **PACER Login:** | fr000009:2550901:0 | **Client Code:** | 027275.00001.search |
| **Description:** | Docket Report | **Search Criteria:** | 2:18-cv-01877-AB |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

# EXHIBIT "D"

STAYED,MDL-2323,STANDARD

# United States District Court
# Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:18-cv-04764-AB

THRIVEST SPECIALTY FUNDING, LLC v. WRIGHT
Assigned to: HONORABLE ANITA B. BRODY
all others Case: 2:18-cv-01877-AB
Cause: 09:0007 Petition to Enforce Arbitration Subpoena

Date Filed: 11/02/2018
Jury Demand: None
Nature of Suit: 896 Other Statutes:
Arbitration
Jurisdiction: Diversity

**Petitioner**

**THRIVEST SPECIALTY FUNDING, LLC**

represented by **ERIC E. REED**
FOX ROTHSCHILD LLP
2000 MARKET ST. 20TH FL
PHILADELPHIA, PA 19103
215-299-2741
Fax: 215-299-2150
Email: ereed@foxrothschild.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PETER C. BUCKLEY**
FOX ROTHSCHILD, LLP
2000 MARKET STREET
10TH FLOOR
PHILADELPHIA, PA 19103
215-299-2854
Email: pbuckley@foxrothschild.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MARK J. FANELLI**
FOX ROTHSCHILD LLP
2000 MARKET ST 20TH FL
PHILADELPHIA, PA 19103-3222
215-444-7160
Email: mfanelli@foxrothschild.com
*TERMINATED: 02/08/2019*

V.

**Respondent**

**TOBY L. WRIGHT**

represented by **RONALD J. ELLETT**
ELLETT LAW OFFICES PC
2999 NORTH 44TH ST SUITE 330
PHOENIX, AZ 85018
602-235-9510
Email: rjellett@ellettlaw.com
*TERMINATED: 09/20/2019*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BRADFORD ROTHWELL SOHN**
THE BRAD SOHN LAW FIRM PLLC
1172 S DIXIE HWY # 268
CORAL GABLES, FL 33146-2918
310-866-0001
Email: Brad@sohn.com
*ATTORNEY TO BE NOTICED*

**CASEY GREEN**
SIDKOFF, PINCUS & GREEN, P.C.
1101 MARKET STREET
2700 ARAMARK TOWER
PHILADELPHIA, PA 19107
215-574-0600
Email: cg@sidkoffpincusgreen.com
*TERMINATED: 09/20/2019*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**TOBY L. WRIGHT**                    represented by   **RONALD J. ELLETT**
(See above for address)
*TERMINATED: 09/20/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CASEY GREEN**
(See above for address)
*TERMINATED: 09/20/2019*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**THRIVEST SPECIALTY FUNDING,**       represented by   **ERIC E. REED**
**LLC**                                                (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PETER C. BUCKLEY**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MARK J. FANELLI**
(See above for address)
*TERMINATED: 02/08/2019*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/02/2018 | 1 | PETITION TO COMPEL ARBITRATION, by THRIVEST SPECIALTY FUNDING, |

| | | LLC. (Attachments: # 1 Text of Proposed Order, # 2 Civil Cover Sheet, # 3 Designation Form, # 4 Case Management Track Form, # 5 Redacted, Thrivest Non-Recourse Agreement with White, # 6 Wright, Averment Statement)(va, ) (Entered: 11/06/2018) |
|---|---|---|
| 11/02/2018 | 2 | Disclosure Statement Form pursuant to FRCP 7.1 by THRIVEST SPECIALTY FUNDING, LLC.(va, ) (Entered: 11/06/2018) |
| 11/07/2018 | 3 | NOTICE of Appearance by ERIC E. REED on behalf of THRIVEST SPECIALTY FUNDING, LLC (REED, ERIC) (Entered: 11/07/2018) |
| 11/07/2018 | 4 | NOTICE of Appearance by MARK J. FANELLI on behalf of THRIVEST SPECIALTY FUNDING, LLC (FANELLI, MARK) (Entered: 11/07/2018) |
| 11/07/2018 | 5 | Praecipe to Issue Writ of Summons for service on Defendant, Toby L. Wright by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) Modified on 11/8/2018 (lisad, ). (Entered: 11/07/2018) |
| 11/07/2018 | | Summons Issued as to TOBY L. WRIGHT. One Original Forwarded To: Counsel on 11/8/18 (ti, ) (Entered: 11/08/2018) |
| 02/08/2019 | 6 | ACCEPTANCE OF SERVICE *of Summons and Petition to Compel Arbitration on behalf of Toby L. Wright* by Ronald J. Ellett (BUCKLEY, PETER) (Entered: 02/08/2019) |
| 02/08/2019 | 7 | NOTICE of Withdrawal of Appearance by MARK J. FANELLI on behalf of THRIVEST SPECIALTY FUNDING, LLC(FANELLI, MARK) (Entered: 02/08/2019) |
| 02/25/2019 | 8 | APPLICATION for Admission Pro Hac Vice of Ronald J. Ellett, Esquire by TOBY L. WRIGHT. ( Filing fee $ 40 receipt number 0313-13371588.). (GREEN, CASEY) (Entered: 02/25/2019) |
| 02/27/2019 | 9 | MOTION for More Definite Statement filed by TOBY L. WRIGHT.Brief, Certificate of Service. (Attachments: # 1 Brief, # 2 Text of Proposed Order)(GREEN, CASEY) (Entered: 02/27/2019) |
| 02/28/2019 | 10 | ORDER that THE APPLICATION OF RONALD J. ELLETT, ESQUIRE, TO PRACTICE IN THIS COURT PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 83.5.2(b) IS GRANTED.. SIGNED BY HONORABLE ANITA B. BRODY ON 2/28/2019. 2/28/2019 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) Modified on 2/28/2019 (mo, ). (Entered: 02/28/2019) |
| 03/14/2019 | 11 | AMENDED PETITION TO COMPEL ARBITRATION by THRIVEST SPECIALTY FUNDING, LLC. CERTIFICATE OF SERVICE. (Attachments: # 1 Exhibit A) (BUCKLEY, PETER) Modified on 3/15/2019 (kp, ). (Entered: 03/14/2019) |
| 03/28/2019 | 12 | ANSWER to Complaint *Amended Petition to Compel Arbitration (ECF Doc. 11)*, COUNTERCLAIM against THRIVEST SPECIALTY FUNDING, LLC by TOBY L. WRIGHT. (Attachments: # 1 Exhibit)(GREEN, CASEY) (Entered: 03/28/2019) |
| 04/18/2019 | 13 | MOTION to Dismiss for Lack of Jurisdiction *Counterclaim* filed by THRIVEST SPECIALTY FUNDING, LLC.Memorandum and Certificate of Service. (Attachments: # 1 Text of Proposed Order)(BUCKLEY, PETER) (Entered: 04/18/2019) |
| 05/02/2019 | 14 | RESPONSE in Opposition re 13 MOTION to Dismiss for Lack of Jurisdiction *Counterclaim* filed by TOBY L. WRIGHT. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E)(GREEN, CASEY) (Entered: 05/02/2019) |
| 05/13/2019 | 15 | REPLY to Response to Motion re 13 MOTION to Dismiss for Lack of Jurisdiction *Counterclaim* filed by THRIVEST SPECIALTY FUNDING, LLC. (REED, ERIC) (Entered: 05/13/2019) |

| 05/23/2019 | 16 | MOTION for Summary Judgment *on Counterclaim* filed by TOBY L. WRIGHT.Brief, Statement of Facts, Certificate of Service. (Attachments: # 1 Brief, # 2 Supplement Statement of Undisputed Facts, # 3 Text of Proposed Order, # 4 Exhibit A, # 5 Exhibit B) (GREEN, CASEY) (Entered: 05/23/2019) |
|---|---|---|
| 05/23/2019 | 17 | MOTION for Preliminary Injunction filed by TOBY L. WRIGHT.Brief, Certificate of Service. (Attachments: # 1 Brief, # 2 Text of Proposed Order, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D)(GREEN, CASEY) (Entered: 05/23/2019) |
| 05/28/2019 | 18 | MOTION for Temporary Restraining Order filed by TOBY L. WRIGHT.Brief, Certificate of Service. (Attachments: # 1 Brief, # 2 Text of Proposed Order, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C)(GREEN, CASEY) (Entered: 05/28/2019) |
| 05/30/2019 | 19 | NOTICE THAT THE COURT WILL HOLD ORAL ARGUMENT REGARDING TOBY WRIGHT'S MOTION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 18 ) AND THRIVEST SPECIALTY FUNDING, LLC'S PETITION TO COMPEL ARBITRATION (ECF NO. 1 ) ON 6/3/2019 AT 4:00 PM. SIGNED BY HONORABLE ANITA B. BRODY ON 05/30/2019. 05/30/2019 ENTERED AND COPIES E-MAILED. (nd, ) (Entered: 05/30/2019) |
| 05/31/2019 | 20 | NOTICE of Hearing: THE ORAL ARGUMENT HEARING REGARDING TOBY WRIGHT'S MOTION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 18) AND THRIVEST SPECIALTY FUNDING, LLC'S PETITION TO COMPEL ARBITRATION (ECF NO.1) WILL NOW BE HELD ON MONDAY, JUNE 3 AT 2:00 P.M. SET FOR 6/3/2019 02:00 PM IN COURTROOM BEFORE HONORABLE ANITA B. BRODY.(js, ) (Entered: 05/31/2019) |
| 06/03/2019 | 21 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Oral Arguments hearing was held on 6/3/19. Court Reporter: ESR. (jaa, ) (Entered: 06/04/2019) |
| 06/05/2019 | 22 | ORDER THAT THE AMENDED PETITION TO COMPEL ARBITRATION AND THE MOTION TO COMPEL ARBITRATION OF THE COUNTERCLAIMS ARE GRANTED. THIS ACTION IS STAYED IN FAVOR OF ARBITRATION. THE FOLLOWING MOTIONS ARE DENIED AS MOOT: MOTION FOR A MORE DEFINITE STATEMENT PURSUANT TO RULE 12 (E) (ECF NO.9); MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM (ECF NO.16); MOTION FOR PRELIMINARY INJUNCTION STAYING ARBITRATION; RESPONDENT'S MOTION FOR TEMPORARY RESTRAINING ORDER STAYING ARBITRATION (ECF NO.18); ETC.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/5/19. 6/6/19 ENTERED AND E-MAILED, COPY TO ARB CLERK.(jl, ) (Entered: 06/06/2019) |
| 06/07/2019 | 23 | ORDER THAT THE CLERK OF COURT MARK THIS ACTION CLOSED FOR STATISTICAL PURPOSES AND PLACE THE MATTER IN THE CIVIL SUSPENSE FILE.. SIGNED BY HONORABLE ANITA B. BRODY ON 6/6/19. 6/7/19 ENTERED AND E-MAILED.(jl, ) (Entered: 06/07/2019) |
| 06/07/2019 | 24 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Telephone Conference held on 5/28/19 Court Reporter: ESR. (jaa, ) (Entered: 06/07/2019) |
| 07/03/2019 | 25 | Emergency MOTION to Confirm Arbitration Award filed by THRIVEST SPECIALTY FUNDING, LLC.Memorandum of Law and Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Exhibit B)(BUCKLEY, PETER) (Entered: 07/03/2019) |
| 07/03/2019 | 26 | ORDER THAT DEFENDANT MUST FILE A RESPONSE TO THRIVESTS |

| | | EMERGENCY MOTION TO CONFIRM ARBITRATION AWARD (ECF NO. 25 ) ON OR BEFORE JULY 12, 2019. SIGNED BY HONORABLE ANITA B. BRODY ON 7/3/19. 7/5/19 ENTERED AND COPIES E-MAILED. (va, ) (Entered: 07/05/2019) |
|---|---|---|
| 07/08/2019 | 27 | ORDER - UPON CONSIDERATION OF THE ATTACHED EMAIL FROM DEFENDANT'S COUNSEL, IT IS ORDERED that DEFENDANT'S TIME TO RESPOND TO THRIVEST'S EMERGENCY MOTION TO CONFIRM ARBITRATION AWARD (ECF NO. 25) IS EXTENDED. DEFENDANT MUST FILE A RESPONSE TO THRIVEST'S EMERGENCY MOTION TO CONFIRM ARBITRATION AWARD (ECF NO. 25) ON OR BEFORE JULY 19, 2019.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/8/2019. 7/8/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/08/2019) |
| 07/08/2019 | | Set/Reset Deadlines as to 25 Emergency MOTION to Confirm Arbitration Award . RESPONSES DUE BY 7/19/2019. (mo, ) (Entered: 07/08/2019) |
| 07/16/2019 | 28 | MOTION to Seal Document filed by TOBY L. WRIGHT.Brief, Certificate of Service. (Attachments: # 1 Brief, # 2 Text of Proposed Order, # 3 Exhibit A)(GREEN, CASEY) (Entered: 07/16/2019) |
| 07/16/2019 | 29 | ORDER that RESPONDENT'S MOTION FOR LEAVE TO FILE UNDER SEAL (ECF NO. 28) IS GRANTED. WHEN FILING HIS RESPONSE TO PLAINTIFF'S MOTION TO CONFIRM ARBITRATION AWARD, RESPONDENT MAY FILE AN EXHIBIT CONSISTING OF RESPONDENT'S MEDICAL RECORDS UNDER SEAL.. SIGNED BY HONORABLE ANITA B. BRODY ON 7/16/2019.7/16/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 07/16/2019) |
| 07/19/2019 | 30 | RESPONSE in Opposition re 25 Emergency MOTION to Confirm Arbitration Award *(Exhibit B filed under Seal)* filed by TOBY L. WRIGHT. (Attachments: # 1 Brief, # 2 Text of Proposed Order, # 3 Exhibit A, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J)(GREEN, CASEY) (Entered: 07/19/2019) |
| 07/19/2019 | 31 | EXHIBIT B to Respondent's Response in Opposition to Plaintiff's Motion to Confirm Arbitration Award. (FILED UNDER SEAL) (fdc) (nd, ). (Entered: 07/22/2019) |
| 07/23/2019 | 32 | RESPONSE in Support re 25 Emergency MOTION to Confirm Arbitration Award *with Certificate of Service* filed by THRIVEST SPECIALTY FUNDING, LLC. (Attachments: # 1 Exhibit A)(BUCKLEY, PETER) (Entered: 07/23/2019) |
| 08/12/2019 | 33 | ORDER that THRIVEST'S MOTION TO CONFIRM THE EMERGENCY ARBITRATOR'S INTERIM AWARD OF EMERGENCY RELIEF (ECF NO. 25) IS GRANTED AND WHITE'S APPLICATION TO VACATE THE INTERIM AWARD (ECF NO. 30) IS DENIED.-1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 8/12/2019.8/12/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/12/2019) |
| 08/12/2019 | 34 | ORDER that THIS COURT'S ORDER GRANTING THRIVEST'S MOTION TO CONFIRM THE EMERGENCY ARBITRATOR'S INTERIM AWARD OF EMERGENCY RELIEF (ECF NO. 33) IS VACATED. A CORRECTED ORDER WILL FOLLOW.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/12/2019. 8/12/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/12/2019) |
| 08/12/2019 | 35 | AMENDED ORDER that THRIVEST'S MOTION TO CONFIRM THE EMERGENCY ARBITRATOR'S INTERIM AWARD OF EMERGENCY RELIEF (ECF NO. 25) IS GRANTED AND WRIGHT'S APPLICATION TO VACATE THE INTERIM AWARD (ECF NO. 30) IS DENIED.-1(footnote) SIGNED BY HONORABLE ANITA B. |

| | | |
|---|---|---|
| | | BRODY ON 8/12/2019. 8/12/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/12/2019) |
| 08/15/2019 | 36 | Emergency MOTION for Contempt filed by THRIVEST SPECIALTY FUNDING, LLC.Memorandum and Certificate of Service. (Attachments: # 1 Text of Proposed Order) (BUCKLEY, PETER) (Entered: 08/15/2019) |
| 08/16/2019 | 37 | ORDER that PETITIONER THRIVEST SPECIALTY FUNDING, LLC MUST FILE A BRIEF REGARDING WHY ITS EMERGENCY MOTION FOR CONTEMPT (ECF NO. 36) IS PROPERLY BEFORE THE COURT INSTEAD OF BEFORE THE ARBITRATOR ON OR BEFORE AUGUST 30, 2019. RESPONDENT OBY L. WRIGHT MUST RESPOND TO THRIVEST'S BRIEF ON OR BEFORE SEPTEMBER 13, 2019.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/15/2019. 8/16/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/16/2019) |
| 08/21/2019 | 38 | RESPONSE in Support re 36 Emergency MOTION for Contempt *and in Response to the Court's August 16, 2019 Order (DKT. 37)* filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 08/21/2019) |
| 08/21/2019 | 39 | Emergency MOTION to Shorten the Deadline for Wright's Responsive Brief to September 4, 2019 filed by THRIVEST SPECIALTY FUNDING, LLC..(BUCKLEY, PETER) (Entered: 08/21/2019) |
| 08/22/2019 | 40 | ORDER that PLAINTIFF THRIVEST SPECIALTY FUNDING, LLC'S MOTION TO SHORTEN THE DEADLINE (ECF NO. 39) IS GRANTED AS FOLLOWS: DEFENDANT TOBY L. WRIGHT MUST RESPOND TO THRIVEST'S BRIEF (ECF NO. 38) ON OR BEFORE SEPTEMBER 10, 2019.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/22/2019.8/22/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/22/2019) |
| 08/22/2019 | 41 | ORDER that THE CLERK'S OFFICE SHALL REMOVE THE ABOVE CAPTIONED CASE FROM CIVIL SUSPENSE AND RESTORE THIS ACTION TO THE TRIAL DOCKET SO THAT IT MAY PROCEED TO FINAL DISPOSITION.. SIGNED BY HONORABLE ANITA B. BRODY ON 8/22/2019. 8/22/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 08/22/2019) |
| 09/10/2019 | 42 | RESPONSE to Motion re 36 Emergency MOTION for Contempt filed by TOBY L. WRIGHT. (GREEN, CASEY) (Entered: 09/10/2019) |
| 09/17/2019 | 43 | RESPONSE in Support re 36 Emergency MOTION for Contempt filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 09/17/2019) |
| 09/17/2019 | 44 | NOTICE - ON WEDNESDAY, SEPTEMBER 18, 2019, AT 10:00 A.M., THE COURT WILL HOLD A TELECONFERENCE WITH COUNSEL FOR PETITIONER AND DEFENDANT REGARDING PETITIONER'S AUGUST 15, 2019 EMERGENCY MOTION FOR CONTEMPT. ECF NO. 36. CHAMBERS WILL INITIATE THE CALL.SIGNED BY HONORABLE ANITA B. BRODY ON 9/17/2019.9/17/2019 ENTERED AND COPIES VIA ECF.(mo, ) (Entered: 09/17/2019) |
| 09/17/2019 | 45 | MOTION to Withdraw as Attorney filed by TOBY L. WRIGHT.Brief, Certificate of Service. (Attachments: # 1 Brief, # 2 Text of Proposed Order)(GREEN, CASEY) (Entered: 09/17/2019) |
| 09/18/2019 | 46 | Minute Entry, re: Telephone Conference for proceedings held before HONORABLE ANITA B. BRODY on 9/18/19. Court Reporter: ESR. (kw, ) (Entered: 09/19/2019) |
| 09/19/2019 | 47 | ORDERED THAT THE AUDIO RECORDING, TRANSCRIPT AND MINUTE SHEET FOR THE PROCEEDINGS HELD ON 09-18-2019 AT 2:28 P.M. ARE PLACED |

| | | UNDER SEAL. SIGNED BY HONORABLE ANITA B. BRODY ON 9/18/19. 9/19/19 ENTERED AND COPIES E-MAILED TO COUNSEL.(jaa, ) (Entered: 09/19/2019) |
|---|---|---|
| 09/19/2019 | 48 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Telephone Conference held on 9/18/19 Court Reporter: ESR. *FILED UNDER SEAL. (jaa, ) (lisad, ). (Entered: 09/19/2019) |
| 09/19/2019 | 49 | ORDERED THAT THE AUDIO RECORDING, TRANSCRIPT AND MINUTE SHEET FOR THE PROCEEDINGS HELD ON 09-18-2019 AT 2:04 P.M. ARE PLACED UNDER SEAL. SIGNED BY HONORABLE ANITA B. BRODY ON 9/18/19. 9/19/19 ENTERED AND COPIES E-MAILED TO COUNSEL.(jaa, ) (Entered: 09/19/2019) |
| 09/19/2019 | 50 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Telephone Conference held on 9/18/19 Court Reporter: ESR. *FILED UNDER SEAL. (jaa, ) (lisad, ). (Entered: 09/19/2019) |
| 09/20/2019 | 51 | ORDER THAT THRIVEFEST SPECIALTY FUNDING, LLC'S REQUEST FOR A COPY OF THE TRANSCRIPT OF THE CONFERENCE HELD AT 2:28 PM ON 9/18/19 (THE "TRANSCRIPT"), WHICH THE COURT PLACED UNDER SEAL, IS GRANTED. THE COURT'S TRANSCRIPT COORDINATOR SHALL PROVIDE A COPY OF THE TRANSCRIPT TO THRIVEFEST'S COUNSEL WITH APPROPRIATE NOTATION THAT THE TRANSCRIPT REMAINS UNDER SEAL. SIGNED BY HONORABLE ANITA B. BRODY ON 9/20/19. 9/20/19 ENTERED & E-MAILED. COPY FORWARDED TO TRANSCRIPT COORDINATOR.(fdc) (Entered: 09/20/2019) |
| 09/20/2019 | 52 | ORDER that THE MOTION FOR WITHDRAWAL OF RESPONDENT'S COUNSEL (ECF NO. 45) IS GRANTED. IT IS FURTHER ORDERED that CASEY GREEN, SIDKOFF, PINCUS & GREEN, P.C., RONALD J. ELLETT, ESQ. AND ELLETT LAW OFFICE MAY WITHDRAW AS COUNSEL OF RECORD FOR TOBY L. WRIGHT.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/20/2019.9/20/2019 ENTERED AND COPIES VIA ECF AND U.S. MAIL AND EMAIL.(mo, ) Modified on 9/23/2019 (mo, ). (Entered: 09/20/2019) |
| 09/23/2019 | 53 | RESPONSE in Support re 36 Emergency MOTION for Contempt filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 09/23/2019) |
| 09/23/2019 | 54 | ORDER - ON SEPTEMBER 20, 2019, THE COURT ENTERED AN ORDER ALLOWING RONALD J. ELLETT, ESQ., ELLETT LAW OFFICES, CASEY GREEN, ESQ. AND SIDKOFF, PINCUS & GREEN P.C. TO WITHDRAW FROM REPRESENTING PLAINTIFF TOBY L. WRIGHT (THE "WITHDRAWAL ORDER") (ECF NO. 52). IT IS NOW FURTHER ORDERED that ON OR BEFORE SEPTEMBER 27, 2019, RONALD J. ELLETT AND CASEY GREEN MUST SERVE MR. WRIGHT WITH A COPY OF THE WITHDRAWAL ORDER AND SUBMIT PROOF OF SERVICE ON THE DOCKET.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/23/2019. 9/23/2019 ENTERED AND COPIES VIA ECF, EMAIL AND U.S MAIL. (mo, ) Modified on 9/24/2019 (mo, ). (Entered: 09/23/2019) |
| 09/23/2019 | 55 | ORDER that DEFENDANT IS ORDERED TO SHOW CAUSE ON OR BEFORE OCTOBER 7, 2019, WHY THRIVEST'S EMERGENCY MOTION FOR CONTEMPT (ECF NO. 36) SHOULD NOT BE GRANTED.-1(footnote). A CIVIL CONTEMPT HEARING WILL BE HELD ON OCTOBER 10, 2019 AT 2:00 PM EASTERN STANDARD TIME IN COURTROOM 7-B ON THE 7TH FLOOR OF THE U.S. COURTHOUSE, 601 MARKET ST., PHILADELPHIA, PA 19106.. PLAINTIFF MUST PERSONALLY SERVE THIS ORDER, AS WELL AS THE EMERGENCY MOTION FOR CONTEMPT (ECF NO. 36) UPON DEFENDANT AND PROVIDE PROOF OF SERVICE ON THE DOCKET ON OR BEFORE OCTOBER 1, 2019.. SIGNED BY HONORABLE ANITA B. BRODY ON 9/23/2019. 9/23/2019 ENTERED AND COPIES |

| | | VIA ECF,EMAIL AND U.S. MAIL.(mo, ) Modified on 9/24/2019 (mo, ). (Entered: 09/23/2019) |
|---|---|---|
| 09/25/2019 | 56 | TRANSCRIPT of Proceedings held on 9/18/19 before Judge BRODY. Court Reporter: ESR. TELEPHONE CONFERENCE (J & J COURT REPORTING) (FILED UNDER SEAL) (jl, ) (Entered: 09/26/2019) |
| 09/25/2019 | 57 | TRANSCRIPT of Proceedings held on 9/18/19 before Judge BRODY. Court Reporter: ESR. TELEPHONE CONFERENCE J&J COURT TRANSCRIBERS, INC. (FILED UNDER SEAL) (jl, ) (Entered: 09/26/2019) |
| 09/27/2019 | 58 | AFFIDAVIT of Service by Samuel Pittman re: served Court Orders (Doc Nos. 53 and 54) upon Toby Wright by Mail, Certified Mail, Email on 9-23-19 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(GREEN, CASEY) (Entered: 09/27/2019) |
| 10/01/2019 | 59 | CERTIFICATE OF SERVICE by THRIVEST SPECIALTY FUNDING, LLC *of Court's September 23, 2019 Order (Dkt. 55) and Thrivest's Emergency Motion for Contempt (Dkt. 36)* (BUCKLEY, PETER) (Entered: 10/01/2019) |
| 10/07/2019 | 60 | Letter dated 10/1/19 addressed to the Honorable Anita B. Brody (FILED UNDER SEAL) (mbh, ) (nd, ). (Entered: 10/07/2019) |
| 10/07/2019 | 61 | ORDER FILED UNDER SEAL. SIGNED BY HONORABLE ANITA B. BRODY ON 10/7/19. 10/7/19 ENTERED.(mbh, ) (nd, ). (Entered: 10/07/2019) |
| 10/07/2019 | 62 | CERTIFICATE OF SERVICE by THRIVEST SPECIALTY FUNDING, LLC re 61 Order *via Electronic Service* (BUCKLEY, PETER) (Entered: 10/07/2019) |
| 10/10/2019 | 63 | Proof of Electronic Service by THRIVEST SPECIALTY FUNDING, LLC re 61 Order (BUCKLEY, PETER) Modified on 10/11/2019 (lisad, ). (Entered: 10/10/2019) |
| 10/10/2019 | 64 | ORDER that ON OR BEFORE OCTOBER 15, 2019, PLAINTIFF THRIVEST MUST SUBMIT FURTHER BRIEFING ON WHETHER OR NOT THRIVEST HAS SATISFIED ITS BURDEN OF PROVING, BY CLEAR AND CONVINCING EVIDENCE, THAT DEFENDANT TOBY L. WRIGHT HAD KNOWLEDGE OF THE COURT'S AUGUST 12, 2019 ORDER (ECF NO. 35) CONFIRMING THE EMERGENCY ARBITRATOR'S INTERIM AWARD DIRECTING MR. WRIGHT TO PLACE A PORTION OF THE DISPUTED FUNDS IN ESCROW.-1(footnote). SIGNED BY HONORABLE ANITA B. BRODY ON 10/10/2019. 10/10/2019 ENTERED AND COPIES VIA ECF AND U.S. MAIL.(mo, ) (Entered: 10/10/2019) |
| 10/10/2019 | 65 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Civil Contempt Hearing held on 10/10/2019. Court Reporter: ESR. (jl, ) Modified on 10/15/2019 (lisad, ). (Entered: 10/11/2019) |
| 10/15/2019 | 66 | RESPONSE in Support re 36 Emergency MOTION for Contempt *and in Response to the Court's October 10, 2019 Order* filed by THRIVEST SPECIALTY FUNDING, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Certificate of Service)(BUCKLEY, PETER) (Entered: 10/15/2019) |
| 10/18/2019 | 67 | RESPONSE in Support re 36 Emergency MOTION for Contempt filed by THRIVEST SPECIALTY FUNDING, LLC. (Attachments: # 1 Text of Proposed Order)(BUCKLEY, PETER) (Entered: 10/18/2019) |
| 10/21/2019 | 68 | EXPLANATION AND ORDER that ON THIS 21ST DAY OF OCTOBER, 2019 THE COURT HOLDS DEFENDANT TOBY L WRIGHT IN CONTEMPT OF THE COURT'S AUGUST 12, 2019 ORDER (ECF NO. 35)("ESCROW ORDER"). THE ESCROW ORDER CONFIRMED THE EMERGENCY ARBITRATOR'S INTERIM AWARD DIRECTING WRIGHT TO ESCROW $800,000 PENDING RESOLUTION |

| | | |
|---|---|---|
| | | OF ARBITRATION. FOR THE REASONS THAT FOLLOW, THE COURT IMPOSES THE CIVIL CONTEMPT SANCTIONS LISTED IN PARAGRAPH 3 BELOW:. SIGNED BY HONORABLE ANITA B. BRODY ON 10/21/2019. 10/21/2019 ENTERED AND COPIES VIA ECF, U.S. MAIL AND EMAIL (mo, ) Modified on 10/21/2019 (mo, ). (Entered: 10/21/2019) |
| 10/21/2019 | 69 | CERTIFICATE OF SERVICE by THRIVEST SPECIALTY FUNDING, LLC re 68 Order,,, Set Deadlines/Hearings,,,,, *by Electronic Service* (BUCKLEY, PETER) (Entered: 10/21/2019) |
| 10/28/2019 | 70 | CERTIFICATE OF SERVICE by THRIVEST SPECIALTY FUNDING, LLC re 68 Order,,, Set Deadlines/Hearings,,,,, (BUCKLEY, PETER) (Entered: 10/28/2019) |
| 11/01/2019 | 71 | STATUS REPORT *in accordance with Court's October 21, 2018 Order* by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 11/01/2019) |
| 11/22/2019 | 72 | MOTION to Confirm Arbitration Award filed by THRIVEST SPECIALTY FUNDING, LLC.Brief, Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Brief, # 3 Exhibit A - Award, # 4 Exhibit B - Modified Award, # 5 Certificate of Service)(REED, ERIC) (Entered: 11/22/2019) |
| 12/10/2019 | 73 | Letter to Honorable Anita B. Brody re 72 MOTION to Confirm Arbitration Award , 36 Emergency MOTION for Contempt filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) Modified on 12/11/2019 (lisad, ). (Entered: 12/10/2019) |
| 01/02/2020 | 74 | RESPONSE in Support re 72 MOTION to Confirm Arbitration Award , 36 Emergency MOTION for Contempt filed by THRIVEST SPECIALTY FUNDING, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(BUCKLEY, PETER) (Entered: 01/02/2020) |
| 01/02/2020 | 75 | ORDER THAT PLAINTIFF THRIVEST'S MOTION TO CONFIRM ARBITRATION AWARD (DOC. NO. 72 ) IS GRANTED. JUDGMENT IS ENTERED IN FAVOR OF THRIVEST AND AGAINST DEFENDANT TOBY L. WRIGHT. FURTHER INFORMATION OUTLINED HEREIN. SIGNED BY HONORABLE ANITA B. BRODY ON 1/2/2020.1/2/2020 ENTERED AND COPIES E-MAILED.(amas) (Entered: 01/02/2020) |
| 01/03/2020 | 76 | NOTICE of Hearing: TELEPHONE CONFERENCE IS SET FOR 1/7/2020 AT 02:00 PM IN JUDGE CHAMBERS BEFORE HONORABLE ANITA B. BRODY.(jwl, ) (Entered: 01/03/2020) |
| 01/03/2020 | 77 | ORDER THAT THRIVEST SPECIALTY FUNDING, LLC MUST SEND MR. WRIGHT PHYSICAL AND ELECTRONIC COPIES OF THE COURTS JANUARY 2, 2020 ORDER CONFIRMING THE FINAL ARBITRATION AWARD 75 . ON OR BEFORE JANUARY 9, 2020, THRIVEST SPECIALTY FUNDING, LLC MUST SUBMIT PROOF OF PHYSICAL SERVICE TO THE DOCKET. ON OR BEFORE JANUARY 6, 2020, THRIVEST SPECIALTY FUNDING, LLC MUST SUBMIT PROOF OF ELECTRONIC SERVICE TO THE DOCKET.. SIGNED BY HONORABLE ANITA B. BRODY ON 1/3/20. 1/3/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 01/03/2020) |
| 01/06/2020 | 78 | CERTIFICATE OF SERVICE by THRIVEST SPECIALTY FUNDING, LLC re 77 Order,, *of January 2, 2020* (BUCKLEY, PETER) (Entered: 01/06/2020) |
| 01/07/2020 | 79 | ORDER THAT ON OR BEFORE TUESDAY, JANUARY 14, 2020, MR WRIGHT MUST CONTACT THE COURT VIA TELEPHONE...IT IS FURTHER ORDERED THAT PLAINTIFF MUST SERVE MR. WRIGHT WITH PHYSICAL AND ELECTRONIC COPIES OF THIS ORDER AS WELL AS 35 68 AND 75 AND MUST |

| | | SUBMIT PROOF OF SERVICE BY JANUARY 10, 2020 AT 4:00 PM.... SIGNED BY HONORABLE ANITA B. BRODY ON 1/7/20. 1/7/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 01/07/2020) |
|---|---|---|
| 01/08/2020 | 80 | CERTIFICATE OF SERVICE by THRIVEST SPECIALTY FUNDING, LLC re 79 Order, *Dkt. 35, Dkt. 68 and Dkt. 75* (BUCKLEY, PETER) (Entered: 01/08/2020) |
| 01/08/2020 | 81 | MOTION for Service *by Alternate Means* filed by THRIVEST SPECIALTY FUNDING, LLC.. (Attachments: # 1 Text of Proposed Order)(BUCKLEY, PETER) (Entered: 01/08/2020) |
| 01/08/2020 | 82 | ORDER granting 81 MOTION FOR SERVICE BY ALTERNATE MEANS...THRIVEST MAY SATISFY THE SERVICE REQUIREMENT IMPOSED BY COURT ORDER 79 .... SIGNED BY HONORABLE ANITA B. BRODY ON 1/8/20.1/8/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 01/08/2020) |
| 01/10/2020 | 83 | CERTIFICATE OF SERVICE by THRIVEST SPECIALTY FUNDING, LLC re 82 Order on Motion for Service *(Dkt. 79, Dkt. 35, Dkt. 68, Dkt. 75 and Dkt. 82)* (BUCKLEY, PETER) (Entered: 01/10/2020) |
| 01/16/2020 | 84 | Letter (FILED UNDER SEAL) (nd, ) (afm, ). (Entered: 01/16/2020) |
| 01/17/2020 | 85 | RESPONSE in Support re 36 Emergency MOTION for Contempt *and Reply to Dkt. 84* filed by THRIVEST SPECIALTY FUNDING, LLC. (BUCKLEY, PETER) (Entered: 01/17/2020) |
| 01/17/2020 | 86 | Minute Entry for Telephone Conference held on 1/7/20 before Judge Brody. Court Reporter: ESR. (mbh, ). (Entered: 01/21/2020) |
| 01/23/2020 | 87 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Telephone Conference held on 1/22/20 Court Reporter: ESR. (jl, ) (Entered: 01/23/2020) |
| 01/24/2020 | 88 | NOTICE of Hearing: TELE-VIDEO CONFERENCE HEARING SET FOR 1/28/2020 12:00 PM BEFORE HONORABLE ANITA B. BRODY.(js, ) Modified on 1/24/2020 (jwl, ). (Entered: 01/24/2020) |
| 01/24/2020 | 89 | Minute Entry for Telephone Conference held on 1/23/20 before Judge Brody. Court Reporter: ESR. (mbh, ) (Entered: 01/24/2020) |
| 01/28/2020 | 90 | NOTICE of Appearance by BRADFORD ROTHWELL SOHN on behalf of TOBY L. WRIGHT (SOHN, BRADFORD) (Entered: 01/28/2020) |
| 01/28/2020 | 91 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY CONTEMPT HEARING held on 1/28/20. Court Reporter: ESR. (jl, ) (Entered: 01/29/2020) |
| 01/31/2020 | 92 | Transcript of Telephone Conference held on 1/23/20, before Judge Brody. Court Reporter/Transcriber: J&J Court Transcribers, Inc. (fdc) (Entered: 01/31/2020) |
| 02/04/2020 | 93 | Transcript of Tele-Video Contempt Hearing Proceedings held on 1/28/20, before Judge BRODY. Court Reporter/Transcriber J&J COURT REPORTING.. (rf, ) (Entered: 02/05/2020) |
| 02/18/2020 | 94 | Minute Entry for proceedings held before HONORABLE ANITA B. BRODY Telephone Conference held on 2/18/2020 (sg, ) (Entered: 02/18/2020) |
| 02/18/2020 | 95 | Letter to the Honorable Anita B. Brody re 36 Emergency MOTION for Contempt filed by THRIVEST SPECIALTY FUNDING, LLC. (Attachments: # 1 Text of Proposed Order Exhibit A, # 2 Exhibit B)(BUCKLEY, PETER) Modified on 2/19/2020 (lisad, ). (Entered: 02/18/2020) |

| 02/20/2020 | 96 | ORDER THAT ON OR BEFORE 5:00 P.M. PST ON FEBRUARY 24, 2020, TOBY L. WRIGHT MUST PRODUCE TO THRIVEST SPECIALTY FUNDING, LLC ALL EVIDENCE UPON WHICH MR. WRIGHT INTENDS TO RELY TO PROVE HIS INABILITY-TO-COMPLY DEFENSE TO CONTEMPT. IT IS FURTHER ORDERED THAT ON FEBRUARY 25, 2020, AT 10:30 A.M. EST, THE COURT WILL HOLD A STATUS CONFERENCE VIA TELEPHONE. CHAMBERS WILL CONTACT COUNSEL FOR BOTH PARTIES.. SIGNED BY HONORABLE ANITA B. BRODY ON 2/19/20. 2/20/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 02/20/2020) |
| 02/20/2020 | | STATUS TELEPHONE CONFERENCE SET FOR 2/25/2020 10:30 AM BEFORE HONORABLE ANITA B. BRODY. (jwl, ) (Entered: 02/20/2020) |
| 02/25/2020 | 97 | RESPONSE in Support re 36 Emergency MOTION for Contempt filed by THRIVEST SPECIALTY FUNDING, LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(BUCKLEY, PETER) (Entered: 02/25/2020) |
| 02/27/2020 | 98 | ORDER TO SHOW CAUSE SHOW CAUSE RESPONSE DUE BY 3/6/2020 AT 12:00 P.M. EST.. SIGNED BY HONORABLE ANITA B. BRODY ON 2/27/20. 2/27/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 02/27/2020) |
| 02/27/2020 | 99 | Minute Entry for Telephone Conference held on 2/25/20 before Judge Brody. Court Reporter: ESR. (mbh, ) (Entered: 02/28/2020) |
| 03/02/2020 | 100 | MOTION for Extension of Time to File Response/Reply as to 98 Order to Show Cause *in light of anticipated bankruptcy proceeding* filed by TOBY L. WRIGHT.Motion for Extention of Time to Show Cause.(SOHN, BRADFORD) (Entered: 03/02/2020) |
| 03/03/2020 | 101 | ORDER ENTERED/RESOLVED 100 MOTION FOR EXTENSION OF TIME TO FILE RESPONSE/REPLY. SIGNED BY HONORABLE ANITA B. BRODY ON 3/3/20.3/3/20 ENTERED AND COPIES E-MAILED.(jwl, ) (Entered: 03/03/2020) |
| 03/06/2020 | 102 | RESPONSE TO ORDER TO SHOW CAUSE by THRIVEST SPECIALTY FUNDING, LLC. (REED, ERIC) (Entered: 03/06/2020) |
| 03/08/2020 | 103 | RESPONSE TO ORDER TO SHOW CAUSE by TOBY L. WRIGHT. (SOHN, BRADFORD) (Entered: 03/08/2020) |
| 03/10/2020 | 104 | REPLY TO RESPONSE TO ORDER TO SHOW CAUSE by THRIVEST SPECIALTY FUNDING, LLC. Certificate of Service. (BUCKLEY, PETER) Modified on 3/11/2020 (lisad, ). (Entered: 03/10/2020) |
| 03/12/2020 | 105 | MEMORANDUM. SIGNED BY HONORABLE ANITA B. BRODY ON 3/12/20. 3/12/20 ENTERED AND COPIES MAILED AND E-MAILED.(jwl, ) (Entered: 03/12/2020) |
| 03/12/2020 | 106 | ORDER CONFIRMING THE FINAL ARBITRATION AWARD 75 SUPERSEDED THE COURTS AUGUST 12, 2019 ORDER CONFIRMING THE INTERIM ARBITRATION AWARD 35 . THE COURTS OCTOBER 21, 2019 CONTEMPT ORDER 68 IS VACATED.. SIGNED BY HONORABLE ANITA B. BRODY ON 3/12/20. 3/12/20 ENTERED AND COPIES MAILED AND E-MAILED.(jwl, ) (Entered: 03/12/2020) |

| PACER Service Center |
|---|
| Transaction Receipt |
| 06/25/2021 12:50:14 |

| PACER Login: | fr000009:2550901:0 | Client Code: | 027275.00001.search |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 2:18-cv-04764-AB |
| Billable Pages: | 9 | Cost: | 0.90 |

# EXHIBIT "E"

**CHASE** ◎
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218- 2051

November 01, 2018 through November 30, 2018

Account Number: ▮▮▮▮▮▮▮▮▮

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00058527 DRE 601 211 33518 NNNNNNNNNN  1 000000000 64 0000
PLAYERS AUTHORITY LLC
PO BOX 7305
TEMPE AZ 85281-0011



### We no longer automatically reissue Business Employee Deposit Cards and Associate Debit Cards

We wanted to remind you that we no longer automatically reissue Business Employee Deposit Cards and Associate Debit Cards when they expire.

To request a new card for an employee or contractor, a signer needs to call the number on the back of the card or visit a branch

The signer will need to provide the following information for the employee or contractor who is getting the card:

- Legal name,
- Date of birth, and
- Residential address

Additionally, all new Business Employee Deposit Cards and Associate Debit Cards now have a term of two years

These changes are meant to help ensure that access to your Chase business deposit account is only available to active, authorized users

If you have questions, please call us anytime at the number listed on this statement.

### We updated our Deposit Account and Wire Transfer Agreements

The following changes were made November 11, 2018:

- We published an updated version of our Deposit Account Agreement. You can get the latest agreement at a branch or by request when you call us. Here's what you should know
  ° We no longer charge an Extended Overdraft Fee (General Account Terms, Section C, Insufficient Funds and Returned Item fees)
  ° We added an address for reporting a dispute if you believe we provided incomplete or inaccurate information about your account to a consumer reporting agency. (New section in General Account Terms, Section I, Disputing information reported to a consumer reporting agency)

Page 1 of 8



November 01, 2018 through November 30, 2018
Account Number: ▮▮▮▮▮▮▮

- • We updated our Wire Transfer Agreement, here's what you should know:
    - ° You will still receive email notifications on the status of your wire transfer. However, we added that if we're unable to send an email due to system failures or outages, it's your responsibility to monitor your account for the status of your wire transfer.
    - ° We clarified that you should expect your foreign exchange rate to be less favorable than rates quoted online or in publications.

Please call us at the number at the top of this statement if you have any questions.

## CHECKING SUMMARY     Chase Total Business Checking

|  | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | -$1,441.76 |
| Deposits and Additions | 7 | 377,200.96 |
| ATM & Debit Card Withdrawals | 177 | -49,718.21 |
| Electronic Withdrawals | 2 | -20,000.00 |
| Other Withdrawals | 6 | -90,283.00 |
| Fees | 12 | -86.10 |
| **Ending Balance** | **204** | **$215,671.89** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 11/01 | T&P Dogon/Inacti Payment | PPD ID: 1251926855 | $3,625.00 |
| 11/01 | Bert Bell/Pete R Payment | PPD ID: 1251926855 | 2,000.00 |
| 11/13 | ATM Cash Deposit | 11/12 1025 W Queen Crk Rd Chandler AZ Card 4509 | 580.00 |
| 11/13 | ATM Cash Deposit | 11/12 1025 W Queen Crk Rd Chandler AZ Card 4509 | 500.00 |
| 11/14 | Card Purchase Return | 11/09 Dobson Ranch Inn 999-9999999 AZ Card 4509 | 100.00 |
| 11/15 | Deposit       1824236244 | | 62,793.42 |
| 11/23 | Deposit       1780879102 | | 307,602.54 |
| **Total Deposits and Additions** | | | **$377,200.96** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/01 | Card Purchase With Pin  11/01 Circle K 01541 701 E B Phoenix AZ Card 4509 | $9.76 |
| 11/01 | Card Purchase With Pin  11/01 Shell Service Station Phoenix AZ Card 4509 | 17.30 |
| 11/02 | Card Purchase       11/01 Splash Car Wash Chandler AZ Card 4509 | 16.00 |
| 11/02 | Card Purchase       11/01 Uber  *Trip Yzmcd 800-592-8996 CA Card 4509 | 15.72 |
| 11/02 | Card Purchase       11/01 Prime Video 888-802-3080 WA Card 4509 | 16.16 |
| 11/02 | Card Purchase       11/01 Enterprise Rent-A-Car Scottsdale AZ Card 4509 | 50.00 |
| 11/02 | Card Purchase With Pin  11/02 Finish Line #081 5000 Tempe AZ Card 4509 | 108.09 |
| 11/02 | Card Purchase With Pin  11/02 Petco 1151 Chandler AZ Card 4509 | 24.62 |
| 11/02 | Recurring Card Purchase 11/02 Sxm*Siriusxm.Com/Acct 888-635-5144 NY Card 4509 | 19.04 |
| 11/02 | Recurring Card Purchase 11/02 Google *Fit Radio 855-836-3987 CA Card 4509 | 3.99 |
| 11/05 | Card Purchase       11/03 Harkins Chandler Fashion Chandler AZ Card 4509 | 11.50 |
| 11/05 | Card Purchase       11/03 Harkins Chandler Fashion Chandler AZ Card 4509 | 44.75 |
| 11/05 | Non-Chase ATM Withdraw  11/03 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 11/05 | Card Purchase With Pin  11/03 Evi'Casino Arizo Scottsdale AZ Card 4509 | 313.45 |
| 11/05 | Card Purchase       11/03 Arbys 7048 Chandler AZ Card 4509 | 15.00 |
| 11/05 | Card Purchase       11/03 Arbys 7048 Chandler AZ Card 4509 | 22.44 |
| 11/05 | Card Purchase       11/05 Amazon.Com*M80U97562 Amzn.Com/Bill WA Card 4509 | 52.60 |

*Page 2 of 8*

**CHASE ⬡**

November 01, 2018 through November 30, 2018
Account Number:



## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/05 | Card Purchase          11/05 Amazon.Com*M86Z245M2 Amzn.Com/Bill WA Card 4509 | 17.25 |
| 11/05 | Card Purchase          11/05 Amzn Mktp US*M82Vy55 Amzn.Com/Bill WA Card 4509 | 8.99 |
| 11/05 | Non-Chase ATM Withdraw  11/05 1100 W. Queen Creek Chandler AZ Card 4509 | 403.00 |
| 11/05 | Card Purchase With Pin  11/05 Lowe's #2582 Chandler AZ Card 4509 | 24.13 |
| 11/05 | Recurring Card Purchase 11/02 U-Haul Storage of Tempe Tempe AZ Card 4509 | 465.30 |
| 11/05 | Recurring Card Purchase 11/01 Extra Space 0239 480-9647317 AZ Card 4509 | 187.90 |
| 11/05 | Recurring Card Purchase 11/01 American Chiropractic 000-0000000 AZ Card 4509 | 100.00 |
| 11/05 | Recurring Card Purchase 11/03 Amazon Prime Amzn.Com/Bill WA Card 4509 | 14.00 |
| 11/05 | Recurring Card Purchase 11/03 Google *Dropbox 855-836-3987 CA Card 4509 | 9.99 |
| 11/05 | Recurring Card Purchase 11/03 Google *Pinger Inc 855-836-3987 CA Card 4509 | 4.99 |
| 11/06 | Card Purchase          11/05 Snooze An Am Eatery Gil Gilbert AZ Card 4509 | 35.30 |
| 11/06 | Card Purchase          11/05 Bahama Bucks Chandler AZ Card 4509 | 12.52 |
| 11/07 | Card Purchase          11/06 Harkins Chandler Fashion Chandler AZ Card 4509 | 11.50 |
| 11/07 | Card Purchase With Pin  11/07 Scottsdale & Mc Tempe AZ Card 4509 | 10.19 |
| 11/07 | Card Purchase With Pin  11/07 Scottsdale & Mc Tempe AZ Card 4509 | 5.43 |
| 11/07 | Card Purchase With Pin  11/07 99 Cents Only St 1120 Mesa AZ Card 4509 | 15.16 |
| 11/08 | Card Purchase          11/06 Kona Grill Chandler 102 Chandler AZ Card 4509 | 31.89 |
| 11/08 | Card Purchase          11/07 Enterprise Rent-A-Car Scottsdale AZ Card 4509 | 78.70 |
| 11/08 | Card Purchase          11/07 Popeyes 601 Scottsdale AZ Card 4509 | 25.93 |
| 11/08 | Card Purchase With Pin  11/08 Circle K 02873 3930 E Phoenix AZ Card 4509 | 35.43 |
| 11/09 | Card Purchase          11/08 Waffle House 1604 Phoenix AZ Card 4509 | 30.74 |
| 11/09 | Card Purchase          11/08 Zipps Sports Grill Chandler AZ Card 4509 | 66.48 |
| 11/09 | Card Purchase With Pin  11/09 Ross Stores #1075 Chandler AZ Card 4509 | 39.85 |
| 11/13 | Card Purchase          11/08 Dobson Ranch Inn Mesa AZ Card 4509 | 73.39 |
| 11/13 | Card Purchase With Pin  11/10 Frys Food Drg 015 Gilbert AZ Card 4509 | 49.49 |
| 11/13 | Card Purchase With Pin  11/10 Burlington Stores287 Tempe AZ Card 4509 | 42.12 |
| 11/13 | Card Purchase          11/11 Extendedstay 316 Phoenix AZ Card 4509 | 112.56 |
| 11/13 | Card Purchase With Pin  11/11 Chd Shell Service Station Chandler AZ Card 4509 | 37.00 |
| 11/13 | Card Purchase With Pin  11/11 Outback Steakhouse #32 Gilbert AZ Card 4509 | 75.43 |
| 11/13 | Card Purchase          11/11 Church's Chicken # Phoenix AZ Card 4509 | 42.86 |
| 11/13 | Card Purchase With Pin  11/11 Frys Food Drg 046 Phoenix AZ Card 4509 | 8.02 |
| 11/13 | Card Purchase With Pin  11/11 Frys Food Drg 046 Phoenix AZ Card 4509 | 6.32 |
| 11/13 | Card Purchase          11/12 Amzn Mktp US*M85Y51D Amzn.Com/Bill WA Card 4509 | 99.98 |
| 11/13 | Card Purchase With Pin  11/11 Chevron/Tee Jay Chandler AZ Card 4509 | 15.74 |
| 11/13 | Card Purchase          11/12 Super 8 Chandler Chandler AZ Card 4509 | 82.01 |
| 11/13 | Card Purchase With Pin  11/12 Frys Food Drg 043 Tempe AZ Card 4509 | 43.22 |
| 11/13 | Card Purchase With Pin  11/12 Finish Line #081 5000 Tompo AZ Card 4509 | 87.46 |
| 11/13 | Card Purchase          11/13 Amzn Mktp US*M88Nw2S Amzn.Com/Bill WA Card 4509 | 32.07 |
| 11/13 | Non-Chase ATM Withdraw  11/12 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 11/13 | Card Purchase          11/13 Chili's Chandler Fash C Chandler AZ Card 4509 | 56.24 |
| 11/13 | Card Purchase With Pin  11/13 Circle K 09183 3033 W Chandler AZ Card 4509 | 8.66 |
| 11/13 | Card Purchase With Pin  11/13 T & Holdings 21 Tempe AZ Card 4509 | 16.50 |
| 11/14 | Card Purchase          11/07 Dobson Ranch Inn Mesa AZ Card 4509 | 79.09 |
| 11/14 | Card Purchase          11/07 Dobson Ranch Inn Mesa AZ Card 4509 | 120.00 |
| 11/14 | Card Purchase          11/12 Wetzel's Pretzels Ariz Tempe AZ Card 4509 | 10.68 |
| 11/15 | Card Purchase          11/13 Super 8 Chandler Chandler AZ Card 4509 | 82.01 |
| 11/15 | Card Purchase          11/14 Casino Arizona Food & B Scottsdale AZ Card 4509 | 56.02 |
| 11/15 | Card Purchase          11/14 Casino Arizona Food & B Scottsdale AZ Card 4509 | 14.87 |
| 11/15 | Card Purchase          11/15 Tst* Wahu Grill - Tempe Tempe AZ Card 4509 | 8.92 |
| 11/15 | Card Purchase With Pin  11/15 Circle K 09183 3033 W Chandler AZ Card 4509 | 46.24 |
| 11/15 | ATM Withdrawal          11/15 1744 E Southern Ave Tempe AZ Card 4509 | 100.00 |

*Page 3 of 8*



November 01, 2018 through November 30, 2018
Account Number:

## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/16 | Card Purchase       11/14 Pancheros Mexican Gri Tempe AZ Card 4509 | 23.40 |
| 11/16 | Card Purchase       11/15 Amzn Mktp US*M809K7I Amzn.Com/Bill WA Card 4509 | 26.99 |
| 11/16 | Card Purchase       11/16 Amzn Mktp US*M89T92I Amzn.Com/Bill WA Card 4509 | 17.99 |
| 11/16 | Card Purchase With Pin  11/16 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 11/19 | Card Purchase       11/15 9788 Mountainside Fitne Chandler AZ Card 4509 | 38.42 |
| 11/19 | Non-Chase ATM Withdraw  11/17 US Bank Chandler Chandler AZ Card 4509 | 43.00 |
| 11/19 | Card Purchase       11/18 Amzn Mktp US*M68W70Y Amzn.Com/Bill WA Card 4509 | 11.99 |
| 11/19 | Card Purchase       11/17 Jack In Tho Box 1548 Chandler AZ Card 4509 | 22.01 |
| 11/19 | Card Purchase With Pin  11/17 Best Buy    00011098 Avondale AZ Card 4509 | 108.79 |
| 11/19 | Card Purchase       11/17 6178 El Pollo Loco Avondale AZ Card 4509 | 12.28 |
| 11/19 | ATM Withdrawal      11/17 9846 S Estrella Pkwy Goodyear AZ Card 4509 | 300.00 |
| 11/19 | Card Purchase With Pin  11/17 Evi*Casino Arizo Scottsdale AZ Card 4509 | 675.70 |
| 11/19 | Card Purchase With Pin  11/17 Evi*Casino Arizo Scottsdale AZ Card 4509 | 520.45 |
| 11/19 | Card Purchase With Pin  11/17 Evi*Casino Arizo Scottsdale AZ Card 4509 | 416.95 |
| 11/19 | Card Purchase With Pin  11/17 Circle K 06641 4353 S Mesa AZ Card 4509 | 40.03 |
| 11/19 | Card Purchase With Pin  11/18 99 Cents Only St 2070 Mesa AZ Card 4509 | 20.06 |
| 11/19 | Card Purchase With Pin  11/18 Circle K # 03478 6761 Gilbert AZ Card 4509 | 16.77 |
| 11/19 | Card Purchase With Pin  11/18 Burlington Stores366 Mesa AZ Card 4509 | 68.02 |
| 11/19 | Card Purchase       11/19 Amzn Mktp US*M83Y39R Amzn.Com/Bill WA Card 4509 | 14.97 |
| 11/19 | Card Purchase       11/19 Amzn Mktp US*M82of0R Amzn.Com/Bill WA Card 4509 | 35.99 |
| 11/19 | Card Purchase       11/19 Amzn Mktp US*M894X2Y Amzn.Com/Bill WA Card 4509 | 26.97 |
| 11/19 | Card Purchase       11/19 Native Grill & Wings Chandler AZ Card 4509 | 64.05 |
| 11/19 | Card Purchase With Pin  11/19 Nordstrom-Rack # 3620 Chandler AZ Card 4509 | 132.46 |
| 11/19 | Card Purchase With Pin  11/19 Ross Store #489 Chandler AZ Card 4509 | 51.70 |
| 11/19 | Card Purchase With Pin  11/19 Best Buy    00008698 Chandler AZ Card 4509 | 64.67 |
| 11/20 | Card Purchase       11/18 Ihop 1523 Mesa AZ Card 4509 | 35.02 |
| 11/20 | Card Purchase With Pin  11/20 Nordstrom Rack # 1900 Tempe AZ Card 4509 | 43.21 |
| 11/20 | Non-Chase ATM Withdraw  11/20 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 11/20 | Card Purchase With Pin  11/20 Evi*Casino Arizo Scottsdale AZ Card 4509 | 727.45 |
| 11/20 | Card Purchase With Pin  11/20 Evi*Casino Arizo Scottsdale AZ Card 4509 | 520.45 |
| 11/20 | Card Purchase With Pin  11/20 Lowe's #1032 Chandler AZ Card 4509 | 95.96 |
| 11/20 | Card Purchase With Pin  11/20 Lowe's #1032 Chandler AZ Card 4509 | 16.14 |
| 11/20 | Card Purchase With Pin  11/20 Nordstrom-Rack # 3620 Chandler AZ Card 4509 | 53.87 |
| 11/21 | Card Purchase       11/19 Kona Grill Chandler 102 Chandler AZ Card 4509 | 80.00 |
| 11/21 | Card Purchase       11/21 Amzn Mktp US*M07Vb8F Amzn.Com/Bill WA Card 4509 | 7.39 |
| 11/21 | Card Purchase       11/20 Amzn Mktp US*M020I4O Amzn.Com/Bill WA Card 4509 | 10.95 |
| 11/21 | Card Purchase       11/20 Amzn Mktp US*M02J83O Amzn.Com/Bill WA Card 4509 | 9.86 |
| 11/21 | Card Purchase       11/20 Spinatos Pizza - Sfr 03 Phoenix AZ Card 4509 | 68.74 |
| 11/21 | Card Purchase       11/20 Cinemark Theatres 366 Mesa AZ Card 4509 | 24.97 |
| 11/21 | Non-Chase ATM Withdraw  11/21 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 11/21 | Card Purchase With Pin  11/21 Evi*Casino Arizo Scottsdale AZ Card 4509 | 520.45 |
| 11/21 | Card Purchase With Pin  11/21 Five Star Car Wash Mesa AZ Card 4509 | 21.95 |
| 11/21 | ATM Withdrawal      11/21 4714 S Rural Rd Tempe AZ Card 4509 | 1,500.00 |
| 11/21 | ATM Withdrawal      11/21 4714 S Rural Rd Tempe AZ Card 4509 | 1,000.00 |
| 11/21 | Card Purchase With Pin  11/21 Albertsons Store  0981 Chandler AZ Card 4509 | 10.62 |
| 11/21 | Card Purchase With Pin  11/21 Albertsons Store  0981 Chandler AZ Card 4509 | 30.21 |
| 11/21 | Card Purchase With Pin  11/21 Quiktrip Maricopa AZ Card 4509 | 58.00 |
| 11/23 | Card Purchase       11/21 Chevron 0209999 Chandler AZ Card 4509 | 29.80 |
| 11/23 | Card Purchase       11/21 Chapman Scotts Hyundai Scottsdale AZ Card 4509 | 638.66 |
| 11/23 | Non-Chase ATM Withdraw  11/22 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 11/23 | Card Purchase With Pin  11/22 Evi*Casino Arizo Scottsdale AZ Card 4509 | 623.95 |

Page 4 of 8

**CHASE ◯**

November 01, 2018 through November 30, 2018

Account Number:



## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 11/23 | Card Purchase With Pin  11/22 Evi*Casino Arizo Scottsdale AZ Card 4509 | 520.45 |
| 11/23 | Card Purchase With Pin  11/22 Chevron/Tee Jay Chandler AZ Card 4509 | 38.26 |
| 11/23 | Card Purchase        11/22 Harkins Chandler Crossr Chandler AZ Card 4509 | 40.00 |
| 11/23 | Card Purchase With Pin  11/22 Wal-Mart Super Center Chandler AZ Card 4509 | 23.41 |
| 11/23 | Card Purchase With Pin  11/22 Dicks Clothing&Sportin Gilbert AZ Card 4509 | 494.20 |
| 11/23 | Card Purchase        11/22 Harkins Chandler Crossr Chandler AZ Card 4509 | 17.00 |
| 11/23 | Card Purchase With Pin  11/23 Dsw Chandler Vil 3411 Chandler AZ Card 4509 | 137.96 |
| 11/23 | Card Purchase With Pin  11/23 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 11/23 | Recurring Card Purchase 11/22 Amazon Prime Amzn Com/Bill WA Card 4509 | 14.00 |
| 11/26 | Card Purchase With Pin  11/23 Niko Tempe 134 Tempe AZ Card 4509 | 177.74 |
| 11/26 | Card Purchase        11/23 Ono Hawaiian Bbq Phoeni Phoenix AZ Card 4509 | 23.87 |
| 11/26 | Card Purchase With Pin  11/23 Gilbert Keg Gilbert AZ Card 4509 | 280.60 |
| 11/26 | Card Purchase With Pin  11/23 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 11/26 | Card Purchase        11/24 Amzn Mktp US*M063P9N Amzn.Com/Bill WA Card 4509 | 41.60 |
| 11/26 | Card Purchase        11/26 Amzn Mktp US*M05Kj2T Amzn.Com/Bill WA Card 4509 | 194.95 |
| 11/26 | Card Purchase        11/25 Amzn Mktp US*M04Fij43 Amzn.Com/Bill WA Card 4509 | 49.98 |
| 11/26 | Card Purchase        11/24 9788 Mountainside Fitne Chandler AZ Card 4509 | 29.44 |
| 11/26 | Card Purchase        11/24 9788 Mountainside Fitne Chandler AZ Card 4509 | 10.70 |
| 11/26 | Card Purchase        11/24 Sonic Drive IN #6384 Chandler AZ Card 4509 | 22.90 |
| 11/26 | Card Purchase With Pin  11/24 Ross Stores #1075 Chandler AZ Card 4509 | 25.84 |
| 11/26 | Card Purchase With Pin  11/24 Shell Service S Chandler AZ Card 4509 | 20.04 |
| 11/26 | Card Purchase With Pin  11/24 Shell Service Station Chandler AZ Card 4509 | 60.24 |
| 11/26 | Non-Chase ATM Withdraw 11/24 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 11/26 | Card Purchase With Pin  11/24 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 11/26 | Card Purchase With Pin  11/24 Evi*Casino Arizo Scottsdale AZ Card 4509 | 623.95 |
| 11/26 | Card Purchase With Pin  11/24 Evi*Casino Arizo Scottsdale AZ Card 4509 | 623.95 |
| 11/26 | Card Purchase With Pin  11/25 Chevron/Tee Jay Chandler AZ Card 4509 | 30.48 |
| 11/26 | Card Purchase With Pin  11/25 Chevron/Tee Jay Gilbert AZ Card 4509 | 29.31 |
| 11/26 | Non-Chase ATM Withdraw 11/26 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 11/26 | Card Purchase With Pin  11/26 Evi*Casino Arizo Scottsdale AZ Card 4509 | 313.45 |
| 11/26 | ATM Withdrawal        11/26 2827 N 44th St Phoenix AZ Card 4509 | 3,000.00 |
| 11/26 | Card Purchase With Pin  11/26 Burlington Stores851 Phoenix AZ Card 4509 | 82.38 |
| 11/26 | Card Purchase With Pin  11/26 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 11/26 | Card Purchase With Pin  11/26 T-Mobile 3111 W Chandl Chandler AZ Card 4509 | 1,387.80 |
| 11/27 | Card Purchase        11/26 Amzn Mktp US*M04I35N Amzn.Com/Bill WA Card 4509 | 179.90 |
| 11/27 | Card Purchase        11/26 Casino Arizona Food & B Scottsdale AZ Card 4509 | 53.86 |
| 11/27 | Card Purchase        11/27 Bost Deal IN Town AZ Tempe AZ Card 4509 | 616.15 |
| 11/27 | Card Purchase With Pin  11/26 T-Mobile 3111 W Chandl Chandler AZ Card 4509 | 790.72 |
| 11/27 | ATM Withdrawal        11/27 28 S Dobson Rd Ste 101 Mesa AZ Card 4509 | 1,600.00 |
| 11/28 | Card Purchase        11/27 Amazon.Com*M01X88Ty0 Amzn.Com/Bill WA Card 4509 | 96.94 |
| 11/28 | Card Purchase        11/27 Amzn Mktp US*M06Xj1T Amzn.Com/Bill WA Card 4509 | 247.98 |
| 11/28 | Card Purchase        11/27 Jpj Empire Tempe AZ Card 4509 | 1,233.54 |
| 11/28 | Card Purchase With Pin  11/28 Audio Express #2 Tempe AZ Card 4509 | 1,864.00 |
| 11/29 | Card Purchase        11/29 Outback Steakhouse #31 Tempe AZ Card 4509 | 114.00 |
| 11/29 | Card Purchase With Pin  11/29 Audio Express #2 Tempe AZ Card 4509 | 1,004.10 |
| 11/29 | Card Purchase With Pin  11/29 Circle K 01921 3149 E Phoenix AZ Card 4509 | 40.00 |
| 11/29 | Card Purchase With Pin  11/29 Circle K 01921 3149 E Phoenix AZ Card 4509 | 68.45 |
| 11/29 | Card Purchase With Pin  11/29 Kay Jewelers # 2 5000 Tempe AZ Card 4509 | 1,781.06 |
| 11/29 | Card Purchase With Pin  11/29 Ross Stores #1075 Chandler AZ Card 4509 | 73.26 |
| 11/29 | Card Purchase With Pin  11/29 Lowe's #2582 Chandler AZ Card 4509 | 28.14 |
| 11/30 | Card Purchase        11/29 Loves Country 00003285 Chandler AZ Card 4509 | 45.17 |

Page 5 of 8

**CHASE** ◯

November 01, 2018 through November 30, 2018
Account Number: ███████████

## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|--|--------|
| 11/30 | Card Purchase | 11/29 Prime Video*M046251H0 888-802-3080 WA Card 4509 | 16.16 |
| 11/30 | Card Purchase | 11/29 Cobblestone Auto Spa Tempe AZ Card 4509 | 58.99 |
| 11/30 | Card Purchase | 11/30 Nike Tempe 134 Tempe AZ Card 4509 | 143.96 |
| 11/30 | Card Purchase | 11/07 Extendedstay 316 Phoenix AZ Card 4509 | 75.08 |
| 11/30 | Card Purchase With Pin | 11/30 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 11/30 | Card Purchase With Pin | 11/30 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 11/30 | Card Purchase With Pin | 11/30 Ross Stores #1075 Chandler AZ Card 4509 | 66.80 |
| **Total ATM & Debit Card Withdrawals** | | | **$49,718.21** |

## ATM & DEBIT CARD SUMMARY

Toby Wright  Card 4509

| | | |
|--|--|--|
| | Total ATM Withdrawals & Debits | $11,460.00 |
| | Total Card Purchases | $38,258.21 |
| | Total Card Deposits & Credits | $1,180.00 |

ATM & Debit Card Totals

| | | |
|--|--|--|
| | Total ATM Withdrawals & Debits | $11,460.00 |
| | Total Card Purchases | $38,258.21 |
| | Total Card Deposits & Credits | $1,180.00 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 11/20 | Transfer To Chk Xxxxxx4288 | $10,000.00 |
| 11/28 | Transfer To Chk Xxxxxx4288 | 10,000.00 |
| **Total Electronic Withdrawals** | | **$20,000.00** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 11/05 | 11/05 Withdrawal | $350.00 |
| 11/21 | 11/21 Withdrawal | 1,000.00 |
| 11/26 | 11/26 Withdrawal | 1,500.00 |
| 11/27 | 11/27 Withdrawal | 25,933.00 |
| 11/29 | 11/29 Withdrawal | 46,500.00 |
| 11/30 | 11/30 Withdrawal | 15,000.00 |
| **Total Other Withdrawals** | | **$90,283.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 11/05 | Non-Chase ATM Fee-With | $2.50 |
| 11/05 | Non-Chase ATM Fee-With | 2.50 |
| 11/13 | Non-Chase ATM Fee-With | 2.50 |
| 11/19 | Non-Chase ATM Fee-With | 2.50 |
| 11/20 | Non-Chase ATM Fee-With | 2.50 |
| 11/21 | Non-Chase ATM Fee-With | 2.50 |
| 11/23 | Non-Chase ATM Fee-With | 2.50 |
| 11/26 | Non-Chase ATM Fee-With | 2.50 |
| 11/26 | Non-Chase ATM Fee-With | 2.50 |

Page 6 of 8

SB1093594-F1





November 01, 2018 through November 30, 2018

Account Number: ███████████



## FEES (continued)

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 11/27 | Official Checks Charge | 8.00 |
| 11/29 | Official Checks Charge | 8.00 |
| 11/30 | Monthly Service Fee | 47.60 |
| **Total Fees** | | **$86.10** |

You were charged a monthly service fee of $12.00 this period. You can avoid this fee in the future by maintaining a minimum daily balance of $1,500.00. Your minimum daily balance was -$1,441.76.

Chase Total Business Checking allows up to 100 debits, credits, and deposited items per statement period. Your transaction total for this statement period was 189 and excessive transaction fees were applied. If this level of activity is typical, please contact us so that we can explore other product options for your business.

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 11/01 | $4,156.18 | 11/13 | 637.58 | 11/23 | 343,269.72 |
| 11/02 | 3,902.56 | 11/14 | 527.81 | 11/26 | 329,582.65 |
| 11/05 | 1,350.27 | 11/15 | 63,013.17 | 11/27 | 300,401.02 |
| 11/06 | 1,302.45 | 11/16 | 61,389.34 | 11/28 | 286,958.56 |
| 11/07 | 1,260.17 | 11/19 | 58,701.56 | 11/29 | 237,341.55 |
| 11/08 | 1,088.22 | 11/20 | 46,704.96 | 11/30 | 215,671.89 |
| 11/09 | 951.15 | 11/21 | 41,857.32 | | |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 185 |
| Deposits / Credits | 2 |
| Deposited Items | 2 |
| **Transaction Total** | **189** |

| SERVICE FEE CALCULATION | AMOUNT |
|-------------------------|--------|
| Service Fee | $12.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$12.00** |
| Excessive Transaction Fees (Above 100) | $35.60 |
| **Total Service Fees** | **$47.60** |

Page 7 of 8



November 01, 2018 through November 30, 2018

Account Number: ███████████

IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS: Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS: Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

Page 8 of 8



**CHASE** ◐
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

December 01, 2018 through December 31, 2018
Account Number: ▄▄▄▄▄▄▄

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |



00058980 DRE 601 211 00119 NNNNNNNNNN  1 000000000 64 0000
PLAYERS AUTHORITY LLC
PO BOX 7305
TEMPE AZ 85281-0011

**We are clarifying the fee for incoming wires**

On March 17, 2019, we're updating the document explaining our Additional Banking Services and Fees to clarify that the fee for an incoming wire is $0 if it is sent from another Chase account with the help of a Chase banker or through chase.com or the Chase Mobile® app.

As a reminder, our standard fee to receive a wire is $15, however, some of our products do not charge this fee.

Please call the number on this statement if you have any questions.

## CHECKING SUMMARY   Chase Total Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $215,671.89 |
| Deposits and Additions | 5 | 11,845.86 |
| ATM & Debit Card Withdrawals | 198 | -79,120.35 |
| Electronic Withdrawals | 1 | -1,500.00 |
| Other Withdrawals | 4 | -24,500.00 |
| Fees | 11 | -72.50 |
| **Ending Balance** | **219** | **$122,324.90** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/03 | Card Purchase Return    12/02 Harkins Santan Village Gilbert AZ Card 4509 | 22.00 |
| 12/03 | T&P Degen/Inacti Payment            PPD ID: 1251926855 | 7,250.00 |
| 12/03 | Bort Boll/Peto R Payment            PPD ID: 1251926855 | 3,748.86 |
| 12/20 | Deposit      1014078376 | 750.00 |
| 12/28 | Card Purchase Return    12/25 Dobson Ranch Inn 999-9999999 AZ Card 4509 | 75.00 |
| **Total Deposits and Additions** | | **$11,845.86** |

Page 1 of 8

**CHASE ○**

December 01, 2018 through December 31, 2018

Account Number: ███████

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/03 | Card Purchase          11/29 Comfort Inn Chandler Chandler AZ Card 4509 | $225.97 |
| 12/03 | Card Purchase          11/29 All Flags & Sports Tempe AZ Card 4509 | 76.73 |
| 12/03 | Card Purchase          11/30 Loves Country 00003285 Chandler AZ Card 4509 | 6.99 |
| 12/03 | Card Purchase          11/30 Mandy's Fish And Chip 602-307-9247 AZ Card 4509 | 12.80 |
| 12/03 | Card Purchase          11/30 3 Minute Car Wash - Te Tempe AZ Card 4509 | 16.00 |
| 12/03 | Card Purchase          12/01 Splash Car Wash Chandler AZ Card 4509 | 16.00 |
| 12/03 | Card Purchase          12/01 Dolphin Car Wash Mesa AZ Card 4509 | 10.00 |
| 12/03 | Card Purchase          12/01 Best Nails of Mesa Mesa AZ Card 4509 | 275.00 |
| 12/03 | Card Purchase          12/02 Dairy Queen #12666 Mesa AZ Card 4509 | 12.60 |
| 12/03 | Card Purchase With Pin  12/01 T-Mobile 6555 E Southe Mesa AZ Card 4509 | 457.32 |
| 12/03 | Card Purchase With Pin  12/01 Evi*Casino Arizo Scottsdale AZ Card 4509 | 5,177.95 |
| 12/03 | Card Purchase          12/01 Nordstrom Rack #0150 Tempe AZ Card 4509 | 19.43 |
| 12/03 | Card Purchase          12/02 Arizona State Athletics Ann Arbor AZ Card 4509 | 75.00 |
| 12/03 | Card Purchase With Pin  12/01 Chevron/Tee Jay Petrol Chandler AZ Card 4509 | 59.00 |
| 12/03 | Card Purchase          12/02 Native Grill & Wings Chandler AZ Card 4509 | 111.17 |
| 12/03 | Card Purchase          12/02 Loves Country 00003285 Chandler AZ Card 4509 | 3.97 |
| 12/03 | Card Purchase          12/02 Splash Car Wash Chandler AZ Card 4509 | 15.00 |
| 12/03 | Card Purchase With Pin  12/02 Stein Mart 304 2835 S Chandler AZ Card 4509 | 40.94 |
| 12/03 | Card Purchase With Pin  12/02 Macy's     3107 W Chand Chandler AZ Card 4509 | 236.50 |
| 12/03 | Card Purchase          12/03 Cheesecake Chandler Chandler AZ Card 4509 | 106.80 |
| 12/03 | Card Purchase          12/02 Harkins Santan Village Gilbert AZ Card 4509 | 44.00 |
| 12/03 | Non-Chase ATM Withdraw  12/03 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 12/03 | Card Purchase With Pin  12/03 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 12/03 | Card Purchase With Pin  12/03 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 12/03 | Recurring Card Purchase 12/01 Extra Space 0239 480-9647317 AZ Card 4509 | 187.90 |
| 12/03 | Recurring Card Purchase 12/02 Sxm*Siriusxm.Com/Acct 888-635-5144 NY Card 4509 | 19.04 |
| 12/03 | Recurring Card Purchase 12/03 Google *Dropbox 855-836-3987 CA Card 4509 | 9.99 |
| 12/03 | Recurring Card Purchase 12/03 Google *Pinger Inc 855-836-3987 CA Card 4509 | 4.99 |
| 12/04 | Card Purchase          12/01 Over Easy-Mesa Mesa AZ Card 4509 | 81.19 |
| 12/04 | Card Purchase With Pin  12/03 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 12/04 | Card Purchase With Pin  12/04 Circle K 09183 3033 W Chandler AZ Card 4509 | 50.80 |
| 12/04 | Card Purchase With Pin  12/04 Burlington Stores287 Tempe AZ Card 4509 | 51.84 |
| 12/04 | Card Purchase With Pin  12/05 Fry's Electronics   # Tempe AZ Card 4509 | 158.87 |
| 12/04 | Card Purchase With Pin  12/04 Walgreens Store 925 W Tempe AZ Card 4509 | 22.64 |
| 12/04 | Recurring Card Purchase 12/02 U-Haul Storage of Tempe Tempe AZ Card 4509 | 465.30 |
| 12/04 | Recurring Card Purchase 12/04 Google *Fit Radio 855-836-3987 CA Card 4509 | 3.99 |
| 12/05 | Card Purchase          12/04 One Stop Nutrition Phoenix AZ Card 4509 | 59.04 |
| 12/05 | Card Purchase          12/04 6188 El Pollo Loco Chandler AZ Card 4509 | 14.05 |
| 12/05 | Card Purchase With Pin  12/04 Circle K 09183 3033 W Chandler AZ Card 4509 | 9.73 |
| 12/05 | Card Purchase With Pin  12/04 Circle K 09183 3033 W Chandler AZ Card 4509 | 65.00 |
| 12/05 | Non-Chase ATM Withdraw  12/04 4075 S. 32ND Street Phoenix AZ Card 4509 | 62.50 |
| 12/05 | Card Purchase With Pin  12/05 Denny's #6644 Tempe AZ Card 4509 | 46.08 |
| 12/05 | Card Purchase With Pin  12/05 Ross Stores #392 Tempe AZ Card 4509 | 249.61 |
| 12/05 | Card Purchase With Pin  12/05 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 12/06 | Card Purchase          12/04 Mountainside Medical 315-768-3030 NY Card 4509 | 70.60 |
| 12/06 | Card Purchase          12/05 Amzn Mktp US*M04P056 Amzn.Com/Bill WA Card 4509 | 1,198.00 |
| 12/06 | Card Purchase          12/05 Harkins Tempe Mrketplac Tempe AZ Card 4509 | 11.00 |
| 12/06 | Card Purchase With Pin  12/05 Ross Stores #986 Tempe AZ Card 4509 | 71.30 |
| 12/06 | Card Purchase With Pin  12/05 Chevron/Tee Jay Chandler AZ Card 4509 | 22.93 |
| 12/06 | Recurring Card Purchase 12/04 American Chiropractic 000-0000000 AZ Card 4509 | 100.00 |

*Page 2 of 8*

**CHASE** ⬡

December 01, 2018 through December 31, 2018
Account Number: ▉▉▉▉▉▉▉▉



## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/07 | Card Purchase       12/05 Wingstop 615 Tempe AZ Card 4509 | 25.26 |
| 12/07 | Card Purchase       12/05 Pancheros Mexican Gri Tempe AZ Card 4509 | 32.70 |
| 12/07 | Card Purchase       12/06 Jcpenney 2902 Tempe AZ Card 4509 | 19.45 |
| 12/07 | Card Purchase       12/06 Thirsty Lion Pub & Gril Tempe AZ Card 4509 | 61.83 |
| 12/07 | Card Purchase With Pin  12/07 Chevron/Tee Jay Petrol Chandler AZ Card 4509 | 51.87 |
| 12/07 | Card Purchase With Pin  12/07 Burlington Stores 1037 Mesa AZ Card 4509 | 87.45 |
| 12/07 | Card Purchase With Pin  12/07 Foot Locker 07226 Gilbert AZ Card 4509 | 86.23 |
| 12/07 | Card Purchase With Pin  12/07 Nordstrom #154 2090 E Gilbert AZ Card 4509 | 51.68 |
| 12/07 | ATM Withdrawal       12/07 1155 S Arizona Ave Chandler AZ Card 4509 | 200.00 |
| 12/07 | Card Purchase With Pin  12/07 Ross Stores #1137 Gilbert AZ Card 4509 | 53.85 |
| 12/07 | Card Purchase With Pin  12/07 Wal-Mart Super Center Tempe AZ Card 4509 | 32.02 |
| 12/10 | Card Purchase       12/06 Dobson Ranch Inn Mesa AZ Card 4509 | 56.29 |
| 12/10 | Card Purchase       12/06 Dobson Ranch Inn Mesa AZ Card 4509 | 50.00 |
| 12/10 | Card Purchase       12/06 Dobson Ranch Inn Mesa AZ Card 4509 | 56.29 |
| 12/10 | Card Purchase       12/07 Kona Grill Gilbert 120 Gilbert AZ Card 4509 | 51.80 |
| 12/10 | Card Purchase       12/07 Santan Browing CO· Chandler AZ Card 4509 | 119.66 |
| 12/10 | Card Purchase       12/07 Dobson Ranch Inn Mesa AZ Card 4509 | 130.98 |
| 12/10 | Non-Chase ATM Withdraw  12/07 1624 East Broadway Road Phoenix AZ Card 4509 | 203.00 |
| 12/10 | Card Purchase       12/08 Nike Chandler 207 Chandler AZ Card 4509 | 140.10 |
| 12/10 | Card Purchase With Pin  12/08 Target T- 3931 S Gilbe Gilbert AZ Card 4509 | 57.66 |
| 12/10 | Card Purchase       12/09 Native Grill & Wings Chandler AZ Card 4509 | 45.56 |
| 12/10 | Card Purchase With Pin  12/09 Quiktrip Corp Chandler AZ Card 4509 | 43.00 |
| 12/10 | Card Purchase With Pin  12/09 Quiktrip Corp Chandler AZ Card 4509 | 52.91 |
| 12/10 | Card Purchase With Pin  12/10 Burlington Stores 1068 Phoenix AZ Card 4509 | 20.28 |
| 12/10 | Card Purchase With Pin  12/10 Ross Store #369 Phoenix AZ Card 4509 | 45.58 |
| 12/10 | Card Purchase With Pin  12/10 Frys Food Drg 015 Gilbert AZ Card 4509 | 130.00 |
| 12/10 | ATM Withdrawal       12/10 4040 E Chandler Blvd Phoenix AZ Card 4509 | 2,500.00 |
| 12/11 | Card Purchase       12/09 Samsungelectronics Www Samsung C NJ Card 4509 | 1.89 |
| 12/11 | Card Purchase       12/09 Samsungelectronics Www Samsung C NJ Card 4509 | 0.85 |
| 12/11 | Card Purchase       12/09 Samsungelectronics Www Samsung C NJ Card 4509 | 2.15 |
| 12/11 | Card Purchase       12/09 Samsungelectronics Www Samsung C NJ Card 4509 | 1.84 |
| 12/11 | Card Purchase       12/09 Samsungelectronics Www Samsung C NJ Card 4509 | 3.23 |
| 12/11 | Card Purchase       12/09 Samsungelectronics Www Samsung C NJ Card 4509 | 2.03 |
| 12/11 | Card Purchase       12/10 Samsungelectronics Www Samsung C NJ Card 4509 | 1.50 |
| 12/11 | Card Purchase       12/10 Samsungelectronics Www Samsung C NJ Card 4509 | 1.84 |
| 12/11 | Card Purchase       12/10 Life Time Cafe 132Q33 Tempe AZ Card 4509 | 5.42 |
| 12/11 | Card Purchase       12/10 Garcias Mexican Restaur Tempe AZ Card 4509 | 48.58 |
| 12/11 | Card Purchase       12/10 One Stop Nutrition Phoenix AZ Card 4509 | 332.73 |
| 12/11 | Payment Sent       12/10 Sqc*Kennard William 8774174551 CA Card 4509 | 25.00 |
| 12/11 | Card Purchase With Pin  12/11 Burlington Stores 1037 Mesa AZ Card 4509 | 50.76 |
| 12/12 | Payment Sent       12/11 Sqc*Square Cash 8774174551 CA Card 4509 | 1,000.00 |
| 12/12 | Card Purchase       12/12 Google *Techsmith G.CO/Helppay# CA Card 4509 | 14.99 |
| 12/12 | Card Purchase With Pin  12/12 T & Holdings 21 Tempe AZ Card 4509 | 57.05 |
| 12/12 | Non-Chase ATM Withdraw  12/12 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 12/12 | Card Purchase With Pin  12/12 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 12/12 | Card Purchase With Pin  12/12 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 12/12 | Card Purchase With Pin  12/12 Dollar Tr 1185 S Arizo Chandler AZ Card 4509 | 50.26 |
| 12/13 | Card Purchase       12/11 Dobson Ranch Inn Mesa AZ Card 4509 | 63.13 |
| 12/13 | Card Purchase       12/11 Dobson Ranch Inn Mesa AZ Card 4509 | 100.00 |
| 12/13 | Card Purchase       12/12 Subway       00574301 Phoenix AZ Card 4509 | 17.41 |
| 12/13 | Card Purchase       12/12 Red Lobster 6219 Mesa AR Card 4509 | 86.40 |

Page 3 of 8

**CHASE ○**

December 01, 2018 through December 31, 2018

Account Number: ▉▉▉▉▉▉▉

## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|--|--------|
| 12/13 | Card Purchase | 12/13 Amzn Mktp US*M00925U Amzn.Com/Bill WA Card 4509 | 53.98 |
| 12/13 | Card Purchase With Pin | 12/13 Circle K 09183 3033 W Chandler AZ Card 4509 | 8.12 |
| 12/13 | ATM Withdrawal | 12/13 1025 W Queen Crk Rd Chandler AZ Card 4509 | 300.00 |
| 12/14 | Card Purchase | 12/13 Amzn Mktp US*M23TI2F Amzn.Com/Bill WA Card 4509 | 99.95 |
| 12/14 | Card Purchase | 12/14 Amzn Mktp US*M22Yk3F Amzn.Com/Bill WA Card 4509 | 8.99 |
| 12/14 | Card Purchase | 12/13 Amzn Mktp US*M25LI5O Amzn.Com/Bill WA Card 4509 | 14.99 |
| 12/14 | Card Purchase | 12/13 Amzn Mktp US*M24AR84 Amzn.Com/Bill WA Card 4509 | 14.97 |
| 12/14 | Card Purchase | 12/14 Progressive Leasing 877-898-1970 UT Card 4509 | 53.21 |
| 12/14 | Card Purchase | 12/14 Best Deal IN Town AZ Tempe AZ Card 4509 | 216.20 |
| 12/14 | ATM Withdrawal | 12/14 2440 E Basolino Rd Phoenix AZ Card 4509 | 1,500.00 |
| 12/14 | Card Purchase With Pin | 12/14 T-Mobile 2060 E Baseli Phoenix AZ Card 4509 | 62.45 |
| 12/17 | Card Purchase | 12/12 Dobson Ranch Inn Mesa AZ Card 4509 | 142.22 |
| 12/17 | Card Purchase | 12/16 Amzn Mktp US*M081L9Y Amzn.Com/Bill WA Card 4509 | 39.95 |
| 12/17 | Card Purchase | 12/15 Amazon.Com*M05Qp8Rj2 Amzn.Com/Bill WA Card 4509 | 107.79 |
| 12/17 | Card Purchase | 12/14 One Stop Nutrition Phoenix AZ Card 4509 | 54.10 |
| 12/17 | Card Purchase | 12/14 Dobson Ranch Inn Mesa AZ Card 4509 | 225.87 |
| 12/17 | Card Purchase | 12/14 Kona Grill Chandler 102 Chandler AZ Card 4509 | 51.35 |
| 12/17 | Card Purchase With Pin | 12/15 Shell Service Station Scottsdale AZ Card 4509 | 30.03 |
| 12/17 | Card Purchase With Pin | 12/15 T-Mobile 3885 S Arizon Chandler AZ Card 4509 | 87.47 |
| 12/17 | Card Purchase With Pin | 12/15 Quiktrip Tempe AZ Card 4509 | 42.00 |
| 12/17 | Non-Chase ATM Withdraw | 12/15 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 12/17 | Card Purchase With Pin | 12/15 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 12/17 | Card Purchase With Pin | 12/15 Evi*Casino Arizo Scottsdale AZ Card 4509 | 779.20 |
| 12/17 | Card Purchase | 12/15 Taco Bell #23158 Chandler AZ Card 4509 | 14.36 |
| 12/17 | Card Purchase With Pin | 12/16 Bill Luke Tempe Tempe AZ Card 4509 | 15,000.00 |
| 12/17 | ATM Withdrawal | 12/17 1025 W Queen Crk Rd Chandler AZ Card 4509 | 500.00 |
| 12/17 | Card Purchase With Pin | 12/17 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 12/17 | ATM Withdrawal | 12/17 1155 S Arizona Ave Chandler AZ Card 4509 | 1,500.00 |
| 12/17 | Card Purchase With Pin | 12/17 Chevron/Too Jay Phoenix AZ Card 4509 | 50.20 |
| 12/18 | Card Purchase | 12/17 Life Time Fitness 132 Tempe AZ Card 4509 | 121.14 |
| 12/18 | Card Purchase | 12/17 Native Grill & Wings Phoenix AZ Card 4509 | 118.63 |
| 12/18 | Card Purchase With Pin | 12/17 Ross Store #369 Phoenix AZ Card 4509 | 122.63 |
| 12/19 | Card Purchase | 12/19 Amzn Mktp US*M20A571 Amzn.Com/Bill WA Card 4509 | 86.96 |
| 12/19 | Card Purchase | 12/17 Dobson Ranch Inn Mesa AZ Card 4509 | 123.96 |
| 12/19 | Card Purchase | 12/17 Arizona Element Elite 623-215-4122 AZ Card 4509 | 500.00 |
| 12/19 | Card Purchase | 12/18 Dairy Queen #43983 Tempe AZ Card 4509 | 6.46 |
| 12/19 | Card Purchase | 12/18 Mandy's Fish And Chip 602-307-9247 AZ Card 4509 | 58.96 |
| 12/19 | Card Purchase | 12/18 Mandy's Fish And Chip 602-307-9247 AZ Card 4509 | 8.09 |
| 12/19 | Card Purchase | 12/19 Amzn Mktp US*M20Mc11 Amzn.Com/Bill WA Card 4509 | 37.69 |
| 12/19 | Card Purchase With Pin | 12/18 Chevron/Too Jay Chandler AZ Card 4509 | 5.71 |
| 12/19 | Card Purchase With Pin | 12/18 Chevron/Too Jay Patrol Chandler AZ Card 4509 | 60.00 |
| 12/19 | Card Purchase | 12/19 Jz Market Mesa AZ Card 4509 | 32.72 |
| 12/19 | Card Purchase With Pin | 12/19 T & Holdings 21 Tempe AZ Card 4509 | 8.82 |
| 12/19 | Card Purchase With Pin | 12/19 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 12/19 | Card Purchase With Pin | 12/19 Nordstrom-Rack # 3620 Chandler AZ Card 4509 | 132.53 |
| 12/20 | Card Purchase | 12/20 Amzn Mktp US*M29681A Amzn.Com/Bill WA Card 4509 | 128.97 |
| 12/20 | Card Purchase | 12/19 Jz Market Mesa AZ Card 4509 | 7.32 |
| 12/20 | Card Purchase | 12/19 Zipps Sports Grill Chandler AZ Card 4509 | 150.81 |
| 12/20 | Card Purchase With Pin | 12/20 A To Z Mart Mesa AZ Card 4509 | 6.58 |
| 12/20 | Card Purchase With Pin | 12/20 K-Momo Mesa. Mesa AZ Card 4509 | 48.62 |
| 12/21 | Card Purchase | 12/20 Thirsty Lion Pub & Gril Tempe AZ Card 4509 | 84.05 |

*Page 4 of 8*

**CHASE** ◯

December 01, 2018 through December 31, 2018

Account Number: ▇▇▇▇▇▇▇▇



## ATM & DEBIT CARD WITHDRAWALS  (continued)

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/21 | Card Purchase With Pin  12/20 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 12/21 | Card Purchase With Pin  12/21 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 12/21 | Card Purchase With Pin  12/21 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 12/21 | Card Purchase With Pin  12/21 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 12/21 | Card Purchase With Pin  12/21 Chevron/Quick Convenio Phoenix AZ Card 4509 | 50.02 |
| 12/21 | Card Purchase With Pin  12/21 Chevron/Quick Convenio Phoenix AZ Card 4509 | 65.15 |
| 12/24 | Card Purchase         12/19 Dobson Ranch Inn Mesa AZ Card 4509 | 129.67 |
| 12/24 | Card Purchase         12/22 Amazon Com*M24Ug6P12 Amzn.Com/Bill WA Card 4509 | 214.52 |
| 12/24 | Card Purchase         12/21 Jz Market Mesa AZ Card 4509 | 21.18 |
| 12/24 | Card Purchase With Pin  12/21 Dobson Ranch Inn Mesa AZ Card 4509 | 203.07 |
| 12/24 | Card Purchase         12/21 Nike Tempe 134 Tempe AZ Card 4509 | 94.56 |
| 12/24 | Card Purchase         12/21 Arizona Auto License So Avondale AZ Card 4509 | 183.46 |
| 12/24 | Card Purchase         12/23 Ra Sushi Ahwatukee Phoenix AZ Card 4509 | 81.23 |
| 12/24 | Non-Chase ATM Withdraw 12/22 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 12/24 | Card Purchase With Pin  12/22 Oreilly Auto #3 Phoenix AZ Card 4509 | 156.30 |
| 12/24 | Card Purchase With Pin  12/24 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 12/24 | Recurring Card Purchase 12/22 Amazon Prime Amzn.Com/Bill WA Card 4509 | 14.00 |
| 12/26 | Card Purchase         12/24 Dobson Ranch Inn Mesa AZ Card 4509 | 61.98 |
| 12/26 | Non-Chase ATM Withdraw 12/25 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 12/26 | Card Purchase With Pin  12/26 Golden Hawaiian Bbq Chandler AZ Card 4509 | 21.08 |
| 12/26 | Card Purchase With Pin  12/27 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 12/27 | Card Purchase With Pin  12/26 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 12/27 | Non-Chase ATM Withdraw 12/27 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 12/27 | Card Purchase With Pin  12/27 Wal-Mart #2671 Chandler AZ Card 4509 | 59.62 |
| 12/27 | Card Purchase With Pin  12/27 Quiktrip Corp Chandler AZ Card 4509 | 18.87 |
| 12/27 | Card Purchase With Pin  12/27 Quiktrip Corp Chandler AZ Card 4509 | 37.52 |
| 12/27 | Card Purchase With Pin  12/27 Big Lots Stores 940 E Tempe AZ Card 4509 | 31.26 |
| 12/27 | Card Purchase With Pin  12/27 Burlington Stores287 Tempe AZ Card 4509 | 76.71 |
| 12/28 | Card Purchase         12/27 Wendy's Chandler AZ Card 4509 | 11.86 |
| 12/28 | Card Purchase With Pin  12/28 Albertsons Store  0980 Mesa AZ Card 4509 | 13.99 |
| 12/31 | Card Purchase         12/26 Dobson Ranch Inn Mesa AZ Card 4509 | 123.96 |
| 12/31 | Card Purchase         12/26 Dobson Ranch Inn Mesa AZ Card 4509 | 50.00 |
| 12/31 | Card Purchase         12/28 Ra Sushi Ahwatukee Phoenix AZ Card 4509 | 56.71 |
| 12/31 | Card Purchase         12/28 Dobson Ranch Inn Mesa AZ Card 4509 | 67.69 |
| 12/31 | Card Purchase         12/28 Someburros IV Gilbert AZ Card 4509 | 50.07 |
| 12/31 | Non-Chase ATM Withdraw 12/29 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 12/31 | Card Purchase With Pin  12/29 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 12/31 | Card Purchase With Pin  12/29 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 12/31 | Card Purchase With Pin  12/29 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 12/31 | Card Purchase         12/29 Primo Video*M22L85Rc0 888-802-3080 WA Card 4509 | 16.16 |
| 12/31 | Card Purchase With Pin  12/29 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 12/31 | Card Purchase With Pin  12/29 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 12/31 | Card Purchase With Pin  12/30 Quiktrip Corp Chandler AZ Card 4509 | 50.42 |
| 12/31 | Card Purchase With Pin  12/31 Sams Club Sam's Club Gilbert AZ Card 4509 | 302.32 |
| 12/31 | Card Purchase With Pin  12/31 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,590.45 |
| 12/31 | Card Purchase With Pin  12/31 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,590.45 |
| **Total ATM & Debit Card Withdrawals** | | **$79,120.35** |

## ATM & DEBIT CARD SUMMARY

Page 5 of 8

**CHASE** ⬡

December 01, 2018 through December 31, 2018
Account Number: ▮▮▮▮▮▮▮▮

Toby Wright  Card 4509

| | | |
|---|---|---|
| Total ATM Withdrawals & Debits | | $10,279.50 |
| Total Card Purchases | | $68,840.85 |
| Total Card Deposits & Credits | | $97.00 |

ATM & Debit Card Totals

| | | |
|---|---|---|
| Total ATM Withdrawals & Debits | | $10,279.50 |
| Total Card Purchases | | $68,840.85 |
| Total Card Deposits & Credits | | $97.00 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/12 | Venmo     Payment   1573887830    Web ID: 3264681992 | $1,500.00 |
| **Total Electronic Withdrawals** | | **$1,500.00** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/03 | 12/03 Withdrawal | $10,000.00 |
| 12/07 | 12/07 Withdrawal | 10,000.00 |
| 12/19 | 12/19 Withdrawal | 3,500.00 |
| 12/20 | 12/20 Withdrawal | 1,000.00 |
| **Total Other Withdrawals** | | **$24,500.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/03 | Non-Chase ATM Fee-With | $2.50 |
| 12/05 | Non-Chase ATM Fee-With | 2.50 |
| 12/07 | Official Checks Charge | 8.00 |
| 12/10 | Non-Chase ATM Fee-With | 2.50 |
| 12/12 | Non-Chase ATM Fee-With | 2.50 |
| 12/17 | Non-Chase ATM Fee-With | 2.50 |
| 12/24 | Non-Chase ATM Fee-With | 2.50 |
| 12/26 | Non-Chase ATM Fee-With | 2.50 |
| 12/27 | Non-Chase ATM Fee-With | 2.50 |
| 12/31 | Non-Chase ATM Fee-With | 2.50 |
| 12/31 | Monthly Service Fee | 42.00 |
| **Total Fees** | | **$72.50** |

The monthly service fee of $12.00 was waived this period because you maintained a minimum daily balance of $1,500.00 or more.

Chase Total Business Checking allows up to 100 debits, credits, and deposited items per statement period.  Your transaction total for this statement period was 205 and excessive transaction fees were applied.  If this level of activity is typical, please contact us so that we can explore other product options for your business.

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 12/03 | $205,332.76 | 12/06 | 199,922.39 | 12/11 | 185,028.62 |
| 12/04 | 202,942.68 | 12/07 | 189,212.05 | 12/12 | 179,825.92 |
| 12/05 | 201,396.22 | 12/10 | 185,506.44 | 12/13 | 179,196.88 |

Page 6 of 8

**CHASE** ⬭

December 01, 2018 through December 31, 2018
Account Number:  ▇▇▇▇▇▇▇▇



## DAILY ENDING BALANCE  (continued)

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 12/14 | 177,226.12 | 12/20 | 149,468.63 | 12/27 | 135,980.23 |
| 12/17 | 156,021.18 | 12/21 | 143,047.61 | 12/28 | 136,029.38 |
| 12/18 | 155,658.78 | 12/24 | 139,889.67 | 12/31 | 122,324.90 |
| 12/19 | 150,060.93 | 12/26 | 137,746.66 | | |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 203 |
| Deposits / Credits | 1 |
| Deposited Items | 1 |
| **Transaction Total** | **205** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $12.00 |
| Service Fee Credit | -$12.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 100) | $42.00 |
| **Total Service Fees** | **$42.00** |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

Page 7 of 8

**CHASE** ⬡

December 01, 2018 through December 31, 2018

Account Number: ▄▄▄▄▄▄▄▄▄▄▄

This Page Intentionally Left Blank

Page 8 of 8

**CHASE** ◯

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

January 01, 2019 through January 31, 2019

Account Number: ▮▮▮▮▮▮▮▮▮



### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00060984 DRE 601 211 03219 NNNNNNNNNNN  1 000000000 64 0000
PLAYERS AUTHORITY LLC
PO BOX 7305
TEMPE AZ 85281-0011

---

## CHECKING SUMMARY   Chase Total Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$122,324.90** |
| Deposits and Additions | 4 | 11,350.00 |
| ATM & Debit Card Withdrawals | 199 | -112,131.10 |
| Electronic Withdrawals | 1 | -507.89 |
| Other Withdrawals | 4 | -7,000.00 |
| Fees | 19 | -86.60 |
| **Ending Balance** | **227** | **$13,949.31** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 01/02 | Card Purchase Return    12/29 Dobson Ranch Inn 999-9999999 AZ Card 4509 | | $50.00 |
| 01/02 | T&P Degen/Inacti Payment | PPD ID: 1251926855 | 7,250.00 |
| 01/02 | Bert Bell/Pete R Payment | PPD ID: 1251926855 | 4,000.00 |
| 01/07 | Card Purchase Return    01/03 Dobson Ranch Inn 999-9999999 AZ Card 4509 | | 50.00 |
| **Total Deposits and Additions** | | | **$11,350.00** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/02 | Card Purchase          12/30 Peazz.Com 909-563-8116 CA Card 4509 | $51.40 |
| 01/02 | Card Purchase          12/31 Amazon.Com*M29Aj0662 Amzn.Com/Bill WA Card 4509 | 47.28 |
| 01/02 | Card Purchase          12/31 Amzn Mktp US*M21Ow2Y Amzn.Com/Bill WA Card 4509 | 47.40 |
| 01/02 | Card Purchase          12/31 Qt 442      05004429 Chandler AZ Card 4509 | 6.64 |
| 01/02 | Non-Chase ATM Withdraw 01/01 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/02 | Card Purchase With Pin 01/01 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/02 | Card Purchase          01/01 Splash Car Wash Chandler AZ Card 4509 | 16.00 |
| 01/02 | Card Purchase          01/01 Tmobile*Postpaid Pda 800-937-8997 WA Card 4509 | 514.59 |
| 01/02 | Card Purchase          01/01 Qt 442      05004429 Chandler AZ Card 4509 | 9.09 |
| 01/02 | Card Purchase With Pin 01/01 Best Buy      00008698 Chandler AZ Card 4509 | 87.22 |
| 01/02 | Non-Chase ATM Withdraw 01/02 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/02 | Card Purchase With Pin 01/02 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/02 | Card Purchase With Pin 01/02 Ross Stores #1325 Tempe AZ Card 4509 | 51.84 |

Page 1 of 8

**CHASE ○**

January 01, 2019 through January 31, 2019

Account Number: ▬▬▬▬▬▬

## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 01/02 | Card Purchase With Pin  01/02 99 Cents Only St 1120 Mesa AZ Card 4509 | 30.60 |
| 01/02 | Recurring Card Purchase 01/01 Lll*Life Time MO Dues 888-430-6432 MN Card 4509 | 63.12 |
| 01/02 | Recurring Card Purchase 01/02 Sxm*Siriusxm.Com/Acct 888-635-5144 NY Card 4509 | 19.04 |
| 01/02 | Recurring Card Purchase 01/02 Google *Fit Radio 855-836-3987 CA Card 4509 | 3.99 |
| 01/03 | Card Purchase          12/31 Dobson Ranch Inn Mesa AZ Card 4509 | 79.09 |
| 01/03 | Card Purchase          12/31 Dobson Ranch Inn Mesa AZ Card 4509 | 50.00 |
| 01/03 | Card Purchase          01/02 Splash Car Wash Chandler AZ Card 4509 | 29.00 |
| 01/03 | Card Purchase          01/02 Arizona Element Elite 623-215-4122 AZ Card 4509 | 260.00 |
| 01/03 | Card Purchase          01/02 3761 El Pollo Loco Mesa AZ Card 4509 | 17.49 |
| 01/03 | Card Purchase          01/02 Harkins Tempe Mrkplac Tempe AZ Card 4509 | 8.00 |
| 01/03 | Card Purchase With Pin  01/03 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 01/03 | Card Purchase With Pin  01/03 Chevron/Too Jay Petrol Chandler AZ Card 4509 | 51.83 |
| 01/03 | Non-Chase ATM Withdraw 01/03 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/03 | Card Purchase With Pin  01/03 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/03 | Card Purchase With Pin  01/03 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/03 | Card Purchase With Pin  01/03 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,244.95 |
| 01/03 | Card Purchase With Pin  01/03 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 01/03 | Card Purchase With Pin  01/03 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/03 | Recurring Card Purchase 01/01 Extra Space 0239 480-9647317 AZ Card 4509 | 187.90 |
| 01/03 | Recurring Card Purchase 01/03 Google *Dropbox 855-836-3987 CA Card 4509 | 9.99 |
| 01/04 | Card Purchase          01/01 Dobson Ranch Inn Mesa AZ Card 4509 | 123.96 |
| 01/04 | Card Purchase With Pin  01/04 Burlington Stores287 Tempe AZ Card 4509 | 68.04 |
| 01/04 | Card Purchase With Pin  01/04 99-Cents-Only #1 1996 Chandler AZ Card 4509 | 48.18 |
| 01/04 | Card Purchase With Pin  01/04 Wm Superc Wal-Mart Sup Chandler AZ Card 4509 | 2,118.00 |
| 01/04 | Recurring Card Purchase 01/02 U-Haul Storage of Tempe Tempe AZ Card 4509 | 465.30 |
| 01/04 | Recurring Card Purchase 01/03 Abc*Mountainside Fitne 480-7329777 AZ Card 4509 | 67.86 |
| 01/04 | Recurring Card Purchase 01/02 Google*Pinger Inc G.CO Helppay# CA Card 4509 | 4.99 |
| 01/07 | Card Purchase          01/04 Nike Tempe 134 Tempe AZ Card 4509 | 140.50 |
| 01/07 | Card Purchase          01/04 Kona Grill Chandler 102 Chandler AZ Card 4509 | 31.89 |
| 01/07 | Card Purchase          01/04 Kona Grill Chandler 102 Chandler AZ Card 4509 | 27.30 |
| 01/07 | Card Purchase          01/05 Amzn Mktp US*Mb2511L Amzn.Com/Bill WA Card 4509 | 25.95 |
| 01/07 | Card Purchase With Pin  01/05 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/07 | Card Purchase With Pin  01/05 Sally Beauty 102 4100 Chandler AZ Card 4509 | 41.77 |
| 01/07 | Card Purchase With Pin  01/05 Ross Stores #1075 Chandler AZ Card 4509 | 26.93 |
| 01/07 | Card Purchase          01/05 Thirsty Lion Pub & Gril Tempe AZ Card 4509 | 130.78 |
| 01/07 | Card Purchase With Pin  01/05 The Mens Wearhouse #25 Tempe AZ Card 4509 | 20.00 |
| 01/07 | Card Purchase With Pin  01/05 The Mens Wearhouse #25 Tempe AZ Card 4509 | 20.00 |
| 01/07 | Card Purchase With Pin  01/05 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/07 | Card Purchase With Pin  01/05 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/07 | Card Purchase With Pin  01/05 Shell Service Station Phoenix AZ Card 4509 | 42.39 |
| 01/07 | Card Purchase          01/06 Zipps Sports Grill Chandler AZ Card 4509 | 197.02 |
| 01/07 | Card Purchase With Pin  01/07 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/07 | Card Purchase With Pin  01/07 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/07 | Card Purchase With Pin  01/07 Chevron/David M Scottsdale AZ Card 4509 | 18.97 |
| 01/08 | Card Purchase          01/07 Priceline*Super 8 By 800-774-2354 CT Card 4509 | 65.26 |
| 01/08 | Card Purchase          01/06 Super 8 Chandler Chandler AZ Card 4509 | 70.84 |
| 01/08 | Card Purchase          01/07 Amzn Mktp US*M257K3R Amzn.Com/Bill WA Card 4509 | 43.98 |
| 01/08 | Card Purchase          01/08 Amzn Mktp US*Mb1F07N Amzn.Com/Bill WA Card 4509 | 27.00 |
| 01/08 | Card Purchase          01/08 Amzn Mktp US*Mb8P15N Amzn.Com/Bill WA Card 4509 | 15.99 |
| 01/08 | Card Purchase          01/08 Amzn Mktp US*M23X21R Amzn.Com/Bill WA Card 4509 | 25.98 |
| 01/08 | Card Purchase With Pin  01/08 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |

*Page 2 of 8*

## CHASE ⬡

January 01, 2019 through January 31, 2019

Account Number

### ATM & DEBIT CARD WITHDRAWALS    *(continued)*



| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 01/08 | Card Purchase With Pin  01/08 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/08 | Card Purchase With Pin  01/08 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 01/08 | Card Purchase With Pin  01/08 Frys Fuel 7081 Phoenix AZ Card 4509 | 52.66 |
| 01/08 | Non-Chase ATM Withdraw 01/08 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/08 | Card Purchase With Pin  01/08 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/09 | Card Purchase         01/08 Amzn Mktp US*M291K8W Amzn.Com/Bill WA Card 4509 | 16.95 |
| 01/09 | Card Purchase         01/08 Amzn Mktp US*Mb36I13 Amzn.Com/Bill WA Card 4509 | 16.99 |
| 01/09 | Card Purchase With Pin  01/08 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/09 | Card Purchase With Pin  01/08 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/09 | Non-Chase ATM Withdraw 01/09 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/09 | Card Purchase With Pin  01/09 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/09 | Card Purchase With Pin  01/09 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/10 | Card Purchase         01/10 Cox Phoenix Comm Serv 800-234-3993 AZ Card 4509 | 235.63 |
| 01/10 | Card Purchase With Pin  01/10 Noodles & CO 596 Phoenix AZ Card 4509 | 24.71 |
| 01/10 | Card Purchase With Pin  01/10 Circle K 05549 4939 E Phoenix AZ Card 4509 | 9.24 |
| 01/10 | Card Purchase With Pin  01/10 Lids Locker Room 8112 Tempe AZ Card 4509 | 55.14 |
| 01/11 | Card Purchase         01/11 Nike Tempe 134 Tempe AZ Card 4509 | 70.25 |
| 01/11 | Card Purchase         01/11 Amzn Mktp US*Mb0WY9O Amzn.Com/Bill WA Card 4509 | 69.97 |
| 01/11 | Card Purchase         01/11 Amzn Mktp US*Mb7Mk4A Amzn.Com/Bill WA Card 4509 | 27.99 |
| 01/11 | Non-Chase ATM Withdraw 01/11 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/11 | Card Purchase With Pin  01/11 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/11 | Card Purchase With Pin  01/11 Evi*Casino Arizo Scottsdale AZ Card 4509 | 779.20 |
| 01/11 | Card Purchase With Pin  01/11 Frys Food Drg 015 Gilbert AZ Card 4509 | 60.83 |
| 01/11 | Card Purchase With Pin  01/11 Circle K 05307 3589 E Gilbert AZ Card 4509 | 52.01 |
| 01/14 | Card Purchase         01/14 Amzn Mktp US*Mb7Qi10 Amzn.Com/Bill WA Card 4509 | 48.11 |
| 01/14 | Card Purchase         01/11 Amzn Mktp US*Mb3Xu3A Amzn.Com/Bill WA Card 4509 | 105.96 |
| 01/14 | Card Purchase         01/12 Amzn Mktp US*Mb9X81O Amzn.Com/Bill WA Card 4509 | 15.99 |
| 01/14 | Card Purchase         01/11 Amzn Mktp US*Mb6861A Amzn.Com/Bill WA Card 4509 | 69.85 |
| 01/14 | Card Purchase         01/11 Samsungelectronics Www Samsung C NJ Card 4509 | 2.69 |
| 01/14 | Card Purchase         01/12 Amzn Mktp US*Mb5775E Amzn.Com/Bill WA Card 4509 | 37.98 |
| 01/14 | Card Purchase         01/12 Amzn Mktp US*Mb1O76E Amzn.Com/Bill WA Card 4509 | 21.99 |
| 01/14 | Card Purchase         01/12 Amzn Mktp US*Mb7W67E Amzn.Com/Bill WA Card 4509 | 83.96 |
| 01/14 | Card Purchase With Pin  01/11 Walgreens Store 2420 E Phoenix AZ Card 4509 | 22.35 |
| 01/14 | Card Purchase         01/12 Qt 442    05004429 Chandler AZ Card 4509 | 11.94 |
| 01/14 | Card Purchase With Pin  01/14 Ross Stores #1075 Chandler AZ Card 4509 | 45.78 |
| 01/15 | Card Purchase         01/14 Amzn Mktp US*Mb87T5P Amzn.Com/Bill WA Card 4509 | 26.56 |
| 01/15 | Card Purchase         01/14 9788 Mountainside Fitno Chandler AZ Card 4509 | 17.67 |
| 01/16 | Card Purchase         01/14 Super 8 Chandler Chandler AZ Card 4509 | 70.84 |
| 01/16 | Non-Chase ATM Withdraw 01/16 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/16 | Card Purchase With Pin  01/16 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/16 | Card Purchase With Pin  01/17 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/17 | Card Purchase With Pin  01/16 Ross Stores #780 Gilbert AZ Card 4509 | 94.81 |
| 01/17 | Non-Chase ATM Withdraw 01/17 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/17 | Card Purchase With Pin  01/17 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/17 | Card Purchase With Pin  01/17 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/17 | Card Purchase With Pin  01/17 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/17 | Card Purchase With Pin  01/17 Chevron/Tee Jay Petrol Chandler AZ Card 4509 | 40.01 |
| 01/17 | Card Purchase With Pin  01/17 Chevron/Tee Jay Petrol Chandler AZ Card 4509 | 50.85 |
| 01/17 | Card Purchase W/Cash   01/17 Chevron/Tee Jay Chandler AZ Card 4509  Purchase $3.05 Cash Back $20.00 | 23.05 |

*Page 3 of 8*

**CHASE ◗**

January 01, 2019 through January 31, 2019
Account Number: ▉▉▉▉▉▉▉

## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 01/17 | Card Purchase W/Cash   01/17 Chevron/Tee Jay Chandler AZ Card 4509 Purchase $6.68 Cash Back $20.00 | 26.68 |
| 01/18 | Card Purchase        01/17 Niko Tempe 134 Tempe AZ Card 4509 | 210.76 |
| 01/18 | Card Purchase With Pin  01/18 Cant Stop Smokin Bbq Chandler AZ Card 4509 | 60.89 |
| 01/18 | Card Purchase With Pin  01/18 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/18 | Card Purchase With Pin  01/18 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/18 | Card Purchase With Pin  01/18 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/18 | Card Purchase W/Cash   01/18 Chevron/Tee Jay Chandler AZ Card 4509 Purchase $2.93 Cash Back $20.00 | 22.93 |
| 01/18 | Card Purchase W/Cash   01/18 Chevron/Tee Jay Chandler AZ Card 4509 Purchase $2.93 Cash Back $20.00 | 22.93 |
| 01/22 | Card Purchase        01/17 Super 8 Chandler Chandler AZ Card 4509 | 164.02 |
| 01/22 | Card Purchase        01/17 9788 Mountainside Fitne Chandler AZ Card 4509 | 10.70 |
| 01/22 | Card Purchase With Pin  01/18 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,590.45 |
| 01/22 | Card Purchase With Pin  01/19 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/22 | Card Purchase With Pin  01/18 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/22 | Non-Chase ATM Withdraw 01/19 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/22 | Card Purchase        01/20 Super 8 Chandler Chandler AZ Card 4509 | 296.26 |
| 01/22 | ATM Withdrawal        01/19 1155 S Arizona Ave Chandler AZ Card 4509 | 1,500.00 |
| 01/22 | Card Purchase        01/19 Bosa Donuts Chandler AZ Card 4509 | 20.68 |
| 01/22 | Card Purchase With Pin  01/19 Circle K # 41702 2955 Chandler AZ Card 4509 | 13.52 |
| 01/22 | Card Purchase With Pin  01/19 Circle K # 41702 2955 Chandler AZ Card 4509 | 64.88 |
| 01/22 | Card Purchase        01/19 Filibertos Taco Shop Chandler AZ Card 4509 | 121.88 |
| 01/22 | Card Purchase With Pin  01/19 The Home Depot #0470 Chandler AZ Card 4509 | 43.14 |
| 01/22 | Card Purchase        01/20 Amzn Mktp US*Mb9GM3A Amzn Com/Bill WA Card 4509 | 40.97 |
| 01/22 | Card Purchase With Pin  01/19 Wal-Mart Super Center Chandler AZ Card 4509 | 104.91 |
| 01/22 | Card Purchase With Pin  01/19 Arco #42722 Ampm Chandler AZ Card 4509 | 11.92 |
| 01/22 | Card Purchase With Pin  01/20 Albertsons Store  1221 Chandler AZ Card 4509 | 53.63 |
| 01/22 | Card Purchase        01/20 Native Grill & Wings Chandler AZ Card 4509 | 197.79 |
| 01/22 | Card Purchase        01/20 Lowes #02582* Chandler AZ Card 4509 | 21.54 |
| 01/22 | Card Purchase With Pin  01/20 The Home Depot417 Chandler AZ Card 4509 | 37.44 |
| 01/22 | Card Purchase With Pin  01/21 Ross Stores #780 Gilbert AZ Card 4509 | 61.41 |
| 01/22 | Card Purchase        01/22 Zen Chinese Chandler AZ Card 4509 | 47.15 |
| 01/22 | Card Purchase        01/22 Audible US*Mb1Cx7Bu1 888-283-5051 NJ Card 4509 | 21.45 |
| 01/22 | Non-Chase ATM Withdraw 01/22 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/22 | Card Purchase With Pin  01/22 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/23 | Card Purchase        01/22 Amzn Mktp US*Mb64U8B Amzn Com/Bill WA Card 4509 | 66.98 |
| 01/23 | Card Purchase With Pin  01/22 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/23 | Card Purchase With Pin  01/23 Shell Service Station Phoenix AZ Card 4509 | 7.88 |
| 01/23 | Card Purchase With Pin  01/23 Shell Service Station Phoenix AZ Card 4509 | 54.30 |
| 01/23 | ATM Withdrawal        01/23 4714 S Rural Rd Tempe AZ Card 4509 | 2,000.00 |
| 01/23 | Non-Chase ATM Withdraw 01/23 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/23 | Card Purchase With Pin  01/23 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/23 | Recurring Card Purchase 01/22 Amazon Primo Amzn Com/Bill WA Card 4509 | 14.00 |
| 01/24 | Card Purchase        01/23 Harkins Chandler Fashon Chandler AZ Card 4509 | 23.00 |
| 01/24 | Card Purchase        01/23 Harkins Chandler Fashon Chandler AZ Card 4509 | 19.75 |
| 01/24 | Card Purchase With Pin  01/24 Circle K 03377 3010 S Chandler AZ Card 4509 | 4.24 |
| 01/24 | Card Purchase With Pin  01/24 Wal-Mart Super Center Chandler AZ Card 4509 | 57.95 |
| 01/24 | Non-Chase ATM Withdraw 01/24 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/24 | Card Purchase With Pin  01/24 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/24 | Card Purchase With Pin  01/24 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,244.95 |

*Page 4 of 8*

**CHASE ◐**

January 01, 2019 through January 31, 2019
Account Number: ▉▉▉▉▉▉▉

## ATM & DEBIT CARD WITHDRAWALS  (continued)



| DATE | DESCRIPTION | AMOUNT |
|------|-------------|-------:|
| 01/25 | Card Purchase        01/25 Amzn Mktp US*Mb1Lh26 Amzn.Com/Bill WA Card 4509 | 39.88 |
| 01/25 | Card Purchase With Pin  01/24 Ross Stores #1075 Chandler AZ Card 4509 | 233.83 |
| 01/25 | Non-Chase ATM Withdraw  01/25 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/25 | Card Purchase With Pin  01/25 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/25 | Card Purchase With Pin  01/25 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/25 | Card Purchase With Pin  01/25 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/25 | Card Purchase With Pin  01/25 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 01/25 | Card Purchase With Pin  01/25 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 01/25 | Card Purchase With Pin  01/25 Evi*Casino Arizo Scottsdale AZ Card 4509 | 520.45 |
| 01/28 | Card Purchase With Pin  01/25 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 01/28 | Non-Chase ATM Withdraw  01/26 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/28 | ATM Withdrawal        01/26 4050 S Gilbert Rd Chandler AZ Card 4509 | 1,500.00 |
| 01/28 | Card Purchase With Pin  01/26 Burlington Stores 1044 Chandler AZ Card 4509 | 111.88 |
| 01/28 | Card Purchase With Pin  01/26 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/28 | Card Purchase With Pin  01/26 Chevron/Tee Jay Chandler AZ Card 4509 | 13.34 |
| 01/28 | Card Purchase With Pin  01/26 Chevron/Tee Jay Petrol Chandler AZ Card 4509 | 33.00 |
| 01/28 | Card Purchase        01/27 Rinse N Ride Car Wash Gilbert AZ Card 4509 | 12.00 |
| 01/28 | Card Purchase        01/27 Famous Daves - 3125 Gilbert AZ Card 4509 | 127.85 |
| 01/28 | Card Purchase With Pin  01/27 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 01/28 | Card Purchase With Pin  01/27 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 01/28 | Non-Chase ATM Withdraw  01/28 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/28 | Card Purchase With Pin  01/28 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 01/28 | Card Purchase With Pin  01/28 Loves #328 Chandler AZ Card 4509 | 27.11 |
| 01/29 | Card Purchase        01/29 Amzn Mktp US*Mb4lh0K Amzn.Com/Bill WA Card 4509 | 89.85 |
| 01/29 | Card Purchase        01/28 Loves Country 00003285 Chandler AZ Card 4509 | 38.71 |
| 01/29 | Non-Chase ATM Withdraw  01/29 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/29 | Card Purchase With Pin  01/29 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 01/30 | Card Purchase        01/28 Afw-Gilbert #84 Gilbert AZ Card 4509 | 4,580.82 |
| 01/30 | Card Purchase        01/29 Amzn Mktp US*Mb9DC27 Amzn.Com/Bill WA Card 4509 | 53.52 |
| 01/30 | Card Purchase        01/29 Prime Video*Mh7Ub57H0 888-802-3080 WA Card 4509 | 16.16 |
| 01/30 | Card Purchase With Pin  01/29 Albertsons Store  1221 Chandler AZ Card 4509 | 26.88 |
| 01/30 | Card Purchase With Pin  01/30 Lowe's #2582 Chandler AZ Card 4509 | 79.89 |
| 01/31 | Non-Chase ATM Withdraw  01/30 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/31 | Card Purchase With Pin  01/30 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 01/31 | Card Purchase With Pin  01/31 Loves #328 Chandler AZ Card 4509 | 59.58 |
| 01/31 | Non-Chase ATM Withdraw  01/31 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 01/31 | Card Purchase With Pin  01/31 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 01/31 | Card Purchase With Pin  01/31 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| **Total ATM & Debit Card Withdrawals** | | **$112,131.10** |

## ATM & DEBIT CARD SUMMARY

Toby Wright  Card 4509

|  |  |  |
|--|--|--:|
| | Total ATM Withdrawals & Debits | $14,036.00 |
| | Total Card Purchases | $98,095.10 |
| | Total Card Deposits & Credits | $100.00 |
| ATM & Debit Card Totals | | |
| | Total ATM Withdrawals & Debits | $14,036.00 |
| | Total Card Purchases | $98,095.10 |

Page 5 of 8



January 01, 2019 through January 31, 2019
Account Number: ███████████

| | | | |
|---|---|---|---|
| Total Card Deposits & Credits | | | $100.00 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 01/02 | Progressiveloase Pmts | PPD ID: 1460858540 | $507.89 |
| **Total Electronic Withdrawals** | | | **$507.89** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/02 | 01/02 Withdrawal | $2,500.00 |
| 01/04 | 01/04 Withdrawal | 1,500.00 |
| 01/07 | 01/05 Withdrawal | 1,500.00 |
| 01/11 | 01/11 Withdrawal | 1,500.00 |
| **Total Other Withdrawals** | | **$7,000.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/02 | Non-Chase ATM Fee-With | $2.50 |
| 01/02 | Non-Chase ATM Fee-With | 2.50 |
| 01/03 | Non-Chase ATM Fee-With | 2.50 |
| 01/08 | Non-Chase ATM Fee-With | 2.50 |
| 01/09 | Non-Chase ATM Fee-With | 2.50 |
| 01/11 | Non-Chase ATM Fee-With | 2.50 |
| 01/16 | Non-Chase ATM Fee-With | 2.50 |
| 01/17 | Non-Chase ATM Fee-With | 2.50 |
| 01/22 | Non-Chase ATM Fee-With | 2.50 |
| 01/22 | Non-Chase ATM Fee-With | 2.50 |
| 01/23 | Non-Chase ATM Fee-With | 2.50 |
| 01/24 | Non-Chase ATM Fee-With | 2.50 |
| 01/25 | Non-Chase ATM Fee-With | 2.50 |
| 01/28 | Non-Chase ATM Fee-With | 2.50 |
| 01/28 | Non-Chase ATM Fee-With | 2.50 |
| 01/29 | Non-Chase ATM Fee-With | 2.50 |
| 01/31 | Non-Chase ATM Fee-With | 2.50 |
| 01/31 | Non-Chase ATM Fee-With | 2.50 |
| 01/31 | Monthly Service Fee | 41.60 |
| **Total Fees** | | **$86.60** |

The monthly service fee of $12.00 was waived this period because you maintained a minimum daily balance of $1,500.00 or more.

Chase Total Business Checking allows up to 100 debits, credits, and deposited items per statement period. Your transaction total for this statement period was 204 and excessive transaction fees were applied. If this level of activity is typical, please contact us so that we can explore other product options for your business.

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 01/02 | $125,548.90 | 01/07 | 100,961.82 | 01/10 | 85,833.85 |
| 01/03 | 115,846.40 | 01/08 | 93,953.81 | 01/11 | 80,696.15 |
| 01/04 | 111,450.07 | 01/09 | 86,158.57 | 01/14 | 80,229.55 |

Page 6 of 8

**CHASE** ◘

January 01, 2019 through January 31, 2019
Account Number: ▮▮▮▮▮▮▮▮▮▮



## DAILY ENDING BALANCE  (continued)

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 01/15 | 80,185.32 | 01/22 | 53,457.36 | 01/28 | 25,119.12 |
| 01/16 | 75,981.58 | 01/23 | 47,698.80 | 01/29 | 23,448.11 |
| 01/17 | 70,057.83 | 01/24 | 43,771.46 | 01/30 | 18,690.84 |
| 01/18 | 64,556.47 | 01/25 | 35,213.05 | 01/31 | 13,949.31 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------|------|
| Checks Paid / Debits | 204 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **204** |

| SERVICE FEE CALCULATION | AMOUNT |
|------|------|
| Service Fee | $12.00 |
| Service Fee Credit | -$12.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 100) | $41.60 |
| **Total Service Fees** | **$41.60** |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
 • Your name and account number
 • The dollar amount of the suspected error
 • A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

Page 7 of 8

**CHASE ○**

January 01, 2019 through January 31, 2019
Account Number:

This Page Intentionally Left Blank

Page 8 of 8

**CHASE** ◯

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218‑2051

February 01, 2019 through February 28, 2019

Account Number: ▉▉▉▉▉▉▉



### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00061242 DRE 601 211 06019 NNNNNNNNNN  1 000000000 64 0000
PLAYERS AUTHORITY LLC
PO BOX 7305
TEMPE AZ 85281-0011

## CHECKING SUMMARY    Chase Total Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$13,949.31** |
| Deposits and Additions | 4 | 17,350.00 |
| ATM & Debit Card Withdrawals | 68 | -33,084.46 |
| Electronic Withdrawals | 1 | -713.98 |
| Other Withdrawals | 1 | -1,200.00 |
| Fees | 18 | -338.00 |
| **Ending Balance** | **92** | **-$4,037.13** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 02/01 | T&P Degen/Inacti Payment | PPD ID: 1251926855 | $7,250.00 |
| 02/01 | Bert Bell/Pete R Payment | PPD ID: 1251926855 | 4,000.00 |
| 02/12 | Deposit       22238780 | | 6,000.00 |
| 02/19 | Card Purchase Return    02/14 Dobson Ranch Inn Mesa AZ Card 4509 | | 100.00 |
| **Total Deposits and Additions** | | | **$17,350.00** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 02/01 | Card Purchase With Pin  01/31 Evi*Casino Arizo Scottsdale AZ Card 4509 | $1,037.95 |
| 02/01 | Non-Chase ATM Withdraw  02/01 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 02/01 | Recurring Card Purchase 02/01 Llf*Life Time MO Dues 888-430-6432 MN Card 4509 | 63.12 |
| 02/04 | Card Purchase       02/01 Splash Car Wash Chandler AZ Card 4509 | 16.00 |
| 02/04 | Card Purchase       02/01 Angry Crab Shack Phoenix AZ Card 4509 | 87.02 |
| 02/04 | Card Purchase       02/01 Angry Crab Shack Phoenix AZ Card 4509 | 20.00 |
| 02/04 | Card Purchase       02/01 Angry Crab Shack Phoenix AZ Card 4509 | 10.00 |
| 02/04 | Card Purchase       02/02 Splash Car Wash Chandler AZ Card 4509 | 29.00 |
| 02/04 | Card Purchase       02/02 Qt 442       05004429 Chandler AZ Card 4509 | 12.21 |
| 02/04 | Card Purchase       02/02 Qt 442       05004429 Chandler AZ Card 4509 | 6.03 |
| 02/04 | Card Purchase With Pin  02/02 Wal-Mart Super Center Chandler AZ Card 4509 | 23.94 |
| 02/04 | Card Purchase With Pin  02/02 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 02/04 | Non-Chase ATM Withdraw  02/03 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |

Page 1 of 6

**CHASE ◆**

February 01, 2019 through February 28, 2019

Account Number: ████████████

## ATM & DEBIT CARD WITHDRAWALS   *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 02/04 | Card Purchase With Pin  02/03 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 02/04 | Card Purchase With Pin  02/03 Shell Service Station Gilbert AZ Card 4509 | 50.01 |
| 02/04 | Non-Chase ATM Withdraw 02/04 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 02/04 | Card Purchase With Pin  02/04 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 02/04 | Card Purchase With Pin  02/04 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 02/04 | Card Purchase With Pin  02/04 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 02/04 | Card Purchase With Pin  02/04 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 02/04 | Recurring Card Purchase 02/01 Arizona Element Elite 623-215-4122 AZ Card 4509 | 260.00 |
| 02/04 | Recurring Card Purchase 02/01 Extra Space 0239 480-9647317 AZ Card 4509 | 187.90 |
| 02/04 | Recurring Card Purchase 02/03 Abc*Mountainside Fitne 480-7329777 AZ Card 4509 | 67.86 |
| 02/04 | Recurring Card Purchase 02/02 Sxm*Siriusxm.Com/Acct 888-635-5144 NY Card 4509 | 19.41 |
| 02/04 | Recurring Card Purchase 02/01 Abc*Mountainside Fitne 480-7329777 AZ Card 4509 | 14.97 |
| 02/04 | Recurring Card Purchase 02/03 Google *Dropbox 855-836-3987 CA Card 4509 | 9.99 |
| 02/04 | Recurring Card Purchase 02/03 Google *Pinger Inc 855-836-3987 CA Card 4509 | 4.99 |
| 02/04 | Recurring Card Purchase 02/01 Google*Fit Radio G.CO Helppay# CA Card 4509 | 3.99 |
| 02/05 | Card Purchase With Pin  02/05 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 02/05 | Card Purchase          02/05 Tmobile*Postpaid Pda 800-937-8997 WA Card 4509 | 637.42 |
| 02/05 | Card Purchase With Pin  02/05 Ross Stores #1075 Chandler AZ Card 4509 | 17.19 |
| 02/05 | Card Purchase With Pin  02/05 Quiktrip Corp Chandler AZ Card 4509 | 16.39 |
| 02/05 | Non-Chase ATM Withdraw 02/05 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 02/05 | Card Purchase With Pin  02/05 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 02/05 | Card Purchase With Pin  02/05 Burlington Stores 1037 Mesa AZ Card 4509 | 26.98 |
| 02/05 | Card Purchase With Pin  02/05 Chevron/Tee Jay Petrol Chandler AZ Card 4509 | 42.34 |
| 02/05 | Recurring Card Purchase 02/02 U-Haul Storage of Tempe Tempe AZ Card 4509 | 465.30 |
| 02/06 | Card Purchase          02/05 3584 El Pollo Loco Mesa AZ Card 4509 | 15.87 |
| 02/06 | Card Purchase          02/06 Amazon Com*MI4Qh2Ci0 Amzn.Com/Bill WA Card 4509 | 291.05 |
| 02/06 | Card Purchase          02/06 Amzn Mktp US*Mb5Fs7K Amzn.Com/Bill WA Card 4509 | 28.98 |
| 02/06 | Card Purchase          02/06 Amzn Mktp US*MI0Xg4O Amzn.Com/Bill WA Card 4509 | 19.99 |
| 02/06 | ATM Withdrawal          02/06 4050 S Gilbert Rd Chandler AZ Card 4509 | 1,500.00 |
| 02/06 | Non-Chase ATM Withdraw 02/06 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 02/06 | Card Purchase With Pin  02/06 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 02/06 | Card Purchase With Pin  02/06 Family Dollar # Phoenix AZ Card 4509 | 16.10 |
| 02/07 | Card Purchase          02/07 Amzn Mktp US*MI5Lp6L Amzn.Com/Bill WA Card 4509 | 12.99 |
| 02/07 | Card Purchase          02/07 Amzn Mktp US*MI8Y68F Amzn.Com/Bill WA Card 4509 | 21.99 |
| 02/07 | Card Purchase          02/07 Amzn Mktp US*MI0S004 Amzn.Com/Bill WA Card 4509 | 29.95 |
| 02/07 | Card Purchase          02/06 Amzn Mktp US*MI9E05C Amzn.Com/Bill WA Card 4509 | 54.99 |
| 02/07 | Card Purchase          02/07 Amzn Mktp US*MI3Sf04 Amzn.Com/Bill WA Card 4509 | 22.53 |
| 02/07 | Card Purchase          02/06 Amzn Mktp US*MI83B5F Amzn.Com/Bill WA Card 4509 | 187.32 |
| 02/07 | Card Purchase          02/06 Ono Hawaiian Bbq Phoeni Phoenix AZ Card 4509 | 24.96 |
| 02/07 | Non-Chase ATM Withdraw 02/07 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 02/07 | Card Purchase With Pin  02/07 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 02/07 | Card Purchase With Pin  02/07 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 02/07 | Card Purchase With Pin  02/07 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 02/08 | Card Purchase          02/07 Wendy's Phoenix AZ Card 4509 | 9.76 |
| 02/12 | Card Purchase With Pin  02/12 Shell Service Station Mesa AZ Card 4509 | 36.85 |
| 02/12 | Card Purchase With Pin  02/12 Cvs/Pharmacy #09 09218 Mesa AZ Card 4509 | 7.18 |
| 02/12 | Recurring Card Purchase 02/11 Cox Phoenix Comm Serv 800-234-3993 AZ Card 4509 | 81.88 |
| 02/13 | Card Purchase With Pin  02/13 Wal-Mart Super Center Chandler AZ Card 4509 | 26.43 |
| 02/13 | Non-Chase ATM Withdraw 02/13 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 02/13 | Card Purchase With Pin  02/13 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 02/14 | Card Purchase With Pin  02/14 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |

*Page 2 of 6*

**CHASE** 

February 01, 2019 through February 28, 2019
Account Number: ▆▆▆▆▆▆▆



## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 02/14 | Card Purchase With Pin  02/14 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 02/19 | Card Purchase         02/13 Dobson Ranch Inn Mesa AZ Card 4509 | 172.26 |
| 02/19 | Card Purchase         02/17 Audible US 888-283-5051 NJ Card 4509 | 16.12 |
| 02/25 | Recurring Card Purchase 02/22 Amazon Prime Amzn Com/Bill WA Card 4509 | 14.00 |
| **Total ATM & Debit Card Withdrawals** | | **$33,084.46** |

## ATM & DEBIT CARD SUMMARY

Toby Wright  Card 4509

| | | |
|---|---|---|
| Total ATM Withdrawals & Debits | | $5,014.00 |
| Total Card Purchases | | $28,070.46 |
| Total Card Deposits & Credits | | $100.00 |

ATM & Debit Card Totals

| | | |
|---|---|---|
| Total ATM Withdrawals & Debits | | $5,014.00 |
| Total Card Purchases | | $28,070.46 |
| Total Card Deposits & Credits | | $100.00 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 02/01 | Progressivelease Pmts       PPD ID: 1460858540 | $713.98 |
| **Total Electronic Withdrawals** | | **$713.98** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 02/01 | 02/01 Withdrawal | $1,200.00 |
| **Total Other Withdrawals** | | **$1,200.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 02/01 | Non-Chase ATM Fee-With | $2.50 |
| 02/04 | Non-Chase ATM Fee-With | 2.50 |
| 02/04 | Non-Chase ATM Fee-With | 2.50 |
| 02/05 | Non-Chase ATM Fee-With | 2.50 |
| 02/06 | Non-Chase ATM Fee-With | 2.50 |
| 02/07 | Non-Chase ATM Fee-With | 2.50 |
| 02/07 | Insufficient Funds Fee For A $3,107.95 Card Purchase With Pin - Details: 1800670207Evi*Casino Arizo Scottsdale AZ    04427426018284509 05 | 34.00 |
| 02/07 | Insufficient Funds Fee For A $1,037.95 Card Purchase With Pin - Details: 7413140207Evi*Casino Arizo Scottsdale AZ    04427426018284509 05 | 34.00 |
| 02/08 | Insufficient Funds Fee For A $9.76 Card Purchase - Details:       0207Wendy's Phoenix AZ 04427426018284509                                    05 | 34.00 |
| 02/13 | Non-Chase ATM Fee-With | 2.50 |
| 02/13 | Insufficient Funds Fee For A $3,107.95 Card Purchase With Pin - Details: 8586490213Evi*Casino Arizo Scottsdale AZ    04427426018284509 05 | 34.00 |

Page 3 of 6

# CHASE ⬡

February 01, 2019 through February 28, 2019

Account Number: ██████████

## FEES *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 02/14 | Insufficient Funds Fee For A $1,037.95 Card Purchase With Pin - Details: 3261200214Evi'Casino Arizo Scottsdale AZ    04427426018284509 05 | 34.00 |
| 02/14 | Insufficient Funds Fee For A $1,037.95 Card Purchase With Pin - Details: 3931940214Evi'Casino Arizo Scottsdale AZ    04427426018284509 05 | 34.00 |
| 02/19 | Insufficient Funds Fee For A $172.26 Card Purchase - Details:    0213Dobson Ranch Inn Mesa AZ    04427426018284509 90 | 34.00 |
| 02/19 | Insufficient Funds Fee For A $16.12 Card Purchase - Details:    0217Audiblo US 888-283-5051 NJ    04427426018284509 01 | 34.00 |
| 02/25 | Insufficient Funds Fee For A $14.00 Recurring Card Purchase - Details:    0222Amazon Prime Amzn.Com/Bill WA    04427426018284509 01 | 34.00 |
| 02/28 | Cash Deposit Immediate | 2.50 |
| 02/28 | Monthly Service Fee | 12.00 |
| **Total Fees** | | **$338.00** |

You were charged a monthly service fee of $12.00 this period. You can avoid this fee in the future by maintaining a minimum daily balance of $1,500.00. Your minimum daily balance was -$4,022.63.

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 02/01 | $21,679.76 | 02/07 | -3,831.80 | 02/14 | -3,818.25 |
| 02/04 | 9,997.24 | 02/08 | -3,875.56 | 02/19 | -3,974.63 |
| 02/05 | 6,211.22 | 02/12 | 1,998.53 | 02/25 | -4,022.63 |
| 02/06 | 2,796.78 | 02/13 | -1,674.35 | 02/28 | -4,037.13 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 70 |
| Deposits / Credits | 1 |
| Deposited Items | 0 |
| **Transaction Total** | **71** |

| SERVICE FEE CALCULATION | AMOUNT |
|-------------------------|--------|
| Service Fee | $12.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$12.00** |
| Excessive Transaction Fees (Above 100) | $0.00 |
| **Total Service Fees** | **$12.00** |

| CASH PROCESSING | AMOUNT |
|-----------------|--------|
| Cash Deposits Immediate Verification | $6,000.00 |
| Cash Deposits Post Verification/Night Drop | $0.00 |
| **Cash Deposits Total** | **$6,000.00** |
| Cash Deposits Allowed | $5,000.00 |
| **Excess Cash Deposits** | **$1,000.00** |

| Excess Immediate ($1,000 At $2.50/$1,000) | $2.50 |

Page 4 of 6



February 01, 2019 through February 28, 2019

Account Number: ████████████

## SERVICE CHARGE SUMMARY _(continued)_

CASH PROCESSING **AMOUNT**

**Total Cash Deposit And Change Order Fees** $2.50



**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC.

 **JPMorgan Chase Bank, N.A. Member FDIC**

Page 5 of 6

**CHASE** ⬡

February 01, 2019 through February 28, 2019

Account Number: ████████████

This Page Intentionally Left Blank

Page 6 of 6

**CHASE ○**
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218- 2051

March 01, 2019 through March 29, 2019
Account Number: ▮▮▮▮▮▮▮▮

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00060300 DRE 601 211 09019 NNNNNNNNNNN   1 000000000 64 0000
PLAYERS AUTHORITY LLC
PO BOX 7305
TEMPE AZ 85281-0011



## We updated our disclosures

On March 17, 2019, we published an updated version of our Deposit Account Agreement and the document explaining our Additional Banking Services and Fees. You can get the latest agreements at a branch or by request when you call us. Here's what you should know:

- We're using a payment network that supports real-time payments. When you send or receive a real-time payment, you confirm that you're not acting on the behalf of someone who is not a U.S. citizen or resident. (General Account Terms, Section I, Rules governing your account)

- We've reduced the Chase wire fee to send an international wire in a foreign currency to $5 per transfer when you use chase.com or the Chase Mobile® app. As a reminder, there is no Chase wire fee when your transfer is equal to $5,000 U.S. dollars or more.

Please call us at the number on this statement if you have any questions.

## CHECKING SUMMARY   Chase Total Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **-$4,037.13** |
| Deposits and Additions | 3 | 11,271.99 |
| ATM & Debit Card Withdrawals | 17 | -11,061.76 |
| Electronic Withdrawals | 1 | -713.98 |
| Fees | 10 | -286.50 |
| **Ending Balance** | **31** | **-$4,827.38** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 03/01 | Card Purchase Return    02/28 Amzn Mktp US Amzn.Com/Bill WA Card 4509 | | $21.99 |
| 03/01 | T&P Degen/Inacti Payment | PPD ID: 1251926855 | 7,250.00 |
| 03/01 | Bert Bell/Pete R Payment | PPD ID: 1251926855 | 4,000.00 |
| **Total Deposits and Additions** | | | **$11,271.99** |

Page 1 of 4

**CHASE** ⬡

March 01, 2019 through March 29, 2019

Account Number. ▓▓▓▓▓▓▓▓

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|-------:|
| 03/01 | Card Purchase          02/28 Prime Video*Ml4Oe5Db0 888-802-3080 WA Card 4509 | $16.16 |
| 03/01 | Non-Chase ATM Withdraw  03/01 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 03/01 | Card Purchase With Pin  03/01 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 03/01 | Card Purchase With Pin  03/01 Evi*Casino Arizo Scottsdale AZ Card 4509 | 4,598.35 |
| 03/01 | Recurring Card Purchase 03/01 Ltf*Life Time MO Dues 888-430-6432 MN Card 4509 | 65.07 |
| 03/04 | Card Purchase          03/01 Amzn Mktp US*Ml2762K Amzn Com/Bill WA Card 4509 | 47.40 |
| 03/04 | Card Purchase          03/01 Splash Car Wash Chandler AZ Card 4509 | 16.00 |
| 03/04 | Card Purchase          03/01 Evi*Casino Arizona Mck 702-8553000 AZ Card 4509 | 3,911.99 |
| 03/04 | Card Purchase          03/02 Google*Pinger Inc G CO Helppay# CA Card 4509 | 4.99 |
| 03/04 | Card Purchase          03/02 Splash Car Wash Chandler AZ Card 4509 | 29.00 |
| 03/04 | Recurring Card Purchase 03/01 Extra Space 0239 480-9647317 AZ Card 4509 | 206.30 |
| 03/04 | Recurring Card Purchase 03/03 Abc*Mountainside Fitne 480-7329777 AZ Card 4509 | 117.86 |
| 03/04 | Recurring Card Purchase 03/02 Sxm*Siriusxm.Com/Acct 888-635-5144 NY Card 4509 | 19.41 |
| 03/04 | Recurring Card Purchase 03/01 Abc*Mountainside Fitne 480-7329777 AZ Card 4509 | 10.00 |
| 03/04 | Recurring Card Purchase 03/03 Google *Dropbox 855-836-3987 CA Card 4509 | 9.99 |
| 03/04 | Recurring Card Purchase 03/02 Google *Fit Radio 855-836-3987 CA Card 4509 | 3.99 |
| 03/05 | Recurring Card Purchase 03/02 U-Haul Storage of Tem 800-528-0463 AZ Card 4509 | 465.30 |
| **Total ATM & Debit Card Withdrawals** | | **$11,061.76** |

## ATM & DEBIT CARD SUMMARY

Toby Wright  Card 4509

|  | |
|---|---:|
| Total ATM Withdrawals & Debits | $502.00 |
| Total Card Purchases | $10,559.76 |
| Total Card Deposits & Credits | $21.99 |

ATM & Debit Card Totals

|  | |
|---|---:|
| Total ATM Withdrawals & Debits | $502.00 |
| Total Card Purchases | $10,559.76 |
| Total Card Deposits & Credits | $21.99 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|-------:|
| 03/01 | Progressiveloase Pmts          PPD ID: 1460858540 | $713.98 |
| **Total Electronic Withdrawals** | | **$713.98** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|-------:|
| 03/01 | Non-Chase ATM Fee-With | $2.50 |
| 03/04 | Insufficient Funds Fee For A $3,911.99 Card Purchase - Details:          0301Evi*Casino Arizona Mck 702-8553000 AZ0442742601826450905 | 34.00 |
| 03/04 | Insufficient Funds Fee For A $29.00 Card Purchase - Details:          0302Splash Car Wash Chandler AZ    044274260182845090 1 | 34.00 |
| 03/04 | Insufficient Funds Fee For A $206.30 Recurring Card Purchase - Details:          0301Extra Space 0239 480-9647317 AZ    0442742601826450900 | 34.00 |

*Page 2 of 4*

**CHASE** ◯

March 01, 2019 through March 29, 2019

Account Number: ▮▮▮▮▮▮▮



## FEES *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 03/04 | Insufficient Funds Fee For A $117.86 Recurring Card Purchase - Details: 0303Abc*Mountainside Fitne 480-7329777 AZ04427426018284509 00 | 34.00 |
| 03/04 | Insufficient Funds Fee For A $19.41 Recurring Card Purchase - Details: 0302Sxm*Siriusxm.Com/Acct 888-635-5144 NY04427426018284509 00 | 34.00 |
| 03/04 | Insufficient Funds Fee For A $10.00 Recurring Card Purchase - Details: 0301Abc*Mountainside Fitne 480-7329777 AZ04427426018284509 00 | 34.00 |
| 03/05 | Insufficient Funds Fee For A $465.30 Recurring Card Purchase - Details   0302U-Haul Storage of Tem 800-528-0463 AZ04427426018284509 00 | 34.00 |
| 03/13 | Returned Item Fee For An Unpaid $713.97 Item - Details: Progressivelease Pmts PPD ID: 1460858540 | 34.00 |
| 03/29 | Monthly Service Fee | 12.00 |
| **Total Fees** | | **$286.50** |

You were charged a monthly service fee of $12.00 this period. You can avoid this fee in the future by maintaining a minimum daily balance of $1,500.00. Your minimum daily balance was -$4,815.38.

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|------|--------|
| 03/01 | $298.85 |
| 03/04 | -4,282.08 |
| 03/05 | -4,781.38 |
| 03/13 | -4,815.38 |
| 03/29 | -4,827.38 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------------------------------------------|------------------------|
| Checks Paid / Debits | 18 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **18** |

| SERVICE FEE CALCULATION | AMOUNT |
|-------------------------|--------|
| Service Fee | $12.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$12.00** |
| Excessive Transaction Fees (Above 100) | $0.00 |
| **Total Service Fees** | **$12.00** |

*Page 3 of 4*



March 01, 2019 through March 29, 2019

Account Number: ███████████

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

Page 4 of 4

**CHASE ◻**
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

March 30, 2019 through April 30, 2019
Account Number:

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site | **Chase.com** |
| Service Center | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00061909 DRE 601 211 12119 NNNNNNNNNNN  1 000000000 64 0000
PLAYERS AUTHORITY LLC
PO BOX 7305
TEMPE AZ 85281-0011



## CHECKING SUMMARY    Chase Total Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **-$4,827.38** |
| Deposits and Additions | 3 | 11,297.40 |
| ATM & Debit Card Withdrawals | 14 | -10,784.93 |
| Fees | 9 | -252.50 |
| **Ending Balance** | **26** | **-$4,567.41** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 04/01 | T&P Degen/Inacti Payment | PPD ID: 1251926855 | $7,250.00 |
| 04/01 | Bert Bell/Pete R Payment | PPD ID: 1251926855 | 4,000.00 |
| 04/25 | Card Purchase Return    04/25 Amzn Mktp US Amzn.Com/Bill WA Card 4509 | | 47.40 |
| **Total Deposits and Additions** | | | **$11,297.40** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/01 | Card Purchase          03/31 Tmobile*Postpaid Fdp 800-937-8997 WA Card 4509 | $449.25 |
| 04/01 | Payment Sent          03/31 Sqc*Cash App 8774174551 CA Card 4509 | 500.00 |
| 04/01 | Payment Sent          03/31 Sqc*Jandi Spann 8774174551 CA Card 4509 | 2,700.00 |
| 04/01 | Non-Chase ATM Withdraw 03/31 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 04/01 | Card Purchase With Pin  03/31 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 04/01 | Card Purchase With Pin  03/31 Evi*Casino Arizo Scottsdale AZ Card 4509 | 5,177.95 |
| 04/01 | Recurring Card Purchase 03/30 Apl*Itunes Com/Bill 866-712-7753 CA Card 4509 | 90.79 |
| 04/01 | Recurring Card Purchase 04/01 Ltf*Life Time MO Dues 888-430-6432 MN Card 4509 | 65.07 |
| 04/01 | Recurring Card Purchase 03/31 Amazon Prime Amzn Com/Bill WA Card 4509 | 14.00 |
| 04/02 | Card Purchase          04/01 Splash Car Wash Chandler AZ Card 4509 | 16.00 |
| 04/02 | Card Purchase          04/01 Prime Video*Mw5Z17B02 888-802-3080 WA Card 4509 | 15.16 |
| 04/02 | Recurring Card Purchase 04/02 Google *Fit Radio 855-836-3987 CA Card 4509 | 3.99 |
| 04/03 | Recurring Card Purchase 04/01 Extra Space 0239 480-9647317 AZ Card 4509 | 206.78 |
| 04/03 | Recurring Card Purchase 04/03 Google *Pinger Inc 855-836-3987 CA Card 4509 | 4.99 |
| **Total ATM & Debit Card Withdrawals** | | **$10,784.93** |

Page 1 of 4

**CHASE** ◯

March 30, 2019 through April 30, 2019
Account Number ▉▉▉▉▉▉▉▉

## ATM & DEBIT CARD SUMMARY

Toby Wright  Card 4509

| | | |
|---|---|---|
| Total ATM Withdrawals & Debits | | $502.00 |
| Total Card Purchases | | $10,282.93 |
| Total Card Deposits & Credits | | $47.40 |

ATM & Debit Card Totals

| | | |
|---|---|---|
| Total ATM Withdrawals & Debits | | $502.00 |
| Total Card Purchases | | $10,282.93 |
| Total Card Deposits & Credits | | $47.40 |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/01 | Non-Chase ATM Fee-With | $2.50 |
| 04/01 | Insufficient Funds Fee For A $5,177.95 Card Purchase With Pin - Details: 3560400331Evi*Casino Arizo Scottsdale AZ     04427426018284509 05 | 34.00 |
| 04/01 | Insufficient Funds Fee For A $90.79 Recurring Card Purchase - Details: 0330Apl*Itunes.Com/Bill 866-712-7753 CA 04427426018284509 | 34.00 |
| 04/01 | Insufficient Funds Fee For A $65.07 Recurring Card Purchase - Details:     0401Ltf*Life Time MO Dues 888-430-6432 MN04427426018284509 01 | 34.00 |
| 04/01 | Insufficient Funds Fee For A $14.00 Recurring Card Purchase - Details:     0331Amazon Prime Amzn.Com/Bill WA     04427426018284509 01 | 34.00 |
| 04/02 | Insufficient Funds Fee For A $16.00 Card Purchase - Details:     0401Splash Car Wash Chandler AZ     04427426018284509 01 | 34.00 |
| 04/02 | Insufficient Funds Fee For A $16.16 Card Purchase - Details:     0401Prime Video*Mw5Z17B02 888-802-3080 WA04427426018284509 01 | 34.00 |
| 04/03 | Insufficient Funds Fee For A $206.78 Recurring Card Purchase - Details:     0401Extra Space 0239 480-9647317 AZ     04427426018284509 00 | 34.00 |
| 04/30 | Monthly Service Fee | 12.00 |
| **Total Fees** | | **$252.50** |

You were charged a monthly service fee of $12.00 this period. You can avoid this fee in the future by maintaining a minimum daily balance of $1,500.00. Your minimum daily balance was -$4,827.38.

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 04/01 | -$4,252.89 |
| 04/02 | -4,357.04 |
| 04/03 | -4,602.81 |
| 04/25 | -4,555.41 |
| 04/30 | -4,567.41 |

Page 2 of 4

**CHASE**

March 30, 2019 through April 30, 2019
Account Number:

## SERVICE CHARGE SUMMARY



| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 14 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| **Transaction Total** | **14** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $12.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$12.00** |
| Excessive Transaction Fees (Above 100) | $0.00 |
| **Total Service Fees** | **$12.00** |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
  • Your name and account number
  • The dollar amount of the suspected error
  • A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC.

 **JPMorgan Chase Bank, N.A. Member FDIC**

Page 3 of 4

**CHASE ⬡**

March 30, 2019 through April 30, 2019

Account Number: ▔▔▔▔▔▔▔▔

This Page Intentionally Left Blank

Page 4 of 4

**CHASE ○**

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 -2051

May 01, 2019 through May 31, 2019
Account Number: ▮▮▮▮▮▮▮

**CUSTOMER SERVICE INFORMATION**

| | |
|---|---|
| Web site | **Chase.com** |
| Service Center | **1-800-242-7338** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |



00063062 DRE 601 211 15219 NNNNNNNNNN  1 000000000 64 0000
PLAYERS AUTHORITY LLC
PO BOX 7305
TEMPE AZ 85281-0011

## CHECKING SUMMARY    Chase Total Business Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **-$4,567.41** |
| Deposits and Additions | 13 | 779,204.22 |
| ATM & Debit Card Withdrawals | 128 | -110,832.24 |
| Electronic Withdrawals | 1 | -505.57 |
| Other Withdrawals | 7 | -118,500.00 |
| Fees | 13 | -225.70 |
| **Ending Balance** | **162** | **$544,573.30** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 05/01 | T&P Degen/Inacti Payment | PPD ID: 1251926855 | $7,250.00 |
| 05/01 | Bert Bell/Pete R Payment | PPD ID. 1251926855 | 4,000.00 |
| 05/07 | Reversal Abc*Mountainside Fitne 480-7329777 AZ       05/03  Claimid: 054427851510001 05/06/2019 | | 155 72 |
| 05/07 | 05/06/2019 Reversal  Insufficient Funds Fee For A $465.30 | | 34.00 |
| 05/09 | Card Purchase Return    05/08 Tmobile*Postpaid Pda 800-937-8997 WA Card 4509 | | 930.50 |
| 05/13 | ATM Cash Deposit      05/12 5915 W Chandler Blvd Chandler AZ Card 4509 | | 500.00 |
| 05/13 | Deposit    1866955902 | | 766,275.00 |
| 05/23 | Refund of Insufficient Funds Fee Charged On 05/25/2017 | | 34.00 |
| 05/23 | Refund of Extended Overdraft Fee Charged On 04/10/2017 | | 15.00 |
| 05/23 | Refund of ATM Fee Charged On 05/25/2017 | | 2.50 |
| 05/23 | Refund of ATM Fee Charged On 05/04/2017 | | 2.50 |
| 05/23 | Refund of ATM Fee Charged On 04/10/2017 | | 2.50 |
| 05/23 | Refund of ATM Fee Charged On 04/03/2017 | | 2.50 |
| **Total Deposits and Additions** | | | **$779,204.22** |

Page 1 of 6

**CHASE ○**

May 01, 2019 through May 31, 2019

Account Number: ▇▇▇▇▇▇▇▇

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/01 | Recurring Card Purchase 05/01 Llf*Life Time MO Dues 888-430-6432 MN Card 4509 | $65.07 |
| 05/02 | Payment Sent          05/01 Sqc*Cash App 8774174551 CA Card 4509 | 750.00 |
| 05/02 | Payment Sent          05/01 Sqc*Cash App 8774174551 CA Card 4509 | 500.00 |
| 05/02 | Card Purchase          05/01 One Stop Nutrition Chandler AZ Card 4509 | 261.55 |
| 05/02 | Card Purchase          05/02 Amazon.Com*Mz61X92G2 Amzn.Com/Bill WA Card 4509 | 161.69 |
| 05/02 | Recurring Card Purchase 05/01 Abc*Eos Fitness 480-6162040 AZ Card 4509 | 10.00 |
| 05/03 | Card Purchase          05/03 Amazon.Com*Mz0U45Km2 Amzn.Com/Bill WA Card 4509 | 214.52 |
| 05/03 | Payment Sent          05/02 Sqc*Cash App 8774174551 CA Card 4509 | 150.00 |
| 05/03 | Card Purchase With Pin 05/03 Nordstrom-Rack # 3620 Chandler AZ Card 4509 | 87.21 |
| 05/03 | ATM Withdrawal          05/03 4050 S Gilbert Rd Chandler AZ Card 4509 | 2,500.00 |
| 05/03 | Recurring Card Purchase 05/01 Extra Space 0239 480-9647317 AZ Card 4509 | 206.78 |
| 05/03 | Recurring Card Purchase 05/03 Sxm*Siriusxm.Com/Acct 888-635-5144 NY Card 4509 | 19.41 |
| 05/03 | Recurring Card Purchase 05/03 Sxm*Siriusxm.Com/Acct 888-635-5144 NY Card 4509 | 17.47 |
| 05/03 | Recurring Card Purchase 05/03 Google *Pinger Inc 855-836-3987 CA Card 4509 | 4.99 |
| 05/03 | Recurring Card Purchase 05/01 Google*Fit Radio G.CO Holppay# CA Card 4509 | 3.99 |
| 05/06 | Card Purchase          05/03 Courtyard By Marriott- Mesa AZ Card 4509 | 152.61 |
| 05/06 | Card Purchase          05/02 Grubstak 480-6999188 AZ Card 4509 | 64.14 |
| 05/06 | Card Purchase          05/03 Grubstak 480-6999188 AZ Card 4509 | 66.20 |
| 05/06 | Card Purchase          05/04 Tmobile*Postpaid Pda 800-937-8997 WA Card 4509 | 930.50 |
| 05/06 | Recurring Card Purchase 05/02 U-Haul Storage of Tom 800-528-0463 AZ Card 4509 | 465.30 |
| 05/06 | Recurring Card Purchase 05/04 Tmobile*Postpaid Tel 800-937-8997 WA Card 4509 | 297.25 |
| 05/06 | Recurring Card Purchase 05/03 Abc*Mountainside Fitne 480-7329777 AZ Card 4509 | 155.72 |
| 05/07 | Payment Sent          05/06 Sqc*Cash App 8774174551 CA Card 4509 | 500.00 |
| 05/13 | Card Purchase With Pin 05/12 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,037.95 |
| 05/14 | ATM Withdrawal          05/14 2440 E Baseline Rd Phoenix AZ Card 4509 | 3,000.00 |
| 05/15 | Card Purchase          05/14 Niko Tempe 134 Tempe AZ Card 4509 | 226.98 |
| 05/15 | Card Purchase          05/14 Mandy's Fish And Chip 602-307-9247 AZ Card 4509 | 28.72 |
| 05/15 | Payment Sent          05/14 Sqc*Cash App 8774174551 CA Card 4509 | 1,000.00 |
| 05/15 | Payment Sent          05/14 Sqc*Cash App 8774174551 CA Card 4509 | 1,000.00 |
| 05/15 | Non-Chase ATM Withdraw 05/15 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 05/15 | Card Purchase With Pin 05/15 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 05/15 | Card Purchase With Pin 05/15 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 05/16 | Non-Chase ATM Withdraw 05/16 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 05/16 | Card Purchase With Pin 05/16 Jz Market Mesa AZ Card 4509 | 27.88 |
| 05/16 | ATM Withdrawal          05/16 28 S Dobson Rd Ste 101 Mesa AZ Card 4509 | 2,000.00 |
| 05/16 | Card Purchase With Pin 05/16 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 05/16 | Card Purchase With Pin 05/16 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 05/16 | Card Purchase With Pin 05/16 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 05/17 | Card Purchase          05/15 Seasons 52 0074517 Phoenix AZ Card 4509 | 115.15 |
| 05/17 | Card Purchase          05/17 Audible US*MN7Gc8P00 888-283-5051 NJ Card 4509 | 16.12 |
| 05/17 | Card Purchase          05/17 Shell Service Station Sun Lakes AZ Card 4509 | 45.79 |
| 05/17 | Card Purchase With Pin 05/17 Dicks Sporting Goods#3 Tempe AZ Card 4509 | 216.18 |
| 05/17 | Card Purchase With Pin 05/17 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 05/20 | Card Purchase          05/15 Dobson Ranch Inn Mesa AZ Card 4509 | 117.16 |
| 05/20 | Card Purchase          05/17 Niko Tempe 134 Tempe AZ Card 4509 | 21.61 |
| 05/20 | Card Purchase          05/17 Mattas Mesa AZ Card 4509 | 64.81 |
| 05/20 | Card Purchase With Pin 05/18 Circle K # 03490 3033 Chandler AZ Card 4509 | 24.84 |
| 05/20 | Card Purchase With Pin 05/18 Shell Service Station Chandler AZ Card 4509 | 70.13 |
| 05/20 | Card Purchase With Pin 05/18 Denny's #8832 Gilbert AZ Card 4509 | 104.07 |
| 05/20 | Non-Chase ATM Withdraw 05/18 1077 S Kyrene Rd Chandler AZ Card 4509 | 503.00 |

*Page 2 of 6*

**CHASE ◉**

May 01, 2019 through May 31, 2019

Account Number: ▇▇▇▇▇▇▇▇▇▇



## ATM & DEBIT CARD WITHDRAWALS (continued)

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 05/20 | Card Purchase With Pin  05/18 Gila River-L-32 Chandler AZ Card 4509 | 1,031.95 |
| 05/20 | Card Purchase With Pin  05/18 Asai   Gila River Chandler AZ Card 4509 | 1,546.95 |
| 05/20 | Card Purchase With Pin  05/18 Asai   Gila River Chandler AZ Card 4509 | 3,091.95 |
| 05/20 | Payment Sent        05/19 Sqc*Cash App 8774174551 CA Card 4509 | 500.00 |
| 05/20 | Card Purchase W/Cash   05/20 Walgreens Store 10324 Sun Lakes AZ Card 4509 Purchase $71.32 Cash Back $5.00 | 76.32 |
| 05/20 | Card Purchase With Pin  05/20 Chevron/David Montiel Scottsdale AZ Card 4509 | 57.70 |
| 05/20 | Card Purchase With Pin  05/20 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 05/20 | Card Purchase With Pin  05/20 Evi*Casino Arizo Scottsdale AZ Card 4509 | 1,555.45 |
| 05/21 | Card Purchase        05/20 Amzn Mktp US*MN92Z5V Amzn Com/Bill WA Card 4509 | 159.52 |
| 05/21 | ATM Withdrawal        05/21 5915 W Chandler Blvd Chandler AZ Card 4509 | 3,000.00 |
| 05/21 | Card Purchase With Pin  05/21 Asai   Gila River Chandler AZ Card 4509 | 1,546.95 |
| 05/21 | Card Purchase With Pin  05/21 Target T- 3931 S Gilbo Gilbert AZ Card 4509 | 44.51 |
| 05/22 | Card Purchase With Pin  05/21 Evi*Casino Arizona Mck 702-8553000 AZ Card 4509 | 5,111.99 |
| 05/22 | Payment Sent        05/21 Sqc*Cash App 8774174551 CA Card 4509 | 500.00 |
| 05/22 | Card Purchase        05/22 Extendedstay 316 Phoenix AZ Card 4509 | 67.54 |
| 05/22 | Card Purchase With Pin  05/22 Cvs/Pharm 05038--2010 Chandler AZ Card 4509 | 28.94 |
| 05/23 | Payment Sent        05/22 Sqc*Cash App 8774174551 CA Card 4509 | 750.00 |
| 05/23 | Card Purchase        05/22 One Stop Nutrition Phoenix AZ Card 4509 | 54.10 |
| 05/23 | Card Purchase        05/22 Cox Phoenix Comm Serv 800-234-3993 AZ Card 4509 | 178.37 |
| 05/23 | Payment Sent        05/22 Sqc*Cash App 8774174551 CA Card 4509 | 500.00 |
| 05/23 | Card Purchase        05/23 Harkins Chandler Crossr Chandler AZ Card 4509 | 11.00 |
| 05/23 | Card Purchase        05/23 Harkins Chandler Crossr Chandler AZ Card 4509 | 7.50 |
| 05/23 | Card Purchase With Pin  05/23 Asai   Gila River Chandler AZ Card 4509 | 2,061.95 |
| 05/23 | Card Purchase With Pin  05/23 Akimel Sm 4231 W Riggs Sun Lakes AZ Card 4509 | 11.57 |
| 05/23 | Card Purchase With Pin  05/23 Shell Service Station Sun Lakes AZ Card 4509 | 61.92 |
| 05/23 | Card Purchase With Pin  05/23 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,590.45 |
| 05/23 | Card Purchase With Pin  05/23 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 05/23 | ATM Withdrawal        05/23 4050 S Gilbert Rd Chandler AZ Card 4509 | 3,000.00 |
| 05/24 | Payment Sent        05/23 Sqc*Cash App 8774174551 CA Card 4509 | 500.00 |
| 05/24 | Payment Sent        05/23 Sqc*Cash App 8774174551 CA Card 4509 | 500.00 |
| 05/24 | Card Purchase With Pin  05/24 Quiktrip Gilbert AZ Card 4509 | 48.03 |
| 05/24 | Card Purchase With Pin  05/24 Asai   Gila River Chandler AZ Card 4509 | 4,121.95 |
| 05/24 | ATM Withdrawal        05/24 4050 S Gilbert Rd Chandler AZ Card 4509 | 1,000.00 |
| 05/24 | Card Purchase With Pin  05/24 Frys Fuel 7681 Chandler AZ Card 4509 | 16.08 |
| 05/28 | Card Purchase        05/23 Homes To Suites By Hilt Chandler AZ Card 4509 | 165.27 |
| 05/28 | Card Purchase        05/24 Cobblestone Auto Spa Gilbert AZ Card 4509 | 33.00 |
| 05/28 | Card Purchase        05/24 Cobblestone Auto Spa Gilbert AZ Card 4509 | 28.62 |
| 05/28 | Card Purchase        05/24 Whp Gift Shop Chandler AZ Card 4509 | 8.50 |
| 05/28 | Card Purchase        05/25 J. A. R. Inc. 480-966-3696 AZ Card 4509 | 50.00 |
| 05/28 | Card Purchase        05/24 Recrent 503-866-2639 AZ Card 4509 | 3.00 |
| 05/28 | Card Purchase        05/24 Sq *Phoenix Premium Out Chandler AZ Card 4509 | 43.64 |
| 05/28 | Card Purchase        05/26 Ra Sushi Ahwatukee Phoenix AZ Card 4509 | 102.21 |
| 05/28 | Card Purchase With Pin  05/25 Asai   Gila River Chandler AZ Card 4509 | 4,121.95 |
| 05/28 | Card Purchase With Pin  05/25 Asai   Gila River Chandler AZ Card 4509 | 3,091.95 |
| 05/28 | Card Purchase        05/25 Goodwill # 047 Chandler AZ Card 4509 | 7.00 |
| 05/28 | Card Purchase With Pin  05/25 Asai   Gila River Chandler AZ Card 4509 | 1,031.95 |
| 05/28 | Non-Chase ATM Withdraw  05/26 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 05/28 | Card Purchase With Pin  05/26 Evi*Casino Arizo Scottsdale AZ Card 4509 | 4,142.95 |
| 05/28 | Payment Sent        05/26 Sqc*Cash App 8774174551 CA Card 4509 | 500.00 |
| 05/28 | Card Purchase With Pin  05/26 Shell Service Station Gilbert AZ Card 4509 | 52.51 |

Page 3 of 6

**CHASE ⬤**

May 01, 2019 through May 31, 2019

Account Number: ▮▮▮▮▮▮▮▮

## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 05/28 | Card Purchase With Pin  05/27 Jet Action Rentals Tempe AZ Card 4509 | 317.33 |
| 05/28 | Card Purchase With Pin  05/27 Jet Action Rentals Tempe AZ Card 4509 | 24.80 |
| 05/28 | Card Purchase       05/27 Chevron 0210233 Chandler AZ Card 4509 | 61.66 |
| 05/28 | Card Purchase With Pin  05/27 Circle K # 41702 2955 Chandler AZ Card 4509 | 52.49 |
| 05/28 | Non-Chase ATM Withdraw 05/27 524 North 92ND St Scottsdale AZ Card 4509 | 502.00 |
| 05/28 | Card Purchase With Pin  05/28 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,590.45 |
| 05/28 | Card Purchase With Pin  05/27 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 05/28 | Card Purchase With Pin  05/28 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,590.45 |
| 05/28 | Card Purchase With Pin  05/28 Evi*Casino Arizo Scottsdale AZ Card 4509 | 2,072.95 |
| 05/28 | ATM Withdrawal       05/28 1155 S Arizona Ave Chandler AZ Card 4509 | 3,000.00 |
| 05/28 | Recurring Card Purchase 05/25 Tmobile*Postpaid Tel 800-937-8997 WA Card 4509 | 1,185.91 |
| 05/28 | Recurring Card Purchase 05/25 Abc*Eos Fitness 888-8279262 AZ Card 4509 | 50.36 |
| 05/29 | Card Purchase With Pin  05/29 Wal-Mart Super Center Chandler AZ Card 4509 | 359.44 |
| 05/29 | Card Purchase With Pin  05/29 Wm Superc Wal-Mart Sup Chandler AZ Card 4509 | 249.75 |
| 05/29 | Card Purchase With Pin  05/29 Albertsons Store  1221 Chandler AZ Card 4509 | 75.01 |
| 05/29 | Recurring Card Purchase 05/28 Abc*Eos Fitness 480-6162040 AZ Card 4509 | 10.00 |
| 05/30 | Card Purchase       05/29 Priceline*Delta Hotel 800-774-2354 CT Card 4509 | 109.97 |
| 05/30 | Card Purchase With Pin  05/29 Albertsons Store  1221 Chandler AZ Card 4509 | 26.35 |
| 05/30 | Card Purchase With Pin  05/29 Evi*Casino Arizo Scottsdale AZ Card 4509 | 3,107.95 |
| 05/30 | Card Purchase With Pin  05/30 Nordstrom-Rack # 3620 Chandler AZ Card 4509 | 143.24 |
| 05/31 | Card Purchase       05/29 Kneaders Gilbert Santan Gilbert AZ Card 4509 | 24.52 |
| 05/31 | Card Purchase       05/29 Dobson Ranch Inn Mesa AZ Card 4509 | 56.30 |
| 05/31 | Card Purchase       05/29 Dobson Ranch Inn Mesa AZ Card 4509 | 100.00 |
| 05/31 | Payment Sent       05/30 Sqc*Cash App 8774174551 CA Card 4509 | 1,000.00 |
| 05/31 | Card Purchase With Pin  05/31 Denny's #8720 Aurora CO Card 4509 | 58.83 |
| 05/31 | Card Purchase With Pin  05/31 Wm Superc Wal-Mart Sup Aurora CO Card 4509 | 335.00 |
| 05/31 | Card Purchase With Pin  05/31 Wal-Mart #5334 Aurora CO Card 4509 | 500.00 |
| 05/31 | Card Purchase With Pin  05/31 Wal-Mart #5334 Aurora CO Card 4509 | 500.00 |
| **Total ATM & Debit Card Withdrawals** | | **$110,832.24** |

## ATM & DEBIT CARD SUMMARY

Toby Wright  Card 4509

| | |
|---|---|
| Total ATM Withdrawals & Debits | $20,011.00 |
| Total Card Purchases | $90,821.24 |
| Total Card Deposits & Credits | $1,586.22 |

ATM & Debit Card Totals

| | |
|---|---|
| Total ATM Withdrawals & Debits | $20,011.00 |
| Total Card Purchases | $90,821.24 |
| Total Card Deposits & Credits | $1,586.22 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 05/01 | Progressivelease Pmts       PPD ID: 1460858540 | $505.57 |
| **Total Electronic Withdrawals** | | **$505.57** |

Page 4 of 6

**CHASE** ⬢

May 01, 2019 through May 31, 2019
Account Number: ▐▐▐▐▐▐▐

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 05/15 | 05/15 Withdrawal | $30,000.00 |
| 05/15 | 05/15 Withdrawal | 20,000.00 |
| 05/22 | 05/22 Withdrawal | 30,000.00 |
| 05/22 | 05/22 Withdrawal | 3,000.00 |
| 05/24 | 05/24 Withdrawal | 30,000.00 |
| 05/28 | 05/28 Withdrawal | 3,500.00 |
| 05/28 | 05/28 Withdrawal | 2,000.00 |
| **Total Other Withdrawals** | | **$118,500.00** |



## FEES

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 05/06 | Insufficient Funds Fee For A $465.30 Recurring Card Purchase - Details:      0502U-Haul Storage of Tom 800-528-0463 AZ04427426018284509 00 | $34.00 |
| 05/06 | Insufficient Funds Fee For A $297.25 Recurring Card Purchase - Details: 05041mobile*Postpaid Tol 800-937-8997 WA 04427426018284509 01 | 34.00 |
| 05/06 | Insufficient Funds Fee For A $155.72 Recurring Card Purchase - Details: 0503Abc*Mountainside Fitne 480-7329777 AZ04427426018284509 00 | 34.00 |
| 05/07 | Insufficient Funds Fee For A $500.00 Payment Sent - Details:      0506Sqc*Cash App 8741174551 CA      04427426018284509 00 | 34.00 |
| 05/13 | Insufficient Funds Fee For A $1,037.95 Card Purchase With Pin - Details: 3885020512Evi*Casino Arizo Scottsdale AZ      04427426018284509 05 | 34.00 |
| 05/15 | Non-Chase ATM Fee-With | 2.50 |
| 05/16 | Non-Chase ATM Fee-With | 2.50 |
| 05/20 | Non-Chase ATM Fee-With | 2.50 |
| 05/22 | Official Checks Charge | 8.00 |
| 05/24 | Official Checks Charge | 8.00 |
| 05/28 | Non-Chase ATM Fee-With | 2.50 |
| 05/28 | Non-Chase ATM Fee-With | 2.50 |
| 05/31 | Monthly Service Fee | 27.20 |
| **Total Fees** | | **$225.70** |

You were charged a monthly service fee of $12.00 this period. You can avoid this fee in the future by maintaining a minimum daily balance of $1,500.00. Your minimum daily balance was -$4,567.41

Chase Total Business Checking allows up to 100 debits, credits, and deposited items per statement period. Your transaction total for this statement period was 138 and excessive transaction fees were applied. If this level of activity is typical, please contact us so that we can explore other product options for your business.

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 05/01 | $6,111.95 | 05/07 | -1,353.56 | 05/15 | 703,303.89 |
| 05/02 | 4,428.71 | 05/09 | -423.06 | 05/16 | 692,482.66 |
| 05/03 | 1,224.34 | 05/13 | 765,279.99 | 05/17 | 688,981.47 |
| 05/06 | -1,009.28 | 05/14 | 762,279.99 | 05/20 | 677,105.08 |

Page 5 of 6

**CHASE** ◆

May 01, 2019 through May 31, 2019

Account Number: ▇▇▇▇▇▇▇

## DAILY ENDING BALANCE *(continued)*

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 05/21 | 672,354.10 | 05/24 | 585,167.76 | 05/30 | 547,175.15 |
| 05/22 | 633,637.63 | 05/28 | 551,256.86 | 05/31 | 544,573.30 |
| 05/23 | 621,361.82 | 05/29 | 550,562.66 | | |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------|------|
| Checks Paid / Debits | 136 |
| Deposits / Credits | 1 |
| Deposited Items | 1 |
| **Transaction Total** | **138** |

| SERVICE FEE CALCULATION | AMOUNT |
|------|------|
| Service Fee | $12.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$12.00** |
| Excessive Transaction Fees (Above 100) | $15.20 |
| **Total Service Fees** | **$27.20** |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
• Your name and account number
• The dollar amount of the suspected error
• A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC.

 **JPMorgan Chase Bank, N.A. Member FDIC**

Page 6 of 6

# EXHIBIT "F"

*Thrivest Specialty Funding v. Toby L. Wright*
*CV2020-004560*

---

*Toby L. Wright*
*April 20, 2021*

---

*Coash & Coash, Inc.*
*1802 N. 7th Street*
*Phoenix, AZ  85006*
*602-258-1440*
*www.coashandcoash.com*



Coash
&Coash
PHOENIX DEPOSITION REPORTERS
& VIDEOCONFERENCING

To open files, click on the desired file type in bookmark on left.
For quick saving or searching multiple files, click attachments tab (or paperclip) on left.
For best viewing/searching, use Adobe Reader/Acrobat ver. 9 or higher
(www.adobe.com).

```
 1      Q.   Gilbert, Arizona?
 2      A.   Yeah.
 3      Q.   Is it Chandler Lane?
 4      A.   No, I don't think so.
 5      Q.   Who lives at the East Winston address with you?
 6      A.   It's my father's address.  Address has been there
 7  since I was born.
 8      Q.   Who lives at that residence now?
 9      A.   My father, my brother, and I do occasionally,
10  yeah.
11      Q.   I didn't understand what you said.
12      A.   My father and my brothers, and I do occasionally.
13      Q.   When you don't live at the East Winston address,
14  where do you live?
15      A.   I'm everywhere.  I'm out sometimes.  I'm out in
16  the street sometimes.  I'm at different locations.
17      Q.   Do you ever stay with your wife Jandi in Gilbert?
18      A.   No, it's been years.
19      Q.   Do you still have a relationship with your wife?
20      A.   No, I don't.
21           THE WITNESS:  Supposed to be happening like
22  this?
23           MR. COUGHLIN:  Yeah.
24  BY MR. BUCKLEY:
25      Q.   What's your brother's name?
```

Coash & Coash, Inc.

```
 1   to parse down the questions to a little bit smaller
 2   generalities just because -- I mean, that's a pretty large
 3   question.  So if you have specific -- if you have specific
 4   transactions you have questions about or if you want to
 5   break it down to what did you use most of the money for,
 6   stuff like that, it would be helpful in getting a more
 7   direct answer.
 8   BY MR. BUCKLEY:
 9       Q.   Okay.  So you don't remember what you did with
10   it?
11       A.   With what?
12       Q.   You received -- in 2018 and 2019, you received
13   over a million dollars from the NFL concussion case.  Do
14   you have any of that money today?
15       A.   No, I don't.
16       Q.   Where did it go?
17       A.   Majority of it I gambled it off.
18       Q.   At the Casino Arizona?
19       A.   Yes.
20       Q.   We have your bank records and so we've seen where
21   you made withdrawals at that casino almost on a daily
22   basis.
23       A.   Yes.
24       Q.   At the time -- at the time that you were spending
25   that money at the casino, did you know and understand that
```

Coash & Coash, Inc.

# EXHIBIT "G"

SUSPENSE

## United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:20-cv-06525-PD

BALANCED BRIDGE FUNDING, LLC v. HARPER
Assigned to: HONORABLE PAUL S. DIAMOND
Cause: 09:1 U.S. Arbitration Act

Date Filed: 12/29/2020
Date Terminated: 04/12/2021
Jury Demand: None
Nature of Suit: 896 Other Statutes: Arbitration
Jurisdiction: Federal Question

**Petitioner**

**BALANCED BRIDGE FUNDING, LLC**

represented by **PETER C. BUCKLEY**
FOX ROTHSCHILD, LLP
2000 MARKET STREET
10TH FLOOR
PHILADELPHIA, PA 19103
215-299-2854
Email: pbuckley@foxrothschild.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**ALVIN C HARPER**

represented by **ALVIN C HARPER**
3632 MADBURY CIRCLE
LAKELAND, FL 33810
Email: alvinharper1@gmail.com
PRO SE

| Date Filed | # | Docket Text |
|---|---|---|
| 12/29/2020 | 1 | Emergency Application to Confirm Arbitration Award filed by BALANCED BRIDGE FUNDING, LLC. Memorandum. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet, # 2 Designation Form Designation Form, # 3 Case Management Track Form Case Management Track Form)(BUCKLEY, PETER) Modified on 1/4/2021 (tjd). (Entered: 12/29/2020) |
| 12/29/2020 | 2 | Disclosure Statement Form pursuant to FRCP 7.1 by BALANCED BRIDGE FUNDING, LLC.(BUCKLEY, PETER) (Entered: 12/29/2020) |
| 01/04/2021 | | Filing Fee for COMPLAINT or NOTICE OF REMOVAL by BALANCED BRIDGE FUNDING, LLC. (Filing Fee $402, receipt number 0313-14814947). (BUCKLEY, PETER) Modified on 2/4/2021 (td, ). (Entered: 01/04/2021) |
| 01/05/2021 | 3 | Emergency MOTION for Service *by Alternate Means* filed by BALANCED BRIDGE FUNDING, LLC.Memorandum. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A - Declaration, # 3 Exhibit 1, # 4 Exhibit 2)(BUCKLEY, PETER) (Entered: 01/05/2021) |

| 01/11/2021 | 4 | AFFIDAVIT of Service by Robert Hall re: served Emergency Motion to Confirm Arbitration Award, Emergency Motion for Alternate Service, application for for emergency interim relief in the arbitration, Interim Award of Emergency Relief upon Alvin C. Harper by Substituted Service on 01/08/2021 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(BUCKLEY, PETER) (Entered: 01/11/2021) |
| --- | --- | --- |
| 01/13/2021 | 5 | Emergency MOTION for Preliminary Injunction *to Freeze Accounts of Alvin C. Harper* filed by BALANCED BRIDGE FUNDING, LLC.Memorandum and Certificate of Service. (Attachments: # 1 Text of Proposed Order)(BUCKLEY, PETER) (Entered: 01/13/2021) |
| 01/19/2021 | 6 | Letter to Judge Brody dated 1/19/2021 re: RESPONSE in Support re 1 Emergency MOTION to Confirm Arbitration Award , 5 Emergency MOTION for Preliminary Injunction *to Freeze Accounts of Alvin C. Harper* filed by BALANCED BRIDGE FUNDING, LLC. (BUCKLEY, PETER) Modified on 1/20/2021 (tjd). (Entered: 01/19/2021) |
| 01/28/2021 | 7 | Letter to Judge Brody dated 1/28/2021 re: RESPONSE in Support re 1 Emergency MOTION to Confirm Arbitration Award , 5 Emergency MOTION for Preliminary Injunction *to Freeze Accounts of Alvin C. Harper* filed by BALANCED BRIDGE FUNDING, LLC. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A)(BUCKLEY, PETER) Modified on 1/29/2021 (tjd). (Entered: 01/28/2021) |
| 01/29/2021 | 8 | Request for case reassignment dated 1/29/21 signed by HONORABLE ANITA B. BRODY (jwl, ) (Entered: 01/29/2021) |
| 01/29/2021 | 9 | ORDER THAT THE ABOVE-CAPTIONED CASE IS REASSIGNED FROM THE CALENDAR OF THE HONORABLE ANITA B. BRODY TO THE CALENDAR OF THE HONORABLE PAUL S. DIAMOND. SIGNED BY CHIEF JUDGE JUAN R. SANCHEZ ON 1/29/21. 1/29/21 ENTERED AND COPIES E-MAILED. "NOT MAILED TO UNREP PARTY"(kw, ) (Entered: 01/29/2021) |
| 02/03/2021 | 10 | ORDER THAT PLFF'S EMERGENCY MOTION FOR ALTERNATIVE SERVICE (DOC. NO. 3) IS GRANTED. BALANCED BRIDGE MAY EFFECTUATE SERVICE OF THE EMERGENCY APPLICATION TO CONFIRM ARBITRATION AWARD & ALL SUBSEQUENT DOCUMENTS ON MR. HARPER VIA E-MAIL AT ALVINHARPER1@GMAIL.COM UNTIL AN ATTORNEY ENTERS AN APPEARANCE ON MR. HARPER'S BEHALF. SIGNED BY HONORABLE PAUL S. DIAMOND ON 2/3/21.2/4/21 ENTERED AND COPIES E-MAILED. "NOT MAILED TO UNREP PARTY"(kw, ) (Entered: 02/04/2021) |
| 02/04/2021 | 11 | AFFIDAVIT of Service by Peter Buckley re: served Emergency Application to Confirm Arbitration Award and subsequent filings upon Alvin C. Harper by via e-mail per Court Order on various (BUCKLEY, PETER) (Entered: 02/04/2021) |
| 02/04/2021 | 12 | ORDER THAT DEFT SHALL RESPOND TO PLFF'S EMERGENCY'S MOTION FOR PRELIMINARY INJUNCTION TO FREEZE ACCOUNTS OF ALVIN C. HARPER (DOC. NO. 5) NO LATER THAN 2/5/2021, AT 5:00 P.M., ETC. PLFF SHALL ENSURE THAT THIS ORDER IS SERVED ON DEFT FORTHWITH. SIGNED BY HONORABLE PAUL S. DIAMOND ON 2/4/21. 2/4/21 ENTERED AND COPIES E-MAILED(kw, ) (Entered: 02/04/2021) |
| 02/04/2021 | 13 | AFFIDAVIT *of Service of February 4, 2021 Court Order upon Alvin C. Harper* by BALANCED BRIDGE FUNDING, LLC. (BUCKLEY, PETER) (Entered: 02/04/2021) |
| 02/04/2021 | | 2/4/2021 Law firm was charged twice on 1/4/2021 when paying for the initial filing and subsequently disputed the charge receipt number docketed. As such, receipt number 0313- |

| | | |
|---|---|---|
| | | 14814947 for a $402.00 filing fee should be associated with the 1/4/2021 entry (td, ) (Entered: 02/04/2021) |
| 02/09/2021 | | MAILED OUT ORDER ENTRIES #9, #10 AND #12 TO UNREP ON 2/9/21. (jaa, ) (Entered: 02/09/2021) |
| 02/09/2021 | 14 | Letter RESPONSE in Support re 5 Emergency MOTION for Preliminary Injunction *to Freeze Accounts of Alvin C. Harper* filed by BALANCED BRIDGE FUNDING, LLC. (BUCKLEY, PETER) Modified on 2/11/2021 (tjd). (Entered: 02/09/2021) |
| 02/23/2021 | 15 | ORDERED THAT BALANCED BRIDGE FUNDING LLCS EMERGENCY APPLICATION TO CONFIRM ARBITRATION AWARD (DOC. NO. 1 IS GRANTED AND THE AWARD IS CONFIRMED. RESPONDENT ALVIN C. HARPER IS DIRECTED TO COMPLY WITH THE INTERIM AWARD OF EMERGENCY RELIEF WITHIN TWO BUSINESS DAYS OR RISK SANCTIONS UPON FURTHER APPLICATION TO THIS COURT. BALANCED BRIDGE FUNDING LLCS EMERGENCY MOTION FOR PRELIMINARY INJUNCTION TO FREEZE ACCOUNTS OF ALVIN C. HARPER (DOC. NO. 5 IS GRANTED. UNLESS AND UNTIL HARPER COMPLIES WITH THE EMERGENCY ARBITRATORS AWARD OF EMERGENCY INTERIM RELIEF BY CAUSING THE SUM OF $491,623.20 TO BE DEPOSITED INTO A TRUST ACCOUNT MAINTAINED BY FOX ROTHSCHILD LLP OR SUBMITS ADEQUATE PROOF OF HIS INABILITY TO COMPLY WITH THAT DIRECTIVE, ANY BANK, FINANCIAL INSTITUTION, BROKERAGE INSTITUTION, OR OTHER PERSON OR ENTITY HOLDING ANY FUNDS, SECURITIES, OR OTHER ASSETS IN THE NAME OF, FOR THE BENEFIT OF, OR UNDER THE DIRECT OR INDIRECT CONTROL OF ALVIN C. HARPER MUST PROHIBIT THE WITHDRAWAL, REMOVAL, TRANSFER OR OTHER DISPOSAL OF THOSE FUNDS, SECURITIES, OR ASSETS UNTIL FURTHER NOTICE BY THIS COURT. IF HARPER AGREES TO PARTICIPATE IN THIS LITIGATION, HE SHOULD NOTIFY BALANCED BRIDGE AND THE COURT FORTHWITH SO THAT A HEARING MAY BE SCHEDULED.. SIGNED BY HONORABLE PAUL S. DIAMOND ON 2/23/21.2/23/21 ENTERED AND COPIES NOT MAILED TO UNREPS AND E-MAILED.(jpd, ) (Entered: 02/23/2021) |
| 02/24/2021 | | PLEADING #15 MAILED TO UNREP (JL ) (Entered: 02/24/2021) |
| 02/24/2021 | 16 | Letter RESPONSE in Support re 5 Emergency MOTION for Preliminary Injunction *to Freeze Accounts of Alvin C. Harper* filed by BALANCED BRIDGE FUNDING, LLC. (Attachments: # 1 Text of Proposed Order Amended)(BUCKLEY, PETER) Modified on 2/25/2021 (tjd). (Entered: 02/24/2021) |
| 02/24/2021 | 17 | ORDERED THAT MY FEBRUARY 23, 2021 ORDER (DOC. NO. 16 IS HEREBY AMENDED AS FOLLOWS BALANCED BRIDGE FUNDING LLCS EMERGENCY APPLICATION TO CONFIRM ARBITRATION AWARD (DOC. NO. 1 IS GRANTED AND THE AWARD IS CONFIRMED. RESPONDENT ALVIN C. HARPER IS DIRECTED TO COMPLY WITH THE INTERIM AWARD OF EMERGENCY RELIEF WITHIN TWO BUSINESS DAYS OR RISK SANCTIONS UPON FURTHER APPLICATION TO THIS COURT. BALANCED BRIDGE FUNDING LLCS EMERGENCY MOTION FOR PRELIMINARY INJUNCTION TO FREEZE ACCOUNTS OF ALVIN C. HARPER (DOC. NO. 5 IS GRANTED. UNLESS AND UNTIL HARPER COMPLIES WITH THE EMERGENCY ARBITRATORS AWARD OF EMERGENCY INTERIM RELIEF BY CAUSING THE SUM OF $491,623.20 TO BE DEPOSITED INTO A TRUST ACCOUNT MAINTAINED BY FOX ROTHSCHILD LLP OR SUBMITS ADEQUATE PROOF OF HIS INABILITY TO COMPLY WITH THAT DIRECTIVE, ANY BANK, FINANCIAL INSTITUTION, BROKERAGE INSTITUTION, OR OTHER PERSON OR ENTITY HOLDING ANY FUNDS, |

| | | |
|---|---|---|
| | | SECURITIES, OR OTHER ASSETS IN THE NAME OF, FOR THE BENEFIT OF, OR UNDER THE DIRECT OR INDIRECT CONTROL OF ALVIN C. HARPER MUST PROHIBIT THE WITHDRAWAL, REMOVAL, TRANSFER OR OTHER DISPOSAL OF THOSE FUNDS, SECURITIES, OR ASSETS UNTIL FURTHER NOTICE BY THIS COURT. NAVY FEDERAL CREDIT UNION IS DIRECTED TO PROHIBIT THE WITHDRAWAL, REMOVAL, TRANSFER OR OTHER DISPOSAL OF FUNDS, SECURITIES, OR OTHER ASSETS IN THE NAME OF, OR FOR THE BENEFIT OF, OR UNDER THE DIRECT OR INDIRECT CONTROL OF ALVIN C. HARPER (D.O.B. JULY 6, 1967, SSN XXX-XX-9996), INCLUDING BUT NOT LIMITED TO THE FOLLOWING ACCOUNTS: EVERYDAY CHECKING ENDING -7403, FLAGSHIP CHECKING ENDING -7675 AND -2593, AND MEMBERSHIP SAVINGS ENDING -8818.IF HARPER AGREES TO PARTICIPATE IN THIS LITIGATION, HE SHOULD NOTIFY BALANCED BRIDGE AND THE COURT FORTHWITH SO THAT A HEARING MAY BE SCHEDULED. BALANCED BRIDGE IS DIRECTED TO SERVE A COPY OF THIS ORDER UPON HARPER FORTHWITH. SIGNED BY HONORABLE PAUL S. DIAMOND ON 2/24/21. 2/24/21 ENTERED AND COPIES E-MAILED.(jpd, ) (Entered: 02/24/2021) |
| 03/09/2021 | 18 | Emergency MOTION for Contempt filed by BALANCED BRIDGE FUNDING, LLC.Memorandum of Law and Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A)(BUCKLEY, PETER) (Entered: 03/09/2021) |
| 03/10/2021 | 19 | ORDER THAT DEFT ALVIN C. HARPER SHALL RESPOND TO PLFF'S EMERGENCY MOTION FOR CONTEMPT (DOC. NO. 18) NO LATER THAN 3/15/2021, AT 12:00 P.M., ETC. PLFF SHALL ENSURE THAT THIS ORDER IS SERVED ON DEFT FORTHWITH. SIGNED BY HONORABLE PAUL S. DIAMOND ON 3/10/21. 3/11/21 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 03/11/2021) |
| 03/11/2021 | 20 | AFFIDAVIT re 19 Order,, Set Motion and R&R Deadlines/Hearings, *upon Alvin C. Harper* by BALANCED BRIDGE FUNDING, LLC. (BUCKLEY, PETER) (Entered: 03/11/2021) |
| 03/15/2021 | 21 | E-Mail Letter dated 3/15/21, filed by PRO SE DEFT ALVIN C. HARPER. (kw, ) (Entered: 03/15/2021) |
| 03/15/2021 | 22 | ORDER, IT IS HEREBY ORDERED THAT PLAINTIFF BALANCED BRIDGE FUNDING, LLC SHALL RESPOND TO THE COURT NO LATER THAN TUESDAY, MARCH 16, 2021, AT 12:00 PM INDICATING HOW IT WISHES TO PROCEED IN LIGHT OF DEFENDANT ALVIN C. HARPER'S MARCH 15, 2021 RESPONSE (DOC. NO. 21 ).SIGNED BY HONORABLE PAUL S. DIAMOND ON 3/15/2021. 3/15/2021 ENTERED AND COPIES E-MAILED.(rt) (Entered: 03/15/2021) |
| 03/15/2021 | 23 | Letter to Judge Diamond dated 3/15/2021 re: RESPONSE in Support re 18 Emergency MOTION for Contempt filed by BALANCED BRIDGE FUNDING, LLC. (BUCKLEY, PETER) Modified on 3/16/2021 (tjd). (Entered: 03/15/2021) |
| 03/15/2021 | 24 | Correspondence, re: Lease Agreement, Application, filed by PRO SE DEFT ALVIN C. HARPER. "NO ENVELOPE ATTACHED" (Attachments: # 1 Application, # 2 E-Mail attachment)(kw, ) (Entered: 03/15/2021) |
| 03/16/2021 | 25 | ORDER, IT IS HEREBY ORDERED THAT A HEARING REGARDING BALANCED BRIDGE'S MOTION FOR CONTEMPT (DOC. NO. 18 ) IS SCHEDULED FOR APRIL 13, 2021 AT 2:00 PM VIA VIDEOCONFERNCE.SIGNED BY HONORABLE PAUL S. DIAMOND ON 3/16/2021. 3/16/2021 ENTERED AND COPIES E-MAILED.(rt) (Entered: 03/16/2021) |
| 03/29/2021 | 26 | Letter to Judge Diamond dated 3/29/2021 re 5 Emergency MOTION for Preliminary |

| | | |
|---|---|---|
| | | Injunction *to Freeze Accounts of Alvin C. Harper* filed by BALANCED BRIDGE FUNDING, LLC. (Attachments: # 1 Text of Proposed Order)(BUCKLEY, PETER) Modified on 3/31/2021 (tjd). (Entered: 03/29/2021) |
| 03/29/2021 | 27 | E-MAIL dated 3/29/21 by ALVIN C HARPER (amas, ) (Entered: 03/29/2021) |
| 03/30/2021 | 28 | ORDER, IT IS HEREBY ORDERED THAT BALANCED BRIDGE SHALL FILE A REPLY TO HARPER'S RESPONSE IN OPPOSITION (DOC. NO. 27 ) NO LATER THAN MARCH 30, 2021, AT 4:00 P.M.. SIGNED BY HONORABLE PAUL S. DIAMOND ON 3/30/2021. 3/30/2021 ENTERED AND COPIES E-MAILED.(rt) (Entered: 03/30/2021) |
| 03/30/2021 | 29 | Letter to Judge Diamond dated 3/30/2021 re 5 Emergency MOTION for Preliminary Injunction *to Freeze Accounts of Alvin C. Harper* filed by BALANCED BRIDGE FUNDING, LLC. (BUCKLEY, PETER) Modified on 4/1/2021 (tjd). (Entered: 03/30/2021) |
| 03/30/2021 | 30 | ORDER, IT IS HEREBY ORDERED THAT ALVIN HARPER SHALL SUBMIT TO THE COURT AND TO PLAINTIFF, NO LATER THAN MARCH 31, 2021 AT 2:00 P.M., RECORDS INDICATING ALL BANK ACTIVITY IN THE LAST 60 DAYS FOR HIS WELLS FARGO AND BANK OF AMERICA ACCOUNTS. IF MR. HARPER WISHES TO SUBMIT THE RECORDS UNDER SEAL, HE MAY DO SO. FAILURE TO COMPLY WITH THIS ORDER LIKELY WILL RESULT IN THE COURT GRANTING PLAINTIFF'S REQUEST TO FREEZE THE WELLS FARO AND BANK OF AMERICA ACCOUNTS.SIGNED BY HONORABLE PAUL S. DIAMOND ON 3/30/2021. 3/30/2021 ENTERED AND COPIES E-MAILED.(rt) (Entered: 03/30/2021) |
| 03/31/2021 | 31 | E-Mail Statement, filed by PRO SE DEFT ALVIN C HARPER. (kw, ) (Main Document 31 replaced on 4/1/2021) (afm, ). (Entered: 03/31/2021) |
| 03/31/2021 | 32 | E-Mail Statement, filed by PRO SE DEFT ALVIN C HARPER. (kw, ) (Entered: 03/31/2021) |
| 04/01/2021 | 33 | ORDER THAT DOCUMENT NUMBER 31 IS SEALED AND IMPOUNDED PENDING FURTHER ORDER OF THE COURT, ETC. SIGNED BY HONORABLE PAUL S. DIAMOND ON 4/1/21. 4/1/21 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 04/01/2021) |
| 04/01/2021 | 34 | ORDER, MY FEBRUARY 24, 2021 ORDER (DOC. NO. 17 ) IS AMENDED AS FOLLOWS: 1. BALANCED BRIDGE FUNDING LLC'S EMERGENCY APPLICATION TO CONFIRM ARBITRATION AWARD (DOC. NO. 1 ) IS GRANTED AND THE AWARD IS CONFIRMED. RESPONDENT ALVIN C. HARPER IS DIRECTED TO COMPLY WITH THE INTERIM AWARD OF EMERGENCY RELIEF WITHIN TWO BUSINESS DAYS OR RISK SANCTIONS UPON FURTHER APPLICATION TO THIS COURT. 2. BALANCED BRIDGE FUNDING LLC'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION TO FREEZE ACCOUNTS OF ALVIN C. HARPER (DOC. NO. 5 ) IS GRANTED. 3. UNLESS AND UNTIL HARPER COMPLIES WITH THE EMERGENCY ARBITRATOR'S AWARD OF EMERGENCY INTERIM RELIEF BY CAUSING THE SUM OF $491,623.20 TO BE DEPOSITED INTO A TRUST ACCOUNT MAINTAINED BY FOX ROTHSCHILD LLP OR SUBMITS ADEQUATE PROOF OF HIS INABILITY TO COMPLY WITH THAT DIRECTIVE, ANY BANK, FINANCIAL INSTITUTION, BROKERAGE INSTITUTION, OR OTHER PERSON OR ENTITY HOLDING ANY FUNDS, SECURITIES, OR OTHER ASSETS IN THE NAME OF, FOR THE BENEFIT OF, OR UNDER THE DIRECT OR INDIRECT CONTROL OF ALVIN C. HARPER MUST PROHIBIT THE WITHDRAWAL, REMOVAL, TRANSFER, OR OTHER DISPOSAL OF THOSE FUNDS, SECURITIES, OR ASSETS UNTIL FURTHER NOTICE OF THIS COURT. 4. NAVY FEDERAL |

| | | |
|---|---|---|
| | | CREDIT UNION IS DIRECTED TO PROHIBIT THE WITHDRAWAL, REMOVAL, TRANSFER OR OTHER DISPOSAL OF FUNDS, SECURITIES, OR OTHER ASSETS IN THE NAME OF, OR THE BENEFIT OF, OR UNDER THE DIRECT OR INDIRECT CONTROL OF ALVIN C. HARPER (D.O.B. JULY 6, 1967, SSN XXX-XX-9996), INCLUDING BUT NOT LIMITED TO THE FOLLOWING ACCOUNTS: EVERYDAY CHECKING ENDING -7403, FLAGSHIP CHECKING ENDING -7675, AND -2593, AND MEMBERSHIP SAVINGS ENDING -8818. 5. WELLS FARGO BANK, N.A. IS DIRECTED TO PROHIBIT THE WITHDRAWAL, REMOVAL, TRANSFER, OR OTHER DISPOSAL OF FUNDS, SECURITIES, OR OTHER ASSETS IN THE NAME OF, OR THE BENEFIT OF, OR UNDER THE DIRECT OR INDIRECT CONTROL OF ALVIN C. HARPER (D.O.B. JULY 6, 1967, SSN XXX-XX-9996). 6. BALANCED BRIDGE IS DIRECTED TO SERVE A COPY OF THIS ORDER UPON HARPER FORTHWITH.SIGNED BY HONORABLE PAUL S. DIAMOND ON 4/1/2021. 4/1/2021 ENTERED AND COPIES E-MAILED.(rt) (Entered: 04/01/2021) |
| 04/05/2021 | 35 | AFFIDAVIT re 34 Order,,,,,,,, *served upon Alvin Harper* by BALANCED BRIDGE FUNDING, LLC. (BUCKLEY, PETER) (Entered: 04/05/2021) |
| 04/05/2021 | 36 | EMAIL Response by ALVIN C HARPER TO JUDGE DIAMOND 4/1/21 ORDER. (JL ) (Entered: 04/05/2021) |
| 04/12/2021 | 37 | SUGGESTION OF BANKRUPTCY by ALVIN C HARPER under Chapter Number 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of Florida filed under case number 21-13418, Certificate of Service. (kw, ) (Entered: 04/12/2021) |
| 04/12/2021 | 38 | ORDER, UPON CONSIDERATION OF THE SUGGESTION OF BANKRUPTCY (DOC. NO. 37 ), IT IS HEREBY ORDERED THAT THE ABOVE-CAPTIONED MATTER SHALL BE PLACED IN SUSPENSE, AND MARKED AS CLOSED FOR STATISTICAL PURPOSES, PENDING THE OUTCOME OF BANKRUPTCY PROCEEDINGS RELATED TO DEFENDANT IN RE: ALVIN CRAIG HARPER, NO. 21-13418 (BANKR. S.D. FLA). IT IS FURTHER ORDERED THAT THE HEARING SCHEDULED FOR APRIL 13, 2021 IS CANCELLED.SIGNED BY HONORABLE PAUL S. DIAMOND ON 4/12/2021. 4/12/2021 ENTERED AND COPIES E-MAILED. (rt) (Entered: 04/12/2021) |
| 05/03/2021 | 39 | MOTION to Lift Freeze Order re 34 Order,,,,,,,, filed by BALANCED BRIDGE FUNDING, LLC.Certificate of Service. (Attachments: # 1 Exhibit A - Agreed Order) (BUCKLEY, PETER) (Entered: 05/03/2021) |
| 05/03/2021 | 40 | AGREED ORDER THAT THE FREEZE PROVIDED FOR BY THE ORDER IS IMMEDIATELY LIFTED FOR THE SOLE PURPOSE OF ALLOWING DEFT TO WITHDRAW THE FUNDS FROM WELLS FARGO BANK & THE NAVY FEDERAL CREDIT UNION, ETC. BALANCED BRIDGE FUNDING IS DIRECTED TO SERVE A COPY OF THIS ORDER FORTHWITH UPON THE DEFT, WELLS FARGO BANK, THE NAVY FEDERAL CREDIT UNITON, & ANY OTHER BANK, FINANCIAL, OR BROKERAGE INSTITUTION SERVED WITH A COPY OF THE COURT'S PRIOR ORDER. SIGNED BY HONORABLE PAUL S. DIAMOND ON 5/3/21.5/3/21 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 05/03/2021) |
| 05/03/2021 | 41 | ORDER THAT PLFF'S EMERGENCY MOTION FOR CONTEMPT (DOC. NO. 18) IS DENIED WITHOUT PREJUDICE. SIGNED BY HONORABLE PAUL S. DIAMOND ON 5/3/21.5/3/21 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 05/03/2021) |

| PACER Service Center |
|---|
| **Transaction Receipt** |

| 06/25/2021 12:51:11 | | | |
|---|---|---|---|
| **PACER Login:** | fr000009:2550901:0 | **Client Code:** | 027275.00001.search |
| **Description:** | Docket Report | **Search Criteria:** | 2:20-cv-06525-PD |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

# EXHIBIT "H"

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

ACCO,TRO,(JCx),DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:21-cv-00663-SB-JC

| | |
|---|---|
| Balanced Bridge Funding, LLC v. Alvin C. Harper et al | Date Filed: 01/25/2021 |
| Assigned to: Judge Stanley Blumenfeld, Jr | Jury Demand: None |
| Referred to: Magistrate Judge Jacqueline Chooljian | Nature of Suit: 896 Other Statutes: |
| Cause: 28:1332 Diversity-Injunctive & Declaratory Relief | Arbitration |
| | Jurisdiction: Diversity |

**Plaintiff**

**Balanced Bridge Funding, LLC**
*formerly known as*
Thrivest Specialty Funding, LLC

represented by   **Mhare Ohan Mouradian**
Fox Rothschild LLP
10250 Constellation Boulevard Suite 900
Los Angeles, CA 90067
310-598-4150
Fax: 310-556-9828
Email: mmouradian@foxrothschild.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey H. Grant**
Fox Rothschild LLP
10250 Constellation Boulevard Suite 900
Los Angeles, CA 90067
310-598-4150
Fax: 310-556-9828
Email: jgrant@foxrothschild.com
*ATTORNEY TO BE NOTICED*

**Peter C. Buckley , Jr.**
Fox Rothschild LLP
2000 Market Street 20th Floor
Philadelphia, PA 19103
215-299-2854
Fax: 215-299-2150
Email: pbuckley@foxrothschild.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Alvin C. Harper**
*TERMINATED: 01/28/2021*

**Defendant**

Alexis C. Harper                              represented by  **Alvin Marcus Hall**
                                                             A. Marcus Hall and Associates
                                                             10586 W. Pico Blvd.
                                                             Suite 141
                                                             Los Angeles, CA 90064
                                                             310-242-8411
                                                             Email: alvinhall@amarcushall.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/25/2021 | 1 | COMPLAINT with filing fee previously paid (402.00 paid on 01/25/2021, receipt number ACACDC-30226244), filed by Plaintiff BALANCED BRIDGE FUNDING, LLC. (Attorney Mhare Ohan Mouradian added to party BALANCED BRIDGE FUNDING, LLC (pty:pla))(Mouradian, Mhare) Modified on 1/25/2021 (ghap). (Entered: 01/25/2021) |
| 01/25/2021 | 2 | CIVIL COVER SHEET filed by Plaintiff BALANCED BRIDGE FUNDING, LLC. (Mouradian, Mhare) (Entered: 01/25/2021) |
| 01/25/2021 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff BALANCED BRIDGE FUNDING, LLC. (Mouradian, Mhare) (Entered: 01/25/2021) |
| 01/25/2021 | 4 | *NOTICE OF* CERTIFICATE of Interested Parties filed by Plaintiff BALANCED BRIDGE FUNDING, LLC, (Mouradian, Mhare) (Entered: 01/25/2021) |
| 01/25/2021 | 5 | Initial DISCLOSURE of Rule 7.1 Corporate Disclosure re Complaint (Attorney Civil Case Opening), 1 filed by Plaintiff BALANCED BRIDGE FUNDING, LLC (Mouradian, Mhare) (Entered: 01/25/2021) |
| 01/25/2021 | 6 | NOTICE OF DEFICIENCIES in Attorney Case Opening RE: Complaint (Attorney Civil Case Opening), 1 . The following error(s) was found: A case-initiating document was submitted without payment of the full filing fee. Within two business days of this notice, counsel must pay the filing fee or file a request to proceed in forma pauperis;otherwise, the docket for this case number will be closed and no further filings will be permitted under this case number. The filing fee may be paid online by docketing the event Pay Filing Fee. (ghap) (Entered: 01/25/2021) |
| 01/25/2021 | 7 | NOTICE OF ASSIGNMENT to District Judge Stanley Blumenfeld, Jr and Magistrate Judge Jacqueline Chooljian. (ghap) (Entered: 01/25/2021) |
| 01/25/2021 | 8 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (ghap) (Entered: 01/25/2021) |
| 01/25/2021 | 9 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening), 1 as to Defendant Alexis C. Harper, Alvin C. Harper. (ghap) (Entered: 01/25/2021) |
| 01/25/2021 | 10 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Peter C Buckley on behalf on Plaintiff. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as |

| | | counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (ghap) (Entered: 01/25/2021) |
|---|---|---|
| 01/25/2021 | 11 | EX PARTE APPLICATION for Temporary Restraining Order as to Preliminary Injunction filed by Plaintiff Balanced Bridge Funding, LLC. (Attachments: # 1 Declaration of Peter Buckley, # 2 Proposed Order) (Mouradian, Mhare) (Entered: 01/25/2021) |
| 01/26/2021 | 12 | DOCUMENT STRICKEN ON 1/28/21. RESPONSE filed by Pro Hac Vice attorney Mhare Ohan Mouradian on behalf of Plaintiff Balanced Bridge Funding, LLC. (Attachments: # 1 Certificates of Good Standing, # 2 Proposed Order)(Mouradian, Mhare) Modified on 1/28/2021 (bm). (Entered: 01/26/2021) |
| 01/26/2021 | 13 | SCHEDULING NOTICE by Judge Stanley Blumenfeld, Jr. The Court has reviewed Plaintiffs Ex Parte Motion for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction (Dkt. No. 11). Plaintiff has two pending emergency filings (an application to confirm interim award and a motion to freeze accounts) in a related case, Balanced Bridge Funding v. Harper, No. 2:20-cv-06525 (E.D. Pa.). The Court is hesitant to act when there is a first-filed action with a pending request for duplicative relief. Plaintiff has not addressed the propriety of seeking seemingly duplicative relief in this Court (even if there are accounts in California). Plaintiff also neglects to address the jurisdictional or other legal significance of the fact that the agreement underlying the instant dispute contains a forum-selection clause (Dkt. No. 1, Ex. A at 10-11), which permits the parties to enforce any award rendered pursuant to the arbitration provision of this section by moving to compel the award in the appropriate Pennsylvania court. Before further considering the instant application, the Court requires a more detailed explanation of (1) the status of the Pennsylvania case (including the status of the emergency applications), (2) why the first-to-file rule does not apply here, and (3) whether Plaintiff is precluded from seeking relief in Pennsylvania and the propriety of this Courts proceeding in the face of the forum-selection clause. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (vcr) TEXT ONLY ENTRY (Entered: 01/26/2021) |
| 01/26/2021 | 14 | REPLY in support EX PARTE APPLICATION for Temporary Restraining Order as to Preliminary Injunction 11 and Scheduling Notice (Docket 13) filed by Plaintiff Balanced Bridge Funding, LLC. (Attachments: # 1 Letter Re Philadelphia District Court Matter) (Mouradian, Mhare) (Entered: 01/26/2021) |
| 01/26/2021 | 15 | DOCUMENT STRICKEN ON 1/28/21. EX PARTE APPLICATION of Non-Resident Attorney Peter C. Buckley to Appear Pro Hac Vice on behalf of Plaintiff Balanced Bridge Funding, LLC (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-30251995) filed by Plaintiff Balanced Bridge Funding, LLC. (Attachments: # 1 Certificates of Good Standing, # 2 Proposed Order) (Mouradian, Mhare) Modified on 1/28/2021 (bm). (Entered: 01/26/2021) |
| 01/27/2021 | 16 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Response to Notice of Fee Due on Pro Hac Vice Application 12 . The following error(s) was/were found: Incorrect event selected. Correct event to be used is: Application for Pro Hac Vice. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (ak) (Entered: 01/27/2021) |
| 01/27/2021 | 17 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: EX PARTE APPLICATION of Non-Resident Attorney Peter C. Buckley to Appear Pro Hac Vice on behalf of Plaintiff Balanced Bridge Funding, LLC (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-30251995) 15 . The following error(s) was/were found: Incorrect event selected. Correct event is Appear Pro Hac Vice (G-64) Local Rule 83-2.1.3.3(d) Attached Certificate of Good Standing not issued within 30 days prior to filing of the |

| | | |
|---|---|---|
| | | application. Other error(s) with document(s): A declaration is required regarding unavailability to provide GSC due to COVID-19. See Court's website on Coronavirus (COVID-19) Guidance. (Thrasher, Lupe) (Entered: 01/27/2021) |
| 01/27/2021 | 18 | MINUTE ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER 11 by Judge Stanley Blumenfeld, Jr. See document for specifics. Court Reporter: N/A. (gk) (Entered: 01/27/2021) |
| 01/28/2021 | 19 | FIRST AMENDED COMPLAINT against DEFENDANT Alexis C. Harper amending Complaint (Attorney Civil Case Opening), 1 , filed by Plaintiff Balanced Bridge Funding, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Mouradian, Mhare) (Entered: 01/28/2021) |
| 01/28/2021 | 20 | Second EX PARTE APPLICATION for Temporary Restraining Order as to Preliminary Injunction filed by Plaintiff Balanced Bridge Funding, LLC. (Attachments: # 1 Memorandum of Points & Authorities ISO, # 2 Declaration of Peter C. Buckley, # 3 Proposed Order) (Mouradian, Mhare) (Entered: 01/28/2021) |
| 01/28/2021 | 21 | INITIAL STANDING ORDER upon filing of the complaint by Judge Stanley Blumenfeld, Jr. (vcr) (Entered: 01/28/2021) |
| 01/28/2021 | 22 | MINUTE ORDER [In Chambers] by Judge Stanley Blumenfeld, Jr.: The Court strikes the Response filed by Pro Hac Vice attorney Mhare Ohan Mooradian, Dkt. No. 12, and the Ex Parte Application of Non-Resident Attorney Peter C. Buckley to Appear Pro Hae Vice, Dkt. No. 15, without prejudice to refiling upon correction of the deficiencies, see Dkt. Nos. 16 and 17, respectively. (bm) Modified on 1/28/2021 (bm). (Entered: 01/28/2021) |
| 01/29/2021 | 23 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Reply (Motion related), 14 . The following error(s) was/were found: Attorneys or parties should refrain from writing letters to the judge, Local Rule 83-2.5. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (gk) (Entered: 01/29/2021) |
| 01/29/2021 | 24 | APPLICATION of Non-Resident Attorney Peter C. Buckley to Appear Pro Hac Vice on behalf of Plaintiff Balanced Bridge Funding, LLC (Pro Hac Vice Fee - $500 Previously Paid on 1/26/2021, Receipt No. 30251995) filed by Plaintiff Balanced Bridge Funding, LLC. (Attachments: # 1 Declaration of Peter Buckley Re Certificate of Good Standing, # 2 Exhibit - Certificate of Good Standing - Pennsylvania, # 3 Proposed Order Re Peter Buckley PHV Application) (Mouradian, Mhare) (Entered: 01/29/2021) |
| 02/01/2021 | 25 | MINUTES - IN CHAMBERS by Judge Stanley Blumenfeld, Jr.: In accordance with the Notice to Filer of Deficiencies in Electronically Filed Documents 23 , regarding: Reply in Support Ex Parte Application for Temporary Restraining Order as to Preliminary Injunction and Scheduling Notice (Docket 13) filed by Plaintiff Balanced Bridge Funding, LLC 14 , the document is accepted as filed. Court Reporter: Not Present. (gk) (Entered: 02/01/2021) |
| 02/02/2021 | 26 | MINUTE ORDER STAYING RULING ON EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER by Judge Stanley Blumenfeld, Jr.: The Court denied the application for a temporary restraining order chiefly because Plaintiff had earlier applied to the Eastern District of Pennsylvania seeking the same relief, Balanced Bridge Funding, LLC v. Harper, Case No. 2:20-cv-06525-AB (E.D. Pa.) (PA Action). As previously discussed, due to the similarity between the two actions and the significant risk of inconsistent rulings and duplicative work, the first-to-file rule bars Plaintiff from seeking relief in this Court until a decision is rendered in the PA Action. The removal of |

| | | |
|---|---|---|
| | | Alvin C. Harper (Harper) as a defendant in this case does not cure the issues identified in the Court's order on Plaintiff's first application for a TRO 18 ; the relief requested remains functionally identical. The Court STAYS any ruling on provisional relief pending the outcome in the PA Action. Court Reporter: N/A. (gk) (Entered: 02/03/2021) |
| 02/02/2021 | 27 | ORDER by Judge Stanley Blumenfeld, Jr. Granting Application of Non-Resident Attorney Peter C. Buckley to Appear Pro Hac Vice on behalf of Plaintiff Balanced Bridge Funding, LLC f/k/a Thrivest Specialty Funding, LLC, designating Mhare Mouradian as local counsel 24 . (gk) (Entered: 02/03/2021) |
| 02/10/2021 | 28 | EX PARTE APPLICATION for Order for ALTERNATIVE SERVICE OF DEFENDANT ALEXIS C. HARPER filed by Plaintiff Balanced Bridge Funding, LLC. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Proposed Order) (Mouradian, Mhare) (Entered: 02/10/2021) |
| 02/26/2021 | 29 | ORDER GRANTING EX PARTE MOTION FOR ALTERNATIVE SERVICE OF DEFENDANT ALEXIS C. HARPER by Judge Stanley Blumenfeld, Jr.: It is ORDERED that Plaintiff's x Parte Motion for Alternative Service of Defendant Alexis C. Harper 28 is GRANTED. Balanced Bridge may effectuate service on Defendant by posting the papers on the door to her property located at 616 St. Paul Ave., Apt. 420, Los Angeles, CA 90017; Balanced Bridge shall also post a copy of this Order. Balanced Bridge may effectuate service of all subsequent papers in this action in accordance with Rule 5 by mailing copies to Defendant at 616 St. Paul Ave., Apt. 420, Los Angeles, CA 90017. (gk) (Entered: 03/01/2021) |
| 03/03/2021 | 30 | PROOF OF SERVICE Executed by Plaintiff Balanced Bridge Funding, LLC, upon Defendant Alexis C. Harper served on 3/2/2021, answer due 3/23/2021. Service of the Summons and Complaint were executed upon Alexis C. Harper, Defendant in compliance with Federal Rules of Civil Procedure by personal service.Original Summons returned. *Per Rule 5(b)(2)(B)(ii)* (Attachments: # 1 Exhibit A Order Granting Alternative Service (Dkt 29), # 2 Exhibit B Summons Issued (Dkt 9))(Mouradian, Mhare) (Entered: 03/03/2021) |
| 03/22/2021 | 31 | ANSWER to Complaint (Attorney Civil Case Opening), 1 filed by Defendant Alexis C. Harper.(Attorney Alvin Marcus Hall added to party Alexis C. Harper(pty:dft))(Hall, Alvin) (Entered: 03/22/2021) |
| 03/23/2021 | 32 | ORDER SETTING SCHEDULING CONFERENCE by Judge Stanley Blumenfeld, Jr. T Rule 26 Meeting Report due by 4/16/2021. Scheduling Conference set for 4/23/2021 at 08:30 AM before Judge Stanley Blumenfeld Jr.. (vcr) (Entered: 03/23/2021) |
| 03/23/2021 | 33 | ORDER SETTING SCHEDULING CONFERENCE by Judge Stanley Blumenfeld, Jr. The Court sets a Scheduling Conference for 4/23/2021 at 08:30 AM before Judge Stanley Blumenfeld Jr.. The parties shall file a joint Rule 26 Meeting Report due by 4/16/2021. (vcr) (Entered: 03/23/2021) |
| 03/25/2021 | 34 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Answer to Complaint (Attorney Civil Case Opening) 31 . The following error(s) was/were found: Local Rule 7.1-1 No Notice of Interested Parties and/or no copies. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (gk) (Entered: 03/25/2021) |
| 04/05/2021 | 35 | ANSWER to Amended Complaint/Petition 19 *for Injunctive Relief* filed by Defendant Alexis C. Harper.(Hall, Alvin) (Entered: 04/05/2021) |
| 04/05/2021 | 36 | Certification and Notice of Interested Parties of Interested Parties filed by Defendant |

| | | Alexis C. Harper, identifying None. (Hall, Alvin) (Entered: 04/05/2021) |
|---|---|---|
| 04/15/2021 | 38 | NOTICE OF DOCUMENT DISCREPANCIES AND ORDER by Judge Stanley Blumenfeld, Jr., ORDERING Suggestion of Bankruptcy submitted by Defendant Alvin C. Harper received on 4/12/2021 is not to be filed but instead rejected. Denial based on: Suggestion of Bankruptcy. (gk) (Entered: 04/16/2021) |
| 04/16/2021 | 37 | JOINT REPORT Rule 26(f) Discovery Plan ; estimated length of trial 1-3 days, filed by Plaintiff Balanced Bridge Funding, LLC.. (Mouradian, Mhare) (Entered: 04/16/2021) |
| 04/19/2021 | 39 | SCHEDULING NOTICE by Judge Stanley Blumenfeld, Jr. The Court VACATES the Scheduling Conference set for 4/23/21. No appearance is required. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (vcr) TEXT ONLY ENTRY (Entered: 04/19/2021) |
| 04/20/2021 | 40 | MINUTE ORDER IN CHAMBERS by Judge Stanley Blumenfeld, Jr. The Court has reviewed the Joint Rule 26(f) and sets the pretrial and trial dates noted in the table below based on an evaluation of the complexity of the case. (Amended Pleadings due by 5/21/2021. Discovery cut-off 6/11/2021. Motion hearing deadline 6/25/2021. Status Report due by 6/29/2021. Last date to conduct settlement conference is 6/25/2021. Bench Trial set for 7/27/2021 at 08:30 AM before Judge Stanley Blumenfeld Jr.. Pretrial Conference set for 7/9/2021 at 11:00 AM before Judge Stanley Blumenfeld Jr. Post-Settlement Status Conference set for 7/2/2021 at 08:30 AM before Judge Stanley Blumenfeld Jr.) (mrgo) (Entered: 04/22/2021) |
| 04/23/2021 | 41 | PRETRIAL AND TRIAL ORDER by Judge Stanley Blumenfeld, Jr. (vcr) (Entered: 04/23/2021) |
| 05/20/2021 | 42 | [DOCUMENT STRICKEN PER CIVIL MINUTES OF 5/25/2021, SEE DOCKET NO. 43] Joint STIPULATION to Continue Trial Deadline and Other Related Deadlines from 07/27/2021 to 01/24/2022 filed by Plaintiff Balanced Bridge Funding, LLC. (Attachments: # 1 Proposed Order to Continue Trial Date and Other Related Deadlines)(Mouradian, Mhare) Modified on 5/25/2021 (gk). (Entered: 05/20/2021) |
| 05/25/2021 | 43 | MINUTES - IN CHAMBERS by Judge Stanley Blumenfeld, Jr.: The Court strikes the Joint STIPULATION to Continue Trial Deadline and Other Related Deadlines from 7/27/2021 to 1/24/2022 filed by Plaintiff Balanced Bridge Funding, LLC 42 , without prejudice to refiling in compliance with the Court's Standing Order Rule 5 b. See document for further details. Court Reporter: Not Present. (gk) (Entered: 05/25/2021) |
| 05/25/2021 | 44 | Joint STIPULATION to Continue Trial Date and Other Related Deadlines from 7/27/2021 to 1/24/2022 filed by Plaintiff Balanced Bridge Funding, LLC. (Attachments: # 1 Proposed Order to Continue Trial Date and Other Related Deadlines)(Mouradian, Mhare) (Entered: 05/25/2021) |
| 05/26/2021 | 45 | ORDER CONTINUING TRIAL DATE AND OTHER RELATED DEADLINES by Judge Stanley Blumenfeld, Jr.: Upon Stipulation 44 , the Court HEREBY ORDERS that the trial date and other related deadlines are continued. Bench Trial set for 10/25/2021 08:30 AM before Judge Stanley Blumenfeld Jr. Pretrial Conference set for 10/8/2021 11:00 AM before Judge Stanley Blumenfeld Jr. Motion to Amend Pleadings/Add Parties 8/13/2021. Discovery cut-off 9/10/2021. Discovery Motion Hearing Deadline 9/10/2021. Non-Discovery Motion Hearing Deadline 9/24/2021. Last date to conduct settlement conference is 9/24/2021. Post-Settlement Status Conference set for 11/1/2021 08:30 AM before Judge Stanley Blumenfeld Jr. Post-Settlement Status Report due by 9/28/2021. Trial Filings (First Set) due by 9/10/2021. Trial Filings (Second Set) due by 9/24/2021. (gk) (Entered: 05/26/2021) |
| 06/16/2021 | 46 | TEXT ONLY ENTRY: The parties are advised that the Court has updated its standing |

orders effective June 15, 2021 (i.e., Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr., Mandatory Scheduling Conference (MSC) Order, Order Re: Motions for Summary Judgment, Pretrial and Trial Order). These orders apply to all pending cases, except as follows: (1) the updated Order Re: Motions for Summary Judgment (MSJ) does not apply to any MSJ filed on or before July 27, 2021; and (2) the updated Pretrial and Trial Order does not apply to any case with a pretrial conference set on or before July 22, 2021. The parties are directed to read and comply with all these standing orders except as noted in the prior sentence. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (rrey) TEXT ONLY ENTRY (Entered: 06/16/2021)

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/25/2021 09:54:46 | | | |
| PACER Login: | fr000009 | Client Code: | 027275.00001.search |
| Description: | Docket Report | Search Criteria: | 2:21-cv-00663-SB-JC End date: 6/25/2021 |
| Billable Pages: | 7 | Cost: | 0.70 |

# EXHIBIT "I"

## AMERICAN ARBITRATION ASSOCIATION
### Commercial Arbitration Tribunal

BALANCED BRIDGE FUNDING, LLC f/k/a    :
THRIVEST SPECIALTY FUNDING, LLC,    :
Claimant,    :
                                  :    CASE NO. 01-20-0019-2914
      vs.    :
                                    :
ALVIN C. HARPER, Respondent.    :

### FINAL AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated December 15, 2016, and having been duly sworn, and having duly heard the proofs and allegations of the Claimant, represented by Peter C. Buckley, Esq. of Fox Rothschild LLP, and the Respondent, having failed to appear after due notice by mail in accordance with the Rules of the American Arbitration Association (AAA), hereby, AWARD, as follows:

1. Respondent Alvin C. Harper shall pay to Claimant Balanced Bridge Funding, LLC f/k/a Thrivest Specialty Funding, LLC, the sum of $543,412.03 on account of the following:

   a. $491,623.20 on account of Respondent's breach of the agreement; and

   b. $51,788.83 on account of attorneys' fees and costs incurred to date by Claimant to enforce the agreement.

2. The Interim Award of Emergency Relief dated December 29, 2020, is made part of this Award and shall remain in full force and effect.

The administrative fees of the American Arbitration Association totaling $8,250.00 and the compensation of the arbitrators totaling $5,965.00 shall be borne by Respondent. Therefore, Respondent shall reimburse Claimant the sum of $14,215.00 representing that portion of said fees in excess of the apportioned costs previously incurred and paid by Claimant.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

March 16, 2021            *Dennis R. Suplee*
                                Dennis R. Suplee

I, Dennis R. Suplee, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

March 16, 2021            *Dennis R. Suplee*
                                Dennis R. Suplee

3

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## RESPONSE OF CLASS COUNSEL TO THRIVEST'S MOTION TO AMEND RULES GOVERNING PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS

Thrivest Specialty Funding LLC (n/k/a Balanced Bridge Funding LLC) ("Thrivest") seeks amendment to the Rules Governing Payment of Claims Involving Third-Party Funders ("Rules") approved by the Special Masters on March 19, 2020 (ECF No. 11422) ("Motion"). These Rules were the "streamlined and concise" version of the earlier Rules Governing Assignment of Claims called for by the Court (ECF No. 10858) and comport with all relevant judicial decisions to date, including the decisions of this Court and the Third Circuit.

For the reasons that follow, the Court should deny the Motion.  The amendments requested by Thrivest would walk back protections afforded to Retired NFL Football Players ("Players") from prohibited assignments, *i.e.,* requiring the payment of any affected Monetary Award directly to them when a third-party funder has staked a claim to part of a Player's Award.

## BACKGROUND

Acting as the fiduciary to the Settlement Class, many of whom are by definition cognitively impaired Players, the Court entered its December 8, 2017 Order ("Assignment Order") (ECF No. 9517) to protect the Players from usurious financing agreements that ran afoul of the Settlement Agreement's unambiguous prohibitions of the assignment of claims. *See* Settlement Agreement Section 30.1.[1]   In the process that the Claims Administrator established to implement the Assignment Order, Settlement Class Members provided any funding agreements they entered into with third-party funders to the Claims Administrator, who determined, in consultation with the Special Masters, whether the funding agreement was a prohibited assignment.  *See* Declaration of Christopher A. Seeger, dated July 19, 2021 ("Seeger Decl."), ¶3.  In the case of a prohibited

---

[1]   Section 30.1 of the Settlement Agreement provides:

No Assignment of Claims. Neither the Settlement Class nor any Class or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint. Any such assignment, or attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action.

ECF No. 6481-1 at 96.

assignment, the Claims Administrator would issue a notice to the Player, advising him of the determination and his rights.[2] *See id.*

A striking fact arising from the Claims Administrator's review of funding agreements (there were many, most of which were prohibited assignments) is that these Players were typically represented by individual counsel who either had failed in their basic diligence to review the Settlement Agreement (including the prohibition on assignments under Section 30.1) for their client or were themselves complicit in the purchase of assignments of their clients' claims.[3] *See* Seeger Decl., ¶4. In either event, such counsel would not seek to void prohibited funding agreement if the funder pursued collection efforts in arbitration.

Accordingly, and subsequent to the Assignment Order, the Court directed "that the Claims Administrator pay directly to the Settlement Class Member any and all Monetary Awards in cases where there has been found an improper assignment of any right or claim pursuant to Section 30.1 of the Settlement Agreement." ECF No. 9749. Of course, this directive, which was incorporated in the then-titled Rules Governing Assignment of Claims,[4] assumed that the nature of the funding agreements would be made within the Settlement Program (as contemplated by the Assignment Order) and payment made directly to the Settlement Class Member only when a funding agreement was determined to be a prohibited assignment (and the Resolution Protocol was not agreed to).

---

[2] Later, a Resolution Protocol was established, whereby willing funders and Settlement Class Members could resolve any claims for payment of disputed funding agreements, with an appropriate payment being made directly to the funder from the Monetary Award. *See id.*

[3] At least one attorney representing Players undertook a scheme to push their clients into funding agreements (which were later determined to be prohibited assignments) and then use the promised proceeds from these funding agreements to establish a retirement investment fund for some of its other clients – which scheme has since collapsed along with the life savings of many Players. *See, e.g.,* ECF No. 9750, 11340, 11344.

[4] The former Rules Governing Assignment of Claims were amended on May 13, 2019, after the Third Circuit's April 26, 2019 decision regarding the Assignments Order (*infra*).

Thrivest, among other third-party lenders whose funding agreements were determined to have been assignments, appealed the Assignment Order (and related decisions), which the Third Circuit largely upheld on April 26, 2019. *In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96, 105-10 (3d Cir. 2019). The Third Circuit "commend[ed] [the Court for ... very able handling throughout this extraordinarily complicated class action and settlement, and ... appreciate[ed] [its] steadfast commitment to protecting class members' rights." *Id.* at 100. The Court of Appeals affirmed the Court's "authority to void prohibited assignments," but found that the Court had gone "too far in voiding the cash advance agreements in their entirety." *Id.* The Third Circuit "in no way suggest[ed] that an[y] individual agreement is enforceable," *id.* at 113, and "presume[d] that the full array of standard contract defenses will also apply in any subsequent litigation regarding these agreements. ... [S]ome of the class members are cognitively impaired, and it is possible that some of them lacked the capacity to contract at the time they entered into the agreements," *id.* at 112. The Third Circuit expressly reserved finding that any particular funding instrument was an assignment, and directed that determination of enforceability be made "outside of the NFL claims administration context." *Id.*

Subsequently, Thrivest petitioned the Third Circuit for mandamus relief, seeking to have this Court directed to amend the Rules that were still titled Rules Governing Assignments. Thrivest contended that the Rules were at variance with the Third Circuit's decision, and were causing Thrivest difficulty in its collection efforts. Petition at 2-4, 11, *In re Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. filed Sept. 9, 2019) (copy filed by Thrivest in this Court at ECF No. 10843-1). In particular, Thrivest challenged the Claims Administrator's continued review of funding agreements entered into by Players, along with the subsequent notice that the Claims

Administrator provided to these Players about the possible nature of these funding agreements and their rights under Section 30.1 prohibiting assignments. *Id.* at 5-6.

"In light of the concern raised in [the] mandamus petition," the Court issued a Notice "to clarify the legal status of third-party funder agreements." ECF No. 10858 at 1. The Court directed "the Claims Administrator to review its guidance and rules regarding third-party funder agreements and propose a streamlined and concise version that is more user-friendly." *Id.* at 3. Serving as Respondent on behalf of the Court, Class Counsel advised the Third Circuit of the Court's Notice and pointed out that the Rules were fully compliant with the Third Circuit's April 26, 2019 decision. In particular, Class Counsel explained that final determination of the enforceability of funding agreements, including under Section 30.1 of the Settlement Agreement, was left to be made outside of the Settlement Program, and by arbitrators hearing any collection action by third-party funders, not the Claims Administrator or the Court.[5]  *See* Seeger Decl., Exhibit A at 6-7; *see also id.*, Exhibit B at 2-3.[6]  On October 31, 2019, the Third Circuit denied Thrivest's mandamus petition without prejudice.

Under the new "streamlined and concise" Rules which issued on March 19, 2020 pursuant to the Court's Notice, absolutely no review is made of funding agreements by the Claims Administrator, and Players no longer receive the resulting notice of the rights they might enjoy under Section 30.1 of the Settlement Agreement. *See* Seeger Decl., ¶ 5.  Players, however, are still offered some remaining protections under these Rules.  Because there is no initial determination

---

[5]  Class Counsel also pointed out that the Court has been mindful of and actively protected the rights of funders when they are successful in arbitration to enforce a funding agreement, and "has not sanctioned [any] class members' resistance to the decisions of arbitrators." Seeger Decl. Exhibit A at 9.

[6]  Copies of the responses to Thrivest's mandamus petition are annexed hereto for the Court's convenience in the Addendum.

made as to the nature of any particular funding agreement, whenever a Player declares a funding agreement of any kind (and the Resolution Protocol is not pursued), payment is made directly to the Player. *See id.*, ¶ 6. The Rules make clear, however, in two places boldly and with capital letters, that such payment in no way reflects the discharge or satisfaction of any obligations a Player may have under their funding agreement. *See id.; see also* Rule 1 and Title III preamble.

Evidently satisfied with the resulting Rules that were promulgated (with approval of the Special Masters) over a year ago, Thrivest mounted no further challenge to the third-party funding in the Settlement Program, including the Rules.  Now, Thrivest has encountered difficulty collecting from two Players and seeks to upend the modest protections afforded to every Player who has entered into a funding agreement, and wants the Court to require payment to individual counsel rather than directly to the Player when there is a funding agreement, even if the advance may be a prohibited assignment.

## ARGUMENT

When any question has arisen in this Settlement Program about prohibited funding agreements, the Court's primary concern has been – and should remain – the welfare of the Players, inasmuch as those that have been issued Monetary Awards presumably have some form of severe cognitive impairment.  Thrivest has consistently sought to "deregulate" its business operations with Settlement Class Members and curtail the protections the Court has given Players from prohibited assignments.  The amendments to the Rules requested by Thrivest thwart the remaining protections provided the Players and would effectively leave them where they were before the Assignment Order – with little guidance and potentially at the mercy of the malfeasance or misfeasance of individual counsel.

But there is no basis in law (or Thrivest's agreements) for Thrivest's latest attack on the decisions of the Court and the Rules approved by the Special Masters regulating third-party funding agreements. Thrivest finds no aspect of the decision of the Third Circuit to support it, and cites no support in the general legal landscape, not even in its own funding agreements. Rather, left now to lobby the Court for further deregulation, Thrivest argues only that it has had difficulty collecting from two of the Players with whom it entered into funding agreements.  The Court, though, has supported those efforts, confirming arbitration awards or, where warranted, entering contempt orders. *E.g.*, *Thrivest Specialty Funding v. Wright*, No. 2:18-cv-04764 (E.D. Pa.  Jan. 2, 2020) (ECF No. 75) (Order confirming arbitrator's award, including attorneys' fees and expenses, and awarding post-judgment interest); *Thrivest Specialty Funding v. White*, No. 2:18-cv-01877 (E.D. Pa.  Oct.17, 2019) (ECF No. 44) (entering contempt order after defendant Player failed to comply with escrow order confirming arbitrator's interim award).

The Court is presumably aware of the challenges that Thrivest or other lenders may face from some recalcitrant Players.  Tellingly, Thrivest does not allege that the Court has hindered its efforts to pursue those very few Players who failed to honor their borrowing agreements.  At the same time, though, the Court is also aware that payment to a Player's individual counsel when there is a potentially prohibited assignment in play (along with substantial profits to be made by funders from usurious interest rates masked as assignments) may likely to lead to catastrophic financial consequences.

In the thicket of misrepresentations, predatory practices, usurious lending rates, and the exploitation of weakness that has marked the practices of some third-party lenders, allowing the Player directly to safeguard his Monetary Award when the funding agreement could be a prohibited assignment is necessary and, as it stands now, the last protection that Players have

within the Settlement Program's framework. The Court should not relax the Special Masters'

Rules simply because lenders may, on occasion, have to expend some effort to pursue repayment

from Player borrowers.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Dated:  July 19, 2021                                    Respectfully submitted,

                                                                     */s/ Christopher A. Seeger*
                                                                     Christopher A. Seeger
                                                                     SEEGER WEISS LLP
                                                                     55 Challenger Road, 6th Floor
                                                                     Ridgefield Park, NJ  07660
                                                                     Telephone:  (212) 584-0700
                                                                     cseeger@seegerweiss.com

                                                                     **CLASS COUNSEL**

8

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody**<br><br>Civ. Action No. 14-00029-AB |
| Kevin Turner and Shawn Wooden,<br>*on behalf of themselves and*<br>*others similarly situated*,<br><br>      Plaintiffs,<br><br>      v.<br><br>National Football League and<br>NFL Properties LLC,<br>successor-in-interest to<br>NFL Properties, Inc.,<br><br>      Defendants. |  |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS |  |

## DECLARATION OF CHRISTOPHER A. SEEGER IN RESPONSE TO THRIVEST'S MOTION TO AMEND RULES GOVERNING PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS

CHRISTOPHER A. SEEGER declares, pursuant to 28 U.S.C. § 1746, the following:

1. I am a founding member of the law firm of Seeger Weiss LLP and was appointed by the Court in 2012 as a member of the Plaintiffs' Executive Committee and thereafter to serve as Plaintiffs' Co-Lead Counsel (ECF Nos. 64, 72). I was the principal negotiator and architect of the Class Action Settlement dated June 25, 2014, between the Class Plaintiffs and Defendants National Football League and NFL Properties LLC (ECF No. 6073-2), which was preliminarily

approved on July 7, 2014 (ECF No. 6084, ¶ 3(b)), amended as of February 13, 2015 (ECF No. 6481-1), and finally approved by the Court on April 22, 2015 (ECF Nos. 6509-10). Upon these approvals, I was appointed to serve and later confirmed to serve as Co-Lead Class Counsel. ECF No. 6534 at 3 (¶ 6). On May 24, 2019, the Court appointed me as sole Class Counsel. ECF No. 10624 at 2.

2.      I make this Declaration in response to Thrivest's Motion to Amend Rules Governing Payment of Claims Involving Third-Party Funders (ECF No. 11422). The statements in this Declaration are based on my personal knowledge or my review of files and records maintained by my firm.

3.      Soon after the Court entered its December 8, 2017 Order ("Assignment Order") (ECF No. 9517) declaring any funding agreement that was an assignment was void *ab initio* under Section 30.1 of the Settlement Agreement, the Claims Administrator established a process to review funding agreements entered into by Settlement Class Members and determine, in consultation with the Special Masers, whether each funding agreement was a prohibited assignment. In the case of a prohibited assignment, the Claims Administrator would issue a notice to the Player, advising him of the determination and his rights. Later, a Resolution Protocol was established, whereby willing funders and Settlement Class Members could resolve any claims for payment of disputed funding agreements, with an appropriate payment being made directly to the funder from the Monetary Award. *See* https://www.nflconcussionsettlement.com/Docs/third_party_funding_resolution_protocol_rules.pdf (last visited July 16, 2021). These procedures were codified in the Rules Governing Assignments that were first promulgated, with approval of the Special Masters on February 22, 218, and were amended on May 13, 2019 after the Third Circuit's April 26, 2019 decision regarding the appeals taken by several third-party funders,

including Thrivest. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96 (3d Cir. 2019).

4.      A striking fact arising from the Claims Administrator's review of funding agreements – there were many such agreements, most of which were prohibited assignments of Monetary Awards – is that the affected Retired NFL Football Players ("Players") were typically represented by individual counsel who either had failed in their basic diligence to review the Settlement Agreement (including the prohibition on assignments under Section 30.1) for their client or were themselves complicit in the purchase of putative assignments of their clients' claims. In either event, such counsel did not seek to void a prohibited funding agreement if the funder pursued collection efforts in arbitration. *See* ECF No. 10652.

5.      On September 27, 2019, during the pendency of the Petition for Writ of Mandamus filed by Thrivest,[1] the Court directed that the Claims Administrator review the existing rules and propose "streamlined and concise" Rules. ECF No. 10858. Under the new "streamlined and concise" Rules Governing Payment of Claims Involving Third-Party Funders, which were issued on March 19, 2020, absolutely no review is made of funding agreements by the Claims Administrator, and Players no longer receive the resulting notice of the rights they might enjoy under Section 30.1 of the Settlement Agreement.

---

[1]    Thrivest filed that petition on September 20, 2019, asserting that the Court was not in compliance with the Third Circuit's April 26, 2019, requiring individualized review of funding agreements to determine whether they were, in fact, improper assignments. *See In re Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. filed Sept. 20, 2019) (copy filed by Thrivest in this Court at ECF No. 10843-1). Acting as respondents on behalf of the Court, Class Counsel and the Claims Administrator opposed Thrivest's Petition for Writ of Mandamus. Attached hereto as Exhibit A is a true copy of Class Counsel's Answer to Petitioner Thrivest Specialty Funding LLC's Petition for Writ of Mandamus. Attached hereto as Exhibit B is a true copy of the Claims Administrator's Answer to Petitioner Thrivest Specialty Funding LLC's Petition for Writ of Mandamus.

6.      Players, however, are still offered some remaining protections under these Rules. Because there is no initial determination made as to the nature of any particular funding agreement, whenever a Player informs the Claims Administrator about the existence of a third-party funding agreement of any kind (and the Resolution Protocol is not pursued), payment of a Monetary Award is made directly to the Player.  The Rules make clear, however, in two places – boldly and with capital letters – that such payment in no way reflects the discharge or satisfaction of any obligations a Player may have under his funding agreement.  *See* Rule 1 and Title III preamble.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 19th day of July, 2021

*/s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER
*Class Counsel*

4

## No. 19-3149

# United States Court of Appeals
# For the Third Circuit

IN RE THRIVEST SPECIALTY FUNDING LLC

(Related to *In re National Football League Players' Concussion Injury Litigation,*
Eastern District of Pennsylvania, No. 2:12-md-02323-AB)

## CLASS COUNSEL'S ANSWER TO PETITIONER
## THRIVEST SPECIALTY FUNDING LLC'S
## PETITION FOR WRIT OF MANDAMUS

Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road
6th Floor
Ridgefield Park, NJ
07660
(973) 639-9100

Scott Alan George
**SEEGER WEISS LLP**
1515 Market Street
Suite 1380
Philadelphia, PA 19102
(215) 564-2300

Diogenes P. Kekatos
**SEEGER WEISS LLP**
77 Water Street
8th Floor
New York, NY  10005
(212) 584-0700

*Class Counsel*

Samuel Issacharoff
40 Washington Square South, 411J
New York, NY  10012
Tel: (212) 998-6580
si13@nyu.edu

*Special Counsel for the Plaintiff Settlement Class*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 5

THE COURT SHOULD DENY THRIVEST'S PETITION FOR WRIT OF
MANDAMUS ................................................................................................. 5

A.  Applicable Standards ............................................................................ 5

B.  Thrivest Is Not Entitled to Mandamus Relief ...................................... 6

    a.  The District Court Acted Within Its Discretion, and Fully and Faithfully
    Followed This Court's Mandate .................................................... 6

    b.  Petitioner Should Have Filed a Motion with the District Court ................... 7

    c.  Thrivest Has Not Established Irreparable Injury ........................... 8

    d.  Thrivest Has No Right to a Writ of Mandamus ........................... 10

CONCLUSION ........................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arthur Young & Co. v. U. S. Dist. Court,*
   549 F.2d 686 (9th Cir. 1977) ............................................................................10

*Borntrager v. Stevas,*
   772 F.2d 419 (8th Cir. 1985) ...............................................................................8

*Commc'n Workers of Am., AFL-CIO v. AT & T,*
   932 F.2d 199 (3d Cir. 1991) ................................................................................9

*First Jersey Sec., Inc. v. Bergen,*
   605 F.2d 690 (3d Cir. 1979) ................................................................................7

*FTC v. Standard Oil Co. of Cal.,*
   449 U.S. 232 (1980)............................................................................................9

*In re Chambers Dev. Co.,*
   148 F.3d 214 (3d Cir. 1998) ............................................................................5, 6

*In re Flood,*
   500 F. App'x 105 (3d Cir. 2012) .........................................................................8

*In re Machne Israel, Inc.,*
   48 F. App'x 859 (3d Cir. 2002) ..........................................................................8

*In re McGraw-Hill Global Educ. Holdings, LLC,*
   909 F.3d 48 (3d Cir. 2018) ..........................................................................5, 6, 7

*In re Nat'l Football League Players' Concussion Injury Litig.,*
   923 F.3d 96 (3d Cir. 2019) ......................................................................1, 3, 8, 9

*In re Roberts,*
   178 F.3d 181 (3d Cir. 1999) ................................................................................5

*In re United States,*
   884 F.3d 830 (9th Cir. 2018) ..................................................................8

*Mallard v. U.S. Dist. Ct. for the So. Dist. of Iowa,*
   490 U.S. 296 (1989)..............................................................................5

*Mussina v. Cavazos,*
   61 U.S. 280 (1857)..............................................................................8

*Whitehouse v. Illinois Cent. R.R. Co.,*
   349 U.S. 366 (1955)...........................................................................10

*Will v. Calvert Fire Ins. Co.,*
   437 U.S. 655 (1978)...........................................................................11

*Will v. United States,*
   389 U.S. 90 (1967) .............................................................................1

# INTRODUCTION

Mandamus is "among the most potent weapons in the judicial arsenal." *Will v. United States*, 389 U.S. 90, 107 (1967). Through its petition for writ of mandamus ("Petition"), Thrivest Specialty Funding LLC ("Thrivest" or "Petitioner") seeks to have this Court review the day-to-day administration of the settlement in the *National Football League Players' Concussion Injury Litigation* ("NFL Settlement"). As the Court recently made clear in addressing purported assignments of Monetary Awards under the NFL Settlement, "the District Court retained broad authority to administer the settlement," including the authority to declare "void, valid and of no force and effect" any prohibited assignment provisions. *In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96, 109, 111 (3d Cir. 2019).

As to the ultimate resolution of various claims by third-party lenders against individual class members, the Court stated that "[w]e express no opinion as to the ultimate enforceability of any of the cash advance agreements." *Id.* at 112. Further, the Court appreciated that any distinction between "true" assignments (where the funder "step[ped] into the shoes of the payer and seek[s] funds directly from the settlement fund") and a "false" one (where no legal claim is asserted directly from the settlement fund) is ultimately irrelevant; the outcome "is the same: the Special

Master will not enforce *any* purported assignment." *Id.* at 110 n.13 (emphasis added).

Any efforts by a funder to enforce a funding agreement (with either a true or false assignment) would be asserted as a matter of individual contract and made before the proper arbitral or other forum and subject to the full range of defenses, including "whether any individual agreement contains a true assignment and whether there remain any enforceable rights . . . after any true assignment is voided, . . . [as well as] lack[ ] [of] capacity to contract, . . . . issues of unconscionability, fraud or usury . . . ." *Id.* at 112.

The district court has faithfully and fully followed the mandate of the Court from that appeal.  In a recent Notice, on September 27, 2019, "in light of the concern expressed in [the instant] mandamus petition," the district court summarized this Court's mandate, and concluded that the "import of the Third Circuit Decision is clear: the Court has the authority to prohibit the Claims Administrator from paying third-party funders directly from the Settlement Fund, but the overall enforceability of any third-party funder agreements must be litigated or arbitrated outside of the claims administration context.  The Court and Claims Administrator have followed the Third Circuit's holding."[1]  Ex. A (ECF No. 10858 at 2, ¶ 4 (Sep. 27, 2019)).

---

[1]  In this Notice, the district court also directed the Claims Administrator to undertake review of "its guidance and rules regarding third-party funder

2

The district court's pronouncement is consistent with this Court's insistence on drawing a line between claims against funds that are still part of the class resolution process and funds that have been paid to individual class members. While the funds are still subject to being awarded by the court, no third party may claim an assignment that would interfere with payment being made to a class member. Once the money is paid to a class member, any lender or other creditor may make any claims that it believes may be legally recognized in any forum of competent jurisdiction.

The most significant example of the district court's fulfillment of the mandate of the Court is the arbitration between Thrivest and the one Retired NFL Football Player whose funding agreement Thrivest originally brought to this Court. *In re Nat'l Football Players' Concussion Injury Litig.*, 923 F.3d at 105 n.6. On remand, Thrivest began arbitration of its funding agreement with the Retired NFL Player. Having obtained an Interim Arbitration Award directing that the Retired NFL Football Player escrow money pending a final decision and Thrivest filed an Emergency Motion to Confirm the Interim Arbitration Award. Ex. B (2:18-cv-

---

agreements and propose a streamlined and concise version that is more user-friendly" which will "avoid any possibility of confusion." Ex. A, ¶ 5. In its Answer to Petitioner Thrivest Specialty Funding LLC's Petition for Writ of Mandamus, the Claims Administrator explains actions underway to streamline and clarify the guidance and rules, and provides a more complete explanation about the reason for and propriety of the current guidance and rules singled out by Thrivest in its Petition.

01877-AB, ECF No. 21 (June 14, 2019)).   The district court granted Thrivest's

Emergency Motion to Confirm an Interim Arbitration Award, denied the Retired

NFL Player's related Motion to Vacate the Interim Arbitration Award, and held a

Civil Contempt Hearing on October 10, 2019, on the matter of the Retired NFL

Football Player's failure to comply with the Interim Arbitration Award.   Exs. C

(2:18-cv-01877-AB, ECF No. 25 (July 1, 2019)) and D (2:18-cv-01877-AB, ECF

No. 38 (Sept. 24, 2019)).

Simply stated, this Court's mandate has been fulfilled.

There is no unfinished business related to the Court's mandate before the

district court.  On July 12, 2019, however, Thrivest submitted a letter to the district

court, requesting a conference to discuss generalized concerns that it had with some

of the notices and procedures used by the Claims Administrator as part of its efforts

to   ensure   that   no   prohibited   assignment   agreements   or   provisions   were

acknowledged by it.   Neither Thrivest's request nor its reply to the Claim's

Administrator's response to the request for a conference (ECF Nos. 10734, 10806)

set forth the list of demands that it now makes to the Court in the Petition.  On August

15, 2019, the district court denied Thrivest's request for a conference.   ECF No.

10807.  Thrivest sought no further relief from the district court, and never filed a

formal motion seeking the relief it now demands by way of mandamus.

Thrivest's Petition should accordingly be denied.

4

## ARGUMENT

## THE COURT SHOULD DENY THRIVEST'S
## PETITION FOR WRIT OF MANDAMUS

Thrivest cannot satisfy the heavy standards to justify the extraordinary remedy
of writ of mandamus.

### A.    Applicable Standards

So as not to become an alternative route to interlocutory appeal, mandamus
jurisdiction is "exceedingly narrow" and allows for far "less opportunity to correct
district court error . . . and less opportunity to provide guidance for future cases." *In
re Chambers Dev. Co.*, 148 F.3d 214, 226-27 (3d Cir. 1998).  As the petitioner,
Thrivest must establish clear entitlement to a writ of mandamus.  *Mallard v. U.S.
Dist. Ct. for the So. Dist. of Iowa*, 490 U.S. 296, 309 (1989).  "Even reversible error
by itself is not enough to obtain mandamus."  *In re McGraw-Hill Global Educ.
Holdings, LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (Smith, J.).  Rather, mandamus is an
"extraordinary remedy" for which the petitioner must demonstrate (1) a "clear abuse
of discretion or usurpation of the judicial power," (2) lack of adequate alternative
means to obtain the relief sought, and (3) a "clear and indisputable" right for the
issuance of a writ.  *In re Roberts*, 178 F.3d 181, 183 (3d Cir. 1999).  In addition to
these factors, this Court considers the likelihood of irreparable injury.  *McGraw-
Hill*, 909 F.3d at 57.  Even when presented with those rare circumstances that may

5

rise to the level necessary for the grant of mandamus, the Court retains the discretion to deny the writ.  *Id.*

## B.   Thrivest Is Not Entitled to Mandamus Relief

Thrivest cannot establish its entitlement to mandamus relief under any of the criteria that this Court has articulated.

### a.   The District Court Acted Within Its Discretion, and Fully and Faithfully Followed This Court's Mandate

While it is "axiomatic" that a district court must proceed in accordance with a mandate, the district court remains "free to make any order or direction in further progress of the case, not inconsistent with [the Court's] decision."  *In re Chambers Dev. Co.*, 148 F.3d at 225.  Although Thrivest may not agree with the minutiae of the implementation of rules and procedures related to potential assignments, it provides no basis to grant its Petition.  A district court must be free to proceed "courageously in exercising [its] discretion" after remand.  *In re McGraw-Hill*, 909 F.3d at 57 (citations and quotations omitted).

Notably, the district court has *not* held that any assignment agreements or any assignment provisions are unenforceable since this Court's mandate issued.  On the contrary, the district court has left such determinations to arbitrators (when an assignment includes an arbitral provision) and acted to enforce arbitration awards that may issue, even when the assignment agreements had been determined.  All that the district court has done is prohibit the Claims Administrator from making any

payments directly to funders, and any such notices, rules, or determinations made in the NFL Settlement are only for the purposes of the NFL Settlement.  Indeed, the district court held a contempt hearing in connection with a class member's failure to escrow funds in accordance with an Arbitrator's Interim Arbitration Award.  Ex. D.

Ignoring the full extent of the district court's compliance with the mandate, Thrivest argues that certain notices and rules should be revised, a matter that was neither before this Court earlier nor mandated by its decision.  Even if the Court's mandate were construed as expansively as Thrivest's Petition requires, such administrative matters are not tantamount to an abuse of discretion necessary for mandamus.  "More than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion" is necessary.  *In re McGraw-Hill*, 909 F.3d at 57 (citations and quotation omitted).

### b. Petitioner Should Have Filed a Motion with the District Court

Mandamus may provide a remedy only if "there are no other adequate means of relief."  *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 700 (3d Cir. 1979) (citing cases).  Thrivest submitted to the district court, and only by way of a letter, merely a request for a conference to discuss generalized concerns with the handling of possible assignments.  The district court declined Thrivest's request.  Thrivest is not now seeking mandamus relief that a conference be held.  Rather, Thrivest is now seeking specific revisions to certain notices and rules and other corrective action.

7

Thrivest never filed a formal motion seeking the relief that it now demands from this Court.

Having never filed such a motion below with the district court, Thrivest cannot seek mandamus from the Court. *E.g.*, *In re Flood*, 500 F. App'x 105, 109 (3d Cir. 2012) (denying mandamus where petitioner failed to show he had no alternative remedy or other adequate means to obtain relief he desired); *In re Machne Israel, Inc.*, 48 F. App'x 859, 861 (3d Cir. 2002) (same); *see also Mussina v. Cavazos*, 61 U.S. 280, 290 (1857) ("Had the appeal been prayed in open court, and entered upon the record, the judge below might well have refused it") (denying mandamus); *In re United States*, 884 F.3d 830, 835 (9th Cir. 2018) ("Absent any discovery order from the district court, or even any attempt to seek one, however, the defendants have not shown that they have no other means of obtaining relief from burdensome or otherwise improper discovery"); *Borntrager v. Stevas*, 772 F.2d 419, 420 (8th Cir. 1985) (availability of motion to Supreme Court regarding the conduct of its clerk "mandates denial of mandamus relief").

### c.  Thrivest Has Not Established Irreparable Injury

The Court expressly mandated that the enforceability of funding agreements was subject to all available defenses, including that such an agreement may be prohibited, at least in part, if it includes an improper assignment. *In re Nat'l Football*

*Players' Concussion Injury Litig.*, 923 F.3d at 112. Thrivest characterizes class members' efforts to raise such a defense as an "irreparable injury."

Putting to one side that class members' raising of defenses cannot be laid at the feet of the district court, which has not sanctioned class members' resistance to the decisions of arbitrators, as Thrivest acknowledges, "arbitrators will ultimately decide those issues [of enforceability], but, either way, both Thrivest and the class members are increasingly at risk as these disputes continue." Petition at 12. The "inherent costs of litigation is not so consequential a harm," however, that justifies mandamus. *Commc'n Workers of Am., AFL-CIO v. AT & T*, 932 F.2d 199, 210 (3d Cir. 1991); *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.") (citation omitted).

This Court made no finding as to any particular agreement before it, and expected that such defenses would play out in the adversarial process, such as through arbitration. As Thrivest proceeds in its arbitration of funding disputes with class members (if there are more than the one that Thrivest discusses), the availability of such a defense will become developed. At this time, Thrivest is unable to identify any clear and definable injury to support its Petition, and speaks only in terms of possibilities and mere likelihoods: the communications that it seeks to challenge "are likely to influence class members and ignore their contractual

9

obligations," the Claims Administrator's "communications are likely creating confusion" and "as such, they are likely to cause irreparable injury." Petition at 11. Currently, the contractual obligations have yet to be determined. Moreover, Thrivest has not even identified a single funding agreement that may be subject to such procedures or notices in the future. Mandamus jurisdiction requires more than mere possibilities of harm. *See Whitehouse v. Illinois Cent. R.R. Co.*, 349 U.S. 366, 373 (1955) (speculative injuries do not warrant resort to mandamus, which is "governed by equitable considerations and is to be granted only in the exercise of sound discretion"); *Arthur Young & Co. v. U. S. Dist. Court*, 549 F.2d 686, 692 (9th Cir. 1977) ("[T]he proponent of the writ must also demonstrate that the harm will, in all likelihood occur, absent the writ.").

### d. Thrivest Has No Right to a Writ of Mandamus

Thrivest does not address the requirement that the right to a writ of mandamus be "clear and irrefutable." The only right that Thrivest can be said to have as a result of the mandate is the right to test the enforceability of its funding agreements before an arbitrator. By its own reports, it is doing that – unimpeded by the district court. Thrivest obtained no right, let alone a "clear and irrefutable" right, that certain procedures and notices be used in the NFL Settlement. Rather, such matters remain within the discretion of the district court and the Claims Administrator in implementing the NFL Settlement. "Where a matter is committed to the discretion

of a district court, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665-66 (1978).

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny the Petition.

**Dated:**  October 11, 2019

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
(NY 2425304)
(NJ 042631990)
**Seeger Weiss LLP**
55 Challenger Road
6th Floor
Ridgefield Park, NJ  07760
(212) 584-0700
cseeger@seegerweiss.com

Scott Alan George
**Seeger Weiss LLP**
1515 Market Street
Suite 1380
Philadelphia, PA 19102
(215) 564-2300
sgeorge@seegerweiss.
com

Diogenes P. Kekatos
**Seeger Weiss LLP**
77 Water Street
8th Floor
New York, NY 10005
(212) 584-0700
dkekatos@seegerweiss.
com

*Class Counsel*

Samuel Issacharoff
40 Washington Square South
411J
New York, NY 10012
Tel.: (212) 998-6580
Si13@nyu.edu

*Special Counsel for the Plaintiff Settlement Class*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this

Answer to Petition for Writ of Mandamus complies with the type-volume limitations

prescribed by this Court's September 26, 2019 Order (Doc. 003113355524).  This

Answer is not more than 15 double-spaced pages.

/s/ Christopher A. Seeger
Christopher A. Seeger (NY 2425304;
NJ 042631990)

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Third Circuit Local Rule 28.3(d), I certify that I am a member of the Bar of this Court.

## CERTIFICATE OF VIRUS SCAN

I certify, pursuant to Third Circuit Local Rule 31.1(c), that a virus detection program has been run on this file and that no virus was detected. The virus detection program utilized was Trend Micro™ OfficeScan™ Agent, version XG.

*/s/ Christopher A. Seeger*
Christopher A. Seeger (NY 2425304; NJ 042631990)

## CERTIFICATE OF SERVICE

I certify that on this date, October 11, 2019, I caused the foregoing Answer to Petitioner Thrivest Specialty Funding LLC's Petition for Writ of Mandamus to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Third Circuit using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  October 11, 2019

*/s/ Christopher A. Seeger*
Christopher A. Seeger (NY 2425304; NJ 042631990)

14

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **Hon. Anita B. Brody** |

September 27, 2019                                    Anita B. Brody, J.

## NOTICE

In light of the concern expressed in a recent mandamus petition filed on September 19, 2019,[1] the Court issues the following clarification regarding the legal status of third-party funder agreements:

1.      On December 8, 2017, the Court issued an Explanation and Order ("Assignment Order") providing that under Section 30.1 of the Settlement Agreement, any agreement entered into by a Class Member "that assigned or attempted to assign any monetary claims . . . is void, invalid and of no force and effect."  Assignment Order at 5, ECF No. 9517.

2.      On April 26, 2019, the Third Circuit affirmed the Assignment Order in part and reversed the Assignment Order in part.  *In re Nat'l Football League Players' Concussion Injury*

---

[1] *See* Petition for Writ of Mandamus, *In re: Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. 2019).

1

*Litig.*, 923 F.3d 96 (3d Cir. 2019). The Third Circuit affirmed that "any true assignments contained within [third-party] cash advance agreements—that is, contractual provisions that allowed the lender to step into the shoes of the player and seek funds directly from the settlement fund—were void *ab initio*." *Id.* at 110. The Third Circuit reversed the Assignment Order to the extent that it "void[ed] the agreements in their entirety." *Id.* at 111.

3. The Third Circuit "express[ed] no opinion as to the ultimate enforceability of any of the cash advance agreements," but held that any such determination must occur "outside of the NFL claims administration context." *Id.* at 112. The Third Circuit "in no way suggest[ed] that an[y] individual agreement is enforceable," *id.* at 113, and "presume[d] that the full array of standard contract defenses will also apply in any subsequent litigation regarding these agreements. . . . [S]ome of the class members are cognitively impaired, and it is possible that some of them lacked the capacity to contract at the time they entered into the agreements," *id.* at 112. Further, "[t]here may also be issues of unconscionability, fraud, or usury based on the high effective interest rates in the agreements." *Id.*

4. The import of the Third Circuit decision is clear: the Court has the authority to prohibit the Claims Administrator from paying third-party funders directly from the Settlement Fund, but the overall enforceability of any third-party funder agreements must be litigated or arbitrated outside of the claims administration context. The Court and Claims Administrator have followed the Third Circuit's holding.

5.     To avoid any possibility for confusion, the Court directs the Claims Administrator

to review its guidance and rules regarding third-party funder agreements and propose a

streamlined and concise version that is more user-friendly.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF:  9/27/2019**

3

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THRIVEST SPECIALTY FUNDING, LLC | : | |
| | : | |
| v. | : | Civil Action No. 2:18-CV-1877 |
| | : | |
| WILLIAM E. WHITE | : | |

## THRIVEST'S EMERGENCY MOTION TO CONFIRM ARBITRATION AWARD
### [FILED UNDER SEAL]

Thrivest Specialty Funding, LLC ("Thrivest') respectfully requests that the Court confirm

the Emergency Arbitrator's Interim Award of Emergency Relief in Thrivest Specialty Funding,

LLC v. White, AAA Case No. 01-18-0001-4765, and enter an Order in the form proposed.  In

support thereof, Thrivest relies upon and incorporates by reference the accompanying

memorandum of law and its Complaint to Compel Arbitration (Dkt. 1).

Respectfully submitted,

/s/ Peter C. Buckley, Esquire
Peter C. Buckley, Esquire
Eric E. Reed, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2000
(215) 299-2150 (facsimile)
*Attorneys for Thrivest Specialty Funding, LLC*

Dated:  June 14, 2019

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

THRIVEST SPECIALTY FUNDING, LLC    :
    :
    v.    :    Civil Action No. 2:18-CV-1877
    :
WILLIAM E. WHITE    :

## THRIVEST'S MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY MOTION TO CONFIRM ARBITRATION AWARD [FILED UNDER SEAL]

Thrivest Specialty Funding, LLC ("Thrivest") submits this memorandum of law in support of its emergency request to confirm the Emergency Arbitrator's Interim Award of Emergency Relief (the "Award") in <u>Thrivest Specialty Funding, LLC v. White</u>, AAA Case No. 01-18-0001-4765 (the "Arbitration").

## I.    BACKGROUND AND RELEVANT FACTS

In December 2016, Thrivest provided Respondent William E. White ("White") with a $500,000 advance on his potential recovery in the NFL Concussion Litigation. <u>See</u> Agreement (Dkt. 1-3, Exhibit A). White has refused—and continues to refuse—to honor their Agreement. To date, despite having the use and enjoyment of Thrivest's advance for more than two and a half years and receiving a $3.5 million award in the NFL Concussion Litigation triggering his payment obligations, White has not paid Thrivest anything.

Thrivest commenced this action against White, seeking to compel White to participate in the Arbitration pursuant to the agreement to arbitrate at Section 6(z) of their Agreement. <u>See</u> Complaint to Compel Arbitration (Dkt. 1). The Court dismissed the action on August 30, 2018, citing its May 22, 2018 Explanation and Order in the NFL Concussion Litigation enjoining Thrivest from proceeding with the Arbitration. (Dkt. 13). After Thrivest appealed, the Third Circuit vacated the injunction and the order dismissing this action, remanding for further

proceedings.  See Thrivest v. White, No. 18-3005, 2019 WL 1868828, *11 (Apr. 26, 2019).  On

May 20, 2019, the Third Circuit issued its mandate.

On April 26, 2019, following the Third Circuit's decision, Thrivest notified the American

Arbitration Association that the injunction had been vacated and the Arbitration resumed with

proceedings on Thrivest's application for emergency relief (Dkt. 1-3) under Rule 38 of the AAA

Commercial Rules.  Previously, AAA had appointed Hon. Steven I. Platt (Ret.) to serve as the

Emergency Arbitrator and to decide Thrivest's request for injunctive relief—i.e., that White

escrow funds pending resolution of the Arbitration on the merits.  See Appointment of

Emergency Arbitrator, Exhibit A.  Judge Platt held a scheduling call with the parties on May 8,

2019.  Later, on May 15, 2019, White filed an Answering Statement contesting AAA's

jurisdiction—among other things, because Thrivest did not first mediate the dispute.  Thereafter,

Judge Platt held a telephonic hearing on Thrivest's application.  Although White ignored a notice

to attend and did not participate in the hearing, his attorney Robert Wood, Esquire, participated

and opposed Thrivest's application, arguing that AAA lacked jurisdiction and that Thrivest had

not established circumstances justifying injunctive relief.

On June 4, 2019, Judge Platt issued a Determination and Award (the "Determination")

and an Interim Award of Emergency Relief (the "Award") pursuant to AAA Rule 38, which

authorizes the Emergency Arbitrator to award emergency relief in the case of "immediate and

irreparable loss or damage."  See Determination and Award, Exhibits B and C respectively.

Judge Platt flatly rejected White's jurisdictional challenge, describing it as not credible and

"disingenuous."  See Determination at 10-13 (Exhibit B).  Finding he had jurisdiction to

adjudicate Thrivest's application, Judge Platt noted, "to use the formal notice and meeting

requirements contained within what [White] considers to be a 'False Assignment' with no

binding legal effect in an attempt to defeat the Agreement's arbitration mandate, when it is clear [White] had and continues to have no intention of mediating this dispute, is unpersuasive at best." Id. at 13.

Turning to the merits of the injunction, Judge Platt found that "there is a strong likelihood that [Thrivest] will prevail on the merits of this case and that Thrivest's Agreement with [White] will be enforced pursuant to the terms contained therein." Id. at 17. Further, Judge Platt explained, Thrivest "has demonstrated a real likelihood that the settlement funds distributed to Mr. White are in danger of being dissipated, if not already dissipated, such that [Thrivest] will be unable, if successful on the merits, to collect the money owed it pursuant to the Agreement." Id. Accordingly, Judge Platt issued the Award, directing White to escrow $1,250,000 "into the trust account of his attorney, Robert C. Wood, Esq. ... pending and subject to a Final Award, further order of the arbitrator, or written agreement signed by the parties." See Award (Exhibit C). An injunction directing the escrow of funds only, Judge Platt's Award makes clear that "deposit of the Escrowed Funds as set forth herein shall not alter the parties' rights and obligations under the Agreement". Id.

White did not comply with the Award and, on June 11, 2019, Attorney Wood confirmed that White contests the Award and AAA's authority to issue it. Thrivest brings this emergency motion to confirm the Award and for an order directing White to comply as ordered by the Emergency Arbitrator. Because Thrivest's Complaint to Compel Arbitration (Dkt. 1) is pending and White has filed a Counterclaim (Dkt. 19) contesting AAA's jurisdiction for the same reasons rejected by Judge Platt as "unpersuasive at best," Thrivest respectfully requests that the Court also direct White to arbitrate and to stay these proceedings in favor of the Arbitration.

## II.    STANDARD OF REVIEW

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, provides that, "within one year after

the award is made, any party to the arbitration may apply to the court so specified for an order

confirming the award and thereupon the court must grant such an order unless the award is

vacated, modified, or corrected." 9 U.S.C. § 9.  The Agreement satisfies this requirement

because it authorizes Thrivest to "enforce any award rendered pursuant to the arbitration

provisions … by moving to compel the award in the appropriate Pennsylvania court.  <u>See</u>

Agreement at 6(aa) (Dkt. 1-3, Exhibit A).

The standard of review of an arbitration award is very deferential.  Authority to vacate an

award is limited to those rare instances where there is "absolutely no support at all in the record

justifying the arbitrator's determinations."  <u>Jeffrey M. Brown Assoc., Inc. v. Allstar Drywall &</u>

<u>Acoustics, Inc.</u>, 195 F.Supp.2d 681, 684 (E.D. Pa. 2002).  The FAA expressly limits the power of

a reviewing court to vacate or modify an arbitration award to the following circumstances:

(1)    where the award was procured by corruption, fraud, or undue means;

(2)    where there was evident partiality or corruption in the arbitrators, or either of
them;

(3)    where the arbitrators were guilty of misconduct in refusing to postpone the
hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent
and material to the controversy; or of any other misbehavior by which the rights
of any party have been prejudiced; or

(4)    where the arbitrators exceeded their powers, or so imperfectly executed them that
a mutual, final, and definite award upon the subject matter submitted was not
made.

9 U.S.C. §10(a).  The Third Circuit also recognizes a fifth ground for vacatur in "exceptional

cases" where there is a demonstrable "manifest disregard of the law."  <u>Popkave v. John</u>

<u>Hankcock Distrib., LLC</u>, 768 F.Supp.2d 785, 789 (E.D. Pa. 2011); <u>see also</u> <u>Southco, Inc. v. Reel</u>

<u>Precision Mfg. Corp.</u>, 556 F.Supp.2d 505, 511 (E.D. Pa. 2008) (holding "the Court must affirm

the award unless [it is] completely irrational . . ." which necessitates a showing that the decision

"escape[s] the bounds of rationality."). This judicially-created exception must only be applied in

the rarest of circumstances where it is readily apparent from the record that the arbitrators

willfully ignored applicable law. Id. at 790. The Court can also modify or correct an arbitration

award to address clerical errors that do not go to the merits of the award. See 9 U.S.C. §11(a)-

(c). None of these exceptions apply and so the Court should confirm the Award.

## III.    ARGUMENT

Judge Platt had authority and jurisdiction to issue the Award and the Court has authority

and jurisdiction to confirm the Award. There are no grounds to vacate, modify or correct it.

Thrivest respectfully requests that the Court confirm the Award and issue an order in the form

proposed.

### A.    The Parties Authorized The Emergency Arbitrator To Issue Injunctive Relief; This Court Lacks Jurisdiction To Consider White's Jurisdictional Challenge.

Thrivest and White specifically agreed that "the arbitrator shall have authority to grant

injunctive relief or other forms of equitable relief to either party." See Agreement at 6(aa) (Dkt.

1-3, Exhibit A). There can be no doubt that Judge Platt had authority to issue the Award and to

require that White escrow funds pending a decision on the merits.

Likewise, there can be no doubt that Judge Platt had jurisdiction over Thrivest's

application for emergency relief under AAA Rule 38 (titled "Emergency Measures of

Protection"). White argued that AAA lacked jurisdiction because Thrivest did not first mediate

this dispute, but Judge Platt rejected his argument, characterizing it as "disingenuous"

considering that White has refused even to recognize the Agreement as binding on him. See

Determination at 10-13 (Exhibit B). White's Counterclaim asks the Court to consider the

identical "condition precedent" issue; however, the Supreme Court of the United States has made

clear that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (emphasis in original, internal quotations omitted) (noting that application of a condition precedent to arbitrability is such a procedural question that must be decided by the arbitrator); see also John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 556-558 (1964) (making clear that pre-arbitration mediation is a question of procedural arbitrability that must be decided by the arbitrator). Pennsylvania law is in accord. See Interdigital Com., Corp. v. Fed. Ins. Co., 392 F.Supp.2d 707, 716 (E.D. Pa.) (citing Ross Dev. Co. v. Advanced Bldg. Dev., Inc., 803 A.2d 194, 197 (Pa. Super. 2002), and explaining "[u]nder Pennsylvania law, the procedural issue of whether a condition precedent to arbitration has been met is for an arbitrator to decide."). Accordingly, although White may revisit his jurisdictional challenge in the arbitration now that the emergency measures of protection hearing has concluded, he may not do so here. His challenge does not bear on the Court's confirmation of Judge Platt's Award.

Finally, because White's counterclaim and challenge raise issues that must be decided by the arbitrator rather than the Court, the Court should enter an order on Thrivest's Complaint seeking to compel arbitration and stay this action in favor of the Arbitration. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006) ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

### B.   The Court Should Confirm The Award Because It Disposes Of An Independent Claim For Emergency Relief And, Without Immediate Confirmation, The Award Lacks Meaning.

Judge Platt directed that White escrow funds pending resolution of the parties' dispute on the merits to avoid "ongoing, irreparable harm." See Determination at 19 (Exhibit B). However, "[a]rbitrators have no power to enforce their decisions[;] [o]nly courts have that power." See Recyclers Ins. Group, Ltd. v. Ins. Co. of North America, No. 91-503, 1992 WL 150662, *3 (E.D.

Pa., June 15, 1992) (citing <u>Pacific Reins. Mgt. Corp. v. Ohio Reins. Corp.</u>, 935 F.2d 1019, 1023

(9th Cir. 1991)).  As a final order authorized by the parties' arbitration agreement, the Award is

enforceable by confirmation here.  <u>See</u> <u>Meadows Indem. Co., Ltd. v. Arkwright Mut. Ins. Co.</u>,

No. 88-0600, 1996 WL 557513, *7 (E.D. Pa., Sept. 30, 1996) (confirming arbitrators' injunction

and holding that "an arbitration panel ordering a party to post security before a panel will

consider the merits may rationally derive such an award from a contract [even where it] does not

expressly provide that it may impose such an award.").  Indeed, "temporary equitable orders

calculated to preserve assets or performance needed to make a potential final award meaningful

… are final orders that can be reviewed for confirmation and enforcement by district courts

under the FAA." <u>Pacific Reins. Mgt. Corp.</u>, 935 F.2d at 1023.

It is settled law that "[t]emporary equitable relief in arbitration may be essential to

preserve assets or enforce performance which, if not preserved or enforced, may render a final

award meaningless." <u>Id.</u> at 1022–23.  That is because "if temporary equitable relief is to have

any meaning, the relief must be enforceable at the time it is granted, not after an arbitrator's final

decision on the merits." <u>Id.</u> at 1023 (citing <u>Southern Seas Navigation Ltd. v. Petroleos</u>

<u>Mexicanos</u>, 606 F.Supp. 692, 694 (S.D.N.Y.1985)).

Judge Platt found it likely that Thrivest would prevail on the merits and enforce White's

promises in the Agreement, but also that there was a serious risk that White would become

judgment proof in the interim without relief.  The Court should confirm Judge Platt's Award to

preserve the status quo pending the ultimate outcome of the Arbitration.

## IV.    **CONCLUSION**

For the foregoing reasons, Thrivest respectfully requests that the Court confirm the

Award and enter an Order in the form proposed.

Respectfully submitted,


/s/ Peter C. Buckley, Esquire
Peter C. Buckley, Esquire
Eric E. Reed, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2000
(215) 299-2150 (facsimile)
*Attorneys for Claimant*

Dated: June 14, 2019

# EXHIBIT A

# General Arbitrator Oath Form

## American Arbitration Association

Thrivest Specialty Funding, LLC
Vs.
William E. White

Case# 01-18-0001-4765

**Notice of Appointment for Hon. Steven Platt (Ret.)**

**Disclosure Obligations**

It is most important that the parties have complete confidence in the arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind. This is a continuing obligation throughout your service on the case and should any additional direct or indirect contact arise during the course of the arbitration or if there is any change at any time in the biographical information that you have provided, it must also be disclosed. Any doubts should be resolved in favor of disclosure. If you are aware of direct or indirect contact with such individuals, please describe it below. Failure to make timely disclosures may forfeit your ability to collect compensation. All disclosures will be brought to the attention of the parties.

**Instructions**

You will not be able to serve until this duly executed Notice of Appointment has been completed and submitted. Please review the *Disclosure Guidelines* found under the Neutrals eCenter "Resources" menu and, after conducting a conflicts check, answer the following questions and complete the remainder of this Notice of Appointment.

Should the answer to any of the following questions be "Yes", or if you are aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality, then describe the nature of the potential conflict(s) in the space provided.

1. Do you or your law firm presently represent any person in a proceeding involving any party to the arbitration?

Answer : NO

2. Have you represented any person against any party to the arbitration?

Answer : NO

3. Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work?

Answer : NO

4. Have you had any professional or social relationship with any parties or witnesses identified to date in this proceeding or the entities for which they work?

Answer : NO

5. Have you had any professional or social relationship of which you are aware with any relative of any of the parties to this proceeding, or any relative of counsel to this proceeding, or any of the witnesses identified to date in

# General Arbitrator Oath Form

the proceeding?

Answer : NO

6. Have you, any member of your family, or any close social or business associate ever served as a neutral in a proceeding in which any of the identified witnesses or named individual parties gave testimony?

Answer : NO

7. Have you, any member of your family, or any close social or business associate been involved in the last five years in a dispute involving the subject matter contained in the case which you are assigned?

Answer : NO

8. Have you ever served as an expert witness or consultant to any party, attorney, witness or other arbitrator identified in this case?

Answer : NO

9. Have any of the party representatives, law firms or parties appeared before you in past arbitration cases?

Answer : NO

10. Are you a member of any organization that is not listed on your panel biography that may be relevant to this arbitration?

Answer : NO

11. Have you ever sued or been sued by either party or its representative?

Answer : NO

12. Do you or your spouse own stock in any of the companies involved in this arbitration?

Answer : NO

13. If there is more than one arbitrator appointed to this case, have you had any professional or social relationships with any of the other arbitrators?

Answer : NO

14. Are there any connections, direct or indirect, with any of the case participants that have not been covered by the above questions?

Answer : NO

15. Are you aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality?

Answer : NO

# General Arbitrator Oath Form

**Arbitrator's Oath**

I attest that I have reviewed my biographical information provided to the parties on this case and confirm it is current, accurate and complete.

I attest that I have diligently conducted a conflicts check, including a thorough review of the information provided to me about this case to date, and that I have performed my obligations and duties to disclose in accordance with the Rules of the American Arbitration Association, Code of Ethics for Commercial Arbitrators and/or all applicable statutes pertaining to arbitrator disclosures.

**Terms of Compensation**

Before proceeding, please indicate that you have reviewed the Notice of Compensation Arrangements for this case.

☑

Once completed, please indicate your acceptance of this appointment as arbitrator by entering your initials in the space provided.

(SIP)

Hon. Steven Platt (Ret.)
20-Apr-18

# EXHIBIT B

**AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration**
**Under AAA Commercial Arbitration Rules and Mediation Procedures**
**Amended and effective October 1, 2013**

THRIVEST SPECIALTY FUNDING, LLC

    Claimant

    Represented by Peter Buckley of Fox Rothschild, LLP

v.

WILLIAM E. WHITE

    Respondent

    Represented by Robert Wood of Wood Law Limited

No: 01-18-0001-4765

R-38 Emergency Measures of Protection Hearing

## DETERMINATION AND AWARD OF EMERGENCY ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration Agreement dated December 8, 2016 entered into by the above-named parties and the Claimant's Demand for Arbitration and Application for Emergency Interim Relief and Respondent's Answering Statement, having been considered and a Hearing having been held via telephonic conference call on May 15, 2019, at which evidence and the arguments of Counsel were heard and viewed, the Emergency Arbitrator makes the following findings.

## I.   STATEMENT AND HISTORY OF CASE

    A.   Prior History

        1.   *Filing*

On April 11, 2018, Claimant Thrivest Specialty Funding, LLC ("Thrivest") filed with the AAA a "Demand for Arbitration and Application for Emergency Relief" ( "Claimant's Demand") for declaratory judgment and breach of contract, seeking *inter*

*alia* emergency interim relief directing Respondent William White ("White") to escrow $750,000[1] from his award into his attorney's trust account pending the Final Arbitrator's Award.

2.   *Prior Scheduling Conference*

An R-38 Emergency Measures of Protection Scheduling Call was scheduled by this Arbitrator on April 26, 2018. Prior to the call on April 21, 2018, Claimant's Counsel, by email, requested from Respondent in advance of the Hearing, production of certain documents and information relating to Respondent's "distribution" as termed in Thrivest's Agreement as a member of the "Class" in the NFL Concussion Litigation in order to prepare and present its case for "Emergency Relief" at the Emergency Relief Arbitration Hearing.  This Arbitrator did not order production of the requested Pre-Hearing Discovery at that time due to the limited subject matter of the scheduled Hearing, i.e., Scheduling, the lack of sufficient time and notice of the Request For Discovery and preliminary issues of whether AAA and this "Emergency Arbitrator" had subject matter jurisdiction.

3.   *Judge Brody's Order*

Subsequently, on April 25, 2018, counsel for Respondent by email raised a number of issues pertaining to the jurisdiction of AAA over the dispute. In particular, Respondent cited the April 22, 2015 "Final Order and Judgment" of United States District Court Judge for the Eastern District of Pennsylvania, Anita Brody, which provided (in pertinent part) that Judge Brody's jurisdiction was "both continuing and

---

[1] This amount was later amended to $1,250,000 to include interest, attorney's and arbitration fees per Claimant's May 7, 2019, prehearing email communication.

exclusive over all matters pertaining to the Settlement Agreement[2] and its administration". Judge Brody's Order also determined that any assignments of proceeds of the Settlement Agreement were "void, invalid, and of no force and effect".[3]

> 4. *Arbitrator's Denial of Requested Discovery*

Claimant responded to Respondent by email on April 26, 2018, arguing that the Court has no jurisdiction over Thrivest and that once the settlement proceeds were distributed to White, the Court's jurisdiction over the settlement award would end.

During (and after) the April 26, 2018, Scheduling Call, this Arbitrator denied Claimant's requested items of discovery for the reasons stated *supra,* and a hearing on the Request For Emergency Measures of Protection was scheduled for May 4, 2018, before this Emergency Arbitrator.

> 5. *Further Court Action*

However, prior to that hearing, on May 2, 2018, after a telephonic hearing on Co-Lead Class Counsel's Emergency Motion for a Temporary Restraining Order enjoining the instant arbitration, Judge Brody granted the relief requested and enjoined the previously scheduled May 4, 2018, Emergency Arbitration Hearing until further hearing before the U.S. District Court on May 9, 2018, to determine whether a permanent

---

[2] "Settlement Agreement" refers to the NFL Concussion Settlement approved by the Court on April 22, 2015, effective January 7, 2017. The claims submission process opened for Class Members in March 2017.

[3] See also the Court's December 8, 2017 "Explanation and Order" (…"to the extent that any Class Member has entered into an agreement that assigned or attempted to assign any monetary claims, that agreement is void, invalid, and of no force and effect") and February 20, 2018 Order (directing Claims Administrator to pay awards directly to Class Members instead of their attorneys where Claims Administrator has notice of assigned transactions).

01-18-0001-4765

3

injunction would be appropriate[4]. A permanent injunction was issued on May 22, 2018, to which Thrivest timely appealed. In August 2018, Judge Brody dismissed Thrivest's lawsuit against White, citing her May 22, 2018, Order enjoining arbitration. Thrivest appealed.

Oral arguments on various appeals by third party cash advance companies to Judge Brody's Orders were heard by the 3rd Circuit Court of Appeals on January 23, 2019, among them Claimant Thrivest's appeal. Specifically, Thrivest challenged the Court's jurisdiction over Thrivest as well as Judge Brody's sweeping Order invalidating all third-party lender assignments and attempting to control what settlement recipients did with their settlement money *after* it had been dispersed to the NFL player members of the certified class.

6.     *Partial Reversal of Judge Brody's Order by the 3rd Circuit*

On 4/26/19, in a reported opinion, the Court of Appeals for the Third Circuit partially reversed Judge Brody's Order, specifically holding that, "...despite having the authority to void prohibited assignments, the District Court went too far in voiding the cash advance agreements in their entirety and voiding contractual provisions that went only to a lender's right to receive funds after the player acquired them"[5].

The Court noted that Judge Brody's December 8, 2017, Order "went beyond pure issues of settlement administration to adjudicate the third-party contract rights of litigation funding companies"[6] when it voided all cash advance agreements in their entirety. Instead, the Appeals Court noted, that "the Court had the option of invalidating

---

[4] Counsel has provided a transcript of that hearing which has been reviewed.
[5] 3rd Circuit Order, p.7.
[6] 3rd Circuit Order, p.26.

only the assignment portions of the agreements containing true assignments and directing the Claims Administrator not to recognize any true assignments, without voiding the agreements in their entirety"[7].

The Appeals Court further stated that "...*once the funds are disbursed to the players, the District Court's power over the funds – and any contracts affecting the funds – is at an end*"[8] (emphasis provided). In holding that cash advance agreements remain enforceable – outside of the NFL claims administration context – to the extent the litigation companies retain rights under the agreements after any true assignments are voided[9], the Court concluded that:

> "...although the District Court had the authority to enforce the clear terms of the settlement agreement by ordering that any true assignments are void and unenforceable, the Court did not have the authority to void other obligations under the cash advance agreements, particularly without affording the lenders notice and a hearing, or making specific findings that those obligations violated the Court's prior orders or would impair the Court's administration of the settlement"[10].

Finally, the Appeals Court vacated Judge Brody's May 22, 2018, Order enjoining Thrivest from arbitrating its claims, and remanded for further proceedings. The Court noted that Thrivest and other "...litigation funding companies will be able to pursue, outside of the claims administration process, whatever rights they may continue to have under their cash advance agreements with class members", and that "...[a]ny questions going to the enforceability of the funding agreements will have to be litigated or

---

[7] 3rd Circuit Order, p.29.
[8] 3rd Circuit Order, p.30.
[9] The Appeals Court specifically added that "..a court or arbitrator subsequently adjudicating these issues will need to address whether any individual agreements contains a true assignment and whether there remain enforceable rights under the agreement after any true assignment is voided".
[10] 3rd Circuit Order, p.32.

01-18-0001-4765

5

arbitrated in the appropriate fora"[11].

B.      Renewal of Request for Emergency Relief and Demand for Arbitration

Following the Third Circuit's decision, Claimant notified AAA on April 26, 2019, of the Third Circuit's ruling and requested that this Emergency Arbitrator schedule a hearing on Claimant's Application for Emergency Interim Relief, with the indication that an amended filing would be forthcoming.

Claimant submitted its Final Demand for Arbitration and Application for Emergency Interim Relief ("Final Demand") on May 8, 2019, requesting a directive that Respondent escrow $750,000 from his award, once received, in his attorney's trust account pending the arbitrator's final award[12], as well as a declaration that Thrivest's Agreement is valid and enforceable, and finding that Respondent breached his contract with Claimant, together with attorneys' fees and costs. In total, Claimant is requesting this Arbitrator escrow $1,250,000 pending resolution of the arbitration[13]

C.      Respondent's Response to Claimant's Renewal of Demand

Respondent issued an Answering Statement and email response dated May 15, 2019, again arguing that AAA does not have jurisdiction over this dispute. In characterizing Thrivest's Agreement with White as a "False Assignment", Respondent notes that §6(z) of the Assignment states that:

> "Within thirty (30) days of [written] notice of a dispute, Buyer and Seller agree to meet at an agreed upon location in Philadelphia, PA to attempt to resolve the dispute in good faith without the necessity of moving forward with binding Arbitration through the American Arbitration Association. Should the dispute not

[11] 3rd Circuit Order, p.34.
[12] The actual binder containing the Final Demand for Arbitration accompanying Claimant's May 8, 2019, cover letter appears to be unchanged from that previously submitted and is in fact dated April 11, 2018.
[13] See Claimant's May 7, 2019, prehearing email @ p.5.

be resolved between the parties within 60 days of the above-referenced meeting, either party may seek remedies exclusively through a binding arbitration request to the American Arbitration Association and/or one of their representatives".

Respondent argues that Claimants failure to provide written notice and/or meet with him in Philadelphia ("conditions precedent") amounts to a material breach of the Dispute Resolution provisions of the Assignment, and "accordingly the AAA does not have jurisdiction to consider the dispute".

Respondent also argues that Claimant has not demonstrated it is entitled to emergency relief under R-38, stating that Claimant has cited no facts other than mere speculation that over time its prospects for collecting might decrease. Respondent adds that Claimant has offered no proof that Respondent has not made arrangements and/or will not make arrangements to pay under the terms of the Agreement, particularly since Respondent's obligation to pay has only recently been triggered, and that up until the 3rd Circuit's 4/26/19 ruling, Respondent was justified in considering the Agreement null and void.

## II.  **DETERMINATION AS TO ISSUE OF AAA JURISDICTION BY EMERGENCY ARBITRATOR**

Section 6(z) of the Agreement between Thrivest and White states that:

> "Within thirty (30) days of [written] notice of a dispute, Buyer and Seller agree to meet at an agreed upon location in Philadelphia, PA to attempt to resolve the dispute in good faith without the necessity of moving forward with binding Arbitration through the American Arbitration Association. Should the dispute not be resolved between the parties within 60 days of the above-referenced meeting, either party may seek remedies exclusively through a binding arbitration request to the American Arbitration Association and/or one of their representatives".

Respondent argues that Claimants failure to provide written notice and/or meet with him in Philadelphia ("conditions precedent") amounts to a material breach of the

Dispute Resolution provisions of the Agreement, and "accordingly the AAA does not have jurisdiction to consider the dispute".

Claimant counters, however, that the reason Thrivest did not demand pre-arbitration mediation was "..in part it was due to timing and in part it was due to the absence of any meaningful opportunity at resolution"[14]. Counsel Buckley notes that on March 19, 2018, Respondent's Counsel, Wood, presented Thrivest with a waiver relinquishing Thrivest's rights under the attempted assignment and guaranteeing return only of its principal. Claimant's Counsel, Buckley, was allowed by this Arbitrator, to testify and in fact did testify, that acceptance of rescission and return of principal only was "communicated to us by Mr. Wood as the only option"[15] for settlement with his client and the deadline for acceptance of this offer was set at April 12, 2018. Mr. Buckley further testified that "...we engaged in some preliminary discussions with Mr. Wood that went nowhere"[16] and subsequently filed for arbitration on April 11, 2018. Mr. Buckley then testified that because the pre-arbitration discussions "have never gone anywhere productive"[17], that mediation in Philadelphia would have been "futile"[18] because there was insufficient time before the April 12, 2018, waiver deadline[19] and that "Mr. Wood communicated that there was really no room to negotiate"[20].

Claimant had also previously advanced this position in its Demand:

"[a]although the Arbitration Clause encourages a pre-arbitration meeting in Philadelphia for the purpose of discussing resolution, such a meeting is not

---

[14] Tr. p.28, 9-12.
[15] Tr. p.29, 20-23.
[16] Tr. p.29, 11-13.
[17] Tr. p.30, 17-18.
[18] Tr. p.30, 21.
[19] Tr. p. 44, 11-15. Mr. Buckley testified he wanted to commence the arbitration prior to the expiration of the April 12, 2018, waiver ultimatum, and to attempt to prevent dissipation of assets. Tr. p.45, 1-16.
[20] Tr. p.31, 1-3.

01-18-0001-4765                                                                                                    8

practicable in view of White's health and the impending April 12, 2018, deadline imposed by White for Thrivest to accept rescission of the Agreement. Moreover, White's attorney confirmed that mediation would not be productive considering White's position that he need not comply with his obligations under the Agreement because, he claims, it is null and void[21].

Claimant's Counsel, Buckley, further added that Mr. Wood was also unwilling in June 2018 to escrow the disputed funds in an effort to forego accruing interest[22].

Counsel Buckley also testified that after the 3rd Circuit decision he sent an email to Mr. Wood on May 10, 2019, basically outlining past discussions and confirming that rescission was the only option on the table, and that if there was any room for compromise, Mr. Wood should let Claimant know Mr. Buckley testified that he did not receive a response[23]. Counsel Buckley also added that Respondent had never "requested or indicated an openness to mediation in Philadelphia at any time since we commenced this arbitration"[24].

In response to Mr. Wood's argument that the dispute resolution provision of the Agreement required 30 days written notice followed by a mediation in Philadelphia within 30 days, Counsel Buckley notes that Respondent was denying that any valid, enforceable agreement existed (based on the Court's December 8, 2017, Order), that Mr. White had no obligations with regard to Thrivest, and therefore Claimant proceeded with the filing of the Demand for Arbitration and Application for Emergency Interim Relief[25].

C.    Jurisdictional Analysis

---

[21] Claimant Demand p.5, fn. 2.
[22] Tr. p.33, 21 – p.33, 6.
[23] Tr. p.31, 6 – p.32, 14.
[24] Tr. p.32, 7-14.
[25] Tr. p.39-41.

The Agreement between Claimant Thrivest and Respondent, White specifies that Pennsylvania law controls the arbitration and that that any arbitration would be conducted within the jurisdiction of the Commonwealth of Pennsylvania. However, neither party has submitted any authority to support their position with regard to whether failure of the condition precedent (if found) is grounds to defeat the jurisdiction of AAA under the terms of the arbitration clause contained within the Agreement. Accordingly, as stated by this "Emergency Arbitrator" during the hearing, this decision will be made on the "record and evidence presented and the arguments in this case and in this hearing and anything else I have in the file leading up to this hearing"[26].

### 1.   *AAA Jurisdiction*

AAA Rule 38(d) states in pertinent part that the "emergency arbitrator shall have the authority vested in the tribunal under Rule 7, including the authority to rule on her/his own jurisdiction, and shall resolve any disputes over the applicability of this Rule 38". Specifically, AAA Rule R- 7 vests the arbitrator with the "power to rule on his or her own jurisdiction including any objections with respect to the existence, scope or validity of the arbitration agreement or the arbitrability of any claim or counterclaim"[27]. In cases where an Agreement containing an arbitration clause is at issue, the arbitration clause "shall be treated as an agreement independent of the other terms of the contract"[28].

This Arbitrator concludes that Claimant has substantially complied with the notice and mediation requirement contained within the Agreement.

First, with regard to the 30 days' notice of a dispute, this Arbitrator notes that the

---

[26] Tr. p.16, 4-11.
[27] AAA R-7(a).
[28] AAA R-7(b).

original Demand for Arbitration was filed April 11, 2018, and subsequently resurrected in identical form over a year later on May 8, 2019, following the 3rd Circuit's ruling.  Mr. Buckley testified that on March 19, 2018, Claimant was presented with an ultimatum by Respondent: either execute a waiver by April 12, 2018, which would return only principal paid ($500,000) and relinquishing all other rights under their Agreement or receive nothing[29].  Mr. Buckley understood that the waiver offer communicated by Mr. Wood was "the only option"[30], and that there would be no other offers. Mr. Buckley also testified to a May 4, 2018; email received from Mr. Wood whereby Mr. Wood stated "Thrivest's election to refuse the rescission offered by the court constitutes a rejection that it must now live with"[31].

Mr. Buckley further testified that "throughout, we have certainly had discussions and been open to a resolution. Those conversations have never gone anywhere productive"[32]. There was certainly no indication of a willingness to compromise and, even though Claimant's Demand for Arbitration had been filed on April 11, 2018, no mention of any failure to provide notice and/or submit to a mediation in Philadelphia at that time was noticed. Mr. Buckley also testified that even as late as May 10, 2019, after the 3rd Circuit's decision and after Mr. Buckley's May 8, 2019 re-submission of the Demand for Arbitration, he sent an email to Mr. Wood "recount[ing] some of the history of the settlement conversations" and that his client, Thrivest saw "no reason to believe that mediation in Philadelphia would be anything other than futile" to which Claimant maintains Mr. Wood never responded[33]. Finally, nothing in the record of this case even

---

[29] Tr. p.28-29.
[30] Tr. p.29, 22-23.
[31] Tr. p.30, 3-13.
[32] Tr. p.30, 14-18.
[33] Tr. p.31, 6 – p.32, 14.

01-18-0001-4765

suggests that Respondent or his Counsel evidenced a willingness to mediate[34] or submit the disputed funds to escrow pending final resolution[35] as Respondent continued to believe that he owed no obligations whatsoever to Thrivest.

Counsel Wood, however, argued that he called Mr. Buckley prior to the hearing to "...see if we can meet and, you know, mediate this thing in Pittsburgh" to which Mr. Buckley replied that he wasn't interested.[36] Mr. Wood indicated that it was his impression that Claimants wanted the "maximum amount, the amount we feel we're due under the contract, plus attorney's fees. Otherwise, there's nothing to talk about".[37]

This "Emergency Arbitrator" finds that it cannot be credibly argued that Respondent was not fully aware of facts surrounding the dispute such that formal "notice" of the dispute needed to be issued, especially in light of the fact that Respondent had up until recently (and perhaps continues to) view the Agreement as a whole null and void. Moreover, Respondent had been queried repeatedly by Claimant as to the status of the receipt of the Settlement funds in an attempt to allay Claimant's fears regarding potential dissipation, giving Respondent clear and unambiguous notice of Claimant's position and concerns. Likewise, I find that Respondent had been fully aware since at least the time of the filing of the Arbitration Demand in April 2018 of Claimant's expressed desire to escrow the disputed funds pending final resolution of this dispute.

Second, with regard to the meeting in Philadelphia, this Arbitrator finds Claimant's explanation for not moving to implement a formal meeting persuasive.

---

[34] Tr. p.32, 5-14.
[35] Tr. p.33, 2-6.
[36] Tr. p.86, 14 – p.87, 1.
[37] Tr. p.87, 2-6.

Respondent disputed and in fact continues to dispute that a valid, enforceable agreement exists between the parties. This Arbitrator finds the position of Respondent disingenuous to then attempt to defeat the terms of the applicable provision in the Agreement by citing a "precondition" contained within the disputed document and claiming it was not met, when in fact, Respondent has had and continues to have no intention of acknowledging the existence and/or validity of the Agreement in the first place.[38]

Moreover, Respondent has offered nothing that would support a finding that even if "formal" mediation had been attempted/initiated by Claimant, that Respondent would have participated in any meaningful way in light of Respondent's position, and vice versa. *Both* parties argued as to informal overtures made in an attempt to settle which were not acknowledged by the other party as reasonable and/or worthy of further discussion. Such an impasse would certainly indicate that any further attempts at mediating the dispute would be fruitless. Therefore, to use the formal notice and meeting requirements contained within what Respondent considers to be a "False Assignment" with no binding legal effect in an attempt to defeat the Agreement's arbitration mandate, when it is clear Respondent had and continues to have no intention of mediating the dispute, is unpersuasive at best.

2.    *Emergency Relief*

AAA Rule 38 permits an emergency arbitrator to award emergency interim relief upon a showing that "…immediate and irreparable loss or damage shall result in the

---

[38] Mr. Wood, in his closing argument, stated: "Mr. Buckley pointed to provision in the Agreement that he says requires Mr. White to do certain things, well, there's no determination that that's enforceable at all at this point, none.". Tr. p.84, 1-5.

01-18-0001-4765                                                                                    13

absence of emergency relief, and that such party is entitled to such relief...”[39]. Claimant requests that Respondent escrow $1,250,000 of his award into Mr. Wood's account pending final arbitration of all issues.

The Agreement between the parties mandated that Respondent, within 3 business days of receiving his Settlement Distribution, was to:

> "distribute, or cause to be distributed, all such collections and receipts to Buyer (Thrivest), prior to paying any expenses of Seller or making any other distributions, until Buyer has received the TSF Distribution[40] in full. Until disbursement in accordance with the terms of this Section 2(c), Seller shall hold the Purchased Property and other Distributions in trust for Buyer"[41].

The Agreement also states that the "parties agree that the arbitrator shall have authority to grant injunctive or other forms of equitable relief to either party"[42].

Respondent's Answering Statement purports to incorporate all prior Orders of the District Court and Third Circuit "which denied the Claimant's numerous requests for Emergent relief, and/or expedited consideration"[43]. Yet, the most recent Order from the Third Circuit dated April 26, 2019, does not deny the emergent relief requested by Claimant. In fact, in vacating the District Court's Order enjoining Thrivest from pursuing arbitration and dismissing Thrivest's complaint in *Thrivest v. White* and remanding for further proceedings, the 3rd Circuit stated that:

> "...Thrivest's contract gave it only the right to receive settlement funds after the funds are disbursed to a class member, and the District Court's power of the funds and class ends at that point" .... "[I]t also did not have the authority to preclude Thrivest from litigating any of its remaining rights under the agreement".[44]

---

[39] AAA R-38(d).
[40] The TSF Distribution amount as specified in the Agreement is $880,194.29.
[41] Agreement §2(c).
[42] Agreement §6(z)(aa).
[43] It would appear that each of the instances where Claimants requested relief was denied it was done so by Judge Brody or by another Judge on the basis that Judge Brody's prior orders invalidated all cash advance agreements, rendering Claimant's requested relief moot.
[44] 3rd Circuit p.33.

01-18-0001-4765

The 3rd Circuit also stated that the "litigation funding companies will be able to pursue, outside of the claims administration process, whatever rights they many continue to have under their cash advance agreements with class members", and that "[a]ny questions going to the enforceability of the funding agreements will have to be litigated or arbitrated in the appropriate fora".[45]

Claimant also argues that the emergency relief sought "is consistent with Thrivest's ownership of the disputed funds, which Mr. White sold to Thrivest in exchange for the $500,000 advance more than two years ago"[46]. Claimant supports its argument with caselaw affirming injunctive relief to preserve and protect property pending resolution of a dispute.[47] Respondent has not addressed the caselaw cited by Claimant except to characterize it as "inapposite" in that in each case "the aggrieved party came to the tribunal with known facts that established irreparable harm in the absence of relief"; that "[g]iven the Claimant can only speculate, and does not have known facts to supports its request for emergency relief"; and that the Claimant cannot request expedited discovery to "fish" for information but rather "must come with known facts which justify a need for emergency relief"[48].

Respondent's arguments are not persuasive in view of the evidence to the contrary. Not only was there indication back in May 2018 that Mr. White did not have

---

[45] 3rd Circuit p.34.
[46] See Claimant's May 7, 2019 prehearing email to Arbitrator outlining the hearing issues.
[47] See *American Express Travel Related Services Company, Inc. v. Laughlin*, 623 A.2d 854, 856-57 (Pa. Super. Ct. 1993) (affirming injunction enjoining the concealing or dissipation of disputed funds held by fiduciary); and *East Hills TV & Sporting v. Dibert*, 531 A.2d 507, 509 (Pa. Super. Ct. 1987) (holding that seller may be enjoined from using funds in seller's bank so as to prevent potential loss of funds belonging to buyer).
[48] Respondent's May 15, 2019, prehearing email communication to Arbitrator.

01-18-0001-4765                                                                                      15

the $750,000 requested to be escrowed by Thrivest[49], Respondent has never provided any indication, even after the Demand was re-filed in May 2019, as to when Mr. White received the settlement distribution, how much he received, and most importantly, its present status, despite repeated queries by Claimants. Mr. White chose not to participate in this emergency hearing (despite Claimant's formal request for his attendance) and therefore could not be queried as to the status of the settlement funds and/or his intention to honor his Agreement with Thrivest or even his willingness to negotiate in light of Respondent's "defense" that mediation had not first been attempted.[50] Had Respondent simply provided **any** assurance at any time (but certainly after the 3rd Circuit's ruling) that Claimant's investment would be protected in the event Claimant prevailed, it is unlikely that Claimant would have sought emergency relief, or that this "Emergency Arbitrator" would have granted it if requested under the authority of AAA Rule R-38 and the standard set thereunder. Respondent through his lack of transparency regarding the status of the settlement funds has created the emergent situation in which he now belatedly finds himself.

Moreover, Claimant's concern regarding dissipation of funds by Respondent necessitating an emergency order mandating escrow is not without merit. The Agreement mandated that within three (3) business days of Respondent receiving the Settlement Distribution, Respondent would hold the Distribution in trust for Claimant until such time as Claimant had received the TSF Distribution in full[51]. However, Judge

---

[49] See 5/2/18 hearing transcript @p.5, 22-25 "…Mr. W. have to put up $750,000 that I can assure you he does not have…".
[50] Mr. Wood stated in closing argument that "Mr. White did, in fact, offer to pay them back the 475 plus a reasonable rate of interest, and Thrivest said it wasn't interested in that. And that was just, and that was just recently". Tr. p.82 12-18. This was neither admitted nor denied by Claimant.
[51] Agreement §2(c)

01-18-0001-4765

16

Brody's interim Orders arguably provided Respondent with justification for refusing to honor the Agreement up until April 2019 when the 3rd Circuit made clear that the Court had no jurisdiction over Respondent or his settlement proceeds once he had received those proceeds.

In fact, there was a representation made during the 3rd Circuit hearing in May 2018, by class counsel, Mr. Seeger, that "Mr. W. would have to put up $750,000, that I can assure you he does not have. He is going to be stuck paying their attorneys' fees"[52]. This statement was made over a year ago and even at that time it appeared that Mr. White had dissipated his settlement to the extent he would not be able to escrow the $750,000 originally requested by Claimant to be set aside pending resolution of this dispute.

In sum, this Arbitrator finds that there is a strong likelihood that the Claimant will prevail on the merits of this case and that Thrivest's Agreement with Respondent will be enforced pursuant to the terms contained therein. Moreover, Claimant has demonstrated a real likelihood that the settlement funds distributed to Mr. White are in danger of being dissipated, if not already dissipated, such that Claimant will be unable, if successful on the merits, to collect the money owed it pursuant to the Agreement.

With regard to including current and prospective legal fees into the escrowed amount, the issue will depend on whether there is a finding of a breach, and if so, when the breach occurred, as it may be the case that a finder-of-fact does not find that some and/or all of the legal fees were reasonable depending if/when the fact-finder determines a breach occurred. Claimant has urged this Emergency Arbitrator to hold

---

[52] Tr. 59-62 citing Transcript of Telephone Conference Before The Honorable Anita B. Brody, p.5, 23-25.

01-18-0001-4765                                                                                    17

$1.25 million in trust pending a decision on the merits.[53] Mr. Buckley testified that Claimant has expended nearly $250,000 in legal fees and expenses on this matter, and has offered "lightly redacted" legal bills in support of its request that that amount be considered pursuant to the fee-shifting provision of the Agreement when deciding what if any escrow amount might be appropriate.[54]

Respondent counters by arguing that there must first be a breach before the fee-shifting provision would be triggered. That assertion is obviously legally correct. However, for purposes of this emergency motion Claimant is not asking that the fee-shifting be substantively applied at this time; rather, that the legal fees be factored in when considering the amount to be escrowed, if any. Indeed, should Claimant prevail on the merits, which this Arbitrator believes will be likely, Claimant would be entitled to proven reasonable attorneys' fees and costs pursuant to the fee shifting arrangement contained within the Agreement. Accordingly, Claimants have demonstrated the need for equitable emergency relief to include anticipated attorneys' fees and costs.

Accordingly, this Arbitrator orders Respondent to deposit into Mr. Woods' escrow account the sum of $1,250,000 until such time as the merits of this dispute are decided.

## III.   **OTHER DEFENSE ISSUES**

### A.   Lack of Capacity to Sign Contract

Respondent has pled the affirmative defense[55] that Mr. White lacked the capacity to enter into his Agreement with Thrivest, and for that (and other) reasons, no

---

[53] Tr. p.81, 4-6
[54] Tr. 56-57.
[55] Respondent's Answering Statement ¶8

01-18-0001-4765                                                                 18

Agreement exists. While full discussion on this issue would be premature, suffice to say based on the very limited evidence and even argument presented to this Emergency Arbitrator, Respondent's capacity argument appears to be meritless. Mr. White not only signed the Agreement in the presence of his attorney, but in addition, his own treating neurologist provided a signed (but undated) Statement of Mental Capacity indicating Mr. White was diagnosed with ALS on 10/19/16, and that at no time did Mr. White lack the capacity to make independent legal, medical and financial decisions.

Claimant also points to a TV interview during which Mr. White delivered an "eloquent" speech which, at that time, "certainly demonstrates that he had the capacity to enter into this contract..."[56]. While Respondent's Counsel mentions in closing argument that Mr. White "has a separate diagnosis for a cognitive disability that's completely unrelated to the ALS determination", he offered no further evidence on this point, stating that it is beyond the scope of this emergency hearing.[57] Finally, class counsel gave no indication in either District Court or the 3rd Circuit that Mr. White's capacity to contract was at issue.

## Conclusion

The Arbitrator finds that Claimant has sustained its burden of demonstrating ongoing, irreparable harm in the form of dissipation of settlement funds previously distributed to Claimant, and orders Respondent to deposit into escrow the sum of $1,250,000 out of the settlement funds received within two (2) business days as

---

[56] Tr. 74.
[57] Tr. p.89, 11 – p.90, 2.

specified in the accompanying Order of Arbitrator.


Signed: _____          Date: ____06/04/19_____
          Judge Steven I. Platt (Ret.)
          AAA Emergency Arbitrator


01-18-0001-4765                                              20

# EXHIBIT C

## AMERICAN ARBITRATION ASSOCIATION

THRIVEST SPECIALTY FUNDING, LLC

      Claimant

v.                                No: 01-18-0001-4765

WILLIAM E. WHITE             R-38 Emergency Measures of Protection Hearing

      Respondent

## <u>EMERGENCY ARBITRATOR'S INTERIM AWARD<br>OF EMERGENCY RELIEF</u>

UPON CONSIDERATION of Claimant's Application for Emergency Interim Relief, Respondent's Answering Statement, a Hearing having been held via Telephonic Conference Call on May 15, 2019, hearing, at which evidence and the arguments of Counsel were heard and I viewed, is This 31ˢᵗ day of May 2019;

**ORDERED**, that Claimant's Application For Emergency Interim Relief is GRANTED; and it is further;

**ORDERED** that within two (2) business days, Respondent William E. White shall cause the sum of One Million Two Hundred Fifty Thousand Dollars ($1,250,000) (the "Escrowed Funds") to be deposited into the trust account of his attorney, Robert C. Wood, Esq.; and it is further;

**ORDRED** that within one (1) business day of receipt, Attorney Wood shall provide Claimant Thrivest with evidence that Mr. White has so complied and, in addition, furnish evidence of insurance coverage in an amount in excess of the Escrowed Funds; and its further;

1

**ORDERED** that Attorney Wood shall hold the Escrowed Funds in escrow in his trust account pending and subject to a Final Award, further order of the arbitrator, or written agreement signed by the parties; and it is further;

**ORDERED** that deposit of the Escrowed Funds as set forth herein shall not alter the parties' rights and obligations under the Agreement, including the accrual of additional interest on any unpaid obligations; and it is further;

**ORDERED** that this Interim Award of Emergency Relief shall be enforceable in any court of competent jurisdiction.

Signed:_____     Date: _____06/04/19_____
           Judge Steven I. Platt (Ret.)
           AAA Emergency Arbitrator

Copies to:

Peter C. Buckley, Esq.
pbuckley@foxrothschild.com
Attorney for Claimant

Robert Wood, Esq.
rwood@rwoodlaw.com
Attorney for Respondent

Matthew Conger
matthewconger@adr.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THRIVEST SPECIALTY FUNDING, LLC,   :
                                           :

      v.                                  :   Civil Action No. 2:18-CV-1877
                                           :

WILLIAM E. WHITE,                    :

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June, 2019, I caused the Emergency Motion to

Confirm Arbitration Award to be filed with the Court via hand delivery and served on all counsel

of record via e-mail and U.S.Mail, including:

> Robert Wood, Esquire
> Wood Law Limited
> 68 North High Street
> Building B, Suite 202
> New Albany, Ohio 43054
> *Attorneys for Respondent*

> /s/ Peter C. Buckley, Esquire
> Peter C. Buckley, Esquire
> Eric E. Reed, Esquire
> FOX ROTHSCHILD LLP
> 2000 Market Street—20th Floor
> Philadelphia, PA 19103
> (215) 299-2000
> (215) 299-2150 (facsimile)
> *Attorneys for Thrivest Specialty Funding, LLC*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THRIVEST SPECIALTY FUNDING, LLC   :
                                     :
        v.                       :   Civil Action No. 2:18-CV-1877
                                       :
WILLIAM E. WHITE                 :

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2019, upon

consideration of Thrivest Specialty Funding, LLC's ("Thrivest") Emergency Motion to Confirm

Arbitration Award, it is ORDERED as follows:

      1.      Thrivest's Emergency Motion to Confirm Arbitration Award is GRANTED;

      2.      The Emergency Arbitrator's Interim Award of Emergency Relief issued on June

4, 2019 is CONFIRMED, and William E. White is ORDERED to comply as directed therein;

and

      3.      Upon consideration of Thrivest's Complaint to Compel Arbitration, this action is

STAYED in favor of arbitration in <u>Thrivest Specialty Funding, LLC v. White</u>, AAA Case No.

01-18-0001-4765.

                                        BY THE COURT:

                                        _____

                                        BRODY, J.

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THRIVEST SPECIALTY FUNDING,  :
LLC                          :
            Plaintiff,   :      CIVIL ACTION
                  :      No. 18-1877
            v.         :
WILLIAM E. WHITE,            :
            Defendant.   :

## ORDER

AND NOW, this 1st day of July, 2019, it is **ORDERED** that:

- Upon consideration of Thrivest's Complaint to Compel Arbitration (ECF No. 1), this action is **STAYED** in favor of arbitration.[1] The parties must advise the Court of the status of this action upon completion of arbitration.

- Thrivest's Motion to confirm the Emergency Arbitrator's Interim Award of Emergency Relief (ECF No. 21) is **GRANTED** and White's Application to Vacate the Interim Award is **DENIED** (ECF No. 24).[2]

---

[1]     Thrivest seeks to compel arbitration of a dispute arising out of the parties' Non-Recourse Finance Transaction, Sales and Purchase Agreement (the "Agreement"). White argues—in an affirmative defense improperly characterized as a counterclaim—that arbitration should not be compelled because Thrivest did not follow the Agreement's pre-arbitration procedures. However, "'procedural' questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds*, Inc., 537 U.S. 79, 84 (2002) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). *See also John Wiley & Sons*, 376 U.S. at 556-58 (holding that the issue of whether procedural conditions to arbitration have been met is a matter for the arbitrator, not the court). Because White only raises a procedural question, namely, whether Thrivest followed the Agreement's pre-arbitration procedures, the dispute must go to arbitration.

[2]     Thrivest seeks confirmation of the arbitrator's Interim Award of Emergency Relief, which directed White to escrow a portion of the disputed funds. The Court may confirm this Interim Award because it is a "temporary equitable order[ ] calculated to preserve assets or performance needed to make a potential final award meaningful." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991).
    "Under the terms of § 9 [of the FAA], a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11 [of the FAA]." *Hall St. Assocs., L.L.C. v.*

- Thrivest's Motion to Seal its Motion to Confirm Arbitration Award (ECF No. 20) is

    **DENIED**.[3]

 

 

<div style="text-align:center">

/s/ Anita B. Brody
ANITA B. BRODY, J.

</div>

COPIES VIA ECF 7.1.19

---

*Mattel, Inc.*, 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 9). White asks this Court to vacate the award because the Emergency Arbitrator misapplied Rule 38(b) of the Commercial Arbitration Rules and Mediation Procedures, which governs emergency relief. The Court may vacate the Interim Award on this ground only if the arbitrator "so exceeded [his] powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." 9 U.S.C. §10(a)(4). None of the legal errors alleged by White meet this demanding standard.

    White also argues that the Emergency Arbitrator did not have the authority under the Agreement to order emergency relief. This is incorrect: Section 6(aa) of the Agreement states that "the parties agree that the arbitrator shall have authority to grant injunctive or other forms of equitable relief to either party."

[3]    Once a document is filed with the court and "becomes a judicial record, a presumption of access attaches." *In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d. Cir. 2019). "The party seeking to overcome the presumption of access bears the burden of showing that the interest in secrecy outweighs the presumption" and must show "that the disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (internal quotation marks omitted). Thrivest fails to put forth any injury it will suffer if its Motion remains a publicly accessible court record. Therefore, the presumption of public access must prevail.

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THRIVEST SPECIALTY FUNDING, LLC | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 18-1877 |
| v. | : | |
| WILLIAM E. WHITE, | : | |
| Defendant. | : | |

## **ORDER**

**AND NOW**, this __24th__ day of September, 2019, it is **ORDERED** as follows:

1.      Upon consideration of the motions filed by Plaintiff (ECF No. 32, ECF No. 36) and Defendant (ECF No. 35), responding to the Court's Order issued on August 16, 2019 (ECF No. 31), the Court concludes that Plaintiff's Emergency Motion for Contempt (ECF No. 26) is properly before the Court.

2.      A civil contempt hearing will be held on October 10, 2019, at 1:00pm Eastern Standard Time in Courtroom 7-B on the 7th floor of the U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106.  Defendant may arrange to appear by telephone for the hearing by contacting Chambers at 215-597-3978 prior to the date of the hearing.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

COPIES VIA ECF 9/24/2019

# No. 19-3149

# United States Court of Appeals
# For the Third Circuit

IN RE THRIVEST SPECIALTY FUNDING LLC

(Related to *In re: National Football League Players' Concussion Injury Litigation,*
Eastern District of Pennsylvania, No. 2:12-md-02323-AB)

---

## CLAIMS ADMINISTRATOR'S ANSWER TO PETITIONER THRIVEST SPECIALTY FUNDING LLC'S PETITION FOR WRIT OF MANDAMUS

---

**BROWNGREER PLC**
Orran L. Brown, Sr.
250 Rocketts Way
Richmond, VA  23231
Tel: (804) 521-7200

*Claims Administrator*

October 11, 2019

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 3d Cir. L.A.R. 26.1.1, BrownGreer PLC states that (a) it is a privately owned professional limited liability company; (b) it has no parent corporation; and (c) no publicly held corporation owns any stock or other interest in it.

i

# I.   INTRODUCTION

BrownGreer PLC, the Court-appointed Claims Administrator of the Class Action Settlement Agreement in *In re: National Football League Players' Concussion Injury Litigation* ("NFL Settlement"), submits this Answer in response to the Petition for Writ of Mandamus filed by Thrivest Specialty Funding, LLC (Document No. 003113353785) (the "Petition").

# II.   STANDARD OF REVIEW

The Claims Administrator adopts the statement of the Standard of Review in Class Counsel's Answer to the Petition.

# III.   ANSWER

## A.   Thrivest is Not Entitled to Mandamus Relief.

The Claims Administrator adopts the argument of Class Counsel in its Answer to the Petition that Thrivest is not entitled to mandamus relief.  Our Answer provides additional consideration for why this extraordinary remedy is not appropriate.

## B.   This Court's Decision Regarding the Assignment of Claims.

On April 26, 2019, this Court issued its ruling in *In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96 (3d Cir. 2019), affirming in part and reversing in part the Explanation and Order regarding the assignment of monetary claims to third parties entered by the District Court on December 8, 2017 (Document No. 9517) (the "Assignment Order").  The Court affirmed the lower court's holding

1

that any "true assignments – contractual provisions that permit the lender to seek funds directly from the Claims Administrator – are void" under Section 30.1 of the Settlement Agreement. 923 F.3d at 111. It reversed the District Court "to the extent it had purported to void the cash advance agreements in their entirety and void contractual provisions that went only to a lender's right to receive funds after the player acquired them." *Id.* The District Court, its Special Masters and the Claims Administrator have followed this ruling in its entirety.

### C. **The Rules Governing Assignment of Claims.**

The Rules Governing Assignment of Claims attached as **Exhibit A** set the process for our handling of situations involving cash advance agreements between Settlement Class Members and third-party funding companies. The Special Masters adopted these Rules in the exercise of their duties under the District Court's July 13, 2016 Order (Document 6871) appointing them. The Rules were first posted on the official NFL Settlement website on February 22, 2018, and then revised on May 31, 2019.

### D. **The Handling of Assignment Issues Since the Court's Decision.**

The Claims Administrator does not unilaterally void any cash advance agreement. We take no position on whether a cash advance agreement is enforceable, as that issue must be addressed, if at all, outside the claims administration process.

2

Instead, where there has been a cash advance agreement between a third-party funder and a Settlement Class Member who has a payable Monetary Award, we examine the relevant provisions in the cash advance agreement to determine whether it may include a purported assignment that attempts to permit the third-party funder to seek funds directly from the Claims Administrator. Again, such a clause is void *ab initio* and no third-party funder may force us to have the Trustee of the Settlement Fund pay it directly on the basis of such a provision.

Until now, after that analysis, we continued to offer the Settlement Class Member and the third-party funder the opportunity to resolve their cash advance situation if they would like to do so. Under that service, the third-party funder may elect to rescind the prior cash advance agreement and, if the Settlement Class Member also agrees to this resolution, have the Settlement Fund Trustee pay a sum out of the player's Award in full satisfaction of the debt owed by the player. This service has provided benefits to both third-party funders and Settlement Class Members. In this manner, we have helped third-party funders and Settlement Class Members resolve 24 of these transactions, along with any disputes that may exist about the agreements, all of which have been entirely voluntary decisions by those parties.

### E. __The Present Debate Over this Process__.

After this Court's ruling in April, we updated the NFL Settlement Program forms and notices used in the voluntary resolution process in an effort to remove language that might suggest any position on whether a cash advance agreement is legally enforceable.  We also updated the NFL Settlement Program's Frequently Asked Questions for this reason.  However, from a Claims Administrator's perspective, we still needed to complete a review of the agreement to determine if the third-party funder (and Settlement Class Member) might want to participate in the voluntary resolution process and to determine who was entitled to payments, and the amounts of those payments, under the terms of the Settlement Agreement and the District Court's directives.

Throughout this process, the only reason that the Claims Administrator reviewed cash advance agreements was to ensure that payments are made to those entitled, and only those entitled, to compensation under the terms of the Settlement Agreement and the guidelines set forth by the District Court pursuant to the Settlement Agreement.  Our review complied with the guidance of this Court, as we sought simply to discern whether the agreement may be an assignment, where the funder stepped into the shoes of the player to receive payment.  Contrary to Thrivest's characterization (Petition, at 4), we carefully undertook this evaluation not as an assessment of the enforceability of the underlying cash advance agreement,

4

but instead to ensure proper payment processing under the guidelines set forth by the District Court pursuant to the Settlement Agreement.

Thrivest also misunderstands the language of the notice: it simply does not say that the agreement is unenforceable, in whole or in part. The Special Masters and we as the Claims Administrator take no position on the ultimate enforceability of any cash advance agreement. Instead, as this Court has noted, that issue is left up to a court or an arbitrator who may be asked to adjudicate such a defense, among others, if there remains a dispute between the player and the third-party funder.

All notices we have issued since this Court's ruling are intended to comply fully with the Court's holding. The language in our Notices of Assignment Review Determination referencing "assignment[s] that [are] prohibited" is formed from the Settlement Agreement itself to serve our administration of the Settlement and ensure payment only to those entitled to payment. It is not intended as, and indeed we have no authority to present it as, legal opinion.

## F. **The District Court's 9/27/19 Notice and What We Are Doing Now**.

On September 27, 2019, the District Court entered a Notice (Document 10858) affirming the propriety of the Claims Administrator's current processes for resolving Third-Party Funder agreements, and directing the Claims Administrator to propose new rules regarding Third-Party Funder agreements that are streamlined, concise and user-friendly. We are currently working with the Special Masters, under

the supervision of the District Court, to design and put in place such streamlined and concise rules and processes.  We will make every effort in these rules and processes, and any notices or forms we use to implement them, to make it clear that the Claims Administrator takes no position on the ultimate enforceability of any cash advance agreement.

## IV.  <u>CONCLUSION</u>

We adopt the articulation of the high showing Thrivest must make to support a request for writ of mandamus in Class Counsel's Answer to the Petition.  In light of the circumstances described above and those principles, we respectfully submit there are no grounds to grant the Petition and it should be denied.

Respectfully submitted,

**CLAIMS ADMINISTRATOR**

By:  ___/s/ Orran L. Brown, Sr.___
      Orran L. Brown, Sr.
      Virginia State Bar No. 25832
      BrownGreer PLC
      250 Rocketts Way
      Richmond, Virginia  23231
      Telephone:  (804) 521-7200
      Facsimile:  (804) 521-7299
      Email:  obrown@browngreer.com

Dated: October 11, 2019

## COMBINED CERTIFICATIONS

**Orran L. Brown, Sr. certifies as follows:**

**1.     Certification of Bar Membership**

I am signing this Answer to Petition Thrivest Specialty Funding LLC's Petition for Writ of Mandamus by the Claims Administrator and am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

**2.     Certification of Service**

Pursuant to 3d Cir. L.A.R. 113.4(c), on October 11, 2019, an electronic copy of this Answer was filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the Court's CM/ECF system.  All participants in this matter are registered CM/ECF users and service will be accomplished by this Court's CM/ECF system.

**3.     Certification of Type-Volume Limitations, Typeface Requirements and Typeface Style Requirements.**

This Answer complies with the type-volume limitations prescribed by the Court's September 26, 2019 Order.  This Answer is not more than 15 double-spaced pages. This Answer follows the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface style requirements of Fed. R. App. P. 32(a)(6), in that it has been prepared in a proportionately spaced typeface using a 14 point Times New Roman font.

7

4.      **3d Cir. L.A.R. 31.1(c) Certifications**

Pursuant to 3d Cir. L.A.R. 31.1(c), before electronically filing this Answer, the electronic file was scanned using System Center Endpoint Protection version 1.303.1433.0 and no virus or worm was detected in the file.

<div align="center">____/s/ Orran L. Brown, Sr.____</div>

Dated: October 11, 2019



# Exhibit A

<div style="border">

## RULES GOVERNING ASSIGNMENT OF CLAIMS

</div>

# TABLE OF CONTENTS

**Page**

**TITLE I:  GENERAL**................................................................................................1

    Rule 1.   The Purpose of These Rules...........................................................1
    Rule 2.   Adoption of These Rules................................................................1
    Rule 3.   Definitions Used in These Rules ....................................................1

**TITLE II:  ASSIGNMENT REVIEW** .................................................................2

    Rule 4.   Third-Party Funder Transactions Subject to Assignment Review ...............2
    Rule 5.   Assignment Review..............................................................2
    Rule 6.   Review Criteria ..................................................................3

**TITLE III:  PROCESS FOR ASSIGNMENTS** ...................................................3

    Rule 7.   Waiver Form ......................................................................3
    Rule 8.   Payment Steps ...................................................................3

**NFL** CONCUSSION SETTLEMENT

5/31/19

| RULES GOVERNING ASSIGNMENT OF CLAIMS |
| --- |

### TITLE I:  GENERAL

**Rule 1.    The Purpose of These Rules.**  These Rules govern the analysis of transactions involving a Settlement Class Member and a person or entity other than the NFL Parties to determine whether the transaction is an assignment of rights or claims prohibited by Section 30.1 of the Settlement Agreement and the Court's Explanation and Order entered on December 8, 2017 (Document 9517) and the implementation of that Explanation and Order.

**Rule 2.    Adoption of These Rules.**  The Special Masters have adopted these Rules in the exercise of their duties pursuant their appointment by the Court in its July 13, 2016 Order (Document 6871).  The Special Masters may amend these Rules at any time *sua sponte* or after request by the Claims Administrator and such input from Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3.    Definitions Used in These Rules.**  All capitalized terms used in these Rules will have the meanings given to them in the Settlement Agreement.  In addition:

(a)  "Collateralized Loan" means a Third-Party Funder Transaction determined not to be a Prohibited Assignment.

(b)  "Explanation and Order" means the Explanation and Order entered by the Court on December 8, 2017 (Document 9517), regarding the application of Section 30.1 of the Settlement Agreement to monetary claims under the Settlement Agreement.

(c)  "Monetary Claims" means a Monetary Award, Supplemental Monetary Award or Derivative Claimant Award in the Settlement Program.

(d)  "Notice of Assignment Review Determination" means a notice the Claims Administrator will issue after determining with a Special Master whether a Third-Party Funder Transaction is a Prohibited Assignment or is a Collateralized Loan.

(e)  "Prohibited Assignment" means a Third-Party Funder Transaction determined to be an assignment, or attempt to assign, by a Settlement Class Member of Monetary Claims that is void, invalid, and of no force and effect and that shall not be recognized by the Claims Administrator, pursuant to Section 30.1 of the Settlement Agreement and the Explanation and Order.

(f)  "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).

1



(g) "Settlement Class Member" means a Retired NFL Football Player (or the Representative Claimant of a deceased or incompetent Retired NFL Football Player), or a Derivative Claimant, which is how this term is defined in the Settlement Agreement.

(h) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(i) "Special Master" and "Special Masters" mean any one or both of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

(j) "Third-Party Funder" is a person or entity that engaged in a Third-Party Funder Transaction with a Settlement Class Member.

(k) "Third-Party Funder Transaction" is any agreement, contract, document, or arrangement between a Settlement Class Member and a Third-Party Funder involving the actual or potential advance or transfer of funds from the Third-Party Funder to the Settlement Class Member, disclosed to the Claims Administrator before payment of a Monetary Claim to that Settlement Class Member.

(l) "Waiver Form" means the Waiver Relinquishing Rights Under Attempted Assignment contemplated in the Explanation and Order.

## TITLE II:  ASSIGNMENT REVIEW

**Rule 4.    Third-Party Funder Transactions Subject to Assignment Review.** The Explanation and Order requires the Claims Administrator to ask all Settlement Class Members eligible for payment on a Monetary Claim whether they have assigned or attempted to assign their Monetary Claim.  To receive payment from the Claims Administrator, an eligible Settlement Class Member must complete, sign and submit to the Claims Administrator a Sworn Statement: Status of Assignment of Monetary Claim (SWS-5).  If a Settlement Class Member indicates on this Sworn Statement that he/she has assigned or attempted to assign any settlement benefits from his/her Monetary Claim to a Third-Party Funder or borrowed any funds against his/her Monetary Claim as collateral, the Settlement Class Member must provide to the Claims Administrator all documents relating to that Third-Party Funder Transaction.  The Claims Administrator may require the Settlement Class Member and/or the Third-Party Funder to submit such documents and information as the Claims Administrator deems necessary for its review of a Third-Party Funder Transaction under these Rules, by such deadline as the Claims Administrator sets.

**Rule 5.    Assignment Review.** The Claims Administrator will review each Third-Party Funder Transaction with a Special Master to determine whether the Third-Party Funder Transaction is a Prohibited Assignment or is a Collateralized Loan and will notify the affected Settlement Class Member of that decision by issuing a Notice of Assignment Review Determination.  If the Settlement Class Member or Third-Party Funder wishes to challenge the decision, it will be presented to the other Special Master for review, along with any argument



offered by the Settlement Class Member or Third-Party Funder for the Special Master's consideration. The final decision of the Special Master is not appealable to the Court, unless the Special Master or the Court finds that it involves a conclusion of law and that the objecting party has standing to pursue review by the Court.

**Rule 6.   Review Criteria.**  The Claims Administrator and the Special Masters will assess the terms of a Third-Party Funder Transaction to determine whether they reflect the attributes of a Prohibited Assignment under the Explanation and Order. In general, a Third-Party Funder Transaction constitutes a Prohibited Assignment where there is an express assignment of a Monetary Claim. The Claims Administrator and the Special Masters will consider attributes of the transaction to assess the fairness and commercial reasonableness of its terms and whether they reflect the type of transaction the Court found invalid in its Explanation and Order.

## TITLE III:  PROCESS FOR PROHIBITED ASSIGNMENTS

**Rule 7.   Waiver Form.**  On any Prohibited Assignment, the Claims Administrator will issue a Waiver Form for the Third-Party Funder to sign and return within 30 days to (a) indicate the amount advanced to the Settlement Class Member that has not been repaid to the Third-Party Funder and (b) to rescind the Prohibited Assignment and relinquish all claims relating to it. The Claims Administrator will send this Waiver Form to the lawyer for a represented Settlement Class Member and directly to the Third-Party Funder if the Settlement Class Member is not represented by a lawyer. The Waiver Form includes an attachment for the Settlement Class Member to sign and return to the Claims Administrator indicating agreement with the amount of the funds advanced stated by the Third-Party Funder in the Waiver Form.

**Rule 8.   Payment Steps.**  The Claims Administrator will follow these steps to pay a Monetary Claim with a Prohibited Assignment:

(a) **No Complete Waiver:** If the Claims Administrator has not received a timely complete Waiver Form signed by the Third-Party Funder, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court.

(b) **Complete Waiver:** If the Claims Administrator has received a timely complete Waiver Form signed by the Third-Party Funder and the Settlement Class Member agrees with the amount advanced that has not been repaid, the Claims Administrator will direct the Trustee to pay that amount to the Third-Party Funder and pay the balance to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. If the Settlement Class Member has not agreed to the amount advanced that has not been repaid, the Claims Administrator and a Special Master will determine the correct amount from the materials submitted.

(c) **Payment to Settlement Class Members:** The Claims Administrator will direct the Trustee to pay Monetary Claims with a Prohibited Assignment directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*.



4

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody, U.S.D.J. |

**REPLY IN SUPPORT OF THRIVEST'S MOTION TO AMEND RULES GOVERNING
PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS (DKT. 11422)**

Thrivest Specialty Funding, LLC n/k/a Balanced Bridge Funding LLC ("Thrivest") files this reply brief in support of its motion to amend the Rules Governing Payment of Claims Involving Third-Party Funders (the "Rules") and in response to the opposition filed by Class Counsel.

**ARGUMENT**

Rather than addressing the merits of Thrivest's arguments or responding to the specific factual circumstances put forward to support the requested amendments, Class Counsel obfuscates the issues by engaging in speculation, name-calling and a series of "because I say so" arguments that do not apply to Thrivest and are neither grounded in the facts nor consistent with the Third Circuit's clear guidance. This reply addresses Class Counsel's arguments in turn.

**First,** engaging in circular reasoning that begins with a flawed premise, Class Counsel argues that the Court should deny Thrivest's motion because it would "walk back protections afforded to [Players] from prohibited assignments." (Opposition at p. 2). This ignores the entire thrust of Thrivest's motion. If the direct payment of Monetary Awards to Settlement Class Members is intended to protect them from "prohibited assignments," then those Rules should not be applied to Thrivest because the Third Circuit made clear that Thrivest's agreement is <u>not</u> a true assignment prohibited by Section 30.1 of the Settlement Agreement. The Third Circuit explained

that a true assignment is a "contractual provision[] that allow[s] the lender to step into the shoes of the player and seek funds directly from the settlement fund." See Nat'l Football League Players Concussion Inj. Litig., 923 F.3d 96, 110 (3d Cir. 2019).  After reviewing Thrivest's agreement, the Third Circuit concluded that "Thrivest's contract gave it only the right to receive settlement funds after the funds are disbursed to a class member"—i.e., that Thrivest's contract is not a true assignment prohibited by Section 30.1 of the Settlement Agreement.[1]  Id. at 112.  The Rules ordered direct payment to Settlement Class Members following the Court's February 20, 2018 Order targeting "improper assignments," but the Third Circuit subsequently explained that Thrivest's agreement is not an improper assignment.  As such, there is no basis for the Rules to "protect" Settlement Class Members from Thrivest and, as Thrivest's opening brief made clear, such "protection" has led to outcomes that are inefficient, inequitable, and not in the best interests of Settlement Class Members.  Because this "protection" leads to more problems than it solves, the Court should revise the Rules consistent with Thrivest's proposal.

**Second,** without responding to specific arguments in Thrivest's opening brief, Class Counsel flatly asserts that the Rules "comport with all relevant judicial decisions to date." (Opposition at p. 1).  Class Counsel's say-so is the only support for this unfounded assertion and Class Counsel repeatedly mischaracterizes the record to bolster its house of cards.

Class Counsel asserts that the "Third Circuit expressly reserved finding that any particular funding agreement was an assignment" and that "Thrivest finds no aspect of the decision of the

---

[1] Without support, Class Counsel asserts that funding agreements related to this action were usurious. Because Thrivest's agreement does not provide an absolute right to repayment, it is not a loan and thus not subject to the usury laws.  See Obermayer, Rebmann, Maxwell & Hippel v. West, et al., 725 F. App'x 153, 156 (3d Cir. 2018) ("Thus, a transaction that neither guarantees the lender an absolute right to repayment nor provides it with security for the debt is not a loan, and as a result, cannot be subject to New York's usury laws.").  Nevertheless, even if the usury laws did apply, Thrivest's agreement would comply because of the size of the advances involved.

2

Third Circuit to support it." (Opposition at p. 4, 7). These statements are false; in the plain and unmistakable language cited above, the Third Circuit expressly found that Thrivest's agreement was <u>not</u> a prohibited assignment and Thrivest's opening brief specifically cited those aspects of the Third Circuit's decision to show that the Rules violate the Third Circuit's clear guidance.

In yet another example of its attempted sleight of hand, Class Counsel says, "Thrivest, among other third-party lenders whose funding agreements were determined to have been assignments, appealed the Assignment Order (and related decisions), which the Third Circuit largely upheld on April 26, 2019." (Opposition at p. 4). Of course, the Third Circuit reversed the Court's December 8, 2017 Explanation and Order, specifically as it related to Thrivest, "to the extent the [] Court purported to void the cash advance agreements in their entirety and void contractual provisions that went only to a lender's right to receive funds after the player acquired them." <u>See</u> <u>Nat'l Football League Players Concussion Inj. Litig.</u>, 923 F.3d at 113. And so, while the Third Circuit upheld the Court's December 8, 2017 Explanation and Order in part, the part that matters here—whether Thrivest's agreement was a true assignment prohibited by the Settlement Agreement—was specifically and unequivocally reversed.

The Rules are not consistent with the Court's February 20, 2018 Order or with the Third Circuit's decision; Thrivest's agreement is <u>not</u> an "improper assignment" and so the Rules should not divert the flow of funds around the attorneys who would ordinarily receive them simply because the Settlement Class Member has a contract with Thrivest.

**Third,** without any evidence of attorney misconduct in the handling of Monetary Awards, Class Counsel attempts to justify the incongruity in the Rules by arguing that Thrivest's proposed amendments would leave Settlement Class Members "potentially at the mercy of the malfeasance

3

or misfeasance of individual counsel."[2]  (Opposition at p. 6).  Considering the direct evidence of

Settlement Class Member malfeasance and misfeasance set forth in Thrivest's motion, this is an

ironic boogeyman; however, it is not one that justifies a broad remedy based on the unsubstantiated

premise that attorneys representing Settlement Class Members would violate their ethical and legal

duties.  Indeed, as relevant here, the Rules were not designed to protect Settlement Class Members

from their attorneys; they were designed to comply with the Court's February 20, 2018 Order

directed at funders with "improper assignments."  With respect to Thrivest, that reasoning no

longer justifies disparate treatment and Class Counsel cannot justify it after-the-fact with

unsupported speculation about attorney misconduct.

**Fourth and finally**, Class Counsel suggests that the Court should deny Thrivest relief

because the Court has "actively protected the rights of funders when they are successful in

arbitration."  (Opposition at p. 5).  This argument misses the point.  Even when the Court has

enforced arbitration awards and ordered Settlement Class Members to escrow disputed funds, they

have ignored those orders, wasting the disputed funds through reckless spending rather than

comply.  Thrivest's proposal—that the Monetary Awards be routed through the attorneys—does

not modify any substantive rights, it merely preserves the disputed funds with the Settlement Class

Member's attorney until those substantive rights are decided in the appropriate forum.  When the

money is already gone, the Court's enforcement of arbitration awards means little.

## <u>CONCLUSION</u>

Thrivest is not requesting special treatment, only that the Settlement Class Members with

whom Thrivest contracted be treated the same as Settlement Class Members who did not receive

---

[2] Class Counsel's speculation that the attorneys representing Settlement Class Members "would not seek to void funding agreement[s] if the funder pursued collection efforts in arbitration," (Opposition at p. 3), is belied by the vigorous—if unsuccessful—defense put on by the attorneys representing White and Wright.

124876847.1

funding—with the proceeds of their Monetary Award paid to counsel, not to the Settlement Class

Member directly.  This small change will serve to preserve disputed funds, promote sober decision-

making, and avoid inequitable outcomes.  It is also necessary to conform the Rules to this Court's

February 20, 2018 Order and to the Third Circuit's clear mandate.  Thrivest respectfully requests

that the Court enter an Order in the form proposed.

<div align="center">

Respectfully submitted,

/s/ Peter C. Buckley
Peter C. Buckley, Esquire
Christopher C. Popper, Esquire
FOX ROTHSCHILD LLP
2000 Market Street—20th Floor
Philadelphia, PA 19103
(215) 299-2854
(215) 299-2150 (facsimile)

*Attorneys for Thrivest Specialty Funding, LLC
n/k/a Balanced Bridge Funding, LLC*

</div>

July 29, 2021

5

124876847.1

5

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **Hon. Anita B. Brody** |

## EXPLANATION AND ORDER

It has come to the Court's attention that members of the class or their representatives have assigned or attempted to assign monetary claims to third parties. Under the unambiguous language of the Settlement Agreement, Settlement Class Members[1] are prohibited from assigning or attempting to assign their monetary claims to third parties, and any agreement making such an assignment or attempt to assign is void, invalid and of no force and effect. Additionally, under the Settlement Agreement, the Claims Administrator is prohibited from paying a Class Member's monetary award to any third party that holds an assignment or an attempted assignment ("Third-Party Funder").[2]

The purpose of the anti-assignment provision is to protect the interests of Class Members by recognizing that Class Members receiving monetary awards are by definition cognitively

---

[1] Reference to Class Members includes any Class or Subclass Representative. *See* Settlement Agreement § 30.1.
[2] The Claims Administrator, BrownGreer, has already made an official statement that it will not recognize the assignment of any monetary claims. *See* NFL Concussion Settlement Website, Frequently Asked Questions 5.31, available at https://www.nflconcussionsettlement.com/Un-Secure/FAQDetails.aspx?q=67#67.

1

impaired. As the fiduciary of the Class, it is the Court's obligation to enforce this provision of the Settlement Agreement.

**BACKGROUND**

The administration of large settlements can provide unique challenges to the legal system as a whole, and the administration of the NFL Concussion Settlement has certainly been no exception. The issue before the Court was first raised by litigation before Judge Loretta A. Preska in the Southern District of New York. In that litigation, the Consumer Financial Protection Bureau ("CFPB") and the People of the State of New York ("NYAG") brought suit against RD Legal Funding, RD Legal Finance, LCC, RD Legal Funding Partners, LP, and Roni Dersovitz (collectively, "RD Legal"). As part of that suit, RD Legal[3] asserted that assignments of Class Member's monetary claims are permitted under the NFL Concussion Settlement Agreement. Upon learning of that assertion, Co-Lead Class Counsel, Chris Seeger, filed an amicus memorandum before Judge Preska disputing RD Legal's claims. *See CFPB, et al. v. RD Legal Funding, LCC, et al.*, No. 17-cv-890 (S.D.N.Y. Sept. 8, 2017), ECF No. 45.

Judge Preska was presented with the question of whether "the *NFL Concussion Litigation* settlement agreement forbids assignments of settlement benefits." Order at 4, *RD Legal Funding*, No. 17-cv-890 (S.D.N.Y. Sept. 8, 2017), ECF No. 59. Judge Preska referred that question to this Court because it implicates the administration of the settlement and the interpretation of the Settlement Agreement—over which this Court has continuing jurisdiction. *See* Settlement Agreement § 27.1, ECF No. 6481-1 ("Any disputes or controversies arising out of, or related to, the interpretation, implementation, administration, and enforcement of this Settlement Agreement will be made by motion to the Court."); *see also In re Nat. Football League Players'*

---

[3] RD Legal is a Third-Party Funder purports to have purchased assignments of Class Member's monetary claims.

2

*Concussion Injury Litig.*, 307 F.R.D. 351, 426 (E.D. Pa. 2015) ("The Court retains continuing

and exclusive jurisdiction over this action including jurisdiction over . . . all Settlement Class

Members . . . .").[4]

## DISCUSSION

The Settlement Agreement is interpreted under New York Law, Settlement Agreement §

27.1(a), ECF 6481-1, and New York law allows parties to void assignments of contractual rights

so long as the anti-assignment language is unambiguous, *Neuroaxis Neurosurgical Associates,*

*PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 352 (S.D.N.Y. 2013) (collecting cases).

In order to protect Class Members, the Settlement Agreement unambiguously prohibits

Class Members from assigning claims or attempting to assign claims and renders any such

assignment void, invalid and of no force and effect.

> Section 30.1 <u>No Assignment of Claims</u>. Neither the Settlement Class nor any
> Class or Subclass Representative or Settlement Class Member has assigned, will
> assign, or will attempt to assign, to any person or entity other than the NFL
> Parties any rights or claims relating to the subject matter of the Class Action
> Complaint. Any such assignment, or attempt to assign, to any person or entity
> other than the NFL Parties any rights or claims relating to the subject matter of
> the Class Action Complaint will be void, invalid, and of no force and effect and
> the Claims Administrator shall not recognize any such action.

Settlement Agreement, ECF No. 6481-1.

The above section bars the assignment of a Class Member's monetary claims—as can be

shown by a simple syllogism. Section 30.1 prevents a Settlement Class Member from assigning

"any rights or claims relating to the subject matter of the Class Action Complaint." *Id.* The

subject matter of the Class Action Complaint includes the allegations that directly produced the

Settlement Agreement and its monetary claim structure. Thus, any monetary claims under the

---

[4] To address the question, Co-lead Class Counsel, the CFPB, NYAG, and RD Legal submitted
briefs to this Court. *See* ECF No. 8380.

Settlement Agreement are "relat[ed] to"[5] the Class Action Complaint, and assignment of those claims is prohibited.[6]

Therefore, under the Settlement Agreement, Class Members are prohibited from assigning or attempting to assign any monetary claims, and any such purported assignment is void, invalid and of no force and effect. Furthermore, the Settlement Agreement instructs that the Claims Administrator shall not recognize any such action taken by a Settlement Class Member. Thus, Class Members simply cannot enter into a binding agreement that assigns or attempts to assign their claims. A Third-Party Funder that failed to perform proper due diligence before deciding to enter such an agreement is prohibited from now reaping the benefit of the contract.

---

[5] Under New York state law, the phrase "relating to" is commonly given broad scope. *See, e.g.*, *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) (defining "related to" broadly—and more broadly than "arising out of").

[6]     RD Legal argues that the assignment of a Class Member's monetary claim is permissible under the Settlement Agreement. Two main arguments are given, but neither is persuasive.

RD Legal performs linguistic backflips trying to demonstrate that the phrase "rights or claims relating to the subject matter of the Class Action Complaint" does not include Class Members' *monetary claims* and is instead limited to Class Members' *tort claims*. RD Legal's argument fails because its entire analysis is predicated on excising the phrase "relating to" from its interpretation of the Settlement Agreement's text. *See* RD Legal Mem. 10-12, ECF No. 8435 (repeating the phrase "subject matter of the Class Action Complaint" without discussing, at all, the meaning or existence of the preceding words "relating to"). The phrase "relating to" expands the definition of "subject matter of the Class Action Complaint" to include monetary claims under the settlement agreement. RD Legal evades discussing this important phrase, and therefore, its definition of the "plain meaning" of the Settlement Agreement is incorrect.

Also, RD Legal argues that Article 9 of the Uniform Commercial Code invalidates any attempts to restrict the assignment of payments stemming from a legal settlement. RD Legal argues that under Article 9, parties cannot restrict assignment of "a general intangible," which includes settlement proceeds. RD Legal Mem. 8-9, ECF No. 8435. Even if Article 9 covers the Settlement Agreement, the monetary claims under the agreement would be excluded by New York's version of the UCC.

The invalidation of anti-assignment provisions does not apply to "a claim or right to receive compensation for injuries." N.Y. U.C.C. Law § 9-408(d)(1). Clearly, an award that pays money for suffering head concussions is "compensation for injuries." Therefore, New York's UCC provisions allow for parties to create terms that prevent assignment of settlement claims, and RD Legal's argument that the Settlement Agreement cannot restrict assignment under the UCC fails.

Thus, based on the above reasoning, the answer to Judge Preska's question is: yes, the

*NFL Concussion Litigation* Settlement Agreement forbids assignments of settlement benefits.

**CONCLUSION**

The Claims Administrator is instructed to inquire of every Class Member, who is eligible

for an award, as to whether that Class Member has made an assignment or attempt to assign.

Every such class member must provide a verified response to the Claims Administrator. If an

assignment or attempt to assign has been made, the Class Member must also submit to the

Claims Administrator any documents related to the transaction, including any documents signed

by the Class Member's attorney.

To the extent that any Class Member has entered into an agreement that assigned or

attempted to assign any monetary claims, that agreement is void, invalid and of no force and

effect. Class Members receiving awards are, by definition, cognitively impaired. A Third-Party

funder entering an agreement with a Class Member would obviously know that simple fact.

Additionally, the anti-assignment language in the Settlement Agreement clearly states the intent

that Class Members are unable to make assignments. Thus, the Court has little sympathy for a

Third-Party Funder that will not receive a return on its "investment." Nevertheless, under the

principle of rescission, Class Members should return to the Third-Party Funder the amount

already paid to them. Accordingly, if the Third-Party Funder is willing to accept rescission and

execute a valid waiver relinquishing any claims or rights under the entire agreement creating the

assignment or attempted assignment, then the Claims Administrator will be authorized to

withhold—from the Class Member's monetary award—the amount already paid to the Class

Member under the agreement and return it to the Third-Party Funder.

Further instructions to the Claims Administrator will follow. So **ORDERED**.

s/Anita B. Brody

_____

ANITA B. BRODY, J.
                                12/8/2017
_____

DATE

Copies **VIA ECF** on _____ to:                Copies **MAILED** on _____ to:

6



**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **Hon. Anita B. Brody** |

**September 27, 2019**                                              **Anita B. Brody, J.**

**<u>NOTICE</u>**

In light of the concern expressed in a recent mandamus petition filed on September 19, 2019,[1] the Court issues the following clarification regarding the legal status of third-party funder agreements:

1.      On December 8, 2017, the Court issued an Explanation and Order ("Assignment Order") providing that under Section 30.1 of the Settlement Agreement, any agreement entered into by a Class Member "that assigned or attempted to assign any monetary claims . . . is void, invalid and of no force and effect."  Assignment Order at 5, ECF No. 9517.

2.      On April 26, 2019, the Third Circuit affirmed the Assignment Order in part and reversed the Assignment Order in part.  *In re Nat'l Football League Players' Concussion Injury*

---

[1] *See* Petition for Writ of Mandamus, *In re: Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. 2019).

1

*Litig.*, 923 F.3d 96 (3d Cir. 2019). The Third Circuit affirmed that "any true assignments contained within [third-party] cash advance agreements—that is, contractual provisions that allowed the lender to step into the shoes of the player and seek funds directly from the settlement fund—were void *ab initio*." *Id.* at 110. The Third Circuit reversed the Assignment Order to the extent that it "void[ed] the agreements in their entirety." *Id.* at 111.

3.      The Third Circuit "express[ed] no opinion as to the ultimate enforceability of any of the cash advance agreements," but held that any such determination must occur "outside of the NFL claims administration context." *Id.* at 112. The Third Circuit "in no way suggest[ed] that an[y] individual agreement is enforceable," *id.* at 113, and "presume[d] that the full array of standard contract defenses will also apply in any subsequent litigation regarding these agreements. . . . [S]ome of the class members are cognitively impaired, and it is possible that some of them lacked the capacity to contract at the time they entered into the agreements," *id.* at 112. Further, "[t]here may also be issues of unconscionability, fraud, or usury based on the high effective interest rates in the agreements." *Id.*

4.      The import of the Third Circuit decision is clear: the Court has the authority to prohibit the Claims Administrator from paying third-party funders directly from the Settlement Fund, but the overall enforceability of any third-party funder agreements must be litigated or arbitrated outside of the claims administration context. The Court and Claims Administrator have followed the Third Circuit's holding.

5.      To avoid any possibility for confusion, the Court directs the Claims Administrator

to review its guidance and rules regarding third-party funder agreements and propose a

streamlined and concise version that is more user-friendly.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF:  9/27/2019**

3

## PROOF OF SERVICE

The undersigned certifies that on this 2nd day of December 2021 he caused

the foregoing Petition for Writ of Mandamus to be served as follows:

The Honorable Anita B. Brody
United States District Court for the Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Room 7613
Philadelphia, Pennsylvania 19106-1751
**Via Hand Delivery**


All Counsel of Record in:

IN RE:  National Football League Players' Concussion Injury Litigation
U.S.D.C., E.D. Pa., No. 2:12-md-02323-AB
**Via ECF**

_____
Peter C. Buckley, Esquire