# EXHIBIT 1

# No. 21-3238

---

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔉𝔬𝔯 𝔱𝔥𝔢 𝔗𝔥𝔦𝔯𝔡 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

---

In re THRIVEST SPECIALTY FUNDING LLC

(Related to *In re National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323-AB (E.D. Pa.)
(Hon. Anita B. Brody, J.)

---

## CLASS COUNSEL'S ANSWER TO PETITION FOR WRIT OF MANDAMUS OF THRIVEST SPECIALTY FUNDING, LLC n/k/a BALANCED BRIDGE FUNDING LLC

---

Christopher A. Seeger
Diogenes P. Kekatos
**SEEGER WEISS LLP**
55 Challenger Road
6th Floor
Ridgefield Park, NJ  07660
(973) 639-9100

Scott Alan George
**SEEGER WEISS LLP**
1515 Market Street
Suite 1380
Philadelphia, PA  19102
(215) 564-2300

*Class Counsel for the Plaintiff Settlement Class*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................ 1

STATEMENT OF FACTS ......................................................... 4

    A.    Litigation Over Putative Assignments of Monetary Awards ...................................................................... 5

    B.    The Assignment-Related Appeals to This Court .................... 9

    C.    The Aftermath of This Court's Decision ............................. 12

ARGUMENT ........................................................................... 18

    THE COURT SHOULD DENY THRIVEST'S LATEST PETITION FOR WRIT OF MANDAMUS ...................... 18

    A.    Applicable Standards .......................................................... 18

    B.    Thrivest Is Not Entitled to Mandamus Relief ...................... 20

        1.    The District Court Has Acted Within Its Discretion, and Has Fully and Faithfully Followed This Court's Mandate ....................................................................... 20

        2.    Thrivest Has an Alternative Avenue of Relief in Its Pending Motion to Amend the Third-Party Funder Rules ............................................................................. 23

        3.    Thrivest Has Not Established Irreparable Injury ...... 25

        4.    Thrivest Has No Clear Right to Mandamus Relief ..... 28

CONCLUSION ........................................................................ 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. National Football League,*
  137 S. Ct. 607 (2016) ................................................................. 5

*Arthur Young & Company v. United States District Court,*
  549 F.2d 686 (9th Cir. 1977) .................................................... 28

*Communication Workers of America, AFL-CIO v. American*
  *Telephone and Telegraph Company,*
  932 F.2d 199 (3d Cir. 1991) ...................................................... 26

*First Jersey Securities, Inc. v. Bergen,*
  605 F.2d 690 (3d Cir. 1979) ...................................................... 23

*Federal Trade Commission v. Standard Oil Company*
  *of California,*
  449 U.S. 232 (1980) ................................................................... 26

*Gilchrist v. National Football League,*
  137 S. Ct. 591 (2016) ................................................................. 5

*Hassine v. Zimmerman,*
  160 F.3d 941 (3d Cir. 1998) ...................................................... 25

*In re Asemani,*
  145 F. App'x 749 (3d Cir. 2005) ............................................... 24

*In re Bituminous Coal Operators' Association,*
  949 F.2d 1165 (D.C. Cir. 1991) ................................................ 23

*In re Chambers Development Company,*
  148 F.3d 214 (3d Cir. 1998) ............................................................ 19, 20

*In re Cole,*
  606 F. App'x 632 (3d Cir. 2015) ............................................................ 24

*In re Demelio,*
  350 F. App'x 718 (3d Cir. 2009) ............................................................ 24

*In re Diet Drugs (Phentermmine/Fenfluramine/Dexfenfluramine)
  Products Liability Litigation,*
  418 F.3d 372 (3d Cir. 2005) .................................................................. 19

*In re Dorsett,*
  397 F. App'x 776 (3d Cir. 2010) ............................................................ 24

*In re Fine Paper Antitrust Litigation,*
  685 F.2d 810 (3d Cir. 1982) .................................................................. 24

*In re Kaul,*
  778 F. App'x 191 (3d Cir. 2019) ............................................................ 24

*In re Lei Ke,*
  565 F. App'x 84 (3d Cir. 2014) .............................................................. 20

*In re Martinez,*
  594 F. App'x 96 (3d Cir. 2015) .............................................................. 24

*In re McGraw-Hill Global Education Holdings, LLC,*
  909 F.3d 48 (3d Cir. 2018) ...................................................... 19, 20, 22

*In re Montero,*
  417 F. App'x 133 (3d Cir. 2011) ............................................................ 23

*In re National Football League Players' Concussion Injury Litigation,*
   923 F.3d 96 (3d Cir. 2019) ............................................................ *passim*

*In re National Football League Players Concussion Injury Litigation,*
   821 F.3d 410 (3d Cir. 2016). ..................................................................... 5

*In re National Football League Players' Concussion Injury Litigation,*
   307 F.R.D. 351 (E.D. Pa. 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016)...5, 6

*In re Perez,*
   749 F.3d 849 (9th Cir. 2014)..................................................................... 25

*In re Rega,*
   362 F. App'x 246 (3d Cir. 2010)............................................................... 24

*In re Roberts,*
   178 F.3d 181 (3d Cir. 1999) ...................................................................... 19

*In re Sturman,*
   578 F. App'x 70 (3d Cir. 2014).................................................................. 24

*In re Taylor,*
   427 F. App'x 114 (3d Cir. 2011)................................................................ 24

*In re Thomas,*
   438 F. App'x 137 (3d Cir. 2011)................................................................ 24

*Mallard v. United States District Court for the Southern District of Iowa,*
   490 U.S. 296 (1989)................................................................................... 19

*Sacramento Bee v. United States District Court for Eastern District of California, Northern Division,*
  656 F.2d 477 (9th Cir. 1981)................................................................23

*Whitehouse v. Illinois Central Railroad Company,*
  349 U.S. 366 (1955)..........................................................................28

*Will v. Calvert Fire Insurance Company,*
  437 U.S. 655 (1978)..........................................................................29

*Will v. United States,*
  389 U.S. 90 (1967)............................................................................18

**Rules**

Sup. Ct. R. 44(2)................................................................................5

# INTRODUCTION

Through its latest petition for writ of mandamus ("Petition"), Thrivest Specialty Funding LLC n/k/a Balanced Bridge Funding ("Thrivest") once again seeks to have this Court review the day-to-day administration of the class action settlement in the *National Football League Players' Concussion Injury Litigation* ("Settlement" or "Settlement Agreement"). As this Court made clear in addressing purported assignments of Monetary Awards under the Settlement, "the District Court retained broad authority to administer the settlement," including the authority to invalidate any putative assignments. *In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96, 109-10 (3d Cir. 2019).

