# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>                                    Plaintiffs,<br>    v.<br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>                                    Defendants. | |
| THIS DOCUMENT RELATES TO:<br><br>Shenaq PC v. SPID 100008517<br>Attorney Lien Dispute No. 1469<br><br>AND<br><br>Howard and Associates, P.A. v. SPID 100008517<br>Attorney Lien Dispute No. 1646 | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                       December 21, 2021

      Before the Court for Report and Recommendation is the assertion of Attorney Liens by Shenaq PC ("Shenaq") and Howard and Associates, P.A. ("Howard") against the Award granted to their former joint client, Settlement Class Member ("SCM") No. 100008517, R.K. ("Player"), in the litigation that became part of this class action, *In re: National Football League Players' Concussion Injury Litigation*, No. 12-md-2323 (E.D. Pa.). Player first entered into a contingent fee agreement ("CFA") with Howard in April 2017, and that firm later brought in Shenaq as co-counsel. Player is currently represented by lawyers at Pro Athlete Law Firm, P.A. ("Pro"), who

he retained on May 22, 2019 during the pendency of a claim filed in April 2019 by Shenaq.

Shenaq filed a Notice of Attorney's Lien in June 2019 "for reasonable attorney's fees plus reasonable expenses" and identified the petitioners as "Shenaq PC and its co-counsel," which it did not name.[1]  (Lien Doc. 2a.)  Howard filed its own lien in April 2020, seeking reimbursement of costs it expended and recovery of attorney's fees as well.  (Lien Doc. 2b.)

Pro received notice from the Claims Administrator of Shenaq's lien on June 18, 2019 and of Howard's lien on April 29, 2020.  The Claims Administrator ultimately approved Player for an award and issued a Notice of Monetary Award Claim Determination on July 1, 2020.  With the approval of Player's award and the withholding of funds for counsel fee, the lien disputes became ripe for review.

The District Court referred all Petitions for individual attorney's liens to this Magistrate Judge, *see* Doc. No. 7746, and Rules Governing Attorneys' Liens ("Rules") were adopted on March 6, 2018 and amended on October 3, 2018.  (Doc. Nos. 9760 and 10283).  Pursuant to these Rules and through the Claims Administrator, we issued a Schedule of Document Submission on September 1, 2020 that was addressed to Pro, Shenaq, and Howard (the "Parties").

On September 8, 2020, the Parties submitted a global Withdrawal of Attorney's Lien Dispute form pursuant to Rule 24 (the "Withdrawal"), which addressed both of the pending liens. The Withdrawal set out an agreement that had been reached as to the portion of Player's Monetary Award that each law firm would receive as its fee from funds currently available for distribution, as well as how to allocate any portion of the 5% holdback that may be released in the future.  The

---

[1] We suspect that the "co-counsel" to whom Shenaq referred was Howard, but resolution of this question is not necessary for the disposition we propose in this Report and Recommendation.

agreement was negotiated by law firms that presumably were informed and concerned about their own interest.

We reviewed the Withdrawal and the contingency fee agreements of Howard and Pro, and we understood Player to have consented to joint representation by Howard and Shenaq. In consideration of the Presumptive Fee Cap (Doc. No. 9863), we concluded that the fee to be paid to each firm was reasonable, as the allocations did not exceed the percentage for which the Parties contracted with Player and given that the collective fees were within the percentage allowed under the 22% Presumptive Fee Cap. We concluded that the Withdrawal should be granted and that the Claims Administrator should be ordered to distribute the attorneys' fees to the Parties as set forth in the Withdrawal. We also reviewed the itemized costs submitted by the lienholder firms and the provision of the fee agreement Player entered into that provided for reimbursement of costs expended by Howard and any associated counsel, which at some point came to be Shenaq. We concluded that the firms could recover the fees and the costs reflected in the Withdrawal.

On September 18, 2020 we submitted a Report and Recommendation to the Court that it grant the withdrawal of the lien dispute and order the Claims Administrator to distribute the attorneys' fees and costs as set forth in the Withdrawal. Before the Court rendered a final decision, however, it learned of a November 25, 2020 report from the Claims Administrator (updated on December 10, 2020) that an audit revealed evidence that Howard presented to the Court inflated costs for reimbursement in a lien dispute concerning representation of another SCM.[2] In that case,

---

[2] The Court has been provided a copy of the full Audit Report. A redacted version of the report and the subsequent "Special Masters' Rule 27 Decision on the Report of Adverse Finding Regarding Howard & Associates, P.A., and Related Parties" of June 22, 2021 is available at: https://www.nflconcussionsettlement.com/Docs/howard_associates_sm.pdf.

Howard also sought reimbursement for costs attributable to three providers for which it seeks reimbursement here. The Court remanded the Report and Recommendation in this case "for reconsideration in light of the Claims Administrator's findings." (Doc. 11291.)

