**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | No. 14-cv-00029-AB |

**MOTION OF THE NFL PARTIES AND CLASS COUNSEL TO
APPROVE MODIFICATIONS TO THE NFL CONCUSSION
SETTLEMENT AGREEMENT PURSUANT TO SECTION 6.6**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 3

    A.    Class Action Settlement Agreement ............................................................. 3

    B.    The Mediation ............................................................................................... 5

    C.    The New Method and Development of Long-Term Norms ........................... 7

PROPOSED MODIFICATIONS TO THE CLASS ACTION SETTLEMENT
AGREEMENT PURSUANT TO SECTION 6.6 ................................................... 10

    A.    Elimination of Race Norming and Race Demographic Estimates ....................... 12

      i.   Prospective Elimination of Race Norming and Race Demographic Estimates ... 13

     ii.    Automatic Retrospective Rescoring ................................................................ 15

    B.    Expanded BAP Examinations ........................................................................ 18

    C.    New Settlement Claim Submissions ............................................................. 21

    D.    Notice to the Class ........................................................................................ 24

CONCLUSION ........................................................................................................ 25

The National Football League and NFL Properties LLC (the "NFL Parties"), and Class Counsel (collectively, the "Parties") respectfully request that this Court approve the attached proposed order implementing agreed-upon modifications to the definitions of the Qualifying Diagnoses and protocols for making Qualifying Diagnoses pursuant to Section 6.6 of the Class Action Settlement Agreement. As set forth below, the Parties' proposed modifications are necessary to implement the agreement (the "Norming Agreement") to remove any consideration of race by clinicians when rendering Qualifying Diagnoses in the NFL Concussion Litigation Settlement Program (the "Settlement Program"), which will provide significant benefits to the class.

## INTRODUCTION

The Parties to the NFL Concussion Litigation Settlement Agreement seek approval of their proposed modifications to the Settlement Agreement pursuant to Section 6.6, which remove any consideration of race in neuropsychological evaluations by clinicians in the Settlement Program and provide additional benefits to certain Retired NFL Players whose prior evaluations may have been impacted by such consideration. Intervenors Najeh Davenport and Kevin Henry join the Parties in seeking the relief set forth in the attached proposed Order.

As this Court is well aware, demographically-adjusted test scores—which often take into account a person's age, level of education, gender, and race—have long been used in clinical neuropsychology to avoid the misdiagnosis of Black test-takers, who were misdiagnosed with cognitive impairment at up to three times the rate of their White counterparts due to testing bias and social inequity. The use of demographic adjustments, including race, in the Settlement Program in connection with standard tests long used in the

field was recommended by neuropsychological experts in pursuit of accurate diagnoses under the Class Action Settlement Agreement.

Nevertheless, recognizing the desire of many in medicine, including in the field of neuropsychology, to remove the consideration of race as a proxy to correct for test bias and social inequity, the NFL Parties, Class Counsel, and Intervenors engaged in a mediation to lead this complex effort overseen by Magistrate Judge David Strawbridge. From the outset of the mediation all parties were committed to finding an alternative to the use of race norms in the Settlement Program, and worked collaboratively and diligently to do so.

To that end, the Parties engaged a panel of leading expert neuropsychologists (the "Expert Panel") who worked tirelessly to develop a new race-neutral assessment method for use in the Settlement Program (the "New Method"). While the New Method will be used on an interim basis to remove the consideration of race from the Settlement Program immediately, the Expert Panel is continuing its work to create race-neutral, long-term demographic corrections specifically applicable to the population of retired NFL Players. The Parties hope that this important work will help the field of neuropsychology with its recently stated goal to eliminate the consideration of race in demographic adjustments in the field generally.[1]

The interim New Method is diagnostically sound, and the Parties have agreed to implement it immediately on a prospective basis. In addition, to redress any prior

---

[1] *See Position Statement on Use of Race as a Factor in Neuropsychological Test Norming and Performance Prediction*, Am. Acad. of Clinical Neuropsychology (2021), https://theaacn.org/wp-content/uploads/2021/11/AACN-Position-Statement-on-Race-Norms.pdf ("AACN Position Paper") (supporting "the elimination of race as a variable in demographically-based normative test interpretation" and "the development of testing methods and practices that reduce bias and inequity in clinical assessment and decision-making," while acknowledging that "[p]rogress toward these goals will be slow and iterative and will require patience from neuropsychology practitioners and the public [they] serve").

consideration of race in the Settlement Program, the Parties have agreed to provide additional benefits to certain Settlement Class Members who were potentially impacted by such consideration, including the automatic rescoring of certain Retired Players' testing using the New Method, and the opportunity for certain other Retired Players to receive an additional free evaluation using the New Method, or to rescore and resubmit prior evaluations.

In order to accomplish these goals, the Parties must make certain modifications to the Class Action Settlement Agreement—specifically by replacing Exhibit A-2 of the Class Action Settlement Agreement to reflect the New Method and approving the additional benefits for certain Retired Players whose prior testing may have been impacted by the consideration of race. These modifications are expressly authorized under Section 6.6 of the Class Action Settlement Agreement, which allows the Parties to, with approval of the Court, make "modifications to the definitions of Qualifying Diagnoses and/or the protocols for making Qualifying Diagnoses, in light of generally accepted advances in medical science." (Class Action Settlement Agreement § 6.6(a), ECF No. 6481-1.)

Because the proposed modifications achieve the desired and laudable goal of removing the consideration of race from the Settlement Program and provide additional benefits to the Class, the Parties request that the Court promptly enter the proposed Order effectuating the relevant sections of the Norming Agreement and replacing the Class Action Settlement Agreement's Exhibit A-2 with Exhibit 2 to this Motion.

