# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

12/23/2021

RE:     IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
        Cr No. 12-MD-2323

## NOTICE

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Strawbridge, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge**.

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

                                        KATE BARKMAN
                                        Clerk of Court

                                        By: s/ Eric Sobieski
                                            Eric Sobieski, Deputy Clerk

cc:     Courtroom Deputy to Judge Brody
        Counsel of Record

civ623.frm
(11/07)

**Exhibit 2**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>          Plaintiffs,<br> v.<br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>          Defendants. | |
| THIS DOCUMENT RELATES TO:<br><br>Howard and Associates, P.A.<br> v.<br>SPID 100014059 (J.S.)<br>Attorney Lien Dispute No. 01596 | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE             December 23, 2021

   Presently before the Court for a Report and Recommendation in the National Football League Player's Concussion Injury Litigation is the assertion of an Attorney Lien by Howard and Associates, P.A. ("Howard") against the Award granted to its former client, Settlement Class Member ("SCM") SPID No. 100014059 (J.S.) ("Player"), in the litigation that became part of this class action, *In re: National Football League Players' Concussion Injury Litigation*, No. 12-md-2323 (E.D. Pa.). Howard began representing Player on December 6, 2016 when they entered into a contingency fee agreement ("CFA"). With the consent of Player, Howard brought in another

firm, Shenaq PC ("Shenaq"), in the spring of 2018 as "associated counsel."[1] On September 20, 2019, Player discharged Howard and instead entered into a CFA with Shenaq alone. Player was ultimately issued a Monetary Award, from which Howard seeks reimbursement of costs it allegedly incurred plus a fee equal to 20% of the Monetary Award pursuant to its CFA with Player. (Lien Doc. 2.) On behalf of Player, Shenaq opposed Howard's lien. It sought its own counsel fee in the amount of 20% of Player's Monetary Award pursuant to its 2019 CFA with Player.

The Settlement Claims Administrator transmitted the Dispute Record to us on March 12, 2020. We considered the parties' submissions and held a hearing on July 7, 2020 at which we heard sworn testimony from Player and his wife, as well as argument from counsel about their fee arrangements and efforts made on Player's behalf. On September 28, 2020, we issued a Report and Recommendation that Howard be awarded a portion of the fee it sought.[2] We also recommended that Howard be awarded certain of its costs, in accordance with the funds set aside from the Monetary Award by the Claims Administrator for this purpose. Before Judge Brody rendered a final decision, however, the Court learned of a November 25, 2020 report from the Claims Administrator (updated on December 10, 2020) that an audit it conducted revealed evidence that Howard presented to the Court inflated costs for reimbursement in a lien dispute.[3]

---

[1] We are using the names of the law firms as the defined terms "Howard" and "Shenaq." Player had contact at each firm with the named partner, Timothy Howard and Amir Shenaq. Those attorneys also participated in the evidentiary hearing that we convened. When we mean to refer to the individual attorney, as opposed to the firm entity, we identify them as "Attorney Howard" and "Attorney Shenaq."

[2] That Report provides more historical information as to Player's claim and the efforts of counsel in his case. We do not recount that information in full here.

[3] The Court has been provided a copy of the full Audit Report. A redacted version of the report and the subsequent "Special Masters' Rule 27 Decision on the Report of Adverse Finding Regarding Howard & Associates, P.A., and Related Parties" of June 22, 2021 is available at:

On February 22, 2021, Judge Brody remanded the Report and Recommendation in this case "for reconsideration in light of the Claims Administrator's findings" in that Audit Report and the subsequent Special Masters' Decision that made findings adverse to the interest of Howard. (Doc. 11290.)

We begin by looking at the costs asserted by Howard here, as the submission of apparently "inflated costs" was cited by Judge Brody as motivating her decision to remand the matter back to us "for reconsideration." We also reconsider the allocation of the attorney's fees in this matter in light of the Audit findings concerning Howard's stewardship in this case.

### *Representations as to costs in the docketed lien*

Howard filed its lien on the MDL docket on December 12, 2019 seeking 20% of Player's Monetary Award plus attorney's costs in the amount of $16,750. Its supporting petition stated that Howard had:

> … paid costs relating to neuropsychological, Clinical Dementia Rating, neurological, MRI, follow up testing, travel, meals, local transportation, bi-weekly consultation and client updates, MAF and BAP, third-party sworn affidavits, retaining experts, and more.

(Lien Doc. 2, Pet. at ¶ 5.) The lien petition materials did not itemize the expenses for which it sought recovery.

