## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., <br><br> Defendants. | No. 2:12-md-02323-AB <br> MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## INTERVENORS' JOINDER TO MOTION OF THE NFL PARTIES AND CLASS COUNSEL TO APPROVE MODIFICATIONS TO THE NFL CONCUSSION SETTLEMENT AGREEMENT PURSUANT TO SECTION 6.6

Intervenors Kevin Henry and Najeh Davenport, through undersigned Intervenors' Counsel, join the NFL Parties' and Class Counsel's Motion to Approve Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6 (the "Norming Agreement"). ECF 11567. The Norming Agreement is a significant achievement resulting from arms-length negotiations conducted under the careful guidance of the Court, Magistrate Judge Strawbridge and Special Master Hoffman. Intervenors enthusiastically support approval of the Norming Agreement as it offers enormous benefits to Black former players who have been or would have been subjected to race norming.

For retired players who have already undergone testing in the MAF or BAP, and who may have been affected by race norming, the Norming Agreement offers multiple avenues to qualify for compensation. These avenues include automatic retrospective rescoring for BAP exams and submitted MAF claims in which rescoring could lead to an award or a higher award; a new BAP examination for almost all players that were subjected to race-based norms or demographics in the BAP or MAF; and rescoring of MAF testing by the Neuropsychologist that performed the testing or the AAP—all without use of racial norms or demographics. These retrospective measures are likely to benefit many Black retired players who previously participated in the Settlement Program but were affected by race norming. For example, among the 6,603 former players who have attended at least one BAP appointment, *see* ECF 11530 at ¶ 10, a majority are estimated to have been subjected to racial norms and are thus eligible for new BAP examinations under the Norming Agreement. This is a group of *thousands* of Black former players, and even assuming very low rates of new or increased monetary awards (lower than actually expected), the Norming Agreement adds tremendous value to the Settlement Program. *See* Special Master Decision Regarding Demographic Norm Adjustments at 7 (Aug. 20, 2020) (noting that "using race-specific norms can be enormously consequential, and the adjustments may often make the difference in a clinician's determination of cognitive impairment").[1]

Going forward, the Norming Agreement also should provide substantial benefits to thousands of Black former players over the life of the Settlement Program. The Norming Agreement provides for the prospective elimination of race norms, and this change alone is likely to result in a significant increase in the number of Black retired players who qualify for compensation in the future. The Norming Agreement also proposes new specific Class-based

---

[1] https://www.nflconcussionsettlement.com/Docs/demographic_norms_sm.pdf.

norms to be implemented in the future[2], which—if developed and applied appropriately—should benefit the players further and, it is hoped, contribute to developments in Neuropsychology and other fields.[3]

      The Norming Agreement is complicated, and its effective implementation, including the development of the new norms, is vital for Black former players to fully benefit from the negotiated terms. Intervenors, Class Counsel, the NFL Parties, and former players (with the support of their families) must closely monitor the procedures and standards of implementation to ensure fairness. This is especially true as many Black former players are impaired and unrepresented. Intervenors take assurance in the active role that the Court has taken throughout the norming litigation, as it has done in overseeing all important aspects of the Settlement Program.[4]

      Intervenors' Counsel have consulted extensively with attorneys active in the Settlement Program and many players and their families concerning the Norming Agreement. While there have been limited questions and comments concerning the Norming Agreement, to date, there have only been joinders, and no former player has objected to its immediate approval and implementation. There is also a letter filed on behalf of many players and their wives that supports

---

[2]  Importantly, the Norming Agreement is intended to make it more likely that any player or player group will qualify for an award.  Intervenors expect the same would be true with respect to any new norms developed for the players in the future.

[3] *See, e.g.*, Jonathan Greg, *NYC Creates coalition to end bias and 'race-norming' in medical algorithms*, ZDNET (Dec. 13, 2021), https://www.zdnet.com/article/new-york-city-health-department-creates-coalition-to-take-on-bias-and-race-norming-in-clinical-algorithms/ (describing impacts in kidney function tests and maternal care); Ovetta Wiggins, *University of Maryland Medical System drops race-based algorithm officials say harms Black patients*, The Washington Post (Nov. 16, 2021), https://www.washingtonpost.com/local/md-politics/maryland-hospital-black-diagnostic-test-kidneys/2021/11/17/e69edcfc-4711-11ec-b05d-3cb9d96eb495_story.html (Black patient eligibility for transplants).

[4]  Despite dismissing the underlying norming litigation, the Court recognized the importance of the issue and the need for active participation from the stakeholders in resolving the matter by ordering the Parties to mediation and granting Intervenors' request to join in settlement negotiations.

approval. There is overwhelming support for the Norming Agreement, and Intervenors now join in recommending its immediate approval and implementation.

Dated: January 27, 2022                    Respectfully submitted,


    /s/  *Cyril V. Smith*    
Cyril V. Smith
Zuckerman Spaeder LLP
100 E. Pratt Street, Suite 2440
Baltimore, MD  21202
(410) 332-0444
csmith@zuckerman.com

Aitan D. Goelman
Ezra B. Marcus
Zuckerman Spaeder LLP
1800 M Street, 10th Floor
Washington, DC 20036
(202) 778-1800
agoelman@zuckerman.com
emarcus@zuckerman.com

    /s/ *J.R. Wyatt*    
J.R. Wyatt
JR Wyatt Law PLLC
49 West 37th Street, 7th Floor
New York, New York 10018
(215) 557-2776
justin@jrwyattlaw.com


    /s/ *Edward S. Stone*    
Edward S. Stone
Edward Stone Law P.C.
300 Park Avenue, 12th Floor
New York, NY  10022
(203) 504-8425
eddie@edwardstonelaw.com


Attorneys for Intervenors Kevin Henry and Najeh Davenport

4

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was filed electronically with the Clerk of the Court on the 27th day of January, 2022, to be served by operation of the Court's electronic filing system which sent notification of such filing via electronic mail to all counsel of record.


Dated: January 27, 2022                     */s/ Ezra B. Marcus_ ___*
                                            Ezra B. Marcus