IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:  NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : : : : : : | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | | |

### CLAIMS ADMINISTRATOR'S MEMORANDUM REGARDING SUBMISSIONS TO THE INQUIRY INBOX

1.  *Norming Agreement Notice.*  BrownGreer PLC is the Court-appointed Claims Administrator of the Settlement Program established under the Class Action Settlement Agreement in this litigation.  The January 3, 2022 "Important Notice from the Court" regarding "The Elimination of Race as a Consideration in the Assessment of Neuropsychological Test Results" (the "Notice") instructed BrownGreer to circulate the "notice, with a copy of the motion and attached exhibits (ECF No. 11567), to all members of the Class."  The Notice also directed that "BrownGreer must post these documents on the Settlement Program's website (www.nflconcussionsettlement.com)."  We posted the Notice, with a copy of the motion and attached exhibits (ECF No. 11567) on the Settlement Website and on the Program Portals for the *Pro Se* Settlement Class Members and the law firms representing Settlement Class Members on January 3, 2022.  In addition, on January 4, 2022, we emailed 17,844 Settlement Class Members and all 562 law firms representing Settlement Class Members in the Program, alerting them to these filings and provided links to access the documents.  On January 5, 2022,

we mailed packets with the Notice and a copy of the motion and attached exhibits (ECF No. 11567) to 1,107 Settlement Class Members for whom we did not have an email address. We mailed 1,241 additional packets to Settlement Class Members whose emails bounced back and therefore were not delivered.

The Notice stated that "If you have any comments, questions, or concerns regarding the proposed resolution, please send an email to Norming@NFLConcussionSettlement.com by January 25, 2022." As directed, we set up and made this inbox (the "Inquiry Inbox") operational on January 3, 2022. We summarize and explain the inquiries we received in this memorandum (the "Memorandum").

**2.**     ***Submissions to the Inquiry Inbox.*** We received a total of 61 submissions to the Inquiry Inbox. Of these, 52 were submitted by January 25, 2022, and the other nine on January 26 through February 2, 2022. We summarize and address all 61 inquiries in this Memorandum.

**3.**     ***Inquiries from Settlement Class Members.*** Of the 61 total inquiries received, 47 were sent by Settlement Class Members or on behalf of Settlement Class Members by their family members and one by a Settlement Class Member's business advisor. We will make these inquiries available to the Court for *in camera* inspection upon request but, due to privacy concerns, are not submitting each of these inquiries with this Memorandum. Forty-three of these inquiries ask for specific information about a particular Settlement Class Member such as, "I received this new communication about norming but not sure how that fits with my case" and "what should I do if I was denied in the initial case?" Of these 43 inquiries:

> (a)  Twenty-six of the Settlement Class Members are represented by lawyers in the Settlement Program. We responded to these inquiries with "Thank you for

    your inquiry. We will share it with the Court. Our records indicate that you are represented by an attorney in relation to the NFL Concussion Settlement Program. To discuss specific details of your possible claims, please contact your attorney."

(b) Seventeen of the Settlement Class Members are proceeding as *pro se* in the Settlement Program. We responded to their inquiries by replying that "we have received your email and will provide your message to the Court." In addition, Class Counsel sent a personalized message to each of these seventeen *pro se* Players responding to their specific questions and/or explaining that more information will be forthcoming to assess the Player's individual circumstances.

The remaining four inquiries from Settlement Class Members or on their behalf focus on individual circumstances but also raise more general questions, quoted here:

(a) "Why did the wording need to change for fairness to be administered across the board?"

(b) "Was the settlement amount that was awarded to the players affected by race as well or was the concession settlement paid out on an equal scale?"

(c) "As a retired NFL player who participated in the testing program, I support the agreement of eliminating any consideration of race in the settlement program. Many retired players, such as myself are living with problems caused by concussions and dementia, as a true reality. I feel it's a racist practice and should be abolished."

(d) "We are urging the NFL Concussion Settlement program to allow players that have previously been tested to be retested without race being taken into consideration. We have experienced repeatedly in both health and other public/private sectors the impacts of racial profiling which have caused loss of opportunity and income. In this case, we were told we could only utilize NFL-sanctioned doctors to perform the neurological assessment and for us this meant going to a White doctor that we had never met before and who had never met us (I accompanied my husband on his visits). From the beginning, I did not think the doctor was giving my husband a fair chance and the doctor seemed uninterested and passive when it came to collecting information from my husband and asking my husband questions. From my vantage point, it seemed the doctor had already summed up my husband and his playing career. He made references as such and when we left, neither I nor my husband felt confident that he had been treated with the best of intentions and service.

In medicine and science it is very possible to run tests blindly and with full anonymity. These protocols should be put in place immediately to make sure that every player is given equal and fair treatment. There are ample studies demonstrating the bias and racial discrimination that occurs in the health field and I have highlighted a few."

4.      ***Inquiries from Law Firms.*** Of the 61 total inquiries received, 14 were submitted by law firms. Two of these questions pertained to individual Player circumstances. We will make those inquiries available to the Court for *in camera* inspection upon request but, due to privacy concerns, are not submitting them with this Memorandum. The remaining 12 inquiries are attached to this Memorandum, after redacting the names and other identifying information.

Respectfully submitted,

**CLAIMS ADMINISTRATOR**

By: *Roma Petkauskas*
Roma Petkauskas
Virginia State Bar No.: 71357
BrownGreer PLC
250 Rocketts Way
Richmond, Virginia 23231
Telephone: (804) 521-7218
Facsimile: (804) 521-7299
Email: rpetkauskas@browngreer.com

Dated: February 4, 2022.

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Claims Administrator's Memorandum Regarding Submissions to the Inquiry Inbox to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Eastern District of Pennsylvania, on all parties registered for CM/ECF in the litigation.

Dated: February 4, 2022.

                                               *Roma Petkauskas*
                                               Roma Petkauskas