**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | No. 14-cv-00029-AB |

**MEDIATING PARTIES' RESPONSE TO COMMENTS SUBMITTED BY CLASS MEMBERS, AND JOINDERS SUBMITTED BY COUNSEL WITH REPECT TO THE MOTION OF THE NFL PARTIES AND CLASS COUNSEL TO APPROVE MODIFICATIONS TO THE NFL CONCUSSION SETTLEMENT AGREEMENT PURSUANT TO SECTION 6.6**

Pursuant to the Court's Order (ECF No. 11619), Class Counsel, the National Football League and NFL Properties LLC (the "NFL Parties"), and counsel for the Intervenors (collectively, the "Mediating Parties") respectfully submit their response to Class Members' comments concerning the Motion of the NFL Parties and Class Counsel to Approve Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6 (ECF No. 11567, the "Motion"), as well as to the various joinders or letters filed on the docket regarding the Motion, which would eliminate the consideration of race in the Settlement Program.

As the Parties showed in detail in their moving brief, recognizing the desire of many in medicine, including in the field of neuropsychology, to remove the consideration of race as a proxy to correct for test bias and social inequity, the Mediating Parties entered into a mediation to lead this complex effort overseen by Magistrate Judge David Strawbridge. To that end, the NFL Parties and Class Counsel engaged a panel of leading expert neuropsychologists (the "Expert

Panel") to develop a race neutral and diagnostically sound method for accurately identifying Level 1.0, 1.5, and Level 2.0 Neurocognitive Impairment in the Settlement Program on an interim basis (the "New Method") while the Expert Panel continues its work to create race-neutral, long-term demographic corrections specifically applicable to the population of retired NFL Players. In addition, to redress any prior consideration of race in the Settlement Program, the Parties have agreed to provide additional benefits to certain Settlement Class Members who were potentially impacted by such consideration, including the automatic rescoring of certain Retired Players' testing using the New Method, and the opportunity for certain other Retired Players to receive an additional free evaluation using the New Method, or to rescore and resubmit prior evaluations. The response to the Motion seeking to modify the Settlement Agreement to accomplish these laudable goals has been overwhelmingly positive, as not a single objection was filed and many firms representing Settlement Class Members submitted joinders requesting that the Court promptly grant the Motion.

Indeed, as detailed by the Claims Administrator in its Memorandum Regarding Submissions to the Inquiry Inbox (ECF No. 11622)—which, per the Court's instruction, discussed only submissions that were received through the inquiry inbox the Claims Administrator established for that purpose—most of the submissions the Claims Administrator received were from individual Settlement Class Members, both represented and unrepresented. The remaining submissions were from law firms that represent Settlement Class Members.[1] The vast majority of the Class Members and law firms asked discrete confidential questions specific to their individual situations, or asked straightforward questions about the proposed modifications that are answered on the face of the Motion and/or the Norming Agreement. As reflected in the Claims

[1] Capitalized terms not otherwise defined in this response have the same meaning they had in the Motion.

Administrator's Memorandum, none of the submissions objected to any of the modifications proposed in the Motion and only one proposed a substantive modification for consideration by the Court. Class Counsel has personally responded to every *pro se* Player who submitted a question or comment, and is in the process of contacting law firms to answer their submitted questions.

In addition to the comments and questions received via the Claims Administrator, seven joinders were filed on the docket by various counsel for Settlement Class Members, along with a letter in support of the Motion from Dr. Amy Lewis, a wife of a Retired Player, which was co-signed by 75 Retired Players and family members of Retired Players. Most of the joinders fully supported the Motion and did not raise any issues or concerns. The Mediating Parties, however, nevertheless take this opportunity to respond to two of the submissions received through the inquiry inbox, the limited set of comments that were contained in certain joinders, and the letter from Dr. Lewis.

**Email Dated January 26, 2022 Regarding Eligibility for Expanded BAP Examinations (ECF No. 11622-1 at 15)**

This email asked whether Retired Players whose neuropsychological test scores were previously found to be invalid are still eligible for the Expanded BAP Examinations. The short answer is yes, subject to the exclusions listed in §2.6(b) of the Norming Agreement. In other words, Players are not excluded from eligibility for Expanded BAP Examinations simply because their prior test results were found to be invalid, which is different than the rules governing eligibility for "Automatic Retrospective Rescoring" and "New Settlement Claim Submissions", both of which do exclude Retired Players whose neuropsychological test scores were previously found to be invalid.

