## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## MOTION FOR FAIRNESS HEARING

X1LAW, PA, on behalf of its clients who are Retired NFL Players, Families of Players and Settlement Class Members ("Movants"), who are affected by any changes made to the NFL Settlement Agreement, respectfully submits this Motion for the Court to grant a Fairness Hearing, and states the following in support:

The NFL Parties, Class Counsel, and the Attorneys for Kevin Henry and Najeh Davenport (hereafter Intervenors) have collaboratively reached an agreement to eliminate any consideration of race in the Settlement Program. Class Counsel SeegerWeiss & the NFL were directed by the court to attend mediation to end Race Norming, SeegerWeiss came away with a release of culpability from the very class members they represent for the very race norming they were

accused of allowing. SeegerWeiss never put those same class members on notice that they would need independent counsel to represent them at the mediation, the independent counsel was needed, as only now have we found out, due to SeegerWeiss negotiating a settlement and release of claims which potentially could be brought against SeegerWeiss by those same class members. It is unknown if the negotiations for release of claims against SeegerWeiss & the NFL materially delayed resolution of the Race Norming issue but it is known that the parties were tasked with resolving the Race Norming issue alone and nothing else was included in the direction to mediation from the court. Therefore, X1law's clients cannot in good faith agree to any proposals from this mediation absent a fairness hearing to examine what is being proposed.

The agreement from the mediation is being referred to as the "Norming Agreement." On December 30, 2021, the Court received a motion (ECF No. 11567, 12-md-2323) to approve modifications to the Class Action Amended Settlement Agreement in order to implement those components of the Norming Agreement impacting the Class.

BrownGreer was instructed by the court presumably under FRCP Rule 23(e)(1)(B)(i) to circulate a notice, with a copy of the motion and certain alleged attached exhibits (ECF No. 11567), to all members of the Class. In addition, BrownGreer was meant to post those documents on the Settlement Program's website (www.nflconcussionsettlement.com) as of the date of this filing that has not happened.

BrownGreer failed to comply with this mandate. They published the notice without the exhibit containing the proposed order. The notice also failed to inform the class members that a settlement was reached between the NFL, SeegerWeiss and the Intervenors, which affects the class members. This settlement is not included in the Notice, and its omission shows more of the same— the class members have historically not been given the entire story or facts. Under FRCP Rule

23(e)(4) New Opportunity to Be Excluded, If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

Rule 23(c)(2)(B) commands that notices "concisely and clearly state in plain, easily understood language" the elements of a material change. The release from the mediation has nothing to do with the Race Norming itself, yet presumably binds the class members from pursuing damages suffered for the race norming from the NFL & SeegerWeiss. This proposed change to the Amended Settlement Agreement is governed by FRCP Rule 23 and demands a Fairness Hearing.

The NFL has indicated that not only are they going to change the Race Norming issue within the NFL Concussion Settlement Claims, but they are also going to correct this practice in all of medicine, from Washington Post article (Attached Exhibit A). The fact that the NFL is saying that they are going to globally change neuropsychology as we know it regarding Race Norming, indicates that this Mediation's results regarding Race Norming will produce material changes to the Amended Settlement Agreement and such material changes require a fairness hearing. This will not be a fine tuning or a procedural change to the Amended Settlement Agreement but a material change to it and to Neuropsychology as a whole. The NFL has said so again in it's Exhibit 1 of the NFL's "Norming Agreement" motion (ECF No. 11567, 12-md-2323) (Attached Exhibit B) at:

> Sec.9.1 (e) The NFL Parties have committed to fund a working group of experts to develop methods that do not reference race, specifically applicable to the population of NFL Players. The Parties hope that this work will provide a basis for accurate diagnosis for former NFL players, ***and potentially beyond that*** (*emphasis added*).

The NFL and the Claims Administrator, BrownGreer, as well as Class Counsel, Chris

Seeger, have admitted and identified that Race Norming did and has occurred within the testing of players who are seeking payment under the existing Settlement Agreement. The parties to the mediation are are now determining how to change the claims process and what to do to remedy the existing test scores of players who were denied based on this racist practice. Behind closed doors, the issues with regard to Race Norming and the overall impact on the existing Amended Settlement Agreement are presently taking place. Ultimately, ***there will be material changes to the Amended Settlement Agreement*** (*emphasis added*). These changes have not been fully vetted or determined. The Amended Settlement Agreement states that the pre-effective date standard for qualifying diagnosis, the post effective date standard for qualifying diagnosis have to be generally consistent with the BAP standard, The BAP standard must be followed if seeing a BAP doctor. The BAP standard is tied to the Neuropsychological exam and the Race Norming issue, so changing the Race Norming issue will affect all Claimants. Changing Race Norming, although unanimously perceived as beneficial to everyone, is still a material change to the heart of the Amended Settlement Agreement and requires a Fairness Hearing.

