# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB <br><br> MDL No. 2323 <br><br> **Hon. Anita B. Brody** <br><br> Civ. Action No. 14-00029-AB |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, <br><br>　　　　Plaintiffs, <br><br>　　　　　　v. <br><br> National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., <br><br>　　　　Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

### MEDIATING PARTIES' RESPONSE TO "REQUEST FOR FURTHER CLARIFICATION" REGARDING MOTION OF THE NFL PARTIES AND CLASS COUNSEL TO APPROVE MODIFICATIONS TO THE <u>NFL CONCUSSION SETTLEMENT AGREEMENT</u>

Class Counsel, the NFL Parties, and the Intervenors (collectively, "the Mediating Parties") respectfully submit this response to the "Request for Further Clarification" filed on February 16, 2022 by the law firm of Goldberg, Persky & White, P.C. ("Goldberg Persky") (ECF No. 11631). As discussed below, the submission is a poorly disguised sur-reply that was filed without leave of the Court, and, in any event, reflects a clear misreading of the proposed Norming Agreement.[1] Nothing in Goldberg Persky's unauthorized (and entirely unfounded) submission should give the Court any pause in granting the Motion.

---

[1] Capitalized terms not otherwise defined in this response have the meanings they had in the December 30, 2021 Motion of the NFL Parties and Class Counsel to Approve Modifications to the NFL Concussion Settlement Agreement Pursuant To Section 6.6 (ECF No. 11567) (the "Motion").

As an initial matter, the Mediating Parties also wish to emphasize the fact that Goldberg Persky's "Request for Clarification" is potentially delaying the prompt granting of the Motion and the implementation of the New Method contained in the Norming Agreement, and therefore preventing supplemental benefits from reaching Settlement Class Members. Despite Goldberg Persky's filing, the Mediating Parties respectfully request that the Court promptly grant the Motion because there have been no substantive objections to the portions of the Norming Agreement that would be implemented in the Settlement Program if the Motion is granted.

### A.  The "Request for Further Clarification" Was Unauthorized

On January 3, 2022, the Court ordered that responses to the Motion be submitted no later than January 25, 2022.  ECF No. 11568.  Goldberg Persky filed a joinder in the Motion on January 21, 2022, "strongly support[ing]" the Motion while at the same time expressing "some concerns" about it.  ECF No. 11601 at 1-2.

The Court subsequently issued an Order directing the Claims Administrator to file a memorandum setting forth comments and questions received in response to the Motion by February 4, 2022, and, in turn, the Mediating Parties to file an omnibus response to Settlement Class Members' comments by February 11, 2022.  ECF No. 11619.  Those submissions were duly filed on their respective due dates.  ECF Nos. 11622, 11630.  The Court did not provide for any further submissions concerning the Motion.

Nevertheless, without seeking leave of the Court—let alone obtaining it—Goldberg Persky filed an unauthorized response to the mediating parties' omnibus response under the guise of a "request for further clarification."  ECF No. 11631.  Goldberg Persky does not set forth any justification for submitting a filing that the Court did not contemplate, much less sanction.  Indeed, Goldberg Persky simply ignores the briefing schedule set forth by the Court and purports to take

issue with the adequacy of the Mediating Parties' response to the points it had raised in its January 21, 2022 joinder (ECF No. 11601), all the while rehashing its earlier concerns that the parties have already comprehensively addressed. ECF No. 11631 at 1-3.

The "request for further clarification" is thus an unauthorized sur-reply. Judges of this District have routinely struck or refused to consider such unauthorized sur-replies. *E.g.*, *Adams v. U.S. EEOC*, 932 F. Supp. 660, 663 (E.D. Pa. 1996); *Williams v. CVS Caremark Corp.*, No. 15-5773, 2016 WL 4409190, at *3 (E.D. Pa. Aug. 18, 2016); *Supermedia LLC v. Morley*, No. 12-2329, 2013 WL 12249489, at *5 (E.D. Pa. Sept. 5, 2013); *Warfield v. SEPTA*, 10-3023, 2011 WL 1899343, at *1 n.2 (E.D. Pa. May 19, 2011), *aff'd*, 460 F. App'x 127 (3d Cir. 2012). The Court should do likewise here and reject Goldberg Persky's submission for this reason alone.

