# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB |
| | MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, | **Hon. Anita B. Brody** |
| Plaintiffs, | Civ. Action No. 14-00029-AB |
| v. | |
| National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## <u>RESPONSE TO MOTION FOR FAIRNESS HEARING</u>

### INTRODUCTION

The Parties to the Class Action Settlement Agreement ("the Parties")[1] respectfully submit this response to the Motion for Fairness Hearing (ECF No. 11633) ("the Motion"), filed on February 17, 2022 by the law firm of X1LAW, PA ("X1").  As discussed in detail below, X1's motion—lacking any substantive basis in the Norming Agreement—has no merit and should be denied.

As a threshold but dispositive matter, X1 does not have standing to challenge the Norming Agreement's proposed modifications (the "Modifications") that will be implemented if the Motion

---

[1] Capitalized terms not otherwise defined in this response have the meanings they had in the December 30, 2021 Motion of the NFL Parties and Class Counsel to Approve Modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6 (ECF No. 11567) (the "Motion to Approve"), and in the proposed Norming Agreement filed with the Court on October 20, 2021 (ECF No. 11502).

to Approve is granted.  Although X1 purports to bring its motion on behalf of Settlement Class Member clients, it fatally fails to identify a single one, thus effectively submitting the motion on its own behalf.  X1 itself, however, does not have any standing whatsoever to challenge the motion because Settlement Class Members—not law firms—had standing to object to the Motion to Approve and the Modifications that would be implemented if it is granted.  Even if X1 had identified any of the "clients" on whose behalf its Motion was purportedly filed, by failing to object to the Motion to Approve in accordance with the process that the Court prescribed in its January 3, 2022 Notice (ECF No. 11568) those clients have waived the right to request a hearing because the Motion would still be untimely.

In all events, even if X1 or another Settlement Class Member had the right to pursue the instant Motion—and they do not —the request for a Rule 23 fairness hearing has no merit under settled law and the unambiguous terms of the Norming Agreement and the Class Action Settlement Agreement.  *First*, it is well settled that Rule 23 requires a fairness hearing in the context of an already implemented settlement agreement only when an amendment to the already-approved settlement agreement would have "a material adverse effect on the rights of class members."  *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2017 WL 937735, at *5 (E.D. Pa. Mar. 9, 2017) (citation and internal quotation marks omitted), *aff'd*, 763 F. App'x 237 (3d Cir. 2019).

Here, although X1 contends that a fairness hearing is needed because the Motion to Approve, if granted, is an "amendment" that will produce "material changes" to the Class Action Settlement Agreement, that is not true.  To the contrary, the proposed Modifications are expressly provided for and were developed pursuant to the clear terms of the Class Action Settlement Agreement, which has from its inception provided that the NFL Parties and Class Counsel could and would be permitted to negotiate adjustments to the neuropsychological protocols used to make

Qualifying Diagnoses as medicine advances.  Class Action Settlement Agreement § 6.6, ECF No. 6481-1 at 39.  As a result, the Modifications are far from an "amendment" subject to Rule 23(e)'s requirements.  Rather, they are made pursuant to an express provision under the Class Action Settlement Agreement, as to which a fairness hearing long ago took place and which was adjudged to be fair, reasonable, and adequate by this Court and the Third Circuit.

*Second*, even if the proposed Modifications were not undertaken pursuant to the express terms of the Class Action Settlement Agreement—and they were—they still would not be subject to a Rule 23 fairness hearing because they merely replace existing norms with new norms designed to reach the accurate diagnoses called for by the Class Action Settlement Agreement.  Indeed, the proposed Modifications constitute a *benefit* to the Class as they eliminate any use of Race Norms or Race Demographic Estimates in the Settlement Program, and X1 itself concedes that the adoption of the New Method, followed eventually by the Long-Term Norms to be devised by an Expert Panel, is "unanimously perceived as beneficial" to the Class.  Motion at 4.  The remaining Modifications likewise are beneficial to the Class because they provide supplemental rights to Settlement Class Members where they previously had none.  Consequently, *even if* the Modifications were an "amendment" to the Class Action Settlement Agreement rather than a modification undertaken expressly pursuant to the clear terms of that Agreement, a Rule 23(e) fairness hearing would still not be required because the Modifications do not "have a material adverse effect on the rights of class members."  *In re Diet Drugs Prods. Liab. Litig.*, 2017 WL 937735, at *5 (citation and internal quotation marks omitted).

