# Exhibit A

# MASTER NON-RECOURSE PURCHASE AND SALE AGREEMENT

# (ATTORNEYS' FEES)

This Purchase and Sale Agreement (hereinafter referred to as "Agreement") is entered into as of June 2, 2017 by and between Mitnick Law Office, LLC a New Jersey Limited Liability Company with its primary offices located at Thirty-Five Kings Highway East, Suite 206, Haddonfield, NJ 08033 (hereinafter referred to as Seller") and Thrivest Specialty Funding, LLC (hereinafter referred to as "TSF" or "Purchaser") a Delaware Limited Liability Company with its principal offices located at Eight Tower Bridge, 161 Washington St., Suite #240, Conshohocken, PA 19428. This Agreement is intended to serve as a Master Agreement with respect to all transactions concerning the Seller's sale of Legal Fees (as such term is hereinafter defined) that Seller seeks to enter into with the Purchaser. It is contemplated that the Purchaser and the Seller shall enter into future, separate purchase and sale agreements each evidenced by a rider to this Agreement (a "Rider"), which form of Rider is attached hereto and made a part hereof.

WHEREAS, Seller has earned attorney's fees in various matters that have not yet been paid to the Seller. These fees include legal fees, common interest fees and costs and expenses, billed by the Seller derived from all types of settled lawsuits and settled claims that (a) have been awarded and approved by a court having jurisdiction over the matter for which such fees and costs are owed or (b) are due and owing to Seller in accordance with a fee agreement executed between the Seller and a client (together, the "Lawsuit"). The fees and costs and all proceeds thereof described in (a) and (b) above and all proceeds thereof shall be referred to as "Legal Fees" and which are more specifically referred to in the Rider. Seller's clients are obligated to pay to Seller an amount in Legal Fees as a result of Lawsuits. A description of the Lawsuit and the Legal Fees is set forth in the Rider. **The terms of the Rider are incorporated in this Agreement by reference thereto and all capitalized terms set forth therein that are not otherwise defined herein shall have those meanings ascribed to them in the Rider.**

WHEREAS, Purchaser is in the business of investing in settlement claims and lawsuits. This Agreement specifically relates to the purchase by Purchaser and the sale by the Seller of the Seller's right in and to, Seller's rights to receive the Legal Fees;

WHEREAS, Seller confirms that it owns a legal and beneficial interest in and to the Legal Fees; and

WHEREAS, Purchaser wishes to purchase from Seller, and the Seller wishes to sell to Purchaser all of Seller's right, title and interest in the Legal Fees on the terms and conditions set forth below.

Now, Therefore, Purchaser and Seller hereby agree as follows:

1. **Purchase Price; Sale and Assignment; and Consideration**

   (a) Seller hereby sells, transfers and assigns to Purchaser all or a portion of its legal and beneficial right, title and interest, free and clear of all claims, liens, interest, defenses, setoffs, and encumbrances, in and to the Legal Fees.

   (b) Purchaser shall pay to the Seller in respect of the Legal Fees the amount set forth in

1

the Rider (the "Purchase Price").

(c) In consideration of the Purchase Price, Seller agrees to pay to the Purchaser the scheduled amounts (the "Scheduled Payments") as set forth in Exhibit B to the Rider.

(d) The Seller shall collect the Legal Fees when due and payable until the Scheduled Payments are paid in full. Within three (3) days after Seller's collection and receipt of such Legal Fees, Seller shall distribute or cause to be distributed to Purchaser all Legal Fees prior to any costs or expenses incurred by the Seller in connection with its collection of such Legal Fees. Seller shall hold the Legal Fees in trust for the Purchaser.

(e) Notwithstanding anything to the contrary stated herein, upon payment in full of all of the Scheduled Payments by Seller, all obligations of the Seller hereunder shall be satisfied.

2. **True Sale; Not a Loan**

Seller intends and agrees that the transaction contemplated in this Agreement shall constitute a true sale and transfer to Purchaser of the Legal Fees. Purchaser may at its option and in addition to all other notices provided herein, file a UCC-1 financing statement and amendments thereto for notice purposes under the Uniform Commercial Code ("UCC") In an abundance of caution, in the event this transaction is re-classified as a financing within the meaning of Article 9 of the Uniform Commercial Code (the "UCC"), the Seller hereby grants to Purchaser a first perfected security interest within the meaning of Article 9 of the UCC in and to all of the Seller's right, title, and interest in and to Legal Fees in an equal amount to the Purchase Price, plus interest calculated thereon at a rate of interest equal to the lesser of (i) 24% per annum, or (ii) the maximum rate permitted by law in the jurisdiction in which the Seller conducts the practice of law.

