# Exhibit C

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| Balanced Bridge Funding LLC f/k/a Thrivest Specialty Funding LLC<br><br>Claimant<br><br>vs.<br><br>Mitnick Law Office, LLC<br><br>Respondent | Case No. 01-20-0005-1630<br><br>**INTERIM AWARD AND OPINION** |

| | |
|---|---|
| **Claimant's Counsel** | Eric C. Reed, Esquire |
| **Respondent's Counsel** | Craig Mitnick, Esquire |
| **AAA Director:** | Matthew Conger, Esquire |
| **Arbitrator:** | Hon. Francis J. Orlando, Jr., A.J.S.C. *(Retired)* |

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration Agreement dated June 2, 2017 entered into by the above-named parties, and having been duly sworn and having duly heard proofs and allegations of the parties, hereby render this Interim Award, as follows:

Craig Mitnick, Esquire ("Mitnick") is an attorney and the principal of Mitnick Law Office, LLC ("Mitnick Law"). Mitnick Law represents over 1,250 former professional football players in the National Football League Concussion Class Action Litigation ("NFL Litigation"). In September 2015, Mitnick Law began selling its rights to attorney's fees earned in NFL Litigation to Balanced Bride Funding LLC f/k/a Thrivest Specialty Funding ("Balanced"), a litigation funding company, in return for cash advances. Mitnick Law and Balanced entered into a nine successive agreements. Balanced filed this arbitration claim contending that Mitnick Law

breached the agreements by failing to pay over legal fees received in the litigation and refusing to update Balanced on the status of the litigation. Mitnick challenged the validity of the Agreements and sought dismissal of Balanced claims.

The parties cross moved for Summary Judgment on the issue of liability. I considered the parties' submissions, legal precedent and oral argument. I issued a decision dated May 27, 2021 in which I determined that the Agreements between Balanced and Mitnick Law are valid and that Mitnick Law has admitted breach. I therefore granted Balanced's application for Summary Judgment as to liability and denied Mitnick Law's motion to dismiss the claim. I adopt my opinion and make it part of this decision as if fully set forth herein.

A damage hearing was held on June 21, 2021 and June 23, 2021. The parties presented exhibits and witness testimony. Mr. Joseph Genovesi, the CEO and owner of Balanced testified for the Claimant and Craig Mitnick, Esquire testified for the Respondent. Thereafter, the parties submitted Post-Hearing Briefs and the Respondent submitted a transcript of the hearing.

There are a number of issues to be resolved including the amount of fees Mitnick Law received, the interest rate to be charged and how it is to be applied and the Claimant's request for counsel fees and costs. However, a threshold issue to be addressed and resolved is Mitnick Law's multiple requests to have the agreements declared unenforceable and/or have the case dismissed without counsel fees or costs.

2

### MITNICK LAW'S APPLICATION TO HAVE THE AGREEMENTS DECLARED UNENFORCEABLE AND/OR TO HAVE THE CLAIM DISMISSED

Although I upheld the validity of the Agreements granting Balanced's application for judgment as to liability and denying Mitnick Law's request for dismissal, Mitnick Law now asserts that based on Genovesi's testimony the agreements should be declared unenforceable. Mitnick Law argues that because Genovesi made a mistake as to the interest rate to be charged and was unsure as to the terms of certain of the Agreements between the parties demonstrates that the Agreements are ambiguous and should not be enforced. Genovesi initially testified that the interest rate being charged was 17%. However, during his testimony on June 23, 2021, he testified he made an error during his testimony on June 21, 2021 and became "confused with the different interest rate numbers that were in front of me" (T. Genovesi, p.7). He clarified that the interest rate is 19 percent not 17 and that "there was a change made between the second and third agreements that went from 18 to 19 percent, its compounded monthly and it stayed that way until now" (T. Genovesi, p.8). Thus, Mr. Genovesi acknowledged his original answer was an error and clarified what he contends is the interest rate agreed to by the parties. Indeed, Mr. Mitnick acknowledged that he had a conversation with Mr. Genovesi regarding the 19% interest shortly after he signed the Rider to the Master Non-Recourse Purchase and Sale Agreement on June 5, 2017. The Rider contains the following statement:

> "Scheduled Payments: (Purchase Price plus an annual investment return of 21% accruing daily and compounded monthly."

