# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION.** | : : : : : : : : : | NO. 2:12-md-02323-AB<br><br>MDL NO. 2323<br><br>OPPOSITION TO BALANCED BRIDGE FUNDING, LLC'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO PRESERVE DISTRIBUTIONS TO MITNICK LAW OFFICE |

OPPOSITION TO BALANCED BRIDGE FUNDING LLC'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO PRESERVE DISTRIBUTIONS TO MITNICK LAW OFFICE

**INTRODUCTION**

Balanced Bridge Funding moves before the Court under Federal Rule of Civil Procedure 65 for the entry of an order directing the NFL Claim Settlement Administrator to withhold all distributions from Mitnick Law Office LLC that constitute legal fees earned in the NFL Concussion Litigation, including those fees payable to Mitnick Law from Locks Law Firm. The legal fees are fees derived from the firm's representation of individual retired NFL players who are anticipate receiving a

Monetary Award determination from the Claim Administrator. Balanced Bridge Funding, formerly known as Thrivest, markets themselves as an *Innovative Legal Funding and Specialty Finance Solution Firm*, when in fact they are engaged in the business of legal loan sharking. The owner of the firm, Joseph Genevese solicited Mitnick Law in 2015 and sold Craig Mitnick, Esquire what Genevese termed a "Non-Recourse Funding Solution". Over the course of three years, from September 2015 until April of 2018, Balanced Bridge/Thrivest paid Mitnick Law Office approximately $2.3 Million Dollars, in unrestricted funds, over eight (8) consecutive funding agreements, not $3.2 Million as misrepresented in Balanced bridge's filing. Mitnick Law repaid the funder approximately $1.9 Million Dollars of the $2.3 paid prior to Mitnick being advised that millions of dollars in "interest" remained due and owing to the funder. All of the eight "Non-Recourse Agreements" between Mitnick Law and Balanced Bridge Funding mandated that any dispute be decided through alternative dispute resolution. Balanced Bridge filed a Demand for Arbitration. After an award was issued in Balanced Bridge's favor, Fox Rothchild, the law firm representing Balanced Bridge, led by attorney Eric Reed, Esquire, filed an action on September 13, 2021, in the United States District Court for the Eastern District of Pennsylvania requesting the Court to enforce the award and convert the award in a judgement against Mitnick Law. Around the same time, Mitnick Law filed an adverse action requesting the Court to vacate the award based on failures by the Arbitrator. The litigation was consolidated and assigned to the Honorable Petrese Tucker. Both matters remain pending and NO judgement or order to vacate has yet been decided.

As it has requested here, under the NFL Concussion Litigation docket, Balanced Bridge has previously requested relief on the same exact issue of restricting distribution in at least three separate venues before, with unsuccessful results in each. First, through a formal request of the Arbitrator, Francis Orlando who entered the final award; Second, through the issuance of a subpoena directly to the NFL Claim Administrator, Brown Greer; and third by requesting the same relief before the Honorable Petrese Tucker and the Honorable Marilyn Heffley, both out of the United States District Court for the Eastern District of Pennsylvania. Now, after each attempt was unsuccessful, Balanced Bridge, through the efforts of Fox Rothchild and Eric Reed, Esquire, continue to forum shop in the hope of securing a restriction on Mitnick Law Office legal fees, even in the absence of a judgement against Mitnick Law.

**PROCEDURAL HISTORY**

With the exception of the application current application, on March 8, 2022, not even 60 days ago, Eric Reed, Esquire of Fox Rothchild, LLP, filed a request to restrict distributions of legal fees to Mitnick Law Office from the NFL Claim Administrator to the Honorable Petrese Tucker. Attorney Reed on behalf of Balanced Bridge, argued in a written submission to Judge Tucker, who incidentally had already held a management conference in the matter, that Balanced Bridge's application to enforce the award should be issued without delay and no further litigation is necessary by the Court. In that request, and in his rush to have the award enforced, Balanced Bridge and Mr. Reed essentially dismissed the pending application to vacate and requested that the Court restrict Mitnick Law's distribution of legal fees from the Settlement Claim Administrator. Ironically, Attorney Reed is employed by Fox Rothchild, who was the same law firm that represented Mitnick for over 6 years with regard to a spectrum of legal issues in relation to

