UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| Troy Davis, Lynn James, Marvin Owens (Deceased), Booker T. Brown (Deceased) and Newton Williams, on behalf of themselves and others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br>       Defendants. | |
| THIS DOCUMENT RELATES TO:<br>ALL BAP and BLACK CLIENTS OF GPW | |

**BRIEF IN SUPPORT OF MOTION FOR RELIEF PURSUANT TO
<u>ARTICLE XXVII OF THE SETTLEMENT AGREEMENT</u>**

**<u>INTRODUCTION</u>**

  Plaintiffs request this Honorable Court exercise its power pursuant to the terms of the NFL Concussion Settlement Agreement to strictly enforce the terms of the Settlement Agreement. The Plaintiffs, as aggrieved parties, are all settlement class members who participated in the BAP program, as well as and in particular Black Settlement Class members. These individuals continue to experience violations of their Civil and Due process rights by the administration of the

Settlement Agreement. The actions stand in direct contravention to the terms of the Settlement Agreement and the administration of the BAP program and Claims Award Process.

## BACKGROUND

The NFL Concussion Class Action Settlement Agreement, as amended on February 13, 2015 at ECF #6481, became final and effective on February 13, 2015. Pursuant to the terms of the Settlement Agreement, this Honorable Court retains continuing jurisdiction and authority to handle any disputes relating to interpretation, implementation, administration, and enforcement of the Settlement Agreement through Motions. (*See* ECF #6481 at Section XXVII). Subsequently, earlier this year on March 4, 2022, this Honorable Court approved modifications to the Settlement Agreement as it relates to race related issues at ECF #11648.

Prior to approving the modifications to the Settlement Agreement, this Honorable Court filed an Important Notice on January 3, 2022 allowing for any comments, questions, or concerns regarding the "Race Norming" resolution. On January 21, 2022, the undersigned filed a Joinder with concerns about the Motion to Modify the Settlement Agreement at ECF #11601. The parties failed to address these issues and dismissed the undersigned's real concerns regarding the new terms agreed upon by the "Race Norming Parties." Thereafter, on February 16, 2022, the undersigned filed a Request for Clarification regarding his concerns involving the Race Norming modification to the settlement at ECF #11631. Despite raising several significant and valid concerns, these issues were left unanswered by the Court.

Having not addressed the concerns of the undersigned, certain of these exact issues have now become ripe for the instant claimants to establish a continuing injury to certain former Black players under the Settlement Agreement. The class members at issue in this instant matter prove

that these concerns are real and must be squarely addressed by this Honorable Court to accomplish the purpose of the "Race Norming" intervention: making the Black players whole.

Moreover, the Settlement Agreement has frequently been described as a fiercely fought arms-length agreement between the parties providing for monetary awards for a qualifying diagnosis. One aspect of the Settlement that was promised to the players is the ability to receive a free Baseline Assessment Program (BAP) evaluation. Under the BAP, for those diagnosed with an unequivocal qualifying injury, the player must receive a monetary award under the terms of the Settlement Agreement. However, despite being created to fairly evaluate and diagnose the former players, the BAP is being administered contrary to the Settlement Agreement. Confirmed unequivocal[1] diagnoses through the BAP are being denied, thus prompting the instant Motion and Request for Relief.

## BAP DIAGNOSES

The entirety of the BAP process is strictly controlled by the requirements found in the NFL Concussion Settlement Agreement. The BAP was designed to provide players with a list of qualified and approved providers that will evaluate the player and make a diagnosis. In the event that a player receives a diagnosis of Level 1.5 and Level 2 Neurocognitive Impairment made by Qualified BAP Providers using the diagnostic criteria in Exhibits 1 and 2 of the Settlement Agreement, the player can submit a settlement package for payment. (*See* FAQ #102).

