# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB <br><br> MDL No. 2323 <br><br> **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, <br><br>  Plaintiffs, <br><br> v. <br><br> National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., <br><br>  Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

### CLASS COUNSEL'S OPPOSITION TO MOTION FOR RELIEF UNDER ARTICLE XXVII OF THE SETTLEMENT AGREEMENT

Class Counsel respectfully submits this opposition to the motion of Class members Troy Davis, Lynn James, Marvin Owens, Booker T. Brown and Newton Williams (collectively, "Movants"), seeking relief under Article XXVII of the Settlement Agreement (ECF No. 11813) ("Motion").

**PRELIMINARY STATEMENT**

Movants raise three issues for which relief is sought. One issue is unrelated to the Norming Agreement, while two issues relate to the Norming Agreement.[1] Unrelated to the Norming Agreement, Movants argue that, during the claims review process, the Claims Administrator has no authority to request that the Appeals Advisory Panel ("AAP") review Monetary Award claims that are based on diagnoses rendered by Baseline Assessment Program ("BAP") Providers following BAP examinations. Accordingly, Movants seek an order prohibiting the Claims Administrator from seeking AAP review of BAP diagnoses.

With respect to the Norming Agreement, Movants seek an order indefinitely "tolling" the age of those Retired NFL Football Players ("players" or "retired players") whose neuropsychological tests were subject to race-norming. Lastly, they argue that those retired players who qualified for expanded BAP examinations but are unable to undergo such examinations (due to death or health reasons) should have a mediator determine appropriate relief for them.

As discussed below, Movants' arguments are without merit because Movants either misapprehend the underlying Settlement Agreement and administrative precedent interpreting and applying it or overlook provisions of the Norming Agreement. Accordingly, the Court should deny the Motion.

---

[1] "Norming Agreement" refers to the agreement between the NFL Parties ("NFL"), Class Counsel, and Intervenors Kevin Henry and Najeh Davenport to remove race norms and demographic estimates based on race from the NFL Concussion Settlement Program (ECF Nos. 11502, 11567-1), which the Court approved on March 4, 2022 (ECF No. 11648).

## ARGUMENT

### A. AAP Review of BAP Claims Is Permitted

Movants argue that the Claims Administrator does not have the authority to seek AAP review of monetary award claims based on diagnoses rendered by BAP providers, see Brief in Support of Motion for Relief under Article XXVII of the Settlement Agreement ("Brief in Support") (ECF No. 11831-1) at 5.[2] What they fail to recognize, however, is that the Settlement Agreement (ECF No. 6401-1) explicitly confers upon the Claims Administrator the discretion to seek AAP review of any monetary award claim to ensure that the Settlement's diagnostic criteria for that particular Qualifying Diagnosis have been satisfied. *See* Sections 8.6(b) and 9.1 of the Settlement Agreement, ECF No. 6401-1 at 47. In addition to the Settlement Agreement providing the Claims Administrator with this discretion, the Special Masters have recognized, through their administrative appellate decisions, the importance of the Claims Administrator being able to request assistance from the AAP "in making particular, nuanced medical determinations." Special Masters' Apr. 25, 2022 Decision at 8 (available on the Settlement Program's website at https://www.nflconcussionsettlement.com/Docs/stroke_sm_2.pdf). Accordingly, based on the express language of the Settlement Agreement, along with the Special Masters' decisions interpreting the Settlement Agreement, there can be no genuine dispute that the Claims Administrator has the discretion to seek AAP review of Monetary Award claims, including those claims based on BAP diagnoses.

Although the Claims Administrator has the authority to seek AAP review of Monetary Award claims (whether the claim is based on a diagnosis from a Qualified MAF Physician or from a BAP provider), Class Counsel believes that the Claims Administrator should seek AAP review

---

[2] Movants' brief is not paginated. All page references thereto are to the ECF pagination.

of certain claims only where, as noted by the Specials Masters, the Claims Administrator is being called upon to make a "particular, nuanced medical determination." The Settling Parties did not intend for there to be AAP review of many, if not most, post-Effective Date Monetary Award claims. Had the Settling Parties intended for mandatory AAP review of post-Effective Date claims, they would have included such a requirement in the Settlement Agreement, which is exactly what is required with respect to pre-Effective Date claims. *See* Section 6.4(a) of the Settlement Agreement, ECF No. 6401-1 at 37. No such requirement exists for post-Effective Date claims that rely on diagnoses from Qualified MAF Physicians or BAP Providers.

