# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| Troy Davis, Lynn James, Marvin Owens (Deceased), Booker T. Brown (Deceased) and Newton Williams, on behalf of themselves and others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br>                    Defendants. | |
| THIS DOCUMENT RELATES TO:<br>ALL BAP and BLACK CLIENTS OF GPW | |

## REPLY BRIEF IN SUPPORT OF MOVANT'S MOTION FOR RELIEF PURSUANT TO ARTICLE XXVII OF THE SETTLEMENT AGREEMENT

### INTRODUCTION

Plaintiffs request this Honorable Court exercise its power pursuant to the terms of the NFL Concussion Settlement Agreement to strictly enforce the terms of the Settlement Agreement. Neither the NFL nor Class Counsel has cited any authority in the Settlement Agreement to send unequivocal BAP diagnoses to the AAP for review. Second, the NFL and Class Counsel failed to address the basis of Movants Motion regarding the (Race) Norming Agreement, specifically how

class members disparately impacted by race-norming are made whole. For the reasons that follow, the Movants relief requested in the initial motion (ECF# 11813) should be granted.

## BAP DIAGNOSES

As an initial matter, to fully appreciate the reason for Claimants' bringing the within Motion and to properly analyze the within reply to the arguments raised by Class Counsel and the NFL, it is necessary to again reiterate that the position of the Claimants related to the issue involving the denial of BAP claims deals with situations when there are **unequivocal** BAP diagnoses for Level 1.5 and Level 2.0 Neurocognitive Disorders. (emphasis added). As explained herein, the responding parties in general, and the NFL in large part, conflate the overbroad language of the Settlement Agreement related to AAP review of all claims, despite the fact that this conduct is not authorized by the terms of the Settlement Agreement.

Rather than citing to any authority in the Settlement Agreement which permits unequivocal BAP diagnoses to be sent for review and authorizes a change of diagnoses by the AAP, the NFL spends eight pages stating they have: (1) clear authority on their side (but fail to cite it from the Settlement Agreement), (2) allege that the arguments of Movants are frivolous (as they believe all claims are despite the overwhelming evidence that they caused $1 billion worth of injuries to former players); and, (3) that the lawyers do not understand the claims process (even though we summarized the language straight from the Settlement Agreement and FAQ's precisely in the original motion). Despite the length of its response, the reality is that the Movants arguments are correct. There is no authority that permits anyone to change or modify an unequivocal diagnosis by BAP providers under the Settlement Agreement. In fact, on page 5 of their Reply, the NFL cites Section 5.13 of the Settlement Agreement which discusses the procedures associated with claims **"if the [BAP] providers DO NOT agree on a diagnosis.** (*See* NFL Reply Brief, p. 5 (ECF

# 11849) citing Settlement Agreement § 5.13 (emphasis added)). This Motion presents yet another moment in time where the parties and the court must recognize this fundamental error of the implementation of the Settlement Agreement through the smoke and mirrors of the AAP, Special Masters, and cherrypicked broad language in the Settlement Agreement, or accept that the 3rd Circuit will be forced to analyze the strict language of the Agreement related to the instant claims and future unequivocal BAP claims.

Strictly interpreted, the BAP does not allow for a change in diagnosis, and as stated in the Settlement Agreement, **only when there are conflicting BAP diagnoses should an AAP be consulted in the context of a BAP diagnosis.** (*See* Settlement Agreement at Section 9.8(a)(v)-(emphasis added)). In attempting to explain away this language, the NFL states that this section involves where money is paid to the AAP/AAPC by the BAP fund. Indeed, the language specifically states "that compensation of an Appeals Advisory Panel member or Appeals Advisory Panel Consultant will be paid out of the BAP fund for reviewing and advising the Court whether a Retired NFL Football player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none, **in cases where there are conflicting diagnoses by Qualified BAP Providers.**" (emphasis added). If the language stated otherwise relating to reviewing BAP claims, then this Motion would never have been filed. However, it is precisely stated within the Settlement Agreement the role of the AAP/AAPC to only review conflicting diagnoses of BAP claims. The instant claims involve unequivocal BAP diagnoses, which are distinct from the conflicting diagnoses referenced in the NFL's Reply and Settlement Agreement language cited therein.

Since they cannot defeat this language, the National Football League and their lawyers and Class Counsel cite the integrity of the claims process as the reason such broad authority is granted

to the Claims Administrator to review "claim packages" pursuant to Section 8.6(b) of the Settlement Agreement. The NFL also cites Special Master Hoffman's April 25, 2022 Decision as further justification of its authority to engage in such conduct.  However, as stated previously, this decision actually supports the instant Motion as this Special Master Decision specifically acknowledges that, while there is a limited decision-making authority of the AAP, for example, in review of Pre-Effective Date Diagnoses, the AAP serves as an **advisory board, which "should defer to the articulated medical judgments of examining clinicians and physicians."** (*Id.* at page 8) (emphasis added).

