**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:  NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : | No. 2:12-md-02323-AB |
| | : | MDL No. 2323 |
| THIS DOCUMENT RELATES TO: | : : | Hon. Anita B. Brody |
| ALL ACTIONS | : : | |

## CLAIMS ADMINISTRATOR STATUS REPORT NO. 18

## I.      INTRODUCTION

1.      ***The Purpose and Scope of this Status Report.***  BrownGreer PLC, the Court-appointed Claims Administrator of the Settlement Program established under the Class Action Settlement Agreement in this litigation, submits this Status Report No. 18 to apprise the Court on the implementation of its duties as the Claims Administrator and developments since Status Report No. 17 filed on August 9, 2022 (Document 11811). Our earlier Status Reports are posted to the Settlement Website (under "Documents," click "Status Reports"). We do not repeat here what we covered in them. All numbers and other information in this Status Report No. 18 are as of October 10, 2022.[1] We will cover developments after that date in future reports.

---

[1] All dates formatted as 10/10/22 in this Status Report mean October 10, 2022.

## II.   NORMING AGREEMENT IMPLEMENTATION

2.     *Current Status.* On March 4, 2022, Judge Brody entered an Order approving

certain modifications to the NFL Concussion Settlement Agreement Pursuant to Section 6.6

of the Class Action Settlement Agreement. These modifications, outlined in the Norming

Agreement, removed race norms and demographic estimates based on race from the NFL

Concussion Settlement Program. We have notified all affected Settlement Class Members

whether they qualified for Automatic Retrospective Rescoring and if so, the result of that

Rescoring and/or whether they qualified for an Expanded BAP exam. Table 1 summarizes

the outcome of our analysis of BAP evaluations and settlement claims:

| Table 1 | NORMING AGREEMENT ANALYSIS | |
|---|---|---|
| | **REVIEW OUTCOME** | **TOTAL** |
| **1.** | **Qualified for Automatic Retrospective Rescoring** | **646** |
| | (a)  BAP No Impairment to Level 1: Section 2.5(g)(i) | 246 |
| | (b)  BAP No Impairment or Level 1 to Level 1.5 or Level 2: Section 2.5(g)(ii) | 51 |
| | (c)  BAP diagnosis of No Impairment or Level 1 remains unchanged: Section 2.5(g)(iii) | 338 |
| | (d)  Level 1.5 or 2 Settlement Claim remains unchanged: Section 2.5(g)(iv) | 1 |
| | (e)  Level 1.5 or 2 Settlement Claim now qualifies for a Monetary Award (or an increased Monetary Award): Section 2.5(g)(v) | 10 |
| **2.** | **Qualified for an Expanded BAP exam** | **2,417** |
| **3.** | **BAP evaluations to be processed under New Method that removes race from consideration** | **1,572** |
| **4.** | **Submitted Settlement Claims to be processed under New Method that removes race from consideration** | **51** |
| **5.** | **Not directly affected** | **11,451** |
| **6.** | **Excluded from eligibility for Automatic Retrospective Rescoring or Expanded BAP Exam** | **3** |
| **7.** | **Total Registered Settlement Class Members** | **16,140** |

The 1,572 BAP evaluations (Row 3) include 691 cases where the Settlement Class

Member is eligible for the BAP but has not yet attended a BAP appointment and 881 cases

where the Settlement Class Member has attended one or both appointments but the results

have not yet been finalized. The New Method will be applied to all BAP evaluations finalized for these 1,572 Settlement Class Members, and the BAP Administrator has begun notifying Settlement Class Members who have attended both appointments about those results. Similarly, we are processing the 51 Settlement Claims in Row 4 using the New Method and issuing Determination Notices incorporating those results. Finally, the 11,451 Settlement Class Members found to be not directly affected by the Norming Agreement (Row 5) could potentially be eligible for an Expanded BAP exam or to submit a New Settlement Claim under Section 2.7 of the Norming Agreement if they were examined by a Qualified MAF Physician but not diagnosed with a Qualifying Diagnosis in part because of the insufficiency of their valid neuropsychological test scores.

### III.   MONETARY AWARD CLAIMS

**3.**     *Total Claims Received.* Sections 3, 4 and 5 of the Summary Report on the Settlement Website show the total Monetary Award claims submitted. We have received 46 new Monetary Award claims since Status Report No. 17 and have completed a review of all but nine claims. As of October 10, 2022, 3,025 unique Retired NFL Football Players and Representative Claimants (18.7% of the Retired NFL Football Players and Representative Claimants who received favorable registration determinations) submitted 3,439 Monetary Award Claim Packages.[2] Sixteen of the 3,439 claims[3] were denied as untimely.[4] We have received about four

---

[2] Section 3 of the Summary Report indicates that 3,486 Monetary Award Claim Packages have been submitted, which includes 47 Supplemental Monetary Award claims that we do not include in the rest of our numbers in this section of the Status Report. See section IV of the Status Report for details on the Supplemental Monetary Award claims.

[3] Of these Monetary Award claims, 618 (18%) have at least one associated Derivative Claimant who has registered and 2,821 (82%) have no registered Derivative Claimants. Note the total number of Retired NFL Football Players and Representative Claimants with favorable registration determinations (16,140) is shown in Section 2 of the Summary Report on the Settlement Website (BAP Eligible + Not BAP Eligible).

[4] We reviewed 43 claims for potential untimeliness and denied 16 as untimely. We accepted 27 as timely, which includes two claims that showed substantial hardship under Section 8.3(a)(i) of the Settlement Agreement.

new claims a week since Status Report No. 17 in July 2022. Of the 3,439 Monetary Award

claims submitted, 1,979 (58%) rest on pre-Effective Date diagnoses, while 1,179 (34%) are for

post-Effective Date diagnoses, of which 361 (31% of the 1,179) were made in the Baseline

Assessment Program ("BAP")[5] and 818 (69% of the 1,179) were made by Qualified MAF

Physicians.[6] The other 281 claims (8%) did not tell us what diagnosis date they assert. Table 2

compares these numbers to those in Status Report No. 17:

| Table 2 | QUALIFYING DIAGNOSIS DATES IN MONETARY AWARD CLAIMS | | | | | |
|---|---|---|---|---|---|---|
| | **DATE** | **HOW MANY** | | | **% OF TOTAL** | | |
| | | **AS OF 7/25/22** | **AS OF 10/10/22** | **CHANGE** | **AS OF 7/25/22** | **AS OF 10/10/22** | **CHANGE** |
| 1. | Pre-Effective Date | 1,978 | 1,979 | 1 | 58.3% | 57.5% | -0.8% |
| 2. | Post-Effective Date | 1,132 | 1,179 | 47 | 33.4% | 34.3% | +0.9% |
| | *(a)  BAP* | *349* | *361* | *12* | *10.3%* | *10.5%* | *+0.2%* |
| | *(b)  MAF* | *783* | *818* | *35* | *23.1%* | *23.8%* | *+0.7%* |
| 3. | No Date Asserted | 283 | 281 | -2 | 8.3% | 8.2% | -0.1% |
| **4.** | **Totals** | **3,393** | **3,439** | **46** | | | |

Table 3 shows by diagnosis date how many claims we have for each type of Qualifying

Diagnosis:

| Table 3 | MONETARY AWARD CLAIMS BY QUALIFYING DIAGNOSIS TYPE | | |
|---|---|---|---|
| | **DIAGNOSIS** | **PRE-EFFECTIVE DATE** | **POST-EFFECTIVE DATE** | |
| | | | **MAF** | **BAP** |
| 1. | Death with CTE | 125 | 0 | N/A |
| 2. | ALS | 51 | 11 | |
| 3. | Alzheimer's Disease | 425 | 154 | |
| 4. | Parkinson's Disease | 137 | 79 | |
| 5. | Level 2 | 505 | 220 | 114 |
| 6. | Level 1.5 | 736 | 353 | 240 |

---

[5] Although a Retired NFL Football Player may have received a Qualifying Diagnosis in the BAP, we do not report on it until he (or his Representative Claimant) submits a Claim Package seeking a Monetary Award.  The BAP Administrator's status reports explain more about BAP diagnoses.

