# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>     Plaintiffs,<br><br>     v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>     Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## SIXTH VERIFIED PETITION OF CLASS COUNSEL CHRISTOPHER A. SEEGER FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS

Pursuant to the Court's May 24, 2018 Explanation and Order (ECF No. 10019), Class Counsel Christopher A. Seeger ("Class Counsel" or "Seeger Weiss") respectfully submits this Sixth Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs, covering common benefit work performed and expenses incurred during the period June 1, 2020 to April 30, 2022.  The Court granted, with modifications, the First Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs ("First Verified

Petition") on January 16, 2019.  ECF No. 10378.[1]  Subsequently, following a September 9, 2020 hearing, on November 30, 2020, the Court granted, with modifications, the Second, Third, and Fourth Verified Petitions for Awards of Post-Effective Date Common Benefit Attorneys' Fees and Costs.  ECF No. 11240.  The Fifth Verified Petition for an Award of Post-Effective Date Attorneys' Fees and Costs, filed on July 14, 2020 (ECF No. 11126), was granted on May 29, 2022 (ECF No. 11732).

Based on the work undertaken from June 1, 2020, the first date after the close of the time period covered by the Fifth Post-Effective Date Fee Petition,[2] to April 30, 2022, over 1798 hours[3] have been dedicated to the common benefit of the Settlement Class, resulting in a lodestar (calculated using the blended rates set by the Court, ECF No. 10019 at 7 n.4, which it recently reaffirmed, ECF No. 11240 at 3 & n.2) of $1,298,192.47, and $201,660.55 have been incurred in associated expenses.[4]  To put the value of this work in sharp focus, as of the filing of this Petition, **_over $1 billion in Notices of Monetary Awards have been issued to Players_**.

---

[1] The so-called Aldrich Objectors and their counsel, Lubel Voyles LLP and other firms, alone filed an appeal from that award.  ECF No. 10428 (docketed as No. 19-1385 (3d Cir.)).  On May 7, 2020, the Third Circuit affirmed various attorneys' fees decisions of this Court, including the January 16, 2019 order.  *In re Nat'l Football League Players' Concussion Injury Litig.*, 814 F. App'x 678, 683-86 (3d Cir. 2020); *see* ECF No. 11099 at 2 (Third Circuit's Mandate, affirming, *inter alia*, Jan. 16, 2019 order).

[2] The Fifth Post-Effective Date Petition covered the period from December 1, 2019 to May 31, 2020.  ECF No. 11126 at 2.

[3] This fee petition covers a 23-month period rather than a six-month period like each of the earlier post-Effective Date Fee Petitions.  While the cumulative hours, fees and expenses reflected in these totals are larger than the more recent petitions, as monthly averages, the common benefit time and expenses are continuing to decrease.

[4] Class Counsel is not seeking payment of any time or reimbursement of expenses related to the work undertaken to eliminate race norming entirely from the Settlement Program, but reserves the right to seek payment of same from the Common Benefit Fund or from the NFL Parties.

**SUMMARY OF WORK COMPLETED – JUNE 1, 2020 TO APRIL 30, 2022**

Among the ongoing efforts undertaken during the time period relevant to this petition were: a series of successes in supporting players in appeals of Monetary Award Claim Determinations, including recognition of the appropriate deference to be afforded to the clinical judgment of the diagnosing clinicians; participation in the development of additional written materials to govern and guide the MAF[5] program to ensure that players with Qualifying Diagnoses receive Monetary Awards with minimal challenge and delay; ensuring the benefits of the BAP reach the players; support of Class Members throughout the Claims Process, not just on administrative appeals; ongoing support of unrepresented Class Members and Class Members' IRPAs; and continuing efforts to effectuate the Education Fund programs approved by the Court, including the innovATe project and the Medical Information Research Database.  In addition, Class Counsel has been keeping abreast of separate insurance coverage litigation involving the NFL to ensure that players' HIPAA rights are protected.

As of August 2022, ***over $1 billion in Notices of Monetary Awards have issued to Players and their representatives***. ECF No. 11811 at n. 7 (Claims Administrator Status Report No. 17). This remarkable milestone was built on 3,439 Claim Packages, 1,441 Notices of Monetary Awards, and over $925 million in awards paid.  *See* ECF No. 11882 (Claims Administrator Status Report No. 18) at 3-6 (¶¶ 3,4).  As for the BAP, 7,558 of the 7,592 players who have requested a BAP appointment (out of a total of 12,838 players who are BAP-eligible) had attended a total of

---

[5] Given the Court's extensive familiarity with the Settlement Agreement and Settlement Program, Class Counsel assumes that it is unnecessary at this point to define the various terms and acronyms related to them, and accordingly adopts by reference the acronyms and shorthand definitions previously used.  In addition, "players" as used throughout this petition refers to Retired NFL Football Players as defined under section 2.1(ffff) of the Settlement, ECF No. 6481-1 at 18.

