# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>                        Plaintiffs,<br>     v.<br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>                        Defendants. | |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

## EXPLANATION AND ORDER

Settlement Class Members Troy Davis, Lynn James, Marvin Owens (Deceased), Booker T. Brown (Deceased), and Newton Williams (collectively, "Movants"), through their attorneys Goldberg, Persky & White, filed this Motion for Relief Under Article XXVII of the Settlement Agreement (ECF No. 11813) ("Motion for Relief"). Movants argue that:

1) The Claims Administrator does not have authority to request Appeals Advisory Panel ("AAP") review of Monetary Award claims based on diagnoses rendered by Baseline Assessment Program ("BAP") Providers unless there are conflicting diagnoses;

2) The ages of Class Members whose neuropsychological tests were subject to race-norming, and who are consequently impacted by the Norming Agreement (ECF Nos. 11502, 11567-1), should be tolled to account for the delay in scoring and other factors such as declining health in the interim period; and

3) Class Members impacted by the Norming Agreement who are unable to undergo expanded BAP examinations due to death or health reasons should be sent to mediation to determine appropriate relief.

For the following reasons, the Court denies the Motion.

**I.   BACKGROUND**

### a)   AAP review of BAP diagnoses

Under the Settlement Agreement, Retired Players can qualify for a Monetary Award by receiving a Qualifying Diagnosis of neurocognitive impairment. The Settlement Agreement provides two avenues by which a Retired Player may receive a Qualifying Diagnosis: the Baseline Assessment Program (BAP), or through a Monetary Award Fund (MAF) physician. The BAP allows eligible players to undergo evaluations from an approved board-certified neurologist and board-certified neuropsychologist free of charge. If both providers do not agree on a Qualifying Diagnosis or determination of No Impairment, this is considered a conflicting diagnosis.

If the providers agree, or if a conflicting diagnosis is resolved in favor of a Qualifying Diagnosis in accordance with the Settlement Agreement (*see* Settlement Agreement § 5.13, ECF No. 6481-1 at 34), the Retired Player or Representative Claimant is notified that they are eligible to submit a claim for a Monetary Award with the Claims Administrator, and Supplemental Benefits for additional testing and treatment are made available to the Retired Player.

The Settlement Agreement also created the Appeals Advisory Panel (AAP), a body comprised of independent board-certified neurologists, tasked with "advis[ing] the Court or the Special Master with respect to medical aspects of the Class Action Settlement[.]" Settlement Agreement § 2.1(g), ECF No. 6481-1 at 9. The Court, Special Masters, Claims Administrator, or AAP doctors may also consult the Appeals Advisory Panels Consultants (AAPC), board-certified neuropsychologists approved by the Court to give advice about neuropsychological testing and cognitive impairment. *Id.* § 2.1(h). In the course of administering the Settlement, the Claims Administrator has established a practice of consulting with the AAP and AAPCs to determine the sufficiency of the medical documentation underlying Claims Packages submitted through the BAP and MAF programs.

    b)  **The Race Norming Agreement**

In 2021, the NFL Parties, Class Counsel, and Settlement Class Members Najeh Davenport and Kevin Henry entered into an agreement ("The Norming Agreement") to eliminate the use of race norms in the Settlement in evaluating Retired Players' estimated premorbid intellectual ability and neuropsychological test results. ECF No. 11502. Previously, the Settlement Agreement had permitted clinicians to consider a Retired Player's race in estimating a Retired Player's premorbid intellectual ability for rendering a Qualifying Diagnosis.

On March 4, 2022, the Court granted the parties' motion to modify the Settlement Agreement to enact the Norming Agreement. ECF No. 11648. The approved modifications eliminated any consideration of race in Settlement Program evaluations, and made additional benefits available to Retired Players who may have been adversely affected by consideration of their race.

**II.  DISCUSSION**

    a)  **AAP review of BAP diagnoses**

The Court retains "continuing and exclusive jurisdiction" over the Class Action Settlement Agreement's administration and enforcement. Settlement Agreement § 27.1,

ECF No. 6481-1 at 95.

Movants' first argument is that, under the terms of the Settlement Agreement, the Claims Administrator may only consult the AAP when there are conflicting BAP diagnoses. Movants argue that "sending a BAP diagnosis claim to an AAP member acts as a modification to the Settlement Agreement and defies the purpose of the BAP" because the Settlement Agreement does not grant the Claims Administrator authority to send "unequivocal" BAP diagnoses to the AAP. Motion for Relief, ECF No. 11813-1 at 5. Sending such diagnoses to the AAP, Movants argue, effectively "change[s] the diagnosis of an unequivocal award" and "neuters the BAP." *Id.* at 7.

Movants further argue that, by changing BAP diagnoses after review by the AAP, the Claims Administrator penalizes players because of issues with the doctors making the original diagnoses. The solution to these issues, Movants argue, is to either modify the Settlement Agreement's testing and results requirements; disqualify BAP-approved physicians; and/or provide new BAP testing for the affected NFL players. *Id.*

Movants' arguments are incorrect. Section 8.6 of the Settlement Agreement expressly grants the Claims Administrator authority to "undertake or cause to be undertaken further verification and investigation, including into the nature and sufficiency of any Claim Package or Derivative Claim Package documentation." ECF No. 6481-1 at 46-47. Section 9.1 of the Settlement Agreement grants the Claims Administrator authority to "determine whether a Settlement Class Member qualifies for a Monetary Award" by, in part, "review[ing] the Claim Package, including . . . medical records reflecting the Qualifying Diagnosis[.]" *Id.* at 47.

The Settlement Agreement further tasks the AAP, which is made up of neutral board-certified neurologists, with "advis[ing] the Court or the Special Master with respect to medical aspects of the Class Action Settlement . . . ." Settlement Agreement § 2.1(g), ECF No. 6481-1 at 9. The Claims Administrator's long-established practice of consulting with the AAP is reflected in the Settlement Program Frequently Asked Questions, available on the Settlement website: "If you have [sent in a complete Claim Package], your claim will be reviewed on its merits either by the Claims Administrator or by an AAP doctor." Settlement Program FAQ 138.

Contrary to Movants' assertions, these provisions of the Settlement Agreement are

4

not limited to addressing audits and investigations, but are included in the articles governing submission and review of all claim packages, as well as notice to Class Members. *See* Settlement Agreement, §§ 8-9, ECF No. 6481-1 at 43-54.

This interpretation is further bolstered by Special Master David Hoffman, who has previously rejected Movants' argument in a written decision:

> [T]he Claims Administrator is responsible for processing and reviewing Claim Packages and determining whether Claimants are entitled to Monetary Awards. Having entrusted the Claims Administrator with this central responsibility, the Parties to the Settlement incorporated language granting it broad authority to take the steps necessary to do its job: "The Claims Administrator will have the discretion to undertake or cause to be undertaken further verification and investigation, including into the nature and sufficiency of any Claim Package or Derivative Claim Package documentation, including, without limitation, as set forth in Section 10.3 [regarding audit procedures]."
>
> As such, it simply cannot be the case that the claims Administrator – tasked with reviewing the sufficiency of complex medical documentation, and authorized to "undertake or cause to be undertaken further verification and investigation, including into the nature and sufficiency of any Claim Package" – does not have authority to request assistance from the Settlement's appointed expert medical reviewers. The AAP's very purpose is to provide advice regarding the "medical aspects" of the Settlement – for which non-medical professionals will, at times, necessarily need assistance in understanding and interpreting. Limiting the Claims Administrator's ability to ask for the AAP's assistance in making particular, nuanced, medical determinations would unquestionably run contrary to the goals and purpose of the Settlement.

Special Master's April 25, 2022 Decision at 8, https://www.nflconcussionsettlement.com/Docs/stroke_sm_2.pdf.

Movants rely heavily on a different portion of Special Master Hoffman's Decision,

in which he writes that the AAP "should defer to the articulated medical judgments of examining [providers]." *Id.* But deference is not the same thing as blind and automatic acceptance. AAP review of the medical records underlying Claims Packages is integral to attaining the diagnostic accuracy administration of the Settlement requires, and is expressly provided for by the terms of the Settlement Agreement.

For all of the above reasons, Movants' conception of the role of the AAP in evaluating BAP diagnoses is overly narrow. Movants interpret the Settlement Agreement as only allowing AAP review of BAP claims when there are conflicting diagnoses, citing Section 9.8(a)(v) of the Settlement Agreement. This Section addresses compensation of the AAP and AAPC, which is paid out of the BAP fund "in cases where there are conflicting diagnoses by Qualified BAP Providers." ECF No. 6481-1 at 53. But this provision merely addresses when AAP review is paid for from the BAP fund, or the Monetary Award Fund. It does not limit AAP and AAPC review to cases in which there are conflicting BAP diagnoses.

A BAP diagnosis is not an automatic rubber stamp for a Class Member to receive a monetary award. Rather, the BAP program is distinct from the claims review process, and BAP diagnosis is simply only one component of a successful Claim Package, which must be reviewed by the Claims Administrator. For the reasons already discussed, the Claims Administrator may request AAP review of the medical records underlying a Claim Package in making a determination of whether a Class Member is entitled to receive a Monetary Award, regardless of whether there are conflicting diagnoses.

### b) The "Race Norming" agreement

Movants' second argument is that the Race Norming Agreement fails to make Black Class Members whole because it does not toll the age of affected claimants from the time they were first tested, before the Race Norming agreement was implemented, and does not account for changes in health or death in the interim period. As a result, they argue that the ages of affected Class Members should be "tolled" as of the date of their initial testing, and Class Members who are unable to undergo expanded BAP examinations due

to death or health reasons should be sent to mediation to determine appropriate relief. Motion for Relief, ECF No. 11813-1 at 15.

Movants apparently overlook the "automatic retrospective scoring" benefit of Section 2.5 of the Norming Agreement. This Section provides that, if a player qualifies for a Monetary Award as a result of automatic rescoring, the date of diagnosis is the date of when they were initially tested. ECF No. 11502 at 8-11. In other words, the relief that Movants seek is already provided for in the Norming Agreement. This is because, for the purposes of determining an affected claimant's Monetary Award, the player's age is his age when he was first tested, rather than his age at the time of rescoring. Section 2.6(e) of the Norming Agreement further provides that affected claimants who receive expanded BAP examinations may have their new diagnosis "relate back to the date of an earlier exam that, upon application of the New Method, sufficiently demonstrates that the Retired Player previously met all of the criteria for the new diagnosis[.]" ECF No. 11502 at 12. Therefore, whether a player qualifies for automatic rescoring or an expanded BAP examination under the Norming Agreement, his age is either automatically "tolled" or may be "tolled" upon a showing that he met the criteria for the new diagnosis when he was first tested.

The Norming Agreement also gives players who are unable to attend expanded BAP examinations due to death or declining health recourse that renders mediation unnecessary. Section 2.6(f) provides that "[i]f a Retired Player cannot travel for a new BAP examination . . . subject to a 'good cause' standard, or if a Retired Player has died and cannot now be retested, a Special AAP Panel will determine if the Retired Player's rescored test results and Settlement Claim file meets the criteria for a new or more severe Qualifying Diagnosis." ECF No. 11502 at 12. Movant Owens and Brown may, through their Representative Claimants, pursue this avenue for recourse.

**AND NOW**, this 27th day of December, 2022, it is **ORDERED** that the Motion for Relief Under Article XXVII of the Settlement Agreement (ECF No. 11813) is **DENIED.**

7

BY THE COURT:

<u>     s/ANITA B. BRODY, J.     </u>
ANITA B. BRODY, J.