IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>                                           Plaintiffs,<br>      v.<br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>                                           Defendants. | |
| THIS DOCUMENT RELATES TO:<br><br>Farrise Law Firm, P.C.<br>v.<br>SPID 100009422 (C.L.)<br><br>Attorney Lien Dispute<br>(Lien Disp. No. 467) | |

**REPORT AND RECOMMEDATION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                    January 30, 2023

**I.    INTRODUCTION & PROCEDURAL HISTORY**

Presently before the Court for Report and Recommendation in the National Football League Player's Concussion Injury Litigation is the assertion of an Attorney Lien by Farrise Law Firm, P.C. ("Farrise") against the Monetary Award granted to Settlement Class Member SPID 100009422 (C.L.) (the "SCM"). By its Petition to Establish Attorney's Lien filed in April 2017, Farrise asserts that the SCM retained the firm in October 2016 to pursue a claim for injuries and damages allegedly caused by the National Football League's conduct associated with football-

1

related concussions, head, and brain injuries, and that the SCM agreed to pay a contingent fee of 23.33% of his recovery. Farrise filed the lien while it was still actively representing the SCM in an apparent attempt to establish itself "as a first priority lienholder, in the face of any other valid lien." (Doc. 7540 at 2.) The SCM, however, discharged Farrise before receiving his award. He is currently represented by Lieff Cabraser Heimann & Bernstein, LLP ("Lieff"), with whom he entered into a contingency fee agreement ("CFA") in October 2017 providing for a 33.33% fee. (Dispute Rec. Doc. 4.) Lieff sent a letter to Farrise in April 2018 to seek that firm's justification for its lien on the SCM's award but did not receive a response. (Dispute Rec. Doc. 4 at Ex. 5.)

In May 2022, the Claims Administrator issued a Notice of Monetary Award Claim Determination, setting out an award to the SCM based upon a qualifying diagnosis of Level 1.5 Neurocognitive Impairment as of January 11, 2018, which dated to the period of Lieff's representation. (Dispute Rec. Doc. 1.) In anticipation of the funding of the SCM's award, Lief reached out to Farrise again on July 29, 2022, in an attempt to resolve the lien. Lieff addressed the e-mail communication to three different addresses at "farriselaw[dot]com." One of these email addresses was used in the signature block of the line filing by Farrise in April 2017. All three e-mail messages were returned as undeliverable. (Dispute Rec. Doc. 7 at Exs. 6-8.) Lieff sent a similar communication to Farrise by U.S. mail on August 2, 2022. (*Id.* at Ex. 5.)

On July 30, 2022, and in light of the unresolved lien encumbering the award, the Claims Administrator issued on our behalf a Schedule of Document Submissions pursuant to Rule 18 of the Settlement Program's Lien Rules. (Dispute Rec. Doc. 6.) This Schedule was served upon the parties to the lien dispute using the portal designed for communications from the Claims Administrator. The Schedule imposed affirmative obligations upon each party ("each party *must* comply"), who "*must* serve the Claims Administrator with a Statement of Dispute," which was to

include a number of particulars to assist the Court in the lien dispute resolution. (*Id.* at 1 (emphasis added).) The parties were to submit their Statements by August 29, 2022. The Schedule further provided that within 15 days after the service of Statements of Dispute upon the parties, each party may serve the Claim Administrator with a Response Memorandum. (*Id.* at 2.)

The Attorney Lienholder here, Farrise, failed to submit a Statement of Dispute. The firm also failed to file a Response Memorandum to the timely SCM Statement of Dispute that Lieff submitted to the Claims Administrator on August 29, 2022. In fact, Farrise has taken no further action with respect to perfecting its interest in this counsel fee since it filed its lien petition in April 2017.[1]

Lieff, however, has been fully compliant with the Attorney Lien Dispute Resolution Process. Both when Notice of a Monetary Award was initially given in 2018 and when it was confirmed post-appeal in 2022, Lieff reached out to Farrise to attempt to resolve the lien. Lieff attempted to dialogue with Farrise about the lien but was unsuccessful in reaching Farrise despite trying all known e-mail and postal service addresses. (Dispute Rec. Doc. 7 & Exs. 5-6.) Lieff, however, complied with a request from the Claims Administrator regarding the initial stages of this lien dispute process. It submitted its Statement of Attorney Fees and Expenses on July 19, 2022 (Dispute Rec. Doc. 5) and submitted a Statement of Dispute on behalf of the SCM pertaining to Farrise's attorney lien on August 29, 2022. (Dispute Rec. Doc. 7.) Pursuant to Lien Rule 17, the Record of Dispute was then transferred to the Court. While Lieff made a timely request for a hearing, we determined that a hearing was not necessary. *See* Lien Rule 22.

---

[1] We note that Rule 27 of the Lien Rules require all Attorney Lienholders and current counsel for Settlement Class Members to notify the Claims Administrator of any chambers of address, including email addresses.

**II.    DISCUSSION**

Given the posture of this case and the content of the dispute record, we have little difficulty in recommending that Farrise's lien be rejected and that the entire fee authorized in this case be awarded to current counsel, Lieff.  We outline both our waiver analysis and our merits assessment below.

**A.    The Attorney Lienholder has waived its right to assert its lien.**

The procedures outlined in the Schedule of Document Submissions described above are grounded in the Amended Rules Governing Attorney's Liens that were approved by the undersigned by Order entered on October 2, 2018 and adopted by Judge Brody on October 3, 2018. (ECF Doc. 10283.)  Rule 14 requires the parties to engage in efforts to reach an agreement on the lien dispute.  Rule 12 explains that the Claims Administrator will refer the dispute to me or to another United States Magistrate Judge, either for resolution or for preparation of a Report and Recommendation.  Rule 17(a) provides that "each Attorney Lienholder and the current attorney, if the SCM is represented, *must* serve the Claims Administrator with a Statement of Dispute. (Lien Rule 17(a) (emphasis added).)  Thereafter, the party in receipt of a Statement of Dispute *may* serve the Claims Administrator with a Response Memorandum to the opposing party's Statement of Dispute.  (Lien Rule 18 (emphasis added).)  The clear purpose of these Rules is to provide me, as the presiding Magistrate Judge, with support for the positions asserted by the parties.

Farrise did not file a Statement of Dispute prior to the due date of August 29, 2022 and did not avail itself of the opportunity to respond to the SCM's Statement of Dispute filed by Lieff.  We have no reason to doubt that Farrise maintained the opportunity to receive communications regarding the claims process and its liens filed through the portal maintained by the Claims Administrator.  If that channel of communication had closed, we presume it was due to deficiencies on Farrise's end.  Farrise had constructive notice of its obligations under the Rules and failed to

4

comply with these requirements.  This failure to file pursuant to the Rules constitutes a failure to proceed and thus a forfeiture of its rights in this dispute.  For this reason alone, we would recommend that the lien petition be denied.

      **B.**      **Our review of the substance justifies Lieff's position.**

We have set out in previous opinions our approach to the merits of these attorney lien claims based upon CFAs entered into by a SCM.  This approach involves our assessment of the reasonableness of the requested fee under the CFA in light of the factors set out by the Third Circuit in *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97 (3d Cir. 1985) ("*McKenzie I*") and *McKenzie Constr., Inc. v. Maynard*, 823 F.2d 43 (3d Cir. 1987) ("*McKenzie II*").  *See* ECF Doc. 10368 at 11-26 (discussing *McKenzie*).  We first scrutinize the reasonableness of the CFA at the time of the contract's signing and then determine if the circumstances compel a different evaluation of the CFA at the time of its enforcement.  We next examine the results obtained, the quality of the representation provided by the attorney lienholder, and whether the efforts of the attorney lienholder substantially contributed to the result.  *See McKenzie I*, 750 F.2d at 101; *McKenzie II*, 823 F.2d at 45 n.1.

The Farrise CFA dates to October 2016.  The collective individual cases filed against the NFL prior to this time already had been consolidated into this MDL in January 2012, at which point the risk related to the *volume* of work to be undertaken by a law firm representing a retired player changed dramatically.  Once an MDL was formed, "lawyers contracting to represent clients were well aware that the costs of doing so had been greatly reduced: pre-trial proceedings would now be consolidated and undertaken once and the likelihood that any case would be remanded for trial declined significantly." (Doc. No. 9526 at 26).  The formation of an MDL also resulted in the creation of the Plaintiffs' Executive Committee ("PEC"), a Plaintiffs' Steering Committee

5

("PSC"), and other committees that took over the primary work in the case. *See* Case Management Order Number 5 (Doc. No. 3710 at 3) (detailing types of work shifted from individually-retained attorneys to Plaintiffs' Committees, which would be compensated through a common benefit fund). Thereafter, the leadership committee in the MDL proposed an aggregate class action settlement. On August 29, 2013, the Parties signed a Term Sheet. On April 22, 2015, the District Court approved the final Settlement Agreement. On April 18, 2016, the Third Circuit affirmed the District Court's decision. And on December 12, 2016, the petitions for writ of *certiorari* were denied.[2]

Farrise agreed to represent the SCM on October 25, 2016, at which time the approval of the Settlement Agreement had been affirmed by the Third Circuit and the only uncertainty was whether the Supreme Court might grant *certiorari*. At the time of contracting, then, Farrise could be reasonably confident that the SCM's claim would resolve by way of the settlement and that litigation would not be required.

The *McKenzie* test next asks us to look at the quality of the representation provided by the attorney lienholder. The Claims Administrator's records reflect that Farrise registered the SCM in the settlement program on February 8, 2017 and submitted a claim on his behalf on May 23, 2017. Current counsel has explained that that initial claim submission went into an audit phase and that there was an adverse audit finding such that the claim could not be approved. After Lieff was retained in October 2017, however, it promptly got to work on researching the SCM's

---

[2] We laid out specifics of the benefit of Class Counsel's efforts in our initial attorney lien dispute Report and Recommendation. *See* Doc. No. 10368 at 13-18.

eligibility and scheduling an MAF examination. By January 2018, Lieff was reviewing his previous claim documents and uploading a new claim packet. That claim was ultimately approved.

Aside from registering the SCM and filing the initial unsuccessful claim, the particular work performed by Farrise for the SCM is not apparent to us. The Petition to Establish Attorney's Lien that the firm filed on April 21, 2017 pre-dated the filing of the claim and appears to contain stock language[3] that the firm "has actively and diligently investigated, prepared, and pursued Claimant's claims, and has taken all steps necessary to prosecute those claims, including, but not limited to, correspondence and communications with the client, preparation and review of client's factual and legal circumstances, retaining experts, drafting and providing client updates, analyzing Claimant's medical status and need for medical testing, etc." (Dispute Rec. Doc. 2, Pet. at ¶ 5.)

By contrast, Lieff has presented an attestation, supported with detailed time records, that it performed all of those tasks --- and many more --- on behalf of the SCM. Its Statement of Dispute includes a chronology of tasks performed from October 2017 through May 2022, when the Monetary Award was finalized and after which it turned its attention to resolution of this Attorney Lien. The chronology contains specific entries identifying the kind of work we would expect counsel to be undertaking. The submission is well-supported and compliant with our process. It makes clear that Lieff provided a quality representation throughout what proved to be a challenging trajectory to the SCM's claim, with appeals processes that apparently brought the SCM's claim before the Special Masters and the Court on more than one significant issue.

Finally, the *McKenzie* test requires us to consider the extent to which the attorney lienholder's efforts substantially contributed to the favorable result. We have little information

---

[3] To be sure, nearly identical language appears in lien petitions we have reviewed from other attorneys in this litigation. *See, e.g.,* Doc. No. 10608.

before us that would suggest that Farrise substantially contributed to the result achieved for the SCM here. The firm registered the SCM and quickly submitted a claim. But that claim did not result in an award, and Lieff's submission suggests that there was an adverse audit finding. (SCM Stmt. of Disp. at 3.) There is no evidence in the record that Farrise performed any other tasks for the SCM that could have benefitted his claim.

By contrast, Lieff arranged for the SCM to be evaluated by a board-certified neuropsychologist and a MAF Qualified Neurologist. Based on those evaluations, the SCM was diagnosed with a qualifying diagnosis for a monetary award. The firm worked up the claim and submitted it in February 2018. The SCM received a Notice of Monetary Award Determination the following month, but the NFL Parties appealed it. This required Lieff to prepare and submit a response in opposition to the appeal in May 2018. Following review by the Special Masters, the SCM was issued a Post-Appeal Monetary Award Claim Determination in August 2018. Lieff informs us, however, that the NFL Parties filed objections to the Special Masters' determination on two separate grounds that proceeded through the appeal process independent of one another. Lieff was again required to respond to the objections, one of which was part of a broader litigation issue and one that was particular to this SCM. The Special Masters denied both of those objections in decisions rendered in September and October 2018. The NFL Parties then took those decisions on appeal to the Court. In November 2018, Lieff contributed to a joint brief with other attorneys on the one issue (the "generally consistent" appeal), and also submitted its brief on behalf of this SCM in response to the other appeal (the "mandatory AAP review"). As Lieff describes it, the NFL withdrew one of its appeals, and the other was decided the favor of the claimants. The Court then remanded the SCM's claim back to the Claims Administrator for further review, as new procedures for the scoring of neuropsychological testing undertaken in relation to the qualifying

diagnoses of Neurocognitive Disorder Levels 1.0, 1.5, and 2.0 were also under consideration at that time.[4] Lieff used this time to review and arrange for settlement of the SCM's pre-settlement loan obligations as part of the Third Party Funder Resolution Process established for the Settlement Program. It also researched and supplemented his Eligible Season credit.

The *McKenzie* analysis confirms that the attorney lien of Farrise should be rejected in large part, if not in its entirety. Lieff clearly earned the vast majority of the fee available from this award. Farrise could claim at most a *de minimis* portion of the fee available from this award for the registration of the SCM in the Settlement Program in 2017. Yet Farrise has not even attempted to meet its burden to establish that it should receive a portion of the fee available here, inasmuch as it failed to participate in the lien resolution process. In these circumstances, we can see no reason to award even a nominal sum to Farrise. Moreover, given that Lieff was required to go to rather extraordinary measures to secure an award for this SCM, we would not recommend reducing its share of the fee authorized in this case. We would authorize Lieff to receive as much as the full 22% fee, a 17% portion of which is available for release at this time and the remainder of which is set aside at present.

## III. CONCLUSION

We recommend that the Court authorize the Settlement Claims Administrator to disburse the funds withheld for counsel fee to Lieff in accordance with the provisions of the Settlement Agreement and all Court Orders regarding implementation, including the Court's June 27, 2018 Order Regarding Withholdings for Common Benefit Fund. (Doc. No. 10104.) This result is

---

[4] Lieff's submission suggests that the neuropsychological testing that had been undertaken in 2018 was rescored under the Norming Agreement and that a new Notice of Monetary Award followed. (SCM Stmt. of Disp. at 2.)

9

warranted in light of Farrise's failure to abide by the Attorney Lien Dispute Resolution Process and by the merits of the dispute based upon the information available on the docket and the information supplied by the Claims Administrator and Lieff.

We further recommend that the Settlement Claims Administrator be ordered to disburse the funds withheld for Lieff's costs, which were supported with appropriate documentation in Lieff's submissions.

BY THE COURT:

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE