## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL | § | No. 2:12-md-02323-AB |
| LEAGUE PLAYERS' CONCUSSION | § | |
| INJURY LITIGATION | § | MDL No. 2323 |
| | § | |
| | § | **Hon. Anita B. Brody** |
| CLAIMS FOR SPID 950011814, | § | |
| 950011815, 950011818, 950011819, | § | |
| 950011820, 950011821, 950011822, | § | |
| 950013154, 950013174, 950013176, | § | |
| 950013178, 950013179, 950013223, | § | |
| 950013403, 950013520, 950013523, | | |
| 950013608, 950013171 | | |

## MEMORANDUM OF LAW IN SUPPORT OF
## CLASS MEMBERS' MOTION TO ALTER OR AMEND THE
## ORDER THAT THE OBJECTIONS OF THE CLASS MEMBERS
## ARE DENIED [ECF 12001]

# TABLE OF CONTENTS

Page

Table of Contents ..................................................................................2

Introduction ..........................................................................................5

Factual & Procedural Background .........................................................6

    I.      The Settlement Requires Class Members to Obtain a CTE
Diagnosis by a Board-Certified Neuropathologist Without
Imposing Additional Requirements. .....................................6

    II.     Without Notice and after the Opt Out Deadline, a Change
was made to the Settlement that Materially Prejudiced
Class Members and Provided a Significant Benefit to the
NFL Parties.........................................................................11

    III.    The Court Rendered Judgment in May 2015 and Retained
Jurisdiction to Enforce the Settlement Agreement. ............13

    IV.    In response to Class Members' Motion to Modify the
Amended Final Order and Judgment [ECF 8263], the
Court instructed Class Members to Submit their Claims to
the Claims Administrator. ...................................................14

    V.     Class Members Obtained CTE Diagnoses and Submitted
their Claims to the Claims Administrator.  Those Claims
were Wrongly Denied. ........................................................15

Argument & Authorities ......................................................................17

    I.      The Court should amend its order to clearly explain that
the Class Members' objection regarding the diagnosis date
is sustained. .......................................................................17

    II.     The Court should alter its order and remand the claims to
be paid because it is clear error and a manifest injustice to
require Class Members to exhume their loved ones' bodies
to confirm the board-certified neuropathologist's CTE

diagnosis. ..........................................................................................17

Conclusion & Prayer for Relief ...........................................................20

**TO THE HONORABLE JUDGE OF THIS COURT:**

Pursuant to Federal Rule of Civil Procedure 59(e), Class Members SPID 950011814, 950011815, 950011818, 950011819, 950011820, 950011821, 950011822, 950013154, 950013174, 950013176, 950013178, 950013179, 950013223, 950013403, 950013520, 950013523, 950013608, and 950013171 ("Class Members") respectfully request that the Court alter or amend the Court's Order Denying their Objections [ECF 12001] to correct a clear error of law and prevent manifest injustice by remanding the Class Members' Objections so their claims can be paid or, in the alternative, by providing an explanation for the Court's order.

Class Members incorporate by reference, and ask the Court to take judicial notice of, all of the documents considered in resolving their claims by the Claims Administrator, the Special Master, and this Court, including the briefing and evidence attached to their objections and to the objections filed by the class members SPID 950013395 and 950012548 to the Special Master's decisions denying their appeals regarding the denials of their claims, all of which the Court considered in denying Class Members' objections.

## <u>INTRODUCTION</u>

Class Members bring this motion to alter or amend the Court's Order Denying their Objections [ECF 12001] because the Court's order does not expressly state that the Court has sustained Class Members' objection regarding the diagnosis date and is based on an erroneous conclusion of law and creates manifest injustice by allowing the Claims Administrator to add an exhumation requirement that is found nowhere in the settlement agreement.

First, the Class Members all objected to the denial of their claims based on the date of their CTE diagnoses.  The Court appears to have agreed with that objection because the Court remanded the Objections of two other class members (SPID 950013395 and 950012548) who raised that same objection.

Second, the Class Members all objected to the denial of their claims based on the assertion that the board-certified neuropathologist who provided the CTE diagnoses was required to demand that Class Members exhume the Players' bodies so brain tissue from the exhumed bodies could be examined.  That requirement is found nowhere in the Settlement Agreement and imposes an onerous (if not impossible) obligation on Class Members after they chose not to opt out of the Settlement Agreement that is inconsistent with due process and constitutes an abuse of discretion.

# FACTUAL & PROCEDURAL BACKGROUND

The Class Members' claims appear to have been denied because they did not exhume the family members' corpses so the board-certified neuropathologist who provided the CTE diagnoses could confirm his diagnoses by examining brain tissue from the Players' exhumed bodies.  But the settlement agreement contains no such requirement.

## I.   The Settlement Requires Class Members to Obtain a CTE Diagnosis by a Board-Certified Neuropathologist Without Imposing Additional Requirements.

The settlement agreement this Court initially approved imposed no deadline on class members seeking to obtain a Qualifying Diagnosis of Death with CTE.  *See* Settlement as of June 25, 2014, ECF No. 6073-2, § 6.3(f), Exh. B-1, p. 5.  The initially-approved agreement required that class members need only obtain a post-mortem diagnosis of CTE by a board-certified neuropathologist.  *Id.*

In July 2014, this Court issued a preliminary approval of the Settlement reached by Class Counsel and the NFL Parties.  *See* Order Granting Prelim. Approval, ECF No. 6481.  This settlement agreement[1] was signed by a representative of the NFL Parties, counsel for the NFL Parties, Co-Lead Class Counsel, Class Counsel, and

---

[1]   The Court had previously denied the parties' motion for preliminary approval of an original, previously-agreed-to settlement agreement because of concerns that the original settlement agreement might not adequately compensate Class Members.  Mem. Op. at 10, ECF No. 5657.

Subclass Counsel.  *See* Settlement Agreement as of June 25, 2014, ECF No. 6073-2, p. 95.

The settlement agreement stated that class members could recover settlement proceeds by obtaining a Qualifying Diagnosis of Death with CTE.  *See id.*, § 6.3(f), Exh. B-1, p. 5.  The agreement placed a limit on the Retired NFL Football Players who could obtain a Qualifying Diagnosis of Death with CTE — allowing "Retired Football Players who died prior to the date of the Preliminary Approval and Class Certification Order" to obtain a Qualifying Diagnosis.  *Id.*  However, the agreement imposed no deadline on obtaining a Qualifying Diagnosis.  *See id.*  The only requirement imposed on obtaining a Qualifying Diagnosis was that eligible class members obtain the diagnosis of Death with CTE from a board-certified neuropathologist:

> A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, through a post-mortem diagnosis by a board-certified neuropathologist of CTE.

*Id.*, § 6.3(f), *see also id.* Exh. B-1, p. 5 (requiring a "post-mortem diagnosis of CTE made by a board-certified neuropathologist").

The NFL Parties sent copies of the settlement agreement as of June 25, 2014 to the United States Attorney General and to the Attorney General for each state, the District of Columbia, and the territories.  *See* ECF No. 6501 at 2–3.

Similarly, the Summary Notice sent to class members before the deadline to opt out contained no notice of any diagnosis deadline on class members seeking to obtain a Qualifying Diagnosis of Death with CTE.  *See* Summary Notice, ECF No. 6093-2.  The Summary Notice merely stated that class members could obtain monetary awards for "certain cases" of CTE "diagnosed after death."  *See id.*  The Summary Notice contained the opt-out deadline (October 14, 2014) but contained no similar disclosure of a deadline to obtain a post-mortem diagnosis of Death with CTE.  *See id.*

Additionally, the Long-Form Notice sent to class members contained no deadline on class members seeking to obtain a Qualifying Diagnosis of Death with CTE.  *See* Long-Form Notice, ECF No. 6093-1.  In fact, the Long-Form Notice expressly stated that a Qualifying Diagnosis could occur *at any time until the end of the 65-year term of the Monetary Award Fund*.  *See id.* at 10.

Like the Summary Notice, the Long-Form Notice contained no notice of any diagnosis deadline applicable to class members seeking to obtain a Qualifying Diagnosis of Death with CTE.  *See id.* at 1 (stating that monetary awards were available for certain cases of CTE "diagnosed after death"), 6 (stating that monetary awards were available for diagnoses of Death with CTE if the death occurred prior to July 7, 2014, i.e., the Preliminary Approval Date), 7 (stating that Subclass 1 includes "Retired NFL Football Players who were <u>not</u> diagnosed with . . . Death with

CTE prior to **July 7, 2014**, and their Representative Claimants and Derivative Claimants").

Unlike the Summary Notice, the Long-Form Notice expressly represented to class members that they could obtain a diagnosis of Death with CTE "at any time until the end of the 65-year term of the Monetary Award Fund":

> Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, [Neurocognitive Impairment,] or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

*Id.* at 10.

The Long-Form Notice also expressly discussed whether Qualifying Diagnoses could be obtained for deceased players without disclosing any deadline for obtaining a diagnosis of Death with CTE. *Id.* at 14. In that section of the Long-Form Notice, various other restrictions are noted; however, there is no discussion of any deadline for obtaining a Qualifying Diagnosis of Death with CTE. *See id.*

The Long-Form Notice also provided class members with a link to the website where they could review the Settlement Agreement as of June 25, 2014. *Id.* at 15. As discussed above, this Settlement Agreement, which class members were able to review prior to the opt out deadline, contained no deadline for obtaining a Qualifying Diagnosis of Death with CTE. *See* Settlement as of June 25, 2014, ECF No. 6073-

2, § 6.3(f), Exh. B-1, p. 5.

At the end of the Long-Form Notice, class members were provided a list of important dates. *See* Long-Form Notice, ECF No. 6093-1, at 20. Nowhere in these important dates is there any deadline to obtain a Qualifying Diagnosis of Death with CTE. *Id.*

On November 19, 2014, the Court conducted a Fairness Hearing regarding the Settlement Agreement. *See* Am. Fairness Hr'g Tr., ECF No. 6463. After the Fairness Hearing the Court proposed several changes to the Settlement and expressly instructed the parties that these changes should benefit class members by enhancing the "fairness, reasonableness, and adequacy of the proposed Class Action Settlement Agreement." *See* Order, Feb. 2, 2015, ECF No. 6479.

One of the changes ordered by the Court involved expanding the number of class members who could obtain a Qualifying Diagnosis of Death with CTE. *Id.* Specifically, the Court ordered that "Retired NFL Football Players who die between preliminary approval and final approval of the Settlement" should be included in the Settlement and able to receive Settlement funds by obtaining a Qualifying Diagnosis of Death with CTE. *Id.*

The Court's order was clearly intended to benefit the Class by expanding the number of class members who can recover settlement proceeds, *not* to benefit the NFL Parties by removing class members' ability to recover settlement proceeds. *See*

*id.*; *see also* Court's Memorandum, April 22, 2015, ECF No. 6509, p. 22 ("After reviewing the moving papers, the objections, and the arguments made at the Fairness Hearing, I proposed several changes to the Settlement that would benefit Class Members.")   Nothing in this Court's order indicated that a new, previously-undisclosed deadline should be imposed on class members that would prevent them from obtaining a Qualifying Diagnosis of Death with CTE.  Unfortunately, when the Court's ordered change was made — expanding the number of class members who could obtain a Qualifying Diagnosis of Death with CTE — an additional change was made that surreptitiously took away the ability of class members to obtain a Qualifying Diagnosis.

## II.    Without Notice and after the Opt Out Deadline, a Change was made to the Settlement that Materially Prejudiced Class Members and Provided a Significant Benefit to the NFL Parties.

Without notice to the Court or class members, a change was made to the Settlement Agreement that attempted to prevent class members from obtaining a Qualifying Diagnosis of Death with CTE.  *See* Parties' Joint Amendment, Feb. 13, 2015, ECF No. 6481, § 6.3(f), Exh. B-1, p. 5.  This change was made months after the opt out deadline without notice to class members or the Court.  *See id.*; *see also* Court's Memorandum, April 22, 2015, ECF No. 6509, p. 56.

Unlike the Settlement Agreement filed in June 2014, which simply required a post-mortem diagnosis of CTE made by a board-certified neuropathologist, a change

was included in the midst of otherwise beneficial amendments that imposes an additional, onerous requirement on class members that prevents them from recovering settlement proceeds unless they obtained a Qualifying Diagnosis before May 8, 2015.  The change to the relevant language in the Settlement Agreement is shown below with the added language in bold-faced type and the deleted language noted:

> A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the date of the **Final** ~~Preliminary~~ Approval **Date** ~~and Class Certification Order~~, through a post-mortem diagnosis **made** by a board-certified neuropathologist ~~of CTE~~ **prior to the Final Approval Date**.

*Id.*, § 6.3(f) (edits shown in bold and strikethrough font), *see also id.* Exh. B-1, p. 5 (requiring a "post-mortem diagnosis of CTE made by a board-certified neuropathologist **prior to the Final Approval Date**") (added language in bold-faced type).  No notice was sent to class members notifying them of this significant and prejudicial change to the Settlement.

The amendments to the Settlement Agreement were filed with the Court on February 13, 2015.  Although "Opt Outs" received notice of these amendments to the Settlement, *See* Notice, Mar. 31, 2015, ECF No. 6500, no notice was sent to class members because the Court was under the impression that all of the changes made to the Settlement Agreement "improved the deal for Class Members without

providing any concessions to the NFL Parties." Court's Memorandum, April 22, 2015, ECF No. 6509, p. 56.  Although the Court's Memorandum clearly expresses the Court's understanding that the changes should have all benefitted class members, no one notified the Court that, in fact, a change had been made to the Settlement that prejudiced the rights of class members.

Thus, both the Court and class members were unaware that changes had been made to the Settlement that required class members to obtain a Qualifying Diagnosis of Death with CTE by the Final Approval Date. *See id.*  If the Court had been aware of these changes, the Court — at a minimum — would have required an additional round of notice for class members. *See id.* ("Because these changes improved the deal for Class Members without providing any concessions to the NFL Parties, an additional round of notice for Class Members is unnecessary.").   And if Class Members had been aware of this change, they could have made an informed decision about whether they could obtain a Qualifying Diagnosis for Death with CTE by this new deadline or chosen to opt out of the Settlement.

## III.   The Court Rendered Judgment in May 2015 and Retained Jurisdiction to Enforce the Settlement Agreement.

Unaware that a material change had been made to the Settlement Agreement that prevents Class Members from obtaining a Qualifying Diagnosis, the Court signed an Amended Final Order and Judgment on May 8, 2015.  ECF No. 6534, at 1.  In

this Judgment, the Court incorporated both the Settlement Agreement and exhibits originally filed with the Court on June 25, 2014 and the amendments filed on February 13, 2015.  *See id.* at ¶ 8.  The Court also retained continuing exclusive jurisdiction over this action, including jurisdiction over all Parties and their counsel and all Settlement Class Members, to interpret, implement, administer, and enforce the Settlement Agreement.  *Id.* at ¶ 17.

## IV.   In response to Class Members' Motion to Modify the Amended Final Order and Judgment [ECF 8263], the Court instructed Class Members to Submit their Claims to the Claims Administrator.

The Court has previously considered a Motion to Modify the Amended Final Order and Judgment [ECF 8263] and denied the motion without prejudice to a consideration of the issues in that motion at a later time.[2]  In that motion, Class Members brought the Court's attention to the fact that although the Original Settlement Agreement contained no deadline for obtaining a Death with CTE Diagnosis, language appears to have been surreptitiously added to the Amended Settlement Agreement that could be read to have added a diagnosis deadline without notice to the Court or to the class members.[3]  The motion sought relief under both Rule 60 and the Court's inherent authority to implement the settlement by amending

---

[2]   *See* Order [ECF 8557]

[3]   Motion to Modify [ECF 8263]

the Court's judgment.[4]

The Court denied the motion without prejudice and stated that before it would consider the "extraordinary action of modifying the Settlement Agreement," class members must first submit a claim to the Claims Administrator.[5]

## V. Class Members Obtained CTE Diagnoses and Submitted their Claims to the Claims Administrator. Those Claims were Wrongly Denied.

Class Members submitted their claim packages, and each claim package included a post-mortem diagnosis of Chronic Traumatic Encephalopathy ("CTE") made by a board-certified neuropathologist. Class Member's claim package also included documentation showing that the Player died prior to April 22, 2015.[6]

As the Court is aware from reviewing the claim information, despite the documentation in the Class Members' claim packages, the Claims Administrator denied the claims because (1) diagnosis date, i.e., the board-certified neuropathologist's CTE diagnoses were not dated on or before April 22, 2015 and (2) confirmation of diagnosis, i.e., the claim packages did not show that the board-certified neuropathologist confirmed the CTE diagnoses by exhuming the Players'

---

[4]   *Id.*

[5]   Order [ECF 8557]

[6]   *Id.*

bodies and examining the exhumed bodies' brain tissue.

Class Members timely appealed the Claims Administrator's Notice of Denial of Monetary Award Claim challenging the two conclusions of law in the Notice regarding the diagnosis date (class members 950013395 and 950012548 made this same challenge) and the "confirmation" requirement. The Special Master denied the Class Members' appeals in September 2019, and Class Members timely filed objections with this Court.

On February 24, 2023, this Court denied the Class Members' objections. [ECF 12001] In that same order, the Court granted the objections of two other class members who had also raised an identical objection based on the diagnosis date. Unlike Class Members, those two other class members did not have their claims denied on the second ground (i.e., confirmation of diagnosis).

# ARGUMENT & AUTHORITIES

## I.   The Court should amend its order to clearly explain that the Class Members' objection regarding the diagnosis date is sustained.

In their objections to this Court, Class Members pointed out that the Claims Administrator had committed a legal error by denying Class Members' claims based on the date of the CTE diagnoses.  This same argument was raised by class members 950013395 and 950012548.  By remanding the claims raised by class members 950013395 and 950012548, it appears clear that the Court agrees with Class Members' objection regarding the diagnosis date.  To clarify the Court's order and simplify the issues for the appellate court, if an appeal becomes necessary, Class Members respectfully request the Court amend its Order to clarify that the Court sustains Class Members' objection regarding the diagnosis date.

## II.   The Court should alter its order and remand the claims to be paid because it is clear error and a manifest injustice to require Class Members to exhume their loved ones' bodies to confirm the board-certified neuropathologist's CTE diagnosis.

In their objections to this Court, Class Members explained that the Claim Administrator clearly erred and created a manifest injustice by denying their claims based on the fact that the board-certified neuropathologist did not require Class Members to exhume their loved ones' bodies so he could confirm his CTE diagnosis.

As a matter of law, there is no requirement in the settlement agreement that a board-certified neuropathologist "confirm his diagnosis" by reviewing brain tissue.[7] The settlement agreement simply requires a diagnosis, which Dr. Hamilton provided.[8] Dr. Hamilton is one of only a handful of board-certified neuropathologists in the United States, and he provided a post-mortem diagnosis for each of the Class Members that each of these Players was suffering from CTE when they died. That CTE diagnosis is all the settlement agreement requires.[9]

Allowing the Claims Administrator to add an arbitrary, after-the-fact requirement that the Players' bodies must be exhumed to confirm the board-certified neuropathologist's diagnoses is clear error because it ignores the terms of the settlement agreement and violates Class Members' due process rights. *See Hansberry v. Lee*, 311 U.S. 32, 42 (1940); *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005); *see also* Fed. R. Civ. P. 23(a)(4); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004); *In re Gen. Motors Corp.*

---

[7]  *See* Amended Settlement Agreement [ECF 6481] § 6.4(f).

[8]  *See id.*

[9]  *See id.* Notably, the settlement agreement plainly treats CTE diagnoses differently than other types of diagnoses, for which the settlement agreement requires specific and detailed procedures. *See id.* §§ 5.1–5.14 (creating the Baseline Assessment Program and exempting Death with CTE from the program), § 6.3(a)–(e) (requiring that certain diagnoses, other than Death with CTE, be made by certain physicians on an approved list); *see also* Exhibit 2 to the Amended Settlement Agreement (providing standardized neuropsychological testing protocols for determining certain diagnoses).

*Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir. 1978). Due process requires that the notice of settlement fairly inform absent class members of the proposed terms of a settlement agreement in sufficient detail to allow them to "make informed decisions on whether they should take steps to protect their rights." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013); *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *Hansberry*, 311 U.S. at 42; *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975). Class action procedures do not fairly protect the due process rights of absent class members when the absent class members have not been provided meaningful notice and an adequate opportunity to participate in the proceedings or opt out. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (discussing *Mullane*, 339 U.S. 306); *Hansberry*, 311 U.S. at 42; *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d at 145–47. A notice that does not inform absent class members of the fundamental reason they may want to object to a settlement violates due process. *See Eisen*, 417 U.S. at 173–74 (quoting *Mullane*, 339 U.S. at 314) (recognizing that "process which is a mere gesture is not due process").

Additionally, allowing the Claims Administrator to add this exhumation requirement creates a manifest injustice because many class members cannot satisfy this post-opt-out requirement. Many class members are unable to agree to exhuming

their loved ones' bodies based on their religious or philosophical beliefs.  And many other class members are unable to satisfy this requirement because their loved ones' remains may have been cremated or, for other reasons, no longer be in a condition that allows testable brain tissue to be obtained.

## **CONCLUSION & PRAYER FOR RELIEF**

Accordingly, for the reasons set forth above, the Court should grant this motion and alter and amend the Court's Order Denying their Objections [ECF 12001] as described above.

Dated: March 24, 2023

Respectfully Submitted:

/s/ Justin Demerath

**Justin Demerath**
Texas State Bar No. 24034415
**David Campbell**
Texas State Bar No. 24057033
O'HANLON, DEMERATH & CASTILLO
808 West Avenue Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919
jdemerath@808west.com
dcampbell@808west.com

**Counsel for Class Members SPID 950011814, 950011815,**

**950011818, 950011819, 950011820, 950011821, 950011822, 950013154, 950013174, 950013176, 950013178, 950013179, 950013223, 950013403, 950013520, 950013523, 950013608,          and 950013171**