## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>     Plaintiffs,<br><br>  v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.<br>     Defendants. | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO:<br>Settlement Class Members SPID<br>950011814, 950011815, 950011818, 950011819, 950011820, 950011821, 950011822, 950013154, 950013174, 950013176, 950013178, 950013179, 950013223, 950013403, 950013520, 950013523, 950013608, 950015171 | |

## RESPONSE OF THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC IN OPPOSITION TO CLASS MEMBERS' MOTION TO ALTER OR AMEND THE ORDER THAT THE OBJECTIONS OF THE CLASS MEMBERS ARE DENIED

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................4

ARGUMENT...............................................................................................................................8

     A.     The Claims At Issue Are Insufficient Because Diagnosing Physicians Must Examine Brain Tissue to Render a Qualifying Diagnosis of Death with CTE.............................................................................................................10

     B.     The Claims At Issue Are Untimely Because Qualifying Diagnoses of Death with CTE Must Be Rendered Prior to the Deadline Set Forth in the Settlement Agreement ..........................................................................................12

     C.     The Settlement Agreement Fully Satisfies Due Process, and the Bargained-For, Court-Approved Deadlines Do Not Prejudice the Settlement Class..................................................................................................15

CONCLUSION...........................................................................................................................18

The National Football League and NFL Properties LLC (collectively, the "NFL Parties") respectfully submit this response in opposition to the above-captioned Class Members' ("Movants") Motion to Alter Or Amend the Order that the Objections Of the Class Members Are Denied (the "Motion"). In the Motion, Movants seek reconsideration of the Court's February 24, 2023 Order (the "Order") denying Movants' objections because their claim packages (the "Claims At Issue") are insufficient. For the reasons set forth below, Movants' arguments are without merit, and the Motion should be denied.

## PRELIMINARY STATEMENT

The Motion—seeking reconsideration of the Court's denial of Movants' objections to multiple rulings that their claims are fundamentally deficient under the plain terms of the Class Action Settlement Agreement—should be denied.

In June 2019, the Claims Administrator properly denied 20 suspect claims, including Movants' claims, asserting Qualifying Diagnoses for Death with CTE based on near-identical undated letters from the same neuropathologist, Dr. Ronald Hamilton. The Claims Administrator's denial of Movants' claims was founded on two fundamental reasons. First, it is undisputed that Dr. Hamilton never performed the post-mortem examination of the subject Retired Players' brain tissue required to render such diagnoses under the Settlement Agreement. Second, Dr. Hamilton rendered his supposed "diagnoses" after the Settlement Agreement's clear deadline for a Death with CTE diagnosis.

Movants appealed their claim denials. In written decisions, the Special Master denied the appeals, concluding that "[b]ecause Dr. Hamilton did not examine [the Retired Players'] brain tissue as is necessary to diagnose Death with CTE, *and* because there is no proof that the diagnosis was timely," Movants' claims "me[t] neither of the two Settlement requirements for a diagnosis of Death with CTE." (July 15, 2020 Special Master Decision, SPID 950011814,

Doc. ID 226563.)[1]  Movants next objected in this Court to the Special Master's decision, arguing that: (1) the Settlement Agreement's Injury Definition for Death with CTE allegedly did not require Dr. Hamilton to examine Retired Players' brain tissue to render the diagnoses, even though, as the Court has made clear, post-mortem examination of brain tissue is the *only* way that CTE can be diagnosed under the Settlement Agreement; and (2) Dr. Hamilton's alleged diagnoses were timely pursuant to Settlement FAQ 99 (which merely provides general guidance concerning diagnosis deadlines) because the "diagnosis date" purportedly is the date of a Retired Player's death as opposed to when the diagnosis actually occurred, even though the Settlement Agreement deadline for Death with CTE is unambiguously tied to the date of diagnosis rather than the date of a Retired Player's death.  In its Order, the Court correctly denied the 18 Claims At Issue as "insufficient," and remanded two other claims (the "Remanded Claims").

Notwithstanding three unequivocal denials of their insufficient claims under the clear terms of the Settlement Agreement, Movants now ask the Court to reconsider its Order on the same meritless grounds and mischaracterization of the Settlement Agreement advanced in their appeals and objections.  Specifically, Movants argue that, because the Court remanded two *other* claims, the Court "appears to have agreed" with Movants' objection that Dr. Hamilton's alleged diagnoses were timely.  (Motion at 5.)  Movants further argue that the Order requires "Class Members to exhume their loved ones' bodies so [the neuropathologist] could confirm his CTE diagnosis." (*Id.* at 17.)  Movants also rehash old and long-rejected arguments that the Settlement Agreement's clear Death with CTE diagnosis deadline somehow violates due process.  (*Id.* at 11.) These arguments have no merit.

---

[1] Because Movants' claims are supported by the near-identical, undated letters from Dr. Hamilton, the record citations are representative of the Claims Administrator's and Special Master's decisions on all 18 Claims At Issue.

As a threshold matter, the Motion falls far short of the settled and high standard for reconsideration. Instead of pointing to facts or law that the Court may have overlooked, Movants instead simply ask the Court to reconsider issues it has already decided because they disagree with the Court's, the Claims Administrator's, and the Special Master's decisions. Reconsideration is an extraordinary remedy that is sparingly granted. It has no place here, where Movants' claims willfully ignore the bargained-for, Court-approved requirements of the Settlement Agreement, and have been rightly rejected by the Claims Administrator, the Special Master, and the Court. Movants have not offered (and cannot offer) any legitimate ground to support a different outcome.

*First*, as this Court made clear in approving the Settlement Agreement, a proper Qualifying Diagnosis of Death with CTE requires that a board-certified neuropathologist personally examine a Retired Player's brain tissue upon his death. Movants have already conceded that Dr. Hamilton never examined the Retired Players' brain tissue, a concession that is dispositive of this Motion. Contrary to the Motion's contentions, the Court's Order did not suggest—let alone request, require, or allow—that Movants "exhume their loved ones' bodies." (Motion at 17.) The Court, Special Master, and Claims Administrator simply required what the Settlement Agreement commands, what science permits, and what scores of families of Retired Players have done: a neuropathological diagnosis based on the examination of brain tissue prior to the Death with CTE deadline.

*Second*, the Motion attempts to rely on the portion of the Order remanding two claims (*not* of Movants) as somehow "agree[ing] with the Class Members' objection regarding the diagnosis date." (Motion at 17.) But the Court made no statement at all concerning the timeliness of the Remanded Claims, and far from "grant[ing] the objections" (Motion at 16),

instead merely directed review "to further determine the sufficiency of the claims packages." (Order.)

As the Special Master held and this Court agreed, the Injury Definition for Death with CTE set forth in the Settlement Agreement expressly and unambiguously requires that a board-certified neuropathologist render the diagnosis prior to the Final Approval Date (April 22, 2015) or within 270 days after the Retired Player's death when the Retired Player died between Preliminary and Final Approval.  The Motion and prior objections willfully ignore the express language of the Settlement Agreement in an attempt to displace the Settlement Agreement's unambiguous deadline for a Death with CTE diagnosis.  Here, the Movants did not provide—and indisputably cannot provide—any evidence that Dr. Hamilton rendered the diagnosis prior to the Settlement Agreement's deadline.

*Finally*, the Motion baselessly suggests that amendments to the Qualifying Diagnosis of Death with CTE violate Movants' due process rights.  These amendments, however, *expanded* settlement benefits to the Settlement Class by allowing Retired Players who died between Preliminary and Final Approval of the Settlement Agreement to receive a Qualifying Diagnosis of Death with CTE, as the original agreement limited that Qualifying Diagnosis to those who died *prior* to Preliminary Approval.  Additional notice to a class member is necessary only when amendments to a settlement agreement are "materially adverse" to the class, not where they benefit the class, as here.

For these reasons, and those set forth herein and in the NFL Parties' opposition to Movants' objections, the Motion should be denied.

## **BACKGROUND**

The Motion is the Movants' latest attempt to circumvent the clear terms of the Settlement Agreement, which require denial of their claims.  Movants are Representative

Claimants of 18 deceased Retired Players whom Dr. Hamilton purportedly diagnosed with Death with CTE based on near-identical, undated letters.  Since February 2019, Movants have litigated and relitigated their deficient claims, failing to establish that they satisfy the Settlement Agreement's requirements of a medically valid and timely diagnosis of Death with CTE.  The Claims Administrator and Special Master denied these claims, and the Court's Order agreed that they are "insufficient."

Under the Settlement Agreement, a Qualifying Diagnosis of Death with CTE requires "a post-mortem diagnosis of CTE made by a board-certified neuropathologist prior to the Final Approval Date . . . " or within 270 days of death where applicable.  (Settlement Agreement, Ex. A-1 at 5 § 5; *see also* Settlement Agreement §§ 2.1(aa), 6.3(f).)  As the Court made clear in its Memorandum supporting Final Approval of the Settlement Agreement, post-mortem examination of brain tissue is the *only* way that CTE can be diagnosed, as "no one can conclusively say that someone had CTE until a scientist looks at sections of that person's brain under a microscope . . ."  *In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 397 (E.D. Pa. 2015), *amended*, No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), and *aff'd*, 821 F.3d 410 (3d Cir. 2016).  Further, the Settlement Agreement sets forth clear deadlines that control whether a diagnosis of Death with CTE is timely.  Specifically, Section 2.1(aa) of the Settlement Agreement provides that the Qualifying Diagnosis of "Death with CTE is defined in Exhibit 1," and Exhibit 1 states that the definition of Death with CTE is: "For Retired NFL Football Players who died prior to the Final Approval Date, a post-mortem diagnosis of CTE made by a board-certified neuropathologist prior to the Final Approval Date, provided that a Retired NFL Football Player who died between July 7, 2014 and the Final Approval Date shall

have until 270 days from his date of death to obtain such a postmortem diagnosis." (Settlement Agreement, Ex. A-1 at 5 § 5.)

All 18 Claims At Issue rely on undated, near-identical letters from Dr. Hamilton purporting to render Qualifying Diagnoses of Death with CTE. For all of the Claims At Issue, Dr. Hamilton's letters failed to provide any evidence that he examined the Retired Players' brain tissue in order to render the purported diagnosis, and indeed Movants concede that he did not. (*See* Objection at 7, SPID 950011814, Doc. ID 215705 ("It is undisputed that there is no evidence that Dr. Hamilton reviewed the Player's brain tissue.").) And for each of these claims, neither Dr. Hamilton's undated letter nor the remaining Claim Package materials provide any evidence that Dr. Hamilton actually rendered a Qualifying Diagnosis of Death with CTE prior to Final Approval of the Settlement (or, where applicable, within 270 days of death when the Retired Player died between Preliminary and Final Approval).

Realizing that these Retired Players failed to receive an actual diagnosis of Death with CTE and that any such supposed diagnosis was not made prior to the deadline expressly set forth in the Settlement Agreement, the law firm of O'Hanlon, Demerath & Castillo commenced its litigation efforts to evade the clear requirements for Qualifying Diagnoses of Death with CTE. On August 15, 2017, one of the Movants filed a Motion to Modify the Amended Final Order and Judgment (the "Motion to Modify"), claiming that the Settlement Agreement's deadline to obtain a Qualifying Diagnosis of Death with CTE was "imposed after the deadline to opt out and without notice to Class Members." (Mem. of Law in Supp. of Mot. to Modify at 18, ECF No. 8263-2.) After full briefing, the Court denied the motion without prejudice to that movant's (or other similarly situated Settlement Class Members') ability to raise the issue at a later time if the movant

filed a Death with CTE claim that would have been valid but for the deadline.  (Order, ECF No. 8557.)

These Class Members, including Movants, then waited over 15 months to file any Death with CTE claims.  20 separate claims (including the 18 Claims At Issue) were ultimately filed on February 5, 2019, the day before the submission deadline for pre-Effective Date claims.  Each of these claims relied on undated, near-identical letters from Dr. Hamilton with the clear intention of obfuscating the timing and nature of the purported Death with CTE diagnoses.  The Claims Administrator denied each of the Claims At Issue, finding that they lacked proof of diagnosis and failed to meet the applicable deadlines.

The Class Members next appealed their claim denials to the Special Master, arguing that: (1) the Settlement Agreement did not require Dr. Hamilton to examine the Retired Players' brain tissue to render a post-mortem diagnosis; (2) the date on which Dr. Hamilton diagnosed the Class Members does not matter, because Settlement FAQ 99 purportedly establishes that the "diagnosis date" for Death with CTE is the date of the Retired Player's death, regardless of whether the actual diagnosis later occurs; and (3) if the Claims Administrator determines that a diagnosing physician must render a diagnosis of Death with CTE prior to a deadline set forth in the operative Settlement Agreement, then the Settlement Agreement violates Settlement Class Members' due process rights because it reflects an adverse change to the original Settlement Agreement without proper notice.  Upon considering these arguments, the Special Master denied the appeals and concurred with the Claims Administrator's determination that the Class Members' claims did not satisfy the Settlement criteria for a Qualifying Diagnosis of Death with CTE.

The Class Members then asked the Court to reverse the Special Master's determination on legal grounds, recognizing that the Court could not review the Special Master's

factual findings that "Dr. Hamilton did not examine [the Retired Player's] brain tissue as is necessary to diagnose Death with CTE" and "there is no proof that the diagnosis was timely." (July 15, 2020 Special Master Decision, SPID 950011814, Doc. ID 226563.)  In their objections, the Class Members advanced nearly identical versions of the first two arguments set forth in their prior appeals: (1) Dr. Hamilton's alleged diagnoses were timely because the "diagnosis date" purportedly is the date of the Retired Players' death as opposed to when the diagnosis actually occurred; and (2) the Settlement Agreement's Injury Definition for Death with CTE allegedly did not require Dr. Hamilton to examine the Retired Players' brain tissue to render the diagnosis.

In its Order, the Court denied the 18 Claims At Issue as "insufficient," and remanded the two other claims to the Special Master, with instructions to return the Remanded Claims to the Claims Administrator "to further determine the sufficiency of the claims packages." (Order.)  The Order did not address in any respect the merits of the Remanded Claims.

The Motion was filed on March 24, 2023, advancing the same arguments, now rejected three times.  For the reasons below, the Court should deny the Motion because it does not meet the standards for reconsideration and has no merit.

## <u>ARGUMENT</u>

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence."  *Max's Seafood Cafe ex rel. Lou-Ann, Inc.* v. *Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).  "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Id.*

Indeed, "[m]otions for reconsideration are extraordinary remedies and thus are granted only sparingly because of the interests in finality and conservation of scarce judicial resources." *Hankins* v. *Colvin*, No. 13-4929, 2016 WL 660200, at *2 (E.D. Pa. Feb. 18, 2016) (quoting *Pa. Ins. Guar. Ass'n* v. *Trabosh*, 812 F. Supp. 522, 524 (E.D. Pa. 1992)).  In order to prevail, "[t]he moving party bears a substantial burden, which cannot be satisfied through 'recapitulation of the cases and arguments considered by the court before rendering its original decision.'"  *Id.* (quoting *Young Jewish Leadership Concepts* v. *939 HKH Corp.*, No. 93-2643, 1994 WL 184410, at *1 (E.D. Pa. May 10, 1994)).  As a result, a motion for reconsideration can "address[] only factual and legal matters that the Court may have overlooked," as "[i]t is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through— rightly or wrongly."  *Glendon Energy Co.* v. *Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (quotation and citations omitted).  As a result, "mere disagreement with [the] court's decision is not enough to grant a motion for reconsideration." *Meachum* v. *Temple Univ. of the Commw. Sys. of Higher Educ.*, 56 F. Supp. 2d 557, 557 n.2 (E.D. Pa. June 30, 1999).

Movants cannot meet these high standards here.  Rather than even attempting to demonstrate that the Court overlooked factual or legal matters, the Motion simply rehashes the same baseless arguments Movants have advanced for years.  Even if these arguments asking the Court to reconsider what it has already determined were proper (and they are not), they ignore the bargained-for, Court-approved requirements of the Settlement Agreement, and are wholly without merit.

**A.      The Claims At Issue Are Insufficient Because Diagnosing Physicians Must Examine Brain Tissue to Render a Qualifying Diagnosis of Death with CTE**

The Claims At Issue are insufficient because Dr. Hamilton did not conduct a post-mortem examination of brain tissue, which is necessary to diagnose CTE, both medically and pursuant to the Settlement Agreement.

As noted earlier, under the Settlement Agreement, a Qualifying Diagnosis of Death with CTE requires "a post-mortem diagnosis of CTE made by a board-certified neuropathologist" (Settlement Agreement, Ex. A-1 at 5 § 5; *see also* Settlement Agreement §§ 2.1(aa), 6.3(f).) As this Court made clear in its Memorandum supporting Final Approval of the Settlement Agreement, post-mortem examination of brain tissue is the *only* way that CTE can be diagnosed:

> Chronic Traumatic Encephalopathy is a neuropathological diagnosis that currently can only be made post mortem. This means no one can conclusively say that someone had CTE until a scientist looks at sections of that person's brain under a microscope to see if abnormally phosphorylated tau protein ("abnormal tau protein") is present, and if so whether it is present in a reportedly unique pattern.

*In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 397 (E.D. Pa. 2015), *amended*, No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), and *aff'd*, 821 F.3d 410 (3d Cir. 2016).  The Court further explained that "Retired Players cannot be compensated for CTE in life because no diagnostic or clinical profile of CTE exists, and the symptoms of the disease, if any, are unknown." (*Id.*)  CTE researchers continue to support this holding with respect to the diagnosis of CTE today.  *See, e.g.*, Jesse Mez et al., *Duration of American Football Play and Chronic Traumatic Encephalopathy*, Annals of Neurology (first published Oct. 7, 2019), https://onlinelibrary.wiley.com/doi/abs/10.1002/ana.25611 (explaining that "CTE only can be definitively diagnosed by postmortem neuropathologic examination," and that "validated *in vivo* diagnostic criteria do not currently exist"); The Cleveland Clinic, *Chronic Traumatic Encephalopathy (CTE)*, https://my.clevelandclinic.org/health/diseases/17686-chronic-

traumatic-encephalopathy-cte (last accessed Apr. 1, 2023) ("The only way to [diagnose CTE] is to examine samples of a person's brain under a microscope, which is only possible during an autopsy after death.").

Movants have explicitly conceded that "[i]t is undisputed that there is no evidence that Dr. Hamilton reviewed the [Retired Players'] brain tissue." (Objection at 7, SPID 950011814, Doc. ID 215705.) Instead, Movants argued that "as a matter of law, there is no requirement in the Amended Settlement Agreement that a board-certified neuropathologist 'confirm his diagnosis' by reviewing brain tissue." (Motion at 18.) This assertion ignores the Court's explicit description of the diagnostic procedure for CTE, which continues to be the position of the scientific community: "CTE only can be definitively diagnosed by postmortem neuropathologic examination" because "validated *in vivo* diagnostic criteria do not currently exist." Mez et al., *Duration of American Football Play and Chronic Traumatic Encephalopathy* at 6. For these reasons, the Court properly denied the Claims At Issue as "insufficient."

The Motion's contention that the Claims At Issue "appear to have been denied because they did not exhume the family members' corpses" is completely unfounded. (Motion at 6.) The Motion argues that there is "clear error and a manifest injustice" in requiring "Class Members to exhume their loved ones' bodies to confirm" Dr. Hamilton's purported CTE diagnosis. (*Id.* at 17.) Yet, the Court's Order makes no statement whatsoever about the Claims At Issue other than that they are "insufficient." (*See* Order.) Moreover, the Settlement Agreement plainly does not require exhumation of a deceased Retired Player's body to conduct the post-mortem examination of brain tissue, and the Court has never ruled—and the NFL Parties have never taken the position—that there is an "after-the-fact requirement that the Players' bodies must be exhumed to confirm" Dr. Hamilton's purported CTE diagnoses. (Motion at 18.)

The fact that there is no evidence that Dr. Hamilton ever conducted a post-mortem examination of brain tissue, which is necessary to diagnose CTE, does not mean that Movants may now belatedly fulfill the Settlement's requirement's by exhuming Retired Players' bodies. Indeed, even if a Movant chose to do so in order to conduct such an examination—assuming that is medically viable years after death—the examination would be untimely by several years, as explained below. As a result, the Claims At Issue were correctly held to be insufficient for the independent reason that Dr. Hamilton failed to examine the Retired Players' brain tissue, which is required for a diagnosis of CTE both medically and under the Settlement Agreement. Movants' claims fail on this basis alone.

**B.    The Claims At Issue Are Untimely Because Qualifying Diagnoses of Death with CTE Must Be Rendered Prior to the Deadline Set Forth in the Settlement Agreement**

Even if Dr. Hamilton had examined the Retired Players' brain tissue, Dr. Hamilton's undated letters fail to establish that the Claims At Issue are timely, as the Claims Administrator and Special Master have expressly determined. For a Qualifying Diagnosis of Death with CTE, the Settlement Agreement explicitly requires that a diagnosing physician render the diagnosis prior to a specified deadline set by the Settlement Agreement.

Indeed, as the Claims Administrator has noted, a valid claim "must have proof that [Dr. Hamilton] personally performed the post-mortem exam on the Retired Player and that it was done on or before 4/22/15." (June 17, 2019 Denial Notice, SPID 950013176, Doc. ID 209285.) The Claims Administrator denied the claims because the "two-page letter provided by Dr. Hamilton does not satisfy the requirements for a CTE diagnosis under this Settlement Program." (*Id.*) The Special Master affirmed this reasoning, finding that the claims were insufficient, including because "there is no proof that the diagnosis was timely." (*See* July 15, 2020 Special Master Decision, SPID 950011814, Doc. ID 226563.) Because there was insufficient "evidence

that [a diagnosis] was made before the appropriate deadline," the Special Master affirmed the Claims Administrator's denial.  (*Id.*)

In the Motion, as in their prior appeals and objections, Movants argue that, where a Retired Player died before the Final Approval Date, *no deadline applies* to when a physician must render a Qualifying Diagnosis of Death with CTE because the Settlement Agreement "imposed no deadline on obtaining a Qualifying Diagnosis."  (Motion at 7; *see also* Statement of Appeal, SPID 950011814, Doc. ID 210851 at 5 (arguing that "the only date that is relevant in determining the date of a Qualifying Diagnosis for Death with CTE is the date of the Player's death").)

This interpretation rests on willful misreading of the Settlement Agreement. Specifically, as outlined above, the Settlement Agreement plainly requires that, "[f]or Retired NFL Football Players who died prior to the Final Approval Date, a post-mortem diagnosis" of Death with CTE must be "made by a board-certified neuropathologist *prior to the Final Approval Date . . .* " or within 270 days of death where applicable (Settlement Agreement Ex. A-1 at 5 § 5 (emphasis added).)  If, as Movants argue, the Settlement Agreement required only that a Retired Player who died prior to the Final Approval Date in order for a diagnosis made at *any unlimited future date* to be timely, the Settlement Agreement would not include subsequent language providing that a Retired Player who died between July 7, 2014 and April 22, 2015 "*shall have until 270 days from his date of death to obtain such a postmortem diagnosis.*"  (*Id.* (emphasis added).) The Settlement Agreement's Injury Definition establishes a clear date by which a Diagnosing Physician must have *actually made* a Death with CTE diagnosis.  Dr. Hamilton's undated, near-identical letters submitted far after any potentially applicable deadline do not satisfy the Settlement's unambiguous requirements.

Movants nevertheless speculate that the Court validated their position because the Remanded Claims raised the "same argument" on timeliness and "[b]y remanding the [Remanded Claims] . . . it appears clear that the Court agrees with Class Members' objection regarding the diagnosis date." (Motion at 17.)  But the Court made no statement at all concerning the merits of the Remanded Claims, and in fact directed review "to further determine the sufficiency of the claims packages." (Order.)  Far from "grant[ing] the objections" related to the Remanded Claims (Motion at 16), the Court determined that the claims needed further review for sufficiency. Sufficiency includes timeliness, and the Court made no statement at all about whether the Remanded Claims were timely.  The Claims Administrator may (and should) again deny the Remanded Claims because there is no "proof that [Dr. Hamilton] personally performed the post-mortem exam . . . on or before 4/22/15." (*See* July 30, 2019 Denial Notice, SPID 950013395, Doc. ID 211985.)  In any event, the further review of the Remanded Claims has no bearing on the Claims At Issue, which the Court expressly determined were "insufficient." (Order.)

Furthermore, the Claims At Issue are in fact untimely.  All of the Retired Players whom Dr. Hamilton purportedly diagnosed with CTE passed away before the Final Approval Date. To meet the Settlement's requirements for a Qualifying Diagnosis of Death with CTE, the diagnoses must have been made either prior to April 22, 2015 or within 270 days from the date of death for a Retired Player who died between July 7, 2014 and April 22, 2015.  Here, the Retired Players whose alleged diagnoses underly the Claims At Issue passed away between January 18, 2007 and March 21, 2015.  Thus, the last eligible date on which a diagnosis could have been made was December 16, 2015—i.e., 270 days after March 21, 2015.[2]  None of the Movants has provided

---

[2] The Motion does not address how Dr. Hamilton could have simultaneously diagnosed 20 Retired Players who passed away over the course of nearly eight years, leading to submission of Dr. Hamilton's near-identical, undated letters on the same date of February 5, 2019.

evidence that any of the diagnoses were made prior to December 16, 2015, let alone before the April 22, 2015 deadline that applies to the 12 Retired Players who pre-deceased July 7, 2014.[3]  As the Claims Administrator noted, Dr. Hamilton's undated, near-identical letters provide no "proof that [Dr. Hamilton] personally performed the post-mortem exam . . . on or before 4/22/15."  (*See* June 17, 2019 Denial Notice, SPID 950013176, Doc. ID 209285.)  Dr. Hamilton's undated letters are "no evidence that [the diagnosis] was made before the appropriate deadline."  (July 15, 2020 Special Master Decision, SPID 950013176, Doc. ID 226572.)  Therefore, the Claims At Issue are untimely, and were properly denied by the Special Master and the Court.

Accordingly, the Claims At Issue were properly denied on the additional, independent basis that they failed to meet the Settlement Agreement's explicit timing requirements for a Qualifying Diagnosis of Death with CTE.

### C.     The Settlement Agreement Fully Satisfies Due Process, and the Bargained-For, Court-Approved Deadlines Do Not Prejudice the Settlement Class

The Motion's arguments concerning due process also miss the mark.  In February 2015, the parties amended the Settlement Agreement before Final Approval to expand the definition of the Death with CTE Qualifying Diagnosis in response to the Court's directives.  The Motion suggests that these amendments imposed "a new, previously-undisclosed deadline" in a change that allegedly occurred "[w]ithout notice to the Court or class members."  (Motion at 11.) Contrary to fact, the Motion posits that "language appears to have been surreptitiously added to the Amended Settlement Agreement that could be read to have added a diagnosis deadline without notice to the Court or to the class members."  (*Id.* at 14.)

---

[3] These claims were filed by SPIDs 950011815, 950011818, 950011821, 950011822, 950013154, 950013174, 950013178, 950013179, 950013403, 950013520, 950013523, and 950013608.

The Motion's arguments mirror the August 15, 2017 Motion to Modify filed by one of the Movants, which alleged that the Settlement's deadline to obtain a Qualifying Diagnosis of Death with CTE was "imposed after the deadline to opt out and without notice to Class Members." (Mem. of Law in Supp. of Mot. to Modify at 18, 12-md-2323, ECF No. 8263-2.)  After full briefing, the Court denied the motion without prejudice to the Movant's (or other similarly situated Settlement Class Members') ability to raise the issue at a later time if the Movant filed a Death with CTE claim that would have been valid but for the Settlement's deadline.  Order, ECF No. 8557 ("Before Plaintiff can attempt the extraordinary action of modifying the Settlement Agreement, she must first show that she would be entitled to recover but for the Death with CTE diagnosis deadline.").  Because the objections to the denials of the Claims At Issue admitted that "[i]t is undisputed that there is no evidence that Dr. Hamilton reviewed the [Retired Players'] brain tissue," the Movants have not and could not establish the sufficiency of their claims but for the diagnosis deadline, as explained above.  (*See* Objection at 7, SPID 950011814, Doc. ID 215705.)

Even if the Movants could establish that Dr. Hamilton examined Movants' brain tissue, the bargained-for deadlines are not a due process violation for the same reasons discussed in the NFL Parties' opposition to the Motion to Modify.  *See generally* Mem. of Law in Opp. to Mot. to Modify, ECF No. 8430 ("Opp. to Mot. to Modify").

*First*, the amendments in question concerned an *expansion* of settlement benefits to the Settlement Class—namely, the expansion of the Qualifying Diagnosis of Death with CTE to include Retired Players who died with CTE between Preliminary and Final Approval of the Settlement Agreement; the original agreement limited the Qualifying Diagnosis to those who died *prior* to Preliminary Approval.  It is well-settled that additional notice to a class is necessary only when amendments to a settlement agreement are "materially adverse" to the class, not where, as

here, they benefit the class.  *See* Opp. to Mot. to Modify.  Neither the Due Process Clause nor Rule 23 of the Federal Rules of Civil Procedure require notice in the event of beneficial, or even neutral, amendments.

               *Second*, contrary to Movants' contentions, the class notice in connection with the original settlement agreement was all that was necessary.  The Short- and Long-Form notices distributed to Settlement Class Members made clear, as this Court and the Third Circuit held, that an award of Death with CTE would *not* be available to all Retired Players diagnosed with CTE.  Rather, only particular cases of CTE meeting "certain" predetermined and agreed-to standards under the Settlement Agreement would be compensated—i.e., cases where, prior to Preliminary Approval,[4] the Retired Player received a post-mortem diagnosis of CTE made by a board-certified neuropathologist.  (*See* Opp. to Mot. to Modify.)  The amendments in question were in fact made public; the NFL Parties and Class Counsel posted the amendments—including a redline comparison clearly reflecting the changes to the text of the Settlement Agreement—on the Court's publicly accessible PACER docket, where any member of the public, including the more than 5,000 Settlement Class Members with legal representation, could view it.  In fact, over 40 Settlement Class Members objected to the amendments, including the very amendment that the Movants complain of here.

               Movants have shown no justification for this Court to take the extraordinary step of rewriting a settlement agreement approved by both this Court and the Third Circuit that has been in place for years.  The bargained-for deadlines approved by this Court should stand.

---

[4]    As noted above, the amendments to the Settlement Agreement extended this deadline to Final Approval.

## **CONCLUSION**

For the foregoing reasons, the NFL Parties respectfully request that the Court deny

Movants' Motion seeking reconsideration of the Court's February 24, 2023 Order.


Dated: April 26, 2023                    Respectfully submitted,

                                         PAUL, WEISS, RIFKIND,
                                         WHARTON & GARRISON LLP

                                         */s/ Brad S. Karp*
                                         Brad S. Karp
                                         Bruce Birenboim
                                         Lynn B. Bayard
                                         Claudia Hammerman
                                         1285 Avenue of the Americas
                                         New York, NY 10019-6064
                                         Telephone: (212) 373-3000
                                         Facsimile: (212) 757-3990
                                         Email: bkarp@paulweiss.com

                                         *Attorneys for the National Football League and
                                         NFL Properties LLC*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true copy of the foregoing document was served electronically via the Court's electronic filing system on the 26th day of April, 2023, upon all counsel of record.


Date: April 26, 2023                              */s/ Brad S. Karp*
                                                  Brad S. Karp