# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL | § | No. 2:12-md-02323-AB |
| LEAGUE PLAYERS' CONCUSSION | § | |
| INJURY LITIGATION | § | MDL No. 2323 |
| | § | |
| | § | **Hon. Anita B. Brody** |
| CLAIMS FOR SPID 950011814, 950011815, | § | |
| 950011818, 950011819, 950011820, 950011821, | § | |
| 950011822, 950013154, 950013174, 950013176, | § | |
| 950013178, 950013179, 950013223, 950013403, | § | |
| 950013520, 950013523, 950013608, 950013171 | § | |

## REPLY IN SUPPORT OF THEIR MOTION TO ALTER OR AMEND THE ORDER THAT THE OBJECTIONS OF THE CLASS MEMBERS ARE DENIED [ECF 12033]

Movants file this reply in support of their Motion to Alter or Amend [ECF 12033] regarding this Court's order [ECF 12001] that their objections are denied.  After reviewing the NFL Parties' Response, the Court should alter and amend the Court's order for the following three reasons:

### I.   The Court should amend its order to clarify why some claims were remanded while Movants' claims were denied.

In their Motion, Movants initially argued the Court should amend its order to clarify that the Court is sustaining Movants' objections regarding the diagnosis date and is not remanding their claims only because the diagnosing board-certified neuropathologist did not examine brain tissue from their deceased loved-ones.  Motion [ECF 12033], p. 17.

In their Response, the NFL Parties do not disagree.  *See* NFL's Response [ECF 12103].  The NFL Parties' Response does not respond directly to this argument or argue that the Court should not amend its order.  *Id.*  Instead, the NFL Parties contend it is speculation to conclude that the Court's remand of the other two claims — which presented the same diagnosis date arguments and

differed only in that the diagnosing board-certified neuropathologist was able to examine their loved ones' brain tissue — was based on the Court's determination that the diagnosis date arguments had merit. *Id.*, p. 16. But this speculation problem is precisely why the Court should amend its order. Amending the Court's order to explain the basis for the remand would obviate the need for any speculation.

Moreover, it does not require speculation to know that the Court remanded the other two claims because of the diagnosis date issue. For both of the two claims that were remanded, the Special Master stated that the sole basis for denying them was that "there is no evidence that the diagnosis of Death with CTE was obtained before the appropriate deadline." The only possible reason for the Court to reverse and remand those two claims is if that sole basis for denying them was in error. And the Court should make it clear that the same error is present in Movants' eighteen claims.

Although the NFL Parties provide no other possible explanation for the Court's order, the order does not provide an explicit explanation as to why the Court remanded some claims and denied others. And it should. The Court should amend its order denying Movants' objections so the parties, the claims administrator, and the Third Circuit need not engage in needless arguments about why the Court's order denies 18 claims and remands 2 others.

## II. The NFL Parties make a number of arguments regarding the diagnosis date that are irrelevant.

On pages 12–17 of their Response, the NFL Parties repeat past arguments about the diagnosis date issue. Based on the Court's remand of the other class members' claims, which were denied solely on the basis of the diagnosis date, it appears the Court has already considered and rejected these arguments. Court's Order [ECF 12001]. And for good reason.

The NFL Parties' Response largely ignores the primary argument Movants made through the claims process, i.e., that their CTE diagnoses were timely because the Settlement Agreement FAQs, which were approved by the NFL and were sent to all class members, stated that for Death with CTE claims "the date of the Qualifying Diagnosis is the date of the Player's death, even though the diagnosis is not made until after the Player dies." Under that FAQ, all of Movants' CTE diagnoses are timely. Twice in their Response, the NFL Parties reference the relevant FAQ, but the NFL Parties do not explain why that language does not establish that the CTE diagnoses were timely. *See* NFL Response [ECF 12103], pp. 2, 7.

Additionally, if this language from the FAQs were ignored, then the deadline that was added to the Amended Settlement Agreement (as it is now interpreted by the NFL Parties) would run squarely into the due process concerns described in Movants' objections throughout the claims process and in their previously-filed Motion to Modify [*see* ECF 8263, 8442, 8443], which explained the unfairness and constitutional problems that would be created by the addition of a new diagnosis deadline after the opt-out deadline that conflicted with the notices (both short- and long-form) that were sent to class members before the opt-out deadline. *See* Motion to Modify [ECF 8263-2], pp. 2–18; *see also* Movants' claims packages, statements on appeal from the claim determinations, and objections to the special master's decisions (raising the same arguments made in the Motion to Modify).

The NFL Parties respond to that previously-raised argument by asserting that the original Settlement Agreement required all class members to receive a "post-mortem diagnosis of CTE made by a board-certified neuropathologist" prior to Preliminary Approval. [ECF 12103, p. 17] But that assertion is simply false.

In support of this false statement, the NFL Parties cite one of their previous filings, but the

Court would be better served to simply look at the language in the actual Settlement Agreement, which clearly states that class members were simply required to obtain a "post-mortem diagnosis" for a death that occurred before the Preliminary Approval. *See* Original Settlement Agreement [ECF 6073-2], § 6.3(f) ("A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, through a post-mortem diagnosis by a board-certified neuropathologist.").

Similarly, both the short- and long-form notices stated that the diagnosis of CTE must occur post-mortem, but neither says the diagnosis must be obtained before the Preliminary Approval date. Short-Form Notice [ECF 6093-2]; Long-Form Notice [ECF 6093-1], pp. 6, 10. In fact, the Long-Form Notice explicitly says the opposite: stating that a Qualifying Diagnosis of Death with CTE "may occur at any time until the end of the 65-year term of the Monetary Award Fund." Long-Form Notice [ECF 6093-1], p. 10.

The NFL Parties' arguments regarding the diagnosis date are not only wrong, they are irrelevant in light of the Court's remand of the other claims and only underscore why the Court should amend the order to explain that Movants' objections as to the diagnosis date have been sustained.

III. **The Court should alter its order and remand the claims to be paid because it is clear error and a manifest injustice to require Movants to exhume their loved ones' bodies to confirm the board-certified neuropathologist's CTE diagnosis.**

In response to Movants' argument that the settlement agreement contains no requirement that the diagnosing board-certified neuropathologist examine their loved one's brain tissue, the NFL Parties offer three arguments. But none are convincing.

First, the NFL Parties contend that "post-mortem examination of brain tissue is the *only* way

that CTE can be diagnosed" based on an excerpt from this Court's Amended Final Order and Judgment. NFL's Response [ECF 12103], p. 10.  But that misrepresents what this Court said.  In the Amended Final Order and Judgment, this Court recognized that "no one can *conclusively* say that someone had CTE until a scientist looks at sections of that person's brain under a microscope." 307 F.R.D. 351, 397 (E.D. Pa. 2015), *amended*, No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015) (emphasis added).  But a diagnosis of CTE need not be conclusive to be valid.  *See Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d. Cir. 1999) ("In the actual practice of medicine, physicians do not wait for conclusive, or even published and peer-reviewed, studies to make diagnoses to a reasonable degree of medical certainty.")  In this case, the documents the Court reviewed in order to rule on Movants' objections demonstrate that each of the Movants received a valid post-mortem diagnosis of CTE to a reasonable degree of medical probability from a board-certified neuropathologist based on his expertise, experience, and review of hundreds of pages of records relevant to the CTE diagnosis for each of the Movants' deceased loved ones.

Second, the NFL Parties challenge as "unfounded" the Movants' assertion that their claims "appear to have been denied because they did not exhume the family members' corpses." [ECF 12103, p. 11]  But how is that statement unfounded?  There is no other way to get brain tissue of a buried family member other than by exhuming the corpse.  The NFL Parties point out that neither the Court's order nor the language in the Amended Settlement Agreement explicitly require exhumation, *id.* at 11, and that is true enough.  But requiring an examination of a deceased family member's brain tissue — a requirement that can be found nowhere in the language of the settlement agreement or in any of the notices — necessarily means the brain tissue must be obtained through exhumation.  Simply put, for all of the Movants who have deceased loved ones that have already been buried, the only way to obtain brain tissue for Dr. Hamilton to examine

would be by exhuming their loved one's corpse.  Even then, the NFL Parties recognize that a CTE diagnosis based on examination of exhumed brain tissue may not be "medically viable years after death" (which only makes their position less convincing).  NFL's Response [ECF 12103], p. 12. And for those Movants whose deceased loved ones were cremated (i.e., SPID 950013174, 950013176, 950011814, 950011819, 950013523, 950015171), examination of brain tissue would be impossible.[1]

Finally, the NFL Parties contend that examination of brain tissue is *medically* "required for a diagnosis of CTE."  With all respect to opposing counsel, as attorneys, we can have good faith arguments about what the language in the settlement agreement requires and doesn't require.  But neither the undersigned nor opposing counsel are board-certified neuropathologists.  Dr. Hamilton is.  And Dr. Hamilton, as a board-certified neuropathologist, has provided an uncontroverted, post-mortem CTE diagnosis for each of the Movants' loved ones based on his review of the records and based on his "knowledge, training, and extensive experience related to the study and diagnosis of CTE."  He did so because he determined that the information he had was sufficient to provide that diagnosis, and the Court should defer to his determination about what information was medically necessary to form a CTE diagnosis.  *See Brewer v. Dauphin County Prison*, No. 1:21-1291, 2022 WL 16855566, at *2 (M.D. Penn. Nov. 10, 2022) (noting that courts "must defer to the opinion of medical experts" in matters relating to medical judgments).

---

[1]    Obviously class members with deceased loved ones whose remains were cremated would have opted out of the settlement agreement if it had stated that they could only obtain a settlement payment by having a board-certified neuropathologist examine brain tissue because it would be impossible for them to satisfy that condition.  Similarly, many class members with buried loved ones would similarly have opted out if they had been put on notice that the only way to obtain a settlement payment would be by exhuming their loved one's remains.

## PRAYER FOR RELIEF

Accordingly, the Court should grant Movants' motion and amend the Court's order to explain the reason for denying Movants' claims while remanding others or, in the alternative, alter the order by sustaining Movants' objections and remanding their claims to be paid.

Dated: May 8, 2023

Respectfully Submitted:

*/s/ David Campbell*
Justin Demerath
Texas State Bar No. 24034415
David Campbell
Texas State Bar No. 24057033
O'HANLON, DEMERATH & CASTILLO
808 West Avenue Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919
jdemerath@808west.com
dcampbell@808west.com

*Counsel for Class Members*
*SPID 950011814,*
*950011815, 950011818,*
*950011819, 950011820,*
*950011821, 950011822,*
*950013154, 950013174,*
*950013176, 950013178,*
*950013179, 950013223,*
*950013403, 950013520,*
*950013523, 950013608,*
*and 950013171*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served electronically via the Court's electronic filing system on May 8, 2023, on all counsel of record.

<u>*/s/ David Campbell*</u>
David Campbell