### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>                                    Plaintiffs,<br>               v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>                                    Defendants. | |
| THIS DOCUMENT RELATES TO:<br><br>Pope McGlamry PC<br>v.<br>SPID 10001915 (R.B.)<br><br>Attorney Lien Dispute<br>(Lien Disp. No. 00289) | |

### RULE TO SHOW CAUSE

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                   July 7, 2023

## I.    INTRODUCTION

Presently before the Court in the National Football League Players' Concussion Injury Litigation is the assertion of an Attorney Lien by Pope McGlamry PC against the Award granted to its former client, Settlement Class Member ("SCM") SPID 10001915, R.B. ("Player"), in the litigation that became this class action, *In re: National Football League Players' Concussion Injury Litigation*, No. 12-md-2323 (E.D. Pa.). By its lien, the firm sought payment of attorneys' fees in an amount equal to 20% of the Award issued to Player pursuant to the contingency fee

agreement ("CFA") they signed on December 29, 2011.  Player is now represented by Collins & Truett Attorneys, P.A., a firm he engaged on April 21, 2022 and whose CFA provides for a fee of 15% of any award he might receive in this Settlement Program.  Through Collins & Truett, Player challenges the lien of Pope McGlamry and seeks the release of funds currently withheld by the Claims Administrator from his award for payment of counsel fee.

The District Court referred all Petitions for individual attorney's liens to this Magistrate Judge.  (Doc. No. 7746.)  Rules Governing Attorneys' Liens ("the Lien Rules") were adopted on March 6, 2018 and amended on October 3, 2018.  (Doc. Nos. 9760 and 10283.)  Pursuant to Rule 12, Pope McGlamry and Collins & Truett were advised of their right to consent to have the Magistrate Judge issue a final Order to resolve this dispute, and they have so consented.

As we set out in a Report and Recommendation ("R&R") filed on January 7, 2019, *see* Doc. No. 10368, our evaluation of the positions of firms in lien disputes involves a consideration of the CFAs between the SCM and his counsel and an assessment of the reasonableness of the requested fees in light of the five factors enumerated by the Third Circuit.  *See* Doc. No. 10368 at 11-26 (discussing *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 100 (3d Cir. 1985) ("*McKenzie I*"); *McKenzie Constr., Inc. v. Maynard*, 823 F.2d 43, 45 (3d Cir. 1987) ("*McKenzie II*"); *Dunn v. H.K. Porter Co., Inc.,* 602 F.2d 1105, 1111-12 (3d Cir. 1979)).  These decisions have related to fees owing to Individually Retained Plaintiff's Attorneys ("IRPAs") as contrasted with fees owing to lawyers who worked for the common benefit of the class.

This case presents circumstances suggesting that additional factors should also be considered when the Court allocates attorneys fees among IRPAs in this Settlement Program. Inasmuch as we have not explicitly drawn attention to these factors before, we will provide an opportunity for the potentially impacted IRPA in this dispute to be heard before ruling on an

allocation of the disputed funds for counsel fee.  We will first provide some background.

## II.    COMPLIANCE WITH THE LIEN RULES

### A.  Claim background

Player retained Pope McGlamry, a firm based in Atlanta, in December 2011.  In 2012, the firm filed suit on his behalf in the Northern District of Georgia and in the Eastern District of Pennsylvania pursuant to the Court's case management order in MDL 2323.  The firm kept Player apprised of the status of the litigation and the class-based settlement proposals.  One of the firm's attorneys also provided individual counsel to Player in March 2014 concerning whether it would be in his best interest to remain in or to opt out of the proposed settlement.  In July 2016, however, while the final challenge to the proposed settlement was before the United States Supreme Court, Player sent a letter to Pope McGlamry stating that he no longer wished to be represented by the firm.  He indicated that he was going to obtain counsel located closer to where he lived, which was Houston, so that he could obtain testing.  To protect its interest, Pope McGlamry filed an attorney lien on the MDL docket later that year.

In the ensuing years, Player was registered in the settlement program[1] and underwent a BAP exam.  Yet he did not file a claim for a Monetary Award.  In March 2022, however, the Court approved modifications to the original Settlement Agreement that provided that new testing norms would be applied in the evaluation of particular neurocognitive impairments defined in the underlying Settlement Agreement.  As a result of these modifications, data from certain BAP exams undertaken previously would be re-scored.

A short time later, on April 21, 2022, Player retained Collins & Truett.  The firm submitted

---

[1]  Registration did not open until February 2017.

a claim to the Monetary Award Fund program on Player's behalf on May 25, 2022, and on September 6, 2022, Player was approved for a Monetary Award. His award was based upon the qualifying diagnosis of Level 1.5 Neurocognitive Impairment, dated as of August 18, 2020, that was attributed to the BAP provider who had previously examined him. Collins & Truett did not arrange for Player to be seen by any specialist for further evaluation or testing.

### B. Lien dispute process

On August 29, 2022, as Player's claim was nearing approval, the Claims Administrator provided notice to Collins & Truett that any award to Player was subject to the attorney lien that had been filed by Pope McGlamry. The Notice asked that Collins & Truett file a response to the lien with the Claims Administrator within 21 days, but Collins & Truett did not do so. Pope McGlamry attorney Michael McGlamry then reached out to Collins & Truett on October 13, 2022 in an e-mail addressed to Attorney Richard "Dick" Collins, the only attorney he found listed on the firm's website, inviting discussion as to a resolution of the lien and providing Collins with Pope McGlamry's dates of representation of Player. Attorney Collins did not respond at that time. On December 5, 2022, however, Collins replied to the message, outlining his firm's view of the shortcomings of Pope McGlamry's representation of Player, characterizing Pope McGlamry's lien petition as "fraudulent" where the petition had stated that Pope McGlamry was not terminated "for cause" or due to "any malfeasance or other improper action" by Pope McGlamry,[2] and threatening

---

[2]  By way of background, Collins & Truett has taken the position that Player "in fact withdrew from [Pope's] representation <u>with cause</u> in no uncertain terms" and that Pope McGlamry's statement in its lien petition was a "**<u>fraudulent misrepresentation</u>**[.]" (Lienholder Stmt. at Ex. D (e-mail of Dec. 5, 2022) (emphases in original).) The e-mail message from Attorney Collins to Attorney McGlamry also cited "a grievous lack of communication with [Player]" during the period of his representation by Pope McGlamry between 2012 and 2016, "even though he had reached out to you repeatedly during this time, to no avail." (*Id.*)

We note that the July 2016 termination letter signed by Player and directed to Pope

Attorney McGlamry with a complaint to the Georgia bar and a motion for sanctions in the Eastern District of Pennsylvania.  Attorney Collins conveyed Player's offer of a certain sum to settle the lien and his expectation that Pope McGlamry would convey to the Claims Administrator in the next 4 days that it was withdrawing its lien.  The e-mail closed with the statement:

> As per your October 13, 2022 email to this firm, there is nothing to discuss.  Either comply, or don't comply, and we will reposed [*sic*] accordingly.  This is our official attempt at resolving this lien.

(Lienholder Stmt. at Ex. D.)  Subsequent correspondence did not change either firm's position. (*Id.* at 16 & Ex. D.)  Accordingly, after the claim was approved and the award was approaching disbursement, and assuming that the SCM contested the Pope McGlamry lien, the Claims Administrator issued a Schedule of Document Submissions calling for briefing on the conflicting claims for attorneys fees.

Pursuant to the Schedule, the firms were to submit their Statement of Dispute to the Claims Administrator by January 6, 2023.  Pope McGlamry did so.  ("Lienholder Stmt.")  Collins & Truett did not.  Rather, it submitted a copy of a purported bar complaint from Player directed at Attorney McGlamry, stating in a transmittal e-mail message that Player's response to Pope McGlamry's lien "is best declared in" the bar complaint.  At our direction, the Claims Administrator notified Collins & Truett that its submission did not comply with several of the Lien Rule provisions[3] and

---

McGlamry did not attempt to characterize the termination in any legalistic manner.  It did not make reference to any deficiency in communication from the firm.  Rather, the letter benignly stated: "I do not believe you have done anything to pursue the claim at this point.  I thought that I would have been tested by now.  I am going to retain a local lawyer to get me [*sic*] tested."  (*Id.* at Ex. G.)

[3] Specifically: Lien Rule 17(a)(2) (requiring each party in lien dispute to file Statement of Dispute that includes a chronology of all tasks performed, the date of the task, and the time spent on each task); Lien Rule 17(a)(7) (requiring Statement of Dispute to include signed declaration under 28 U.S.C. § 1746); and Lien Rule 17(b) (requiring current attorney to provide copy of CFA).

gave a week for the firm to cure its deficiencies.  Collins & Truett submitted a Statement of Dispute

("SCM Stmt.") on behalf of Player on January 20, 2023.  After Pope McGlamry filed a Response

to the SCM Statement of Dispute ("Lienholder Resp."), the Record of Dispute was transferred to

the Court.[4]

### C.  Legal authority

Third Circuit authority makes it clear that attorneys carry the burden of proof to

demonstrate that a fee sought pursuant to a contract "is reasonable under the circumstances."  *Dunn*

*v. H.K. Porter Co., Inc.,* 602 F.2d 1105, 1111-12 (3d Cir. 1979) (discussing deference to fee

contracts but cautioning that attorneys always bear the burden of demonstrating the reasonableness

of their contracts).  The District Court's prior opinions in this class action settlement in no way

relieved attorneys of this obligation.  Indeed, the Court explained that all attorneys seeking fees –

whether those fee requests are submitted through a lien or otherwise – are obligated to ensure that

their fees are "reasonable" under the standards set out in *McKenzie*.  *See* Doc. No. 9862 at 8-9

(noting the requirement and indicating the attorney's burden of showing reasonableness by a

preponderance of the evidence).  Even when the lienholder presents a presumptively valid fee

contract, we are required to assess if the payment of the fee would "result[] in such an enrichment

at the expense of the client that it offends a court's sense of fundamental fairness and equity,"

*McKenzie I,* 758 F.2d at 101, and we take the same approach with respect to subsequent counsel.

As we have previously expressed:

> It is also well established that District Courts have the power to
> monitor CFAs based upon the court's "supervisory power over the
> members of its bar." *Dunn*, 602 F.2d at 1109. This review is "part
> and parcel of the process a federal court follows both in supervising
> members of its bar and in meeting the obligations imposed on it by

---

[4]  Collins & Truett elected not to respond to Pope McGlamry's Statement of Dispute.

Fed.R.Civ.P. 23(e)." *Id.* at 1110 n.8.

(Doc. No. 10368 at 12.)  We also have noted that, from the outset of this litigation, "counsel were advised that they were obligated to comport themselves 'in accordance with the Pennsylvania Rules of Professional Conduct and the Rules of this Court.'"  *Id.* (quoting Doc. No. 4 (Case Management Order No. 1 (3/6/12) at 5).  The Preamble to our state Rules of Professional Conduct set the expectation that, while attorneys might encounter "conflict[s]" between their responsibilities to clients, to the legal system, and to their own interest in "earning a satisfactory living":

> Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the Rules. These principles include the lawyer's obligation zealously to protect and pursue a client's legitimate interests, within the bounds of the law, *while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system*.

Pa. R.P.C., Preamble, ¶ 9 (emphasis added).

### D.  An appropriate exercise of the Court's supervisory power would be to reduce a contingent fee.

As we have considered in this lien dispute how to allocate fees between two IRPAs, we observed strikingly different approaches of the two firms to the lien resolution process.  Pope McGlamry has adhered to the processes established by this Court's Lien Rules and has complied with the requests set forth in the communications from the Claims Administrator on behalf of this Court.  Collins & Truett has satisfied the Lien Rules in this matter only when they were specifically brought to the firm's attention.  To be sure, the firm has shown little awareness of what the Lien Rules require of it when a lien has been filed against a client's award.

Equally detrimental to the lien resolution process and to the integrity of the Settlement Program, however, has been the tone and tactics of Collins & Truett towards another IRPA,

particularly in the period leading up to the formal dispute resolution process, i.e., before briefs were submitted and the record was transferred to the Court.  As noted above, while Attorney Mike McGlamry sent an e-mail to Attorney Richard "Dick" Collins, someone with whom he had no previous contact, requesting that he give him a call "[i]f [he] would like to discuss a resolution" to the outstanding lien, Collins did not respond in kind.  Rather, he sent a combative and accusatory message back to McGlamry.  He took issue with the perceived shortcomings of Pope McGlamry's lien petition from 2016, which Collins complained failed to set forth "what you did to verifiably advance [Player's] case specifically."  (Lienholder Stmt. at Ex. D.)  He proceeded to characterize the lien filing as having "misrepresented the truth," where the lien "boldly state[d] that [Player] withdrew from your representation **without** cause, when he in fact withdrew from your representation <u>with cause</u> in no uncertain terms." (*Id.* (all emphases in original).)  Attorney Collins characterized this as "a very serious offense of **<u>fraudulent misrepresentation</u>** under both Georgia and Federal law; whether executed recklessly or intentionally[.]" (*Id.* (all emphases in original).) He also described how the client purportedly reacted to the lien:

> For the past few months we have been trying to talk [Player] out of filing an official Grogia [*sic*] Bar Complaint against you for all of the above grievances, most especially for outright lying on your Petition for Attorney's Lien when you state that [Player] withdrew from your representation **without cause**, and have the gumption to further expound upon that false statement (*termination was <u>not</u> due to any malfeasance or other improper action on the part of the Petitioner*).  Your statement here has enraged [Player] beyond measure, causing him to draft a Georgia Bar Complaint[.]

(*Id.* (all emphases in original).)  Attorney Collins went on to complain that the CFA, which Player entered into with Pope McGlamry in 2011, was also a source of Player's opposition to Pope McGlamry's lien:

> This law firm charges only 15% of the net recovery on our NFL cases, whereas you were initially requesting a whopping 40% of

[Player's] hard-fought NFL Concussion Settlement (until the Federal Judge was required to step in and had to cap your egregious fees). This fact has further enraged our client, [Player], as to the true intentions of your law firm, and to the lack of quality representation from the Pope, McGlamry law firm that he had experienced.[5]

Please govern yourself accordingly. This law firm customarily does not confront lien disputes in this matter. However, due to the level of overt misrepresentation and opportunism here, combined with the level of anger our aggrieved client has reached due to the fraudulent misrepresentation to the Federal Court directly relating to his claim, we are regretfully compelled to address your lien in this manner.

(*Id.*). Finally, Collins explicitly linked the filing of a bar complaint to Pope McGlramry's continued prosecution of its lien:

[Player] is prepared to give you one opportunity to completely withdraw your attempt at holding a lien on his NFL Concussion Settlement before he proceeds with his Georgia Bar Complaint, and having us file a Motion for Sanctions in the Eastern District of Pennsylvania Federal Court (EDPA), very publicly under the 2:12-md-2323 lawsuit.

[Player] expects to see an expeditious Notice of Withdraw of Attorney's Lien filed in the EDPA and emailed to claimsadministrator@nflconcussionsettlement.com by, or before Friday, December 9, 2022, before he rescinds his Georgia Bar Complaint, and we agree not to publicly file a Motion for Sanctions, with specificity in the Federal Court. Please see the Withdraw of Attorney's Lien template attached herein for your reference (your 11/1/22 filing).

Finally, as a concession, we have barely convinced [Player] to convey to you $[6] from his eventual NFL Concussion Settlement funds for what efforts you exerted allegedly on his behalf prior to

---

5 As the lien petition itself acknowledged, Pope McGlamry later reduced the contingent fee percentage to 20%. It is not clear if Collins & Truett reminded its client of that fact as his anger about the lien allegedly escalated.

6 The sum offered amounted to 0.43% of Player's Monetary Award, although Pope McGlamry would not have known how this figure compared with the available fee, as it was not privy to the size of Player's Monetary Award.

his 2016 withdraw [*sic*] from your representation <u>with cause</u>.

(*Id.* (emphasis in original).)

We can see no circumstances nor any actions, omissions, or representations by Pope McGlamry that warranted Collins & Truett addressing Pope McGlamry's lien as it did.  Attorney McGlamry responded in a rational and civil manner, reminding Attorney Collins that the briefing schedule and settlement documents set forth "the proper procedure for handling lien disputes and they do not include threats of Bar complaints or sanctions," and encouraging Collins & Truett to properly present the issues the firm intended to raise in the briefing that would be presented to this Court under the Lien Rules.  *Id.* at Ex. E.  Yet Collins responded with only more bluster.  *Id.* at Ex. F (e-mail of 12/9/2022) (reflecting that Player would "promptly proceed with his Georgia Bar Complaint,"[7] that Collins & Truett would file a sanctions motion on the MDL 2323 docket,[8] and noting that the client "is utterly infuriated with you and your law firm.  We are simply putting forth our best effort to temper his rage.").  This continued with a final response from Collins with the same tone. *Id.* at Ex. F (e-mail of 12/16/2022) ("Sir, you are apparently and hopelessly in denial about these facts [that Pope McGlamry was terminated with cause].  What are you not understanding about fraudulent misrepresentation in a Federal Lawsuit?").

This sort of behavior threatens the integrity of the Attorney Lien Resolution process in a Settlement Program that continues to be overseen by this Court.   The Court adopted the Lien Rules to provide an orderly process by which these contested fees could be allocated.  Collins & Truett largely ignores this process.  It is weaponizing the attorney discipline process and appears

---

[7]  A copy of what purports to be a complaint to the State Bar of Georgia, signed by Player on December 26, 2022, is appended to the SCM Statement of Dispute.  *See* Lien Doc. No. 7.

[8]  No such motion has been filed.

to be trying to subvert our established procedures that allow for due consideration of legitimate bids for fees concerning work performed on behalf of a former client.[9]  We are loathe to appear to reward such behavior with a fee allocation to the offending firm.

## III.    COMPLIANCE WITH SETTLEMENT IMPLEMENTATION DETERMINATION

But how the firm conducted itself in this lien dispute with Pope McGlamry is not the only circumstance that concerns us.

### A.  Background on investigation of Howard & Associates

In 2017, the Claims Administrator received tips claiming that Howard & Associates, P.A., a law firm based in Florida, recruited various doctors, demanded revisions to medical reports, and, in some cases, altered or forged reports to support inflated diagnoses for clients who were or became SCMs in this Settlement Program.  The Claims Administrator began auditing Howard & Associates and submitted an Interim Investigation Report to the Special Masters and the Parties detailing the allegations, as well as next steps in its investigation.  The audit investigation was paused for a time but continued until November 2020, following which the Claims Administrator issued a Rule 15 Audit Report.

On June 22, 2021, the Special Masters issued their "Special Masters' Rule 27 Decision on the Report of Adverse Finding Regarding Howard & Associates, P.A., and Related Parties."  *See* Special Masters' Rule 27 Decision, *avail. at*: https://www.nflconcussionsettlement.com/Docs/ howard_associates_SM.pdf.  The Special Masters adopted the factual findings of the Claims Administrator, including the finding that a former Howard & Associates employee was working

---

[9]  We note that Collins raised the prospect of the client filing a bar complaint in the same breath in which it offered to convey a *de minimis* sum if Pope McGlamry withdrew its lien.  *See* Lienholder Stmt. at Ex. D.

11

at another law firm that also represented SCMs, including many who were previous clients of Howard & Associates.  (Rule 27 Decision at 4-5.)  The Special Masters ultimately disqualified particular employees of the former Howard & Associates law firm from further involvement in the Settlement Program.  (*Id.* at 7-8.)

**B.  Judge Brody's review of the Howard disqualifications**

One such former Howard & Associates employee objected to the Special Master's decision excluding him from working on behalf of SCMs.  At the time of his objection, he was working at Collins & Truett, which apparently sought to grow a practice representing SCMs in this program. His objection was considered by Judge Brody, who issued a Settlement Implementation Determination decision on June 15, 2022.  She specifically "cautioned" Attorney Richard Collins that the objector, who was not an attorney, "works under his supervision and cannot engage in the unauthorized and independent practice of law."  (Settlement Implementation Decision (June 15, 2022) at 3, citing Fla. Bar Rule 4-5.3(a).)  She gave notice to Collins & Truett that it "must show that [the employee's] work on all Settlement Program matters was undertaken with a supervising attorney's direct and active oversight."  (*Id.* at 3-4.)  Her decision lifted the disqualification of the former employee from involvement in the Settlement Program after September 1, 2022 but explicitly ordered that: "*In all pending and future lien proceedings, Collins & Truett must provide a complete accounting of tasks performed by all attorneys and staff*."  (*Id.* at 4, ¶ 2 (emphasis added).)

**C.  Compliance in this lien proceeding**

Judge Brody's decision was issued on June 15, 2022, prior to the date of the lien submissions by Collins & Truett in this case.  It is noteworthy that the submission of Collins & Truett on behalf of Player in this lien dispute provided no accounting of who was performing what

tasks during the period of representation, which began in April 2022.  The chronology that Collins & Truett ultimately provided in January 2023 identified tasks that were undertaken on particular dates but with no identifiers by name or role.  *See* SCM Stmt. at App'x A.  As a result, the chronology did not reflect who performed significant functions such as the "first contact with client" and the two "Meeting[s] in person."  This document does not reflect compliance with Judge Brody's directive that Collins & Truett demonstrate, "in all pending and future lien proceedings," that its representation of the SCM involves work performed by an attorney or, if undertaken by staff, "with a supervising attorney's direct and active oversight."  Moreover, the particular employee with which Judge Brody's order was concerned appears to have had some role in the representation of Player: the first e-mail message of Attorney Collins to Attorney McGlamry, from December 5, 2022, included the former Howard & Associates employee among the "cc" recipients. (Lienholder Stmt. at Ex. D.)

We must also note here that, regardless of whether or not the chronology submission appended by Collins & Truett to its Statement of Dispute was intentionally vague, what was provided *does* raise legitimate questions as to whether *Attorney Collins* (or any other attorney) was the firm representative involved in the most important engagements with the client.  Even Pope McGlamry picked up on this as it reviewed the SCM Statement of Dispute and its "Chronology of Representation" document.  The chronology provided by Collins & Truitt reflected that the "first contact with client" and the two "Meeting[s] in person" took place in Spring, Texas as opposed to "in office," as indicated in other entries.  Yet as Pope McGlamry noted in its Lienholder Response of February 8, 2023: "Collins is a Florida law firm located in Doral, Florida, approximately 1,200 miles from Spring, Texas.  No other location or associated attorneys are identified on Collins' website.  It would be impossible for Mr. Collins to have traveled to Spring, Texas from Florida

and back in 3.5 hours, so it is unclear who in Texas was traveling to meet with [Player.]" (Lienholder Resp. at 7.)

As we noted above with respect to the Court's interest in enforcing compliance with the Lien Rules, we consider it to be within the Court's inherent supervisory powers to limit and/or preclude approval of an attorney fee in a matter where the party seeking the fee appears to have ignored an Order of the Court to which it is subject, here, the Settlement Implementation Decision as it applies to Collins & Truett.  *See, e.g., Dunn v. H.K. Porter Co., Inc.,* 602 F.2d 1105, 1109 (3d Cir. 1979) (noting power of district courts to monitor CFAs under the court's "supervisory power over the members of its bar").  Before making a final decision as to the fee allocation, however, we first provide an opportunity for Collins & Truett to be heard on this subject.

*[continued on next page]*

**AND NOW**, this 7th day of July, 2023, for the reasons set forth above, Collins & Truett **SHALL SHOW CAUSE,** in a writing to be filed on the MDL 2323 docket within ten (10) days of the entry of this Order, why the Court should not reduce or reject entirely its attorney fee in this matter on the grounds that:

(1) it has not complied with the June 15, 2022 Settlement Implementation Determination of Judge Brody; and

(2) it has not complied with the Lien Rules nor with the expectation under the Pennsylvania Rules of Professional Conduct that it "maintain[] a professional, courteous and civil attitude toward all persons involved in the legal system." (Pa. R.P.C., Preamble, ¶ 9);

and where its noncompliance interferes with the integrity of the Settlement Program and Court oversight. The writing **SHALL BE ACCOMPANIED BY** a signed and dated declaration, certification, verification, or statement made under penalty of perjury that any factual statements provided therein are true and correct. *See* 28 U.S.C. § 1746.

**IT IS SO ORDERED.**


BY THE COURT:


 /**s**/ David R. Strawbridge, USMJ____
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

15