# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf<br>of themselves and others similarly situated,<br>                    Plaintiffs,<br>         v.<br>National Football League and NFL Properties, LLC, successor-in-interest to NFL<br>Properties, Inc.,<br>                    Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO:<br><br>Byron Cuthbert and Associates, LLC Audit | |

## SETTLEMENT IMPLEMENTATION DETERMINATION

Before me is an objection by Byron Cuthbert and Associates, LLC ("BCA") and its principal, Attorney Byron Cuthbert ("Mr. Cuthbert"), to the Special Masters' Rule 27 Decision on the Report of Adverse Finding Regarding Byron Cuthbert and Associates, LLC issued on June 28, 2023 (Doc. No. 289084) (the "SM Decision"). For the reasons discussed below, I will deny the objection.

1

I.  **BACKGROUND**

BCA is a law firm that has represented as many as 223 registered Settlement Class Members ("SCMs") in the Settlement Program, 83 of whom had filed 114 Monetary Award claims as of February 15, 2023. SM Decision at 1.

In January 2019, the Claims Administrator received the first of several tips implicating Mr. Cuthbert in unethical conduct relating to the Settlement Program. SM Decision at 2.  In April 2021, it also received a complaint from an MAF neurologist that Mr. Cuthbert had been calling him daily to "twist his arm" and was telling him what to do with a claim, including to backdate a diagnosis to a particular date.  *Id.* at 1.

The Claims Administrator opened an Audit investigation as to BCA pursuant to Section 10.3 of the Settlement Agreement and Rule 7(b) of the Rules Governing Audit of Claims (the "Audit Rules").[1]  Its investigation spanned a

---

[1] The audit procedures were established "to detect and prevent fraudulent submissions to and payments of fraudulent Claims from the Monetary Award Fund." (Audit Rule 6.)  With respect to the investigation to be undertaken by the Claims Administrator, the Rules provide:

> **Rule 12. Standard of Proof Applied by the Claims Administrator.**
> (a) Standard of Proof: If the Claims Administrator determines there is a reasonable basis to support a finding *that there has been a misrepresentation, omission or concealment of a material fact made in connection with a Claim* by the Settlement Class Member, the Claims

period of years.  The Claims Administrator interviewed Mr. Cuthbert on March 8, 2022 and provided him an opportunity to review its preliminary findings in September 2022.  *Id.* at 1-2.

As a result of its audit investigation, the Claims Administrator concluded that Mr. Cuthbert "engaged in a pattern of continuous questionable behavior that has had a material negative impact on the Settlement Program."  Audit Report, Doc. No. 289080 at 2.  This included his use and continued defense of unreliable Amyloid PET scans offered by Dr. Daryl Eber in support of claims for the Qualifying Diagnosis of Alzheimer's Disease; his communications with MAF physicians; and his involvement in drafting medical records and third-party affidavits.

---

Administrator will report the Claim to the Parties and then refer it to the Special Masters as permitted by these Rules. …
(b) Fraudulent Intent Not Required: This standard of proof does *not* require the Claims Administrator to determine whether the misrepresentation, omission or concealment was intentional.
(c) Materiality: A fact is material if it did affect or has any potential to affect whether the Settlement Class Member qualifies for a Monetary Award, Supplemental Monetary Award or Derivative Claimant Award and/or the amount of such award in favor of the Settlement Class Member under the provisions of the Settlement Agreement.

Audit Rule 12 (emphasis added).

The Claims Administrator issued its Rule 15 Audit Report on February 15, 2023, describing its investigation and the conclusions it drew from it, and appending supporting exhibits.  Doc. No. 289080.  The Special Masters accepted the referral of the affected claims.[2]

Following review of the record and the position statements submitted by the NFL Parties and BCA, the Special Masters "adopted the factual findings of the Claims Administrator."  SM Decision at 4.[3]  They found that Mr. Cuthbert had not carried his burden to show that "there was no reasonable basis" for the Claims Administrator's conclusions.  *Id.* at 3-4.  They agreed that Mr. Cuthbert made a

---

[2]  The Audit Rules provide that the Claims Administrator will recommend referral to the Special Masters if it "determines upon completion of an Audit there is a reasonable basis to support a finding that there has been a misrepresentation, omission or concealment of a material fact made in connection with a Claim[.]"  Audit Rule 15.  At the time of the referral, a total of 12 claims filed on behalf of SCMs represented by BCA were believed to be implicated in the Audit.  SM Decision at 2.

[3] The Special Masters continued:

> Mr. Cuthbert knowingly used unreliable Amyloid PET scans, attempted to have Diagnosing Physicians change their diagnoses, and drafted both medical records and third-party affidavits.  These were material omissions or misrepresentations connected to Claim submissions.  We also conclude that Mr. Cuthbert was not truthful in responding to the investigatory process, making it more difficult for the Claims Administrator to carry out its duties.

SM Decision at 4.

"misrepresentation, omission, or concealment of a material fact made in connection with the claim," which required them to consider the broad remedial options provided in Settlement Agreement Section 10.3(i). *Id.* at 5. They took the following actions:

- The twelve claims "directly implicated" in the Audit were denied. The affected Class Members could obtain new medical records and submit a new claim; and

- The Claims Administrator was to suspend processing of all claims filed by Class Members who currently or formerly were represented by Mr. Cuthbert, whether those claims were on review or on appeal, and proceed as follows:

    o Deny any claims supported by a PET scan from the office of Dr. Eber, whose practices were the subject of a significant portion of the Audit Report;

    o Certify, before continuing to process each claim or any appeal, that the claim is entirely free of the issues discussed in the Audit; and

    o If the Claims Administrator cannot determine that a pending claim or appeal is free of the issues raised by the Audit, notify the Special Masters, who will deny the claim without prejudice.

SM Decision at 7.

BCA objected to the SM Decision and filed a supplemental objection thereafter. Doc. Nos. 289085, 289086.[4]  The NFL Parties responded to both sets of BCA's objections. Doc. Nos. 289088, 289089.

## II. DISCUSSION

BCA challenges the SM Decision on five grounds. None of these arguments are availing.

### A. The Special Masters did not apply the wrong legal standard.

BCA faults the SM Decision for looking only for whether there was "a reasonable basis" for the finding of "a misrepresentation" and not evaluating whether it was "intentional." Supp. Obj. at 2. BCA's objection is misguided.

The Settlement Agreement directs the Claims Administrator to audit a percentage of approved claims each month "or to address a specific concern raised by a Claim Package." Sett. Agr. § 10.3(c). It is empowered to "determine whether the Claim Form or Derivative Claim Form misrepresents, omits, and/or conceals material facts that affect the claim." *Id.* § 10.3(g). The Agreement establishes a process by which the Claims Administrator, if it "determines that there has been a misrepresentation, omission, or concealment of a material fact made in connection

---

[4] One of BCA's former clients also filed an objection. His claim was among those denied by virtue of the SM Decision. That objection will be addressed by separate order.

with the claim," refers the claim to the Special Master "for review and findings." *Id.* § 10.3(i). As this provision transitions into a description of available remedies, Section 10.3(i) also provides that "[t]he Special Master's review and findings ***shall take into account*** whether the misrepresentation, omission, or concealment was intentional[.]" *Id.* (emphasis added). That language does not, however, support the notion advanced by BCA that a finding of intent is ***required*** for an adverse Rule 27 decision by the Special Masters.

There is no question that the Special Masters acted in accordance with the Settlement Agreement and that they employed the standard set out in Audit Rule 28, which provides:

> **Rule 28. Standard of Proof Applicable to the Special Master.** The Special Master will determine whether the Settlement Class Member(s) subject to the Audit Report (or any other persons or entities whom the Special Master has required to respond under Rule 22) have established that there is no reasonable basis to support a finding that there has been a misrepresentation, omission or concealment of a material fact made in connection with a Claim by the Settlement Class Member. The Special Master ***also may find*** such misrepresentation, omission or concealment was intentional if the record contains substantial evidence of such intent.

Audit Rule 28 (emphasis added). Neither the Settlement Agreement nor the Audit Rules require a finding of "actual intent" to defraud the program before an adverse decision may issue from the Special Masters under Rule 27. The Special Masters' finding that Mr. Cuthbert's conduct was not "provably malicious" appears to have

7

informed their choice of remedies, as he was not *barred* from the Program. However, that finding does not reflect that the Special Masters applied "the wrong standard" to their review of the Claims Administrator's Rule 15 Audit Report. This objection is overruled.[5]

### B.   The decision was not arbitrary and unreasonable as a violation of the SCMs' right to due process.

BCA next complains that the Decision is "arbitrary and abused discretion" where it denied claims "without reviewing the facts and merits of each case and providing explanation of how the facts align to any malfeasance." Supp. Obj. at 3.

Section 10.3(i) of the Settlement Agreement gives broad discretion to the Special Masters to remedy a misrepresentation, omission or concealment involving a claim. These remedies include "denial of the claim in the event of fraud[.]" Sett. Agr. § 10.3(i). The Audit Rules similarly provide that if the Special Masters make an adverse Rule 27 finding "against the Settlement Class Member(s) subject to the Audit Report (or other person or entity directed to respond)," they may direct the

---

[5] BCA also contends that an intent requirement was recognized by the Court in ECF No. 10811, which was an Explanation and Order filed on August 20, 2019 in response to a motion by a group of SCMs seeking the Court's intervention to stop what they viewed as serial audits of claims. The Explanation and Order provided a description of the audit program and included a reference to an "intentional" misrepresentation. The description of the audit processes, which was dicta as to the resolution of that motion, does not supersede the standards and requirements established by the Settlement Agreement and the Audit Rules, all of which were prepared and approved by the Court following deliberative processes led by the Parties to the Settlement Agreement.

relief deemed appropriate, including "denial of the Claim(s) subject to the Audit Proceeding[.]" Rule 31, (a). I have previously upheld the legal authority of the Special Masters to deny a group of claims as a result of a shared discrepancy in material evidence. *See* ECF No. 11255 at 5-7 (in an audit involving claims relying on testing by the Neuropsychiatric Institute, 32 claims were denied without prejudice due to irregularities in testing procedures).

Here, the Special Masters determined that the most effective process by which deserving claimants could obtain valid awards was to deny the claims without prejudice to re-file based on evidence that is free of the concerns identified in the Audit. They specifically explained that while it was "Mr. Cuthbert, not his clients, [who was] at fault," the issues described in the Audit were "intractable, ranging from unreliable PET scans to undue pressure on doctors[.]" SM Decision at 7. They continued:

> The task of separating out of the genuine from the tainted in the medical evidence behind each Qualifying Diagnosis would be difficult, time-consuming, and in our experience unlikely to lead to successful submissions based on the existing medical records. We thus deny the Claims now to expedite the process of Claimants obtaining new medical records unsullied by the issues described in this Audit.

*Id.* This approach is neither arbitrary nor unreasonable.[6] This objection is overruled.

  **C.** **The Special Masters did not abuse their discretion, as the decision did not improperly modify the Settlement Agreement injury protocols.**

BCA next challenges the SM Decision as having effectively modified the definition of the Qualifying Diagnosis of Alzheimer's Disease in two ways: (1) by elevating the importance of PET scans when this evidence was never meant to be the sole basis for diagnosis under Section 6.3(b) of the Settlement Agreement; and (2) by requiring use of particular imaging software in lieu of radiologist findings. Supp. Obj. at 4-6. This objection is without merit.

The SM Decision in no way modified the definition for the Qualifying Diagnosis of Alzheimer's Disease contained in the Settlement Agreement. The

---

[6] BCA argues in a footnote that the denial of claims without individualized review violates due process guarantees contained in the Constitution. The only authority it cites is the observation in *Truax v. Corrigan*, 257 U.S. 312 (1921) that: "The due process clause requires that every man shall have the protection of his day in court, and the benefit of the general law, a law which hears before it condemns, which proceeds not arbitrarily or capriciously, but upon inquiry, and renders judgment only after trial, so that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society." *Id.* at 332. That case is inapposite to the circumstances of the administration of this Settlement Agreement. Moreover, the Settlement Class Members affected by the decision have a procedure by which they can submit claims for awards that will not implicate the concerns properly identified by the Claims Administrator and accepted by the Special Masters about reliability of medical evidence or misconduct by an attorney.

10

Audit Report and the SM Decision responded to reports that Mr. Cuthbert advised clients and prospective clients that an amyloid PET scan was "the 'ticket' to a Qualifying Diagnosis of Alzheimer's Disease, even when his clients had already received a Qualifying Diagnosis of Neurocognitive Impairment," and even after he had been advised that the PET scan reports completed by Dr. Eber were unreliable. SM Decision at 4 (quoting Audit Report at 49). This aspect of the SM Decision does not reflect an error of law.

There is no support for BCA's further contention that the SM Decision effectively (and improperly) requires use of "Standardized Uptake Value ratio (SUVr) software" to make an Alzheimer's diagnosis. Supp. Obj. at 5. The SM Decision does not refer to this software. This objection fails.

### D.   The decision was not arbitrary and unreasonable; it followed from an adequate process and record.

BCA contends that the SM Decision is unreasonable because it was based upon "insufficient evidence and many different hearsay statements[.]" Supp. Obj. at 8. BCA suggests that the Decision followed from an inadequate process where Mr. Cuthbert was not provided the names of individuals who made certain allegations to the Claims Administrator. *Id.* at 8-9. BCA also complains that the process under Audit Rule 24, which does not permit the Special Masters to conduct an evidentiary hearing on the Audit Report referral, caused them to "apply the

11

incorrect standard of review with insufficient evidence [that] led to an improper conclusion of law." *Id.* at 10.[7]

Much of BCA's argument here reflects an attempt to undermine the Special Masters' factual findings, which is not permissible under Audit Rule 33. I find no error of law in the Special Masters rendering their decision based on the record gathered by the Claims Administrator, which included interviewing Mr. Cuthbert and sharing with him the preliminary conclusions of the investigation into his practices. This objection is overruled.

### E. BCA's contention that the Audit activity, as affirmed by the Special Masters' decision, violated 42 U.S.C. § 1981 exceeds the scope of this appeal.

Finally, BCA also objects that the Special Masters' decision "supports a violation of 42 U.S.C. § 1981." Supp. Obj. at 6. BCA points to two former clients whose claims were processed "using the medical imaging and diagnosis by the same doctors that Attorney Cuthbert used to support his claims" and that "[t]he only obvious distinction is that these individuals are now represented by non-black attorneys[.]" *Id.* BCA contends that this circumstance "demonstrates the bias against and discrimination toward Mr. Cuthbert … and his clients." *Id.* at 8. BCA

---

[7] BCA also complains that Attorney Cuthbert was deprived of his right to "confrontation as an element of due process." Supp. Obj. at 10, 10 n.24. The identity of early tipsters and complainants carries little relevance given the extensive investigation undertaken thereafter by the Claims Administrator.

also accuses the Claims Administrator of not processing claims consistently and suggests it is favoring two particular "non-black attorneys" whom it "endorsed" by referring Mr. Cuthbert to them for assistance. *Id.*

BCA did not present this argument concerning alleged bias by the Claims Administrator in its briefing to the Special Masters. It is outside the scope of this review of the Special Masters' Rule 27 Decision. This objection is dismissed.

\* \* \*

Based on a review of the Special Masters' Rule 27 Decision, the objection and supplemental objection of BCA, and the NFL Parties' opposition to the two sets of objections, I approve and adopt the conclusion in the Special Masters' Rule 27 Decision.

**AND NOW**, this 29th day of February, 2024, it is **ORDERED** that Byron Cuthbert and Associates LLC's Objection and Supplemental Objection to the Special Masters' Decision (Doc. Nos. 289085 & 289086) are **DENIED**. The Special Masters' Rule 27 Decision on the Report of Adverse Finding Regarding Byron Cuthbert and Associates, LLC issued on June 28, 2023 (Doc. No. 289084) is **AFFIRMED.**

                                        s/ANITA B. BRODY, J.
                                        ANITA B. BRODY, J.