IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br>                         Plaintiffs,<br>     v.<br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>                         Defendants. | |
| THIS DOCUMENT RELATES TO:<br>Settlement Class Members SPID 950011814, 950011815, 950011818, 950011819, 950011820, 950011821, 950011822, 950013154, 950013174, 950013176, 950013178, 950013179, 950013223, 950013403, 950013520, 950013523, 950013608, 950013171 | |

**EXPLANATION AND ORDER**

The above-identified individuals filed claims in this class action settlement program as Representative Claimants of deceased retired NFL football players. They sought monetary awards for the qualifying condition of "Death with Chronic Traumatic Encephalopathy (CTE)." Their claims were properly denied.

1

*Background*

The court-approved settlement[1] provides for a monetary award to class members who establish any of five qualifying diagnoses, including Death with CTE.  The Representative Claimants here registered with the settlement program and, in February 2019, filed claims seeking an award on behalf of a deceased retired player for Death with CTE.  In June 2019, they submitted to the Claims Administrator the requisite Diagnosing Physician Form, containing the certification of Dr. Ronald L. Hamilton, who is board-certified in neuropathology, that their deceased player had CTE at the time of his death.  They each also submitted virtually identical two-page letters from Dr. Hamilton that read, in relevant part:

> I have conducted a study of the life and football playing history of [the decedent].  In my Neuropathology practice I conduct an ongoing study of all available and existing knowledge related to the existence and diagnosis of CTE and I combine that knowledge with my training and extensive experience related to the discovery, study and diagnosis of CTE.
>
> [The decedent] died on [date] at [age].  [The decedent] played high school and college football and [#] seasons in the NFL. Based upon the studies referenced above, it is my opinion that [the decedent] had CTE on his date of death.

---

[1] I will refer to the Class Action Settlement Agreement (As Amended), to which I gave final approval on April 22, 2015, as "the Settlement Agreement."  It is found at ECF No. 6481-1.  The settlement became effective on January 7, 2017.

Ltr., Ronald L. Hamilton, M.D., To Whom It May Concern, at 1.  *E.g.,* Doc ID No. 209013.  He also offered:

> I have for many years held the opinion that it is more likely than not that if an individual played professional NFL football, then he has CTE.  That opinion applies in the case of [the decedent].

*Id*.  He concluded each of his letters with the following:

> Based upon my knowledge, training, and extensive experience related to the study and diagnosis of CTE, it is my opinion that it is more likely than not that [the decedent] had CTE on his date of death.

*Id*. at 2.  The letters made no reference to Dr. Hamilton having reviewed the brains or any brain material of any of the decedents, nor did he indicate that any other neuropathologist had done so.

The Claims Administrator denied these claims, citing the failure of the Representative Claimants to establish that the physician examined the Retired Player's brain tissue to render the diagnosis.  The denial notice issued to each of these Representative Claimants stated:

> We reviewed your Claim Package and determined that you are not entitled to a Monetary Award because:
>
> 1. Section 6.3(f) of the Settlement Agreement allows a CTE diagnosis if: (1) the Retired Player died before 4/22/15, and (2) there was a post-mortem diagnosis of CTE made by a board-certified neuropathologist prior to 4/22/15.  Although Dr. Hamilton is a board-certified neuropathologist and signed a Pre-Effective Date Diagnosing Physician Certification Form indicating a CTE diagnosis, we must have proof that

3

> he personally performed the post-mortem exam on the Retired Player …. There was no post-mortem examination report submitted to indicate that Dr. Hamilton examined the Retired Player's brain tissue to confirm a CTE diagnosis. The two-page letter provided by Dr. Hamilton does not satisfy the requirements for a CTE diagnosis under this Settlement Program. For these reasons, this claim is denied.

*E.g.*, Doc. ID No. 209202.

Each of the Representative Claimants appealed the decision to the court-appointed Special Master pursuant to the Settlement Program rules. In a decision issued on July 15, 2020, the Special Master affirmed the Claims Administrator's decision.[2] The Representative Claimants objected to the ruling, and on February 24, 2023, I simply denied their objections. ECF No. 12001 at 1. On March 24, 2023, the Representative Claimants filed a "Motion to Alter or Amend the Order that the Objections of the Class Members are Denied [ECF 12001]." ECF No. 12033. They ask that I alter or amend my previous order or explain the basis for it. ECF No. 12033 at 1. I now provide an explanation for my earlier order.[3]

---

[2] The Special Master's decisions are available to the parties and the Court through a portal maintained by the Claims Administrator. A redacted version of a representative decision of the Special Master on these issues is available on the public website maintained by the Claims Administrator at: https://www.nflconcussionsettlement.com/Docs/cte_sm_1.pdf.

[3] The Representative Claimants also sought review of my order in the Third Circuit. ECF No. 12037. Given that their reconsideration motion was already pending before me, the Court of Appeals ordered the appeals in C.A. No. 23-1585

*Discussion*

The Settlement Agreement provides monetary awards for class members who establish a qualifying diagnosis. The Settlement Agreement describes the "Death with CTE" qualifying diagnosis as follows:

> A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the Final Approval Date, through a post-mortem diagnosis made by a board-certified neuropathologist prior to the Final Approval Date ….

Settlement Agreement [ECF No. 6481-1], § 6.3(f).[4] The Claims Administrator has interpreted this provision to require that the diagnosis of CTE at the time of death be established through actual review of the brain irregularities that are its only diagnostic marker. This conclusion is supported both by the language used in the Agreement as well as the expert opinions that informed the parties as they negotiated this settlement in 2014 and secured my approval of it in 2015.

First, the requirement of review of brain matter is implicit in the terminology used in the Agreement. The Agreement specifies that the diagnosis of CTE must be made by a neuropathologist. A pathologist is "[a] doctor who has special training in identifying diseases by studying cells and tissues under a microscope."

---

to be stayed pending disposition of this motion. ECF No. 12042.

[4] An exhibit to the Settlement Agreement contains definitions for each of the qualifying conditions and provides a nearly identical definition for "Death with Chronic Traumatic Encephalopathy (CTE)." ECF No. 6481-1 at Ex. A-1.

Nat'l Inst. of Health, National Cancer Institute, Definition of Cancer Terms, https://www.cancer.gov/publications/dictionaries/cancer-terms/def/pathologist (last visited Apr. 10, 2024).  Neuropathologists specialize in such review of matter from the central nervous system.  *Id.,* https://www.cancer.gov/publications/dictionaries/cancer-terms/def/neuropathologist (last visited Apr. 10, 2024).  By limiting the diagnosing physician to a specialist in pathology and relating to an organ – the brain – that does not typically yield sample material while the patient is living, the Settlement Agreement conveys that the proof of the condition had to come from actual analysis of brain material by an expert trained in recognizing abnormalities in that organ.  *See also* College of American Pathologists, Neuropathology, https://www.cap.org/member-resources/pathology-careers/pathology-subspecialties/neuropathology (last visited Apr. 9, 2024) (noting definition of neuropathology "as the subspecialty of pathology dealing with the tissue-based diagnosis of diseases of the central and peripheral nervous systems, skeletal muscle, and eye").  The language employed in the Settlement Agreement and qualifying diagnosis definition thus incorporates the criteria that the Claims Administrator is enforcing: review of actual brain tissue.

      The reference to "post mortem" diagnosis also supports the Claims Administrator's determination that a certification like Dr. Hamilton's is deficient.

At the time the Agreement was circulated and approved, CTE was consistently described as a diagnosis rendered "post mortem." In my memorandum and order giving final approval to the settlement, I noted that CTE "is a neuropathological diagnosis that currently can only be made post mortem," which means that "no one can conclusively say that someone had CTE until a scientist looks at sections of that person's brain under a microscope to see if abnormally phosphorylated tau protein ('abnormal tau protein') is present, and if so whether it is present in a reportedly unique pattern." *In re Nat'l Football League Players Concussion Inj. Litig.*, 307 F.R.D. 351, 397 (E.D. Pa. 2015). The Third Circuit highlighted the same features of the disease. *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 421-22 (3d Cir. 2016) (noting that "CTE involves the build-up of 'tau protein' in the brain"; that "it is only diagnosable post-mortem"; and that "diagnosis requires examining sections of a person's brain under a microscope to see if abnormal tau proteins are present and, if so, whether they occur in the unique pattern associated with CTE").

      The language of the Settlement Agreement follows the expert scientific opinions stating that CTE can only be diagnosed after a review of actual brain tissue. A diagnosis of CTE is therefore only valid under the Settlement Agreement if a Board-certified neuropathologist makes this diagnosis by examining a former NFL football player's brain tissue after death.

Dr. Hamilton's letter, which is relied upon in each of these 18 claims, does not meet the Settlement Agreement's standard for Death with CTE. Dr. Hamilton himself describes in his letter the "pathognomonic (distinct)" features of CTE that can be observed in brain tissue, such as "lesions in the depths of the sulci consisting of tau aggregation in perivascular glial cells." Hamilton Ltr. at 2. *See also id.* (noting that it is "neuropathological testing" that "reveal[s] CTE pathology"). Yet he did not ground his diagnosis on such examination. He instead assumed that each decedent had CTE based only on the fact that they played professional football. That is clearly insufficient under the terms of the agreement.

Given the terms of the Settlement Agreement, a claim for Death with CTE is not properly supported by an opinion that it was "more likely than not" that the former professional football player "had CTE" based upon "a study of the life and football playing history" of the individual and "existing knowledge related to the existence and diagnosis of CTE[.]" Hamilton Ltr. at 1-2. The Representative Claimants did not carry their burden to establish, through a post-mortem pathology examination, that the brain evidenced CTE at the time of his death.

### Conclusion

The Special Master found as a matter of fact that "Dr. Hamilton did not examine [the Retired Player's] brain tissue," and he correctly interpreted such an examination to be "necessary to diagnose Death with CTE." Special Master Dec.,

July 15, 2020, at 4.  The Special Master was correct when he affirmed the Claims Administrator's denials of the 18 claims filed by these Representative Claimants.

**AND NOW**, this 17th day of April, 2024, it is **ORDERED** that the "Class Members' Motion to Alter or Amend the Order that the Objections of the Class Members are Denied [ECF 12001]," ECF No. 12033, is **DENIED.**

                                                        s/ANITA B. BRODY, J.
                                                    _____
                                                    ANITA B. BRODY, J.