**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>                                    Plaintiffs,<br><br>                    v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br>                                    Defendants. | Civ. Action No.: 14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br>Settlement Class Member Vashone L. Adams (SPID 100000064) | Hon. Anita B. Brody |

**RESPONSE OF THE NATIONAL FOOTBALL LEAGUE &**
**NFL PROPERTIES LLC IN OPPOSITION TO VASHONE L. ADAMS'**
**MOTION FOR RECONSIDERATION OF THE DISTRICT COURT'S**
**APRIL 24, 2024 SETTLEMENT IMPLEMENTATION DETERMINATION**

## TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................................ i

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND .................................................................................................................... 3

      A.    The Settlement Agreement ........................................................................... 3

      B.    Claimant's Testing And Procedural History........................................... 3

LEGAL STANDARD............................................................................................................ 6

ARGUMENT .......................................................................................................................... 7

      A.    There Has Been No Intervening Change In Controlling Law Since The
             Court's Decision ............................................................................................ 8

      B.    Claimant Has Not Produced Any Newly Available Evidence And The
             "Evidence" He Points To Does Not Undermine This Court's Prior
             Decision ......................................................................................................... 9

      C.    The Court Did Not Err And No Manifest Injustice Has Occurred ...................... 11

CONCLUSION...................................................................................................................... 13

The National Football League and NFL Properties LLC (collectively, the "NFL Parties") respectfully submit this response in opposition to the Motion for Reconsideration of this Court's Settlement Implementation Determination dated April 24, 2024, and entered on November 6, 2024 (the "Order"), filed by Settlement Class Member Vashone L. Adams ("Mr. Adams" or "Claimant") affirming the Special Master's denial of Mr. Adams' claim for a Qualifying Diagnosis Level 2 Neurocognitive Impairment.

## PRELIMINARY STATEMENT

The Motion seeks reconsideration of this Court's well-reasoned Order affirming the denial of Claimant's claim for a Qualifying Diagnosis of Level 2 Neurocognitive Impairment.  As the Court recognized, Claimant's neuropsychological testing was determined to be invalid by the Appeals Advisory Panel ("AAP") and Appeals Advisory Panel Consultant ("AAPC"), as well as the Program neuropsychologist that administered that testing, Dr. Jane Booth.  Specifically, in affirming the Special Master's Decision that affirmed the Claims Administrator's denial of Mr. Adams' claim, this Court concluded that:   (1) "The Special Master's determination that [Claimant's] claim relied upon neuropsychological testing that was shown to be invalid is an unreviewable factual finding"; (2) Claimant's contention that the Special Master abused his discretion challenges unreviewable factual findings; and (3) there was "no error" that "implicates the fairness of processes."  (Order at 4–5.)  Thus, the Court correctly held that "the Special Master did not commit legal error in affirming the Claims Administrator's denial of the claim" and affirmed the Special Master's Decision.  (*Id.*)

The Motion fails to present any legitimate basis for reconsideration under Federal Rule of Civil Procedure 59(e), and instead, improperly reasserts arguments that the Court has already rejected.  Specifically, Claimant argues that:  (1) Special Master decisions published before the Court decided his Objection constitutes intervening changes in controlling law; (2) "newly"

available evidence purportedly demonstrates that Claimant was treated differently than other class members; and (3) the Court can review the Special Masters' factual findings. These arguments are not a proper basis upon which a motion for reconsideration under Rule 59(e) can be granted, and are substantively without merit.

*First*, Claimant fails to cite to any intervening change in controlling law and therefore fails to meet the standard for reconsideration on this basis. Moreover, the decisions on which Claimant relies in no way conflict with Court's prior decision. To demonstrate an intervening change in the law, Claimant points to 12 Special Master decisions, all of which were issued well before the Court's Order. Thus, these decisions are neither controlling on the Court, nor do they constitute an intervening change in the law. More importantly, as this Court has previously determined, the cited decisions are not in any way inconsistent with the Special Master's Decision or the Court's Order here.

*Second*, the purported newly discovered evidence of impartiality or bias is not new because it was available to Claimant when he filed his Objection and long before the Court issued its Order. In any event, it does not shows unfairness or bias in the processing of Claimant's claim. Likewise, Claimant's other arguments relating to alleged procedural irregularities have already been squarely rejected by this Court for one simple reason: there was nothing procedurally improper about the denial of Claimant's claim or the Special Master's Decision affirming that denial.

*Third*, Claimant's other arguments do not show any error of law, let alone clear error, and Claimant does not even attempt to address whether manifest injustice would occur if the Court's Order is permitted to stand (and it would not). Rather, Claimant again urges the Court to disregard the Settlement Program's clear rules disallowing further review of the Special Master's final and binding factual determinations, which have been repeatedly applied by this Court. And *even if*

Claimant could challenge the Special Master's factual determinations, the Decision extensively examined the relevant records before ultimately concluding that the claim was properly denied.

For these reasons, and those set forth below, Claimant's instant Motion should be denied.

## BACKGROUND

### A.    The Settlement Agreement

The Settlement Agreement provides that "[f]or living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 2 Neurocognitive Impairment, *i.e.*, moderate dementia, [must be] based on evaluation and evidence generally consistent with the diagnostic criteria set forth [for the BAP] in subsection 2(a)(i)-(iv)" of the Injury Definitions. (*See* Settlement Agreement, Ex. 1 § 2(b).) Those Injury Definitions require that a diagnosis of Level 2 Neurocognitive Impairment include "[e]vidence of a severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol." (*Id.*, Ex. 1 §§ 2(a)(ii), 2(b).)

The neuropsychological testing protocol in turn requires that "at least seven performance validity metrics" be administered to each Retired Player. (*Id.*, Ex. 2 § 2.) "[A] Retired NFL Football Player's failure on two or more effort tests may result in the Retired NFL Football Player's test results being subjected to independent review, or result in a need for supplemental testing of the Retired NFL Football Player." (*Id.*) The Settlement Agreement also requires the neuropsychologist to complete the *Slick* Checklist of validity criteria "to determine whether the Retired . . . Player's test data is a valid reflection of his optimal level of neurocognitive functioning." (*Id.*)

### B.    Claimant's Testing And Procedural History

Claimant first received a pre-Effective Date Qualifying Diagnosis of Level 2 Neurocognitive Impairment rendered on December 21, 2016 by neurologist Dr. Danny Benmoshe,

as supported by clinical psychologist Dr. Bahar Safaei-Far.  That claim was denied on December 19, 2019, based on the findings of an AAP member and AAPC, who determined that Claimant's testing was invalid and that he could not meet the functional impairment requirements for his claimed diagnosis.  (Dec. 5, 2019 Denial Notice at 1.)  Claimant appealed that denial, and the Special Master affirmed the denial on December 29, 2020.  Claimant then objected to the Special Master's Decision, and on April 21, 2022, this Court denied Claimant's objection because the Special Master's determination that Claimant did not meet the requirements for a Qualifying Diagnosis was "an unreviewable factual finding."  (Order, Doc.ID 258821, at 2.)

In June 2022, Claimant submitted the instant claim for the same Qualifying Diagnosis of Level 2 Neurocognitive Impairment, as of April 21, 2020, based on evaluations from more than two years earlier by MAF neurologist Dr. Ramin Ansari, as supported by neuropsychological testing administered by Dr. Booth.  Dr. Booth initially considered Mr. Adams' performance validity to be "adequate," while noting several failures on performance validity measures and the implication of the second *Slick* criterion involving a pattern of performance discrepant from accepted models of central nervous system functioning.  (*See* Booth Report at 3–4.)  At that time, Dr. Booth expressly deferred any determination concerning certain *Slick* criteria, including because she did not yet have a third-party collateral report.  (*See id.*; Booth Addendum at 2–3.)  An AAPC reviewed Mr. Adams' Claim Package (with the benefit of the third-party collateral report), and identified five *Slick* criteria implicated by Mr. Adams' testing; given these validity issues, the AAPC concluded that Mr. Adams does not meet the criteria for any Qualifying Diagnosis.  (Oct. 31, 2022 AAPC Report, Doc.ID 272522.)  Instead of simply denying Mr. Adams' claim on this basis, the Claims Administrator relayed the AAPC's findings to Dr. Booth and offered her the opportunity to provide clarifying information.  In response, Dr. Booth submitted

an addendum agreeing that all five *Slick* criteria identified by the AAPC were implicated, and concluding that: "Considering the full *Slick* [c]riteria, including the items I had previously deferred to the neurologist, ***the updated interpretation would be invalid***." (Booth Addendum at 1–3 (emphasis added).)

The AAPC reviewed this response, including Dr. Booth's "concession that five *Slick* criteria for malingered neurocognitive impairment are at least partially fulfilled"[1] and again concluded that although Mr. Adams "may have a mild underlying neurocognitive disorder, the magnitude of his exaggeration is such that it is impossible to render such a diagnosis," and he does not meet the "criteria for either Level 1.5 or Level 2 Neurocognitive Impairment." (Jan. 19, 2023 AAPC Report, Doc.ID 276023.) On May 19, 2023, following review by an AAP member, the Claims Administrator denied Claimant's claim because his "diagnosis is not generally consistent with the Qualifying Diagnosis of Level 2 Neurocognitive Impairment because of invalid neuropsychological testing results." (May 19, 2023 Denial Notice at 2.)

Claimant appealed the denial of his claim on June 6, 2023, arguing that his diagnosis was "generally consistent" with the applicable criteria, and the denial of his claim was the result of "[d]iscrimination, unfair bias, lack of due process, and misconduct." (*See* Appeal at 1, Doc.ID 283942.) The NFL Parties filed an opposition to Claimant's appeal, demonstrating that the conclusions of the AAPC, the AAP member, and even Dr. Booth (in her responsive addendum) that Claimant's testing is invalid were correct. (*See* NFL Opp'n, Doc.ID 287138.)

On September 22, 2023, the Special Master issued the Decision, denying Claimant's appeal. The Special Master agreed with Claimant that it was Claimant's "burden [] to offer

---

[1]    Specifically, Dr. Booth agreed fully that four *Slick* criteria were implicated and "agree[d] somewhat" that a fifth *Slick* criterion was also implicated. (*See* Booth Addendum.)

evaluation and evidence that is generally consistent with the BAP criteria," but determined that "it was not erroneous for the Claims Administrator to adopt the examining neuropsychologist's ultimate, considered, and articulated judgment," and that "Dr. Booth's final report supports the determination that there are quantitative and qualitative reasons to doubt that Mr. Adams' scores represented a valid estimate of his cognitive functioning." (Decision at 7.) Accordingly, the Special Master concluded that "[f]or the reasons given by the Claims Administrator [in the Denial Notice], Mr. Adams has not established an entitlement to an Award," and denied the appeal. (*Id.*)

Claimant then filed a timely Objection to the Special Master's Decision. The NFL Parties filed a response to Claimant's Objections, arguing that the Special Master's Decision should be affirmed. (*See* Dec. 18, 2023 NFL Response in Opp'n, Doc.ID 297435.) In an order dated April 24, 2024, the Court denied Adams' Objection to the Special Master's Decision, holding that "Adams did not support his claim for the Qualifying Diagnosis of Level 2 Neurocognitive Impairment with the requisite validated testing." (Order at 5.) Specifically, the Court held that the Special Master's finding that the neuropsychological testing was invalid is an "unreviewable factual finding," that there was "no error" related to the fairness of the processes, and that the Special Master did not commit legal error in denying Claimant's claim. (*Id.* at 4.) The Court's Order was entered as an order of the Court under Federal Rule of Civil Procedure 79(a) on November 6, 2024. (*See* Order, ECF No. 124394 at 4.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits the filing of a motion for reconsideration that seeks to alter or amend a judgment. *U.S.* v. *Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003). "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law

or prevent manifest injustice." *Lazaridis* v. *Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co.* v. *CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

Indeed, Rule 59(e) motions for reconsideration "are extraordinary remedies and thus are granted only sparingly because of the interests in finality and conservation of scarce judicial resources." *Hankins* v. *Colvin*, No. 13-4929, 2016 WL 660200, at *2 (E.D. Pa. Feb. 18, 2016) (quoting *Pa. Ins. Guar. Ass'n* v. *Trabosh*, 812 F. Supp. 522, 524 (E.D. Pa. 1992)). To prevail, "[t]he moving party bears a substantial burden, which cannot be satisfied through 'recapitulation of the cases and arguments considered by the court before rendering its original decision.'" *Id.* (quoting *Young Jewish Leadership Concepts* v. *939 HKH Corp.*, No. 93-2643, 1994 WL 184410, at *1 (E.D. Pa. May 10, 1994)). "'[M]ere disagreement' with the Court's decision is not grounds for reconsideration." *Id.* (citing *Meachum* v. *Temple Univ. of the Commw. Sys. of Higher Educ.*, 56 F. Supp. 2d 557, 557 n.2 (E.D. Pa. June 30, 1999)).

## ARGUMENT

For the third time, Claimant challenges the Claim Administrator's proper denial of his claim by advancing meritless arguments, many of which this Court has already correctly rejected. Nominally, Claimant contends that his Motion should be granted based on: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." (Mot. at 1.) But, as further explained below, Claimant's arguments are factually incorrect, devoid of legal merit, and plainly do not meet the high standard required to warrant the rarely granted and extraordinary relief Claimant seeks. Claimant had a full and fair opportunity to litigate his claim, and his attempts to rehash the same arguments previously rejected should be denied.

**A.      There Has Been No Intervening Change In Controlling Law Since The Court's Decision**

Claimant's first contention is that reconsideration is warranted due to an "intervening change" in "controlling law" based on various Special Master decisions between June 2020 and November 2023.  (Mot. at 2–6.)  Claimant's argument is fatally flawed for several reasons.

As a threshold matter, these Special Master decisions do not constitute an "intervening change" in law because they were all issued by November 2023—five months *prior* to this Court's Order.  The law is clear that this is dispositive.  *See Hatcher* v. *SCM Grp. N. Am., Inc.*, 167 F. Supp. 3d 719, 729 (E.D. Pa. 2016) (holding that there was no intervening change in the law where "the law ha[d] not changed since the court granted summary judgment"); *Search & Soc. Media Partners* v. *Facebook, Inc.*, C.A. No. 17-1120, 2019 WL 581616, at *7 (D. Del. Feb. 13, 2019) ("The availability of [the Special Masters' decisions] before the Court ruled . . . means that [those decisions] cannot be a change in the controlling law" to support reconsideration).

Moreover, the Special Masters' decisions that Claimant cites are not controlling on this Court.  Instead, the Court reviews *de novo* any objection to conclusions of law from the Special Masters (*see* ECF No. 6871 at 4–5), and it is the legal conclusions of the Third Circuit that bind this Court.

Finally, these decisions do not conflict with the Special Master's Decision or the Court's Order.  Mr. Adams appears to contend that the Special Master's consideration of Dr. Booth's addendum was improper because it was at odds with prior decisions in other appeals emphasizing the value of contemporaneous records.  (Mot. at 2–6.)  But unlike the clinicians' letters in those cited decisions, written to support a claimant's appeal and to defend the clinicians' conclusions, Dr. Booth's addendum was not generated or submitted for purposes of appeal or to defend her initial determination.  (*See also* NFL Response in Opp'n, Doc.ID 297435 at 9–10.)  Thus, it is not

the type of document that the Special Master has rightly discounted. Instead, Dr. Booth's addendum was generated as a result of routine requests for clarifications from the Program's neutral experts in pursuit of the Settlement Agreement's central goal of diagnostic accuracy. Indeed, because Dr. Booth's initial report expressly deferred determination of certain *Slick* criteria, it was particularly appropriate that the Claims Administrator sought her updated conclusions when furnished with the reports she had previously lacked and, as this Court previously found, arguments to the contrary "do not . . . have merit." (Order at 3.)

Thus, Claimant has not pointed to any intervening changes in controlling law, let alone law that would require a different outcome, and Claimant's attempted re-litigation of issues previously decided by this Court cannot support reconsideration. *Biggins* v. *Metzger*, C.A. No. 99-188 (MN), 2018 WL 6681746, at *1 (D. Del. Dec. 19, 2018) ("[A] Rule 59(e) motion . . . may not be used as an opportunity to relitigate the case." (citing *Blystone* v. *Horn*, 664 F.3d 397, 414 (3d Cir. 2011))).

> **B.    Claimant Has Not Produced Any Newly Available Evidence And The "Evidence" He Points To Does Not Undermine This Court's Prior Decision**

Claimant also contends that reconsideration is appropriate on the basis of new evidence that purportedly demonstrates that he was "not being treated similarly as other class members." (Mot. at 2, 7–9.) Claimant's arguments once again fail: the "evidence" is not new; nor does it demonstrate any inconsistent treatment or bias whatsoever.

Claimant's "new evidence" consists of several screenshots from May 2022, January 2023, and May 2023, where he reported difficulties logging into the Settlement's online portal. Given that this "evidence" was plainly available to Claimant before the Special Master's Decision (dated September 22, 2023) and the Court's Order (dated April 24, 2024), it cannot be considered newly discovered for purposes of reconsideration. *See Blystone*, 664 F.3d at 415-16 ("[N]ew evidence . . . does not refer to evidence that a party . . . submits to the court after an adverse ruling. Rather,

new evidence in this context means evidence that a party *could not* earlier submit to the court because the evidence was not previously available.") (quoting *Howard Hess Dental Labs., Inc.* v. *Dentsply Int'l Inc.*, 602 F.3d 237, 252 (3d Cir. 2010)) (emphasis added); *In re Commonwealth's Mot. to Appoint New Couns. Against or Directed to Defender Ass'n of Phila.*, No. 13-62, 2013 WL 5498152, at *1 (E.D. Pa. Oct. 3, 2013) ("'[N]ew evidence' means material discovered after a judgment or order that could not have been found with due diligence beforehand and that could be used to prove a fact."); *see also King* v. *Mansfield Univ. of Pa.*, Civil No. 1:11-cv-1112, 2014 WL 4546524, at *12 (M.D. Pa. Sept. 12, 2014) (a document dated "over seven months before [d]efendants' motion for summary judgment was filed . . . . is certainly not newly discovered evidence that was unavailable when the court granted the motion for summary judgment" and "does not form a compelling basis to grant a motion for reconsideration"). Indeed, where, as here, evidence is not "newly discovered," "a party may not submit that evidence in support of a motion for reconsideration." *See Harsco Corp.* v. *Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (citation omitted).

In any event, Claimant provides no additional context for these screenshots—such as the cause of these errors, whether these issues were resolved, whether the issues were unique to Claimant, or whether Claimant had been prejudiced in any way or that they otherwise affected his claim. Without such details, it is impossible to connect the portal issues that Claimant experienced to any impropriety or bias. Indeed, Mr. Adams was able to submit materials to the portal shortly after each of the screenshots was dated, and was able to timely file an appeal to the Special Master and objection to the Special Master's Decision through the portal without issue. Clearly, such minor, since-corrected technical glitches resulting in no prejudice whatsoever do not constitute

evidence of impropriety or bias.[2]

### C.    The Court Did Not Err And No Manifest Injustice Has Occurred

In a last-ditch attempt to conjure legal error, Claimant advances three final arguments: (i) that the "Special Master['s] [D]ecision omitted critical factual evidence," (ii) Rule 53 of the Federal Rules of Civil Procedure permits this Court to review the Special Master's factual findings, and (iii) that the Special Master's Decision was not generally consistent and was arbitrary and capricious.    Claimant's arguments are legally flawed and woefully insufficient to justify reconsideration under Rule 59(e).

*First*, Claimant contends that the Special Master "intentionally omitted" the first page of Dr. Booth's addendum when issuing the Decision.  It is unclear what Claimant means as there is no indication that the Special Master omitted or otherwise did not consider this page in issuing his Decision.  As this Court has already held, the Special Master's reliance on Dr. Booth's addendum and "determination that Adams's claim relied upon neuropsychological testing that was shown to be invalid is an unreviewable factual finding."  (Order at 3.)  Claimant's unfounded contention does not undermine that holding, let alone satisfy his heavy burden to show that the Court's ruling was clearly erroneous.[3]

*Second*, Claimant contends, without elaboration, that the "Special Master made legal conclusions on a number of legal issue[s] raised in the Appeal which are incorporated in the Objection."  (Mot. at 11.)  Claimant's assertion is simply incorrect.  This Court has already

---

[2]    To the extent that Claimant argues the errors that resulted in him not receiving notice of the Court's Order demonstrates bias, he is also incorrect.  While the fact that Claimant did not receive such notification was a logistical mishap, Claimant has suffered no prejudice.  Indeed, in light of these errors, the NFL Parties did not oppose Claimant's request to reopen the time to appeal and has not challenged this Court's Explanation and Order deeming his notice of appeal timely.

[3]    Even if this argument had an iota of merit (and it plainly does not), it would still not warrant reconsideration because "arguments or . . . evidence that could have been raised prior to the entry of judgment" are insufficient bases for relief under Rule 59(e).  *See Exxon Shipping Co.* v. *Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Wright & Miller, Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

carefully reviewed the Special Master's Decision and found that the Special Master "did not commit legal error" and that Claimant's other arguments challenged unreviewable factual findings. (Order at 4.)    Moreover, Claimant's conclusory argument to the contrary falls far short of Claimant's heavy burden under Rule 59(e).    *See Jones* v. *Burlington Cnty. Bd. of Chosen Freeholders*, 428 F. App'x 131, 134 (3d Cir. 2011) ("The District Court was therefore correct to deny" the plaintiff's "bare-bones motion for reconsideration."); *Bolick* v. *Ne. Inds. Servs. Corp.*, No. 4:14-cv-00409, 2016 WL 9223858, at *2 (M.D. Pa. Apr. 21, 2016) (denying a motion for reconsideration because "[t]he arguments advanced . . . are wholly conclusory").

To the extent that Claimant's argument can be read to suggest that the Court refusing to review the Special Master's factual findings is error, Claimant is wrong.    Federal Rule of Civil Procedure 53(f) provides that the parties may stipulate that the Special Master's factual findings are binding.    As this Court is well aware, that is precisely what the Settlement Agreement here provides for, which has been approved by this Court and the Third Circuit.    (*See* Order at 3–4; Order Appointing Special Masters at 5, ECF No. 6871 (July 13, 2016) ("[T]he factual determinations of the Master(s)" with respect to an appeal of a Monetary Award determination "will be final and binding."); *see also* Rules Governing Appeals of Claim Determinations, Rule 31 ("The Special Master's decision on an Appeal is final and binding . . . and is not subject to appeal or review by the Court, except that . . . the Court will review de novo (that is, anew) any objection to the Special Master's conclusions of law.")).

*Third*, Claimant contends the Court erred when holding that it lacked the authority to review Claimant's arguments related to the Special Master's application of the "generally consistent" standard and that alleged procedural irregularities rendered the Decision arbitrary and capricious.    As previously explained, Claimant's arguments that the Special Master's Decision

was improper are entirely meritless. (*See* NFL Response in Opp'n, Doc.ID 297435.) Claimant advances these same arguments despite the Court correctly finding that the claim was processed in a "routine" manner and in accordance with the express terms of the Settlement Agreement. (Order at 4.)

Equally unpersuasive is Claimant's contention that "[a] valid neuropsychological test was reversed after nearly 3 years . . . without new medical evidence or any specific facts or reason to support the change in position." (Mot. at 12.) As this Court held, the Special Master's factual determination that Claimant's neuropsychological testing is invalid "is an unreviewable factual finding." (Order at 3; *see also id.* at 4 n.3 ("Adams's contention that the Special Master abused his discretion remains a challenge to the factual findings of the Special Master.").) Claimant does not even attempt to address this Court's holding, let alone show that it was clearly erroneous or that allowing it to stand would result in manifest injustice (and it clearly would not).

*Finally*, even if Claimant's challenges were permissible, they are undisputedly contradicted by the record. Every decision—by the Claims Administrator, Special Master, and the Court—has explained that the Claims Administrator and Special Master relied on numerous documents, including contemporaneous records, AAP and AAPC reports, and Dr. Booth's addendum in finding that Claimant's testing was invalid.

In sum, Claimant's arguments for reconsideration are nothing more than "thinly-veiled factual assertions and boilerplate, unsupported legal conclusions" that "warrant [the] denial of [his] motion." *Griffin-El* v. *Beard*, Civil Action No. 06-2719, 2009 WL 678700, at *4 (E.D. Pa. Mar. 16, 2009).

<u>**CONCLUSION**</u>

For the foregoing reasons, the NFL Parties respectfully request that the Court deny Claimant's Motion for Reconsideration.

Dated: December 19, 2024               Respectfully submitted,

                                       */s/ Brad S. Karp*
                                       PAUL, WEISS, RIFKIND, WHARTON
                                        & GARRISON LLP
                                       Brad S. Karp
                                       Bruce Birenboim
                                       Lynn Bayard
                                       1285 Avenue of the Americas
                                       New York, NY 10019-6064
                                       Tel: (212) 373-3000
                                       bkarp@paulweiss.com

                                       *Attorneys for the National Football League and*
                                       *NFL Properties LLC*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true copy of the foregoing document was served electronically via the Court's electronic filing system on the 19th day of December, 2024, upon all counsel of record and Mr. Adams, who is proceeding *pro se*, by email.


Date: December 19, 2024                                  */s/ Brad S. Karp*
                                                          Brad S. Karp