## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323 |
|  | MDL No. 2323 - JDW |
| THIS DOCUMENT RELATES TO: LIENS ASSERTED BY GULF INSURANCE GROUP |  |

### Special Master Report and Recommendation Regarding Workers' Compensation Liens Asserted by Gulf Insurance Group

More than a decade ago, Gulf Insurance Group ("Gulf") provided workers' compensation coverage to some Football Clubs and paid benefits to players for the "cumulative neurological injuries" arising from their employment. Recently, two of those players received notices of their right to receive Awards under the Settlement Program. Gulf asserted a statutory lien right against those Awards.[1] The Claim Administrator refused to recognize the asserted liens.

Gulf appeals that determination, and I issue this Report and Recommendation resolving its claims.[2] Concluding that the NFL Parties are not a third party to the Clubs under applicable state law, I recommend that the Court find that the Claim Administrator and Lien Resolution Administrator need not recognize Gulf's asserted liens.

### Factual Background

The facts are simply stated. Both Claimants, while employed by NFL teams ("Member Clubs"), received benefits from Gulf as a lump-sum payment representing full and final compromise and release of all workers' compensation rights. Gulf seeks reimbursement only for

---

[1] Specifically, Gulf claims it is entitled to funds from Awards associated with SPIDs 100000008 and 100012925.

[2] I resolve Gulf's objection to the Claim Administrator's decision under the Special Master's authority "to implement and administer the Class Action Settlement Agreement." ECF No. 11022, Order (Mar. 5, 2020). For attorney liens, I write Reports and Recommendation to the Court. *See* ECF No. 12343, Explanation and Order, (Sept. 21, 2023). Treating this Lien Assertion as akin to an asserted Attorney's Lien to enable an orderly appeals process, Gulf may file objections to this Report and Recommendation. *See* ECF No. 12348-1, at Rule 7. The District Court's review will be de novo. Fed. R. Civ. P. 53(f)(4).

that portion of benefits allegedly attributable to the "head injury compensated under the NFL concussion Settlement." SPID 100000008, 423260 at 9; SPID 100012925, 425505 at 4.[3]

SPID 100000008 signed a compromise and release settlement for $102,564.00, after the payment of attorney's fees, with Gulf on August 17, 2011. Doc. 423260. He then received a notice of an Award from the Settlement Program for Level 1.5 Neurocognitive Impairment worth $1,037,526.93 on March 31, 2025. Doc. 385452. The Monetary Award Fund released funds to him in September 2025, after satisfying other lienholders, but without withholding any funds for Gulf. Gulf asserted its lien for $11,516.25 on January 15, 2026. Doc. 423260. The Claim Administrator denied recognition of the Lien on January 16, 2026.[4] Doc. 422517.

SPID 100012925 received $98,400.00 on April 19, 2012, after attorney's fees, in a compromise and release with Gulf. Doc. 425505. Twelve years later, on November 8, 2024, the Program notified him that he was eligible for an Award for Parkinson's Disease, worth $2,066,269.68. Doc. 366313. Most of that Award was disbursed by the end of 2024. On June 6, 2025, Gulf asserted a Lien for $15,050. Doc. 425505. On August 8, 2025, an offer for $11,710 was accepted to settle the Lien. *Id.* However, the payment was never made. *Id.* Subsequently, the Claim Administrator denied the Lien's validity on January 9, 2026. Doc. 425502. In its appeal, Gulf asserts a Lien of $15,050. Doc. 425505, at 4.

Meanwhile, SPID's claim was the subject to an Audit of various Parkinson's Disease diagnoses, while $25,750.00 was held to satisfy Medical Liens.[5] On June 8, 2026, the Special Masters issued their Rule 27 decision following that Audit. That decision stated there was a reasonable basis to conclude that SPID 100012925's prior counsel had omitted or misrepresented material facts in how it submitted Parkinson's Claims, including ones that had been paid. If that Audit finding stands after an appeal, a question would be whether medical liens resulting from presumptively unreliable diagnoses should be disbursed or reverted to the Monetary Award Trust.

In both cases, the Claim Administrator did not recognize the lien assertions on the grounds that the Member Clubs were not third parties to the Settlement. SPID 100000008 Doc. 422517; SPID 100012925 Doc. 425502.

---

[3] The apportionment is calculated by considering the head-only permanent disability rating, the California Permanent Disability Rating Schedule and converting the rating into a dollar value. *Id.* Counsel for SPID 100012925 disputes that method produces an accurate measure of whether the injury is the same as that subject to the Award. Given my resolution, I do not reach the question.

[4] Gulf's Appeal states that the claim was denied on January 29, 2026, but the email timestamp is January 16, 2026. Gulf and the Lien Resolution Administrator had engaged in discussions in the fall of 2025 regarding its practices about workers' compensation Liens, which included discussions regarding the previous Administrator's practices regarding workers' compensation Liens and the scope of the Claim and Lien Resolution Administrator's respective duties to notify the IRPAs. In all events, were the Court to disagree and hold that the Claim Administrator must recognize workers' compensation liens, the next step might be to seek recoupment from the Claimant.

[5] The IRPA at the time of the Claim submission was Pro Athlete Law Firm, but the Claimant switched to Locks Law on December 10, 2025. Doc. 417059.

Gulf now appeals. I received briefing from Gulf and the Claimants, and Class Counsel which supported the Claimants' position. I additionally received a statement from the NFL Parties that clarified their organizational structure.

## Liens Under the Settlement Agreement

Section 11.3(h) of the Settlement Agreement provides a mechanism for "any person or entity [to] claim[] any Liens" not expressly excluded. A Lien is defined as:

> any statutory lien of a Government Payor or Medicare Part C or Part D Program sponsor; or any mortgage, *lien*, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever, *held by any person or entity*, *where there is a legal obligation to withhold payment of a Monetary Award*, Supplementary Monetary Award, Derivative Claimant Award, or some portion thereof, to a Settlement Class Member *under applicable federal or state law*.[6]

So, the Settlement instructs the custodians of the Monetary Award Fund that they must recognize only those liens that arise from substantive rights under applicable law.[7] The prior Medical Lien Administrator had treated at least some workers' compensation liens as "medical liens" and resolved them by compromise. That position was previously challenged (in 2019) but was privately settled without the need for Court intervention. The newly appointed Lien Resolution Administrator determined that this informal practice was not consistent with 11.3(h). As far as I can tell, neither the Special Masters nor the Court have previously weighed in on whether workers' compensation liens are maintainable against the Monetary Award Fund under Section 11.3(h) of the Settlement.

Gulf asserts its lien under California Labor Code § 3852(a). This section provides:

> The claim of an employee, . . . for compensation does not affect their claim or right of action for all damages proximately resulting from the injury or death against any person other than the employer. Except as provided in subdivision (b), an employer who pays, or becomes obligated to pay compensation, or who pays, or becomes obligated to pay salary in lieu of compensation, . . . may likewise make a claim or bring an action against the third person.[8]

---

[6] Settlement Agreement, Section 2.1(uu) (emphasis added).

[7] The Claim Administrator asked the parties to address choice of law. SPID 100012925 does not contest the application of California law. SPID 100000008 argued that the result would be the same under either Pennsylvania or California law. No party has identified an actual conflict between the two States' laws as applied to these liens, so I need not decide which governs and apply California law.

[8] *See also Abdala v. Aziz*, 3 Cal. App. 4th 369, 377 (Cal. Dist. Ct. App. 1992) ("Thus, to the extent that the damages which the employee recovers from a third party simply duplicate the benefits which the employee has already received from the employer, the employee's own recovery provides a fund from which the employer may draw.").

California Labor Code § 3850(b) further defines "employer" to include insurers, allowing carriers like Gulf to pursue these rights even if the employer chooses not to.[9] Therefore, *if a third party* is liable for a work injury, an employer or their carrier can recover the amount of the workers' compensation benefits paid from that party.

Liens are an appropriate means of pursuing this right to reimbursement.[10] But, for the lien to be valid under California law, and thus be recognized by the Settlement under this provision, the claim must be made against a right for damages from a person, or entity, *other than the employer*.

The National Football League is an unincorporated association comprised entirely of Member Clubs. SPID 100000008 Doc. 430038.[11] The Member Clubs, and not the NFL, employ the players. But under the Settlement, the NFL Parties, comprised of the NFL and the NFL Properties LLC, are responsible for funding the Monetary Award Fund and the Baseline Assessment Program Fund.[12] Thus, the NFL Parties are the *legal* entity funding the Awards that Gulf seeks to assert a lien against, but the Settlement releases the NFL *and* its Member Clubs, as well as various other parties, from liability.[13]

The issue then is whether the NFL Parties, who technically fund the Settlement, are third parties to *their own Member Clubs*. If so, Gulf, standing in the Clubs' shoes, can rightfully pursue an action against the NFL Parties through the Monetary Award Fund and assert liens against Settlement proceeds that the NFL Parties paid to the Claimants. I conclude they are not third parties in the way that California law contemplates.

No party has identified any directly-on-point authorities, and my own research has identified only partial analogies.[14] I start with the text. Black's Law Dictionary's (2024) definition

---

[9] *See id.* at 378 ("[We] can only conclude that [the carrier], in assuming a portion of the costs of personal injuries suffered by plaintiff as a consequence of the accident, specifically, her medical expenses, succeeded, at least in part, to plaintiff's claim for damages against defendant. [The carrier] therefore was entitled to avail itself of one or more of the alternatives (direct action, intervention, or lien) specified in section 3852 et seq.") The employer did not participate or seek to intervene in this action.

[10] CAL. LAB. CODE § 3856(b) (West 2026).

[11] As the NFL Parties explain in their brief: "The NFL Parties are comprised of the National Football League (the "NFL") and NFL Properties LLC ("NFLP"). The NFL, in turn, is an unincorporated association comprised of its 32 Member Clubs. One of these Member Clubs is the Chicago Bears Football Club. The NFL does not employ players; instead, players are employed by their respective Member Clubs. NFLP is a merchandising and licensing subsidiary of the NFL. Under the Settlement Agreement, "Released Parties" include "the NFL Parties (including all persons, entities, subsidiaries, divisions, and business units composed thereby)" and "each of the Member Clubs," among other individuals and entities. (See Settlement Agreement §2.1(bbbb).)"

[12] Settlement Agreement, Section 23.3. That NFL Properties LLC is a separate subsidiary rather than a club-composed body does not change the analysis. NFLP funds the Awards as part of the same enterprise and for the same purpose as the NFL—discharging the Member Clubs' shared liability for the players' injuries—not as a stranger to the employment relationship. Its separate corporate form does not make its payment a third-party recovery, because the question is whose liability the payment discharges, not which entity cuts the check.

[13] Settlement Agreement, Section 2.1 (bbbb).

[14] California law does not define "third party" for these purposes and has not addressed the claim of an unincorporated association organized like the NFL. The nearest California authority is *White v. Cox*, which held that a homeowners' association could be a third party to one of its own members. 17 Cal. App. 3d 824, 827–28 (Cal. Dist. Ct. App. 1971);

of third party indicates that we should look at the parties' role in the transaction or litigation at issue: "Someone other than the principal parties in a matter; someone who is not a party to a lawsuit, agreement, or other transaction but who is usually somehow implicated in it." To determine the applicability of § 3852, I therefore turn to the relationship between the Member Clubs, the NFL Parties, and the liability the Settlement covers.

Logically, whether a Settlement payment is a third-party recovery turns not on who nominally makes it but on whether it discharges the employer's own liability—which is shown by whom the payment releases. In this case, where an employer is a party to the agreement that gives rise to the payment, and the agreement determines its liability, it would make no sense to treat the payment as if it were made by an unrelated third party. While the NFL Parties, which did not employ the Claimants, are formally the entities funding the Award,[15] they are doing so for the purpose of releasing their own Member Clubs from liability. That the Released Claims involved the same underlying alleged injuries for all Released Parties suggests that the payment should be viewed as on behalf of the employer.

Gulf's own settlement instrument confirms this characterization—at least as to SPID 100000008, whose complete Compromise and Release is in the record. Gulf there did not treat the Claimant's claims against the NFL as an action against an arm's-length third party. To the contrary, an addendum to the agreement has the Claimant elect California as the sole jurisdiction for "any and all workers' compensation claims filed against the National Football League and the Chicago Bears," and for any such claims arising from his "entire employment with the National Football League." Doc. 423260, Addendum A ¶ 33 (emphasis added). The same addendum releases the employing Club and its carrier—"the Chicago Bears and its carrier Travelers." *Id.* ¶ 34. Gulf thus drafted the very recovery it now styles as a third party's as the settlement of workers' compensation claims against the NFL and the employing Club together—an employer-side matter, not a § 3852 action against someone other than the employer.

Gulf's reply presses two textual arguments. First, it asserts a rule (without a clear citation): "[t]he identity of the payor controls, not the identity of the released parties." But that inverts the inquiry § 3852 requires. The Code does not ask whose funds satisfy the Award, but instead whether the Award is a recovery from someone other than the employer. In other words, whether it resolves a third party's liability or the employer's own. A payment does not become a third-party recovery merely because a non-employer signs the check, when what the payment purchases is the discharge of the employer's liability. That is what these Awards purchase: release of the Member Clubs from

---

see also *Heiman v. Workers' Comp. Appeals Bd.*, 149 Cal. App. 4th 724, 739 (Cal. Dist. Ct. App. 2007). But *White* turne on features absent here: the association existed independently of any individual member and held the common areas as property in which each member had only an undivided interest, giving the entity a separate existence of its own. 17 Cal. App. 3d at 828. The NFL is different in kind. It is constituted by the Member Clubs themselves and exists to act on their collective behalf; it is not an entity the Clubs encounter at arm's length but one they compose. *Cf. Doney v. TRW, Inc.*, 33 Cal. App. 4th 245, 248–49 (Cal. Dist. Ct. App. 1995) (describing entities so identified with a party that they are not treated as third parties). A national search for closer analogues was unavailing. *Cf. Scarberry v. Entergy Corp.*, 172 So. 3d 51, 60 (La. Ct. App. 2015) (employer that funded compensation for the employee's benefit relating to the underlying injury could not seek subrogation from that arrangement).

[15] Settlement Agreement, Section 23.3.

their own exposure for the players' injuries. That the NFL Parties advanced the funds no more makes the recovery a third party's than it would were an employer to pay a settlement of its own liability through an entity it controls.

Second, Gulf notes that the Released Parties definition reaches insurers only "solely in their capacities as liability insurers" of the NFL Parties and Member Clubs, Settlement Agreement § 2.1(bbbb), and reasons that a workers' compensation carrier is therefore not a Released Party, that a release to which Gulf is a stranger cannot extinguish its statutory rights, and that reading it to do so would render Section 11.3(h) a nullity.

I agree that Gulf is not a Released Party, and the releases among the NFL, the Member Clubs, and the class did not extinguish any reimbursement right Gulf held. But I would conclude that the liens fail nevertheless, because the right Gulf asserts never arose: Section 3852 reaches only a recovery from a third party, and the Award is not one.

Even if the NFL Parties were treated as third parties, the same result follows from the equity that animates California's reimbursement scheme. An employer that is concurrently responsible for the worker's injury may not obtain reimbursement—or assert a lien under section 3856(b)—to the extent its own proportionate share of fault equals or exceeds the benefits it paid.[16] The rule prevents an employer from using the compensation system to shift onto a third party a loss its own conduct caused.[17] That logic applies directly here. The Released Claims arose from suits against the NFL and the Member Clubs alike, and the Settlement extinguished the liability of both for the same underlying injuries.[18]

A comp carrier standing in the employer's shoes takes the employer's rights and no more. And the employer cannot recharacterize as a third-party recovery a payment that in substance discharges its own released liability, routed through an entity the Member Clubs themselves constitute. Whether the point is framed as the absence of a third party or as the bar on reimbursing an employer for its own share of responsibility, the answer is the same: the Member Clubs—and Gulf, derivatively—cannot use a lien to recover benefits paid for injuries the Settlement resolved on the Clubs' own behalf. That the Claimant retains both his compensation and his Award is not the double recovery the statute guards against. Rather, it is the ordinary consequence of a payment made on the employer's behalf, where no third-party recovery exists to reimburse.

Gulf finally argues that since California Labor Code § 3850 defines "employer" to include carriers, their rights are not derivative of the employers' rights. SPID 100000008 Gulf's Reply Brief at 2-3; SPID 100012925 Gulf's Reply Brief at 2-3. As I read California law, this is not entirely

---

[16] *Associated Constr. & Eng'g Co. v. Workers' Comp. Appeals Bd.*, 22 Cal. 3d 829, 842 (Cal. 1978) ("[T]he employer should be denied any claim of reimbursement -- or any lien under section 3856, subdivision (b) -- to the extent that his contribution would then fall short of his percentage share of responsibility for the employee's total recovery.").

[17] *Witt v. Jackson*, 57 Cal. 2d 57, 73 (Cal. 1961) (holding that when a party would not be able to pursue a claim for contribution due to their own negligence, workers' compensation liens cannot be used to replace that claim).

[18] Although the Settlement is not a tort damages award, settlements can be the basis of subrogation claims. A verdict is not required despite the language about damages and liability in the statute. CAL. LAB. CODE § 3860(a)(1); *see also Gapusan v. Jay*, 66 Cal. App. 4th. 734 (Cal. Dist. Ct. App. 1998).

accurate.[19] Workers' compensation insurers are paid to cover claims that would be the responsibility of the employer otherwise. Again, the carrier cannot capture extra benefits from subrogation when the employer would not be able to make a claim if they had paid out the benefits themselves.[20]

Dismissing the asserted liens on this basis makes it unnecessary to resolve Claimants' alternative ground, that their Qualifying Diagnoses do not cover the same injury the carrier compensated. Resolving that inquiry would turn on the facts of each Claim. Given that the Injury Definitions often do not match diagnoses from practice, particularly those from decades ago, that matching problem would be administratively complex. I do not reach it now.

RECOMMENDATION

Section 11.3(h) requires the Claim Administrator and the Lien Resolution Administrator to recognize only liens that rest on a substantive right under applicable law. A workers' compensation carrier's statutory lien is such a right only where the Award is a recovery from a "third party"—someone other than the employer. The NFL Parties are not third parties to the Member Clubs, and the Awards in substance discharge the Clubs' own liability for the players' injuries rather than a third party's. The carrier therefore has no right of subrogation to which a lien can attach.

I therefore recommend that the Court approve the Claim Administrator's decision to deny the liens asserted against the Awards of SPID 100000008 and SPID 100012925, and confirm that Section 11.3(h) does not require recognition of workers' compensation liens of this kind.

Date:   June 9, 2026

David A. Hoffman, Special Master

---

[19] *See Associated Constr. & Eng'g Co.* 22 Cal. 3d at 835, 842 (acknowledging that the workers' compensation benefits were paid by an insurer and continuing to apply the limitation on reimbursement that falls below the employer's share of responsibility for the employee's recovery).

[20] Gulf's authorities establish only that a carrier may pursue reimbursement in its own name—by direct action, intervention, or lien—without joining the employer. *See, e.g.,* Tate v. Superior Court, 213 Cal. App. 2d 238, 243–44 (Cal. Dist. Ct. App. 1963). That is independence of procedural form, not of substance. The carrier's own remedy does not enlarge the right it enforces, relieve it of the limits that bind the employer, or supply a third party where the statute requires one.