

COUNSELORS AT LAW

110 ALLEN ROAD
SUITE 208
BASKING RIDGE, NEW JERSEY 07920
TELEPHONE:   (908) 605-2120
FACSIMILE:     (908) 605-2121
WWW.ROVFIRM.COM

570 LEXINGTON AVENUE, 8TH FLOOR
NEW YORK, NEW YORK 10022
TELEPHONE:   (212) 490-0988
FACSIMILE:     (212) 490-0287

WRITER'S EMAIL ADDRESS: NVTELL@ROVFIRM.COM

December 24, 2025

**Via Email Only**
Mr. Devin McClean
BrownGreer PLC
Law Firm Contact
250 Rocketts Way
Richmond, VA 23231
dmclean@browngreer.com

> Re:    Defamation Per Se, Willful Misconduct, Willful Violations
>          and Unsupported Unlawful False Statements[1]
>          Request for Immediate Withdrawal of Unlawful Statements

Dear Mr. McClean:

We are in receipt of the 151-page Claims Administrator's ("BG" or "CA") Rule 15 Audit Report ("Report" or "R") dated December 12, 2025 forwarded by email from BG to this office on December 18, 2025 which dictates that a response to the Report is due by January 20, 2026.

We write now, in advance of, and separate and apart from, the submission of our response, to provide BG an opportunity to withdraw statements contained in the Report which constitutes willful and actionable misconduct as well as "Defamation Per Se".

BG published to third parties' voluminous defamatory statements, with a reckless disregard for readily ascertainable facts constituting willful misconduct.  Moreover, these

---

[1] The allegations asserted by BG are offensive in that they are objectively baseless and unsupported by any competent evidence obtained in BG's purported investigation.  The allegations in the Report appear to have been asserted for an improper purpose, including to harass and to coerce unfounded accusations intended to avoid its obligations under the NFL Concussion Settlement Agreement to act as a neutral agent and avoid paying legitimate claims to former NFL Players based on illegitimate reasons consistent with Fed. R. Civ. P. 11.  What is even more troubling is that the truth was readily ascertainable by the so called "investigation", yet no facts were acknowledged in this very biased Report that lacks all levels of neutrality and exceeds the authority granted to BG under the Settlement Agreement.

Devin McLean
December 24, 2025
Page 2 of 7

statements are extremely damaging and may well constitute defamation per se where damages are typically presumed.

BG took over 7 months and thousands of hours and, upon information and belief, over hundreds of thousands of dollars, if not more, to compile the Report that is replete with willfully false and defamatory statements and outright lies causing damages to the attorneys it elected to attack for no reason other than its own agenda. It is patently clear that this was not unbiased reporting.[2]

The sampling of statements listed in the Report, as shown below, attack the professional competence, integrity, and ethics of attorneys Lisa J. Reppert, Esq., Bart Oates, Esq. and J. Vincent Reppert, Esq.

<u>Lisa J. Reppert, Esq.</u>

- " '…[s]he has been developing relationships with certain doctors and paying them substantially to get them to write up reports the way she wants them to be written out' ". **(R. pg.58).**

- " '[S]he is paying her Doctors top dollar to get claims submitted a certain way. This has happened over the past year with her most recent claims that have been submitted' ". **(R. pg.58).**

- " 'Thai [sic] letter is to report not only fraud but misrepresentation of one of your Attorneys Lisa Reppert. She is paying off MAF doctors and Neuro doctors to get the [sic] their reports written out exactly how she is wanting them to. She along with her firm is doing this' ". **(R. pg.58).**

- " 'I feel like it is necessary to let you know that Lisa Reppert and the law firm that are working on the concussion cases are going about this illegally…' " **(R. pg.58).**[3]

---

[2] BG blatantly violates its duties to serve in a neutral ministerial, non-adjudicatory role. The Settlement Agreement does not authorize BG to make medical judgments, resolve disputed facts, or draw adverse inferences against claimants or counsel as a court-appointed Claims Administrator. By asserting unsupported factual narratives and issuing conclusory medical determinations in its audit report, BG exceeded its contractual authority. Such conduct improperly converts an administrative function into unauthorized adjudication and advocacy, contrary to the Settlement Agreement. By acting in such compacity, BG has now subjected itself to claims for violation of the Settlement Agreement.

[3] Coincidentally, these anonymous tips listed in Table 11 of the Report at p. 58 reflect that online tip numbers 1, 2 and 3 share the exact same IP address and number 5 is identical except for the last digit which is 7 instead of 9, which is indicative of the same household or device as ISP providers will periodically change the last digit by two for the same address. 1,2,3 and 5 all originate from Lutz, Florida where former Player 1 resides, and which BG attaches as if it is another unbiased statement. According to the Report, this same player is identified as attending other law firm paid events in New Orleans and elsewhere well after termination of Reppert.

Devin McLean
December 24, 2025
Page 3 of 7

- "Ms. Reppert replied in the affirmative, stating that the firm wants to make sure that they [treating physicians] are board certified". **(R.68-69).**

- "…Reppert stated she was only working with one MAF doctor (Jacobs) at the time". **(R. pg.150).**

- "Reppert told [redacted] she had spent [redacted] money because she had to pay two doctors $8,000 each". **(R. pg.150).**

Furthermore, BG has incorporated into the report the statement of Player 1 that contains language that would never have been used by SPID 100008902 and his wife.  The statement alleges that "--- and --- ultimately prevailed in their dispute with RKV and received the monies they were due."  This is categorically false; we provided BG full email chains confirming the understanding of the 22% legal fee and sign off on multiple closing statements by SPID 100008902 reiterating the 22% fee in 2022.  BG also had U.S. Magistrate Judge Strawbridge Order and **Final Decision on March 10, 2022**, which confirmed the attorney fee arrangement of 22%, well before the release of any 4% holdback. the US Magistrate's final order from 2022 confirming same.  In or about April of 2024, upon information and belief, SPID 100008902 learned of the release of 4% pertaining to the common benefit fund and sought recovery of same.

However, as confirmed to BG we advised that notwithstanding the full documentation that RKV provided, RKV instructed Devin McLean to release those funds directly to SPID 100008902 by email dated June 3, 2024. Again, this is further evidence of BG's attack on Ms. Reppert's character purposely misconstrued in a false light to imply that the Judge had previously ruled in favor of the SPID and Reppert was withholding their funds, not true and easily ascertainable.  Reppert was already the prevailing party but once again, in alliance with her demeanor and representations released those funds voluntarily notwithstanding the easily disproved false allegations.[4]

---

[4] This is a common theme throughout the Report.  HML spoke to a former player 100008092 who did not recall signing up with ROV and despite being provided the faxed coversheet with the retainer agreement from that player's place of work, BG indicates in the Report based on its unprofessional expert opinion that the signature appears to be that of the SPID but further states that the information  is only "suggestive that he signed the document" and points out the faxed cover sheet had different handwriting, see attachment B.  The fax cover sheet even references a conversation.  We downloaded a signed picture from the internet that is identical.  Both the retainer and fax cover appear identical, notwithstanding BG's false statement.  Regardless, attorneys do not typically go out of their way to question the signature on a retainer agreement, especially where sent with a personal note and fax cover sheet from their place of employment. This is further evidence of an unbridled smear campaign, looking for anything to discredit Reppert. Had these baseless allegations been advised, there are countless character witnesses that would refute these baseless allegations that are a grasp at straws and will be produced when necessary.  No claim was ever started for this SPID.  The Report also conveniently fails to disclose that ROV voluntarily removed Mr. Laird from its portal in 2023 advising that it had not been in communication with this player, in advance of the directive that attorneys should remove players from their portal if they have not been able to stay in regular contact.

Devin McLean
December 24, 2025
Page 4 of 7

<u>Bart Oates, Esq.</u>

- "We did not learn of Mr. Grossinger's concurrent representation of Mr. Oates until receiving his first responses to our follow-up questions in 2025". **(R.Pg.64).**

- "…Mr. Oates in effect [is] promising, guaranteeing, or assuring [former NFL players] a QD". **(R. pg.72).**

- "Mr. Oates is promising [players] if they switch to ROV [he will get them a] QD". **(R. pg.72)**.

- "[Mr. Oates] is known to tell Retired Players that RKV can get you over the finish line".**(R. pg.72)**.

- "…[t]hat Mr. Grossinger influenced or inspired this process based on the firms (ROV) early connections to him coinciding with [ROV's] entrance into the NFL Concussion Settlement". **(R. pg.151).**

<u>J. Vincent Reppert, Esq.</u>

- "He (SPID 100010740) believes that [redact] may be lying in order to act like he is 'part of the fraternity and develop a common bond with those SCMs they are recruiting' '. (R. pg.151).

<u>Conclusion</u>

The above statements do not intend to contain all the willfully false statements, untruths which are tantamount defamation per se contained in the Report.  Our full response will be submitted on or before January 20 and will address this and other matters in more detail.  Nevertheless, in view of these troubling, unlawful and frivolous statements and in an attempt to not further escalate this situation, we are offering BG an opportunity to promptly redact the offending content including any republication or syndication of same.

We recognize that BG has spent in excess of thousands of hours conducting an investigation and we are not only disappointed, but shocked, that it was unable to confirm simple unlawful statements that this firm was able to uncover without anywhere near the same amount of time and resources.  With respect to Lisa Reppert, Esq., BG either contacted doctors and learned that Ms. Reppert did not in any way attempt to influence their written reports regarding former players much less get them to change their reports.[5]  This would have been determined

---

[5] Interestingly, BG could have easily disqualified the alleged anonymous tips when the Player 1 statement allegedly taken in April of 2025 concedes that it has no knowledge of Reppert paying off doctors.  The 4 anonymous tips (3 containing the exact same IP address with the 4th only differing by 2 in the last digit (which is indicative of static IP address updates for the same location) all originate out of Lutz Florida where Player 1 resides.  According to the Report, Player 1 is attending events with the other 4 law firms being investigated and perhaps was done to take the heat off those ongoing investigations that have nothing to do with this firm. The other tip from a CA IP

Devin McLean
December 24, 2025
Page 5 of 7

and ascertained with a simple conversation with the physicians.  The upshot is that BG spoke with these physicians and/or MAFs and intentionally elected to ignore what they had to say or, equally troubling, spoke with them and ignored what they told BG and despite same included such defamatory statements in its Report and then disseminated same to third parties.  Even more disturbing but unlikely is the fact that BG and its multiple investigators purposely and knowingly opted not to do the slightest form of investigation.

The same analysis is applicable to the statement that Lisa Reppert, Esq. paid doctors to get claims submitted in a certain way, meaning, "an improper way." Moreover, this statement further goes on to say that this has happened over the past year with recent claims yet BG fails to cite any support for any such statement.  BG further states and republished that Ms. Reppert engaged in "fraud" on page 58 of the Report and that she convinced "neuro doctors to get the [sic] reports written out exactly how she is wanting them to.  She along with her firm is doing this."  This statement is absolutely unbelievable because it could have easily been verified by speaking with the physicians whether this occurred or not.  BG either spoke with the physicians and decided not to reveal what they learned and intentionally impugned and published defamatory statements about Ms. Reppert or never even thought it important enough to speak with such doctors.

On page 58 of the Report, it states that "Lisa Reppert and the law firm working on the concussion cases are going about this illegally…" Once again, this could have been easily corroborated; however, BG has elected to intentionally republish this defamatory statement or never spoke with any of the doctors or provided any information how Ms. Reppert and her law firm are engaging in illegal activity.  Had there been a physician that corroborated this defamatory statement BG would have included it in its Report after thousands of hours of investigation and hundreds of thousands of dollars in expense to the NFL.

Interestingly, BG goes on to further state that certain statements were made at the July 9, 2025 meeting wherein this law firm participated in good faith and answered all questions as it had and has nothing to hide.  When ROV asked BG for a copy of the transcript they said it did not have one.  Despite this statement, BG quotes throughout statements made during the July 9, 2025 meeting.  For example, BG states in its Report that: "Ms. Reppert replied in the affirmative, stating that this firm wants to make sure that they [treating physicians] are board certified."  In fact, members of the ROV firm told the investigators during the more than 3 ½ hour meeting that they utilized treating doctors based upon their experience, abilities, reputation and overall skills in neurology.  This firm will, in the appropriate time and form, provide the statements which were made as it has subsequently after being told by BG that it did not have a transcript had the meeting transcribed itself.  Moreover, BG further states that Lisa Reppert, Esq. said that she was only working with one MAF doctor, Dr. Jacobs, at the time she was speaking with the person who was redacted on page 150 of the Report. It is egregious that BG has purposely withheld exculpatory evidence and knowingly, vigilantly and willfully pastes Reppert in a bad light

---

address carries the same theme but is easily disproven by simply contacting the MAF doctors in the program. Presumably, this would have been done in a comprehensive investigation, yet BG has purposely not published any positive statements about the firm.

Devin McLean
December 24, 2025
Page 6 of 7

despite the minimal amount of work it would have had to do to ascertain the truth.  BG elected to ignore this part of its sweeping vast investigation.

With respect to Mr. Oates, BG states that it did not learn of Mr. Grossinger's representation of Mr. Oates until after the July 9, 2025 meeting and learned of this only after it received ROV's responses to its request for follow-up questions in 2025.  The transcript will once again prove that this is untrue and false and BG published this false information without even reviewing its own transcript or intentionally elected to ignore the truth.

BG further states that Mr. Oates promised former NFL players that he would obtain for them a qualified diagnosis in their report yet failed to cite a single player who alleges that Mr. Oates made such a statement.  Mr. Oates will present statements from players under oath who had multiple conversations with Mr. Oates who actually stated the exact opposite.  BG could have easily uncovered this had it chose to spend a minimal portion of its thousands of hours of investigation time to speak with the many players with whom Mr. Oates spoke and never made such a statement.  Once again, BG either did this intentionally or recklessly, but, in any event, such statement is Defamation Per Se.  The other statements about Mr. Oates in the Report set forth in this letter are equally unsupported and could have been uncovered had there been a legitimate, non-tainted investigation without an agenda to railroad certain lawyers and/or firms and in the process defame individual attorneys with impeccable records and reputations who have practiced for over 35 years with unblemished records.

With respect to J. Vincent Reppert, Esq., there is a statement in the report where SPID 100010740 believes Mr. Reppert is lying about his career.  That is, had BG contacted the appropriate team in the NFL they would have learned that after playing Division I football, Mr. Reppert was invited as a Free Agent by an NFL team to its camp and was also recruited by a professional Canadian football team.  This is something that could have easily been uncovered yet the Report is not about truth.  BG elected not to make a single phone call to confirm that Mr. Reppert was with an NFL team.

We demand that all evidence concerning this matter be preserved including the back-up and/or archiving of all electronic communications including, but not limited to, email and ESI/EDI data so as not to subject BG and its agents (including but not limited to its investigators) to liability arising from the improper destruction of evidence including, but not limited to, copies of all emails, interview notes, lists of people interviewed and dates, lists of all parties to whom the Report was disseminated, WhatsApp messages, text messages, recordings, photographs, letters, written complaints, and any other material which may potentially constitute evidence including, but not limited to, claims made by other lawyers and/or former players against BG and its agents for defamation and slander.  This letter shall constitute formal notice of BG and its agents, including but not limited to HML's obligation to preserve evidence, and we request that BG place a "litigation hold" on all document destruction policies as of the date hereof and advise its agents associated with this investigation.

This letter is without prejudice to this firm and its individual members identified herein with respect to their individual and collective rights, claims, and defenses including their claims

Devin McLean
December 24, 2025
Page 7 of 7

for punitive damages and counsel fees against the entity and individual(s) determined to have engaged in such violations of the Settlement Agreement and any applicable laws, rules and regulations and hereby reserves such claims.

Sincerely,

**_s/Nicholas A. Vytell_**

Nicholas A. Vytell

NAV/kp