**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| | : | **Hon. Joshua D. Wolson** |
| THIS DOCUMENT RELATES TO: | : : | |
| ALL ACTIONS | : : | |

**SECOND QUARTER 2026 REPORT
OF THE CLAIMS ADMINISTRATOR**

1.  BrownGreer, the Court-appointed Claims Administrator for the Class Action Settlement in this litigation, submits this Report No. 30 to the Court with information as of June 30, 2026, alongside the Status Report of the Baseline Assessment Program ("BAP") Administrator.

2.  Exhibit A to this Report provides a comprehensive overview of the administration, progress, and improvements of the Claims Administrator. The Report covers activity from April 1, 2026, through June 30, 2026 ("Second Quarter"). Supporting reports can also be found on the Program's public website at https://www.nflconcussionsettlement.com under the Reports & Statistics tab.

3.  The Claims Administrator remains committed to the effective, fair, and transparent execution of the NFL Concussion Settlement. These efforts are reflected throughout the attached Exhibit A reports and remain part of ongoing initiatives to ensure that the administration of the Settlement remains both fair and efficient.

**<u>Claims Administration</u>**

1.  **Highlights:** In addition to the attached Exhibit A reports, we provide the following highlights of the Claims Administration of the Settlement Program.

2.  **Program Scale:** 19,413 Settlement Class Members ("SCMs") are registered with the Settlement Program; 8,495 (43.76%) are represented by counsel.[1]

3.  **Claim Volume:** We received 45 new claims:

    -   22 (48.9%) Level 1.5 Neurocognitive Impairment,
    -   8 (17.8%) Level 2 Neurocognitive Impairment,
    -   6 (13.3%) Alzheimer's Disease,
    -   1 (2.2%) Parkinson's Disease, and
    -   8 (17.8%) claims submitted based on an exam resulting in a finding of No Qualifying Impairment or impairment is unknown.

4.  **Monetary Award Claims Reviewed by the Appeals Advisory Panel ("AAP"):** The AAP reviewed 128 Monetary Award Fund ("MAF") claims (57.4% of all MAF Claims; of those, 70 remain "In Review"), and 28 BAP claims (36.4% of all BAP claims; of those, 16 are "In Review") in the Second Quarter.

5.  **Deficiency and Denial Notices:** In the Second Quarter we issued 12 notices for missing materials (13.5% of all claims reviewed) and 25 Notices of Denial of Monetary Award (33.3% of all determination notices issued[2]).

6.  **Awards and Payments:** In the Second Quarter, we issued Notices of Monetary Award on 50 claims (66.7% of claims receiving notices)[3], totaling $48,360,312. During this period, we paid $39,847,950 to 80 Settlement Class Members and, as appropriate and with SCM approval, to others on behalf of these Settlement Class

---

[1] These numbers do not include registrants with adverse registration notices.
[2] Based on the number of determination notices issued in the Second Quarter 2026 on facially complete claims (excludes Audit denials and denials for incompleteness).
[3] Claims that are still in progress or that were withdrawn are not counted here.

Members (*e.g.*, attorneys, lienholders, third-party funders).

7. **MAF Physician Network:** 78.6 % of Retired Players have a Qualified MAF Physician within 150 miles of their residence. There are 51 active Qualified MAF Physicians within the Program, and two more providers in the approval pipeline.

8. **Requests for Exception to the 150-Mile and/or 50-Mile Rules:** We received 44 requests for exception to the 150-Mile Rule (MAF Rule 9). Of those 44, we granted 42, denied one, and have one pending. For the pending waiver request, we are coordinating with the Retired Player's counsel to schedule the Retired Player with a Qualified MAF Physician closer to the Retired Player. We received and granted eight requests for exception to the 50-Mile Rule (MAF Rule 10(b)). Although the approval rate is high, we carefully evaluate each request by reviewing detailed explanations, verifying local provider availability, confirming scheduling or access issues with physicians, monitoring emerging trends to identify potential misuse, and ensuring every waiver has a valid basis for the request before approval.

9. **Appeals:** As of June 30, 2026, 17 claims were pending with the Special Masters and in various stages of the appeals process (four claims were in the preliminary steps of appeal, we had not yet received nine appellee's opposition memos, and four were with the Special Masters for their decision; see Exhibit A, Section 11 for pending appeal statuses). In the Second Quarter, Special Master Hoffman upheld the Claims Administrator's decision for nine claims (47.4%), overturned one (5.3%) decision, one (5.3%) claim was closed or withdrawn, and eight (42.1%) claims were remanded to the Claims Administrator[4] (see Exhibit A, Section 12 for finalized appeal statuses).

---

[4] Special Masters may remand a claim to the Claims Administrator for further processing under Rule 23 of the Rules Governing Appeals of Claims Determinations for review of new evidence or at any time the Special Master

10. **Rules Governing Appeals:** On February 3, 2026, the NFL Concussion Litigation was reassigned to Judge Joshua D. Wolson (see ECF 12520). Consistent with Judge Wolson's Policies and Procedures (available here), we have updated the requirements to request deadline extensions under the Rules Regarding the Appeals of Claim Determinations (available here). Any party seeking an extension of time related to filing or briefing an Appeal or to the filing or briefing of an Objection to a Special Master Decision must make the extension request at least seven days before the applicable deadline or provide a showing of good cause as to why the party could not comply with this requirement. The requesting party must still notify the other parties to the Appeal of the extension request and determine if they consent or object and then present the extension request to the Claims Administrator.

11. **Audit:** In the Second Quarter, 56 audits were closed. The Special Masters issued decisions on three Audit Proceedings denying claims. There are 27 active audit investigations.

12. **6/8/26 Special Master Audit Decision:** On June 8, 2026, the Special Masters issued their Rule 27 Decision on the Report of Adverse Finding regarding 98 Parkinson's Disease claims submitted or developed through five law firms, which arose as a result of a large-scale Audit conducted by the Claims Administrator. The Audit identified a consistent and coordinated pattern in the development and submission of these claims that undermined the integrity of the Settlement's diagnostic process. The Special Masters ordered various remedies regarding the affected claims and law firms and instructed the Claims Administrator to develop

---

determines it necessary to do so (Rule 24).

and announce additional measures to ensure the reliability of diagnoses and engage with the Parties and the Special Masters to revisit and consider any additional modifications to the diagnostic criteria for the Settlement's Qualifying Diagnoses. The 6/8/26 Special Master Audit decision and related Alert are available on the Settlement website.

13. **Lien Administration:** We were appointed Lien Resolution Administrator in the Order entered on July 17, 2025 (ECF 12483). Over the past year, we reduced the backlog of medical lien-related payment withholdings by 62%, from $5,619,481.17 for 54 Awards to $2,134,439.25 for 14 Awards, and we improved the efficiency of the medical lien resolution process, addressing many obligations before we pay SCMs. Relatedly, we reduced potential medical liens from 319 at the time of our appointment, to 99 one year later.

14. **Communication and Transparency:** We published one issue of the Insights newsletter, one issue of the Program Doctors newsletter, and posted 11 Special Master Decisions, eight concerning Monetary Award claims, two regarding Audits, and one on an Attorneys' Lien Dispute. We made no changes to the 349 FAQs posted to the Settlement website. We updated the Derivative Claim Form and its corresponding instructions to no longer require information about certain Medical Liens.

15. **Engagement:** In the Second Quarter, the Claims Administrator handled 2,283 contacts (600 calls; 1,683 emails). Common topics included: General Settlement Information, Audit, Change in Lawyers, Payment, and Appeals.

Respectfully submitted,

**CLAIMS ADMINISTRATOR**

By: *Roma Petkauskas*
Roma Petkauskas
Virginia State Bar No.: 71357
BrownGreer PLC
250 Rockets Way
Richmond, Virginia 23231
Telephone: (804) 521-7218
Facsimile: (804) 521-7299
Email: rpetkauskas@browngreer.com