**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION** | ) ) ) | **MDL No. 2323** **No. 2:12-md-02323-JDW** |

# OBJECTIONS BY FEDER LAW LLC TO THE SPECIAL MASTERS' DECISION

**Submitted Pursuant to Audit Rule 34**

**FEDER OBJECTIONS TO THE SPECIAL MASTERS' DECISION**

Feder Law LLC ("Feder") respectfully objects to the Special Masters' Rule 27 Decision issued on June 8, 2026 ("Decision"), which adopted the factual findings in the Claims Administrator's ("CA's") Rule 15 Audit Report dated December 12, 2025 ("Report"). Feder objects to the extraordinary remedy recommended by the Special Masters. The Decision would permanently disqualify Feder from the Program, prohibit any future claim submissions, and assess Feder one-fifth of the costs of an extensive investigation, among other things. This recommendation depended on findings of intentional wrongdoing and noncooperation that do not withstand scrutiny.

Feder accepts the underlying documents and binding factual findings concerning what particular actors did and does not ask the Court to reweigh those historical facts or supplement the Rule 25 record. When the Decision applies a legal standard to fixed historical facts, however, the historical facts and the legal application must be separated. *In re LTL Mgmt., LLC*, 64 F.4th 84, 101-03 (3d Cir. 2023). Whether the fixed facts establish Feder's intent, permit attribution of Grossinger's conduct to Feder, establish noncooperation, or satisfy the predicates for the remedies imposed presents questions of legal application subject to *de novo* review under Audit Rule 34(d) and Federal Rule of Civil Procedure 53(f)(4). The Court may review the conclusions that Feder was a "cover" firm, that the co-counsel relationship with Grossinger was "in name only," that Feder "rent[ed]" its name, that it acted "surreptitiously" to "hide suspicious patterns," and that it took "deliberate and repeated steps," because they merely characterize the legal relationship, purpose, knowledge, and state of mind and are not established factual findings.

The Decision's extraordinary remedies cannot stand as to Feder. The Court should modify the Decision on the existing record, vacate the remedies and equal cost assessment as to Feder, and permit Feder to remain in the Program.

## ARGUMENT AND AUTHORITIES

### 1. The Fixed Record Does Not Contain Substantial Evidence of Feder's Intent

The Report found that there was a reasonable basis to believe Feder submitted claims based on diagnoses obtained through Grossinger's process. Rpt. at 3, 13. There is no finding that Feder designed that process, selected or improperly paid a physician, directed a diagnosis, altered a medical record, knew a diagnosis was false, deliberately avoided learning of falsity, or knowingly submitted false medical evidence. Rpt. at 13, 27, 29-32, 43-57. The Decision moved from Grossinger's conduct, Feder's disclosed co-counsel relationship with him, claim patterns, physician overlap, and divided labor to the conclusion that Feder intentionally participated in the misconduct. Dec. at 15-19, 34, 37, 39.

Rule 28 requires more. It permits a Special Master to find that a misrepresentation, omission, or concealment was intentional only when "the record contains substantial evidence of such intent." Rule 28. Substantial evidence is a measure of evidence that a reasonable mind could accept as adequate to support the proposition found. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Here, intent mattered directly to relief: the Decision invoked the "scale of the substantial and intentional wrongdoing" in deploying the "full panoply" of remedies and later concluded that all five firms took "deliberate and repeated steps" to circumvent Program safeguards. Dec. at 37, 39.

Intent must attach to the alleged misrepresentation, omission, or concealment—not merely to the intentional act of submitting a claim or maintaining a co-counsel relationship. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61-64 (1998). Willful blindness, negligence, recklessness, or failure to investigate do not suffice. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769-70 (2011).

The record cuts against intentional concealment. In 2021, Feder identified Grossinger by name and disclosed that he was co-counsel and that the firms shared fees and expenses. Rpt. at 29-30 &

Ex. G at 96; Dec. at 15-16. The CA "noted the information and continued processing the firm's claims." Rpt. at 30. In November 2025, when the CA again asked whether Feder had a relationship with Grossinger, Feder answered within two days that the co-counsel relationship remained active and referred back to its 2021 disclosure. Rpt. at 19, 30 & Ex. G at 94; Dec. at 16, 23. Those disclosures are inconsistent with the conclusion that Feder intended to conceal Grossinger's existence from the Program.

Nor does claim concentration and physician overlap supply the missing state of mind. The Report identified Feder as an outlier in Parkinson's disease ("PD") submissions and noted overlap among physicians appearing in Feder and Grossinger claims. Rpt. at 30-32. That does not establish that Feder selected those providers, improperly paid or influenced them, knew of an improper arrangement, or knew that medical evidence submitted in a claim was suspect. *Id.*; Dec. at 15-19.

The same is true of the Decision's collective descriptions. Calling Feder a "cover" firm, characterizing the relationship as "in name only," and saying Feder "rent[ed]" its name while Grossinger performed substantial work do not establish the state of mind that Rule 28 requires. Dec. at 15, 18. The underlying acts are binding facts; whether those acts establish intentional concealment or knowing participation is the legal application of Rule 28 to those facts.

The fixed record thus does not contain substantial evidence that Feder intentionally made or joined in a material misrepresentation, omission, or concealment. Rule 28. Because the Decision relied expressly on intentional wrongdoing to justify its extraordinary remedy, that conclusion cannot support Feder's permanent disqualification.

**2. Grossinger's Conduct and Intent Cannot Automatically Be Attributed to Feder**

Much of the conduct driving the Decision as to Feder was attributed specifically to Grossinger, not to Feder. The Report described Grossinger as developing the process, recruiting players,

arranging medical evaluations, making physician payments, and performing substantial work in matters in which Feder appeared as counsel of record. Rpt. at 18, 27-30, 43-57. The Decision likewise concluded that Grossinger "created and orchestrated the scheme." Dec. at 4. Neither the Report nor the Decision made any factual findings that Feder engaged in similar conduct or knew about Grossinger's actions. The question for Feder's sanction is whether the binding facts provide a legally sufficient basis to attribute Grossinger's knowledge, purpose, and misconduct to Feder.

Neither the Settlement Agreement nor the Audit Rules create automatic co-counsel imputation. Agreement §§ 5.7, 10.3; Rules 10-12, 28, 31. In the context of sanctions under Federal Rule of Civil Procedure 11, the Third Circuit requires particularized findings when sanctions are imposed on multiple lawyers acting as co-counsel. *CTC Imports & Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 578-79 (3d Cir. 1991). Circumstances attributable to one lawyer may bear on another's responsibility, but they may not simply be imputed without an individualized basis. *Id.* at 579. The Third Circuit likewise rejects "a per se rule that if one co-counsel is disqualified for ethical reasons, all co-counsel must be barred from representation"; the facts must be examined individually. *Akerly v. Red Barn Systems, Inc.*, 551 F.2d 539, 543-44 (3d Cir. 1977).

Nor do the findings establish an agency relationship that independently supports imputation. Under Pennsylvania law, agency requires a manifestation that the agent act for the principal, acceptance of the undertaking, and an understanding that the principal controls it. *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120-21 (Pa. 2000). The Report did not find that Feder controlled Grossinger's medical arrangements, directed his physician communications, authorized false diagnoses, or knowingly ratified misconduct. Rpt. at 13, 27, 29-32, 43-57.

The evidence concerning SPID 100013007 illustrates the distinction. The Decision found that Feder appeared as counsel of record, Grossinger was a principal client contact, and the client later

expressed uncertainty about Feder's role. Dec. at 18 n.35. Those facts establish divided work and Grossinger's substantial role. There was no finding that Feder selected or paid a physician, knew a diagnosis was suspect, or shared Grossinger's alleged purpose. Nor did the Report or Decision find that the outside diagnosis, MAF diagnosis, or claim was false. Rpt. at 31, 43-44, 50-52; Dec. at 18-19, 31.

The unknown fee division likewise cannot supply intent. The CA could not determine the fee split and instead inferred that Grossinger likely received a substantial portion because of the responsibilities attributed to him. Dec. at 18-19, 27. Whatever the allocation, an inference about fees does not establish that Feder knew a diagnosis was manufactured or intended to deceive the Program. The Decision recommended Feder's permanent exclusion from the Program without any bridge from Feder's relationship with Grossinger to intentional misconduct.

**3. The Binding Facts Do Not Establish Noncooperation by Feder**

Feder objects to the conclusion that it failed to cooperate in the Audit proceedings. Feder does not challenge the Decision's factual findings concerning what the CA asked Feder and how Feder responded. Those binding facts do not satisfy the legal standard for noncooperation.

Section 10.3(b)(ii) characterizes refusal to cooperate as unreasonably failing or refusing to provide records and information "sought" within the specified time. Sett. Ag. § 10.3(b)(ii). Audit Rule 11 likewise requires information to have been requested before a failure to provide it can constitute noncooperation. Neither the Report nor the Decision identifies a Feder request that Feder failed or refused to satisfy. Rpt. at 19, 29-30 & Ex. G at 94, 96; Dec. at 15-16, 23, 39-41.

In 2021, Feder disclosed that Grossinger was co-counsel and that the firms shared fees and expenses. Rpt. at 29-30 & Ex. G at 96; Dec. at 15-16. The CA already knew that, in two Feder claims, Grossinger recommended the outside neurologists and scheduled and paid for the

appointments. Rpt. at 29; Dec. at 15. The CA "noted the information and continued processing the firm's claims." Rpt. at 30. The Report identifies no follow-up request for documents or information concerning financial terms, division of responsibilities, recruitment, physician payments, or fee-cap compliance. Rpt. at 29-30 & Ex. G at 96.

In 2022, the CA reviewed 11 PD claims and thirteen Alzheimer's disease claims submitted by Grossinger and Feder Law. Rpt. at 7-8; Dec. at 20-21. The Decision recounts no request to Feder arising from that review.

In November 2025, the CA asked Feder whether it had any written or verbal arrangement or other relationship with Grossinger. Rpt. at 19, 30 & Ex. G at 94; Dec. at 16, 23. Feder answered two days later, confirming that the co-counsel relationship remained active and referred back to its 2021 disclosure. Rpt. at 30 & Ex. G at 94; Dec. at 16, 23. The CA asked no question about financial terms, division of responsibilities, recruitment, physician payments, or fee-cap compliance, and requested no documents. Rpt. Ex. G at 94.

The Report expressly distinguished Feder from firms that did not provide information: "Feder Law confirmed an active co-counsel relationship with Mr. Grossinger," while "neither Pro Athlete nor Syme law have provided informative answers." Rpt. at 19. The Decision itself acknowledged that "only one firm, Feder Law, provided a minimally informative response." Dec. at 40.

Feder does not dispute the Decision's factual account of what its response contained. The legal error is treating the absence of additional, *unrequested* information as noncooperation. The Decision faulted Feder because its response did not include "financial terms, "how it complied with the Court's fee cap," whether Grossinger made "key decisions," "fronted costs," or "recruited clients." Dec. at 16. But the CA asked only whether the relationship existed. Rpt. Ex. G at 94.

Whether those fixed facts constitute noncooperation under § 10.3(b)(ii) and Rule 11 is a legal question. They do not. On the binding facts, no Feder request identified in the Report or Decision went unanswered. That error mattered to the remedy. The Decision expressly called noncooperation an "aggravating factor," Dec. at 39, and concluded that the firms' alleged omissions and misstatements, "and lack of reasonable cooperation in Audit, together justify" disqualification. *Id.* at 41. Because the binding facts related to Feder do not legally establish noncooperation, that aggravating factor cannot support Feder's disqualification.

**4. The Feder Claims in Audit Produced No Finding of Misconduct**

The CA placed only two Feder PD claims in audit: SPID 100001722 and SPID 100010932. Rpt. at 19 & Ex. A. It obtained five-year provider histories, outside medical records, and five-year pharmacy histories for the audited claims. Rpt. at 19.

SPID 100001722 involved a PD diagnosis from MAF Physician Dr. Behar and outside records from Drs. Kubersky, Pearlstein, and Bennett. Rpt. at 31. The Report and Decision made no adverse finding concerning Behar, Kubersky, or Bennett and identified no improper payment or act by Feder involving Pearlstein in this claim. The AAP found that, although the MAF examination findings were "very modest," they were "consistent between examiners" and that the minimal later findings were consistent with levodopa's known suppression of PD's signs. Rpt. at 57. The Decision itself cited that review as an example of an AAP approval based on supportive outside records. Dec. at 13.

SPID 100010932 involved a PD QD from MAF Physician Dr. Tamara Greene and outside records from Dr. Carl Billian. Rpt. at 31. Neither the Report nor the Decision made an individualized adverse finding concerning either Greene or Billian, or identified a misrepresentation, omission, or concealment involving this claim.

These facts matter to the proportionality of the sanction imposed on Feder: the two Feder claims actually placed in audit did not produce completed, individualized findings that Feder falsified evidence, influenced a physician, concealed contrary records, or knowingly submitted a false diagnosis. The Decision was wrong to recommend permanent disqualification for Feder.

**5. Prior Program Decisions Support a Graduated Remedy Rather Than Permanent Exclusion**

Prior decisions under this Program demonstrate that disqualification is not automatic even after direct attorney misconduct, which is not present here. For example, in *In re Nat'l Football League Players' Concussion Inj. Litig.*, 2:12-md-02323-AB, Settlement Implementation Determination (E.D. Pa. July 2, 2025), ECF No. 12473 ("*Levine*") (Ex. 2), the Court agreed with findings that Pro Athlete Law Firm and Mr. Levine intentionally prepared and submitted unreliable SWS-3 statements in a manner threatening Program integrity. *Id.* at 1-4. Yet the Court expressly permitted PALF and Mr. Levine "to continue to participate in the Settlement Program at this time." *Id.* at 4. It instead imposed compliance requirements, heightened scrutiny, immediate reporting of violations, and a warning that another violation would result in disqualification. *Id.* at 4-5.

Similarly, in *In re National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323-AB, Settlement Implementation Determination (E.D. Pa. Feb. 29, 2024) ("*Cuthbert*") (Ex. 3), the Special Master found evidence that the attorney, Mr. Cuthbert, pressured physicians, sought backdating, participated in drafting medical records or affidavits, relied on unreliable PET scans, and was untruthful during the audit. The Court sustained the adverse findings but did not disqualify Mr. Cuthbert from the Program. It imposed claim denials, certifications, and reporting obligations rather than permanent exclusion. *Id.* at 2-13.

Here, there is no factual finding against Feder that is as serious as the findings of wrongdoing against PALF, Mr. Levine, and Mr. Cuthbert in those cases. No specific misconduct was found as

to Feder, and Feder has never been subject to an order of heightened scrutiny or to a warning, like the one issued to PALF and Levine, that another violation would result in disqualification. The *Levine* and *Cuthbert* decisions support a graduated remedy that allows Feder to continue in the Program. Permanent disqualification would also affect Settlement Class Members who regard Mr. Feder as their lawyer, have developed relationships of trust with him, and wish to continue relying on him to represent them in the Program.[1]

**6. The Equal One-Fifth Assessment of Audit Costs Lacks an Individualized Causal Basis**

The Decision ordered Feder and the four other law firms to pay equal shares of the investigative costs as a compensatory remedy. Dec. at 41-43. That equal-share assessment, however, is not an equitable remedy. In the context of fee shifting, a compensatory sanction imposed under inherent or equitable authority must be tied to the particular misconduct and limited to fees and costs that would not have been incurred but for that conduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108-10 (2017); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 278 F.3d 175, 188-91 (3d Cir. 2002). The allocation of costs should be handled similarly in this context.

The Decision made no finding that Feder caused one-fifth of the investigative costs. The investigation of Feder consisted principally of reviewing two claims and asking one question by email, without follow-up. Rpt. at 19, 29-30. Most of the work concerned hotel examinations, recruitment, physician payments, and other firms' noncooperation, including subpoena disputes,

[1] Attached as Exhibit 1 are personal reference letters from five current Feder clients. These letters are offered as a conditional proffer concerning the appropriate remedy here. They are not offered to establish or dispute any fact underlying these Objections. Feder does not ask that they be added to or considered part of the record. If the Court determines that the Audit Rules preclude consideration of the letters even for the limited purpose of selecting relief, Feder respectfully requests that the Court disregard them without otherwise affecting these Objections.

record omissions, and nonresponses. Rpt. at 20-27, 32-78; Dec. at 16-28. Without an individualized causal basis, those costs should not be allocated equally to Feder.

**REQUESTED RELIEF**

Feder respectfully requests that the Court:

- Review *de novo* the challenged legal and mixed applications under Audit Rule 34(d) and Federal Rule of Civil Procedure 53(f)(4);
- Set aside the conclusion that Feder failed to cooperate in the Audit proceedings;
- Set aside the conclusion that Feder acted with intent;
- Hold that Grossinger's conduct, knowledge, and intent are not automatically attributable to Feder merely because of co-counsel status, divided work, attorney-of-record forms, or fee and expense sharing;
- Modify Paragraph 5 of the remedies (Dec. at 43) as applied to Feder by vacating the permanent disqualification, the prohibition on future submissions, the transfer of held fees, and the refusal to recognize future Feder liens to the extent those remedies derive from the challenged legal conclusions;
- Modify Paragraph 6 of the remedies (Dec. at 43) as applied to Feder by vacating the equal one-fifth assessment of the Audit costs;
- Permit Feder to remain in the Program; and
- Provide all further relief as the Court may find appropriate.

Respectfully submitted,

**PIETRAGALLO GORDON ALFANO BOSICK AND RASPANTI, LLP**

By: */s/ Gaetan J. Alfano*
Gaetan J. Alfano (32971)
Alexander M. Owens (319400)
1818 Market Street, Suite 3402
Philadelphia, PA 19103
gja@pietragallo.com
amo@pietragallo.com
(215) 988-1441 (Telephone)
(215) 981-0082 (Telecopy)

*Counsel for Feder Law LLC*

Date: September 11, 2026