# Exhibit "C"

# SYNOPSIS OF 6/8/26 SPECIAL MASTER DECISION

On 6/8/26 the Special Masters issued their Rule 27 Decision on the Report of Adverse Finding Regarding Douglas Grossinger, Feder Law, Pro Athlete Law Firm, Syme Law, Reppert Oates & Vytell, and Associated Class Members (the "Decision"). A copy of the complete Decision is available on the Official NFL Concussion Settlement Website (Link) and can also be requested from the Claims Administrator. The Special Masters directed that the Claims Administrator prepare this synopsis of the Decision, which certain affected Settlement Class Members seeking new evaluations in the Settlement must provide to future MAF Physicians.

## I. CORE FINDINGS: STRUCTURED DIAGNOSTIC MANIPULATION.

The Audit revealed a recurring three-step process used by these firms:

1. **Pre-MAF Evaluation by Non-Program Doctors:** Claimants were first sent to non-Program physicians (often selected and paid by the attorneys) who diagnosed Parkinson's Disease after limited evaluation. These doctors frequently prescribed medications such as levodopa, which can suppress observable symptoms of Parkinson's Disease.
2. **Subsequent MAF Examination:** Only after this initial diagnosis and treatment did claimants undergo examination by a Qualified MAF Physician. Because symptoms were often masked by medication, MAF Physicians frequently relied on the prior non-Program medical records rather than direct observation of symptoms.
3. **Submission of Claims:** Claims were then submitted based on the MAF Physician's Qualifying Diagnosis, without disclosing the circumstances under which the underlying medical history had been developed.

This sequence created the appearance of legitimate medical progression while, in reality, introducing potentially unreliable and attorney-influenced medical evidence into the Program.

## II. IMPLICATIONS FOR FUTURE MAF EVALUATIONS.

For all Qualified MAF Physicians, the Decision underscores several critical considerations:

1. **Reliance on Listed Providers:** The decision mandates exclusion of diagnoses that rely on certain identified physicians associated with the scheme. The Claims Administrator must deny any Claim going forward where a MAF Physician relied on the judgment of these physicians. These physicians are:
   a) Dr. Jeffrey Steinberg;
   b) Dr. Louis Pearlstein;
   c) Dr. Eric Kramer;
   d) Dr. Cherian Karunapuzha;

   e) Dr. Avesh Verma;
   f) Dr. Ramon Sanchez;
   g) Dr. Jonathan Fellus; and
   h) Dr. Stuart Isaacson.

2. **Reliance on Outside Records:** Prior medical records—especially those generated outside the Program—may have been influenced by undisclosed financial or legal relationships and should not be accepted uncritically.
3. **Medication Effects:** The presence of levodopa or similar medications can mask symptoms. If the Retired Player is taking those medications at the time of a MAF examination, the absence of observable signs at that single examination does not resolve the diagnostic question.
4. **Need for Independent Clinical Judgment:** MAF Physicians must rely on their own clinical evaluation and, where appropriate, direct longitudinal observation or additional objective evidence.
5. **Importance of Complete Context:** A full understanding of the claimant's diagnostic history (including prior evaluations, negative findings, and the circumstances of treatment) is essential to avoid reliance on incomplete or misleading information. The decision mandates that currently pending and future claims include full disclosure of all relevant medical encounters, including those not supporting a diagnosis.
6. **Enhanced Diagnostic Safeguard:** The decision directs development and use of enhanced diagnostic safeguards, including potential objective testing.
7. **Instructions from Claims Administrator:** In fulfillment of their obligation of cooperation with the Claims Administrator under the Participating Qualified MAF Physician Agreement and to ensure the continuing integrity of the Settlement Program, Qualified MAF Physicians are reminded that they must follow all existing and future instructions or guidance issued by the Claims Administrator regarding performance of their duties and obligations.