# Exhibit “H”

# DECLARATION OF MARTIN H. REDISH IN SUPPORT OF DOUGLAS R. GROSSINGER'S MOTION TO VACATE THE DECEMBER 12, 2025, AUDIT REPORT AND THE JUNE 8, 2026, RULE 27 DECISION

## INTRODUCTION

1. My name is Martin H. Redish. I am the Louis and Harriet Ancel Professor of Law and Public Policy at the Northwestern University Pritzker School of Law, where I have taught for the last 53 years.

2. I file this Declaration on behalf of the Grossinger Law Firm (hereinafter "Grossinger"). I am being compensated for preparation of this Declaration in the amount of $1500 per hour. However, the views expressed in this report are solely my own, grounded in my many years of experience teaching and publishing about the doctrine and theory of procedural due process.

3. I have reviewed the Court's Order of August 3, 2026, ECF No. 12558. I do not ask the Court to reopen findings that are final under the Settlement, to order discovery, or to hold an evidentiary hearing. My opinions address purely legal questions: (1) whether the process actually used may constitutionally support the severe property, professional, and reputational consequences imposed upon Grossinger, who is NOT himself a party to the Settlement Agreement, and (2) whether those consequences were the result of a decision by a truly neutral adjudicator, as required by Due Process.

## EXPERT QUALIFICATIONS

4. I believe that I am fully qualified to serve as an expert on issues involving procedural due process.

5. I received my A.B. from the University of Pennsylvania in 1967, where I graduated with Highest Honors in Political Science and was a member of Phi Beta Kappa.

6. I received my J.D. Magna Cum laude from Harvard Law School in 1970, where I was a member of the Harvard Law Review. I then served as law clerk to the Honorable J. Joseph Smith of the United States Court of Appeals for the Second Circuit. After that I worked for two years as a litigation associate at Proskauer Rose Goetz & Mendelsohn in New York City, where I spent most of my time representing the National Basketball Association, supervised by then-senior associate (later NBA Commissioner) David Stern.

7. I joined the Faculty of Northwestern Law School in the Fall of 1973 and have been there ever since. I teach in the areas of Constitutional Law, Civil Procedure and Federal Jurisdiction.

8. I am the author or coauthor of 19 books (including University Press monographs, multiple editions of three casebooks and books for practicing lawyers). I am one of the primary revisers of the multi-volume series, Moore's Federal Practice. I am consistently ranked by Hein Online as one of the thirty-five most cited legal scholars of all time. I have been cited or quoted in 22 Supreme Court opinions. In 2021 I was awarded the American Association of Law Schools' Daniel J. Meltzer Prize for Outstanding Scholarship in the Field of Federal Courts—only the second time the award was made.

9. In 2012, Northwestern Law School honored me with a Festschrift (a conference of scholars commenting on my scholarship). The Northwestern Law Review subsequently published a volume devoted to articles by scholars about my writings. In 2024, Northwestern Law School named a classroom after me, and my portrait currently hangs in that room.

10. My book, *Due Process as American Democracy,* was published by Oxford University Press. I have also published numerous scholarly articles concerning the theory and doctrine of procedural due process. A copy of my current CV is submitted along with this Declaration.

**SUMMARY OF CONCLUSIONS**

11. Although the document to which both Grossinger and the NFL responded was called a seemingly harmless "Audit", the process has been weaponized into an *ad hominem* coercive attack on Grossinger, depriving him of his property, his profession, and his good name—all of which are fully protected liberty or property interests protected by the Fifth Amendment's Due Process Clause. As a result, the imposition of severe sanctions on Grossinger without the provision of anything approaching a full and fair hearing has seriously undermined Grossinger's constitutional right to fair procedure prior to the deprivation of liberty or property.

12. The result of this perverse hybrid form of inquiry is to deprive an individual of almost all he holds dear—his good name, his money, and his profession—without the slightest attempt to guarantee to that individual even the barebones elements of due process: (a) no opportunity to present his own evidence during the Audit process itself or before the Special Masters; (b) no opportunity to confront or cross-examine his accusers (or even to know their names!); (c) no guarantee that his accusers have testified *under oath,* thereby

removing any inhibition to lie for fear of prosecution for perjury; (d) not even the provisions of direct written statements by his accusers *in their own words*, but instead merely the benefit of a hearsay plagued game of "Telephone" in which what his unnamed accusers have said about him is merely recharacterized and summarized to him by the Claims Administrators in the Audit itself; and (e) finally, to top off this bizarre cross between McCarthy-era tactics, the Star Chamber, and the "justice" meted out by the Queen of Hearts in *Alice in Wonderland,* a final, unreviewable adjudicator whose neutrality is subject to question because (I have been informed, though I have no personal knowledge of this fact) he may have had personal involvement in or familiarity with the relevant facts relied on by the Claims Administrators long before this Audit proceeding began. Surely no individual with personal knowledge of the relevant facts of a case prior to its institution would be allowed to serve as either judge or juror in that case. Assuming it is true that the Master had personal familiarity with some or all of the relevant information prior to its start, he most surely cannot be deemed a neutral adjudicator who will be swayed exclusively by evidence presented at the hearing. Of course, since absolutely no hearing was held in the first place, the absence of a neutral adjudicator (assuming it is true that he had personal familiarity with the facts prior to the adjudication) is simply yet one more blatant violation of Grossinger's due process rights.

13. Even more blatant a violation of Due Process is the imposition of disqualification on Grossinger, even though at the point at which he was permitted to make arguments to the Master no mention of disqualification as a possibility had been raised by the Audit. It was only in the NFL's subsequent filing that the possibility of disqualification was even suggested. At that point, Grossinger was given no opportunity to respond to the NFL's proposed sanction.

14. It is important to emphasize that I am in no way arguing that this Court should hold an evidentiary hearing *to determine the accuracy of the Special Master's findings of fact.* I understand fully why the holding of such a process would impose a severe and unnecessary burden on this Court.

15. However, it is for the very reason that this Court cannot reasonably be expected to hold an evidentiary hearing to review the accuracy of the Special Master's findings of fact that it is so important *that the Special Master or another authorized adjudicator provide a full opportunity for Grossinger and others in a similar position to present their arguments, call their witnesses, be made aware of the evidence against them, and have the opportunity to cross-examine their accusers prior to making findings of fact or imposing severe penalties.* I am therefore arguing not that this Court conduct an evidentiary hearing, but rather that this Court vacate both the Audit and the severe penalties imposed by the Special Master and, if still deemed necessary, order the holding of a full due

process hearing before a neutral administrative adjudicator. For absent such a hearing, Grossinger will never have had *any* opportunity to present his own evidence or challenge the evidence against him. The Special Master provided Grossinger with absolutely none of these opportunities to assure that the Special Master reaches a fair and accurate conclusion.

16. To suggest that this set of events constitutes an unambiguous violation of Grossinger's constitutional right to due process guaranteed by the Fifth Amendment would be truly a gross understatement. In order to satisfy even the most basic requirements of procedural due process, it is necessary to vacate the Special Master's findings and punishments, not because they are necessarily inaccurate, but rather because *all of those findings and punishments are constitutionally tainted as the outcome of a total absence of any effort by the Master to provide even a semblance of a fair, adversary process required by the Due Process Clause.*

17. I recognize that parties may waive their constitutional right to due process, and to a certain extent the Settlement Agreement may constitute such a waiver. But if so, it does so *only* for signatories to that agreement—meaning members of the class. Grossinger is neither a signatory to that Agreement nor a member of the class whose claims were settled. Therefore, he is in no way bound by such a waiver, to the extent one exists.

## ANALYSIS

18. **As a result of the Audit and the Special Master's imposition of penalties, Grossinger will lose significant amounts of money which he now possesses and will also suffer significant harm to his professional reputation. Moreover, the results of these processes will even significantly interfere with his right to pursue his chosen profession. His rights to liberty and property guaranteed by the Due Process Clause are therefore triggered by the results of the Audit and the Master's findings and imposition of penalties.**

    a. Once appeals processes terminate, Grossinger and the other impacted law firms will be disqualified from further participation in the Program. Each firm will be prohibited from submitting further claims in the Settlement Program. The Claims Administrator will transfer any attorney fees belonging to Grossinger and the other firms currently held by the Program to the Monetary Award Fund, and it will refuse to recognize future attorney liens asserted by any of these firms. Clearly, these penalties seriously impact Grossinger's property interests in those funds and his liberty interest in pursuing his chosen profession.

b. Grossinger also has a valuable property interest in preserving his reputation. Though under *Paul v. Davis,* 424 U.S. 693 (1976), as a general matter harm to reputation is as the result of inaccurate governmental accusations is not deemed a protected property interest, under that decision's so-called "Stigma-Plus" doctrine, where harm to reputation could have incidental harm to existing status the Due Process protections will be triggered. See also *Wisconsin v. Constantineau,* 400 U.S. 433 (1971) (impact on reputation causing loss of ability to purchase alcohol triggers Due Process protections). In Grossinger's case, it is highly likely that a formal censure by both the Claims Administrators and the Special Masters will seriously harm his ability to pursue his chosen career as a licensed attorney, and one's ability to pursue a chosen profession has been recognized as a protected liberty interest. See *Schware v. Bd. of Examiners,* 353 U.S. 232, 238-39 (1957) ("A state cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process…Clause…"). See also *Slochower v. Bd. of Higher Education,* 350 U.S. 551 (1956); *Wieman v. Updegraff,* 344 U.S. 183 (1952). Thus, we can proceed to analyze whether the "process" adopted here by the Claims Administrators and Special Masters employed in determining Grossinger's liability and sanctions satisfies the constitutional dictates of procedural due process. It does not take long to realize that they most certainly did not.

19. **The Due Process Clause requires that the subject of an investigation and of the imposition of coercive sanctions has a right to his day in court.**

a. At its foundation, the right to procedural due process is "rooted [in the] historic tradition that everyone should have his own day in court." *Taylor v. Sturgell,* 553 U.S. 880, 892-93 (2008) (Ginsburg, J., speaking for the Court), quoting *Richards v. Jefferson County,* 517 U.S. 793, 798 (1996).

b. Every conceivable theory of due process reaches the same conclusion. Under the utilitarian model of due process adopted by the Court in *Mathews v. Eldridge,* 424 U.S. 319 (1976), and *Connecticut v. Doehr,* 501 U.S. 1 (1991), an important concern is avoiding or at least reducing the risk of an erroneous deprivation. Absent provision of "a day in court" enabling the subject of the investigation to present his own evidence and challenge the evidence submitted against him, the risk of an erroneous deprivation is enormous. Under the so-called "Dignitary" model of procedural due process [see Jerry L. Mashaw, *Due Process: The Quest for a Dignitary Theory,* 61 B.U.L. Rev. 885 (1981)], the concern is that the process show appropriate respect for the individual as an integral whole within the broader democratic polity, thereby

legitimizing the governmental process in the litigant's mind. Under my own theory of "Adversary Democratic Due Process," the day-in-court ideal is justified by recognition of the inherent hostility or indifference to an individual's interests, leading to the conclusion that fairness can be assured only by permitting the individual himself to shape his own defense. See Martin H. Redish & Victor Hiltner, *Adversary Democratic Due Process,* 75 Fla. L. Rev. 483 (2023). Thus, under established doctrine and persuasive underlying theory, the day-in-court ideal serves as the foundational guarantee of the Due Process Clause.

c. What procedures must be afforded to the investigation's subject to satisfy the requirement of the "day-in-court ideal"? The Supreme Court has made clear that there exist a number of procedures which due process requires:

(1) **The subject's right to notification of the potentially coercive proceeding.**

(2) **The subject's right to present evidence, either in written or oral form, and to call witnesses on his own behalf.**

(3) **The subject's right to confront and cross-examine his accusers and have his accusers' testimony against him given under oath.**

(4) **The right to a neutral and disinterested adjudicator.**

d. **The Right to Notice of the Potentially Coercive Proceeding.** Foundational to the day-in-court ideal is the right to notification of the existence of the proceeding. Without such notification, the subject of the investigation and coercive proceeding is wholly unable to defend himself.

e. **The Right to Present Evidence and Call Witnesses on his own behalf.** Unless the subject of the investigation is given an opportunity to present evidence on his own behalf, the very foundation of "the day-in-court ideal" is missing. Without this right, there is a high risk of wrongful deprivation, which would compromise the principle of fundamental fairness. See *Jenkins v. McKeithen,* 395 U.S. 411, 428 (1969) (statute "drastically limit[ing] the right of a person investigated to present evidence on his own behalf" held unconstitutional as violation of procedural due process).

f. **The Right to Confront and Cross-Examine One's Accusers.** Numerous Supreme Court decisions have held that due process—even in non-criminal proceedings—guarantees the subject of an investigation the right to confront and cross-examine one's accusers. Without this opportunity, the evidence against the subject is

questionable and may well lead to an unjust outcome. See, e.g., *Goldberg v. Kelly,* 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses"), citing *ICC v. Louisville & N.R. Co.,* 227 U.S. 88, 93-94 (1913); *Wilmer v. Committee on Character & Fitness,* 373 U.S. 96, 103-04 (1963). See also *Greene v. McElroy,* 360 U.S. 474, 496-97 (1959) ("*Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove to Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.")* (emphasis added).

g. **The Right to a Neutral and Disinterested Adjudicator.** As I have written in my legal scholarship, "[l]egal adjudicators wield a distinct and potentially dangerous power over the parties they adjudicate. With their word alone, they speak legally binding obligations, rights, and punishments into existence. At the swipe of an adjudicator's pen, individuals may be forced to forfeit their money, their property, their physical freedom, or their lives according to the adjudicator's orders. Once due process protections are triggered, the stakes are definitionally high, and adjudicators must therefore be required to meet demanding standards of neutrality….With such great power in the hands of adjudicators, it is essential that judgments against individuals be the sole product of the issues, legal rules, and evidence presented. When outside influences—including subtle ones, of which the judge herself may not even be aware—compromise an adjudicator's decision-making, all procedural protections…are effectively rendered meaningless." Martin H. Redish, *Due Process as American Democracy* (Oxford University Press; 2024), at 13.

Classic forms of threats to adjudicatory neutrality include possible financial interests in the outcome (*Tumey v. Ohio,* 273 U.S. 510 (1927)) but are not limited to such considerations. In addition, pre-adjudication personal involvement in or exposure to the facts of the case inevitably threatens the adjudicator's judgment of the evidence presented. See, e.g., *Williams v. Pennsylvania,* 579 U.S. 1 (2016); *In re Murchison,* 349 U.S. 133 (1955). See generally Martin H. Redish & Kristin McCall, *Due Process, Free Expression and the Administrative State,* 94 Notre Dame L. Rev. 297 (2018).

20. **The process employed by the Claims Administrators and Special Master in preparing and implementing the Audit and determining sanctions to be imposed on Grossinger have provided to Grossinger literally none of the foundational requirements of the Due Process Clause.** Both the Claims Administrators and the

Special Masters imposed severe deprivations of both property and liberty on Grossinger without providing him with any of the following foundational elements of a due process hearing:

(1) Notice of a proceeding intended to consider the possible imposition of coercive sanctions (in this case, disqualification from participation in the Program) upon him.

(2) An opportunity to present his own evidence in his defense before either the Audit or the Special Master's imposition of sanctions were completed.

(3) An opportunity to confront, cross-examine *or even know the names of* his accusers.

(4) Having his accusers testify *under oath,* in open hearing, thereby chilling any possible incentive of the witness to lie.

(5) Seeing his accusers' *actual words*, rather than seeing only the Claims Administrators' paraphrase of their words.

(6) Having the hearing presided over by an adjudicator who himself is wholly neutral, rather than one (like the Special Masters) who has been long steeped in the relevant facts long before the investigation began, thereby threatening his objectivity in judging the evidence.

21. I have been informed (though I readily admit I have no firsthand knowledge of the relevant facts) that while the Claims Administrators refused to provide Grossinger with an opportunity to submit evidence and/or participate in the shaping of the Audit, they have in fact provided other lawyers and law firms such an opportunity in the past. If this factual assertion is accurate, then a serious question of equal protection (guaranteed by the Due Process Clause of the Fifth Amendment; see *Bolling v. Sharpe,* 347 U.S. 497 (1954)) would most definitely arise in this case. The Claims Administrators would be obliged to provide a rational basis for drawing such a blatantly discriminatory distinction.

22. In the present case, it hardly seems fair to deny Grossinger, the chosen representative of numerous class members, the basic elements of his constitutional right to fair treatment. Such a deprivation not only violates Grossinger's right to fair treatment prior to the deprivation of his property or liberty. It also indirectly undermines the rights of Grossinger's clients to be represented by their chosen attorney.

## CONCLUSION

23. For all of these reasons, imposition of the coercive sanctions imposed upon Grossinger constitutes an unambiguous violation of the Fifth Amendment's Due Process Clause.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Martin H. Redish**

**Executed on September 9, 2026**

**Curriculum Vitae**

# MARTIN H. REDISH


**Telephone:** (312) 503-8545

**Email:** m-redish@law.northwestern.edu

**Fax Number:** (312) 503-2035


## Educational Background

*Legal:* J.D., Harvard Law School, 1970

*Honors*: Magna Cum Laude
Harvard Law Review

*College:* A.B., University of Pennsylvania, 1967

*Honors:* Phi Beta Kappa

Highest Honors in Political Science

Philo Bennett Prize
Best Thesis in American Government

## Employment

*September 1973 - Current*

Professor of Law, Northwestern University

| | |
|---|---|
| Assistant Professor: | 9/73 – 8/76 |
| Associate Professor: | 9/76 – 8/78 |
| Full Professor: | 9/78 – 3/90 |

Named Louis and Harriet Ancel Professor of Law and Public Policy: 3/90

*Subjects:* Civil Procedure, Constitutional Law, First Amendment, Federal Jurisdiction

*Honors*: Winner of 2021 Association of American Law Schools Daniel J. Meltzer Award for Path-Breaking Scholarship and Outstanding Teaching in Federal Courts

Ranked 17th most cited legal scholar of all time,
William S. Hein Co. (2013)

First Year Course Teacher of the Year Award (2005; 2012)

Recognized by Institute for Scientific Information for being Among the Most Highly Cited Professors Worldwide

Dean's Teaching Award (1999; 2002; 2004; 2008)

Stanford Clinton Senior Research Professorship (1988-89)

Robert Childres Memorial Award for Teaching Excellence (1987, 2006; 2014)

Perkins-Bauer Teaching Professorship (1982-83)

## Visiting Professorships:

*June 1977 - August 1977*
Visiting Associate Professor of Law, Stanford University

*September 1977 - December 1977*
Visiting Associate Professor of Law, Cornell University

*September 1987 - May 1988*
Visiting Professor of Law, University of Michigan
*Honors:* L. Hart Wright Outstanding Teacher Award

## Pre-Academic Employment:

*September 1971 – July 1973*
Associate with the firm of Proskauer Rose Goetz & Mendelsohn
300 Park Avenue, New York, New York

*September 1970 – May 1971*
Clerk to the Honorable J. Joseph Smith
United States Court of Appeals for the Second Circuit

## Professional Activities

1. Civil Justice Reform Act Advisory Committee for the Federal District Court, Northern District of Illinois (1995-97)

2. Academic Consultant to the Subcommittee on Judicial Independence of the Judicial Branch Committee, Judicial Conference of the United States (1994)

3. Board of Revisers, Moore's Federal Practice (1996-present)

4. Member, Seventh Circuit Rules Advisory Committee (1978-89)

5. Reporter, American College of Trial Lawyers Project on Complex Civil Litigation (1980- 81)

6. Member, American Law Institute

## Congressional Testimony:

1. Expert Witness before the Judiciary Committee of the House of Representatives concerning future modification of federal class action procedure (July 2012)

2. Expert Witness before the Judiciary Committee of the House of Representatives on constitutionality of congressional restrictions of federal court jurisdiction over cases involving same sex marriage (June 2004)

3. Expert Witness before the United States Senate Commerce Committee on the First Amendment implications of the tobacco settlement (March 1998)

4. Expert Witness before the United States Senate Judiciary Committee on the First Amendment implications of the tobacco settlement (February 1998)

5. Expert Witness before Subcommittee on Crime, Judiciary Committee of the House of Representatives on Constitutionality of Hate Crime Sentencing Enhancement (July 1992)

6. Expert Witness before Transportation, Tourism and Hazardous Materials Subcommittee of the Energy and Commerce Committee of the House of Representatives on constitutionality of the regulation of cigarette advertising to minors (July 1989)

7. Expert Witness before House Judiciary Committee on constitutionality Under First Amendment of proposed legislation regulating pornography (August 1988)

8. Expert Witness before Transportation, Tourism and Hazardous Materials Subcommittee of the Energy and Commerce Committee of the House of Representatives on constitutionality of cigarette advertising regulation (April 1987)

9. Expert Witness Before the United States Senate Judiciary Committee (Testimony on congressional power to control federal jurisdiction, May 1981; testimony on constitutional implications of bankruptcy court reform, July 1983)

## Publications

### Books

1. **Due Process as American Democracy** (Oxford University Press, 2024)

2. **Commercial Speech and the Foundations of Free Expression** (Cambridge University Press, 2021)

3. **Judicial Independence and the American Constitution: A Democratic Paradox** (Stanford University Press, 2017)

4. **The Adversary First Amendment: Free Expression and the Foundations of American Democracy** (Stanford University Press, 2013)

5. **Wholesale Justice: Constitutional Democracy and the Problem of the Modern Class Action** (Stanford University Press, 2009)

6. **The Logic of Persecution: Free Speech and the McCarthy Era** (Stanford University Press, 2005) (paperback edition published 2006)

7. **Money Talks: Speech, Economic Power and the Values of Democracy** (N.Y.U. Press, 2001)

8. **Understanding Federal Courts and Jurisdiction** (Matthew Bender & Co., 1999) (with Mullenix and Vairo) (2d ed. 2015)

9. **Moore's Federal Practice 3d ed**., volume 15, on Federal Jurisdiction, and various additional sections (Matthew Bender & Co., 1997)

10. **The Constitution as Political Structure** (Oxford University Press, 1995)

11. **Moore's Federal Practice** (Reviser of volume 4, concerning Rule 26) (1994)

12. **Summary Judgment: Federal Law and Practice** (with Brunet & Reiter) (Shepard's-McGraw Hill, 1994; 2d ed., West Publishing Co., 2000; 3d ed., 2006; 4th ed., 2014)

13. **Constitutional Law: Principles and Policy, Cases and Materials** (with Barron, Dienes & McCormack) (3d ed. 1987; 4th ed. 1992; 5th ed., 1996; 6th ed., 2002; 7th ed. May 2006; 8th ed. 2012) (Lexis Publishing)

14. **The Federal Courts in the Political Order: Judicial Jurisdiction and American Political Theory** (Carolina Academic Press, 1991)

15. **Federal Jurisdiction: Tensions in the Allocation of Judicial Power** (1st ed. 1980; Michie Co., 2d ed. 1990)

16. **Civil Procedure: A Modern Approach** (with Marcus and Sherman) (West Publishing Co.; 1989) (2d ed. 1995; 3d ed. 2000; 4th ed. 2004; 5th ed. 2009 (with Marcus, Sherman & Pfander; 6th ed. 2013); (7th ed. 2018)

17. **Federal Courts: Cases, Comments and Questions** (West Publishing Co.) (with Sherry) (1st ed. 1983; 2d ed. 1989; 3d ed. 1994; 4th ed. 1998; 5th ed. 2002; 6th ed. 2006; 7th ed. 2009; 8th ed. 2012; 8th ed. 2018) (with Sherry and Pfander)

18. **Federal Jurisdiction** - Blackletter Series (1985; West Publishing Co.; 2d ed. 1990) (3d ed. 2004, with Freer) (4th ed. With Freer & Doernberg; 2017; 5th ed. 2025)

19. **Freedom of Expression: A Critical Analysis** (Michie Co., 1984)

## Articles and Book Chapters

1. *Hiding in Plain Sight: The Fusion of Powers and the Revolutionary Impact of Section 5 of the Fourteenth Amendment*, **Northwestern University Law Review** (to be published in 2026) (with Areeb Asif)

2. *"Our Federalism" Reexamined: Federal Jurisdiction Viewed Through the Lens of American Political History*, **North Carolina Law Review** (to be published in 2026) (with Samuel Pritchard)

3. *The Seventh Amendment Right to Jury Trial in the Administrative State: Recognizing the Dangers of the Constitutional Moment*, 99 **Notre Dame Law Review** 1743 (2024) (with Samy Abdelsalum)

4. *Cutting the Gordian Knot: Viewing Legislative Courts Through the Lens of Due Process*, 99 **Indiana Law Journal** 675 (2024) (with Austin Piatt)

5. *Adversary Democratic Due Process*, 75 **Florida Law Review** 483 (2023) (with Victor Hiltner)

6. *Constitutional Remedies as Constitutional Law,* 62 **Boston College Law Review** 1865 (2021)

7. *Federal Jurisdiction as Statutory Interpretation: A Majordomo Purposivist Perspective*, 74 **SMU Law Review** 303 (2021) (with Andrew Rodheim and Nicholas Roosevelt)

8. *The Liberal Case Against the Modern Class Action*, 73 **Vanderbilt Law Review** 1127 (2020)

9. *Resolving the First Amendment's Civil War: Political Fraud and the Democratic Goals of Free Expression*, 62 **Arizona Law Review** 451 (2020) (with Julio Pereyra)

10. *The Overused and Underused Privileges and Immunities Clause*, **99 Boston University L. Rev.** 1535 (2019) (with Brandon Johnson)

11. *Pragmatic Formalism, Separation of Powers, and the Need to Revisit the Nondelegation Doctrine*, 51 **Loy.U.Chi. L. Rev.** 363 (2019)

12. *Compelled Commercial Speech and the First Amendment*, 94 **Notre Dame L. Rev.** 1749 (2019)

13. *Discovery Cost Allocation, Procedural Due Process, and the Constitution's Role in Civil Procedure*, 71 **Vanderbilt Law Review** 1847 (2018)

14. *Due Process, Free Expression, and the Administrative State*, 94 **Notre Dame Law Review** 297 (2018) (with Kristin McCall)

15. *Terrorizing Advocacy and the First Amendment: Free Expression and the Fallacy of Mutual Exclusivity*, 86 **Fordham Law Review** 565 (2017) (with Matthew Fisher)

16. *The Wandering Doctrine of Constitutional Fact*, 59 **Arizona Law Review** 289 (2017) (with William Gohl)

17. *False Commercial Speech and the First Amendment: Understanding the Implication of the Equivalency Principle*, 25 **William & Mary Bill of Rights Journal** 765 (2017) (with Kyle Voils)

18. *Premodern Constitutionalism*, 57 **William & Mary Law Review** 1825 (2016) (with Matthew Heins)

19. *Why FDA's Ban on Off-Label Promotion Violates the First Amendment: A Study in the Values of Commercial Speech Protection*, (with Coleen Klasmeier), *in FDA in the 21st Century: The Challenges of Regulating Drugs and New Technologies* (Lynch & Cohen ed.) **Columbia University Press** (2016)

20. *Fear, Loathing, and the First Amendment: Optimistic Skepticism and the Theory of Free Expression*, 76 **Ohio State Law Journal**, 691 (2015)

21. *The Right of Publicity and the First Amendment in the Modern Age of Commercial Speech* (with Kelsey Shust) 56 **William & Mary Law Review**, 1443 (2015)

22. *One Size Doesn't Fit All: Multidistrict Litigation, Due Process, and the Dangers of Procedural Collectivism* (with Julie Karaba) 95 **Boston University Law Review**, 109 (2015)

23. *Litigating Article III Standing: Proposing a Solution to the Serious (But Unrecognized) Separation of Powers Problem* (with Sopan Joshi) 162 **University of Pennsylvania Law Review** 1373 (2014)

24. *Avoiding Death by a Thousand Cuts: The Relitigation of Class Certification and the Realities of the Modern Class Action* (with Megan Kiernan), 99 **Iowa Law Review** 1659 (2014)

25. *The Real Constitutional Problem with State Judicial Selection: Due Process, Judicial Retention, and the Dangers of Popular Constitutionalism*, (with Jennifer Aronoff) 56 **William & Mary L. Rev**. 1 (2014)

26. *Rethinking the Theory of the Class Action: The Risks and Rewards of Capitalistic Socialism in the Litigation Process*, 64 **Emory Law Journal** 451 (2014)

27. *Criminal Conspiracy as Free Expression*, 76 **Albany Law Review** 697 (2013) (with Michael Downey)

28. *"Worse Than the Disease": The Anti-Corruption Principle, Free Expression, and the Democratic Process*, 20 **William & Mary Bill of Rights Journal** 1053 (2012) (with Elana Nightingale-Dawson)

29. *Pleading, Discovery, and the Federal Rules: Exploring the Foundations of Modern Procedure*, 64 **Florida Law Review** 845 (2012)

30. *Judicial Review, Constitutional Interpretation, and the Democratic Dilemma: Proposing a "Controlled Activism" Alternative*, 64 **Florida Law Review** 1485 (2012) (with Matthew Arnould) (2012 Dunwody Distinguished Lecture in Law)

31. *Allocation of Discovery Costs and the Foundations of Modern Procedure* in **American Illness** (Yale University Press; 2012; Frank Buckley, ed.)

32. *Back to the Future: Discovery Cost Allocation and Modern Procedural Theory*, 79 **George Washington Law Review** 773 (2011) (with Colleen McNamara

33. *Prescription Advertising, the FDA and the First Amendment: A Study in the Values of Commercial Speech Protection*, 37 **American Journal of Law and Medicine** 315 (2011) (with Coleen Klasmeier)

34. *Habeas Corpus, Due Process and the Suspension Clause: A Study in the Foundations of American Constitutionalism*, 96 **Virginia Law Review** 1361 (2010) (with Colleen McNamara)

35. *Private Contingent Fee Lawyers and Public Power: Constitutional and Political Implications*, 18 **Supreme Court Economic Review** 77 (2010)

36. *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 **Florida Law Review** 617 (2010) (with Peter Julian & Samantha Zyontz)

37. *Freedom of Expression, Political Fraud, and the Dilemma of Anonymity*, in **Speech and Silence in American Law** (Cambridge University Press, 2010; Austin Sarat, ed.)

38. *Understanding Post's and Meiklejohn's Mistakes: The Central Role of Adversary Democracy in the Theory of Free Expression*, 103 **Northwestern University Law Review** 1303 (2009) (with Abby Marie Mollen)

39. *Taylor v. Sturgell, Procedural Due Process, and the Day-in-Court Ideal: Resolving the Virtual Representation Dilemma*, 84 **Notre Dame Law Review** 1877 (2009) (with William J. Katt)

40. *The Rules Enabling Act and the Substantive-Procedural Tension: A Lesson in Statutory Interpretation*, 93 **Minnesota Law Review** 26 (2008) (with Dennis Murashko)

41. *Commercial Speech, First Amendment Intuitionism and the Twilight Zone of Viewpoint Discrimination*, 41 **Loyola of Los Angeles Law Review** 67 (2008)

42. *The Class Action as Political Theory*, 85 **Washington University Law Review** 753 (2007) (with Clifford W. Berlow)

43. *Class Actions, Litigant Autonomy, and the Foundations of Procedural Due Process,* 95 **California Law Review** 1573 (2007) (with Nathan D. Larsen)

44. *Bankruptcy, Sovereign Immunity and the Dilemma of Principled Decision Making: The Curious Case of Central Virginia Community College v. Katz*, 15 **American Bankruptcy Institute Law Review** 13 (2007) (with Daniel M. Greenfield)

45. *Good Behavior, Judicial Independence, and the Foundations of American Constitutionalism*, 116 **Yale Law Journal** 139 (2006)

46. *Settlement Class Actions, the Case-or-Controversy Requirement, and the Nature of the Adjudicatory Process*, 73 **University of Chicago Law Review** 545 (2006) (with Andrianna D. Kastanek)

47. *The Supreme Court and the Politization of the Federal Rules: Constitutional and Statutory Implications***, Minnesota Law Review** (2006) (with Uma M. Amuluru)

48. *Legislative Deception, Separation of Powers, and the Democratic Process: Harnessing the Political Theory of United States v. Klein*, 100 **Northwestern Law Review** 437-464 (2006) (with Christopher R. Pudelski)

49. *Same-Sex Marriage, the Constitution, and Congressional Power to Control Federal Jurisdiction: Be Careful What You Wish For*, 9 **Lewis & Clark Law Review** 363- 380 (2005)

50. *Summary Judgment and the Vanishing Trial: Implications of the Litigation Matrix*, 57 **Stanford Law Review** 1329-1359 (2005)

51. *Why Punitive Damages are Unconstitutional*, 53 **Emory Law Journal** 3 (2004) (with Andrew Mathews).

52. *Class Actions and the Democratic Difficulty: Rethinking the Intersection of Private Litigation and Public Goals*, 2003 **University of Chicago Legal Forum** 71

53. *The Need for Jurisdictional and Structural Class Action Reform*, 32 **Environmental Law Reporter** 10984-10990 (2002)

54. *What Did You Learn at School Today? Free Speech, Values Inculcation, and the Democratic-Educational Paradox*, 88 **Cornell Law Review** 62 (2002)

55. *Electronic Discovery and the Litigation Matrix*, 51 **Duke Law Journal** 561 (2001)

56. *HUAC, The Hollywood Ten and the First Amendment Right of Non-Association*, 85 **Minnesota Law Review** 1669 (2001) (with Christopher McFadden)

57. *The Adversary System, Democratic Theory and the Constitutional Role of Self-Interest: The Tobacco Wars*, 1953-1971, 51 **DePaul Law Review** 359 (2001)

58. *Free Speech and the Flawed Postulates of Campaign Finance Regulation*, 3 **University of Pennsylvania Journal of Constitutional Law** 783 (2001)

59. *Intersystemic Redundancy and Federal Court Power: Proposing a Zero Tolerance Solution to the Duplicative Litigation Problem*, 75 **Notre Dame Law Review** 1347 (2000)

60. *The Right of Expressive Access in First Amendment Theory: Redistributive Values and the Democratic Dilemma*, 93 **Northwestern Law Review** 1083 (1999) (with Kirk Kaludis)

61. *Judicial Discipline, Judicial Independence, and the Constitution: A Textual and Structural Analysis*, 72 **Southern California Law Review** 673 (1999)

62. *Federal Power to Commandeer State Courts: Implications for the Theory of Judicial Federalism*, 32 **Indiana Law Review** 71 (1998) (with Stephen Sklaver)

63. *Of New Wine and Old Bottles: Personal Jurisdiction, the Internet and the Nature of Constitutional Evolution*, 38 **Jurimetrics Journal** 575 (1998)

64. *What's Good for General Motors: Corporate Speech and the Theory of Free Expression*, 66 **George Washington Law Review** 235 (1998) (with Howard Wasserman)

65. *Constitutionalizing Federalism: A Foundational Analysis*, 23 **Ohio Northern Law Review** 1237 (1997)

66. *First Amendment Theory and the Demise of the Commercial Speech Distinction: The Case of the Smoking Controversy*, 24 **Northern Kentucky Law Review** 553 (1997)

67. *Government Subsidies and Free Expression*, 80 **Minnesota Law Review** 543 (1996) (with Daryl Kessler)

68. *Tobacco Advertising and the First Amendment*, 81 **Iowa Law Review** 589 (1996)

69. *Procedural Due Process and Aggregation Devices in Mass Tort Litigation*, 63 **Defense Counsel Journal** 18 (1996)

70. *Interpretivism and the Judicial Role in a Constitutional Democracy: Seeking an Alternative to Originalism*, 19 **Harvard Journal of Law & Public Policy** 525 (1996)

71. *The Constitutionality of Illinois Tort Reform*, **Illinois Defense Counsel Quarterly** (series of four articles, 1995-96)

72. *Seventh Amendment Right to Jury Trial in Non-Article III Proceedings: A Study in Dysfunctional Constitutional Theory*, 4 **William and Mary Bill of Rights Law Journal** 407 (1995) (with Daniel La Fave)

73. *Federal Judicial Independence: Constitutional and Political Perspectives*, 46 **Mercer Law Review**, 697 (1995) (featured article in special symposium issue on judicial independence)

74. *Personal Jurisdiction and the Global Resolution of Mass Tort Litigation: Defining the Constitutional Boundaries*, 28 **Davis Law Review** 917 (1995) (with Eric Beste)

75. *Doing It With Mirrors: New York v. United States and Constitutional Limitations on Congressional Power to Require State Legislation*, 21 **Hastings Constitutional Law Quarterly** 593 (1994)

76. *Democratic Theory and the Legislative Process: Mourning the Death of Originalism in Statutory Interpretation*, 68 **Tulane Law Review** 803 (1994) (with Theodore Chung)

77. *Taking a Stroll Through Jurassic Park: Neutral Principles and the Originalist Minimalist Fallacy in Constitutional Interpretation*, 88 **Northwestern University Law Review** 165 (1993).

78. *Freedom of Thought as Freedom of Expression: Hate Crime Sentencing Enhancement and First Amendment Theory*, 11 **Criminal Justice Ethics** 29 (1992)

79. *Reassessing the Allocation of Judicial Business Between State and Federal Courts: Federal Jurisdiction and "The Martian Chronicles*," 78 **Virginia Law Review** 1769 (1992).

80. *"If Angels Were to Govern": The Need for Pragmatic Formalism in Separation of Powers Theory*, 41 **Duke Law Journal** 449 (1991) (with Elizabeth Cisar)

81. *Freedom of Expression and the Civic Republican Revival in Constitutional Theory: The Ominous Implications*, 79 **California Law Review** 267 (1991) (with Gary Lippman)

82. *Tradition, Fairness and Personal Jurisdiction: Due Process and Constitutional Theory After Burnham v. Superior Court*, 22 **Rutgers Law Journal** 675 (1991)

83. *Judge-Made Abstention and the Fashionable Art of "Democracy Bashing*," 40 **Case Western Law Review** 1023 (1990)

84. *Product Health Claims and the First Amendment: Scientific Expression and the Twilight Zone of Commercial Speech*, 43 **Vanderbilt Law Review** 1433 (1990)

85. *The Passive Virtues, the Counter-Majoritarian Principle and the "Judicial-Political" Model of Constitutional Adjudication*, 22 **Connecticut Law Review** 647 (1990)

86. *Text, Structure, and Common Sense in the Interpretation of Article III*, 138 **University of Pennsylvania Law Review** 1633 (1990)

87. *Killing the First Amendment with Kindness: A Troubled Reaction to Collins and Skover*, 68 **Texas Law Review** 1147 (1990)

88. *Separation of Powers, Judicial Authority, and the Scope of Article III: The Troubling Cases of Morrison and Mistretta*, 39 **DePaul Law Review** 299 (1990)

89. *Federal Common Law, Political Legitimacy, and the Interpretive Process: An Institutionalist Perspective*, 83 **Northwestern University Law Review** 761 (1989)

90. *Federal Common Law and American Political Theory: A Response to Professor Weinberg*, 83 **Northwestern University Law Review** 853 (1989)

91. *Judicial Parity, Litigant Choice and Democratic Theory: A Comment on Federal Jurisdiction and Constitutional Rights*, 36 **UCLA Law Review** 329 (1988)

92. *The Role of Pathology in First Amendment Theory: A Skeptical Examination*, 38 **Case Western Reserve Law Review** 618 (1988)

93. *The Dormant Commerce Clause and the Constitutional Balance of Federalism*, 1987 **Duke Law Journal** 569 (with Shane Nugent)

94. *Constitutional Federalism and Judicial Review: The Role of Textual Analysis*, 62 **N.Y.U. Law Review** 1 (1987) (with Karen Drizin)

95. *Adjudicatory Independence and the Values of Procedural Due Process*, 95 **Yale Law Journal** 455 (1986) (with Lawrence Marshall)

96. *Limits on Scientific Expression and the Scope of First Amendment Values: A Comment on Professor Kamenshine's Analysis*, 26 **William & Mary Law Review** 897 (1985).

97. *Supreme Court Review of State Court "Federal" Decisions: A Study in Interactive Federalism*, 19 **Georgia Law Review** 861 (1985)

98. *Judicial Review and the Political Question*, 79 **Northwestern University Law Review** 1031 (1985)

99. *Abstention, Separation of Powers and the Limits of the Judicial Function*, 94 **Yale Law Journal** 71 (1984)

100. *The Proper Role of the Prior Restraint Doctrine in First Amendment Theory*, 70 **Virginia Law Review** 53 (1984)

101. *The Warren Court, The Burger Court and the First Amendment Overbreadth Doctrine*, 78 **Northwestern University Law Review** 1031 (1983).

102. *Legislative Courts, Administrative Agencies and the Northern Pipeline Decision*, 1983 **Duke Law Journal** 197.

103. *Advocacy of Unlawful Conduct and the First Amendment: In Defense of Clear and Present Danger*, 70 **California Law Review** 1159 (1982)

104. *Constitutional Limitations on Congressional Power to Control Federal Jurisdiction: A Reaction to Professor Sager*, 77 **Northwestern University Law Review** 143 (1982)

105. *Congressional Power to Regulate Supreme Court Appellate Jurisdiction Under the Exceptions Clause: An Internal and External Examination*, 27 **Villanova Law Review** 900 (1982)

106. *The Value of Free Speech*, 130 **University of Pennsylvania Law Review** 591 (1982)

107. *Self-Realization, Democracy, and Freedom of Expression: A Reply to Professor Baker*, 130 **University of Pennsylvania Law Review** 678 (1982)

108. *The Content Distinction in First Amendment Analysis*, 34 **Stanford Law Review** 113 (1981)

109. *Due Process, Federalism and Personal Jurisdiction: A Theoretical Evaluation*, 75 **Northwestern University Law Review** 101 (1981)

110. *Continuing the Erie Debate: A Response to Westen and Lehman*, 78 **Michigan Law Review** 958 (1980)

111. *Revitalizing Civil Rights Removal Jurisdiction*, 64 **Minnesota Law Review** 523 (1980)

112. *The Doctrine of Younger v. Harris: Deference in Search of a Rationale*, 63 **Cornell Law Review** 463 (1978)

113. *Erie and the Rules of Decision Act: In Search of the Appropriate Dilemma*, 19 **Harvard Law Review** 356 (1977) (with Carter Phillips)

114. *The Anti-Injunction Statute Reconsidered*, 44 **University of Chicago Law Review** 717 (1977)

115. *Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications*, 55 **Texas Law Review** 759 (1977)

116. *Adjudication of Federal Causes of Action in State Court*, 75 **Michigan Law Review** 311 (1976) (with John Muench)

117. *Seventh Amendment Right to Jury Trial: A Study in the Irrationality of Rational Decision Making*, 70 **Northwestern University Law Review** 486 (1975)

118. *Congressional Power to Control the Jurisdiction of Lower Federal Courts: A Critical Review and a New Synthesis*, 124 **University of Pennsylvania Law Review** 45 (1975) (with Curtis Woods)

119. *The Pragmatic Approach to Appealability in the Federal Courts*, 75 **Columbia Law Review** 89 (1975)

120. *Preferential Law School Admissions and the Equal Protection Clause: An Analysis of the Competing Arguments*, 22 **UCLA Law Review** 343 (1974)

121. *Reflections on Federal Regulation of Corporate Political Activity*, 21 **Journal of Public Law** 339 (1972)

122. *Campaign Spending Laws and the First Amendment*, 46 **N.Y.U. Law Review** 900 (1971)

123. *The First Amendment in the Marketplace: Commercial Speech and the Values of Free Expression*, 39 **George Washington Law Review** 429 (1971)

## Book Reviews

1. *Constitutional Adjudication, Free Expression and the Fashionable Art of Corporation Bashing*, 91 **Texas Law Review** 1447 (2013) (Essay Review of **Brandishing the First Amendment** by Tamara Piety) (with Peter Siegal)

2. *Political Consensus, Constitutional Formulae, and the Rationale for Judicial Review* 88 **Michigan Law Review** 1340 (1990) (essay review of **Constitutional Cultures: The Mentality and Consequences of Judicial Review** by Robert Nagel)

3. *The Federal Courts, Judicial Restraint, and the Importance of Analyzing Legal Doctrine,* 85 **Columbia Law Review** 1378 (1985) (essay review of **The Federal Courts: Crisis and Reform** by Richard Posner)

4. *Judicial Review and Constitutional Ethics*, 82 **Michigan Law Review** 665 (1984) (essay review of **Constitutional Fate** by Phillip Bobbitt)

5. **Environmental Litigation**, by James B. MacDonald & John E. Conway, 48 **N.Y.U. Law Review** 577 (1973)

6. **Lawyers Before the Warren Court: Civil Liberties and Civil Rights 1957-66**, by Jonathan D. Casper, and **The Supreme Court Under Earl Warren**, edited by Leonard W. Levy, 18 **Villanova Law Review** 978 (1973)

## Monographs

1. Recommendations on Major Issues Affecting Complex Litigation (American College of Trial Lawyers, 1981) (Reporter)

2. The Constitutionality of Medical Malpractice Reform Legislation: A Supplemental Report (American Hospital Association, 1978

## New York Times Op-Eds

1. *Trump is Not Above the Courts*, NY Times, March 16, 2017

2. *A Pardon for Arpaio Would Put Trump in Uncharted Territory*, NY Times, August 24, 2017

3. *The President's Pardon Power May be Weaker Than It Seems*, NY Times, December 5, 2019

## Symposia and Colloquia

1. University of North Carolina Law School, conference on the First Amendment and Political Lying (speaker) (March 2022)

2. Emory University Law School, conference on diversity jurisdiction (speaker) (April, 2021)

3. Loyola University Chicago Law School, Conference on Separation of Powers (speaker on non-delegation doctrine) (April 2019)

4. Electronic Discovery Institute, Conference on Electronic Discovery (speaker on discovery cost allocation) (October 2018)

5. Conference on Marketing and Advertising of Drugs and the FDA, Arizona State Law School (speaker) (January 2016).

6. Debate with Professor Jack Balkin on Commercial Speech, Yale Law School (October 2015)

7. Defense Research Institute, Conference on Class Actions, Washington D.C. (speaker) (August 2014)

8. Emory Law Journal, Thrower Symposium on Class Actions (speaker) (April 2014)

9. William & Mary Law Review Symposium on First Amendment (speaker) (April 2014)

10. White House Conference on Childhood Obesity and Food Advertising (invited participant) (September 2013)

11. Kellogg School of Management/Aspen Institute Business and Society Program, conference, "Rethinking 'Shareholder Value' and the Purpose of the Corporation" (speaker on corporate free speech) (March 2013)

12. University of San Diego School of Law, Conference on Originalism, speaker on originalism and eminent domain, (February 2013)

13. Stanford Law School, Conference on Complex Litigation, speaker on third- party financing of litigation, (February 2013)

14. Notre Dame Law School, speaker on corporate speech and the First Amendment (October 2012)

15. Food and Drug Law Institute, debate with Michael Carvin (Jones Day) about constitutionality of the Affordable Care Act, Washington, D.C. (May 2012)

16. Alexander Meiklejohn Lecture, Brown University (April 2012)

17. University of Florida Law Review, Dunwody Distinguished Lecture in Law (March 2012)

18. Lawyers for Civil Justice Annual Meeting, speaker on the problem of discovery cost allocation, Washington, D.C. (May 2011)

19. Defense Research Institute, webinar on the future of class actions after the Supreme Court's Wal-Mart decision (with Carter Phillips & Mark Fahleson), Chicago, IL (April 2011)

20. Boston University School of Law, conference of the American Journal of law and Medicine on commercial speech and health, presenter of paper on the FDA's prohibition of off-label prescription advertising and the First Amendment, Boston, MA (February 2011)

21. New York University School of Law, American Constitution Society, conference entitled "Federal Courts, Inc.?" (concerning success of businesses in Supreme Court and lower federal courts) (February 2011)

22. Federalist Society, panel on proposed changes in Federal Rules of Civil Procedure, speaker on pleading and discovery rules, National Press Club, Washington, D.C. (January 2011)

23. Chicago Humanities Festival, panel on obscenity and the First Amendment (speaker on why obscenity should be found to be protected speech); Chicago, IL. (December 2010)

24. Federal Rules Advisory Committee, luncheon speaker on proposed revisions to pleading and discovery rules, Washington D.C. (December 2010)

25. George Mason Law School Law and Economics Center, conference on Federal Rules of Civil Procedure revisions (December 2010)

26. University of California/Irvine, faculty workshop on paper on habeas corpus and due process (September 2010)

27. University of Chicago Law School, American Constitution Society, speaker on the Citizens United decision, corporations, and the First Amendment (March 2010)

28. The Civil Justice Reform Group, General Counsel meeting, Boca Raton, FL (speaker on elected state judiciaries and the Constitution) (January 2010)

29. Federal Trade Commission, Bureau of Consumer Protection, conference on fast food and childhood obesity, Washington, D.C. (speaker on commercial speech and childhood obesity) (December 2009)

30. University Alabama Law School, conference on speech and silence in American law (presenter of paper on political fraud and anonymity) (March 2009)

31. Searle Center, Northwestern University, Roundtable, Expansion of Liability Under Public Nuisance (Paper presenter: "Contingency Fee Lawyers, Government Litigation and the Frontiers of Public Power: A Constitutional and Political Analysis") (April 2008)

32. National Association of Manufacturers, Conference on the Future of Pleading in the Federal Courts (speaker on the implications of the Supreme Court's decision in Bell Atlantic v. Twombly) (October 2007)

33. United States District Court of Puerto Rico Bar Association; lecture on political patronage and the First Amendment (May 2007)

34. Seattle University Law School Conference on Campaign Finance Reform and the First Amendment (speaker) (Spring 2007)

35. Moderator/planner/speaker for the American Bar Association's national conference on class actions, held in Washington, D.C. (November 2005)

36. Robert S. Marx Distinguished Lecturer, University of Cincinnati School of Law (lecture on unlawful advocacy, the McCarthy era, and the First Amendment) (March 2004)

37. Notre Dame Law School, faculty workshop on punitive damages and constitutional theory (November 2003)

38. American Bar Association, Conference on Class Actions, Boston, MA (speaker on class actions and democratic theory) (October 2003)

39. Association of American Law Schools, National Conference on Civil Procedure, New York, NY (speaker on Internet jurisdiction) (June 2003)

40. University of Chicago Legal Forum, Conference on Class Actions (speaker on class actions and democratic theory) (November 2003)

41. DePaul University, Clifford Symposium on Class Actions (speaker on class actions and due process) (October 2002)

42. Federal Rules Advisory Committee Conference on Proposed Class Action Amendments, University of Chicago (Panelist) (October 2001)

43. Cohasset Associates, Conference on Management of Electronic Discovery, Chicago, IL (September 2001)

44. University of Kansas, Center for Media Law Conference, Kansas City, MO (speaker on children's First Amendment rights) (May 2001)

45. DePaul University, Clifford Symposium on the Implications of Tobacco Litigation (speaker on the adversary system and tobacco litigation) (April 2001)

46. Workshop, Emory Law School (March 2001)

47. University of Minnesota Law School, Law Review Symposium on Right of NonAssociation (February 2001)

48. National Investor Relations Institute Convention, panelist on Internet privacy and the First Amendment, Chicago, IL, (April 2000)

49. Workshop, Rutgers-Camden Law School (Sept. 1999)

50. Federal Judicial Center, Conference for Appellate Judges, Stanford, CA (speaker on duplicative litigation) (April 1999)

51. University of Southern California Law School, Conference on Judicial Independence and Accountability (speaker) (November 1998)

52. Northwestern University School of Law, Conference on Free Speech and Economic Power (speaker) (October 1998)

53. University of San Diego Law School, Faculty Workshop (September 1998)

54. University of Indiana-Indianapolis School of Law, Institute on State Government, Conference on Federalism, (speaker on judicial federalism) (April 1998)

55. Randall-Park Colloquium Speaker, University of Kentucky College of Law (lecture on corporate speech and the First Amendment) (March 1998)

56. Conference on Non-Delegation Doctrine, Cardozo Law School (speaker) (March 1998)

57. Conference on Law and the Internet, Arizona State University School of Law, Tempe, AZ (speaker on jurisdiction and the Internet) (November 1997)

58. Midwest Federal Judges' Conference, sponsored by the American Judicature Society Oak Brook, IL (Moderator/questioner, panel on judicial independence) (October 1997)

59. Conference on "Tobacco: The Growing Controversy," Northern Kentucky Law School (speaker on commercial speech protection and the smoking controversy) (April 1997)

60. Conference on Federalism for the Twenty-First Century, Ohio Northern Law School, Columbus, Ohio (speaker on constitutional federalism) (April 1997)

61. Federalist Society Conference on Federalism Washington, D.C (speaker on constitutional federalism) (November 1996)

62. Illinois Defense Counsel Spring Seminar (speaker on constitutionality of Illinois tort reform)

63. Federal Insurance Association of America Convention, Tucson, AZ (speaker on constitutionality of tort reform) (March 1997)

64. Conference on The Regulatory Future of Functional Foods, sponsored by the University of Illinois and the Council for Responsible Nutrition, Chicago, IL (speaker on First Amendment protection for health claims) (October 1995)

65. American Bar Association Convention, Section on Local Government Law, Chicago, IL (speaker on free speech in the public forum) (August 1995)

66. International Association of Defense Counsel Convention, San Francisco, CA (speaker on procedural due process in mass tort litigation) (August 1995)

67. NYU Conference on Complex Litigation (speaker on choice-of-law in mass tort litigation) (April 1995)

68. Conference on "Jurisdiction and Choice of Law in the Twenty-First Century," New England Law School, Boston, MA (speaker on personal jurisdiction) (October 1994)

69. Fourth Circuit Judicial Conference, Greenbriar, W. VA (speaker on judicial independence) (October 1994)

70. Meeting of the Judicial Branch Committee of the United States Judicial Conference, Santa Fe, N.M., June 1994 (speaker on judicial independence) (July 1994)

71. New York University School of Law Hays Civil Liberties Conference on "Speech and Equality," (Panelist) (October 1993)

72. Luncheon Speaker, International Association of Defense Counsel Conference, Chicago, IL (speaker on First Amendment protection of commercial speech) (October 1993)

73. Outdoor Advertising Association Workshop for Attorneys, Washington, D.C. (speaker on First Amendment protection of commercial speech) (June 1993)

74. Outdoor Advertising Association Convention, Orlando, FL (speaker on First Amendment protection of commercial speech) (April 1993)

75. Third Circuit Court of Appeals Judicial Conference, Baltimore, MD (speaker on constitutional federalism) (March 1993)

76. Federalist Society Conference, "The Congress: Representation, Accountability, and the Rule of Law," Washington, D.C. (June 1992)

77. National Conference on State-Federal Judicial Relations, co-sponsored by Federal Judicial Center & National Center for State Courts, Orlando, FL (featured academic speaker) (April 1992)

78. Tenth Circuit Court of Appeals Judicial Conference, Sidona, AZ (speaker on free speech and privacy) (July 1991)

79. Faculty Workshop, Vanderbilt Law School, Nashville, TN, (March 1991)

80. Judge, Moot Court Finals, Vanderbilt Law School National Tournament, Nashville, TN, (March 1991)

81. Lorene Sails Higgins Distinguished Visitor, Lewis & Clark Law School,

Portland, OR, (Feb.-March, 1991)

82. Rutgers University Symposium on Personal Jurisdiction, Camden, NJ (speaker on personal jurisdiction and constitutional theory) (November 1990)

83. Council for Responsible Nutrition Convention, Tucson, AZ, September 1990 (speaker on health claims and free speech)

84. American Political Science Association Convention, Panel on Constitutional Prerogatives, San Francisco, CA (speaker on "The Role of the Federal Courts in American Political Theory") (August 1990)

85. Chicago Bar Association, Panel on Notice Pleading in Federal Court (April 1990)

86. Symposium "Food Health Messages and Claims: Scientific Regulatory, and Legal Issues," sponsored by Tufts University, Boston, MA (speaker on product health claims and free speech) (March 1990)

87. Association of American Law Schools. Convention, Federal Jurisdiction section, Panel on Federal Jurisdiction and Separation of Powers, San Francisco, CA (speaker) (January 1990)

88. University of Connecticut Law School Symposium on the Federal Courts (speaker) (November 1989)

89. Northwestern University Law and Social Sciences Program Conference on Supreme Court Appointments (commentator) (March 1989)

90. Ninth Circuit Court of Appeals Workshop, Monterey, CA (speaker on separation of powers) (February 1989)

91. Thomas P. O'Neill Conference on Courts and Judges, Boston College Department of Political Science (commentator) (October 1988)

92. Bicentennial Conference of Federal Appellate Judges, Washington, D.C. (speaker on "Federal Jurisdiction in the Twenty-First Century") (October 1988)

93. University of Michigan Law and Social Theory Workshop on dormant commerce clause (November 1987)

94. Symposium on "The Role of the Federal Courts in the National Judicial System," N.Y.U. Law School (panelist) (November 1987)

95. A.A.L.S. Constitutional Law Workshop, Washington D.C., October 1987 (Speaker at panel on "The Nature of Doctrinal Structure in Free Speech Cases") (October 1987)

96. Interdisciplinary Conference on Changing Attitudes Towards Federalism at the Constitutional Convention, held at the New York Public Library, sponsored by the Liberty Fund (September 1987)

97. Northwestern University Alumni College on the Bicentennial of the Constitution (Faculty Member) (July 1987)

98. Federal Judicial Center, Symposium for Federal Judges on "Constitutional Adjudication and the Judicial Process in the Federal Courts," University of California Law School at 89.

99. Berkeley (Lecturer on "The Eleventh Amendment in the Supreme Court: A Study in the Nature of Principled Decisionmaking") (June 1987)

100. Faculty Workshop, University of Colorado School of Law on constitutional federalism (November 1986)

101. Chicago Business Press Association, Panel on Journalists' Ethics, Chicago, IL (Moderator) (April 1986)

102. Midwest Constitutional Law Professors' Conference, Panel on Tolerance and Free Speech, Northwestern University School of Law, Chicago, IL (October 1985)

103. Journalism Professors' Convention, Panel on Prior Restraint, Memphis State University, Memphis, Tenn (Principal Speaker) (August 1985)

104. College of William and Mary, Marshall-Wythe School of Law, Institute of Bill of Rights Symposium, "National Security and the First Amendment"(Commentator) (March 1985)

105. Georgia Law Review Symposium on Federal Jurisdiction, Summer 1985 (Contributor) (Summer 1985)

106. University of Iowa College of Law, Faculty Workshop on political question doctrine (February 1985)

107. Northwestern University Alumni College on Individual Rights (Faculty Member) (July 1984)

108. Federal Judicial Center, Institute for Federal Judges, Brigham Young University Law School, Provo, UT (Lecturer on Federal Jurisdiction) (July 1983)

109. Northwestern University School of Law Symposium, "Freedom of Expression: Theoretical Perspectives," (speaker) (March 1983)

110. Villanova Law School Symposium, "Congressional Limits on Federal Court Jurisdiction" (speaker on congressional power to control Supreme Court jurisdiction) (March 1982)

111. American Enterprise Institute, Conference on Judicial Review, October, Washington D.C., 1981 (Panelist)

112. University of Miami Economics Institute, Conference on Commercial Speech and the First Amendment, April (panelist) (April 1976)

113. Better Government Association, Conference on Campaign Finance Regulation, Chicago, IL (panelist) (May 1974)