# Exhibit “J”

**NFL CONCUSSION SETTLEMENT**

*IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*
No. 2:12-md-02323 (E.D. Pa.)

# RULES GOVERNING APPEALS OF CLAIM DETERMINATIONS

2/24/25

## TABLE OF CONTENTS


Page

**TITLE I: GENERAL** ... 1

Rule 1. The Purpose of These Rules ... 1
Rule 2. Adoption of These Rules ... 1
Rule 3. Definitions Used in These Rules ... 1
Rule 4. Claims Appeals Will Be Handled by the Special Masters ... 3
Rule 5. How Things are Submitted and Served Under These Rules ... 3
Rule 6. How to Count Time Periods and the Date Something is Submitted in an Appeal and Extensions of Time ... 4

**TITLE II: APPEALS PROCESS** ... 5

Rule 7. Who May Appeal and What May Be Appealed on Monetary Awards ... 5
Rule 8. Who May Appeal and What May Be Appealed on Derivative Claimant Awards ... 5
Rule 9. No Other Appeals ... 6
Rule 10. The Deadline to Note an Appeal ... 6
Rule 11. How an Appellant Notes an Appeal ... 6
Rule 12. Appeal Fee from Settlement Class Members ... 6
Rule 13. Filed Appeal Alert from the Claims Administrator ... 7
Rule 14. Response of Appellee ... 7
Rule 15. Statement of Class Counsel ... 7
Rule 16. Reply to Statement of Class Counsel ... 7
Rule 17. Summary of Review by the Claims Administrator ... 7
Rule 18. Additional Material Required by the Special Master ... 7
Rule 19. When There are Multiple Appeals on the Same Claim ... 7
Rule 20. No Discovery ... 8
Rule 21. Oral Argument ... 8
Rule 22. Assistance to the Special Master on Medical Issues ... 8
Rule 23. The Record and Evidence Considered on Appeal ... 8
Rule 24. Remand to the Claims Administrator ... 9
Rule 25. No Cross-Appeals ... 9
Rule 26. Standard of Review on Appeal ... 9
Rule 27. Multiple Claims Presenting Common Issues and Preclusive Effect of Decisions ... 9
Rule 28. Decision by the Special Master ... 9
Rule 29. Notice of Special Master Decision ... 10
Rule 30. Withdrawal of Appeal ... 10
Rule 31. Finality of the Special Master's Decision ... 10
Rule 32. Objections to a Conclusion of Law in a Decision by the Special Master ... 10
Rule 33. Publishing the Decisions by the Special Master and Court on Appeals ... 11
Rule 34. Claim in Audit ... 11

# RULES GOVERNING APPEALS OF CLAIM DETERMINATIONS

## TITLE I: GENERAL

**Rule 1. The Purpose of These Rules.** These Rules govern appeals under Section 9.5 of the Settlement Agreement by a Settlement Class Member, Class Counsel or the NFL Parties of the Claims Administrator's determinations on Monetary Awards and Derivative Claimant Awards under the Settlement Agreement.

**Rule 2. Adoption of These Rules.** The Special Masters have adopted these Rules in the exercise of their duties pursuant their appointment by the Court in its July 13, 2016 Order (Document 6871). The Special Masters may amend these Rules at any time *sua sponte* or after request by Class Counsel, the NFL Parties or the Claims Administrator and such input from Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3. Definitions Used in These Rules.** All capitalized terms used in these Rules will have the meanings given to them in the Settlement Agreement. In addition:

(a) "Appeal" means an appeal from an Appealable Notice issued by the Claims Administrator on a Claim. These Rules refer to making or bringing an Appeal as "noting" an Appeal.

(b) "Appeal Fee" is the $1,000 fee a Settlement Class Member must pay to the Claims Administrator to note an Appeal, as described in Rule 12.

(c) "Appeals Form" is the form used to note an Appeal, as described in Rule 11.

(d) "Appealable Notice" means a notice issued by the Claims Administrator announcing its final determination on a Claim, including an award on an eligible Claim (Notice of Monetary Award Claim Determination or Notice of Derivative Claimant Award Determination) or a denial on an ineligible Claim (Notice of Denial of Monetary Award Claim or Notice of Denial of Derivative Claim).

(e) "Appellant" means the party noting an Appeal from an Appealable Notice on a Claim. This can be a Settlement Class Member, Class Counsel or the NFL Parties.

(f) "Appellee" means a Settlement Class Member or the NFL Parties when responding to an Appeal and not acting as the Appellant noting the Appeal. Class Counsel may be an Appellant on an Appeal and is always considered to be a Party to an Appeal, but is not treated in the Settlement Agreement or these Rules as an Appellee.

(g) "Audit" means the processes of the Claims Administrator for the review of potentially fraudulent Claims under Section 10.3 or Section 10.4 of the Settlement Agreement.

(h) "Claim" means a Claim Package (or portion of a Claim Package) submitted to the Claims Administrator seeking a Monetary Award or a Supplemental Monetary Award, or a Derivative Claim Package (or portion of a Derivative Claim Package) submitted to the Claims Administrator seeking a Derivative Claimant Award.

(i) "Court Portal" means the online system created by the Claims Administrator for the exchange of materials and information between the Court and the Claims Administrator relating to the Settlement Program.

(j) "Filed Appeal Alert" is the notice from the Claims Administrator to alert parties that there has been an Appeal, as described in Rule 13.

(k) "Objection to Special Master Decision" means an objection to the conclusions of law made by the Special Master in a decision on an Appeal, as described in Rule 32.

(l) "Party to the Appeal" and "Parties to the Appeal" mean any one of or all of the Settlement Class Member whose Claim is involved in the Appeal, Class Counsel and the NFL Parties.

(m) "Portal" means the online system created by the Claims Administrator for the exchange of materials and information between Settlement Class Members and the Claims Administrator, or among Class Counsel, the NFL Parties and the Claims Administrator, in the Settlement Program.

(n) "Record on Appeal" means what may be considered by the Special Master when deciding an Appeal, as described in Rule 23(a).

(o) "Reply to Statement of Class Counsel" means the reply submitted on an Appeal in reply to a Statement of Class Counsel, as described in Rule 16.

(p) "Response of Appellee" means what an Appellee submits to set out its position on an Appeal, as described in Rule 14.

(q) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).

(r) "Settlement Class Member" means a Retired NFL Football Player (or the Representative Claimant of a deceased or incompetent Retired NFL Football Player), or a Derivative Claimant, which also is how this term is defined in the Settlement Agreement.

(s) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(t) "Special Master" means any one of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

(u) "Special Master Portal" means the online system created by the Claims Administrator for the exchange of materials and information between a Special Master and the Claims Administrator relating to the Settlement Program.

(v) "Statement of Class Counsel" means the statement submitted by Class Counsel under Rule 15.

(w) "Summary of Review" is what the Claims Administrator will submit in an Appeal, if directed to do so by the Special Master, to explain what it did on the Claim being appealed, as described in Rule 17.

**Rule 4. Claims Appeals Will Be Handled by the Special Masters.** The Court has referred to the Special Masters all Appeals on Claims, to be determined in accordance with these Rules.

**Rule 5. How Things are Submitted and Served Under These Rules.**

(a) General Rule: All submissions, notices and decisions under these Rules will be made and served through a Portal or, for anyone not using a Portal, through hard copy by mail or delivery. If a party is represented by a lawyer, service will be made on that lawyer only.

(b) Party Using a Portal: When submitting any item under these Rules, anyone who uses a Portal will upload the item to the Portal, which will cause it to be served on all other Parties to the Appeal who use a Portal, and the uploader will mail or deliver the item to any other Party to the Appeal who does not use a Portal. At the beginning of an Appeal, the Claims Administrator will identify to the Parties to the Appeal anyone involved who does not use a Portal.

(c) Party Not Using a Portal: When submitting any item under these Rules, anyone who does not use a Portal will mail or deliver the item to the Claims Administrator, which will upload the item to the Portals of other Parties to the Appeal, and the uploader will mail or deliver it to any other Party to the Appeal who does not use a Portal. To safeguard their confidentiality, materials may not be submitted by email.

(d) Special Master: The Special Master will access all Appeals and enter orders and decisions on them using the Special Master Portal. No party may send any material directly to the Special Master. Instead, all materials must be submitted to the Claims Administrator.

(e) No Filings on the Court's Docket: The Court will access all Objections to Special Master Decisions and enter rulings on them using the Court Portal. Proceedings under these Rules will not be filed on the Court's docket. No submissions under

these Rules may be filed on the Court's docket.

(f) References in these Rules to a page limit on a submission mean double-spaced pages without counting exhibits, and such pages must use 1-inch margins for the top, bottom, left and right sides of the page. Single-spaced submissions cannot exceed one half the number of permitted double-spaced pages. The font size must be no smaller that 12-point type. While handwritten submissions are discouraged, the page limit means that number of handwritten pages.

**Rule 6. How to Count Time Periods and the Date Something is Submitted in an Appeal and Extensions of Time.**

(a) How to Count Time Periods: Any time period set by these Rules will be computed as follows, which is based on Rule 6 of the Federal Rules of Civil Procedure:

(1) Do not count the day that starts the running of any period of time. The first day of the period is the day after this trigger day.
(2) Count every day, including Saturdays, Sundays and legal holidays.
(3) Count the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.
(4) Legal holidays are New Year's Day, Martin Luther King, Jr.'s Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other day declared a holiday by the President of the United States or the United States Congress.
(5) An additional three days will be added to any time period specified by these Rules for an action or submission where the acting or responding party was served by mail with the Notice or submission requiring action or response rather than by service on a Portal or delivery.

(b) How to Mark the Date Something is Submitted: A document or any material submitted or served under these Rules will be considered submitted on these dates:

(1) Online: The date uploaded as of the local time of the sender.
(2) By Mail: The postmark date showing the date it was mailed. If there is no postmark date on the item or the date printed is illegible, the date of receipt by the party to whom it was mailed controls.
(3) Overnight Delivery: The date the sender placed the item in the hands of the overnight carrier.
(4) Hand Delivery by Courier: The date the item is received by the party to whom it is delivered.

(c) Extensions of Time: Any deadline imposed by these Rules may be extended (1) by the Special Master in his or her discretion or (2) by the agreement of the Parties to the Appeal, if approved by the Special Master. Any party seeking an extension of time from the Special Master must:

(1) Make the extension request before the deadline for any appeal expires. However, requests made after the deadline may be considered for extenuating circumstances that may merit *post-facto* extensions at the discretion of the Claims Administrator, and the Parties will have an opportunity to provide their positions on whether the specific factual circumstances merit such an extension;

(2) Notify the other Parties to the Appeal of the extension requested and determine if they consent or object to the request;

(3) Make the request to the Claims Administrator, stating: (a) the deadline for which an extension is requested; (b) the duration of the extension requested; (c) the deadline date before any extension and the extended deadline date requested; (d) that the requesting party has conferred with the other Parties to the Appeal and whether they consent or object to the request; and (e) the grounds for the request.

If an extension is granted, further extensions to the same party for the same deadline and/or on the same issue are not likely to be granted. The fact that another party has been granted an extension is not alone sufficient grounds for an extension for other parties.

## TITLE II: APPEAL PROCESS

**Rule 7. Who May Appeal and What May Be Appealed on Monetary Awards.** Based on a good faith belief that the determination of the Claims Administrator was incorrect, a Retired NFL Football Player (or Representative Claimant), Class Counsel or the NFL Parties may appeal determinations by the Claims Administrator as to: (1) whether the Retired NFL Football Player (or Representative Claimant) is entitled to a Monetary Award; (2) how the Claims Administrator calculated the Monetary Award; and (3) whether the Claim Package is valid without medical records under Section 8.2(ii) of the Settlement Agreement. No other Appeals may be noted on Monetary Awards. As provided in Section 9.6(b) of the Settlement Agreement, to the extent that Class Counsel believe that the NFL Parties are submitting vexatious, frivolous or bad faith Appeals, Class Counsel may petition the Court for appropriate relief. In addition, the Special Master has discretion to direct appropriate relief as to the conduct of any Party to the Appeal or to multiple Appeals concerning Monetary Awards that the Special Master determines to be vexatious, frivolous or in bad faith.

**Rule 8. Who May Appeal and What May Be Appealed on Derivative Claimant Awards.** Based on a good faith belief that the determination of the Claims Administrator was incorrect, Derivative Claimant Awards may be appealed as follows:

(a) A Derivative Claimant may appeal determinations by the Claims Administrator as to: (1) whether that Derivative Claimant is entitled to a Derivative Claimant Award; and (2) how a Derivative Claimant Award should be divided up when such Award has

been allocated to more than one Derivative Claimant.

(b) Class Counsel and the NFL Parties may appeal determinations by the Claims Administrator as to: (1) whether a Derivative Claimant is entitled to a Derivative Claimant Award; and (2) how a Derivative Claimant Award should be divided up when such Award has been allocated to more than one Derivative Claimant.

(c) No other Appeals may be noted as to Derivative Claimant Awards. A Retired NFL Football Player (or the Representative Claimant of a Retired NFL Football Player) cannot appeal Derivative Claimant Awards.

(d) The Special Master has discretion to direct appropriate relief as to the conduct of any Party to the Appeal or to multiple Appeals concerning Derivative Claimant Awards that the Special Master determines to be vexatious, frivolous or in bad faith.

**Rule 9. No Other Appeals.** Unless allowed in other Rules approved by the Special Masters or in orders by the Court, no other determinations by the Claims Administrator are appealable to the Special Master, including those regarding Liens of any kind.

**Rule 10. The Deadline to Note an Appeal.** Any party wishing to appeal an Appealable Notice must note an Appeal within 30 days after the date of the Appealable Notice.

**Rule 11. How an Appellant Notes an Appeal.**

(a) To note an Appeal, an Appellant must submit to the Claims Administrator an Appeals Form on a Portal or by mail or delivery. The Appeals Form is available on each Portal and is included with an Appealable Notice sent by mail to a Settlement Class Member.

(b) The Appellant must indicate in the Appeals Form why the Appellant feels the Appealable Notice was wrong, which will be the issue(s) being appealed that the Appellant wishes the Special Master to decide on the Appeal, provided that they are appealable issues under Rule 7 or Rule 8.

(c) The Appellant may submit with the Appeals Form a statement of up to 10 pages setting forth the arguments of the Appellant on the issue(s) appealed and citations to any evidence before the Claims Administrator the Appellant contends support the Appeal. This statement will become part of the Appellant's Appeals Form and must conform with Rule 5(f) concerning page limits, margin size and font size. While exhibits to this submission are permitted, the Appellant may not refer to or offer any evidence that was not before the Claims Administrator, subject to Rule 23, which covers new evidence.

**Rule 12. Appeal Fee from Settlement Class Members.** Pursuant to Section 9.6 of the Settlement Agreement:

(a) A Settlement Class Member noting an Appeal must pay an Appeal Fee of $1,000 to the Claims Administrator, using the method made available by the Claims Administrator, before the Appeal will proceed. The Appeal Fee will be refunded if the Appeal is successful. If the Appeal is unsuccessful, the Appeal Fee will be paid to the Settlement Trust for transfer by the Trustee into the Monetary Award Fund.

(b) A Settlement Class Member may make a hardship request to the Claims Administrator and ask that the Appeal Fee be waived in its entirety for good cause. The Claims Administrator will require that the Settlement Class Member provide such financial information as may be necessary to decide the request to waive the Appeal Fee, which request will be approved or denied in the Claims Administrator's sole discretion.

**Rule 13. Filed Appeal Alert from the Claims Administrator.** If the Claims Administrator receives a timely Appeals Form and on an Appeal by a Settlement Class Member has received the Appeal Fee, the Claims Administrator will provide a Filed Appeal Alert to the other Parties to the Appeal through a Portal or by mail to a Party to the Appeal who does not use a Portal. The Filed Appeal Alert will include the Appeals Form (and any statement and exhibits submitted with the Appeals Form) of the Appellant.

**Rule 14. Response of Appellee.** Each Appellee may submit a Response of Appellee of up to 10 pages setting out its position and arguments on the Appeal, within 30 days after the date of the Filed Appeal Alert. In the Response of Appellee, the Appellee may raise issues that were not set forth in the Appealable Notice as supporting bases for the outcome of the Appealable Notice, without the need to file a separate Appeal, even if those issues were not raised by the Appellant in its Appeal. In such situations, the Appellant has the right to submit a Reply of Appellant in accordance with Rule 14(a). The Special Master will apply the standard of review as set forth in Rule 26 when deciding any issues raised by the Appellee in its Response of Appellee that were not set forth in the Appealable Notice as a supporting basis for the outcome of the Appealable Notice and were not raised by Appellant in the Appeal.

The lack of a Response of Appellee will not be considered an admission regarding the merits of the Appeal. While exhibits to this submission are permitted, an Appellee may not refer to or offer any evidence that was not before the Claims Administrator, subject to Rule 23, which covers new evidence.

**Rule 14(a). Reply of Appellant.** In the event a Response of Appellee raises an issue that was not set forth in the Appealable Notice as a supporting basis for the outcome of the Appealable Notice, and that Appellant did not raise in its appeal, the Appellant shall be advised that he has the right to submit a Reply of Appellant of up to 10 pages, within 30 days, setting out its position solely with respect to that issue.

**Rule 15. Statement of Class Counsel.** In an Appeal where Class Counsel is not the Appellant, within 15 days after the later of the date of the Filed Appeal Alert, the date of the Response of Appellee, or the date of the Reply of Appellant, Class Counsel may submit a Statement of Class Counsel up to 10 pages in support of or in opposition to the Appeal. The lack of a Statement of Class Counsel will not be considered an admission regarding the merits of the

Appeal. While exhibits to this submission are permitted, Class Counsel may not refer to or offer any evidence that was not before the Claims Administrator, subject to Rule 23, which covers new evidence.

**Rule 16. Reply to Statement of Class Counsel.** The other Parties to the Appeal may submit a Reply to Statement of Class Counsel of up to four pages, within 15 days after the date of the Statement of Class Counsel. While exhibits to this submission are permitted, no party may refer to or offer any evidence that was not before the Claims Administrator, subject to Rule 23, which covers new evidence.

**Rule 17. Summary of Review by the Claims Administrator.** The Special Master may at any time direct the Claims Administrator to submit a Summary of Review to explain what occurred in the processing of the Claim on Appeal.

**Rule 18. Additional Material Required by the Special Master.** The Special Master may at any time direct any Party to the Appeal to submit additional memoranda or material if the Special Master determines that such additional submissions would aid in the consideration of the Appeal. No other memoranda or materials may be submitted unless permitted or directed by the Special Master.

**Rule 19. When There are Multiple Appeals on the Same Claim.** If a Settlement Class Member, Class Counsel and/or the NFL Parties timely note an Appeal on the same Claim, the Claims Administrator will consolidate the Appeals into one Appeal for the Special Master to determine all issues raised on the Appeals. In a consolidated Appeal, each Party to the Appeal will retain the classification as Appellant on the issues on which that Party noted an Appeal and as Appellee on any issues appealed by another Party to the Appeal.

**Rule 20. No Discovery.** No requests for production, interrogatories, requests for admission, depositions or other discovery is allowed by or on behalf of any Party to an Appeal.

**Rule 21. Oral Argument.** Within his or her sole discretion, the Special Master may require oral argument, or permit such argument if requested by a Party to the Appeal, in such time and place and in such manner as the Special Master directs. There will be no testimony, cross-examination or other evidentiary hearing on an Appeal. Any oral argument may be preserved in an audio recording, but will not be transcribed by a court reporter unless directed by the Special Master. No new evidence not in the Record on Appeal may be introduced or referred to in any oral argument.

**Rule 22. Assistance to the Special Master on Medical Issues.** The Special Master may be assisted in any Appeal, in his or her discretion, by any member of the Appeals Advisory Panel and/or an Appeals Advisory Panel Consultant.

**Rule 23. The Record and Evidence Considered on Appeal.**

(a) The Record on Appeal in an Appeal consists of:

(1) The Settlement Agreement;

(2) The Claim Package or Derivative Claim Package on the Claim involved in the Appeal, including any actions by the Claims Administrator on the Claim;
(3) The Appeals Form (and any statement and exhibits);
(4) Responses of Appellees (and any exhibits);
(5) Statement of Class Counsel (and any exhibits);
(6) Replies of Appellants (and any exhibits);
(7) Replies to the Statement of Class Counsel (and any exhibits);
(8) Summary of Review from the Claims Administrator;
(9) Oral argument permitted by the Special Master;
(10) Any other exhibits, memoranda and submissions directed or permitted by the Special Master; and
(11) Any input received by the Special Master from a member of the Appeals Advisory Panel and/or an Appeals Advisory Panel Consultant.

(b) A Party to the Appeal may not introduce or refer to any evidence that was not submitted to the Claims Administrator before the Claims Administrator issued the Appealable Notice being appealed, subject to the following subsection (c) of this Rule.

(c) If any Party to the Appeal has new evidence not submitted to the Claims Administrator before the Claims Administrator issued the Notice being appealed that it wishes considered on the Appeal, it must identify such evidence and submit it to the Claims Administrator along with the submission by that party in which it wishes to use the new evidence. The Special Master will determine whether to permit the party to introduce the new evidence. If the Special Master determines not to allow introduction of the new evidence, the Appeal will proceed without it and no Party to the Appeal may refer to or rely upon it. If the Special Master determines to allow introduction of the new evidence, the Special Master may remand the Claim to the Claims Administrator under Rule 24 for re-review using the new evidence.

**Rule 24. Remand to the Claims Administrator.**

(a) Under Rule 23 and at any time the Special Master determines it necessary to do so, the Special Master may remand any Claim subject to an Appeal to the Claims Administrator for further processing.

(b) The Parties to the Appeal may agree to remand the Claim to the Claims Administrator for further processing at any time.

(c) If a Claim is remanded to the Claims Administrator, the Appeal on that Claim will terminate and any Appeal Fee paid by the Settlement Class Member will be refunded to the Settlement Class Member, unless the Special Master directs otherwise. The Claims Administrator will resume processing the Claim and issue appropriate Notices on the Claim resulting from such processing, which may be subject to a new Appeal if they are Appealable Notices under these Rules.

**Rule 25. No Cross-Appeals.** Because a Settlement Class Member, Class Counsel and the NFL Parties have independent rights to note an Appeal, no Party to the Appeal may cross-appeal in a Response of Appellee or any other submission on any issue not raised by that party in an independent Appeal timely noted by that party. However, as permitted by Rule 14, a party may raise issues that were not set forth in the Appealable Notice as supporting bases for the outcome of the Appealable Notice, and were not raised by Appellant in the Appeal, in its Response of Appellee. Raising any such issues shall not be considered a Cross-Appeal.

**Rule 26. Standard of Review on Appeal.** The Special Master will decide an issue on Appeal based upon a showing by the Appellant of clear and convincing evidence. Under this standard, the Appellant must convince the Special Master that there is a high degree of probability that the determination of the Claims Administrator being appealed was wrong.

**Rule 27. Multiple Claims Presenting Common Issues and Preclusive Effect of Decisions.** The Special Master has discretion to consolidate for purposes of briefing and/or decision the proceedings on any Claims that involve common issues of law and/or fact, as well as where the Special Master determines that a collective resolution of an issue will best serve the efficient and equitable administration of the Settlement Agreement. In any Appeal, including any instance in which the Special Master has consolidated matters involving common questions of law and/or fact or issues requiring collective resolution, the Special Master may direct that the findings and rulings on such questions and issues have preclusive effect and may not be re-litigated in any other Appeal.

**Rule 28. Decision by the Special Master.** The Special Master will issue to the Claims Administrator a decision on an Appeal within 60 days after the later of the date of the last submission by the Parties to the Appeal or the Claims Administrator or the date of any oral argument, unless the Special Master determines that additional time is required for consideration of the Appeal. In such decision, the Special Master may affirm or reverse the determination of the Claims Administrator and direct such other and further relief as the Special Master deems appropriate, and will make such explanation of the grounds of the decision as the Special Master deems necessary under the circumstances.

**Rule 29. Notice of Special Master Decision.** Within five days after the date of a decision by the Special Master on an Appeal, the Claims Administrator will serve the decision on the Parties to the Appeal by Portal or mail.

**Rule 30. Withdrawal of Appeal**. An Appellant may withdraw an Appeal of right by notice to the Claims Administrator at any time until 20 days after the date of the last submission on the Appeal permitted by these Rules or directed by the Special Master. After that time, an Appellant may withdraw an Appeal only as permitted by the Special Master. The Appeal Fee will not be refunded to a Settlement Class Member withdrawing an Appeal, unless the Special Master directs otherwise. If an Appeal is withdrawn, the determination of the Claims Administrator subject to the Appeal will be considered final as of the date of the withdrawal.

**Rule 31. Finality of the Special Master's Decision.** The Special Master's decision on an Appeal is final and binding on the Settlement Class Member(s), the Parties to the Appeal and the Claims Administrator and is not subject to appeal or review by the Court, except that

pursuant to Fed. R. Civ. P. 53(f)(4) and the Court's July 13, 2016 Order appointing the Special Masters, the Court will review *de novo* (that is, anew) any objection to the Special Master's conclusions of law. The Special Master will identify in each decision any issue the Special Master determines to be a conclusion of law to which a Party to the Appeal may object and have reviewed by the Court.

**Rule 32. Objections to a Conclusion of Law in a Decision by the Special Master.**

(a) A Party to the Appeal wishing to object to a conclusion of law by the Special Master will present such objection in an Objection to Special Master Decision of up to 10 pages submitted to the Claims Administrator on a Portal or in hard copy within 20 days after the date of notice of the Special Master's decision under Rule 29, setting forth the arguments in support of the Objection.

(b) The other Parties to the Appeal may respond with up to 10 pages to the Objection to Special Master Decision, submitted to the Claims Administrator on a Portal or in hard copy within 20 days after the date of the Objection, setting out the arguments in response to the Objection.

(c) Exhibits to these submissions are permitted, but no party may refer to or attach any evidence that was not in the Record on Appeal before the Special Master. When submitting an Objection or response to an Objection, the submitting party must mail or deliver the submission to any Party to the Appeal not using a Portal.

(d) The Court will review *de novo* (that is, anew) an Objection to Special Master Decision and may affirm, modify or reverse the Special Master's decision and order such other and further relief as the Court deems appropriate. The Claims Administrator will serve the Court's decision on the Parties to the Appeal. The Court's decision is final and not subject to further review by appeal or otherwise

**Rule 33. Publishing the Decisions by the Special Master and Court on Appeals.** The Special Master and the Court will designate in a decision on an Appeal whether the decision is to be published or unpublished. The Claims Administrator will post in an aggregated set de-identified copies of each published decision on the official website of the Settlement Program and on the Portal of each Portal user. In addition to their preclusive effect under Rule 27, published decisions of the Special Master and the Court will have precedential value in the Settlement Program on the issues and principles determined in the decision, which means they will serve as guidance for the consideration of the same or similar issues and principles in subsequent Appeals.

**Rule 34. Claim in Audit.** If the Claims Administrator places a Claim in Audit at any time, the processes on Appeal and any time periods in these Rules applicable to the Appeal will be suspended until the conclusion of the Audit.

# RULES GOVERNING QUALIFIED MAF PHYSICIANS

NFL CONCUSSION SETTLEMENT

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

# RULES GOVERNING QUALIFIED MAF PHYSICIANS

541394
2/24/25

# TABLE OF CONTENTS

**PAGE**


**TITLE I: INTRODUCTION** ..... 1

**Rule 1. The Purpose of These Rules.** ..... 1
**Rule 2. Adoption of These Rules.** ..... 1
**Rule 3. Definitions Used in These Rules.** ..... 1

**TITLE II: ENGAGEMENT AND TRAINING** ..... 2

**Rule 4. Execution of Participating Qualified MAF Physician Agreement.** ..... 2
**Rule 5. Required Education Before Rendering Services as a Qualified MAF Physician.** ..... 2
**Rule 6. Continuous Education.** ..... 2

**TITLE III: GENERAL PROCEDURES** ..... 3

**Rule 7. Publication of Status as a Qualified MAF Physician.** ..... 3
**Rule 8. Scheduling of MAF Examinations with Settlement Class Members.** ..... 3
**Rule 9. 150-Mile Rule for MAF Examinations.** ..... 3
**Rule 10. Neuropsychological Testing.** ..... 3
**Rule 11. Information on All MAF Appointments.** ..... 4
**Rule 12. Information on Charges and Insurance.** ..... 4
**Rule 13. Avoidance of Questionable Practices.** ..... 5

**TITLE IV: PERFORMANCE OF MAF EXAMINATIONS** ..... 6

**Rule 14. MAF Examinations of Retired NFL Football Players.** ..... 6
**Rule 15. Employment Activities of the Retired NFL Football Player.** ..... 6
**Rule 16. Activities of the Retired NFL Football Player Outside the Home.** ..... 6

**TITLE V: QUALIFYING DIAGNOSES** ..... 6

**Rule 17. Submissions to the Claims Administrator on a Qualifying Diagnosis.** ..... 7
**Rule 18. Provision of Results to the Retired NFL Football Player.** ..... 7

**TITLE VI: ADDITIONAL PROCEDURES FOR LEVEL 1.5 AND LEVEL 2 QUALIFYING DIAGNOSES** ..... 7

**Rule 19. Neuropsychological Testing Used for Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment.** ..... 7
**Rule 20. Qualifying Diagnoses that Deviate from the BAP Diagnostic Criteria.** ..... 7

**TITLE VII: ASSISTANCE BY THE CLAIMS ADMINISTRATOR** ........ 8

**Rule 21. Analysis of Claims Based on Diagnoses from Qualified MAF Physicians.** ........ 8

**Rule 22. Assistance by the Claims Administrator in the Operation of the Network of Qualified MAF Physicians.** ........ 8

**Rule 23. AAP Leadership Council.** ........ 9

**Rule 24. MAF Steering Committee.** ........ 9

**Rule 25. Follow-Up Actions with a Qualified MAF Physician.** ........ 9

**Rule 26. Suspension of a Qualified MAF Physician.** ........ 10

**Rule 27. Termination of a Qualified MAF Physician.** ........ 10

# RULES GOVERNING QUALIFIED MAF PHYSICIANS

## TITLE I: INTRODUCTION

**Rule 1. The Purpose of These Rules.** These Rules govern the operation and implementation of the network of Qualified MAF Physicians in the Settlement Program established under Section 6.5(a) of the Settlement Agreement, which requires the Claims Administrator to "establish and maintain a list of Qualified MAF Physicians eligible to provide Qualifying Diagnoses" and that "each Qualified MAF Physician shall be approved by Class Counsel and Counsel for the NFL Parties."

**Rule 2. Adoption of These Rules.** The Special Masters have adopted these Rules in the exercise of their duties pursuant to their appointment by the Court in its July 13, 2016 Order (Document 6871). The Special Masters may amend these Rules at any time *sua sponte* or after request by Class Counsel, the NFL Parties or the Claims Administrator and such input from Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3. Definitions Used in These Rules.** All capitalized terms used in these Rules have the meanings given to them in the Settlement Agreement. In addition:

(a) "AAP Leadership Council" means the advisory group of two AAP members described in Rule 23.

(b) "BAP Test Battery" means the neuropsychological test battery prescribed in Ex. 2 to the Settlement Agreement used in the Baseline Assessment Program.

(c) "Claim" means any Claim Package (or portion of a Claim Package) submitted to the Claims Administrator seeking or relating to a Monetary Award or Supplemental Monetary Award, or a Derivative Claim Package (or any portion of a Derivative Claim Package) submitted to the Claims Administrator seeking a Derivative Claimant Award.

(d) "Examining Neuropsychologist" means the neuropsychologist to whom a Qualified MAF Physician has referred a Retired NFL Football Player for neuropsychological testing and evaluation or the neuropsychologist who conducted previous neuropsychological testing on the Retired NFL Football Player on which a Qualified MAF Physician is permitted to rely under the Settlement Agreement, these Rules or as directed by the Claims Administrator.

(e) "MAF Examination" means the in-person examination and evaluation of a Retired NFL Football Player by a Qualified MAF Physician and the provision of a diagnosis and the other actions required by these Rules as to the examination, evaluation and diagnosis.

(f) "MAF Steering Committee" means the advisory group of up to 10 Qualified MAF Physicians described in Rule 24.

(g) "Portal" means the online system created by the Claims Administrator for the exchange of materials and information between Qualified MAF Physicians and the Claims Administrator in the Settlement Program.

(h) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).

(i) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(j) "Special Master" and "Special Masters" mean any one or both of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

## TITLE II: ENGAGEMENT AND TRAINING

**Rule 4. Execution of Participating Qualified MAF Physician Agreement.** The Qualified MAF Physician must sign the Participating Qualified MAF Physician Agreement and return it to the Claims Administrator within 60 days after the Claims Administrator sends the Agreement to the Qualified MAF Physician, unless the Claims Administrator extends that period.

**Rule 5. Required Education Before Rendering Services as a Qualified MAF Physician.** The Claims Administrator will adopt and issue such checklists, newsletters, guidance documents, training materials and other informational materials and methodologies as it determines will assist Qualified MAF Physicians in the understanding and application of the Settlement Agreement and compliance with its terms. Before conducting MAF Examinations of any Retired NFL Football Players, a Qualified MAF Physician must:

(a) Review and become familiar with: (1) these Rules; (2) the Qualified MAF Physician Manual; and (3) any other materials provided by the Claims Administrator; and

(b) Participate in orientation and training sessions as directed by the Claims Administrator.

**Rule 6. Continuous Education.** A Qualified MAF Physician must participate in on-going and refresher training at the direction of the Claims Administrator to maintain understanding of the Settlement Program diagnostic criteria and learn about developments in the Program affecting service as a Qualified MAF Physician. The Claims Administrator will attempt to provide courses that qualify for continuing medical education (CME) credits in the Qualified MAF Physician's jurisdiction.

## TITLE III: GENERAL PROCEDURES

**Rule 7. Publication of Status as a Qualified MAF Physician.** A Qualified MAF Physician may publicize his or her status as a Qualified MAF Physician in announcements, on a website and in promotional materials, in a professional manner and using content approved by the Claims Administrator or as approved by the Special Masters. Others may use such content to publicize the Qualified MAF Physician network and Qualified MAF Physicians with the permission of the Special Masters. No person or party other than the National Football League or appropriate Member Club may make any use of the logos or other tradename or trademarked materials of the National Football League or any Member Club.

**Rule 8. Scheduling of MAF Examinations with Settlement Class Members.** Except as modified by these Rules, a Qualified MAF Physician may follow his or her normal policies for scheduling, sending reminders and communicating with the Settlement Class Member relating to an MAF Examination.

**Rule 9. 150-Mile Rule for MAF Examinations.** The MAF Examination of a Retired NFL Football Player must occur in a medical office or facility by a Qualified MAF Physician whose practice is located within 150 miles of the Retired NFL Football Player's primary residence. A Qualified MAF Physician may not perform an MAF exam in a location other than his or her regular practice without prior approval from the Claims Administrator. The Claims Administrator may grant a request by a Retired NFL Football Player for an exception to this 150-Mile Rule where:

(a) No Qualified MAF Physician within 150 Miles: No Qualified MAF Physician is located within 150 miles of the Retired NFL Football Player's primary residence.

(b) No Qualified MAF Physician Available: The wait time for an appointment with a Qualified MAF Physician within 150 miles of the Retired NFL Football Player's primary residence exceeds 100 days.

(c) Doctor-Patient Relationship: The Retired NFL Football Player and the Qualified MAF Physician have a current or pre-existing doctor-patient relationship arising from treatment or other services by the Qualified MAF Physician to the Retired NFL Football Player.

(d) Other Circumstances: Such other circumstances that, in the Claims Administrator's discretion, warrant an exception to the 150-Mile Rule.

**Rule 10. Neuropsychological Testing.**

**(a) Appropriate Neuropsychologists:** If neuropsychological testing is required as part of the MAF Examination of a Retired NFL Football Player, the Qualified MAF Physician must refer the Retired NFL Football Player to an Examining Neuropsychologist who: (1) is a Qualified BAP Provider; or (2) the Claims Administrator previously has approved use of the neuropsychologist by the Qualified MAF Physician as an Examining Neuropsychologist.

(b) **50-Mile Rule for Examining Neuropsychologists:** The practice of the Examining Neuropsychologist must be located within 50 miles of the office of the Qualified MAF Physician and the examination must occur in an office or medical facility of that practice. An Examining Neuropsychologist may not perform the examination in a location other than his or her regular practice without prior approval from the Claims Administrator. The Claims Administrator has discretion to grant exceptions to this general rule, upon request by a Qualified MAF Physician, under the circumstances set forth in Rule 9 for exceptions to the 150-Mile Rule for Qualified MAF Physicians.

(c) **Previous Neuropsychological Testing**: If the Qualified MAF Physician receives results of prior neuropsychological testing performed in the Baseline Assessment Program by a Qualified BAP Provider, the testing must have been performed within one year before the date of the Qualifying Diagnosis. If the Qualified MAF Physician receives results of neuropsychological testing performed by a neuropsychologist other than the neuropsychologist to whom the Qualified MAF Physician referred the Retired NFL Football Player or in the Baseline Assessment Program by a Qualified BAP Provider, or if neuropsychological testing was performed more than a year before the date of the Qualifying Diagnosis, the Qualified MAF Physician must contact the Claims Administrator before using the results of that neuropsychological testing as a basis for impairment (as opposed to baseline information to compare against contemporaneous neuropsychological testing) when rendering a Qualifying Diagnosis.

(d) **Use by a Qualified MAF Physician of Reports from the Examining Neuropsychologist:** A Qualified MAF Physician is to consider the conclusions of an Examining Neuropsychologist but is to determine what weight to be given to them, based upon the Qualified MAF Physician's sound medical judgment. If the Qualified MAF Physician disagrees with the conclusions of the Examining Neuropsychologist, the Qualified MAF Physician should confer with the Examining Neuropsychologist, make a diagnosis based on the sound medical judgment of the Qualified MAF Physician and explain to the Claims Administrator the basis of the diagnosis.

**Rule 11. Information on All MAF Appointments.** A Qualified MAF Physician will provide the Claims Administrator information about each MAF Examination, including the Retired NFL Football Player's name, the date of the appointment and the result of the appointment, including whether he or she found a Qualifying Diagnosis or no diagnosis, what the diagnosis was, whether additional testing is needed before a diagnosis can be rendered, and such other information and records as required by the Claims Administrator.

**Rule 12. Information on Charges and Insurance.** The Qualified MAF Physician will provide to the Claims Administrator complete, accurate and current information regarding: (a) the fee and types of expenses charged by the Qualified MAF Physician for an MAF Examination; (b) whether the Qualified MAF Physician accepts insurance for an MAF Examination; and (c) whether the fees and charges vary depending on whether the Retired NFL Football Player has insurance or is self-pay and, if so, in what respects.

**Rule 13. Avoidance of Questionable Practices.** A Qualified MAF Physician must perform all actions relating to the Settlement Program to the best of his or her professional ability and integrity and avoid any impropriety or the appearance of impropriety. In addition to that general standard, a Qualified MAF Physician specifically cannot:

(a) Accept from a Settlement Class Member or his or her lawyer, law firm or any other person or entity any payment (except for the provision of services rendered), gifts, trips, dinners, entertainment, or anything else of value that could be perceived as a conflict of interest;

(b) Be influenced in his or her methodology for performing MAF examinations or rendering diagnoses by a Settlement Class Member's lawyer, law firm or any other person or entity;

(c) Communicate solely with a Settlement Class Member's lawyer, law firm or any other person or entity to the exclusion of the Settlement Class Member, except with regard to administrative items such as scheduling or medical record requests, without the express prior written permission from the Claims Administrator;

(d) Predict, guarantee or assure the Settlement Class Member or his or her lawyer, law firm or any other person or entity, before examining the Retired NFL Football Player, that he or she will render a Qualifying Diagnosis;

(e) Enter into an agreement, contract, business or financial arrangement with a lawyer, law firm or any other person or entity regarding the evaluation of a Settlement Class Member other than for the payment of the usual and customary charge for the medical examination;

(f) Sign a Diagnosing Physician Certification Form for a Retired NFL Football Player whom he or she did not personally examine;

(g) Allow a Settlement Class Member or his or her lawyer, law firm or any other person or entity to complete a Diagnosing Physician Certification Form on behalf of a Qualified MAF Physician or for the Qualified MAF Physician to sign;

(h) Refer or recommend a lawyer, law firm or any other representative or entity to a Settlement Class Member;

(i) Use the information learned during an MAF Examination in his or her research, writing, or other professional activities without the express prior written permission from the Claims Administrator;

(j) Conduct an MAF Examination at a location other than a standard treatment or diagnosis setting (*e.g.*, hotel rooms) without the express prior written permission from the Claims Administrator;

(k) Conduct an MAF Examination or render any diagnosis on a Retired NFL Football Player represented by a lawyer or law firm for whom or for which the Qualified MAF Physician provides services as a consulting or testifying expert witness; or

(l) Accept an assignment or other conveyance of the Retired NFL Football Player's Monetary Award as compensation for the services rendered by the Qualified MAF Physician or assign or otherwise convey the right to assert a lien against the Retired NFL Football Player's Monetary Award.

A Qualified MAF Physician who engages in any of the actions prohibited by this Rule must report them to the Claims Administrator immediately. After considering such report and any such information the Claims Administrator receives in any manner, the Claims Administrator may terminate the Qualified MAF Physician immediately from participating in the Program.

## TITLE IV: PERFORMANCE OF MAF EXAMINATIONS

**Rule 14. MAF Examinations of Retired NFL Football Players.** A Qualified MAF Physician must perform MAF Examinations in accordance with: (a) the Settlement Agreement, including the Injury Definitions in Exhibit 1 to the Settlement Agreement; (b) these Rules; (c) the Qualified MAF Physician Manual and any other instructions and materials provided by the Claims Administrator; and (d) sound medical judgment. A Qualifying Diagnosis rendered by a Qualified MAF Physician must comply with (a) through (d) of this Rule and must be based on the Qualified MAF Physician's independent assessment of the Retired NFL Football Player and analysis of any testing results and applicable medical and other records concerning the Retired NFL Football Player.

**Rule 15. Employment Activities of the Retired NFL Football Player.** As part of an MAF Examination, a Qualified MAF Physician must obtain from the Retired NFL Football Player and any person serving as an informant providing information about the Retired NFL Football Player complete information regarding any employment and business activities in which the Retired NFL Football Player is involved at the time of the MAF Examination and/or during the five years preceding the date of the MAF Examination.

**Rule 16. Activities of the Retired NFL Football Player Outside the Home.** As part of an MAF Examination, a Qualified MAF Physician must obtain from the Retired NFL Football Player and any person serving as an informant providing information about the Retired NFL Football Player complete information regarding any social, community, recreational or other activities by the Retired NFL Football Player outside the home around the time of the MAF Examination, whether these activities have changed over the five years preceding the date of the MAF Examination and, if so, how they have changed. An informant must explain in detail the informant's relationship with the Retired NFL Football Player.

## TITLE V: QUALIFYING DIAGNOSES

**Rule 17. Submissions to the Claims Administrator on a Qualifying Diagnosis.** If the Qualified MAF Physician determines that the Retired NFL Football Player has a Qualifying Diagnosis, the Qualified MAF Physician must document the Qualifying Diagnosis and submit to the Claims Administrator: (a) a completed and signed MAF Diagnosing Physician Certification form; and (b) all medical records supporting the Qualifying Diagnosis, including: (1) a report summarizing and explaining the Qualified MAF Physician's evaluation of the Player, the conduct of the MAF Examination and the basis for the finding of a Qualifying Diagnosis; (2) any CDR questionnaire/worksheet completed by the Qualified MAF Physician or the neuropsychologist for evaluating the Player's functional impairment; (3) any documentary evidence or third-party sworn affidavit corroborating the Player's functional impairment that the Qualified MAF Physician reviewed in making the diagnosis; (4) any neuropsychological testing evaluation the Qualified MAF Physician reviewed or relied on to make the diagnosis; (5) any historical medical records from other healthcare providers and any other records and materials the Qualified MAF Physician reviewed or relied on to make the diagnosis; (6) any other imaging or test results the Qualified MAF Physician reviewed or relied on to make the diagnosis; (7) such other explanations and materials as the Claims Administrator may require in connection with all MAF Examinations or with respect to a particular MAF Examination. Each Qualified MAF Physician must preserve all supporting medical records relating to the Qualifying Diagnosis for the longer of (a) 10 years after the date of the examination resulting in the Qualifying Diagnosis or (b) the period of time required under applicable state and federal laws.

**Rule 18. Provision of Results to the Retired NFL Football Player.** Upon the request of a Retired NFL Football Player or his authorized representative, a Qualified MAF Physician will give a copy of the MAF Diagnosing Physician Certification form and related medical records to the requesting party.

## TITLE VI: ADDITIONAL PROCEDURES FOR LEVEL 1.5 AND LEVEL 2 QUALIFYING DIAGNOSES

**Rule 19. Neuropsychological Testing Used for Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment.** If a Qualified MAF Physician determines that the Retired NFL Football Player has a Qualifying Diagnosis of Level 1.5 or Level 2 Neurocognitive Impairment, the neuropsychological testing evaluation submitted to the Claims Administrator on the Retired NFL Football Player must identify the tests that were administered by the Qualified MAF Physician and/or the Examining Neuropsychologist and must include raw scores, scaled scores and T scores from those tests.

**Rule 20. Qualifying Diagnoses that Deviate from the BAP Diagnostic Criteria.** To the extent that a Qualified MAF Physician and/or the Examining Neuropsychologist making a Qualifying Diagnosis of Level 1.5 or Level 2 Neurocognitive Impairment uses diagnostic criteria that differ from those set forth in the Settlement Agreement for Level 1.5 (*i.e.*, early dementia) or Level 2 (*i.e.*, moderate dementia) Neurocognitive Impairment diagnosed in the Baseline Assessment Program, the Qualified MAF Physician must explain in writing, in the method prescribed by the Claims Administrator and to the satisfaction of the Claims Administrator, any deviation from the BAP diagnostic criteria and must obtain information from the Examining

Neuropsychologist as is necessary to provide a complete explanation. Deviation from the BAP diagnostic criteria occurs and an explanation must be provided when:

(a) **BAP Test Battery Results:** The Retired NFL Football Player was administered the complete BAP Test Battery used in the Baseline Assessment Program and the resulting test scores do not meet the thresholds necessary to support the Qualifying Diagnosis under the BAP criteria in Settlement Agreement Ex. 2.

(b) **Incomplete BAP Test Battery:** The neuropsychological test battery administered to the Retired NFL Football Player was not the complete BAP Test Battery.

(c) **Additional Testing:** The neuropsychological tests administered to the Retired NFL Football Player included tests that are not part of the BAP Test Battery.

(d) **Performance Validity Testing:** The Retired NFL Football Player was assigned scores or results indicating that the player failed two or more of the embedded and/or stand-alone performance validity measures in the neuropsychological test battery and/or where the application of the clinical criteria for assessing performance validity under Slick *et al.* otherwise indicates that the test data may not be a valid reflection of his optimal level of neurocognitive functioning.

(e) **Other Circumstances:** The Claim Package presents other matters that the Claims Administrator determines deviate from the diagnostic criteria set forth in the Settlement Agreement and/or present significant questions about the Qualifying Diagnosis or diagnostic work of the diagnosing physician or supporting neuropsychologist.

## TITLE VII: ASSISTANCE BY THE CLAIMS ADMINISTRATOR

**Rule 21. Analysis of Claims Based on Diagnoses from Qualified MAF Physicians.** The Claims Administrator monitors Claim Packages received based on Qualifying Diagnoses made by Qualified MAF Physicians to assess and assist with compliance with the Settlement Agreement and these Rules.

**Rule 22. Assistance by the Claims Administrator in the Operation of the Network of Qualified MAF Physicians.** The Claims Administrator assists in the operation of the network of Qualified MAF Physicians by these actions:

(a) **Portal Activity:** Monitors the use by each Qualified MAF Physician of his or her Portal with the Claims Administrator, provision of appointment information, scheduled and reported appointments, and the other matters covered by these Rules.

(b) **Complete Claim Packages:** Analyzes any questions raised in its Claims Review regarding provision by Qualified MAF Physicians of complete materials and explanations on Qualifying Diagnoses and other matters affecting compliance with the Settlement

Agreement and these Rules.

**(c) Claim Outcomes:** Analyzes the outcomes in Claims Review, Audit and Monetary Award Appeals on all diagnoses made by a Qualified MAF Physician and any feedback from the AAP and AAPC on any claims they have reviewed involving Qualifying Diagnoses made by Qualified MAF Physicians.

**(d) Public Information:** Monitors public statements, publications, or general mentions about the Qualified MAF Physicians on the internet and investigates potential violations of the Participating Qualified MAF Physician Agreement or ethical issues.

**(e) Inquiries from Settlement Class Members:** Follows up on questions from Settlement Class Members and their representatives regarding the operation of the network of Qualified MAF Physicians.

**(f) Issues Raised by the Court, Special Masters or Parties:** Follows up on questions and suggestions regarding scheduling, availability, or other aspects of the delivery of services by Qualified MAF Physicians as raised by the Court, Special Masters, Class Counsel and/or counsel for the NFL Parties.

**Rule 23. AAP Leadership Council.** Two AAP Members serve as the Claims Administrator's AAP Leadership Council to provide the Claims Administrator advice and assistance on any medical issues arising in the monitoring of the work of Qualified MAF Physicians. This includes review of specific claims or groups of claims at the Claims Administrator's request to determine compliance by Qualified MAF Physicians with the Settlement Agreement and these Rules and whether a Claim Package reflects and supports the Qualifying Diagnosis stated in the Diagnosing Physician Certification form. The AAP Leadership Council is appointed by and works at the Claims Administrator's direction, as overseen by the Special Masters.

**Rule 24. MAF Steering Committee.** The Claims Administrator may be assisted by a group of not more than 10 Qualified MAF Physicians who serve as the Claims Administrator's MAF Steering Committee to render advice and assistance on providing peer-to-peer feedback to Qualified MAF Physicians and suggestions to the Claims Administrator on how to improve the operations and performance of the network of Qualified MAF Physicians. The MAF Steering Committee is appointed by and works at the Claims Administrator's direction, as overseen by the Special Masters.

**Rule 25. Follow-Up Actions with a Qualified MAF Physician.**

**(a) Additional Guidance:** If an operational or performance issue identified by the Claims Administrator is one on which the Qualified MAF Physician may benefit from additional guidance or training, the Claims Administrator reviews the matter with him or her and provides any needed refresher training or instructions, with input and involvement by a member of the AAP Leadership Council and/or the MAF Steering Committee as appropriate. Such training may be done live in-person, by phone, or online, depending on the issues and physician involved. If the Qualified MAF Physician is also a Qualified

BAP Provider, the Claims Administrator consults with the BAP Administrator on all matters involving that physician to coordinate the Claims Administrator's analysis and response.

**(b) Changes by the Qualified MAF Physician:** If, after consultation with the Claims Administrator, a Qualified MAF Physician determines he or she would like to change a diagnosis already made and the Claims Administrator has a Monetary Award claim resting on that diagnosis that has not been paid, the Claims Administrator may place an MAF Monitoring Hold on the claim to stay issuing notices or denials or payments on the claim. After receiving any such changes from the Qualified MAF Physician, the Claims Administrator will process the claim accordingly, which may lead to retraction and replacement of previous notices issued on the claim. Neither the Claims Administrator, the AAP Leadership Council, nor the MAF Steering Committee may at any time direct a Qualified MAF Physician to alter a diagnosis or to render a particular diagnosis.

**Rule 26. Suspension of a Qualified MAF Physician.** If the Claims Administrator determines there is a need to do so, the Claims Administrator may suspend the Qualified MAF Physician from participation in the Program for a period of up to 90 days by sending written notice of suspension to the Qualified MAF Physician. During the suspension period, the Claims Administrator will add a notation to the Qualified MAF Physician's name on the list of Qualified MAF Physicians posted on the Settlement Website to explain that the Qualified MAF Physician is suspended and is not authorized to make Qualifying Diagnoses or sign Diagnosing Physician Certification Forms as a Qualified MAF Physician while suspended. The Claims Administrator will not accept any Qualifying Diagnoses based on examinations during a suspension period. Any Settlement Class Members the Qualified MAF Physician sees or communicates with during this period of suspension must be informed that his or her privileges have been suspended and that he or she is not qualified to render Qualifying Diagnoses in support of Claims. On or before the end of the suspension period, the Claims Administrator will restore the Qualified MAF Physician to active status on the posted list or take such other action as the Claims Administrator determines appropriate.

**Rule 27. Termination of a Qualified MAF Physician.** The Participating Qualified MAF Physician Agreement provides that either party to that Agreement may in its sole discretion terminate the Agreement by providing 30 days' prior written notice to the other party. Under this provision, the Claims Administrator may terminate the Qualified MAF Physician from participation in the Program by giving the Qualified MAF Physician a written notice with a termination date 30 days after the date of the notice. In that instance, the Claims Administrator adds a notation to the Qualified MAF Physician's name on the list of Qualified MAF Physicians posted on the Settlement Website to explain that the physician's appointment as a Qualified MAF Physician will end on the termination date. The Participating Qualified MAF Physician Agreement also allows the Claims Administrator to terminate a Qualified MAF Physician immediately upon a finding of fraudulent diagnoses. The Claims Administrator has discretion to have the AAP and/or the AAPC review a diagnosis by a terminated Qualified MAF Physician on any Monetary Award claim that has not been paid to determine whether the Settlement Class Member qualifies for a Monetary Award and then issue such notices as are appropriate.

# RULES GOVERNING ATTORNEYS' LIENS

NFL CONCUSSION SETTLEMENT
IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

## RULES GOVERNING ATTORNEYS' LIENS

The retirement of the Magistrate Judge who assisted the Court with the resolution of Attorney Liens since the early days of claims administration offers an opportunity to modify existing practices and minimize the expenditure of judicial resources on matters that are ancillary to this Settlement. On September 21, 2023, the Court expanded the role of the Special Masters to include responsibilities in this area. The Special Masters have developed these Rules to define their role and announce new procedures for effective resolution of these disputes.

As described below, all Attorney Lien Disputes will be heard by the Special Masters, who will prepare a Report and Recommendation for the Court. If the parties reach an agreement before a Report and Recommendation is filed, they may "withdraw" their dispute by submitting a form to the Claims Administrator. Submission of a Withdrawal form in compliance with these Rules will terminate the dispute process and enable the Claims Administrator to release the withheld portion of the Award to the parties as set out in the parties' agreement without further review or approval by either the Special Masters or the Court.

**Rule 1. Scope.**

- These Rules apply to all Attorney Liens that have not yet been subject to a report and recommendation pending before the District Court.
- All notices of Attorney's Lien that were already filed on the MDL docket will be transferred to the Claims Administrator for processing under these Rules.

**Rule 2. How Liens are to be Filed.**

- *Attorneys are no longer permitted to file Attorney Liens on the MDL Docket.* Instead, attorneys are to file a Notice of Attorney's Lien with the Claims Administrator on the Portal, using a form that the Claims Administrator will develop.
- Anyone who does not use the Portal must file the form Notice through hard copy by mail or delivery.

**Rule 3. Who May File an Attorney's Lien.**

- If an attorney wants to assert an Attorney's Lien against the award, or potential future award, of a Settlement Class Member (an "SCM"), the attorney must file an Attorney's Lien under these Rules.
- If an SCM's current attorney believes that other competing lien payments, including but not limited to those for medical expenses and services, child support, unpaid taxes, and judgment debts, may interfere with recovery of his or her attorney's fees and/or costs, that attorney also must assert an Attorney's Lien through this process to protect his or her interests.
- If a Party to an Attorney's Lien Dispute wishes to seek an upward or downward deviation from the 22% presumptive fee cap, that Party must file with the Claims

Administrator a petition for the requested deviation. The Special Masters will consider the petition in the Attorney's Lien dispute resolution process.

**Rule 4. The Deadline to File an Attorney's Lien.**

- The Attorney Lienholder must file the Notice of Attorney's Lien *before the date the disbursement list containing the SCM's Award is finalized and sent to the NFL Parties for approval.*
- Failure to submit the Notice before this deadline will result in the waiver of the Attorney Lienholder's right to assert an Attorney's Lien or seek costs against that SCM's award.
- Liens that were previously asserted on the Court's MDL docket will satisfy this Rule if they complied with the procedure in place when filed.

**Rule 5. Notice of Lien to Settlement Class Member and Attorney Lienholder.**

- Once the Claims Administrator has received both a Notice of Lien and a Claim Package or Derivative Claim Package for the SCM, it will issue a Notice to the SCM and the Attorney Lienholder of the filing of the Lien.
- The SCM will be provided copies of the proof of the Attorney's Lien and given at least 20 days to consent to or dispute it.

**Rule 6. Notice of Duty to Resolve Lien Dispute to Settlement Class Member and Attorney Lienholder.**

- If the SCM does not consent to the Attorney's Lien as described above, then upon the SCM's eligibility for an Award, the Claims Administrator will issue a Notice of Duty to Resolve Lien Dispute to the SCM and the Attorney Lienholder.
- This Notice is intended to prompt discussions between the parties in the hope they will reach their own resolution.
- The Claims Administrator will withhold adequate funds from the SCM's Award to pay the unresolved lien, as well as the fees and/or costs of any current attorney, in accordance with the Presumptive Fee Cap, to the extent funds are available, and until the Dispute is resolved.

**Rule 7. Special Master Report and Recommendation as to Disputed Liens.**

- When a Monetary Award has been approved but remains the subject of a Lien Dispute, the Claims Administrator will serve the Parties with a Schedule of Document Submissions, setting forth the Special Masters' requirements for the length, content, and timing of submissions that will be used to evaluate the competing claims.
- The Special Masters may order a hearing if they believe it would aid their decisionmaking.
- Absent a Withdrawal of the Lien Dispute, the Special Master will issue a Report and Recommendation ("R&R").
- Objections may be filed within 20 days, and a reply to the objections may be filed within 20 days thereafter. Both objections and replies are limited to 10 pages in length.
- The Claims Administrator will transmit the complete record to the Court for a final decision and, upon the Court's ruling, will disburse the withheld funds in accordance

with that decision, the provisions of the Settlement Agreement, and prior Court orders regarding implementation.

**Rule 8. Withdrawal of Attorney's Lien Dispute.**

- If the Parties reach a resolution of their lien dispute before the Special Master has filed a Report and Recommendation, they may submit a Withdrawal of Attorney's Lien Dispute form ("Withdrawal").
- If the Withdrawal is completed as described below, the dispute process will have concluded. The Claims Administrator will disburse the withheld portion of the Award pursuant to the Withdrawal terms and in accordance with the provisions of the Settlement Agreement and prior Court orders regarding implementation.
- In order to effectuate the conclusion of the dispute process, the Withdrawal must include:

(a) A statement of the allocation of the attorneys' fees between the Parties, which must be consistent with the Presumptive Fee Cap unless a Petition for Deviation upward was timely filed;
(b) A statement of costs from the current attorney for the SCM, if represented, with an itemized list of those costs including a brief explanation of the date of the costs and their purpose;
(c) A statement of the Attorney Lienholder's costs and the date each was incurred, if costs were asserted as part of the Lien, with an itemized list of those costs including a brief explanation of the purpose of incurring the costs;
(d) A statement of how each Party will allocate responsibility for the 5% deduction for common benefit fees, and a statement allocating any potential future refund of common benefit fees between the Parties; and
(e) The signature of all Parties submitting the Withdrawal, using an original wet ink signature, a PDF or other electronic image of an actual signature, or an electronic signature. The current attorney may sign on behalf of the SCM.

**Rule 9. Utilization of the Portal.**

- Notices and decisions under these Rules will be served through the Portal.
- All parties who have access to it must upload their submissions to the Portal, which will result in service of the submission on the other Dispute Parties who use the Portal.
- If a party does not have access to the Portal, the Claims Administrator will identify that party, and the other parties will be responsible for mailing or delivering to that party any submission they upload to the Portal.
- Any party who does not use a Portal will mail or deliver its submissions to the Claims Administrator, which will upload the item to the Portals of other parties in the dispute. To safeguard confidentiality, materials may not be submitted by email.
- If a party is represented by a lawyer, service will be made on that lawyer only.
- The Special Master will also access all Disputes using the Special Master Portal. No party may send any material directly to the Special Master.
- Any decision issued by the Special Master will be filed on the Portal, and any objections are to be filed there as well.
- The Court's final decision will be filed on the Portal unless it indicates otherwise.

**Rule 10. Adoption and Implementation of These Rules.**

- The Court has approved these Rules pursuant to its continuing and exclusive jurisdiction under Article XXVII of the Settlement Agreement and Paragraph 17 of the Court's May 8, 2015 Amended Final Approval Order and Judgment (ECF No. 6534).
- The Special Masters have adopted these Rules in the exercise of their duties pursuant to their appointment by the Court in its Referral Order of September 21, 2023 (ECF No. 12343).
- The Claims Administrator has discretion to develop and maintain internal policies and procedures it deems necessary to implement these Rules.
- The Court retains continuing and exclusive jurisdiction over the interpretation, implementation, and enforcement of these Rules.

# RULES GOVERNING PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS

# NFL CONCUSSION SETTLEMENT

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

# RULES GOVERNING PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS

3/19/2020
539954

**TABLE OF CONTENTS**

**Page**

**TITLE I: GENERAL** ..... 1

Rule 1. The Purpose of These Rules ..... 1
Rule 2. Adoption of These Rules ..... 1
Rule 3. Definitions Used in These Rules ..... 2

**TITLE II: INFORMATION ON FUNDING AGREEMENTS** ..... 3

Rule 4. Form SWS-5(A): Cases Involving Resolution Protocol ..... 3
Rule 5. Form SWS-5(B): Cases Not Involving Resolution Protocol ..... 4

**TITLE III: PAYMENT STEPS** ..... 4

Rule 6. Payment Steps Under Form SWS-5(A) ..... 4
Rule 7. Payment Steps Under Form SWS-5(B) ..... 5

# RULES GOVERNING PAYMENT OF CLAIMS INVOLVING THIRD-PARTY FUNDERS

## TITLE I: GENERAL

**Rule 1. The Purpose of These Rules.** These Payment Rules govern the payment of Monetary Claims that involve Third-Party Funder Transactions. These Rules do not address the enforceability of the underlying agreements between Third-Party Funders and Settlement Class Members. *See generally In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96 (3d Cir. 2019).

Any dispute over the enforceability or validity of a Third-Party Funder Transaction must be litigated or arbitrated in an appropriate forum outside of the claims administration context, subject to "the full array of standard contract defenses" available. *In re Nat'l Football League*, 923 F.3d at 112-13. As the Third Circuit has noted, "some of the class members are cognitively impaired, and it is possible that some of them lacked the capacity to contract at the time they entered into [these] agreements. . . . There may also be issues of unconscionability, fraud, or usury based on the high effective interest rates in the agreements," which may function as "disguised predatory loans." *Id.* at 112. However, if an agreement is found to be enforceable, a Settlement Class Member may risk incurring additional expenses by refusing to pay any of the disputed funds while the dispute over enforceability plays out. These risks may include potential interest obligations and/or the cost of defending a lawsuit. Settlement Class Members might consider seeking legal advice on their options.

In some instances, these Rules call for the Claims Administrator to pay a Monetary Claim directly to a Settlement Class Member, rather than submitting that payment to the Settlement Class Member's lawyer. This payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations. For instance, Settlement Class Members receiving such direct payments may be sued by a Third-Party Funder. A Settlement Class Member **SHOULD NOT** assume that his/her receipt of direct payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.[1]

**Rule 2. Adoption of These Rules.** The Special Masters have adopted these Rules in the exercise of their duties pursuant their appointment by the Court in its July 13, 2016 Order (Document 6871). The Special Masters may amend these Rules at any time *sua sponte* or after request by the Claims Administrator and such input from Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate. These Rules were amended to their current form on March 19, 2020.

[1] Likewise, direct payment to a Settlement Class Member has no bearing on whether the underlying agreement with a given Third-Party Funder is or is not valid or enforceable.

**Rule 3. Definitions Used in These Rules.** The capitalized terms used in these Rules are defined as follows:

(a) "Final Decision" means the moment when the window for all potential appeals of a Monetary Award has closed—which can be either the moment the time for filing an initial appeal passes with no appeal filed or the moment any appeals have been resolved.

(b) "Monetary Award" means a Monetary Award, Derivative Claimant Award, or Supplemental Monetary Award, as those terms are defined, respectively, in Sections 2.1(aaa), 2.1(zzzz), and 2.1(ff) of the Settlement Agreement.

(c) "Monetary Claim" means a claim submitted by a Settlement Class Member for a Monetary Award.

(d) "Non-Participating Funder" means a Third-Party Funder who is not participating in the Resolution Protocol.

(e) "Participating Funder" means a Third-Party Funder who is participating in the Resolution Protocol.

(f) "Resolution Amount" means the amount of money—described further in the Resolution Protocol—that a Participating Funder will accept to resolve any claims arising under the original agreement(s) between the Participating Funder and the Settlement Class Member.

(g) "Resolution Protocol" means the process described in the Rules Governing the Third-Party Funding Resolution Protocol.

(h) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).

(i) "Settlement Class Member" means a Retired NFL Football Player (or the Representative Claimant of a deceased or incompetent Retired NFL Football Player), or a Derivative Claimant, which is how this term is defined in the Settlement Agreement.

(j) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(k) "Special Master" and "Special Masters" mean any Special Master appointed by the Court in its July 13, 2016 Order (Document 6871) or in any subsequent Order of the Court.

(l) "Third-Party Funder" means a person or entity that engaged in a Third-Party Funder Transaction with a Settlement Class Member.

(m) "Third-Party Funder Transaction" means any agreement, contract, document, or arrangement between a Settlement Class Member and a third party under which: (i) the Settlement Class Member borrowed or received funds from a third party prior to receipt of a Monetary Award from the Settlement Program; and (ii) in exchange, either assigned/attempted to assign any rights related to the Settlement Class Member Monetary Award or Monetary Claim. This definition is meant to be construed broadly, so as to cover all potential cash advance agreements where a third-party entity loans or advances funds in exchange for rights to receive payment from the proceeds of any future Monetary Award, or in exchange for rights to "step into the shoes of" the Settlement Class Member and "seek funds directly from" the Settlement Program.

## TITLE II: INFORMATION ON FUNDING AGREEMENTS

Once a Settlement Class Member's Monetary Claim receives a Final Decision, the Claims Administrator will send him/her a form called a "Sworn Statement: Status of Assignment of Monetary Claim" ("Form SWS-5"), which he/she must complete and return. The Settlement Class Member will receive one of two versions of the Form SWS-5—either "Form SWS-5(A)" or "Form SWS-5(B)"— depending on whether or not the Settlement Class Member has been identified by one or more Participating Funders through the Resolution Protocol.[2]

**Rule 4. Form SWS-5(A): Cases Involving Resolution Protocol.** Settlement Class Members identified by Participating Funders will receive Form SWS-5(A), which does the following:

(a) Provides Information to Settlement Class Member. The form informs the Settlement Class Member that (i) his/her Monetary Claim has received a Final Decision and (ii) one or more Participating Funders have named the Settlement Class Member as part of the Resolution Protocol.

(b) Asks the Settlement Class Member for Consent. As to each Participating Funder who has identified the Settlement Class Member, the form asks the Settlement Class Member to (i) consent or decline to participate in the Resolution Protocol; and (ii) consent or decline to share information regarding his/her claim status with the Participating Funder.

(c) Asks Settlement Class Member About Third-Party Funder Transactions. The form asks the Settlement Class Member whether he/she has assigned or attempted

[2] As explained in Rule 5 of the Resolution Protocol, Third-Party Funders who wish to participate in the Resolution Protocol must provide the Claims Administrator with a "Third-Party Funder Transaction List." This list identifies all Settlement Class Members with whom the Third-Party Funder has entered into a Third-Party Funder Transaction. Whenever a Settlement Class Member's Monetary Claim receives a Final Decision, the Claims Administrator will check to see if the Settlement Class Member has been identified on any Third-Party Funder Transaction Lists. If so, the Claims Administrator will send a Form SWS-5(A) to the Settlement Class Member. If not, Form SWS-5(B) will be sent instead.

to assign any settlement benefits from his/her Monetary Claim to any Non-Participating Funders. If the answer is "yes," the form asks the Settlement Class Member to provide all relevant related documents.

**Rule 5. Form SWS-5(B): Cases Not Involving Resolution Protocol.** Settlement Class Members who have not been identified by a Participating Funder will receive Form SWS-5(B), which does the following:

(a) Provides Information to the Settlement Class Member. The form informs the Settlement Class Member that his/her Monetary Claim has received a Final Decision.

(b) Asks Settlement Class Member About Third-Party Funder Transactions. The form asks the Settlement Class Member whether he/she has assigned or attempted to assign any settlement benefits from his/her Monetary Claim to any other Non-Participating Funders. If the answer is "yes," the form asks the Settlement Class Member to provide all relevant related documents.

## TITLE III: PAYMENT STEPS

The next two Rules explain the payment steps that the Claims Administrator will take, depending on the version and content of the SWS-5 Form involved in a given case. As explained in Rule 1 above, these Rules sometimes contemplate direct payment to a Settlement Class Member, rather than to his/her lawyer. **This payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations. For instance, Settlement Class Members receiving such direct payments might be sued by a Third-Party Funder. A Settlement Class Member SHOULD NOT assume that his/her receipt of direct payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.**

**Rule 6. Payment Steps Under Form SWS-5(A).** In cases where Settlement Class Members receive Form SWS-5(A), there are three potential payment outcomes, depending on whether a resolution has been reached through the Resolution Protocol and whether any Non-Participating Funders have been identified by the Settlement Class Member:

(a) No Resolution Reached in Resolution Protocol. If the Settlement Class Member fails to reach a resolution through the Resolution Protocol with any Participating Funders—either because the Settlement Class Member declined to consent/participate or failed to timely agree on the Resolution Amount with any of the Participating Funders—the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. This payment will be made directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*. Once payment has been made, any subsequent disputes between the Settlement Class Member and any Third-Party Funders must be litigated or arbitrated in an appropriate

forum outside the claims administration process. *In re Nat'l Football League*, 923 F.3d at 113.

(b) Resolution Reached in Resolution Protocol; No Other Funders Identified. In situations where (1) the Settlement Class Member reaches a timely resolution with all Participating Funders who have identified the Settlement Class Member; and (2) the Settlement Class Member answers "no" to the question described in Rule 4(c) above, the Claims Administrator will direct the Trustee to pay the Resolution Amount(s) to the Participating Funder(s). Any such payments will be deducted from the Settlement Class Member's Monetary Award. The Claims Administrator will then direct the Trustee to pay the remaining balance of the Monetary Award to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. If the Settlement Class Member is represented by a lawyer, this payment will be made to that lawyer. If the Class Member is *pro se*, this payment will be made directly to the Settlement Class Member.

(c) Resolution Reached in Resolution Protocol; Other Funders Identified. In situations where (1) the Settlement Class Member reaches a timely resolution with a Participating Funder, but (2) either fails to reach a resolution with other Participating Funders or answers "yes" and identifies Non-Participating Funders in response to Question 4(c) above, then the Claims Administrator will direct the Trustee to pay the Resolution Amount(s) to the Participating Funder(s) who reached a timely resolution with the Settlement Class Member. Any such payments will be deducted from the Settlement Class Member's Monetary Award. The Claims Administrator will then direct the Trustee to pay the remaining balance of the Monetary Award to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. This payment will be made directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*. Once payment has been made, any subsequent disputes between the Settlement Class Member and any Third-Party Funder must be litigated or arbitrated in an appropriate forum outside of the claims administration process. *In re Nat'l Football League*, 923 F.3d at 113.

**Rule 7. Payment Steps Under Form SWS-5(B).** In cases where Settlement Class Members receive Form SWS-5(B), the Claims Administrator will pay Monetary Claims as follows:

(a) Third-Party Funders Identified. If the Settlement Class Member answers "yes" to the question described in Rule 5(b) above, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. This payment will be made directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*. Once payment has been made, any subsequent disputes between the Settlement Class Member and any Third-Party Funders must be litigated or arbitrated in an

appropriate forum outside the claims administration process. *In re Nat'l Football League*, 923 F.3d at 113.

(b) No Third-Party Funders Identified. If the Settlement Class Member answers "no" to the question described in Rule 5(b) above, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. If the Settlement Class Member is represented by a lawyer, this payment will be made to that lawyer. If the Class Member is *pro se*, this payment will be made directly to the Settlement Class Member.

# RULES GOVERNING THIRD-PARTY FUNDING RESOLUTION PROTOCOL

NFL CONCUSSION SETTLEMENT

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

# RULES GOVERNING THIRD-PARTY FUNDING RESOLUTION PROTOCOL

3/19/2020
542930

## TABLE OF CONTENTS

Page

**TITLE I: GENERAL** ..... 1

Rule 1. The Purpose of These Rules ..... 1
Rule 2. Approval and Modification by the Court and Special Masters ..... 1
Rule 3. Non-Retroactive Application of Modified Rules ..... 1
Rule 4. Definitions Used in These Rules ..... 2

**TITLE II: HOW TO JOIN THE RESOLUTION PROTOCOL** ..... 3

Rule 5. Participation in Resolution Protocol ..... 3
Rule 6. Settlement Class Member's Notice and Consent: Form SWS-5(A) ..... 4
Rule 7. Third-Party Funder Notice ..... 4

**TITLE III: TERMINATION AND RELEASE AGREEMENT PROCESS** ..... 4

Rule 8. Termination and Release Agreement Process ..... 4
Rule 9. Payment Outcomes ..... 5

# RULES GOVERNING THIRD-PARTY FUNDING RESOLUTION PROTOCOL

## TITLE I: GENERAL

**Rule 1. The Purpose of These Rules.** These Rules govern the Third-Party Funding Resolution Protocol. These Rules do not address the enforceability of the original underlying agreements between Third-Party Funders and Settlement Class Members. *See generally In re Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96 (3d Cir. 2019). Instead, they outline an alternative dispute resolution process. Participation in this process is completely voluntary.

Any dispute over the enforceability or validity of a Third-Party Funder Transaction must be litigated or arbitrated in an appropriate forum outside of the claims administration context, subject to "the full array of standard contract defenses" available. *In re Nat'l Football League*, 923 F.3d at 112-13. As the Third Circuit has noted, "some of the class members are cognitively impaired, and it is possible that some of them lacked the capacity to contract at the time they entered into [these] agreements. . . . There may also be issues of unconscionability, fraud, or usury based on the high effective interest rates in the agreements," which may function as "disguised predatory loans." *Id.* at 112. However, if an agreement is found to be enforceable, a Settlement Class Member may risk incurring additional expenses by refusing to pay any of the disputed funds while the dispute over enforceability plays out. These risks may include potential interest obligations and/or the cost of defending a lawsuit. Settlement Class Members might consider seeking legal advice on their options.

In some instances, these Rules call for the Claims Administrator to pay a Monetary Claim directly to a Settlement Class Member, rather than submitting that payment to the Settlement Class Member's lawyer. This payment has no bearing whatsoever on the Settlement Class Member's potential legal obligations. For instance, Settlement Class Members receiving such direct payments might be sued by a Third-Party Funder. A Settlement Class Member **SHOULD NOT** assume that this payment means that his/her lawyer has already paid off all obligations potentially owed to Third-Party Funders.[1]

**Rule 2. Approval and Modification by the Court and Special Masters.** The Court and Special Masters have approved the terms of this Resolution Protocol and have authorized the Claims Administrator to proceed in accordance with this Resolution Protocol. The Special Master may modify this Resolution Protocol at any time, subject to approval of the Court.

**Rule 3. Non-Retroactive Application of Modified Rules.** These Rules were initially published on September 20, 2018.[2] They were modified to reflect their current form on March 19, 2020 (the "Modification Date"). The current version of these Rules only

---

[1] Likewise, direct payment to a Settlement Class Member has no bearing on whether the underlying agreement with a given Third-Party Funder is or is not valid or enforceable.

[2] The September 20, 2018 version of these Rules was called the "Third-Party Funding Resolution Protocol," rather than the "*Rules Governing* Third-Party Funding Resolution Protocol."

applies to Monetary Claims that have not yet received a Notice of Monetary Award as of the Modification Date. For Monetary Claims that have received a Notice of Monetary Award prior to the Modification Date, the September 20, 2018 version of these Rules continues to apply.

**Rule 4. Definitions Used in These Rules.** The capitalized terms in these Rules are defined as follows:

(a) "Declaration of Consent to Substitution" means the form—accessible here—that all Third-Party Funders must complete and submit in order to participate in the Resolution Protocol.

(b) "Final Decision" means the moment the window closes for all potential appeals of a Monetary Award—either because no appeals have been filed and the time for filing appeals has passed, or because appeals that have been filed have been resolved.

(c) "Monetary Award" means a Monetary Award, Derivative Claimant Award, or Supplemental Monetary Award, as those terms are defined, respectively, in Sections 2.1(aaa), 2.1(zzzz), and 2.1(ff) of the Settlement Agreement.

(d) "Monetary Claim" means a claim submitted by a Settlement Class Member for a Monetary Award.

(e) "Notice of Monetary Award" means a Notice of Monetary Award Claim Determination (as that term is defined in Section 2.1(kkk) of the Settlement Agreement) that provides a determination that a Settlement Class Member is entitled to a Monetary Award.

(f) "Non-Participating Funder" means a Third-Party Funder who is not participating in this Resolution Protocol.

(g) "Participating Funder" means a Third-Party Funder who is participating in this Resolution Protocol.

(h) "Payment Rules" mean the Rules Governing Payment of Claims Involving Third-Party Funders, accessible here.

(i) "Resolution Amount" means the amount of money—described by the Participating Funder in the Termination and Release Agreement—that a Participating Funder will accept to resolve any claims arising under the original agreement(s) between the Participating Funder and the Settlement Class Member.

(j) "Resolution Protocol" means the process described in these Rules.

(k) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval

Order and Judgment (Document 6534).

(l) "Settlement Class Member" means a Retired NFL Football Player (or the Representative Claimant of a deceased or incompetent Retired NFL Football Player), or a Derivative Claimant, which is how this term is defined in the Settlement Agreement.

(m) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(n) "Special Master" and "Special Masters" mean any of the Special Masters appointed by the Court, either in its July 13, 2016 Order (Document 6871) or in any subsequent Orders of the Court.

(o) "Third-Party Funder" means a person or entity that engaged in a Third-Party Funder Transaction with a Settlement Class Member.

(p) "Third-Party Funder Transaction" means any agreement, contract, document, or arrangement between a Settlement Class Member and a third party under which: (i) the Settlement Class Member borrowed or received funds from a third party prior to receipt of a Monetary Award from the Settlement Program; and (ii) in exchange, either assigned/attempted to assign any rights related to the Settlement Class Member Monetary Award or Monetary Claim. This definition is meant to be construed broadly, so as to cover all potential cash advance agreements where a third-party entity loans or advances funds in exchange for rights to receive payment from the proceeds of any future Monetary Award, or in exchange for rights to "step into the shoes of" the Settlement Class Member and "seek funds directly from" the Settlement Program.

(q) "Third-Party Funder Transaction List" means the list described in Rule 5(b) of these Rules.

(r) "Termination and Release Agreement" means the form-contract—accessible here—that Participating Funders and Settlement Class Members must sign in order to reach a resolution under the Resolution Protocol, as described in Rule 8 of these Rules.

## TITLE II: HOW TO JOIN THE RESOLUTION PROTOCOL

**Rule 5. Participation in Resolution Protocol.** To participate in the Resolution Protocol, a Third-Party Funder must provide the Claims Administrator with the following two documents:

(a) Declaration of Consent to Substitution. Any Third-Party Funder seeking to participate in the Resolution Protocol must submit a signed and completed "Declaration of Consent to Substitution" form.

(b) Third-Party Funder Transaction List. Third-Party Funders seeking to participate in the Resolution Protocol must also submit a "Third-Party Funder Transaction List." In this list, the Third-Party Funder must identify every Settlement Class Member with whom the Third-Party Funder has entered into a Third-Party Funder Transaction that has not already been resolved. This list must be submitted in an Excel worksheet on a template provided by the Claims Administrator and must provide sufficient information to allow the Claims Administrator to identify each listed Settlement Class Member, including the last four digits of each Settlement Class Member's Social Security Number. The Third-Party Funder is responsible for updating this list—and providing the Claims Administrator with an updated version—whenever any information in the list changes. For instance, if a Settlement Class Member satisfies the amount owed to the Third-Party Funder, the Third-Party Funder must remove the Settlement Class Member from the list and provide an updated version to the Claims Administrator.

**Rule 6. Settlement Class Member's Notice and Consent: Form SWS-5(A).** Once a Settlement Class Member's Monetary Award has received a Final Decision, the Claims Administrator will check to see if he/she has been identified in a Third-Party Funder Transaction List. If so, the Claims Administrator will send a Form SWS-5(A) to the Settlement Class Member,[3] which does the following:

(a) Provides Information to the Settlement Class Member. The form informs the Settlement Class Member that (i) his/her Monetary Claim has received a Final Decision and (ii) one or more Participating Funders have named the Settlement Class Member in a Third-Party Funder Transaction List.

(b) Asks the Settlement Class Member for Consent. As to each Participating Funder who has identified the Settlement Class Member, the form asks the Settlement Class Member to (i) consent or decline to participate in the Resolution Protocol; and (ii) consent or decline to share information regarding his/her claim status with the Participating Funder.

(c) Asks the Settlement Class Member About Third-Party Funder Transactions. The form asks the Settlement Class Member whether he/she has assigned or attempted to assign any settlement benefits from his/her Monetary Claim to any Non-Participating Funders. If the answer is "yes," the form asks the Settlement Class Member to provide all relevant related documents.

**Rule 7. Third-Party Funder Notice.** If the Settlement Class Member consents under Rule 6(b) of these Rules, the Claims Administrator will inform the Participating Funder(s) of the amount and status of the Settlement Class Member's Monetary Award. At this point, the Claims Administrator will also send a Termination and Release Agreement to the Participating Funder(s), which will trigger the Termination and Release Agreement Process described below.

[3] If the Settlement Class Member has *not* been identified on a Third-Party Funder Transaction List, the Claims Administrator will send him/her a Form SWS-5(B), rather than a Form SWS-5(A), as explained in more detail in the Payment Rules.

## TITLE III: TERMINATION AND RELEASE AGREEMENT PROCESS

**Rule 8. Termination and Release Agreement Process.** In any case where (i) one or more Participating Funders exist and (ii) the Settlement Class Member consents to participate in the Resolution Protocol with at least one of those Participating Funders, the Claims Administrator will offer the following opportunity for resolution. This process is completely voluntary. If the Settlement Class Member has multiple Participating Funders, but only consents to participate and share information with some of them, Steps One and Two will only apply to the Participating Funders who have received such consent.

(a) Step One: Once a Settlement Class Member consents to participate and in the Resolution Protocol and share information with a Participating Funder, the Claims Administrator will send a Termination and Release Agreement to the Participating Funder to sign and return within 30 days of receipt. The Termination and Release Agreement asks the Participating Funder to indicate the "Resolution Amount." This is the amount of money that the Participating Funder agrees to accept from the Settlement Class Member to resolve any claims under the original agreement(s) between the Participating Funder and the Settlement Class Member.

(b) Step Two: If the Claims Administrator receives a Termination and Release Agreement completed by the Participating Funder within the 30-day period described in Rule 8(a), it will then send the Termination and Release Agreement to the Settlement Class Member and, if represented, to his/her lawyer. The Settlement Class Member will have 30 days to sign and return the Termination and Release Agreement to signify that (i) he/she agrees with the Resolution Amount and (ii) he/she consents to direct payment of that amount by the Claims Administrator to the Third-Party Funder in exchange for the Third-Party Funder's termination of all relevant agreements/contracts relating to the Third-Party Funder Transaction and relinquishment of all claims arising under that Third-Party Funder Transaction.

Upon request, the Claims Administrator may exercise its discretion to extend the thirty-day periods described in Rules 8(a) and 8(b).

**Rule 9. Payment Outcomes**. If the Settlement Class Member does not reach a timely agreement with any Participating Funders under the process described in Rule 8, then the Claims Administrator will direct that the Settlement Class Member be paid pursuant to Rule 6(a) of the Payment Rules. If the Settlement Class Member reaches an agreement with one or more Participating Funders and sends the Claims Administrator a timely and complete Termination and Release Agreement, the Claims Administrator will direct payment pursuant to Rules 6(b) and 6(c) of the Payment Rules.

# RULES GOVERNING STATUTE OF LIMITATIONS PROCEEDINGS

NFL CONCUSSION SETTLEMENT

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

# RULES GOVERNING STATUTE OF LIMITATIONS PROCEEDINGS

5/31/19

# TABLE OF CONTENTS


Page

**TITLE I: GENERAL** .....1

Rule 1. The Purpose of These Rules .....1
Rule 2. Adoption of These Rules .....1
Rule 3. Definitions Used in These Rules .....1
Rule 4. Statute of Limitations Matters Will Be Handled by the Special Masters .....2
Rule 5. How Things are Submitted and Served Under These Rules .....2
Rule 6. How to Count Time Periods and the Date Something is Submitted in a Statute of Limitations Matter and Extensions of Time .....3

**TITLE II: INITIAL PROCESS AND GOVERNING LAW** .....4

Rule 7. How Statute of Limitations Matters are Presented to the Special Master .....4
Rule 8. The Issue to be Determined in a Statute of Limitations Matter as Described in the Settlement Agreement .....5
Rule 9. Lawsuit Information .....5
Rule 10. Elements Controlled by the Applicable Law .....5
Rule 11. Choice of Law Rules .....5
Rule 12. Wrongful Death Cause of Action or Survival Action .....6
Rule 13. No Consideration of Statute of Repose Issues .....6
Rule 14. Burden of Proof .....6
Rule 15. No Discovery .....6

**TITLE III: BRIEFING AND DECISIONS** .....6

Rule 16. Opening Brief of Representative Claimant .....6
Rule 17. Exhibits to the Opening Brief of Representative Claimant .....7
Rule 18. Submissions by Class Counsel .....7
Rule 19. Brief of NFL Parties .....8
Rule 20. Exhibits to the Brief of NFL Parties .....8
Rule 21. Reply of Representative Claimant .....8
Rule 22. Additional Material Required by the Special Master .....8
Rule 23. Oral Argument .....8
Rule 24. The Record on a Statute of Limitations Matter .....8
Rule 25. Multiple Claims Presenting Common Issues .....9
Rule 26. Decision by the Special Master .....9
Rule 27. Preclusive Effect of a Decision by the Special Master .....9
Rule 28. Notice of Special Master Decision .....9
Rule 29. Withdrawal of a Statute of Limitations Matter .....10
Rule 30. Finality of the Special Master's Decision .....10
Rule 31. Objections to a Special Master Decision .....10
Rule 32. Publishing the Decisions of the Special Master and the Court .....10

# RULES GOVERNING STATUTE OF LIMITATIONS PROCEEDINGS

## TITLE I: GENERAL

**Rule 1. The Purpose of These Rules.** These Rules govern the review by the Special Master under Section 6.2(b) of the Settlement Agreement of the eligibility for a Monetary Award of a Representative Claimant of a deceased Retired NFL Football Player who died before January 1, 2006.

**Rule 2. Adoption of These Rules.** The Special Masters have adopted these Rules in the exercise of their duties pursuant their appointment by the Court in its July 13, 2016 Order (Document 6871). The Special Masters may amend these Rules at any time *sua sponte* or after request by Class Counsel, the NFL Parties or the Claims Administrator and such input from Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3. Definitions Used in These Rules.** All capitalized terms used in these Rules will have the meanings given to them in the Settlement Agreement. In addition:

(a) "Brief of NFL Parties" means the brief submitted by the NFL Parties under Rule 19.

(b) "Claim" means any Claim Package (or portion of a Claim Package) submitted to the Claims Administrator seeking or relating to a Monetary Award.

(c) "Court Portal" means the online system created by the Claims Administrator for the exchange of materials and information between the Court and the Claims Administrator relating to the Settlement Program.

(d) "MDL" means the federal multidistrict litigation established in the United States District Court for the Eastern District of Pennsylvania, *In re: National Football League Players' Concussion Injury Litigation*, MDL No. 2323.

(e) "Objection to Special Master Decision" means an objection to a decision of the Special Master on a Statute of Limitations Matter, as described in Rule 31.

(f) "Opening Brief of Representative Claimant" means the brief submitted by the Representative Claimant under Rule 16.

(g) "Party to the Statute of Limitations Matter" and "Parties to the Statute of Limitations Matter" mean any one or all of Class Counsel, the NFL Parties, Settlement Class Member(s) with a Claim subject to the Statute of Limitations Matter and, where he is assisting an unrepresented Settlement Class Member, the Pro Se Liaison.

(h) "Portal" means the online system created by the Claims Administrator for the exchange of materials and information between Settlement Class Members and the

Claims Administrator, or among Class Counsel, the NFL Parties and the Claims Administrator, in the Settlement Program.

(i) "Pro Se Liaison" means the lawyer appointed by the Court to assist Representative Claimants who are not represented in this process by their own personal lawyer, as described in Rule 18(b).

(j) "Record on a Statute of Limitations Matter" means what may be considered by the Special Master when deciding a Statute of Limitations Matter, as described in Rule 24.

(k) "Reply of Representative Claimant" means a reply submitted by a Representative Claimant under Rule 21.

(l) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).

(m) "Special Master" means any one of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

(n) "Special Master Portal" means the online system created by the Claims Administrator for the exchange of materials and information between a Special Master and the Claims Administrator relating to the Settlement Program.

(o) "Statement of Class Counsel" means the statement submitted by Class Counsel under Rule 18.

(p) "Statute of Limitations Matter" means a Monetary Award claim by a Representative Claimant presenting the determination to be made by the Special Master under Rule 8 and proceeding under these Rules.

**Rule 4. Statute of Limitations Matters Will Be Handled by the Special Masters.** The Court has referred to the Special Masters all determinations under Section 6.2(b) of the Settlement Agreement regarding the eligibility for a Monetary Award of a Representative Claimant of a deceased Retired NFL Football Player who died before January 1, 2006, to be determined in accordance with these Rules.

**Rule 5. How Things are Submitted and Served Under These Rules.**

(a) General Rule: All submissions, notices and decisions under these Rules will be made and served through a Portal or, for anyone not using a Portal, through hard copy by mail or delivery. If a party is represented by a lawyer, service will be made on that lawyer only. If a Representative Claimant who does not have a personal

lawyer is being assisted by the Pro Se Liaison, service will be made on both the Representative Claimant and the Pro Se Liaison.

(b) Party Using a Portal: When submitting any item under these Rules, anyone who uses a Portal will upload the item to the Portal, which will cause it to be served on all other Parties to the Statute of Limitations Matter who use a Portal, and the uploader will mail or deliver the item to any other Party to the Statute of Limitations Matter who does not use a Portal. At the beginning of a Statute of Limitations Matter, the Claims Administrator will identify to the Parties to the Statute of Limitations Matter anyone involved who does not use a Portal.

(c) Party Not Using a Portal: When submitting any item under these Rules, anyone who does not use a Portal will mail or deliver the item to the Claims Administrator, which will upload the item to the Portals of other Parties to the Statute of Limitations Matter, and the party will mail or deliver it to any other Party to the Statute of Limitations Matter who does not use a Portal. To safeguard their confidentiality, materials may not be submitted by email.

(d) Special Master: The Special Master will access all Statute of Limitations Matters and enter orders and decisions on them using the Special Master Portal. No party may send any material directly to a Special Master. Instead, all materials must be submitted to the Claims Administrator.

(e) No Filings on the Court's Docket: The Court will access all Objections to Special Master Decisions and enter rulings on them using the Court Portal. Proceedings under these Rules will not be filed on the Court's ECF docket. No submissions under these Rules may be filed on the Court's ECF docket.

(f) References in these Rules to a page limit on a submission mean double-spaced pages without counting exhibits. Single-spaced submissions cannot exceed one half the number of permitted double-spaced pages. While handwritten submissions are discouraged, the page limit means that number of handwritten pages.

**Rule 6. How to Count Time Periods and the Date Something is Submitted in a Statute of Limitations Matter and Extensions of Time.**

(a) How to Count Time Periods: Any time period prescribed by these Rules will be computed as follows, which is based on Rule 6 of the Federal Rules of Civil Procedure:

(1) Do not count the day that starts the running of any period of time. The first day of the period is the day after this trigger day.
(2) Count every day, including Saturdays, Sundays and legal holidays.
(3) Count the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

(4) Legal holidays are New Year's Day, Martin Luther King, Jr.'s Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other day declared a holiday by the President of the United States or the United States Congress.

(5) An additional three days will be added to any time period specified by these Rules for an action or submission where the acting or responding party was served by mail with the Notice or submission requiring action or response rather than by service on a Portal or delivery.

(b) How to Mark the Date Something is Submitted: A document or any material submitted or served under these Rules will be considered submitted on these dates:

(1) Online: The date uploaded as of the local time of the sender.
(2) By Mail: The postmark date showing the date it was mailed. If there is no postmark date on the item or the date printed is illegible, the date of receipt by the party to whom it was mailed controls.
(3) Overnight Delivery: The date the sender placed the item in the hands of the overnight carrier.
(4) Hand Delivery by Courier: The date the item is received by the party to whom it is delivered.

(c) Extensions of Time: Any deadline imposed by these Rules may be extended (1) by the Special Master in his or her discretion or (2) by the agreement of the Parties to the Statute of Limitations Matter, if approved by the Special Master. Any party seeking an extension of time from the Special Master must:

(1) Notify the other Parties to the Statute of Limitations Matter of the extension requested and determine if they consent or object to the request;

(2) Make the request to the Claims Administrator, stating: (a) the deadline for which an extension is requested; (b) the duration of the extension requested; (c) the deadline date before any extension and the extended deadline date requested; (d) that the requesting party has conferred with the other Parties to the Statute of Limitations Matter and whether they consent or object to the request; and (e) the grounds for the request.

If an extension is granted, further extensions to the same party for the same deadline and/or on the same issue are not likely to be granted. The fact that another party has been granted an extension is not alone sufficient grounds for an extension for other parties.

## TITLE II: INITIAL PROCESS AND GOVERNING LAW

**Rule 7. How Statute of Limitations Matters are Presented to the Special Master.** The Claims Administrator will advise the Special Master of a Statute of Limitations Matter

requiring review and determination under these Rules when the timely Monetary Award Claim Package of the Representative Claimant of a deceased Retired NFL Football Player who died before January 1, 2006, is complete under Section 8.2 of the Settlement Agreement. The Claims Administrator will not present a Statute of Limitations Matter to the Special Master unless such Claim Package was timely submitted to the Claims Administrator and is complete.

**Rule 8. The Issue to be Determined in a Statute of Limitations Matter as Described in the Settlement Agreement.** Section 6.2(b) of the Settlement Agreement requires the Special Master to determine whether a wrongful death or survival claim filed by the Representative Claimant of a deceased Retired NFL Football Player who died before January 1, 2006, would be barred by the statute of limitations under applicable state law as of:

(a) The date the Representative Claimant (or the Retired NFL Football Player before his death) filed litigation against the NFL or the NFL Properties relating to the subject matter of the NFL Concussion Settlement, if such a wrongful death or survival claim was filed before June 25, 2014 (the Settlement Date); or

(b) June 25, 2014 (the Settlement Date), where no such suit had been filed before that date.

**Rule 9. Lawsuit Information.** Upon request by the Claims Administrator, the NFL Parties will provide all information in their possession on whether the Representative Claimant (or the Retired NFL Football Player before his death) filed any litigation against the NFL or the NFL Properties relating to the subject matter of the NFL Concussion Settlement, including the date any such litigation was filed. The Claims Administrator will furnish such information to the Special Master.

**Rule 10. Elements Controlled by the Applicable Law.** The law applicable to the Statute of Limitations Matter pursuant to the choice of law rule selected under Rule 11 will control (a) the date of accrual of a claim by the Representative Claimant (or deceased Retired NFL Football Player) for wrongful death or as a survival action, which will fix the date on which the statute of limitations period began to run; (b) the statute of limitations period; and (c) whether the running of that statute of limitations period is subject to tolling on any basis, including under a discovery rule regarding awareness of injury and/or a cause of action, class action tolling based on the August 17, 2011 filing of the putative class action in *Easterling* v. *Nat'l Football League*, No. 11-cv-5209 (E.D. Pa.), equitable enlargement, tolling or suspension of the limitations period for any reason.

**Rule 11. Choice of Law Rules.** The law applicable to a Statute of Limitations Matter will be determined as follows:

(a) Lawsuit Filed Outside the MDL: If the Representative Claimant (or the Retired NFL Football Player before his death) filed suit against the NFL or the NFL Properties relating to the subject matter of the NFL Concussion Settlement outside the MDL, the choice of law rules of the jurisdiction in which such suit was filed will be used to determine the law that applies to the Statute of Limitations Matter.

(b) Lawsuit Filed Directly in the MDL or No Lawsuit Filed: If the Representative Claimant (or the Retired NFL Football Player before his death) filed suit against the NFL or the NFL Properties relating to the subject matter of the NFL Concussion Settlement directly in the MDL or has not filed suit in any jurisdiction, the choice of law rules of Pennsylvania will be used to determine the law that applies to the Statute of Limitations Matter, unless the Representative Claimant establishes that the choice of law rules of another jurisdiction in which venue would have been appropriate for such suit should be used for that purpose.

**Rule 12. Wrongful Death Cause of Action or Survival Action.** A Claim Package asserting a Qualifying Diagnosis of Death with CTE under Section 5 of Exhibit A-1 to the Settlement Agreement will be considered as a wrongful death cause of action for statute of limitations purposes. All other Qualifying Diagnoses under Exhibit A-1 to the Settlement Agreement will be considered survival actions for statute of limitations purposes.

**Rule 13. No Consideration of Statute of Repose Issues.** Because Section 6.2(b) of the Settlement Agreement refers only to the statute of limitations applicable to claims of Retired NFL Football Players who died before January 1, 2006, no party may raise and the Special Master will not consider any argument or issues regarding any statute of repose of any jurisdiction.

**Rule 14. Burden of Proof.** The Representative Claimant has the burden of establishing to the Special Master it more likely than not that the claim asserted by the Representative Claimant is not barred by the statute of limitations under applicable state law, unless a different burden of proof applies to the resolution of this issue under the state law applicable under Rule 11 to the Statute of Limitations Matter.

**Rule 15. No Discovery.** No requests for production, interrogatories, requests for admission, depositions or other discovery is allowed by or on behalf of any Party in any Statute of Limitations Matter, unless the Special Master determines it to be necessary for the determination of applicable law or of a disputed issue of material fact presented in a Statute of Limitations Matter.

## TITLE III: BRIEFING AND DECISIONS

**Rule 16. Opening Brief of Representative Claimant.** Within 30 days after notice from the Claims Administrator that it has advised the Special Master of a Statute of Limitations Matter requiring adjudication, the Representative Claimant will submit an Opening Brief of up to 25 pages addressing:

(a) Choice of Law: Which state's choice of law rules apply to the claim.

(b) Choice of Law Rules: What are the choice of law rules of that state.

(c) Possible States with an Interest: Unless the Representative Claimant agrees it is not relevant to the choice of law analysis, which states have a connection with the claim and may have an interest in applying their laws to the claim, because of:

(1) Where the Retired NFL Football Player played NFL Football;
(2) Where the Retired NFL Football Player lived; and
(3) Where the Retired NFL Football Player died.

If the Representative Claimant will use any of these facts in the choice of law analysis, the Opening Brief of the Representative Claimant must provide where the Retired NFL Football Player played NFL Football, where he lived and where he died.

(d) Applicable State's Law: Which state's law applies to the claim, under the choice of law rule the Representative Claimant contends applies.

(e) Statute of Limitations Period: The statute of limitations period for a survival action or wrongful death action (Death with CTE claims), under that state's law.

(f) Accrual Date: When the Retired NFL Football Player's cause of action against the NFL or NFL Properties accrued and the limitations period began to run, under that state's law.

(g) Discovery Rule: Whether that state's law recognizes any postponement of the accrual date or tolling of the running of the limitations period based on when the Retired NFL Football Player was aware, or should have been aware, of injury giving rise to a cause of action and/or a cause of action against the NFL or NFL Properties.

(h) Class Action Tolling: Whether that state's law recognizes class action tolling by the filing of the putative class action in *Easterling* v. *Nat'l Football League*, No. 11-cv-5209 (E.D. Pa.) on August 17, 2011.

(i) Other Matters: Any other arguments or matters the Representative Claimant contends are relevant to the statute of limitations analysis under that state's law or otherwise.

On any of these items that require the consideration of evidence to permit the Special Master to make factual findings essential to a determination on the item, the Representative Claimant must describe that evidence in the Opening Brief of Representative Claimant and present any such evidence as exhibits under Rule 17.

**Rule 17. Exhibits to the Opening Brief of Representative Claimant.** The Representative Claimant will submit as exhibits to the Opening Brief any affidavits, documents or other materials the Representative Claimant wishes the Special Master to consider.

**Rule 18. Submissions by Class Counsel.**

(a) Representative Claimant with Personal Counsel: If the Representative Claimant is represented by his/her own lawyer in the Statute of Limitations Matter, Class Counsel may submit, within 10 days after the date of the Opening Brief of the Representative Claimant, a Statement of Class Counsel on the Statute of Limitations Matter, of up to 10 pages.

(b) Representative Claimant without Personal Counsel: If the Representative Claimant is not represented by his/her personal lawyer, a lawyer appointed by the Court to serve as the Pro Se Liaison will assist the Representative Claimant in the preparation and submission of the Opening Brief of the Representative Claimant and exhibits, Reply of the Representative Claimant, and any other submissions or actions of the Representative Claimant in the Statute of Limitations Matter involving that Representative Claimant. Nonetheless, Class Counsel may submit, within 10 days after the date of the Opening Brief of the Representative Claimant, a Statement of Class Counsel on the Statute of Limitations Matter, of up to 10 pages.

**Rule 19. Brief of NFL Parties.** Within 30 days after the date of the later of the Representative Claimant's Opening Brief or the Statement of Class Counsel, the NFL Parties may submit a Brief of NFL Parties of up to 25 pages addressing any of the matters in the Opening Brief of the Representative Claimants or exhibits and any Statement of Class Counsel, and presenting any other matters and argument the NFL Parties wish the Special Master to consider. If the NFL Parties agree that the Representative Claimant's claim should be considered to be timely and not barred by a statute of limitations, the Special Master will direct the Claims Administrator to consider the claim to be timely and there will be no further proceedings in the Statute of Limitations Matter.

**Rule 20. Exhibits to the Brief of NFL Parties.** The NFL Parties will submit as exhibits to its Brief of NFL Parties any affidavits, documents or other materials the NFL Parties wish the Special Master to consider.

**Rule 21. Reply of Representative Claimant.** Within 10 days after the date of the Brief of NFL Parties, the Representative Claimant may submit a Reply of Representative Claimant of up to 10 pages. The Representative Claimant may not submit additional exhibits to the Reply of Representative Claimant, unless the Special Master approves such submission. There will be no further briefs or exhibits permitted, unless the Special Master so directs.

**Rule 22. Additional Material Required by the Special Master.** The Special Master may at any time direct any Party to the Statute of Limitations Matter to submit additional memoranda or material if the Special Master determines that such additional submissions would aid in the consideration of the Statute of Limitations Matter. No other memoranda or materials may be submitted unless permitted by the Special Master.

**Rule 23. Oral Argument.** Within his or her sole discretion, the Special Master may require oral argument, or permit such argument if requested by a Party to the Statute of Limitations Matter, in such time and place and in such manner as the Special Master directs. There will be no testimony, cross-examination or other evidentiary hearing on a Statute of Limitations Matter. Any oral argument may be preserved in an audio recording, but will not be transcribed by a court reporter unless directed by the Special Master. No new evidence not in the Record on a Statute of Limitations Matter may be introduced or referred to in any oral argument.

**Rule 24. The Record on a Statute of Limitations Matter.** The Record on a Statute of Limitations Matter will consist of:

(a) The Settlement Agreement;
(b) The Claim Package on the Claim involved in the Statute of Limitations Matter, including any actions by the Claims Administrator on the Claim;
(c) Opening Brief of Representative Claimant (and any exhibits);
(d) Statement of Class Counsel;
(e) Brief of NFL Parties (and any exhibits);
(f) Reply of Representative Claimant;
(g) Oral argument permitted by the Special Master; and
(h) Any other exhibits, memoranda and submissions directed or permitted by the Special Master.

**Rule 25. Multiple Claims Presenting Common Issues.** The Special Master has discretion to consolidate for purposes of briefing and/or decision the proceedings on any Statute of Limitations Matters that involve common issues of law and/or fact, as well as where the Special Master determines that a collective resolution of an issue will best serve the efficient and equitable administration of the Settlement Agreement. In any instance in which the Special Master has consolidated matters involving common questions of law and/or fact or issues requiring collective resolution, the Special Master may direct that the findings and rulings on such questions have preclusive effect under Rule 27 and may not be re-litigated in any other Statute of Limitations Matter.

**Rule 26. Decision by the Special Master.** The Special Master will issue to the Claims Administrator a decision on a Statute of Limitations Matter within 60 days after the later of the date of the last submission by the parties or the date of any oral argument, unless the Special Master determines that additional time is required for consideration of the Statute of Limitations Matter. The Special Master may make such explanation of the grounds for the decision as the Special Master deems appropriate.

**Rule 27. Preclusive Effect of a Decision by the Special Master.**

(a) Legal Issues: The legal issues under the applicable state law decided by the Special Master in a decision on a Statute of Limitations Matter will be given preclusive effect as to this Program and such issues may not be relitigated in a subsequent Statute of Limitations Matter, unless the Special Master directs otherwise.

(b) Factual Findings: Any factual findings by the Special Master in a decision on a Statute of Limitations Matter that are common to other Statute of Limitations Matters will be given preclusive effect as to this Program and such issues may not be relitigated in a subsequent Statute of Limitations Matter, unless the Special Master directs otherwise.

**Rule 28. Notice of Special Master Decision.** Within five days after the date of a decision by the Special Master on a Statute of Limitations Matter, the Claims Administrator will serve the decision on the Parties to the Statute of Limitations Matter by Portal or mail.

**Rule 29. Withdrawal of a Statute of Limitations Matter**. The Parties to the Statute of Limitations Matter may agree at any time before issuance of the decision by the Special Master (or by the Court on any Objection to Special Master Decision) to withdraw the matter by withdrawal of the Claim or by agreement that the Claim will be treated as not barred by a statute of limitations.

**Rule 30. Finality of the Special Master's Decision.** The Special Master's decision on a Statute of Limitations Matter is subject to appeal to the Court pursuant to Fed. R. Civ. P. 53(f)(3) and (4) and the Court's July 13, 2016 Order appointing the Special Masters. The Court will review *de novo* (that is, anew) any objections to the Special Master's decision.

**Rule 31. Objections to a Special Master Decision.**

(a) A Representative Claimant, Class Counsel or the NFL Parties wishing to object to Special Master decision will present such objection in an Objection to Special Master Decision of up to 10 pages submitted to the Claims Administrator on a Portal or in hard copy within 20 days after the date of the Notice of Special Master Decision under Rule 28, setting forth the arguments in support of the Objection.

(b) The other Parties to the Statute of Limitations Matter may respond in up to 10 pages to the Objection to Special Master Decision, submitted to the Claims Administrator on a Portal or in hard copy within 20 days after the date of the Objection, setting forth the arguments in response to the Objection.

(c) Exhibits to these submissions are permitted, but no party may refer to or attach any evidence that was not in the Record of Statute of Limitations Matter before the Special Master. When submitting an Objection or response to an Objection, the submitting party must mail or deliver the submission to any Party to the Statute of Limitations Matter not using a Portal.

(d) The Court will review *de novo* (that is, anew) an Objection to Special Master Decision and may affirm, modify or reverse the Special Master's decision, or order such other and further relief as the Court deems appropriate. The Claims Administrator will serve the Court's decision on the Parties to the Statute of Limitations Matter. The Court's decision is final and not subject to further review by appeal or otherwise.

**Rule 32. Publishing the Decisions of the Special Master and the Court.** The Special Master and the Court will designate in a decision on a Statute of Limitations Matter whether the decision is to be published or unpublished. The Claims Administrator will post in an aggregated set de-identified copies of each published decision on the official website of the Settlement Program and on the Portal of each Portal user. In addition to their preclusive effect under Rule 27, published decisions of the Special Master and the Court will have precedential value in the Settlement Program on the issues and principles determined in the decision, which means they will serve as guidance for the consideration of the same or similar issues and principles in subsequent Statute of Limitations Matters.

# RULES GOVERNING APPEALS OF PLAYER CHALLENGES TO DERIVATIVE CLAIMANTS

**NFL CONCUSSION SETTLEMENT**

*IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*
No. 2:12-md-02323 (E.D. Pa.)

# RULES GOVERNING APPEALS OF PLAYER CHALLENGES TO DERIVATIVE CLAIMANTS

5/31/19

## TABLE OF CONTENTS

Page

TITLE I: GENERAL ..... 1

Rule 1. The Purpose of These Rules ..... 1
Rule 2. Adoption of These Rules ..... 1
Rule 3. Definitions Used in These Rules ..... 1
Rule 4. Challenge Appeals Will Be Handled by the Special Masters ..... 2
Rule 5. How Things are Submitted and Served Under These Rules ..... 3
Rule 6. How to Count Time Periods and the Date Something is Submitted in a Challenge Appeal and Extensions of Time ..... 3

TITLE II: CHALLENGE APPEAL PROCESS ..... 4

Rule 7. Who May Appeal and What May Be Appealed on Challenges ..... 4
Rule 8. No Other Appeals ..... 5
Rule 9. The Deadline to Note a Challenge Appeal ..... 5
Rule 10. How a Derivative Claimant Notes a Challenge Appeal ..... 5
Rule 11. How a Retired NFL Football Player or Representative Claimant Notes a Challenge Appeal ..... 5
Rule 12. No Appeal Fee ..... 6
Rule 13. Summary of Challenge Determination by the Claims Administrator ..... 6
Rule 14. Additional Material Required by the Special Master ..... 6
Rule 15. No Discovery ..... 6
Rule 16. Oral Argument ..... 6
Rule 17. The Record and Evidence Considered on a Challenge Appeal ..... 7
Rule 18. Remand to the Claims Administrator ..... 7
Rule 19. Standard of Review on a Challenge Appeal ..... 8
Rule 20. Multiple Challenge Appeals Presenting Common Issues and Preclusive Effect of Decisions ..... 8
Rule 21. Decision by the Special Master ..... 8
Rule 22. Notice of Special Master Decision ..... 8
Rule 23. Withdrawal of Challenge Appeal ..... 8
Rule 24. Finality of the Special Master's Decision ..... 8
Rule 25. Objections to a Conclusion of Law in a Decision by the Special Master ..... 9
Rule 26. Publishing the Decisions by the Special Master and Court on Challenge Appeals ..... 9
Rule 27. Effect of Audit ..... 9

# RULES GOVERNING APPEALS OF PLAYER CHALLENGES TO DERIVATIVE CLAIMANTS

## TITLE I: GENERAL

**Rule 1. The Purpose of These Rules.** These Rules govern the appeal to the Special Master by a Derivative Claimant, a Retired NFL Football Player (or the Representative Claimant of a deceased, incapacitated, or incompetent Retired NFL Football Player) from the Claims Administrator's determinations on Challenges by a Retired NFL Football Player (or Representative Claimant) to a Derivative Claimant. As explained in Rule 3(b), a "Challenge" occurs when a Retired NFL Football Player (or Representative Claimant) contends that a Derivative Claimant has no right to share in any Monetary Award to the Retired NFL Football Player (or Representative Claimant).

**Rule 2. Adoption of These Rules.** The Special Masters have adopted these Rules in the exercise of their duties pursuant their appointment by the Court in its July 13, 2016 Order (Document 6871). The Special Masters may amend these Rules at any time *sua sponte* or after request by Class Counsel, the NFL Parties or the Claims Administrator and such input from Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3. Definitions Used in These Rules.** All capitalized terms used in these Rules will have the meanings given to them in the Settlement Agreement. In addition:

(a) "Audit" means the processes of the Claims Administrator for the review of potentially fraudulent claims under Section 10.3 or Section 10.4 of the Settlement Agreement.

(b) "Challenge" means the Retired NFL Football Player's (or Representative Claimant's) contention that an associated Derivative Claimant does not have a right to share 1% of the Monetary Award of the Retired NFL Football Player (or Representative Claimant).

(c) "Challenge Appeal" means an appeal under these Rules from a Challenge Determination Notice issued by the Claims Administrator on a Challenge.

(d) "Challenge Appeal Form" is the form a Derivative Claimant uses to note a Challenge Appeal, as described in Rule 10. In these Rules, making or bringing an appeal is referred to as "noting" an appeal.

(e) "Challenge Determination Notice" means a notice issued by the Claims Administrator announcing its final determination on a Challenge, either granting or denying the Challenge.

(f) "Court Portal" means the online system created by the Claims Administrator for the exchange of materials and information between the Court and the Claims Administrator relating to the Settlement Program.

(g) "Form to Appeal Unsuccessful Challenge to Derivative Claimant" is the form a Retired NFL Football Player (or Representative Claimant) uses to note a Challenge Appeal, as described in Rule 11. As described in Rule 3(d) above, in these Rules, making or bringing an appeal is referred to as "noting" an appeal.

(h) "Objection to Special Master Decision" means an objection to the conclusions of law made by the Special Master in a decision on a Challenge Appeal, as described in Rule 25.

(i) "Party to the Challenge Appeal" and "Parties to the Challenge Appeal" mean one or both of the Retired NFL Football Player (or Representative Claimant) and the Derivative Claimant involved in the Challenge.

(j) "Portal" means the online system created by the Claims Administrator for the exchange of materials and information between Settlement Class Members and the Claims Administrator, or among Class Counsel, the NFL Parties and the Claims Administrator, in the Settlement Program.

(k) "Record on Challenge Appeal" means what may be considered by the Special Master on the Challenge Appeal, as described in Rule 17(a).

(l) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).

(m) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(n) "Special Master" means any one of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

(o) "Special Master Portal" means the online system created by the Claims Administrator for the exchange of materials and information between a Special Master and the Claims Administrator in the Settlement Program.

(p) "Summary of Challenge Determination" is what the Claims Administrator will submit if directed by the Special Master to explain what it did on the Challenge being appealed, as described in Rule 13.

**Rule 4. Challenge Appeals Will Be Handled by the Special Masters.** The Court has referred to the Special Masters all Challenge Appeals, to be determined in accordance with these Rules.

**Rule 5. How Things are Submitted and Served Under These Rules.**

(a) General Rule: All submissions, notices and decisions under these Rules will be made and served through a Portal or, for anyone not using a Portal, through hard copy by mail or delivery. If a party is represented by a lawyer, service will be made on that lawyer only.

(b) Special Master: The Special Master will access all Challenge Appeals and enter orders and decisions on them using the Special Master Portal. No party may send any material directly to the Special Master. Instead, all materials must be submitted to the Claims Administrator.

(c) No Filings on the Court's Docket: The Court will access all Objections to Special Master Decisions and enter rulings on them using the Court Portal. Proceedings under these Rules will not be filed on the Court's docket. No submissions under these Rules may be filed on the Court's docket.

(d) No Service of Documents: For confidentiality reasons and to minimize conflict among the Parties to the Challenge Appeal, the Claims Administrator does not serve the appealing party's documents on the non-appealing party.

(e) References in these Rules to a page limit on a submission mean double-spaced pages without counting exhibits. Single-spaced submissions cannot exceed one half the number of permitted double-spaced pages. While handwritten submissions are discouraged, the page limit means that number of handwritten pages.

**Rule 6. How to Count Time Periods and the Date Something is Submitted in a Challenge Appeal and Extensions of Time.**

(a) How to Count Time Periods: Any time period set by these Rules will be computed as follows, which is based on Rule 6 of the Federal Rules of Civil Procedure:

(1) Do not count the day that starts the running of any period of time. The first day of the period is the day after this trigger day.
(2) Count every day, including Saturdays, Sundays and legal holidays.
(3) Count the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.
(4) Legal holidays are New Year's Day, Martin Luther King, Jr.'s Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other day declared a holiday by the President of the United States or the United States Congress.
(5) An additional three days will be added to any time period specified by these Rules for an action or submission where the acting or responding party was

served by mail with the Notice or submission requiring action or response rather than by service on a Portal or delivery.

(b) How to Mark the Date Something is Submitted: A document or any material submitted or served under these Rules will be considered submitted on these dates:

(1) Online: The date uploaded as of the local time of the sender.
(2) By Mail: The postmark date showing the date it was mailed. If there is no postmark date on the item or the date printed is illegible, the date of receipt by the party to whom it was mailed controls.
(3) Overnight Delivery: The date the sender placed the item in the hands of the overnight carrier.
(4) Hand Delivery by Courier: The date the item is received by the party to whom it is delivered.

(c) Extensions of Time: Any deadline imposed by these Rules may be extended (1) by the Special Master in his or her discretion or (2) by the agreement of the Parties to the Challenge Appeal, if approved by the Special Master. Any party seeking an extension of time from the Special Master must:

(1) Notify the other Parties to the Challenge Appeal of the extension requested and determine if they consent or object to the request;

(2) Make the request to the Claims Administrator, stating: (a) the deadline for which an extension is requested; (b) the duration of the extension requested; (c) the deadline date before any extension and the extended deadline date requested; (d) that the requesting party has conferred with the other Parties to the Challenge Appeal and whether they consent or object to the request; and (e) the grounds for the request.

If an extension is granted, further extensions to the same party for the same deadline and/or on the same issue are not likely to be granted. The fact that another party has been granted an extension is not alone sufficient grounds for an extension for other parties.

## TITLE II: CHALLENGE APPEAL PROCESS

**Rule 7. Who May Appeal and What May Be Appealed on Challenges.** Based on a good faith belief that the determination of the Claims Administrator was incorrect, Challenge Appeals may be noted as follows:

(a) Successful Challenges Where the Claims Administrator Granted the Challenge (which meant that the Derivative Claimant is not eligible for a Derivative Claimant Award): The Derivative Claimant may appeal: (1) whether the state law used was correctly applied; or (2) whether a different state's law should have been used to review the Challenge.

(b) Unsuccessful Challenges Where the Claims Administrator Denied the Challenge (which meant that the Derivative Claimant is eligible for a Derivative Claimant Award): The Retired NFL Football Player (or Representative Claimant) may appeal: (1) whether the state law used was correctly applied; or (2) whether a different state's law should have been used to review the Challenge, but only when a successful Challenge Appeal would result in no Derivative Claimant Award being deducted from the Monetary Award of the Retired NFL Football Player (or Representative Claimant). As a result, if there are any eligible Derivative Claimants not subject to a Challenge by the Retired NFL Football Player (or Representative Claimant), no Challenge Appeal may be noted by the Retired NFL Football Player (or Representative Claimant) as to any Derivative Claimant.

**Rule 8. No Other Appeals.** Unless allowed in other Rules approved by the Special Masters or in orders by the Court, no other determinations by the Claims Administrator with respect to Challenges are appealable to the Special Master.

**Rule 9. The Deadline to Note a Challenge Appeal.** A Retired NFL Football Player (or Representative Claimant) or Derivative Claimant wishing to appeal a Challenge Determination Notice must note a Challenge Appeal within 30 days after the date of the Challenge Determination Notice from the Claims Administrator.

**Rule 10. How a Derivative Claimant Notes a Challenge Appeal.**

(a) To note a Challenge Appeal, a Derivative Claimant must submit to the Claims Administrator a Challenge Appeal Form on a Portal or by mail or delivery. The Challenge Appeal Form is available on each Portal and is included with a Challenge Determination Notice sent by mail to a Derivative Claimant.

(b) The Derivative Claimant must indicate in the Challenge Appeal Form why he or she feels the Challenge Determination Notice was wrong, which will be the issue(s) being appealed that the Special Master will decide on the Challenge Appeal, provided that they are appealable issues under Rule 7.

(c) The Derivative Claimant may submit with the Challenge Appeal Form a statement of up to 10 pages setting forth the arguments of the Derivative Claimant on the issue(s) being appealed and citations to any evidence before the Claims Administrator the Derivative Claimant contends supports the Challenge Appeal. This statement will become part of the Derivative Claimant's Challenge Appeal Form. While exhibits to this submission are permitted, the Derivative Claimant may not refer to or offer any evidence that was not before the Claims Administrator, subject to Rule 17, which covers new evidence.

**Rule 11. How a Retired NFL Football Player or Representative Claimant Notes a Challenge Appeal.**

(a) To note a Challenge Appeal, a Retired NFL Football Player (or Representative Claimant) must submit to the Claims Administrator a Form to Appeal Unsuccessful

Challenge to Derivative Claimant on a Portal or by mail or delivery. The Form to Appeal Unsuccessful Challenge to Derivative Claimant is available on each Portal and is included with a Challenge Determination Notice sent by mail to a Retired NFL Football Player (or Representative Claimant).

(b) The Retired NFL Football Player (or Representative Claimant) must indicate in the Form to Appeal Unsuccessful Challenge to Derivative Claimant why he or she feels the Challenge Determination Notice was wrong, which will be the issue(s) being appealed that the Special Master will decide on the Challenge Appeal, provided that they are appealable issues under Rule 7.

(c) The Retired NFL Football Player (or Representative Claimant) may submit with the Form to Appeal Unsuccessful Challenge to Derivative Claimant a statement of up to 10 pages setting forth the arguments of the Retired NFL Football Player (or Representative Claimant) on the issue(s) being appealed and citations to any evidence before the Claims Administrator the Retired NFL Football Player (or Representative Claimant) contends supports the Challenge Appeal. This statement will become part of the Retired NFL Football Player (or Representative Claimant)'s Challenge Appeal Form. While exhibits to this submission are permitted, the Retired NFL Football Player (or Representative Claimant) may not refer to or offer any evidence that was not before the Claims Administrator, subject to Rule 17, which covers new evidence.

**Rule 12. No Appeal Fee.** No fee is required for a Challenge Appeal.

**Rule 13. Summary of Challenge Determination by the Claims Administrator.** The Special Master may at any time direct the Claims Administrator to submit a Summary of Challenge Determination to explain what occurred in its processing of a Challenge.

**Rule 14. Additional Material Required by the Special Master.** The Special Master may at any time direct a Party to the Challenge Appeal to submit additional memoranda or material if the Special Master determines that such submissions would aid in the consideration of the Challenge Appeal. No other memoranda or materials may be submitted in a Challenge Appeal unless permitted by the Special Master.

**Rule 15. No Discovery.** No requests for production, interrogatories, requests for admission, depositions or other discovery is allowed by or on behalf of any Party to the Challenge Appeal.

**Rule 16. Oral Argument.** Within his or her sole discretion, the Special Master may require oral argument, or permit such argument if requested by a Party to the Challenge Appeal, in such time and place and in such manner as the Special Master directs. There will be no testimony, cross-examination or other evidentiary hearing on a Challenge Appeal. Any oral argument may be preserved in an audio recording, but will not be transcribed by a court reporter unless directed by the Special Master. No new evidence not in the Record on Challenge Appeal may be introduced or referred to in any oral argument.

**Rule 17. The Record and Evidence Considered on a Challenge Appeal.**

(a) The Record on Challenge Appeal in a Challenge Appeal consists of:

(1) The Settlement Agreement;
(2) The Derivative Claim Package at issue in the Challenge Appeal, including any actions by the Claims Administrator on the Challenge;
(3) Any documents submitted by the Retired NFL Football Player (or Representative Claimant) and Derivative Claimant to the Claims Administrator regarding the Challenge;
(4) The Challenge Appeal Form or Form to Appeal Unsuccessful Challenge to Derivative Claimant (and any exhibits);
(5) Summary of Challenge Determination from the Claims Administrator;
(6) Oral argument permitted by the Special Master; and
(7) Any other exhibits, memoranda and submissions directed or permitted by the Special Master.

(b) A Party to the Challenge Appeal may not introduce or refer to any evidence that had not been submitted to the Claims Administrator before the Claims Administrator issued the Challenge Determination Notice being appealed, subject to the following subsection (c) of this Rule.

(c) If any Party to the Challenge Appeal has new evidence not submitted to the Claims Administrator before the Claims Administrator issued the Challenge Determination Notice being appealed that it wishes considered on the Challenge Appeal, it must identify such evidence and submit it to the Claims Administrator along with the submission by that party in which it wishes to use the new evidence. The Special Master will determine whether to permit the party to introduce the new evidence. If the Special Master determines not to allow introduction of the new evidence, the Challenge Appeal will proceed without it and no Party to the Challenge Appeal may refer to or rely upon it. If the Special Master determines to allow introduction of the new evidence, the Special Master will remand the Challenge Appeal to the Claims Administrator under Rule 18 for re-review using the new evidence.

**Rule 18. Remand to the Claims Administrator.**

(a) Under Rule 17 and at any time the Special Master determines it necessary to do so, the Special Master may remand any Challenge Appeal to the Claims Administrator for further processing.

(b) The Parties to the Challenge Appeal may agree to remand the Challenge Appeal to the Claims Administrator at any time.

(c) If a Challenge Appeal is remanded to the Claims Administrator, the Challenge Appeal before the Special Master will terminate. The Claims Administrator will re-review the Challenge and issue a new Challenge Determination Notice, which may be subject to a new Challenge Appeal.

**Rule 19. Standard of Review on a Challenge Appeal.** The Special Master will decide an issue on a Challenge Appeal based upon a showing by the appealing party of clear and convincing evidence. Under this standard, the appealing party must convince the Special Master that there is a high degree of probability that the determination of the Claims Administrator being appealed was wrong.

**Rule 20. Multiple Challenge Appeals Presenting Common Issues and Preclusive Effect of Decisions.** The Special Master has discretion to consolidate for purposes of decision the proceedings on any Challenge Appeals that involve common issues of law and/or fact, as well as where the Special Master determines that a collective resolution of an issue will best serve the efficient and equitable administration of the Settlement Agreement. In any Challenge Appeal, including any instance in which the Special Master has consolidated matters involving common questions of law and/or fact or issues requiring collective resolution, the Special Master may direct that the findings and rulings on such questions and issues have preclusive effect and may not be re-litigated in any other Challenge Appeal.

**Rule 21. Decision by the Special Master.** The Special Master will issue to the Claims Administrator a written decision on a Challenge Appeal within 60 days after the later of the date of the last submission by the appealing Settlement Class Member or the Claims Administrator or the date of any oral argument, unless the Special Master determines that additional time is required for consideration of the Challenge Appeal. In such decision, the Special Master may affirm or reverse the determination of the Claims Administrator and may direct such other and further relief as the Special Master deems appropriate. The Special Master will make such explanation on the grounds of the decision as he or she deems necessary under the circumstances.

**Rule 22. Notice of Special Master Decision.** Within five days after the date of a decision by the Special Master on a Challenge Appeal, the Claims Administrator will notify the Parties to the Challenge Appeal of such decision through the Portal or mail.

**Rule 23. Withdrawal of Challenge Appeal**. The party who brought the Challenge Appeal may withdraw the Challenge Appeal by notice to the Claims Administrator at any time while the Challenge Appeal is pending or as otherwise permitted by the Special Master. If a Challenge Appeal is withdrawn, the determination of the Claims Administrator subject to the Challenge Appeal will be considered final as of the date of the withdrawal.

**Rule 24. Finality of the Special Master's Decision.** The Special Master's decision on a Challenge Appeal is final and binding on the Parties to the Challenge Appeal and the Claims Administrator and is not subject to appeal or review by the Court, except that pursuant to Fed. R. Civ. P. 53(f)(4) and the Court's July 13, 2016 Order appointing the Special Masters, the Court will review *de novo* (that is, anew) any objection to the Special Master's conclusions of law. The Special Master will identify in each decision the conclusion(s) of law to which a Settlement Class Member may object and have reviewed by the Court.

**Rule 25. Objections to a Conclusion of Law in a Decision by the Special Master.**

(a) A Party to the Challenge Appeal wishing to object to a conclusion of law by the Special Master will present such objection of up to 10 pages in an Objection to Special Master Decision submitted to the Claims Administrator on a Portal or in hard copy within 20 days after the date of the Notice of Special Master Decision under Rule 22, setting forth the arguments in support of the Objection.

(b) Exhibits to this submission are permitted, but no party may refer to or attach any evidence that was not in the Record on Challenge Appeal before the Special Master.

(c) For the same reasons stated in Rule 5(d), the Claims Administrator does not serve the objecting party's documents on the non-objecting party.

(d) The Court will review *de novo* (that is, anew) an Objection to Special Master Decision and may affirm, modify or reverse the Special Master's decision and order such other and further relief as the Court deems appropriate. The Claims Administrator will serve the Court's decision on the Parties to the Challenge Appeal. The Court's decision is final and not subject to further review by appeal or otherwise.

**Rule 26. Publishing the Decisions by the Special Master and Court on Challenge Appeals.** The Special Master and the Court will designate in a decision on a Challenge Appeal whether the decision is to be published or unpublished. The Claims Administrator will post in an aggregated set de-identified copies of each published decision on the official website of the Settlement Program and on the Portal of each Portal user. In addition to their preclusive effect under Rule 20, published decisions of the Special Master and the Court will have precedential value in the Settlement Program on the issues and principles determined in the decision, which means they will serve as guidance for the consideration of the same or similar issues and principles in subsequent Challenge Appeals.

**Rule 27. Effect of Audit.** If the Claims Administrator places a Settlement Class Member in Audit at any time, the processes on Challenge Appeal and any time periods in these Rules applicable to the Challenge Appeal will be suspended until the conclusion of the Audit.

# RULES GOVERNING THE AUDIT OF CLAIMS

NFL CONCUSSION SETTLEMENT

*IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*
No. 2:12-md-02323 (E.D. Pa.)

# RULES GOVERNING THE AUDIT OF CLAIMS

3/18/20

## TABLE OF CONTENTS


PAGE

**TITLE I: GENERAL** ........ 1

Rule 1. The Purpose of These Rules ........ 1
Rule 2. Adoption of These Rules ........ 1
Rule 3. Definitions Used in These Rules ........ 1
Rule 4. How Things are Submitted and Served Under These Rules ........ 2
Rule 5. How to Count Time Periods and the Date Something is Submitted and Extensions of Time ........ 3

**TITLE II: PROCEEDINGS BY THE CLAIMS ADMINISTRATOR** ........ 4

Rule 6. Claims Administrator's Audit Procedures ........ 4
Rule 7. Audit of Claims by the Claims Administrator ........ 4
Rule 8. The Effect of an Audit on Claims Processing Deadlines ........ 5
Rule 9. Notice of Audit ........ 5
Rule 10. Required Information and Records ........ 5
Rule 11. Denial of Claim for Refusal to Cooperate with an Audit ........ 5
Rule 12. Standard of Proof Applied by the Claims Administrator ........ 6
Rule 13. Withdrawal of Claim in Audit ........ 6
Rule 14. Completion of an Audit Without Report to Class Counsel and the NFL Parties ........ 6

**TITLE III: PROCEEDINGS BY CLASS COUNSEL AND THE NFL PARTIES** ........ 7

Rule 15. Report of Adverse Finding in Audit ........ 7
Rule 16. Actions After an Audit Report ........ 7
Rule 17. Statements of Position by Class Counsel and the NFL Parties to the Special Masters ........ 7

**TITLE IV: PROCEEDINGS BY THE SPECIAL MASTERS** ........ 7

Rule 18. Proceedings After Referral of an Audit Report to the Special Masters ........ 7
Rule 19. Notice to the Settlement Class Member(s) or Subject of Investigation ........ 8
Rule 20. Submission by the Settlement Class Member Subject of Investigation ........ 8
Rule 21. Reply Memoranda by Class Counsel and the NFL Parties ........ 8
Rule 22. Additional Material Required by the Special Master ........ 8
Rule 23. No Discovery ........ 8
Rule 24. Oral Argument ........ 8
Rule 25. The Record of the Audit Proceeding ........ 9
Rule 26. Multiple Claims Presenting Common Issues and Preclusive Effect of Decisions ........ 9
Rule 27. Decision by the Special Master ........ 9

**PAGE**

Rule 28. Standard of Proof Applicable to the Special Master....................9
Rule 29. Remand to the Claims Administrator....................10
Rule 30. Dismissal of Proceeding....................10
Rule 31. Relief on Adverse Decision....................10
Rule 32. Notice of Special Master Decision....................11
Rule 33. Finality of the Decision by the Special Master....................11
Rule 34. Objections to a Conclusion of Law in a Decision by the Special Master....................11
Rule 35. Publishing the Decisions by the Special Master and Court....................11

# RULES GOVERNING THE AUDIT OF CLAIMS

## TITLE I: GENERAL

**Rule 1. The Purpose of These Rules.** These Rules govern the Audit by the Claims Administrator of Claims for Monetary Awards and Derivative Claimant Awards in the Settlement Program established under the Settlement Agreement and disposition of potentially fraudulent Claims referred to the Special Master after completion of an Audit.

**Rule 2. Adoption of These Rules.** The Special Masters have adopted these Rules in the exercise of their duties pursuant to their appointment by the Court in its July 13, 2016 Order (Document 6871). The Special Masters may amend these Rules at any time *sua sponte* or after request by Class Counsel, the NFL Parties or the Claims Administrator and such input from Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate. While neither Class Counsel nor the NFL Parties may direct the Claims Administrator to place a Claim in Audit, nothing in these Rules is intended to or will affect the rights of Class Counsel or Counsel for the NFL Parties to conduct independent audits pursuant to Section 10.3(a) of the Settlement Agreement.

**Rule 3. Definitions Used in These Rules.** All capitalized terms used in these Rules will have the meanings given to them in the Settlement Agreement. In addition:

(a) "Audit" means the processes of the Claims Administrator for the review of potentially fraudulent Claims described in Title II of these Rules.

(b) "Audit Proceeding" means a proceeding under these Rules regarding an Audit Report.

(c) "Audit Report" means the written report of the Claims Administrator required under Rule 15 of its findings in a completed Audit and the evidence developed in the Audit.

(d) "Claim" means any Claim Package (or portion of a Claim Package) submitted or that may be submitted to the Claims Administrator seeking or relating to a Monetary Award or Supplemental Monetary Award, or a Derivative Claim Package (or any portion of a Derivative Claim Package) submitted or that may be submitted to the Claims Administrator seeking a Derivative Claimant Award.

(e) "Claims Information" means the confidential information about Claims as defined in the Court's March 22, 2017 Confidentiality Order (Document 7234).

(f) "Party to the Audit Proceeding" and "Parties to the Audit Proceeding" mean any one of or all of Class Counsel, the NFL Parties, any Settlement Class Member(s) with a Claim identified in and/or related to the Audit Report and any Subject of Investigation.

(g) "Portal" means the online system created by the Claims Administrator for the exchange of materials and information between Settlement Class Members and the

Claims Administrator, or among Class Counsel, the NFL Parties and the Claims Administrator, in the Settlement Program.

(h) "Record of the Audit Proceeding" means what may be considered by the Special Master in the review of an Audit Report, as described in Rule 25.

(i) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).

(j) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(k) "Special Master" and "Special Masters" mean any one or both of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

(l) "Special Master Portal" means the online system created by the Claims Administrator for the exchange of materials and information between a Special Master and the Claims Administrator relating to the Settlement Program.

(m) "Subject of Investigation" means a lawyer, law firm, claims service provider, third party funder, or other person or entity that is the focus of an Audit, other than a Settlement Class Member or the healthcare providers involved in a Claim.

**Rule 4. How Things are Submitted and Served Under These Rules.**

(a) General Rule: All submissions, notices and decisions under these Rules will be made and served or provided through a Portal or, for anyone not using a Portal, through hard copy by mail or delivery. If a party is represented by a lawyer, service will be made on that lawyer only.

(b) Party Using a Portal: When submitting any item under these Rules, anyone who uses a Portal will upload the item to the Portal, which will cause it to be served on all other Parties to the Audit Proceeding who use a Portal, and the uploader will mail or deliver the item to any other Party to the Audit Proceeding who does not use a Portal. At the beginning of each Audit Proceeding, the Claims Administrator will identify to the Parties to the Audit Proceeding involved anyone who does not use a Portal. Notwithstanding the foregoing, to preserve the confidentiality of Claims Information, in any Audit Proceeding involving multiple Settlement Class Members, the submissions of one Settlement Class Member or group of Settlement Class Members will not be served by portal or by mail on the other Settlement Class Members in the Audit Proceeding.

(c) Party Not Using a Portal: When submitting any item under these Rules, anyone who does not use a Portal will mail or deliver the item to the Claims Administrator, which

will upload the item to the Portal, and the party will mail or deliver the item to any other Party to the Audit Proceeding who does not use a Portal. To safeguard their confidentiality, materials may not be submitted by email in an Audit Proceeding.

(d) Special Masters: The Special Masters will access all Audit Reports and enter orders and decisions on them using the Special Master Portal. No party may send any material directly to a Special Master. Instead, all materials must be submitted to the Claims Administrator.

(e) No Filings on the Court's Docket: The Court will access all Objections to Special Master Decision and enter rulings on them using the Court Portal. Proceedings under these Rules will not be filed on the Court's docket. No submissions under these Rules may be filed on the Court's docket.

(f) References in these Rules to a page limit on a submission mean double-spaced pages without counting exhibits. Single-spaced submissions cannot exceed one half the number of permitted double-spaced pages. While handwritten submissions are discouraged, the page limit means that number of handwritten pages.

**Rule 5. How to Count Time Periods and the Date Something is Submitted and Extensions of Time.**

(a) How to Count Time Periods: Any time period set by these Rules will be computed as follows, which is based on Rule 6 of the Federal Rules of Civil Procedure:

(1) Do not count the day that starts the running of any period of time. The first day of the period is the day after this trigger day.
(2) Count every day, including Saturdays, Sundays and legal holidays.
(3) Count the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.
(4) Legal holidays are New Year's Day, Martin Luther King, Jr.'s Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other day declared a holiday by the President of the United States or the United States Congress.
(5) An additional three days will be added to any time period specified by these Rules for an action or submission where the acting or responding party was served by mail with the Notice or submission requiring action or response rather than by service on a Portal or delivery.

(b) How to Mark the Date Something is Submitted: A document or any material submitted or served under these Rules will be considered submitted on these dates:

(1) Online: The date uploaded as of the local time of the sender.

(2) By Mail: The postmark date showing the date it was mailed. If there is no postmark date on the item or the date printed is illegible, the date of receipt by the party to whom it was mailed controls.
(3) Overnight Delivery: The date the sender placed the item in the hands of the overnight carrier.
(4) Hand Delivery by Courier: The date the item is received by the party to whom it is delivered.

(c) Extensions of Time: Any deadline imposed by these Rules may be extended (1) by the Special Master in his or her discretion or (2) by the agreement of the Parties to the Audit Proceeding, if approved by the Special Master. Any party seeking an extension of time from the Special Master must:

(1) Notify the other Parties to the Audit Proceeding of the extension requested and determine if they consent or object to the request;

(2) Make the request to the Claims Administrator, stating: (a) the deadline for which an extension is requested; (b) the duration of the extension requested; (c) the deadline date before any extension and the extended deadline date requested; (d) that the requesting party has conferred with the other Parties to the Audit Proceeding and whether they consent or object to the request; and (e) the grounds for the request.

If an extension is granted, further extensions to the same party for the same deadline and/or on the same issue are not likely to be granted. The fact that another party has been granted an extension is not alone sufficient grounds for an extension for other parties.

## TITLE II: PROCEEDINGS BY THE CLAIMS ADMINISTRATOR

**Rule 6. Claims Administrator's Audit Procedures.** With the approval of Class Counsel, Counsel for the NFL Parties and the Special Masters, pursuant to Settlement Agreement Section 10.3(b) and Section 10.4, the Claims Administrator has established and implemented the Audit procedures to detect and prevent fraudulent submissions to and payments of fraudulent Claims from the Monetary Award Fund.

**Rule 7. Audit of Claims by the Claim Administrator.** The Claims Administrator conducts Audits as a result of the following:

(a) Random and Mandatory Audit Process: An Audit by the Claims Administrator of a Claim pursuant to Section 10.3(c) of the Settlement Agreement (10% of qualifying Claims monthly) or Section 10.3(d) of the Settlement Agreement (mandatory audit in three Claim scenarios).

(b) Specific Claims or Groups of Claims: An Audit by the Claims Administrator of a Claim or a group of Claims under Sections 8.6(b), 10.3(b) or 10.4 of the Settlement Agreement based on the Claims Administrator's own detection processes or from

information received from Class Counsel, Counsel for the NFL Parties or any third-party regarding fraud, misrepresentations, omissions, or concealment of material facts relating to Claims by a Settlement Class Member, the physician providing the Qualifying Diagnosis or other healthcare provider, a lawyer, law firm or anyone acting on behalf of the Settlement Class Member, or any other party.

(c) Information from Class Counsel or the NFL Parties: Class Counsel and the NFL Parties may provide the Claims Administrator at any time any information and materials either believes may affect the integrity of submitted or potential Claims in the Settlement Program for the Claims Administrator to consider in its discretion. The Claims Administrator may use such information in its discretion and will determine the extent to which and time such information will be disclosed to any Settlement Class Member(s) affected by the information and to Class Counsel and the NFL Parties, if not previously provided to them.

**Rule 8. The Effect of an Audit on Claims Processing Deadlines.** The claims processing deadlines in the Settlement Agreement are suspended, at the time the Claims Administrator places a Claim in Audit, wherever the Claim is at the time in the review, appeal or payment process. The Claims Administrator may place a Claim in Audit at any time, regardless of its processing or payment status, even if previously found payable or paid. A Claim in Audit cannot be paid until the Audit is concluded without an adverse finding as to the Claim.

**Rule 9. Notice of Audit.** If the Claims Administrator places a Claim in Audit, it will so notify Class Counsel and the NFL Parties and the Settlement Class Member with the Claim. Such notice will direct the Settlement Class Member to preserve any and all documents relevant to the Claim. The Claims Administrator also may provide notice to the Settlement Class Member's attorney, diagnosing physician or other healthcare provider or party involved in the Claim requiring preservation of such documents.

**Rule 10. Required Information and Records.** The Claims Administrator may require a Settlement Class Member, within 90 days or such other time as necessary and reasonable under the circumstances, to submit to the Claims Administrator such records and information as may be necessary and appropriate to audit the Claim of the Settlement Class Member, including the records and information described in Sections 10.3(e) and 10.3(f) of the Settlement Agreement. The Claims Administrator also may require persons and entities other than the Settlement Class Member to submit such records and information within 90 days or such other time as necessary and reasonable under the circumstances. Any request by the Claims Administrator for records or information in connection with an Audit will have the force and effect of a subpoena under Fed. R. Civ. P. 45 and may be served by any means that will cause the recipient to receive it. The Claims Administrator has the authority to take testimony, issue follow-up requests for information and records, and/or obtain additional materials and information pursuant to Fed. R. Civ. P. 45 as it deems reasonably necessary to complete the Audit.

**Rule 11. Denial of Claim for Refusal to Cooperate with an Audit.** Pursuant to Section 10.3(b)(ii) of the Settlement Agreement, the Claims Administrator may deny, without right to appeal, the Claim of a Settlement Class Member who refuses to cooperate with an audit, including by unreasonably failing or refusing to obtain and provide the Claims Administrator

with all the records and information sought within the time frame specified. Settlement Class Members are considered responsible for obtaining or having sent to the Claims Administrator records and information requested by the Claims Administrator from any healthcare provider or other person whose information the Settlement Class Member submitted in a Claim Package.

**Rule 12. Standard of Proof Applied by the Claims Administrator.**

(a) Standard of Proof: If the Claims Administrator determines there is a reasonable basis to support a finding that there has been a misrepresentation, omission or concealment of a material fact made in connection with a Claim by the Settlement Class Member, the Claims Administrator will report the Claim to the Parties and then refer it to the Special Masters as permitted by these Rules. This standard applies to all Audits by the Claims Administrator, including those under Section 10.3(j) of the Settlement Agreement concerning possible fraud in connection with a Claim.

(b) Fraudulent Intent Not Required: This standard of proof does not require the Claims Administrator to determine whether the misrepresentation, omission or concealment was intentional.

(c) Materiality: A fact is material if it did affect or has any potential to affect whether the Settlement Class Member qualifies for a Monetary Award, Supplemental Monetary Award or Derivative Claimant Award and/or the amount of such award in favor of the Settlement Class Member under the provisions of the Settlement Agreement.

**Rule 13. Withdrawal of Claim in Audit**. The Claims Administrator has discretion to allow a Settlement Class Member to withdraw a Claim at any time after Notice of Audit under Rule 9. The Claims Administrator, however, also has the discretion to continue the Audit of a Claim after withdrawal if necessary under the circumstances to prevent practices or sources of misrepresented or fraudulent Claims. Unless the Settlement Class Member has been disqualified from participation in the Settlement Program under Section 10.3(i) of the Settlement Agreement or Rule 31 or the Special Master orders otherwise, the Settlement Class Member may submit a new Claim based on a Qualifying Diagnosis from the Baseline Assessment Program or a Qualified MAF Physician. The Claims Administrator will process the new Claim under the Settlement Agreement, including its Audit provisions.

**Rule 14. Completion of an Audit Without Report to Class Counsel and the NFL Parties.** If the Claims Administrator determines in an Audit there is no reasonable basis to support a finding that there has been a misrepresentation, omission, or concealment of a material fact made in connection with a Claim, the Claim will be removed from Audit and the process of issuing a Monetary Award or Derivative Claimant Award, subject to appeal, will proceed from the point at which the processing of the Claim was suspended for the Audit. The Claims Administrator will notify the Settlement Class Member of the removal of the Claim from Audit. The Claims Administrator has discretion to modify processing deadlines applicable to a Claim removed from Audit as reasonably necessary under the circumstances to prevent undue hardship to a Settlement Class Member or a Party from the resumption of a time period.

## TITLE III: PROCEEDINGS BY CLASS COUNSEL AND THE NFL PARTIES

**Rule 15. Report of Adverse Finding in Audit.** If the Claims Administrator determines upon completion of an Audit there is a reasonable basis to support a finding that there has been a misrepresentation, omission or concealment of a material fact made in connection with a Claim, the Claims Administrator will furnish its Audit Report to Class Counsel and the NFL Parties and recommend that the Claim(s) be referred to the Special Masters. An Audit Report may concern one Claim or a group of Claims with a shared source or other common characteristics.

**Rule 16. Actions After an Audit Report.**

(a) Referral to the Special Masters: Within 15 days after the date of the Claims Administrator's Audit Report under Rule 15, Class Counsel and the NFL Parties will notify the Claims Administrator whether they agree with the Claims Administrator's recommendation to refer the Audit Report to the Special Masters. Failure to respond within 15 days will be considered to be agreement to referral. If either or both of Class Counsel and the NFL Parties agree to referral, the Claims Administrator will refer the Audit Report to the Special Masters and so notify Class Counsel and the NFL Parties.

(b) No Referral to the Special Masters: If both Class Counsel and the NFL Parties timely notify the Claims Administrator they do not agree to referral of the Audit Report to the Special Masters, the Claims Administrator will remove the affected Claim(s) from Audit and resume their processing.

**Rule 17. Statements of Position by Class Counsel and the NFL Parties to the Special Masters.** Within 20 days after the date of the Claims Administrator's referral of the Audit Report to the Special Masters, Class Counsel and the NFL Parties may submit to the Special Masters a statement of position and recommendations of up to 10 pages, which may include, without limitation, the recommendation that the Special Masters direct additional investigation or order further relief. Such submissions may include supporting exhibits and are subject to the confidentiality terms afforded to Claims Information. A decision by Class Counsel or the NFL Parties not to submit a statement will not be given any effect or weight in any proceeding before the Claims Administrator, Special Masters or the Court concerning the Claim(s) subject to the Audit Report or any other Claim(s).

## TITLE IV: PROCEEDINGS BY THE SPECIAL MASTERS

**Rule 18. Proceedings After Referral of an Audit Report to the Special Masters.** After review of the Audit Report and any statements of position from Class Counsel and the NFL Parties under Rule 17, the Special Master may, in his or her discretion (a) accept the referral for further proceedings under this Title IV; (b) direct that further investigation be conducted by the Claims Administrator before accepting the referral; (c) direct that that the Claims Administrator remove the Claim(s) from Audit and resume their processing; or (d) order such other relief as the Special Master deems appropriate.

**Rule 19. Notice to the Settlement Class Member(s) or Subject of Investigation.** Within 10 days after the Special Master's acceptance of the referral of an Audit Report under Rule 18 or as directed by the Special Master, the Claims Administrator will notify each Settlement Class Member with a Claim identified in and/or related to the Audit Report, and/or the Subject of Investigation, of the referral and provide a copy of the Audit Report or a summary of the Audit Report, after any redactions deemed necessary by the Claims Administrator to protect confidential Claims Information, as well as copies of the Rule 17 Statements of Position of Class Counsel and the NFL Parties, if any.

**Rule 20. Submission by the Settlement Class Member or Subject of Investigation.** Within 30 days after the date of the notice under Rule 19, the Settlement Class Member(s) with a Claim identified in and/or related to the Audit Proceeding, and/or a Subject of Investigation, may submit to the Claims Administrator a memorandum of up to 25 pages addressing the matters raised in the notice, along with exhibits and any additional evidence the Settlement Class Member(s) and/or Subject of Investigation wishes the Special Master to consider. The Claims Administrator will upload this submission to the Portals of Class Counsel and the NFL Parties.

**Rule 21. Reply Memoranda by Class Counsel and the NFL Parties.** Within 20 days after the date of a submission by a Settlement Class Member or Subject of Investigation under Rule 20, Class Counsel and the NFL Parties may submit to the Claims Administrator a Reply Memorandum of up to 25 pages. These memoranda may not refer to or introduce any evidence not already in the Record of the Audit Proceeding, unless necessary to respond to any new evidence submitted by the Settlement Class Member(s) and/or Subject of Investigation under Rule 20. The Claims Administrator will serve these memoranda on the Settlement Class Member(s) and/or Subject of Investigation who are Parties to the Audit Proceeding, with redactions deemed necessary by the Claims Administrator to protect any confidential Claims Information regarding a Settlement Class Member other than the recipient of the memoranda. In any Audit Proceeding involving multiple Settlement Class Members with different dates for their Rule 20 submissions, the 20 days for Class Counsel and the NFL Parties to submit their Reply Memorandums will begin to run after the date of the last such submission by any Settlement Class Member.

**Rule 22. Additional Material Required by the Special Master.** If he or she determines that additional submissions would aid in the consideration of the Audit Report, the Special Master may at any time direct any Party to the Audit Proceeding, the Claims Administrator and any other person or entity whose participation or response is deemed necessary to submit additional memoranda or material. No other memoranda or materials may be submitted in an Audit Proceeding unless permitted by the Special Master.

**Rule 23. No Discovery.** No requests for production, interrogatories, requests for admission, depositions or other discovery is allowed by or on behalf of any Party to the Audit Proceeding.

**Rule 24. Oral Argument.** Within his or her sole discretion, the Special Master may require oral argument, or permit such argument if requested by a Party to the Audit Proceeding, in such time and place and in such manner as the Special Master directs. There will be no testimony, cross-examination or other evidentiary hearing on an Audit Proceeding. Any oral

argument may be preserved in an audio recording but will not be transcribed by a court reporter unless directed by the Special Master. No new evidence not in the Record of an Audit Proceeding may be introduced or referred to in any oral argument.

**Rule 25. The Record of the Audit Proceeding.** The record before the Special Masters in the Audit Proceeding will consist of:

(a) The Claim Package(s) on the Claim(s) subject to the Audit Report;

(b) The Audit Report;

(c) Any summary of the Audit Report prepared by the Claims Administrator;

(d) The submissions of the Parties to the Audit Proceeding;

(e) Any evidence submitted by the Parties, Settlement Class Member(s) and/or Subject of Investigation under these Rules;

(f) Any oral argument directed by the Special Master under Rule 24; and

(g) Any other exhibits, memoranda and submissions directed or permitted by the Special Master.

**Rule 26. Multiple Claims Presenting Common Issues and Preclusive Effect of Decisions.** The Special Master has discretion to consolidate for purposes of briefing and/or decision any Audit Proceedings with common issues of law and/or fact, as well as where the Special Master determines that a collective resolution of an issue will best serve the efficient and equitable administration of the Settlement Agreement. In any Audit Proceeding, including any instance in which the Special Master has consolidated matters involving common questions of law and/or fact or issues requiring collective resolution, the Special Master may direct that the findings and rulings on such questions and issues have preclusive effect and may not be re-litigated in any other Audit Proceeding.

**Rule 27. Decision by the Special Master.** The Special Master will issue to the Claims Administrator a written decision on the Audit Proceeding within 60 days after the later of the date of (a) the Reply Memoranda of the Parties under Rule 21; (b) any additional submissions under Rule 22; or (c) any oral argument under Rule 24, unless the Special Master determines that additional time is required for consideration of the Audit Report.

**Rule 28. Standard of Proof Applicable to the Special Master.** The Special Master will determine whether the Settlement Class Member(s) subject to the Audit Report (or any other persons or entities whom the Special Master has required to respond under Rule 22) have established that there is no reasonable basis to support a finding that there has been a misrepresentation, omission or concealment of a material fact made in connection with a Claim by the Settlement Class Member. The Special Master also may find such misrepresentation, omission or concealment was intentional if the record contains substantial evidence of such intent.

**Rule 29. Remand to the Claims Administrator.** If he or she determines it necessary to do so, at any time during the Audit Proceeding the Special Master may remand any Claim in a referred Audit Report to the Claims Administrator for further investigation or processing, as the Special Master deems necessary or appropriate.

**Rule 30. Dismissal of Proceeding.** If the Special Master decides under Rule 27 in favor of the Settlement Class Member(s) subject to the Audit Report (or other person or entity directed to respond), the Special Master will dismiss the proceeding on such Claim(s) and direct the Claims Administrator to resume processing them.

**Rule 31. Relief on Adverse Decision.** If the Special Master decides under Rule 27 against the Settlement Class Member(s) subject to the Audit Report (or other person or entity directed to respond) the Special Master may direct such relief as deemed appropriate, including without limitation:

(a) Denial of the Claim(s) subject to the Audit Proceeding;

(b) Additional Audits of Claims from the lawyer, law firm, claims service or healthcare provider subject to the Audit Proceeding, including those already paid;

(c) Referral of the lawyer, law firm, claims service or healthcare provider subject to the Audit Proceeding to the appropriate disciplinary boards;

(d) Referral to federal authorities;

(e) Re-examination of a living Retired NFL Football Player by a Qualified BAP Provider (if the Retired NFL Football Player is eligible for the BAP) or by a Qualified MAF Physician, with the cost of such re-examination to be paid as directed by the Special Master and with the date of any Qualifying Diagnosis made in such re-examination determined by the diagnosing physician in his or her medical judgment or as otherwise directed by the Special Master;

(f) Review by a Qualified MAF Physician of the medical records of a deceased Retired NFL Football Player, with the date of any Qualifying Diagnosis made in such review determined by the Qualified MAF Physician in his or her medical judgment;

(g) Disqualification of the lawyer, law firm, claims service, healthcare provider or other person or entity, and/or Settlement Class Member(s) subject to the Audit Proceeding from further participation in the Settlement Program;

(h) If a lawyer, law firm, claims service, healthcare provider or other entity subject to the Audit Proceeding is found to have submitted more than one Claim with a misrepresentation, omission or concealment of a material fact, an order that Claim submissions by that law firm will no longer be accepted, and attorneys' fees paid to them by affected Settlement Class Member(s) will be forfeited and paid to the Settlement Trust for transfer by the Trustee into the Monetary Award Fund or refunded to affected Settlement Class Member(s), as the Special Master deems

appropriate; and

(i) Such other and further relief as the Special Master may deem appropriate.

**Rule 32. Notice of Special Master Decision.** Within five days after the date of a decision by the Special Master on a referred Audit Report, the Claims Administrator will serve the decision on the Parties to the Audit Proceeding, subject to any redactions the Claims Administrator deems necessary to protect confidential Claims Information.

**Rule 33. Finality of the Decision by the Special Master.** The decision of the Special Master on a referred Audit Report is final and binding on the Parties to the Audit Proceeding and the Claims Administrator and is not subject to appeal or review by the Court, except that pursuant to Fed. R. Civ. P. 53(f)(4) and the Court's July 13, 2016 Order appointing the Special Masters, the Court will review *de novo* (that is, anew) any objection to the Special Master's conclusions of law. The Special Master will identify in each decision any issue the Special Master determines to be a conclusion of law to which a Party to the Audit Proceeding may object and have reviewed by the Court.

**Rule 34. Objections to a Conclusion of Law in a Decision by the Special Master.**

(a) A Party to the Audit Proceeding wishing to object to a conclusion of law by the Special Master will present such objection in an Objection to Special Master Decision of up to 10 pages submitted to the Claims Administrator on a Portal or in hard copy within 20 days after the date of notice of the Special Master Decision under Rule 32, setting forth the arguments in support of the Objection.

(b) The other Parties to the Audit Proceeding may respond with up to 10 pages to the Objection to Special Master Decision on a Portal or in hard copy of within 20 days after the date of the Objection, setting out the arguments in response to the Objection.

(c) Exhibits to these submissions are permitted, but no party may refer to or attach any evidence that was not in the Record of the Audit Proceeding before the Special Master. When submitting an Objection or response to an Objection, the submitting party must mail or deliver the submission to any Party to the Audit Proceeding not using a Portal.

(d) The Court will review *de novo* (that is, anew) an Objection to Special Master Decision and may affirm, modify or reverse the Special Master's conclusion and order such other and further relief as the Court deems appropriate. The Claims Administrator will serve the Court's decision on the Parties to the Audit Proceeding. The Court's decision on an Objection to Special Master Decision is final and not subject to further review by appeal or otherwise.

**Rule 35. Publishing the Decisions by the Special Master and Court.** The Special Master and the Court will designate in a decision on an Audit Proceeding whether the decision is to be published or unpublished. The Claims Administrator will post in an aggregated set de-identified copies of each published decision on the official website of the Settlement Program

and on the Portal of each Portal user, subject to any redactions the Claims Administrator deems necessary to protect confidential Claims Information. In addition to their preclusive effect under Rule 26, published decisions of the Special Master and the Court will have precedential value in the Settlement Program on the issues and principles determined in the decision, which means they will serve as guidance for the consideration of the same or similar issues and principles in later Audit Proceedings.

# RULES GOVERNING REGISTRATION DETERMINATIONS AND APPEALS

NFL CONCUSSION SETTLEMENT

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

# RULES GOVERNING REGISTRATION DETERMINATIONS AND APPEALS

541930
5/31/19

## TABLE OF CONTENTS


**Page**

**TITLE I: GENERAL** ... 1

Rule 1. The Purpose of These Rules ... 1
Rule 2. Adoption of These Rules ... 1
Rule 3. Definitions Used in These Rules ... 1
Rule 4. Registration Appeals Will Be Handled by the Special Masters ... 3
Rule 5. How Things are Submitted and Served Under These Rules ... 3
Rule 6. How to Count Time Periods and the Date Something is Submitted in an Appeal and Extensions of Time ... 4

**TITLE II: REGISTRATION REVIEW BY THE CLAIMS ADMINISTRATOR** ... 5

Rule 7. Registration Review ... 5
Rule 8. Notices of Registration Determination ... 5
Rule 9. Challenges to Registration Determination ... 5

**TITLE III: LATE REGISTRATIONS** ... 6

Rule 10. Registration Deadline ... 6
Rule 11. Registration by Representative Claimants ... 6
Rule 12. Registration by Derivative Claimants ... 6
Rule 13. Good Cause Relief for Late Registrations ... 7
Rule 14. Time Period for Good Cause Relief for Late Registrations ... 7
Rule 15. Conditions and Circumstances That May Warrant Good Cause Relief for Late Registration ... 7
Rule 16. Conditions That May Not Warrant Good Cause Relief for Late Registration ... 8
Rule 17. Notice of Registration Determination ... 8

**TITLE IV: APPEAL PROCESS** ... 8

Rule 18. Registration Appeals Will Be Handled by the Special Masters. ... 8
Rule 19. Who May Appeal and What May Be Appealed on Registration Challenge Determinations ... 8
Rule 20. No Other Appeals ... 9
Rule 21. The Deadline to Note an Appeal ... 9
Rule 22. How an Appellant Notes an Appeal ... 9
Rule 23. No Appeal Fee ... 9
Rule 24. Registration Appeal Alert from the Claims Administrator ... 9
Rule 25. Response of Appellee ... 10
Rule 26. Summary of Registration Review by the Claims Administrator ... 10
Rule 27. Additional Material Required by the Special Master ... 10
Rule 28. No Discovery ... 10
Rule 29. Oral Argument ... 10
Rule 30. The Record on a Registration Appeal ... 10

Rule 31. Remand to the Claims Administrator ... 11
Rule 32. No Cross-Appeals ... 11
Rule 33. Standard of Review on a Registration Appeal ... 11
Rule 34. Multiple Registration Appeals Presenting Common Issues and Preclusive Effect of Decisions ... 11
Rule 35. Decision by the Special Master ... 11
Rule 36. Notice of Special Master Decision on a Registration Appeal ... 12
Rule 37. Withdrawal of Appeal ... 12
Rule 38. Finality of the Special Master's Decision ... 12
Rule 39. Objections to a Conclusion of Law in a Decision by the Special Master ... 12
Rule 40. Publishing the Decisions by the Special Master and Court on Registration Appeals ... 13

# Rules Governing Registration Determinations and Appeals

## TITLE I: GENERAL

**Rule 1. The Purpose of These Rules.** These Rules govern determinations by the Claims Administrator regarding Registrations in the Settlement Program under Article IV of the Settlement Agreement and appeals under Section 4.3(a)(iv) of the Settlement Agreement by a Settlement Class Member, Class Counsel, or the NFL Parties of the Claims Administrator's Registration challenge determinations.

**Rule 2. Adoption of These Rules.** The Special Masters have adopted these Rules in the exercise of their duties pursuant their appointment by the Court in its July 13, 2016 Order (Document 6871). The Special Masters may amend these Rules at any time *sua sponte* or after request by Class Counsel, the NFL Parties or the Claims Administrator and such input from Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3. Definitions Used in These Rules.** All capitalized terms used in these Rules will have the meanings given to them in the Settlement Agreement. In addition:

(a) "Appellant" means the party noting a Registration Appeal from a Notice of Registration Challenge Determination. This can be a Settlement Class Member or the NFL Parties. Class Counsel cannot appeal from any Notice of Registration Challenge Determination. These Rules refer to making or bringing a Registration Appeal as "noting" an appeal.

(b) "Appellee" means a Settlement Class Member or the NFL Parties when responding to a Registration Appeal and not acting as the Appellant noting the appeal.

(c) "Court Portal" means the online system created by the Claims Administrator for the exchange of materials and information between the Court and the Claims Administrator relating to the Settlement Program.

(d) "Family Member" means a Settlement Class Member's (1) spouse and his or her parents; (2) sons and daughters and their spouses; (3) parents and their spouses; (4) brothers and sisters and their spouses; (5) grandparents, grandchildren and their spouses; (6) domestic partner and his or her parents, and the domestic partners of any of these family members; and (7) such other persons the Claims Administrator decides should be considered to be a family member for purposes of these Rules.

(e) "Late Registration" means any attempt to register that was not timely under the terms of the Settlement Agreement.

(f) "Notice of Registration Challenge Determination" means the notice issued by the Claims Administrator announcing its decision on (1) a challenge by a Settlement

Class Member under Section 4.3(a)(ii) of the Settlement Agreement to an adverse Notice of Registration Determination issued by the Claims Administrator; or (2) a challenge by the NFL Parties under Section 4.3(a)(iii) of the Settlement Agreement to a favorable Notice of Registration Determination issued by the Claims Administrator.

(g) "Objection to Special Master Registration Decision" means an objection to a conclusion of law made by the Special Master in a decision on a Registration Appeal, as described in Rule 39.

(h) "Order Approving Centralized Process" means the Court's July 25, 2017 Order Approving Centralized Process for Representative Claimants and Derivative Claimant Representatives (Document 8107).

(i) "Party to the Registration Appeal" or "Parties to the Registration Appeal" means any one of or both the Settlement Class Member involved in the Registration Appeal and the NFL Parties.

(j) "Portal" means the online system created by the Claims Administrator for the exchange of materials and information between Settlement Class Members and the Claims Administrator, or among Class Counsel, the NFL Parties and the Claims Administrator, in the Settlement Program.

(k) "Record on Registration Appeal" means what may be considered by the Special Master when deciding a Registration Appeal, as described in Rule 30.

(l) "Registration Appeal" means an appeal from a Notice of Registration Challenge Determination issued by the Claims Administrator. These Rules refer to making or bringing a Registration Appeal as "noting" an Appeal.

(m) "Registration Appeal Alert" is the notice from the Claims Administrator to alert parties that there has been a Registration Appeal, as described in Rule 24.

(n) "Registration Appeal Form" is the form used to note a Registration Appeal, as described in Rule 22.

(o) "Registration Deadline" means August 7, 2017.

(p) "Response of Appellee" means what an Appellee submits to set out its position on a Registration Appeal, as described in Rule 25.

(q) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).

(r) "Settlement Class Member" means a Retired NFL Football Player (or the Representative Claimant of a deceased or incompetent Retired NFL Football Player),

or a Derivative Claimant, which is how this term is defined in the Settlement Agreement. In addition, for purposes of these Rules the terms "Settlement Class Member," "Retired NFL Football Player" and "Derivative Claimant" also mean a purported Settlement Class Member, Retired NFL Football Player or Derivative Claimant attempting to register in the Settlement Program under Article IV of the Settlement Agreement but who has not been found to satisfy those Settlement Agreement definitions.

(s) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(t) "Special Master" and "Special Masters" mean any one or both of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

(u) "Special Master Portal" means the online system created by the Claims Administrator for the exchange of materials and information between a Special Master and the Claims Administrator relating to the Settlement Program.

(v) "Summary of Registration Review" is what the Claims Administrator will submit in a Registration Appeal, if directed to do so by the Special Master to explain what it did on the registration being appealed, as described in Rule 26.

**Rule 4. Registration Appeals Will Be Handled by the Special Masters.** The Court has referred to the Special Masters all Registration Appeals, to be determined in accordance with these Rules.

**Rule 5. How Things are Submitted and Served Under These Rules.**

(a) General Rule: All submissions, notices and decisions under these Rules will be made and served through a Portal or, for anyone not using a Portal, through hard copy by mail or delivery. If a party is represented by a lawyer, service will be made on that lawyer only.

(b) Party Using a Portal: When submitting any item under these Rules, anyone who uses a Portal will upload the item to the Portal, which will cause it to be served on all other Parties to the Registration Appeal who use a Portal, and the uploader will mail or deliver the item to any other Party to the Registration Appeal who does not use a Portal. At the beginning of a Registration Appeal, the Claims Administrator will identify to the Parties to the Registration Appeal anyone involved who does not use a Portal.

(c) Party Not Using a Portal: When submitting any item under these Rules, anyone who does not use a Portal will mail or deliver the item to the Claims Administrator, which will upload the item to the Portals of other Parties to the Registration Appeal, and the uploader will mail or deliver it to any other Party to the Appeal who does not use a

Portal. To safeguard their confidentiality, materials may not be submitted by email.

(d) Special Masters: The Special Masters will access all Registration Appeals and enter orders and decisions on them using the Special Master Portal. No party may send any material directly to a Special Master. Instead, all materials must be submitted to the Claims Administrator.

(e) No Filings on the Court's Docket: The Court will access all Objections to Special Master Registration Decisions and enter rulings on them using the Court Portal. Proceedings under these Rules will not be filed on the Court's docket. No submissions under these Rules may be filed on the Court's docket.

(f) References in these Rules to a page limit on a submission mean double-spaced pages without counting exhibits. Single-spaced submissions cannot exceed one half the number of permitted double-spaced pages. While handwritten submissions are discouraged, the page limit means that number of handwritten pages.

**Rule 6. How to Count Time Periods and the Date Something is Submitted in an Appeal and Extensions of Time.**

(a) How to Count Time Periods: Any time period set by these Rules will be computed as follows, which is based on Rule 6 of the Federal Rules of Civil Procedure:

(1) Do not count the day that starts the running of any period of time. The first day of the period is the day after this trigger day.
(2) Count every day, including Saturdays, Sundays and legal holidays.
(3) Count the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.
(4) Legal holidays are New Year's Day, Martin Luther King, Jr.'s Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other day declared a holiday by the President of the United States or the United States Congress.
(5) An additional three days will be added to any time period specified by these Rules for an action or submission where the acting or responding party was served by mail with the Notice or submission requiring action or response rather than by service on a Portal.

(b) How to Mark the Date Something is Submitted: A document or any material submitted or served under these Rules will be considered submitted on these dates:

(1) Online: The date uploaded as of the local time of the sender.
(2) By Mail: The postmark date showing the date it was mailed. If there is no postmark date on the item or the date printed is illegible, the date of receipt by the party to whom it was mailed controls.

(3) Overnight Delivery: The date the sender placed the item in the hands of the overnight carrier.
(4) Hand Delivery by Courier: The date the item is received by the party to whom it is delivered.

(c) Extensions of Time: The Claims Administrator has discretion to extend any deadline under these Rules that do not concern actions by the Special Masters. Any other deadline imposed by these Rules may be extended (1) by the Special Master in his or her discretion or (2) by the agreement of the Parties to the Appeal, if approved by the Special Master. Any party seeking an extension of time from the Special Master must:

(1) Notify the other Parties to the Registration Appeal of the extension requested and determine if they consent or object to the request;

(2) Make the request to the Claims Administrator, stating: (a) the deadline for which an extension is requested; (b) the duration of the extension requested; (c) the deadline date before any extension and the extended deadline date requested; (d) that the requesting party has conferred with the other Parties to the Registration Appeal and whether they consent or object to the request; and (e) the grounds for the request.

If an extension is granted, further extensions to the same party for the same deadline and/or on the same issue are not likely to be granted. The fact that another party has been granted an extension is not alone sufficient grounds for an extension for other parties.

## TITLE II: REGISTRATION REVIEW BY THE CLAIMS ADMINISTRATOR

**Rule 7. Registration Review.** Under Section 4.3 of the Settlement Agreement, the Claims Administrator reviews all Registration submissions to determine whether the purported Settlement Class Member (a) is a Settlement Class Member under the Settlement Agreement; (b) has timely and properly registered and (c) is eligible for the Baseline Assessment Program (if the Settlement Class Member is a living Retired NFL Football Player). The Claims Administrator may adopt such procedures as it deems appropriate to conduct this review and notify persons of information required by the Settlement Agreement for Registration that is missing from their submissions and an opportunity to provide it.

**Rule 8. Notices of Registration Determination.** At the conclusion of its review under Rule 7, the Claims Administrator will issue a Notice to the purported Settlement Class Member informing the Settlement Class Member of the outcome of that review and the determinations made by the Claims Administrator regarding the attempted Registration.

**Rule 9. Challenges to Registration Determination.** Under Section 4.3(a)(ii) and (iii) of the Settlement Agreement, within 60 days after the Notice from the Claims Administrator under Rule 8, the Settlement Class Member may challenge an adverse Notice of Registration Determination and the NFL Parties may challenge any favorable Notice of

Registration Determination. The Claims Administrator reviews each such challenge and issues a Notice of Registration Challenge Determination to the Settlement Class Member and the Parties announcing the results of that review.

## TITLE III: LATE REGISTRATIONS

**Rule 10. Registration Deadline.** Under Section 4.2(c) of the Settlement Agreement, Settlement Class Members were required to register on or before 180 days from the date that the Settlement Class Supplemental Notice was posted on the Settlement Website, unless "good cause" is shown to permit a later registration. Because the Supplemental Notice was posted on the Settlement Website on February 6, 2017, the Registration Deadline was August 7, 2017.

**Rule 11. Registration by Representative Claimants.**

(a) Under Section 4.2(c)(i)(a) of the Settlement Agreement, a Representative Claimant who had not been ordered by a court or other official of competent jurisdiction to be the authorized representative of the subject deceased or legally incapacitated or incompetent Retired NFL Football Player before August 7, 2017, may register within 180 days after the date of authorization by the court or other official of competent jurisdiction. A proposed Representative Claimant who was not appointed by a local court or other official of competent jurisdiction but attempted to register in the Settlement Program before August 7, 2017, may seek appointment in the process established by the Order Approving Centralized Process.

(b) Under Section 4.2(c)(i)(b) of the Settlement Agreement, if a Retired NFL Football Player timely registered before his death or becoming legally incapacitated or incompetent, a person seeking to substituted as his Representative Claimant may register at any time before any Monetary Award is paid relating to that Retired NFL Football Player. If not appointed by a court or other official of competent jurisdiction, such person may seek appointment in the process established by the Order Approving Centralized Process.

(c) All other purported Representative Claimants must submit proof of appointment by a court or other official of competent jurisdiction to be permitted to register in the Settlement Program and must register within 180 days after the date of that appointment or be considered a Late Registration.

**Rule 12. Registration by Derivative Claimants.** Under Section 4.2(c)(i)(c) of the Settlement Agreement, a Derivative Claimant may register within 30 days after submission of a Claim Package by the Retired NFL Football Player with whom the Derivative Claimant claims a relationship. The Claims Administrator will consider timely a registration attempted by a Derivative Claimant after that 30-day deadline but before the Claims Administrator issues a Notice of Monetary Award to the subject Retired NFL Football Player. If a Derivative Claimant attempts to register after the Claims Administrator issues a Notice of Monetary Award with a 1% offset to the subject Retired NFL Football Player but before that 1% amount is allocated to any eligible Derivative Claimant(s), the Claims Administrator will accept the registration only if the subject Player does not object. Any other attempted registration by a Derivative Claimant will

be considered a Late Registration.

**Rule 13. Good Cause Relief for Late Registrations.** The Claims Administrator will consider whether good cause exists to permit it to accept a Late Registration as timely.

**Rule 14. Time Period for Good Cause Relief for Late Registrations.** Any Late Registration must be submitted to the Claims Administrator within 365 days after the deadline applicable to the person seeking to register to be considered for good cause relief to permit the Claims Administrator to accept the Late Registration as timely, unless the Settlement Class Member establishes to the Claims Administrator that he or she was on active military duty under the Servicemembers Civil Relief Act, 50 U.S.C §§3901-4043m, at the time the 365-day period expired, in which instance, the Settlement Class Member has 365 days after he or she is no longer on active military duty to submit a Late Registration and be considered for good cause relief to permit the Claims Administrator to accept the Registration as timely.

**Rule 15. Conditions and Circumstances That May Warrant Good Cause Relief for Late Registration.** Based upon such proof as it deems acceptable, the Claims Administrator has discretion to consider the following conditions and circumstances as potential grounds for good cause relief:

(a) Confusion: The Settlement Class Member was confused by the Settlement Agreement and/or whether he or she qualified for the Settlement Program.

(b) Death of a Family Member or Close Friend: A death of a Family Member or close friend prevented a Settlement Class Member from timely registering.

(c) Did Not Receive the Supplemental Class Notice: The Settlement Class Member did not receive the Supplemental Class Notice. The Claims Administrator may compare the address used on any class notices sent to the Settlement Class Member with the address the Settlement Class Member provided in Registration.

(d) Medical Hardship: A medical hardship prevented the Settlement Class Member from registering around the time of the Registration Deadline.

(e) Family Matter: The Settlement Class Member experienced a family matter or crisis that prohibited him or her from registering timely, such as a divorce, child custody hearing or medical emergency involving a Family Member.

(f) Force Majeure: An event or effect, such as an act of nature (*e.g.*, flood or hurricane) or an act of people (*e.g.*, riot, strike, or war), that prevented a Settlement Class Member from timely registering.

(g) Memory Loss: The Settlement Class Member missed the Registration Deadline because of memory loss or lapses.

(h) Out of the United States: The Settlement Class Member was living or working out of the United States and that prohibited him or her from timely registering.

(i) Such other grounds as the Claims Administrator determines appropriate.

**Rule 16. Conditions That May Not Warrant Good Cause Relief for Late Registration.** Based upon such proof as it deems acceptable, the Claims Administrator has discretion to consider that the following conditions and circumstances do not warrant good cause relief:

(a) Incarceration.

(b) Class Notice Mailing Address Matches Registration Address: The Settlement Class Member asserts he or she did not receive Class Notice or forgot to register by the deadline and the address used in the Class Notice matches the address provided by the Settlement Class Member in his or her Registration Form.

(c) Vacation or other travel for personal or business reasons.

(d) No Reason Provided. The Settlement Class Member has not provided a reason for the untimely Registration, after a reasonable opportunity to do so.

(e) Such other grounds as the Claims Administrator determines appropriate.

**Rule 17. Notice of Registration Determination.** After its review of a Late Registration, the Claims Administrator will issue to the affected Settlement Class Member and the Parties a Notice announcing whether the Late Registration will be considered timely. Such Notice will be subject to challenge under Rule 9.

## TITLE IV: APPEAL PROCESS

**Rule 18. Registration Appeals Will Be Handled by the Special Masters.** The Court has referred to the Special Masters all Registration Appeals, to be determined in accordance with these Rules.

**Rule 19. Who May Appeal and What May Be Appealed on Registration Challenge Determinations.**

(a) A Retired NFL Football Player (or Representative Claimant) may appeal on the issues whether (1) the Retired NFL Football Player satisfies the definition of that term in Section 2.1(ffff) of the Settlement Agreement to have the status of a Retired NFL Football Player; (2) the Retired NFL Football Player had at least half of an Eligible Season under Section 2.1(kk) of the Settlement Agreement; and/or (3) the Retired NFL Football Player (or Representative Claimant) properly and timely registered under Article IV of the Settlement Agreement. A Retired NFL Football Player (or Representative Claimant) may not appeal a Notice of Registration Challenge Determination issued to a Derivative Claimant.

(b) A Derivative Claimant may appeal on the issues whether (1) he or she identified a relationship that would give him or her a right under applicable state law to sue independently or derivatively and/or (2) he or she properly and timely registered under Article IV of the Settlement Agreement. A Derivative Claimant may not

appeal a Notice of Registration Challenge Determination issued to the Retired NFL Football Player (or Representative Claimant) with whom the Derivative Claimant is associated.

(c) The NFL Parties may appeal a Notice of Registration Challenge Determination on the issues of whether (1) the Retired NFL Football Player satisfies the definition of that term in Section 2.1(ffff) of the Settlement Agreement to have the status of a Retired NFL Football Player and/or (2) the Settlement Class Member timely registered under Article IV of the Settlement Agreement.

**Rule 20. No Other Appeals.** Unless allowed in other Rules approved by the Special Masters or in orders by the Court, no other registration determinations by the Claims Administrator are appealable.

**Rule 21. The Deadline to Note an Appeal.** Any party wishing to appeal a Notice of Registration Challenge Determination must note a Registration Appeal within 60 days after the date of the Notice of Registration Challenge Determination.

**Rule 22. How an Appellant Notes an Appeal.**

(a) To note a Registration Appeal, an Appellant must use a Registration Appeal Form on a Portal or by mail or delivery to the Claims Administrator. The Registration Appeal Form is available on each Portal and is included in a Notice of Registration Challenge Determination sent by mail to a Settlement Class Member.

(b) The Appellant must indicate in the Registration Appeal Form why the Appellant feels the Notice of Registration Challenge Determination was wrong, which will be the issue(s) being appealed that the Appellant wishes the Special Master to decide on the Appeal, provided that the issue is appealable under Rule 19.

(c) The Appellant may submit with the Registration Appeal Form a statement of up to 10 pages setting forth the arguments of the Appellant on the issue(s) appealed and citations to any evidence submitted to the Claims Administrator the Appellant contends supports the Registration Appeal. This statement will become part of the Appellant's Registration Appeal Form. While exhibits to this submission are permitted, the Appellant may not refer to or offer any evidence that was not before the Claims Administrator.

**Rule 23. No Appeal Fee.** There is no fee for a Registration Appeal.

**Rule 24. Registration Appeal Alert from the Claims Administrator.** If the Claims Administrator receives a timely Registration Appeal Form, the Claims Administrator will provide a Registration Appeal Alert to the other Party to the Appeal through a Portal or by mail to a Party to the Appeal who does not use a Portal. The Registration Appeal Alert will include the Appeal Form (and any statement submitted with the Appeal Form) of the Appellant.

**Rule 25. Response of Appellee.** The Appellee may submit a Response of Appellee of up to 10 pages setting out its position and arguments on the Registration Appeal, within 10 days after the date of the Registration Appeal Alert. The lack of opposition to a Registration Appeal will not be considered an admission regarding the merits of the Registration Appeal. While exhibits to this submission are permitted, an Appellee may not refer to or offer any evidence that was not before the Claims Administrator.

**Rule 26. Summary of Registration Review by the Claims Administrator.** The Special Master may at any time direct the Claims Administrator to submit a Summary of Registration Review to explain what occurred leading to the Notice of Registration Challenge Determination being appealed.

**Rule 27. Additional Material Required by the Special Master.** The Special Master may at any time direct any Party to the Registration Appeal to submit additional memoranda or material if the Special Master determines that such additional submissions would aid in the consideration of the Registration Appeal. No other memoranda or materials may be submitted unless permitted or directed by the Special Master.

**Rule 28. No Discovery.** No requests for production, interrogatories, requests for admission, depositions or other discovery is allowed by or on behalf of any Party to a Registration Appeal.

**Rule 29. Oral Argument.** Within his or her sole discretion, the Special Master may require oral argument, or permit such argument if requested by a Party to the Appeal, in such time and place and in such manner as the Special Master directs. There will be no testimony, cross-examination or other evidentiary hearing on an Appeal. Any oral argument may be preserved in an audio recording, but will not be transcribed by a court reporter unless directed by the Special Master. No new evidence not in the Record on Registration Appeal may be introduced or referred to in any oral argument.

**Rule 30. The Record on a Registration Appeal.** The Record on Registration Appeal consists of:

(a) The Settlement Agreement;

(b) The Registration Form and any materials submitted by the Settlement Class Member to the Claims Administrator attempting to register and any actions by the Claims Administrator on the Settlement Class Member's registration;

(c) The Appellant's Registration Appeal Form (and any statement and exhibits);

(d) Response of the Appellee (and any exhibits);

(e) Summary of Registration Review from the Claims Administrator;

(f) Oral argument permitted by the Special Master; and

(g) Any other exhibits, memoranda and submissions directed or permitted by the Special Master.

**Rule 31. Remand to the Claims Administrator.**

(a) If the Special Master determines it necessary, he or she may remand a Registration Appeal at any time to the Claims Administrator for further processing.

(b) The Parties to the Registration Appeal may agree to remand a Registration Appeal at any time to the Claims Administrator for further processing.

(c) If a Registration Appeal is remanded to the Claims Administrator, the Registration Appeal will terminate. The Claims Administrator will resume processing the attempted registration and issue appropriate Notices resulting from such processing, which may be subject to a new Registration Appeal if the processing results in a Registration Challenge Determination Notice.

**Rule 32. No Cross-Appeals.** Because a Settlement Class Member and the NFL Parties have independent rights to submit an Appeal, no Party to an Appeal may cross-appeal in a Response of Appellee or any other submission on any issue not raised by that party in an independent Registration Appeal timely submitted by that party.

**Rule 33. Standard of Review on a Registration Appeal.** The Special Master will decide an issue on a Registration Appeal based upon a showing by the Appellant of clear and convincing evidence. Under this standard, the Appellant must convince the Special Master that there is a high degree of probability that the determination of the Claims Administrator being appealed was wrong.

**Rule 34. Multiple Registration Appeals Presenting Common Issues and Preclusive Effect of Decisions.** The Special Master has discretion to consolidate for purposes of briefing and/or decision the proceedings on any Registration Appeals that involve common issues of law and/or fact, as well as where the Special Master determines that a collective resolution of an issue will best serve the efficient and equitable administration of the Settlement Agreement. In any Registration Appeal, including any instance in which the Special Master has consolidated matters involving common questions of law and/or fact or issues requiring collective resolution, the Special Master may direct that the findings and rulings on such questions and issues have preclusive effect and may not be re-litigated in any other Registration Appeal.

**Rule 35. Decision by the Special Master.** The Special Master will issue to the Claims Administrator a decision on a Registration Appeal within 60 days after the later of the date of (a) the last submission by the Parties to the Appeal or the Claims Administrator; (b) any oral argument; or (c) the date of submission of any additional materials permitted or directed by the Special Master, unless the Special Master determines that additional time is required for consideration of the Registration Appeal. In such decision, the Special Master may affirm or reverse the determination of the Claims Administrator and direct such other and further relief as the Special Master deems appropriate, and will make such explanation of the grounds of the decision as the Special Master deems necessary under the circumstances.

**Rule 36. Notice of Special Master Decision on a Registration Appeal.** Within five days after the date of a decision by the Special Master on a Registration Appeal, the Claims Administrator will serve the decision on the Parties to the Registration Appeal by Portal or mail.

**Rule 37. Withdrawal of Appeal**. An Appellant may withdraw a Registration Appeal of right by notice to the Claims Administrator at any time until 20 days after the date of the last submission on the Registration Appeal permitted by these Rules or directed by the Special Master. After that time, an Appellant may withdraw an Appeal only as permitted by the Special Master. If a Registration Appeal is withdrawn, the determination of the Claims Administrator subject to the Registration Appeal will be considered final as of the date of the withdrawal.

**Rule 38. Finality of the Special Master's Decision.** The Special Master's decision on a Registration Appeal is final and binding on the Parties to the Registration Appeal and the Claims Administrator and is not subject to appeal or review by the Court, except that pursuant to Fed. R. Civ. P. 53(f)(4) and the Court's July 13, 2016 Order appointing the Special Masters, the Court will review *de novo* (that is, anew) any objection to the Special Master's conclusions of law. The Special Master will identify in each decision any issue the Special Master determines to be a conclusion of law to which a Party to the Registration Appeal may object and have reviewed by the Court.

**Rule 39. Objections to a Conclusion of Law in a Decision by the Special Master.**

(a) A Party to a Registration Appeal wishing to object to a conclusion of law by the Special Master will present such objection in an Objection to Special Master Decision of up to 10 pages submitted to the Claims Administrator on a Portal or in hard copy within 20 days after the date of notice of the Special Master's decision under Rule 36, setting forth the arguments in support of the Objection.

(b) The other Party to the Registration Appeal may respond with up to 10 pages to the Objection to Special Master Decision on a Portal or in hard copy within 20 days after the date of the Objection, setting out the arguments in response to the Objection.

(c) Exhibits to these submissions are permitted, but no party may refer to or attach any evidence that was not in the Record on Registration Appeal before the Special Master. When submitting an Objection or response to an Objection, the submitting party must mail or deliver the submission to any Party to an Appeal not using a Portal.

(d) The Court will review *de novo* (that is, anew) an Objection to Special Master Decision and may affirm, modify or reverse the Special Master's conclusion and order such other and further relief as the Court deems appropriate. The Claims Administrator will serve the Court's decision on the Parties to the Registration Appeal. The Court's decision is final and not subject to further review by appeal or otherwise.

**Rule 40. Publishing the Decisions by the Special Master and Court on Registration Appeals.** The Special Master and the Court will designate in a decision on a Registration Appeal whether the decision is to be published or unpublished. The Claims Administrator will post in an aggregated set de-identified copies of each published decision on the official website of the Settlement Program and on the Portal of each Portal user. In addition to their preclusive effect under Rule 34, published decisions of the Special Master and the Court will have precedential value in the Settlement Program on the issues and principles determined in the decision, which means they will serve as guidance for the consideration of the same or similar issues and principles in subsequent Registration Appeals.