# Exhibit “N”

NFL CONCUSSION SETTLEMENT

PROGRAM DOCTORS
# News

Second Quarter 2023 The Claims Administrator's News Source for Program Doctors





## To All Program Doctors

We want to thank all Program Doctors for their hard work and invaluable contributions to the Settlement Program. Your expertise and dedication play an instrumental role in the Program's successful administration. We strive to support you in every way possible and hope that you find this newsletter helpful. Let us know if there are ways that we can improve your experience and make it easier to do your job. To contact us, call 1-855-887-3485 or email the Claims Administrator at ClaimsAdministrator@NFLConcussionSettlement.com. The Settlement Program contact information for all Program Doctors can be found at the end of this newsletter.

Claims Administrator
BrownGreer PLC

## In this Issue

2 To All Program Doctors
3 Provider Portal Enhancements
4 Communications with the Media
5 Elements of Level 1, Level 1.5 and Level 2 Neurocognitive Impairment
6 Criterion iii – CDR® Scale
7 CDR® Evaluation Required Information
9 CDR® Ratings for Individual Domains - Neurologists
10 Gelb Criteria Symptoms
11 Inclusion of PVT and SVT Scores - Neuropsychologists
12 You've got Questions, We've got Answers.

# Provider Portal Enhancements



We circulated a short survey to Program Doctors in March regarding the Provider Portal in hopes of receiving feedback to improve your user experience. As a result, we have received lots of positive feedback and helpful insight that has given us an opportunity to identify additional enhancements to the Provider Portal.

In the last Program Doctor Newsletter, we mentioned that Providers noted having difficulty accessing reports started by a staff member. Here's how we addressed that issue, and more!

- **Linking of Reports Started by a Staff Member.** Our team has successfully connected staff Portal accounts to their Providers so that reports are more easily and quickly linked. Staff with login access can now start entering the information for a Player's exam in the Portal and send that in-progress exam to their Provider by clicking the "Submit to Provider" button on the bottom of the Certification of Findings screen. Likewise, Providers can submit an in-progress exam to their staff by clicking the "Submit to Assistant" button.

- **Addition of HINTS in the Provider Portal.** The Portal screens have lots of helpful hints embedded. This information is made visible by hovering over the word HINT with your mouse.

- **Addition of New Text in the Neuropsychologist Portal to Clarify the Certification of Findings Screen.** In the MAF Program, Neuropsychologists do not make the final determination of a Qualifying Diagnosis. As a result, we added the following text to the Certification of Findings Screen: "A Qualified MAF Physician will review this information and incorporate your findings into their final determination regarding a Diagnosis."

## Provider Portal Survey

We are always looking for ways to streamline your workflow and make the most efficient use of your time. If you have not completed the Provider Portal Survey, you can do so any time by clicking HERE. As always, we want to hear from YOU!

# Communications with the Media



Some of you may have received, or may receive, requests from the media to discuss the NFL Concussion Settlement Program.

**REMINDER:** *All Program Providers are bound by the confidentiality provisions of the agreements you signed with the Program Administrators. This means you must not make any statements to the media regarding the Settlement, Retired NFL Football Players, or your role as a Program Provider. During and after the term of your Agreement, you must refer all inquiries from the media related to the Program to the Claims Administrator or the BAP Administrator.*

**Let us know if any media person (reporters, writers, editors, etc.):**

- Attempts to make contact with you by call, text, mail, email or in person regarding the NFL Concussion Settlement Program; or
- Attempts to obtain any information regarding Class Counsel, Settlement Class Members and the NFL Parties.

Please keep in mind that Providers should not publish, author, or consult on any writing related to or discussing any data concerning the NFL Concussion Settlement Program including making social media posts without expressed written consent from the Claims Administrator in advance. These types of communications undermine the integrity of the claims process and your role as a Program doctor.

| | 0 | 0.5 | 1 | 2 | 3 |
|---|---|---|---|---|---|
| Memory | | | | ● | |
| Orientation | | | ● | | |
| Judgment and problem-solving | | | | | ● |
| Community affairs | ● | | | | |
| Home and hobbies | | | | ● | |
| Personal Care | | ● | | | |

# Elements of Level 1, Level 1.5 and Level 2 Neurocognitive Impairment

A diagnosis of Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment must follow these four diagnostic criteria (diagnoses rendered outside of the BAP must be generally consistent with these criteria):

i. Concern That There Has Been a Decline in Cognitive Function (must be severe for Level 1.5 and Level 2 diagnoses)

ii. Evidence of Moderate (Level 1), Moderate to Severe (Level 1.5), or Severe (Level 2) Cognitive Decline From a Previous Level of Performance in Accordance with the Standardized Neuropsychological Testing Protocol

iii. Functional Impairment Generally Consistent with the CDR® Scale Category 0.5/Questionable (Level 1), Category 1.0/Mild (Level 1.5), or Category 2.0/Moderate (Level 2) in Community Affairs, Home and Hobbies, and Personal Care

iv. Cognitive Deficits Do Not Occur Exclusively in the Context of Delirium, Acute Substance Abuse, or Medication Side Effects

# Criterion iii – CDR® Scale

We have found that criterion iii is the most common criterion for which we have to follow up with providers for additional explanation. For example, many physicians are not addressing the impact of alternative causes on the Player's functional impairment and CDR® scores, which prompts us to go back to them for additional explanation for criterion iii. As a reminder, you must determine whether the functional impairment was due to cognitive loss or other factors, such as physical handicap/injury, chronic pain, sleep apnea, or other causes. If the functional impairment is due to both cognitive loss and emotional/psychiatric issues such as depression, anxiety, or sleep disorders (other than sleep apnea), attempt as best you can to isolate the functional impairment due to cognitive loss alone and assign the CDR® rating based solely on that cognitive loss. Explain your reasoning in your report.

Example - "The CDR® scoring rules require that deficits be attributable to cognitive decline, not other factors. The notes include elements indicative of Major Depressive Disorder including depressed mood, apathy, weight gain, fatigue, and cognitive deficits. The MAF report also documents symptoms highly consistent with sleep apnea, along with player complaints of insomnia. Furthermore, the MAF report includes a review of systems that includes "joint stiffness and pain, back pain, muscle spasms, neck pain, dizziness, numbness and tingling, headaches" but does not address the role of these findings - as opposed to cognitive losses - in the player's limitations of daily function. The medical decision-making related to assignment of both individual CDR® domain scores and the consistency with CDR® 2 across the three required domains should be included in the narrative. Additionally, documentation of the medical decision-making should be included regarding how cognitive losses, not other factors (mood and sleep disorders, pain, and orthopedic limitations) were determined to be the basis of functional declines in the required CDR® domains."



# CDR® Evaluation Required Information



When you make a Qualifying Diagnosis of Level 1.5 or Level 2 Neurocognitive Impairment, you must include in your report that you provide to the BAP or Claims Administrator:

## 1 CDR Worksheet/Notes:

The CDR Worksheet you completed and/or notes from your interviews with the Player and informant.

**Reminder:** *You must perform semi-structured interviews with the Player and a reliable informant, such as a family member, to gain the information you need to rate the Player's change in functional ability from prior levels in the areas of Community Affairs, Home and Hobbies, and Personal Care. You should perform these interviews in-person or by telephone. The CDR information is optimal when the informant is observant, articulate, and accurate. Whenever the informant is less than accurate, then the CDR is correspondingly less reliable, and you must weigh more heavily all other available information in making the assessment.*

## 2 Individual CDR Scores:

The ratings you assigned to the Player in each of the areas of Community Affairs, Home and Hobbies, and Personal Care.

**Reminder:** *When assigning a CDR score in each area, you must use all reliable information available, including information from the Player's history and physical and notes from the diagnosing physician's interviews with the Player and a reliable informant.*

## 3 Scoring Explanation:

Description of how you arrived at those ratings, including references to the Player's specific activities and impairments and how they relate to the assigned scores.

## 4 Causation Explanation:

Description of how you isolated the impairment because of cognitive loss rather than other factors, such as chronic pain, physical injury, depression, or psychiatric issues.

## 5 Overall Impairment Rating:

Determination regarding whether the Player has functional impairment generally consistent with the criteria set forth in the CDR as Mild (Level 1.5) or Moderate (Level 2) impairment across all three areas as a whole.

**Reminder:** *The diagnosis is not simply an average of the three scores; you must determine the level of functional impairment on a qualitative basis across all three areas as a whole.*



## CDR® Ratings for Individual Domains - Neurologists

Remember! In addition to providing the Overall CDR® score, we need the scores for each individual domain. We often reach out to neurologists for the individual specific scores for each CDR® domain as well as an explanation of why they chose each rating and what documentary evidence/ interviews they used to corroborate that information.

Washington University in St. Louis developed the CDR® Assessment Protocol and provides a training for certification to conduct CDR® assessment. The link to the website is provided here and in the June 2022 CDR® Training Slides (slide 8).

For helpful information on CDR® assessments, you can access the Prepare for CDR® Assessment guide. From the Home screen of your Provider Portal, click on Prepare for an Exam, then click on Prepare for CDR® Assessment. You can also review the June 2022 CDR® Training Slides (under the Resource Documents tab – scroll down to the Webinars and Training section and click the CDR® Training Slides (June 2022) link), or you can view the CDR® Training (recorded July 2022) by clicking on the CDR® Training link found in the Webinars and Training section of the Resource Documents page of the Provider Portal.

Example – "Please remember to report individual ratings and explanations for the three relevant CDR® categories (Community Affairs, Home/Hobbies, and Personal Care), as well as an overall CDR® rating based on the three relevant categories."



# Gelb Criteria Symptoms



When evaluating a Player for Parkinson's Disease, the MAF Physician should specify whether they directly witnessed the Gelb Criteria symptoms (resting tremor, rigidity, asymmetric onset, and bradykinesia) or if they identified the symptoms in medical records only. We have found instances where a physician states that the Player exhibits all four symptoms, however, they note that they did not observe one or more symptoms on the day of his evaluation but found documentation of the symptoms in previous medical records. We need more clarity on how you determine that a Player meets each of the Gelb Criteria.

Example – "The Diagnosing Physician does clearly document the presence of 2 of the 4 Gelb criteria (resting tremor, and rigidity), however, the available information would not meet the DSM-5 criteria for Major Neurocognitive Disorder probably due to Parkinson's disease. Unfortunately, asymmetric onset and bradykinesia were not directly reported by the Diagnosing Physician even though these were observed on other examinations.

Please provide an addendum with your medical reasoning for diagnosing the Player with Parkinson's Disease in light of the Player not fulfilling the core clinical criteria for a Parkinson's Disease diagnosis (resting tremor, rigidity, asymmetric onset, and bradykinesia)."

## Inclusion of PVT and SVT Scores - Neuropsychologists



Program neuropsychologists do not always include all raw scores, t- scores, or percentile scores for the Performance Validity tests and Mental Health assessments that they administer.

**In your reports, we need you to include the Slick Checklist and all available scores for:**

- ACS validity profile
- TOMM (Test of Memory Malingering)
- MSVT (Medical Symptom Validity Test)
- VSVT (Victoria Symptom Validity Test)
- WMT (Word Memory Test)
- MMPI-2-RF (Minnesota Multiphasic Personality Inventory, 2nd Revision, Restructured Form)

When neuropsychologists only provide certain scores and we are not able to determine whether the testing is valid, we ask an Appeals Advisory Panel Consultant (AAPC) for help. If the AAPC cannot determine whether the testing is valid, we have to reach back out to the neuropsychologists for additional information.



Example – "The Appeals Advisory Panel Consultant (AAPC) neuropsychologist who reviewed your report has requested the names and scores for the Performance Validity Tests. Please provide the names and scores for all Performance Validity Tests from your evaluation."

## You've got Questions, We've got Answers.




Occasionally we receive unique questions from you that cause us to consult the AAPLC for the answers. We want to share these questions and answers with all Program Doctors in this new section of our newsletter.

**Question:** Would a diagnosis of Alzheimer's Disease that is primary progressive aphasia variant be considered the same as the Qualifying Diagnosis of Alzheimer's Disease under DSM-5 or ICD-10 for the purposes of the Program?

**Answer:** Primary progressive aphasia can reflect either Alzheimer pathology or Frontotemporal Lobar Degeneration pathology. A carefully documented cognitive examination (not just an MMSE score) would be needed to support an Alzheimer's Disease diagnosis. The requirement that there be a true dementia (i.e. cognitively mediated declines in daily function with deficits in two cognitive domains) also must be documented.

### Program Doctors Settlement Program Contact Information

| Program Doctor Type | Phone: | Email: |
|---|---|---|
| **MAF Physicians and Other Approved Evaluating Neuropsychologists** | 1-855-887-3485 | NFLQualifiedMAFPhysicians@NFLConcussionSettlement.com |
| **BAP Providers** | 1-888-537-9439 | NFLOps@EpiqGlobal.com |