# Exhibit "P"

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: NFL PARTIES' APPEAL OF CLAIM DETERMINATION FOR SETTLEMENT CLASS MEMBER [redacted] | |

## Introduction

[redacted], a Retired NFL Football Player and Class Member under the Amended Class Action Settlement Agreement, filed a claim for benefits based on a Qualifying Diagnosis of Parkinson's Disease through the MAF. The Claims Administrator determined he was eligible for an Award.

The NFL Parties, appealing, contend that Mr. [redacted] does not meet the criteria for Parkinson's Disease. I convened a panel of AAP neurologists to advise me regarding the diagnostic requirements for Parkinson's under the Settlement Agreement. After a thorough review, they recommended denying the NFL Parties' Appeal as it did not offer clear and convincing evidence that the Claims Administrator's decision was in error. I adopt that recommendation.

## Factual and Procedural Background

Mr. [redacted] underwent a BAP neuropsychological evaluation in 2018 with Dr. [redacted], who, after opining that Mr. [redacted]'s testing offered invalid estimates of his cognitive function, found that he did not qualify for any level of impairment. She, and Mr. [redacted]'s supportive affiant, did provide some evidence of his memory loss and mood swings. Doc. 285891. There is no record in the Claim Package documents that Mr. [redacted] then, or ever, saw a BAP neurologist.

Rather, on November 7, 2022, Mr. [redacted] was examined by MAF neurologist [redacted]. Doc. 275523. In Dr. [redacted]'s signed December 8 report of that examination, she relayed Mr. [redacted]'s self-described tremor, gait instability, balance issues, and numbness/tingling in his

extremities.[1] He told her that he'd been diagnosed with Parkinson's Disease by Dr. [redacted] in 2021. She noted that he "started having hallucinations several years ago" (recorded in a report from 2016), relieved by the medication Donepezil. Dr. [redacted] reviewed a DAT scan from 2021 which was "not consistent with parkinsonism", a different interpretation of that same DAT scan finding it "suggestive of parkinsonism" and a neuropsychological evaluation from 2016 suggesting "early dementia; possible Lewy Body Disease."

Dr. [redacted]'s examination revealed a right-hand tremor at rest and bradykinesia of the right hand. Noting the inconsistency between the DAT scan in 2021 and Mr. [redacted]'s local neurologist's review of that same imaging, Dr. [redacted] explained that the scan "does not appear to have been of optimal quality." Given his resting tremor, "slowness of movement of his right hand, history of active sleep that may likely be REM Sleep behavioral disorder which can occur in parkinsonian disorders, my impression is that he most l[ikely] has tremor dominant Parkinson's disorder." Doc. 275523 at 3. She certified that Diagnosis on January 3, 2023. Doc. 275223.

The Claims Administrator, as a part of its normal processes of review, then asked for more information from Dr. [redacted], particularly regarding references to Lewy Body Disease in her report, and how she came to conclude that Mr. [redacted] had met the requirements of Parkinson's Disease. Dr. [redacted], responding on June 26, 2023, made two basic points.

First, she explained that Lewy Body dementia was unlikely as Mr. [redacted] had never been diagnosed with dementia, and certainly did not suffer the rapidly worsening cognition characteristic of the Lewy Body pathology. Second, she explained that she had observed a resting tremor, asymmetric onset and bradykinesia, all Group A features under the Gelb Criteria, and none of the Group B features (his hallucinations did not persist, and he did not have dementia). Doc. 285129.

Given those explanations, the Claims Administrator determined that Mr. [redacted] had established his entitlement to relief and notified him of his eligibility for an Award on July 31, 2023. Doc. 286686. The NFL Parties timely appealed.

## Discussion

The Amended Class Action Settlement description of the requirements for a Qualifying Diagnosis of Parkinson's Disease while living is sparse. The Injury Definition states:

> A diagnosis while living of the specific disease of Parkinson's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder

[1] There is a two days earlier, electronically-signed, report in the Portal from Dr. [redacted] with different conclusions. Doc. 275040. Neither Party has explained how or why Dr. [redacted] changed her views on Mr. [redacted]'s Diagnosis. However, given the proximity of these documents in time, I accept that the second, signed, document represents Dr. [redacted]'s considered medical judgment and formed the basis for her certification.

> probably due to Parkinson's Disease as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM 5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d)

Amended Settlement Agreement, Exhibit 1, Section 4. The FAQs, after quoting this section, then explain that the "Agreement also states that the identification of a condition – for example, through a blood test, genetic test, imaging technique, or otherwise – that has not yet resulted in actual cognitive impairment and/or neuromuscular impairment experienced by the Player does not qualify as a Qualifying Diagnosis. There must be an actual manifestation of cognitive impairment and/or neuromuscular impairment."[2]

As is often the case, the ICD-9/10 itself does not well-define the precise contours of a Diagnosis, leaving much to clinical practice. Though the parties to this Appeal appear to agree on the basic contours of what Exhibit 1 means, I enlisted a panel of AAP neurologists, asking them to describe their understanding of how to make a Qualifying Diagnosis of Parkinson's Disease under the Settlement, and to evaluate Mr. [redacted]'s records given that consensus understanding. That Panel met in December 2023, and later summarized their conclusions in a memorandum. Doc. 298558. The Program's neutral advisers began with a general, clarifying, statement:

> All members agreed that the appropriate criteria for the diagnosis of Parkinson's disease for use in the Settlement remain the Gelb criteria. These criteria published in 1999 were the most widely used criteria in the United States at the time of the Settlement. Later criteria such as those of the Movement Disorder Society published in 2015 are designed to be used by movement disorder specialists rather than the neurologists who participate as MAF physicians, who are not required to have this specialty expertise. All members agreed that disease biomarkers such as the DaT scan should not be used to reverse the diagnosis of the examining MAF physician following Settlement criteria.

I accept this statement of the appropriate way to make a Diagnosis of Parkinson's Disease today under the Settlement.

The NFL Parties, accepting this general approach, offer two reasons why Mr. [redacted]'s medical records demonstrate that the Gelb Criteria do not support a Qualifying Diagnosis of Parkinson's Disease.

*First*, the NFL Parties assert that Mr. [redacted] did not have three Gelb A symptoms as of the Fall of 2022, as Dr. [redacted]'s conclusion that Mr. [redacted] demonstrated bradykinesia post-dated her diagnosis by months. Doc. 289964, citing Doc. 285129 (Dr. [redacted]'s later addendum.) But Dr. [redacted]'s contemporaneous notes refute the claim: she wrote in December 2022 that Mr. [redacted]'s exam demonstrated "bradykinesia of right hand." Doc. 275523, at 3. And even if she

[2] *Frequently Asked Questions: FAQ #117* (What must the medical records show for Parkinson's Disease?), NFL Concussion Settlement, https://www.nflconcussionsettlement.com.

had not made that finding, Mr. [redacted]'s primary neurologist, Dr. [redacted], described bradykinesia ("esp poor B finger taps") in April 2022, after previously not seeing it in 2020. *Compare* Doc. 275525, at 3 to *id.* at 19.

*Second*, the NFL Parties challenge that Mr. [redacted]'s history of hallucinations offers evidence of an etiology that excludes Parkinson's Disease under the Gelb criteria, arguing that it is irrelevant under those criteria that these hallucinations resolved with medication.

The AAP considered this exclusionary criteria argument and rejected it:

> All members agreed that Dr. [redacted] was appropriate in diagnosing the Player with Parkinson's disease on the date of diagnosis. It was argued in the documentation contesting that diagnosis that the presence of hallucinations are Gelb exclusionary (B) criteria excluding the diagnosis of Parkinson's disease and supporting an alternative diagnosis of Dementia with Lewy bodies. Dr. [redacted] noted this history of hallucinations (bug and toilet paper out of the corner of his eye) was described in the 2016 neuropsychological report (doc. 275525) where they are noted as "fleeting hallucinations only a handful of times." Dr. [redacted] initially gave a diagnosis of possible Lewy Body Disease (a term that includes both Parkinson's disease and Dementia with Lewy Bodies) and later both stated in the report and certified the patient with a diagnosis of Parkinson's disease.
>
> Review of the medical records does not support that the phenomenon experienced by the Player were clearly visual and tactile hallucinations. All members agreed that these were not at the level of severity, clarity or prevalence seen in Dementia with Lewy Bodies and did not fulfill the exclusionary B criteria. It was also noted that the same neuropsychological report stated that the Player's tremor began 5 years prior to that assessment in 2016, bringing into question that hallucinations began within 3 years of the onset of motor symptoms as stated for this Gelb B criteria.

As the AAP Panel thus carefully advised me, Mr. [redacted]'s medical records are entirely supportive of Dr. [redacted]'s Qualifying Diagnosis of Parkinson's Disease. I appreciate their expertly derived factual conclusions and adopt them.

## Conclusion

Because the NFL Parties have not offered clear and convincing evidence that the Claims Administrator erred, I deny their Appeal.

Date: January 16, 2024

David A. Hoffman

David A. Hoffman, Special Master