# Exhibit "T"

# Declaration of Sidney A. Shapiro in Support of Motion to Vacate the Audit Report and Rule 27 Decision

## INTRODUCTION

1. My name is Sidney A. Shapiro. I am the Frank U. Fletcher Chair in Administrative Law, Wake Forest University, where I have taught since 2004. Before coming to Wake Forest University, I was the John M. Rounds Professor of Law at the University of Kansas, where I taught from 1976 until 2004.
2. I file this expert declaration on behalf of the Grossinger Law Firm (hereinafter referred to as "Grossinger"). Although I am being compensated for preparation of this report in the amount of $1000 per hour, my report solely reflects my understanding of administrative law including procedural due process.
3. My declaration is limited to the legal issues relating to compliance with constitutional due process.

## EXPERT QUALIFICATIONS

4. I believe my 50 years of teaching and writing about administrative law and procedural due process qualify me as an expert in those subjects.
5. I am a cum laude graduate of the Wharton School of Finance and Commerce, University of Pennsylvania in 1970, and a cum laude graduate of the University of Pennsylvania Law School in 1973, where I served as an editor of the University of Pennsylvania Law Review.
6. I am the coauthor of one of the leading administrative law casebooks (textbooks), *Administrative Law and Procedure: A Problem Casebook* (West Publishing Co., 8th ed. 2025) and of *Administrative Competence: Reimagining Administrative Law* (Cambridge University Press, 2020), which was a co-winner of award from the Section of Administrative Law, American Bar Association for the best administrative law scholarship in 2021. I have authored or coauthored six additional books and over 60 published articles.
7. According to a published survey, I was the 18th most cited law faculty member working in environmental and / or administrative law in the U.S. for the period 2016-2020 (inclusive), and a runner-up for the period 2019-2023.
8. A copy of my CV is included with this filing.

## FINDINGS

9. A decision is invalid if there are material procedural violations or the hearing procedures do not provide due process.

10. The members of this class action have the right to constitutional due process in the adjudication of their eligibility for benefits.
11. Grossinger is entitled to constitutional due process regarding allegations of fraud because the special master's acceptance of those charges will stigmatize him in way that will adversely affect his job prospects.
12. Due Process requires adequate notice regarding the actual sanctions imposed on Grossinger.
13. Due Process also requires hearing procedures sufficient to protect Grossinger's due process right to contest government action that damages his reputation.
14. Based on my understanding of the facts, Grossinger did not receive any notice of the possibility of the actual sanctions that were imposed on him, and he did not have an opportunity to contest the facts that led to the sanctions which will damage his reputation.
15. A settlement agreement does not waive due process rights that are not expressly indicated by the clear language in in the agreement.

**ANALYSIS**

16. A decision is invalid if there are material procedural violations or the hearing procedures do not provide due process.
    a. Adjudicators are required to follow required legal procedures. *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.")
    b. A court is authorized to set aside an agency's "conclusions "found to be … without observance of procedure required by law," 5 U.S.C. §706(2)(D) if the failure resulted in a "prejudicial error." 5 U.S.C. §706. For the failure to follow a procedure to be harmless, it must clearly have no bearing on the substance of the decision that was made. *League of California Cities v. Fed. Commc'ns Comm'n,* 118 F.4th 995, 1030 (9th Cir. 2024).
    c. Even if an adjudicator follows the required legal procedures, the courts will reverse a decision if those procedures were not adequate to provide someone the due process to which they are entitled. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Turner v. Rogers*, 564 U.S. 431, 455 (2011).

17. The members of this class action have the right to constitutional due process in the adjudication of their eligibility for benefits.
    a. A person has a property interest in a benefit protected by due process when the person has a legitimate legal claim of entitlement to the benefit. *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).
    b. A legitimate legal claim of entitlement to a benefit is "created and [its] dimensions defined by exiting rules or understandings that stem from an independent [legal] source

… that secure[s those] benefits and that support claims to those benefits." *Perry v. Sinderman*, 408 U.S. 593, 599, (1972).

c. When a court approves a settlement in a class action, it has "elements of both contracts and judicial decrees." *Frew v. Hawkins*, 540 U.S. 431, 437(2004). The "consent decree 'embodies an agreement of the parties' and is also 'an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.'" *Id*; *see* Loc. No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 519 (1986) ("The question is not whether we can label a consent decree as a "contract" or a "judgment," for we can do both.")

d. Because the judicial decree creates a legal entitlement that "secure[s] certain benefits and that support claims to those benefits," *Perry v. Sinderman*, 408 U.S. at 599, the due process clause applies to the hearing process used to adjudicate eligibility for benefits under the settlement agreement.

e. A person's reliance on a legal entitlement "must not be arbitrarily undermined" because it "is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims. *Roth*, 408 U.S. at 577.

18. Grossinger is entitled to due process regarding allegations of fraud because the special master's acceptance of those charges will stigmatize him in way that will adversely affect his job prospects.

a. As related in 15, the judicially sanctioned settlement process is government action.

b. When an action by the government adversely affects a person's job prospects by stigmatizing him or her, there is a deprivation of liberty and due process is required. WILLIAM F. FUNK, SIDNEY A. SHAPIRO, & RUSSELL L. WEAVER, ADMINISTRATIVE PROCEDURE AND PRACTICE 271 (8th ed. 2025).

c. According to the Supreme Court, "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).

d. For due process to apply, the stigma must be made public, *Bishop v. Wood*, 426 U.S. 341, 348 (1976), and it must be so damaging as to make it impossible for the person to escape the stigma. *Shands v. City of Kennett*, 993 F2d. 1337, 1347 (1993).

e. If the special master were to uphold the allegation that Grossinger had submitted fraudulent claims for his clients' benefits, he has the protection of due process since it is an action by a federal official which seriously damages his reputation in a manner that would not be easy to escape because of its impact on attracting clients and potential disciplinary proceedings by the bar.

19. Due Process requires adequate notice regarding the sanctions against Grossinger.

a. An "essential principle of due process is that a deprivation of life, liberty or property must be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. Of Education v. Loudermill*, 470 U.S. 532, 542 (1985).
b. Based on my understanding of the facts, Grossinger received notice of a proposed sanction of censure, and he challenged that action in his reply. But he had no notice of the alternative sanctions that were adopted after he filed his reply concerning censure, which included permanent exclusion from every aspect of the Program, forfeiture or disgorgement of all attorneys' fees, refusal of future liens, restitution, and apportionment of the Audit's costs.
c. To be effective notice, the notice must permit the person being accused sufficient information to "give his version of the events" to "provide a meaningful hedge against erroneous action." *Goss v. Lopez*, 419 U.S. 565, 583 (1975).
d. In other words, the notice required by due process must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

20. Due Process also requires hearing procedures sufficient to protect Grossinger's due process right to contest government action that damages his reputation.
    a. Where a person has been deprived of a liberty interest without due process, the hearing required must provide the aggrieved party with an opportunity to clear his name. *Brady v. Gebbie*, 859 F.2d 1543, 1554 (9th Cir. 1988)
    b. Those procedures at a minimum must be sufficient to provide an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976); *Withrow v. Larkin*, 421 U.S. 35 (1975).
    c. The courts judge the adequacy of the procedures used by considering "the private interest that will be affected by the official action, the risk of an erroneous deprivation of that interest, and the probable value of additional procedural safeguards, and finally the Government's interest including the additional burdens that additional procedures would entail. *Mathews v. Eldridege*, 424 U.S. 319, 334 (1976).
    d. Grossinger's private interest is the damage to his reputation in a manner that would not be easy to escape because of its impact on attracting clients and potential disciplinary proceedings by the bar. Since this interest is significant, a court should carefully assess the adequacy of the procedures used to sanction him.
    e. Based on my understanding of the facts, Grossinger received notice of a proposed sanction of censure, and he challenged that action in a reply, but he had no opportunity to contest the facts that led to the sanction that will damage his reputation, which included permanent exclusion from every aspect of the Program, forfeiture or

disgorgement of all attorneys' fees, refusal of future liens, restitution, and apportionment of the Audit's costs.

f. While a court will use the criteria from *Matthews v. Eldrige* to determine what procedural rights are required by due process, there would be a clear violation of due process if Grossinger was denied any opportunity to clear his name at a meaningful time and in a meaningful manner.

21. A settlement agreement does not waive due process rights that are not expressly indicated by the clear language in in the agreement.
    a. The waiver of due process rights must be voluntary, knowing, and intelligent, and must be established by clear and compelling evidence. *Erie Telecommunications, Inc. v. City of Erie, Pa.*, 853 F.2d 1084, 1094 (3d Cir. 1988).
    b. The waiver of specific due process rights will not be implied from general contract language. *Fuentes v. Shevin*, 407 U.S. 67, 94–95 (1972); *Nose v. Att'y Gen. of U.S.*, 993 F.2d 75, 79 (5th Cir. 1993).
    c. Grossinger therefore did not waive his right to adequate notice and an adequate hearing regarding his sanction unless the settlement agreement has specific language agreeing to such a waiver.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 10, 2026.

Sidney Shapiro

Sidney A. Shapiro

**SIDNEY A. SHAPIRO**
**FRANK U. FLETCHER CHAIR IN ADMINISTRATIVE LAW**
**WAKE FOREST UNIVERSITY**

## BOOKS

*How Government Built the Country* (Cambridge University Press, forthcoming June 2024) (with Joseph Tomain)
*Administrative Law and Process* (West Academic Press, 8th ed. 2024) (with Paul Verkuil & Richard Pierce)
*Administrative Competence: Reimagining Administrative Law* (Cambridge University Press, 2020) (with Elizabeth Fisher)
*Regulatory Law and Policy: Cases and Materials* (Carolina Press, 4th ed. 2020) (with Joseph Tomain)
*Administrative Law and Procedure: A Problem Casebook* (West Publishing Co., 6th ed. 2018)
*Achieving Democracy: Pragmatism, Regulation, and Markets* (Oxford University Press, 2014) (with Joe Tomain)
*The People's Agents and the Battle to Protect the American Public: Special Interests, Government, and Threats to Health, Safety, and the Environment* (University of Chicago Press, 2010) (with Rena Steinzor)
*Sophisticated Sabotage: The Intellectual Games that Industries Play to Subvert Responsible Regulation* (ELI Press, 2004) (with Thomas McGarity & David Bollier)
*Risk Regulation at Risk: Restoring A Pragmatic Approach* (Stanford Press, 2003) (with Robert Glicksman)
*Workers at Risk: The Failed Promise of The Occupational Safety and Health Administration* (Praeger Press, 1993) (with Tom McGarity)

## ARTICLES

Book Review: Protecting Bureaucratic Competence and Neutrality, New Solutions: A Journal of Environmental and Occupational Health Policy (2024) https://doi.org/10.1177/10482911241227786.
Disagreement About *Chevron*: Is Administrative Law the "Law of Public Administration"?, 70 Duke L.J. Online (Feb. 2021) (with Elizabeth Fisher)
Rulemaking Inaction and the Failure of Administrative Law, 68 Duke L.J. 1805 (2019)
Law, Expertise, and Rulemaking Legitimacy: Revisiting the Reformation, 49 Environmental Law 661 (2019).
Inequality, Social Resilience, and the Green Economy, 86 UMKC L. Rev. 963 (2018) (with Robert Verchick)
Overuse of Antibiotics in Concentrated Feeding Operations and Tort Law, 47 Environmental L. Rev. 557 (2017).
Arbitrariness Review Made Reasonable: Conceptual and Structure Reform of Hard Look, 92 Notre Dame L. Rev. 331 (2016) (with Richard Murphy)
Talking About Regulation: Political Discourse and Regulatory Gridlock, 7 Wake Forest J. L.& Pub. Pol. 101 (2016)
The Failure to Understand Expertise in Administrative Law: The Problem and the Consequences, 51 Wake Forest L. Rev. 1097 (2015)

Constraining White House Political Control of Agency Rulemaking Through the Duty of Reasoned Explanation, 48 U.C. Davis L. Rev. 1457 (2015)
Dying at Work: Political Discourse and Occupational Safety & Health, 49 Wake Forest L. Rev. 831 (2014).
Rethinking Administrative Law: The Institutions of Public Law, 53 Washburn L. Rev. 1 (2013).
Chevron and the Legitimacy of Expert Public Administration, 22 Wm. & Mary Bill of Rights Journal 465 (2013) (with Liz Fisher)
Public Participation Without A Public: The Challenge for Administrative Policymaking, 78 U. Missouri L. Rev. 489 (2013) (with Richard Murphy)
Pragmatic Perspective on Democracy and Regulation About Healthcare, Salute Persona Cittadinanza 205 (November / December 2012)
Regulatory Science in Rulemaking and Tort: Using the Weight of the Evidence Approach, 3 Wake Forest J. L. & Pol. 101 (2012) (with Thomas McGarity)
The Enlightenment of Administrative Law: Looking Inside the Agency for Legitimacy, 47 Wake Forest L. Rev. 463 (2012) (with Elizabeth Fisher & Wendy Wager)
Regulatory Capture: The Complexity of Diagnosis and Remediation, 17 Rog. Williams L. Rev. 101 (2012).
Politicized Judicial Review in Administrative Law: Three Impossible Responses, 19 Geo. Mason L. Rev. 319 (2012) (with Richard Murphy)
Cost-Benefit Analysis: An Organizational Design Perspective, 19 NYU Envt'l L. Rev. 102 (2012)
Paul Verkuil and Pragmatic Adjustment in Government, 32 Cardozo L. Rev. 2459 (2011).
Book Review: Carl F. Cranor, Legally Poisoned: How the Law Puts Us at Risk From Toxicants, Am J. of Industrial Medicine (November, 2011)
The Future of the Administrative Presidency: Turning Administrative Law Inside-Out, 65 Miami L. Rev. 577 (2010) (with Ronald Wright)
The Social Costs of Dangerous Products: An Empirical Investigation, 18 Cornell J. of Law & Pub. Pol. 775 (2009) (with J. Paul Leigh and Ruth Ruttenberg)
Political Science: Regulatory Science After the Bush Administration, 4 Duke Journal of Constitutional Law and Public Policy 31 (2009)
Eight Things Americans Can't Figure Out About Controlling Administrative Power, 61 Ad. L. Rev. 5 (2009) (special issue) (with Richard Murphy)
Capture, Accountability, and Regulatory Metrics, 86 Tex. L. Rev. 1741 (2008) (with Rena Steinzor)
Beyond Cost-Benefit Analysis: A Pragmatic Reorientation, 32 Harv. Env. L. Rev. 433 (2008) (with Christopher Schroeder)
OMB and the Politicization of Risk Assessment, 37 Env. L. 1083 (2007)
United Church of Christ v. FCC: Private Attorney Generals and the Rule of Law, 58 Ad. L. Rev. 939 (2007)
The People's Agent: Executive Branch Secrecy and Accountability in an Age of Terrorism, 69 Law & Contemp. Probs. 99 (2006) (with Rena I. Steinzor)
The Case Against the IQA, Env. Forum, July/August 2005, at 26.
Rethinkng Reform of Electricity Markets, 40 Wake Forest L. Rev. 497 (2005) (with Joseph P. Tomain).
Pragmatic Administrative Law, Issues in Legal Scholarship, The Reformation of American Administration Law (2005): Article 1, http://www.bepress.com/ils/iss6/art1/.
Government Benefits and the Rule of Law: Toward A Standards-Based Theory of Due Process, 57 Ad. L. Rev. 107 (2005) (with Richard Levy)
Improving Regulation Through Incremental Adjustment, 52 K.U.L. Rev. 1179 (2005) (with Robert Glicksman) (2004) (with Robert Glicksman)

The APA and the Back-End of Regulation: Procedures for Informal Adjudication, 56 AD. L. Rev. 1159
Outsourcing Government Regulation, 53 Duke L. Rev. 389 (2004).
The Information Quality Act and Environmental Protection: The Perils of Reform By Appropriations Rider, 28 Wm. & Mary Env. L. & Pol. REV. 339 (2004).
OMB's Dubious Peer Review Proposals, 34 Env. L. Rep. 10064 (2004)
Administrative Procedure and the Decline of the Trial, 51 Kansas L. Rev. 473 (2003) (with Richard Levy)
The Missing Perspective, The Environmental Law Forum, March/April 2003 (with Rob Glicksman).
Book Review: Regulatory Encounters and American Adversarial Legalism, 50 Am. J. Comparative Law 229 (2002)
Matching Public Ends and Private Means: Insights from the New Institutional Economics, 6 J. Small & Emerging Business 43 (2002)
Two Cheers For HBO: The Problem of the Nonpublic Record, 54 Ad. L. Rev. 853 (2002)
The New GATT Trade Regime, Regulatory Protection, and Public Accountability, 54 Ad. L. Rev. 435 (2002)
Goals, Instruments, and Environmental Policy Choice, 10 DUKE ENV. L. & POL. FORUM 297 (2001) (with Rob Glicksman)
Top Ten Reasons That Law Students Dislike Administrative Law and What Can (or Should) Be Done About Them, 38 Brandeis L.J. 351 (2000)
Administrative Law After the Counter-Reformation: Restoring Faith in Pragmatic Government, 48 Kansas L. Rev. 689 (2000)
Voluntary Regulatory Compliance in Theory and Practice: The Case of OSHA, 52 Admin. L. Rev. 97 (2000) (with Randy Rabinowitz)
The Necessity of OSHA, 8 Kansas J. Law & Pub. Pol. 22 (1999)
OSHA Reform: Cooperation Versus Punishment, 49 Ad. L. Rev. 713 (1997) (with Randy Rabinowitz)
Substantive Reform, Judicial Review, and Agency Resources: OSHA as an Case Study, 49 Ad. L. Rev. 645 (1997)
Analyzing Government Regulation, 49 Ad. L. Rev. 377 (1997) (with Joe Tomain)
OSHA's Critics and Regulatory Reform, 31 Wake Forest L. Rev. 587 (1996) (with Tom McGarity)
Agency Priority Setting and Review of Existing Rules, 48 ADMINISTRATIVE L. REV. 370 (1996)
A Delegation Theory of the APA, 10 Ad. L.J. 89 (1996)
Judicial Incentives and Indeterminacy in Substantive Review of Administrative Decisions, 44 Duke L.J. 1051 (1995) (with Richard Levy)
Keeping the Baby and Throwing Out the Bathwater: Justice Breyer's Critique of Regulation, 8 Ad. L.J. 713 (1995)
The Resolution of Technological Controversies in Regulatory Agencies, 6 Risk: Issues in Health & Safety 127 (1995)
Occupational Safety & Health: Policy Options and Political Reality, 31 Houston L. Rev. 13 (1994)
Political Oversight and the Deterioration of Regulatory Policy, 46 Ad. L. Rev. 1 (1994)
Rejoining the Battle Against Noise Pollution, 9 Issues in Science & Technology 73 (Spring 1993)
Lessons from A Public Policy Failure: EPA and Noise Abatement, 19 Ecology L.Q. 1 (1992), reprinted in part in ENVIRONMENTAL VIEWPOINTS (M. Lazzari ed. 1994)
Not So Paradoxical: The Rational For OSHA, 1991 DUKE L.J. 729 (with Tom McGarity), reprinted in part in Law & The Environment: A Multidisciplinary reader (R. Percivil & D. Alevizatos eds.1997)
Poverty and the Politics of Occupational Safety and Health, 1 Kansas J.L. & Pub. Pol. 127 (1991) (with

Tom McGarity)
Reflections on Teaching Administrative Law: Time for A Sequel, 43 Ad. L. Rev. 501 (1991)
Biotechnology and the Design of Regulation, 17 Ecology L.Q. 1 (1990)
Public Accountability of Advisory Committees, 1 Risk: Issues in Health & Safety 189 (1990)
Rethinking OSHA: Rulemaking Reforms and Legislative Changes, 6 Yale J. Reg. 1 (1989) (with Tom McGarity)
Congress, the Supreme Court, and the Quiet Revolution in Administrative Law, 1988 Duke L.J. 819 (with Robert Glicksman)
Lab Safety and the Law, 18 Chemtech 267 (1988) (with Michael Burns & Robert Foster)
Heightened Scrutiny of the Fourth Branch: Separation of Powers and The Requirement of Adequate Reasons for Agency Decisions, 1987 Duke L.J. 387 (with Richard Levy); reprinted in part in Administrative Law Anthology (Thomas Sargentich ed. 1994)
Scientific Issues and The Function of Hearing Procedures: An Evaluation of FDA's Public Board of Inquiry, 1986 Duke L. Rev. 288
Utility Regulation and the Political Process, 33 Kansas L. Rev. 491 (1985)
Responses to Occupational Disease: The Role of Markets, Regulation, and Information, 72 Georgetown L.J. 601(1984) (with Elinor Schroeder)
Political and Judicial Review of Agency Action, 60 Texas L. Rev. 1175 (1982) (with Richard Pierce)
Public Regulation of DNA Gene Therapy, 3 J. Legal Medicine 185 (1982) (with Tom McGarity)
The Trade Secret Status of Health and Safety Testing Information: Reforming Agency Disclosure Policies, 93 Harv. L. Rev. 837 (1980) (with Tom McGarity), reprinted in part in International Library of Essays in Law & Legal Theory (2d Series 2001).
Rethinking Kansas Administrative Procedure, 28 Kansas L. Rev. 419 (1980) (with Marilyn Ainsworth)
Limiting Physician Freedom to Prescribe a Drug for Any Purpose: The Need for FDA Regulation, 73 Northwestern L. Rev. 801 (1978)
Divorcing Profit Motivation From New Drug Research: A Consideration of Proposals to Provide FDA with More Reliable Test Data, 1978 Duke L.J. 154; reprinted in part in Public Health & the Law: Issues and Trends 389 (L. Hogue ed. 1980)
Abstention and Primary Jurisdiction: Two Chips Off the Same Block? -- A Comparative Analysis, 60 Cornell L. Rev. 75 (1974)

**BOOK CHAPTERS**

Administrative Law Before, During, and After Pandemics, Recognizing Thick Administrative Expertise in Administrative Law, in *Digitalisation of Administrative Law and the Pandemic-Reaction* (Russell L. Weaver & Herwig C.H. Hoffmann eds. 2022).
Regulatory Capture and the Future of Financial Regulation, in *Regulation and the Global Financial Crisis* (Routledge 2020).
Public Law and Climate Disasters: Occupational Health and Safety Law, in *Climate Disaster Law: Barriers and Opportunities* (Robert Verchick & Rosemary Lyster eds. 2018) (with Katie Tracy)
Procedural Issues and Judicial Review, in *Occupational Safety & Health La*w ch. 15 (Gregory N. Dale & P. Matthew Shudtz eds. 2013).
Depoliticizing Judicial Review in Administrative Law: Three Impossible Ways Forward, in *Global Law and Administrative Law* (Russel Weaver & Francois Lichere eds. 2011)

The Necessity of Procedural Reform, in *Beyond Environmental Law: Policy Proposals for a Better Environmental Future* 37 (Alyson C. Lournoy & David M. Driesen eds. 2010) (Cambridge Press)
Occupational Safety and Health, in *Labor and Employment Law and Economics* (Kenneth G. Dau-Schmidt, Seth D. Harris & Orly Lobel eds. 2009) (Edward Elgar Publishing)
Transparency & Data Protection in the EU, in *Administrative Law in the EU* (George A. Bermann, Charles H. Koch, Jr. & James T. O'Reilly eds. 2008).
Peer Review in Regulatory Science, in *Rescuing Science from Politics* (Rena Steinzor & Wendy Wagner eds. 2006)
Procedural Issues and Judicial Review, in *Occupational Safety & Health Law* 149 (Randy Rabinowitz ed., 2008 Cumulative Supplement)
Procedural Issues and Judicial Review, in *Occupational Safety & Health* Law 477 (Randy Rabinowitz ed., 2d ed. 2002)
Regulatory Initiatives, in Developments in *Administrative Law and Regulatory Practice* 2000-2001 (Jeffrey S. Lubbers ed., 2002)
Regulatory Initiatives, in *Developments in Administrative Law and Regulatory Pra*ctice 1999-2000 (Jeffrey S. Lubbers ed., 2001)
Regulatory Initiatives, in *Developments in Administrative Law and Regulatory Pra*ctice 1998-1999 (Jeffrey S. Lubbers ed., 2000)
Occupational Safety and Health Regulation, Vol. *III Encyclopedia of Law & Economics* (BoudewijnBouckaert & Gerrit De Geest eds. 2000) (Edward Elgar Publishing), published at http://encyclo.findlaw.com/tablebib.html
Regulatory Alternatives, in *Blood Banking & Regulation: Procedures, Problems, and Alternatives* (Edward Dauer, ed. 1996) (National Academy Press, Washington)

**PAPER PRESENTATIONS**

Never Let A Crisis Go to Waste: COVID 19 and Affirmative Government, Corpus Christi College, Oxford University, Commons Room Talk (April 2020).
A Government for the People and by the People: A New History, Rothermere Institute for American Studies, Oxford University (March 2020).
Populism and Environmental Law, Oxford University, United Kingdom, Nov. 15, 2019
Social Resilience and Health, Safety and Environmental Law, Center for Progressive Reform, Wake Forest Washington Center, Washington, D.C. March 23, 2018
Protecting Workers: New Approaches, Center for Progressive Reform, OSHA Bootcamp, Washington, D.C., March 16, 2018
Barriers to Regulation: North Carolina Coastal Protection Act, International Association of Landscape Architects: Americas, Climate Change & Tropical Storms, University of Florida, Gainesville, Fl., Dec. 2, 2017.
Inequality, Social Resilience, and the Green Economy, UMKC Law School, Oct. 6, 2017
Ghost Rules and the Legal Obligation to Explain Decisions, International Administrative Law Forum, Paris, France, June 21, 2017
Workshop on Rethinking Administrative Law, American University Law School, May 19, 2007
Overuse of Antibiotics in Concentrated Feeding Operations and Tort Law, Lewis & Clark Law School, Apr. 7, 2017
The Types of Capture, Congressional Briefing, Administrative Conference of the United States, Regulatory

Capture in the 21s Century, March 3, 2016
Public Interest and the Information Quality Act, The State of the Information Quality Act Teleforum, Administrative Law Section, American Bar Association, Feb. 26, 2016
Hard Look Review and Rulemaking Ossification, Administrative Law Section, American Bar Association, Fall Meeting, Washington, DC, Oct. 30, 2015
Remand Without Vacation and Hard Look Review, Administrative Law Discussion Forum, University of Luxembourg Law School, Luxembourg City, Luxembourg, July 1-2, 2015
Constraining White House Political Control of Agency Rulemaking Through the Duty of Reasoned Explanation, American Bar Association, Section of Administrative Law & Regulatory Practice, Fall Conference, Washington, D.C., Oct. 17, 2014
Taking Both Public Administration and Doctrine Seriously in Administrative Law, Public Law Conference: Process and Substance in Public Law, September 16, 2014, Cambridge University, Cambridge, England
Governing the United States: Political Discourse, Democracy, and Capitalism, 5th Biennial ECPR Standing Group for Regulatory Governance Conference, Barcelona Spain, June 27, 2014 (with Joe Tomain)
How We Think and Learn: Implications for Expertise, Workshop on Expert Public Administration, Public Life, and the Search for Legitimacy, Rothermere American Institute, Oxford University, Oxford, England, May 9, 2014
Administrative Law Paradigms, Environmental Law Discussion Series, Oxford University, Oxford, England, May 6, 2014.
Dying at Work: Political Discourse & Occupational Safety and Health, Wake Forest University Law School, Law Review Symposium, April 11, 2014.
When Should (Can) Administrative Law Limit Politics?: Using Reasoned Explanations to Police Centralized Review of Rulemaking, Administrative Law Discussion Forum, University of Louisville School of Law, Louisville, Kentucky, Dec. 4, 2013
Is Administrative Law The Enemy of the State?, South East American Law School Association (SEALS), Annual Meeting, Palm Beach, August 6, 2013
Regulatory Reform The Wrong Way, U.S. Congress, House of Representatives, Policy Briefing, Washington, D.C., June 25, 2013
Noise Regulation, National Webinar, School of Public Health, Michigan State University, June 20, 21013
Freedom To Harm, University of Texas Law School, Austin, Texas Apr. 29, 201320, 2013
36th Annual Foulston Siefkin Lecture, ARethinking Administrative Law: The Institutions of Public Law, Washburn University School of Law, Monday – April 15, 2013
Pragmatism and The Regulatory State, University of Kansas School of Law, Lawrence, Kansas, Apr. 4, 2013
Administrative Constitutionalism: Two Views, American Bar Association, Section of Administrative Law & Regulatory Practice, Fall Conference, Washington, D.C., Oct. 25, 2012
A Pragmatic Perspective on Democracy and Regulation, at the Fourth Biennial Conference of the European Consortium on Political Research, Standing Group on Regulatory Governance, Conference on New Perspectives on Regulation, Governance and Learning, University of Exeter, Exeter, United Kingdom, June 27, 2012
Public Participation Without a Public: The Challenge for Administrative Policymaking, at the Administrative Law Discussion Forum, University of Luxembourg Law School, Luxembourg City, Luxembourg, June 5-6, 2012
The Sources of Change in Administrative Procedure, Law, Policy and Politics, at Université de Poitiers, Le Droit américain contemporain: Identité, Mutations et Débats, Paris, France, June 1, 2012

Regulatory Science in Regulation and Tort: Unifying The Weight of the Evidence Approach, at the Wake Forest Law and Policy Journal Symposium, Implications of Toxic Tort Case: Milward v. Acuity Products, Washington, D.C., May 17, 2012

The Enlightenment of Administrative Law: Looking Inside the Agency for Legitimacy, at the Wake Forest Law Review Symposium, The Asymmetry of Administrative Law: The Lack of Public Participation and the Public Interest, Winston-Salem, N.C., March 30, 2012

A Pragmatic Perspective on Democracy and Regulation, University of Tel Aviv, Faculty Paper Series, Tel Avis, Israel, March 19, 2012

A Pragmatic Perspective on Democracy and Regulation, Environmental Discussion Group, Oxford, University, Oxford, England, February 28, 2012

A Pragmatic Perspective on Democracy and Regulation, Regulation Discussion Group, Centre for Socio-Legal Studies, Oxford University, Oxford, England, February 15, 2012.

A Pragmatic Perspective on Democracy and Regulation, University of Leeds Law School, Leeds, England, February 14, 2012

Administrative Law and Regulatory Practice Section, American Bar Association, Wrong Problem, Wrong Solution, Washington, DC, November 17, 2011.

Senate Democratic Staff, Briefing: Legislation and Reform of the Administrative Procedure Act, Oct. 26, 2011, Washington, D.C.

Administrative Conference of the United States, Staff Brown Bag Lunch, Administrative Law Inside-Out, Washington, D.C. June 29, 2011

Roger Williams Law School, Regulatory Capture, Symposium on the Blowout: Legal Legacy of the Deepwater Horizon Catastrophe, Bristol, RI, April 13, 2011

OSHA Subcommittee, Section of Labor Law, American Bar Association, Spring Meeting, OSHA's Noise Standard: An Administrative Law Test, New Orleans, LA., March 16, 2011

Section of Administrative Law & Regulatory Practice, American Bar Association, Fall Meeting, Depoliticizing Judicial Review, November 5, 2010

Carodoza Law School Symposium, Paul Verkuil and Pragmatic Adjustment in Government, Oct. 18, 2010, New York, N.Y.

Section of Administrative Law & Regulatory Practice, American Bar Association, Brown Bag CLE, Data Quality Act, Oct. 13, 2010, Washington, D.C.

New York University Environmental Law Journal, Symposium, Cost-Benefit Analysis: An Organizational Design Perspective, March 12, 2010, New York, NY

National Association of Environmental Law Societies (NAELS), Annual Meeting, Loyola University – New Orleans School of Law, Climate Change: Law, Science, and Politics, March 6, 2010, New Orleans, LA

University of Miami School of Law, Symposium, Administrative Law Inside Out, Jan. 30, 2010, Miami, FL.

American Association of Law Schools (AALS), Administrative Law Section, Panelist, What's New in Administrative Law?, Jan. 9, 2010, New Orleans, LA.

Administrative Law and Regulatory Practice Section, American Bar Association, OIRA Review: Something Old, Something New?, October 23, 2009, Washington, D.C.

Administrative Law Institute, Administrative Law and Regulatory Practice Section, American Bar Association, OIRA Oversight in the Obama Administration, June 10, 2009, Washington, D.C.

Padua University, The Fiscal Crisis and American Political Values, June, 2009, Padua, Italy

American Bar Association, *Regulatory Metrics*, Administrative Law & Regulatory Practice Section, October, 2008, Washington, D.C.

Duke University, *The Bush Administration and Science: Lessons Learned*, October, 2008, Durham, N.C.
American Bar Association, *Regulatory Impact Assessment in the United States and in the European Union*, International Law Section, September, 2008, Brussels, Belgium
University of Montpellier, *Eight Things Americans Can't Figure Out About Controlling Administrative Power*, Comparative Administrative Law Conference, May, 2008, Montpellier, France (with Richard Murphy)
Padua University, *George Bush and the Politicization of American Administrative Law*, June, 2008, Padua, Italy
American Bar Association, *An Alternative to Cost-Benefit Analysis*, Administrative Law & Regulatory Practice Section, July, 2007, San Francisco, California
Lewis & Clark University, *OMB and the Politicization of Science*, April, 2007, Portland, Oregon
American Bar Association, *Federal Preemption of State Tort Remedies*, Administrative Law & Regulatory Practice Section, February 2007, Miami, Florida
American University, *Judicial Review of Information Quality Act*, May, 2006, Washington, DC.
American Bar Association, Administrative Law & Regulatory Practice Section, *OMB's Risk Assessment Guidelines*, April, 2006, Hamilton, Bermuda
Boston University Law School, *Owning Standards: Private Standards, Government Regulation, and the New Governance*, Boston, Massachusetts, March, 2006.
American Bar Association, Administrative Law & Regulatory Practice Section, *OMB's Guidelines for Peer Review*, February, 2005, Washington, D.C.
North Carolina Academy of Trial Lawyers, *The Last Progressive Force in America*, Ashville, N.C., October, 2005
National Academy of Sciences, *Integration of Peer Review Mechanisms with the Requirements of the Federal Advisory Committee Act and the Administrative Procedure Act*, Washington, D.C., November, 2004
Institute Of Law and Economic Policy, *Outsourcing Regulation*, San Diego, California, April 2003
William and Mary School of Law, *Data Quality and Environmental Protection: The Perils of Regulatory Reform By Appropriations Rider*, Williamsburgh, Virginia., April 2003
Administrative Law and Regulatory Practice Section, *Rulemaking and the Data Quality Act*, Washington, D.C., October 2002.
University of Limerick, Limerick, Ireland, *Trade Agreements, International Regulatory Standards, and Public Accountability*, April 2002.
University of Arkansas School of Law, *Developing A Scholarly Persona: An Institutional Perspective*, Fayetteville, Arkansas, April, 2002
Society for Risk Analysis, *Harmonization of Risk Regulation: Decision Pathways and Public Accountability*, Seattle, Washington, December 2002.
Hall Center for the Humanities, Faculty Seminar, University of Kansas, *International Regulatory Standards*, and Public Accountability, November 2001.
Discussion Club, University of Kansas, *International Regulatory Standards, and Public Accountability*, November 2001.
Administrative Law and Regulatory Practice Section, American Bar Association, *Global Regulatory Standards: Decision Pathways and Public Accountability*, Sanibel Island, Florida, April, 2001
U.S./European Biotechnology Initiative Workshop, *Regulation and Political Culture*, Florence, Italy, Dec.
2000
Annual Meeting of the OSHA Committee of the Labor Law Section of the American Bar Association, *Judicial Review Issues*, Laguna Beach, California, March 2000.

Annual Meeting of the Western Economics Association, *Regulatory Risks, Goals and Instruments*, San Diego, California, July, 1999
Annual Meeting of the OSHA Committee of the Labor Law Section of the American Bar Association, *Judicial Review Issues of Regulatory Compliance*, Miami, Florida, February, 1999
Semi-Annual Meeting of the Risk Analysis and Policy Association (RAPA*), Pending Legislation to Establish Risk Review Procedures: Introduction*, Washington, D.C., March, 1999
Fourth Annual Conference: Managing Ergonomics in the 1990s, *Administrative Procedure and Risk Regulation: Should There Be Peer Review?*, Cincinnati, Ohio, June, 1997
American Bar Association, Section of Administrative Law & Regulatory Practice, *Priority Setting and the Review of Existing Rules*, Washington, D.C., Oct., 1995
National Academy of Sciences, Institute of Medicine Blood Safety Forum, *The Reform of Regulation*, Washington, D.C., Jan. 1995
Franklin Pierce School of Law, *The Resolution of Technological Controversies In Regulatory Agencies*, Oct. 1994
Southeastern Association of Law Schools, *The McCrate Report and Law School Clinics*, Charleston, S.C., July, 1994
National Hearing Conservation Association, *Does Noise Regulation Have A Future?*, Feb. 1994, Atlanta, Georgia
New Challenges in Occupational Health, *Conference Summary*, March 1993, Houston, Texas
Labor and Employment Law Committee, Administrative Law Section, American Bar Association, *Generic Rulemaking and the Occupational Safety and Health Act*, Boston, Massachusetts, Feb.1993
Acoustical Society of America, *Noise Regulation in the United States*, St. Lake City, Utah, May1992
Section of Administrative Law and Regulatory Practice, *Comments: Ossification of the Rulemaking Process*, Dallas, Texas, February, 1992
Chamber of Commerce of the United States, Luncheon Speaker Series, *Presidential Oversight of Agency Rulemaking*, Washington, D.C., May 1991
Section of Administrative Law and Regulatory Practice, American Bar Association, *Benefit-Cost Analysis*, Phoenix, Arizona, May 1991
Department of Occupational Medicine, Duke University School of Medicine, *OSHA Regulation of Toxic Chemicals*, Raleigh, N.C., Dec. 1990
American Society Safety Engineers, *The Future of OSHA*, Kansas City Chapter, Kansas City,Missouri, Oct. 1988.
Conference on OSHA Reform, General Accounting Office, *Legislative Reform of OSHA*, Washington, D.C., Sept 1988
American Industrial Hygienists Association, Heart of America *What Is Wrong With OSHA*, Chapter, Kansas City, Missouri, Sept. 1988
Administrative Law Section, American Bar Association, *Reforming Rulemaking At OSHA*, Clearwater, Florida, 1988
Occupational Safety and Health Law Subcommittee, Labor Law Section, American Bar Association, *Is Legislative Reform Necessary For OSHA?*, St. Thomas, V.I., April 1988
Administrative Law Section, American Bar Association, *The Prospects of Internal Reform At OSHA*, San Diego, California, February 1988
Kansas Trial Lawyers, *Update On Constitutional Issues: H.B. 2661 and S.B. 110*, Lake of theOzarks, Missouri, June 1986
36th Annual Government's Industrial Safety and Health Conference, *Federal Worker and Community Right To Know Statutes*, Topeka, Kansas, November 1985

Exxon Colloquium on the Foundations of American Business, *Capitalism and Community Values: The Role of the Consumer Movement*, Lawrence, Kansas, September, 1985
American Industrial Hygiene Conference, *The Constitutionality of Required Disclosure of Trade Secrets*, Las Vegas, Nevada, May, 1985

**CONGRESSIONAL TESTIMONY**

Hearing on A Review of Regulatory Reform Proposals, Before the Senate Committee on Homeland Security and Government Operations, Sept. 16, 2015

Hearing on H.R. 3010, Regulatory Accountability Act of 2011, Before the Judicial Committee of the U.S. House of Representatives, Oct. 25, 2011

Hearing on Regulatory Impediments to Job Creation, Before Committee on Oversight and Government Reform, U.S. House of Representatives, February 10, 2011

Hearing on Protecting the Public Interest: Understanding the Threat of Agency Capture Before the Subcommittee on Administrative Oversight and the Courts of the Senate Judiciary Committee, U.S. Senate, August 3, 2010

Hearing on the Federal Advisory Committee Act of 2008 Before the Subcommittee on Information Policy, Census, and National Archives of the Committee on Oversight and Government Reform, United States House of Representatives, Apr. 2, 2008

Hearing on Impact of Regulations on U.S. Manufacturing Before the Subcommittee on Regulatory Affairs of the Committee on Government Reform, United States House of Representatives, April 12, 2005

Hearing on Regulatory Reform and Regulatory Accounting Before the Committee on Government Operations, United States Senate, April 22, 1999

Hearing on Occupational Safety and Health Reform Before the Committee on Education and Labor, United States House of Representatives, July 21, 1993.

Hearing on Occupational Safety and Health Reform Before the Committee On Labor and Human Resources and the Subcommittee on Labor, United States Senate, Oct. 29, 1991

**FUNDED RESEARCH**

ADMINISTRATIVE CONFERENCE OF THE UNITED STATES (ACUS):
Agency Review of Existing Rules (1994)
EPA Regulation of Noise Pollution (1991)
The Regulation of Biotechnology (1990)
OSHA Rulemaking Reforms (1989)
OSHA Management of Rulemaking (1987)
Scientific Issues and The Function of Hearing Procedures (1985)
OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION (OSHA):
Voluntary Regulatory Compliance (1999)
The Relationship of EPA and OSHA Regulation (1997)
Cooperative Enforcement Policies (1995)
OSHA Priority Setting Process (1994)
Regulatory versus Nonregulatory Priorities (1994)
OFFICE OF TECHNOLOGY ASSESSMENT (OTA):

Environmental Abatement Tools and Changing Circumstances (1994)
PROGRAM GROUP ON SOCIETY & TECHNOLOGY, JULICH, WEST GERMANY:
American Administrative Process (1985)

**AWARDS and HONORS**

Arthur Kulp Memorial Award, American Risk and Insurance Association, Contribution to Risk Management and Insurance Literature, Sept., 1995, for WORKERS AT RISK: THE FAILED PROMISE OF THE OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION
Chair, Administrative Law Section, American Association of Law Schools (AALS) (1995)

**VISITING POSITIONS**

Visiting Scholar, Corpus Christi College, Oxford University, 2019-2020
Visiting Scholar, University College, Oxford University, Spring 2012
Visiting Professor, University of Padua, Spring, 2009
Visiting Scholar, School of Public and Environmental Affairs, University of Indiana, 1998-99
Visiting Professor of Law, Lewis & Clark, Summer 1995
Visiting Professor of Law, Lewis & Clark Law School, Summer 1993
Visiting Professor of Law, University of North Carolina, 1990-91
Humanities Fellow, Freedom's Soil II Project, Hall Center for the Humanities, 1986-87
Exxon Fellow, Foundations of American Business Colloquium, University of Kansas, Fall, 1985
Visiting Professor of Law, Georgetown University, Summer, 1984, 1980
Fellowship, Economics Institute for Law Professors, Dartmouth College, Summer, 1983, sponsored by the Law and Economics Center, Emory University
Visiting Professor of Law, University of Texas, 1981-82
Consultant, Department of Health, Education, and Welfare, Secretary's Review Panel on New Drug Regulation, 1976-77

**EDUCATION**

University of Pennsylvania Law School
Philadelphia, Pennsylvania
Degree: J.D. (May 1973)

Honors: Graduated Cum Laude; Editor, University of Pennsylvania Law Review; Class Standing: Top 10%

Wharton School of Finance and Commerce
University of Pennsylvania
Philadelphia, Pennsylvania
Degree: B.S. Economics (May 1970)

Honors: Graduated Cum Laude; Dean's List (All Semesters); Beta Gamma Sigma (Business Honorary)

**EMPLOYMENT**

| | |
|---|---|
| WAKE FOREST UNIVERSITY | |
| Frank U. Fletcher Chair of Administrative Law | 2015-present |
| University Distinguished Chair | 2004-2014 |
| Associate Dean for Research and Development | 2007-2010 |
| | |
| UNIVERSITY OF KANSAS | |
| John M. Rounds Professor of Law | 1988-2004 |
| Associate Dean for Research | 1999-2004 |
| Professor of Law | 1982-1988 |
| Associate Professor of Law | 1976-1980 |
| | |
| DEPARTMENT OF HEALTH, EDUCATION & WELFARE (HEW) | |
| Deputy Legal Counsel, Secretary's Review Panel on New Drug Regulation | 1975-76 |
| | |
| FEDERAL TRADE COMMISSION | |
| Trial Attorney, Bureau of Competition | 1973-1975 |
| | |
| PEPPER, HAMILTON & SHEETZ | |
| Summer Associate | Summer, 1972 |

**COURSES**

Administrative Law, Regulatory Law and Policy, Public Interest Lawyering