# Exhibit "V"

RONALD GOLDSTOCK
16 North Chatsworth Ave, Suite 75
Larchmont, New York 10538

SECOND EXPERT REPORT OF RONALD GOLDSTOCK

I have been asked to to review the "Special Masters' Rule 27 Decision on the Report of Adverse Finding" [The Decision] and to comment upon it. This is designed to be treated as an addendum to my initial export report, dated May 24, 2026, which is attached hereto and incorporated herein.

My initial observation is based upon the following paragraph in the Decision:

> Each subject law firm and each potentially affected Claimant had the chance to reply.The responses submitted by the five subject firms were voluminous. Mr. Grossinger submitted 26 pages of briefing and 1,034 pages of exhibits. Feder Law submitted 8 pages of briefing. Pro Athlete Law Firm submitted 24 pages of briefing and 204 pages of exhibits. Syme Law submitted 4 pages of briefing and 58 pages of exhibits. ROV submitted 21 pages of briefing and 180 pages of exhibits, including extensive affidavits from its principals. The NFL Parties filed a relatively short 25-page rejoinder. And seven individual SCMs filed responses, while one law firm filed an omnibus response. Having reviewed these materials with care, we now issue this decision under Audit Rule 27. …In doing so, our task is narrow. We must decide (1) whether the Claims Administrator had a "reasonable basis" for its determination, and (2) if it did, what remedies are appropriate.

,
Oddly enough, that is essentially the last time the "voluminous" responses are mentioned. If they are reasoned explanations for the activities of the subject firms, the is no mention of those explanations in the Decision. While it is claimed to have been "reviewed ,,, with care," there is no indication in the Decision that they were, in fact, considered and rejected and, if so, for what reason(s).

I also note that even a cursory reading of the Decision shows it not to be the unbiased work one would expect from a Court Appointed Special Master, As noted above, no attention is paid to the subject firm responses in the Decision but the reliance on the NFL response is not only substantial but apparently purposefully concealed. I note in passing in the paragraph quoted above, the subject firm's responses of 26, 8, 24, 4, and 21 pages (exclusive of exhibits) are viewed as voluminous, while the 25 page NFL rejoinder is described as "relatively short." [Of course, the Audit relied on in the NFL response had "voluminous" exhibits as well.]

Critically, the 25 page "relatively short" NFL response called for the draconian remedies not asked for in the Audit's Recommendations section, but adopted without attribution or benefit of response in the Decision.

Of continuing concern, in my view, is the rigid attachment to the "Gelb"protocols which were apparently chosen because they were (incorrectly) claimed to be the state of the art at the time of the Settlement Agreement, and because they were supposedly relatively easy to apply -- but not because they accurately diagnosed Parkinson Disease [PD].

While I believed that to be the case based on materials I reviewed for my first Report, there seems to be little doubt as to the inappropriate initial and continued use of the "Gelb" criteria given the more recent expert opinions that were provided to me (Faigman, Duda, and Ondo)..

In my original Report, I noted that it would be inappropriate for the Special Master to rule on the audit report which was based on rules developed for the implementation of the highly suspect "Gelb" protocol which the Special Master, himself, had found to be the appropriate test. His Decision and his continued adherence to his own previous decisions adopting the "Gelb" criteria shows him to be far from an unbiased arbitrator but one who could not countenance the notion that he had mistakenly excluded deserving claimants from obtaining the relief they were due. For these reasons, It is my opinion that the Decision is fatally flawed and that no reliance should be placed upon it.

The Administrator's recent report showing a single application for PD in the last quarter suggests that either virtually no player has been diagnosed with that disease during that time or that the regulations have precluded those who have it from seeking appropriate relief.

The NFL and the Special Master argue that they are applying the correct criteria. The subject firms claim that they are accused of having violated rules, which if followed, would not have necessarily allowed their clients with PD to be diagnosed as such and to have received the settlement fund amounts that they were due. According to the audit reports and Decision, literally hundreds of affected claimant.s have their future lives dependent upon an accurate diagnosis by those who have their best interests at heart.

This is, a soluble problem, I believe that a panel of experts chosen by the Court without ties to or input from, the NFL, the Claims Administrator, the current Special Master, Class Counsel, or the SCM attorneys or representatives, be tasked with creating a modern protocol which would definitively (or as near as medically possible), determine whether or not a claimant as entitled to relief as set forth in the Settlement Agreement,

I am, of course, available to respond to any questions or to expound upon my conclusions.

Respectfully submitted,

.
Ronald Goldstock