# Exhibit "B"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION** | **No. 2:12-md-02323-JDW**<br>**MDL No. 2323** |
| **THIS DOCUMENT RELATES TO:**<br><br>**Objection of Collins & Truett, P.A. to Rule 27 Decision on Audit of Settlement Class Member** [redacted] | |

**ORDER**

**AND NOW**, this 13th day of July, 2026, for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the objection in Opposition To Special Masters' Rule 27 Decision On The Report Of Adverse Finding Regarding Settlement Class Member [redacted] (Doc. # 408308) is **OVERRULED**, and the Special Masters' Rule 27 Decision issued on July 21, 2025 (Doc. # 408309) is **AFFIRMED.**

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION** | **No. 2:12-md-02323-JDW**<br>**MDL No. 2323** |
| **THIS DOCUMENT RELATES TO:**<br><br>**Objection of Collins & Truett, P.A. to Rule 27 Decision on Audit of Settlement Class Member** [redacted] | |

**MEMORANDUM**

Lawyers have duties both to their clients and to the tribunals before which they appear. As a result, they often must walk a tightrope. On the one hand, a lawyer must find the claims that his client has and advocate for them vigorously. On the other hand, they cannot advocate for positions that have no legal or factual support. Walking that tightrope often requires the lawyer to have hard conversations with his client. Rather than take his client's word for things, he has to investigate what his client says to make sure there's factual support for it. And once a client decides to participate in a legal claim, the lawyer has to control his client to make sure that the client provides the information that the rules require.

In the course of representing [redacted] in this case, the law firm of Collins & Truett, P.A. fell short of these obligations. It did not conduct a thorough investigation of

Mr. [redacted] claims, and as a result, it missed substantial indications that Mr. [redacted] was being untruthful. It also failed to ensure that Mr. [redacted] participated in a meaningful way in the audit of his claim. For these reasons, the Special Master censured Collins & Truett. Collins & Truett challenges that censure, but the Special Master had a basis for it, and I will therefore affirm the censure.

## I. BACKGROUND

### A. [redacted] Claim

Settlement Class Member [redacted] sought a monetary award for Level 2 Neurocognitive Impairment. This qualifying condition requires the claimant to demonstrate, among other things, a "moderate" level of functional impairment in the areas of Community Affairs, Home & Hobbies, and Personal Care. (Sett. Agr. Ex. A-1 at 3-4.[1]) In November 2023, a program-approved neurologist who had no firsthand knowledge of Mr. [redacted] functioning in those domains examined Mr. [redacted] The neurologist considered questionnaires that Mr. [redacted] and his wife completed. They both reported that Mr. [redacted] was unemployed. His wife's response also reported that Mr. [redacted] had "not lately" been taken to social functions outside the family home because he "doesn't want to be around a lot of people" and "doesn't like crowds." (Audit Rep., Doc. # 371800, at 3-4.[2]) She reported that Mr. [redacted] engaged in limited household tasks because "he is

---

[1] The Settlement Agreement in this MDL is available on the docket at ECF No. 11502. There have been modifications that are also available on the docket.
[2] The various documents that I cite as "Doc. #" in this opinion are from the NFL Concussion Settlement portal and are available to the parties but not the public.

not motivated to move from the couch." (*Id.*) The neurologist also reviewed and considered two statements from third parties who described Mr. [redacted] transformation into "more of a homebody" and someone who had reduced his attendance at events and given up speaking engagements for a time due to memory problems. (*Id.*)

With these accounts of Mr. [redacted] decreased degree of functioning inside the home and in the community, as well as his examination and the earlier neuropsychological testing results, the neurologist certified that Mr. [redacted] met the criteria for Level 2 Neurocognitive Impairment as far back as the date of his neuropsychological testing four years earlier. On behalf of Mr. [redacted] Collins & Truett submitted his claim to the Claims Administrator on March 3, 2024.

**B. The Audit**

The Claims Administrator notified Mr. [redacted] on March 6, 2024, that it was opening an audit inquiry into his claim. The commencement of the audit should have come as no surprise to either Mr. [redacted] or his counsel. Mr. [redacted] was previously represented by Howard & Associates, P.A., a firm that was expelled from the Settlement Program in 2021 due to fraud. As part of their efforts to remediate the effect of that firm's fraud, the Special Masters directed the Claims Administrator to audit any claims that came from class members who Howard & Associates had represented.[3] To kick off the audit, the Claims

[3] Special Masters' Rule 27 Decision On The Report Of Adverse Finding Regarding Howard & Associates, P.A. And Related Parties, at 8 (June 22, 2021) (available at https://www.nflconcussionsettlement.com/Docs/howard_associates_sm.pdf).)

Administrator sent Collins & Truett a set of initial questions and forms and asked Collins & Truett to have Mr. [redacted] return them within 15 days. Mr. [redacted] did not respond in that time. After the Claims Administrator sent several communications to the firm's staff, Collins & Truett submitted Mr. [redacted] response on April 16, 2024.

The Claims Administrator sent a further request for information on July 26, 2024. These questions were extensive. They arose from review of tax records and representations online – typically by Mr. [redacted] himself – suggestive of active business ventures and several public-facing volunteer roles. The Claims Administrator's questions reflected and shared the preliminary findings from the audit and asked for further information about the frequency of the activities it had uncovered. The Claims Administrator invited Mr. [redacted] to explain the discrepancies between his participation in these activities and the representations he made – both in the claims process and in his statements to his diagnosing neurologist – regarding his degree of functional impairment. The Claims Administrator requested Mr. [redacted] response within 10 days. Counsel did not respond or request an extension during that time. After a follow-up inquiry from the Claims Administrator, Collins & Truett responded on August 19, 2024, that it hoped to provide Mr. [redacted] answers that day. But it failed to do so.

The Claims Administrator made two further inquiries as to whether counsel had received Mr. [redacted] responses. On September 13, 2024, Richard Collins himself, as opposed to firm staff, responded to the Claims Administrator by email. He noted that the

questions asked of Mr. [redacted] were extensive and that it was taking Mr. [redacted] and his wife an extended period of time to fully respond to them. He explained that the firm needed "a **MINIMUM** of an additional 14 days from today for [Mr. [redacted] to continue to review his records and to cogently respond to your audit questions." (Doc. # 408299 at 1.) The Claims Administrator granted the extension. However, the Claims Administrator did not receive any updates from Mr. Collins or his staff about the progress of Mr. [redacted] responses after that date – not in 14 days nor even in 14 weeks. Collins & Truett now takes the position that its request for an extension of a minimum of 14 days meant that the extension was unbounded and continued in perpetuity.

On December 27, 2024, more than three months after the last contact from Mr. [redacted] or his counsel, the Claims Administrator concluded its investigation and finalized its Audit Report based on the available information. It found a reasonable basis to support a finding that Mr. [redacted] (1) misrepresented to his diagnosing physicians and to the Program his ability to work, volunteer, and participate in other business and community activities; and (2) failed to disclose to his diagnosing physicians and to the Program the true facts regarding his functional abilities. Pursuant to Program Rules, the Claims Administrator invited the Special Masters to accept the referral of its Audit Report for consideration of its findings and imposition of remedial measures.

The Special Masters accepted the Claims Administrator's referral. On March 12, 2025, during the pendency of the Special Masters' review, Collins & Truett finally provided

Mr. [redacted] responses to the audit questions that the Claims Administrator had propounded in July 2024. The response was presented in the words of Mr. [redacted] and his wife, as though it were transcribed from an interview, and in what counsel recognized was a confusing format but which it opted to place "in the able hands of the Claims Administrator to decipher[.]" (Doc. # 408300.) A lengthy screed from the firm accompanied the responses.

### C. The Special Masters' Remedies

On July 21, 2025, the Special Masters upheld the Claims Administrator's finding that Mr. [redacted] misrepresented and omitted material facts about his work history, volunteer history and social life in the statements he made both to his diagnosing physician and to the Claims Administrator. They denied his claim and outlined a specialized review process to apply to any claim Mr. [redacted] submits in the future. They also agreed with the Claims Administrator's finding that neither Mr. [redacted] nor his counsel reasonably cooperated with the audit investigation, despite their obligation to do so as set out in Section 10.3(b)(ii) of the Settlement Agreement. Among other things, they "censure[d] the law firm of Collins & Truett, P.A., for their practices in responding to this Audit, which included obstruction, dilatory tactics, and the provision of information which any reasonable investigation would have shown to be untrue" and they "cautioned [Collins & Truitt] that additional instances of similar behavior will result in more severe sanction, including the possibility of a temporary or permanent suspension of its ability

to submit Claims in this Program." (Doc. # 408309 at 5.) The decision, which closed with comments anticipating its future publication, reminded all individually-retained plaintiffs' attorneys of their "duty to reasonably cooperate with the Claims Administrator in resolving audits efficiently, and to ensure that their Clients provide accurate information to clinicians and the Claims Administrator." (*Id.*)

Mr. Collins filed an "Opposition" to the Special Masters' Rule 27 Decision on behalf of Collins & Truett. The Opposition does not object to the Special Masters' findings about or the remedies that they imposed on Mr. [redacted] Rather, it seeks the removal of the censure language of the SM Decision. The NFL Parties filed a response. Class Counsel did not file an objection to the Special Masters' decision or join the Collins & Truett opposition to the proposed censure.

## II. STANDARD OF REVIEW

The Settlement Agreement contemplates an audit process to detect fraudulent submissions to the MAF to prevent payment of unwarranted claims. Pursuant to the Settlement Agreement, the parties agreed that:

> (i) A Settlement Class Member whose claim has been selected for audit by the Claims Administrator, Co-Lead Class Counsel or Counsel for the NFL Parties may be required to submit additional records, including medical records, and information as requested by the auditing party; and
>
> (ii) A Settlement Class Member who refuses to cooperate with an audit, including by unreasonably failing or refusing to provide the auditing party with all records and information sought within the time frame specified, will have the claim denied by the Claims Administrator, without right to an appeal.

(Sett. Agr. § 10.3(b).) Other provisions empower the Claims Administrator to audit claims to "determine whether the Claim Form or Derivative Claim Form misrepresents, omits, and/or conceals material facts that affect the claim." (*Id.* § 10.3(g).) The Agreement establishes the process for the Claims Administrator, if it "determines that there has been a misrepresentation, omission, or concealment of a material fact made in connection with the claim," to refer the claim to the Special Master "for review and findings." (*Id.* § 10.3(i).)

The Special Masters serve the Court pursuant to Rule 53 of the Federal Rules of Civil Procedure, the Settlement Agreement, and the Court's orders appointing and re-appointing them. With respect to the audit process, their findings are final and binding, subject to review only as to conclusions of law. *See* Fed. R. Civ. Proc. 53(f)(3)(B); Sett. Agr. § 10.3(i); ECF No. 6871 at 5 (initial order appointing the Special Masters).

## III. DISCUSSION

When the Special Masters reviewed the Audit Report and proposed findings of the Claims Administrator in Mr. [redacted] case, they determined that Collins & Truett's response to the audit "delayed the ultimate handling of their client's [a]udit" and final resolution of Mr. [redacted] claim in three respects: (1) obstruction; (2) dilatory tactics; and (3) the provision of information which any reasonable investigation would have shown to be untrue. (Doc. # 408309 at 5.) These factual findings are not subject to further litigation and form the backdrop of this objection.

Collins & Truett contends that it did not knowingly provide information about Mr. [redacted] that was untrue. Instead, it seeks to shift blame to its client, suggesting that its firm staff "cannot control when a player is successful at pulling the wool over their eyes (which is known to happen on rare occasions when working with retired NFL Players)." (Doc. # 408308 at 5.) But that's an abdication of its responsibility. The record before me demonstrates that Collins & Truett wasn't the victim of some elaborate fraud. Instead, it didn't work very hard to perform the diligence that its ethical obligations required of it. In fact, its own responses in the course of this audit proves the point. When it finally transmitted Mr. [redacted] responses to the Claims Administrator's audit questions, Collins & Truett reported that it had adopted a practice of conducting its own investigation of its clients' work and social activity level before submitting a claim. (Doc. # 408300 at 2.) But a lawyer should **always** engage in a reasonable investigation of the factual basis for a claim before filing in court – and filing a claim in this Court-approved settlement program is no exception. A reasonable investigation prior to claim submission almost certainly would have alerted the firm to the incongruity of Mr. [redacted] contentions of functional limitations due to dementia with the representations of his activities and ventures that he put on social media and that were apparent to the Claims Administrator upon audit. Its failure to give any attention to the validity of the assertions **in a claim that was predestined for audit** merited censure. Indeed, Mr. [redacted] prior association with

Howard & Associates, and the implications that held for the Claims Administrator, should have caused Collins & Truett to exercise extra care in evaluating Mr. [redacted] assertions.

The Special Masters also concluded that censure was appropriate because Collins & Truett engaged in obstruction and dilatory tactics in response to the audit investigation. This finding does not reflect any erroneous conclusions of law. The Claims Administrator tried to keep the audit process moving, but several of its communications to the firm went unanswered. And then when the Claims Administrator granted a 14-day extension, the firm went silent. For months. Not until the Claims Administrator concluded that progress had stalled and moved the matter to the Special Masters did the firm respond to the outstanding requests. And even then, it did so with evident irritation at being expected to perform this service for its client. The firm's communications with the Claims Administrator and submissions to the Special Masters and the Court are rife with hyperbole and righteous indignation at the scrutiny applied to it. For example, the firm claims that "the Undersigned [Mr. Collins] and his law firm either are, or will shortly be drawn and quartered in public at the able hands of the Special Masters for being wrongly accused of intentionally submitted misrepresentative NFL Claims and intentionally submitting excessively late Audit Responses. It is Medieval." (Doc. # 408308 at 5.) But if it is medieval, the censure "tis but a flesh wound."[4,5]

---

[4] Monty Python And The Holy Grail (Python (Monty) Pictures *et al.* 1975).
[5] The firm doth protest too much, methinks.

This is a Court-approved settlement that involves substantial awards. The MAF component of the settlement seeks to balance the needs of cognitively-impaired class members – many of whom agree to pay firms such as Collins & Truett as much as 22% of their award for assisting them in this claim progress – with the NFL Parties' bargained-for expectation under the Settlement Agreement that they will fund only diagnostically-valid claims for class members with actual functional impairments. The scrutiny applied to Mr. [redacted] claim in these circumstances, and the responsiveness and professionalism that the Program expected of Collins & Truett, were appropriate. The Special Masters committed no error of law when they "censure[d]" the firm "for [its] practices in responding to this Audit[.]" (SM Dec. at 5.) This remedy was within their discretion and the authority that the parties agreed the Court would confer upon them. And, from my perch, it was a warranted sanction that was, if anything, forgiving, not harsh.

## IV. CONCLUSION

Collins & Truett fell short of its obligations to the Court and the Claims Administrator in the way that it handled Mr. [redacted] claim. I therefore approve and adopt the Special Masters' Rule 27 Decision. As soon as practicable, the Claims Administrator shall make a copy of the Special Masters' decision public, as set out in the Special Masters' decision. An appropriate Order accompanies this decision.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

JOSHUA D. WOLSON, J.