# Exhibit #2
# David Levine's Sworn Statement

**In the United States District Court**
**For the Eastern District of Pennsylvania**

| | | |
|---|---|---|
| **IN RE: NATIONAL FOOTBALLLEAGUE PLAYERS' CONCUSSION INJURY LITIGATION** | § § § § § | **No. 2:12-md-02323-AB MDL No. 2323** |

**DECLARATION OF DAVID LEVINE**

I, David Levine, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the sole principal of Pro Athlete Law Firm, P.A. ("PALF"). I am over 18 years of age and am authorized to make this declaration on behalf of myself, as well as PALF. The factual statements in this declaration are true and correct and based on my personal knowledge gained from my involvement in representing retired NFL Football Players ("Players") in the NFL settlement claims process.

2. I began representing clients in the NFL head concussion case in 2010. To date, I have represented over 500 Player clients (including co-counsel arrangements) and have submitted approximately 100 claims under the NFL settlement claims process. The Claims Administrator has approved 60 to 70 of those claims.

3. Of the 100 claims I have submitted on behalf of my Player clients, less than 25% involve Parkinson's Disease ("PD"), and less than 5% of my clients have filed PD claims. All of my clients have written representation forms and retainer agreements.

4. In 2021, one of my Player clients, Zack Crockett, was seen by Dr. Schwartzbard in connection with a claim for dementia. Dr. Schwartzbard diagnosed Mr. Crockett with

PD. That surprise diagnosis led me to ask my existing clients if they experience symptoms consistent with PD.

5. I entered a co-counsel relationship with Doug Grossinger to assist some of my Player clients through the PD claim submission process. Mr. Grossinger is a Philadelphia-area attorney, so he sought my assistance with representing Players in Florida due to my geographic location and history of success in the NFL settlement process. In our co-counsel relationship, Mr. Grossinger was responsible for setting Players up with treating physicians whereas I would take over once they were ready for their MAF evaluation. Given this division of labor, I rarely (if ever) interacted with a Player's treating physician when jointly representing a Player client. Notably, if a Player was already receiving treatment from a neurologist, there would be no need for Mr. Grossinger to set that Player up with a treating physician. Therefore, in such cases, Mr. Grossinger and I did not jointly represent that Player through the PD claims submission process.

6. The tables describing pertinent information relevant to my Player clients' PD claim submissions on pages five through seven of my response to the December 15, 2025 Audit Report are true and correct. Notably, the list of treating physicians includes only those that were involved in a Player's treatment prior to his PD claim submission. And all but two of the listed Players lived within 150 miles of the Monetary Award Fund ("MAF") physician that diagnosed them with PD. Michael Bankston and Eric Swann received an exception for evaluation by an MAF physician farther than 150 miles from his residence, because there was no MAF physician in their geographic vicinities.

7. Dr. Schwartzbard is an MAF physician in South Florida who, during the relevant period, had limited or no availability to conduct MAF evaluations.

8. Dr. Steinberg was Marshall Faulk's first treating physician. But once I learned that Dr. Steinberg treated numerous Players represented by other law firms, Mr. Grossinger (at my request) directed Mr. Faulk to obtain treatment from a new physician, Dr. Kramer, to ensure the veracity of his potential PD claim.

9. Sean Jones of Legal Collective represented O.J. McDuffie through the MAF evaluation phase, and then Mr. McDuffie hired Mr. Levine to submit his claim.

10. Two of Mr. Levine's Player Clients, Marshall Faulk and Chris Redman, have residences in Florida as well as another state. Both of those Players submitted PD claims under their Florida addresses.

11. I did not invite Dr. Steinberg to a Super Bowl dinner, nor was I in New Orleans at the time of the dinner party described in the Audit Report. I had nothing to do with said dinner in New Orleans. Moreover, Dr. Steinberg has evaluated only four of my Player clients.

12. I represented James Hasty in connection with the NFL settlement claims process. In May 2025, Dr. Verma informed Mr. Hasty that he did not have PD and Dr. Verma told Mr. Hasty to stop taking PD medication. Mr. Hasty then communicated his frustration and disappointment to me, in an aggressive manner, at being unable to obtain a PD diagnosis. I informed Mr. Hasty that I could not help him submit a PD claim if he does not have PD. Because I was unable to help Mr. Hasty obtain a PD diagnosis, he fired me and retained a new law firm.

13. When speaking with Player clients like Mr. Hasty about serious medical issues, including PD, I often do so by voice rather than text. I maintain this practice because it allows me to convey and receive conversational nuances.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 3, 2026.

/s/ David Levine
Authorized Electronic Signature

David Levine
Sole Principal, Pro Athlete Law Firm, P.A.