# Exhibit #6
# Special Masters' Rule 27 Decision on the Report of Adverse Finding Re: Collins

# Special Masters' Rule 27 Decision on the Report of Adverse Finding Regarding Settlement Class Member [redacted]

On December 27, 2024, the Claims Administrator issued an Audit Report concerning Settlement Class Member [redacted]. Finding that Mr. [redacted] had omitted or misrepresented facts material to his MAF Level 2 Claim, and that his law firm, Collins & Truett, P.A., had failed to reasonably cooperate with the Audit, the Claims Administrator recommended that the Claim be denied. Doc. 371800.

As the Audit rules permit, the NFL Parties submitted a Statement of Position regarding the Audit, which, while endorsing its findings, argued for stronger and consequently more deterrent sanctions. Doc. 378928. Mr. [redacted] through counsel submitted a Response, and the NFL Parties a Reply. Docs 382831; 387704.

Under Audit Rule 27, we now issue this decision. The Audit Rules themselves derive from the Court's order appointing us, which directed:

> With respect to the auditing of Monetary Awards and Derivative Claimant Awards, the Master(s) will review any claims referred by the Claims Administrator and determine whether a misrepresentation, omission, or concealment of material fact was made in connection with the claim. The Master(s) will make findings and grant appropriate relief as authorized by §10.3(i) of the Agreement. Pursuant to Fed. R. Civ. P. 53(f)(3)(B), the parties agree that the decision of the Master(s) findings will be final and binding. Pursuant to Fed. R. Civ. P. 53(f)(4), the Court will review de novo any objection to the Masters' conclusions of law.[1]

Under those Rules, Mr. [redacted]'s burden in this Audit is to show "that there is no reasonable basis to support a finding that there has been a misrepresentation, omission or concealment of a material fact made in connection with [his] Claim."[2] We find as a matter of fact that he has not met this burden.

The Settlement's Audit process is designed to ensure that only meritorious claims get paid.[3] This requires that the Claimant's medical providers have the information they need to make an accurate diagnosis. For that reason, the Program requires each Claimant to "talk openly and honestly" with his doctors about his medical condition, and to "provide complete and truthful answers to the doctor's questions about [his] employment, business, social, community,

[1] ECF No. 6871, Order Appointing Special Masters (July 13, 2016), at 5; ECF No. 11022, Order Appointing Special Master (Mar. 5, 2020), at 3; Rules Governing the Audit of Claims, at Rule 12(c) (Mar. 18, 2020), https://www.nflconcussionsettlement.com/ViewDoc.aspx?dp=NFL_Rules_Governing_the_Audit_of_Claims.pdf [hereinafter, "Audit Rules"].

[2] Audit Rule 28.

[3] *See* Settlement Agreement, Section 10.3(b).

recreational and any other activities [he] do[es] outside the home."[4] Retired Players and their informants must answer questions about these activities "truthfully and fully" so that their doctors have "complete information."[5]

This crucial disclosure includes "[t]he information on employment, business and income sources must cover the five years leading up to the exam, and information on the things [a player does] outside the home should cover how they have changed in the last five years."[6] In the employment context, for example, complete information includes at a minimum a player's job titles and specific responsibilities over the relevant time period as well as whether the employment was full or part time. If a player voluntarily left or was terminated from a place of employment over those five years, he should explain those events to his clinicians. If a player's job title does not accurately reflect his actual duties for whatever reason, or if he needs assistance or accommodations at work, he should explain the full context to his doctor. As the Program has repeatedly made clear, Claimants can maintain social, personal and professional lives and successfully submit certain Claims. What they cannot do is submit Claims seeking hundreds of thousands or millions of dollars for Diagnoses made without complete information or premised on false facts.

To reiterate, the point of these audits is to ensure that players' medical providers have the facts they need to fully understand the clinical picture and explain their articulated medical judgment. If that omitted or misrepresented fact "did affect or has the potential to affect whether the Settlement Class Member qualifies for a Monetary Award [...] and/or the amount of such award in favor of the Settlement Class Member,"[7] it is material.

* * *

Mr. [redacted] filed his Level 2 Claim in March of 2024. As Mr. [redacted] had previously been represented by Howard & Associates, P.A., his Claim was automatically audited.[8] The Audit disclosed that Mr. [redacted] had misrepresented his "ability to work, volunteer, and participate in other business and community activity" to his diagnosing physicians and to the Claims Administrator. It also found that he omitted information about his functional impairment. Doc. 371800, at 2.

By way of background, to recover for a Level 2 Diagnosis, Mr. [redacted] needed to establish that his functional impairment was profound. His diagnosing neurologist, Dr. Peterson Giallanza,

---

[4] *Frequently Asked Questions: FAQ #94* (What kinds of communications may I have with the Qualified MAF Physician?), NFL CONCUSSION SETTLEMENT, https://www.nflconcussionsettlement.com.

[5] *Frequently Asked Questions: FAQ #93* (Do I need to tell the Qualified MAF Physician about my work and other activities?), NFL CONCUSSION SETTLEMENT, https://www.nflconcussionsettlement.com.

[6] *Id.*

[7] Audit Rule 12(c).

[8] Special Masters' Rule 27 Decision on the Report of Adverse Finding Regarding Howard & Associates, P.A. and Related Parties (June 22, 2021) *available at* https://www.nflconcussionsettlement.com/Docs/howard_associates_sm.pdf (directing the Claims Administrator to audit any Claims by Settlement Class Members who were at any time represented by Howard & Associates, P.A. (including its employees), whether currently pending or submitted in the future.)

was required to find that Mr. [redacted] had "no pretense of independent function outside the home," that he requires "assistance in dressing, hygiene, keeping of personal effects" and that he only engaged in simple chores, had "very restricted interests" which were "poorly maintained."[9]

Dr. Giallanza concluded that Mr. [redacted] was so impaired only after being told by Mr. [redacted] that his last job was "working for a drug and alcohol rehab facility" and that he was currently unemployed. Doc. 313835, 11, 13. That last job—according to Mr. [redacted]—required merely the transporting of patients and not any reliance on his own memory. Id. at 18. Mr. [redacted]'sinformant, his wife [redacted], told the doctor that he didn't go to outside events and needed to be "coaxed to go out", and that he had trouble dressing, washing and grooming. Id. at 21-23. These statements were further supported by letters from [redacted] and [redacted].

Mr. [redacted] doubled-down on these statements in responding (through his attorney) to audit questions in March 2024. Mr. [redacted] restated that he was unemployed (due to a work injury). He denied any volunteer activity. He denied any other employment.[10]

The facts available to the Claims Administrator in their Audit investigation conflicted with Mr. [redacted]'s statements to his doctors. As the Claims Administrator found, Mr. [redacted] maintains several active businesses. He has an active business engaged in public speaking and merchandizing sales, including multiple public appearances and speaking engagements in 2023 and 2024. He is the Executive Director of a multi-level marketing firm. He is an active, paid NFL Alumni Wellness Coach. Mr. [redacted]'s tax records reveal thousands of dollars in income and expenses related to these various businesses over the last five years. And his public social media profiles confirm that he maintains an active and public social life. Doc. 371800, pp. 4-13.

Ascertaining these facts was made more difficult and expensive than it should have been as Mr. [redacted] and his attorneys failed to reasonably cooperate in this Audit investigation. On multiple occasions in 2024, the Claims Administrator sought information about Mr. [redacted]'s claim from his counsel, only to be stonewalled. His law firm filed blank documents, or late ones, while continually complaining about the purported intrusiveness of the investigation. When confronted with the evidence from his tax returns, Mr. [redacted]'s attorneys first asked for a fourteen-day extension and then simply didn't respond at all until filing a reply to the Claims Administrator's Audit Report, over half a year later.

This was not reasonably responsive. Players and their counsel are responsible for cooperating with the Program during an audit investigation. As the Settlement states, a "Class Member who refuses to cooperate with an audit, including by unreasonably failing or refusing to provide the auditing party with all records and information sought within the time frame specified, will have the claim denied by the Claims Administrator, without right to an appeal."[11] Dissembling,

[9] Knight Alzheimer Disease Research Center, *Clinical Dementia Rating Worksheet*, WASHINGTON UNIVERSITY SCHOOL OF MEDICINE IN ST. LOUIS, https://knightadrc.wustl.edu/wp-content/uploads/2021/06/CDR-Table.pdf (last visited Oct. 9, 2024).

[10] Doc. 314777; *see infra* at note 13 for examples.

[11] Settlement Agreement, Section 10.3(b)(ii).

delaying, or otherwise refusing to cooperate during the investigation only "attenuat[es] the process of getting to the bottom of what happened and run[s] up costs."[12]

The dilatory reply contained two parts. The first was a raw response from Mr. [redacted] and his wife to the Claims Administrator's Audit questions, which Collins & Truett itself acknowledges is confusing and not "on point," but which it placed "in the able hands of the Claims Administrator to decipher on their own." The document appears to be the transcription of the statements of two people (Mr. [redacted] and his wife) in response to the Claims Administrator's questions, though the numbering system makes it unclear which request any particular statement correlates to. Generally speaking, the responses admit that Mr. [redacted] maintains multiple external, paid, occupations and engages in a wide variety of social activities, but disclaims their overall scope.[13]

Collins & Truett submitted a slightly more formal Rule 15 Response. It curiously began by disclaiming any specific need to respond to those portions of the Audit Report about Mr. [redacted]'s conduct, leaving that to Mr. [redacted]'s"audit answers." The Response itself is long, working through various and repetitively organized topics. It admits that Mr. [redacted] has multiple outside occupations, but explained that he was only sometimes paid for those efforts and always was accompanied by his wife. It complains repeatedly about the (too fast) timeline in which the Claims Administrator tries to move Audits forward. And it explains the firm's failure to respond to the Claims Administrator's last request by noting that it had requested a "minimum" of a 14-day extension. When that extension was immediately granted, the firm's lawyers say they simply assumed that they had an indefinite time in which to respond, making half a year later timely.

As we have pointed out, Mr. [redacted]'s burden in an appeal of an audit finding is heavy: "that there is no reasonable basis to support a finding that there has been a misrepresentation, omission or concealment of a material fact made in connection with [his] Claim."[14] He has not met that burden. Admitting that he misrepresented his occupation, community and personal function to his doctors and to the Claims Administrator, Mr. [redacted] blames these repeated lapses on failures of memory. He does not attempt to provide a reasonable basis to find that these misrepresented and omitted facts weren't material to his Level 2 Claim. They clearly are.

We uphold the Claims Administrator's finding that Mr. [redacted] both misrepresented <u>and</u> omitted material facts about his work history, his volunteer history and his social life. And we agree

[12] Special Masters' Rule 27 Decision on the Report of Adverse Finding Regarding Byron Cuthbert and Associates, LLC (June 28, 2023), 6 https://www.nflconcussionsettlement.com/ViewDoc.aspx?dp=cuthbert_audit_decision_sm.pdf

[13] As examples, the replies about his various activities and abilities, purportedly from Mr. [redacted], include these statements: "I work for [redacted] Public Schools from 2019 to 2022." "I said, yes, I love my job. I love what I do. I've been in situations where I help these people – with these people I'm helping, I need help himself [sic]. So when I go to work every day. I'm excited about going there. I'm excited about helping somebody get out of the mess that they're in." "Sometimes I just go to do speaking engagement just so the NFL guy can be there. They get excited about that. That's why I do it. Someone had enough time to come out and say, hey, NFL guy came out to say hi to us. That's what I want to do. Make the kids smile." "So I'm sitting in the car, typing a post, because it's kind of noisy on the inside, so I come in the car and make a post." "I work out every day. I'm not going to stop working out until I can't move anymore. I'm going to work out." Doc. 314777.

[14] Audit Rule 28.

that neither Mr. [redacted] nor his counsel reasonably cooperated with the audit investigation, as the Settlement requires at 10.3(b)(ii). We therefore issue the following remedies:

A. **Denial of Claim:** Mr. [redacted]'s Monetary Award Claim which is subject to this Audit is denied without prejudice. Mr. [redacted] may seek a new evaluation through the Baseline Assessment Program, if he is eligible to participate in the BAP, or from a Qualified MAF Physician.

B. **Specialized Processing Rules For Mr. [redacted]'s Claims:** Future Claims submitted by Mr. [redacted] may not be dated back to any time prior to the initiation of this Audit process (March 6, 2024) and Mr. [redacted] must provide any future MAF or BAP clinicians a copy of this Report and disclose to them that they may not rely on the factual statements contained in Dr. Collins or Dr. Giallanza's reports, or information reported in third-party affidavits and statements filed in support of Mr. [redacted]'s 2024 Claim, in making new Diagnoses. Any future Claims Mr. [redacted] submits shall be directed to a single member of the AAP, with consultation from a single AAPC member, for individualized assessment and review.

C. **Censure of Collins & Truett, P.A.**: We censure the law firm of Collins & Truett, P.A., for their practices in responding to this Audit, which included obstruction, dilatory tactics, and the provision of information which any reasonable investigation would have shown to be untrue. These actions delayed the ultimate handling of their client's Audit. Colins & Truett, P.A. is cautioned that additional instances of similar behavior will result in more severe sanction, including the possibility of a temporary or permanent suspension of its ability to submit Claims in this Program.

The Claims Administrator shall make a copy of this Decision public, redacting any information identifying Mr. [redacted] but making Collins & Truett's name public, after any appeals process concludes. IRPAs in this Settlement Program are reminded of their duty to reasonably cooperate with the Claims Administrator in resolving audits efficiently, and to ensure that their Clients provide accurate information to clinicians and the Claims Administrator.

David A. Hoffman, Special Master

Jo-Ann M. Verrier, Special Master

Dated July 21, 2025

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION** | **No. 2:12-md-02323-JDW**<br>**MDL No. 2323** |
| **Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,**<br>**Plaintiffs,**<br>**v.**<br>**National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,**<br>**Defendants.** | |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | |

**ORDER**

**AND NOW**, this 14th day of September, 2026, it is **ORDERED** that the following filings are **STRICKEN** for failure to comply with Section I.C.1 of my Policies And Procedures:

1. Exhibit A to the Objections Of Locks Law Firm PA, LLC To The Special Masters' June 6, 2026 Audit Decision (ECF No. 12565 at Ex. A);

2. The exhibits to Pro Athlete Law Firm, P.A.'s Objection To The Special Master's Ruling Barring Future Participation In The Program (ECF Nos. 12567-1 through 12567-2);

3. Exhibits A thru X to the Motion To Vacate The Claims Administrator's December 12, 2025 Rule 15 Audit Report, To Vacate The Special Masters' June 8, 2026 Rule 27 Decision, And To Stay Audit Proceedings Pending Resolution (ECF Nos. 12572-2 thru 12572-25); and

4. Exhibits A and B to the Objections Of Douglas R. Grossinger And The Law Office Of Douglas R. Grossinger To The Special Masters' Rule 27 Report And Decision Dated June 8, 2026 (ECF Nos. 12573-2 thru 12573-3).

It is **FURTHER ORDERED** that to the extent Pro Athlete Law Firm,. P.A. intends to re-file conforming exhibits to support its Objection To The Special Master's Ruling Barring Future Participation In The Program and intends to file those exhibits under seal, then the Pro Athlete Law Firm must seek leave by filing an accompanying motion to seal consistent with the standards set forth *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig*, 924 F.3d 662 (3d Cir. 2019).

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

## JUDGE WOLSON'S FILING REQUIREMENTS

**Reference sheet for the Motion to Vacate. Not for filing.**

Source: Policies and Procedures, Hon. Joshua D. Wolson, as of July 16, 2026, available at paed.uscourts.gov/sites/paed/files/documents/procedures/wolpol.pdf. Section references are to that document.

### LENGTH — § II.B.3

| Filing | Page limit | Word-count alternative |
|---|---|---|
| Opening brief supporting or opposing a motion | 25 pages | 8,750 words, with certification |
| Reply | 10 pages | 3,500 words, with certification |
| Sur-reply | 7 pages | 2,450 words, with certification |

The word-count alternative is the better option and requires no leave. Double-spaced 12-point runs roughly 250 to 280 words per page, so 25 pages is about 6,250 to 7,000 words. Certifying 8,750 words buys the equivalent of roughly 31 to 35 pages.

To exceed the applicable limit, a request must be **received at least seven days before the filing is due**. It goes by letter emailed to Chambers, with "page limits" in the subject line, after conferring with opposing counsel, and it must state opposing counsel's position. That window is closed for a filing this week.

### THE RULE THAT GOVERNS THE ARCHITECTURE — § II.B.7

Incorporation by reference is prohibited. A party may not incorporate arguments from other briefs in the case, including briefs filed by other parties and briefs filed earlier in the case. If a party purports to incorporate an argument by reference, Judge Wolson will not consider the argument.

Consequences for this Motion. Every argument that must be preserved has to appear in the body of the brief. An appendix cannot carry argument. The Motion cannot rely on any other filing in the MDL, and any objections filed later cannot rely on this Motion.

### NO SUBSTANTIVE ARGUMENT IN FOOTNOTES — § II.B.1

Judge Wolson will not consider substantive arguments placed in footnotes and will not deem them preserved. The usual workaround for length is therefore unavailable.

### CO-PARTIES MUST FILE JOINTLY—§ II.B.6

Absent clear conflicts, co-parties file a single joint brief, and the same limit applies to it. Multiple firms filing together share one 25-page or 8,750-word allowance.

### FORMATTING — § II.B.1

Double-spaced. At least 12-point type. At least one-inch margins. Any proportionally spaced font. Footnotes in the same font and size as the body.

Any brief longer than ten pages must include a table of contents.

The version filed on CM/ECF must be text-searchable.

Documents on the docket must be cited by ECF number.

**EXHIBITS — § I.C**

This is the section that gets filings struck, so it is worth reading carefully.

Each exhibit must be a **separate document** on CM/ECF. If Judge Wolson receives a filing with a single document marked "Exhibits," he will strike the filing.

Each exhibit must carry a **descriptive name** rather than a letter — "Declaration of William Ondo," not "Exhibit A" — so that the exhibit can be identified from the docket without opening it.

All exhibits must be text-searchable. Scanned material must be OCR'd.

Do **not** attach pleadings from this case or from other federal cases. Cite them by court, case number, and docket number, and the Court will retrieve them. Pleadings from state or foreign courts that are unavailable on Westlaw or Lexis must be attached.

Transcripts: attach the cover page and the relevant full-sized pages. Not miniscripts, and not the entire transcript unless all of it is relevant.

**COURTESY COPIES — § I.E**

Required for anything filed under seal, and for any motion with **more than five exhibits**. This Motion has more than five, so courtesy copies are required.

Email to WolsonCourtesyCopy@paed.uscourts.gov. The subject line must contain the case caption, the filing title, and the ECF number. Each document must be a separate file named consistently with its CM/ECF description, or must carry a coversheet identifying its ECF entry. No Dropbox, FTP, or download links. No paper copies.

**SEALING — § I.D**

Must satisfy *In re Avandia Marketing, Sales Practices & Products Liability Litigation*, 924 F.3d 662 (3d Cir. 2019). A sealing motion is filed contemporaneously. A redacted public version is required unless redaction would render the document unreadable.

If more than ten individual references are designated for sealing, he will likely refer the sealing motion to a Special Master and allocate the cost — which is worth weighing in this matter given who the Special Masters are.

**MEET AND CONFER—§ I.F**

Where consultation is required, email exchanges do not satisfy it. Counsel must have an actual verbal conversation by telephone, videoconference, or in person.

**REPLIES AND SUR-REPLIES — § II.B.2**

File only when necessary. Address only new issues. Do not repeat earlier arguments. File as soon as practicable and no later than seven days after the preceding filing. No further submissions are permitted after that, except notice of subsequent binding authority.

**CHECKLIST FOR THIS FILING**

Length: certify 8,750 words or come in under 25 pages. No leave is available now.

Table of contents: required.

Certificate of compliance with the word count: required if using the word-count alternative.

Exhibits: each filed separately, each descriptively named, each text-searchable and OCR'd where scanned. The two Goldstock reports need distinct names — for example "Expert Report of Ronald Goldstock" and "Second Expert Report of Ronald Goldstock."

Do not attach: the Rule 27 Decision, the Audit Report, the appointment orders, or anything else on this docket. Cite by ECF number instead. This affects several entries currently in the proposed exhibit index.

Courtesy copies: required, by email, in the prescribed format.

Footnotes: confirm that no footnote in the brief carries a substantive argument.

Incorporation: confirm the brief refers to no other filing as the source of an argument.