**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-JDW<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CLASS COUNSEL'S STATEMENT IN RESPONSE TO**
**<u>OBJECTIONS TO SPECIAL MASTERS' RULE 27 DECISION</u>**

Class Counsel submits this statement with respect to the Special Masters' June 8, 2026 Rule 27 Decision and the Objections filed thereto. As this court is aware, Class Counsel's primary responsibility is to represent the interests of Settlement Class Members ("SCMs"). Accordingly, this statement addresses certain enumerated remedies which Class Counsel believes have the potential to unfairly and negatively impact certain SCMs. As detailed below, Class Counsel seeks clarification and/or modification of Remedies 2, 3, and 4.

## I. <u>Remedy 2</u>

Remedy 2 states, in relevant part, that:

> 2. All ninety-eight SCMs who submitted a Parkinson's Disease Claim implicated in this Audit may seek a new evaluation from a Qualified MAF Physician.
>
> **************
>
> b. . . . The MAF Physicians may see, but not rely upon, the ultimate medical judgments rendered along with any documentation or records associated with the Parkinson's Disease claims implicated in this Audit. . .

(Special Masters' Rule 27 Decision at p. 42)

This remedy provides that all 98 SCMs who submitted Parkinson's claims that are subject to the audit, including the 37 SCMs whose claims were denied because they were represented by one of the five law firms implicated in the audit (Remedy 1), still have the right to re-file a claim. Remedy 2 specifically states that the SCMs may seek a new evaluation from a Qualified MAF Physician and that those Qualified MAF Physicians may render a Qualifying Diagnosis, so long as they do not rely on the medical judgment or records related to the claim that was implicated in the audit. Class Counsel agrees with the Special Masters' decision to permit SCMs the right to re-file claims if they get re-diagnosed by a Qualified MAF Physician. However, Class Counsel believes that Remedy 2 should be modified to expressly state that the Qualified MAF Physician who examines the SCM and renders the Qualifying Diagnosis in support of the re-filed claim, is **not** required to use the date of the later examination as the Qualifying Diagnosis date. Rather, if the Qualified MAF Physician's medical judgment is that the diagnostic criteria for the Qualifying Diagnosis were satisfied as of an earlier date (*e.g.* the date of examination which resulted in the initial Parkinson's diagnosis), then the earlier date may be used as the Qualifying Diagnosis date for the newly submitted claim.

As acknowledged by the Special Masters in their Rule 27 Decision, "[s]ome of the Retired NFL Players subject to this Audit are almost certainly suffering from debilitating diseases." (Rule 27 Decision at p. 2).[1] Accordingly, it is important that BrownGreer ensures that every Qualified MAF Physician is advised of this clarification. In many cases, the use of the earlier diagnosis date would result in a significant increase in the SCM's monetary award. For example, the difference between a Parkinson's award for a 58-year-old compared to that for a 60-year-old is approximately $103,000. In those instances where the new Qualified MAF Physician finds that the diagnostic criteria were satisfied as of a date earlier than the most recent examination date, the correct result is that the SCM be awarded the monetary award amount that corresponds to his age as of the earlier date. He should not be penalized simply because his claim ended up being included in the audit through no fault of his own.

The concept of allowing Qualified MAF Physicians to use their medical judgment to select a diagnosis date earlier than the date of their examination is already recognized by the settlement program, so Qualified MAF Physicians should already be aware that they are permitted to do so. That said, Class Counsel believes that Qualified MAF Physicians should be explicitly reminded of that possibility when rendering Qualifying Diagnoses to SCMs subject to this audit. Without that reminder, there is a distinct possibility that Qualified MAF Physicians will think that they are not permitted to use an earlier diagnosis date for these SCMs, which would result in SCMs receiving a lower monetary award that they actually deserve.

[1] While Class Counsel appreciates the Special Masters' acknowledgement, Class Counsel believes that the vast majority (rather than "some") of the SCMs whose claims are subject to the audit are actually suffering from debilitating diseases.

**II. Remedy 3**

Remedy 3 states, in relevant part, that:

> Any SCM who has previously submitted a Claim with Mr. Grossinger, Feder Law, Pro Athlete Law Firm, Syme Law, or ROV—regardless of the Qualifying Diagnosis, the result of the Claim, or the SCM's current representation—will have all pending and future claims subject to a heightened review process, as established by the Claims Administrator and the AAP.

(Special Masters' Rule 27 Decision at pp. 42-3)

Class Counsel does not believe that "all . . . future claims" filed by a SCM who had previously submitted a claim with one of the five listed lawyers/law firms should be subject to the "heightened review" process imposed by Remedy 3. To be clear, Class Counsel is not questioning whether "all pending" claims should be subject to the "heightened review" process. That remedy is appropriate. However, to require that all future claims submitted by SCMs involved in this audit through no fault of their own be subject to "heightened review" is unfair and unjustified. Remedy 2 already precludes a Qualified MAF Physician from relying on medical judgments and/or records from the audited claim, so there is no reasonable concern that the Qualified Diagnosis in support of the future claim will be tainted by the earlier medical judgment or records. In addition, any future claim presumably will not be filed by one of the five law firms subject to the audit. Since any future claim cannot, by definition, rely on any of the "tainted" records and will not be filed by one of the implicated law firms, there is no need to mandate "heightened review" of future claims filed by a SCM who had previously submitted a claim with one of the five implicated law firms.

If it is found that "heightened review" should be required for future claims, Class Counsel proposes a modification. Specifically, Remedy 3's "heightened review" should not apply to supplemental claims filed by a SCM who had previously submitted a claim with one of the five implicated law firms if the SCM receives an award on a future claim following "heightened

review." For example, if a SCM who had previously submitted a claim with one of the five implicated law firms files a future claim for Level 2 Neurocognitive Impairment and that claim is approved after being subjected to "heightened review", and then files a supplemental claim for Alzheimer's, Parkinson's or ALS, that supplemental claim should not be subject to "heightened review." Once a SCM files a successful claim that withstood "heightened review", there is no longer a legitimate basis to impose the "heightened review" requirement. The taint of having been subject to the Parkinson's audit simply because they were represented by a lawyer who may have acted inappropriately should not follow the individual SCMs throughout their involvement in settlement program.

## III. Remedy 4

Remedy 4 states that:

> The Claims Administrator will deny any Claim going forward where a MAF Physician relied on the judgment of Drs. Steinberg, Pearlstein, Kramer, Karunapuzha, Verma, Sanchez, Fellus, or Isaacson. If any claims currently under review contain diagnoses relying on any of these physicians, the Claims Administrator shall undertake reasonable efforts to permit the Claimant to cure that reliance through additional documentation. But it will deny those claims if it cannot determine that the Qualifying Diagnosis was entirely free of the scheme this Audit Report revealed.

(Special Masters' Rule 27 Decision at p. 43)

This remedy specifically addresses pending and future claims where the Qualified MAF Physician relied upon the judgment of one of the listed doctors in rendering their Qualified Diagnosis. By definition, any such claim could not have been filed by one of the five law firms/lawyers subject to the audit since any pending claim filed by one of those firms was already denied under Remedy 1, and Remedy 5 prohibits those firms from submitting claims going forward. Remedy 4 specifically permits SCMs to cure the Qualified MAF Physician's reliance on the judgment of any of the listed doctors through the submission of additional documentation. Similar to Remedy 2,

Class Counsel believes that Remedy 4 should be modified to expressly state that if the SCM satisfactorily cures the Qualified MAF Physician's reliance on the judgment of a listed doctor, the diagnosis date does **not** need to be the date of the additional documentation. Rather, if the diagnostic criteria for the Qualifying Diagnosis were satisfied as of the date selected by the Qualified MAF Physician, then that earlier date should be used as the Qualifying Diagnosis date for purposes of calculating the SCM's monetary award amount. Without this modification, there is a distinct possibility that BrownGreer will default to using the later date (i.e. the date of the additional documentation) as opposed to the date selected by the Qualified MAF Physician.

Date: November 16, 2026

Respectfully submitted,

**SEEGER WEISS LLP**

By: *_/s/ Christopher A. Seeger_*
Christopher A. Seeger
Michael L. Rosenberg
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Phone: (973) 639-9100
cseeger@seegerweiss.com
mrosenberg@seegerweiss.com

***Class Counsel***