As to the ultimate resolution of various claims by third-party lenders against individual class members, the Court stated that it "express[ed] no opinion as to the ultimate enforceability of any of the cash advance agreements." *Id.* at 112. Furthermore, the Court appreciated that any distinction between "true" assignments (where the funder "step[ped] into the shoes of the payer and seek[s] funds directly from the settlement fund") and a "false" one (where no legal claim is asserted

directly from the settlement fund) is ultimately irrelevant; the outcome "is the same:  the Special Master will not enforce *any* purported assignment." *Id.* at 110 n.13 (emphasis added).

Any efforts by a funder to enforce a funding agreement (with either a true or false assignment) would be asserted as a matter of individual contract and made before the proper arbitral or other forum and subject to the full range of defenses, including "whether any individual agreement contains a true assignment and whether there remain any enforceable rights . . . after any true assignment is voided, . . . [as well as] lack[ ] [of] capacity to contract, . . . . issues of unconscionability, fraud or usury[.]" *Id.* at 112  (footnote omitted).

The district court has faithfully and fully followed the Court's mandate from that opinion.  In a Notice issued on September 27, 2019, in the wake of Thrivest's first mandamus petition, the district court summarized this Court's mandate, and concluded that the "import of the Third Circuit['s] Decision is clear:  the [District] Court has the authority to prohibit the Claims Administrator from paying third-party funders directly from the Settlement Fund, but the overall enforceability of any third-party funder agreements must be litigated or arbitrated outside of

the claims administration context. The [District] Court and Claims Administrator have followed the Third Circuit's holding." ECF No. 10858 at 2 (¶ 4).

The current Rules Governing Payment of Claims Involving Third-Party Funders ("Third-Party Funder Rules") were promulgated in March 2020, and they establish the process for the payment of claims involving third-party funders such as Thrivest. They expressly acknowledge this Court's decision, making clear that the validity of such funding agreements will be made outside of the claims administration context and leaving that question to be decided in an appropriate forum. Those governing rules explicitly caution members of the Plaintiff Settlement Class ("Class") that, in the meantime, direct payment to them of their Monetary Awards does *not* absolve them of legal obligations to funders who may have made cash advances to them on their awards, and specifically warn class members who are represented by individual counsel that they should *not* assume that their counsel have paid off obligations to third-party lenders.

In addition to the reworking of the administrative payment rules to comport with this Court's decision, the district court has acceded to

Thrivest's requests for enforcement of arbitrators' awards, even resorting to its contempt power in the case of one recalcitrant class member who flouted an order requiring him to escrow funds pending an arbitrator's final decision.

Thrivest is not satisfied with that. It now wants the district court to further modify the payment rules so that class members represented by individual counsel never "touch" any award monies that are owed to lenders who advanced them funds—which would, in effect, oddly treat those loans as proscribed assignments. What is more, it now seeks this Court's intervention a scant four months after the briefing closed on its motion to so amend the payment rules.

Putting aside Thrivest's unwarranted demand for such judicial micromanagement of the Settlement Program, there has been no undue delay on the district court's part in adjudicating Thrivest's motion, and the harm that Thrivest contends it faces is not irreparable. The Court should accordingly deny Thrivest's latest Petition.

## STATEMENT OF FACTS

Thrivest's Petition is the latest outgrowth of the Settlement (ECF No. 6481) in the multidistrict *In re National Football League Players'*

4

*Concussion Injury Litigation.* The district court's April 2015 final
approval of the Settlement was affirmed by this Court in April 2016. *In
re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410
(3d Cir. 2016), *aff'g*, 307 F.R.D. 351 (E.D. Pa. 2015). The Settlement
became operative on January 7, 2017.[1]

## A. Litigation Over Putative Assignments of Monetary Awards

As the Court is well aware by now from various appeals that have
come before it, the Settlement provides an uncapped Monetary Award
Fund that furnishes compensation of up $5 million to retired National
Football League player class members who demonstrate one of a defined
category of Qualifying Diagnoses of neurocognitive and neuromuscular
impairments, including Alzheimer's Disease and other levels of
dementia, Parkinson's Disease, and Amyotrophic Lateral Sclerosis. *See
generally In re Nat'l Football League Players' Concussion Injury Litig.*,

---

[1] The Supreme Court denied review of this Court's decision
affirming the Settlement's final approval on December 12, 2016.
*Armstrong v. NFL*, 137 S. Ct. 607 (2016); *Gilchrist v. NFL*, 137 S. Ct. 591
(2016). Accordingly, by its terms, the Settlement became effective on
January 7, 2017, following the expiration of the time to seek rehearing of
the two *certiorari* denials. *See* Settlement § 2.1(jj), ECF No. 6481-1 at 12-
13 (Effective Date is date "that no future appeal is possible"); Sup. Ct. R.
44(2) (25-day deadline to file petition for rehearing of *certiorari* denial).

307 F.R.D. at 366-68, *aff'd*, 821 F.3d at 423-24; ECF No. 6481-1 at 35-42, 106-10 (Settlement Agreement art. VI & Ex. A-1).

Upon the launch of the Settlement's effectuation, a number of third-party funders and asset purchasers made advances to class members prospectively eligible for such Monetary Awards. In order to circumvent state usury laws, these entities packaged these loans as purchases or partial purchases of the borrowers' awards. *E.g.*, ECF Nos. 8301-5 at 4 (Aff. ¶¶ 2-5), 8301-9, 8301-10 ("Assignment and Sale Agreement[s]," whereby funder agreed to pay class members for portions of anticipated Monetary Awards, typically for around 50% of portion being purchased).

In February 2017, the federal Consumer Financial Protection Bureau and the New York State Attorney General jointly sued one such funder—RD Legal Finance LLC, its principal, and affiliates (collectively, "RD Legal")—in the Southern District of New York, charging it with violations of the federal Consumer Financial Protection Act and sundry New York state statutes stemming from, in relevant part, the putative assignment of portions of Monetary Awards by several class members to RD Legal. ECF No. 8301-3 (S.D.N.Y. complaint).

Concerned that a judicial validation of the putative assignments to RD Legal would have repercussions for the entire Class and expose many of its members to similar predatory practices,[2] Class Counsel sought leave to file an amicus curiae brief in the Southern District of New York action on the issue of whether the Settlement prohibits assignments of Monetary Awards.  In the alternative, Class Counsel proposed that the issue be referred to the district court for resolution given that it had ramifications for the entire Settlement.  Letter motion and proposed memorandum, *CFPB v. RD Legal Funding, LLC*, No. 1:17-CV-00890-LAP (S.D.N.Y. July 25, 2017) (ECF Nos. 45, 45-1).  After consultation, the judge presiding over the CFPB's suit referred the assignability issue to the district court.  Order, *CFPB v. RD Legal Funding, LLC*, No. 1:17-CV-00890-LAP (S.D.N.Y. Sept. 8, 2017) (ECF No. 59).

Following comprehensive briefing (ECF Nos. 8434-35, 8438, 8457-59), the district court issued an Explanation and Order on December 8, 2017 (ECF No. 9517, reported at 2017 WL 8785717).  The district court

---

[2] Many class members suffer from neurocognitive impairments; are in many cases of advanced age (having last played in the NFL many years, or even decades, ago); are in difficult financial straits; or are affected by some combination of these circumstances—factors that render them extremely vulnerable to manipulation by predatory lenders.

held that Section 30.1 of the Settlement ("the Anti-Assignment Provision") "unambiguously" prohibits the assignment of claims, and that its language "relating to the subject matter of the Class Action Complaint" extends to "the allegations that directly produced the Settlement Agreement and its monetary claim structure," and thus to assignments of Monetary Award claims.  ECF No. 9517 at 3-4.[3]  It rejected RD Legal's contention, among others, that the Anti-Assignment Provision bars only the assignment of tort claims.  ECF No. 9517 at 4 n.6.

The district court accordingly declared all putative assignments of Monetary Awards "void, invalid and of no force and effect," and directed the Claims Administrator to obtain a verified response from every class

---

[3] Section 30.1 of the Settlement Agreement provides:

No Assignment of Claims.  Neither the Settlement Class nor any Class or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint.  Any such assignment, or attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action.

ECF No. 6481-1 at 96.

member eligible for a Monetary Award as to whether that member had made an assignment of his award. *Id.* at 5.

On February 20, 2018, the district court issued a follow-up order, directing the Claims Administrator to "pay directly to the Settlement Class Member any and all Monetary Awards in cases where there ha[d] been found an improper assignment of any right or claim pursuant to Section 30.1 of the Settlement Agreement." ECF No. 9749.

## B. The Assignment-Related Appeals to This Court

Following briefing and argument of a slew of appeals taken by RD Legal and other funders from either or both of the district court's orders (ECF Nos. 9559, 9755, 9794 (notices of appeal))—and by Thrivest from several orders, including the district court's May 22, 2018 order enjoining an arbitration it had commenced against class member William White, in which Thrivest sought enforcement of its lending agreement (ECF No. 10027 (notice of appeal); *see* ECF Nos. 9924 (Class Counsel's motion to enjoin arbitration), 10011 (order))[4]—this Court issued an opinion on

_____

[4] Thrivest also appealed (1) the district court's June 28, 2018 denial, without prejudice, on mootness grounds of Class Counsel's motion for an order directing the Claims Administrator to withhold any portions of Monetary Awards purportedly owed to certain third-party lenders (ECF

April 26, 2019, affirming the district court in part and reversing it in part. *In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d at 107-13.

After first addressing which of the appeals were properly before it, *id.* at 104-07, the Court noted that, pursuant to the express terms of the Settlement and the Final Order and Judgment, "the District Court retained broad jurisdiction to administer the settlement and resolve issues relating to it," and held that the All Writs Act allowed the district court to exercise that authority vis-à-vis third parties. *Id.* at 108-09. The Court further held that there was no clear error in the district court's finding that the Anti-Assignment Provision applied to assignments of Monetary Awards, which was "a pure question of interpretation," and it accordingly adopted the district court's reading, concluding that "any true assignments contained within the cash advance agreements—that is, contractual provisions that allowed the lender to step into the shoes of

---

No. 10141 (notice of appeal); *see* ECF Nos. 8470 (motion), 10124 (order)); and (2) the district court's August 30, 2018 dismissal of an action that Thrivest had commenced in the Western District of Pennsylvania against class member White to compel arbitration, and which that court had transferred to the district court, *see Thrivest Specialty Funding v. White*, No. 2:18-cv-01877-AB (E.D. Pa. Aug. 30 and Sept. 7, 2018) (ECF Nos. 13-14) (order and notice of appeal).

10

the player and seek funds directly from the settlement fund—were void *ab initio*." *Id.* at 110 (footnote omitted).

At the same time, though, while commending the district court for its "very able handling throughout this extraordinarily complicated class action and settlement," and "appreciate[ing] [its] steadfast commitment to protecting class members' rights," the Court held that the district court had exceeded its authority by voiding other obligations under the cash advance agreements, including arbitration provisions. *Id.* at 100, 111-12. The Court noted that a court or arbitrator would "need to address whether any individual agreement contains a true assignment and whether there remain enforceable rights under the agreement after any true assignment is voided," and it also reversed the district court's order enjoining Thrivest from pursuing arbitration against class member White. *Id.* at 112-13.

The Court "in no way suggest[ed] that an[y] individual agreement is enforceable," and "presume[d] that the full array of standard contract defenses will also apply in any subsequent litigation regarding these agreements." *Id.* at 112-13. Recognizing that some class members are cognitively impaired, the Court stated that it was "possible that some of

11

them lacked the capacity to contract at the time they entered into the agreements." *Id.* at 112. Finally, although it held that funders could pursue, "outside of the NFL claims administration context," whatever rights they have under their agreements with class members, the Court added that a determination of enforceability would have to be made in the appropriate forum. *Id.* at 113.

## C. The Aftermath of This Court's Decision

Under the process that the Claims Administrator had originally established to implement the district court's December 8, 2017 decision, class members provided any funding agreements they had entered into with third-party funders to the Claims Administrator, who determined, in consultation with the Special Masters, whether the funding agreement was a prohibited assignment. *See* ECF No. 11440-1 at 2 (Decl. ¶ 3). If it was, the Claims Administrator issued a notice to the class member, advising him of the determination and his rights. *Id.* Subsequently, a Resolution Protocol was established, whereby willing funders and class members could resolve any claims for payment of disputed funding agreements, with an appropriate payment being made directly to the funder out of the class member's Monetary Award. *Id.*

12

A striking fact arising from the Claims Administrator's review of the many funding agreements—most of which turned out to be prohibited assignments—was that the class members who had entered into such agreements were typically represented by individual counsel who either were less than diligent in reviewing the Settlement Agreement (including the prohibition of assignments under Section 30.1) for their clients or were themselves complicit in their clients entering into funders' purchase of assignments of their claims. *See id.* at 3 (Decl. ¶ 4).[5]  In either event, such counsel would not seek to void prohibited funding agreements if the funder pursued collection efforts in arbitration. *Id.* at 3 (Decl. ¶ 4).

Accordingly, in its February 20, 2018 follow-up order, the district court had directed that the Claims Administrator pay class members' Monetary Award directly to them "in cases where there has been found an improper assignment." ECF No. 9749. Of course, this directive, which was incorporated in the then-entitled Rules Governing Assignment of

---

[5] One attorney (currently facing disbarment) undertook a scheme to push class member clients into funding agreements (which were later determined to be prohibited assignments) and then used the promised proceeds from those funding agreements to establish a retirement investment fund for other clients—which scheme later collapsed, taking with it many class members' life savings. *See, e.g.,* ECF Nos. 9578, 9750, 11340, 11344.

Claims,[6] assumed that the nature of the funding agreements would be made within the Settlement Program (as contemplated by the district court's December 2017 decision) and payment made directly to the class member only when a funding agreement was determined to be a prohibited assignment (and resort to the Resolution Protocol was not agreed to).

Less than five months after the Court's decision, Thrivest filed its first petition to this Court for mandamus relief, seeking to have it direct the district court to amend the then-operative Rules Governing Assignments. Thrivest contended that those rules were at variance with this Court's decision and were hampering Thrivest's collection efforts. Pet. for Writ of Mandamus at 2-4, 11, *In re Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. Sept. 20, 2019) (Doc. 003113353785). In particular, Thrivest challenged the Claims Administrator's continued

---

[6] Those rules were amended on May 13, 2019, shortly after this Court's decision. ECF No. 11440-1 at 2 (Decl. ¶ 3). In March 2020, they were replaced by what are the currently governing Third-Party Funder Rules. A copy of those rules was appended as Exhibit A to Thrivest's district court motion (ECF No. 11422-2), a copy of which, in turn, is attached as Exhibit 2 to Thrivest's Petition. They are posted on the Settlement Program's official website at https://www.nflconcussionsettlement.com/Docs/rules_governing_payment_of_claims.pdf (last visited Dec. 16, 2021).

review of funding agreements entered into by class members, along with the subsequent notice that the Claims Administrator had provided to those class members about the possible nature of these funding agreements and their rights under Section 30.1's prohibition against assignments of Monetary Awards. *Id.* at 5-6.

"In light of the concern raised in [Thrivest's] mandamus petition," the district court issued a Notice "clarif[ying] the legal status of third-party funder agreements." ECF No. 10858 at 1. The district court directed "the Claims Administrator to review its guidance and rules regarding third-party funder agreements and propose a streamlined and concise version that is more user-friendly." *Id.* at 3. Class Counsel advised this Court of the district court's Notice and maintained that the district court was in compliance with the Court's decision. Class Counsel's Answer to Pet'r Thrivest Specialty Funding LLC's Pet. for Writ of Mandamus ("Answer to Pet.") at 2 & Ex. A, *In re Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. Oct. 11, 2019) (Doc. 003113374560).

In particular, Class Counsel explained that final determination of the enforceability of funding agreements, including under Section 30.1 of the Settlement Agreement, was left to be made outside of the Settlement

Program—and, where funding agreements contain an arbitration provision, by arbitrators hearing any collection action initiated by third-party funders—not the Claims Administrator or the district court. *See* Answer to Pet. at 6-7; *accord* Claims Admr's Answer to Pet'r Thrivest Specialty Funding LLC's Pet. for Writ of Mandamus at 2-3, *In re Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. Oct. 11, 2019) (Doc. 003113374493).

Also, as specifically concerned Thrivest's enforcement efforts against class member White (one of the subjects of this Court's April 2019 decision), Class Counsel noted that the district court had faithfully adhered to this Court's decision by granting Thrivest's emergency motion to confirm an interim arbitration award, directing White to escrow money pending resolution of the arbitration (while denying White's motion to vacate that interim award), and subsequently by scheduling a civil contempt hearing after White failed to comply with the district court's order. Answer to Pet. at 3-4 & Exs. C-D; *see Thrivest Specialty Funding v. White*, No. 2:18-cv-01877-AB (E.D. Pa. July 1 and Sept. 24, 2019) (ECF Nos. 25, 38) (orders). On October 31, 2019, this Court denied Thrivest's

mandamus petition without prejudice. *In re Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. Oct. 31, 2019) (Doc. 003113392583).

Under the "streamlined and concise" Third-Party Funder Rules now in effect, which were issued in accordance with the district court's Notice, the Claims Administrator does not pass on the legality of funding agreements and class members no longer receive a notice of the rights they might enjoy under Section 30.1 of the Settlement Agreement. *See* ECF No. 11440-1 at 3 (Decl. ¶ 5). The Third-Party Funder Rules, though, still afford class members some protections. Because there is no longer an initial determination made as to the nature of any particular funding agreement, whenever a class member discloses a funding agreement of any kind (and the Resolution Protocol is not pursued), payment is made directly to the class member. *See id.* at 4 (Decl. ¶ 6). This protects class members whose counsel have often showed themselves to be less than zealous in protecting their clients' interests when it comes to funding agreements prohibited by the Settlement Agreement. At the same time, however, the Third-Party Funder Rules unambiguously and emphatically caution class members that such direct payments in no way

reflect the discharge or satisfaction of any obligations that they may have to their lenders under their funding agreements. *Id.*[7]

## ARGUMENT

## THE COURT SHOULD DENY THRIVEST'S LATEST PETITION FOR WRIT OF MANDAMUS

Simply stated, Thrivest again fails to satisfy the high standard for justifying the extraordinary remedy of mandamus.

### A. Applicable Standards

Mandamus is "among the most potent weapons in the judicial arsenal." *Will v. United States*, 389 U.S. 90, 107 (1967). So as not to become a backdoor avenue to interlocutory appeal, mandamus

---

[7] *See* Rule 1 of the Third-Party Funder Rules (declaring that "[t]hese Rules do not address the enforceability of the underlying agreements between Third-Party Funders and Settlement Class Members," and that "[a]ny dispute over the enforceability or validity of a Third-Party Funder Transaction must be litigated or arbitrated in an appropriate forum outside of the claims administration context, subject to 'the full array of standard contract defenses' available") (quoting this Court's Apr. 26, 2019 decision); Title III preamble of the Third-Party Funder Rules (declaring, in boldface, that payments made directly to class members have "no bearing whatsoever on the Settlement Class Member's potential legal obligations. For instance, Settlement Class Members receiving such direct payments might be sued by a Third-Party Funder. A Settlement Class Member SHOULD NOT assume that his/her receipt of direct payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.") (boldface emphasis omitted).

jurisdiction is "exceedingly narrow" and allows for far "less opportunity to correct district court error . . . and less opportunity to provide guidance for future cases." *In re Chambers Dev. Co.*, 148 F.3d 214, 226-27 (3d Cir. 1998); *accord In re Diet Drugs (Phentermmine/Fenfluramine/ Dexfenfluramine) Prods. Liab. Litig.*, 418 F.3d 372, 378 (3d Cir. 2005) (mandamus "a drastic remedy that a court should grant only in extraordinary circumstances") (citation and internal quotation marks omitted). As the petitioner, Thrivest must establish clear entitlement to a writ of mandamus. *Mallard v. U.S. Dist. Ct. for the So. Dist. of Iowa*, 490 U.S. 296, 309 (1989).

"Even reversible error by itself is not enough to obtain mandamus." *In re McGraw-Hill Global Educ. Holdings, LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (Smith, J.). Rather, mandamus is an "extraordinary remedy" for which the petitioner must demonstrate (1) a "clear abuse of discretion or usurpation of the judicial power," (2) lack of adequate alternative means to obtain the relief sought, and (3) a "clear and indisputable" right for the issuance of a writ. *In re Roberts*, 178 F.3d 181, 183 (3d Cir. 1999). In addition to these factors, this Court considers the likelihood of irreparable injury. *McGraw-Hill*, 909 F.3d at 57. Even when presented

with those rare circumstances that may rise to the level necessary for the grant of mandamus, the Court retains the discretion to deny the writ. *Id.*

## B. Thrivest Is Not Entitled to Mandamus Relief

Given these high standards, Thrivest's latest Petition fails.

### 1. The District Court Has Acted Within Its Discretion, and Has Fully and Faithfully Followed This Court's Mandate

Although it is "axiomatic" that it must proceed in accordance with a mandate, a district court remains "free to make any order or direction in further progress of the case, not inconsistent with [the Court's] decision." *In re Chambers Dev. Co.*, 148 F.3d at 225 (citation and internal quotation marks omitted). Thrivest may not agree with the minutiae of the implementation of rules and procedures related to funding agreements, but it provides no basis for the Court to grant its Petition. A district court must be free to proceed "courageously in exercising [its] discretion" after remand. *In re McGraw-Hill*, 909 F.3d at 57 (citation and internal quotation marks omitted). This Court has cautioned that it "will not grant writs of mandamus to micromanage ongoing proceedings in the District Court." *In re Lei Ke*, 565 F. App'x 84, 85 (3d Cir. 2014) (citing cases; internal quotation marks omitted).

20

Notably, the Third-Party Funder Rules that Thrivest urges this Court to order, by way of mandamus, the district court to rewrite are fully compliant with the Court's mandate. Under those rules, no determination is made whether any funding agreement is or is not an assignment prohibited by the Settlement Agreement, and no distinction is made at any juncture between those agreements that may be valid and those that are *de jure* invalid. Thrivest's contention that the district court continues to treat its agreements as if they were prohibited assignments (Petition at 12) is thus plainly incorrect.

Moreover, although Thrivest thinks that it would better if Monetary Awards were paid directly to the individual counsel of represented class members, irrespective of whether a class member has entered into a funding agreement (Petition at 14), a no time did this Court declare that Thrivest or any other funder enjoys a right to have payments made to represented class members' counsel. Rather, the Third-Party Funder Rules treat all lenders who seek to enforce their funding agreements the same, Thrivest among them. The district court has duly balanced, on the one hand, its obligations as a fiduciary to class members, by helping ensure that funders who have lured them into

21

improper assignments do not seize their Monetary Awards, and, on the other, its duty under this Court's decision to ensure that funders such as Thrivest are not thwarted in enforcing their legitimate rights, including in collecting arbitration awards from recalcitrant borrowers.

Even if the Court's mandate were construed as expansively as Thrivest apparently desires, such administrative matters are not tantamount to an abuse of discretion necessary to warrant extraordinary mandamus relief. "More than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion" is necessary. *In re McGraw-Hill*, 909 F.3d at 57 (citation and internal quotation marks omitted).

Put another way, Thrivest's belief that payment of Monetary Awards to the individual counsel of represented class members instead of directly to the class members themselves would better guarantee that funders' legitimate loan advances are repaid (*see* Petition at 14) does not demonstrate that the district court has acted impermissibly in adopting

the current funder-related payment structure to implement this Court's decision.[8]

## 2. Thrivest Has an Alternative Avenue of Relief in Its Pending Motion to Amend the Third-Party Funder Rules

Mandamus may provide a remedy only if "there are no other adequate means of relief." *First Jersey Secs., Inc. v. Bergen*, 605 F.2d 690, 700 (3d Cir. 1979) (citing cases). Here, the briefing of Thrivest's motion to amend the Third-Party Funder Rules concluded a scant four months before Thrivest sought this Court's intervention. *See* ECF No. 11448 (Thrivest's reply br. filed July 29, 2021).

To be sure, *protracted* delay may eventually result in the denial of due process, such that mandamus relief is appropriate. *Cf.*, *e.g.*, *In re Montero*, 417 F. App'x 133, 134-35 (3d Cir. 2011) (expressing concern that district court had failed to act on motion to vacate sentence for over a

---

[8] *Cf. In re Bituminous Coal Operators' Ass'n*, 949 F.2d 1165, 1169 (D.C. Cir. 1991) ("We would be reluctant to invoke the heavy artillery of a prerogative writ to second guess the district court's judgment— informed by its experience in this litigation[.]"); *Sacramento Bee v. U.S. District Ct. for E. Dist. of Cal., N. Div.*, 656 F.2d 477, 483 (9th Cir. 1981) (although "preferable alternatives" existed, district court's failure to consider them "d[id] not present such clear error as to warrant the grant of the extraordinary writ of mandamus").

year); *In re Asemani*, 145 F. App'x 749, 750 (3d Cir. 2005) (noting case where 14-month delay was so prejudicial as to violate due process).

Generally, though, a district court's management of its docket is discretionary. *In re Cole*, 606 F. App'x 632, 633 (3d Cir. 2015) (citing *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982)). The district court's four and one-half month delay in resolving Thrivest's motion falls well short of an extreme delay amounting to the district court's abdication of its jurisdiction.[9] As such, the district court should

---

[9] *See, e.g., In re Kaul*, 778 F. App'x 191, 192 (3d Cir. 2019) (eight-month delay from filing of appeal from Bankruptcy Court did not warrant mandamus relief); *In re Martinez*, 594 F. App'x 96, 98 (3d Cir. 2015) (elapse of seven months since preliminary injunction and magistrate judge's report and recommendation concerning other issues relating to prisoner's habeas petition became ripe for review "d[id] not rise to the level of a failure to exercise jurisdiction"); *In re Sturman*, 578 F. App'x 70, 71 (3d Cir. 2014) ("Although an eight-month delay is not insignificant and does raise some concern, we do not believe that it is so lengthy as to justify our intervention at this time.") (internal citation omitted); *In re Thomas*, 438 F. App'x 137, 138-39 (3d Cir. 2011) (four-month delay in adjudicating motion for relief from judgment did not warrant mandamus relief); *In re Taylor*, 427 F. App'x 114, 115 (3d Cir. 2011) (eight-month delay in adjudicating motion challenging district court's jurisdiction insufficient); *In re Dorsett*, 397 F. App'x 776, 777 (3d Cir. 2010) (five-month delay in adjudicating motion to correct sentence not tantamount to failure to exercise jurisdiction); *In re Rega*, 362 F. App'x 246, 247-48 (3d Cir. 2010) (four-month delay in adjudicating motion to compel discovery insufficient); *In re Demelio*, 350 F. App'x 718, 720 (3d Cir. 2009) (eight months from filing of reply in support of motion to vacate sentence

be permitted to resolve Thrivest's motion in the proper course, so it can exercise its judgment and balance the interests of both class members and funders, as it has done thus far. *Cf. In re Perez*, 749 F.3d 849, 858 (9th Cir. 2014) ("The proper balancing of these competing interests lies within the discretion of the district court[.]").

### 3. Thrivest Has Not Established Irreparable Injury

Thrivest's claimed injury is that class members "can still seek to oppose enforcement of contractual funding obligations, but not with the benefit of collection risks brought about by the Direct Payment Order, the Payment Rules, and their since-rejected reasoning." Petition at 14-15. This is not even an injury, let alone an irreparable one. The "Direct Payment Order" that Thrivest complains of—that is, the February 20, 2018 follow-up order that provided for direct payment of Monetary Awards to class members whenever it was determined that there had been a prohibited assignment (ECF No. 9749)—was subject to this Court's mandate and is no longer operative. The currently governing Third-Party Funder Rules do not call for a declaration regarding the

---

insufficient); *see also Hassine v. Zimmerman*, 160 F.3d 941, 954 n.12 (3d Cir. 1998) (delay must be "extraordinary").

validity of any funding agreements, leaving that issue to appropriate tribunals, in keeping with this Court's mandate. Class members still enjoy the right to challenge funding agreements, and all defenses remain in play for these class members.

In its April 2019 decision, this Court reached no conclusion as to any particular agreement before it, and it expected that enforcement of funding agreements would play out through normal channels, such as through arbitration. This Court did not intimate or forecast who the winners or losers of such processes would be.

The Court is left with Thrivest's laments about "collection risks." Petition at 12, 15. As a lender, though, Thrivest is in the very business of undertaking such risks. It should not be heard to complain about them. That Thrivest may have to expend some effort and expense to pursue certain recalcitrant class members does not justify the extraordinary relief of mandamus. *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.") (citation and internal quotation marks omitted); *Commc'n Workers of Am., AFL-CIO v. AT & T*, 932 F.2d 199, 210 (3d Cir. 1991) ("[T]he fact that AT & T must

26

bear the inherent costs of litigation is not so consequential a harm that we would be justified in issuing a writ of mandamus to prevent further proceedings.").

Nor is the district court obligated to serve as Thrivest's adjunct and ensure that its collection efforts are entirely trouble-free and cost-free. Indeed, were it required, as Thrivest insists, to order payment of Monetary Awards to the counsel of represented class members, thus entirely bypassing those members, that would in essence treat those members' loans as the very sort of assignments that this Court held the district court was within its purview to declare illicit in the first place— which would be an ironic (if not illogical) result.

As Thrivest proceeds in its arbitration of funding disputes with class members (if there are more than the few Thrivest mentions in its Petition and the pending motion below), Thrivest will no doubt continue to enjoy the district court's assistance in enforcing the awards it receives. The reality is that, sometimes, collection risk will mean that less than a full judgment or award will be collected upon.

Ultimately, Thrivest is unable to identify any clear and definable injury to support its Petition, and it speaks only in terms of possibilities

and likelihoods. Mandamus jurisdiction, though, requires more than mere possibilities of harm. *See Whitehouse v. Illinois Cent. R.R. Co.*, 349 U.S. 366, 373 (1955) (speculative injuries do not warrant resort to mandamus, which is "governed by equitable considerations and is to be granted only in the exercise of sound discretion"); *Arthur Young & Co. v. U. S. Dist. Court*, 549 F.2d 686, 692 (9th Cir. 1977) ("[T]he proponent of the writ must also demonstrate that the harm *will*, in all likelihood occur, absent the writ.") (emphasis added).

## 4. Thrivest Has No Clear Right to Mandamus Relief

Thrivest does not address the requirement that the right to a writ of mandamus be "clear and irrefutable." The only right that Thrivest can be said to have as a result of the Court's mandate is the right to test the enforceability of its funding agreements before a court or arbitrator. The current Third-Party Funder Rules do nothing to impede Thrivest's right to do so. By its own account, it is doing that. Furthermore, when it obtains a judgment or award, Thrivest can turn to the district court in aid of enforcement. Thrivest obtained no right, let alone a "clear and irrefutable" right to funnel the payment of Monetary Awards in particular ways, and for its convenience. How Monetary Award funds

are distributed is squarely within the district court's discretion. "Where a matter is committed to the discretion of a district court, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665-66 (1978) (footnote omitted).

In sum, there is no basis in law (or its lending agreements) for Thrivest's latest effort to seek this Court's intervention in the district court's oversight of the Settlement in general or, specifically, the Third-Party Funder Rules that the Special Masters approved to regulate payments of Monetary Awards where a third-party funder is involved. Thrivest points to nothing in this Court's April 2019 decision; nor does it provide any support in the general legal landscape or even its own funding agreements.

Rather, left waiting for a decision on its recent motion with the district court (ECF No. 11422), the briefing of which concluded just over four months ago (*see* ECF No. 11448 (Thrivest's dist. ct. reply br.)), it has grown impatient. Thrivest argues only that it has had difficulty collecting from some class members with whom it entered into funding agreements after it prevailed in arbitration to enforce its agreements. It

29

neglects, though, to properly credit the district court for having *supported* Thrivest's efforts to confirm and enforce such arbitration awards, including, where warranted, having resorted to its contempt power against class member noncompliance. *E.g.*, Ex. A (*Thrivest Specialty Funding v. Wright*, No. 2:18-cv-04764 (E.D. Pa. Jan. 2, 2020) (ECF No. 75) (order confirming arbitrator's award, including attorneys' fees and expenses, and awarding post-judgment interest)); Ex. B (*Thrivest Specialty Funding v. White*, No. 2:18-cv-01877 (E.D. Pa. Oct.17, 2019) (ECF No. 44) (entering contempt order after defendant class member failed to comply with escrow order confirming arbitrator's interim award)). While fulfilling its obligation to act as a fiduciary to the Class, at the same time the district court has not countenanced efforts by some class members to evade their legal obligations to funders such as Thrivest. In light of all this, there is no basis for the extraordinary relief that Thrivest seeks.

# CONCLUSION

For the foregoing reasons, the Court should deny the Petition.

**Dated:** December 16, 2021

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
(NY 2425304)
(NJ 042631990)
Diogenes P. Kekatos
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07760
(973) 639-9100
cseeger@seegerweiss.com
dkekatos@seegerweiss.com

Scott Alan George
**SEEGER WEISS LLP**
1515 Market Street
Suite 1380
Philadelphia, PA 19102
(215) 564-2300
sgeorge@seegerweiss.com

*Class Counsel for the Plaintiff Settlement Class*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 21(d)(1), 32(a)(5), 32(c)(2), and 32(g) of the Federal Rules of Appellate Procedure, the undersigned hereby certifies that Class Counsel's Answer to Petition for Writ of Mandamus of Thrivest Specialty Funding, LLC n/k/a Balanced Bridge Funding LLC ("Answer") complies with the type-style and type-volume limitations prescribed for an answer to a petition for writ of mandamus. The Answer was composed in the 14-point Century Schoolbook font and, as measured by the word processing program used to prepare it (Microsoft Word 365), is 6,240 words in length.

*/s/ Christopher A. Seeger*
Christopher A. Seeger
(NY 2425304; NJ 042631990)

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to 3d Cir. L.A.R. 28.3(d) (2011), I certify that I am a member of the Bar of this Court.

## CERTIFICATE OF VIRUS SCAN

Pursuant to 3d Cir. L.A.R. 31.1(c) (2011), I certify that a virus detection program has been run on this file and that no virus was detected. The virus detection programs utilized were Norton 360, version 22.21.11.46, and Malwarebytes Premium, version 4.5.0.152.

*/s/ Christopher A. Seeger*
Christopher A. Seeger
(NY 2425304; NJ 042631990)

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THRIVEST SPECIALTY FUNDING, LLC | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 18-4764 |
| v. | : | |
| TOBY L. WRIGHT, | : | **FILED** |
| Defendant. | : | |

**JAN - 2 2020**

**KATE BARKMAN, Clerk**
**By_____Dep. Clerk**

**ORDER**

**AND NOW**, this _____ day of January, 2020, it is **ORDERED** that Plaintiff Thrivest's

uncontested Motion to Confirm Arbitration Award (ECF No. 72) is **GRANTED** as follows.

**JUDGMENT** is hereby entered in favor of Thrivest and against Defendant Toby L. Wright. Mr.

Wright must comply with the terms of the Final Award of Arbitrator dated November 5, 2019

(attached), as amended by the Modified Award of Arbitrator dated November 20, 2019 (also

attached).[1]

In addition, Mr. Wright must pay post-judgment interest under 28 U.S.C. § 1961 on the

following portions of the Arbitration Award:

- Mr. Wright must pay post-judgment interest on any amount of the $76,462.35 award

  for attorney's fees—listed in paragraph 3 of the Final Award of Arbitrator (November

  5, 2019), and amended in the Modified Award of Arbitrator (November 20, 2019)—

  that remains unpaid after the date of this Order.

---

[1] On November 20, 2019, the Arbitrator modified the Final Award to increase the amount of
attorney's fees and expenses from the original sum of $55,376.28 to the modified sum of
$76,462.35. All other aspects of the November 5, 2019 Final Award stayed the same.

- Mr. Wright must pay post-judgment interest on any amount of the $32,725.00 award for administrative fees—listed in paragraph 4 of the Final Award of Arbitrator (November 5, 2019)—that remains unpaid after the date of this Order.

This post-judgment interest will begin to accrue from the date of this Order.[2]

ANITA B. BRODY, J.

COPIES VIA ECF

O:\ABB 2020\L - Z\Thrivest v. Wright - Order Confirming Final Arbitration Award (Jan 2 2020).docx

---

[2] *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . .  Such interest shall be calculated from the date of the entry of the judgment . . . .").

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration
### Under AAA Commercial Rules and Mediation Procedures
### Amended and effective October 1, 2013

In the Matter of the Arbitration between

**Case 01-19-0001-5334**

**Thrivest Specialty Funding, LLC**

       **Claimant,**

**Represented by Peter Buckley, Esq. and Eric Reed, Esq. both of Fox Rothschild, LLP**

**And**

**Toby L. Wright**

       **Respondent**

**Ex Parte**

## FINAL AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated October 3, 2016, and having been duly sworn, and having fully reviewed and considered the written submissions of both parties, and having duly heard the proofs and allegations of the Claimant at the evidentiary hearing held on October 4, 2019, and the Respondent having failed to appear at the evidentiary hearing after due notice by mail in accordance with the Rules of the American Arbitration Association (the "Association"), and the Emergency Arbitrator having previously rendered an Interim Award of Emergency Relief dated June 26, 2019, and the undersigned Arbitrator having issued an Order dated August 30, 2019, hereby, AWARD, as follows:

1.     This Award is made pursuant to the Commercial Arbitration Rules and Mediation Procedures of the Association.

2.     On or before November 30, 2019, Respondent shall pay to Claimant the sum of Five Hundred Eighty-eight Thousand One Hundred Ninety-two and 90/100 Dollars ($588,192.90) (the "Principal Award"). Respondent shall pay to Claimant interest at the rate of nineteen percent (19%) per annum accruing daily and compounding annually, or if less, the maximum permitted by applicable law, on any amount of the Principal Award remaining unpaid after November 30, 2019 until the Principal Award is paid in full.

3.     Respondent shall pay to Claimant the sum of Fifty-five Thousand Three Hundred Seventy-six and 28/100 Dollars ($55,376.28) on account of attorney's fees incurred by the Claimant.

4.     The administrative fees of the Association totaling $12,325.00, and the compensation of the Arbitrators totaling $20,400.00 shall be borne by Respondent. Therefore, Respondent shall reimburse Claimant the sum of $32,725.00, representing that portion of said fees in excess of the apportioned costs previously incurred and paid by Claimant.

5.     The Interim Award of Emergency Relief dated June 26, 2019 is made a part hereof and shall remain in effect.

6.     The Order of the Arbitrator dated August 30, 2019 is made a part hereof and shall remain in effect.

7.     The Counterclaim of Respondent is DENIED.

8.     This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims and counterclaims not expressly granted in this Award are denied. This Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.


November 5, 2019
_____
Date

Robert C. Pfeilsticker Jr


I, Robert C. Pfeilsticker Jr., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

November 5, 2019
_____
Date

Robert C. Pfeilsticker Jr.


01-19-0001-5334

2

## AMERICAN ARBITRATION ASSOCIATION
### Commercial Arbitration
### Under AAA Commercial Rules and Mediation
### Procedures Amended and effective October 1, 2013

In the Matter of the Arbitration between

**Case 01-19-0001-5334**

**Thrivest Specialty Funding, LLC**

      **Claimant,**

**Represented by Peter Buckley, Esq. and Eric Reed, Esq. both of Fox Rothschild,**

**LLP And**

**Toby L. Wright**

      **Respondent**

**Ex Parte**

---

### MODIFIED AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated October 3, 2016, and having been duly sworn, and having previously rendered an Award dated November 5, 2019, and Peter C. Buckley, Esq. on behalf of Claimant having requested a modification by email dated November, 5, 2019, and the Respondent having failed to respond after due notice in accordance with the Rules of the American Arbitration Association, do hereby, DECIDE, as follows:

      1.    Numbered Paragraph 3 of the Award dated November 5, 2019 is hereby replaced with the following:   Respondent shall pay to Claimant the sum of Seventy-six Thousand Four Hundred Sixty-two and 35/100 Dollars ($76,462.35) on account of attorney's fees and expenses incurred by the Claimant.

      2.    In all other respects, the Award dated November 5, 2019 is reaffirmed and remains in full force and effect.

November 20, 2019
    Date

                            Robert C. Pfeilsticker Jr.

1

I, Robert C. Pfeilsticker Jr., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

November 20, 2019
      Date

Robert C. Pfeilsticker Jr.

2

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THRIVEST SPECIALTY FUNDING,      :
LLC      :
         Plaintiff,      :      CIVIL ACTION
     :      No. 18-1877
         v.      :
WILLIAM E. WHITE,      :
         Defendant.      :

## EXPLANATION AND ORDER

**AND NOW**, this __17TH ___ day of October, 2019, for the reasons that follow, the Court

holds Defendant William E. White in **CONTEMPT** of the Court's July 1, 2019 Order (ECF No.

25) ("Escrow Order") confirming the Emergency Arbitrator's Interim Award directing White to

escrow $1,250,000 pending resolution of arbitration, and imposes the civil contempt sanctions

listed in paragraph 5 below:

1.       A civil contempt order may issue if the district court finds that (1) "a valid order

of the court existed," (2) "the defendant[] had knowledge of the order," and (3) "the defendant[]

disobeyed that order." *Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009) (citation and

internal quotation marks omitted). The party moving for contempt sanctions must prove each

element by "clear and convincing evidence, and ambiguities must be resolved in favor of the

party charged with contempt." *John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*, 318

F.3d 545, 552 (3d Cir. 2003) (citations and internal quotation marks omitted).

2.       Thrivest has satisfied this burden. First, the Court's Escrow Order is valid.[1]

Further, White does not dispute that he had knowledge of the Escrow Order. Finally, White does

not dispute that he has not escrowed the funds.

---

[1] White appealed the Court's Escrow Order, and on October 8, 2019, the Third Circuit summarily
affirmed it. *See* Order, *Thrivest Specialty Funding v. William White*, No. 19-2771 (3d Cir. Oct. 8, 2019).

3. Once a prima facie showing of contempt is made, the charged party may raise a defense that it is unable to comply with the order. 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 2960 (3d ed. 2019). White argues that he is financially unable to comply with the Court's Escrow Order. The relevant focus of this defense is "*present* inability to comply with the order in question." *United States v. Rylander*, 460 U.S. 752, 757 (1983) (citations omitted). Courts "will not be blind to evidence that compliance is now factually impossible. Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the [alleged contemnor] has a burden of production." *Id.* That burden requires "evidence beyond a mere assertion of inability." *Harris v. City of Philadelphia*, 47 F.3d 1311, 1324 (3d Cir. 1995) (citations and internal quotation marks omitted). Rather, the "contemnor must show categorically and in detail why he is unable to comply," and "unless [the party claiming financial inability] is completely impoverished, he must comply to the extent that his finances permit." *United States v. Baker Funeral Home, Ltd.*, 196 F. Supp. 3d 530, 554 (E.D. Pa. 2016) (citations and internal quotation marks omitted).

4. Despite multiple chances to do so, White has not satisfied his burden of proving inability to comply. White has offered only nine heavily redacted pages of bank statements for an unidentified account, covering a period from June 21, 2019 to August 20, 2019, showing that the account had a balance of $487.48 as of August 20, 2019. ECF No. 42-1. Because the statements go only to August 20, 2019, White has not presented an up-to-date picture of his *present* inability to comply. *Rylander*, 460 U.S. at 757. Further, aside from the fact that the statements bear his name, White has not offered any sworn declaration or other proof authenticating that the statements accurately portray an account that belongs to him. Finally,

2

White also offers no proof—or even any assertion—that the account reflected in the statements contains all of his current assets.  In short, White's submission is far too incomplete to "show categorically and in detail why he is unable to comply."  *Baker Funeral Home*, 196 F. Supp. 3d at 554.

5.     Accordingly, the Court holds White in contempt of the Court's Escrow Order and imposes the following civil contempt sanctions:

> a.  Unless and until White complies with the Escrow Order or submits adequate proof of his inability to comply, any bank, financial institution, or brokerage institution, or other person or entity holding any funds, securities, or other assets in the name of, for the benefit of, or under the direct or indirect control of White, must prohibit the withdrawal, removal, transfer, or other disposal of those funds, assets, or securities.  This sanction, however, will not apply to any withdrawal, removal, transfer, or other disposal of funds necessary to allow White to make medical expenditures.

> b.  Unless and until White complies with the Escrow Order or submits adequate proof of his inability to comply, White is prohibited from making any non-medical expenditures in excess of $500 without Court approval.

> c.  Plaintiff Thrivest may serve this Order on any financial institutions, banks, persons, or other entities mentioned in paragraph 5(a).

> d.  The Court may impose further sanctions if White persists in his failure to either comply with the Escrow Order or prove his inability to comply.  **On October 31, 2019**, **at no later than 2:00pm EST,** Thrivest must submit a status report updating the Court on White's compliance.

3

s/Anita B. Brody
_____
ANITA B. BRODY, J.

COPIES VIA ECF  10/17/2019