**A Closer Look**

*Representations as to costs in the lien filings*

In this matter, Shenaq first filed a lien on behalf of itself "and its co-counsel" – which it did not name – "for reasonable attorney's fees plus reasonable expenses," and noted that "[p]roof of Attorney's lien will be submitted to the Claims Administrator." It simultaneously submitted to the Claims Administrator a copy of Player's CFA *with Howard* (not with Shenaq) and a statement that "Shenaq PC and its co-counsel, Howard & Associates, P.A. have incurred a total of $6,648.96 in costs" in connection with "the workup" of Player's concussion claim. (Lien Doc. 2a.) Howard filed its lien several months later and sought "reasonable attorney's fees, plus expenses," although it did not itemize any expenses in its lien filing for which it sought recovery.

*Representations as to costs in the withdrawal submissions*

The Claims Administrator served the Schedule of Document Submissions on September 1, 2020 calling for opening briefs to be filed in the lien dispute involving the three firms. A week later, the Parties presented their Withdrawal form, reflecting a proposed resolution of the attorney's lien disputes. The Withdrawal agreement provided that Shenaq would receive reimbursement for costs in the amount of $6,648.96 and that Howard would similarly receive reimbursement for costs in the amount of $3,850.00.[3] The Withdrawal form advised the Parties that:

> Costs for the current attorney or Attorney Lienholder(s) must have been provided to the Claims Administrator in the Statement of Fees and Costs and the Lien assertion(s), respectively. Each attorney

---

[3] The Withdrawal also provided for a division of attorney's fees among the three firms.

>    must attach to this Withdrawal an itemized list of costs with a brief
>    description of each cost and the date each cost was incurred.

(Lien Doc. 11.)  *See also* Lien Rule

Shenaq's Withdrawal form attached two additional pages concerning costs.  The first purported to provide "an itemized list of costs incurred by Shenaq PC" but identified a different SCM.  (Lien Doc. 12.)  When we requested clarification as to the client for whom these costs were incurred, Shenaq re-submitted the list to identify Player by the correct name and SPID and modified the introductory language that referred to the costs incurred as "by Shenaq PC *and co-counsel*."  (*Id.* (emphasis added).)  The list of costs remained the same: $998.96 for transportation and travel expenses; $4,500.00 for a neuropsychology evaluation; and $1,450.00 for a neurology evaluation.  The list did not identify any of the providers of these evaluations and dated them only to "2018."  The total added to $6,948.96.  The second page of the Withdrawal submission by Shenaq was the statement submitted to the Claims Administrator at the same time it filed its lien on the docket representing that "Shenaq PC and its co-counsel, Howard & Associates, P.A. have incurred a total of $6,648.96 in costs in connection wit[h] the workup of [Player's] NFL Concussion Claim."

Howard also attached to its Withdrawal submission two pages concerning costs, neither of which made reference to the statement of Shenaq as to costs incurred by it or Howard.  The first appended page was a chart that listed a column of "expense[s]" and another column identified only as "HA" – perhaps referencing Howard & Associates as the party that advanced the funds.  Expenses listed as "Flights," "Uber," and "Lodging" did not have a corresponding cost under the "HA" column but rather were blank.  However, "food" was listed as $200.00; a particular MAF physician identified in the Audit Report as "Provider 8" was associated with a cost of $2,500.00; two neuropsychologists identified in the Audit Report as "Providers 6 and 7" were associated with

a $4,000.00 expense; and a "CDR" expense was listed as $1,000.00. The total was $7,700.00. A handwritten note added: "These expenses were incurred on 4/26/17." The next page of the submission was a copy of a September 9, 2020 letter from Tim Howard of Howard & Associates to Player's current counsel at Pro, repeating the list of costs described on the first page (and spelling out CDR as "Clinical Dementia Rating") and reporting that the firm would provide a 50% discount and seek only $3,850.00 for its costs. (Lien Doc. 13.)

When we compare the costs for which Howard and Shenaq seek reimbursement (whether "discounted" or not), the following chronology emerges:

| Date cost allegedly incurred | Reason for expenditure | Amount of cost | Party seeking reimbursement |
|---|---|---|---|
| 4/26/2017 | [Provider 8][4] | $2,500.00 | Howard |
| 4/26/2017 | [Providers 6 & 7] | $4,000.00 | Howard |
| 4/26/2017 | Clinical Dementia Rating | $1,000.00 | Howard |
| 4/26/2017 | Food | $200.00 | Howard |
| 2018 | Transportation and travel expenses incurred as part of medical evaluations | $998.96 | Shenaq on behalf of "Shenaq and co-counsel" (Howard) |
| 2018 | Neurology evaluation (provider not identified) | $1,450.00 | Shenaq on behalf of "Shenaq and co-counsel" (Howard) |
| 2018 | Neuropsychology evaluation (provider not identified) | $4,500.00 | Shenaq on behalf of "Shenaq and co-counsel" (Howard) |

We know that the providers listed by Howard from 2017 are the same ones whom Howard was found in the Claims Administrator's Audit Report to have improperly influenced as to reports

---

[4] These providers' names were redacted from the publicly-filed version of the Audit Report and Special Masters' decision. We refer to them as they were referred to in the redacted documents.

prepared for other SCMs who were Howard's clients.[5]  In addition, the Audit Report found evidence of widespread inflation of costs by Howard.[6]  While the Audit did not turn up evidence of what Howard actually paid to Providers 6, 7 or 8 for their contribution to the representation of his player clients, the Audit Report did find evidence of inflation of the cost of a "CDR."[7]  Therefore, we cannot recommend a Withdrawal be granted where Howard receives any reimbursement (even at a "discount" as its communication suggests) for costs it allegedly advanced on behalf of Player.

Shenaq has not identified by name the providers who conducted the neurology and neuropsychology evaluations it refers to in 2018, so we cannot assess at this time whether they are

---

[5] The Audit Report revealed, for example, that Attorney Howard sent an email to these three providers on July 6, 2017 enclosing a "working draft report" in Microsoft Word format for them to use for any "updates" on testing previously done for his clients.  (Audit Report at 28-29.)  Subsequent email communications reveal that Providers 6 & 7 were being listed as signatories on neuropsychological testing reports for clients that neither had personally examined but rather whose testing had been administered by another individual, who lacked the credentials to render an opinion in the Settlement Program.  (*Id.* at 29-30.)  Provider 6 advised the Claims Administrator that she never personally examined any players, yet her name appeared in neurologist's reports as the source of the neuropsychological testing.  (*Id.* at 27.)

[6] The Audit Report suspected that in one case in which Howard sought costs as part of an attorney's lien, it listed the cost of a neurology evaluation at $7,000 but only paid that provider $3,500.  The Audit Report also described "a picture of a complex process for cost billing that Howard has set up" using a case support services company for funding.  The principal of that business, for example, advised Howard's then-preferred neurologist in one case to bill the funding company a discounted rate of $500 or $525 for an MRI (which was the facility's discounted cost, according to the neurologist) but that the funding company would then bill Howard $1,000 for that MRI.  The cost of $1,000 would then be passed on to the client, leaving the funder and/or Howard to the difference.  In a lien dispute involving a different client than referenced in the billing communications described above, Howard represented that an MRI from that same facility cost $1,125, a mark-up of more than 100%.

[7] Howard listed the CDR in this case, incurred on April 26, 2017, at $1,000.  In another case examined in the Audit, a CDR attributed to a particular nurse on January 4, 2017 was listed as $900 yet that nurse told the Audit team that she was paid only $500 per CDR evaluation.  (Audit Report at 40.)

providers that may have been improperly manipulated in the manner described in the Audit report. But inasmuch as Shenaq is seeking reimbursement on behalf of itself *and Howard*, we would be hesitant to accept the validity of the expenses without further information. We would expect that any repeated request by Shenaq for reimbursement for expenses in this lien dispute would be supported by further information as to the dates on which the costs were advanced, the name of the provider that conducted the evaluation, and the entity that advanced the costs.

With the benefit of the findings of the Audit Report described above, we cannot recommend that the Withdrawal presently before the Court be granted, as it provides reimbursement to Howard (and to Shenaq potentially acting on behalf of Howard) for costs which may be inflated and/or which are attributed to providers with whom Howard has interfered on behalf of other clients seeking awards in this Settlement Program. These concerns also extend to the question of whether the Court should approve of any Withdrawal proposal in which fees are allocated to Howard.

## RECOMMENDATION

**AND NOW**, this 21st day of December, 2021, it is respectfully **RECOMMENDED** that the withdrawal of lien dispute be **DENIED** and the Claims Administrator be ordered to issue a new Schedule of Document Submissions for briefing and resolution of these lien disputes.

The Parties may file objections to this Report and Recommendation. *See* Rule 25(d).

BY THE COURT:

/**s**/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br>                                        Plaintiffs,<br>    v.<br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>                                        Defendants. | |
| THIS DOCUMENT RELATES TO:<br><br>Shenaq PC v. SPID 100008517<br>Attorney Lien Dispute No. 1469<br><br>AND<br><br>Howard and Associates, P.A. v. SPID 100008517<br>Attorney Lien Dispute No. 1646 | |

## ORDER

**AND NOW**, this         day of                    , 202   , upon consideration of the Report and Recommendation of United States Magistrate Judge David R. Strawbridge (ECF No. _____), and any objections thereto, it is **ORDERED** that:

1. The Report and Recommendation is **ADOPTED**;

2. The Withdrawal of the Lien Dispute is **REJECTED**; and

3. The Claims Administrator is **ORDERED** to issue a new Schedule of Document Submissions to the Parties as to the two lien disputes.

BY THE COURT:

_____

ANITA B. BRODY, J.