## **BACKGROUND**

### A.    **Class Action Settlement Agreement**

On April 22, 2015 (as amended on May 8, 2015) this Court, after significant briefing and a full fairness hearing, issued its final Order and Judgment approving the Class Action Settlement Agreement and certifying the Settlement Class. (Am. Final Order & J.

¶¶ 2–4, 7, ECF No. 6534.)  Following an appeal by certain objectors, the Third Circuit affirmed the Court's Final Order and Judgment.  *In re Nat'l Football League Players' Concussion Inj. Litig.*, 821 F.3d 410 (3d Cir. 2016).  The Class Action Settlement Agreement became effective on January 7, 2017, and this Court retained "continuing and exclusive jurisdiction" over the Class Action Settlement Agreement's administration and enforcement. (Class Action Settlement Agreement § 27.1.)

The Class Action Settlement Agreement provides Monetary Awards for, among other diagnoses, Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment, and provides Supplemental Benefits for diagnoses of Level 1 Neurocognitive Impairment.  (*See* Class Action Settlement Agreement, Ex. A-1 (the "Injury Definitions").)  Qualifying Diagnoses of Levels 1, 1.5, or 2 Neurocognitive Impairment generally require neuropsychological testing and other evidence establishing that a Retired Player is experiencing the degree of cognitive decline set forth in the Injury Definitions for each diagnosis.  (*Id.*)  Consistent with long-standing neuropsychological practice and to facilitate accurate diagnoses, the Class Action Settlement Agreement permitted, but did not require, the clinicians who render Settlement Program diagnoses to consider a Retired Player's race in scoring his neuropsychological test results for Qualifying Diagnoses of Level 1, Level 1.5, and Level 2 Neurocognitive Impairment.

Specifically, the Class Action Settlement Agreement allowed the consideration of race during neuropsychological evaluations in two ways.  First, clinicians had the option of using demographic data to estimate a Retired Player's premorbid intellectual ability either alone ("demographics only") or in combination with the Test of Premorbid Functioning.  (*See* Class Action Settlement Agreement, Ex. A-2 § 3.)  Second, when assessing a Retired Player's

4

performance on neuropsychological testing, clinicians were permitted (but not required) to utilize normative databases that aggregate neuropsychological test scores from people who represent the general population without the presence of neurocognitive problems, against which specific neuropsychological test scores obtained from a Retired Player are compared in order to help identify if the Retired Player's performances are similar to, or significantly different from, what is expected for a person of similar background characteristics, which could include a person's race. (*See id.* § 4.)

Under the terms of the Class Action Settlement Agreement, the Parties agreed to periodically "discuss in good faith possible prospective modifications to the definitions of Qualifying Diagnoses and/or the protocols for making Qualifying Diagnoses, in light of generally accepted advances in medical science." (Class Action Settlement Agreement § 6.6(a).) To make such a modification, the Parties must enter into a written agreement and seek approval from the Court. (*Id.*)[2] The Parties may make such modifications under Section 6.6(a) "on a periodic basis not to exceed once every ten [] years." (*Id.*)

## B. The Mediation

In August 2020, Settlement Class Members Najeh Davenport and Kevin Henry (the "Intervenors") brought legal actions, including a putative class action complaint, challenging the Settlement Program's practice with respect to the possible consideration of a Retired Player's race when assessing his neuropsychological test results for the purpose of

---

[2]  Section 6.6(a) of the Class Action Settlement Agreement provides in full: "Subject to the constraints of Section 6.6(b), following the Effective Date, on a periodic basis not to exceed once every ten (10) years, Co-Lead Class Counsel and Counsel for the NFL Parties agree to discuss in good faith possible prospective modifications to the definitions of Qualifying Diagnoses and/or the protocols for making Qualifying Diagnoses, in light of generally accepted advances in medical science. No such modifications can be made absent written agreement between Co-Lead Class Counsel and Counsel for the NFL Parties and approval by the Court, and neither Co-Lead Class Counsel nor Counsel for the NFL Parties shall seek modification to the definitions of Qualifying Diagnoses and/or the protocols for making Qualifying Diagnoses other than with the written agreement of the other regarding such modifications."

rendering Qualifying Diagnoses of Level 1, Level 1.5, and Level 2 Neurocognitive Impairment.  (*See* Mot. for Relief, ECF No. 11169; Compl., *Henry et al.* v. *Nat'l Football League et al.*, 2:20-cv-04165 (E.D. Pa. Aug. 25, 2020), ECF No. 1.)  The Intervenors also challenged the employment of the BAP Clinician's Interpretation Guide (also known as the "BAP Guide"), adopted in 2017, which recommended the use of the so-called Heaton norms, including race norms, in administering neuropsychological tests.  (*Id.*)  The NFL Parties filed a motion to dismiss Intervenors' complaint on November 2, 2020 on the ground that the lawsuit constituted an improper collateral attack on the Class Action Settlement Agreement, which the Court granted on March 8, 2021.  (Order, *Henry et al.* v. *Nat'l Football League et al.*, 2:20-cv-04165 (E.D. Pa.), ECF No. 40.)  The Intervenors also filed: (1) a motion, pursuant to Article XXVII of the Class Action Settlement Agreement, seeking an interpretation of that Agreement which prohibited the use of race norms, and (2) an appeal from the Special Master's ruling with respect to the claim for benefits by Mr. Davenport.  (*See* Mot. for Relief, ECF No. 11169.) The Court denied the Article XXVII motion without prejudice on November 20, 2020.  (*See* Order, ECF No. 11237.)

        In its order dismissing Intervenors' class action complaint, the Court noted its "concern[] about the race-norming issue" and referred the Parties to mediation, supervised by Magistrate Judge David Strawbridge to address the use of "Race Norms"[3] in the Settlement Program (the "Mediation").  (Order at 1, *Henry et al.* v. *Nat'l Football League et al.*, 2:20-cv-04165 (E.D. Pa. Mar. 8, 2021), ECF No. 40.)  Intervenors filed a motion to intervene and, on April 8, 2021, the District Court entered an Order "[a]ppreciating that Henry and Davenport, through their counsel . . . had raised a very important issue—particularly in the context of the

---

[3]    *See* footnote 8, *infra*, for the definition of "Race Norms" as used in this Motion.

65-year life of the [Class Action] Settlement Agreement . . . ." (Explanation & Order at 2, ECF No. 11325.) On June 3, 2021, the District Court granted the motion to intervene in part, noting that "intervention may facilitate the ongoing mediation process . . . ." (Explanation & Order at 2, ECF No. 11368.)

Since that time, the NFL Parties, Class Counsel, and Intervenors have been working collaboratively and diligently under the supervision of the Magistrate Judge in furtherance of the District Court's March 8, 2021 Order to remove Race Norms from the Settlement Program. To that end, as a result of these efforts and based on the work of a panel of expert neuropsychologists, including those retained by Class Counsel and the NFL Parties, as well as a neutral Court-approved Appeals Advisory Panel Consultant ("AAPC"), on October 20, 2021 the NFL Parties, Class Counsel, and Intervenors entered into the Norming Agreement (ECF No. 11502; attached as Exhibit 1),[4] which among other things, eliminates the use of Race Norms from the Settlement Program. Although Section 6.6 does not require the Intervenors to formally join this Motion, they support the Parties' requested relief.

**C.    The New Method and Development of Long-Term Norms**

In furtherance of the Parties' and Intervenors' goal of removing Race Norms from the Settlement Program, the Expert Panel developed a new assessment method, which completely eliminates the use of race norms in the evaluation of Retired Players' estimated premorbid intellectual ability and neuropsychological test results, and thus, from the Settlement Program.

---

[4]    All capitalized terms not otherwise defined in this Motion shall have the meanings set forth in the Norming Agreement, including capitalized terms not defined in this Motion or in the Norming Agreement having the meaning ascribed to them in the Class Action Settlement Agreement.

This "New Method" is described in detail in Exhibit A to the Norming Agreement. To implement the New Method, the Expert Panel has made three recommendations concerning modifications to the Settlement Program's neuropsychological testing protocol.

First, the Expert Panel recommends "discontinu[ing] the use of estimating longstanding ('premorbid') functioning using the Test of Premorbid Functioning Simple and Complex equations" and instead "estimat[ing] longstanding Reading Level only using the TOPF reading standard score." (Norming Agreement, Ex. A at 1.) Second, the Expert Panel recommends "discontinu[ing] the use of fully demographically adjusted normative reference values and replac[ing] that system with normative reference values adjusted for age and education only." (*Id.*) Third, the Expert Panel recommends "rais[ing] the cutoff scores for defining low scores [in Exhibit A-2 of the Class Action Settlement Agreement] in a modest manner across reading levels and cognitive domains." (*Id.*) Implementing these changes in the Class Action Settlement Agreement and the Settlement Program requires modifying Exhibit A-2 of the Class Action Settlement Agreement in accordance with Exhibits 2 and 3 to this Motion, which reflect the New Method.[5]

In addition, in order to completely eliminate race norming from the Settlement Program, the Norming Agreement seeks to provide Settlement Class Members potentially impacted by Black Race Norms or Black Race Demographic Estimates with the benefits set forth in Article II of the Norming Agreement, as further discussed below.

---

[5]  Exhibit 2 is the proposed Exhibit A-2.1, which would replace Exhibit A-2 to the Class Action Settlement Agreement that implements the New Method, and Exhibit 3 is a redline showing the proposed changes to the current Exhibit A-2.

Finally, the New Method was designed by the Expert Panel in order to remove the consideration of race from the Settlement Program as quickly as possible while retaining diagnostic accuracy. As described below and in Article III of the Norming Agreement, pursuant to Section 6.6 of the Class Action Settlement Agreement, the Expert Panel will "continue its work to create a set of diagnostically accurate, race neutral, long-term Norms applicable to the population of NFL players based on the Expert Panel's analysis of the data gathered through the [Baseline Assessment Program] and/or other available data sources . . . ." (Norming Agreement § 3.1(a).) Once these diagnostically accurate long-term Norms are developed, they will be submitted to the Court for prospective use in the Settlement Program under Section 6.6, and the New Method will no longer be used. (*Id.* § 3.1(c), (d).)

Section 6.6 was included in the Class Action Settlement Agreement to allow the Parties to make modifications in light of scientific and medical advancements that occur over the Class Action Settlement Agreement's 65-year term. As the American Academy of Clinical Neuropsychology recently recognized while also calling for the elimination of race as a consideration in neuropsychological assessments, the solution is a complex one and "[t]emporary or partial measures may be deployed while the necessary and painstaking research is underway that will lead to better long-term solutions." (AACN Position Paper at 6.)

Accordingly, in order to completely eliminate the consideration of race from the Settlement Program, it is necessary to take two steps, which the Parties agree constitute a single modification under Section 6.6. First, the interim New Method must be implemented to immediately remove the consideration of race from the Settlement Program. Then, once

diagnostically accurate, race neutral, long-term Norms applicable to the population of NFL players are developed, they will be implemented in the Settlement Program prospectively.

*     *     *

The Parties appreciate that Settlement Class Members may have comments and questions about the proposed modifications and thus, pursuant to notice to be disseminated to the class by the Claims Administrator, request that the Court permit Settlement Class Members a period of time to submit comments regarding the proposed modifications pursuant to Section 6.6, as detailed in Section D below.

## PROPOSED MODIFICATIONS TO THE CLASS ACTION SETTLEMENT AGREEMENT PURSUANT TO SECTION 6.6

Pursuant to Section 6.6 of the Class Action Settlement Agreement, the Parties respectfully request that the Court enter the Proposed Order approving modifications to the Class Action Settlement Agreement's Qualifying Diagnosis definitions and protocols for making Qualifying Diagnoses, as set forth in Articles II and III of the Norming Agreement.

The proposed modifications would immediately eliminate the consideration of race, including Race Norming, from the Settlement Program. Indeed, if this Motion is granted and the interim New Method implemented, Settlement Program clinicians will no longer be permitted to consider race in any manner in the Settlement Program. Further, while the race-neutral interim New Method is implemented, the Expert Panel is working to develop an even more refined, race-neutral, long-term assessment method designed specifically for Retired NFL Players. Once that process is complete and after the Parties agree to its use, the Parties will move the Court to implement it in the Settlement Program prospectively. Until that time, however, the interim New Method (described above and in Exhibit A of the Norming Agreement) will be used to assess neuropsychological testing performed through the Baseline

10

Assessment Program (the "BAP") and Monetary Award Fund (the "MAF")[6], as well as all

pending Settlement Claims.

The proposed modifications also provide certain additional benefits to eligible

Retired Players whose prior Settlement Claims or neuropsychological test results may have

been adversely affected by the consideration of race.

First, the interim New Method will be used to automatically rescore post-

Effective Date testing[7] where Black Race Norms[8] or Black Race Demographic Estimates[9]

were applied and the Retired Player's Settlement Claim would have been approved had his

test scores been lower. The automatic rescoring will be at no cost to such Retired Players. If

a Retired Player's testing is automatically rescored, and the rescoring yields test results that

meet the requirements for a Qualifying Diagnosis, one of two procedures will be followed. If

---

[6]   The "BAP" is the Baseline Assessment Program through which eligible Retired Players could receive an evaluation by an approved neurologist and neuropsychologist, paid for by the NFL Parties. (*See* Class Action Settlement Agreement art. V.) MAF Claims are post-Effective Date Settlement Claims that are based on diagnoses from Qualified MAF Physicians, rather than through BAP providers. (*See* Norming Agreement art. I.S.)

[7]   Post-Effective Date means after January 7, 2017, and when used in conjunction with "MAF Claim" or "Settlement Claim" means a Settlement Claim based on a Qualifying Diagnosis with a date of diagnosis after January 7, 2017. (*See id.* art. I.DD.)

[8]   "Norms" means normative databases that aggregate neuropsychological test scores from people who represent the general population without the presence of neurocognitive problems, against which specific neuropsychological test scores obtained from an examinee are compared in order to help identify if the examinee's performances are similar to, or significantly different from, what is expected for a person of similar background characteristics. (*See id.* art. I.Z.) "Race Norms" means Norms that have been used in a manner that takes into account the examinee's race or ethnicity, along with age and gender, as a variable in adjusting the examinee's neuropsychological test scores. (*See id.* art. I.FF.) "Race Norming" means the process of using Race Norms. (*See id.* art. I.GG.) "Black Race Norms" means Race Norms that have been used in a manner that treats the examinee's race as non-White in connection with neuropsychological testing. (*See id.* art. I.E.)

[9]   "Race Demographic Estimates" means the use of demographics in a manner that takes into account the examinee's race or ethnicity, along with age and gender, to estimate an individual's premorbid intellectual functioning, and "Black Race Demographic Estimates" means the use of Race Demographic Estimates in estimating premorbid intellectual functioning in a manner that treats the examinee's race as non-White. (*See id.* arts. I.D, I.EE.)

the Retired Player had previously submitted a Settlement Claim based on that testing, the Retired Player will automatically receive a Monetary Award Claim Determination. If the Retired Player had not previously submitted a Settlement Claim, the Claims Administrator will notify the Retired Player that he must file a Claim, which will receive a Monetary Award Claim Determination once submitted.

Second, with only limited exceptions detailed below, Retired Players who had Black Race Norms or Black Race Demographic Estimates applied to their post-Effective Date test scores or estimated premorbid intellectual functioning determination, but whose testing was not automatically rescored under the above process, will be eligible for a free BAP examination, regardless of whether they had a prior BAP exam or were initially eligible for a BAP exam.

Third, with only limited exceptions detailed below, Retired Players who had Black Race Norms or Black Race Demographic Estimates applied to their post-Effective Date test scores or estimated premorbid intellectual functioning determination, and who were examined through the MAF program, but whose testing was not automatically rescored, may, instead of receiving a free BAP examination, have their tests rescored using the interim New Method, either by their original neuropsychologist or by an AAPC, at their expense.

These proposed modifications to the Class Action Settlement Agreement are a significant benefit to the class, and are explained in more detail below. [10]

A.     **Elimination of Race Norming and Race Demographic Estimates**

The Norming Agreement eliminates the use of Race Norms and Race Demographic Estimates in the Settlement Program both prospectively and retrospectively.

---

[10]     The full text of the relevant sections of the Norming Agreement will control.

Prospectively, the Norming Agreement seeks to immediately modify the Settlement Agreement's Injury Definitions to reflect the race-neutral New Method while the Expert Panel continues its work to create race-neutral, long-term demographic corrections specifically applicable to the population of retired NFL Players for future use in the Settlement Program. Retrospectively, under the Norming Agreement any Settlement Claim where the use of Race Norming may have resulted in a more severe Qualifying Diagnosis than originally determined will be automatically rescored by the Settlement Program's neutral neuropsychological experts. Settlement Class Members whose Settlement Claims are automatically rescored will be advised of the results of the rescoring, and whether they qualify for a new Qualifying Diagnosis. Accordingly, the proposed modifications pursuant to Section 6.6 fully eliminate the use of race norms as a consideration in the Settlement Program moving forward, and provide a method to redress Settlement Class Members whose prior evaluations may have been adversely impacted by Black Race Norms or Black Race Demographic Estimates.

### i. *Prospective Elimination of Race Norming and Race Demographic Estimates*

#### (a) Interim New Method

Section 2.2 of the Norming Agreement eliminates the prospective use of race norms as a potential consideration in the Settlement Program by providing that "[n]o Race Norms or Race Demographic Estimates—whether Black or White—shall be used in the Settlement Program going forward, and no party or Claimant shall have the right to appeal a Settlement Claim determination on the ground that Race Norms or Race Demographic Estimates were not applied, nor shall the failure to use Black Race Norms or Black Race Demographic Estimates be used as a basis to deny, reduce, or in any way justify the reduction or denial of a Settlement Claim."

To that end, Section 2.3 provides that the New Method, described above and in Exhibit A of the Norming Agreement, "will be used in the Settlement Program until such time as the Expert Panel develops longer-term new Norms" as described below. "Specifically, the New Method will be applied to: (i) all future neuropsychological testing done through the BAP or MAF, (ii) all Settlement Claims that have not yet been adjudicated, in such case the AAPC will rescore the neuropsychological testing using the New Method, and (iii) all Settlement Claims that are currently on appeal in which Race Norms or Race Demographic Estimates are potentially at issue, in such case the Special Masters will remand, for application of the New Method by an AAPC." (*Id.*)

   (b) <u>Development of Long-Term Norms</u>

    The Parties also "agree that the Expert Panel shall continue its work to create a set of diagnostically accurate, race neutral, long-term Norms applicable to the population of NFL players based on the Expert Panel's analysis of the data gathered through the BAP and/or other available data sources, with the goal of a completion date of one (1) year from the [Norming] Settlement Date," or as soon thereafter as possible. (*Id.* § 3.1(a).) "The NFL Parties will fund the Expert Panel's continued work in developing such long-term Norms," and "[o]nce diagnostically accurate long-term Norms are developed, they will replace the New Method prospectively in the Settlement Program in accordance with the terms of [the Norming] Agreement (as amended by the Parties if necessary), and the New Method will no longer be used." (*Id.* § 3.1(b), (c).) These long-term Norms "will only be used prospectively," and "there will be no retrospective review of past Settlement Claims with the long-term Norms." (*Id.* § 3.1(d).)

### ii.    *Automatic Retrospective Rescoring*

The Norming Agreement provides a method to redress Settlement Class Members whose prior evaluations may have been adversely impacted by Black Race Norms or Black Race Demographic Estimates.  Certain Settlement Class Members will have their prior testing automatically rescored using the New Method and will be notified if they qualify for a new Monetary Award or Supplemental Benefits.[11]   Specifically, "[t]he New Method shall be used to rescore the following Settlement Claims and diagnoses, where such rescoring could potentially result in a Qualifying Diagnosis or a higher Qualifying Diagnosis solely due to a change in the Retired Player's neuropsychological T scores[12]—i.e., the Retired Player otherwise meets the Class Action Settlement Agreement's functional impairment and validity requirements for a more severe Qualifying Diagnosis based on his prior evaluations: (i) all BAP diagnoses of no impairment or Level 1 Neurocognitive Impairment, where Black Race Norms or Black Race Demographic Estimates were applied to the Retired Player's neuropsychological testing; and (ii) BAP and Post-Effective Date MAF approved Level 1.5 Neurocognitive Impairment Settlement Claims or denied Level 1.5 or Level 2 Neurocognitive Impairment Settlement Claims of Retired Players who had Black Race Norms or Black Race Demographic Estimates applied to their neuropsychological testing or whose Settlement Claims were denied or reduced due to a failure to use Black Race Norms or Black Race Demographic Estimates." (*Id.* § 2.5(a).)

---

[11]   "The retrospective review of Settlement Claims and evaluations provided for in Article II [of the Norming Agreement] with the New Method will be the full and final universe of retrospective review that occurs in relation to Race Norming or Race Demographic Estimates in the Settlement Program.  For the avoidance of doubt, the implementation of long-term Norms developed under Article III [of the Norming Agreement] will solely be used prospectively and will not result in additional retrospective review or rescoring of Settlement Claims or evaluations using the long-term Norms." (Norming Agreement § 2.12.)

[12]   "T scores" are calculated by converting raw scores using normative databases to reflect how far from an unimpaired score (represented by a score of 50) the test-taker's scores fall.

The Claims Administrator and BAP Administrator, with guidance from the AAP/AAPLC/AAPC[13] and the Special Masters as necessary, will determine who qualifies for rescoring. (*Id.* § 2.5(b).) To qualify for automatic retrospective rescoring under these provisions, "the standard is if the Claims Administrator would have approved a more severe Qualifying Diagnosis had the Retired Player's T scores qualified for that more severe Qualifying Diagnosis." (*Id.*) The Claims Administrator's and/or BAP Administrator's "[d]eterminations on who qualifies for rescoring are final and unappealable." (*Id.*)

Notwithstanding the above, certain limited Settlement Claims are excluded from automatic retrospective rescoring under the Norming Agreement: "(i) Settlement Claims denied for incompleteness; (ii) Settlement Claims denied as a result of audit; (iii) withdrawn Settlement Claims; and (iv) Settlement Claims based on diagnoses rendered by providers who have been disqualified from the Settlement Program." (*Id.* § 2.5(c).) The determination of whether one of the foregoing exclusions applies shall be made by the Claims Administrator, with guidance from the AAP/AAPLC/AAPC and the Special Masters as necessary and such a determination is final and unappealable. (*Id.*)[14]

This rescoring will be conducted by neutral, Court-approved AAPCs and "[t]he Special Masters will have direct oversight of the rescoring of eligible Retired Players'

---

[13]   The "AAP/AAPLC/AAPC" are the Settlement Program's neutral expert neurologists and neuropsychologists, who have been agreed to and jointly recommended by Class Counsel and Counsel for the NFL Parties, and appointed by the Court.

[14]   "The Claims Administrator and AAP/AAPC/AAPLC shall make reasonable efforts to determine if a particular Settlement Claim file or evaluation file, if incomplete but not denied for incompleteness, satisfies the criteria set forth in the Class Action Settlement Agreement for a more severe Qualifying Diagnosis once Race Norms and Race Demographic Estimates are removed." (*Id.* § 2.5(e).)

neuropsychological test results and will provide the Court with periodic status reports regarding their findings." (*Id.* § 2.5(d).)[15]

Finally, "for Settlement Claims eligible for [automatic retrospective] rescoring . . ., once the Claims Administrator and AAP/AAPLC/AAPC have made their final determination based on the results of the rescoring . . . the Claims Administrator will send the appropriate notice to Retired Players advising them of the determination," as follows:

- For those Retired Players diagnosed with Level 1 Neurocognitive Impairment following rescoring who initially had a BAP diagnosis of no impairment, the BAP Administrator will begin the process of making Supplemental Benefits available to them.

- Those Retired Players diagnosed with Level 1.5 or Level 2 Neurocognitive Impairment following rescoring who initially had a BAP diagnosis of no impairment or a Level 1 Neurocognitive Impairment will be advised that they need to file a formal Settlement Claim, which will then be processed by the Claims Administrator. The Retired Player, NFL Parties, and Class Counsel retain the right to appeal any Monetary Award Settlement Claim determination ultimately issued as a result of any such revised diagnosis pursuant to Section 9.5 of the Class Action Settlement Agreement, except for on the grounds that Race Norms or Race Demographic Estimates were not used.

- Those Retired Players who went through the BAP originally and receive a "no impairment" determination following rescoring, or whose diagnosis did not change from the original diagnosis following rescoring, will be advised of that determination. Such determination is final and unappealable.

- Those Retired Players who were evaluated by a Qualified MAF Physician and do not receive a more severe Qualifying Diagnosis following rescoring will be advised of that determination. Such Retired Players may appeal the determination pursuant to Class Action Settlement Agreement Section 9.5, provided that such appeal (i) is not on the grounds that Race Norms or Race Demographic Estimates were not used, and (ii) does not, if a Retired Player appealed the original Settlement Claim determination, re-raise in the Retired Player's new appeal any issues previously briefed in his prior appeal. The Special Masters, however, will

---

[15] "When reviewing any Settlement Claim that has already been paid as a Level 1.5 Neurocognitive Impairment Qualifying Diagnosis (whether a MAF Claim or BAP Settlement Claim), or any Settlement Claim from a Retired Player receiving Supplemental Benefits based on a prior Qualifying Diagnosis of Level 1 Neurocognitive Impairment, the AAPC will accept the test results as valid for purposes of performance validity testing and *Slick* criteria assessments." (*Id.* § 2.5(f).)

consider any prior appeal and opposition and the arguments (other than Race Norms or Race Demographic Estimate arguments) raised therein in connection with their determination on the new appeal. For the avoidance of doubt, an argument that the Retired Player's T scores meet the Class Action Settlement Agreement's criteria for a more severe Qualifying Diagnosis as a result of the rescoring will be construed as a new argument that can be raised in any new appeal.

- Those Retired Players who initially had a BAP or Post-Effective Date MAF approved Level 1.5 Neurocognitive Impairment Settlement Claim or a denied Level 1.5 or Level 2 Neurocognitive Impairment Settlement Claim who, following rescoring, qualify for a Monetary Award (or an increased Monetary Award), will be advised that they do not need to resubmit a Settlement Claim. The Retired Player, NFL Parties, and Class Counsel retain the right to appeal any Monetary Award Settlement Claim determination or increased Monetary Award Settlement Claim determination ultimately issued as a result of any such revised diagnosis pursuant to Section 9.5 of the Class Action Settlement Agreement, except for on the grounds that Race Norms or Race Demographic Estimates were not used.

(*Id.* § 2.5(g).)

B.      **Expanded BAP Examinations**

The Norming Agreement provides certain Retired NFL Players who had Black Race Norms or Black Race Demographic Estimates applied to their claims, but are not eligible for automatic retrospective rescoring, the opportunity to undergo a BAP evaluation paid for by the NFL Parties irrespective of whether the Retired NFL Player has previously received a free BAP exam or is otherwise eligible for one.

Specifically, the NFL Parties will pay for "one (1) free BAP examination (including an evaluation by a Qualified BAP Provider neurologist and a Qualified BAP Provider neuropsychologist) (regardless of whether the Retired Player has already had a BAP examination prior to the Settlement Date or is otherwise BAP-eligible) for any Retired Player whose neuropsychological test scores or estimated premorbid intellectual functioning determination included the use of Black Race Norms or Black Race Demographic Estimates, if that Retired Player's Settlement Claim was denied in part because of the insufficiency of

his T scores, or if the Retired Player did not file a Settlement Claim because the Qualified BAP Providers or Qualified MAF Physician who examined him did not diagnose him with a Qualifying Diagnosis in part because of the insufficiency of his T scores." (Norming Agreement § 2.6(a).) A Retired Player's eligibility for an expanded BAP examination will "be determined by the BAP Administrator, with guidance from the Claims Administrator and Special Masters as necessary, and such determination is final and unappealable." (*Id.*)[16]

Notwithstanding the above, certain limited categories of Retired Players are excluded from receiving an expanded BAP examination. Specifically, under the Norming Agreement, Retired Players are not eligible for an expanded BAP examination if: (i) they had their testing automatically rescored as described above ("Automatic Retrospective Rescoring"); (ii) they avail themselves of the rescoring mechanism provided described below ("New Settlement Claim Submissions"); (iii) "their Settlement Claims were denied as the result of an audit; or (iv) their Settlement Claims were withdrawn, and would have been denied as the result of an audit had they not been withdrawn." (*Id.* § 2.6(b).) "The determination of whether one of [these] exclusions applies shall be made by the BAP Administrator, with guidance from the Claims Administrator, AAP/AAPLC/AAPC, and the Special Masters as necessary," and such a determination "is final and unappealable." (*Id.*)

---

[16] "If a Retired Player cannot travel for a new BAP examination that is scheduled pursuant to [these provisions], subject to a 'good cause' standard, or if a Retired Player has died and cannot now be retested, a Special AAP Panel will determine if the Retired Player's rescored test results and Settlement Claim file meets the criteria for a new or more severe Qualifying Diagnosis, on application by the Retired Player and/or his Representative Claimant. The Claims Administrator, with guidance from the Special Masters as necessary, will determine whether the 'good cause' standard has been met." (*Id.* § 2.6 (f).)

New BAP examinations conducted under these provisions must occur within twenty-four months of the Court's Order granting this Motion to implement certain provisions of the Norming Agreement. (*See id.* § 2.6(c).)[17]

Finally, "[o]nce the Qualified BAP Providers have made their final determination based on the results of the additional BAP examinations occurring under [these provisions][18] and submitted the requisite paperwork to the BAP Administrator, the BAP Administrator will send the appropriate notice to Retired Players advising them of the determination," as follows:

- For those Retired Players diagnosed with Level 1 Neurocognitive Impairment, the BAP Administrator will begin the process of making Supplemental Benefits available to them in accordance with the terms of the Class Action Settlement Agreement.

- Those Retired Players diagnosed with Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment will be advised that they need to file a formal Settlement Claim, which will then be processed by the Claims Administrator.[19] The Retired Player, NFL Parties, and Class Counsel retain the right to appeal any Monetary Award Settlement Claim determination ultimately issued as a result of any such diagnosis pursuant to Section 9.5 of the Class Action Settlement Agreement, except for on the grounds that Race Norms or Race Demographic Estimates were not used.

---

[17]  "If an eligible Retired Player contacts the BAP Administrator to make his appointment within the twenty-four (24) month period, he will be deemed to have taken a timely BAP examination." (*Id.* § 2.6(c).)

[18]  "If a new BAP examination occurring pursuant to [these provisions] results in the diagnosing Qualified BAP Provider's reasonable determination that the Retired Player's neuropsychological testing is now medically unnecessary under the Class Action Settlement Agreement's Injury Definitions, a Retired Player can request to have his original test scores rescored, and proceed with the remaining parts of the BAP examination." (*Id.* § 2.6(d).)

[19]  "A diagnosis arising from a new BAP examination occurring pursuant to [these provisions] may relate back to the date of an earlier exam that, upon application of the New Method, sufficiently demonstrates that the Retired Player previously met all of the criteria for the new diagnosis, notwithstanding any other timing rules in the Class Action Settlement Agreement. Any such backdating will be reviewed by an AAP member—and, if the backdating involves rescored prior neuropsychological testing, an AAPC—and will be subject to the Settlement Program's current requirements for backdated diagnoses." (*Id.* § 2.6(e).)

- Those Retired Players who received a "no impairment" determination or whose diagnosis did not change from the original diagnosis will be advised of that determination and that the determination is final and unappealable.

(*Id.* § 2.6(g).)[20]

C.    **New Settlement Claim Submissions**

Another benefit the Norming Agreement offers to certain Settlement Class Members who may have had Black Race Norms or Black Race Demographic Estimates applied to their MAF claims, but are not eligible for automatic retrospective rescoring, is the option to have their previous testing rescored at their own cost instead of undergoing an Expanded BAP Examination.

Specifically, "Retired Players who received a valid Post-Effective Date neuropsychological evaluation from a neuropsychologist approved to support diagnoses from Qualified MAF Physicians through the MAF program (rather than a Qualified BAP Provider through the BAP) and either (i) did not submit a Settlement Claim because Black Race Norms or Black Race Demographic Estimates were applied to their neuropsychological testing, or (ii) submitted a Settlement Claim that was denied in part because their neuropsychological testing did not qualify them for a Monetary Award as a result of the use of Black Race Norms or Black Race Demographic Estimates may, at their option and expense instead of receiving a BAP examination under Section 2.6 [of the Norming Agreement], have the neuropsychologist who administered the testing or an AAPC rescore the prior valid Post-

---

[20] Unless otherwise stated herein or in the Norming Agreement, all procedures set forth under the terms of the Class Action Settlement Agreement for BAP examinations shall be followed in the expanded BAP examinations that occur under these provisions of the Norming Agreement. (*Id.* § 2.6(h).)

Effective Date MAF program neuropsychological testing using the New Method and submit a new MAF Claim using the rescored testing." (Norming Agreement § 2.7(a).)[21]

For this benefit to be available, the application of Black Race Norms or Black Race Demographic Estimates "must be evident on the face of the original neuropsychological testing documents or supported by a statement from the examining or rescoring neuropsychologist demonstrating that Black Race Norms or Black Race Demographic Estimates were used," any rescoring that occurs under these provisions will be reviewed by an AAPC, and new Settlement Claim submissions made pursuant to these provisions must be made within twenty-four months of the Court's Order approving the Norming Agreement or granting this Motion. (*Id.* §§ 2.7(b), (d), (f).)[22]

Retired Players may be eligible to backdate their Qualifying Diagnosis to their prior evaluation under certain circumstances. Specifically, "[i]f the diagnosing Qualified MAF Physician determines, and an AAPC agrees, that, upon the application of the New Method, all of the criteria for a Qualifying Diagnosis were met as of the earlier date of the neuropsychological examination, the earlier date of the neuropsychological exam may be used as the date of the Qualifying Diagnosis, notwithstanding any other timing rules in the Class Action Settlement Agreement or the Settlement Program." (*Id.* § 2.7(e).)[23]

---

[21]  "If the neuropsychologist who administered the original testing is deceased or is no longer in the Settlement Program, another BAP neuropsychologist or an AAPC may conduct the rescoring." (*Id.* § 2.7(a).)

[22]  "New Settlement Claim submissions made pursuant to [these provisions] will automatically qualify for the 'substantial hardship' exception contemplated by Class Action Settlement Agreement Section 8.3(a)(i), which otherwise requires that diagnoses must be submitted to the Claims Administrator no later than two (2) years after the date of the Qualifying Diagnosis or within two (2) years after the Settlement Class Supplemental Notice is posted on the Settlement Website, whichever is later." (*Id.* § 2.7(f).)

[23]  "For the avoidance of doubt, if any of the Class Action Settlement Agreement's requirements for the claimed Qualifying Diagnosis were not met until the date of a later evaluation, the date of the later evaluation will be used as the date of the Qualifying Diagnosis. Any backdating will be subject to the Settlement Program's current requirements for backdated Qualifying Diagnoses," and "if the Retired Player did not meet the Class Action Settlement Agreement's criteria for a Qualifying Diagnosis as of any date, including as of the date

Notwithstanding the above, certain limited categories of Retired Players are excluded from these provisions of the Norming Agreement if : "(i) their test results were found to be invalid in any final decision; (ii) they had their testing automatically rescored [as described above]; (iii) they avail themselves of an expanded BAP examination [as described above]; (iv) their Settlement Claims were denied as the result of an audit; (v) their Settlement Claims were withdrawn, and would have been denied as the result of an audit had they not been withdrawn; or (vi) their testing was administered by a clinician who has been disqualified from the Settlement Program." (*Id.* § 2.7(c).) "The determination of whether one of the foregoing exclusions applies shall be made by the Claims Administrator, with guidance from the AAP/AAPLC/AAPC, and the Special Masters as necessary," and "[t]his determination shall be final and unappealable." (*Id.*)[24]

Finally, "[f]or the avoidance of doubt, nothing in [these provisions] shall be construed to deprive any Class Member of any right afforded to them by the terms of the Class Action Settlement Agreement, or any benefit afforded by the post-implementation rules and FAQs previously established by the Parties with respect to a Class Member's ability to submit a Settlement Claim for Monetary Award and/or the documents or other materials that a Qualified MAF Physician may rely upon for rendering a diagnosis." (*Id.*§ 2.7(a).)

---

of the later evaluation, the Settlement Claim will be denied." (*Id.* § 2.7(e).) "The Retired Player, NFL Parties, and Class Counsel retain the right to appeal any Monetary Award Settlement Claim determination ultimately issued as a result of Settlement Claims submitted under [these provisions], pursuant to Section 9.5 of the Class Action Settlement Agreement, except for on the grounds that Race Norms or Race Demographic Estimates were not used." (*Id.* § 2.7(h).)

[24]  "If a Retired Player has died and cannot now be reevaluated or seek rescoring under [these provisions], upon application by the Retired Player's Representative, a Special AAP Panel will determine if the Retired Player's scores and Settlement Claim file supports a new or more severe Qualifying Diagnosis once the New Method is applied." (*Id.* § 2.7(g).)

**D.     Notice to the Class**

Although Section 6.6 of the Settlement Agreement does not require that Settlement Class Members receive notice of the agreed-upon modifications to the Qualifying Diagnosis definitions or protocols for making them, the Parties appreciate that Settlement Class Members may have comments or questions about the proposed modifications.  Thus, pursuant to notice to be disseminated to the Class by the Claims Administrator, the Parties request that the Court permit Settlement Class Members a period of time—the Parties believe that three weeks would be appropriate given that the Norming Agreement has been publicly available since mid-October 2021—to submit comments or questions regarding the proposed modifications pursuant to the Court's continuing and exclusive jurisdiction over the Class Action Settlement Agreement and its inherent power.

Specifically, the Claims Administrator will distribute a notice to the Settlement Class and counsel representing Settlement Class Members that directs them to this Motion and the proposed Order, both of which will be available on the Settlement Program's website. The notice will invite Settlement Class Members and their counsel to submit comments on the proposed modifications explained in this Motion.  The Claims Administrator will establish an email address for Settlement Class Members or their counsel to submit their comments.  The notice will also be posted on the Settlement Program's online portal for Settlement Class Members who have registered, as well as emailed to Settlement Class Members who provided their email address during registration, and the Claims Administrator will mail the notice to Settlement Class Members who have not provided an email address.

Following the Settlement Class Members' comment period, the Parties will file written responses if requested to do so by the Court.

## **CONCLUSION**

Accordingly, for the reasons stated herein, the NFL Parties and Class Counsel respectfully request that this Court set a schedule for Settlement Class Members to provide comments, if any, on the Parties' proposed modifications, and then enter the attached Order implementing the relevant sections of the Norming Agreement and replacing the Class Action Settlement Agreement's Exhibit A-2 with Exhibit A-2.1 (Exhibit 2 to this Motion).


Dated: December 30, 2021                    Respectfully submitted,


*/s/ Brad S. Karp*
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
bkarp@paulweiss.com
(212) 373-3000

*Attorneys for the National Football*
*League and NFL Properties LLC*

*/s/ Christopher A. Seeger*
Christopher A. Seeger
Michael L. Rosenberg

SEEGER WEISS LLP
55 Challenger Road
6th Floor
Ridgefield Park, NJ  07660
cseeger@seegerweiss.com
(973) 639-9100

*Class Counsel*

## CERTIFICATE OF SERVICE

It is hereby certified that a true copy of the foregoing document was served electronically via the Court's electronic filing system on the 30th day of December, 2021, upon all counsel of record.

Dated: December 30, 2021            */s/ Brad S. Karp*
                                        Brad S. Karp