### *Representations as to costs in the lien dispute submissions*

The Claims Administrator served the Schedule of Document Submissions on January 21, 2020 calling for Statements of Dispute to be filed concerning Howard's lien, given that Shenaq,

---

phttps://www.nflconcussionsettlement.com/Docs/howard_associates_sm.pdf .
We note that Attorney Howard was given opportunity to be heard in the audit process. He filed multiple motions on the docket in April 2021 seeking to discipline, disqualify, and/or dismiss the auditors and the Special Masters appointed by the Court relating to the investigation into his practices vis-à-vis the Settlement Program.

as current counsel, also sought a contingent fee of 20% of the Monetary Award. On behalf of Player, Shenaq filed its Statement of Dispute on February 20, 2020. (Lien Doc. 7.) Howard did not comply with this directive. Howard did, however, file a response to Player's submission on March 11, 2020. (Lien Doc. 10.)

### *Summary of initial analysis regarding costs*

In our previous Report and Recommendation concerning this lien dispute, we noted that, by its lien petition filed on the docket, Howard sought recovery of costs in the amount of $16,750. There was no dispute that the CFA between Howard and Player provided for reimbursement from Player's award of costs that were "reasonably advanced" on his behalf. In the Statement of Dispute submitted by Shenaq, Player argued that *no costs* incurred by Howard had been reasonable and appropriate under the circumstances, "given that Howard engaged an inappropriate medical expert" and that "[t]he remainder of Howard's costs only created problems for [Player.]" (Lien Doc. 7 at 8.)

Following the evidentiary hearing, and pursuant to our direction that the Parties clarify the expenditures for which Howard sought reimbursement,[4] counsel jointly presented an accounting of all expenditures. The list included costs for examinations as well as travel that had been arranged by Shenaq in May 2018 and March 2019 during the period in which it served as associated counsel with Howard. These costs totaled $10,664.56, and it was undisputed that, although Shenaq initially incurred the costs, Howard had reimbursed Shenaq as part of its co-

---

[4] Shenaq did not seek recovery for any costs.

counsel arrangement.  The itemization also, however, catalogued the following costs incurred by Howard prior to Shenaq's association with the case:[5]

| | | |
|---|---|---|
| 1/4/2017 | $900.00 | [Provider 3] CDR |
| 3/16/2017 | $1,125.00 | MRI [redacted provider] |
| 3/16/2017 | $7,000.00 | [Provider 1] |
| 9/20/2017 | $4,000.00 | [Provider 8] |
| 9/20/2017 | $4,000.00 | [Providers 6 & 7] |
| Total: | $17,025.00 | |

(Post-Hr'g Ex.)

We noted in our original R&R that Player had raised concerns about the propriety of the early evaluations ordered by Howard, particularly as Shenaq argued that it was Player's encounters with some of those providers that attracted the attention of the Claims Administrator's audit team during the pendency of his claim.  We were reluctant on the record before us, however, to deem any particular expense as not "reasonably" incurred at the time.  For example, Attorney Howard represented to us at the hearing that Providers 1 and 8 were "MAF approved and certified" at the time of the evaluations.  (N.T. 7/7/2020 at 7, 100.)  We stated that the costs appeared facially valid, and that "unless and until an audit process or other special investigation deems … otherwise," we could not say that they were *unreasonably* obtained such that Howard should be precluded from reimbursement.  (R&R at 23.)  We thus recommended that the entirety of the $16,750 withheld by

---

[5]  We are redacting the names of the providers and refer to them by their characterization in the Audit Report and Special Masters decision.

5

the Claims Administrator for Howard's costs – based on the figure identified by Howard in its 2019 lien – be released to Howard.[6]

### *Revised analysis of costs reimbursable to Howard*

The Audit Report has changed our view of this matter. It follows upon what appears to be a thorough investigation of Howard's contacts with these providers and the influence Attorney Howard exerted on these providers. The Audit Report also raises serious questions as to how certain evaluations and tests were priced, or *over-priced*, with Howard's knowledge and participation.[7] While the Audit did not turn up evidence of what Howard actually paid to Providers 6, 7 or 8 for their contribution to the representation of his player clients, the Audit Report did find evidence of inflation of the cost of a "CDR."[8] The Audit Report's findings implicate providers

---

[6] The sum of the expenses incurred by Shenaq (on behalf of Howard) for the 2018 and 2019 evaluations, coupled with the costs allegedly incurred by Howard alone in 2017, exceeded the sum of funds withheld by the Claims Administrator from Player's award for reimbursement of costs. In our earlier Report, we recognized that the $16,750 sum that we would have approved for costs would not fully reimburse Howard for the total costs of $27,689.56 that it ultimately alleged it incurred. We were unwilling, however, to consider approving any sum beyond the value that was set forth in the lien and thus had been set aside from Player's Monetary Award for this purpose.

[7] The Audit Report suspected that in one case in which Howard sought costs as part of an attorney's lien, it listed the cost of a neurology evaluation at $7,000 but only paid that provider $3,500. The Audit Report also described "a picture of a complex process for cost billing that Howard has set up" using a case support services company for funding. The principal of that business, for example, advised Howard's then-preferred neurologist in one case to bill the funding company a discounted rate of $500 or $525 for an MRI (which was the facility's discounted cost, according to the neurologist) but that the funding company would then bill Howard $1,000 for that MRI. The cost of $1,000 would then be passed on to the client, leaving the funder and/or Howard to the difference. In a lien dispute involving a different client than the one referenced in the billing communications described above, Howard represented that an MRI from that same facility cost $1,125, which would be a mark-up of more than 100%.

[8] Howard described the cost of the CDR in this case, incurred on January 4, 2017, as $900. The nurse who purportedly administered this assessment, however, told the Audit team that she was paid $500 per CDR evaluation. (Audit Report at 40.)

for whom Howard seeks reimbursement in this lien dispute, specifically as to the nurse who performed the CDR evaluation (Provider 3), the MRI facility, and Provider 1.

With this record, we cannot recommend that Howard be reimbursed for any of the costs dating to 2017 that the firm detailed in its Lien Response. (Lien Doc. 10.) The Audit Report did not, however, undermine the legitimacy of the expenses incurred in this case by Shenaq as Howard's associated counsel beginning in 2018. It is undisputed that while Shenaq made the arrangements for those evaluations, the funds were advanced by Howard. Therefore, we recommend that the Claims Administrator be directed to release to Howard $10,664.56 for the costs advanced in May 2018 and March 2019 for evaluation by providers who have not been tainted with any suspected illegitimacy.

### *The propriety of a fee to Howard*

The Audit Report also identified actions by Howard personnel that revealed, as the Special Masters concluded, "that the owner and employees of Howard & Associates manipulated the medical examination process and medical records with the intent to affect whether Settlement Class Members qualified for Monetary Awards." (SM Decision at 5.) The Special Masters also found that Howard "engaged in a process of perpetuating misinformation to secure a physician's qualification as a MAF Physician and BAP Provider," which also materially and adversely impacted the Settlement Program." (*Id.* at 7.) The Special Masters directed that Howard be permanently disqualified from participating in the Settlement Program. (*Id.* at 7-8.)

Based upon the information uncovered in the Audit and outlined in the Special Masters decision, we amend our prior Recommendation and allocate a much smaller fee to Howard in this matter. In our prior Report, we recommended that the funds withheld for counsel fee be allocated such that the two firms share a total fee of 20% of Player's award and that it be distributed between

7

Howard and Shenaq on an 88%-12% basis. That recommendation was based on our recognition that Player benefitted from Howard's engagement of Shenaq to assist in the development of the claim that was submitted in June 2018 and the new claim submitted in March 2019 based upon a new diagnosis. In addition, Howard advanced the funds for these the expert fees and for the travel expenses that Player incurred. We also recognized that Shenaq only began its sole representation of Player – as opposed to the associated counsel arrangement with Howard, for which it would be reimbursed by Howard for expenditures – on September 20, 2019. At that point in time, Shenaq was not called upon to advance any funds to Player for any further medical evaluations or claims submissions. Rather, the pending claim was approved just five weeks after the change in representation. Shenaq's work thereafter involved shepherding Player through the claim payment process and then through this lien dispute process.

The Audit Report has shed new light on the value (or lack thereof) of Howard's initial "efforts" on Player's behalf and whether there was any benefit – or even a detriment – by having exposed Player to the evaluations that have provided only trouble to Player. Therefore, in light of this new information, and in recognition of Shenaq's continued work on behalf of Player in this lien dispute, we will recommend a larger share of the contingent fee be authorized for Shenaq. We recommend that the Howard entity and Shenaq share equally in the contingent fee award.[9]

---

[9] We are cognizant of the fact that Shenaq may have been due a portion of any fee received by Howard pursuant to the terms of their co-counsel agreement. This distribution does not impede any right Shenaq may have to pursue its share from the Howard entity or its trustee. While we appreciate that such efforts may present challenges, we cannot accept Shenaq's argument that it should receive a full 20% fee in this case. Shenaq conducted its work knowing it was operating under a CFA that might yield no recovery and thus no fee for counsel, yet Shenaq did not have to take upon itself the additional risk and burden of advancing costs on behalf of Player as did Howard. That is not insignificant. Shenaq absolutely benefitted from the funding provided by Howard. We find this circumstance warrants a fee allocation to Shenaq that reflects the reduction in risk borne by Shenaq.

*Howard funds to escrow*

On July 13, 2021, Howard filed on the MDL docket a Notice of Assignment for the Benefit of Creditors. (Doc. 11435.) The notice advises that on June 30, 2021, Howard filed a petition in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida that commenced what are described as "Assignment for the Benefit of Creditors proceedings pursuant to Chapter 727, Florida Statutes[.]" (*Id.*) The petition designated Larry Hyman as the assignee. Mr. Hyman then filed in Leon County a "Motion for Order Authorizing the Transition and Assignment of the Assignment Estate's Interests in the NFL Concussion Litigation to Goldberg Persky White, P.C." (*Id.*) It is our understanding that following a hearing held on October 7, 2021, the Leon County Assignment Court granted the motion and approved the transition of Howard's NFL Concussion Litigation cases to Goldberg Persky White. Pending further guidance, we recommend that the Claims Administrator be directed to hold in a separate escrow account any funds that are ordered by the Court to be payable to Howard for fees or costs in this, and any other, lien dispute.

*Conclusion*

We recommend the approval of a 10% total attorney fee to Shenaq and a 10% total fee to Howard. Howard should be permitted reimbursement of $10,664.56 in costs for the untainted and legitimate evaluations undertaken in 2018 and 2019 used to support the claims submitted by Shenaq, the second of which was approved. The remainder of funds withheld for attorney fees should be refunded to Player, as should the remainder of funds withheld for costs beyond the sum noted above. The 5% holdback should be borne by Shenaq, Howard, and Player in the proportion to which they are allocated the portion of the award that is currently available for distribution. Our recommendation follows.

## RECOMMENDATION

**AND NOW**, this 23rd day of December, 2021, it is respectfully **RECOMMENDED** that the Claims Administrator be ordered to designate the funds withheld for attorney's fee and costs as follows:

    **1.**    Shenaq may receive 10% of Player's Monetary Award as attorney's fees;

    **2.**    A 10% portion of Player's Monetary Award is designated as attorney's fees for Howard's work and shall be placed in escrow;

    **3.**    Player may receive a refund representing funds withheld for attorney's fees but not approved for Shenaq and Howard;

    **4.**    The 5% holdback funds shall be attributed to Shenaq, Howard and Player in accordance with the allocations indicated above and released in accordance with future orders of the Court;

    **5.**    The sum of $10,664.56 withheld from Player's award for reimbursement of costs is approved for Howard and shall be placed in escrow; and

    **6.**    Player may receive a refund representing funds withheld for costs but not approved for Howard.

The Parties may file objections to this Report and Recommendation.  *See* Rule 25(d).

BY THE COURT:

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

11

# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>          Plaintiffs,<br> v.<br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>          Defendants.<br><br>THIS DOCUMENT RELATES TO:<br><br>Howard and Associates, P.A.<br> v.<br>SPID 100014059 (J.S.)<br>Attorney Lien Dispute No. 01596 | |

## [PROPOSED] ORDER

  **AND NOW**, this _____ day of _____, 202_, upon consideration of the Report and Recommendation of United States Magistrate Judge David R. Strawbridge (ECF No. _____), and no objection having been docketed, it is **ORDERED** that:

  1. The Report and Recommendation is **ADOPTED**;

  2. The Claims Administrator is **ORDERED** to disburse the withheld funds for attorney's fees and costs in accordance with the provisions of the Settlement Agreement, all Court Orders regarding implementation, and in the following manner:

**a.** Shenaq shall receive 10% of Player's Monetary Award as attorney's fees;

**b.** A 10% portion of Player's Monetary Award is designated as attorney's fees for Howard's work and shall be placed in escrow;

**c.** Player shall receive a refund representing funds withheld for attorney's fees but not approved for Shenaq and Howard;

**d.** The 5% holdback funds shall be attributed to Shenaq, Howard and Player in accordance with the allocations indicated above and released in accordance with future orders of the Court;

**e.** The sum of $10,664.56 withheld from Player's award for reimbursement of costs is approved for Howard and shall be placed in escrow; and

**f.** Player shall receive a refund representing funds withheld for costs but not approved for Howard.

BY THE COURT:

ANITA B. BRODY, J.