**Email Dated January 25, 2022 Regarding Deadline for Expanded BAP Examinations (ECF No. 11622-1 at 14)**

This email proposes a change regarding the deadline as to when the new BAP Examinations must occur.  The Norming Agreement provides that new BAP Examinations ". . . must occur within twenty-four months of the Court's Order granting this Motion . . ."  (*See* Norming Agreement §2.6(c).)  The email proposes replacing "must occur within twenty-four months" with "must be requested within twenty-four months."  The lawyer's concern is that unavoidable delays may prevent the actual BAP examination from taking place within the required twenty-four months.  The Mediating Parties recognized that possibility when drafting the Norming Agreement and specifically included a sentence in § 2.6(c) providing that "If an eligible Retired Player contacts the BAP Administrator to make his appointment with the twenty-four (24) month period, he will be deemed to have taken a timely BAP examination." (Norming Agreement § 2.6(c).) The Parties cite to that sentence from §2.6(c) in their Motion and quote it in its entirety at footnote 17.  (*See* Motion at 20 & n.17.)  Accordingly, the Mediating Parties do not believe that the requested modification is necessary.

**Joinder of Goldberg, Persky & White, P.C. ("Goldberg Persky") (ECF No. 11601)**

The joinder filed by Goldberg Persky raised two concerns with respect to the Motion that warrant response:

   a.  Retired Players cannot appeal the determinations by the Claims Administrator and BAP Administrator, with guidance from the AAP/AAPLC/AAPC and Special Masters, as to who qualifies for automatic re-scoring, and

   b.  the Motion does not set a "time certain" for the implementation of the "Long-Term Method."

Appealability of Claims Administrator's Determination of Re-Scoring Eligibility

As stated in the Motion and in the Norming Agreement, the Claims Administrator will review certain Settlement Claims and diagnoses for re-scoring eligibility. (*See* Norming Agreement §2.5(a)(i), (ii) and (ii).) This is one of the numerous additional benefits provided to Retired Players under the Norming Agreement—along with the availability of a new BAP examination and the right for certain Retired Players to submit a new claim for a Monetary Award based on rescored prior test results—that does not exist under the current Class Action Settlement Agreement.

Indeed, all claims being assessed for re-scoring have already received a final, unappealable determination, either because no appeal was filed, the appeal was denied, or the Class Member never had the right to appeal in the first place (*i.e.*, BAP Provider determinations). Retired Players thus do not currently have the right to challenge those determinations under the Class Action Settlement Agreement. The Claims Administrator, however, is reviewing those determinations as an additional benefit to Class Members for a single discrete purpose: to determine whether it would have approved a more severe Qualifying Diagnosis had the Retired Player's T-scores been lower. (*See* Norming Agreement §2.5(b).)

Where the Claims Administrator determines the result would not have changed, there is no modification to the Retired Player's claim status warranting a renewed right to appeal—the Retired Player already received the governing notice of determination with no right to appeal (*i.e.*, BAP Provider determinations), or had the opportunity to appeal that claim determination, and either chose not to do so or appealed unsuccessfully. Therefore, there is no basis to re-open the original determination and provide appellate rights where none previously existed. Indeed, the

determination of re-scoring eligibility is not intended to be a re-litigation of previous determinations by BAP Providers, the Claims Administrator, and/or the Special Masters.

Moreover, and critically, the lack of an appeal right is also a *benefit* to the Class Members as it works both ways: the Parties also cannot appeal a determination that a claim is eligible for re-scoring. In addition, Retired Players whose Settlement Claims or diagnoses are reviewed by the Claims Administrator under §§2.5(a)(i) and 2.5(a)(ii) but are found not to be eligible for automatic re-scoring will still be eligible for an Expanded BAP Examination and the right to file a claim in the event they are diagnosed with a Qualifying Diagnosis by the BAP Providers.

Implementation Date for "Long-Term Method"

Goldberg Perksy's joinder also notes that the Motion does not include a "time certain" for the implementation of the "Long-Term Method" as described in §3.1 of the Norming Agreement.

The Mediating Parties do not believe it is prudent to establish a "time certain" for the implementation of a new method of assessing neuropsychological test results that is being driven wholly by science and is still being developed. The NFL Parties and Class Counsel will appropriately be guided by the Expert Panel with respect to the determination that long-term norms are ready to be implemented. It is directly contrary to the Class Member's interest to rush the development process such that the norms are not sufficiently tested for accuracy prior to implementation.

That said, and as stated in the Norming Agreement, the Parties set a goal of one year from the date of the Norming Agreement for the implementation of the long-term norms, so that the work is sufficiently prioritized. That goal, however, is just that, and may be subject to change if the Expert Panel advises that it needs additional—or less—time to develop accurate long-term

norms. To be sure, the Parties share Goldberg Persky's desire to implement the long-term method as soon as possible.

**Joinder of Langfitt PLLC (ECF No. 11607)**

The Norming Agreement currently states that "[i]f a Retired Player cannot travel for a new BAP examination that is scheduled pursuant to this §2.6, subject to a 'good cause' standard, or if a Retired Player has died and cannot now be retested, a Special AAP Panel will determine if the Retired Player's rescored test results and Settlement Claim file meets the criteria for a new or more severe Qualifying Diagnosis, on application by the Retired Player and/or his Representative Claimant." The Norming Agreement further provides that that "the Claims Administrator, with guidance from the Special Masters as necessary, will determine whether the 'good cause' standard has been met." (*See* Norming Agreement § 2.6(f).) Langfitt's joinder proposes adding a sentence to clarify that the Special Masters will "**exercise the equitable power of the Court**" when they assist the Claims Administrator in making "good cause" determinations with respect to Retired Players who have died.

Langfitt misunderstands § 2.6(f)'s "good cause" standard. The "good cause" standard in § 2.6(f) only applies to those Retired Players who claim that they cannot travel for a new BAP examination. It does not apply to deceased Retired Players. But even if it did apply to deceased Retired Players, the proposed additional clause is unnecessary and redundant. The Special Masters are appointed by the Court, and both the Order approving the Special Masters (ECF No. 6871) and the Class Action Settlement Agreement itself authorize the Special Masters to "take all steps necessary to faithfully oversee the implementation and administration of the Settlement Agreement." (Class Action Settlement Agreement §10.1(a)(ii), ECF No. 6481-1). The Special

Masters' role as an extension of the Court is thus inherent and, accordingly, the Mediating Parties do not believe that any modification is needed to the Motion or Norming Agreement.

**Letter from Dr. Amy Lewis (ECF No. 11602)**

The letter submitted by Dr. Amy Lewis, which was co-signed by 75 Retired Players and family members of Retired Players, supports approval of the Parties' Motion while expressing certain concerns. Importantly, Dr. Lewis's concerns do not relate to the actual modifications sought by the Motion. Rather, her concerns generally involve the implementation of the modifications and the need to ensure that Retired Players, especially those who are unrepresented, understand the benefits available to them should the Motion be granted.

The Mediating Parties appreciate the concerns expressed by Dr. Lewis, and wholeheartedly agree that the modifications must be implemented fairly, and that Retired Players must be informed of and understand the rights afforded them by the modifications.  Upon receipt of Dr. Lewis's letter, Class Counsel met with Dr. Lewis and her husband, Retired Player Kenneth Jenkins, regarding the concerns expressed in her letter, and how best to address them going forward.  The initial meeting was productive and additional meetings have been scheduled. Class Counsel is optimistic that it can work with Dr. Lewis to formulate an action-plan to develop proposals for the Court's consideration that will address her concerns throughout the implementation of the modifications.

During the initial meeting, Dr. Lewis expressed a concern that lawyers representing Retired Players need to better understand how the modifications impact their clients.  The Mediating Parties share that concern, particularly in light of the fact that the answers to many of the questions submitted by Class Members' counsel to the inquiry inbox (as described in the Claims Administrator's Memorandum Regarding Submission to the Inquiry Inbox) are addressed in the

Motion and/or Norming Agreement itself. Class Counsel has begun reaching out to those lawyers who submitted questions to provide answers and to encourage them to carefully read the Motion and Norming Agreement, and the Settlement Program expects to provide FAQs and other user-friendly summaries of the benefits as the modifications are implemented.

* * *

In conclusion, the Motion has been overwhelmingly supported by Class Members and their counsel. While some Class Members and counsel had questions or non-substantive suggestions, none objected to the Motion and each filing on the docket asked the Court to promptly grant it in order to remove race as a consideration in the Settlement Program, and provide additional benefits to eligible Settlement Class Members whose prior Settlement Claims or neuropsychological test results may have been adversely affected by the consideration of race. Accordingly, the Mediating Parties respectfully request that the Court grant the Motion, and it is their hope that the removal of consideration of race in the Settlement Program and the Expert Panel's work will continue to help the field of neuropsychology with its recently stated goal to eliminate the consideration of race in demographic adjustments in the field generally.

Dated: February 11, 2022

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
Michael L. Rosenberg

SEEGER WEISS LLP
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07660
cseeger@seegerweiss.com
(973) 639-9100

*Class Counsel*

*/s/ Brad S. Karp*
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
bkarp@paulweiss.com
(212) 373-3000

*Attorneys for the National Football League and NFL Properties LLC*

*/s/ Cyril V. Smith*
Cyril V. Smith
Aitan D. Goelman

Zuckerman Spaeder LLP
100 E. Pratt Street, Suite 2440
Baltimore, MD 21202
csmith@zuckerman.com
(410) 332-0444

*/s/ J.R. Wyatt*
J.R. Wyatt

J.R. Wyatt Law PLLC
49 West 37th Street,
7th Floor
New York, NY 10018
justin@jrwyattlaw.com
(212) 557-2776

*Attorneys for Intervenors Kevin Henry and Najeh Davenport*