Any changes made now to the Amended Settlement Agreement absent a Fairness Hearing with appropriate notice will amount to an Amendment without following requisite procedures: The Court in *In re Diet Drugs, Sales Practices & Prods. Liab. Litig.* MDL 1203, 226 F.Supp.2d 498 (e.D. Pa. March 15, 2005). *("Diet Drugs")*, identified the personal jurisdiction and notice requirements that must be met to amend a class settlement:

> Reasonable notice combined with an opportunity to be heard and withdraw from the class satisfy the due process requirements of the Fifth Amendment. …In addition, in a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e). Under Rule 23(c)(2), notice to class must be "the best practicable notice under the circumstances, including individual notice to all members who can be identified through reasonable effort. The Rule also requires that the notice indicate an opportunity to opt out, that the judgment will bind all class members who do not

opt out and that any member who does not opt out may appear through counsel. Rule 23(e) requires that notice of a proposed settlement must inform class members: (1) of the nature of the pending litigation; (2) of the settlements' general terms; (3) that complete information is available from court files; and (4) that any class member may appear and be heard at the Fairness Hearing [citations omitted].

*See Diet Drugs*, 226 F.Supp.2d at 517-518 (the court held, among other things, that the Seventh Amendment to Settlement Agreement, which materially changed settlement by reducing payouts to certain eligible class members and eliminating certain opt out rights, met notice requirements and was fair, adequate and reasonable).

The Court in *Diet Drugs* further explained that "the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *See id*.

Changes to the BAP Standard as is contemplated amount to an amendment to the Amended Settlement Agreement that alters material rights, and any such amendment requires specific notice requirements and an opportunity to be heard,[1] as provided by the Federal Rules and applicable

---

[1] *See In re Diet Drugs, Sales Practices & Prods. Liab. Litig.* MDL 1203, 226 F.Supp.2d 498 (E.D. Pa. March 15, 2005) ("Reasonable notice combined with an opportunity to be heard and withdraw from the class satisfy the due process requirements of the Fifth Amendment. ... In addition, in a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e). Under Rule 23(c)(2), notice to the class must be "the best practicable notice under the circumstances, including individual notice to all members who can be identified through reasonable effort. The Rule also requires that the notice indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out and that any member who does not opt out may appear through counsel. Rule 23(e) requires that notice of a proposed settlement must inform class members: (1) of the nature of the pending litigation; (2) of the settlement's general terms; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the Fairness Hearing [citations omitted]"). *See also In re Diet Drugs Prods. Liability Litig.*, No. 99–20593, 2010 WL 2735414, at *6 (E.D.Pa. July 2, 2010) (in MDL where notice of Tenth Amendment to Settlement Agreement and opportunity to object was provided to class, Court approved amendment as fair, adequate and reasonable); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 n. 10, 182 (3d Cir.2013) (held, among other things, that "supplemental notice should be provided to the class if the settlement is materially altered on remand").

law. Moreover, this exact issue was raised *In re Deepwater Horizon*, 858 F.3d 298 (5th Cir. 2017) (attached as Exhibit D). In *Deepwater Horizon*, the claims administrator was charged with administering claims relative to the BP oil spill. Pursuant to the settlement agreement, each claimant had the right to choose its own post-spill compensation period, as long as it was a consecutive three-month period in 2010. *See id.* at 301. The claims administrator was to use this post-spill compensation period and subtract it from the same pre-spill period to arrive at the amount of damages owed to each claimant. *Id.*

An issue arose, however, because not all financial documents submitted showed income and expenses that occurred during the same months. *Id.* Rather, sometimes income was received, or expenses were incurred outside of the three-measuring months, and this resulted in the claimed damages being inflated. *Id.* The Court held that the claims administrator's actions to "move, smooth, or otherwise reallocate revenue" and ensure that "damages are awarded to those who have suffered real losses" was improper: "This may well be a fairer alternative. But it cannot be implemented, because it is inconsistent with the plain text of the Settlement Agreement." *Id.* at 303.

Allowing the NFL, SeegerWeiss the Intervenors or the AAP to rewrite or implement the Norming Agreement without seeking or gaining the approval of the Claimants, in a manner which was "not the agreement that the parties entered into" is the same issue addressed by *Deepwater Horizon* . Accordingly, the Court should refuse to "re-write the amended settlement agreement" without providing for a fairness hearing and the requisite notices. *See id.* at 304.

The new, undisputed evidence provided by Movants provides that there have been and will be material substantive changes to the Amended Settlement Agreement. The entire behind-closed-doors mediation was set solely for ending Race Norming but was detoured into a settlement

conference between the NFL, SeegerWeiss & the Intervenors.

Movants respectfully request that the material substantive changes contemplated to the Amended Settlement Agreement are not approved, adopted or implemented without reasonable notice given combined with an opportunity to be heard and to withdraw from the class to satisfy the due process requirements of the Fifth Amendment and under Federal Rules of Civil Procedure Rule 23(b)(3),23(c)(2) and 23(e) and to be permitted to appear and be heard at a Fairness Hearing.

## CONCLUSION

For the foregoing reasons, the Court should grant the Movants right to a fairness hearing.

Dated: February 17, 2022

Respectfully Submitted,

Attorneys for Plaintiffs/Movants
Patrick J. Tighe
X1LAW, P.A. f/k/a Patrick J. Tighe, P.A.
721 US Highway 1, Ste 101
North Palm Beach, FL 33408
Phone: (561)537-3319
Fax: (561)537-7193
Pat@X1LAW.com
Florida Bar No. 568155
*s/Patrick J. Tighe*
Patrick J. Tighe

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2022, the foregoing document was electronically filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

**X1LAW, P.A.**

*s/ Patrick J. Tighe*
**PATRICK J. TIGHE**