**B.  Goldberg Persky's "Concerns" Reflect a Misreading of the Norming Agreement**

Even if the Court were to consider the "Request for Further Clarification" on its purported merits, Goldberg Persky's "concerns" are misguided.

*First*, contrary to Goldberg Persky's erroneous assertion, the Mediating Parties never said "that there is no appeal right by a Settlement Class Member to a rescoring by the Claims Administrator." Request for Further Clarification at 2. As a preliminary matter, Goldberg Persky's joinder asked only whether the Claims Administrator's determination of rescoring *eligibility* (as opposed to the *results* of the rescoring) would be appealable. The Mediating Parties sufficiently and comprehensively answered that question: neither Settlement Class Members *nor the NFL Parties* have the right to appeal the Claims Administrator's determination of whether a Settlement Class Member is *eligible* for rescoring. *See* Mediating Parties' Response (ECF No. 11630) at 5-6. Had Goldberg Persky asked whether there is a right to appeal the *results* of the Claims Administrator's scoring, the Mediating Parties would have advised that the rescoring will

result in a new and appealable determination (appealable by either the Claimant or the NFL Parties), with the (very narrow) exception of a circumstance in which the Claimant's original diagnosis was unappealable under the Class Action Settlement Agreement (*i.e.*, the original diagnosis was made through the BAP for Level 1 Neurocognitive Impairment or "no impairment") and the rescoring results in a determination that would have likewise been unappealable if made through the BAP (*i.e.*, the diagnosis remains a Level 1 Neurocognitive Impairment diagnosis or a diagnosis of "no impairment").[2] *See* Motion at 17-18, ECF No. 11567 at 19-20; Norming Agreement §§ 2.5(g)(ii), (iv), and (v), ECF No. 11502 at 10-11. Consequently, there are no asymmetric appeal rights between Settlement Class Members and the NFL Parties. The modifications sought by the Motion do not strip appeal rights from Claimants who would have had them for their original claim determination under the Class Action Settlement Agreement.

*Second*, Goldberg Persky's request that the Court or the Mediating Parties "toll the ages of all player [sic] until the Long Term Method is created" (Request for Further Clarification at 2-3) wrongly assumes that the Settlement Program will be put on pause, with nothing done— concerning the eradication of the consideration of race in the Settlement Program or otherwise— until the Long-Term Norms are developed and implemented. That is not so. As explained in detail in the Motion, the Norming Agreement accomplishes the task of eliminating race as a consideration in the Settlement Program as soon as possible. The NFL Parties and Class Counsel established a panel of expert neuropsychologists ("Expert Panel") to develop "a new assessment method, which completely eliminates the use of race norms in the evaluation of Retired Players' estimated premorbid intellectual ability and neuropsychological test results," and requested that

---

[2] Moreover, for the avoidance of any doubt, neither the NFL Parties nor any Settlement Class Member will be able appeal a Settlement Claim Determination on the basis that Race Norms or Race Demographic Estimates were not applied. *See* Motion at 13, ECF No. 11567 at 15.

4

the interim New Method "be implemented . . . immediately" until the further refined and "diagnostically accurate, race-neutral Long-Term norms applicable to the population of NFL players are developed . . . [and] implemented." Motion at 7, 9-10, ECF No. 11567 at 9, 11-12. Given the immediate implementation of the New Method, Goldberg Persky's request for a tolling of Settlement Class Members' ages until the Long-Term Norms are devised is unnecessary.

### C. Goldberg Persky's Gratuitous Attack on Class Counsel Is Groundless

Goldberg Persky's chief complaint is that "the Medicating [sic] Parties did not respond to the No. 1 concern involving this entire 'norming' situation, which relates to the substantive concern of releasing Class Counsel for originally negotiating and agreeing to the race normed terms in the first place." Request for Further Clarification at 3. It maintains that "[s]uch a release agreement is unacceptable and serves only to protect any perceived breaches of Class Counsel's fiduciary duties owed to the class members as well as all lawyers." *Id.*

Here, too, Goldberg Persky's "concern" misreads the Motion and Norming Agreement. The release of Class Counsel that the Norming Agreement provides is given by the Intervenors—as signatories to the Norming Agreement—not the Class. Norming Agreement §§ 4.1-4.3, ECF No. 11502 at 17-18.

Goldberg Persky also ignores the critical fact that race norming was never required by the Class Action Settlement Agreement. Norming Agreement § 9.1(b), ECF No. 11502 at 23. Thus—lacking any basis in fact, the Motion, the Class Action Settlement Agreement or the Norming Agreement—Goldberg Persky's arguments merely reflect a misguided and gratuitous attack on Class Counsel, just for the sake of an attack.[3]

---

[3] The novel suggestion that Class Counsel owes a fiduciary duty not only to the Class but also separately to absent Settlement Class Members' individual counsel (who stand to be paid by

5

To the extent Goldberg Persky purports to take issue with a term of the Class Action Settlement Agreement, Class Counsel feels compelled to make the point that Goldberg Persky cannot ignore the fact that the Class Action Settlement Agreement was put before the Class (a quarter of whose members had individual counsel) through thorough and spirited Rule 23(e) settlement approval proceedings, including a fairness hearing.  If Goldberg Persky believed, as it contends, that the Class Action Settlement Agreement provides for race-norming, it should have objected at the time.  Instead, Goldberg Persky submitted *no* objections to the Class Action Settlement Agreement.  Having sat on its hands for all this time, likely because it knows full well that race norming was never required, Goldberg Persky now falsely implies that there was some dereliction on Class Counsel's part that resulted in race norming.  Notably, Goldberg Persky does not explain *how* a release of Class Counsel "defeats the entire purpose of th[e] Norming Settlement" or "deals yet another crippling blow" to affected class members, which is unsurprising as this argument is entirely nonsensical and cannot be explained.  Request for Further Clarification at 3.

*   *   *

In sum, Goldberg Persky's Request for Further Clarification is unauthorized and procedurally improper, does not raise any justified concerns, and fails to present any "request for clarification" that it could not have learned by engaging in a good faith reading of the Motion and Norming Agreement.   The Court should either refuse to consider it or, in the alternative, reject or overrule the concerns expressed therein.

---

their Settlement Class Member clients for their services)—*see* Request for Clarification at 3 ("Class Counsel's fiduciary duties owed to the class members *as well as all lawyers*") (emphasis added)—is unfounded and bizarre.  It is an unsupported point not worth belaboring.

Dated: February 23, 2022                    Respectfully submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
Michael L. Rosenberg
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
cseeger@seegerweiss.com
(973) 639-9100
***Class Counsel***

/s/ Brad S. Karp
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
bkarp@paulweiss.com
(212) 373-3000
***Attorneys for the National Football League and NFL Properties LLC***

/s/ Cyril V. Smith
Cyril V. Smith
Aitan D. Goelman
ZUCKERMAN SPAEDER LLP
100 E. Pratt Street, Suite 2440
Baltimore, MD 21202
csmith@zuckerman.com
(410) 332-0444

/s/ J.R. Wyatt
J.R. Wyatt
J.R. WYATT LAW PLLC
49 West 37th Street,
7th Floor
New York, NY 10018
justin@jrwyattlaw.com
(212) 557-2776

***Attorneys for Intervenors Kevin Henry and Najeh Davenport***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's ECF system on February 23, 2022.

*/s/ Christopher A. Seeger*
Christopher A. Seeger