X1 also bases its demand for a fairness hearing on a clear misunderstanding of the Norming Agreement.  Specifically, X1 asserts that the Norming Agreement gives Class Counsel a class-wide release related to the use of race norms.   But the gratuitous attack X1 levies against Class

Counsel and its release by Intervenors under the guise of its "motion" is entirely baseless.  Race norming was never required by the Class Action Settlement Agreement, as the Norming Agreement makes clear.  Nor has any claim ever been asserted against Class Counsel related to this matter, including by the Intervenors.  In any event, contrary to X1's claims, neither the Norming Agreement nor the Motion to Approve contain a class-wide release of claims against Class Counsel, although any such claim would be meritless particularly given the undisputed facts as reflected in Article IX of the Norming Agreement.

X1 also incorrectly asserts that the Claims Administrator failed to comply with the Court's directive concerning the furnishing of notice of the Norming Agreement and the Motion to Approve to Settlement Class Members.  That is inaccurate.  In its February 4, 2022 memorandum to the Court (ECF No. 11622), the Claims Administrator outlined all of the steps it had taken to provide notice and faithfully discharge all of its obligations.

In sum, X1's demand for a fairness hearing is baseless and, critically, will serve only to delay a decision on the Motion to Approve and, as a result, the implementation of the Modifications—including the race-neutral New Method that it prescribes—thereby harming Settlement Class Members by preventing supplemental benefits from reaching them.

For these reasons, and those set forth below, the Parties respectfully request that the Court promptly grant the Motion to Approve.  Notwithstanding X1's unauthorized, untimely, and baseless motion, there have been no substantive objections to the portions of the Norming Agreement that would be implemented in the Settlement Program if the Motion is granted.  The Court should accordingly deny X1's Motion.

4

## ARGUMENT

I.   **<u>X1 Lacks Standing to Request a Fairness Hearing and Has Waived the Opportunity to Oppose the Motion to Approve</u>**

A threshold but fatal flaw in X1's motion is that it lacks standing to, or otherwise waived its ability to, request a fairness hearing.

Settlement Class Members—not law firms—had standing to object to the Motion to Approve and the Modifications that would be implemented if it is granted.  Although X1 purports to present its hearing request on behalf of its Settlement Class Member clients (Motion at 1), nowhere does it identify any of them.  That flaw alone renders X1's motion futile and ripe for denial.  But even if X1's request had been properly presented on behalf of any Settlement Class Member—and it was not—it would still fail, because all Settlement Class Members waived any right to object to the Motion to Approve on this basis by neglecting to submit a comment on those grounds in accordance with the Court's January 3, 2022 directive.

By Notice dated January 3, 2022, the Court directed that comments or questions concerning the Motion to Approve be submitted to the Claims Administrator (via the designated email address, Norming@NFLConcussionSettlement.com) no later than January 25, 2022.  ECF No. 11568.  X1 did not request a fairness hearing or take issue with the lack of a planned fairness hearing in any comments or questions submitted pursuant to the Court's schedule; nor did it file a response to the Motion to Approve within the fourteen-day period prescribed by this Court's Local Rules.  *See* E.D. Pa. Local Rule 7.1(c).  Furthermore, no comment sent to the Claims Administrator, or any other response to the Motion to Approve, raised a single substantive concern about the portions of the Norming Agreement that the Motion to Approve seeks to implement, or questioned the absence of a fairness hearing.  Indeed, X1 is conspicuously silent as to whether any of its clients ever even

submitted *any* comments or questions to the Claims Administrator on the schedule provided for by the Court.[2]   Consequently, X1's "clients" (to the extent any are even represented by X1's motion) either lack standing to challenge the Modifications requested by the Motion to Approve and the absence of a fairness hearing therefor,[3] or have otherwise waived any such challenge by failing to timely lodge it in writing in accordance with the Court's January 3rd Notice.[4]

## II.   Rule 23(e) Does Not Apply and There Is No Legitimate Basis for the Court to Order a Fairness Hearing

Even if X1's request for a fairness hearing were not barred for lack of standing or on waiver grounds, its asserted reasons for the convening of a fairness hearing lack merit.   The Motion's

---

[2]   That should come as no surprise.  As Class Counsel pointed out when X1 moved in March 2021—belatedly and opportunistically—to intervene in the August 2021 motion for relief filed by the Intervenors (ECF No. 11320; *see* ECF No. 11169 (Intervenors' motion)), none of X1's clients who were the subject of its intervention request ever underwent neuropsychological testing with respect to their Monetary Award claims, and thus none of them were plausibly affected by demographic corrections to neuropsychological test results.  ECF No. 11323 at 2, 7.

[3] *See In re Plastics Additives Antitrust Litig.*, No. 08-3358, 2009 WL 405522, at *1 (3d Cir. Feb. 19, 2009) ("For an unnamed class member to have standing to appeal a decision in a class action, he or she must have properly raised objections to that decision during the pendency of the litigation.") (per curiam) (citing cases).

[4] *Cf. In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1257-58 (10th Cir. 2004) (class member waived right to appeal approval of class settlement where he did not take "the procedural steps necessary" to object); *Morrison v. Ross Stores, Inc.*, No. 4:18-cv-2671-YGR, 2021 WL 3852726, at *5 (N.D. Cal. Aug. 27, 2021) ("Failure to submit a timely written objection will preclude consideration of the Class Member's later objection at the time of the Fairness Hearing."); *Dickman v. Banner Life Ins. Co.*, No. 1:16-cv-00192-RDB, 2019 WL 6716365, at *5 (D. Md. Oct. 17, 2019) ("A Settlement Class Member who appears at the Fairness Hearing will be permitted to argue only those matters that were set forth in a written objection filed by such Class Member.  No Settlement Class Member will be permitted to raise matters at the Fairness Hearing that the Settlement Class Member could have raised in a written objection, but failed to do so, and all objections to the Settlement that are not set forth in such a written objection are deemed waived."); *Benware v. Hugo Boss, U.S.A., Inc.*, No. 12cv1527-MDD, 2013 WL 11327091, at *7 (S.D. Cal. Oct. 8, 2013) (class members who failed to object to settlement would be deemed to have waived their right to object to it and foreclosed from speaking at Fairness Hearing); *Bottoni v. Sallie Mae, Inc.*, No. C 10-03602 LB, 2013 WL 4003109, at *6 (N.D. Cal. Aug. 2, 2013) (objections raised at fairness hearing would "be limited to those previously submitted in writing").

request for a fairness hearing pursuant to Rule 23 is based on the incorrect assumptions that (i) the Modifications are an amendment to the Class Action Settlement Agreement, (ii) Rule 23 applies to all "material changes" to a previously approved class action settlement agreement, and (iii) Settlement Class Members released potential claims against Class Counsel.  Not so.  The Parties seek to approve Modifications to the Class Action Settlement Agreement *pursuant to Section 6.6* of that same agreement, so the requested modifications cannot be construed as an amendment to the Class Action Settlement Agreement at all.  Moreover, *even if* the Modifications were an amendment of the Class Action Settlement Agreement, a Rule 23(e) fairness hearing would still not be required because the changes would not "have a material adverse effect on the rights of class members."  *In re Diet Drugs Prods. Liab. Litig.*, 2017 WL 937735, at *5 (citation and internal quotation marks omitted).

### A. The Modifications Were Developed Pursuant to the Express Terms of the Class Action Settlement Agreement and Do Not Amend It

X1's principal argument is that a fairness hearing is required because the Norming Agreement is an amendment to the Class Action Settlement Agreement that effects "material changes" to it.  Motion at 3-7.  Not so.  The relief sought by the Motion to Approve would result in Modifications to the Class Action Settlement Agreement that were developed *in accordance with its very terms*.  Specifically, the Motion to Approve was submitted pursuant to Section 6.6(a) of the Class Action Settlement Agreement, which expressly authorizes Class Counsel and counsel for the NFL Parties periodically to discuss in good faith possible modifications to the protocols for making Qualifying Diagnoses, and it allows those modifications to be implemented in the Settlement Program upon written agreement and Court approval.  Class Action Settlement Agreement § 6.6(a), ECF No. 6481-1 at 39.

The inclusion of Section 6.6(a) in the Class Action Settlement Agreement was extensively briefed during the Class Action Settlement Agreement's approval process.  Tellingly, the complaint of various objectors that led to discussion of Section 6.6(a) in the course of the Class Action Settlement's approval was that such modifications would not happen often enough, or that the NFL Parties would refuse to allow any modifications at all—*not* that there was anything improper about Section 6.6's contemplation of updating the protocols for making Qualifying Diagnoses in light of scientific advancements as the Parties seek to do here.[5]  The Court addressed concerns that the Class Action Settlement Agreement would not account for scientific advancement by expressly noting that in recognition that "[t]he Monetary Award Fund lasts for 65 years" and that scientific advancements would be made over that time, "the [Class Action Settlement Agreement] requires the Parties to meet at least every ten years and confer in good faith about possible modifications to the definitions of Qualifying Diagnoses" under the oversight of the Court.  *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 403 (E.D. Pa. 2015) (ECF No. 6509 at 90), *aff'd*, 821 F.3d 410 (3d Cir. 2016).

---

[5] *E.g.*, Class Counsel Mem. in Supp. of Final Approval of Settlement at 84-85 (responding to "[s]everal objectors [who] argue[d] that the 'science is frozen in place,' leaving the Settlement unable to accommodate developments in neurocognitive science over the course of the Monetary Award Fund"), ECF No. 6423-1 at 96-97; Duerson Objection at 25, ECF No. 6241 at 28; Armstrong Objection at 26-27, ECF No. 6233 at 27-28; Alexander Objection at 9, ECF No. 6237 at 9; Utrecht Objection at 7-8, ECF No. 6243 at 8-9.

Furthermore, if X1 objects to the ability of Class Counsel and the NFL Parties to modify the Qualifying Diagnoses or protocols for making them pursuant to Section 6.6(a) of the Class Action Settlement Agreement, then it should have raised its objections in a timely manner, as the above-cited objectors did.  As a result, any objection X1 has concerning Section 6.6(a) is untimely and has been waived.

That is precisely what occurred here.   In light of advancements in clinical neuropsychology,[6] the Mediating Parties (*i.e.*, the Parties and the Intervenors) conferred in good faith and under judicial oversight to modify the Qualifying Diagnoses and protocols for making them pursuant to Section 6.6 of the Class Action Settlement Agreement in order to remove any consideration of race in neuropsychological evaluations by clinicians in the Settlement Program and provide additional benefits to Retired NFL Players whose evaluations may have been impacted by such consideration.

As a result, because the Motion to Approve seeks Modifications pursuant only to Section 6.6 of the Class Action Settlement Agreement, there can be no genuine argument that the Modifications amend that agreement.  Rule 23(e)'s requirements thus do not apply, and a fairness hearing is not necessary or appropriate.

### B.  The Modifications Do Not Have a Material Adverse Effect on Class Members

Although the Modifications are unequivocally not amendments to the Class Action Settlement Agreement, *even if they were*, the Modifications would not implicate Rule 23(e) or require a fairness hearing because the changes *benefit* the Class.

The Motion asserts without any support that Rule 23(e)'s procedures, including a fairness hearing, are required if there "will be material changes" to the Settlement Agreement.  Motion at 4.  But X1 materially misstates and substantively alters the governing standard.  Rule 23 is implicated in the context of an already-implemented class action settlement agreement only where

---

[6] *See Position Statement on Use of Race as a Factor in Neuropsychological Test Norming and Performance Prediction*, Am. Acad. of Clinical Neuropsychology (2021), https://theaacn.org/wp-content/uploads/2021/11/AACN-Position-Statement-on-Race-Norms.pdf ("AACN Position Paper") (supporting "the elimination of race as a variable in demographically-based normative test interpretation" and "the development of testing methods and practices that reduce bias and inequity in clinical assessment and decision-making") (last visited Mar. 2, 2022).

the changes would "have a *material adverse effect* on the rights of class members." *In re Diet Drugs Prods. Liab. Litig.*, 2017 WL 937735, at *5 (citation and internal quotation marks omitted; emphasis added).[7]  Here, the Motion to Approve seeks modifications in order to eliminate the consideration of race in the Settlement Program—a benefit to all Retired Players—and to further provide additional benefits to Retired Players whose prior evaluations may have been impacted by such consideration.

Specifically, in the Norming Agreement, the NFL Parties and Class Counsel agree that (i) the use of Race Norms or Race Demographic Estimates in the Settlement Program—which the Class Action Settlement Agreement had not made mandatory to begin with, as Section 9.1(b) of the Norming Agreement acknowledges (ECF No. 11502 at 23)—will be categorically prohibited; (ii) an interim race-neutral and diagnostically sound New Method for determining Levels 1, 1.5 and 2.0 Neurocognitive Impairment will be immediately employed in neuropsychological testing performed for purposes of the BAP and Monetary Award claims; (iii) Long-Term Norms will be developed by an Expert Panel and eventually proposed for those purposes; (iv) neuropsychological testing used in certain BAP assessments and Monetary Award claims will be rescored; and (v) Settlement Class Members that may have been impacted by race norming will have the option of receiving an additional free BAP examination, or rescoring prior testing at their own expense. *See* Norming Agreement, Arts. II-III, ECF No. 11502 at 8-16.

X1 does not argue that these modifications have a materially adverse effect on the rights of Settlement Class Members, as is necessary to trigger a fairness hearing under Rule 23(e).  To the contrary, X1 *concedes* that the elimination of race as a potential consideration in

---

[7]  As explained above, even this standard does not even apply here because the Modifications are sought pursuant to Section 6.6 of the Class Action Settlement Agreement, and thus are not subject to Rule 23(e)'s requirements.

neuropsychological evaluations is "unanimously perceived as beneficial to everyone."  Motion at

4.  Moreover, the other Modifications will only potentially *expand* Settlement Class Members'

entitlement to settlement benefits, as the Motion to Approve explains at length.  *See* Norming

Agreement §§ 2.5 (automatic retrospective rescoring), 2.6 (expanded BAP examination

eligibility), 2.7 (new Settlement Claim submissions), ECF No. 11502 at 8-14; Motion to Approve

at 3, 11-23, ECF No. 11567 at 5, 13-25 (detailing the Modifications and discussing how they

provide significant benefits to the Class).[8]

Indeed, the Modifications provide a mechanism to redress Settlement Class Members

whose prior evaluations may have been adversely impacted by Black Race Norms or Black Race

Demographic Estimates, as Settlement Class Members will have their prior testing automatically

rescored using the New Method and will be notified if they qualify for a new Monetary Award or

Supplemental Benefits.  Motion to Approve at 15-18; Norming Agreement § 2.5, ECF No. 11502

---

[8] X1 misreads the Norming Agreement to state that "[t]he NFL has indicated that not only are they going to change the Race Norming Issue within the NFL Concussion Settlement Claims, but they are also going to correct this practice in all of medicine," and "[t]he fact that the NFL is saying that they are going to globally change neuropsychology as we know it regarding Race Norming indicates that this Mediation's results regarding Race Norming will produce material changes to the Amended Settlement Agreement and such material changes require a fairness hearing."  Motion at 3.  As X1 is surely aware, the NFL Parties are not omnipotent and have no power to change the behavior of clinical neuropsychologists as a whole.  As the statements that X1 points to make clear, it is "the Parties['] hope that this work [the development of long-term norms] will provide a basis for accurate diagnosis for former NFL Players and potentially beyond that," and "the NFL is committed to driving positive change, *even ahead of the field of neuropsychology at large*," and indeed, as the American Academy of Clinical Neuropsychology recently recognized while also calling for the elimination of race as a consideration in neuropsychological assessments, the solution is a complex one and "[t]emporary or partial measures may be deployed while the necessary and painstaking research is underway that will lead to better long-term solutions."  *Id.* at 3 & Ex. A (ECF No. 11633-1) at 2 (emphasis added); AACN Position Paper at 6.  Although the NFL Parties' actions outside of the Settlement Program are irrelevant here, X1's complaint that the NFL Parties' hope that race is removed as a consideration throughout the field of neuropsychology more generally is particularly puzzling given that it admits that such changes are "unanimously perceived as beneficial to everyone."  Motion at 4.

at 8-9.  This Modification is an unambiguous benefit to the Class because eligible Settlement Class Members may now receive a Monetary Award based on claims that were previously denied or approved for a less-severe Qualifying Diagnosis, and for which they would have no additional rights or recourse absent the Modifications.[9]

The same is true of the Modifications that provide certain Retired NFL Players who had Black Race Norms or Black Race Demographic Estimates applied to their claims the opportunity to undergo a BAP evaluation paid for by the NFL Parties irrespective of whether the Retired NFL Player has previously received a free BAP exam or is otherwise eligible for one.  Motion to Approve at 18-20, ECF No. 11567 at 20-22; Norming Agreement § 2.6, ECF No. 11502 at 11-12. Accordingly, eligible Settlement Class Members will be able to receive a BAP evaluation, paid for by the NFL Parties, even if not currently eligible to receive such an examination.  There is no downside to these BAP evaluations, as eligible Settlement Class Members are not required to use them, and still have the option of being evaluated by a MAF Physician at their own expense, just as they currently are able to do under the Class Action Settlement Agreement.

For these reasons, X1's reliance on *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, 226 F.R.D. 498 (E.D. Pa. 2005) (erroneously cited as 226 F. Supp. 2d 498), is misplaced.  *See* Motion at 4-5 & n.1.  In *Diet Drugs*, the so-called Seventh Amendment came about because the settlement trust would have run out of money to pay all claimants under the then-existing settlement agreement if more than a small fraction of the claims then on file for matrix benefits were found payable.  226 F.R.D. at 508.  Events subsequent

---

[9] *See also* Motion to Approve at 21-23, ECF No. 11567 at 23-25; Norming Agreement § 2.7(a)-(c), ECF No. 11502 at 13 (providing certain Settlement Class Members who may have had Black Race Norms or Black Race Demographic Estimates applied to their MAF claims the option to have their previous testing rescored at their own cost, where absent the Modifications they would have no right to do so).

to the original settlement agreement's approval had given rise to the need "to prevent the dissipation of the settlement's funds through fraud and abuse of the claims system." *Id.* at 506-08; *see id.* at 521 ("[w]ith hindsight and the benefit of experience, the parties saw a compelling need for changes to forestall the likely exhaustion of funds, continued contentious litigation, potential fraud or other wrongdoing, and interminable delays in the payment of deserving claimants"; noting that settling parties had faced, *inter ali*a, "issues concerning purportedly illegitimate claims" and "excessive numbers of claims beyond what anyone anticipated at the 2000 Fairness Hearing," and were now facing "the likely insufficiency of the Settlement Fund to pay all legitimate claimants").

The Seventh Amendment accordingly wrought extensive changes to the settlement agreement, including reduction of benefits for certain categories of claims, stricter medical scrutiny of certain claims, and elimination of certain opt-out rights.   *See id.* at 509-16 (detailing changes effected by Seventh Amendment).  It was because these changes, unlike the Modifications here, had a clear materially adverse impact on the rights of many class members as compared to the existing settlement agreement that Judge Bartle required that notice of the proposed Seventh Amendment be sent to the 620,000 settlement class members who could be affected, as well as individual members' counsel, and then convened a fairness hearing.  *Id.* at 501, 516.[10]

---

[10] X1 also cites *In re Deepwater Horizon*, 858 F.3d 298 (5th Cir. 2017), but that case is inapposite on its face.  Despite X1's claim that *Deepwater Horizon* decided "this exact issue" (Motion at 5-6), the court in that case refused to allow the claims administrator to remove the choice of claimants regarding compensation periods, in direct violation of the plain text of the settlement agreement.  *See id.* at 303-04 ("The Settlement Agreement grants each claimant the right to choose his or her Compensation Period. . . . If the Claims Administrator is permitted to remove revenue from the Compensation Period, and spread it throughout the non-compensation months, the claimant's choice no longer matters," which is "inconsistent with the plain text of the Settlement Agreement.").  Here, the Modifications are specifically provided for by Section 6.6 of the Class Action Settlement Agreement, as explained above, and in any event, are not inconsistent with that agreement, which never required the application of Race Norms or Race Demographic

No comparable circumstances are even remotely present here.  The Modifications do not alter the BAP's or MAF's structures or processes.  Most importantly for purposes of whether Rule 23(e) or due process mandates a fairness hearing, the Modifications do not have a material adverse effect on Settlement Class Members as compared with the status quo.

### C.  X1's Gratuitous Attack on Class Counsel Is Groundless

Finally, X1 insists that there should be a fairness hearing because "SeegerWeiss [sic] came away with a release of culpability from the very class members they represent for the very race norming they were accused of allowing."  Motion at 1-2.  That is incorrect.  X1 misunderstands the Motion to Approve and Norming Agreement.  Contrary to X1's claims, neither the Norming Agreement nor the Motion to Approve contain a class-wide release of claims against Class Counsel, although any such claim would be meritless, particularly given the undisputed facts contained in Article IX of the Norming Agreement.  *See* Norming Agreement §§ 4.1-4.3, 9.1, ECF No. 11502 at 17-18.[11]

---

Corrections.  Moreover, the *Deepwater Horizon* decision focused on contractual interpretation and did not involve either Rule 23 or a fairness hearing.

X1 additionally relies on dictum in *In re Baby Products Antitrust Litigation*, 708 F.3d 163, 175 n.10 (3d Cir. 2013) (Motion at 5 n.1), but that case is even further off point.  *Baby Products* had nothing to do with modifications to a class settlement already being implemented.  There, the Third Circuit reversed the approval of a $35.5 million class settlement that would have dispensed just $3 million to the class (because most members would receive a mere $5 payment), with the bulk of the settlement earmarked for attorneys' fees and a *cy pres* distribution.  *Id.* at 169-71. The Court of Appeals remanded the case for reconsideration of the settlement's fairness, suggesting that the parties alter its terms on remand "to provide greater direct benefit to the class, such as by increasing the $5 payment or lowering the evidentiary bar for receiving a higher award."  *Id.* at 175.

[11] This misunderstanding by X1 appears to form the basis for its contention that Rule 23(e) is implicated and a fairness hearing is necessary.  *See* Motion at 3 ("The release from the mediation has nothing to do with the Race Norming itself, yet presumably binds the class members from pursuing damages suffered for the race norming from the NFL & SeegerWeiss [sic].  This proposed

X1 ignores the critical fact that race norming was *never required* by the Class Action Settlement Agreement.  Motion to Approve at 4-5, ECF No. 11567 at 6-7; Norming Agreement § 9.1(b), ECF No. 11502 at 23.  Thus—lacking any basis in fact, the Motion to Approve, the Class Action Settlement Agreement, or the Norming Agreement—X1's argument merely reflects a misguided and gratuitous attack on Class Counsel, just for the sake of an attack.

To the extent that X1 purports to take issue with a term of the Class Action Settlement Agreement, Class Counsel feels compelled to make the following point separately and on its own behalf.  X1 cannot ignore the fact that the Class Action Settlement Agreement was put before the Class (a quarter of whose members had individual counsel) through thorough and spirited Rule 23(e) settlement approval proceedings, including a fairness hearing and appellate review.  If X1 believed, as it suggests, that the Class Action Settlement Agreement provides for race norming, it should have objected on behalf of its clients at the time.   Instead, X1 submitted *no* objections to the Class Action Settlement Agreement.  Having sat on its hands for all this time—likely because it knows full well that race norming was never required—X1 now falsely implies that there was some dereliction on Class Counsel's part that resulted in race norming, and, even worse, insinuates that Settlement Class Members potentially have claims against Class Counsel.  *See* Motion at 2-3. Its contentions deserve short shrift.

### D.  The Claims Administrator Complied with the Court's Directive

Equally without merit is X1's contention that the Claims Administrator failed to comply with the Court's January 3, 2022 Notice (ECF No. 11568).  Motion at 2.  In his February 4, 2022 memorandum to the Court (ECF No. 11622), the Claims Administrator stated that, in accordance

---

change to the Amended Settlement Agreement is governed by FRCP Rule 23 and demands a Fairness Hearing.").  Now that X1's misunderstanding has been put to rest, it is clear that Rule 23(e) does not apply, and no fairness hearing is required.

with the Court's directive, it had posted the Court's Notice and a copy of the Motion to Approve and exhibits thereto (ECF No. 11567) on the Settlement Website and on the Program Portals.  ECF No. 11622 at 1.[12]

In addition, on January 4, 2022, the Claims Administrator emailed 17,844 Settlement Class Members and all 562 law firms representing Settlement Class Members in the Settlement Program, alerting them to those filings and providing links to access the documents.  ECF No. 11622 at 1. The following day, the Claims Administrator mailed packets containing copies of the Notice and the Motion to Approve and exhibits thereto to 1,107 Settlement Class Members for whom it did not have an email address.  *Id.* at 1-2.  Finally, the Claims Administrator mailed 1,241 packets to Settlement Class Members to whom the Claims Administrator's emails had bounced back as undeliverable.  *Id.* at 2.[13]

To the extent that X1 complains about the absence of the proposed order (Motion at 2), in what was disseminated to Settlement Class Members and their counsel, the simple answer is that

---

[12] Indeed, the Court's Notice and the Motion to Approve are readily accessible using the "Documents" tab, whose drop-down menu includes a distinct box named "Norming Agreement (1-3-22)" (which is directly below the drop-down box dedicated to the "Settlement Agreement"). This enables access to all relevant filings and entries.  *See* https://www.nflconcussionsettlement.com/Docs/notice_neuropsychological_testing_results.pdf (Jan. 3, 2022 Notice) (last visited Mar. 2, 2022); https://www.nflconcussionsettlement.com/Docs/motion_settlement_agreement_modifications.pdf (Motion to Approve) (last visited Mar. 2, 2022).  Moreover, the Court's Notice is separately posted at  https://www.nflconcussionsettlement.com/Docs/NFL_Imp_Norms_Jan_2022.pdf  (last visited Mar. 2, 2022).

[13] Contrary to X1's supposition that this notice was "instructed by the court presumably under [Rule 23(a)(1)(B)(i)]," Rule 23 does not apply, and the Motion to Approve was clear that "Section 6.6 of the Settlement Agreement does not require that Settlement Class Members receive notice of the agreed-upon modifications to the Qualifying Diagnosis definitions or protocols for making them," the Parties nevertheless "appreciate that Settlement Class Members may have comments or questions about the proposed modifications," which is why they requested notice and a comment period.  *See* Motion to Approve at 24.

there was no dereliction on the Claims Administrator's part.  Although the Motion to Approve referenced an accompanying proposed order, it was not an exhibit to the Motion to Approve and none was actually submitted.  Settlement Class Members and their counsel thus received the Motion to Approve and all of its exhibits, exactly as the Court directed.  Thus, the Claims Administrator fully complied with this Court's order, and any complaint by X1 is inconsequential and baseless.[14]

*      *      *

In sum, X1's insistence on a fairness hearing is procedurally barred and substantively meritless.  The Court should reject it and grant the Motion to Approve so that the relevant potions of the Norming Agreement can be implemented without further delay.

---

[14] The Parties initially planned to submit a proposed order, but they decided not to in case Settlement Class Members raised substantive concerns with the Motion to Approve.  Although that did not occur, the Parties neglected to remove references to the proposed order in the as-filed Motion to Approve.  While harmless, the Parties regret the oversight, which did not involve the Claims Administrator.

**CONCLUSION**

For the foregoing reasons, the Court should deny the Motion.

Dated:  March 3, 2022

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
Michael L. Rosenberg
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
cseeger@seegerweiss.com
(973) 639-9100
***Class Counsel***

*/s/ Brad S. Karp*
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
bkarp@paulweiss.com
(212) 373-3000
***Attorneys for the National Football
League and NFL Properties LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's ECF system on March 3, 2022.

*/s/ Christopher A. Seeger*
Christopher A. Seeger