3. **Payments to Be Made By Or On Behalf of the Seller**

Seller shall obtain from any third party obligor or insurance carrier (the "Obligor") an acknowledgement by such Obligor of an authorization (the "Authorization and Acknowledgement to Pay"), in the form attached hereto as Exhibit A to the Rider.

(a) Payment of the Purchase Price by Purchaser to Seller is contingent upon Purchaser's receipt of a valid and duly executed Authorization and Acknowledgement to Pay and upon all of the terms and conditions of this Agreement having been met.

(b) Payment of the Scheduled Payments shall be made from the first distribution of Legal Fees.

(c) Immediately upon Seller becoming aware of the payment, or imminent payment of any of the Legal Fees whether paid into court in the court or to the Seller by check, certified funds, and/or electronic bank transfers, Seller agrees to provide Purchaser with notice and proof of such receipt of funds.

(d) Notwithstanding the above, and subject to Section 1(d) hereof, the Seller may at any time

2

pay to the Purchaser all Scheduled Payments at any time.

4. **Payments to Purchaser - Disposition Events**

(a) In addition to the provisions set forth in Paragraph 3 of this Agreement, and, in addition to the remedies set forth in Paragraph 9 hereof, the Seller shall make or cause to be made to Purchaser the immediate payment of the Scheduled Payments, including all fees due thereon, if:

(i) At any time the Seller is no longer the attorney of record in the Lawsuit or, or the plaintiff(s) named in the Lawsuit retain(s) new counsel; or

(ii) At any time there is a change in the legal, operating or ownership structure of the Seller, including but not limited to a merger, dissolution, sale or other event, which, in the sole opinion of Purchaser, could have a material adverse effect on any of Seller's obligations under this Agreement or upon the right of Seller to be paid the Legal Fees.

(b). Each event set forth in subsections (i) and (ii) above shall be hereinafter referred to herein as a "Disposition Event".

(c). If a Disposition Event has occurred, Purchaser may, in its sole discretion, (i) agree to apply any unpaid portion of the Scheduled Payments to the purchase of legal fees and/or costs from another settled lawsuit or claim owned by the Seller, (ii) if the Seller has no other such settled lawsuits or claims, may retain a legal and beneficial right in and to, and a security interest in, if applicable, all other cases owned by Seller, or (iii) accept from the Seller the repayment of the Purchase Price in installments over a time period and at a rate and on terms to be agreed upon between Purchaser and the Seller.

5. **Purchaser's Right of First Refusal**

(a) Seller hereby grants to Purchaser an exclusive right of first refusal with respect to any potential or future funding's in respect of legal fees and costs in all cases owned by Seller, provided however that in no event shall Purchaser be obligated to provide any such additional funding.

(b) Seller acknowledges that in the event Seller seeks to or obtains any funding from any third party in respect of legal fees and costs from any settled lawsuits or claims owned by the Seller without the prior written consent of Purchaser, such action shall constitute an Event of Default under this Agreement.

(c) Seller understands that the Scheduled Payments must be repaid by Seller in full before any other funding obligations obtained by Seller are repaid and such obligations are subordinate in all respects the Seller' obligations to Purchaser in this Agreement.

6. **Seller Representations and Warranties.**

Seller represents and warrants to the Purchaser as follows:

3

(a) Seller has earned and is entitled to receive the Legal Fees.

(b) Seller is entitled to the Legal Fees fully earned as a result of the Seller's legal representation of Seller's plaintiff clients in the Lawsuit.

(c) Seller is duly licensed and in good standing to practice law in the State of New Jersey and is not the subject of any pending or prior disciplinary action(s). In the event that Seller receives notice that a formal disciplinary complaint or action has been filed by an authorized disciplinary authority, Seller shall immediately notify Purchaser of such action and will provide to Purchaser a true and correct copy of such disciplinary action or complaint.

(d) Seller owns good and marketable title in and to the Legal Fees free and clear of any liens, claims, or encumbrances and has the unrestricted right to sell and assign the Legal Fees.

(e) Seller is under no other contractual obligations with respect to the Legal Fees other than those obligations set forth in this Agreement.

(f) There are no existing liens, encumbrances or assignments against or pertaining in any way to the Legal Fees and Seller has no intentions to sell or borrow against or in favor of any third party, any part of the Legal Fees.

(g) There are no tax liens, outstanding tax judgments, or other judgments existing or pending against Seller that could adversely affect Purchaser's ownership interest in and to the Legal Fees or Seller's rights hereunder.

(h) There are no bankruptcy or insolvency proceedings currently pending, known of, or anticipated by or against Seller. Seller shall notify the Purchaser immediately upon Seller receiving notice of such.

(i) The Legal Fees are not, nor have they ever been, the subject of any levy.

(j) Seller has provided all information and documentation requested by Purchaser and warrants that such information and documentation is true and correct in all respects and is not misleading in any way. Seller understands that Purchaser has relied on and will continue to rely on such information and documentation. Seller further acknowledges and confirms that while Purchaser has conducted its due diligence with respect to the Legal Fees that Seller is responsible for any information that is not true and correct in all respects that could adversely impact Purchaser's rights hereunder.

(k) None of the claims or allegations in the Lawsuit are fraudulent.

(l) Seller has disclosed to Purchaser accurate and true information with regard to other lawyers or other third parties that could be entitled to any of the Legal Fees, including the amount and or percentage to which each such party is entitled as well as all documentation pertaining to same.

(m) Seller has delivered to Purchaser true, correct and complete copies of its Engagement Letters and all other documents (collectively, the "Relevant Documents"). Each of the relevant

Documents remain in full force and effect, and is enforceable against Seller's clients in the lawsuit in accordance with its terms. None of the Seller's clients has any valid defense or right of setoff with respect to the Legal Fees due from it to Seller.

(n) Seller has independently reviewed the professional ethics rules and standards that govern its practice of law and Seller has determined that its obligations hereunder do not conflict with such rules or standards.

(o) Seller has entered into this Agreement for seller's business purposes and this transaction constitutes a business transaction.

7. **Covenants of Seller**

Seller covenants and agrees with Purchaser as follows:

(a) Seller agrees and understands that any funds received in respect of the Legal Fees shall be paid to Purchaser with no other disbursements being made until Seller's obligations to Purchaser hereunder have been fully satisfied.

(b) Seller shall use its best efforts and exercise good faith to prosecute and litigate the Lawsuit in accordance with the provisions of this Agreement.

(c) Seller shall not negotiate or enter into any agreement to reduce or modify the Legal Fees.

(d) Seller agrees that it will immediately notify Purchaser of any change in the terms of the settlement and or resolution of the Lawsuit.

(e) Upon the request of Purchaser, Seller shall provide Purchaser with updates, including status changes and related documentation, if any, in respect of the Lawsuit.

(f) Seller agrees to execute such additional documents and take such further action as maybe reasonably necessary for Purchaser to perfect any and all interests of Purchaser in the Legal Fees and to facilitate the repayment to Purchaser of the Scheduled Payments.

(g) Seller agrees that in the event of any dispute or Event of Default as set forth in Paragraph 8 of this Agreement, in addition to those remedies set forth in Section 9 of this Agreement, Seller will hold or will cause to be held (as applicable), in a restricted escrow account to which only Purchaser has access, any or all of the Legal Fees until the Scheduled Payments are repaid in full to Purchaser.

(h) If Seller becomes a party to a tax lien dispute with any governmental agency and/or or incurs any judgment against it Seller shall provide Purchaser with immediate notice of same.

(i) If any plaintiff in the Lawsuit relieves Seller of its representation and retains a new attorney prior to Purchaser's receipt of the full Scheduled Payments, to the extent that Seller is aware of such event, Seller shall immediately notify Purchaser in writing and shall provide Purchaser with the name, address, and telephone number of such new attorney or law firm.

(j)   Seller will continue to promptly pay all federal and state taxes.

(k)   If necessary and as required, Seller shall continue to diligently prosecute the Lawsuit until such time as the Seller's obligations under this Agreement are satisfied and the Scheduled Payments have been fully paid to Purchaser.

(l)   Seller shall mark on Seller's books and records that the Legal Fees have been sold by the Seller and purchased by the Purchaser. Seller will not issue any Form 1099 to Purchaser in connection with payments made to Purchaser under this Agreement.

## 8. Events of Default

Any of the following events shall be deemed to be an event of default under this Agreement (each an "Event of Default").

(a)   Default in the payment when due of any of the payments that represent the Scheduled Payments.

(b)   Any breach by Seller of any covenant of this Agreement.

(c)   There arises any dispute in respect of the payment, validity or existence of the right of the Seller or Purchaser to receive, or be entitled to the Legal Fees.

(d)   Any certification, statement, agreement, representation or warranty herein, or in any writing delivered by Seller, or any other party on behalf of Seller, was false or misleading in any material respect when made.

(e)   The commencement of any bankruptcy or insolvency proceeding affecting Seller or the Legal Fees.

(f)   Seller at any time does not hold a valid license to practice law in the State of New Jersey.

(g)   Seller is suspended or disbarred from the practice of law or, as an entity, ceases to exist.

(h)   Purchaser fails to possess valid ownership or, in the alternative, a perfected first security interest in the Legal Fees, only to the extent that any action(s) by the Seller result in Purchaser's first perfected security interest ineffective.

(i)   Seller is convicted of any criminal felony or comparable indictable charge.

(j)   Seller denies, disaffirms, or contests the validity or enforceability of this Agreement, or any obligation hereunder.

## 9. Remedies to Purchaser upon an Event of Default

Upon an Event of Default, Purchaser may exercise any and all rights available by law, including but not limited to:

(a) A termination of its obligations under this Agreement, at which time Seller shall immediately pay to Purchaser the Scheduled Payments plus any damages, losses, and other reasonable costs and attorney fees, incurred by Purchaser arising or resulting from such breach. These damages shall also include outstanding fees on the amounts described.

(b) Demand payment in full of the Scheduled Payments directly from Obligor.

(c) Enforce any and all rights and remedies available to a secured party under the applicable UCC including the right to file Purchaser's lien and notice of assignment with and class action Obligor, or any contingency fee lawsuit Obligor, as applicable, including demanding that such party make payment of the Legal Fees directly to Purchaser.

## 10. Cross Default; Cross Collateral

Seller hereby agrees that (a) an Event of Default under this Agreement is a default or an Event of Default under any other non-recourse purchase and sale agreements between Seller and Purchaser and a default under any such non-recourse purchase and sale agreements is a default hereunder and (b) the Legal Fees shall secure all of Seller's obligations under each of such now existing or hereafter outstanding non-recourse purchase and sale agreements and the legal fees sold to Purchaser by the Seller under any of such non-recourse purchase and sale agreements secures all of Seller's obligations to the Purchaser under this Agreement.

## 11. Miscellaneous

(a) Notwithstanding anything to the contrary contained herein, any dispute arising between Purchaser and Seller in any way related to or concerning this Agreement, shall be settled by binding arbitration. The location for any such arbitration shall be in Philadelphia, Pennsylvania, and Purchaser and Seller hereby waive all questions, issues or defenses of personal jurisdiction or venue for purposes of carrying out the provisions of this paragraph. Such arbitration shall be undertaken in accordance with the rules of the American Arbitration Association ("AAA") then in force, and shall be held in front of a single arbitrator. Purchaser and Seller shall be permitted to obtain discovery in accordance with the Rules of Civil Procedure then in effect for the Commonwealth of Pennsylvania. Any disputes concerning the scope of, or compliance with, discovery requests shall be determined by the arbitrator. Judgment upon the award of the arbitrator, which award may include, but not be limited to, monetary damages or specific performance, may be entered and enforced in any court of competent jurisdiction. Purchaser and Seller agree that the decision of the arbitrator shall be binding, final and non-appealable. The arbitrator shall have the power to require the non-prevailing party to pay the arbitrator's fees and the fees of the arbitration, as well as the prevailing party's legal fees and expert's fees, if any. If the arbitrator's award does not require one party to pay any portion of another party's fees and expenses, then the arbitrator's and arbitration fees and expenses will be shared equally by the parties and each party shall pay his/her/its own legal fees and expert's fees, if any. The arbitrator shall also have the power to award interest to the arbitration award which will continue to accrue until the arbitration award is paid in full. This provision does not limit the right of either party to exercise self-help remedies that may be available to such party. The filing of a court action is not intended to constitute a waiver of the right of any party, including the

suing party, thereafter to require submission of any claim to arbitration pursuant to this provision.

(b) This Agreement shall be governed, construed, interpreted and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

(c) Seller may not assign this Agreement, or its rights and obligations hereunder without the prior written consent of Purchaser.

(d) Should any provision or paragraphs in this Agreement be deemed unenforceable or invalid, such unenforceability or invalidity shall not affect the validity or enforceability of the other valid terms and conditions of the Agreement.

(e) This Agreement may not be modified in any way without consent, in writing of both parties.

(f) Nothing herein shall be construed in any way to limit or restrict Seller's ability to protect the disclosure of any privileged attorney/client communications or to limit Seller's obligation to fulfill all of the Seller's ethical responsibilities under the ethics rules governing Seller's professional conduct.

(g) The parties agree that in consultation with their attorneys, they have prepared and approved the language of the provisions of this Agreement and that should any dispute arise concerning the interpretation of any provision hereof, neither party shall be deemed the drafter nor shall any such language be presumptively construed in favor of or against either party.

(h) Purchaser and Seller after consultation with their respective attorneys, each hereby waive any right available by law allowing a jury trial in connection with any legal proceeding involving, directly or indirectly, any matter commenced by, or against, in any way arising out of or related to this Agreement, or with any document executed in connection with this agreement. WHETHER ANY CLAIM HEREUNDER IS DECIDED BY ARBITRATION OR BY TRIAL BY A JUDGE, THE PARTIES AGREE AND UNDERSTAND THAT THE EFFECT OF THIS AGREEMENT IS THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JURY TO THE EXTENT PERMITTED BY LAW.

(i) No Brokers. Purchaser represents and warrants that they have not used any broker in connection with this Agreement other than N/A ("Broker"), who is representing the Purchaser pursuant to a separate broker agreement. Purchaser acknowledges and agrees that Seller may (but shall not be obligated to): (i) pay to Broker any fees due under such broker agreement ("Broker Fee"); and (ii) deduct such Broker Fee from the Purchase Price. Purchaser agrees to indemnify Seller for any and all loss or damage which Seller sustains by reason of Purchaser's use of any broker, including but not limited to attorneys' fees and cost incurred by Seller.

(j) Seller shall, at the request of the Purchaser, execute such other documents, agreements, instruments or financing statements in connection with this Agreement as Purchaser may deem necessary, including, but not limited to an appropriate deposit account control agreement with any financial institution at which the Seller maintains a deposit account into which collections

of Legal Fees are required to be deposited.

(k)  Seller agrees to indemnify and hold Purchaser harmless from any and all claims, actions, judgments, including costs of defense and attorneys; fees incurred in (i) defending a claim against the Purchaser, (ii) and breach of Seller's representations, covenants or other obligations under this Agreement or under any third party's obligations under any documentation or arrangement in respect of the Legal Fees or Purchaser's right to collect the Legal Fees hereunder but only to the extent of Seller's willful misconduct or gross negligence.

(l)  The Seller agrees to keep this Agreement confidential, and not to disclose the existence of this Agreement or its terms, except as required by law, as otherwise necessary to implement the terms of this Agreement or, with respect to the Purchaser, for operation of Purchaser's business.

[THE REST OF THIS PAGE IS LEFT INTENTIONALLY BLANK]

IN WITNESS WHEREOF, Seller and Purchaser hereby execute this Agreement as of the date set forth above.

**PURCHASER: THRIVEST SPECIALTY FUNDING, LLC**

By: _____    Date: _____
    Authorized Representative

**SELLER: MITNICK LAW OFFICE, LLC**

By: _____    Date: 6/5/17
    Seller

CRAIG R MITNICK, ESQ.
MITNICK LAW OFFICE, LLC.

Notary acknowledgement appears on the next page

STATE OF *New Jersey* }:
COUNTY OF *Camden* } SS:

On this, the __5th__ day of __June__, 20__17__, before me __SHIRLEY J. GENAY__, the undersigned officer, personally appeared __CRAIG R MITNICK__, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that __HE__ (he/~~she/they~~) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Shirley J Genay_
Notary Public

Printed Name: __SHIRLEY J. GENAY__

My Commission Expires:

_July 8, 2019_

SHIRLEY J GENAY
My Commission Expires
July 8, 2019

11

RIDER

RIDER TO MASTER NON- RECOURSE PURCHASE AND SALE AGREEMENT
DATED June 2, 2017
(ATTORNEYS' FEES)

Rider dated as of June 2, 2017 to that certain Master Non-Recourse Purchase and Sale Agreement dated as of June 2, 2017 between Mitnick Law Office, LLC and Thrivest Specialty Funding, LLC (the "Master Agreement")

Reference is hereby made to that certain Master Agreement between Mitnick Law Office, LLC (the "Seller") and Thrivest Specialty Funding, LLC (the "Purchaser") and dated as of June 2, 2017. All capitalized terms not otherwise defined in this Rider shall have the same meanings as ascribed to them in the Master Agreement. All terms and conditions of the Master Agreement are hereby incorporated herein by reference as if they were fully set forth in this Rider.

1. Seller hereby acknowledges and understands and agrees that it shall be subject to all of the terms and conditions as set forth in the Master Agreement including but not limited to Seller's agreement to pay the Scheduled Payments (described on Exhibit B hereto) to the Purchaser. Moreover, Seller agrees that as a condition to the Purchaser paying the Purchase Price to the Seller, Seller must obtain the signature of the Obligor on the Irrevocable Authorization, Agreement and Acknowledge to Pay, the form of which is attached hereto as Exhibit A.

2. Seller agrees that Purchaser may withhold from the Purchase Price the amount of $1,939,273.70 to repay the Purchase and Sale Agreement #7 with TSF dated April 5, 2017.

3. Seller agrees that Purchaser may deduct the Transaction Fees in the amount set forth below in this Rider from the Purchase Price.

**Description of Legal Fees:** United States District Court for the Eastern District of Pennsylvania - In RE: National Football League Player's Concussion Injury Litigation; Docket No: 2:12-md-02323-AB; MDL No. 2323; Civ. Action No.:14-cv-00029-AB.

**Scheduled Payments** (*Purchase Price plus an annual investment return of 21% accruing daily and compounded monthly*): See Exhibit B attached hereto and made a part hereof.

**Purchase Price:**       $2,189,273.70

**Transaction Fees:**    $      7,500.00

**Amounts Withheld:**   $1,939,273.70

**Net to Attorney:**       $  242,500.00

12

Seller and Purchaser hereby agree to terms of this Rider and agree to the incorporation by reference of the terms and conditions in the Master Agreement.

Date: 6/5/17

SELLER: MITNICK LAW OFFICE, LLC

By: _____
    Mitnick Law Office, LLC.

PURCHASER: THRIVEST SPECIALTY FUNDING, LLC

By: _____

EXHIBIT A

IRREVOCABLE AUTHORIZATION, AGREEMENT AND ACKNOWLDGEMENT TO PAY
Dated: June 2, 2017
(Attorneys' Fees)

To: NFL Concussion Settlement Claims Administrator
P.O. Box 25369
Richmond, VA 23260

Reference is hereby made to that certain Master Non-Recourse Purchase and Sale Agreement dated as of June 2, 2017 and Rider dated as of June 2, 2017 by and between the undersigned, (as "Seller") and Thrivest Specialty Funding, LLC (as "Purchaser") (the "Agreement") pursuant to which the Seller has sold, transferred and assigned to Purchaser all of Seller's right, title and interest in and to certain Legal Fees. A copy of the Agreement is attached hereto as Exhibit A. All capitalized terms used herein shall have the same meanings ascribed to them in the Agreement.

It is anticipated that, pursuant to Paragraph 3(a), the Scheduled Payments will be paid to Purchaser. Pursuant Paragraph 3(a) of the Agreement, it is required that the Scheduled Payments will be paid by you, as Obligor, directly to Purchaser. The Agreement requires that this Authorization and Acknowledgement to Pay be acknowledged by you.

Accordingly, the undersigned Seller hereby directs and authorizes you as Obligor to pay directly to the Purchaser the Scheduled Payments as and when they become due and payable in accordance with the Rider. The Acknowledgment and Agreement to Pay all be effective immediately upon your signature below.

The Scheduled Payments shall be remitted directly to Purchaser to the following:

Thrivest Specialty Funding, LLC
1500 JFK Blvd, Ste 220
Philadelphia, PA 19102
WSFS Bank
ABA # 031 100 102
ACCT #210 700 977

This Irrevocable Authorization, Agreement and Acknowledgement to Pay (a) is binding on the parties hereto and their respective successors and assigns, (shall not be revoked or modified without the express written consent of the Purchaser, and (c) shall be governed by the laws of the Commonwealth of Pennsylvania, without regard to conflicts of law principles.

Mitnick Law Office, LLC
By: _____

ACKNOWLEDGED AND AGREED TO:
Claims Administrator

By: _____

cc: Thrivest Specialty Funding, LLC

14

## EXHIBIT B

### Schedule of Payments

| Date | Amount | Date | Amount |
|---|---|---|---|
| June 30, 2017 | $2,223,937.20 | December 31, 2018 | $2,950,711.79 |
| July 31, 2017 | $2,259,149.54 | January 31, 2019 | $2,997,431.39 |
| August 31, 2017 | $2,294,919.41 | February 28, 2019 | $3,044,890.72 |
| September 30, 2017 | $2,331,255.63 | March 31, 2019 | $3,093,101.49 |
| October 31, 2017 | $2,368,167.18 | April 30, 2019 | $3,142,075.60 |
| November 30, 2017 | $2,405,663.16 | May 31, 2019 | $3,191,825.13 |
| December 31, 2017 | $2,443,752.83 | June 30, 2019 | $3,242,362.36 |
| January 31, 2018 | $2,482,445.58 | July 31, 2019 | $3,293,699.76 |
| February 28, 2018 | $2,521,750.97 | August 31, 2019 | $3,345,850.01 |
| March 31, 2018 | $2,561,678.69 | September 30, 2019 | $3,398,825.97 |
| April 30, 2018 | $2,602,238.60 | October 31, 2019 | $3,452,640.71 |
| May 31, 2018 | $2,643,440.71 | November 30, 2019 | $3,507,307.52 |
| June 30, 2018 | $2,685,295.19 | December 31, 2019 | $3,562,839.89 |
| July 31, 2018 | $2,727,812.37 | January 31, 2020 | $3,619,251.53 |
| August 31, 2018 | $2,771,002.73 | February 29, 2020 | $3,676,556.34 |
| September 30, 2018 | $2,814,876.94 | March 31, 2020 | $3,734,768.48 |
| October 31, 2018 | $2,859,445.82 | April 20, 2020 | $3,793,902.32 |
| November 30, 2018 | $2,904,720.38 | May 31, 2020 | $3,853,972.44 |

With my signature below, I acknowledge and understand if distribution of the Scheduled Payments has not been paid to TSF by the last date of the above Schedule of Payments, the Scheduled Payments will continue to accrue at the same rate as described in the Purchase and Sale Agreement until distribution occurs.

*[Signature]*
Mitnick Law Office, LLC

## METHOD OF PAYMENT FORM

*By signing this form you acknowledge the information contained in this form is correct, and hereby authorize Thrivest Specialty Funding, LLC to disburse the funds according to your instructions below, INCLUDING disbursements to additional payees, if applicable. In the event that any payment or other information provided by you herein is incorrect, incomplete or otherwise non-verifiable, you acknowledge that any fees Thrivest accrues for the failed wire attempt will be deducted from your advance.*

X _[signature]_                                  6/8/17
Mitnick Law Office, LLC                          Date

### Bank Information for Wire Transfers

*Please provide us with a voided copy of a check or print out page from your bank that shows your account and routing number.*

REPUBLIC BANK   (856) 857-9600
Bank Name and Phone Number

30 KINGS HIGHWAY EAST   HADDONFIELD, N.J.
Bank Address

MITNICK LAW OFFICE, LLC.
Account Holder Name

35 KINGS HIGHWAY EAST   HADDONFIELD, N.J.
Account Holder Address

_[redacted]_
Account Number

_[redacted]_
Bank Routing Number/ABA Number (specifically for wire transfers)