Mr. Mitnick testified at page 67 as follows:

> "My testimony. 21 percent, when I came across that I contacted Mr. Genovesi and I was told that is an error. It should have been 19 percent at which point the discussion started with, what percent? But that was initially supposed to have been changed".

3

6056200-1

Thus, Mr. Mitnick signed a Rider which stated the interest rate was to be 21%. Thereafter, he spoke to Mr. Genovesi who advised him that the interest rate should be 19% not 21%.

The fact that Mr. Genovesi made an initial error as to the interest rate during his testimony which he later clarified and was uncertain as to certain facts regarding prior agreements does not render the agreements unenforceable. This is particularly true where Mr. Mitnick signed a Rider agreeing to the even higher rate of 21% and thereafter had a conversation with Mr. Genovesi who stated the rate was 19%.

Thus, Mitnick Law's effort to have the agreements declared unenforceable fails.

Next, Mitnick Law asserts that the claim must be dismissed because Balanced filed a Reply Post-Hearing brief. The timeline for post-hearing submissions was as follows:

- I initially established July 9, 2021 as the deadline for submitting post-hearing Briefs on the substantive issues.

- On July 7, 2021, Respondent requested a 10-day adjournment to have a court reporter transcribe the Zoom hearing.

- On July 7, 2021, Claimant objected noting the parties agreed to a Zoom hearing and the AAA Procedures for Virtual Hearing.

- On July 8, 2021, I granted the Respondent's request. I then established the following deadlines:

  o Substantive Briefs due from both parties on July 19, 2021.

  o Claimant's counsel to submit his fee request by July 12, 2021.

  o Respondent to submit both its substantive brief and any objection to the Claimant's counsel's fee request on July 19, 2021.

- On July 22, 2021, the AAA Director advised the parties that hearings are declared closed as of July 20, 2021 and that direct exchange with the Arbitrator is terminated.

4

- Claimant's counsel submitted its fee application on July 12, 2021.

- Both parties submitted Post-Hearing Briefs on the substantive issue on July 19, 2021.

- Respondent did not file an objection to Claimant's counsel's request for an award for fees and costs on July 19, 2021.

- Respondent on Friday July 23, 2021 at 4:10 submitted its opposition to Claimant's fee application directly to the Arbitrator despite the fact that direct exchange was terminated.

- On July 27, 2021, I was advised by the American Arbitration Association's Director that on July 26, 2021, the Claimant filed a reply to Respondent's post-hearing submission regarding damages and that the Respondent filed an objection.

- I ruled that in light of Respondent's own late filing of its objection to the Request for Counsel Fees, I would accept Claimant's submission and afford the Respondent the opportunity to file a Reply Brief on the issue of damages.

- On July 30, 2021, the Respondent forwarded to me through the American Arbitration Association an objection to allowing the Claimant to submit its Reply Brief contending that there is no remedy or cure for the prejudice it has suffered.

- On August 2, 2021, the Respondent submitted its Post-Hearing Reply Brief.

The Respondent contends that "Claimant's counsel stained the record with his deliberate, unethical and malicious action. There is no cure for this action; the sanctions of dismissal without costs and fees is the only remedy" (Mitnick e-mail July 26, 2021).

Although Mitnick Law claims incurable prejudice it woefully fails to demonstrate any such prejudice. Claimant's Reply Brief consists of less than 3 full pages of double-spaced type. It contains no new evidence. The Reply advances much the same arguments Balanced had already made in prior submissions. The Respondent was given the opportunity to submit a Reply, which

it did do.  Arguably the Respondent had the superior advantage because it was able to respond to the Claimant's Post-Hearing submission and the Claimant's Reply.

Respondent's request for dismissal of the claim is denied as it has failed to demonstrate any significant prejudice.

## FEES RECEIVED BY MITNICK LAW

A critical issue to be determined through the damage hearing is the amount of fees received by Mitnick Law in the NFL Litigation.  The parties stipulated Balanced advanced Mitnick Law $2,208,194.06, that Mitnick Law has repaid Balanced $1,869,727.00 and thus there is a balance of $338,466.00 due on principal alone to Balanced.  The payments from Mitnick Law to Balanced were made on the following dates:

| 07-31-18 | $673,959.38 |
| 08-17-18 | $558,166.00 |
| 08-30-18 | $400,000.00 |
| 09-17-18 | $90,766.34 |
| 09-24-18 | $790.17 |
| 12-27-18 | $55,546.00 |
| 03-18-19 | $90,500.00 |

Mitnick Law receives fees in the NFL Litigation from three sources (1) Common Benefit Fee; (2) Referral Fees from Locks Law Firm; and (3) Fees received by Mitnick Law for the players the firm represents directly whose cases have been resolved.  The parties stipulated that Mitnick Law received a Common Benefit Fee of $673,959.00.  The parties also stipulated that Mitnick Law received a total of $1,940,369.00 in referral fees from Locks Law Firm.  The fees received from Locks Law were forwarded to Mitnick Law as follows:

| 2018 | $1,391,728.00 |
| 2019 | $331,041.00 |
| 2020 | $118,300.00 |
| 2021 | $99,300.00 |

The amount of fees Mitnick Law received from the players it directly represents is in dispute.

Balanced asserts Mitnick Law has received $1,870,610.00 in fees for the players it directly represents. Balanced reaches this result by applying a 17% fee (the maximum counsel fee permitted by the federal court) on all amounts set forth on IRS Form 1099 from the NFL Settlement Administrator to the Mitnick Law firm for each year in question. This is a gross overreach. There is no evidence in the record that demonstrates Mitnick Law ever received 17% on any case let alone on all its cases. Indeed, for a period of time, NFL/Settlement Administrator was sending legal fees directly to law firms representing players. The NFL/Administrator issued to Mitnick Law a Settlement Payment Funding Report for two of its cases – Bruney and Satterfield. The report reflects that Mitnick law received an approximate 5% fee in the Bruney matter and an approximate 10% fee in the Satterfield case. This documentary evidence from the NFL undercuts Balanced unsupported claim that Mitnick Law received a 17% fee on all its cases.

Balanced alternate assertion is that Mitnick Law received $1,132,359.00 in fees for the players it directly represents. This contention is arrived at by assessing 10% on all amounts on the IRS Form 1099's issued by the Settlement Administrator. This is also an overreach. While Mitnick Law received a 10% fee on some of its cases on others it received a 5% fee and in at least one case the fee had to be shared with other counsel.

I find as credible the testimony of Mr. Mitnick regarding the fees received by Mitnick Law as a result of the settlement of claims for the players directly represented by the firm. I determine that Mitnick received a total of $734,560.44 in fees as a result of this direct representation. I have disregarded the Claimant's assertion that Mitnick Law received an additional $121,145.70 in fees which Mr. Mitnick did not identify during his testimony. The Claimant makes this contention based on certain checks which it identifies in its Post-Hearing Brief. The checks were not presented as evidence during the hearing nor was Mr. Mitnick presented with the checks during his testimony and afforded an opportunity to address and/or explain the checks. I therefore regard these checks as unreliable to support the contention that Mitnick Law received an additional $121,145.70 in fees. I did accept Mitnick Law's revision of the fees it received as set forth in the firm's Post-Hearing Brief because this revision increased the fees received by Mitnick Law.

I find that Mitnick Law received the following direct fees:

| Year | Client | Amount |
|------|--------|--------|
| 2018 | King | $39,255.68 |
| 2018 | Kubala | $71,949.92 |
| 2018 | LeClair | $90,229.90 |
| 2018 | Bruney | $11,172.45 |
| 2018 | Wirgowski | $42,224.60 |
| 2018 | Downing | $20,026.14 |
| 2018 | Satterfield | $101,540.54 |
| 2018 | Bierne | $91,129.26 |
| | | $467,528.49 |

| Year | Client | Amount |
|------|--------|--------|
| 2019 | Womble | $4,940.47 |
| 2019 | Irvin | $90,638.16 |
| 2019 | A. Clark | $71,127.26 |
| 2019 | Hampton | $46,815.35 |
|  |  | $213,521.24 |

| Year | Client | Amount |
|------|--------|--------|
| 2020 | B. Clark | $34,793.00 |
| 2020 | Parish | $7,194.40 |
| 2020 | Randle | $11,523.31 |
|  |  | $53,510.71 |

Total fees received directly by Mitnick Law for players it directly represents:

| Year | Amount |
|------|--------|
| 2018 | $467,528.49 |
| 2019 | $213,521.24 |
| 2020 | $53,510.71 |
| TOTAL | $734,560.44 |

<u>INTEREST RATE</u>

Mitnick Law asserts that the applicable interest rate to be applied to the amounts owed by Respondent should be 6 percent or no greater than 18% simple interest.  This argument is rejected. The Master Non-Recourse Purchase and Sale Agreement dated June 2, 2017 contains the following Rider:

RIDER

RIDER TO MASTER NON- RECOURSE PURCHASE AND SALE AGREEMENT
DATED June 2, 2017
(ATTORNEYS' FEES)

Rider dated as of June 2, 2017 to that certain Master Non-Recourse Purchase and Sale
Agreement dated as of June 2, 2017 between Mitnick Law Office, LLC and Thrivest
Specialty Funding, LLC (the "Master Agreement")

Reference is hereby made to that certain Master Agreement between Mitnick Law Office,
LLC (the "Seller") and Thrivest Specialty Funding, LLC (the "Purchaser") and dated as of
June 2, 2017. All capitalized terms not otherwise defined in this Rider shall have the same
meanings as ascribed to them in the Master Agreement. All terms and conditions of the
Master Agreement are hereby incorporated herein by reference as if they were fully set forth
in this Rider.

1. Seller hereby acknowledges and understands and agrees that it shall be subject to all of the
terms and conditions as set forth in the Master Agreement including but not limited to
Seller's agreement to pay the Scheduled Payments (described on Exhibit B hereto) to the
Purchaser. Moreover, Seller agrees that as a condition to the Purchaser paying the Purchase
Price to the Seller, Seller must obtain the signature of the Obligor on the Irrevocable
Authorization, Agreement and Acknowledge to Pay, the form of which is attached hereto as
Exhibit A.

2. Seller agrees that Purchaser may withhold from the Purchase Price the amount of
$1,939,273.70 to repay the Purchase and Sale Agreement #7 with TSF dated April 5, 2017.

3. Seller agrees that Purchaser may deduct the Transaction Fees in the amount set forth below
in this Rider from the Purchase Price.

Description of Legal Fees: United States District Court for the Eastern District of
Pennsylvania - In RE: National Football League Player's Concussion Injury Litigation;
Docket No: 2:12-md-02323-AB; MDL No. 2323; Civ. Action No. 14 cv-00029-AB.

Scheduled Payments *(Purchase Price plus an annual investment return of 21% accruing daily and compounded monthly)*: See Exhibit B attached hereto and made a part hereof.

| | |
|---|---|
| **Purchase Price:** | $2,189,273.70 |
| **Transaction Fees:** | $  7,500.00 |
| **Amounts Withheld:** | $1,939,273.70 |
| **Net to Attorney:** | $ 242,500.00 |

12

6056200-1

Case No.  01-20-0005-1630
INTERIM AWARD AND OPINION

Seller and Purchaser hereby agree to terms of this Rider and agree to the incorporation by reference of the terms and conditions in the Master Agreement.

Date: 6/5/17

SELLER: MITNICK LAW OFFICE, LLC

By:

*Mitnick Law Office, LLC.*

PURCHASER: THRIVEST SPECIALTY FUNDING, LLC

By: _____

13

6056200-1

The Rider identifies the annual investment return of 21% accruing daily and compounded monthly. This document was signed by Mr. Mitnick at the top of the very next page. As I have already noted Mr. Mitnick testified that when he reviewed the Rider and noticed the 21% interest rate he contacted Mr. Genovesi who advised him the 21% rate was incorrect and it is 19%. Thus, Mr. Mitnick was aware the true interest rate was 19%. Furthermore, the Master Non-Recourse Purchase and Sale Agreement includes Rider No. 2 which states:

(See next page)

12

RIDER No. 2

RIDER No. 2 TO MASTER NON- RECOURSE PURCHASE AND SALE AGREEMENT
DATED APRIL 23, 2018
(ATTORNEYS' FEES)

Rider No. 2 dated as of April 23, 2018 to that certain Master Non-Recourse Purchase and
Sale Agreement dated as of June 2, 2017 between Mitnick Law Office, LLC and Thrivest
Specialty Funding, LLC (the "Master Agreement")

Reference is hereby made to that certain Master Agreement between Mitnick Law Office,
LLC (the "Seller") and Thrivest Specialty Funding, LLC (the "Purchaser") and dated as of
June 2, 2017. All capitalized terms not otherwise defined in this Rider No. 2 shall have the
same meanings as ascribed to them in the Master Agreement. All terms and conditions of the
Master Agreement are hereby incorporated herein by reference as if they were fully set forth
in this Rider No. 2.

Reference is hereby made to that certain Rider dated June 2, 2017 ("Prior Rider"), whereby
the Purchaser advanced the sum of $2,189,873.70 to the Seller. The amounts advanced to the
Seller under this Rider are in addition to those amounts advanced in the Prior Rider.

1.  Seller hereby acknowledges and understands and agrees that it shall be subject to all
    of the terms and conditions as set forth in the Master Agreement including but not
    limited to Seller's agreement to pay the Scheduled Payments (described on Exhibit B
    hereto) to the Purchaser. Moreover, Seller agrees that as a condition to the Purchaser
    paying the Purchase Price to the Seller, Seller must obtain the signature of the
    Obligor on the Irrevocable Authorization, Agreement and Acknowledge to Pay, the
    form of which is attached hereto as Exhibit A.

2.  Seller agrees that Purchaser may deduct the Transaction Fees in the amount set forth
    below in this Rider No. 2 from the Purchase Price.

Description of Legal Fees: United States District Court for the Eastern District of Pennsylvania -
In RE: National Football League Player's Concussion Injury Litigation; Docket No. 2-12-md-
02323-AB; MDL No. 2323; Civ. Action No.:14-cv-00029-AB.

Scheduled Payments (*Purchase Price plus annual investment return of 15% accruing and compounded
monthly*): See Exhibit B attached hereto and made a part hereof

Purchase Price:        $515,463.92

Transaction Fees:      $ 15,463.92

Amounts Withheld:      $    0.00

Net to Attorney:       $500,000.00

1

Seller and Purchaser hereby agree to terms of this Rider No. 2 and agree to the incorporation by reference of the terms and conditions in the Master Agreement.

Date  04/05/208

SELLER: MITNICK LAW OFFICE, LLC

By: _____

MATTHEW COWPERTHWAIT
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 11/13/2018

PURCHASER: THRIVEST SPECIALTY FUNDING, LLC

By: _____

2

This Rider identifies the interest rate as 19% accruing and compounding monthly.  Mr. Mitnick as with the first Rider signed the document at the top of the next page.

Finally, there is an Exhibit B – Schedule of Payments which states:

### EXHIBIT B

#### Schedule of Payments

| | | | |
|---|---|---|---|
| June 30, 2017 | $2,223,937.20 | December 31, 2018 | $2,950,711.79 |
| July 31, 2017 | $2,259,149.54 | January 31, 2019 | $2,997,431.39 |
| August 31, 2017 | $2,294,919.41 | February 28, 2019 | $3,044,890.72 |
| September 30, 2017 | $2,331,255.63 | March 31, 2019 | $3,093,101.49 |
| October 31, 2017 | $2,368,167.18 | April 30, 2019 | $3,142,075.60 |
| November 30, 2017 | $2,405,663.16 | May 31, 2019 | $3,191,825.13 |
| December 31, 2017 | $2,443,752.83 | June 30, 2019 | $3,242,362.36 |
| January 31, 2018 | $2,482,445.58 | July 31, 2019 | $3,293,699.76 |
| February 28, 2018 | $2,521,750.97 | August 31, 2019 | $3,345,850.01 |
| March 31, 2018 | $2,561,678.69 | September 30, 2019 | $3,398,825.97 |
| April 30, 2018 | $2,602,238.60 | October 31, 2019 | $3,452,640.71 |
| May 31, 2018 | $2,643,440.71 | November 30, 2019 | $3,507,307.52 |
| June 30, 2018 | $2,685,295.19 | December 31, 2019 | $3,562,839.89 |
| July 31, 2018 | $2,727,812.37 | January 31, 2020 | $3,619,251.53 |
| August 31, 2018 | $2,771,002.73 | February 29, 2020 | $3,676,556.34 |
| September 30, 2018 | $2,814,876.94 | March 31, 2020 | $3,734,768.48 |
| October 31, 2018 | $2,859,445.82 | April 20, 2020 | $3,793,902.32 |
| November 30, 2018 | $2,904,720.38 | May 31, 2020 | $3,853,972.44 |

With my signature below, I acknowledge and understand if distribution of the Scheduled
Payments has not been paid to TSF by the last date of the above Schedule of Payments, the
Scheduled Payments will continue to accrue at the same rate as described in the Purchase and
Sale Agreement until distribution occurs.

Mitnick Law Office, LLC

15

This document is signed by Mr. Mitnick.  Mr. Genovesi testified that the monthly increases

reflect the application of the 19% interest rate compounding monthly.

Thus, Mr. Mitnick signed multiple documents reflecting a 19% interest rate compounding monthly and by his own admission had a conversation with Mr. Genovesi in which Genovesi advised him the 21% rate was in error and should be 19%.  Mr. Mitnick cannot now claim he did not know the interest rate or that the documents did not set forth the interest rate.  The rate to be applied is 19% compounded monthly.

ASSESSMENT OF DAMAGES

I have determined that there has been an underpayment by Mitnick Law to Balanced as follows:

| Year | Amount |
|------|-------:|
| 2018 | $753,987.00 |
| 2019 | $454,062.00 |
| 2020 | $171,756.00 |
| 2021 | $99,300.00 |

I have arrived at this decision based upon the parties Stipulations and my analysis of the fees directly received by Mitnick Law.  My calculations are set forth in Exhibit A attached to this Opinion.

I have already decided that the interest to be charged, based upon the parties' agreements, is 19% compounded monthly.  This interest rate is to be assessed on the amounts which were underpaid by Mitnick Law.  I agree with the methodology employed by the Claimant.  The Claimant presented these different scenarios.  I have not adopted any of those proposals since I have determined that the fees received by Mitnick Law were less than the assessment by Balanced. I therefore direct Balanced to provide a calculation of the amounts owed to it based upon my

16

determination of the underpayments by Mitnick Law using the interest rate of 19% compounded monthly. Mitnick Law will have 3 business days to comment on the calculation only and not on any other part of this Opinion.

## RESPONDENT CLAIM THAT ANY AWARD AGAINST IT CAN ONLY BE COLLECTED FROM NFL FEES

The Respondent asserts that because the agreements between it and the Claimant are non-recourse and relate only to fees the Respondent receives from NFL cases that any award against it can only be collected from NFL fees received by Mitnick Law. I reject this contention. The Respondent offers no legal support for the proposition that a breach of a non-recourse loan limits the creditor to only the asset that are the subject of the Non-Recourse loan. Once a breach occurs the creditor is entitled to pursue any of the debtor's assets to make itself whole absent any provision in the agreement to the contrary. Indeed, in this case if no more NFL fees were forthcoming, Balanced would be left without a remedy. Balanced may pursue any of the assets of the Respondent it is legally entitled to pursue in order to obtain payment of any amount(s) it is awarded.

## CLAIMANTS REQUEST FOR COUNSEL FEES AND COSTS

The Claimant has requested an award for counsel fees and costs. The Agreement between the parties provides at paragraph 9(a) that in the event of a breach the Purchaser (Balanced) is entitled to recover reasonable costs and attorney fees. Mitnick Law breached the Agreement. Balanced is a prevailing party. Therefore, Claimant is entitled to reasonable costs and counsel fees.

I will award Balanced all American Arbitration Association fees and Arbitrator fees.

17

Balanced has requested a counsel fee award of $114,564.51. Although the fee application did not identify counsel's billing rate by my calculation it is $595.00 an hour. Mitnick Law challenges the rate as excessive. However, the amounts in dispute are in excess of one million dollars and the Claimant is entitled to have a sophisticated commercial litigator represent it in the litigation. I therefore approve the rate.

I have deducted 20.1 hours from the hours billed by counsel which consists of the following:

> 4.1 hours for work done before filing for Arbitration.
>
> 6.0 hours relating to preparing discovery request and deficiency notice as the amounts billed are in excess of reasonable time to complete the task.
>
> 10.0 hours related to preparation participation and submission related to the hearing. Much of the Claimant's presentation was predicated on its assertion that Mitnick Law had received 17% fees which contention is rejected.

I therefore award Claimant a counsel fee award of $102,605.01.

## CLAIMANT'S REQUEST FOR AN ORDER DIRECTING THIRD PARTIES TO PAY OVER FEES DUE MITNICK LAW TO IT

I deny Claimant's request for an Order directing Third Parties, including the Claims Administrator, to pay to Balanced any sums otherwise due Mitnick Law to satisfy any award in favor of Balanced as well as future obligations of Mitnick Law. Any award to Balanced will presumably be reduced to a Judgment. Balanced will then have the opportunity to pursue all remedies to which the law entitles it to secure payment. Moreover, the relief requested by Balanced is unworkable. The amounts forwarded by the Claim Administrator to Mitnick Law

combine client awards and counsel fees.  The Administrator does not separate the client award from the legal fee.  The Administrator does not know how much legal fee will be charged in any given case.  Mitnick Law has the legal and ethical obligation to disburse funds to its clients.  This task cannot be assigned to Balanced.  Moreover, Balanced in this case has significantly overstated the damage it claims to have suffered from Mitnick Law's breach and therefore cannot be relied upon to accurately assess and communicate to third parties the amounts due it from Mitnick Law. Finally, I will not presume future breaches by Mitnick Law.  I will enter an award in a lump sum dollar amount for the amount due Balanced as of July 31, 2021 plus an award for counsel fees and costs.

Dated: August 17, 2021

Francis J. Orlando, Jr., Arbitrator

6056200-1

EXHIBIT A

<u>2018</u>

Fees Received by Mitnick Law

| | |
|---|---|
| Locks Law | $1,391,728.00 |
| Common Benefit Fee | $673,959.00 |
| Direct Client Fee | $467,528.49 |
| | $2,533,215.49 |

Amounts Paid By Mitnick Law To Balanced   $1,779,228.00

SHORTFALL                                  $753,987.49

<u>2019</u>

Fees Received by Mitnick Law

| | |
|---|---|
| Locks Law | $331,041.00 |
| Direct Client Fee | $213,521.24 |
| | $544,562.24 |

Amounts Paid By Mitnick Law To Balanced   $90,500.00

SHORTFALL                                  $454,062.24

<u>2020</u>

Fees Received by Mitnick Law

| | |
|---|---|
| Locks Law | $118,300.00 |
| Direct Client Fee | $53,510.71 |
| | $171,810.71 |

Amounts Paid By Mitnick Law To Balanced   $0

SHORTFALL                                  $171,810.71

20

2021

Fees Received by Mitnick Law

| Locks Law | $99,300.00 |
|-----------|------------|

Amounts Paid By Mitnick Law To Balanced       $0

    SHORTFALL                              $99,300.00