Mitnick's involvement in the NFL Concussion Litigation. Mitnick Law Office, LLC (Mitnick Law) and Craig Mitnick personally retained Fox Rothchild LLP in 2012 by engaging the firm through a formal Retainer Agreement that was not concluded until February of 2019, seven years later. Initially, representation focused on protecting Mitnick's interest in over 900 retired player clients that Mitnick had referred to Locks Law Firm. The representation of Fox Rothchild on behalf of Mitnick expanded as the NFL litigation progressed. Even though Fox Rothchild represented Mitnick Law and Craig Mitnick from September of 2012 until late February of 2019, unknowing to Mitnick, the firm formally entered into a retention agreement with Balanced Bridge Funding (Thrivest) in 2017. Even though Mitnick Law has requested a copy of that Retainer Agreement by issuing a subpoena for the document, to date the request has been ignored by the law firm. Upon information and belief, Fox Rothchild's Retention Agreement with Balanced Bridge (Thrivest) relates to the same underlying NFL litigation and was entered into at the same time that Fox Rothchild knew of Mitnick's existing contractual relationship with Balanced Bridge.

In November of 2019, after receiving correspondence from Fox Rothchild, specifically Peter Buckley, Esquire on behalf of Balanced Bridge, Mitnick was formally advised by Fox that they in fact represented Balanced Bridge. After receiving the adverse correspondence, Mitnick provided notice to several attorneys associated with the firm, including Eric Reed, Esq and Peter Buckley, Esq., of his concerns and strong belief that a conflict existed. Fox Rothchild dismissed Mitnick's concerns as unwarranted and inconsequential. Several months later, after Fox Rothchild filed a Demand for Arbitration on behalf of Balanced Bridge, Mitnick brought the conflict issue to the attention of the Arbitrator. After a review of limited information, the arbitrator ruled that there was

no conflict as he saw it, however the decision was issued without prejudice if additional information came to light.

The conflict issue is central to the pending application to enforce the award, as it is to the current application to restrict Mitnick's distribution. Fox Rothchild was in receipt of Mitnick's retired player client lists; email communications with Class counsel; Agreements between Mitnick Law and retired player clients, as well as having been privy to multiple confidential communications. This information had to give Balanced Bridge an unfair advantage from the onset of the Arbitration. Naturally, Mr. Reed and others at the firm deny this was the case and continue to publicly assert Fox Rothchild's high ethical standards and denial that there was any conflict violation contrary to the facts associated to the matter. Fox Rothchild, through the efforts of Attorney Eric Reed continue their aggressive representation on behalf of Balanced Bridge and their unwavering and questionable assault against their former client, Mitnick Law Office.

In an earlier submission to restrict distributions from Mitnick Law Office from the NFL Claim Administrator, the firm submitted a similar filing to The Honorable Petrese Tucker. The filing requested summary enforcement of the arbitration award, as well as restriction on Mitnick Law's NFL fee distributions. Interestingly, the identical argument that is the subject of Balanced Bridge's current application to the Court was previously made to Judge Tucker. In written argument to Judge Tucker, Attorney Reed, acting on behalf of Balanced Bridge offered the following:

> *"This situation has become more urgent in light of developments in the NFL Concussion Class Action, which is pending before the Hon. Anita B. Brody. On March 4, 2022, Judge Brody entered an order granting a motion to remove race norms and demographic estimates based on*

*race from the NFL Concussion Settlement Program. A copy of the order accompanies this submission. Paragraph 7 of the order indicates that rescoring and access to expanded evaluations will be implemented on or about April 29, 2022. These changes are likely to increase payouts for affected NFL retirees.*

*"The import of this development for this case is that a number of NFL retirees represented by Mitnick Law directly, and those referred by Mitnick Law to other counsel, will likely qualify for additional payouts. The legal fees accompanying those additional payouts will be a source of recovery for Balanced Bridge. Without the arbitration award confirmed as a judgment, Balanced Bridge has limited options to secure those funds. Unfortunately, Mitnick Law has resisted Balanced Bridge's efforts to establish a mechanism to account for and secure such payments in anticipation of the arbitration award's confirmation, and Mitnick Law even continued to retain fee payments after the arbitrator found Mitnick Law liable to Balanced Bridge.1 Balanced Bridge has no expectation that Mitnick Law will change course, which only underscores the need for a ruling regarding the arbitration award as soon as possible".*

In a reply correspondence to Judge Tucker on March 8, 2022, Craig Mitnick, Esq. on behalf of Mitnick Law Office stated in relevant part:

*"Mr. Reed cites the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA") and indicates to the Court that the FAA "places considerable emphasis on efficient and speedy dispute resolution". As Your Honor is aware, the FAA does not control the jurisdiction, or*

6

*scheduling of any subsequent federal court action to Enforce or Vacate an award arising out of alternate dispute resolution.*

*Mr. Reed further makes argument to the Court that "the situation has become more urgent in light of developments in the NFL Concussion Class Action, which is pending before the Honorable Anita Brody". He then explains that Judge Brody entered an Order on March 4, 2022 in regard to the race norming issue and implies that the Order will most likely cause NFL retirees to begin receiving personal injury awards on or about April 29, 2022: "the import of this development for this case is that a number of NFL retirees represented by Mitnick law directly, and those referred by Mitnick law to other counsel, will likely qualify for additional payouts. The legal fees accompanying those additional payouts will be a source of recovery for balanced bridge".*

The timeline suggested is completely unrealistic and contrary to what the NFL Special Masters have communicated to be the case. I have attached correspondence received under today's date which addresses the very issue. It is my understanding that no award or payout that may be anticipated by an NFL retiree due to the race norming issue will occur any time prior to the summer of 2022.

This seems to be in line with the current Claim Administration process for the Settlement, that includes appeal rights in every case where an award is issued by the NFL Parties…

> Given the accurate timeline, along with the outstanding discovery issues in our matter, both in conjunction with the fact that the application to vacate and the application to enforce must be heard by the court, I respectfully object to forcing these matters in a rushed manner, prematurely. Further, I believe it to be presumptuous for either party in this action to assume the Court is going to grant their respective application automatically and unequivocally".

At the same time as the applications to enforce and to vacate were pending before Judge Tucker and during the same time as Balanced Bridge's continued efforts to restrict Mitnick's distributions from the Claim Administrator ensued, on December 15, 2021, Balanced Bridge filed a separate action in the district of New Jersey against Mitnick, however this one went beyond the corporate entity of Mitnick Law Office LLC. Balanced Bridge through their unfounded filing continued to attempt to place more pressure on Mitnick by naming him in the suit, personally. Not only was Mitnick named, however his wife and mother were included as well. The Complaint alleges that Mitnick purchased a "beach house" using *misappropriated* funds that Balanced Bridge provided to Mitnick through one of the funding agreements, and that Mitnick, along with his wife and mother conspired to falsely encumber the property so it couldn't be attached by Balanced Bridge. Those allegations are not only unfounded, but they are also malicious. That Complaint currently faces a motion to dismiss that is currently pending.

**LEGAL ARGUMENT**

Injunctive relief should only be granted when after the Court considers the following four factors:

> (1) *The likelihood that the moving party will succeed on the merits of their case.*

8

(2) *The extent to which the moving party will suffer irreparable harm without injunctive relief.*

3) *The extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and*

(4) *The public interest*.

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 586 (3rd Cir.2002).

**LIKELIHOOD OF SUCCESS**

Balanced Bridge takes the position that the arbitration award is unconditionally binding due to their reliance on Federal Arbitration Act ("FAA") and the position that Judge Tucker cannot consider other factual determinations. In doing this, Balance Bridge simply dismisses the fact that there was and remains, an ethical conflict. If consideration is given to that probability, Balanced Bridge was placed in a far better position by having a competitive advantage against Mitnick Law from the onset of the arbitration. How could Fox Rothchild, hence Balanced Bridge, argue to the Courts that there was never any conflict when the firm simultaneously represented both parties for two years, and then engaged in adverse representation against Mitnick Law and Craig Mitnick, their former clients. Their answer is *the Arbitrator said so*. The arbitrator made a determination after considering what was in front of him at the time, however at that time not all facts were known. The Arbitrator clearly stated when making his decision; "*Mr. Mitnick, I know this must feel like being stabbed with a knife, however if Fox Rothschild is conflicted out, another firm is just going to step in, so let's move forward with the matter*". The Arbitrator's decision was *without prejudice* in the event that new information was ascertained. Once new information was discovered

9

by Mitnick Law, the arbitration was well into the final stages and the American Arbitration Association's Rules clearly state that a litigant <u>cannot</u> appeal any interim decision by the arbitrator, whether motion or otherwise, until after the final award is issued. That is exactly what Mitnick Law Office has done by filing their motion to vacate the award.

The facts currently before the Court in regard to the application to vacate indicate that at the time the Arbitration was instituted by Mr. Reed from Fox Rothchild on behalf of Balanced Bridge, a <u>concurrent conflict</u> existed, a <u>conflict</u> existed, there was a clear question of <u>ethical competence</u> by Fox Rothchild, there were <u>diligence issues</u>, <u>fraud</u>, representation by Fox that was <u>prejudicial to the administration of justice</u>, and a clear <u>lack in the truthfulness of Fox's communications.</u>

Additionally, during the six years of representation by Fox Rothchild of Mitnick personally and Mitnick law Office LLC, hundreds of pages of documents pertaining to Mitnick's involvement with the NFL concussion matter, including detailed client lists for over 1000 retired players, as well as granular information regarding Mitnick and Locks client files. This information was part of the subsequent discovery and argument that was presented by Balanced Bridge to the arbitrator at the arbitration. Further, through Fox Rothchild's representation of Mitnick Law, Fox Rothchild was directly engaged in confidential attorney-client conversations and communications with Mitnick. This facts alone, at the very least clearly indicates an impropriety and more likely is indicative of an ethical conflict that placed Mr. Reed, Mr. Buckley, and others at the firm in an professional position that mandated immediate recusal and notice to Balanced Bridge that they would need to retain other counsel. However, this simple and clear alternative was not acceptable

to Fox Rothchild, instead they chose to continue their representation adverse to Mitnick Law, giving their client, Balanced Bridge a broad unfair advantage from the start of the arbitration.

All of these facts, as well as the additional ones set forth below substantiate a finding, both in law and in fact for Judge Tucker to conclude that a conflict existed, requiring the arbitration award to be vacated. The same set of facts is applicable here favoring denial of the request for Injunctive Relief.

**RELEVANT FACTUAL SUMMARY SUPPORTING LIKELIHOOD OF SUCCESS**

On October 26, 2012, Craig Mitnick, Esquire of Mitnick Law Firm retained the law firm of Fox Rothchild for legal representation and professional guidance in the litigation. The parties formally entered into a retention Agreement on October 26, 2012. The Retainer Agreement initially refers to "consultation and ongoing advice regarding the referral arrangement between you and Gene locks and his law firm in regard to the National Football Player Concussion Injury Litigation".

Even though the Retainer Agreement specifically referenced the dealings with Locks Law Firm, the six-year actual retention with Fox Rothschild included far more expansive areas, such as outside matters involving Retired Player and friend, Kevin Turner and the Estate of Kevin Turner; advice and guidance regarding litigation funding; guidance and actual services with regard to common benefit entitlement and detailed information involving retired players, clients, responsibilities, obstacles, changes in client lists with Locks Law, disputes, privileged information, and discussions surrounding funding of players and the Mitnick firm. The overall premise of the representation from day one was to protect the firm and Mitnick with regard to all work performed, compensation

for work performed and ongoing guidance in regard to any issues that arose during the litigation where Mitnick was involved.

Fox Rothchild has contended that Mitnick Law still owes the firm fees for work performed. The alleged outstanding balance is in the area of $8500. Those fees were billed for services that were never performed. The fees were for a "court appearance" on May 15, 2018 regarding argument on common benefit entitlement. At the start of the hearing on May 15, 2018, the Honorable Anita Brody ruled that no outside attorney was permitted to argue on behalf of a common benefit recipient. The Fox Rothchild attorneys present voluntarily chose to remain in the Courtroom for what they referred to as a "fascinating hearing". Subsequently, in February of 2019, Fox concluded their representation of Mitnick Law by sending a formal letter as required by the Court rules under date of February 21, 2019.

The conflict issue can be easily summarized through categorization in three primary areas:

    The first is the undisputed fact that Fox Rothschild enter into a formal retention agreement with Balanced Bridge/Thrivest in October 2017, two years prior to their conclusion letter to Mitnick Law Office/Craig Mitnick, Esquire. Mitnick was never approached by anyone at Fox Rothschild nor was he ever asked for a waiver or consent in order for Fox to ethically move forward with representation of Balanced Bridge/Thrivest. Rather the Retention Agreement with Balanced Bridge was signed with no notice to Mitnick and at the same time that Fox was aware of the funding relationship that both clients were actively engaged in.

    The second category of conflict is evident from the fact that Balanced Bridge (Thrivest), through Fox Rothchild's representation, litigated against a Mitnick Law retired player client, Joseph Jones. Jones was a retired NFL player who Mitnick successfully secured a substantial

monetary award and who had previously borrowed money from Balanced Bridge. Jones did not believe that he had any legal obligation to return the monies. Arbitration was initiated by Fox Rothschild on Balanced Bridge's (Thrivest's) behalf. Mitnick was initially involved, however withdrew from the matter given a perceived conflict. The matter was ultimately resolved directly between Joe Jones and Fox Rothchild on behalf of Balanced (Thrivest). Without Mitnick's consent, Fox Rothschild disregarded contingent legal fees contractually owed to Mitnick Law Office in the approximate amount of $22,000 in order for their other client, Balanced Bridge to successfully recover at the detriment of Mitnick Law Office.

In an email sent to Craig Mitnick by Peter Buckley, Esq of Fox Rothchild, Buckley wrote the following on December 11, 2019:

> Craig,
>
> "After sending the below email, we spoke to confirm your agreement to waive any legal fee with respect to Mr. Jones in exchange for a release of claims. Can you reply so that I have documentation of your agreement? Also, if you would like Mr. Jones to sign a release, please provide one that I can share with him".
>
> Peter

Mitnick responded on December 11, 2019 with the following:

> Peter,
>
> "It is improper for me to waive a legal fee in exchange for a client's release of a malpractice claim. In my opinion, Mr. Jones has absolutely no claim against me for any ethical or malpractice violation given the fact that I successfully negotiated a monetary award on his behalf. The only reason I was willing to forego the fee for which I am entitled was to assist Thrivest and Mr. Jones in resolving their independent dispute.

The only way I will agree to forego my fee of approx. $21,800 from Mr. Jones is if I receive written documentation from Mr. Jones directly that he was in fact satisfied with my representation and confirming that I was NEVER retained to represent him on any dispute with Thrivest. Also confirming the fact that I only got involved in the Thrivest dispute due to the fact that he was unrepresented, and I did not want him to get hurt. That short advocacy on his behalf ended when he made it clear that he believed I was responsible for referring him to Thrivest and that I endorsed Thrivest.

If I receive documentation from Mr. Jones confirming his satisfaction with his settlement and my representation, along with his acknowledgement that he voluntarily chose to engage Thrivest for funding, I will then agree to waive my fee in his NFL Concussion claim solely as a courtesy to Thrivest and to Mr. Jones. I will not prepare any release because in my opinion that would be inappropriate. Again, if Mr. Jones feels that the above set of facts is accurate, then he can prepare a document reflecting same. If and when I receive that document, I will advise the Claim Administrator that I will be taking no fee. Unless and until I receive documentation from Mr. Jones in accordance with the above, please advise Mr. Jones that he has a contractual obligation to me requiring him to pay my fee in the amount of approximately $21,800. On a separate note, please advise Joe G. that I have received confirmation from Locks and the Claim Administrator that I will finally have several claims paid this month on behalf of retired players that I represent. Also, if you could relay a message to Joe G. to call me at his convenience to discuss those pending payments and balances due and owing it would be greatly appreciated".

Thank you

Craig

The third category of conflict was the overall representation of Balanced Bridge at the time that Fox Rothchild was representing Mitnick Law Office and Craig Mitnick personally. The same underlying NFL litigation existed at all times and Mitnick's relationship with Lock's Law was both the subject of Fox's representation of Mitnick and Fox's adverse representation against Mitnick.

Given these clear set of facts, Mitnick is likely to prevail and the award in favor of Balanced Bridge will be vacated. This factor weighs heavily in Mitnick Law Office's favor and against Balance Bridge's request for Injunctive Relief.

**IRREPARABLE HARM**

Irreparable harm is harm "such that legal remedies are rendered inadequate". Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997). Balanced Bridge attempts to manipulate some facts while omitting others. Mitnick Law <u>paid back balanced Bridge $1.9 of the $2.2 Million dollars it received from Balanced Bridge</u>. At that point, a contractual dispute arose. What is relevant to this application for injunctive relief is not just the arbitration award, but more importantly the fact that Mitnick voluntarily repaid to Balanced Bridge 1.9M of the principle it had borrowed and only ceased payments after a fundamental dispute arose that led Mitnick to take the position that the agreements were ambiguous, unconscionable, and predatory. The existing arbitration award is indeed faulty, and the facts suggest that the award has a greater chance of being vacated than it does of being enforced. Additionally, Balanced Bridge, through the efforts of Fox Rothchild's include in their arguments to this Court, the bold unsubstantiated allegation that Mitnick Law Office purchased a beach house with Balanced Bridge's funds. That is a complete fabrication and distortion. Again, creative manipulation is being used in this matter in a further attempt to restrict Mitnick Law's finances, harm his reputation and to cause his credibility to be attacked in a public setting. This disgraceful strategy should not bolster efforts to restrict Mitnick's income when in fact there is no irreparable harm to Balanced Bridge and only harm to Mitnick Law Office.

**THE BALANCE OF POSSIBLE HARM**

Mitnick Law Office would be harmed in a far greater way if the requested injunctive relief is granted. Balanced Bridge has a pending application to enforce the arbitration award, however given the strength of the attorney conflict as set forth in detail above, the success of Balanced Bridge's enforcement application is far less probable than their moving papers suggest. The fact that Mitnick Law paid Balanced Bridge a total of $1.9 Million Dollars back on the principle of a $2.2 million dollar "Non-recourse, Purchase Agreement, clearly indicates that Mitnick Law has never had the intent of not repaying legitimate funds advanced to to Balance Bridge that Mitnick bargained for. What is at issue is the validity of the contract and the validity of the award. To restrict distributions would not only subject Mitnick Law to irreparable harm, but more importantly would act as a barrier for retired player clients who receive successful monetary awards from receiving their monies in accordance with the terms of their respective retainer agreements with Mitnick Law. Granting of any form of injunctive relief at this juncture, is as Judge Heffley said "too premature". The fact is there is no judgement in Balance Bridge's favor and as such there is no legal means to recover on something that does not yet exist. Especially in light of the adverse action to Vacate.

Balanced Bridge attempts to preempt the argument that holding the legal fees pending any possible confirmation of the arbitration award would impede or prevent the flow of payment to NFL Concussion Class Action plaintiffs, because determinations must be made as to the amount of legal fees owed to each individual. Balanced Bridge then argues that "this is not a real issue". How can this not be a real issue when only Mitnick Law can meet its ethical obligations to any retired player client by properly preparing, recording, and distributing. To argue that these inherent ethical responsibilities can easily be shifted to the Claim Administrator is mistaken. The calculation and

preparation of the necessary distribution sheet is ultimately the responsibility of the attorney of record in each individual claim. Procedurally, the law firm of record receives an incoming electronic wire from Brown Greer in a lump sum; sometimes that wire into Mitnick Law would include the total award payments from two separate unrelated matters lumped together into one electronic transfer. In that event, two separate distribution sheets, each reflective of the individual case must be accurately prepared prior to any disbursement being initiated. Distributions need to be prepared prior to the disbursement of any legal fee, cost or expenses that may remain outstanding in the file, as well as for the actual disbursement of the Retired Player's monetary award.

The ultimate distribution needs to be prepared and signed by the attorney responsible for the distribution. The settlement Agreement and the Claim Administrator's procedures that have been approved by the Court place the responsibility of the distribution on the attorney of record. Brown Greer is not in the business of calculating and micro-managing disbursements to players. Further, every claim is unique within itself in that there are costs, lien payments, different retainer contingent fees ranging from ten percent to fifteen percent. By restricting Mitnick Law Office's ability to properly disperse funds to player clients, and to not allow Mitnick Law Office to receive the fees due and owing to the firm for work performed, would create a far greater harm than Balanced Bridge's harm of protecting a predatory interest rate. This argument is also validated by the past denials in regard to the same request.  The balance of harm weighs in favor of denying injunctive relief.

**PUBLIC INTEREST**

Enforcing clear and *unambiguous* contractual agreements is what is consistent with public policy. See, e.g., Borough of Ambridge Water Auth. v. J.Z. Columbia, 328 A.2d 498, 500 (Pa. 1974).

Arbitrator Orlando may have ruled in favor of Balance Bridge in the arbitration, however it is Mitnick Law's firm belief that the ruling was tainted by Balance Bridge's unfair competitive advantage through the representation of Fox Rothchild. Further, Balance Bridge's representation to the Court that the Arbitrator ruled in favor of the funding entity by <u>awarding 3.2 million dollars is a complete inflated misrepresentation.</u> The award was far lower and throughout their filing in this matter, Balanced Bridge consistently over-inflated the true amount by an amount in excess of $1Million dollars.

Public interest favors contracts that are fair, reasonable, understandable, and unambiguous. The predatory nature of Balanced Bridge's Agreement with Mitnick Law is contrary to public policy and the Court has previously visited this predatory issue in the same underlying NFL litigation.

For all of the reasons set forth above, Mitnick law office respectfully request that injunctive relief be denied.

Respectfully Submitted,

*/s/ Craig R. Mitnick*

Craig R. Mitnick, Esquire
**MITNICK LAW OFFICE LLC**
8000 Sagemore Drive, Suite 8305
Marlton, New Jersey 08053
856-427-9000
craig@mitnicklegal.com
Attorney ID: 50728

19