It is important to note that through the BAP, only qualified neuropsychologists and neurologists can perform BAP exams. To qualify, these experts must be board-certified in their specialty and meet other requirements as determined by the Parties during settlement negotiations

---

[1] In the instant Motion, the term "unequivocal diagnosis" refers to situations in which both BAP doctors are in agreement regarding the claimant's diagnosis.

and finalization. Every Qualified BAP Provider was evaluated and selected by the independent, Court-appointed BAP Administrator and approved by Co-Lead Class Counsel and the NFL Parties. (*Id.*) Exhibit 1 sets forth the diagnostic criteria that Qualified BAP Providers must follow when determining if a Retired NFL Football Player has Level 1, Level 1.5, or Level 2 Neurocognitive Impairment. (*Id.*). For avoidance of any doubt, these are hand-picked BAP experts who **must follow criteria precisely as created under the Settlement Agreement**.

The BAP evaluation of players is a critical and strict part of the Settlement Agreement. No player gets to challenge a BAP diagnosis that does not qualify for a monetary award. As a result, if a claimant is diagnosed with either Level 1.5 or Level 2 Neurocognitive Impairment, the BAP Administrator will provide the medical records from the player's examination both to the player (or the player's attorney) and the Claims Administrator to submit a Claim Form to the Claims Administrator for a Monetary Award determination. (*See* FAQ #67).

Further proving that the BAP does not allow for a change in diagnosis, and as stated in the Settlement Agreement, **only when there are conflicting BAP diagnoses should an AAP be consulted in the context of a BAP diagnosis**. (*See* Settlement Agreement at Section 9.8(a)(v)- (emphasis added)). In the following examples related to the named claimants which prompted the instant Motion and Brief, sending a BAP diagnosis claim to an AAP member acts as a modification to the Settlement Agreement and defies the purpose of the BAP. This conduct is not permitted under the Settlement Agreement and further acts as a violation of the player's rights as an NFL claimant, his contractual rights, and his fundamental right to due process. As outlined by Special Master David Hoffman in his June 24, 2020 Opinion related to another claimant, "[because the doctors conflicted] the results of the BAP assessments were sent to the AAP for review and determination of the appropriate diagnosis." (*See* June 24, 2020 Special Master Opinion). Special

Master Hoffman cites in a footnote the authority in the Settlement Agreement which provides for AAP review of conflicting BAP diagnosis. Nowhere in the Settlement Agreement, nor in Section 5.13, are the Claims Administrator or Special Masters granted authority or permitted to send unequivocal BAP diagnoses to an AAP, deny an unequivocal claim, or change the diagnosis of an unequivocal award.

To highlight and simplify the outrageousness of the conduct in this case, compare the BAP process to a BINGO game. A player obtains a card with numbers which are selected by the caller. Once the player obtains a BINGO based on the numbers called, the player wins. It is not up to the BINGO caller, after verification of the card and numbers called, to say that the individual who matched the numbers should be denied the win. This scenario would never occur because it was never contemplated by the rules of BINGO, much like this situation was never contemplated as part of the NFL Concussion Settlement Agreement.

By way of background, a simple description of the claims process is necessary. The Claims Administrator first reviews all Claim Packages to make sure they have the necessary information and documents for evaluation. If the Claim Package is complete, or once it is made complete after notices from the Claims Administrator regarding what is missing or required to complete the package, the Claims Administrator reviews the package to determine if there is a Qualifying Diagnosis made by a physician with the proper credentials to determine whether the claimant is eligible for a Monetary Award. (*See* FAQ #130).

The Settlement provides class members who are diagnosed with either Level 1.5 or Level 2.0 Neurocognitive Impairment to submit a Claim Form to the Claims Administrator for a Monetary Award determination. Class members are notified of their diagnosis and receive instructions on the steps to claim these benefits. (*See* FAQ #67).

When a player submits an unequivocal BAP diagnosis, the Settlement Agreement provides that the player must be paid pursuant to the terms of the NFL Concussion Settlement Agreement. Any action beyond processing this unequivocal claim, which may include outright denial, modifying a diagnosis, or sending the claim to the AAP, stands in direct contradiction to the terms of the Agreement and the authority provided to the Claims Administrator. The repetition of this conduct further acts as a modification of the Settlement Agreement, as does changing a confirmed BAP diagnosis by the medical providers who execute diagnosing physician certifications.

It is expected that the response of the National Football League and their lawyers will be that these actions are justified under the Settlement Agreement, which provides the Claims Administrator with broad authority to handle claim packages pursuant to Section 8.6(b) of the Settlement Agreement. This provision of the Settlement Agreement, in practical application of the authority granted to the Claims Administrator and the manner by which they are applying this authority, acts as a true modification of the Settlement Agreement when the Claims Administrator is invalidating unequivocal claims from BAP Certified Physicians. Moreover, it is expected that the NFL will cite Special Master Hoffman's April 25, 2022 Decision as further justification of its authority to engage in such conduct. However, this decision actually supports the instant Motion as this Decision specifically acknowledges that, while there is a limited decision-making authority of the AAP, for example, in review of Pre-Effective Date Diagnoses, the AAP serves as an advisory board, which "should defer to the articulated medical judgments of examining clinicians and physicians.[2]" (*Id.* at page 8). Further, the claim at issue in the above-cited opinion by Special

---

[2] It begs reiterating that the physicians providing these unequivocal diagnoses through the BAP program are physicians selected and approved by the Parties. Thus, if the issue lies in the determinations reached by the physicians, or the manner by which the physicians are conducting the tests required under the provisions of the NFL Settlement Agreement, the issue lies squarely with the physician, the BAP Administrator, the Claims Administrator, and NFL. It is not the fault of the player that NFL is unhappy with the results of the diagnosis provided by their pre-approved and pre-qualified BAP physicians.

Master Hoffman deals with whether a prior stroke suffered by a player should reduce his monetary award, which is irrelevant to the unequivocal BAP diagnoses at issue.

The instant Motion concerns BAP certified diagnoses by both providers who cleared the strict guidelines of Epiq (i.e. The BAP Administrator) with valid and unequivocal diagnoses. (*See* BAP Administrator Status Report No. 15 at ¶ 18 – 19, ECF #11812). Now that these diagnoses are being changed after AAP review, the players appear to be penalized for issues with the doctors and the conclusions reached by these pre-selected and pre-qualified physicians. If the problem lies with the BAP approved doctors and the results derived from the testing required under the NFL Concussion Settlement, then that issue must be addressed through a modification of the Settlement Agreement through renegotiation of testing and results requirements, disqualifying BAP approved physicians, and/or providing new BAP testing for the players receiving tests from these physicians. The claimants in this matter, and other claimants who have been denied benefits based on these broad sweeping punitive actions, are suffering due to the failure to address these issues, if any truly exist, through modification of the Settlement Agreement, not through piecemeal denials and individual opinions authored by the Special Masters.

Sending unequivocal BAP diagnoses under the BAP to AAP neuters the BAP and calls into question the programs very existence. This Honorable Court must address and rectify through either Order or Modification of the Settlement Agreement these BAP issues. The relief requested in the instant Motion should act to curb this behavior and save the true function of the BAP in the NFL Concussion Settlement Program.

*Example #1 - Lynn James*

Despite the rules in place related to the BAP and Claims Processing, and after many years elapsed for the within claimant without any explanation, the Claims Administrator *sua sponte* sought guidance on the medical determination of the BAP clinicians for the specific purpose of analyzing the BAP findings to overturn the strict and agreed upon diagnosis made under the BAP guidelines for Mr. Lynn James. In so doing, the Claims Administrator improperly relied on language of Sections 8.6(b) and 9.1 of the Settlement Agreement dealing with audits and investigations of the player (not of physicians), neither of which has ever been initiated during the pendency of the Claim submission.

In so doing, the Claims Administrator is artificially adding another level of denial to this BAP claim for Mr. James (and other claimants experiencing similar treatment) which was not contemplated, does not exist pursuant to the terms of the Settlement Agreement, and is directly contradictory to the terms of the Settlement Agreement, specifically Section 9.8(a)(v), and duties of the Claims Administrator. The Claims Administrator's job is to act as the gatekeeper to payment under the NFL Concussion Settlement once the necessary prerequisites to claims are met. As stated by Mr. Orran Brown, Head of the Claims Administrators, the Claims Administrators are "fiduciaries to the claim process". (*see* Youtube video "NFL Yes Man Orran Brown Claims He wants to Help", accessible at https://www.youtube.com/watch?v=yhybAbpCiqM).

In this case, Mr. James timely and properly completed each step of the claim's submission process. Aside from the additional time added to the process and cost the player incurs through the appeals process, the idea that this BAP qualified player can still be denied his claim is absolutely not something that was ever contemplated by the NFL Concussion Settlement. If these actions were even contemplated as part of the BAP at the time of the NFL Concussion Settlement, Class

Counsel and the Steering Committee would have objected and it would have been brought to the attention of this Honorable Court that permitting denials of claims with unequivocal BAP diagnoses invalidates the BAP process and provides the NFL and the Claims Administrator with another mechanism to deny former players the benefits to which they are rightfully entitled.

The only potentially justifiable reasons for denying Mr. James' unequivocal diagnosis stems either from issues with the testing required under the terms of the Settlement Agreement[3], or specific issues with the BAP physician(s) who provided the unequivocal diagnosis. Both of these potential justifications cannot be addressed in the denial and appeals process of a claim that cleared the BAP process as intended and written in the Settlement Agreement. These potential issues must be properly addressed through modification of the Settlement Agreement (testing required under the Settlement Agreement) or disqualification of the physician(s) (requiring review and procedural mechanisms to remove the physicians). Mr. James, as an individual claimant, cannot be forced to suffer the consequences of issues over which he has no control, and which cannot be properly addressed through the appeals process when his condition and claim clear through the BAP Administrator. (*See* BAP Administrator Status Report No. 15 at ¶ 19, ECF #11812).

At a minimum, Mr. James's monetary award must be paid immediately. Not only has Mr. James' interests been affected by the actions of the Claims Administrator, but the interests of other players and future players are in jeopardy based on the actions of the Claims Administrator. This is evident from the following published opinions appearing on the NFL Concussion Settlement's

---

[3] Any modification to the criteria or testing required to obtain a diagnosis and provide a claimant an award would require modification of the Settlement Agreement as this would change materials terms of the agreement and requirements for players to qualify for monetary awards.

website. (*See by example Special Masters published Decisions of April 1, 2022 and April 25, 2022 and confirmed by the Claims Administrator Report at p. 9, ECF #11811).*

Over three years have elapsed before the BAP Administrator finalized the reports and Diagnosing Physician Certification on Mr. James' testing. Inexplicably, the Claims Administrator, through consultation with the AAP, took an additional two years from the filing of the claim package to submit this erroneous denial notice. The Settlement Agreement and FAQs specifically state the Claims Administrator is to review a claim package within 45 days, barring any issues, and thereafter the AAP is to review a claim within 45 days. (*See* FAQ #148 and Settlement Agreement at Section 6.4(i)). The decision to artificially add another layer of denial and appeals to a valid BAP claim cannot be accepted by this Honorable Court or the parties in general, nor should this conduct be ratified by the Settlement Administrator.

Accordingly, for all of the aforementioned reasons, Mr. James's monetary award should have been immediately granted. Instead, it languishes in the purgatory that is the appeals process.

### *Example #2 - Troy Davis*

Mr. Troy Davis presents yet another example of the same flagrant conduct occurring under the BAP. Despite the rules in place related to the claims process, and after many years elapsed for the within claimant without explanation, the Claims Administrator *sua sponte* sought guidance on the medical determination of the BAP clinicians for the specific purpose of analyzing the findings to overturn the strict diagnosis made under the BAP guidelines for Mr. Davis. In so doing, the Claims Administrator improperly relied on language of Sections 8.6(b) and 9.1 of the Settlement Agreement dealing with audits and investigations of players (not of BAP physicians), neither of which has ever been initiated during the pendency of the Claim submission.

Over two years elapsed before the BAP Administrator finalized the reports and Diagnosing Physician Certification on Mr. Davis' testing. Inexplicably, the Claims Administrator through consultation with the AAP, took an additional two years from the filing of the claim package to submit this erroneous denial notice. The Settlement Agreement and FAQs specifically state the Claims Administrator is to review a claim package within 45 days, barring any issues, and thereafter the AAP is to review a claim within 45 days. (*See* FAQ #148 and Settlement Agreement at Section 6.4(i)).

Aside from the substantial errors made by the Claims Administrator related to the denial of Mr. Davis's claim, nearly five years have lapsed from the date Mr. Davis first underwent his BAP evaluations. He has now lost real money to his claim. (See ECF #11601 & 11631). Nonetheless, Mr. Davis's claim is now on appeal rather than having received his appropriate monetary award.[4]

## **RACIAL INEQUITIES**

One of the reasons a modification to the 2015 Settlement Agreement was approved by this Court after mediation is that Black players were not evaluated equally to white players under the testing criteria. As a result, this Honorable Court entered an order on March 4, 2022 to modify the terms of the Settlement Agreement in an effort to make the Black players whole at ECF #11648. Despite the herculean efforts of intervening counsel to bring this inequity to light and address these

---

[4] In an effort to protect the privacy rights of these players, the undersigned is not going to quibble about the facts of the testing. These claims cleared the BAP Administrator's strict criteria of review for approving a monetary award diagnosis by the BAP providers. Rather, it is the procedure and the rules of the BAP that are at issue and what this Honorable Court must address.

concerns related to Black players, the Black players continue to suffer violations of their Civil and Due Process rights and are not in fact made whole under the modification.

The entire purpose of the "Race Norming" intervention on behalf of Black players was to place the Black players in the same position as white claimants and to make these individuals whole. Prior to this intervention Black players' neurocognitive scores were being "race-normed" by the physicians. This had an enormously disparate impact on black claimants related to Level 1.5 and Level 2 neurocognitive disorders. (*See* EFC 11169, p. 23 of 25). This race-norming practice precluded a number of Black claimants from qualifying for settlement payments to which they were entitled.

Following the "agreement" reached between the NFL and "Race Norming" claimants, Black players were eligible for rescoring or retesting without race norming to determine qualification for payment. While this concept in theory eliminates the unfair treatment of Black claimants under the NFL Concussion Settlement Agreement, it still does not make the claimants whole based on the delay in scoring and the age of the claimants at the time of the rescoring. Furthermore, this new "agreement" does not account for other factors including the possibility of changes in the health or death in the interim period of time. The below are real examples of the inequity Black players continue to face as part of the NFL Concussion Settlement.

*Example #1 - Newton Williams*

Mr. Newton Williams commenced his BAP testing beginning in 2019. His results were recently rescored in 2022 as part of the race norming settlement and modifications to the Settlement Agreement. The rescoring resulted in a confirmation of a Level 1.0 diagnosis based on his 2019 testing. Thus, even though Mr. Williams has a Level 1.0 diagnosis dating back to the

dates of his original 2019 BAP evaluations, Mr. Williams will never be made whole because he has been denied approximately four (4) years of BAP related benefits and treatment based on his diagnosis.

When previously asked for comment, the undersigned argued that tolling was a critical feature that was not accounted for in the race norming agreement. For instance, in this specific situation, Mr. Williams was unaware of a diagnosis and treatment potential and the need for more regular and frequent monitoring. Given the time that has elapsed over the past four (4) years, along with the lack of benefits provided throughout that time for Mr. Williams, he will need to re-test sometime in the future to determine whether he presently has a qualifying monetary award diagnosis. Mr. Williams could have received this monetary award qualifying diagnosis as part of the BAP at some point between 2019 and the present, meaning that Mr. Williams has lost the opportunity to receive monetary benefits at a younger age. This absolutely impacts the amount of his award he will recover as the payment grid pays less to players as they age. Mr. Williams age (and time when he could have or should have been properly diagnosed) will not be tolled as part of the new testing and Mr. Williams can never be made whole for the injustice perpetrated against him and other claimants based on the color of his skin.

As stated previously when addressing concerns with the modification, the undersigned raised the issue of tolling the ages of the players. Mr. Williams' situation is the perfect example of how the settlement failed him. Mr. Williams must now retest again to receive a monetary award. However, for four (4) years he was told he did not have any issues in that he was provided a "Level 0" or no diagnosis. Mr. Williams has also been precluded from seeking necessary medical attention and treatment for his condition after previously being told that he had no diagnosis. It is impossible to make Mr. Williams "whole" at this point given the time which has elapsed.

Accordingly, this Honorable Court must address how to make players like Mr. Williams whole moving forward in the NFL Concussion Settlement program.

*Example #2 - Marvin Owens*

Marvin Owens previously underwent BAP testing in 2019. As part of the Race Norming Settlement and modifications to the Settlement agreement, Mr. Owens's results were rescored per the modifications to the settlement. A notice was uploaded to Mr. Owens's portal on April 25, 2022 notifying him that he qualified for the expanded BAP evaluations. The undersigned requested scheduling his BAP evaluations immediately. Unfortunately, Mr. Owens passed away on July 12, 2022.

Under these circumstances, as highlighted above in the example with Newton Williams, the modifications can never make Mr. Owens whole for the discrimination that he experienced and the loss of benefits he endured for the past four (4) years.

*Example #3—Booker T. Brown*

Like Mr. Owens, Booker T. Brown previously underwent BAP testing. Mr. Brown's BAP evaluations were in 2017. As part of the Race Norming Settlement and modifications to the Settlement Agreement, Mr. Brown's results were rescored per the modifications to the settlement. A notice was uploaded to Mr. Brown's portal on April 25, 2022 notifying him that he qualified for the expanded BAP evaluations. Unfortunately, Mr. Brown passed away on July 18, 2022.

Under these circumstances, as highlighted above in the example with Newton Williams and Marvin Owens, the modifications can never make Mr. Brown whole for the discrimination that he experienced and the loss of benefits he endured for the past six (6) years.

**RELIEF**

The undersigned seeks the following from this Honorable Court to remedy the injustices perpetrated against the named claimants, along with other claimants who have suffered similar injuries, and to prevent further injury to claimants in the future through the following relief:

1. Declaring that unequivocal confirmed BAP diagnoses for monetary award be paid;
2. Issue an Order enjoining unequivocal confirmed BAP diagnoses being sent for review with the AAP;
3. Issue an Order requiring the Claims Administrator and Special Masters to defer to the articulated medical judgments of BAP physicians in the context of an unequivocal diagnosis;
4. Order race-normed players' age be tolled from the time they first tested under the Program so they may be placed in the same position that they would have been in at the time if race-norming had not been used;
5. Order that race-normed players who cannot be tolled and who experienced Civil Rights and Due Process violations be sent back to mediation to ensure that they be made whole; and,
6. Appointing the undersigned as Special Class Counsel to oversee the above-referenced relief and authorizing an appropriate award of attorney's fees and expenses for these efforts.

**CONCLUSION**

All of the aforementioned conduct in the BAP, along with the continued inequities Black claimants face, must be addressed by this Honorable Court.

The specific relief requested to the Race Norming issue is a tolling of age requirement for rescored and retested Black claimants. Otherwise, all of the impacted players will never be made whole under the NFL Concussion Settlement Agreement and its subsequent modification.

As it relates to the conduct of the Special Master and Claim's Administrator, the undersigned is amenable to working with this Honorable Court to address this conduct which acts as a modification of the Settlement Agreement. This includes any punitive action necessary to ensure that the "gatekeeps of the settlement funds" do not act with such blatant disregard for the rules and spirit of the Agreement as it relates to the BAP.

Dated:  8/16/2022                                    Respectfully submitted,


                                                     */s/ Jason E. Luckasevic*
                                                     _____

                                                     Jason E. Luckasevic
                                                     Goldberg, Persky & White, P.C.
                                                     11 Stanwix Street
                                                     18th Floor
                                                     Pittsburgh, PA 15222
                                                     (412) 471-3980- phone
                                                     (412) 471-8308- fax

**CERTIFICATE OF SERVICE**

I hereby certify that on this August 16, 2022, I caused the foregoing BRIEF IN SUPPORT OF MOTION FOR RELIEF UNDER ARTICLE XXVII, to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Eastern District of Pennsylvania, on all parties registered for CM/ECF in the above-captioned matter.

        By:    */s/ Jason E. Luckasevic*
                 Jason E. Luckasevic