### B.  Judicially Imposed "Tolling" of Players' Age Is Unnecessary

As noted above, Movants argue that the ages of those players whose neuropsychological tests were initially subjected to race-norming should have their age "tolled" as of the date of their initial testing so as to avoid players receiving lower Monetary Awards based on their advancing age. Brief in Support at 12-14. Apparently, Movants do not realize that, under the "automatic retrospective scoring" benefit of the Norming Agreement (Section 2.5, ECF No. 11502 at 8-11), if the player qualifies for a Monetary Award as a result of the rescoring, the date of diagnosis is the date of the initial testing. Therefore, the player's age, for purposes of determining the amount of his monetary award, is his age at the time he was first tested. Therefore, the size of the retired player's Monetary Award is unaffected by his increased age. In fact, there are retired players who have already received Monetary Awards following the automatic rescoring of their claims under Section 2.5 and the amounts of their awards were determined based on their age at the time of their initial testing rather than their current age.

Even if the "Automatic Retrospective Rescoring" section of the Norming Agreement did not provide for the use of the original testing date as the date of diagnosis in those cases where the

4

rescoring resulted in a Qualifying Diagnosis (it does), FAQ 101 (available on the Settlement Program's website at https://www.nflconcussionsettlement.com/FAQDetails.aspx?q=244#244) recognizes that "there may be situations where the diagnosing physician can pinpoint an earlier date [of diagnosis] that is based on sound clinical judgment and best medical practices." Consequently, diagnosing physicians have the leeway to determine the date of diagnosis based upon their sound, clinical judgment. That applies to players who were subjected to race-norming as well as players who were not. Therefore, the Court should reject Movants' request to have players' ages "tolled" by court order as unnecessary.

Although not raised by the Movants, it should be noted that the Norming Agreement expressly addresses the date of diagnosis issue with respect to players who receive expanded BAP examinations. Specifically, under Section 2.6(e) of the Norming Agreement, a "diagnosis arising from a new BAP examination occurring pursuant to this Section 2.6 may relate back to the date of an earlier exam that, upon application of the New Method, sufficiently demonstrates that the Retired Player previously met all of the criteria for the new diagnosis[.]" ECF No. 11502 at 12. Therefore, the date of diagnosis is left to the discretion of the diagnosing physician.

### C. Players Unable to Attend Expanded BAP Examinations Under Section 2.6 of the Norming Agreement Already Have Recourse under That Very Agreement

Class Counsel is mindful that Movants Owens and Brown are deceased and, therefore, cannot take advantage of the expanded BAP examination benefit for which both qualified under the Norming Agreement. When the Norming Agreement was being crafted, however, Class Counsel recognized that there would be retired players unable to attend a new examination, either because of death or their deteriorating health. Therefore, Section 2.6(f) was included in the Norming Agreement. That section specifically states that "[i]f a Retired Player cannot travel for

a new BAP examination . . . subject to a 'good cause' standard, or if a Retired Player has died and cannot now be retested, a Special AAP Panel will determine if the Retired Player's rescored test results and Settlement Claim file meets the criteria for a new or more severe Qualifying Diagnosis." ECF No. 11502 at 12. Movants Owens' and Brown's respective Representative Claimants can, and should, avail themselves of the benefit provided by Section 2.6(f).

Finally, the Court should also deny Movants' request (Brief in Support at 15) that the claims of players, such as Movants Owens and Brown, who qualified for expanded BAP examinations but are unable to undergo such examinations be sent to mediation to determine their appropriate relief, and Movants' related request that their counsel be appointed Special Class Counsel to oversee such mediation. Mediation is unnecessary given that, as noted above, an avenue of recourse is available to players such as Movants Owens and Brown under Section 2.6(f) of the Norming Agreement. Because mediation is unnecessary, Movants' request for appointment of a "Special Class Counsel" should be denied as moot. At any rate, Class Counsel has been, and will continue to be, in the best position to protect players' rights under the Settlement and, as always, stands ready to assist individual class members or their counsel.

**CONCLUSION**

For the foregoing reasons, the Court should deny the Motion.

Dated:  September 29, 2022

                                              Respectfully submitted,

                                              */s/ Christopher A. Seeger*
                                              Christopher A. Seeger
                                              SEEGER WEISS LLP
                                              55 Challenger Road, 6th Floor
                                              Ridgefield Park, NJ  07660
                                              Telephone:  (212) 584-0700
                                              cseeger@seegerweiss.com

                                              ***CLASS COUNSEL***