The practicality of what has happened to the instant Claimants is that the NFL and Class Counsel have convinced the Special Masters that such actions of reviewing unequivocal diagnoses are acceptable as there are "particular, nuanced medical determinations" that require AAP review. (Id.).  Class Counsel in their response take this issue a step further and actually acknowledges the Movants are correct.  Class Counsel states that "had the settling parties intended for mandatory AAP review of post-effective date claims, they would have included such a requirement in the Settlement Agreement." (ECF #11847 at page 4).  As Class Counsel states, no such requirement exists in Section 6.4(a) of the Settlement Agreement concerning the roles and duties of the AAP.

The practicality of this conduct by the NFL, Claims Administrator, and AAP, combined with the overly broad interpretation of the powers granted to the Claims Administrator is that the Claims Administrator has sent 57 claims out of 349 BAP claims to the AAP for review. Ultimately, 28 of those unequivocal BAP claims have resulted in changed diagnoses.  (ECF #11811 at page 9).  Such actions result in a disturbance in the ability of the former player to collect awards to which they are rightfully entitled pursuant to the NFL Settlement Agreement. This unjustified conduct acts as a modification of the terms of the Settlement Agreement which requires

negotiations and judicial intervention, not *sua sponte* actions by the Claims Administrator, NFL, and Special Masters simply because the NFL continues to cry foul over having to pay any former players for head injuries.  Importantly, the BAP Administrator has already asserted that it reviews the accuracy of BAP reports in relation to the Claims Administrator.  (ECF #11812 at paragraph 18).

Ultimately, to continue to justify the true underlying reasons for the course of conduct in this matter, the NFL reveals in its Reply that this issue is not about what exists in the Settlement Agreement, but rather, as suspected, deals squarely with the fact that the NFL does not like the BAP doctor who performed his testing of the players.  They cite that BAP provider Dr. Golden has failed multiple times to appropriately apply validity standards and therefore is no longer approved to perform evaluations for the Settlement Program.  However, neither of the parties in their Responses to the Motion acknowledge to this Court that the BAP Administrator first approved the reports of the BAP providers and specifically reviewed for completeness and accuracy the functional impairments and validity testing of the neuropsychologists.  (ECF #11812 at paragraph 19(c)).  It is important to again reiterate that these are the prerequisites to submitting and receiving compensation for a valid claim. Claimants have satisfied these prerequisites and thus should be paid for their claims.

Since, as predicted in Movant's Original Motion, the problem lies with the BAP approved doctors and the results derived from the testing required under the NFL Concussion Settlement, the issue must be addressed through a modification of the Settlement Agreement through renegotiation of testing and results requirements, disqualifying BAP approved physicians, and/or providing new BAP testing for the players receiving tests from these physicians. The claimants in this matter, and other claimants who have been denied benefits based on these overbroad sweeping

punitive actions, are suffering unnecessarily and unjustifiably due to the failure to address these issues, if any truly exist, through modification of the Settlement Agreement. It is not right, fair, or just to modify the Settlement Agreement through piecemeal denials and individual opinions.

Sending unequivocal BAP diagnoses under the BAP to AAP neuters the BAP and calls into question the programs very existence. This Honorable Court must address and rectify this serious issue through either Order or Modification of the Settlement Agreement to address these BAP issues to protect innocent claimants and former players from becoming the victims of the NFL's dislike of its approved physicians. The relief requested in the instant Motion should act to curb this behavior and save the true function of the BAP in the NFL Concussion Settlement Program moving forward.

## RACIAL INEQUITIES

The second part of Movants Motion sought clarification of how Black players will be made whole as part of the "Race-Norming" Agreement.  Unfortunately, the NFL spends the majority of its six pages of response arguing that they did nothing wrong and they actually changed long-standing neuropsychological testing for the better.  The fact remains that they choose to apply highly controversial Heaton Norms that have received peer reviewed published criticism for instituting race into evaluations of people.  Regardless, the point the NFL fails to address is that the Black players in question in this Motion can never be made whole based on the facts at issue.

Newton Williams did not avail himself of any treatment following his BAP, which the NFL states he could have, because he was told from his BAP results that he had no impairment.  The facts now show that at the time of his initial BAP, he did in fact suffer a Level 1.0 diagnosis dating back to his original 2019 BAP evaluations.  Mr. Williams will never be made whole because he

has been denied approximately four (4) years of potential BAP related benefits and treatment based on his diagnosis.  Mr. Williams was unaware of a diagnosis and treatment potential and the need for more regular and frequent monitoring.  Given the time that has elapsed over the past four (4) years, along with the lack of benefits provided throughout that time for Mr. Williams, he will need to re-test sometime in the future to determine whether he presently has a qualifying monetary award diagnosis. Mr. Williams could have received this monetary award qualifying diagnosis as part of the BAP at some point between 2019 and the present, meaning that Mr. Williams has lost the opportunity to receive monetary benefits at a younger age. This absolutely impacts the amount of his award he will recover as the payment grid pays less to players as they age. Mr. Williams age (and time when he could have or should have been properly diagnosed) will not be tolled as part of the new testing and Mr. Williams can never be made whole for the injustice perpetrated against him and other claimants based on the color of his skin.

Movants Owens and Brown had prior BAP testing in 2019 and 2017 respectively. However, the NFL argues said claimants can avail themselves of Section 2.6 related to expanded BAP exams. It is, however, not the responsibility of the deceased Claimant to do anything, but rather is up to the AAP and Claims Administrator to identify "Race-Normed" individuals and provide them with the means to access the benefits under the exception. *See* Norming Agreement, Section 2.6 (f) *"Good Cause" Travel and Deceased Retired Player Exceptions (*"The Claims Administrator, with guidance from the Special Masters as necessary, will determine whether "good cause" standard has been met.).  The idea that deceased claimants are supposed to take an affirmative step to do something is nonsensical and shows the lack of care and concern, let alone understanding of their own agreement, negotiated by the parties.

Under these circumstances, again, just like with Mr. Williams, Movants Owens and Brown never realized they were impacted in their testing. They never were made aware, nor could these individuals avail themselves to testing options which didn't discriminate against them because of their skin color. Now, they are dead and the modifications made as part of the "Race-Norming" Agreement can never make them whole for the discrimination that they experienced and the loss of benefits they endured for the past years. Accordingly, as repeatedly asked by Intervenor's counsel and now by Movants counsel through this instant Motion, the question remains how the NFL will make these claimants whole in light of the "Race-Norming" Agreement which requires intervention. Otherwise, the damages to the Black athletes will remain an open issue.

## RELIEF

The undersigned seeks the following from this Honorable Court to remedy the injustices perpetrated against the named claimants, along with other claimants who have suffered similar injuries, and to prevent further injury to claimants in the future through the following relief:

1. Declaring that unequivocal confirmed BAP diagnoses for monetary award be paid;

2. Issue an Order enjoining unequivocal confirmed BAP diagnoses being sent for review with the AAP;

3. Issue an Order requiring the Claims Administrator and Special Masters to defer to the articulated medical judgments of BAP physicians in the context of an unequivocal diagnosis;

4. Order race-normed players' age be tolled from the time they first tested under the Program so they may be placed in the same position that they would have been in at the time if race-norming had not been used;

5.  Order that race-normed players who cannot be tolled and who experienced Civil Rights and Due Process violations be sent back to mediation to ensure that they be made whole; and,

6.  Appointing the undersigned as Special Class Counsel to oversee the above-referenced relief and authorizing an appropriate award of attorney's fees and expenses for these efforts.

## CONCLUSION

For all of the aforementioned reasons stated herein, and in spite of the specious arguments raised by the Defendants, counsel for the within Claimants continues to stand by the arguments raised in their initial Motion and their request for relief reiterated herein. All of the aforementioned conduct in the BAP, along with the continued inequities Black claimants face, must be addressed by this Honorable Court. While Class Counsel states that it remains ready, willing, and able to serve the interests of these players, the responsive filing offered by Class Counsel in this matter, rather than a phone call to the undersigned attorney or any type of support related to this issue, proves the point that the requested relief is necessary to protect the interests of the instant Claimants and future claimants moving forward.

Dated: _10/03/2022_____

Respectfully submitted,


/s/ Jason E. Luckasevic

_____

Jason E. Luckasevic

Goldberg, Persky & White, P.C.

11 Stanwix Street

18th Floor

Pittsburgh, PA 15222

(412) 471-3980-  phone

(412) 471-8308- fax

## CERTIFICATE OF SERVICE

I hereby certify that on this October 3, 2022, I caused the foregoing REPLY BRIEF IN SUPPORT OF MOVANT'S MOTION FOR RELIEF PURSUANT TO ARTICLE XXVII OF THE SETTLEMENT AGREEMENT, to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Eastern District of Pennsylvania, on all parties registered for CM/ECF in the above-captioned matter.


By:      */s/ Jason E. Luckasevic*
         Jason E. Luckasevic