[6] This includes claims submitted by the Settlement Class Members after the Effective Date, but the diagnoses were not rendered by MAF Physicians.  Given unique circumstances, the Parties allowed an AAP member or AAP Consultant to review the medical records to determine if there was a Qualifying Diagnosis.

We highlight the asserted Qualifying Diagnoses and diagnosis dates in Sections 4 and 5 of the Summary Report on the Settlement Website. We also show the current status of all Monetary Award claims based on the last notice or action taken in Section 8 of the Summary Report on the Settlement Website. There are 44 claims (1% of 3,486) in our review process after an initial Claim Package submission or a response to a notice requesting additional information and/or documents (see Row 1 in Section 8 of the Summary Report, which includes seven Supplemental claims).

**4.** ***Monetary Awards and Payments.***

(a) We show Monetary Awards and payments in Sections 7 and 11 of the Summary Report on the Settlement Website. As of October 10, 2022, we have issued Notices of Monetary Award for 1,441 claims totaling $1,019,509,086.[7] We request funding from the NFL Parties by the 10th of each month (or the next business day if the 10th falls on a weekend or holiday) for claims that have received a Notice of Monetary Award for which the appeals process is complete (or the appeal deadline has passed with no appeal) and that are not in Audit. Of the 1,441 claims with Notices of Monetary Award, we requested $996,653,919 from the NFL Parties for all 1,405 claims that have reached the point at which we can request funding. The NFL Parties have deposited funds for 1,387 of those claims.[8] Of the 1,387 Monetary Award claims for which the NFL Parties have deposited funds, the

---

[7] The amount of these Notices of Monetary Award includes the 1% Derivative Claimant Award deductions allocated to eligible Derivative Claimants (see Paragraph 21 of this Status Report). Section 7 of the 10/10/22 Summary Report includes 27 Supplemental Monetary Award Claims in its total of 1,468 Claims with Monetary Award Notices in the amount of $1,029,555,903, which are not covered in our numbers in this section of the Status Report. See section IV of this Status Report for details on Supplemental Monetary Award claims.

[8] The NFL Parties have 30 days from the date of the Funding Request to fund the amount requested.

Program paid 1,383 claims for a total of $925,184,992.[9] The remaining four funded claims were not yet ready for payment when we submitted the most recent Disbursement Report; some have holds preventing payment, some do not have a submitted Payment Election Form or SWS-5, and some have holdbacks for potential Liens which, together with the 5% deduction for the Common Benefit Fund, exceeded the gross award amount. For the 1,383 Retired NFL Football Players and Representative Claimants who have been paid, the Trustee sent $49,549,314 (5% of those Monetary Awards) to the Attorneys' Fees Qualified Settlement Fund, in accordance with the Court's June 27, 2018 Order Regarding the Common Benefit Fund (Document 10104). Finally, we are required to withhold money for unresolved Liens and for third-party funders. Table 4 shows the distribution of the $925,184,992 paid by the Settlement Program and compares the totals to those reported in Status Report No. 17:

---

[9] Section 7 of the Summary Report includes $7,132,311 in Supplemental Monetary Award payments to 24 claimants in its total payments of $932,317,303 to 1,407 Retired Players and Representative Claimants. We do not cover Supplemental Monetary Award claims in our numbers in this section of the Status Report. See Section IV of this Status Report for details on Supplemental Monetary Award claims.

| Table 4 | MONETARY AWARD PAYMENTS | | | |
|---|---|---|---|---|
| | **PAID TO** | **AS OF 7/25/22** | **AS OF 10/10/22** | **CHANGE** |
| 1. | **Settlement Class Members** (or their lawyers on their behalf, if represented) | $877,967,664 | $890,419,125 | $12,451,461 |
| 2. | **Medical Lienholders** (on behalf of Settlement Class Members to the Lien Resolution Administrator to resolve medical Liens when a final Lien resolution amount is determined) | $3,957,859 | $3,967,502 | $9,643 |
| 3. | **Non-Medical Lienholders** (on behalf of Settlement Class Members to lienholders to resolve non-medical Liens) | $13,373,244 | $13,377,135 | $3,891 |
| 4. | **Third-Party Funders** (on behalf of Settlement Class Members to third-party funders who have accepted rescission of and/or terminated prohibited assignments that they had entered into with Settlement Class Members) | $16,174,836 | $17,421,230 | $1,246,394 |
| 5. | **Totals** | **$911,473,604** | **$925,184,992** | **$13,711,388** |

(b) Table 5 shows the changes in figures for payments and claims with Notices of Monetary Award since Status Report No. 17:

| Table 5 | MONETARY AWARD CHANGES SINCE STATUS REPORT NO. 17 | | | | | |
|---|---|---|---|---|---|---|
| | **STATUS** | **HOW MANY** | | | **AMOUNT** | | |
| | | **AS OF 7/25/22** | **AS OF 10/10/22** | **CHANGE** | **AS OF 7/25/22** | **AS OF 10/10/22** | **CHANGE** |
| 1. | Notice of Monetary Award Issued | 1,406 | 1,441 | 35 | $988,287,534 | $1,019,509,086 | $31,221,552 |
| 2. | Paid | 1,356 | 1,383 | 27 | $911,473,604 | $925,184,992 | $15,561,518 |

(c) Table 6 shows how many claims for each type of Qualifying Diagnosis have received a Notice of Monetary Award and been paid:[10]

---

[10] Section 8 of the Summary Report on the Settlement Website identifies where claims that have not received a Notice of Monetary Award or been paid stand in the process.

| Table 6 | MONETARY AWARDS AND PAYMENTS BY QUALIFYING DIAGNOSIS[11] | | | | | |
|---|---|---|---|---|---|---|
| | **DIAGNOSIS** | **CLAIMS SUBMITTED** | **NOTICE OF MONETARY AWARD** | | **PAID** | |
| | | | **HOW MANY** | **%**[12] | **HOW MANY** | **%**[13] |
| 1. | Death with CTE | 125 | 80 | 64% | 80 | 64% |
| 2. | ALS | 62 | 45 | 73% | 44 | 71% |
| 3. | Alzheimer's Disease | 579 | 388 | 67% | 380 | 66% |
| 4. | Parkinson's Disease | 216 | 184 | 85% | 180 | 83% |
| 5. | Level 2 | 839 | 253 | 30% | 243 | 29% |
| 6. | Level 1.5 | 1,329 | 491 | 37% | 456 | 34% |

**5.** *Monetary Award Claims Reviewed by the AAP.*

(a) In addition to reviewing claims based on pre-Effective Date diagnoses, the Appeals Advisory Panel ("AAP") and Appeals Advisory Panel Leadership Council ("AAPLC") assist us with the medical aspects of claims review. Many of the claims being reviewed by the AAP are based on Level 1.5 or Level 2 Neurocognitive Impairment diagnoses for which the AAP members may request input from Appeals Advisory Panel Consultants ("AAPC"), as highlighted in sub-paragraph (b) below. The AAP has completed reviews on 1,140 pre-Effective Date diagnosis Monetary Award claims,[14] approving 563 (49%) of those claims.[15] Under FAQ 151 ("Can I be found eligible for a Monetary Award based on a Qualifying Diagnosis that is different than the one I claimed?"), the AAP has found a lower level diagnosis (meaning a Qualifying Diagnosis that is less severe medically or with a lower

---

[11] These do not include claims submitted where the Settlement Class Member asserted more than one Qualifying Diagnosis or the claim is so incomplete that we cannot tell what Qualifying Diagnosis is claimed.

[12] This column shows the percentage of claims submitted with the Qualifying Diagnosis in each row that received a Notice of Monetary Award.

[13] This column shows the percentage of claims submitted with the Qualifying Diagnosis in each row that were paid.

[14] This figure includes those claims reviewed by the AAP under Section 8.6(b) of the Settlement Agreement, which provides the Claims Administrator with the discretion to verify and investigate the sufficiency of a Claim Package to determine if it qualifies for a Monetary Award.

[15] Broken down by Qualifying Diagnosis, the AAP members approved 100% of Death with CTE claims, 91% of ALS claims, 75% of Alzheimer's claims, 87% of Parkinson's claims, 27% of Level 2 claims and 29% of Level 1.5 claims. The number of claims approved or denied by the AAP may fluctuate depending on multiple factors including ongoing audit investigations, remands of AAP decisions, and re-review of determinations that have not yet been finalized to ensure compliance with current Settlement Program rules and guidelines.

Award amount under the Monetary Award Grid) on 139 claims. In accordance with Rules 23 and 27 of the Rules Governing Qualified MAF Physicians, the AAP and AAPLC have reviewed 346 out of the 818 total Monetary Award claims submitted for diagnoses made by Qualified MAF Physicians, approving 136 (40%) of those claims.[16] Section 2 of Exhibit A-2 to the Settlement Agreement states that a Player's failure on two or more effort tests may result in the Player's test results being subject to independent review. Under that provision, as well as Section 8.6(b) of the Settlement Agreement, which provides the Claims Administrator with the discretion to verify and investigate the sufficiency of a Claim Package to determine if it qualifies for a Monetary Award, the AAP and AAPLC have reviewed 62 claims out of the 361total claims submitted based on Qualifying Diagnoses made through the BAP, approving 33 (53%) of those reviewed claims.

(b) We have assigned 753 claims (including pre- and post-Effective Date claims) to the AAPC based on requests by AAP members for their input on Level 1.5 and Level 2 Neurocognitive Impairment Qualifying Diagnoses or the neuropsychological testing supporting an Alzheimer's Disease diagnosis. The AAPC have completed all of the reviews assigned to them and provided their assessments to the AAP.

**6.** ***Notices for Missing Materials.***  We have sent one or more notices requesting additional documents or information on 2,219 Monetary Award claims (16 more since Status Report No. 17), as shown in Table 7:

---

[16] This figure includes those claims reviewed by the AAP under Section 8.6(b) of the Settlement Agreement as well as claims based on diagnoses made by Qualified MAF Physicians who have been terminated from participation in the Program under Rule 27 of the Rules Governing Qualified MAF Physicians.

| Table 7 | NOTICES FOR MISSING MATERIALS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | CLAIMS | DEATH WITH CTE | ALS | ALZHEIMER'S DISEASE | PARKINSON'S DISEASE | LEVEL 2 | LEVEL 1.5 | MULTIPLE/ UNKNOWN[17] | TOTAL |
| 1. | Total Reviewed | 124 | 62 | 579 | 215 | 838 | 1,327 | 285 | 3,430 |
| 2. | Notice Issued | 48 | 29 | 322 | 106 | 569 | 907 | 238 | 2,219 |
| 3. | % Missing Materials | 39% | 47% | 56% | 49% | 68% | 68% | 84% | 65% |

So far, 88% of the Settlement Class Members who received a notice requesting additional documents have responded to the notice. Settlement Class Members take an average of about 59 days to respond. We generally receive up to one response to these notices each week and review each reply to determine if it cures the problem. Of those who responded, 45% cured the problem. Section 6 of the Summary Report on the Settlement Website shows how many claims last received a notice requesting additional documents/information.

      7.    *Monetary Award Denials.*  There are 1,121 denials of Monetary Award claims for reasons other than an Audit (nine more since Status Report No. 17), as shown in Table 8.[18]

| Table 8 | MONETARY AWARD DENIALS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | CLAIMS | DEATH WITH CTE | ALS | ALZHEIMER'S DISEASE | PARKINSON'S DISEASE | LEVEL 2 | LEVEL 1.5 | MULTIPLE/ UNKNOWN | TOTALS |
| 1. | Total Reviewed | 124 | 62 | 579 | 215 | 838 | 1,327 | 285 | 3,430 |
| 2. | Denied | 41 | 3 | 76 | 12 | 264 | 478 | 247 | 1,121 |
| 3. | % Denied | 33% | 5% | 13% | 6% | 32% | 36% | 87% | 33% |

---

[17] These "Multiple/Unknown" claims are ones where the Settlement Class Member asserted more than one Qualifying Diagnosis, or the claim is so incomplete that we cannot tell what Qualifying Diagnosis is claimed. We process and pay a person for only one Qualifying Diagnosis per claim submission.
[18] The 1,121 denials are the count of claims where the most recent determination notice is a denial notice. We discuss Audit denials in Paragraph 18 of this Status Report.

Sections 6 and 10 of the Summary Report on the Settlement Website show these denials and the reasons for them. Overall, the AAP has denied 647 claims for not having a valid Qualifying Diagnosis, which is 52% of the claims that currently have a denial notice. When an AAP member denies a claim, we include in the notice comments from that AAP member explaining why. When a claim is denied on other grounds, we typically call or email the Settlement Class Member (or his or her lawyer, if represented) to explain why the claim is being denied and discuss options for resubmitting the claim, appealing the denial, or withdrawing the claim until the claimant can obtain the missing mandatory information and/or documents. Our denial notices explain all appeal rights and that another claim may be submitted if circumstances change or if the claimant receives a new diagnosis from a Qualified MAF Physician or after a BAP exam. Settlement Class Members have appealed a total of 410 denial notices; four of the currently active denial notices are under appeal.

## IV.   SUPPLEMENTAL MONETARY AWARD CLAIMS

**8.**   ***Supplemental Monetary Award Claims Received.***  A Retired NFL Football Player (or Representative Claimant) who was paid a Monetary Award may be eligible for a Supplemental Monetary Award if the Retired NFL Football Player later is diagnosed while living with a different Qualifying Diagnosis. The new Qualifying Diagnosis must have occurred after the Qualifying Diagnosis for which the Award was paid and the amount payable for the new Qualifying Diagnosis must be more than the Monetary Award already paid. We have received claims from 44 Retired NFL Football Players and three Representative Claimants seeking Supplemental Monetary Awards: 33 for Qualifying Diagnoses of Alzheimer's Disease, six for Qualifying Diagnoses of Parkinson's Disease, and eight for Qualifying Diagnosis of Level 2

Neurocognitive Impairment. This is four more Supplemental claims than we reported in Status Report No. 17.

        **9.**    ***Supplemental Monetary Award Reviews and Payments.*** A Supplemental Monetary Award is the difference between the Monetary Award Grid value of the new Qualifying Diagnosis and the amount of the earlier Award for a different Qualifying Diagnosis. We have issued 27 Notices of Supplemental Monetary Award to eligible Retired NFL Football Players and denied four claims[19] for a Supplemental Monetary Award. The combined Monetary Award After Offset value of these 27 Supplemental Monetary Awards was $20,861,274 but after subtracting the prior Monetary Award payments, totaled $10,046,817, as set out below in Table 9 ($1,135,512 since Status Report No. 17):

| Table 9 | SUPPLEMENTAL MONETARY AWARD CALCULATIONS | | | | |
|---|---|---|---|---|---|
| | SUPPLEMENTAL CLAIM | | PREVIOUSLY PAID CLAIM | | SUPPLEMENTAL MONETARY AWARD AMOUNT |
| | QUALIFYING DIAGNOSIS | AMOUNT | QUALIFYING DIAGNOSIS | AMOUNT | |
| 1. | Alzheimer's Disease | $187,217 | Level 1.5 | $93,904 | $93,313 |
| 2. | Alzheimer's Disease | $713,504 | Level 1.5 | $255,175 | $458,329 |
| 3. | Level 2 | $268,132 | Level 1.5 | $153,105 | $115,027 |
| 4. | Alzheimer's Disease | $316,188 | Level 1.5 | $99,620 | $216,568 |
| 5. | Alzheimer's Disease | $118,571 | Level 1.5 | $41,604 | $76,967 |
| 6. | Alzheimer's Disease | $404,326 | Level 2 | $253,783 | $150,543 |
| 7. | Level 2 | $78,737 | Level 1.5 | $55,125 | $23,612 |
| 8. | Alzheimer's Disease | $202,588 | Level 1.5 | $71,974 | $130,614 |
| 9 | Alzheimer's Disease | $119,170 | Level 1.5 | $42,870 | $76,300 |

---

[19] In Status Report No.16, we reported that we denied five claims for a Supplemental Monetary Award but since that time one claim was appealed and remanded for further review.

| Table 9 | SUPPLEMENTAL MONETARY AWARD CALCULATIONS | | | | |
|---|---|---|---|---|---|
| | SUPPLEMENTAL CLAIM | | PREVIOUSLY PAID CLAIM | | SUPPLEMENTAL MONETARY AWARD AMOUNT |
| | QUALIFYING DIAGNOSIS | AMOUNT | QUALIFYING DIAGNOSIS | AMOUNT | |
| 10. | Alzheimer's Disease | $369,420 | Level 1.5 | $158,094 | $211,326 |
| 11. | Level 2 | $323,674 | Level 1.5 | $200,261 | $123,412 |
| 12. | Alzheimer's Disease | $1,154,435 | Level 2 | $853,340 | $301,095 |
| 13. | Alzheimer's Disease | $513,562 | Level 1.5 | $179,936 | $333,626 |
| 14. | Alzheimer's Disease | $409,986 | Level 1.5 | $218,420 | $191,566 |
| 15. | Alzheimer's Disease | $882,550 | Level 2 | $667,538 | $215,012 |
| 16. | Alzheimer's Disease | $190,752 | Level 1.5 | $75,719 | $115,033 |
| 17. | Level 2 | $116,522 | Level 1.5 | $68,022 | $48,500 |
| 18. | Alzheimer's Disease | $1,024,966 | Level 1.5 | $387,302 | $637,664 |
| 19. | Alzheimer's Disease | $1,225,644 | Level 2 | $992,598 | $233,046 |
| 20. | Alzheimer's Disease | $1,154,435 | Level 1.5 | $494,045 | $660,390 |
| 21. | Parkinson's Disease | $2,049,932 | Level 1.5 | $722,870 | $1,337,062 |
| 22. | Alzheimer's Disease | $2,330,449 | Level 1.5 | $1,205,884 | $1,124,565 |
| 23. | Alzheimer's Disease | $513,562 | Level 1.5 | $197,618 | $315,944 |
| 24. | Parkinson's Disease | $1,835,768 | Level 1.5 | $787,371 | $1,048,397 |
| 25. | Alzheimer's Disease | $1,570,356 | Level 1.5 | $915,282 | $655,074 |
| 26. | Alzheimer's Disease | $55,294 | Level 1.5 | $26,973 | $28,321 |
| 27. | Parkinson's Disease | $2,731,535 | Level 1.5 | $1,596,023 | $1,135,512 |
| 28. | Totals | $20,861,274 | | $10,814,458 | $10,046,817 |

The Program has paid 21 Retired NFL Football Players and three Representative Claimants a total of $7,132,311 for their Supplemental Monetary Awards.

## V.    QUALIFIED MAF PHYSICIANS

**10.**    ***Maintaining the MAF Network.***

(a) Settlement Class Members and lawyers can locate Qualified MAF Physicians using the MAF Physician Locator Tool on the Settlement Website There are a total of 72 Qualified MAF Physicians on the website now, representing 33 of the 53 target cities closest to where the majority of living Retired NFL Football Players reside. Table 10 shows the changes in these numbers since Status Report No. 17:

| Table 10 | QUALIFIED MAF PHYSICIANS | | | |
|---|---|---|---|---|
| | ASPECT | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE |
| 1. | Approved Physician – On Posted List | 73 | 72 | -1 |
| 2. | Target Cities Represented by Approved Physicians on Posted List | 33 | 33 | 0 |

We have removed one physician from the website, who withdrew because he no longer has time to complete the MAF evaluations. Since the last status report, we have submitted three new applicants to the Parties for approval. In the last status report, we reported on 25 approved Qualified MAF Physicians we were hoping to add after confirming their participation and/or contracting with them. However, we have confirmed that the majority of those physicians will not be participating in the Program at all, or they have chosen to participate in the Baseline Assessment Program only.

(b) We have a total of 235 additional physicians on our radar. Of those, we are engaged in initial and follow-up communications to determine interest with 102, and we have identified 130 as possibly having the appropriate qualifications, but we need to research them more fully before contacting them. Finally, as mentioned in Section 10(a) above, we have submitted applications for three physicians to the Parties for approval.

11.    *150-Mile Rule.*

(a) Rule 9 of the Rules Governing Qualified MAF Physicians requires that a Retired NFL Football Player be examined by a Qualified MAF Physician whose office is within 150 miles of his primary residence.[20] We can make exceptions to this 150-Mile Rule if the exception is requested prior to the appointment.

We have received 167 requests for exceptions to the 150-Mile Rule, of which we granted 141 (84.4%) and denied 26 (15.6%). There are currently no pending requests. Table 11 shows the changes since Status Report No. 17:

| Table 11 | REQUESTS FOR EXCEPTIONS TO 150-MILE RULE | | | | | |
|---|---|---|---|---|---|---|
| | **DECISION** | **HOW MANY** | | | **% OF TOTAL** | | |
| | | **AS OF 7/25/22** | **AS OF 10/10/22** | **CHANGE** | **AS OF 7/25/22** | **AS OF 10/10/22** | **CHANGE** |
| 1. | Granted | 122 | 141 | +19 | 80.8% | 84.4% | +3.6% |
| 2. | Denied | 26 | 26 | 0 | 17.2% | 15.6% | -1.6% |
| 3. | Pending | 3 | 0 | -3 | 2.0% | 0% | -2.0% |
| 4. | **Totals** | **151** | **167** | **+16** | | | |

(b) The 150-Mile Rule is a flexible rule with broad exceptions. Of the living Retired NFL Football Players registered in the Program, 85.8% have a Qualified MAF Physician within 150 miles of their primary residence. We work with those who do not to help them schedule appointments with physicians further away, when they tell us they are ready to be examined.

12.    *50-Mile Rule.*  Rule 10(b) of the Rules Governing Qualified MAF Physicians requires that, where neuropsychological testing is necessary as part of an MAF examination, the Qualified MAF Physician must refer a Retired NFL Football Player to a

---

[20] This requirement applies only to appointments made after April 11, 2019.  Appointments made on or before April 11, 2019, did not need to be rescheduled with a different Qualified MAF Physician.

neuropsychologist who is located within 50 miles of the Qualified MAF Physician's office. Like the 150-Mile Rule, we have discretion to grant exceptions. We have received 31 requests for exceptions to the 50-Mile Rule, of which we granted 29 (93.5%) and denied two (6.5%). Table 12 shows how many exception requests we have received and our decisions on those requests (an increase of two since Status Report No. 17):

| Table 12 | REQUESTS FOR EXCEPTIONS TO 50-MILE RULE | | | | | |
|---|---|---|---|---|---|---|
| | **DECISION** | **HOW MANY** | | | **% OF TOTAL** | | |
| | | **AS OF 7/25/22** | **AS OF 10/10/22** | **CHANGE** | **AS OF 7/25/22** | **AS OF 10/10/22** | **CHANGE** |
| 1. | Granted | 27 | 29 | +2 | 93.1% | 93.5% | +0.4% |
| 2. | Denied | 2 | 2 | 0 | 6.9% | 6.5% | -0.4% |
| 3. | **Totals** | **29** | **31** | **+2** | | | |

Of the 72 Qualified MAF Physicians who are actively scheduling appointments, 65 (90.3%) have an approved neuropsychologist within 50 miles of their office, and we will grant exceptions on a case-by-case basis for the seven Qualified MAF Physicians who do not.

**13.** ***Deviation Explanations for Level 1.5 and Level 2 Diagnoses.*** Under Rule 20 of the Rules Governing Qualified MAF Physicians, we request an explanation from a Qualified MAF Physician and/or neuropsychologist whenever the BAP criteria are not strictly followed on a diagnosis of Level 1.5 or Level 2 Neurocognitive Impairment and we determine more information is needed. We cannot process these claims further until we receive the required explanation. We report on these claims in Section 8 (Row 2) of the Summary Report on the Settlement Website. There are currently three claims that require additional explanation from a Qualified MAF Physician and/or neuropsychologist, representing less than 1% of all Claim Packages submitted to the Program, two claims (66.7%) based on a diagnosis of Level 1.5 Neurocognitive Impairment and one claim (33.3%) based on a diagnosis of Level 2 Neurocognitive Impairment. Table 13 shows how

many claims require additional explanation from the Qualified MAF Physician before we can issue award or denial notices:

| Table 13 | CLAIMS REQUIRING ADDITIONAL EXPLANATION FROM QUALIFIED MAF PHYSICIANS | | | | | |
|---|---|---|---|---|---|---|
| | DECISION | HOW MANY | | | % OF TOTAL | | |
| | | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE |
| 1. | Level 1.5 | 3 | 2 | -1 | 75% | 66.7% | -8.3% |
| 2. | Level 2 | 1 | 1 | 0 | 25% | 33.3% | +8.3% |
| 3. | Totals | 4 | 3 | -1 | | | |

14.    *AAP Leadership Council.*  Two AAP members serve as our AAP Leadership Council to provide advice and assistance on medical issues arising in our oversight of the Qualified MAF Physician Network. We enlist their help, as needed, to review specific claims or groups of claims to determine compliance by Qualified MAF Physicians with the Settlement Agreement, the Qualified MAF Physician Manual and any guidance materials or instructions we issued, and whether Claim Packages reflect and support the stated Qualifying Diagnoses. In addition, the AAP Leadership Council assists us by participating in our calls with Qualified MAF Physicians to offer medical guidance on making diagnoses under the Settlement Agreement criteria. The AAP Leadership Council also facilitates discussions and solicits guidance from the MAF Steering Committee, a group of six Qualified MAF Physicians, who render advice and assistance on providing peer-to-peer feedback to Qualified MAF Physicians and provide suggestions on how to improve the operations and performance of the network of Qualified MAF Physicians. Overall, our collaboration with the AAP Leadership Council has been successful, and the Qualified MAF Physicians have responded positively to receiving feedback from AAP members.

15.     *MAF Steering Committee.* Six Qualified MAF Physicians serve on the MAF Steering Committee as authorized by Rule 24 of the Rules Governing Qualified MAF Physicians. The Committee members have participated in regular roundtable discussions with the AAP Leadership Council, assisted in developing training for the Qualified MAF Physicians to address most common issues, and provided other suggestions for improvement of the Qualified MAF Physicians network. Overall, the peer-to-peer communications regarding the operation and performance of the network of Qualified MAF Physicians has been positive.

## VI.   AUDIT

16.     *Closed Audits.* We have concluded the Audit investigations of 1,273 Settlement Class Members with Monetary Award claims by denying a claim through Audit, by making no adverse finding and removing a claim from Audit, or because the Settlement Class Member withdrew his or her claim during our Audit. Table 14 summarizes the reasons for these closures and changes in the numbers since Status Report No. 17:

| Table 14 | CLOSED AUDITS | | | |
|---|---|---|---|---|
| | **REASON FOR CLOSURE** | **AS OF 7/25/22** | **AS OF 10/10/22** | **CHANGE** |
| 1. | Claim Denied in Audit | 372 | 372 | +0 |
| 2. | No Finding of Misrepresentation, Omission, or Concealment | 683 | 696 | +13 |
| 3. | Claim Withdrawn by Settlement Class Member | 205 | 205 | +0 |
| 4. | **Totals** | **1,260** | **1,273** | **+13** |

17.     *Reports of Adverse Finding in Audit.* We have issued to the Parties 20 Reports of Adverse Finding in Audit (the same as we reported since Status Report No. 11) affecting 566 Monetary Award claims, all 20 of which were then referred to the Special Masters. The 20 Audit Reports concern four neurologists, 12 neuropsychologists, three law

firms, seven individual Settlement Class Members and one claims preparation company.

Table 15 summarizes the Special Masters' and Court's decisions on these Audit reports:

| Table 15 | DECISIONS ON AUDIT REPORTS | |
|---|---|---|
| | **DECISION** | **AUDIT REPORTS** |
| 1. | Claims Denied in Audit | 12 |
| 2. | Claims Removed from Audit and Subjected to Specialized Review | 4 |
| 3. | Claims Removed from Audit and Returned to Normal Review | 3 |
| 4. | All Claims Withdrawn before Decision | 1 |
| 5. | **Total** | **20** |

18.     ***Audit Proceeding Decisions.*** We have denied 372 claims after Audit based on

decisions by the Court or Special Masters.[21] Sections 6 and 8 (Row 17) of the Summary

Report on the Settlement Website show these denials. A Settlement Class Member whose

claim is denied after Audit may submit a new claim if based on a Qualifying Diagnosis that

does not rely on records or opinions from disqualified doctors. We have received 109 new

claims submitted by Settlement Class Members following an Audit Denial, of which 38 have

been paid or are in the payment process.

19.     ***Ongoing Audit Investigations.*** We have other Audit investigations underway

affecting 11 Monetary Award claims (four less than the number we reported in Status Report

No. 17). All 11 are individual claims.

20.     ***Claims Investigated More than Once.*** Claims on which we have concluded an

Audit may be the subject of another Audit if we later learn of information that requires

further investigation. We notify Settlement Class Members when this happens. We have

---

[21] Of the 372 denials, 195 are associated with providers the Special Masters disqualified from participating in the Program: neurologist Dr. Ena Andrews (47 claims) and neuropsychologists Dr. Serina Hoover (139 claims), Dr. August Dolan-Henderson (four claims) and Dr. Darren Fuerst (five claims).  Six individual Retired NFL Football Players' claims have been denied. The Special Masters directed us to deny 170 claims based on their findings related to the Special Investigator's investigation of a law firm. We denied the remaining claim for failing to cooperate with our requests for information during an Audit.

audited 94 Monetary Award claims more than one time (the same as we have reported since

Status Report No. 14); the most times a Monetary Award claim has been audited is twice.

## VII.   <u>DERIVATIVE CLAIMANTS</u>

**21.**   ***Derivative Claims.*** We have received 610 Derivative Claim Packages (no

change since Status Report No. 17). Table 16 shows the status of these claims:

| Table 16 | DERIVATIVE CLAIMS | | |
|---|---|---|---|
| | **STATUS** | **HOW MANY** | **% OF TOTAL** |
| 1. | Paid Derivative Claimant Award ($994,223[22]) | 223 | 37% |
| 2. | Derivative Claimant Award Notice Issued but Not Paid ($19,041)[23] | 4 | <1% |
| 3. | Denied – Associated Retired NFL Football Player's Claim Denied | 48 | 8% |
| 4. | Denied – No Timely Claim for Associated Retired NFL Football Player | 42 | 7% |
| 5. | Denied – No Timely or Proper Registration for Associated Retired NFL Football Player | 35 | 6% |
| 6. | Denied – Retired NFL Football Player's Claim Withdrawn During Statute of Limitations Proceeding | 16 | 3% |
| 7. | Denied – Untimely Derivative Claim Package | 13 | 2% |
| 8. | Denied – Deceased Derivative Claimant | 4 | <1% |
| 9. | Denied – Derivative Claimant Not Registered | 1 | <1% |
| 10. | Successful Challenge to Derivative Claimant - Not Eligible | 15 | 2% |
| 11. | Withdrawn | 8 | 1% |
| 12. | Derivative Claim Package Receipt Notice Issued (no action required because the associated Retired NFL Football Player has not yet submitted a claim, or his claim status was not final) | 201 | 33% |
| **13.** | **Total** | **610** | |

We did not issue a Notice of Derivative Claimant Award to any new Derivative Claimant

since Status Report No. 17. However, we issued a second Notice of Derivative Claimant

---

[22] This includes a Supplemental Derivative Claimant Award payment issued to a Derivative Claimant who was previously paid an initial Derivative Claimant Award.
[23] This includes $16,928 awarded to Derivative Claimants who were paid on their initial Derivative Claimant Awards but have not yet received payment for (a) Supplemental Derivative Claimant Awards or (b) additional Derivative Claimant Awards issued because the associated Retired NFL Football Player's Monetary Award, and resulting 1% deduction, increased after rescoring under the Norming Agreement.

Award to two Derivative Claimants for an additional 1% awarded to a Retired NFL Football Player whose Monetary Award increased after rescoring under the Norming Agreement. Table 17 shows how many eligible Derivative Claimants received the entire 1% amount deducted from the associated Retired NFL Football Player's Monetary Award, and how many shared that 1% amount with other eligible Derivative Claimants:

| Table 17 | SHARED AWARD STATUS FOR ELIGIBLE DERIVATIVE CLAIMANTS | | | | | |
|---|---|---|---|---|---|---|
| | STATUS | HOW MANY | | | % OF TOTAL | | |
| | | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE |
| 1. | Received Entire 1% Amount | 63 | 63 | 0 | 28% | 28% | 0% |
| 2. | Shared 1% Amount with Other Eligible Derivative Claimants[24] | 164 | 164 | 0 | 72% | 72% | 0% |
| 3. | Totals | 227 | 227 | 0 | | | |

The 227 Derivative Claimants who received Notices of Derivative Claimant Award are associated with 114 Retired NFL Football Players. We issued payment to one Derivative Claimant since Status Report No. 17 and have paid 223 (98%) of the 227 Derivative Claimants with Notices of Derivative Claimant Award; one of the eligible Derivative Claimants who has not been paid is in the payment process, and the other three are not yet ready for payment.

22.    *Additional Derivative Claimant Details.* We received challenges from 29 Retired NFL Football Players (or their Representative Claimants) to 41 Derivative Claimants (no change since Status Report No. 8); 19 (46%) of those 41 challenged Derivative Claimants are not eligible for a Derivative Claimant Award because they never submitted a timely Derivative Claim Package. We have issued a Notice of Derivative Claim Package

---

[24] We have not received an Allocation Objection from any of the Derivative Claimants who equally shared a 1% Derivative Claimant Award with other Derivative Claimants associated with the same Retired NFL Football Player.

Submission Deadline to 483 registered Derivative Claimants. Table 18 summarizes their claim submission statuses and the changes since Status Report No. 17:

| Table 18 | CLAIM STATUS FOR DERIVATIVE CLAIMANTS WITH DERIVATIVE CLAIM PACKAGE SUBMISSION DEADLINE NOTICE | | | | | | |
|---|---|---|---|---|---|---|---|
| | STATUS | HOW MANY | | | % OF TOTAL | | |
| | | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE |
| 1. | Claim Submitted | 157 | 157 | 0 | 33% | 33% | 0% |
| 2. | No Claim Submitted | 318 | 324 | +6 | 67% | 67% | 0% |
| 3. | Within 30-Day Deadline | 2 | 2 | 0 | <1% | <1% | 0% |
| 4. | **Totals** | **477** | **483** | **+6** | | | |

23.     ***Supplemental Derivative Claimant Awards.*** Section G of the Overview of Derivative Claimant Process on the Settlement Website (https://www.nflconcussionsettlement.com/Docs/DerivativeClmtProcessOverview.pdf) explains how Supplemental Derivative Claimant Awards are handled. As discussed in Paragraph 9 of this Status Report, we issued Notices of Supplemental Monetary Award to 27 Retired NFL Football Players (an increase of one since Status Report No. 17). Of those 27, 21 Retired NFL Football Players had no registered Derivative Claimants associated with them, and four Retired NFL Football Players each had one registered Derivative Claimant, but those four Derivative Claimants did not submit Derivative Claim Packages to share 1% of the Retired NFL Football Players' earlier Monetary Awards and were not eligible for any portion of the Players' Supplemental Monetary Awards. The last two Players' Supplemental Monetary Award Notices had a 1% offset for potential Derivative Claimant Awards, which have been issued to the associated Derivative Claimants, as described in Table 19:

| Table 19 | SHARED SUPPLEMENTAL AWARD STATUS FOR ELIGIBLE DERIVATIVE CLAIMANTS | | | | | | |
|---|---|---|---|---|---|---|---|
| | STATUS | HOW MANY | | | % OF TOTAL | | |
| | | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE |
| 1. | Received Entire 1% Amount | 1 | 2 | +1 | 100% | 100% | 0% |
| 2. | Shared 1% Amount with Other Eligible Derivative Claimants | 0 | 0 | 0 | 0% | 0% | 0% |
| 3. | Totals | 1 | 2 | +1 | | | |

Of the two Derivative Claimants with Supplemental Derivative Claimant Awards, one has been paid,[25] and the other is in the payment process.[26]

## VIII.   OTHER CLAIM PROCESSES

**24.**   ***Handling of Attempted Assignments of Claims.*** On September 27, 2019, the Court issued a Notice (Document 10858) directing us to streamline the process regarding attempted assignments by Settlement Class Members of claims to third-party lenders. At that time, we suspended the process for handling such assignment questions under the Rules Governing Assignment of Claims and worked with the Court and the Special Master to modify these Rules. On March 19, 2020, the Special Masters adopted the Rules Governing Payment of Claims Involving Third-Party Funders and the Rules Governing Third-Party Funding Resolution Protocol, which superseded the previous Rules (collectively, the "New Payment Rules"). Under the New Payment Rules Governing Payment of Claims Involving Third-Party Funders, all Settlement Class Members must complete and submit a Sworn Statement regarding the Status of Assignment of Monetary Claim ("SWS-5") to receive payment. There are two versions of the SWS-5, one for those identified as a borrower by a Third-Party Funder that is participating in the Rules Governing Third-Party Funding

---

[25] See Row 1 of Table 16 in this Status Report.
[26] See Row 2 of Table 16 in this Status Report.

Resolution Protocol ("Resolution Protocol") (the SWS-5(A)) and another for those not so identified (the SWS-5(B)). As of October 10, 2022, 24 Third-Party Funder entities are participating in the Resolution Protocol. We have worked with those participating funders to resolve cash advances for 33 Settlement Class Members since the adoption of the New Payment Rules.

25. ***Petitions for Deviation from the Attorneys' Fee Cap.***[27] We have received seven Petitions for Deviation, one of which was withdrawn. The Court resolved three of the remaining six Petitions for Deviation in conjunction with the Attorneys' Liens Dispute Process: two by final decision, and one upheld on appeal by the Third Circuit. The other three Petitions are pending final resolution. This is unchanged since Status Report No. 10.

26. ***Non-Medical Liens Process and Attorneys' Lien Disputes.***

(a) Table 20 summarizes Non-Medical Lien assertions, notices and disputes by Lien type and reflects changes to those numbers since Status Report No. 17:

| Table 20 | NON-MEDICAL LIENS SUMMARY | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | LIEN TYPE | LIENS ASSERTED | | | NOTICES OF LIEN ISSUED BY CLAIMS ADMINISTRATOR | | | LIENS DISPUTED BY SETTLEMENT CLASS MEMBERS | | |
| | | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE |
| 1. | Attorneys' | 1,554[28] | 1,597[29] | +43 | 504 | 515 | +11 | 253 | 257 | +4 |
| 2. | Child Support | 352 | 352 | 0 | 53 | 53 | 0 | 23 | 22 | -1 |
| 3. | Judgment | 69 | 70 | +1 | 18 | 18 | 0 | 9 | 9 | 0 |
| 4. | Tax | 57 | 57 | 0 | 3 | 3 | 0 | 0 | 0 | 0 |
| 5. | **Totals** | **2,032** | **2,076** | **+44** | **578** | **589** | **+11** | **285** | **288** | **+3** |

---

[27] Judge Brody entered a Memorandum and Order in April of 2018 limiting attorneys' fees in the Program to 22% of each SCM's Monetary Award, plus reasonable costs (ECF Nos. 9862 and 9863). In the Memorandum, the Judge decided that attorneys should have the opportunity to petition the Court to go above and beyond the cap in exceptional circumstances, which is what the Petitions for Deviation process is meant to cover.
[28] These 1,554 Attorneys' Liens were asserted by 59 law firms.
[29] These 1,597 Attorneys' Liens were asserted by 61 law firms.

(b) Table 21 shows the status of Liens in the Attorneys' Liens dispute resolution process:

| Table 21 | ATTORNEYS' LIENS IN DISPUTE RESOLUTION PROCESS[30] | | |
|---|---|---|---|
| PENDING | RESOLVED | | TOTAL |
| | BY AGREED WITHDRAWAL | BY COURT DETERMINATION | |
| 39 | 138 | 22 | 199 |

(c) Table 22 breaks down the Non-Medical Lien holdbacks[31] by Lien type:

| Table 22 | NON-MEDICAL LIEN HOLDBACKS | | |
|---|---|---|---|
| | LIEN TYPE | MONETARY AWARDS AFFECTED | MONETARY AWARD AMOUNTS | LIEN HOLDBACKS |
| 1. | Attorneys' | 13 | $13,676,390.72 | $2,232,454.65 |
| 2. | Child Support | 4 | $4,141,467.53 | $384,505.18 |
| 3. | Judgment | 1 | $3,192,046 | $229,733.96 |
| 4. | Tax | 0 | N/A | N/A |
| 5. | **Totals** | **18** | **$21,009,904.25** | **$2,846,693.79** |

(d) Table 23 summarizes the Non-Medical Lien payments from initial Monetary Awards[32] by Lien type:

| Table 23 | NON-MEDICAL LIEN PAYMENTS FROM INITIAL MONETARY AWARDS | | |
|---|---|---|---|
| | LIEN TYPE | MONETARY AWARDS AFFECTED | MONETARY AWARD AMOUNTS | LIEN PAYMENTS |
| 1. | Attorneys' | 142 | $160,917,004.95 | $9,685,887.93 |
| 2. | Child Support | 15 | $12,641,523.94 | $737,062.17 |
| 3. | Judgment | 7 | $8,992,038.20 | $2,947,691.78 |
| 4. | Tax | 1 | $33,282.80 | $6,492.65 |
| 5. | **Totals** | **165** | **$182,583,849.89** | **$13,377,134.53** |

---

[30] We refer Attorneys' Liens Disputes to the Court after we issue a Notice of Duty to Resolve Lien Dispute.

[31] The holdbacks are the amount of funds we are withholding pending resolution of a Dispute. As of 10/10/22, there are 39 disputed Attorneys' Liens currently pending resolution by Judge Strawbridge where the Settlement Class Member has or will receive payment of the rest of his Monetary Award. After the Court enters a final order (whether by Judge Strawbridge or Judge Brody's approval of his Report and Recommendation) resolving the Disputes and any appeal period passes, we disburse the held back funds on the next available monthly Disbursement.

[32] We also have issued $1,221.26 in Lien payments from Supplemental Monetary Awards.

## IX.   COMMUNICATIONS CENTER FOR THE PROGRAM

**27.    *Our Contact Activity.*** Since our contact center opened on February 6, 2017, we have handled 94,687 total communications, including 57,732 calls made or received and 32,491 emails to us at our Claims Administrator email box. Since Status Report No. 17, we handled 2,072 such total communications. The most common topics of these communications have been General Settlement Information, Change in Lawyers, Norming Agreement, Portal Access Request, and Baseline Assessment Program (BAP)."

**28.    *Law Firm Contacts.*** Our Law Firm Contacts are assigned to 573 different law firms or lawyers representing Settlement Class Members in the Program. This is three more law firms or lawyers than we reported in Status Report No. 17. The calls and emails handled by the Law Firm Contacts are part of the total contact activity described in Paragraph 27 above.

**29.    *Insights Newsletters.*** Since Status Report No. 17, we issued one new edition of our quarterly "Insights" newsletter (Third Quarter 2022). We send the newsletters to unrepresented Settlement Class Members and lawyers by email or mail. We also post them to the Settlement Website at https://www.nflconcussionsettlement.com/Newsletters.aspx (under "Documents" click "Newsletters"). We invite all lawyers and Settlement Class Members to send us suggested topics for our newsletters by email to ClaimsAdministrator@NFLConcussionSettlement.com or through the online submission screen on the Newsletters page of the Settlement Website.

**30.    *Program Doctors Newsletters*.** In the fourth quarter of 2020, we issued our first newsletter to MAF Physicians as a tool to share relevant and valuable information. With the Second Quarter 2021 edition, we expanded our newsletter audience to include all Program doctors. We emailed the Third Quarter 2022 Program Doctors Newsletter to all

Qualified MAF Physicians, Qualified BAP Providers and other approved evaluating

Neuropsychologists on September 30, 2022. All Program Doctors also can access the

newsletter on their Provider Portals. The newsletter highlighted the new Provider Portal,

including an overview of the Exam Checklist screens, and conveyed information on training

opportunities, referrals to the Program network and a reminder on communications with

lawyers. We plan to continue to issue newsletters to Program Doctors on a quarterly basis.

> **31.**   *Settlement Program Website.* We regularly update the Settlement Website to

reflect progress and changes to the Program. We have made these changes since Status Report

No. 17 in July 2022:

(1) Posted a Report of the Special Masters (Document 11810, filed August 9, 2022), BAP
Administrator Status Report No. 15 (Document 11812, filed August 9, 2022), and
Claims Administrator Status Report No. 17 (Document 11811, filed August 9, 2022)
to the Status Reports page at
https://www.nflconcussionsettlement.com/Status_Reports.aspx.

(2) Replaced the Supplemental Claim Form, Instructions for Supplemental Claim Form,
and Supplemental Claim Package Kit on the Forms page at
https://www.nflconcussionsettlement.com/Claims.aspx with new versions, which
clarify that if the 75% Offset for Stroke or traumatic brain injury was applied to a
Retired NFL Football Player's previous award, that offset may (not must, as was
noted in the previous versions) be applied to any later Supplemental Monetary
Award.

Since Status Report No. 17, the Program's Home page has had 16,491 more unique visits, giving

us 660,418 total unique visits, coming from 190 countries and all 50 of the United States. The

five most frequently visited pages since July, after Home and Login, were Physician Search

(1,004 unique views), Published Special Master Decisions – Monetary Award Claims (796

unique views), Reports and Statistics (693 unique views), Alerts (533 unique view), and

Frequently Asked Questions (416 unique views). Also since July, visitors conducted 4,254

searches on the website using 977 unique keywords and completed 1,724 unique downloads.

The top five downloaded documents were the Special Masters' March 8, 2022, and April 6,

2022, Notices regarding the Order approving implementation of the Norming Agreement and timing of decisions by the Claims Administrator, accessed through the link on the Home page of the public website and all Portals (540 clicks); the Settlement Agreement (339 clicks); the Monetary Award Grid (157 clicks); the Diagnosis and Review Table (59 clicks); and the Guide to Summary Report (51 clicks).

## X.   SPECIAL MASTERS

32.   ***Our Work with the Special Masters.*** Since Status Report No. 17, we continue to have regularly scheduled calls to discuss policy and operational issues, and have held 141 such calls with the Special Masters to date. We have many other calls and exchange countless emails with them to address issues as they arise. The Special Masters have the final say in how the Settlement is implemented, subject only to the Court's oversight.

33.   ***Program Rules.*** There are 10 sets of Rules available on the Settlement Website (under "Documents," click "Governing Rules") and on the online portals of law firms, lawyers and *pro se* Settlement Class Members. We have not made changes to any posted Rules since Status Report No. 9 filed in July 2020.

34.   ***Published Decisions.*** Since Status Report No. 17, the Special Masters issued two new decisions they designated for publication. These decisions relate to how we analyze claims for Monetary Awards.

### Contemporaneous Records

August 6, 2022

The NFL Parties appealed the Claims Administrator's determination that a Retired NFL Football Player was entitled to a Level 1.5 Monetary Award appeal, on the grounds that the Player's Diagnosis was unsupported by contemporaneous records that reflected a sufficient degree of functional impairment. The Special Master found that the Claims Administrator correctly considered revisions that the Diagnosing Physician made to the Player's CDR scores and Diagnosis within months of his original exam, after receiving the neuropsychologist's testing results and in response to an inquiry from the Claims Administrator to resolve missing information. The revised Diagnosis sufficiently documented the rationale for CDR scores of 1 in the areas of Community Affairs, Home & Hobbies, and Personal Care to support Level 1.5 Neurocognitive Impairment, and therefore the Special Master denied the appeal.

### Untimely Claim Package

October 10, 2022

The Claims Administrator denied a Representative Claimant's claim because it fell outside the Settlement Agreement's timing rules. Section 8.3(a)(i) of the Settlement Agreement requires Claims Packages to be submitted no more than two years from the date of Diagnosis (or from the date the Settlement Class Supplemental Notice was posted on the Settlement Website, whichever is later). That deadline may be extended to four years if the Claimant can show that substantial hardship precluded compliance with the two-year deadline. The Representative Claimant did not meet the two-year deadline and did not submit a hardship consideration request. He asserted that the Claims Administrator should have considered his claim submitted when his counsel sent the Claims Administrator an email requesting an opportunity to submit the Retired NFL Football Player's claim for review posthumously, based on his medical records. The Special Master affirmed that the Settlement's limitation period is tolled by the submission of a Claim Package, not a request for review.

We post all such rulings to the Settlement Website (under "Documents" select "Special Master" under "Published Decisions" and then click the Monetary Award Claims button). The Special Masters have so far issued 50 published Monetary Award appeal decisions and 11 Audit decisions (61 total such decisions).[33]

---

[33] On October 28, 2020, the Special Master issued contextually similar decisions on deviation from BAP Criteria for six claimants.  One of the six decisions appears on the Settlement Website.

## XI.   FREQUENTLY ASKED QUESTIONS

**35.   *Frequently Asked Questions.*** We have not added any new FAQs or made substantive revisions to existing FAQs since Status Report No. 16. There are 395 FAQs in 18 categories. These FAQs contain links to other tools and resource guides posted on the Settlement Website to help Settlement Class Members and their lawyers navigate the Program. The banner at the top of the page contains a link to a printable PDF version of the full set of FAQs. Note that when we add new FAQs, we place them within the existing set where it makes the most sense. This means that the numbering of FAQs within the set may change from time to time.

## XII.   REGISTRATION

**36.   *Registration Submissions.***

(a) Sections 1 and 2 of the Summary Report on the Settlement Website cover Registration. Table 24 shows changes in the number of timely Registration submissions since our Status Report No. 17:

| Table 24 | TIMELY REGISTRATION SUBMISSIONS | | |
|---|---|---|---|
| | **TYPE OF SETTLEMENT CLASS MEMBER** | **AS OF 7/25/22** | **AS OF 10/10/22** | **CHANGE** |
| 1. | Retired NFL Football Players | 15,853 | 15,843 | -10 |
| 2. | Representative Claimants | 1,392 | 1,402 | +10 |
| 3. | Derivative Claimants | 3,326 | 3,325 | -1 |
| 4. | **Totals** | **20,571** | **20,570** | **-1** |

The number of Retired NFL Football Players (Row 1) went down by ten from Status Report No. 17 because they were replaced by Representative Claimants. Of the 20,570 to whom we issued Registration notices, we were able to confirm that 19,409 of them are Settlement Class Members under the Settlement Agreement, 12,838 of whom are Retired NFL Football Players eligible to participate in the BAP. The other 1,161 persons are not Settlement Class

Members under the Settlement Agreement because of one or more of these reasons: (1) they were on an Active Roster as of July 7, 2014; (2) they did not play "NFL Football" as defined in the Settlement Agreement; (3) they opted out of the Settlement Program; (4) they did not provide us with the information or support required by the Settlement Agreement to register, after several notices from us and up to 150 days to turn it in; or (5) they tried to register as a Derivative Claimant but did not have a relationship with the Retired NFL Football Player by which they had a right under applicable state law to sue independently or derivatively.

(b) We are responsible for determining whether registrations submitted after August 7, 2017, meet one of the good cause exceptions specified in Section 4.2(c)(i) of the Settlement Agreement or can otherwise be accepted under the Rules Governing Registration Determinations and Appeals. We have made determinations on 317 such Registrations and found that 173 (55%) of them presented good reasons to be allowed to register after August 7, 2017. Table 25 shows the change in these numbers since Status Report No. 17:

| Table 25 | REGISTRATIONS SUBMITTED AFTER AUGUST 7, 2017 | | | |
|---|---|---|---|---|
| | STATUS | AS OF 7/25/22 | AS OF 10/10/22 | CHANGE |
| 1. | Accepted | 173 | 173 | 0 |
| 2. | Not Accepted | 141 | 144 | +3 |
| 3. | Totals | 314 | 317 | +3 |

(c) Settlement Class Members who disagree with our Registration determinations may object to them by sending us a challenge. The NFL Parties also may challenge our good cause exception decisions. We have received 378 challenges, which is the same number we have reported since Status Report No. 11. Table 26 explains these challenges and what happened to them:

| Table 26 | CHALLENGES OF OUR REGISTRATION DETERMINATIONS | | | | |
|---|---|---|---|---|---|
| | ISSUE | HOW MANY | WHO CHALLENGED | CHALLENGE SUCCESSFUL | CHALLENGE NOT SUCCESSFUL |
| 1. | Not a Retired NFL Football Player | 46 | Settlement Class Member | 23 | 23 |
| 2. | Not Eligible for the BAP | 245 | Settlement Class Member | 77 | 168 |
| 3. | Not Properly Registered | 53 | Settlement Class Member | 44 | 9 |
| 4. | Granted Good Cause Extension for Untimely Registration | 9 | NFL | 1 | 8 |
| 5. | Denied Good Cause Extension for Untimely Registration | 23 | Settlement Class Member | 5 | 18 |
| 6. | Not a Valid Derivative Claimant Relationship | 2 | Settlement Class Member | 0 | 2 |
| 7. | Totals | 378 | | 150 | 228 |

Those who are not successful in challenging Registration determinations to us may appeal our decision to the Special Masters. Table 27 shows the appeals thus far and the Special Masters' rulings on them (no changes since Status Report No. 11):

| Table 27 | APPEALS OF OUR DECISIONS ON REGISTRATION CHALLENGES | | | | |
|---|---|---|---|---|---|
| | ISSUE | HOW MANY | WHO APPEALED | DECISION UPHELD | DECISION OVERTURNED |
| 1. | Not a Retired NFL Football Player | 3 | Settlement Class Member | 3 | 0 |
| 2. | Not Eligible for the BAP | 26 | Settlement Class Member | 24 | 2 |
| 3. | Not a Valid Derivative Claimant Relationship | 1 | Settlement Class Member | 1 | 0 |
| 4. | Denied Good Cause Extension for Untimely Registration | 6 | Settlement Class Member | 5 | 1 |
| 5. | Totals | 36 | | 33 | 3 |

37.    ***Centralized Process for Appointment of Representative Claimants and Derivative Claimant Representatives.*** The Special Masters have approved 456 petitions from persons to serve as the Representative Claimant of a deceased or legally incapacitated or incompetent Retired NFL Football Player and three petitions from Derivative Claimant Representatives to act on behalf of minor Derivative Claimants. There have been six new Representative Claimant approvals and no new Derivative Claimant Representatives since Status Report No. 17.

## XIII.   <u>CONCLUSION</u>

38.    ***General Status.*** We have 239,383 document files (21,945 gigabytes, or 21.9 terabytes of registration and claims data), including notices we have issued, stored on Settlement Class Members, which is 3,494 more than when we filed Status Report No. 17. We have issued 55,422 notices (180 more since Status Report No. 17) to 21,014 different persons since March 23, 2017.

Respectfully submitted,

**CLAIMS ADMINISTRATOR**

By: *Roma Petkauskas*
Roma Petkauskas
Virginia State Bar No.: 71357
BrownGreer PLC
250 Rocketts Way
Richmond, Virginia 23231
Telephone: (804) 521-7218
Facsimile: (804) 521-7299
Email: rpetkauskas@browngreer.com