13,586 BAP appointments. *See* ECF No. 11881 at 4-5 (¶¶ 8-11) (BAP Administrator Status Report No. 16).

These successes are not mere happenstance. Class Counsel has worked in coordination with the Claims and BAP Administrators, the Special Masters, and the Court—and both cooperatively with and, as circumstances have warranted, against the NFL—to facilitate and oversee the Settlement. The biweekly call that Class Counsel previously hosted with the NFL, the Claims Administrator, and the BAP Administrator had in 2020 and early 2021 transitioned to a biweekly call with the Claims Administrator. Conference calls with both Administrators, the Special Masters, and the NFL continue to be held on an as-needed basis. More generally, Class Counsel continues to dedicate attorney and paraprofessional resources on a regular basis (in some cases, daily) in the areas described more fully below.

<u>Oversight of the Claims Process and Monetary Award Determinations</u>.

Throughout the relevant period, Class Counsel actively monitored and supported the Claims Process to ensure that Class Members received the benefits that were negotiated on their behalf. This oversight included requests for, and review of, information from the Claims Administrator. In that regard, Class Counsel reviewed the determinations rendered by the Claims Administrator and/or member of the AAP to ensure that they are correctly following the terms of the Settlement Agreement and the Special Masters' decisions.

During the period covered by this Fee Petition, Class Counsel, in coordination with the Claims Administrator, undertook to ensure that new and revised Frequently Asked Questions ("FAQs"), which the Court itself has described as the "Rules of the Road" for the Settlement Program, accurately reflect the terms and spirit of the Settlement Agreement and protect the rights, interests and benefits of the Settlement Class Members. Key among these FAQs were a new

series of FAQs summarizing the decisions of the Special Masters of appeals (FAQs 362-370)—covering some of the appellate victories discussed below and such topics as the limited relevance of pre- and post-diagnosis medical records to appeals of Monetary Awards; the discretion of the examining neuropsychologist to determine how to determine a player's pre-morbid level of functioning, and the appropriate deference to be given to a Qualified MAF Physician's determination that a diagnosis is "Generally Consistent" with the BAP definitions of Level 1.5 and 2 Neurocognitive Impairment; and the relevance of medical imaging to Qualifying Diagnoses of Alzheimer's Disease and Parkinson's Disease (FAQs 117-120).

Similarly, Class Counsel monitored the procedures followed by the Claims Administrator, including the accuracy of Notices issued in the course of the Claims Process, the process affording Class Members the ability to respond to outside evidence that may be relevant to their claim ("external evidence"), and a more efficient process to address prohibited third-party assignments of claims—all to ensure that all eligible Claims are paid efficiently and in full. Equally important was the review and comment on materials the Claims Administrator began to develop for the guidance and training of Qualified MAF Physicians in an effort to reduce missing information and materials that can slow the processing of claims.

Additionally, Class Counsel continued to protect Retired Players from predatory third-party lenders, and beat back two efforts by one of these lenders to have the Third Circuit mandate revision of the Court's Rules Governing Third-Party Lenders, particularly as regards the requirement that payments subject to such lending agreements be made directly to the Retired Players in the first instance.[6]

---

[6] *See, e.g.,* ECF Nos. 10843, 11550 (notices of Petitions for Writs of Mandamus filed by Thrivest Specialty Funding related to Appellate Docket Nos. 19-3148 and 21-3238).

As in the prior implementation periods, Class Counsel has worked to protect Class Members' interests (and will continue to do so) by monitoring the wider operation of the Settlement Program and addressing with the Claims Administrator all manner of issues as they arise.

Appeals of Claims Determinations.

Class Counsel has continued to monitor all Monetary Award determinations to provide guidance to Class Members. In those cases where an appeal from a determination is taken, either by a Class Member or the NFL, Class Counsel determines whether to file a Statement in support of the Class Member's position. Through this active engagement, Class Counsel's goal is to make sure that Class Members' entitlement to benefits is not restricted or foreclosed outright by incorrect interpretations of the Settlement Agreement or by meritless appeals taken by the NFL. Rather, Class Counsel continues to ensure the centrality of the clinical judgment of the diagnosing physician and any examining neuropsychologist ensure in the Claims process.

Whether through submitting Statements in support of a Class Member's appeal or through direct support of unrepresented Class Members and IRPAs, Class Counsel's efforts have helped support the Special Masters' decisions regarding, among other things: deference to clinicians' analysis (under *Slick*) that neuropsychological testing is valid; a presumption that neuropsychological testing validity measures that exceed the thresholds negotiated by the Settling Parties reflect valid testing; deference to a clinician's articulated determination that neuropsychological testing is "medically unnecessary" for a Qualifying Diagnosis of Level 2 Neurocognitive Impairment; the limited probative value of evidence related to a player's functional abilities both pre- and post-diagnosis, particularly when used to "second-guess" a diagnosis by a Qualified MAF Physician; a clear distinction between substance use (even

6

proximate to neuropsychological testing) and "acute substance abuse" for the purposes of the fourth element of the Qualifying Diagnoses of Level 1.5 and Level 2 Neurocognitive Impairment; and recognition that appealable issues are limited to those reasons expressly stated in the Notice of Denial.

<u>BAP Examinations and Supplemental Benefits</u>.

Beyond its role in helping to maintain the BAP network of Providers, Class Counsel continues to monitor the BAP to ensure that examinations are scheduled expeditiously and appropriate standards are followed.  Moreover, in coordination with the BAP Administrator, Class Counsel has continued to roll out BAP Supplemental Benefits for those players whose BAP examinations yield a diagnosis of Level 1 Neurocognitive Impairment.  These efforts include monitoring initial orientation of such eligible players, initial consultations, and the expansion of covered services to allow each player to receive the care most appropriate to his condition.

In addition, with the passage of the initial deadline for many of the eligible older players (those born before June 6, 1974) to participate in the BAP, Class Counsel ensured that their benefits under the Settlement Agreement were protected.   For example, Class Counsel continued to work to guarantee that players whose initial MAF Claims may have been denied, but whose deadline for their BAP examinations had passed while their claims were pending, could still participate in the BAP and receive their free neurological and neuropsychological examinations (and not face a possible 10% deduction on any future Monetary Award).  *See generally* Settlement Agreement § 6.7(b)(iv), ECF No. 6481-1 at 40 (providing for 10% offset where player does not participate in BAP, except in cases involving Qualifying Diagnosis of ALS or Qualifying Diagnosis received prior to deadline for BAP examination).  This was particularly beneficial to those players who are

already suffering from neurocognitive decline, but whose conditions have not reached a point where they have a Qualifying Diagnosis to be eligible for a Monetary Award.

As of the BAP Administrator's latest Status Report, 258 players had received a Level 1 Neurocognitive Impairment diagnosis and were either in the process of selecting the BAP Provider who will be overseeing their treatment and benefits, or were already receiving their Supplemental Benefits.   ECF No. 11881 at 9 (¶ 21).[7]   These benefits include a range of therapeutics, pharmaceuticals, and diagnostic and imaging services, and require additional contracting with BAP Providers as well as with those entities outside of the BAP network of providers, who will provide many of the services.  Class Counsel has also monitored these retention efforts by the BAP Administrator.

Fielding Communications from, and Supporting, Class Members and Individual Counsel.

Class Counsel continues to receive (and address) numerous of telephone calls and emails each month from Class Members and IRPAs.   The inquiries involve all manner of issues concerning the Settlement, including the Claims Process, matters relating to post-Effective Date examinations through the BAP and MAF, liens, and appeals.  Class Counsel handles every inquiry and has assisted numerous Class Members in successfully navigating the Claims Process.  It has further assisted unrepresented Class Members in gathering necessary documents, including medical records, and completing their claims packages so that their claims can be promptly reviewed and, where qualifying, approved.  Class Counsel also frequently speaks and corresponds with IRPAs concerning, *inter alia*, questions they have about the Claims Process, Appeal Process

---

[7] Additionally, 220 players had received diagnoses of Level 1.5 Neurocognitive Impairment and 138 players received diagnoses of Level 2 Neurocognitive Impairment through the BAP.  *Id.*

and Audit Process, the Settlement's FAQs (which guide the Claims Process), and otherwise offering support to ensure that qualifying claims are properly presented and paid.

<u>Education Fund and Medical Research Data.</u>

On March 23, 2020, the Court approved $3.82 million of the $10 million Education Fund to be used (1) to set up the innovATe program through the Korey Stringer Institute at the University of Connecticut ("KSI") to engage with selected public high school districts to promote safety and injury prevention in football in youth football, including the involvement of players as "Ambassadors" with these school districts [8]; (2) to develop, with the expertise of Columbia University's Mailman School of Public Health, the Medical Information Research Database utilizing the medical records generated in the course of the BAP Program (subject to the consent of the examined player)[9]; and (3) for outreach efforts to players to ensure that they have full appreciation of the full scope of benefits available to them outside of the Settlement Program.[10] ECF No. 11033.

Since that approval, Class Counsel has been actively engaged in formalizing the relationship with each institution at the center of the first two initiatives and development of both programs.  On February 12, 2021, Class Counsel filed Status Report No. 1 Regarding the Education Fund Programs, which set forth the accomplishments in each or the three initiatives to date, as well as projected work for each of the programs for the coming months.  ECF No. 11286. For the purposes of the instant petition, however, Class Counsel completed negotiations with Columbia University and the University of Connecticut to govern the services to be provided by

---

[8]  *See* ECF No. 6481-1 at 68 (Settlement Agreement, art. XII).

[9]  *See id*. at 33 (Settlement Agreement § 5.10(a)).

[10]  *See id*. at 68 (Settlement Agreement, § 12.1).

each of these institutions, and laid the groundwork to establish the innovATe project and the Medical Information Research Database.

In April 2021, following an extensive review of applications, KSI selected 4 school districts to receive funding as part of the first innovATe cohort. Those school districts are: 1) Boston Public Schools; 2) Cincinnati Public Schools; 3) Oakland Athletic League; and (4) Stewart and Early Counties in Georgia. These four school districts, combined, represent 18 individual schools with approximately 15,000 students. In addition to selecting the four school districts, KSI, working with the NFL Alumni Association, has identified at least one retired player in each of the four school communities to serve as an NFL "ambassador." KSI has also identified potential financial partners near each of the four selected school districts and will help connect the school administrators with those potential financial partners.

Lastly, KSI recently selected 4 school districts to receive funding as part of the second innovATe cohort. Those school districts are: 1) Baltimore Public Schools; 2) Mingo County West Virginia; 3) Cleveland Public Schools; and 4) Abbeville and Dixie High Schools in South Carolina. These schools are in the process of finalizing their formal agreements.

With respect to the Medical Information Research Database, after finalizing the Research Services Agreement with Columbia University, Class Counsel worked with it and the Special Masters to identify and approve the Principal Investigator who will oversee the Medical Information Research Database. During this period Class Counsel also worked to ensure that the transfer of records for players who allowed their records to be used in this research project was full and complete, and that review and abstraction of these records into the database proceeded efficiently.

**SUMMARY OF HOURS & LODESTAR AND EXPENSES INCURRED**

Throughout the time period covered by this petition (June 1, 2020 to April 30, 2022) a total of 1798 hours were dedicated to the common benefit of the class, for a lodestar of $1,298,192.47. This calculation is based on the blended rates established by the Court,[11] and reflects the following time expended[12]:

| Professional Rank | Total Hours |
|---|---|
| Partners[13] | 1236.7 |
| Counsel | 434.9 |
| Associates | 103.2 |
| Paralegals | 17.5 |
| **TOTAL** | **1792.3** |

In addition, Class Counsel incurred $201,660.55 in common benefit expenses.

**CONCLUSION**

WHEREFORE, the undersigned, as Class Counsel, respectfully requests that the Court approve this Sixth Post-Effective Date Fee Petition for Post-Effective Date Attorneys' Fees and Costs and award $1,499,853.02, which reflects $1,298,192.47 in common benefit attorneys' fees

---

[11] As directed by the Court, the submitted lodestar reflects the blended rates that the Court prescribed in its May 24, 2018 allocation order. Accordingly, the billing rate for partners is $758.35; the rate for "counsel" or "of counsel" attorneys is $692.50; the rate for associates is $486.67; the rate for contract attorneys is $537.50; and the rate for paralegals is $260.00. *See* ECF No. 10019 at 7 n.4; *see also* ECF No. 11240 at 3 & n.2 (reaffirming prescribed rates).

[12] As with all prior fee petitions, Class Counsel will submit supporting time records and supporting backup for expenses to the Court for *in camera* review.

[13] This includes 5.8 hours dedicated by Prof. Samuel Issacharoff to appellate matters.

based on the blended rates established by the Court, and $201,660.55 for reimbursement of common benefit expenses, both to be paid from the Attorneys' Fees Qualified Settlement Fund.

Dated:  November 7, 2022

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
cseeger@seegerweiss.com
Telephone: (212) 584-0700

**CLASS COUNSEL**

## **<u>VERIFICATION</u>**

CHRISTOPHER A. SEEGER declares, under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746, that he is the Petitioner in this matter, has read the foregoing Sixth Verified Petition of Class Counsel Christopher A. Seeger for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs, and knows the contents thereof, and that the same are true to his personal knowledge, information, and belief.

Executed this 7th day of November 2022.

*/s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER